UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Rochester,

Debtor.

Case No. 19-20905

Chapter 11

## DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE CONTINUED MAINTENANCE OF THE DEBTOR'S PROTECTED SELF-INSURANCE PROGRAM; AND (II) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION OBLIGATIONS IN RESPECT THEREOF AND OTHER LEGACY CLAIMS

The Diocese of Rochester, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor" or "Diocese"), hereby moves this Court (this "Motion"), pursuant to sections 105(a), 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of interim and final orders, in substantially the forms attached hereto as *Exhibits A* and *B* respectively, (i) authorizing the Debtor to continue to maintain its Protected Self-Insurance Program ("PSIP"), and (ii) authorizing, but not directing, the Debtor to pay any prepetition claims, premiums, legacy worker's compensation obligations and other administrative costs of the PSIP. In support of this Motion, the Debtor respectfully represents as follows:

## BACKGROUND

1. On September 12, 2019 (the "Petition Date") the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is authorized to continue to operate its business and remain in possession of its property as a debtor in possession pursuant to sections 1107 and 1108 of the

3414168.4

Case 2-19-20905-PRW, Doc 10, Filed 09/12/19, Entered 09/12/19 11:54:46, Description: Main Document , Page 1 of 12

Bankruptcy Code. No trustee or examiner has been requested or appointed in this chapter 11 case, and as of the date of this Motion, no official committee has been appointed or designated.

2. Information regarding the Diocese's history, business operations, operational structure, facts supporting this Motion and the events leading up to the chapter 11 case can be found in the *Affidavit of Daniel J. Condon in Support of Chapter 11 Petition and First Day Pleadings* and the *Affidavit of Lisa M. Passero in Support of Chapter 11 Petition and First Day Pleadings*, each of which was filed on the Petition Date and is incorporated herein by reference.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and rule-based predicates for the relief sought in this Motion are sections 105(a) and 363 of the Bankruptcy Code and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure.

## PROTECTED SELF-INSURANCE PROGRAM

5. On or about June 1, 1977, the Diocese formally adopted the PSIP as a means of ensuring that the Diocese and certain non-debtor Catholic entities[1] (collectively, the "Participating Entities") had adequate insurance protection at a reasonable price by leveraging insurance costs at the diocesan level. A current list of the non-debtor Participating Entities is attached as ***Exhibit C***. The PSIP has operated continuously since that time.

---

[1] The Non-Debtor Catholic Entities that participate in the PSIP have changed over time, for example Catholic Charities left the PSIP in 2009 and is covered by separate insurance. The PSIP currently includes the Diocese, the 88 parishes within the geographical area of the Diocese along with certain other non-Debtor Catholic Entities. The current list of Participating Entities is attached as ***Exhibit C***.

- 2 -

3414168.4

6.  Under the PSIP, the Diocese coordinates and administers an insurance program providing coverage for itself and each of the Participating Entities under several different policies obtained through third-party insurance carriers. The PSIP currently provides insurance coverage, subject to the applicable self-insured retention/deductible amounts and policy limits, for general liability, direct property loss, indirect property loss, short term disability, workers' compensation, boiler and machinery, sexual misconduct, fiduciary liability, cyber liability, terrorism liability, directors and officers, and excess liability.[2] The applicable policy limits are inclusive of defense costs and the PSIP is responsible for funding any such costs until the applicable deductible is met.

7.  Waldorf Risk Solutions ("Waldorf") is the Diocese's third-party insurance administrator and broker of record for the PSIP. Waldorf assists the Diocese in binding appropriate coverage for itself and each of the Participating Entities under the PSIP.

8.  Under the terms of the insurance policies providing coverage under the PSIP, various types of losses are subject to certain per occurrence deductibles. For liability coverage and property damage, the deductible is currently $100,000 per loss. However, deductibles under the PSIP are subject to maximum annual stop loss limits of $250,000 in the aggregate for property claims and $250,000 in the aggregate for general liability claims, with a total annual stop loss limit under the PSIP of $500,000. Any losses above the applicable deductible or stop-loss limits are covered by the applicable third-party insurance carrier, subject to the terms of the applicable policy. A chart showing the various insurance coverages and deductibles under the PSIP is attached as ***Exhibit E***.

---

[2] Copies of the declaration pages for the 2019-2020 property and liability policy are attached as ***Exhibit D***.

9.      Assessments to cover the costs of providing insurance coverage under the PSIP are collected by the Diocese annually from each of the Participating Entities (the "PSIP Funds"). PSIP Assessments are calculated using allocation methodologies which take into account several different variables, including, among other things, replacement values, payroll dollars, square footage, acreage, and number of students. In calculating each Participating Entity's contribution, the Diocese strives to achieve a consistent and a fair allocation of PSIP costs among the Participating Entities.

10.     The PSIP Funds collected from the Participating Entities are used to pay policy premiums to third-party carriers, to pay claims (including defense costs) up to the amount of any applicable deductible and/or stop loss limits, and to cover risk management expenses and other administrative costs and obligations related to maintaining the PSIP.

11.     In Fiscal Year July 1, 2019-June 30, 2020, approximately $4.35 million in PSIP Funds are expected to be collected to support the program, and have been budgeted as shown in the table below:

| PSIP BUDGET | | $4,350,000 |
|---|---|---|
| Insurance Premiums to Third Party Carriers | $2,267,000 | |
| Brokerage Fees | $150,000 | |
| Risk Management/Loss Control/Training | $540,000 | |
| Legal Fees/USSCB/Audit Fees | $300,000 | |
| Stop Loss Aggregate | $500,000 | |
| **Total Budgeted Costs** | **$3,757,000** | |
| Balance for Unanticipated Costs and Expenses | | $593,000 |

12.     Once collected, the PSIP Funds are deposited into the Diocese's main operating account at M&T Bank, and separately maintained in a sub account. As needed, these funds are

- 4 -

used to bind coverage, to pay the Diocese's administrative costs and other obligations related to risk management and maintaining the PSIP, or transferred to an account managed by Waldorf to pay per occurrence deductibles up to the amount of the insurance policy self-retention along with other PSIP related costs. In the event that there are surplus PSIP Funds remaining at the end of a fiscal year after payment of all costs and expenses related to the program, such surplus funds are deposited by the Diocese into a segregated account with The Communis Fund of the Diocese of Rochester, Inc.

13. As of the Petition Date, all 2019-2020 insurance premiums payable to third-party carriers under the PSIP have been paid in full.

14. The PSIP provides a practical, cost-effective way to procure and maintain broad insurance coverage for the Participating Entities under a single program. If the PSIP is not continued, the Diocese together with each of the Participating Entities, will be forced to purchase separate insurance policies covering each entity and their respective properties. Upon information and belief each of the Diocese and the other Participating Entities would incur substantially higher costs to obtain their own individualized insurance (with or without a retention or deductible) than what they are currently assessed under the PSIP. Moreover, without the broader collective risk profile provided by the PSIP, certain types of coverage may simply not be available to the Diocese or to the other Participating Entities on an individualized basis or on commercially reasonable terms.

15. The Diocese seeks to continue to maintain the PSIP for itself and on the behalf of the Participating Entities in accordance with past practice and in the ordinary course of business. The Diocese believes that the maintenance of the PSIP is in the best interest of the estate and its creditors.

3414168.4

## LEGACY CLAIMS

16. The Diocese and the Participating Entities were substantially self-insured prior to July 1, 2009, including workers' compensation. Since that time, these entities have insurance for complete "dollar-one" coverage of all workers' compensation claims post July 1, 2009. Currently coverage is provided by Church Mutual Insurance Company.

17. With regard to pre-July 1, 2009 workers compensation claims, the Debtor maintains a legacy workers' compensation fund at Key Bank, which is maintained by a third-party administrator, FutureComp (formally USI Insurance Services, Key Insurance & Benefits Services and First Niagara Risk Management). This workers compensation fund is supported by a letter of credit in the amount of $844,000 at M&T Bank.

18. Currently the Diocese is required, pursuant to orders issued by the New York Workers' Compensation Board, to pay three Diocese claimants and five Catholic Charities' claimants a total of approximately $8,629 per month on average (the "Legacy Payments").

19. The Diocese requests court authority to continue to make these Legacy Payments in the ordinary course of business.

## RELIEF REQUESTED

20. By this Motion the Diocese requests the entry of an order allowing the Diocese to continue to maintain the PSIP. The Diocese also seeks entry of an order authorizing, but not directing, the Diocese in its discretion to pay, from the PSIP Funds described above, prepetition claims, premiums, defense costs and administrative costs related to the PSIP, along with any Legacy Payments and authorizing checks and other withdrawals whether for pre- or postpetition periods, including amounts representing payments or reimbursement of claims payable under the PSIP and premiums, administrative and other costs associated with the PSIP to be honored. To

- 6 -

the extent coverage may be available under the PSIP policies for claims made pursuant to the New York Child Victims Act (the "CVA"), the Debtor is not seeking authority to pay such claims at this time. The Debtor proposes to address all CVA claims, as well as any insurance coverage which may be available to cover them, in connection with its plan of reorganization.

21. As of June 30, 2019, the PSIP program had established case-specific reserves in the amount of $182,000 for non-CVA personal injury and general liability claims, $32,000 for property damage claims, and $260,000 for workers compensation Legacy Payments. The Debtor also has additional reserves which it believes are sufficient to cover these known claims in the event the case-specific allocations prove to be insufficient, and to cover any additional claims which may have been incurred but not yet reported. These funds are required for the operation of the PSIP and the handling of such claims and are not included in the current fiscal year budget set forth above, but were instead specifically earmarked and reserved from prior year PSIP Funds to cover just such contingencies. As of the date of this Motion, the Debtor is aware of one pending property damage claim and has received notice of approximately 16 precautionary incident reports which may lead to general liability claims, all of which, if asserted would be covered under this fiscal year's PSIP plan, but with respect to which the Debtor does not currently have sufficient information to establish a specific reserve amount.

22. An order granting the requested relief is necessary to minimize unnecessary disruption to the Diocese and other participants in the PSIP and to continue the insurance coverage funded with their premium payments.

23. The Diocese is not requesting the assumption or rejection of any executory contracts in connection with this Motion.

- 7 -

3414168.4

Case 2-19-20905-PRW, Doc 10, Filed 09/12/19, Entered 09/12/19 11:54:46, Description: Main Document, Page 7 of 12

## BASIS FOR RELIEF

24. This Court has authority to grant the relief requested herein pursuant to Bankruptcy Code sections 105(a) and 363(b). Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Bankruptcy Code section 105(a) allows the Court to authorize payments on account of certain pre-petition claims when necessary. Bankruptcy Code section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This is generally referred to as the "necessity of payment rule" or the "doctrine of necessity." *See In re NVR, L.P.*, 147 B.R. 126, 128 (Bankr.E.D. Va. 1992); *In re Colad Grp., Inc.*, 324 B.R. 208, 213 (Bankr. W.D.N.Y. 2005); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989), *accord In re Financial News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991) (pre-petition claims may be paid when so doing is "critical to the debtor's reorganization"); *In re Eagle-Pitcher Indus.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (payment must be "necessary to avert a serious threat to the Chapter 11 process"); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (payment necessary to "permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately") (quoting *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987)).

25. Courts have recognized that the "necessity of payment rule" is "well-established in bankruptcy common law." *In re NVR, L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (also stating that, under Bankruptcy Code section 105(a), a court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor"); *see also Official*

3414168.4

*Comm. of Unsecured Creditors of Motor Coach Indus. Int'l v. Motor Coach Indus. Int'l (In re Motor Coach Indus. Int'l),* 2009 U.S. Dist. LEXIS 10024, at *7 n.5 (D. Del. Feb. 10, 2009)("The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor."); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that Bankruptcy Code section 105(a) provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984)).

26. For the reasons described above, and in view of the Diocese's need to maintain appropriate levels of insurance to support its reorganization efforts, authorizing the Diocese to continue to maintain the Insurance Program, including utilizing the services of Waldorf or a replacement agent or broker in the ordinary course of maintaining the PSIP, and making the payments required by the PSIP and the underlying insurance policies, is in the best interests of all parties in interest in this case. The continuance of the PSIP is essential to the Diocese's ability to minimize disruption during this chapter 11 case and to maximize the value of its estate for the benefit of its creditors. Thus, the Diocese respectfully request authorization (but not direction) to fully retain in place the existing PSIP and to honor prepetition obligations related thereto, as well as the Legacy Payments.

- 9 -

3414168.4

Case 2-19-20905-PRW, Doc 10, Filed 09/12/19, Entered 09/12/19 11:54:46, Description: Main Document , Page 9 of 12

27. Relief similar to that requested herein has been granted in many other chapter 11 cases in this circuit. *See, e.g., In re Eagle Bulk Shipping, Inc.*, Case No. 14-12303 (SHL) (Bankr. S.D.N.Y. Sept. 19, 2014) [Docket No. 99]; *In re Genco Shipping & Trading Ltd.*, Case No. 14-11108 (SHL) (Bankr. S.D.N.Y. Apr. 23, 2014) [Docket No. 168]; *In re Excel Mar. Carriers Ltd.*, Case No. 13-23060 (RDD) (Bankr. S.D.N.Y. Aug. 5, 2013) [Docket No. 127]; *In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2012) [Docket No. 361]; *In re General Mar. Corp.*, Case No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011) [Docket No. 137].

## WAIVER OF BANKRUPTCY RULES GOVERNING NOTICE AND STAY

28. Given the nature of the essential and critical relief requested herein, the Debtor respectfully requests a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a), and (b) the 14-day stay under Bankruptcy Rules 6004(h), 7062, 9014 or otherwise.

## DEBTOR'S RESERVATION OF RIGHTS

29. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code, nor does the Debtor waive its rights under the Code of Canon law, or any applicable State or Federal law.

## NOTICE

30. Notice of this Motion will be given to (i) the Office of the United States Trustee for the Western District of New York, (ii) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims, (iii) all required governmental agencies and (iv) the Debtor's banks. Due to the urgency of the circumstances surrounding this Motion and the nature of the

relief requested herein, the Debtor respectfully submits that further notice of this Motion is neither required nor necessary.

## NO PRIOR REQUEST

31. The Debtor has not previously sought the relief requested herein from this or any court.

WHEREFORE, the Diocese requests entry of interim and final orders, in substantially the form attached hereto as ***Exhibits A*** and ***B*** respectively: (i) authorizing, but not directing, the Diocese to pay or reimburse from the PSIP Funds claims and administrative costs payable under the Protected Self-Insurance Program whether incurred pre- or postpetition; (ii) pay any pre- or postpetition Legacy Payments; (iii) authorizing checks and other withdrawals whether for pre- or postpetition periods, including amounts representing payments or reimbursement of claims payable under the Protected Self-Insurance Program and premiums, administrative and other costs associated with the Protected Self-Insurance Program to be honored; and (iv) granting such further and equitable relief as this Court deems just and proper.

Dated: September 12, 2019

BOND, SCHOENECK & KING, PLLC

By: */s/ Stephen A. Donato*
Stephen A. Donato
Charles J. Sullivan
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
sdonato@bsk.com
csullivan@bsk.com

Ingrid C. Palermo
350 Linden Oaks, Third Floor
Rochester, New York 14625-2825
Telephone: (585) 362-4700
ipalermo@bsk.com

*Proposed Attorneys for the Diocese of Rochester*

3414168.4