UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| THE DIOCESE OF ROCHESTER, | ) Case No. 19-20905 (CGM) |
| | ) |
| Debtor. | ) |
| | ) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION
FOR AN ORDER PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 2004 FOR DEPOSITION OF
BISHOP EMERITUS MATTHEW HARVEY CLARK**

The Official Committee of Unsecured Creditors (the "**Committee**") of The Diocese of Rochester, the debtor and debtor in possession (the "**Debtor**" or the "**Diocese**") in the above-captioned case (the "**Chapter 11 Case**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), by and through its undersigned counsel, respectfully moves (the "**Motion**") pursuant to sections 105 and 1103 of the Bankruptcy Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for the entry of an order authorizing the Committee to issue subpoenas to Bishop Emeritus Matthew Harvey Clark (the "**Bishop Emeritus**") for his deposition and for production of documents. In support of this Motion, the Committee states, upon information and belief unless otherwise stated, as follows:

## INTRODUCTION

1. The Debtor filed its Chapter 11 Case in response to filed and expected claims arising under New York's Child Victim Act (the "**CVA**"). The CVA provides a one-year window for claims by survivors of childhood sexual abuse who were barred by the statute of limitations from asserting claims against responsible parties, such as the Debtor, on account of their abuse. The Bishop Emeritus was the Bishop of the Diocese from 1979 to 2012, during which time he was the ecclesiastical leader of the Diocese, president of the Debtor, and president

of the Parish corporations. During the Bishop Emeritus' 33 year tenure, children were abused in the Diocese by priests and others that were supervised and controlled by the Bishop Emeritus. As such, the Bishop Emeritus has knowledge and information about sexual abuse that occurred within the Diocese, the priests and other clergy who perpetrated such sexual abuse, the Diocese's knowledge of the abuse and its perpetrators, and the general operations of the Diocese. Clearly, such information is critical for understanding the Diocese's liability for sexual abuse and negotiating a global settlement of sexual abuse claims against the Diocese.

2. The Debtor has asked the Court to appoint a mediator to facilitate resolution of the Chapter 11 Case. The Committee must be prepared for the mediation, including with respect to potential defenses that the Debtor or its insurers may assert regarding sexual abuse claims. Such preparation requires an investigation of facts surrounding the abuse that occurred within Diocese. In that regard, the Committee has requested, and the Diocese has committed to provide, documents pertaining to a variety of issues, including the Debtor's financial condition and sexual abuse of minors within the Diocese. While document discovery is critical, there may be facts that can best be gleaned from testimony. The Bishop Emeritus is likely the best source for testimony regarding facts that occurred during his tenure.

3. The Committee understands that the Bishop Emeritus's health may be failing.[1] As such, it is critical that the Committee have an opportunity to question the Bishop Emeritus under oath before he is no longer able to competently testify. The Committee requested that the Debtor voluntarily produce the Bishop Emeritus for a deposition, and understands that Debtor's counsel informed his personal attorney that the Committee sought to

---

[1] Bishop Matano testified at the 341 meeting for the Chapter 11 Case that Bishop Clark was "diagnosed with the initial stages of Alzheimer's, but still is able to function." *See* Transcript of Audio File of 341 Meeting 164:22-165:3 attached hereto as **Exhibit A**. See also https://catholiccourier.com/articles/prayers-requested-for-bishop-clark (last accessed January 22, 2020).

take the deposition. The Committee also asked Bishop Clark's counsel for his consensual appearance at a deposition before filing this Motion. However, the neither the Debtor nor the Bishop Emeritus have consented to a deposition at this time. As such, the Committee is compelled to bring this Motion.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested is predicated upon 11 U.S.C. §§ 105(a) and 1104 and Federal Rule of Bankruptcy Procedure 2004.

**RELEVANT FACTS**

**A.   Background Facts**

5. On September 12, 2019, the Debtor filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6. The Debtor is continuing to operate its business as a debtor in possession.

7. On or about September 26, 2019, the United States Trustee appointed the Committee to represent the Debtor's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1). The Committee is comprised of nine (9) survivors of sexual abuse within the Diocese. The Committee members are all represented by individual counsel who collectively represent hundreds of survivors of childhood sexual abuse that occurred within the Diocese.

**B.   Bishop Emeritus Clark**

8. The Bishop Emeritus was Bishop of the Diocese for thirty-three (33) years; from 1979 to 2012.[2] As bishop, his duties included assigning clergy to their posts. In this capacity, the Bishop Emeritus, upon information and belief, was responsible for assigning priests

---

[2] *See* https://www.dor.org/about/history/ (last accessed January 22, 2020).

and other clergy to positions where they would have responsibility for and/or access to children. Some of these assigned individuals sexually abused children and were reassigned time and again to new positions where they would have access to children. Attached hereto as **Exhibits B** to **H** are complaints detailing such abuse during the years that the Bishop Emeritus was the Bishop of the Diocese. In addition, the Diocese has reported that, since 2001, it has removed priests from active ministry because the priests either admitted they had, or were proven to have, sexually abused children.[3]

9. The Bishop Emeritus has unique knowledge regarding facts pertaining to these complaints and other claims likely to be filed against the Debtor in the Chapter 11 Case. These facts include information regarding to the Diocese's knowledge of sexual abuse within the Diocese, the Diocese's transfers of sexual abusers within the Diocese or elsewhere, the Diocese's governance of its own and its Parishes' affairs, the Diocese's notice that certain individuals for whom it was responsible were sexual abusers, and the Diocese's policies regarding protection of children. Given the Bishop Emeritus' long tenure, it is imperative that the Committee and its constituents be given an opportunity to question the Bishop Emeritus under oath.

10. The Bishop Emeritus' health is declining. As such, it is necessary to take his deposition at this time. A deposition under Bankruptcy Rule 2004 is the most efficient means of obtaining his testimony as part of the Committee's investigation of the Debtor's prepetition liabilities and preparation for mediation.

### C. Sexual Abuse Claims During Bishop Clark's Tenure

11. Various plaintiffs have alleged that they were sexually abused by priests for whom the Diocese was responsible during the Bishop Emeritus' tenure, including:

---

[3] *See* https://www.dor.org/protecting-our-children/dispositions-2002-present/ (last accessed January 22, 2020).

a. A plaintiff alleging sexual abuse by Deacon George Finch from 1980 to 1982 while the plaintiff was 14 to 16 years old (*See* Complaint, **Exhibit B**);

b. A plaintiff alleging sexual abuse by Fr. Joseph Larrabee from 1984 to 1985 while the plaintiff was 15 to 16 years old (*See* Complaint, **Exhibit C**);

c. A plaintiff alleging sexual abuse by Fr. Francis H. Vogt from 1979 to 1980 while the plaintiff was 10 to 11 years old (*See* Complaint, **Exhibit D**);

d. A plaintiff alleging sexual abuse by Fr. Robert O'Neill in 1979 while the plaintiff was a minor (*See* Complaint, **Exhibit E**):

e. A plaintiff alleging sexual abuse by Fr. Robert Gaudio from approximately 1979 while the plaintiff was approximately 15 years old (*See* Complaint, **Exhibit F**);

f. A plaintiff alleging sexual abuse by Brother John Walsh from 1983 to 1985 while the plaintiff was 14 to 16 years old (*See* Complaint, **Exhibit G**);

g. A plaintiff alleging sexual abuse by Fr. Paul Cloonan in 1987 while the plaintiff was a minor (*See* Complaint, **Exhibit G**);

h. A plaintiff alleging sexual abuse by Fr. Robert O'Neill from 1988 to 1989 while the plaintiff was a minor (*See* Complaint, **Exhibit G**);

i. A plaintiff alleging sexual abuse by Fr. Robert O'Neill in 1999 while the plaintiff was a minor (*See* Complaint, **Exhibit G**):

j. A plaintiff alleging sexual abuse by Fr. William O'Malley from 1985 to 1986 while the plaintiff was 17 years old (*See* Complaint, **Exhibit G**);

k. A plaintiff alleging sexual abuse by Fr. Robert O'Neill in 1994 when the plaintiff was 16 (*See* Complaint, **Exhibit H**).

12. Based on the Committee's review of the complaints attached hereto, it is apparent that the Committee must be allowed to examine the Bishop Emeritus regarding his knowledge of facts concerning abuse during his tenure. The attached complaints are a sample, rather than a complete set, of complaints alleging sexual abuse during the Bishop Emeritus' tenure. Nevertheless, the complaints allege abuse from 1979 through 1994 by eight (8) clergy working in the Diocese. Clearly, the Bishop Emeritus can provide testimony on the Diocese's operations, policies and procedures during his tenure (as well as any information passed to him by his predecessor regarding these matters). Given the disclosures about the Bishop Emeritus' health, it is imperative that the Committee be authorized to conduct his deposition before he is no longer able to testify.

## RELIEF REQUESTED

13. The Committee respectfully requests that the Court enter an Order, substantially in the form attached hereto as **Exhibit I** (a) authorizing the Committee to issue a subpoena to the Bishop Emeritus seeking his testimony under oath, (b) authorizing the testimony to be recorded by a court reporter and video, and (c) approving procedures to allow state court counsel to participate in the deposition. The Committee also asks for authority to issue a subpoena to compel production of documents from the Bishop Emeritus.

## BASIS FOR RELIEF

**A.** **Applicable Law**

14. Pursuant to section 1103(c)(2) of the Bankruptcy Code, the Committee is charged with the duty to:

> investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan.

11 U.S.C. § 1103(c)(2).

15. In addition, section 105(a) of the Bankruptcy Code permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

16. The scope of a Rule 2004 inquiry is "unfettered and broad," as the wording of the rule indicates. *See* 9 COLLIER ON BANKRUPTCY ¶ 2004.02[1] at 2004-6 (15th ed. rev. 1997) (quoting *In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr. D. Mass. 1985)). The well-settled scope of discovery conducted under Rule 2004 is so fundamental to the bankruptcy process that courts have approvingly described it as a "fishing expedition," "exploratory and groping," and "inquisition." *See, e.g., Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 42 B.R. 362, 364 (S.D.N.Y. 1984); *In re Drexel Burnham Lambert Group*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991). Indeed, Bankruptcy Rule 2004 affords parties-in-interest an extremely broad right of discovery and "is even broader than that of discovery permitted under [the Federal Rules of Civil Procedure], which themselves contemplate broad, easy access to discovery." *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (citations omitted).

**B.** **<u>Argument</u>**

17. The Bishop Emeritus' testimony is necessary to aid the Committee and its constituency of sexual abuse claimants in investigating facts related to the Debtor's financial condition, including prepetition liabilities arising from sexual abuse of children. Such testimony will also aid the Committee to prepare for mediation, where defenses may be raised by the

Debtor or its insurers regarding the Debtor's liability for sexual abuse claims. This testimony is especially critical in this Chapter 11 Case because the Debtor commenced its case less than one month after the effective date of the CVA. Prior to enactment of the CVA, the Debtor had been shielded from liability for sexual abuse claims because of New York's prior, onerous statute of limitations. Thus, there has only been almost no history of litigation involving the Debtor's liability for childhood sexual abuse prior to the Petition Date. Notably, there were only twenty-nine (29) days between the opening of the CVA window and the Petition Date. As a result answers to claims filed against the Diocese were not yet due and there has been no discovery in those cases.

18. In contrast, most other Catholic-entity chapter 11 cases have been filed after extensive litigation and substantial discovery between plaintiffs and defendants. Thus, Committees in those cases often rely on prepetition work by plaintiffs and their counsel to understand the liability and notice issues of the case. In this Chapter 11 Case, the Committee cannot rely on such efforts, because there is an insufficient litigation history and record of the facts.[4]

19. The need for authorization to depose the Bishop Emeritus is pressing due to his reported health issues.

20. Questioning the Bishop Emeritus under oath in order to create a record regarding the basis for the Diocese's liability for sexual abuse claims is squarely within the Committee's authority under Section 1103. Moreover, allowing counsel to individual claimants to participate in the deposition will create efficiency in the overall cases because it could obviate the need for individual plaintiffs' counsel to seek relief from the automatic stay or otherwise

---

[4] The Committee understands that the Bishop Emeritus was deposed in in 2012 in one case alleging sexual abuse of a minor. Additional testimony is necessary with respect to the multitude of additional claims filed and expected to be filed in this Chapter 11 Case alleging sexual abuse by many perpetrators against many victims.

move forward with the Bishop Emeritus' deposition in individual state court cases. Accordingly, "good cause" exists to permit the Committee to conduct discovery pursuant to Rule 2004.

## PROPOSED PROCEDURES

21. The Committee understands that certain state court counsel to individual plaintiffs/claimant would like to participate in questioning the Bishop Emeritus. Such counsel represent sexual abuse survivors who were abused at different periods and by different perpetrators. They are also highly experienced experts in depositions of Catholic clergy regarding sexual abuse claims. As such, the Committee believes that it would be most efficient to allow such counsel to participate in the deposition. The Committee proposes that it be authorized to designate state court counsel to conduct portions of the deposition for given amounts of time.

## RESERVATION OF RIGHTS

22. The Committee reserves all of its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Rule 2004 Motion. The Committee also reserves the right to seek any other relief with respect to any relief granted herein.

## NO PRIOR REQUEST

23. No prior request for the relief requested herein has been presented to this or any other court.

## NOTICE

24. Notice of this Motion has been provided to counsel for the Bishop Emeritus; counsel for the Debtor; the United States Trustee; and all parties who filed notices of appearance and request for service pursuant to Bankruptcy Rule 2002. While motions under

Bankruptcy Rule 2004 are often presented ex parte, the Committee filed this motion with notice to the above parties in anticipation of an objection. Thus, the Committee has set the Motion for the next hearing date in order to avoid any delay in being heard by the Court.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court grant the Motion and enter an Order authorizing the Committee to issue subpoenas to Bishop Emeritus Matthew Harvey Clark for documents and his testimony with respect to sexual abuse within the Diocese; and that the Court grant such other and further relief as it may deem just and equitable.

Date: January 24, 2020

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Ilan D. Scharf*
James I. Stang (admitted *pro hac vice*)
Ilan D. Scharf
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*