UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Rochester,

          Debtor.

Case No.  19-20905

Chapter 11

## RESPONSE TO MOTION OF UNITED STATES TRUSTEE FOR ORDER AUTHORIZING APPOINTMENT OF INDEPENDENT FEE EXAMINER

The Diocese of Rochester (the "Diocese"), by and through its undersigned counsel, hereby submits this response (this "Response") to the *Motion of United States Trustee for Order Authorizing Appointment of Independent Fee Examiner* [Docket No. 455] (the "Fee Examiner Motion") and respectfully states as follows:

## BACKGROUND

1.      On September 12, 2019 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case").  The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for a trustee has been made in this Chapter 11 Case.

2.      On September 26, 2019, the Office of the United States Trustee (the "UST") filed notice of the appointment of an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").  As of the date of the filing of this Response, no other official committees have been appointed or designated.

3522814.3

3.     Information regarding the Diocese's history, business operations, operational structure, facts supporting this Response and the events leading up to this Chapter 11 Case can be found in the *Affidavit of Daniel J. Condon in Support of Chapter 11 Petition and First Day Pleadings* and the *Affidavit of Lisa M. Passero in Support of Chapter 11 Petition and First Day Pleadings*, each of which was filed on the Petition Date and is incorporated herein by reference.

4.     As of the date hereof, the Court has authorized the Diocese to retain and employ (i) Bond, Schoeneck & King, PLLC ("Bond") as its primary bankruptcy counsel, (ii) Harris Beach, PLLC ("Harris Beach") as special counsel, (iii) Blank Rome, LLP ("Blank Rome") as special insurance counsel, (iv) Nixon Peabody, LLP ("Nixon"), as special corporate counsel, (v) Bonadio & Co., LLP ("Bonadio") as accountants and (vi) Bankruptcy Management Solutions, Inc. *d/b/a* Stretto ("Stretto") as administrative advisor; the Court has also authorized the Committee to retain Pachulski Stang Ziehl & Jones LLP ("Pachulski") as its counsel (each of the foregoing, a "Professional" and collectively the "Professionals").

5.     On October 22, 2019, the Diocese filed the *Motion of the Debtor for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Members of Official Committees* [Docket No. 109] (the "Interim Compensation Motion").[1]  The UST filed an objection to the Interim Compensation Motion on November 22, 2019 [Docket No. 268].

6.     On December 5, 2019, the Court entered an administrative order [Docket No. 318] (the "Interim Compensation Order") granting the Interim Compensation Motion and establishing procedures for the monthly and interim compensation and reimbursement of expenses for Professionals.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3522814.3

7.     The Interim Compensation Order allows Professionals to file monthly statements (the "Monthly Fee Statements") seeking compensation and reimbursement for the previous month's fees and expenses related to this Chapter 11 Case.  Each Monthly Fee Statement must be filed on the publicly accessible case docket and served upon the Diocese, its bankruptcy counsel, counsel for the Committee (and any other committee appointed in this case), and the UST (collectively, the "Notice Parties").  *See* Interim Compensation Order at ¶ 3.  All of the Notice Parties have the opportunity to review the Monthly Fee Statements and to raise objections.  *Id*.  The Interim Compensation Order further contemplates that, in order to continue to be eligible to receive compensation on a monthly basis, each Professional will file and serve a formal applications (each, an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought in such Professional's Monthly Fee Statements for the prior four month period (each, an "Interim Fee Period").  *Id*.

8.     Copies of each Interim Fee Application must be filed on the Court's docket and served upon each of the Notice Parties, while notice of any hearing on Interim Fee Applications must be provided to all parties in interest pursuant to Bankruptcy Rule 2002(a)(6).  *Id*. at ¶ 5.  All creditors and parties in interest are therefore accorded an opportunity to review and raise concerns or objections to the interim allowance of compensation to Professionals.

9.     Five professionals have filed Monthly Fee Statements during the course of this Chapter 11 Case and, as of the date of this Response, each of those Professionals has now submitted their first Interim Fee Applications as follows:

| Professional | Application Period | Fees Requested | Expenses Requested |
|---|---|---|---|
| Bond | 9/12/2019 – 1/31/2020 | $726,230.60 | $14,162.12 |
| Harris Beach | 9/12/2019 – 3/31/2020 | $272,166.00 | $62,942.84 |

3

3522814.3

| | | | |
|---|---|---|---|
| Blank Rome | 9/12/2019 – 1/31/2020 | $155,934.61 | $5,475.75 |
| Nixon | 9/12/2019 – 1/31/2020 | $12,040.00 | $0.00 |
| Pachulski | 9/12/2019 – 2/29/2020 | $380,165.00 | $9.756.19 |

10.     On March 20, 2020, before any of the Professionals had filed their first Interim Fee Applications, the UST filed its Fee Examiner Motion.

## RESPONSE

11.     As set forth in more detail below, the Diocese believes that the appointment of a fee examiner is neither necessary nor appropriate at this time and may not be necessary or appropriate at any point in this Chapter 11 Case.  The Diocese's finance department has been actively reviewing each of the Monthly Fee Statements as they have been filed and plans to do the same with the Interim Fee Applications.  Upon information and belief, both the UST and members of the Committee have been doing likewise.  Under these circumstances, the Diocese believes a fee examiner, or even the less drastic step of appointing a fee review committee, would provide limited if any benefit and would only introduce an additional and unnecessary administrative cost to this Chapter 11 Case.

12.     In light of this concern, the Diocese respectfully submits that the Court should postpone any consideration of the Fee Examiner Motion until the Court and all parties in interest have had an opportunity to review and consider the pending Interim Fee Applications at the hearing currently scheduled for May 13, 2020.  If, after such hearing, the Court believes appointment of a fee examiner or fee is necessary, the Diocese respectfully requests that the identification of the individual to serve as a fee examiner, or the composition of any review committee, be accomplished either by the mutual consent of the Diocese, the Committee and the UST, or if the parties cannot agree, by appointment of the Court.

3522814.3

**I.   Appointment of an independent fee examiner is not
required or even expressly contemplated by the Bankruptcy
Code and is therefore completely within the Court's discretion**

13.   As a preliminary matter, the Diocese observes that the Bankruptcy Code specifically contemplates the appointment of an examiner under certain circumstances.   Specifically, section 1104(c) provides:

> If the court does not order the appointment of a trustee under this section, . . . on request of a party in interest or the United States trustee, and after  notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –
>
>   (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
>   (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

14.   The language of section 1104(c) suggests that appointment of an examiner is mandatory when the statutory conditions are satisfied.   *In re Collins & Aikman Corp.*, 368 B.R. 623, 626 (Bankr. E.D. Mich. 2007).   However, bankruptcy courts that have been confronted with requests to appoint fee examiners have held that section 1104(c) is limited to investigations *of the debtor itself* and does not contemplate the appointment of an examiner to review professional compensation requested pursuant to section 330 of the Bankruptcy Code.   *Id.* at 627 ("The Court concludes that § 1104 does not encompass the examination of professional fees.   Whether professional fees are reasonable and necessary to the estate is simply not attributable to conduct of the debtor."); *In re Continental Airlines, Inc.*, 138 B.R. 439, 440 (Bankr. D. Del. 1992) ("[T]he functions of the fee examiner are dissimilar to those of an examiner appointed pursuant to section 1104."); *In re CCT*

5

3522814.3

*Comm's., Inc.* 2011 Bankr. LEXIS 256 ("'fee examiners' are not even provided for by the Bankruptcy Code and there is no rule or standard mandating their appointment.").

15.     In cases where independent fee examiners have been appointed, courts have done so by exercising their discretionary authority pursuant to section 105 of the Bankruptcy Code and/or Rule 706 of the Federal Rules of Evidence.  *See Collins & Aikman Corp.*, 368 B.R. at 627; *Continental Airlines, Inc.*, 138 B.R. at 440; *In re Maruko, Inc.*, 160 B.R. 633, 637 (Bankr. S.D. Cal. 1993).  Accordingly, there is no requirement that a fee examiner be appointed in this Chapter 11 Case and the determination of whether or not to appoint one is entirely within the Court's discretion.

**II.     The United States Trustee's "large case" guidelines
should not apply to this Chapter 11 Case and do not
<u>mandate the appointment of a fee examiner in any event</u>**

16.     Section 586(a)(3)(A) of the federal judicial code charges the UST with a duty to "supervise the administration of cases and trustees in cases under chapter 7, 11, 12, 13 or 15 of title 11" by, among other things:

> (i) *reviewing*, in accordance with *procedural guidelines* adopted by the Executive Office of the United States Trustee, (which guidelines shall be applied uniformly by the United States trustee *except when circumstances warrant different treatment*), applications filed for compensation and reimbursement under section 330 of title 11;

28 U.S.C. § 586(a)(3)(A)(i) (emphasis added).

17.     The United States Department of Justice, through the Executive Office of the United States Trustee, has promulgated two sets of regulatory "guidelines" for the purpose of ensuring that the task of reviewing fee applications is uniformly carried out in each of the 21 regions served by the United States Trustee Program.  Those guidelines have been incorporated into the Federal Register as 28 C.F.R. Part 58 Appendices A and B (collectively, the "<u>UST Guidelines</u>").   Appendix B, originally promulgated in 2013 (the "<u>Large Case Guidelines</u>") is meant to apply to applications for

6

3522814.3

compensation and reimbursement of expenses filed by attorneys in larger chapter 11 cases with $50 million or more in assets and $50 million or more in liabilities, however single asset real estate cases are excluded from the Large Case Guidelines.   Appendix A, originally promulgated in 1996 (the "1996 Guidelines") applies to all chapter 11 cases which do not meet the thresholds for the Large Case Guidelines, and to requests for compensation and reimbursement filed by professionals other than attorneys, even in larger cases.

18.     Both sets of UST Guidelines go beyond the statutory charge of establishing a *procedure* by which the UST will *review* fee applications by suggesting certain substantive requirements that bankruptcy professionals should adhere to in connection with the preparation of their professional fee applications.  The UST Guidelines suggest certain timekeeping and reporting practices that are significantly more onerous and time consuming than what is required by Bankruptcy Rule 2016 and Local Rule 2016-1.  The UST Guidelines also advocate for the imposition of limits on compensation for certain types of services that the UST considers to be non-compensable (such as those which are more administrative in nature) as opposed to the application of the general reasonableness standard provided for in section 330 of the Bankruptcy Code.  The Large Case Guidelines differ from the 1996 Guidelines in that they require even more detail and attempt to dictate the form of a professional's fee application.   They also contemplate, in larger cases "where a *significant number of professionals* will be retained and the normal fee application and review process would be *especially burdensome*", that the UST will seek the appointment of a "special review entity" such as a fee review committee or an independent fee examiner.

19.     The Diocese notes that although the UST Guidelines provide useful guidance to professionals in how to prepare their applications for compensation and reimbursement in order to best facilitate an efficient review by the Court and other parties in interest, and while the Diocese

7

3522814.3

expects that each of the Professionals retained in this Chapter 11 Case will do their best to comply with the applicable UST Guidelines, strict adherence to the UST Guidelines is not a legal prerequisite to the Court's award of compensation and reimbursement of expenses, and the Court may award compensation and reimbursement to the extent that the Court deems a request to fall within the reasonableness standard of section 330 of the Bankruptcy Code. Indeed, by their terms the UST Guidelines apply to the *UST's review* of professional fee applications and set forth the UST's *policy position* as to what information *should* be included in fee applications, without expressly supplanting or expanding upon the actual substantive requirements for fee approval set forth in Bankruptcy Code section 330 and Bankruptcy Rule 2016:

> The Guidelines express the USTP's *policy positions*, and *the USTP will use these Guidelines* in the absence of controlling law or rules in the jurisdiction. Thus, the Guidelines do not supersede local rules, court orders, or *other controlling authority*.

Appendix B, A.4, Fed. Reg. 36249 (June 17, 2013) (emphasis added).[2]

20.     The Diocese respectfully submits that the Court is fully capable of independently determining whether the information provided in fee applications filed by Professionals in this Chapter 11 Case is adequate to support a determination as to whether the requested compensation and expense reimbursement is reasonable under section 330 of the Bankruptcy Code and that the

---

[2] Moreover, Courts that have considered the issue have determined that the statutory charge to the UST to supervise the administration of bankruptcy cases vests the UST with limited, if any, authority to impose substantive rules or administrative requirements. *See In re Johnson*, 106 B.R. 623, 624 (Bankr. D. Neb. 1989) ("Although [28 U.S.C.] § 586(a) sets forth duties of the U.S.T., and grants the U.S.T. certain powers, none of the sections of § 586 authorize the U.S.T. to promulgate rules or impose substantive or administrative requirements on bankruptcy debtors."); *In re Gold Standard Baking*, 179 B.R. 98, 102, 104-106 (Bankr. N.D. Ill. 1995) (noting limited statutory authority under 28 U.S.C. § 586 and finding that guidelines or requirements not promulgated pursuant to a statutory grant of rule-making authority and in accordance with the Administrative Procedures Act do not have the force of law and are not binding); *In re Crosby*, 98 B.R. 798, 802, 804 (Bankr. S.D. Ga. 1988) (noting that "[t]he United States Trustee is an independent agency and comes to court with no special status or presumption that the judiciary views its recommendations or positions with any greater authority or weight than any other litigant" and that any "requirements" established by the UST are subject to the bankruptcy court's judicial oversight); *see also* https://www.justice.gov/ust/fee-guidelines (last accessed April 9, 2020) ("Because the Appendix B Guidelines constitute *procedural guidelines*, they were not subject to the formal notice and comment provisions of the Administrative Procedure Act.") (emphasis added).

8

3522814.3

Court does not need an independent fee examiner to opine on whether or not any particular application deviates from the UST Guidelines. However, to the extent the UST's Fee Examiner Motion requests that an examiner be appointed to review applications for compliance with both the Large Case Guidelines and the 1996 Guidelines (*see* Fee Examiner Motion at p. 7), the Diocese respectfully submits that the Large Case Guidelines should not be applicable to this Chapter 11 Case.

21.     First, it is not clear that this Chapter 11 Case meets the asset and liability thresholds for the Large Case Guidelines. Although the Diocese's schedules of assets and liabilities identify approximately $67 million of assets, well over $30 million of that is comprised of donor restricted funds which, pursuant to applicable New York law, are not available to satisfy creditor claims, and therefore are not property of the Diocese's bankruptcy estate. Similarly, of the approximately $113.1 million of liabilities listed on the Diocese's schedules, only approximately $1 million represents non-contingent, liquidated and undisputed debts owing by the Diocese, with over $112 million being estimated liabilities for abuse claims, all of which are contingent, unliquidated and disputed.

22.     Second, in connection with addressing the UST's objection to the Interim Compensation Motion, counsel for the Diocese engaged in discussions with the UST regarding the applicability of the Large Case Guidelines to this Chapter 11 Case. As part of those discussions, the UST communicated to counsel for the Diocese that there was no intent for the Large Case Guidelines to apply to this Chapter 11 Case. In fact, the agreed Interim Compensation Order specifically provides that applications for compensation in this Chapter 11 Case will be made pursuant to section 331 of the Bankruptcy Code and the 1996 Guidelines (as opposed to the Large Case Guidelines). Interim Compensation Order at ¶ 3(j).

23.     Third, as noted above, the Large Case Guidelines purport to require significant additional detail and reporting requirements above and beyond that sought by the 1996 Guidelines.

9

3522814.3

The Diocese is concerned that modifying the Interim Compensation Order to require compliance with the Large Case Guidelines as requested in the Fee Examiner Motion will result in unnecessary additional professional fees for the preparation of this additional data. This is especially true with respect to requests for fees and expenses that have already been billed during the pendency of this Chapter 11 Case in reliance on the Interim Compensation Order's directive that applications should comply with the less restrictive 1996 Guidelines. Requiring Professionals to revisit their time already billed in accordance with the 1996 Guidelines in order to ensure compliance with the Large Case Guidelines will result in duplicative work for which the Diocese's estate must bear the expense.

24. Fourth, as set forth in more detail below, even if the Large Fee Guidelines were applied, the number of Professionals currently involved in this Chapter 11 Case is not so significant as to make the normal fee application and review process especially burdensome. Under those circumstances, even the Large Fee Guidelines contemplate that a fee examiner or other special fee review entity would be unnecessary. *See* Appendix B, G.1, Fed. Reg. 36256 (June 17, 2013).

### III. Appointing a fee examiner is an unusual and extraordinary measure for a case of this size

25. Putting aside the question of whether the Diocese has sufficient assets and liabilities to meet the thresholds for the Large Fee Guidelines, to the extent the Large Fee Guidelines might apply, this Chapter 11 Case is still not the type of case that merits the appointment of a fee examiner.

26. First, the UST promulgated the Large Fee Guidelines in order to address certain additional complexities that have become increasingly common in larger cases as "new financial practices and financial instruments entered the marketplace" which have "impact[ed] the administration of a bankruptcy estate, as well as the legal and other professional work required to

bring a case to a successful conclusion."[3]  While the amount of assets and liabilities at stake in a given case may be a useful proxy for estimating the complexity of a given case, there is not always a direct correlation and some cases may, despite having large dollars at stake, present relatively straightforward issues.[4]

27.     Although this Chapter 11 Case is certainly more complex than many business reorganization cases, the Diocese respectfully submits that it is not nearly as complex as most cases involving debtors having in excess of $50 million in assets and liabilities.  For example, in many if not most so-called "mega" cases, a debtor will have tens if not hundreds of thousands of creditors, and a capital structure that includes many levels of lenders and other security holders having various priorities and competing interests.  Many of those cases also involve literally dozens of estate-retained professionals and billions of dollars of assets and liabilities.  A review of the assets, liabilities, and number of creditors and professionals involved in the cases cited by the UST in support of its Fee Examiner Motion is helpful to illustrate the orders of magnitude that distinguish those cases from this one:

| CASE | ASSETS | LIABILITIES | ESTIMATED CREDITORS | PROFESSIONALS |
|------|--------|-------------|---------------------|---------------|
| Energy Future Holdings, Case No. 14-10979-CSS (Bankr. Del.) | $36.4 billion | $49.7 billion | Over 100,000 | 24 |

---

[3] Transcript of Public Meeting on the United States Trustee Program's Proposed Guidelines for Attorney Compensation in Larger Chapter 11 Bankruptcy Cases, June 4, 2012, Remarks by Clifford J. White, III, Director, Executive Office for United States Trustees at p. 5, available at
https://www.justice.gov/sites/default/files/ust/legacy/2012/06/26/Transcript_June4_Public_Meeting.pdf (last accessed April 9, 2020).

[4] The UST implicitly recognized this when it exempted single asset real estate cases from the ambit of the Large Case Guidelines as those cases typically involve fewer parties and are less complex, notwithstanding the fact that there may be large assets and liabilities involved.

3522814.3

| CASE | ASSETS | LIABILITIES | ESTIMATED CREDITORS | PROFESSIONALS |
|---|---|---|---|---|
| Budd Company, Case No. 14-11873-JBS (Bankr. N.D.IL.) | $387.5 million | $1.1 billion | 5,001-10,000 | 13 |
| Lehman Brothers Holdings, Case No. 08-13555-scc (Bankr. S.D.N.Y.) | $639 billion | $613 billion | Over 100,000 | 46 |
| Motors Liquidation (f/k/a General Motors), Case No. 09-50026-reg (Bankr. S.D.N.Y.) | $82.3 billion | $172.8 billion | Over 100,000 | 25 |
| AMR Corp., Case No. 11-15463-shl (Bankr. S.D.N.Y.) | $24.7 billion | $29.5 billion | Over 100,000 | 31 |
| Exide Technologies, Case No. 13-11482-KJC (Bankr. Del.) | $1.9 billion | $1.1 billion | 25,001-50,000 | 29 |
| Mineral Park, Case No. 14-11996-KJC (Bankr. Del.) | $286.3 million | $266 million | 1,000-5,000 | 8 |

28.    Here the Diocese has, at most, approximately $67 million in assets, including over $30 million of restricted assets that are not property of its bankruptcy estate.  The Diocese has less than one thousand creditors who are owed an estimated $113 million.  Moreover, virtually all of the Diocese's liabilities are contingent, unliquidated and disputed, and relate to a single constituency of creditors (abuse claimants) whose interests are, for the most part, aligned.  The Diocese has retained four law firms (one of whom has had limited involvement) one accounting firm, and one

12

3522814.3

administrative advisor to assist with this Chapter 11 Case, and the Committee has retained one law firm. Accordingly, the Diocese respectfully submits that this is not the extraordinarily complex "mega" case the Large Case Guidelines contemplated in recommending the appointment of a fee examiner. In fact, as recently as a few months ago, the UST argued that this case was not sufficiently extraordinary to justify departing from the generally applicable fee application and approval process when it objected to the Diocese's motion to approve interim compensation procedures similar to those routinely approved in large and even mid-sized chapter 11 cases. *See* Docket No. 268.

## IV. There is no need for a fee examiner at this time

29.     The Diocese anticipates that review of the recently-filed Interim Fee Applications, while potentially voluminous, will be straightforward, and submits that any determination on whether a fee examiner is necessary should be postponed until after the Court, the Diocese, and other parties in interest have had an opportunity to review and evaluate the initial batch of Interim Fee Applications.

30.      The Diocese is confident that the Court, having presided over this Chapter 11 Case for over seven months and become familiar with the parties, their counsel, and the efforts of the same, will be able to adequately assess the merits of each of the Interim Fee Applications. The Court has observed who was present during hearings, has heard counsel's arguments, has read the pleadings and documents filed in this Chapter 11 Case, and knows first-hand the results achieved to date. Any analysis performed by an independent fee examiner would not have the benefit of this context and the Diocese submits, would be of little assistance. *See*, *e.g.*, *In re Refco, Inc.*, 05-60006-RDD (Bankr. S.D.N.Y. March 30, 2006), Hearing Transcript at p. 38 (attached as **Exhibit A** hereto) (remarks by the Hon. Judge Drain noting that fee examiners do not add much in the way of value because "they

13

3522814.3

basically rely on mechanical programs for dealing with bills and charge more often than what's necessary for that type of work.")[5]

31.     The Diocese has reviewed the dockets of twenty-one previously filed diocesan or religious chapter 11 cases and notes that a fee examiner was appointed in only one of those cases.  In that case, *In re Catholic Diocese of Wilmington, Inc.* [Case No. 09-13560] (Bankr. D. Del.), the fee examiner billed the debtor just under $400,000.   Given that each of the other twenty cases involved issues similar to those that will need to be addressed in this Chapter 11 Case and did not require a fee examiner, the Diocese respectfully submits that, at least at this juncture, there is similarly no need to appoint a fee examiner in this case.

32.     The Diocese is acutely aware of the costs of administration being charged to its estate.  Diocesan management has scrutinized the Monthly Fee Statements filed by Professionals on an ongoing basis and anticipates doing the same with respect to each of the Interim Fee Applications.  Adding an additional estate fiduciary, complete with its own separate counsel, would impose an additional financial burden on the Diocese's bankruptcy estate that is simply not warranted nor necessary at this time.   The Diocese submits that fact alone justifies postponing any action on the UST's Fee Examiner Motion.  *See In re Pearlman*, 2014 Bankr. LEXIS 1084, n. 22 (declining request to appoint fee examiner upon "determining that appointment of a fee examiner would place too much of a burden on the estate's scarce financial resources").

33.     Furthermore, the UST has not articulated why the appointment of an independent fee examiner is necessary or desirable in this Chapter 11 Case.   Other than making assertions as to the size and complexity of this proceeding (which, as set forth above, pales in comparison to the "mega"

---

[5] The UST also has billing analysis software and has requested that Professionals in this Chapter 11 Case submit their bills in electronic format for the UST's review.  Upon information and belief, all Professionals have complied with these requests.

14

3522814.3

cases the UST cites as examples of cases where fee examiners have been appointed), the UST cites to non-precedential language from a self-serving amicus brief filed by a group of fee examiners as to the potential benefits of their services, and analogizes to *In re Ionosphere Clubs, Inc.* for the proposition that "given the sensitive nature and public interest of the case, the appointment of a fee examiner will help ensure public confidence in the bankruptcy system." *See* Fee Examiner Motion at p. 6 citing *In re Ionosphere Clubs, Inc.* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). *Ionosphere* involved the bankruptcy court's consideration as to whether it should appoint a chapter 11 trustee under section 1104 to oversee a debtor's airline business in response to concerns about ongoing mismanagement. *Id.* In making its determination to appoint a trustee, the *Ionosphere* court made clear that it was considering the interest of the flying public in maintaining the continued flight operations of the debtor airline, which was uncertain if existing management were left in charge. *Id.* at 168-69. Putting aside that the *Ionosphere* court was considering a different remedy under a different statutory standard, it is also clear that the "public interest" being considered was not an amorphous concept of "public confidence in the bankruptcy system" as the UST suggests in its Fee Examiner Motion, but an interest in the continued survival of the Debtor's business so it could continue to provide an essential service to the public. The Diocese submits that there is no similar compelling "public interest" in policing the fees charged by professionals in this Chapter 11 Case, at least not above and beyond the public interest that Congress has already addressed when it created the United States Trustee Program and charged the UST with reviewing fee applications pursuant to 28 U.S.C. § 586(a)(3)(A).

34. Accordingly, the Diocese believes there is no need for a fee examiner to be appointed at this time, nor any benefit gained in doing so, and respectfully requests that the Court postpone any

3522814.3

decision on the Fee Examiner Motion at least until it has had an opportunity to review the initial group of Interim Fee Applications which have been just recently filed.

## V. <u>Appointment of a fee examiner and consideration of alternatives</u>

35. Finally, the UST in the Fee Examiner Motion proposes certain duties and terms of retention for a fee examiner and suggests that "[t]he United States Trustee will identify a candidate to serve as an Independent Fee Examiner and present such candidate to the Court on notice to all interested parties." Fee Examiner Motion at pp. 6-8. Should the Court determine, either at the upcoming hearing on the Fee Examiner Motion or at any time hereafter, that additional assistance in reviewing fee applications is in the best interests of the Diocese's estate and will assist in promoting the efficient administration of this Chapter 11 Case, the Diocese respectfully requests that the Court consider alternatives other than a fee examiner, such as a fee review committee, and requests that the Diocese, the Committee, and the UST be given an opportunity to confer and attempt to agree upon a mutually-agreeable solution. In the absence of agreement between all parties as to the appropriate approach, the Diocese respectfully submits that the ultimate selection and appointment of a fee examiner or review committee should be made by the Court rather than by the UST.

WHEREFORE, the Diocese respectfully requests that the Court postpone any consideration of the relief requested in the Fee Examiner Motion until a date after which the Court has had sufficient time to review the Initial Interim Fee Applications and a hearing on the Initial Interim Fee Applications has been held.

16

3522814.3

Dated: April 10, 2020                    BOND, SCHOENECK & KING, PLLC

By: _/s  Stephen A. Donato_____
    Stephen A. Donato
    Charles J. Sullivan
    Grayson T. Walter
    One Lincoln Center
    Syracuse, NY 13202-1355
    Telephone: (315) 218-8000
    Emails:        sdonato@bsk.com
                   csullivan@bsk.com
                   gwalter@bsk.com

    *Attorneys for The Diocese of Rochester*

3522814.3