UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                              :

In re                                         :                    Chapter 11
                                              :

The Diocese of Rochester,             :                    Case No. 19-20905-PRW
                                              :

                             Debtor.     :
                                              :

-------------------------------------------------------- x

## OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE REGARDING FEE APPLICATIONS FOR FIRST INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

**TO:    THE HONORABLE JUDGE WARREN,
         UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), respectfully submits this omnibus objection (the "**Objection**") to the first interim fee applications (the "**Applications**") of the retained professionals (the "**Retained Professionals**") of the Diocese of Rochester (the "**Debtor**") seeking awards of interim compensation and reimbursement of out-of-pocket expenses for the periods set forth below (the "**Fee Period**"):[1]

| Name | Retained As | Period | Fees | Expenses |
|---|---|---|---|---|
| Bond, Schoeneck & King, PLLC ("**BSK**"), ECF Doc. No. 495. | Debtor's Counsel | 9/12/19 to 1/31/20 | $726,230.60 | $14,044.79 |
| Pachulski Stang Ziehl & Jones LLP ("**PSZJ**"), ECF Doc. No. 489. | Creditor's Committee Counsel | 9/24/19 to 2/29/20 | $380,165.00 | $9,756.19 |
| Blank Rome, LLP, Special Counsel ("**Blank Rome**"), ECF Doc. No. 496. | Debtor's Special Counsel | 9/12/19 to 1/31/20 | $155,934.61 | $5,475.75 |
| Nixon Peabody ("**Nixon Peabody**"), ECF Doc. No. 497. | Debtors' Special Counsel | 9/12/19 to 1/31/20 | $12,040.00 | $0 |
| Total | | | $1,274,370.21 | $29,276.73 |

---

[1] The United States Trustee has come to a compromise with Harris Beach, PLLC ("Harris Beach") [ECF Doc. No. 499] for a reduction of Harris Beach's requested fees for the Fee Period of $7,622.00. The United States Trustee reserves the right to raise issues at the hearing on the final fee applications.

The United States Trustee submits this Objection to the Applications in the amounts sought for the reasons set forth below.

## I.     PRELIMINARY STATEMENT

Prior to the filing of the first interim applications, the United States Trustee provided each Retained Professional with extensive, specific comments to their time entries based upon the review of previously filed monthly fee statements. This included lengthy phone calls, emails that contained computer print outs and line by line notations. Despite the level of experience of each of the Retained Professionals and their presumed familiarity with the Bankruptcy Code and the United States Trustee's fee guidelines, there were numerous time entries that failed to meet the standards of the Bankruptcy Code and this Court. As discussed below and in detail on the attached exhibits, the entries include, inter alia, innumerable vague time entries, unacceptable block billings, miscounted hours, conference time discrepancies, hearing time discrepancies, non-compensable retention/compensation tasks, discrete tasks listed under/ different categories and/or the use of such vague titles (e.g., using the words "first day motion" for multiple motions), thereby making it impossible to determine how much time was spent on a particular motion, unnecessary or excessive inter law firm conferences, and excessive hearing and meeting attendances by multiple attorneys from the same firm.

Significantly, the United States Trustee's attempt to resolve these issues on a consensual basis was in essence rejected by the Retained Professionals by their failure to adequately respond to the United States Trustee's informal comments. Rather than calling, responding to one of the many e-mails of the United States Trustee, or adjusting its billing practices in subsequent fee applications, BSK, for example, attached to its application for fees the United States Trustee's computer generated notes concerning specific time entries, in what it says was an attempt to

2

"clarify and/or disaggregate the time entries." (BSK does not respond at all to the non-computer-generated line by line review of its first monthly fee application provided to them by the undersigned.) Thus, BSK rejected the United States Trustee's concerns.

For the reasons set forth in detail below, the United States Trustee respectfully asks this Court to sustain the United States Trustee's objections and to reduce the respective professional's requests for reimbursement of fees and expenses.

## II.    JURISDICTION, VENUE, AND STATUTORY PREDICATE

1.      The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. § 1408.

2.      The statutory predicates are Sections 330 and 331 of title 11, of the United States Code (the "**Bankruptcy Code**").  These matters were initiated pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "**Guidelines**"). 28 C.F.R. Part 58, Appendix A.

## III.    FACTUAL BACKGROUND

### A.    The Bankruptcy Filing

3.      On September 12, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Western District of New York (the "**Court**"). ECF Doc. No. 1.

4.      On September 26, 2019, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Creditors' Committee**") in this case.  ECF Doc. No. 68.

3

5.     The Debtor currently is operating its business and managing its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.     By Order entered December 5, 2019, the Court approved procedures for monthly compensation and reimbursement of out-of-pocket expenses (the "**Monthly Compensation Order**").  ECF Doc. No. 318.  Under the Monthly Compensation Order, the Retained Professionals may be paid 80% of fees incurred and 100% of expenses on a monthly basis.  Id.

**B.     The Retained Professionals, The United States Trustee's Assertion of Objectionable Entries and the First Interim Applications**

*BSK*

7.     After doing a line by line review of the Professionals Applications filed in 2019, an employee of the Rochester United States Trustee's office called each firm, and explained the multiple concerns the United States Trustee had with regard to the billing, including in depth discussions of specific line items.   She later shared the line by line reviews with BSK and others.

8.     One month later,  in an effort to negotiate a compromise with BSK, on January 21, 2020 and February 26, 2020 the United States Trustee sent emails to BSK (the "**BSK Emails**") which identified the United States Trustee's concerns for BSK's failure to observe the Guidelines for the first through third monthly fee statements for September 12, 2019 through October 31, 2029, November 1, 2019 through November 30, 2019, and December 1, 2019 through December 31, 2019, respectively.[2]  See ECF Doc. Nos. 322, 373 and 409.

9.     The United States Trustee provided an excel spreadsheet detailing the objectionable entries which were attached to the BSK Emails and proposed reductions, which

---

[2] The BSK Emails were in the context of Rule 408 of the Federal Rules of Evidence ("FRE").

included, <u>inter alia</u>, a 20% reduction for block billing and a 50% reduction for vague entries as well as the line by line review.

10. No compromise or settlement discussions resulted from the informal objections raised by the United States Trustee to BSK's monthly fee applications. Moreover, it did not appear that any material change to their billing practice resulted as a result of the conversations.

11. On March 8, 2020, BSK filed its First Application for Compensation for the period September 12, 2019 to January 31, 2020 ("**BSK's Fee Application**"). ECF Doc. No. 495.

12. BSK's Fee Application provides as follows:

> .. . Following the provision of the electronic billing data, and in response to Bond's first three Monthly Fee Statements, the Office of the United States Trustee provided Bond with a summary of informal objections to certain time entries on the basis that such entries were asserted to be "vague," that they contained "block billing" by combining two or more related activities into one billing entry, or that they were non-compensable for some other reason.

BSK's Fee Application, ¶ 56.

13. BSK's Fee Application provides as follows:

> ***Bond believes that each of the time descriptions identified by the United States Trustee are either (i) able to be clarified and/or disaggregated in order to eliminate any asserted vagueness or block billing***, (ii) were in the first instance sufficiently detailed and/or related to a discreet task or project, or (iii) are otherwise compensable under the reasonableness standard set forth in section 330 of the Bankruptcy Code . . .

<u>Id</u>. at ¶ 57 (emphasis added).

14. Attached to BSK's Fee Application are the excel spreadsheets previously sent by the United States Trustee which BSK "edits" in an attempt to "clarify and/or disaggregate the time entries."

5

15.     These "edits" or "clarifications" were never brought to the attention of the United States Trustee prior to the filing of BSK's Fee Application.

***PSZJ***

16.     Upon the United States Trustee's review of the PSZK's First Monthly Fee Statement ("**PSZK's First Monthly Fee Statement**") for September 24, 2019 through November 30, 2019 and in an effort to negotiate a compromise, on January 23, 2020, the United States Trustee sent an email to PSZK which identified the United States Trustee's concerns for PSZK's failure to observe the Guidelines for the PSZK's First Monthly Fee Statement. See ECF Doc. No. 332.[3]

17.     No compromise or settlement discussions resulted from the informal objections raised by the United States Trustee to PSZK's First Monthly Fee Statement.

***Blank Rome***

18.     Upon the United States Trustee's review of the Blank Rome's First Monthly Fee Statement ("**Blank Rome's First Monthly Fee Statement**") for September 12, 2019 through November 30, 2019 and in an effort to negotiate a compromise, on January 21, 2020, the United States Trustee sent an email to Blank Rome which identified the United States Trustee's concerns for Blank Rome's failure to observe the Guidelines for Blank Rome's First Monthly Fee Statement. See ECF Doc. No. 329.

19.     No compromise or settlement discussions resulted from the informal objections raised by the United States Trustee to Blank Rome's First Monthly Fee Statement.

---

[3] PSZK filed its Second, Third and Fourth Monthly Fee Statements on March 30, 2020 for the periods December 1, 2019 through December 31, 2019, January 1, 2020 through January 31, 2020 and February 1, 2020 through February 29, 2020, respectively. ECF Doc. Nos. 480, 481 and 482. These monthly fee statements of PSZK were filed three (3) days prior to the filing of PSZK's first interim fee application.

6

## IV.   LEGAL STANDARDS

### A.   **Reasonableness**

20.   Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

(A)   reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)   reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

21.   To determine reasonableness, Section 330(a)(3) instructs that:

the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

a.   the time spent on such services;

b.   the rates charged for such services;

c.   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

d.   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

e.   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

f.   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).[4]  To determine "reasonable compensation," bankruptcy courts in this

district are guided by, among other things, the Guidelines.  See In re Value City Holdings, Inc.,

436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) ("In addition to conforming to the requirements of

the Bankruptcy Code, requests for professional compensation must also conform with the

Bankruptcy Rules, UST Fee Guidelines and the SDNY Guidelines.") (footnotes omitted); Brous,

370 B.R. at 569, n.8. (adopting the Guidelines).

     22.     Section 330 requires the applicant to establish both reasonableness and benefit to

the estate from the professional's services.  In re Lederman Enter., Inc., 997 F.2d 1321, 1323

(10th Cir. 1993).  To be compensable, the professional's services must have been necessary and

beneficial to the estate or its creditors.  In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

     23.     Each applicant bears the burden of proving the reasonableness of its fees and

expenses sought.  Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24

(2d Cir. B.A.P. 1997); Value City, 436 B.R. at 305; In re CCT Commc'ns, Inc., No. 07–10210

(SMB), 2010 WL 3386947, *4 (Bankr. S.D.N.Y. Aug. 24, 2010); In re Northwest Airlines Corp.,

382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690,

695 (Bankr. S.D.N.Y. 1997).  To satisfy its burden, an applicant must justify its charges with

detailed, specific, itemized documentation.  In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y.

2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

---

[4] Bankruptcy Rule 2016 implements the standards set forth in Section 330 of the Bankruptcy Code:

> An entity seeking interim or final compensation for services, or reimbursement of necessary
> expenses, from the estate shall file with the court an application setting forth a detailed statement of
> (1) the services rendered, the time expended and expenses incurred and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a).

24.     If an applicant fails to sustain its burden on reasonableness, a court may properly deny the application for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir. 1988).  Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate, even if it already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code.  In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses).

25.     The Court has an independent burden to review fee applications "lest overreaching . . . professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors."  Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)); CCT, 2010 WL 3386947, at *4; Value City, 436 B.R. at 305.  Accordingly, courts serve a vitally important gate-keeping role in enforcing the Code's requirements that only reasonable fees be approved and paid as well as maintaining public confidence in the bankruptcy system itself.  In re Temple Retirement Community, Inc., 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989).  "[T]he judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system."  In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).

**B.     Vague Time Entries**

26.     In addition, time entries may not be vague.  The Retained Professionals have the burden of proving the reasonableness of their fee requests; accordingly, they must provide specific and detailed time records.  To that end, the Guidelines require:

> . . . Time entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and the nature of the communication.  Time

9

entries for court hearings and conferences should identify the subject of the hearing or conference.

<u>See</u> Guidelines, (b)(4)(v).

27.    In order to enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific and the records must clearly identify each discrete task billed.  <u>Baker</u>, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); <u>see also</u> <u>Bennett Funding</u>, 213 B.R. at 244 ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services.").  Such vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible." <u>In re</u> <u>Hudson</u>, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).

28.    Instead of embarking in a treasure hunt to determine what services were performed on a specific date, the time entries submitted should allow the Court and a reviewer to determine "the legal issues involved, the difficulties of the issues, and the resolution or results obtained." <u>Id</u>.  References to telephone calls that do not make clear who the call was with or the subject matter discussed, preparation of memoranda of law that do not indicate the legal issues involved, email communications without a description of the substance of the communications and the recipients of such communications, and the review of documents without providing a description of the document reviewed are all examples of vague time entries that make a fair evaluation of the work done and its reasonableness impossible.  <u>See</u> <u>id</u>.; <u>CCT</u>, 2010 WL 3386947, *7 (disallowing time entries referring to telephone calls and emails without identifying the subject matter of the call or email, referring to preparation of draft letters without identifying

10

the subject matter, and referring to vague description such as "work on fee application" or "attention to Vlahos's request"); In re Fibermark, Inc., 349 B.R. 385, 396–97 (Bankr. D. Vt. 2006); In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009) ("Entries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed.").

## C.    Overhead and Other Administrative Activities

29.    When determining whether requested fees are reasonable, courts consider, among other things, the professional's expertise or skills.  See, e.g., Fibermark, 349 B.R. at 396–97 ("The Court specifically considers where the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate.  Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task.").

30.    Accordingly, many courts have taken the position that tasks that are clerical in nature and that are appropriate for office staff, which is considered part of a professional's overhead, may not be billed to the estate.  Id. (concluding that non-compensable administrative activities include tasks such as "mailing or delivering papers; photocopying; word processing, including but not limited to creating templates, adding pages to various stipulations, formatting, creating spreadsheets, scanning and saving files into the firm's computer system, creating and revising charts, inserting case numbers into orders and printing documents; organizing files; maintaining an internal calendar; checking for docket updates; updating a master service list; creating, organizing, and indexing binders; pulling precedent pleadings requested by an attorney; and making travel arrangements"); see also In re Tan, Lie Hung & Mountain States Investments,

LLC, 413 B.R. 851, 862 (Bankr. D. Or. 2009) (holding that reductions were warranted in compensation sought by Chapter 11 trustee's attorneys based upon their improper billing, at paralegal rates, for clerical tasks such as compiling and processing data for the electronic filing of various motions and other documents); Hudson, 364 B.R. at 881 (holding that photocopying, organizing documents, and assembling exhibits constituted clerical tasks included in the firm's overhead); In re Dimas, LLC, 357 B.R. 563, 577 (Bankr. N.D. Cal. 2006) (disallowing services performed by professionals which were clerical in nature, such as indexing, organizing and copying documents, conducting PACER searches to locate an order or other pleading, uploading pleadings to CM-ECF, and filing pleadings); In re Market Resources Dev., 320 B.R. 841, 846 (Bankr. E.D. Va. 2004) (concluding that tasks such as sending documents, delivering documents, printing, and copying were non-compensable overhead); In re Joseph Charles & Associates, Inc., 295 B.R. 399, 401 (Bankr. S.D. Fla. 2003) (holding that a paraprofessional's serving and filing of an objection fell within the purview of clerical duties which were non-compensable); In re Castorena, 270 B.R. 504, 516 (Bankr. D. Idaho 2001) ("Lawyers, or paralegals for that matter, may not charge professional rates for clerical functions").

31.     Word processing is also "a clerical service regardless of who performs it." Bennett Funding, 213 B.R. at 428; The Guidelines, 4(b)(5)(vii).  As an overhead expense, word processing cannot be billed to the client.   Moreover, time spent by a firm's library staff is considered overhead.  See In re Almacs, Inc., 178 B.R. 598, 606 (Bankr. D. R.I. 1995) (noting that debtor's counsel use of librarian was "overhead" and was not properly charged to the estate); In re First Software Corp., 79 B.R. 108, 123 (Bankr. D. Mass. 1987) (disallowing part of the compensation for research performed by a librarian).  A court should therefore deny fees associated with clerical tasks.

**D.**     **Preparation of Fee Applications**

32.     While the United States Trustee acknowledges the allowance of a reasonable amount of time for fee application preparation under the Bankruptcy Code, the fees related to such task should be limited to the preparation of the actual fee application, and should not encompass the review and correction of bills and response to parties in interest to inquiries or objections raised with respect to the fee applications. Said differently, the Bankruptcy Code does not give professionals carte blanche to charge debtors' estates for unreasonable fees to prepare fee applications. As a court in In re Computer Learning Centers, Inc., held:

> [T]his does not mean that every aspect of preparing a fee application is compensable. In re CF & I Fabricators of Utah, Inc., 131 B.R. 474, 483–88 (Bankr. D. Utah 1991) carefully reviews the billing process and analyzes each aspect for purposes of compensation under 11 U.S.C. §330. It holds that those portions of the billing process common to billing both bankruptcy clients and non-bankruptcy clients are not compensable under §330 because they are part of the professional's overhead. They are not separately charged to non-bankruptcy clients and no additional effort is required to complete them for a bankruptcy client. For example, maintaining time records does not require additional effort. Lawyers and accountants maintain the same time records in a non-bankruptcy matter as in bankruptcy matters. Nor do lawyers or accountants charge for preparing their bills. Bills must be prepared in non-bankruptcy matters as well as bankruptcy matters. There may be some additional effort in putting the time records into the format required by the court. For example, the court requires time records to be maintained chronologically by task. While this may sometimes differ from the format of a non-bankruptcy bill, the additional effort is not generally significant if the records are initially properly set-up. Time records are almost universally maintained on computers with software that shows multiple formats, one of which will usually satisfy the bankruptcy requirements. "A computer billing package used by a professional that does not retrieve information in a format compatible with bankruptcy requirements and requires revisions to rectify the inadequacies, is not a deficiency the estate should pay for. This is especially true for professionals who regularly practice in this court and regularly prepare fee applications. Only those aspects of preparing a bankruptcy fee application that require additional-not merely different-efforts are compensable under §330(a)(6).

285 B.R. 191, 219–20 (Bankr. E.D. Va. 2002) (citations omitted); see also In re Mesa Air Group Inc., 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (quoting CCT, 2010 WL 3386947, at *9)

("'[T]he review and editing of time records – as opposed to fee applications – is not compensable.'"). Accordingly, billing a debtor's estate for time spent reviewing the firm's time entries to ensure compliance with the Guidelines imposed by case law, the Court, and the United States Trustee as well as handling administrative matters in connection with billing for the engagement should not be compensable.

## E.     "Lumping" or Block Billing

33.     According to the Guidelines, billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, the level of experience, and that person's hourly rate.  See Guidelines at (b)(4)(v).  Moreover, the Guidelines provide that "[s]ervices should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry."  Id.  The Guidelines only permit "lumping" where the aggregate time does not exceed a half-hour.  Id.

34.     Recording multiple tasks as one billing entry, typically referred to as "block billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed.  See Baker, 374 B.R. at 494 (citations omitted) ("A professional is required to bill each task separately.  That way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted to inflate the actual time spent and group multiple tasks together hoping to camouflage the true length of an individual task.").  As a result of "lumping" time, the "timekeeper fails to sustain [his] burden of providing that [his] fees are reasonable."  Brous, 370 B.R. at 576.  Consequently, courts summarily will disallow time for discrete legal services merged together in a fee application.  See, e.g., Baker, 374 B.R. at 496 (deducting 20% from the requested fees for

improper block billing); see also, In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding Applications for Professional Fees and Reimbursement of Expenses) (Docket No. 926) (allowing only 30 minutes for each "lumped" entry, irrespective of the aggregate time billed for that entry); CCT, 2010 WL 3386947at *7 (allowing only 30 minutes of time for lumped entries).

**F.    Actual and Necessary Expenses**

35.    Under Section 330(a)(1)(B), only documented expenses that are actual and necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary."  In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are "actual" if they are incurred and not based on a formula or pro rata calculation.  Bennett Funding, 213 B.R. at 398.  Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client."  In re American Preferred Prescription, Inc., 218 B.R. 680, 686–87 (Bankr. E.D.N.Y. 1998).

**G.    Interim Compensation**

36.    Interim compensation to professionals, as reflected in Section 331, finds its origins in the equity powers of the bankruptcy court.  In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987).  Therefore, the Bankruptcy Court has broad discretion in the course of examining and awarding interim fee applications.  Id.

37.    In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court."  Id.  Because the pending Applications are interim in nature, the timing of any payments is also within the

parameters of the Court's discretion.  Id.  Furthermore, courts have discretion to defer ruling on

any or all of the Applications, until the time for final applications is proper.  In re ACT Mfg.,

Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

38. Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards

are the same for interim and final awards of compensation.  See Bennett Funding, 213 B.R. at

244.  At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee

award."  Child World, 185 B.R. at 17.  Section 331 "is permissive, nothing in that provision

requires a court to grant an application for interim compensation."  Id.  Thus, the statute

"authorizes the award of interim compensation, but does not mandate it."  In re First Hartford

Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); see also Barron, 73 B.R. at 814 (noting that

Congressional intent underlying Section 331 "was only to give officers of the estate an

opportunity to apply for reimbursement.") (emphasis in original).

## V. OBJECTIONS

### A. BSK

BSK seeks an allowance of fees aggregating $726,230.60[5] and reimbursement of

expenses aggregating $14,044.79 for the Fee Period.  The United States Trustee objects to the

allowance of $41,234.07 in fees and $205.95 in expenses for the reasons set forth below and as

further described on Exhibit A.

BSK lumps 341 meetings, preparation of motions, pleadings, hearings and more under

the category of "case administration" and further, in many instances, fails to identify which

specific pleading or motion making it impossible to identify how much time was spent on a

---

[5] According to the retention application of BSK, "[p]rior to September 12, 2019, [] the Debtor paid Bond $438,251.40 for legal services rendered in connection with financial restructuring matters and work associated with the preparation of this Chapter 11 Case." See ECF Doc. No. 83-2, ¶ 5.  Thus, total fees billed through January 31, 2020 by BSK is $1,164,482.

16

particular task, pleading and/or motion. These entries are further "lumped" and "vague" and therefore, objectionable. Also, multiple motions are placed under the generic phrasing of "first day motions" so that it is impossible for the reviewer to understand whether the time spent drafting a particular motion or order was appropriate.

Most notably, on the Petition Date, S.A.Donato billed 10.50 for "Comprehensive preparation and attendance at first-day motion hearings," For the same hearing, C.J.Sullivan billed 2.00 hours for "Appeared and presented oral argument on first day motions."[6] And their partner, I.C. Palermo billed 2.5 for "Appeared for and participated in first day hearings." Critically, these descriptions, relate to a hearing that was 1 hour and 15 minutes long. Billing in excess of the 75-minute hearing without further explanation is inadequate as parties do not know how the time was spent and thus whether it was reasonable.[7] Moreover, to combine preparation time with the hearing is impermissible lumping as again, you cannot tell how much time was billed to attend the hearing and how much time was billed for meeting with clients and or preparing notes. The United States Trustee previously requested a proposed reduction for these entries, which request was ignored.

Another example of lumping is found in the entry on 09/12/19 where it reads:

S.C.Temes     5.90     $1,858.50     Prepared and coordinated motions and orders in connection with chapter 11 first day hearing and addressed creditor list issues and first day hearing conference issues.

In order to understand whether the 5.9 hours was reasonable and necessary, Ms. Temes should have separated out each task and motion with the corresponding time. For instance, it could have

---

[6] Mr. Sullivan also billed 6.00 for "[p]repared for first day hearings."
[7] It is unclear if the time also includes travel from Syracuse to Rochester. If it does, the travel time should be billed at 50% and not lumped together with the preparation for the hearing or the hearing itself.

17

read, for example "prepared and coordinated first day cash collateral motion (1.5), motion to extend time (1.5), addressed creditor list issue (2.5) and reserved conference room space (.4)" Without this more detailed information, you do not know whether the 5.9 was reasonable.

The United States identified time entries that are block billed because they combine preparation time for an activity with the underlying activity, they combine conferences or meetings with other activities or combine the time for multiple conferences or communications, such as follows:

| 10/16/2019 | Donato, Stephen | Prepared for and participated in conference call with M. Cooney regarding funds analysis and reviewed Creditors' Committee comments regarding same | 1.2 |
| 10/17/2019 | Donato, Stephen | Prepared for and participated in conference call with attorneys for parishes regarding Committee stay proposal and supplemental consultation with J. Stang regarding same | 1.1 |
| 10/17/2019 | Donato, Stephen | Prepared for and participated in conference call with Committee counsel regarding revisions, modifications and inquiries concerning second day motion relief | 1.3 |
| 10/21/2019 | Donato, Stephen | Reviewed and analyzed final proposed draft financial statement and conferred with L. Passero regarding same | .9 |
| 10/22/2019 | Donato, Stephen | Reviewed and revised 341 meeting document production and schedule amendment requirements and prepared final edits regarding same | 1.2 |
| 10/22/2019 | Donato, Stephen | Prepared for and attended insurance coverage meeting with representatives of Lloyd's of London and participated in various conferences with J. Murray regarding same | 5.9 |
| 10/24/2019 | Donato, Stephen | Prepared for and attended meeting with Committee counsel regarding initial case issues | 3.2 |
| 10/24/2019 | Donato, Stephen | Prepared for and attended second day hearings | 2.1 |
| 10/29/2019 | Donato, Stephen | Prepared for and attended client meeting regarding operational issues, claim bar date review, and annual fund issues | 2.0 |

| 10/31/2019 | Donato, Stephen | Prepared for and participated in Committee conference call regarding follow-up issues including document production requests, non-disclosure agreement, parish standstill agreement and CNA motion strategies | 1.9 |

Similarly, there are multiple entries by K.M. Doner that appear to be inter firm conversations such as those on 9/23/19 where there are 3 entries for: "Participated in telephone conference with Attorney Palermo regarding first day motions and orders", "Participated in follow up telephone conference with Attorney Donato regarding first day motions and orders" and "Participated in office conference with Attorney Temes …"

Also, the United States Trustee has identified numerous instances in which a fee entry lacked critical information necessary to evaluate the reasonableness of the fee. Specifically, for example, time entries are vague when they fail to identify the subject matter of the task being performed; fail to identify the exact nature of the work being performed; fail to identify the other parties to a conference or communication or contain boilerplate language, such as follows:

| 10/2/2019 | Bopp, Claire | Reviewed documents for insurance production | 5.50 |
| 10/3/2019 | Bopp, Claire | Reviewed documents for insurance production | 2.50 |
| 10/9/2019 | Bopp, Claire | Reviewed documents for insurance production | 2.20 |
| 10/10/2019 | Bopp, Claire | Reviewed documents for insurance production | 4.50 |
| 10/11/2019 | Bopp, Claire | Reviewed documents for insurance production | 6.30 |
| 10/15/2019 | Bopp, Claire | Reviewed documents for insurance production | 1.60 |
| 10/16/2019 | Bopp, Claire | Reviewed documents for insurance production | 3.20 |
| 10/17/2019 | Bopp, Claire | Reviewed documents for insurance production | 0.60 |
| 10/21/2019 | Bopp, Claire | Reviewed documents for insurance production | 1.00 |
| 10/24/2019 | Bopp, Claire | Reviewed documents for insurance production | 1.10 |

| | | | |
|---|---|---|---|
| 10/29/2019 | Bopp, Claire | Reviewed documents for insurance production | 2.00 |
| 10/10/2019 | Walter, Grays on | Exchanged emails and calls with M&T regarding credit card order | 0.60 |
| 10/10/2019 | Walter, Grayson | Exchanged emails and calls with M&T regarding credit card order | 0.60 |
| 10/10/2019 | Walter, Grayson | Worked on 345 compliance issues | 1.50 |
| 10/11/2019 | Walter, Grayson | Exchanged emails regarding finalization of M&T credit card order | 0.20 |
| 10/11/2019 | Walter, Grayson | Exchanged emails regarding Communis governance documents and review of same | 0.50 |
| 10/17/2019 | Walter, Grayson | Emailed and called client regarding Committee requested changes to PSIP order | 0.70 |
| 10/21/2019 | Walter, Grayson | Participated in call regarding insurance issues | 0.80 |
| 10/23/2019 | Walter, Grayson | Exchanged emails regarding insurance status | 0.40 |
| 10/25/2019 | Walter, Grayson | Exchanged emails regarding monthly operating reports and reviewed same | 0.40 |

Moreover, overhead entries include, an entry on September 12, 2019, by, S.A. Donato billed .5 for "Filed Chapter 11 case". The electronic filing papers is considered overhead and a seniority/task mismatch which is objectionable. Similarly, on September 16, 2019, S.A. Donato billed .3 for "Reviewed United States Trustee operating guidelines. There are also multiple entries by G.T. Grayson for reviewing the operating guidelines. Attorneys billing for reviewing the local rules and "pulling precedents" of letters (automatic stay), notices (second day hearings),

20

pleadings (case management orders, motions), a/k/a "finding samples" is considered overhead.

Some entries that are objectionable based on overhead and/or are duplicative charges are as follows:

9/13/19        S.A.Donato              .4      $172.80
Initial review United States Trustee correspondence regarding operating guidelines and conferred with client regarding same.

9/13/19        G.T. Walter             1.3     $403.65
Reviewed U.S. Trustee operating guidelines and drafted detailed email to client regarding compliance with same

9/16/19        G.T.Walter              1.7     $527.85
Participated in call with client to discuss Chapter 11 U.S. Trustee guidelines and preparation for Initial Debtor Interview.

9/16/19        S.A.Donato              .3      $129.60
Reviewed United States Trustee Operating Guidelines

9/20/19        G.T.Walter              .5      $155.25
Reviewed United States Trustee operating guidelines and operating report requests

        In addition, there are entries including in this fee application that do not appear to be

connected to this debtor.  For instances, under the headings B320: Plan and Disclosure Statement

there are the following entries:

01/23/20       G.T.Walter              .5      $155.25
Reviewed U.S. Attorney General motion to dismiss regarding plan confirmation issues.

01/23/20       G.T.Walter              .2      $62.10
Participated in call with I. Scharf regarding U.S. Attorney General motion to dismiss.

01/23/20       G.T.Walter              .3      $93.15
Consulted with Attorney Sullivan regarding plan confirmation issues reviewed in U.S. Attorney General Motion to dismiss.

The U.S. Trustee is aware of no plan filed in this case, no involvement by the U.S. Attorney

General, besides the U.S. Trustee's office, and no motion to dismiss.  A quick review of the

docket also does not reflect an appearance by the U.S. Attorney's office, who generally represents the United States Attorney General (vs. the United States Trustee).

Consequently, based upon the United States Trustee's review of BSK's Fee Application, which is set forth in detail on Exhibit A, he seeks a reduction of BSK's fees for the first interim monthly application in the amount of $41,234.07 in fees and $205.95 in expenses.

**B.** **Pachulski Stang Ziehl & Jones LLP**

PSZJ seeks an allowance of fees aggregating $380,165.00 and reimbursement of expenses aggregating $9,756.19 for the Fee Period.  The United States Trustee objects to the allowance of $21,857.00 in fees and reimbursement of $181.30 in expenses for the reasons set forth below and on Exhibit B.

PSZJ seeks compensation that are block billed because they combine conferences or meetings with other activities, such as the time entry recorded on November 7, 2019 by timekeeper Iain Nasatir ("Conference call re insurance, review coverage chart and analyze") or because it combines the time for multiple conferences or communications, such as the entry on October 8, 2019 by timekeeper James Stang ("Telephone calls to various state court counsel re employment issues").

As set forth on Exhibit B, the United States Trustee has identified numerous instances in which a fee entry lacked critical information necessary to evaluate the reasonableness of the fee. The Application contains time entries that are vague because they fail to identify the subject matter of the task being performed, such as the entry on November 25, 2019 by timekeeper Iain Nasatir ("Review James I Stang email and research from Cia Mackle") or they fail to identify the other parties to a conference or communication, such as the entry on November 7, 2019 by

timekeeper Iain Nasatir ("Conference call re insurance, review coverage chart and analyze"). Further, there are several entries which use the same boilerplate language, i.e., "Committee call."

Finally, reimbursement for scanning or generating electronic copies of documents is not permitted. The United States Trustee has identified expense entries for scanning documents in the Application and has sought a reduction of those charges.

Accordingly, based upon the United States Trustee's review and as fully identified and explained on Exhibit B, he seeks a reduction of PSZJ's fees for the first interim monthly application in the amount of $21,857.00 in fees and $181.30 in expenses.

## C.     **Blank Rome**

Blank Rome seeks an allowance of fees in the total amount of $155,934.61 and reimbursement of out-of-pocket expenses in the total amount of $5,475.75 during the Fee Period. The United States Trustee objects to the allowance of fees in the amount of $20,930.68 and expenses of $456.08 for the reasons set forth below and on Exhibit C.

The Application contains numerous entries that are block billed because it combines conferences or meetings with other activities. Further, many entries are vague because they fail to identify the subject matter of the task being performed, such as the time entry recorded on December 23, 2019 by timekeeper James Carter, which states "PROVIDE COMMENTS REGARDING CORRESPONDENCE CHART FROM H. AHN". It is unclear who H. Ahn is and why the chart is a benefit to the estate. Other examples of vague entries and block entries include:

| | | | |
|---|---|---|---|
| 10/16/2019 | Carter,James | REVISE LETTER TO CNA; REVISE EMAIL RE LMI LIMITS; REVIEW CLIENTS FOR APPLICATION | 4.30 |

| 10/21/2019 | Carter,James | TELECONFERENCE WITH S. DONATO; PREPARE APPLICATION | 1.70 |

Further, late-night meals and transportation: in-office meals and transportation between the office and the timekeeper's home are not reimbursable unless the timekeeper has worked late and has billed at least 4 hours on the case during that same day. Any expenses for local travel or meals should indicate both the date the expense was incurred and the name of the timekeeper incurring the expense. The United States Trustee has identified instances in which either a timekeeper billed an in-office meal or transportation home to the client despite billing less than the required number of hours that day, or for which the timekeeper incurring the expense has not been identified.

As such, based upon the United States Trustee's review and as fully identified and explained on Exhibit C, he seeks a reduction of Blank Rome's fees for the first interim monthly application in the amount of $20,930.68 in fees and $456.08 in expenses.

**D.    Nixon Peabody**

Nixon Peabody seeks an allowance of fees aggregating $12,040.00 for the Fee Period. The United States Trustee objects to the allowance of $934.80 in fees for the reasons set forth below and on Exhibit D. The Unites States Trustee noticed entries for preparing monthly fee statements. As discussed above, these services are overheard and thus are not compensable by the estate. See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable). Further, certain entries are "lumped". Therefore, based upon the United States Trustee's review and as fully identified and explained on Exhibit D, he seeks a reduction of Nixon Peabody's fees for the first interim monthly application in the amount of $934.80 in fees.

## VI.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court enter an

order reducing the fees and expenses requested by the Retained Professionals by the amounts set

forth herein and grant such other relief as is just.

Dated: Rochester, New York
      May 8, 2020

                                Respectfully submitted,

                                WILLIAM K. HARRINGTON
                                UNITED STATES TRUSTEE

By:    */s/ Kathleen D. Schmitt*
           Kathleen Dunivin Schmitt
           Assistant United States Trustee
           100 State Street, Room 4180
           Rochester, NY 14614
           Tel. (585) 263-5706

Case 2-19-20905-PRW,    Doc 538,    Filed 05/08/20,    Entered 05/08/20 11:18:24,
Description: Main Document  , Page 25 of 25