UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Rochester,

Debtor.

Case No. 19-20905

Chapter 11

**JOINDER OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN MOTIONS FOR RELIEF FROM AUTOMATIC STAY**

The Official Committee of Unsecured Creditors (the "**Committee**") of The Diocese of Rochester (the "**Debtor**" or "**Diocese**"), by and through its undersigned counsel, hereby submits its joinder (the "**Joinder**") to the *Motions for Relief from Automatic Stay* [Docket Nos. 1037 – 1075] (collectively, the "**Motions**") filed by Sexual Abuse Claimants (collectively, the "**Movants**")[1] asking this Court for an order granting relief from the automatic stay to allow their lawsuits to proceed to judgment. In support of its Joinder, the Committee respectfully states as follows:

**Preliminary Statement**[2]

1. The Diocese and its insurers have failed to offer reasonable compensation to Sexual Abuse Claimants through mediation with the Committee (comprised of nine Sexual Abuse Claimants) and counsel to the overwhelming majority of Sexual Abuse Claimants (including the Movants).

2. The Committee and the Movants believe that settlement discussions and the mediation process will benefit from relief from the automatic stay for targeted, representative cases

---

[1] The Movants each filed a motion for relief from the automatic stay. The Movants' identities are confidential pursuant to the Bar Date Order.

[2] Capitalized terms used in this Preliminary Statement are as defined in the body of the Joinder below.

DOCS_NY:42727.7 18489/002     1

to go forward in state court. The legal arguments in support of the Joinder and the Motions are set forth in the *Memorandum of Law of Official Committee of Unsecured Creditors in Support of Joinder and Motions for Relief from the Automatic Stay* filed contemporaneously herewith, and incorporated herein by reference for all purposes. The factual support for the Motions is set forth herein and in the Declarations.[3]

### The Motion and Related Pleadings

3. Movants filed the Motions. Attached to each Motion is a declaration from the Movant's attorney (the "**Declarations**"). Each Declaration describes the procedural posture of the Movant's state court case. Finally, attached hereto are true and correct redacted copies of each Movant's state court complaints.

### Joinder

4. The Committee joins in each of the Motions independently of the other Motions, and the Motions and all related pleadings are incorporated herein by reference for all purposes.

### Relevant Facts

**A.     Background Facts**

5. On September 12, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of New York (the "**Bankruptcy Court**") and is entitled *In re The Diocese of Rochester*, Case No. 19-20905 (PRW) (the "**Chapter 11**

---

[3] Certain of the Complaints have been redacted and all Movants filed their Motions using pseudonyms pursuant to the *Order Denying Motion to Seal and Authorizing the Use of Pseudonyms and Limited Redactions* (the "**Sealing Order**") [Docket No. 1029].

**Case**").  No trustee or examiner has been appointed in this case, and the Debtor is managing its properties and businesses as a debtor in possession.

6. The Debtor commenced its Chapter 11 Case after New York State enacted the Child Victims Act, 2019 N.Y. Laws 11, 2019 N.Y. SB 2440 (the "**CVA**").  The CVA provided a window for survivors of child sexual abuse ("**Sexual Abuse Survivors**") to bring claims based on their abuse against the perpetrators of the abuse and those responsible for enabling the abuse.  In that regard, numerous Sexual Abuse Survivors commenced lawsuits against the Diocese prior to the Petition Date.  Those claims were stayed as of the Petition Date.

7. On September 25, 2019, the United States Trustee appointed the Committee. The Committee is comprised of nine Sexual Abuse Survivors who asserted claims against the Debtor prior to the Petition Date.  Certain Movants are members of the Committee.

8. On February 25, 2020, the Court entered its *Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (the "**Bar Date Order**") [Docket No. 425].  Pursuant to the Bar Date Order, the Court (a) established August 13, 2020 as the deadline for Sexual Abuse Survivors to file Sexual Abuse Claims (as defined in the Bar Date Order) and approved a Sexual Abuse Proof of Claim Form (as defined in the Bar Date Order). All of the Movants filed timely Sexual Abuse Claims by the Bar Date.  All of the Movants also filed state court lawsuits against either (a) the Diocese and other defendants (if the lawsuit was filed prior to the Petition Date) or (b) non-Diocesan defendants (if the lawsuits were commenced after the Petition Date).  If stay relief is granted, the Movants who have not yet named the Diocese in a complaint will either amend their complaints or file a lawsuit against the Diocese.

B.  **Consensual Stay of Litigation Against Non-Debtor Entities**

9. On March 19, 2020, the Court entered its *Agreed Stipulation and Order Pursuant to 11 U.S.C. §105(a) Staying Continued Prosecution of Certain Lawsuits* [Docket No. 452] (the "**Stay Stipulation**"). The Stay Stipulation memorialized an agreement between the Diocese and the Committee (including input from state court counsel representing Committee members) to stay litigation against non-Diocesan defendants in CVA actions who were not subject to the automatic stay. The Stay Stipulation has been extended from time to time, and expired on May 31, 2021.[4] S*ee Sixth Notice of Extension of Agreed Stipulation and Order Pursuant to 11 U.S.C. §105(a) Staying Continued Prosecution of Certain Lawsuits* [Docket No. 971]. The Committee entered into the Stay Stipulation, in substantial part, in order to attempt to resolve the Sexual Abuse Claims on a global basis through mediation.

C.  **Summary of Movants' Claims[5]**

10. The twenty (20) Movants' Sexual Abuse Claims are a representative sample of the over 475 Sexual Abuse Claims filed in this Chapter 11 Case. The Movants were abused by twelve (12) different perpetrators, and their abuse involves related claims against at least fourteen (14) different parishes, one (1) summer camp, one (1) parish elementary school, two (2) religious orders, and one (1) diocesan high school operated by a religious order. The Movants were between six (6) and fifteen (15) years old at the time their abuse began. The types of the abuse inflicted on the Movants is varied, and includes over and under the clothing fondling; oral copulation; digital

---

[4] There is a forty-five (45) day grace period for the non-debtor defendants to respond to lawsuits after the expiration of the Stay Stipulation. The Committee has provided a proposal to the Diocese to further extend the Parish Stay and is awaiting a response on that proposal.

[5] Information about Sexual Abuse Claims is as described in the filed claims, and is not based on any independent investigation by the Committee. To the extent the Diocese or any other party disputes any of the allegations in the Movants' Sexual Abuse Proofs of Claim, the Committee believes that the appropriate forum to address such disputes is before the State Court after stay relief is granted.

penetration; attempted rape; and multiple rapes. Finally, the frequency of abuse of the Movants varies from a single instance to more than a hundred of acts perpetrated against a single Sexual Abuse Survivor over a period of years.[6]

11. The twelve perpetrators are identified as abusers in approximately 165 Sexual Abuse Claims, comprising approximately one-third of the total number of Sexual Abuse Claims.

12. As such, it is clear that the Movants' cases present a representative group of claims that will clearly be illustrative for the Diocese and its insurers with respect to a variety of fact-patterns and legal issues. These include the following:

    a. The Diocese's liability for abuse by members of a religious order.

    b. The Diocese's liability for abuse at a school operated by a religious order.

    c. Parishes' liability for Sexual Abuse Claims.

    d. The appropriate compensation for Sexual Abuse Survivors who suffered different types of abuse, different frequencies of abuse and different durations of abuse.

**D.     The Diocese's Insurance**

13. The Movants were abused between approximately 1961 and 1985. During that time, the Diocese (as well as its parishes and other co-insured related entities) were insured by the following insurers: (a) Continental National American Group ("**CNA**"); (b) Interstate Fire and Casualty Company and National Surety Corporation ("**Interstate**"); (c) Certain Underwriters at Lloyd's, London, subscribing to Policy Nos. SL 3209, SL 3675 (unconfirmed), ISL 3090, SL 3556, SL 3693, SL 3830 and ISL 3092, Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee

---

[6] Pursuant to the Sealing Order, attached hereto as **Exhibit 22** is a Schedule that discloses, with respect to each Movant, (a) the identity of the perpetrator identified in the Sexual Abuse Proof of Claim Form; (b) the years in which the abuse occurred; the age of the Movant as the time of the abuse; the Parish or school where the perpetrator was assigned at the time of the abuse; the Religious Order, if any, to which the perpetrator belonged; (d) the location(s) where the abuse occurred; (e) the number of acts of abuse; and (f) the type(s) of acts of abuse. Exhibit 22 is incorporated herein by reference for all purposes.

of Excess Insurance Company Ltd), RiverStone Insurance (UK) Limited (as successor in interest to Terra Nova Insurance Company Ltd), RiverStone Insurance (UK) Limited (as successor in interest to Sphere Drake Insurance Ltd), Sompo Japan Nipponkoa Insurance Company of Europe Limited (formerly known as The Yasuda Fire & Marine Insurance Company), Dominion Insurance Company Ltd., and CX Reinsurance Company Ltd (formerly known as CNA Reinsurance of London Ltd) (collectively "**LMI**"); (d) Allianz Global and Specialty Company of North America ("**Allianz**"); and (e) Certain Underwriters at Lloyd's, London subscribing to Certificate Nos. 18W2012, 18XS133, 19W2012 and 19XS133 and HDI Global Specialty SE (formerly known as International Insurance Company of Hannover SE) (collectively "**Underwriters**" and, together with CNA, Interstate, Allianz, and LMI, the "**Insurers**").

14. The Diocese commenced a declaratory judgment action against its insurers. *See The Diocese of Rochester v. The Continental Insurance Co.*, Adv. No. 19-02021 (Bankr. W.D.N.Y.) (the "**Insurance AVP**"). The Diocese filed the Insurance AVP in order to address certain coverage defenses raised by the Insurers. These defenses include (a) that the abuse was "expected and intended by the Diocese," (b) that the Diocese did not provide timely notice of claims based on sexual abuse to its insurers, (c) that the Diocese made voluntary payments on account of sexual abuse (and such voluntary payments cannot be recovered), (d) that the Diocese was aware of sexual abuse claims that were not disclosed prior to applying for insurance coverage, (e) that certain policies only provide site-specific coverage, and (f) that there is insufficient evidence to support the existence of certain insurance policies. *See, e.g, Motion of the Continental Ins. Co. for Relief from the Automatic Stay to File Declaratory Judgment Action Regarding Insurance Coverage for Sexual Abuse Claims*, Ex. A [Docket No. 136]. The Insurance AVP has been stayed pending mediation.

*See Stipulation and Agreed Order Regarding the Debtor's Motion Staying Certain Lawsuits and Production of Documents in Connection with Mediation Process* [Docket No. 531].

**E.     Mediation**

15.     On May 10, 2020, the Court entered its Order Directing Mediation and Appointing Mediator (the "**Mediation Order**") [Insurance AVP Docket No. 39]. Pursuant to the Mediation Order, the Honorable Gregg W. Zive, United States Bankruptcy Judge, is serving as mediator. The Committee and state court counsel representing committee members participated in the mediation in good faith. State court counsel representing Committee members collectively represent more than seventy percent (70%) of the Sexual Abuse Claimants in this Chapter 11 Case. The same counsel are also among the preeminent attorneys representing sexual abuse survivors in the United States, including with respect to almost every bankruptcy case of a Roman Catholic entity since 2005. Committee members were also active participants in the mediation and the Chapter 11 Case. Despite the Committee and state court counsel's good faith efforts, the parties sharply disagree on the appropriate compensation for Sexual Abuse Claims and the Diocese and its Insurers have not offered a remotely acceptable amount through the mediation.

16.     The Diocese filed a motion requesting approval of a settlement with LMI and Interstate. *See Motion for Entry of an Order Approving Settlement Agreement with Certain Underwriters at Lloyd's, London, Certain London Market Companies, Interstate Fire & Casualty Company and National Surety Corporation*, Adv. Pro. Docket No. 99. The Committee believes the proposed settlement is wholly inadequate to compensate Sexual Abuse Claimants, and intends to oppose the Motion. The Committee's opposition to the proposed settlement with these insurers

underscores the importance of granting stay relief in order to address the question of claims valuation.

F.  **The Movants' Individual Claims**

1.  **VJR 41 (Sexual Abuse Claim No. 41)**

    17. VJR 41 asserts that (a) he was abused by Father Francis H. Vogt from approximately 1961 to 1966 beginning when he was approximately ten (10) years old, (b) Father Vogt was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to VJR 41 on account of his abuse by Father Vogt.  On June 22, 2020, VJR 41 filed Sexual Abuse Claim number 41 against the Debtor.  A true and correct redacted copy of VJR 41's state court complaint is attached hereto and incorporated by reference as **Exhibit 2**.

2.  **BB 44 (Sexual Abuse Claim No. 44)**

    18. BB 44 asserts that (a) he was abused by Father Francis H. Vogt from approximately 1966 to 1970 beginning when he was approximately six (6) years old, (b) Father Vogt was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to BB 44 on account of his abuse by Father Vogt.  On June 25, 2020, BB 44 filed Sexual Abuse Claim number 44 against the Debtor.  A true and correct redacted copy of BB 44's state court complaint is attached hereto and incorporated by reference as **Exhibit 3**.

3.  **LCVAWCR-DOE (Sexual Abuse Claim No. 65)**

    19. LCVAWCR-DOE asserts that (a) he was abused by Father Paul Schnacky from approximately 1971 to 1976 beginning when he was approximately ten (10) years old, (b) Father Schnacky was a priest of the Diocese of Rochester for whom the Debtor was responsible at

the time of the abuse, and (c) the Debtor is liable to LCVAWCR-DOE on account of his abuse by Father Schnacky. On June 30, 2020, LCVAWCR-DOE filed Sexual Abuse Claim number 65 against the Debtor. A true and correct redacted copy of LCVAWCR-DOE's state court complaint is attached hereto and incorporated by reference as **Exhibit 4**.

4. **TDA 74 (Sexual Abuse Claim No. 74)**

20. TDA 74 asserts that (a) he was abused by Father Albert H. Cason from approximately 1977 to 1982 beginning when he was approximately eleven (11) years old, (b) Father Cason was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to TDA 74 on account of his abuse by Father Cason. On July 7, 2020, TDA 74 filed Sexual Abuse Claim number 74 against the Debtor. A true and correct redacted copy of TDA 74's state court complaint is attached hereto and incorporated by reference as **Exhibit 5**.

5. **GM 127 (Sexual Abuse Claim No. 127)**

21. GM 127 asserts that (a) he was abused by Father Robert F. O'Neill in approximately 1979 beginning when he was approximately fourteen (14) years old, (b) Father O'Neill was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to GM 127 on account of his abuse by Father O'Neill. On July 16, 2020, GM 127 filed Sexual Abuse Claim number 127 against the Debtor. A true and correct redacted copy of GM 127's state court complaint is attached hereto and incorporated by reference as **Exhibit 6**.

6. **MG 133 (Sexual Abuse Claim No. 133)**

22. MG 133 asserts that (a) he was abused by Sister Janice Nadeau from approximately 1976 to 1977 beginning when he was approximately eleven (11) or twelve (12) years old, (b) Sister Nadeau was the principal at a parish school in the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to MG 133 on account of his abuse by Sister Nadeau. On July 18, 2020, MG 133 filed Sexual Abuse Claim number 133 against the Debtor. A true and correct redacted copy of MG 133's state court complaint is attached hereto and incorporated by reference as **Exhibit 7**.

7. **AB 110 Doe (Sexual Abuse Claim No. 149)**

23. AB 110 Doe asserts that (a) he was abused by Father Joseph E. Larrabee from approximately 1984 to 1985 beginning when he was approximately fifteen (15) years old, (b) Father Larrabee was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to AB 110 Doe on account of his abuse by Father Larrabee. On July 21, 2020, AB 110 Doe filed Sexual Abuse Claim number 149 against the Debtor. A true and correct redacted copy of AB 110 Doe's state court complaint is attached hereto and incorporated by reference as **Exhibit 8**.

8. **JP 185 (Sexual Abuse Claim No. 185)**

24. JP 185 asserts that (a) he was abused by Brother John Walsh from approximately 1983 to 1985 beginning when he was approximately thirteen (13) years old, (b) Brother Walsh was a vice principal/dean of students at a Diocesan high school for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to JP 185 on account of his abuse by Brother Walsh. On July 27, 2020, JP 185 filed Sexual Abuse Claim number 185 against

the Debtor. A true and correct redacted copy of JP 185's state court complaint is attached hereto and incorporated by reference as **Exhibit 9**.

9. **CW 187 (Sexual Abuse Claim No. 187)**

25. CW 187 asserts that (a) he was abused by Father Joseph E. Larrabee from approximately 1983 to 1983 beginning when he was approximately 12 or 13 years old, (b) Father Larrabee was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to CW 187 on account of his abuse by Father Larrabee. On July 27, 2020, CW 187 filed Sexual Abuse Claim number 187 against the Debtor. A true and correct redacted copy of CW 187's state court complaint is attached hereto and incorporated by reference as **Exhibit 10**.

10. **S.B. (Sexual Abuse Claim No. 197)**

26. S.B. asserts that (a) he was abused by Brother John Walsh from approximately 1982 to 1985 beginning when he was approximately fourteen (14) years old, (b) Brother Walsh was a vice principal/dean of students at a Diocesan high school for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to S.B. on account of his abuse by Brother Walsh. On July 30, 2020, S.B. filed Sexual Abuse Claim number 197 against the Debtor. A true and correct redacted copy of S.B.'s state court complaint is attached hereto and incorporated by reference as **Exhibit 11**.

11. **M.G. (Sexual Abuse Claim No. 204)**

27. M.G. asserts that (a) he was abused by Father Eugene Emo from approximately 1973 to 1974 beginning when he was approximately twelve (12) years old, (b) Father Emo was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of

the abuse, and (c) the Debtor is liable to M.G. on account of his abuse by Father Emo. On July 30, 2020, M.G. filed Sexual Abuse Claim number 204 against the Debtor. A true and correct redacted copy of M.G.'s state court complaint is attached hereto and incorporated by reference as **Exhibit 12**.

12. **AB 113 Doe (Sexual Abuse Claim No. 231)**

28. AB 113 Doe asserts that (a) he was abused by Father Robert F. O'Neill from approximately 1976 to 1977 beginning when he was approximately twelve (12) years old, (b) Father O'Neill was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to AB 113 Doe on account of his abuse by Father O'Neill. On August 3, 2020, AB 113 Doe filed Sexual Abuse Claim number 231 against the Debtor. A true and correct redacted copy of AB 113 Doe's state court complaint is attached hereto and incorporated by reference as **Exhibit 13**.

13. **SM 247 (Sexual Abuse Claim No. 247)**

29. SM 247 asserts that (a) he was abused by Father Paul I. Cloonan from approximately 1970 to 1971 beginning when he was approximately twelve (12) years old, (b) Father Cloonan was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to SM 247 on account of his abuse by Father Cloonan. On August 4, 2020, SM 247 filed Sexual Abuse Claim number 247 against the Debtor. A true and correct redacted copy of SM 247's state court complaint is attached hereto and incorporated by reference as **Exhibit 14**.

14. **MS 275 (Sexual Abuse Claim No. 275)**

30. MS 275 asserts that (a) he was abused by Father Joseph E. Larrabee from approximately 1982 to 1983 beginning when he was approximately twelve (12) years old, (b) Father

Larrabee was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to MS 275 on account of his abuse by Father Larrabee. On August 4, 2020, MS 275 filed Sexual Abuse Claim number 275 against the Debtor. A true and correct redacted copy of MS 275's state court complaint is attached hereto and incorporated by reference as **Exhibit 15**.

### 15. DG 278 (Sexual Abuse Claim No. 278)

31. DG 278 asserts that (a) he was abused by Father Dennis J. Shaw from approximately 1977 to 1985 beginning when he was approximately ten (10) years old, (b) Father Shaw was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to DG 278 on account of his abuse by Father Shaw. On August 5, 2020, DG 278 filed Sexual Abuse Claim number 278 against the Debtor. A true and correct redacted copy of DG 278's state court complaint is attached hereto and incorporated by reference as **Exhibit 16**.

### 16. AB 174 Doe (Sexual Abuse Claim No. 330)

32. AB 174 Doe asserts that (a) he was abused by Father Foster Rogers from approximately 1975 to 1979 beginning when he was approximately nine (9) years old and continuing until he was approximately twelve (12) years old, (b) Father Rogers was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to AB 174 Doe on account of his abuse by Father Rogers. On August 6, 2020, AB 174 Doe filed Sexual Abuse Claim number 330 against the Debtor. A true and correct redacted copy of AB 174's state court complaint is attached hereto and incorporated by reference as **Exhibit 17**.

### 17. AB 371 Doe (Sexual Abuse Claim No. 335)

33. AB 371 Doe asserts that (a) he was abused by Father Paul Schnacky from approximately 1973 to 1974 beginning when he was approximately nine (9) years old, (b) Father Schnacky was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to AB 371 on account of his abuse by Father Schnacky. On August 6, 2020, AB 371 Doe filed Sexual Abuse Claim number 335 against the Debtor. A true and correct redacted copy of AB 371's state court complaint is attached hereto and incorporated by reference as **Exhibit 18**.

**18. SHC-MG-2 Doe (Sexual Abuse Claim No. 354)**

34. SHC-MG-2 Doe asserts that (a) he was abused by Father Albert H. Cason from approximately 1962 to 1968 beginning when he was approximately ten (10) years old, (b) Father Cason was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to SHC-MG-2 Doe on account of his abuse by Father Cason. On August 7, 2020, SHC-MG-2 Doe filed Sexual Abuse Claim number 354 against the Debtor. A true and correct redacted copy of SHC-MG-2 Doe's state court complaint is attached hereto and incorporated by reference as **Exhibit 19**.

**19. AB 214 Doe (Sexual Abuse Claim No. 374)**

35. AB 214 Doe asserts that (a) he was abused by Father John F. Gormley from approximately 1968 to 1974 beginning when he was approximately fourteen (14) years old, (b) Father Gormley was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to AB 214 Doe on account of his abuse by Father Gormley. On August 7, 2020, AB 214 Doe filed Sexual Abuse Claim number 374 against the

Debtor.  A true and correct redacted copy of AB 214's state court complaint is attached hereto and incorporated by reference as **Exhibit 20**.

### 20. R.O. (Sexual Abuse Claim No. 396)

36. R.O. asserts that (a) he was abused by Father Francis H. Vogt from approximately 1965 to 1970 beginning when he was approximately six (6) years old, (b) Father Vogt was a priest of the Diocese of Rochester for whom the Debtor was responsible at the time of the abuse, and (c) the Debtor is liable to R.O. on account of his abuse by Father Vogt.  On August 10, 2020, Movant 396 filed Sexual Abuse Claim number 396 against the Debtor.  A true and correct redacted copy of R.O.'s state court complaint is attached hereto and incorporated by reference as **Exhibit 21**.

### Relief Requested

37. The Movants seek relief from the automatic stay.  However, to the extent the Movants liquidate damages due to them from the Debtor, they will not seek to enforce their claims (including with respect to any insurance policy or assets of the Debtor) subject to further order of the Bankruptcy Court.  The Committee supports and joins in the Movants' Motions.

38. Relief from the automatic stay should be granted because cause exists as set forth in the *Memorandum of Law of Official Committee of Unsecured Creditors in Support of Joinder and Motion for Relief from the Automatic Stay* filed contemporaneously herewith.

WHEREFORE, the Committee respectfully requests that this Court: (i) enter an order substantially in the form attached hereto as **Exhibit 1**, granting the relief sought herein; and (ii) grant such other and further relief to the Committee as the Court may deem proper.

Dated: June 8, 2021

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/ Ilan D. Scharf*
    James I. Stang (admitted *pro hac vice*)
    Ilan D. Scharf
    Iain Nasatir
    Brittany M. Michael
    780 Third Avenue, 34th Floor
    New York, NY 10017
    Telephone: (212) 561-7700
    Facsimile: (212) 561-7777
    Email: jstang@pszjlaw.com
           ischarf@pszjlaw.com
           inasatir@pszjlaw.com
           bmichael@pszjlaw.com

    Attorneys for the Official Committee of
    Unsecured Creditors