# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

,

Plaintiff,

v.

ST. BRIDGET'S CHURCH, a/k/a, ST. BRIDGET'S CHURCH
ROCHESTER; IMMACULATE CONCEPTION/ST. BRIDGET
CHURCH SOCIETY; ST. ANTHONY'S CHURCH OF ELMIRA,
NEW YORK; BLESSED SACRAMENT ROMAN CATHOLIC
CHURCH OF ELMIRA, N.Y., a/k/a, BLESSED SACRAMENT
ROMAN CATHOLIC CHURCH OF ELMIRA, NY; THE
PARISH OF THE MOST HOLY NAME OF JESUS, CHEMUNG
COUNTY, NY; ST. FRANCIS OF ASSISI CHURCH OF
ROCHESTER, NEW YORK; ST. SALOME CHURCH; KATERI
TEKAKWITHA ROMAN CATHOLIC PARISH, MONROE
COUNTY, NY; CATHOLIC CHARITIES OF THE DIOCESE OF
ROCHESTER; and THE CATHOLIC YOUTH ORGANIZATION
OF CATHOLIC CHARITIES OF THE DIOCESE OF ROCHESTER,

Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff _____, by his attorneys Simmons Hanly Conroy LLC and the Law

Offices of Mitchell Garabedian, brings this action against St. Bridget's Church, also

known as St. Bridget's Church Rochester; Immaculate Conception/St. Bridget Church

Society; St. Anthony's Church of Elmira, New York; Blessed Sacrament Roman Catholic

Church of Elmira, N.Y., also known as Blessed Sacrament Roman Catholic Church of

Elmira, NY; The Parish of The Most Holy Name of Jesus, Chemung County, NY; St.

Francis of Assisi Church of Rochester, New York; St. Salome Church; Kateri Tekakwitha

Roman Catholic Parish, Monroe County, NY; Catholic Charities of the Diocese of

Rochester; and The Catholic Youth Organization of Catholic Charities of the Diocese of

Rochester, and alleges, on personal knowledge as to himself and on information and

belief as to all other matters, as follows:

1

### JURISDICTION AND VENUE

1.      This Court has personal jurisdiction over the Defendants pursuant to CPLR 301 and 302, in that the Defendants reside in New York.

2.      This Court has jurisdiction over this action because the amount of damages Plaintiff seeks exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

3.      Venue for this action is proper in the County of Monroe pursuant to CPLR 503 in that one or more of the Defendants reside in this County and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this County.

### PARTIES

4.      Plaintiff ███████████ ("Plaintiff") is an individual residing in ██████ ███████████████████.

5.      Defendant St. Bridget's Church, also known as St. Bridget's Church Rochester ("St. Bridget's") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 175 St. Bridget's Drive, Rochester, Monroe County, New York and now at 445 Frederick Douglass Street, Rochester, Monroe County, New York.  At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of St. Bridget's, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Bridget's.

6.      Defendant Immaculate Conception/St. Bridget Church Society ("Immaculate Conception") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 445 Frederick Douglass Street, Rochester, Monroe County, New York.   As a result of a corporate merger, Defendant Immaculate Conception is the legal successor to Defendant St. Bridget's.

7.      Defendant St. Anthony's Church of Elmira, New York ("St. Anthony's")

2

was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 204 West Washington Avenue, Elmira, Chemung County, New York and now at 1010 Davis Street, Elmira, Chemung County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of St. Anthony's, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Anthony's.

8. Defendant Blessed Sacrament Roman Catholic Church of Elmira, N.Y., also known as Blessed Sacrament Roman Catholic Church of Elmira, NY ("Blessed Sacrament") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 604 Park Place, Elmira, Chemung County, New York and now at 1010 Davis Street, Elmira, Chemung County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of Blessed Sacrament, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Blessed Sacrament. As a result of a corporate merger, Defendant Blessed Sacrament was the legal successor to Defendant St. Anthony's.

9. Defendant The Parish of The Most Holy Name of Jesus, Chemung County, NY ("Most Holy Name") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 1010 Davis Street, Elmira, Chemung County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of Most Holy Name, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Most Holy Name. As a result of corporate mergers, Defendant Most Holy Name is the legal successor to Defendants St. Anthony's and Blessed Sacrament.

3

10.     Defendant St. Francis of Assisi Church of Rochester, New York ("St. Francis") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 77 Whitney Street, Rochester, Monroe County, New York.  At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of St. Francis, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Francis.

11.     Defendant St. Salome Church ("St. Salome") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 4282 Culver Road, Rochester, Monroe County, New York and now at 445 Kings Highway South, Rochester, Monroe County, New York.  At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of St. Salome, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Salome.

12.     Defendant Kateri Tekakwitha Roman Catholic Parish, Monroe County, NY ("Kateri Tekakwitha") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 445 Kings Highway South, Rochester, Monroe County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of Kateri Tekakwitha, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Kateri Tekakwitha.   As a result of a corporate merger, Defendant Kateri Tekakwitha is the legal successor to Defendant St. Salome.

13.     Defendant Catholic Charities of the Diocese of Rochester ("Catholic Charities") is a not-for-profit corporation organized pursuant to New York's Not-for-Profit Corporation Law, with its principal office at 1150 Buffalo Road, Rochester, Monroe

4

County, New York. At all relevant times, Catholic Charities created, oversaw, supervised, managed, controlled, directed and operated facilities and activities under the name of, or with the name of, Catholic Youth Organization, including a center with a swimming pool located at relevant times at or near 50 Chestnut Street, Rochester, Monroe County, New York.

14.     Defendant The Catholic Youth Organization of Catholic Charities of the Diocese of Rochester ("CYO, Inc.") is a not-for-profit corporation organized pursuant to New York's Not-for-Profit Corporation Law, with its principal office at 1150 Buffalo Road, Rochester, Monroe County, New York. Defendant CYO, Inc. is the legal successor to Defendant Catholic Charities.

### FACTS COMMON TO ALL CLAIMS

15.     Plaintiff and his family were parishioners of and attended St. Bridget's when Plaintiff was a minor child. Plaintiff also attended the parochial elementary school affiliated with St. Bridget's.

16.     Father Francis H. Vogt ('Father Vogt") was ordained a Roman Catholic priest in approximately 1938. From approximately 1938 to approximately 1942, Father Vogt served as a priest at Defendant St. Anthony's. From approximately 1947 to approximately 1950, Father Vogt served as a priest at Defendant St. Francis. From approximately 1951 to approximately 1953, Father Vogt served as a priest at St. Salome. From approximately 1954 to approximately 1977, Father Vogt served as the pastor of Defendant St. Bridget's, where Plaintiff's family were parishioners. Father Vogt died in 2006.

17.     Prior to Father Vogt being assigned to Defendant St. Bridget's, Defendants St. Anthony's, St. Francis, and St. Salome, and their respective executive officers knew or should have known it was not safe to allow Father Vogt to have unsupervised contact with minor children, in that Father Vogt posed a sexual danger to minor children. The Roman Catholic Bishop and Vicar General of Rochester concealed the information about

the danger Father Vogt posed to minor children, in order that the Roman Catholic Bishop and Vicar General of Rochester could assign Father Vogt to work at parishes, including St. Bridget's. Defendants St. Anthony's, St. Francis, and St. Salome aided and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing the information about the danger Father Vogt posed to minor children.

18.     Through his positions at, within, or for Defendant St. Bridget's, Father Vogt was put in direct contact with members of the Plaintiff's family, including Plaintiff, a minor parishioner of St. Bridget's.

19.     From approximately 1961 when Plaintiff was approximately ten years of age, to approximately 1966 when Plaintiff was approximately fifteen years of age, Father Vogt would take Plaintiff swimming at the Catholic Charities facility located at or near 50 Chestnut Street, Rochester, Monroe County, New York. Father Vogt would also invite Plaintiff to the St. Bridget's rectory to look at Father Vogt's collection of sea horses.

20.     Father Vogt used such encounters, gained through his position at St. Bridget's which granted him access to Plaintiff when Plaintiff was approximately ten to fifteen years of age, to sexually assault, sexually abuse, and/or have sexual contact with the Plaintiff on at least one hundred occasions in violation of the laws of the State of New York.

**Defendants' Responsibility for the Abuse Committed by Father Vogt**

21.     At all times material hereto, Father Vogt was under the management, supervision, employ, direction and/or control of Defendants St. Bridget's, St. Anthony's, St. Francis, St. Salome, and Catholic Charities.

22.     Through his position at, within, or for Defendants St. Bridget's and Catholic Charities, Father Vogt was put in direct contact with Plaintiff.

23.     Father Vogt used his positions at, within, or for Defendants St. Bridget's and Catholic Charities and the implicit representations made by Defendants St. Bridget's and Catholic Charities about Father Vogt's character that accompanied those positions,

NYSCEF DOC. NO. 1

to gain Plaintiff's trust and confidence and to create an opportunity to be alone with, and to sexually touch, Plaintiff.

24.     Defendant St. Bridget's had the duty to reasonably manage, supervise, control and/or direct priests who served at St. Bridget's, and specifically, had a duty not to aid pedophiles such as Father Vogt by assigning, maintaining, and/or appointing them to positions with access to minors.

25.     Defendant St. Anthony's had a duty to reasonably supervise, direct, manage, and control Father Vogt when Father Vogt was assigned to St. Anthony's. Defendant St. Anthony's had a duty not to assist, aid and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Vogt posed a danger to minor children when he had contact with such minors, especially when Defendant St. Anthony's knew or should have known that Father Vogt posed such a danger and Father Vogt was being transferred to other parishes where he would have unsupervised contact with minors. Defendant St. Anthony's assisted, aided, and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Vogt posed a danger to minor children from parishes to which Father Vogt was subsequently assigned.

26.     Defendant St. Francis had a duty to reasonably supervise, direct, manage, and control Father Vogt when Father Vogt was assigned to St. Francis. Defendant St. Francis had a duty not to assist, aid and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Vogt posed a danger to minor children when he had contact with such minors, especially when Defendant St. Francis knew or should have known that Father Vogt posed such a danger and Father Vogt was being transferred to other parishes where he would have unsupervised contact with minors. Defendant St. Francis assisted, aided and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Vogt posed a danger to minor children from parishes to which Father

Vogt was subsequently assigned.

27.     Defendant St. Salome had a duty to reasonably supervise, direct, manage, and control Father Vogt when Father Vogt was assigned to St. Salome. Defendant St. Salome had a duty not to assist, aid and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Vogt posed a danger to minor children when he had contact with such minors, especially when Defendant St. Salome knew or should have known that Father Vogt posed such a danger and Father Vogt was being transferred to other parishes where he would have unsupervised contact with minors. Defendant St. Salome assisted, aided and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Vogt posed a danger to minor children from parishes to which Father Vogt was subsequently assigned.

28.     As a result of Defendants St. Anthony's, St. Francis', and St. Salome's, assisting, aiding and abetting the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Vogt posed a danger to minor children, Father Vogt was assigned to St. Bridget's without any notice to the parishioners of St. Bridget's about the danger Father Vogt posed to minor children. As a result, Father Vogt had unsupervised access to Plaintiff, a minor child, who Father Vogt sexually abused.

29.     Defendants St. Bridget's, St. Anthony's, St. Francis, St. Salome and Catholic Charities knew and/or reasonably should have known, and/or knowingly condoned, and/or covered up, the inappropriate and unlawful sexual activities of Father Vogt, who sexually abused Plaintiff.

30.     Defendant St. Bridget's had a duty to the Plaintiff to properly supervise St. Bridget's priests to ensure that priests did not use their positions with St. Bridget's as a tool for grooming and assaulting vulnerable children. Defendant St. Bridget's knew or should have known that Father Vogt used his positions with St. Bridget's to sexually

8

abuse minor children, including the Plaintiff.

31.     Defendant Catholic Charities had a duty to the Plaintiff to supervise minors during the times that minors used Catholic Charities facilities to ensure that pedophiles did not use Catholic Charities facilities as places to groom and assault vulnerable children.  Defendant Catholic Charities knew or should have known that Father Vogt used its facility to sexually abuse minor children, including the Plaintiff.

### Consequences of the Abuse

32.     Plaintiff suffered personal physical and psychological injuries and damages as a result of Father Vogt's actions, as well as other damages related thereto, as a result of the childhood sexual abuse Plaintiff sustained.

33.     As a direct result of the Defendants St. Bridget's, St. Anthony's, St. Francis', St. Salome's, and Catholic Charities' conduct described herein, Plaintiff suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, and physical manifestations of emotional distress.   Plaintiff was prevented from obtaining the full enjoyment of life; has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling; and has incurred and will continue to incur loss of income and/or loss of earning capacity.  As a victim of Father Vogt's sexual abuse, Plaintiff is unable at this time to fully describe all of the details of that abuse and the extent of the harm he suffered as a result.

### CAUSES OF ACTION

#### FIRST CAUSE OF ACTION

### Negligent Hiring/Retention/Supervision/Direction

34.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 as if fully set forth herein.

35.     Defendants St. Bridget's and Catholic Charities owed a duty of care to all minor persons, including Plaintiff, who were likely to come within the influence or supervision of Father Vogt in his role as priest, counselor, trustee, director, officer,

employee, agent, servant and/or volunteer, to insure that Father Vogt did not use his assigned position to injure minors by sexual assault, sexual abuse, or sexual contact in violation of the laws of the State of New York.

36.     Defendants St. Bridget's and Catholic Charities at all relevant times held their facilities out to be safe places for minors to attend or visit, and Defendant St. Bridget's at all relevant times held its priests out as individuals to whom it was safe to entrust the care of minor children. Defendants Catholic Charities and St. Bridget's entered into an express and/or implied duty to safely treat Plaintiff and assumed the duty to protect and care for him.

37.     Father Vogt sexually assaulted, sexually abused, and/or had sexual contact with Plaintiff when Plaintiff was a minor in New York.

38.     Defendants St. Bridget's and Catholic Charities negligently hired, retained, directed, and supervised Father Vogt, though they knew or should have known that Father Vogt posed a threat of sexual abuse to minors.

39.     Defendants St. Bridget's and Catholic Charities knew or should have known of Father Vogt's propensity for the conduct which caused Plaintiff's injuries prior to, or at the time of, the injuries' occurrence.

40.     Defendants St. Bridget's and Catholic Charities were negligent in failing to properly supervise Father Vogt.

41.     The sexual abuse of children by adults, including priests, is a foreseeable result of negligence.

42.     At all times material hereto, Defendants St. Bridget's and Catholic Charities' actions were willful, wanton, malicious, reckless, negligent and/or outrageous in their disregard for the rights and safety of Plaintiff.

43.     As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

44.     Liabilities of Defendant St. Bridget's were transferred to, or assumed by,

Defendant Immaculate Conception. As a result, Defendant Immaculate Conception is liable to the Plaintiff for the damages caused by Defendant St. Bridget's stated in this cause of action.

45. Liabilities of Defendant Catholic Charities were transferred to, or assumed by, Defendant CYO, Inc. As a result, Defendant CYO, Inc. is liable to the Plaintiff for the damages caused by Defendant Catholic Charities stated in this cause of action.

46. By reason of the foregoing, Defendants St. Bridget's, Immaculate Conception, Catholic Charities, and CYO, Inc. are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

## SECOND CAUSE OF ACTION
## Negligence/Gross Negligence

47. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 as if fully set forth herein.

48. Defendants St. Bridget's, St. Anthony's, St. Francis, St. Salome, and Catholic Charities knew, or were negligent in not knowing, that Father Vogt posed a threat of sexual abuse to children.

49. The acts of Father Vogt described hereinabove were undertaken, and/or enabled by, and/or during the course, and/or within the scope of his respective employment, appointment, assignment, and/or agency with Defendants St. Bridget's, and Catholic Charities.

50. Defendants St. Bridget's and Catholic Charities owed Plaintiff, a minor at the relevant times of abuse, a duty to protect him from Father Vogt's sexual deviancy and the consequential damages, both prior to and/or subsequent to Father Vogt's misconduct.

51. Defendants St. Anthony's, St. Francis, and St. Salome had a duty not to assist, aid and abet the Roman Catholic Bishop and Vicar General of Rochester in

concealing the danger Father Vogt posed to minor children.

52. Defendants St. Bridget's, St. Anthony's, St. Francis', St. Salome's, and Catholic Charities' willful, wanton, grossly negligent and/or negligent act(s) of commission and/or omission, resulted directly and/or proximately in the damage set forth herein at length.

53. Defendants St. Bridget's and Catholic Charities:

   a. gave improper or ambiguous orders or failed to make proper regulations, and/or employed improper persons or instrumentalities in work involving risk of harm to others;

   b. failed adequately to supervise the activities of Father Vogt;

   c. permitted, and/or intentionally failed and/or neglected to prevent, negligent and/or grossly negligent conduct and/or allowed other tortious conduct by persons, whether or not their servants and/or agents and/or employees, upon premises or with instrumentalities under their control; and

   d. allowed the acts of omission and/or commission and/or any or all of the allegations set forth in this Complaint to occur.

54. At all times material hereto, with regard to the allegations contained herein, Father Vogt was under the supervision, employ, direction and/or control of Defendants St. Bridget's, St. Anthony's, St. Francis, St. Salome, and Catholic Charities.

55. At all times material hereto, Defendants St. Bridget's, St. Anthony's, St. Francis', St. Salome's, and Catholic Charities' actions were willful, wanton, malicious, reckless, negligent and outrageous in their disregard for the rights and safety of Plaintiff, which amounted to conduct equivalent to criminality.

56. As a direct and/or indirect result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

57. Liabilities of Defendant St. Bridget's were transferred to, or assumed by,

Defendant Immaculate Conception. As a result, Defendant Immaculate Conception is liable to the Plaintiff for the damages caused by Defendant St. Bridget's stated in this cause of action.

58.    Liabilities of Defendant St. Anthony's were transferred to, or assumed by, Defendant Blessed Sacrament. As a result, Defendant Blessed Sacrament is liable to the Plaintiff for the damages caused by Defendant St. Anthony's stated in this cause of action.

59.    Liabilities of Defendant Blessed Sacrament were transferred to, or assumed by, Defendant Most Holy Name. As a result, Defendant Most Holy Name is liable to the Plaintiff for the damages caused by Defendant St. Anthony's stated in this cause of action.

60.    Liabilities of Defendant St. Salome were transferred to, or assumed by, Defendant Kateri Tekakwitha. As a result, Defendant Kateri Tekakwitha is liable to the Plaintiff for the damages caused by Defendant St. Salome stated in this cause of action.

61.    Liabilities of Defendant Catholic Charities were transferred to, or assumed by, Defendant CYO, Inc. As a result, Defendant CYO, Inc. is liable to the Plaintiff for the damages caused by Defendant Catholic Charities stated in this cause of action.

62.    By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

### THIRD CAUSE OF ACTION
### Breach of Non-Delegable Duty

63.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 as if fully set forth herein.

64.    Plaintiff, when he was a minor, was placed in the care and supervision of the Defendants St. Bridget's and Catholic Charities for the purposes of, *inter alia*, providing Plaintiff with a safe environment in which to participate in religious, educational, youth and recreational activities. There existed a non-delegable duty of trust between Plaintiff and Defendants St. Bridget's and Catholic Charities.

13

65.     Plaintiff was a vulnerable child when placed within the care of Defendants St. Bridget's and Catholic Charities.

66.     As a consequence, Defendants St. Bridget's and Catholic Charities were in the best position to prevent Plaintiff's abuse, to learn of Father Vogt's repeated sexual abuse of Plaintiff, and to stop it.

67.     By virtue of the fact that Plaintiff was sexually abused as a minor child entrusted to the care of the Defendants St. Bridget's and Catholic Charities, Defendants St. Bridget's and Catholic Charities breached their non-delegable duty to Plaintiff.

68.     At all times material hereto Father Vogt was under the supervision, employ, direction and/or control of the Defendants St. Bridget's and Catholic Charities.

69.     As a direct result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

70.     Liabilities of Defendant St. Bridget's were transferred to, or assumed by, Defendant Immaculate Conception.  As a result, Defendant Immaculate Conception is liable to the Plaintiff for the damages caused by Defendant St. Bridget's stated in this cause of action.

71.     Liabilities of Defendant Catholic Charities were transferred to, or assumed by, Defendant CYO, Inc.  As a result, Defendant CYO, Inc. is liable to the Plaintiff for the damages caused by Defendant Catholic Charities stated in this cause of action.

72.     By reason of the foregoing, Defendants St. Bridget's, Immaculate Conception, Catholic Charities, and CYO, Inc. are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

### FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty

73.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 as if fully set forth herein.

14

74.     There exists a fiduciary relationship of trust, confidence, and reliance between Plaintiff and Defendants St. Bridget's and Catholic Charities.  This relationship is based on the entrustment of the Plaintiff while he was a minor child to the care and supervision of the agent or servant of the Defendants St. Bridget's and Catholic Charities. This entrustment of the Plaintiff to the care and supervision of the Defendants St. Bridget's and Catholic Charities, while the Plaintiff was a minor child, required the Defendants St. Bridget's and Catholic Charities to assume a fiduciary relationship and to act in the best interests of the Plaintiff, as well as to protect him while he was a minor and vulnerable child.

75.     Pursuant to their fiduciary relationship, Defendants St. Bridget's and Catholic Charities were entrusted with the well-being, care, and safety of Plaintiff.

76.     Pursuant to their fiduciary relationship, Defendants St. Bridget's and Catholic Charities assumed a duty to act in the best interests of Plaintiff.

77.     Defendants St. Bridget's and Catholic Charities breached their fiduciary duty to Plaintiff.

78.     At all times material hereto, the actions and/or inactions of Defendants St. Bridget's and Catholic Charities were willful, wanton, malicious, reckless, negligent and outrageous in their disregard for the rights and safety of Plaintiff.

79.     As a direct result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

80.     Liabilities of Defendant St. Bridget's were transferred to, or assumed by, Defendant Immaculate Conception.  As a result, Defendant Immaculate Conception is liable to the Plaintiff for the damages caused by Defendant St. Bridget's stated in this cause of action.

81.     Liabilities of Defendant Catholic Charities were transferred to, or assumed by, Defendant CYO, Inc.  As a result, Defendant CYO, Inc. is liable to the Plaintiff for the damages caused by Defendant Catholic Charities stated in this cause of action.

82. By reason of the foregoing, Defendants St. Bridget's, Immaculate Conception, Catholic Charities, and CYO, Inc. are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

FIFTH CAUSE OF ACTION

Negligent Infliction of Emotional Distress

83. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 as if fully set forth herein.

84. As described above, the actions of Defendants St. Bridget's and Catholic Charities, their agents, servants, and/or employees were conducted in a negligent and/or grossly negligent manner.

85. Defendants St. Bridget's and Catholic Charities' actions endangered Plaintiff's safety and caused him to fear for his own safety.

86. As a direct and proximate result of Defendants St. Bridget's and Catholic Charities' actions, which included but were not limited to negligent and/or grossly negligent conduct, Plaintiff suffered and will continue to suffer the severe injuries and damages described herein, including but not limited to, mental and emotional distress.

87. Liabilities of Defendant St. Bridget's were transferred to, or assumed by, Defendant Immaculate Conception. As a result, Defendant Immaculate Conception is liable to the Plaintiff for the damages caused by Defendant St. Bridget's stated in this cause of action.

88. Liabilities of Defendant Catholic Charities were transferred to, or assumed by, Defendant CYO, Inc. As a result, Defendant CYO, Inc. is liable to the Plaintiff for the damages caused by Defendant Catholic Charities stated in this cause of action.

89. By reason of the foregoing, Defendants St. Bridget's, Immaculate Conception, Catholic Charities, and CYO, Inc. are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for

punitive damages, together with interest and costs.

SIXTH CAUSE OF ACTION

**Breach of Duty** *in Loco Parentis*

90.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 as if fully set forth herein.

91.     While he was a minor, Plaintiff was entrusted by his parents to the control of the Defendants St. Bridget's and Catholic Charities, as well as directly to Father Vogt, an agent or servant of Defendants St. Bridget's and Catholic Charities, for the purposes of *inter alia*, providing Plaintiff with appropriate guidance and an opportunity to enjoy educational and youth activities under responsible adult supervision. These Defendants owe — and owed — a duty to children entrusted to them to act *in loco parentis* and to prevent foreseeable injuries.

92.     Defendants St. Bridget's and Catholic Charities breached their duty to act *in loco parentis*.

93.     At all times material hereto, Defendants St. Bridget's and Catholic Charities' actions were willful, wanton, malicious, reckless, negligent, grossly negligent and/or outrageous in their disregard for the rights and safety of Plaintiff.

94.     As a direct result of Defendants St. Bridget's and Catholic Charities' conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

95.     Liabilities of Defendant St. Bridget's were transferred to, or assumed by, Defendant Immaculate Conception. As a result, Defendant Immaculate Conception is liable to the Plaintiff for the damages caused by Defendant St. Bridget's stated in this cause of action.

96.     Liabilities of Defendant Catholic Charities were transferred to, or assumed by, Defendant CYO, Inc. As a result, Defendant CYO, Inc. is liable to the Plaintiff for the damages caused by Defendant Catholic Charities stated in this cause of action.

17

97. By reason of the foregoing, Defendants St. Bridget's, Immaculate Conception, Catholic Charities, and CYO, Inc. are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

SEVENTH CAUSE OF ACTION

**Aiding and Abetting Fraud**

98. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 as if fully set forth herein.

99. The Roman Catholic Bishop and Vicar General of Rochester fraudulently concealed from the parishioners of St. Bridget's information that would have shown Father Vogt was a danger to minor children.

100. Defendants St. Anthony's, St. Francis, and St. Salome had information that would have shown Father Vogt was a danger to minor children. Defendants St. Anthony's, St. Francis, and St. Salome assisted the Roman Catholic Bishop and Vicar General of Rochester in fraudulently concealing information from the parishioners about the danger Father Vogt posed to parishioners.

101. If the information about the danger Father Vogt posed to minors had not been concealed from parishioners, Father Vogt could not have been assigned to St. Bridget's where Father Vogt sexually assaulted, sexually abused, and/or had sexual contact with the Plaintiff.

102. To assist Rochester's Roman Catholic Bishop and Vicar General in fraudulently concealing the information about Father Vogt, Defendants St. Anthony's, St. Francis, and St. Salome failed to disclose Father Vogt's propensity to sexually abuse minors, and intentionally concealed knowledge of Father Vogt's inappropriate and unlawful sexual activities, knowing that minor children, including Plaintiff, in other parishes where Father Vogt was assigned would rely upon this material omission.

103. As a direct and/or indirect result of said conduct, Plaintiff has suffered

and will continue to suffer the injuries and damages described herein.

104.    Liabilities of Defendant St. Anthony's were transferred to, or assumed by, Defendant Blessed Sacrament.  As a result, Defendant Blessed Sacrament is liable to the Plaintiff for the damages caused by Defendant St. Anthony's stated in this cause of action.

105.    Liabilities of Defendant Blessed Sacrament were transferred to, or assumed by, Defendant Most Holy Name.  As a result, Defendant Most Holy Name is liable to the Plaintiff for the damages caused by Defendant St. Anthony's stated in this cause of action.

106.    Liabilities of Defendant St. Salome were transferred to, or assumed by, Defendant Kateri Tekakwitha.  As a result, Defendant Kateri Tekakwitha is liable to the Plaintiff for the damages caused by Defendant St. Salome stated in this cause of action.

107.    By reason of the foregoing, Defendants St. Anthony's, Blessed Sacrament, Most Holy Name, St. Francis, St. Salome, and Kateri Tekakwitha are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

WHEREFORE Plaintiff, demands judgment against the Defendants on each cause of action as follows:

A.  Awarding compensatory damages in an amount to be proved at trial, but in any event in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction;

B.  Awarding punitive damages to the extent permitted by law;

C.  Awarding prejudgment interest to the extent permitted by law;

D.  Awarding costs and fees of this action, including attorneys' fees, to the extent permitted by law; and

E.  Awarding such other and further relief as to this Court may seem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 21, 2019
        New York, New York

                        Respectfully Submitted,


                        /s/ Paul J. Hanly, Jr.
                        Paul J. Hanly, Jr.
                        phanly@simmonsfirm.com
                        Jayne Conroy
                        jconroy@simmonsfirm.com
                        Andrea Bierstein
                        abierstein@simmonsfirm.com
                        SIMMONS HANLY CONROY LLC
                        112 Madison Avenue
                        New York, NY 10016
                        (212) 784-6401 Telephone
                        (212) 213-5949 Facsimile

                        *Attorneys for Plaintiff*


Of counsel:
Mitchell Garabedian
mgarabedian@garabedianlaw.com
William H. Gordon
wgordon@garabedianlaw.com
LAW OFFICES OF MITCHELL GARABEDIAN
100 State Street, 6th Floor
Boston, MA 02109
Phone: (617) 523-6250