# **EXHIBIT 4**

STATE OF NEW YORK
SUPREME COURT: COUNTY OF WESTCHESTER

PC-32 DOE,

Plaintiff,

vs.

THE CATHOLIC YOUTH ORGANIZATION
OF CATHOLIC CHARITIES OF THE DIOCESE
OF ROCHESTER; CATHOLIC CHARITIES OF
THE DIOCESE OF ROCHESTER; MOST
HOLY REDEEMER PARISH; ROMAN
CATHOLIC PARISH OF ST. FRANCES
XAVIER CABRINI, a/k/a, St. FRANCES
XAVIER CABRINI PARISH; MOST HOLY
REDEEMER ELEMENTARY SCHOOL; ST.
MICHAEL CHURCH; HOLY FAMILY
CHURCH; SAINT PETER AND PAUL
CHURCH; ST. SALOME CHURCH & SCHOOL
n/k/a BLESSED KATERI TEKAKWITHA
PARISH; ST. PATRICK'S CHURCH,

Defendants.

**SUMMONS**

Plaintiff designates the County of Westchester as the place of trial. The basis of venue is the Plaintiff's county of residence pursuant to CPLR §503.

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED:     New York, New York
                October 19, 2020

Phillips & Paolicelli, LLP
*Attorneys for Plaintiffs*

{00055915}                                     1

_Victoria E. Phillips_

By:   Victoria Phillips
Diane Paolicelli
Michael DeRuve
747 Third Avenue, 6th Floor
New York, New York 10027
212-388-5100
vphillips@p2law.com
dpaolicelli@p2law.com
mderuve@p2law.com

`

TO:

THE CATHOLIC YOUTH ORGANIZATION OF CATHOLIC CHARITIES OF THE
DIOCESE OF ROCHESTER and CATHOLIC CHARITIES OF THE DIOCESE OF
ROCHESTER,
Attn. Eric Ward Esq.
Ward Greenberg Heller & Reidy LLP
1800 Bausch & Lomb Place
Rochester NY 14604

Other Defendants Identified in the Caption:
Attn. Timothy P. Lyster Esq.
Woods Oviatt Gilman LLP
1900 Bausch & Lomb Place
Rochester NY 14604

{00055915}          2

STATE OF NEW YORK
SUPREME COURT: COUNTY OF WESTCHESTER

PC-32 DOE,

                            Plaintiff,

vs.

THE CATHOLIC YOUTH ORGANIZATION
OF CATHOLIC CHARITIES OF THE DIOCESE
OF ROCHESTER; CATHOLIC CHARITIES OF
THE DIOCESE OF ROCHESTER; MOST
HOLY REDEEMER PARISH; ROMAN
CATHOLIC PARISH OF ST. FRANCES
XAVIER CABRINI, a/k/a, St. FRANCES
XAVIER CABRINI PARISH; MOST HOLY
REDEEMER ELEMENTARY SCHOOL; ST.
MICHAEL CHURCH; HOLY FAMILY
CHURCH; SAINT PETER AND PAUL
CHURCH; ST. SALOME CHURCH & SCHOOL
n/k/a BLESSED KATERI TEKAKWITHA
PARISH; ST. PATRICK'S CHURCH,

                            Defendants.

**COMPLAINT**

Index No.:

---

Plaintiff PC-32 Doe, by and through his undersigned attorneys, as and for his Complaint, alleges as follows:

### NATURE OF THE ACTION

1.      This action is brought pursuant to the Child Victims Act, codified at CPLR 214-g.

2.      Plaintiff PC-32 Doe was repeatedly sexually abused and assaulted by Father Paul Schnacky (herein "Fr. Schnacky").

3.      At all relevant times, Fr. Schnacky was hired, retained, supervised, placed, placed in positions of authority, directed, and otherwise authorized to act by the above captioned Defendants, including The Catholic Youth Organization of Catholic Charities of the Diocese of

{00055915}                  3

Rochester; Catholic Charities of the Diocese of Rochester; Most Holy Redeemer Parish; Roman Catholic Parish of St. Frances Xavier Cabrini, a/k/a St. Frances Xavier Cabrini Parish; Most Holy Redeemer Elementary School; St. Michael Church; Saint Peter and Paul Church; St. Salome Church & School n/k/a Blessed Kateri Tekakwitha Parish; and St. Patrick's Church, and Most Holy Redeemer Elementary (herein collectively "Defendants"), in conjunction with the Diocese of Rochester ("Diocese of Rochester" or "Diocese").

4.    From approximately 1971-1976, when Plaintiff was approximately ten to fifteen years old, he was repeatedly and profoundly sexually abused by Fr. Schnacky.

5.    Plaintiff was an altar boy and student at the Most Holy Redeemer Parish and Most Holy Redeemer Elementary in Rochester, New York while abuse took place, where the abuser, Fr. Schnacky was a priest.

6.    On information and belief, despite years of refusal to publicly address rampant child abuse by priests, the Diocese of Rochester recently published a long list clergy in their employ who were credibly accused of molesting children.

7.    On information and belief, the list of clergy who were credibly accused of molesting children includes Fr. Schnacky.

8.    On information and belief, Defendants have long known that substantial numbers of priests throughout history, and up to and including the present day, violate their vows or promises of celibacy and otherwise misbehave by soliciting sexual contact with parishioners and others, in particular with children like Plaintiff, who are entrusted to their spiritual care and guidance.

9.    Official Church documents dealing with this unspeakable misconduct span the centuries, many of which were and are well known to Defendants.

{00055915}                                          4

10.     Notwithstanding this knowledge, and their fiduciary duties and relationship of trust owed to parishioners and their children, Defendants negligently, recklessly, and willfully failed to protect Plaintiff from sexual abuse by Fr. Schnacky, permitted the abuse to occur, failed to supervise Fr. Schnacky, failed to timely investigate Fr. Schnacky's misconduct, failed to educate and train minors, parents, clergy members, and/or adult staff about the risk of sexual abuse in their institution and facilities, to identify signs of sexual abuse, grooming behaviors, or sexual predators, and to report any suspicion that a minor may be getting abused, maltreated, groomed, or otherwise sexually abused, acted to protect their own self-interest to the detriment of innocent children, and are otherwise responsible for Fr. Schnacky's sexual assault of Plaintiff, and Plaintiff's consequential injuries and damages.

### PARTIES

11.     Plaintiff is an individual residing in Westchester County, New York.

12.     Plaintiff was born in 1961.

13.     On information and belief, at all relevant times, Defendant Most Holy Redeemer Parish ("Holy Redeemer") was a Roman Catholic Parish and not-for-profit corporation organized pursuant to the laws of the State of New York, and which operated at all relevant times in Monroe County, New York with its principal place of business at 634 Hudson Avenue, Rochester, New York 14621.

14.     On information and belief, at all relevant times, the Roman Catholic Bishop of Rochester, New York was the President of Holy Redeemer, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Holy Redeemer.

15.     On information and belief, at all relevant times, Defendant Roman Catholic Parish of St. Frances Xavier Cabrini, also known as St. Frances Xavier Cabrini Parish ("St. Frances

Xavier Cabrini") was and is a Roman Catholic Parish and not-for-profit corporation organized pursuant to the laws of the State of New York, and which operates at all relevant times in Monroe County, New York with its principal place of business at 124 Evergreen Street, Rochester, New York 14605.

16.     On information and belief, at all relevant times, the Roman Catholic Bishop of Rochester, New York was the President of St. Frances Xavier Cabrini, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Frances Xavier Cabrini.

17.     On information and belief, as a result of several corporate mergers, Defendant St. Frances Xavier Cabrini is the legal successor to Defendant Holy Redeemer.

18.     On information and belief, Defendant Catholic Charities of the Diocese of Rochester ("Catholic Charities") is a not-for-profit corporation organized pursuant to New York's Not-for-Profit Corporation Law with its principal place of business at 1150 Buffalo Road, Rochester, New York 14624 in Monroe County, New York.

19.     On information and belief, at relevant times, Catholic Charities created, oversaw, operated, managed, directed and controlled facilities and activities under the name of, or with the name of, Catholic Youth Organization located at relevant times on Chestnut Street in Rochester, New York.

20.     On information and belief, Defendant The Catholic Youth Organization of Catholic Charities of the Diocese of Rochester ("CYO, Inc.") is a not-for-profit corporation organized pursuant to New York's Not-for-Profit Corporation Law with its principal office at 1150 Buffalo Road, Rochester, New York 14624 in Monroe County, New York.

21.     On information and belief, Defendant CYO, Inc. is the legal successor to Defendant Catholic Charities.

{00055915}                          6

22.     On information and belief, at all relevant times, Defendant Most Holy Redeemer Elementary School (herein "Holy Redeemer School") was a Roman Catholic School, and not-for-profit corporation organized pursuant to the laws of the State of New York, and which operated at all relevant times in Monroe County, New York.

23.     On information and belief, at all relevant times, Defendant St. Michael Church was and is a Roman Catholic Parish and not-for-profit corporation organized pursuant to the laws of the State of New York, and which operates at all relevant times in Monroe County, New York with its principal place of business at 869 Clinton Avenue North, Rochester, New York 14605.

24.     On information and belief, at all relevant times, the Roman Catholic Bishop of Rochester, New York was the President of St. Michael Church, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Michael Church.

25.     On information and belief, at all relevant times, Defendant Roman Catholic Parish of Holy Family Church was and is a Roman Catholic Parish and not-for-profit corporation organized pursuant to the laws of the State of New York, and which operates at all relevant times in Cayuga County, New York with its principal place of business at 93 North Street, Auburn, New York 13021.

26.     On information and belief, at all relevant times, the Roman Catholic Bishop of Rochester, New York was the President of Holy Family Church, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Holy Family Church.

27.     On information and belief, at all relevant times, Defendant Saint Peter & Paul Church was and is a Roman Catholic Parish and not-for-profit corporation organized pursuant to the laws of the State of New York, and which operated at all relevant times in Monroe County,

{00055915}                                    7

New York with its principal place of business at 736 West Main Street, Rochester, New York 14611.

28. On information and belief, at all relevant times, the Roman Catholic Bishop of Rochester, New York was the President of Saint Peter and Paul Church, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Saint Peter and Paul Church.

29. On information and belief, at all relevant times, Defendant St. Salome Church & School was a Roman Catholic Parish and not-for-profit corporation organized pursuant to the laws of the State of New York, and which operated at all relevant times in Monroe County, New York with its principal place of business at 4250 Culver Road, Rochester, New York 14622.

30. On information and belief, at all relevant times, the Roman Catholic Bishop of Rochester, New York was the President of St. Salome Church & School, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Salome Church & School.

31. On information and belief, on or about 2010, St. Salome Church & School merged with and adopted the name of the Blessed Kateri Tekakwitha Parish, a Roman Catholic Church, organized pursuant to the laws of the State of New York.

32. On information and belief, Defendant Blessed Kateri Tekakwitha Parish is operated in Monroe County, New York, with its principal place of business at 2732 Culver Road, Rochester, NY 14622, and Defendant Blessed Kateri Tekakwitha Parish assumed some or all of the liabilities and/or assets of Defendant St. Salome Church & School.

33. On information and belief, at all relevant times, Defendant St. Patrick's Church was and is a Roman Catholic Parish and not-for-profit corporation organized pursuant to the laws

{00055915}                    8

of the State of New York, and which operates at all relevant times in Cayuga County, New York with its principal place of business at 2576 Mechanic Street, Cato, New York 13033.

34.     On information and belief, at all relevant times, the Roman Catholic Bishop of Rochester, New York was the President of St. Patrick's Church, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Patrick's Church.

35.     On information and belief, at all relevant times, Holy Redeemer owned the premises where Holy Redeemer School was located.

36.     On information and belief, at all relevant times, Defendants Holy Redeemer helped to oversee, manage control, direct and operate Holy Redeemer School.

37.     At all relevant times, Defendants individually and collectively were among the entities that oversaw, managed, controlled, directed and assigned priests, brothers, and other clergy to work with children including Plaintiff in parishes, churches and schools of the Diocese, including Holy Redeemer School.

38.     At all relevant times, Defendants The Catholic Youth Organization of Catholic Charities of the Diocese of Rochester; Catholic Charities of the Diocese of Rochester; Most Holy Redeemer Parish; Roman Catholic Parish of St. Frances Xavier Cabrini, a/k/a St. Frances Xavier Cabrini Parish; Most Holy Redeemer Elementary School; St. Michael Church; Saint Peter and Paul Church; St. Salome Church & School n/k/a Blessed Kateri Tekakwitha Parish; and St. Patrick's Church were and still are under the direct authority, control, and province of the Diocese of Rochester, now in bankruptcy.

## FACTUAL ALLEGATIONS

39.     Plaintiff repeats and re-alleges all preceding paragraphs of this Complaint.

40.     On information and belief, Fr. Schnacky was ordained in or about 1953.

{00055915}                                    9

41. On information and belief, prior to the sexual abuse of Plaintiff, in 1953-1957 Fr. Schnacky served as an Assistant at St. Michael's Roman Catholic Church.

42.     On information and belief, from approximately 1958-1960, Fr. Schnacky served as Assistant at Defendant Holy Family Church & School.

43.     On information and belief, from approximately 1960-1964, Fr. Schnacky served as Assistant at SS. Peter & Paul Church & School.

44.     On information and belief, from approximately 1964-1965, Fr. Schnacky served as Assistant at St. Salome Church & School.

45.     On information and belief, from approximately 1965-1975, Fr. Schnacky served as Assistant at Most Holy Redeemer Church and School.

46.     On information and belief, from approximately 1975-1976, Fr. Schnacky served as Parochial Vicar at St. Patrick's Church.

47.     On information and belief, Defendants each negligently retained Fr. Schnacky with knowledge of his propensity for the type of behavior which resulted in Plaintiff's injuries, and did not take steps to prevent his abuse of minors or to report him to the authorities.

48.     On information and belief, prior to Fr. Schnacky's sexual abuse of Plaintiff herein, Defendants and their respective executive officers knew or should have known it was not safe to allow Fr. Schnacky to have unsupervised contact with minor children, in that Fr. Schnacky posed a sexual danger to minor children.

49.     On information and belief, the Roman Catholic Bishop and Vicar General concealed the information about the danger Fr. Schnacky posed to minor children, in order that they could assign Fr. Schnacky to work at parishes, including Defendants, and Defendants aided

{00055915}                                    10

and abetted the Roman Catholic Bishop and Vicar General in concealing the information about the danger Fr. Schnacky posed to minor children.

50.     At all relevant times, Fr. Schnacky was a Roman Catholic priest employed by Defendants, in conjunction with the Diocese.

51.     At all relevant times, Fr. Schnacky was under the direct supervision, employ, and control of the Defendants.

52.     As a minor, Plaintiff was a student and altar boy attending Holy Redeemer.

53.     During elementary school, Plaintiff was a student attending Holy Redeemer School.

54.     While Plaintiff attended Holy Redeemer School Fr. Schnacky was assigned to work as a priest at Holy Redeemer by Defendants.

55.     By assigning Fr. Schnacky to the role of priest, Defendants gave Fr. Schnacky complete access to minors, including Plaintiff, and empowered him to discipline, punish, reprimand, chastise, expel and otherwise exercise complete authority over minors.

56.     Fr. Schnacky's duties and responsibilities included supervising, interacting with, mentoring and counseling minor boys.

57.     In the performance of his duties, Defendants authorized Fr. Schnacky to be alone with minor children, including Plaintiff, and to have unfettered and unsupervised access to them on Defendants' property.

58.     In the performance of his duties, Defendants authorized Fr. Schnacky to take minor children, including Plaintiff, from school to attend outings including swimming with no other adult present.

{00055915}                              11

59.     Defendants also authorized Fr. Schnacky to have physical contact with minor children, in a manner consistent with providing counseling, educational and spiritual guidance, and leadership.

60.     Defendants required altar boys, like Plaintiff, to accept instruction from Fr. Schnacky and other clergy and teachers, and to obey their instruction.

61.     Plaintiff was raised as a Catholic, and at all relevant times had developed a reverence, respect and/or fear for the Catholic Church and its clergy, including Fr. Schnacky.

62.     In approximately 1971, when Plaintiff was approximately 10 years old, Fr. Schnacky, acting in his capacity as priest and a leader at CYO, and in furtherance of the business and interests of Defendants, used his position to gain the trust and friendship of Plaintiff and his family so he could act on his sexual attraction to minor children.

63.     Plaintiff served as an altar boy at Holy Redeemer.

64.     Over the course of approximately five years, Fr. Schnacky engaged in unlawful, unpermitted, forcible and harmful sexual contact with Plaintiff on many occasions.

65.     This abusive, unpermitted, forcible and harmful sexual contact with Plaintiff occurred at numerous locations including the premises of Holy Redeemer, in Fr. Schnacky's car, and at an athletic club in Rochester, NY.

66.     The sexual contact was in violation of Article 130 of New York Penal Law.

67.     Plaintiff's relationship to Defendants as a vulnerable child, altar boy, minor participating in CYO activities, and student, and the culture of the Catholic Church which Defendants endorsed, put pressure on Plaintiff not to report Fr. Schnacky's abuse.

68.     Defendants knew or should have known that Fr. Schnacky was engaged in sexual abuse of minor children for years, including but not limited to Plaintiff.

{00055915}                          12

69.     Defendants knew or should have known that Fr. Schnacky was a danger to minor boys like Plaintiff before he sexually abused Plaintiff.

70.     The Vatican and other church authorities addressed the problem of clergy sex abuse on countless occasions prior to Fr. Schnacky's abuse of Plaintiff, and communicated as much with all levels of Church hierarchy including bishops and other Diocesan leaders.

71.     As such, at all relevant times, Defendants were well aware that errant sexual behavior by some priests was not only widespread but predictable.

72.     Upon information and belief, not only were Defendants aware of sexual abuse of children, but they participated in covering up such heinous acts by moving errant priests and clergy members, such as Fr. Schnacky, from assignment to assignment, thereby putting Plaintiff and other children in harm's way.

73.     Defendants owed Plaintiff a duty of reasonable care because they had superior knowledge about the risks their facilities posed to minor children, the risk of abuse in general, and the risks that Fr. Schnacky posed to Plaintiff.

74.     Prior to the time of Plaintiff's abuse by Fr. Schnacky, Defendants knew or should have known of numerous acts of sexual assault committed by clergy members within the Diocese and elsewhere in the Roman Catholic Church, and knew that there was a specific danger of child sex abuse for children in their institutions and programs.

75.     The sexual abuse of Plaintiff by Fr. Schnacky was foreseeable.

76.     Prior to the time of Plaintiff's abuse by Fr. Schnacky, Defendants knew or should have known of Fr. Schnacky's acts of child sexual abuse on other minors.

77.     Defendants owed Plaintiff a reasonable duty of care because they affirmatively solicited children and parents to send their children to Holy Redeemer and Holy Redeemer

{00055915}                              13

School, and to participate in CYO activities and outings overseen by Father Schnacky; they undertook custody of minor children, including Plaintiff; they promoted their facilities and programs as being safe for children, they held out their agents, including Fr. Schnacky, as safe to work with and around minor boys, they encouraged parents and children to spend time with their agents; and/or authorized their agents, including Fr. Schnacky, to spend time with, interact with, and recruit children.

78.     Defendants owed Plaintiff a heightened, fiduciary duty of care because they held themselves out as being able to provide a safe and secure environment for children, including Plaintiff; Plaintiff's family entrusted Plaintiff to Defendants' care, and expected that Plaintiff would be safe and properly supervised in an environment free from harm and abuse; Plaintiff was a vulnerable minor, and unable to protect himself; and Defendants affirmatively assumed a position of empowerment over Plaintiff.

79.     Defendants owed Plaintiff a duty to protect him from harm because Defendants' acts and omissions created a foreseeable risk of harm to Plaintiff.

80.     As a result of the foregoing, Plaintiff has suffered and continues to suffer great physical and mental pain and anguish, severe and permanent emotional distress, psychological injuries, fear and anxiety; was prevented and will continue to be prevented from performing his normal daily activities; was and will continue to be deprived of the enjoyment of life's pleasures; has suffered and will continue to suffer loss of earnings and earning capacity; has incurred and will in the future incur expenses for medical and psychological treatment, and was otherwise damaged in an amount that exceeds the monetary limits of all courts of lower jurisdiction.

81.     On information and belief, in 2010, Father Paul R. Schnacky was eventually placed on leave without privileges after allegations of improper contact with minors in the 1970s.

{00055915}                                  14

82.     On information and belief, the Diocese of Rochester review board said that an investigation of the allegation confirmed the complaint.

83.     On information and belief, in 2018, Fr. Schnacky was sentenced by the Vatican to a life of prayer and penance.

84.     To the extent that any Defendants plead, or otherwise seek to rely upon Article 16 of the New York Civil Practice Law and Rules (CPLR) to have fault apportioned to another allegedly culpable party, Plaintiff expressly states that Defendants' conduct falls within one or more of the subdivisions of CPLR 1602.

## FIRST CAUSE OF ACTION

## NEGLIGENT HIRING, RETENTION, SUPERVISON, AND DIRECTION

85.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

86.     Prior to the sexual abuse of Plaintiff, the above captioned Defendants learned or should have learned that Fr. Schnacky was not fit to work with or around children.

87.     Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Fr. Schnacky's propensity to commit sexual abuse and of the risk to Plaintiff's safety.

88.     Defendants negligently retained Fr. Schnacky with knowledge of Fr. Schnacky's propensity for the type of behavior which resulted in Plaintiff's injuries.

89.     At all relevant times Defendants had a duty to exercise due care in hiring, appointing, assigning, retention, supervision and direction of Fr. Schnacky, so as to protect minor children, including Plaintiff, who were likely to come into contact with him, and/or under his

{00055915}                              15

influence or supervision, and to ensure that Fr. Schnacky did not use this assigned position to injure minors by sexual assault, contact or abuse.

90.    Defendants were negligent and failed to use reasonable care in hiring, appointing, assigning, and retention, of Fr. Schnacky, failed to properly investigate his background and employment history, and/or hired, appointed and/or assigned him to Holy Redeemer, when Defendants knew or should have known of facts that would make him a danger to children; and Defendants were otherwise negligent.

91.    Defendants were negligent and did not use reasonable care in their supervision and direction of Fr. Schnacky, failed to monitor his activities, failed to oversee the manner in which he carried out the duties to which Defendants assigned him, even though they knew or should have known that Fr. Schnacky posed a threat of sexual abuse to minors; allowed the misconduct describe above to occur and continue; failed to investigate Fr. Schnacky's dangerous activities and remove him from their premises and from positions where he could abuse minors including Plaintiff; and Defendants were otherwise negligent.

92.    Fr. Schnacky would not have been in a position to sexually abuse Plaintiff had Defendants not been negligent in the hiring, retention, supervision, and direction of Fr. Schnacky.

93.    At all relevant times, Fr. Schnacky acted in the course and scope of his employment with Defendants.

94.    Defendants' aforesaid actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

{00055915}                                    16

95. As a proximate and direct result of Fr. Schnacky's sexual abuse and Defendant's misconduct, Plaintiff suffered grave injury, including physical, psychological and emotional injury as described above.

96. On information and belief, liabilities of Holy Redeemer were transferred to, or assumed by, St. Frances Xavier Cabrini.

97. As a result, St. Frances Xavier Cabrini is liable to the Plaintiff for the damages caused by Holy Redeemer stated in this cause of action.

98. On information and belief, liabilities of Catholic Charities were transferred to, or assumed by, CYO, Inc.

99. As a result, CYO, Inc. is liable to the Plaintiff for the damages caused by Catholic Charities stated in this cause of action.

100. At all relevant times, there existed a fiduciary relationship of trust, confidence and reliance between Plaintiff and each Defendant.

101. The entrustment of Plaintiff to the care and supervision of the Defendants while Plaintiff was a vulnerable child, imposed upon Defendants fiduciary duty to act in the best interests of Plaintiff.

102. Defendants were entrusted with the well-being, care, and safety of Plaintiff, which Defendants had a fiduciary duty to protect.

103. By reason of the foregoing, Defendants breached their fiduciary duties to Plaintiff.

104. At all relevant times, Plaintiff was a vulnerable child entrusted to Defendants care, and was under the supervision and control of Defendants, such that Defendants owed him a duty to act *in* loco parentis and to prevent foreseeable injuries.

{00055915}                                    17

105. By reason of the foregoing, Defendants breached their duties to act *in loco parentis.*

106. As a direct and proximate result of Fr. Schnacky's sexual abuse and Defendant's misconduct, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described above

107. By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages, in an amount that exceeds the monetary limits of all courts of lower jurisdiction, to be determined at trial, together with interest and costs.

## SECOND CAUSE OF ACTION

## NEGLIGENT, RECKLESS, AND WILLFUL MISCONDUCT

108. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

109. At all relevant times, Defendants affirmatively and/or impliedly represented to minor children, their families and the general public that clergy, including Fr. Schnacky, did not pose a risk and/or that they did not have a history of sexually abusing children, and that children, including Plaintiff, would be safe in their care.

110. Defendants knew or should have known this representation was false and that employing Fr. Schnacky and giving him unfettered access to children, including Plaintiff, posed an unacceptable risk of harm to children.

111. Defendants were negligent and did not use reasonable care in their training, if any, of minor parishioners and parents about the risk of sexual abuse in their institutions, organizations, and facilities, were negligent and failed to use reasonable care to identify signs of sexual abuse, grooming behaviors, or sexual predators, and were negligent and failed to report

{00055915}                                    18

any suspicion that a minor may be getting abused, maltreated, groomed, or otherwise sexually abused.

112.    Defendants were negligent and did not use reasonable care in their training, if any, of clergy members and/or adult staff about the risk of sexual abuse in their institutions, organizations, and facilities, were negligent and failed to identify signs of sexual abuse, grooming behaviors, or sexual predators, and were negligent and failed to report any suspicion that a minor may be getting abused, maltreated, groomed, or otherwise sexually abused.

113.    Upon information and belief, Defendants covered up acts of abuse by Fr. Schnacky, and concealed facts concerning Fr. Schnacky's sexual misconduct from Plaintiff and his family.

114.    By failing to disclose the identities, histories, and information about sexually abusive clergy in their employ and working at or with their organizations, including Fr. Schnacky, Defendants unreasonably deprived the families of children entrusted to their care, including Plaintiff, of the ability to protect their children.

115.    Defendants failed to warn Plaintiff and his family that Fr. Schnacky posed a risk of child sexual assault.

116.    The conduct of Defendants as described herein was done with utter disregard as to the potential profound injuries which would ensue, and with depraved indifference to the health and well-being of children, and to the fact that Defendants were knowingly subjecting children in their charge, including Plaintiff, to sexual crimes.

117.    Defendants' aforesaid actions were negligent, reckless, willful and wonton in their disregard for the rights and safety of children, including Plaintiff.

{00055915}                              19

118.     As a direct and proximate result of Fr. Schnacky and Defendants' misconduct, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described above.

119.     By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages, in an amount that exceeds the monetary limits of all courts of lower jurisdiction, to be determined at trial, together with interest and costs.

## THIRD CAUSE OF ACTION

## PREMISES LIABILITY

120.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

121.     On information and belief, at all relevant times, Defendants owned, operated, and/or controlled the premises including premises known as Holy Redeemer and Holy Redeemer School, areas where the sexual abuse of Plaintiff occurred.

122.     At all relevant times, Plaintiff was rightfully present at the aforementioned premises.

123.     Defendants had a duty to see that the premises at which Plaintiff was rightfully present were in a reasonably safe condition for the intended use by students, like Plaintiff, whose presence was reasonably anticipated.

124.     Defendants knowingly and willfully failed to provide reasonably safe premises that were free from the presence of sexual predators and/or the assault by the occupants of the premises, including Fr. Schnacky.  Defendants thereby breached their duty of care of Plaintiff.

{00055915}                                        20

125.     As a direct and proximate result of Fr. Schnacky's sexual abuse and Defendant's misconduct, Plaintiff suffered grave injury, including the physical, psychological, and emotional injury and damages as described above.

126.     By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages, in an amount that exceeds the monetary limits of all courts of lower jurisdiction, to be determined at trial, together with interest and costs.

<strong>FOURTH CAUSE OF ACTION</strong>

<strong><u>BREACH OF STATUTORY DUTIES TO REPORT</u></strong>

127.     Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein

128.     Pursuant to N.Y. Soc. Serv. Law §§ 413 and 420 and New York Educ. Law Art. 23-b, Defendants had a statutory duty to report reasonable suspicion of abuse of children in their care.

129.     Defendants breached their statutory duty by knowingly and/or willingly failing to report reasonable suspicion of abuse by Fr. Schnacky of children in their care.

130.     As a direct and proximate result of Fr. Schnacky's sexual abuse and Defendants' misconduct, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages  as described above.

131.     By the reason of the foregoing, Defendants are liable to Plaintiff for compensatory and punitive damages, in an amount that exceeds the monetary limits of all courts of lower jurisdiction, to be determined at trial, together with interest and costs.

**WHEREFORE**, Plaintiff prays for judgment as follows:

{00055915}                             21

a.  Awarding Plaintiff compensatory damages for his injuries, in an amount to be determined at trial;

b.  Awarding Plaintiff punitive damages for his injuries, in an amount to be determined at trial;

c.  Awarding Plaintiff prejudgment interest, to the extent available by law;

d.  Awarding Plaintiffs costs and disbursements and attorneys' fees to the extent available by law; and

e.  Awarding such other and further relief as this Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

132.    Plaintiff demands a trial by jury of all issues triable by jury in this action.


Dated:         October 19, 2020


Yours, etc.

**PHILLIPS & PAOLICELLI, LLP**


_Victoria Phillips_
By:    Victoria Phillips
       Diane Paolicelli
       Michael DeRuve
       747 Third Avenue, 6th Floor
       New York, New York 10027
       212-388-5100
       vphillips@p2law.com
       dpaolicelli@p2law.com
       mderuve@p2law.com

{00055915}                    22