# EXHIBIT 5

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2180364

Book    Page    CIVIL

Return To:
MAURA C. MCGUIRE

No. Pages:  21

Instrument: MISCELLANEOUS DOCUMENT

Control #:          201908200092
Index #:            E2019007874

Date: 08/20/2019

Time: 6:05:13 AM



Roman Catholic Diocese of Rochester
St. Patrick Parish

Total Fees Paid:                    $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

ADAM J BELLO

MONROE COUNTY CLERK

STATE OF NEW YORK
SUPREME COURT        COUNTY OF MONROE

████████████████████ and T████A████

Plaintiffs,

v.

ROMAN CATHOLIC DIOCESE OF ROCHESTER,
and ST. PATRICK PARISH,

Defendants.

**VERIFIED COMPLAINT
JURY TRIAL DEMANDED**

Index No: _____

Plaintiffs ██████████████████████ and T████A████

(together, "Plaintiffs"), by and through their attorneys, Morgenstern DeVoesick PLLC and

Andreozzi & Associates, P.C., as and for their Complaint in this matter against defendants Roman

Catholic Diocese of Rochester and St. Patrick Parish (together, "Defendants"), hereby allege as

follows:

## Nature of the Action

1.      Plaintiffs bring this action against Defendants pursuant to New York's Child

Victims Act ("CVA") (N.Y. C.P.L.R. § 214-g).

## Parties

2.      Defendant Roman Catholic Diocese of Rochester ("Diocese" or "Rochester

Diocese") is religious corporation organized pursuant to the New York Religious Corporations

Law, with its principal office located at 1150 Buffalo Road, Rochester, New York, 14624, in

Monroe County, New York.

3.     The Rochester Diocese serves 12 New York State counties with 7 Deaneries and a Catholic population of more than 360,000 people across Monroe, Wayne, Livingston, Steuben, Ontario, Seneca, Cayuga, Tompkins, Schuyler, Chemung, Tioga, and Yates Counties.

4.     At all relevant times, the Rochester Diocese created, oversaw, managed, controlled, directed and operated parishes and/or churches of the Diocese, including Defendant St. Patrick Parish.

5.     Defendant St. Patrick Parish is a Catholic parish within and under the authority of the Rochester Diocese, with its principal location at 300 Main Street, Owego, New York 13827.

6.     At all relevant times, the Rochester Diocese oversaw, managed, controlled, and directed all priests assigned to work in parishes and/or churches of the Diocese, including Father Albert Cason.

7.     Plaintiff ███████ is an adult resident of California.

8.     Plaintiff ███████ is an adult resident of Florida.

9.     Plaintiff ███████ is an adult resident of Washington.

10.     Plaintiff T███ A███ is an adult resident of North Carolina.

**Jurisdiction and Venue**

11.     This Court has personal jurisdiction over the Defendants pursuant to N.Y. C.P.L.R. § 301 and § 302.

12.     This Court, as a court of general jurisdiction, has subject matter jurisdiction over this action.

13.     Venue in the County of Monroe is proper pursuant to CPLR § 503 because the Defendant Diocese resides and/or does business in this County.

Page 1 of 15

### Facts

#### Sexual Abuse in the Rochester Diocese and by Father Albert Cason

14.     As is now well-known, child sex abuse by Catholic priests was widespread, resulting in major sex abuse scandals involving Catholic Dioceses around the world, including those in Boston, Los Angeles, Philadelphia, and many other cities.

15.     For many years, however, the scope of the Catholic child sex-abuse epidemic was unknown.

16.     Thanks to an investigation in 2002 by the Boston Globe's "Spotlight" team, made more famous by the 2015 film *Spotlight*, the public is now aware that thousands of children have been sexually abused by Catholic priests, and that many of those predator priests were protected by Catholic officials.

17.     The Rochester Diocese was no different.

18.     Throughout the history of the Rochester Diocese, at least 35 clerics associated with the Diocese have been accused of sexual misconduct and/or abuse.

19.     The Rochester Diocese has thus been aware of the risk of sexual abuse by its clerics for decades, well before the sexual abuse of the Plaintiffs, which is described herein.

20.     Sexual abuse by Diocesan clergy was a known, preventable hazard, which the Diocese failed to respond to.

21.     One of the Diocese's worst priest-offenders, and the Plaintiffs' abuser, was Rochester Diocesan priest Albert Cason ("Cason").

22.     Cason was ordained as a Rochester Diocesan priest in 1962.

23.     Thereafter, Cason served in several Rochester Diocese parishes, including:

a.   Sacred Heart in Auburn, New York from 1963 – 1968;

    b.  St. John the Evangelist in Spencerport, New York from 1969 – 1973; and,

    c.  St. Patrick in Owego, New York from June 1973 – 1985.

24.    Cason was co-pastor with Fr. Thomas H. Watts during his tenure at St. Patrick.

25.    Prior to arriving at St. Patrick in Owego, Cason had already begun sexually abusing children, including, but not limited to:

    a.  Even before his ordination, Cason abused a 12-year-old child in approximately 1959; and,

    b.  Cason abused an altar boy when Cason was associated with St. John the Evangelist in Spencerport between 1969 – 1973, before Cason's transfer to St. Patrick in Owego.

26.    Upon information and belief, Cason abused other children as well by the time he was transferred to St. Patrick in Owego.

27.    Upon information and belief, the Rochester Diocese was aware Cason sexually abused children prior to and/or after his transfer to St. Patrick before he abused the Plaintiffs.

28.    Upon information and belief, the Rochester Diocese transferred Cason to St. Patrick due to allegations of abuse against him known to the Diocese by 1973.

29.    Like other Catholic dioceses, the Rochester Diocese transferred Cason to protect Cason and the Diocese instead of the children of the Diocese, including the Plaintiffs.

30.    At no time did the Rochester Diocese make Plaintiffs or their families aware of Cason's history, or of the known risk of abuse posed by him and other Catholic clergy.

31.    Such acts by the Rochester Diocese and/or St. Patrick were intentional and/or reckless.

**Plaintiffs' Abuse by Cason**

Page **3** of **15**

32.     As described below, Cason sexually abused all four Plaintiffs, in addition to numerous other children, which Cason admitted under questioning in 1985.

33.     All four Plaintiffs grew up in Owego and attended St. Patrick, which was the centerpiece of their small community.

34.     All four Plaintiffs were groomed by and developed a relationship with Cason, which he exploited to abuse them.

35.     All four Plaintiffs had been taught since childhood to respect, honor, and obey priests.

36.     Plaintiff T█████ A███ served as an altar boy at St. Patrick beginning in approximately 1976 - 1977; he was in 5th grade and approximately 11-years-old.

37.     Cason and Father Watts trained the altar boys.

38.     Plaintiff T█████ A███ began to spend more time with Cason.

39.     For approximately four years, Cason continually sexually abused Plaintiff T████ A███ including fondling, masturbation, oral sex, and anal rape.

40.     Plaintiff █████████ similarly became involved in church activities around 11 years old, and in approximately 1976 became an altar boy under Cason.

41.     Over the next several years, Cason sexually abused █████████, to include fondling and masturbation, and an instance of attempted rape.

42.     Plaintiff █████████ also discovered child pornography Cason created with himself and other boys, many of whom Plaintiff █████████ knew.

43.     Plaintiff █████████ was similarly sexually abused by Cason for approximately 15 months in 1979 – 1980, including fondling and masturbation.

44.     Plaintiff █████████ also became an altar boy at St. Patrick around 1976 – 77.

Page 4 of 15

45.     Over the next three or four years, Plaintiff ███████ was sexually abused by Cason, including fondling and masturbation.

46.     As a direct result of the Defendants' conduct described herein, Plaintiffs suffered and will continue to suffer as follows:

a.  Plaintiffs suffered, and continue to suffer, severe and permanent emotional distress, including physical manifestations of emotional distress;

b.  Plaintiffs suffered, and continue to suffer, deprivation of the full enjoyment of life;

c.  Plaintiffs incurred, and continue to incur, expenses for medical and psychological treatment, therapy, and counseling; and,

d.  Plaintiffs incurred. and will continue to incur, loss of income and/or loss of earning capacity.

### Causes of Action

#### First Cause of Action
#### Negligent Hiring, Negligent Retention, Negligent Supervision

47.     Plaintiffs repeat and re-allege every allegation set forth throughout this Complaint as if fully set forth herein.

48.     Defendants owed a duty of care to all minor persons, including Plaintiffs, who were likely to come in contact with Cason in his role as priest, counselor, trustee, director, officer, employee, agent, servant and/or volunteer of the Defendants.

49.     Defendants owed a duty of care to all minor persons, including Plaintiffs, to insure Cason did not use his position to injure minors by sexual assault, abuse, and/or sexual contact.

50.     Defendants had an express and/or implied duty to provide a reasonably safe environment for Plaintiffs and assumed the duty to protect and care for them.

Page **5** of **15**

51.     Defendants negligently hired, retained, and supervised Cason though they knew or should have known that Cason posed a threat of harm to minors.

52.     Defendants knew or should have known of Cason's propensity for sexual assault, abuse, and/or sexual contact with minors, the same conduct which caused Plaintiffs' injuries.

53.     Defendants knew or should have known of Cason's propensity for sexual assault, abuse, and/or sexual contact with minors prior to, or at the time of, Plaintiffs' injuries.

54.     The Plaintiffs' sexual abuse by Cason was foreseeable, *i.e.,* Defendants were on notice of prior similar incidents and Plaintiffs' sexual abuse was the proximate result of Defendants' negligent hiring, retention, and supervision of Cason.

55.     Cason's acts described herein were undertaken, and/or enabled by, and/or during the course, and/or within the scope of Cason's employment, appointment, assignment, and/or agency with Defendants.

56.     Defendants took no precautions to prevent Plaintiffs' injuries.

57.     Defendants failed to take reasonable precautions to prevent Plaintiffs' injuries.

58.     Defendants gave improper or ambiguous orders or failed to make proper regulations, and/or employed improper persons or instrumentalities in work involving risk of harm to others.

59.     Defendants failed adequately to supervise the activities of Cason.

60.     Defendants failed to protect against or warn the Plaintiffs or their families of the known risk of priest abuse within the Diocese.

61.     Defendants permitted, and/or intentionally failed and/or neglected to prevent, negligent and/or grossly negligent conduct and/or allowed other tortious conduct by persons,

Page 6 of 15

whether or not their servants and/or agents and/or employees, upon premises or with instrumentalities under their control.

62.     Defendants allowed the acts of omission and/or commission and/or any or all of the allegations set forth in this Complaint to occur.

63.     Defendants' actions were negligent, grossly negligent, willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiffs.

64.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs suffered and will continue to suffer injuries, as described herein.

65.     By reason of the foregoing, the Defendants are liable to the Plaintiffs, jointly, severally and/or in the alternative liable to the Plaintiffs for compensatory damages and for punitive damages, together with interest and costs.

<div align="center">

**Second Cause of Action**
**Negligence/Gross Negligence/Recklessness**

</div>

66.     Plaintiffs repeat and re-allege every allegation set forth throughout this Complaint as if fully set forth herein.

67.     Defendants owed Plaintiffs, minors at the relevant times of abuse, a duty to protect them from Cason and the consequential damages, both prior to and/or subsequent to Cason's misconduct.

68.     Defendants knew, should have known, or were negligent in not knowing, of Cason's propensity for sexual assault, abuse, and/or sexual contact with minors and that Cason posed a threat of sexual abuse to children.

69.     Defendants' actions were negligent, grossly negligent, willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiffs.

<div align="center">

Page 7 of 15

</div>

70. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs suffered and will continue to suffer injuries, as described herein.

71. By reason of the foregoing, the Defendants are liable to the Plaintiffs, jointly, severally and/or in the alternative liable to the Plaintiffs for compensatory damages and for punitive damages, together with interest and costs.

### Third Cause of Action
### Breach of Non-Delegable Duty

72. Plaintiffs repeat and re-allege every allegation set forth throughout this Complaint as if fully set forth herein.

73. Plaintiffs, as vulnerable minors, were in the care and under the supervision of the Defendants.

74. There existed a non-delegable duty of trust and protection between Plaintiffs and the Defendants.

75. Defendants were in the best position to prevent Plaintiffs' abuse by Diocesan priests, including Cason, who was under the supervision, employ, direction and/or control of the Defendants.

76. Defendants breached their non-delegable duty to Plaintiffs.

77. Defendants' actions were negligent, grossly negligent, willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiffs.

78. By reason of the foregoing, the Defendants are liable to the Plaintiffs, jointly, severally and/or in the alternative liable to the Plaintiffs for compensatory damages and for punitive damages, together with interest and costs.

### Fourth Cause of Action
### Breach of Fiduciary Duty

Page 8 of 15

79.     Plaintiffs repeats and re-alleges every allegation set forth throughout this Complaint as if fully set forth herein.

80.     At all times relevant, there existed a fiduciary relationship of trust, confidence, and reliance between Defendants and Plaintiffs that required the Defendants to act in Plaintiffs' best interests.

81.     Defendants breached their fiduciary relationship with Plaintiffs.

82.     Defendants' actions were negligent, grossly negligent, willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiffs.

83.     By reason of the foregoing, the Defendants are liable to the Plaintiffs, jointly, severally and/or in the alternative liable to the Plaintiffs for compensatory damages and for punitive damages, together with interest and costs.

**Fifth Cause of Action**
**Negligent Infliction of Emotional Distress**

84.     Plaintiffs repeats and re-alleges every allegation set forth throughout this Complaint as if fully set forth herein.

85.     Plaintiffs, as vulnerable minors, were in the care and under the supervision of the Defendants, and thus Defendants owed Plaintiffs a duty of care.

86.     By reason of the foregoing, Defendants breached that duty of care.

87.     Defendants unreasonably endangered the Plaintiffs' physical safety, and/or caused the Plaintiffs to fear for their own safety.

88.     As a direct result of Defendants conduct heretofore described, Plaintiffs suffered severe emotional harm and distress, as described herein.

89.     Defendants' actions were negligent, grossly negligent, willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiffs.

Page **9** of **15**

90.     By reason of the foregoing, the Defendants are liable to the Plaintiffs, jointly, severally and/or in the alternative liable to the Plaintiffs for compensatory damages and for punitive damages, together with interest and costs.

### Sixth Causes of Action
### Intentional Infliction of Emotional Distress

91.     Plaintiffs repeats and re-alleges every allegation set forth throughout this Complaint as if fully set forth herein.

92.     Defendants conduct, as heretofore described, was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

93.     Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress in Plaintiffs.

94.     Defendants intentional and/or reckless conduct caused the Plaintiffs severe emotional distress.

95.     As a direct result of Defendants conduct heretofore described, Plaintiffs suffered severe emotional harm and distress, as described herein.

96.     By reason of the foregoing, the Defendants are liable to the Plaintiffs, jointly, severally and/or in the alternative liable to the Plaintiffs for compensatory damages and for punitive damages, together with interest and costs.

### Seventh Cause of Action
### Breach of Duty in Loco Parentis

97.     Plaintiffs repeats and re-alleges every allegation set forth throughout this Complaint.

98.     At all times relevant, the Plaintiffs were entrusted to the control of the Defendants.

Page **10** of **15**

99.     At all relevant times, Defendants were acting in loco parentis with respect to Plaintiffs.

100.     The Defendants owed a duty to Plaintiffs, as children entrusted to them, to act in loco parentis and prevent foreseeable injuries to them.

101.     Defendants conduct, as heretofore described, violated their duties in loco parentis.

102.     Defendants' actions were negligent, grossly negligent, willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiffs.

103.     By reason of the foregoing, the Defendants are liable to the Plaintiffs, jointly, severally and/or in the alternative liable to the Plaintiffs for compensatory damages and for punitive damages, together with interest and costs.

### Eighth Cause of Action
### Nuisance

104.     Plaintiffs repeats and re-alleges every allegation set forth throughout this Complaint.

105.     Defendants continues to conspire and engage and/or has conspired and engaged in efforts to: 1) conceal sexual abuse committed by Defendants' agents against children; and/or 2) protect Defendants' agents from prosecution for their sexual abuse of children; 3) conceal from the public the known dangers posed by its agents; and/or 4) allow known child abusers to live freely in the community unknown to the public.

106.     The conduct, deception and concealment by Defendants has knowingly and/or recklessly created and/or maintained a condition which unreasonably endangers the safety and health of a considerable number of persons, including, but not limited to, children and residents in the Diocese of Rochester and other members of the general public.

Page **11** of **15**

107.    Defendants' failure to report multiple allegations of sexual assault and abuse of children to proper authorities knowingly and/or recklessly endangered the safety and health of a considerable number of persons by allowing child molesters to avoid prosecution and remain living freely in unsuspecting communities.

108.    These child molesters, known to the Diocese but not to the public, pose(d) a threat of additional abuse to a considerable number of members of the public and Plaintiffs.

109.    Defendants' deception and concealment of sexually abusive clerics was and continues to be done with full awareness and conscious disregard of the injurious conditions created and the corresponding risk to the public and individuals in the communities where credibly accused molesters are present, including, but not limited to Plaintiffs.

110.    It offends the public morals in that the general public and Plaintiffs cannot trust Defendants to warn parents of the presence of the current and/or former credibly accused molesters, nor to identify their current and/or former credibly accused molesters, nor to disclose said credibly accused molesters' assignment histories, nor to disclose their patterns of conduct in grooming and sexually assaulting children, all of which create an impairment of the safety and welfare of children in the neighborhoods where Defendants conducted, and continues to conduct, its business.

111.    The unreasonable, knowing and reckless conduct, deception and concealment by Defendants was and continues to be especially injurious to Plaintiffs' health as Plaintiffs were sexually abused by Defendants' agent.

112.    The unreasonable, knowing and reckless conduct, nuisance, deception and concealment by Defendants were especially injurious to Plaintiffs' health and wellbeing.

Page **12** of **15**

113.     Plaintiffs suffered and continue to suffer particular and peculiar harm as a result of the Diocese's knowing and reckless concealment of clerics credibly accused of sexually molesting minors.

114.     Defendant acted unreasonably by knowingly and/or recklessly creating or maintaining a condition which endangered the safety or health of a considerable number of persons with a conscious disregard for Plaintiffs' rights.

115.     By reason of the foregoing, the Defendants are liable to the Plaintiffs, jointly, severally and/or in the alternative liable to the Plaintiffs for compensatory damages and for punitive damages, together with interest and costs.

## JURY DEMAND

116.     Plaintiffs demand a trial by jury on all issues so triable.


[Remainder of page intentionally left blank.]

**WHEREFORE** Plaintiff demands judgment against the Defendants on each cause of action as follows:

a) Awarding compensatory damages in an amount to be proved at trial, in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction;

b) Awarding punitive damages to the extent permitted by law;

c) Awarding prejudgment interest to the extent permitted by law;

d) Awarding costs and fees of this action, including attorneys' fees, to the extent permitted by law; and

e) Awarding such other and further relief as to this Court may seem just and proper.

Dated: August 16, 2019
Pittsford, New York

Respectfully Submitted,

*Maura C. McGuire*

Maura C. McGuire, Esq.
mmcguire@morgdevo.com
MORGENSTERN DEVOESICK PLLC
1080 Pittsford Victor Rd., Suite 200
Pittsford, NY 14534
Ph: (585) 672-5500| Fax: (585) 672-5599

Benjamin D. Andreozzi, Esq.
ben@victimscivilattorneys.com
ANDREOZZI & ASSOCIATES, P.C.
111 N. Front Street, Harrisburg, PA 17101
Ph: (717) 525-9124 | Fax: (717) 525-9143
*(NY Admission Pending)*

*Attorneys for Plaintiff*

**VERIFICATION**

STATE OF North Carolina

COUNTY OF Buncombe )            ss:

███████ A ██████, being duly sworn, deposes and says:   That he is a

plaintiff in this action; that he has read the foregoing Complaint and knows the contents thereof;

that the same is true to the knowledge of deponent, except as to the matters therein stated to be

alleged upon information and belief, and as to those matters, deponent believes it to be true.

Sworn to before me this

13 day of August 2019.

NOTARY PUBLIC

DEBORAH SMITH
NOTARY PUBLIC
Buncombe County
North Carolina
My Commission Expires Aug. 14, 2019

Page **15** of 16

## VERIFICATION

STATE OF            )

COUNTY OF          )      ss:

█████████████████, being duly sworn, deposes and says:   That he is a

plaintiff in this action; that he has read the foregoing Complaint and knows the contents thereof;

that the same is true to the knowledge of deponent, except as to the matters therein stated to be

alleged upon information and belief, and as to those matters, deponent believes it to be true.

████████████████████

Sworn to before me this

15th day of August 2019.

_____
NOTARY PUBLIC

JOSEPH SALAZAR
License 204028
NOTARY PUBLIC
Expires 11-29-2022
STATE OF WASHINGTON

Page 17 of 17

# VERIFICATION

STATE OF          )

COUNTY OF       )   ss:

██████████████████████, being duly sworn, deposes and says: That he is a

plaintiff in this action; that he has read the foregoing Complaint and knows the contents thereof;

that the same is true to the knowledge of deponent, except as to the matters therein stated to be

alleged upon information and belief, and as to those matters, deponent believes it to be true.

Sworn to before me this

*14* day of *aug* 2019.

_____

NOTARY PUBLIC

JOSHUA P GALLO
NOTARY
PUBLIC
Comm. # GG 266853
My Comm. Expires
Oct 16, 2022
STATE OF FLORIDA

Page **15** of **16**

## VERIFICATION

STATE OF California )

COUNTY OF Los Angeles          ss:

████████████████████, being duly sworn, deposes and says:  That he is a

plaintiff in this action; that he has read the foregoing Complaint and knows the contents thereof;

that the same is true to the knowledge of deponent, except as to the matters therein stated to be

alleged upon information and belief, and as to those matters, deponent believes it to be true.

████████████████████████████

Sworn to before me this
14 day of AUGUST       2019.


GHAZI JAMSHED
NOTARY PUBLIC

**CALIFORNIA JURAT**                                          GOVERNMENT CODE § 8202

<div style="border:1px solid">
A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.
</div>

State of California

County of *LOS ANGELES*

Subscribed and sworn to (or affirmed) before me on

this *14* day of *AUGUST*, 20 *19*, by
   Date       Month       Year

(1) ██████████████████████

(and (2) ██████████████████████

GHAZI JAMSHED
Notary Public - California
Los Angeles County
Commission # 2219444
My Comm. Expires Oct 22, 2021

*Place Notary Seal and/or Stamp Above*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____
*Signature of Notary Public*

———— **OPTIONAL** ————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document** *VERIFICATION*

**Title or Type of Document:** *VERIFIED COMPLAINT JURY TRIAL DEMANDED)*

**Document Date:** _____*NO DATE*_____   Number of Pages: *15 OF 17*

**Signer(s) Other Than Named Above:** _____*NO OTHER SIGNER*_____

©2018 National Notary Association