# EXHIBIT 7

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2445870

Book     Page    CIVIL

Return To:
LEANDER LAUREL JAMES IV

No. Pages:  29

Instrument: COMPLAINT

Control #:       202007270187
Index #:         E2020005156

Date: 07/27/2020

Time: 9:17:14 AM

The Church of St. Margaret Mary of the Town of Irondequoit,
N.Y.
Atlantic-Midwest Province of the School Sisters of Notre Dame,
Inc.
Nadeau, Janice

Total Fees Paid:                        $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

SUPREME COURT STATE OF NEW YORK
COUNTY OF MONROE

------------------------------------------------x

███████████████████

           *Plaintiff,*                              **VERIFIED COMPLAINT**

      v.                                             INDEX NO.

"THE CHURCH OF ST. MARGARET
MARY" OF THE TOWN OF
IRONDEQUOIT, N.Y. n/k/a KATERI
TEKAKWITHA ROMAN CATHOLIC
PARISH, MONROE COUNTY, NY;

ATLANTIC-MIDWEST PROVINCE OF
THE SCHOOL SISTERS OF NOTRE
DAME, INC.; and

JANICE NADEAU,

           *Defendants.*

------------------------------------------------x

          Plaintiff, ████████████████ by and through undersigned counsel, brings this action

against "THE CHURCH OF ST. MARGARET MARY" OF THE TOWN OF IRONDEQUOIT,

N.Y. n/k/a KATERI TEKAKWITHA ROMAN CATHOLIC PARISH, MONROE COUNTY, NY;

ATLANTIC-MIDWEST PROVINCE OF THE SCHOOL SISTERS OF NOTRE DAME, INC.;

and JANICE NADEAU, and alleges, on personal knowledge as to himself and on information and

belief as to all other matters, as follows:

## I.    JURISDICTION AND VENUE

          1.    This Court has personal jurisdiction over Defendants pursuant to CPLR § 301 and

§ 302, because Defendant "The Church of St. Margaret Mary" of the Town of Irondequoit, N.Y.

resided in the State of New York at the time of the events described herein, and upon merging with

Kateri Tekakwitha Roman Catholic Parish, Monroe County, NY, still resides in the State of New

1

York. Further, all Defendants committed tortious acts within the State.

2. Jurisdiction is proper because this Complaint seeks monetary damages in excess of $25,000.00, exclusive of interest, costs, and attorney's fees.

3. Venue is proper in this Court pursuant to CPLR § 503. Defendant "The Church of St. Margaret Mary" of the Town of Irondequoit, N.Y. had its principal place of business in Monroe County at the time of the events described herein. Defendant Kateri Tekakwitha Roman Catholic Parish, Monroe County, NY has its principal place of business in Monroe County. The acts and omissions giving rise to this Complaint also occurred in Monroe County.

4. Plaintiff brings this suit within the extended time period as provided for in Sections 208 and 214-G of the Civil Practice Law and Rules.

## II. PARTIES

5. Plaintiff ("Plaintiff") is an adult resident of the State of New York, residing in Monroe County and is otherwise *sui juris*.

6. Defendant "The Church of St. Margaret Mary" of the Town of Irondequoit, N.Y. (hereinafter "St. Margaret Mary," "Defendant St. Margaret Mary" or "Defendant MM School") was a Roman Catholic parish within and under the authority of The Diocese of Rochester and was a religious corporation organized pursuant to the Religious Corporations law with a principal place of business at 400 Rogers Parkway, Rochester, NY 14617, in Monroe County, NY. Upon information and belief, St. Margaret Mary owned and operated a private school, located across the street from the church. On information and belief, this school was staffed by The Diocese of Rochester and the School Sisters of Notre Dame. At relevant and material times, the Roman Catholic Bishop of The Diocese of Rochester was the President of St. Margaret Mary, the Roman Catholic Vicar General of The Diocese of Rochester was the Vice-President of St. Margaret Mary,

2

and the Pastor of St. Margaret Mary was also the Secretary of St. Margaret Mary. Additional board members included two lay persons approved by the Bishop/President and who could be removed by the Bishop/President. The Bishop appointed the Pastor to the parish and had the authority at all times relevant hereto to remove him from that position. On information and belief, the Bishop appointed or approved of the principal of the school associated with the parish and had the authority at all times relevant hereto to remove her from that position. At all times material hereto, the Bishop had authority over the Vicar General in his dual roles as Vicar General and Vice-President of St. Margaret Mary. By virtue of his dual roles as Bishop/President, and his control and authority over the Vicar General, the Pastor/Secretary, the principal of the school, and the two lay persons appointed to the board, the Bishop and The Diocese of Rochester controlled St. Margaret Mary. Defendant St. Margaret Mary can be served with process by delivering a copy of the summons and complaint on its President/the Bishop of The Diocese of Rochester, Bishop Salvatore Matano, or on its authorized agent, Woods Oviatt Gilman LLP, 1900 Bausch & Lomb Place, Rochester, New York, 14604, Attn: Timothy P. Lyster, Esq.

7.     Defendant Kateri Tekakwitha Roman Catholic Parish, Monroe County, NY (hereinafter "Kateri" or "Defendant Kateri") is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 445 Kings Highway South, Rochester, NY 14617, in Monroe County, NY. As the result of a corporate merger in 2011, and documented by the CERTIFICATE OF MERGER OF "THE CHURCH OF ST. MARGARET MARY" OF THE TOWN OF IRONDEQUOIT, N.Y. INTO KATERI TEKAKWITHA ROMAN CATHOLIC PARISH, MONROE COUNTY, NY, Defendant Kateri is the legal successor to Defendant St. Margaret Mary and has assumed the liabilities of St. Margaret Mary alleged herein; as the successor in interest who assumed liabilities for St. Margaret Mary, Defendant Kateri is liable for

3

all damages alleged in this Complaint. Defendant Kateri is a Roman Catholic parish within and under the authority of The Diocese of Rochester. At relevant and material times, the Roman Catholic Bishop of Rochester, New York has been the President of Kateri, the Roman Catholic Vicar General of The Diocese of Rochester, New York has been the Vice-President of Kateri, and the Pastor of Kateri has also been the Secretary of Kateri. Additional board members include two lay persons approved by the Bishop/President and who can be removed by the Bishop/President. The Bishop appoints the Pastor to the parish and has the authority at all times relevant hereto to remove him from that position. At all times material hereto, the Bishop has had authority over the Vicar General in his dual roles as Vicar General and Vice-President of Kateri. By virtue of his dual roles as Bishop/President, and his control and authority over the Vicar General, the Pastor and the two lay persons appointed to the board, the Bishop and Diocese control Kateri. Defendant Kateri can be served with process through service on its President/the Bishop of The Diocese of Rochester or on its authorized agent, Woods Oviatt Gilman LLP, 1900 Bausch & Lomb Place, Rochester, New York, 14604, Attn: Timothy P. Lyster, Esq.

8.    Defendant Atlantic-Midwest Province of the School Sisters of Notre Dame, Inc. (hereafter "SSND" or "Defendant SSND") is a religious order of nuns affiliated with the Roman Catholic Church with a principal place of business at Christ the King Church, 445 Kings Highway South, Rochester, NY 14617. Defendant SSND is a foreign not-for-profit corporation registered with the New York Department of State, Division of Corporations. At all relevant times, Defendant SSND operated, managed, and staffed Defendant MM School in Rochester, NY. Further, at all relevant times, Defendant SSND had authority, control, and supervision over Sister Janice Nadeau, a member of the SSND, the principal of Defendant MM School at the time of the events described herein, and the perpetrator of sexual abuse against Plaintiff. Defendant SSND can be served by

4

delivering a copy of the summons and complaint to its registered agent: CSC-Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 820, Baltimore, MD 21202.

9.      At all times material, Defendant Janice Nadeau (hereafter "Sr. Nadeau" or "Defendant Nadeau") has been a Roman Catholic nun and member of the religious order, the School Sisters of Notre Dame, employed by and an agent of Defendants St. Margaret Mary and SSND. The Diocese of Rochester and Defendant SSND assigned Sr. Nadeau to be the principal of St. Margaret Mary School from 1976 to approximately 1985. Through her position of authority as principal of St. Margaret Mary, Sr. Nadeau was put in direct contact with Plaintiff.

10.     The provisions of Section 1602 of the CPLR do not apply to the within action including nondelegable duty and/or the doctrine of respondeat superior.

## III.    FACTUAL ALLEGATIONS

### a)  Plaintiff's Introduction to Sr. Janice Nadeau; The Abuse

11.     At the time of her introduction to the Plaintiff, Sr. Janice Nadeau was employed at St. Margaret Mary as the principal of the school. Sr. Nadeau remained in that post from 1976 to approximately 1985.

12.     Plaintiff was a popular boy in school, with an outspoken and energetic demeanor. Sr. Nadeau had a domineering personality and enjoyed asserting her dominance over her students and staff. From the very first day she began her position at St. Margaret Mary as principal of the school, Sr. Nadeau targeted Plaintiff and engaged in a campaign of sexually, verbally, and physically abusive acts against Plaintiff.

13.     When Sr. Nadeau would see Plaintiff in the hallways or on school grounds having fun, talking to his classmates, or flirting with girls, Sis Nadeau would grab Plaintiff by the shirt and genitals and drag him away. She would scream at him and ask him if he thought girls wanted

5

"this" while grabbing and yanking on his genitals.

14.     If Sr. Nadeau heard any loud noise or altercation coming from a classroom or the gymnasium, whether or not Plaintiff was involved, she would target Plaintiff and grab his genitals, dragging him into the hallway or back to her office for discipline. Plaintiff's teachers and the staff members at St. Margaret Mary witnessed this sexual and physical abuse and never intervened.

15.     Sr. Nadeau would frequently follow students, including Plaintiff, off school grounds and to a park near the school. She would repeat the same abuse against Plaintiff described herein on and off school grounds.

16.     Sr. Nadeau used Plaintiff as her example to other children as to what would happen to them if she perceived they were misbehaving.

17.     Students at Defendant MM School attended Mass and prayer services at the church across the street from the school, which was also owned and operated by St. Margaret Mary. On at least one occasion, Sr. Nadeau sexually abused Plaintiff on the church grounds, while he was attending a school assembly. Sr. Nadeau grabbed Plaintiff out of his seat in the church, hit him, grabbed his tie and genitals and dragged him down the church aisle to the pulpit, where she forced him to sit next to her for the duration of the assembly. Sr. Nadeau grabbed Plaintiff and sexually abused him in front of the priests and teachers of St. Margaret Mary, including Ret. Rev. Msgr. Maynard A. Connell, Rev. Raymond G. Heisel, and Rev. Kevin E. McKenna.

18.     As a direct and proximate result of Sr. Nadeau's offensive and unwanted sexual touching and the negligence of Defendants MM School and SSND, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful activity, loss of income and other

6

damages, past and future.

19. As a direct and proximate result of Sr. Nadeau's offensive and unwanted sexual touching and the negligence of Defendants MM School and SSND, Plaintiff has been prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of his life.

20. As a direct and proximate result of Sr. Nadeau's offensive and unwanted sexual touching and the negligence of Defendants MM School and SSND, Plaintiff has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

### b) Defendants' Responsibility for the Abuse Committed by Sr. Nadeau

21. At all times relevant to the allegations set forth herein, Sr. Janice Nadeau was a nun and administrator employed, trained, assigned, supervised, and managed by Defendant St. Margaret Mary and was an employee and/or agent for said Defendant. All acts and omissions of Sr. Nadeau were done in the course and scope of her employment and/or agency for Defendant St. Margaret Mary.

22. Upon information and belief, at all times relevant to the allegations set forth herein, Sr. Nadeau was trained, assigned, supervised, and managed by Defendant SSND and was an employee and/or agent for said Defendant. All acts and omissions of Sr. Nadeau were done in the course and scope of her employment and/or agency for Defendant SSND.

23. At all times material hereto, the priests and other employees at St. Margaret Mary had a duty to protect the children, including Plaintiff, at the school and on the premises of the Church. While in the course and scope of their employment and agency for Defendant St. Margaret Mary, Ret. Rev. Msgr. Maynard A. Connell, Rev. Raymond G. Heisel, and Rev. Kevin E. McKenna each saw Sister Nadeau sexually abusing Plaintiff, yet did nothing to help plaintiff or to

7

protect him from Sister Nadeau, thereby breaching their duty.

24.     During the years 1976 through 1985, Sr. Nadeau was employed as the Principal of St. Margaret Mary, a private, Roman Catholic school owned, operated, staffed, supervised and managed by The Diocese of Rochester, Defendant St. Margaret Mary, and Defendant SSND.

25.     By holding Sr. Janice Nadeau out as safe to work with children, and by undertaking the custody, supervision of, and/or care of the minor Plaintiff, who was a student at St. Margaret Mary, Defendants entered into a special relationship with the minor Plaintiff. As a result of Plaintiff being a minor, and by Defendants undertaking the care and guidance of the then vulnerable Plaintiff, Defendants held a position of empowerment over Plaintiff.

26.     Furthermore, Defendants, by holding themselves out as being able to provide a safe environment for children, solicited and/or accepted this position of empowerment. This empowerment prevented the Plaintiff from effectively protecting himself, and Defendants thus entered into a special relationship with Plaintiff. By holding themselves out as a safe, moral, and trusted institutions to Plaintiff's parents, Defendants induced Plaintiff's parents to entrust their child to Defendants and thereby deprived Plaintiff of the protection of his family.

27.     At all times material, Sr. Nadeau's sexual abuse of Plaintiff was foreseeable. While much of the documentation cited herein focuses on clergy sexual abuse of children, it is evidence that sexual abuse of minors was generally foreseeable within the Church; if clergy were known to sexually abuse children, it is self-evident that the Roman Catholic Church knew non-priest clergy members, including religious brothers and nuns, and lay persons did the same. It further documents clergy acceptance of, and indifference to, child sexual abuse within the Church, as Plaintiff alleges occurred in his case. Further, Defendant St. Margaret Mary was on notice that Defendant Nadeau was abusing Plaintiff as a child, because Ret. Rev. Msgr. Maynard A. Connell, Rev. Raymond G.

8

Heisel, and Rev. Kevin E. McKenna each witnessed the abuse.

28.     The problem of sexual abuse of minors is well-documented throughout the history of the Roman Catholic Church. As far back as 1051, St. Peter Damian wrote in the *Book of Gomorrah* that clergy who defiled boys should be dismissed from holy orders. (*Book of Gomorrah*, Ch. 6). Later, St. Peter Damian wrote in his *Rule of the Monastery of Compludo*, about the punishment for "A cleric or monk who seduces youths or young boys" being public flogging, loss of tonsure and six months in jail, among other punishment. In 1143 or 1144, a professor at the University of Bologna named Gratian, known as the "Father of the Science of Canon Law," identified in his work the *Decretum*, the sexual sin by a priest that he called *stuprum pueri*, which is the sexual use of boys by an adult male.

29.     In 1961, the Vatican issued an instruction on the training of candidates for the priesthood, which was based upon the 1917 Code of Canon Law which stated:

> Advancement to religious vows and ordination should be barred to those who are afflicted with evil tendencies to homosexuality or pederasty, since for them the common life and priestly ministry would constitute serious dangers.

30.     This knowledge that Catholic clergy were sexually abusing minors continued through the middle ages and into recent history. In 1962, Pope John XXIII approved the publication *De Modo Procedendi in Causis Solicitationis*, a special procedural law for solicitation of sex in the confessional. This document contained prohibitions prohibiting clergy from having sex with minors under the age of sixteen. This document was distributed to every bishop and major religious superior in the world and was to be kept by them with the deepest secrecy. In addition, this document reflected the Catholic church's insistence on maintaining the highest degree of secrecy regarding the worst sexual crimes perpetrated by clergy.

9

31.     In 1947, a priest named Fr. Gerald Fitzgerald founded a religious order of priests called the Servants of the Paracletes. This religious order was founded in order to assist and treat Catholic clergy who experienced mental health problems. By 1952, Fr. Fitzgerald wrote that he had already treated a handful of priests who had sexually abused minors. By 1963, the Paracletes were treating so many sexually abusive clergy that they developed a shorthand code, "code 3," to describe the offense. By 1966, the Paracletes began specializing in treatment of pedophile Catholic clergy.

32.     As early as 1971, the issue of sexual misconduct by clergy was being discussed in the Commonwealth of Massachusetts.    Bishop Bernard Flanagan, Bishop of Worcester (Massachusetts) testified that as early as February 1971, there had been discussions about sexual misconduct among priests. According to Bishop Flanagan, "I think by 1971 I had heard of other cases of this type [sic] sexual misconduct and I knew that they were taking place in other dioceses too."

33.     That same year, Dr. Conrad Baars and Dr. Anna Terruwe presented a scholarly paper titled The Role of the Church in the Causation, Treatment and Prevention of the Crisis in the Priesthood" to the 1971 Synod of Bishops at the Vatican and to the U.S. Conference of Catholic Bishops about psychiatric problems in Catholic clergy and how psychosexual immaturity manifested itself in heterosexual and homosexual activity. In 1990, psychologist and priest, A.W. Richard Sipe, published a study involving 1,500 priests that concluded that six (6) percent of priests were sexually involved with minors.

34.     In 1985, the public prosecution of a priest in Lafayette, Louisiana led to the creation of the 100-page document titled *"The Problem of Sexual Molestation by Roman Catholic Clergy: Meeting the Problem in a Comprehensive and Responsible Manner"* by Fr. Thomas Doyle, F. Ray

10

Mouton and Fr./Dr. Michael Peterson. This document was distributed to every Catholic Bishop and religious order ordinary in the United States. A significant portion of this document describes how significant the sexual abuse of children by Catholic clergy had become.

35.     As to Sr. Nadeau, specifically, Defendants knew or should have known that Sr. Nadeau was a sexual risk to children. Sister Nadeau was an aggressive and volatile nun with a reputation among the student body at St. Margaret Mary for being violent and cruel. The students nick-named her "Hawk" in reference to her vicious targeting of individual students. She was frequently verbally and physically abusive to students in the hallways, in full visibility of the other staff at St. Margaret Mary.

36.     Upon information and belief, parents and students lodged many complaints against Sr. Nadeau, to both The Diocese of Rochester and the SSND, but no action was ever taken to protect children from her or to remove her from her position of authority over children.

37.     Upon information and belief, the fellow members of Sr. Nadeau's order of nuns, the School Sisters of Notre Dame, also made complaints about her to Defendant SSND and The Diocese of Rochester. Sr. Nadeau's fellow nuns describe her as difficult to live with and heavy handed, with a strong temper. She was reportedly a troubled person that was volatile and aggressive to her colleagues. These complaints were communicated to Sr. Nadeau's superiors while she was employed as the Principal of St. Margaret Mary.

38.     Despite these clear indications of danger, Defendants St. Margaret Mary and SSND took no steps to discover the specific nature of Sr. Nadeau's problems or to determine whether she was fit to work with children or to protect children from her, thereby increasing the likelihood that Plaintiff would be harmed.

11

39.     As the successor in interest who assumed liabilities for Defendant St. Margaret Mary, Defendant Kateri is liable for all damages alleged in this Complaint.

## IV.     CAUSES OF ACTION

## FIRST CAUSE OF ACTION AGAINST DEFENDANT JANICE NADEAU

### SEXUAL ABUSE/BATTERY

40.     Plaintiff repeats and re-alleges each and every allegation set forth in all paragraphs as if fully set forth herein.

41.     On multiple occasions, Defendant Nadeau intentionally made contact with the Plaintiff's body, touching the Plaintiff's body, including his genitals.

42.     Defendant Nadeau's touching of Plaintiff was offensive and unwanted.

43.     As a direct and proximate result of Defendant Nadeau's offensive and unwanted sexual touching, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful activity, loss of income and other damages, past and future.

44.     As a direct and proximate result of Defendant Nadeau's offensive and unwanted sexual touching, Plaintiff was injured and damaged; said injuries and damages include but are not limited to: physical injury, emotional distress, loss of enjoyment of life, loss of ability to engage in gainful activity, loss of income, and loss of ability to perform his normal daily activities and to obtain the full enjoyment of life.

45.     As a direct and proximate result of Defendant Nadeau's offensive and unwanted sexual touching, Plaintiff has incurred and will continue to incur expenses for medical and

12

psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiff demands judgment against Defendant Nadeau for compensatory damages, costs, and such other and further relief as this Court deems proper.

## SECOND CAUSE OF ACTION AGAINST

## DEFENDANTS ST. MARGARET MARY, KATERI, & SSND

### NEGLIGENCE/GROSS NEGLIGENCE

46.     Plaintiff repeats and re-alleges each and every allegation set forth in all paragraphs as if fully set forth herein.

47.     Defendants St. Margaret Mary and SSND allowed Sr. Nadeau to have unsupervised and unlimited access to minor children while in a position of authority over them, including at St. Margaret Mary in Rochester, New York, located at the time of the events described herein within the ecclesiastical and geographical confines of The Diocese of Rochester.

48.     At all times material, Sr. Nadeau was employed by Defendants St. Margaret Mary and SSND and was an agent of the same.

49.     At all times material, Sr. Nadeau remained under the direct supervision, employ, and control of the Defendants St. Margaret Mary and SSND.

50.     Upon information and belief, before Plaintiff was sexually abused by Sr. Nadeau, Defendants St. Margaret Mary and SSND had actual or constructive knowledge of material facts regarding Sr. Nadeau's sexual misconduct, impulses, and behavior, and had actual or constructive knowledge that she posed a sexual risk of harm to children.

51.     Despite clear indications of danger, Defendants St. Margaret Mary and SSND took no steps to discover the specific nature of Sr. Nadeau's problems or to determine whether she was fit to work with children or to protect children from her, thereby increasing the likelihood that

13

Plaintiff would be harmed.

52.     Plaintiff was raised in a devout Roman Catholic family, regularly celebrated mass, received the sacraments, and participated in church-related activities. Plaintiff, therefore, developed great admiration, trust, reverence, and respect for the Roman Catholic Church and its agents; the Diocese of Rochester and its agents, including the Bishop; St. Margaret Mary, a Catholic Church and educational institution within the Diocese of Rochester; and all priests, brothers, deacons, nuns and religious clergy members, including Sr. Janice Nadeau.

53.     Defendants St. Margaret Mary and SSND held Sr. Nadeau out as a qualified Roman Catholic nun, teacher, and administrator, and undertook the education, religious instruction, and spiritual and emotional guidance of Plaintiff. The Bishop, the priests, nuns, teachers, and administrators employed by Defendant St. Margaret Mary and SSND, and Defendant Nadeau, by virtue of her position as Plaintiff's principal at Defendant St. Margaret Mary, exercised a direct role over Plaintiff. Accordingly, Plaintiff placed trust in Defendants St. Margaret Mary and SSND so that said Defendants and their agents, including Sr. Nadeau, gained superiority and influence over Plaintiff. Defendants St. Margaret Mary and SSND entered into a special relationship with Plaintiff and his family.

54.     Defendants St. Margaret Mary and SSND knew or should have known that some of its employees, including Defendant Nadeau, were not safe for children.

55.     Defendants St. Margaret Mary and SSND knew or should have known that they lacked sufficient information about whether their leaders, employees, and people working at its institution were safe around children.

56.     Defendants St. Margaret Mary and SSND knew or should have known that there was a risk of child sex abuse for children attending Catholic schools and participating in Catholic

14

programs within the Diocese of Rochester, including at St. Margaret Mary.

57.     Defendants St. Margaret Mary and SSND knew or should have known that they lacked sufficient information about whether there was a risk of child sex abuse for children attending Catholic schools and participating in Catholic programs and activities within the Diocese of Rochester, including at St. Margaret Mary.

58.     Defendants St. Margaret Mary and SSND knew or should have known that they had other agents who had sexually molested children. Defendants St. Margaret Mary and SSND knew or should have known that child molesters have a high rate of recidivism. Said Defendants knew or should have known that there was a specific danger of child sex abuse for children attending Defendant St. Margaret Mary.

59.     Defendants St. Margaret Mary and SSND held their priests, leaders and agents, include Defendant Nadeau, out as people of high morals and as possessing immense power. They taught families and children to obey, respect and revere these leaders and agents.

60.     Defendants St. Margaret Mary and SSND solicited youth and families to their school, including Plaintiff. Defendants specifically marketed to youth and families in order to recruit youth and families to their school and programs. Defendants gave Sr. Nadeau access to youth participating in said school and programs, including Plaintiff.

61.     Defendants St. Margaret Mary and SSND held out the people that worked in their school and youth activities and programs, including Sr. Nadeau, as safe for children/youth.

62.     Defendants St. Margaret Mary and SSND made negligent representations to Plaintiff and his family. Plaintiff and/or his family relied upon these representations, which resulted in Plaintiff being put in a vulnerable situation with Sr. Nadeau and subjected to her sexual misconduct and harm.

15

63.     Defendants St. Margaret Mary and SSND owed Plaintiff a duty of reasonable care because they assumed duties owed to Plaintiff and had superior knowledge about the risk that Sr. Nadeau posed to Plaintiff, the risk of abuse in general at their school and in their programs, and/or the risks that their facilities posed to minor children. Said Defendants each had the duty to protect the moral purity of Plaintiff and other children attending and participating in programs at St. Margaret Mary.

64.     Defendants St. Margaret Mary and SSND each owed Plaintiff a duty of reasonable care because they assumed that duty and because they solicited youth and parents for attendance at their school and participation in their youth programs, including Plaintiff.

65.     Defendants St. Margaret Mary and SSND each owed Plaintiff a duty of reasonable care because they undertook custody of minor children, including Plaintiff.

66.     Defendants St. Margaret Mary and SSND each owed Plaintiff a duty of reasonable care because they promoted their facilities and programs as being safe for children, including Plaintiff.

67.     Defendants St. Margaret Mary and SSND each owed Plaintiff a duty of reasonable care because they held out their agents, including Sr. Nadeau, to the public, including Plaintiff, as safe to work with children.

68.     Defendants St. Margaret Mary and SSND each owed Plaintiff a duty of reasonable care because they encouraged parents and children, including Plaintiff, to spend time with their agents; and/or encouraged their agents, including Sr. Nadeau, to spend time with, interact with, and recruit children.

69.     Defendants St. Margaret Mary and SSND each had a duty to Plaintiff to protect him from harm because Defendants' actions created a foreseeable risk of harm to Plaintiff.

16

70.    Defendants St. Margaret Mary and SSND each breached their duties by exposing Plaintiff to a known pedophile/ephebophile.

71.    Defendants St. Margaret Mary and SSND each breached their duties by exposing Plaintiff to a nun and administrator Defendants knew or should have known was a pedophile/ephebophile.

72.    Defendants St. Margaret Mary and SSND each breached their duties by recruiting, hiring, and maintaining Sr. Nadeau in a position of authority over children, including Plaintiff.

73.    Defendants St. Margaret Mary and SSND each breached their duties by exposing Sr. Nadeau to children, including Plaintiff.

74.    Defendants St. Margaret Mary and SSND each breached their duties by leaving Sr. Nadeau alone with children unsupervised, including Plaintiff.

75.    Defendants St. Margaret Mary and SSND each breached their duties by inducing Plaintiff and his parents to entrust Plaintiff to Sr. Nadeau.

76.    Defendants St. Margaret Mary and SSND each breached their duties by failing to follow policies and procedures designed to prevent child sex abuse and/or failing to implement sufficient policies and procedures to prevent child sex abuse.

77.    Defendants St. Margaret Mary and SSND each breached their duties by failing to take reasonable measures to make sure that policies and procedures to prevent child sex abuse were working.

78.    Defendants St. Margaret Mary and SSND each breached their duties by failing to adequately inform families and children of the known risks of child sex abuse within St. Margaret Mary.

79.    Defendants St. Margaret Mary and SSND each breached their duties by holding out

17

their employees and agents, including Sr. Nadeau, as safe and wholesome for children to be with.

80.     Defendants St. Margaret Mary and SSND each breached their duties by failing to investigate risks of child molestation.

81.     Defendants St. Margaret Mary and SSND each breached their duties by failing to properly train the workers at their school and within their academic programs.

82.     Defendants St. Margaret Mary and SSND each breached their duties by failing to have any outside agency test their safety procedures.

83.     Defendants St. Margaret Mary and SSND each breached their duties by failing to protect the children in their programs from child sex abuse and failing to adhere to the applicable standard of care for child safety.

84.     Defendants St. Margaret Mary and SSND each breached their duties by failing to investigate the amount and type of information necessary to represent their institution, programs, leaders and employees as safe.

85.     Defendants St. Margaret Mary and SSND each breached their duties by failing to respond to and/or investigate information of improper conduct with children of their employee and agent, Sr. Nadeau.

86.     Defendants St. Margaret Mary and SSND each breached their duties by failing to properly train their employees to identify signs of child molestation by fellow employees.

87.     Defendants St. Margaret Mary and SSND each breached their duty to use ordinary care in determining whether their facilities were safe and/or to determine whether they had sufficient information to represent their facilities as safe.

88.     Defendants St. Margaret Mary and SSND each breached their duty of care by maintaining a dangerous condition on the premises of their facilities (i.e., a nun and administrator

18

Defendants knew or should have known posed a risk of sexual harm to children).

89.     Defendants St. Margaret Mary and SSND each breached their duty of care by holding out their facilities as a safe and moral place for children, knowing the facilities were not safe nor moral.

90.     Defendants St. Margaret Mary and SSND each breached their duty of care by failing to have sufficient policies and procedures to prevent abuse at their facilities.

91.     Defendants St. Margaret Mary and SSND each breached their duty of care by failing to investigate risks at their facilities.

92.     Defendants St. Margaret Mary and SSND each breached their duty of care by failing to investigate the amount and type of information necessary to represent their facilities as safe.

93.     Defendants St. Margaret Mary and SSND each breached their duties to Plaintiff by holding out nuns, administrators, and teachers, including Sr. Nadeau, as safe, moral, and trustworthy people and by failing to warn Plaintiff and his family of the risk that Sr. Nadeau posed and the known risks of child sexual abuse by clergy in general, and nuns, administrators, and teachers, specifically.

94.     Defendants St. Margaret Mary and SSND each breached their duties to Plaintiff by failing to warn Plaintiff about any of the knowledge that Defendants had about child sex abuse perpetrated by clergy, nuns, administrators, or teachers, in general, and Sr. Nadeau, specifically.

95.     Defendants St. Margaret Mary and SSND each breached their duties to Plaintiff by failing to report Sr. Nadeau's abuse of children to the police and law enforcement.

96.     Defendants St. Margaret Mary and SSND further each breached their duties by hiding a pedophile/ephebophile and engaging in a cover-up of abuse perpetrated by Sr. Nadeau.

19

97.     As a direct and proximate result of each Defendant St. Margaret Mary's and Defendant SSND's negligence, gross negligence and breaches of duty, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful employment, loss of income and other losses and damages, past and future.

98.     As a direct and proximate result of each Defendant St. Margaret Mary's and Defendant SSND's negligence, gross negligence and breaches of duty, Plaintiff was prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of life.

99.     As a direct and proximate result of each Defendant St. Margaret Mary's and Defendant SSND's negligence, gross negligence and breaches of duty, Plaintiff has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

100.    As the successor in interest who assumed liabilities for Defendant St. Margaret Mary, Defendant Kateri is liable for all damages alleged in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendant St. Margaret Mary, Defendant Kateri, and Defendant SSND for compensatory damages, costs, and such other and further relief as this Court deems proper.

## THIRD CAUSE OF ACTION AGAINST

## DEFENDANTS ST. MARGARET MARY, KATERI, AND SSND

### RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

101.    Plaintiff repeats and re-alleges each and every allegation set forth in all paragraphs as if fully set forth herein.

20

102.    In approximately 1976 to 1977, Plaintiff was a student at St. Margaret Mary. While Plaintiff was a student at Defendant St. Margaret Mary, Sr. Nadeau, a member of the religious order the School Sisters of Notre Dame, and the principal of St. Margaret Mary, employed by Defendants St. Margaret Mary and SSND, engaged in unpermitted, harmful, and offensive sexual contact with the Plaintiff on the physical premises of and around St. Margaret Mary.

103.    At all times material, Sr. Nadeau was employed by, or an agent of, Defendants St. Margaret Mary and SSND.

104.    At all times material, Sr. Nadeau remained under the direct supervision, employ, and control of each Defendant St. Margaret Mary and Defendant SSND.

105.    At all times material, Defendants St. Margaret Mary and SSND each had the right to control the manner and means of Sr. Nadeau's performance.

106.    At all times material, Defendants St. Margaret Mary and SSND paid Sr. Nadeau's salary and paid for Sr. Nadeau's health insurance and other benefits.

107.    At all times material, Defendants St. Margaret Mary and SSND furnished an office and other materials, supplies, and tools required for Sr. Nadeau to perform in her position as an administrator at the school.

108.    At all times material, Defendants St. Margaret Mary and SSND each controlled the premises where Sr. Nadeau performed as a nun and administrator.

109.    At all times material, Defendants St. Margaret Mary and SSND each had the power to terminate the employment of Sr. Nadeau.

110.    Defendants St. Margaret Mary and SSND each allowed Sr. Nadeau to have unsupervised and unlimited access to young children at St. Margaret Mary.

111.    Among other duties, Defendants St. Margaret Mary and SSND each employed Sr.

21

Nadeau as the principal at St. Margaret Mary.

112.     Defendants St. Margaret Mary and SSND each created a master-servant relationship with Sr. Nadeau, employing her to interact with, supervise, and discipline children attending St. Margaret Mary.

113.     The unwanted contact by Sr. Nadeau upon Plaintiff occurred during her regular working hours and at the place of her employment with each Defendant St. Margaret Mary and Defendant SSN while performing duties of a disciplinary administrator on behalf of each employer.

114.     The sexual contact by Sr. Nadeau occurred in the course and scope of her employment with each Defendant St. Margaret Mary and Defendant SSND.

115.     The sexual contact by Sr. Nadeau was generally foreseeable to each Defendant St. Margaret Mary and Defendant SSND.

116.     Upon information and belief, before Plaintiff was sexually abused by Sr. Nadeau, each Defendant St. Margaret Mary and Defendant SSND had actual or constructive knowledge of material facts regarding Sr. Nadeau's sexual misconduct, impulses, and behavior but failed to act on that knowledge and exposed Plaintiff as a child to Sr. Nadeau, thereby increasing the likelihood that Plaintiff would be harmed.

117.     The sexual contact by Sr. Nadeau was closely connected to what she was employed to do as a nun and disciplinary administrator for Defendants St. Margaret Mary and SSND, and/or was otherwise naturally incidental to her job duties.

118.     Sr. Nadeau's conduct was motivated, at least in part, by a desire to serve each employer's business interests or otherwise meet the objectives of her employment, however misguided.

22

119.    Alternatively, Sr. Nadeau's conduct constituted an authorized, minor deviation from her employment that was authorized and/or ratified by each Defendans St. Margaret Mary and Defendant SSND.

120.    As a direct and proximate result of Sr. Nadeau's conduct, Plaintiff has suffered damages as set forth herein, and each Defendant St. Margaret Mary and Defendant SSND are liable therefore under the doctrine of respondeat superior.

121.    As the successor in interest who assumed liabilities for Defendant St. Margaret Mary, Defendant Kateri is liable for all damages alleged in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants St. Margaret Mary, Kateri, and SSND, for compensatory damages, costs and such other and further relief as this Court deems proper.

## FOURTH CAUSE OF ACTION AGAINST

## DEFENDANTS ST. MARGARET MARY, KATERI AND SSND

### NEGLIGENT HIRING, RETENTION, AND SUPERVISION

122.    Plaintiff repeats and realleges each and every allegation set forth in all paragraphs as if set forth fully herein.

123.    At all material times, Defendants St. Margaret Mary and SSND, and each of them, by and through their agents, managers, employees, and directors owed a duty to Plaintiff to use reasonable care to protect his safety, care, well-being and health while he was under the care and custody or in the presence of the Defendants. These duties encompassed the use of reasonable care in the hiring, retention and supervision of Sr. Nadeau and otherwise providing a safe environment for children.

124.    Prior to the sexual misconduct perpetrated by Sr. Nadeau upon Plaintiff, Defendants

23

St. Margaret Mary and SSND each knew, or in the exercise of reasonable care, should have known, of the general problem of Catholic clergy, including nuns, teachers, coaches, and administrators engaging in sexual misconduct with children who were in The Diocese of Rochester and St. Margaret Mary programs.

125. Prior to the sexual misconduct perpetrated by Sr. Nadeau upon Plaintiff, Defendants St. Margaret Mary and SSND each knew, or in the exercise of reasonable care, should have known, that Sr. Nadeau was unfit for the duties assigned to her, that she did not exhibit appropriate behavior with children, and she otherwise posed a risk of perpetrating unwanted sexual contact upon children.

126. Given actual or constructive knowledge of Sr. Nadeau's dangerous propensities, the Defendant St. Margaret Mary and Defendant SSND each had a duty to act reasonably in all decisions relating to her hiring, supervision, and retention as an employee.

127. Defendants St. Margaret Mary and SSND each failed to exercise reasonable care in one or more of their decisions to hire, supervise, and retain Sr. Nadeau and therefore exposed Plaintiff to an unreasonable risk of harm.

128. Defendants St. Margaret Mary and SSND each affirmed and ratified Sr. Nadeau's misconduct with Plaintiff. Given the actual and constructive knowledge of the likelihood that Sr. Nadeau and/or other clergy, administrators and teachers would engage children in unwanted sexual contact, the unwanted sexual contact of Plaintiff was reasonably foreseeable to Defendants St. Margaret Mary and SSND.

129. Defendants St. Margaret Mary and SSND and their agents each had superior knowledge of the likelihood that Sr. Nadeau would engage in unwanted sexual contact with children that she encountered in her position as a disciplinary administrator at St. Margaret Mary

24

and had a duty to take precautions to lessen the risk that Plaintiff would be the victim of unwanted sexual contact.

130. At all relevant times, acts and omissions of each Defendant St. Margaret Mary and Defendant SSND's created an environment which fostered unwanted sexual contact and exploitation against the people it had a duty to protect, including Plaintiff.

131. At all relevant times, Defendants St. Margaret Mary and SSND each had inadequate policies and procedures to protect children entrusted to their care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

132. As a direct and proximate result of the negligence of each Defendant St. Margaret Mary and Defendant SSND, Plaintiff suffered severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life, and has incurred and/or will incur costs for treatment in the future. These injuries are permanent and ongoing in nature.

133. As the successor in interest who has assumed liabilities for Defendant St. Margaret Mary, Defendant Kateri is liable for all damages alleged in this complaint.

WHEREFORE, Plaintiff demands judgment against Defendants St. Margaret Mary, Kateri, and SSND for compensatory damages, costs and such other and further relief as this Court deems proper.

## FIFTH CAUSE OF ACTION AGAINST

## DEFENDANTS ST. MARGARET MARY, KATERI, AND SSND

### NEGLIGENCE/PREMISES LIABILITY

134. Plaintiff repeats and realleges each and every allegation set forth in all paragraphs as if set forth fully herein.

135. Plaintiff was a business invitee of each Defendant St. Margaret Mary and Defendant

25

SSND when Sr. Nadeau engaged him in unwanted sexual contact.

136.    Defendants St. Margaret Mary and SSND each owed Plaintiff a duty to protect him from dangerous conditions on their premises that they knew about, or in the exercise of reasonable care, could have discovered.

137.    Defendants St. Margaret Mary and SSND each owed Plaintiff a duty to provide a reasonably safe environment where he would be free from the threat of unwanted sexual contact while on said Defendants' premises.

138.    Defendants St. Margaret Mary and SSND each owed Plaintiff a duty to take reasonable precautions to ensure his safety while on the premises of said Defendants.

139.    Prior to the sexual misconduct perpetrated by Sr. Nadeau upon Plaintiff, Defendants St. Margaret Mary and SSND each knew, or in the exercise of reasonable care, should have known, of the general problem of clergy members, including nuns, administrators, and teachers engaging in sexual misconduct with children, including on their premises.

140.    Prior to the sexual misconduct perpetrated by Sr. Nadeau upon Plaintiff, Defendants St. Margaret Mary and SSND each knew, or in the exercise of reasonable care, should have known, that Sr. Nadeau was unfit for the intimate duties assigned to her, that she did not exhibit appropriate behavior with children, and otherwise posed a risk of perpetrating unwanted sexual contact upon children.

141.    Defendants St. Margaret Mary and SSND each breached the duty owed to Plaintiff by failing to make their premises reasonably safe for Plaintiff despite what they knew or should have known about the existence of a potential threat of harm to Plaintiff on their premises.

142.    Defendants St. Margaret Mary and SSND each breached the duty they owed to Plaintiff by failing to warn Plaintiff of the dangers and risks involved in attending St. Margaret

26

Mary, given their superior knowledge of the potential risk of harm to Plaintiff.

143.    At all relevant times, Defendants St. Margaret Mary and SSND each had inadequate policies and procedures to protect children entrusted to their care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

144.    As a direct and proximate result of the negligence, gross negligence and breaches of duty of each Defendant St. Margaret Mary and Defendant SSND, Plaintiff suffered severe and permanent psychological, emotional and physical injuries, shame, humiliation, loss of ability to engage in gainful activity, loss of income and the inability to lead a normal life, and has incurred and/or will continue to incur costs for treatment and other injuries and damages. These injuries are permanent and ongoing in nature.

145.    As the successor in interest who assumed liabilities for Defendant St. Margaret Mary, Defendant Kateri is liable for all damages alleged in this complaint.

WHEREFORE, Plaintiff demands judgment against Defendants St. Margaret Mary, Kateri, and SSND for a sum in excess of the jurisdictional limits of all lower courts, together with the costs and disbursements and other expenses necessary in this action.

/ / /

/ / /

/ / /

/ / /

27

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Rochester, New York

Dated: July 18, 2020

                                        JAMES, VERNON & WEEKS, P.A.


                                        Leander James, ljames@jvwlaw.net
                                        Craig Vernon, cvernon@jvwlaw.net
                                        James, Vernon & Weeks, PA
                                        1626 Lincoln Way, Coeur d'Alene, ID 83814
                                        (888) 667-0683
                                                    and
                                        20 Vesey Street, New York, NY 10007

                                        Patrick Noaker, patrick@noakerlaw.com
                                        1600 Utica Ave. S, 9th Fl.
                                        St. Louis Park, MN 55416
                                        (952) 491-6798

## VERIFICATION

STATE OF NEW YORK          )
                           )
COUNTY OF MONROE           )  ss:

███████████████ affirms under penalty of perjury, that he has read the foregoing COMPLAINT and knows the contents thereof; that the same is true to the affirmant's own knowledge, except as to those matters therein stated to be on information and belief and as to these matters affirmant believes them to be true.

Dated: July 18, 2020
Rochester, New York

28