# EXHIBIT 9

MONROE COUNTY CLERK'S OFFICE           THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2462809

Book    Page    CIVIL

Return To:                              No. Pages:  27
LEANDER LAUREL JAMES IV
                                        Instrument: COMPLAINT

                                        Control #:      202008140148
                                        Index #:        E2020006101

                                        Date: 08/14/2020

█████████                               ██████:58:52 AM

Cardinal Mooney High School
Congregation of Holy Cross United States Province, Inc.
Congregation of Holy Cross Moreau Province, Inc.

Total Fees Paid:                    $0.00

                                        Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

        JAMIE ROMEO

    MONROE COUNTY CLERK

SUPREME COURT STATE OF NEW YORK
COUNTY OF MONROE

-------------------------------------------x

███████████

        *Plaintiff,*

    v.

CARDINAL MOONEY HIGH SCHOOL;
CONGRETATION OF HOLY CROSS
UNITED STATES PROVINCE, INC, a/k/a
CONGREGATION OF HOLY CROSS; and
CONGREGATION OF HOLY CROSS
MOREAU PROVINCE, INC, a/k/a
CONGREGATION OF HOLY CROSS;

        *Defendants.*

-------------------------------------------x

**VERIFIED COMPLAINT**

INDEX NO.

Plaintiff, ███████████ , by and through undersigned counsel, brings this action

against CARDINAL MOONEY HIGH SCHOOL, CONGREGATION OF HOLY CROSS

UNITED STATES PROVINCE, INC, a/k/a CONGREGATION OF HOLY CROSS and

CONGREGATION OF HOLY CROSS MOREAU PROVINCE, INC, a/k/a CONGREGATION

OF HOLY CROSS and alleges, on personal knowledge as to himself and on information and belief

as to all other matters, as follows:

### I.  JURISDICTION AND VENUE

1.  This Court has personal jurisdiction over Defendants pursuant to CPLR § 301 and

§ 302, because Defendant Cardinal Mooney High School resided in the State of New York, at the

time of the events described herein, and all Defendants committed tortious acts within the State.

2.  Jurisdiction is proper because this Complaint seeks monetary damages in excess of

1

$25,000.00, exclusive of interest, costs, and attorney's fees.

3.       Venue is proper in this Court pursuant to CPLR § 503. At the time of the events described herein, Defendant Cardinal Mooney High School had its principal places of business in Monroe County. The acts and omissions giving rise to this Complaint also occurred in Monroe County.

4.       Plaintiff brings this suit within the extended time period as provided for in Sections 208 and 214-G of the Civil Practice Law and Rules.

## II. PARTIES

5.       Plaintiff            ("Plaintiff") is an adult resident of the State of New York, residing in Monroe County and is otherwise *sui juris*. Plaintiff's claims arise out of child sexual abuse perpetrated upon Plaintiff as a child by Brother John D. Walsh and caused by each Defendant's negligence.

6.       Defendant Cardinal Mooney High School (hereafter "CMHS" or "Defendant CMHS") was a Roman Catholic preparatory school and not-for-profit education corporation with a principal office in Monroe County at 800 Maiden Ln., Rochester, New York 14617. At relevant and material times, the Roman Catholic Bishop of The Diocese of Rochester was the President of CMHS. During all relevant times, CMHS was operated by the Roman Catholic Bishop of Rochester, New York, Defendant Congregation of Holy Cross United States Province, Inc. and the Sisters of Mercy. Defendant CMHS can be served with process by serving a copy of the summons and complaint on the Bishop of the Diocese of Rochester in his capacity as President of the CMHS before it closed or on the Congregation of Holy Cross United States Province, Inc.

7.       Congregation of Holy Cross United States Province, Inc., (hereinafter "Holy Cross" or "Defendant Holy Cross") is a religious order of priests and brothers affiliated with the Roman

2

Catholic Church with its principal place of business at 54515 SR 933, North, Notre Dame, Indiana 46556-0774. At all relevant times, Defendant Holy Cross operated, managed, and staffed Defendant CMHS in Rochester, NY. Further, at all relevant times, Defendant Holy Cross had authority, control, and supervision over Br. John D. Walsh, a member of Defendant Congregation of Holy Cross Moreau Province, Inc., a vice principal and football coach for Defendant CMHS, and the perpetrator of sexual abuse against Plaintiff. Defendant Holy Cross can be served by serving a copy of the summons and complaint on its registered agent Corporation Service Company, at 135 North Pennsylvania Street, Suite 1620, Indianapolis, Indiana 46204.

8.      Congregation of Holy Cross Moreau Province, Inc., (hereinafter "Holy Cross Moreau Province" or "Defendant Holy Cross Moreau Province") is a religious order of priests and brothers affiliated with the Roman Catholic Church with its principal place of business at 600 Congress Ave., Suite 2100, Austin, Texas, 78701-2986. At all relevant times, Defendant Holy Cross Moreau Province had authority over, and responsibility for, Br. John D. Walsh, one of its members, a vice principal and football coach for Defendant CMHS, and the perpetrator of sexual abuse against Plaintiff. Defendant Holy Cross Moreau Province can be served by serving a copy of the summons and complaint on its registered agent, Campbell McGinnis at 600 Congress Avenue, Suite 2100, Austin, Texas 78701.

9.      The provisions of Section 1602 of the CPLR do not apply to the within action including nondelegable duty and/or the doctrine of respondeat superior.

## III.      FACTUAL ALLEGATIONS

### a) Plaintiff's Introduction to Br. John D. Walsh; The Abuse

10.     On or about 1983 to 1984, when he was approximately 14 to 15 years old, Plaintiff was a student at Cardinal Mooney High School in Rochester, New York.

3

11.     At the time of his introduction to the Plaintiff, Br. John D. Walsh was a vice principal at Defendant CMHS and an agent of the same. Br. Walsh was also employed by Defendant CMHS to coach the school's freshman football team, of which Plaintiff was a member.

12.     Beginning before Plaintiff's freshman year at Defendant CMHS while Plaintiff was attending practices for the freshman football team, Br. John Walsh sexually assaulted, sexually abused, and/or sexually molested Plaintiff. Br. Walsh sexually abused Plaintiff on the premises of Defendant CMHS.

13.     The first incident of abuse occurred after one of the freshman football team's practices. Plaintiff injured his hip during practice. After practice, when Plaintiff was in the shower, Br. Walsh looked around the corner of the shower and told Plaintiff to come into his office. Br. Walsh instructed Plaintiff to remain naked. Plaintiff put on underwear and a towel and went to Br. Walsh's office. Br. Walsh got upset with Plaintiff for putting his underwear on. Br. Walsh then put his hand on Plaintiff's buttocks and touched Plaintiff's penis.

14.     Br. Walsh was a frequent visitor to the boys' locker room. He would linger while the boys were showering after practice, looking at their naked bodies, including Plaintiff's.

15.     Br. Walsh would also devise thinly veiled excuses to inappropriately touch Plaintiff and the other boys on the football team. Br. Walsh insisted that every boy on the team wear an athletic cup. Before practice and games, Br. Walsh instructed the boys to line up in a row. He would then touch each boy's genitals under the pretense of making sure that the boys were wearing their athletic cups.

16.     Br. Walsh continued to touch Plaintiff's genitals and buttocks throughout the football season. Plaintiff received many injuries during the season and every time, Br. Walsh would examine Plaintiff's injury, telling Plaintiff to take off his towel each time, giving Br. Walsh

4

skin-on-skin access to Plaintiff's genitals and buttocks.

17.     Br. Walsh's sexual abuse of Plaintiff occurred outside the football locker room as well. On one occasion during school hours, Br. Walsh called Plaintiff to his office on the third floor of Defendant CMHS. When Plaintiff arrived, Br. Walsh told Plaintiff he needed someone to love and care for him. Br. Walsh then instructed Plaintiff to remove his clothing and spin slowly in a circle. Plaintiff complied, fearful that Br. Walsh would harm him if he didn't. While Plaintiff stood naked before Br. Walsh, Br. Walsh began to move his hand under his desk and sweat profusely. Br. Walsh was sexually aroused by Plaintiff's naked body and, upon information and belief, masturbated himself under his desk. After a few minutes, Br. Walsh stood, walked around his desk, and embraced Plaintiff, who was still naked, in a tight hug which lasted several seconds. Br. Walsh then told Plaintiff to put his clothing back on and return to class.

18.     As a direct and proximate result of Br. Walsh's offensive and unwanted sexual touching and misconduct, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful activity, loss of income and other damages, past and future.

19.     As a direct and proximate result of Br. Walsh's offensive and unwanted sexual touching and misconduct, Plaintiff has been prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of his life.

20.     As a direct and proximate result of Br. Walsh's offensive and unwanted sexual touching and misconduct, Plaintiff has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

5

### b) Defendants' Responsibility for the Abuse Committed by Br. Walsh

21.     At all times relevant to the allegations set forth herein, Br. John D. Walsh was a religious brother, administrator and athletic coach employed, trained, assigned, supervised, and managed by Defendant CMHS and was an employee and/or agent for said Defendant. All acts and omissions of Br. Walsh were done in the course and scope of his employment and/or agency for Defendant CMHS.

22.     At all times relevant to the allegations set forth herein, Br. John D. Walsh was employed, supervised, managed, and/or directed by Defendant Holy Cross and was an employee and/or agent for said Defendant. All acts and omissions of Br. Walsh were done in the course and scope of his employment and/or agency for Defendant Holy Cross.

23.     At all times relevant to the allegations set forth herein, Br. John D. Walsh was employed, supervised, managed, and/or directed by Defendant Holy Cross Moreau Province and was an employee and/or agent for said Defendant. All acts and omissions of Br. Walsh were done in the course and scope of his employment and/or agency for Defendant Holy Cross Moreau Province.

24.     Upon information and belief, from as early as 1966 through his arrest in 1985, Br. Walsh was employed as a vice-principal and football coach for Defendant CMHS, a Roman Catholic preparatory school owned, operated, staffed, supervised and managed by The Diocese of Rochester, Defendant CMHS, Defendant Holy Cross and, at least in the case of Br. Walsh, staffed by Defendant Holy Cross Moreau Province.

25.     By holding Br. Walsh out as safe to work with children, and by undertaking the custody, supervision, and/or care of the minor Plaintiff, each Defendant entered into a special relationship with the minor Plaintiff. As a result of Plaintiff being a minor, and by Defendants'

6

undertaking the care and guidance of the then vulnerable Plaintiff, Defendants held a position of empowerment over Plaintiff.

26.     Furthermore, each Defendant, by holding itself out as being able to provide a safe environment for children, solicited and/or accepted this position of empowerment. This empowerment prevented the Plaintiff from effectively protecting himself, and each Defendant thus entered into a special relationship with Plaintiff. By holding themselves itself out as a safe, moral, and trusted institution to Plaintiff's parents, each Defendant induced Plaintiff's parents to entrust their child to Defendants and thereby deprived Plaintiff of the protection of his family.

27.     At all times material, Br. Walsh's sexual abuse of Plaintiff was foreseeable. The problem of clergy sexual abuse of minors is well-documented throughout the history of the Roman Catholic Church. As far back as 1051, St. Peter Damian wrote in the *Book of Gomorrah* that clergy who defiled boys should be dismissed from holy orders. (*Book of Gomorrah*, Ch. 6). Later, St. Peter Damian wrote in his *Rule of the Monastery of Compludo*, about the punishment for "A cleric or monk who seduces youths or young boys" being public flogging, loss of tonsure and six months in jail, among other punishment. In 1143 or 1144, a professor at the University of Bologna named Gratian, known as the "Father of the Science of Canon Law," identified in his work the *Decretum*, the sexual sin by a priest that he called *stuprum pueri*, which is the sexual use of boys by an adult male.

28.     In 1961, the Vatican issued an instruction on the training of candidates for the priesthood, which was based upon the 1917 Code of Canon Law which stated:

> Advancement to religious vows and ordination should be barred to those who are afflicted with evil tendencies to homosexuality or pederasty, since for them the common life and priestly ministry would constitute serious dangers.

29.     This knowledge that Catholic clergy were sexually abusing minors continued

7

through the middle ages and into recent history. In 1962, Pope John XXIII approved the publication *De Modo Procedendi in Causis Solicitationis*, a special procedural law for solicitation of sex in the confessional. This document contained prohibitions prohibiting clergy from having sex with minors under the age of sixteen. This document was distributed to every bishop and major religious superior in the world and was to be kept by them with the deepest secrecy. In addition, this document reflected the Catholic church's insistence on maintaining the highest degree of secrecy regarding the worst sexual crimes perpetrated by clergy.

30.     In 1947, a priest named Fr. Gerald Fitzgerald founded a religious order of priests called the Servants of the Paracletes. This religious order was founded in order to assist and treat Catholic clergy who experienced mental health problems. By 1952, Fr. Fitzgerald wrote that he had already treated a handful of priests who had sexually abused minors. By 1963, the Paracletes were treating so many sexually abusive clergy that they developed a shorthand code, "code 3," to describe the offense. By 1966, the Paracletes began specializing in treatment of pedophile Catholic clergy.

31.     As early as 1971, the issue of sexual misconduct by clergy was being discussed in the Commonwealth of Massachusetts. Bishop Bernard Flanagan, Bishop of Worchester (Massachusetts) testified that as early as February 1971, there had been discussions about sexual misconduct among priests. According to Bishop Flanagan, "I think by 1971 I had heard of other cases of this type [sic] sexual misconduct and I knew that they were taking place in other dioceses too."

32.     That same year, Dr. Conrad Baars and Dr. Anna Terruwe presented a scholarly paper titled The Role of the Church in the Causation, Treatment and Prevention of the Crisis in the Priesthood" to the 1971 Synod of Bishops at the Vatican and to the U.S. Conference of Catholic

8

Bishops about psychiatric problems in Catholic clergy and how psychosexual immaturity manifested itself in heterosexual and homosexual activity. In 1990, psychologist and priest, A.W. Richard Sipe, published a study involving 1,500 priests that concluded that six (6) percent of priests were sexually involved with minors.

33. In 1985, the public prosecution of a priest in Lafayette, Louisiana led to the creation of the 100-page document titled *"The Problem of Sexual Molestation by Roman Catholic Clergy: Meeting the Problem in a Comprehensive and Responsible Manner"* by Fr. Thomas Doyle, F. Ray Mouton and Fr./Dr. Michael Peterson. This document was distributed to every Catholic Bishop and religious order ordinary in the United States. A significant portion of this document describes how significant the sexual abuse of children by Catholic clergy had become.

34. As to Br. Walsh, specifically, Defendants knew or should have known that Br. Walsh was a sexual risk to children. Br. Walsh sexually abused Plaintiff while in his office on school grounds and in the boys' locker room in full view of the other players and staff. Further, Br. Walsh frequently acted inappropriately around the young men on the football team in plain sight, lingering in the showers and locker rooms while the boys were naked or barely clothed.

35. In August 1985, Br. Walsh was arrested after kidnapping two boys at gunpoint. According to press articles written about the arrest, Br. Walsh asked the two boys for directions to a local shopping center and then grabbed one of the boys while the other tried to run away. Walsh reportedly told the other boy to come back or he would shoot him. The boys got into Walsh's car and Walsh drove them through Brighton, NY and Penfield, NY before releasing the boys on the north side of Rochester. During the car ride, Br. Walsh offered the boys money in exchange for sex. The boys were eleven and twelve years old. Br. Walsh pled guilty to coercion and unlawful imprisonment and was sentenced to six months in jail.

9

36.     Br. Walsh has been named in at least two civil lawsuits filed under the Child Victims Act. These suits allege Br. Walsh sexually abused two teenage boys at Cardinal Mooney High School during the years 1966-1969, and 1983-1985, respectively. Further, in 2020, another man reported to Defendant Holy Cross that Br. Walsh kidnapped him, took him to a motel in Fairport, NY, drugged him and raped him; this alleged incident occurred in 1983 or 1984 when the boy was approximately 14 to 15 years old.

37.     Upon information and belief, before Plaintiff was sexually abused by Br. Walsh, each Defendant had actual or constructive knowledge of material facts regarding Br. Walsh's sexual misconduct, impulses, and behavior.

38.     Despite clear indications of danger, each Defendant took no steps to discover the specific nature of Br. Walsh's problems or to determine whether he was fit to work with children or to protect children from him, thereby increasing the likelihood that Plaintiff would be harmed.

## IV.     CAUSES OF ACTION

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS CMHS, HOLY CROSS AND

## HOLY CROSS MOREAU PROVINCE

### NEGLIGENCE/GROSS NEGLIGENCE

39.     Plaintiff repeats and re-alleges each and every allegation set forth in all paragraphs as if fully set forth herein.

40.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each allowed Br. Walsh to have unsupervised and unlimited access to minor children while in a position of authority over them, at Defendant CMHS in Rochester, New York.

41.     At all times material, Br. Walsh was employed by Defendants CMHS, Holy Cross and Holy Cross Moreau Province.

10

42. At all times material, Br. Walsh remained under the direct supervision, employ, and control of each Defendant.

43. Upon information and belief, before Plaintiff was sexually abused by Br. Walsh, Each Defendant had actual or constructive knowledge of material facts regarding Br. Walsh's sexual misconduct, impulses, and behavior, and had actual or constructive knowledge that he posed a sexual risk of harm to children.

44. Despite clear indications of danger, Defendants CMHS, Holy Cross and Holy Cross Moreau Province each took no steps to discover the specific nature of Br. Walsh's problems or to determine whether he was fit to work with children or to protect children from him, thereby increasing the likelihood that Plaintiff would be harmed.

45. Plaintiff was raised in a devout Roman Catholic family, regularly celebrated mass, received the sacraments, and participated in church-related activities. Plaintiff, therefore, developed great admiration, trust, reverence, and respect for the Roman Catholic Church and its agents; the Diocese of Rochester and its agents, including the Archbishop/Bishop; Defendant CMHS, a Catholic educational institution within the Diocese of Rochester; and all priests, brothers, deacons, nuns and religious clergy members, including Br. John D. Walsh.

46. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each held Br. Walsh out as a qualified Roman Catholic brother and teacher, and undertook the education, religious instruction, and spiritual and emotional guidance of Plaintiff. Accordingly, Plaintiff placed trust in Defendants CMHS, Holy Cross and Holy Cross Moreau Province such that Defendants and their agents, including Br. Walsh, gained superiority and influence over Plaintiff. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each entered into a special relationship with the Plaintiff and his family.

11

47. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each knew or should have known that some of the leaders and people working at Catholic institutions within the Diocese of Rochester, including at Defendant CMHS, were not safe for children.

48. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each knew or should have known that it lacked sufficient information about whether their leaders and people working at Catholic institutions and schools within the Diocese of Rochester, including Defendant CMHS, were safe around children.

49. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each knew or should have known that there was a risk of child sex abuse for children participating in Catholic programs and activities and attending Catholic schools within the Diocese of Rochester, including at Defendant CMHS.

50. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each knew or should have known that it lacked sufficient information about whether there was a risk of child sex abuse for children participating in Catholic programs and activities and attending Catholic schools within the Diocese of Rochester, including at Defendant CMHS.

51. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each knew or should have known that it had other agents who had sexually molested children. Defendants CMHS, Holy Cross and Holy Cross Moreau Province knew or should have known that child molesters have a high rate of recidivism. Defendants CMHS, Holy Cross and Holy Cross Moreau Province knew or should have known that there was a specific danger of child sex abuse for children attending Defendant CMHS.

52. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each held its leaders and agents out as people of high morals and as possessing immense power. They taught

12

families and children to obey, respect and revere these leaders and agents, including Br. John Walsh.

53.    Defendants CMHS, Holy Cross and Holy Cross Moreau Province each solicited youth and families to their school, including Plaintiff. Defendants CMHS, Holy Cross and Holy Cross Moreau Province specifically marketed to youth and families in order to recruit youth and families to their school and programs. Defendants CMHS, Holy Cross and Holy Cross Moreau Province each gave Br. Walsh access to youth participating in said school and programs, including Plaintiff.

54.    Defendants CMHS, Holy Cross and Holy Cross Moreau Province each held out the people that worked in their school and youth activities and programs, including Br. Walsh, as safe for children/youth.

55.    Defendants CMHS, Holy Cross and Holy Cross Moreau Province each made negligent representations to Plaintiff and his family. Plaintiff and/or his family relied upon these representations, which resulted in Plaintiff being put in a vulnerable situation with Br. Walsh and subjected to his sexual misconduct and harm.

56.    Defendants CMHS, Holy Cross and Holy Cross Moreau Province each owed Plaintiff a duty of reasonable care because each assumed duties owed to Plaintiff and had superior knowledge about the risk that Br. Walsh posed to Plaintiff, the risk of abuse in general at their school and in their programs, and/or the risks that their facilities posed to minor children. Defendants CMHS, Holy Cross and Holy Cross Moreau Province had the duty to protect the moral purity of Plaintiff and other children with whom Br. Walsh came in contact within the Diocese of Rochester and at Defendant CMHS.

13

57.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each owed Plaintiff a duty of reasonable care because each Defendant assumed that duty and because they solicited youth and parents for attendance at their school and participation in their youth programs, including Plaintiff.

58.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each owed Plaintiff a duty of reasonable care because each Defendant undertook custody of minor children, including Plaintiff.

59.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each owed Plaintiff a duty of reasonable care because each Defendant promoted their facilities and programs as being safe for children, including Plaintiff.

60.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each owed Plaintiff a duty of reasonable care because each Defendant held out their agents, including Br. Walsh, to the public, including Plaintiff, as safe to work with children.

61.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each owed Plaintiff a duty of reasonable care because each Defendant encouraged parents and children to spend time with their agents and/or encouraged their agents, including Br. Walsh, to spend time with, interact with, and recruit children, including Plaintiff.

62.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each had a duty to Plaintiff to protect him from harm because each Defendant's actions created a foreseeable risk of harm to Plaintiff.

63.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by exposing Plaintiff to a known pedophile/ephebophile.

64.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached

14

its duties by exposing Plaintiff to a religious brother, coach and school administrator Defendants knew or should have known was a pedophile/ephebophile.

65.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by recruiting, hiring, and maintaining Br. Walsh in a position of authority over children, including Plaintiff.

66.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by exposing Br. Walsh to children, including Plaintiff.

67.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by leaving Br. Walsh alone with children unsupervised, including Plaintiff.

68.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by inducing Plaintiff and his parents to entrust Plaintiff to Br. Walsh.

69.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by failing to follow policies and procedures designed to prevent child sex abuse and/or failing to implement sufficient policies and procedures to prevent child sex abuse.

70.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by failing to take reasonable measures to make sure that policies and procedures to prevent child sex abuse were working.

71.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by failing to adequately inform families and children of the known risks of child sex abuse within Defendant CMHS.

72.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by holding out their employees and agents, including Br. Walsh, as safe and wholesome for children to be with.

15

73.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by failing to investigate risks of child molestation.

74.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by failing to properly train the workers at their school and within their academic programs.

75.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by failing to have any outside agency test their safety procedures.

76.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province breached their duties by failing to protect the children in their programs from child sex abuse and failing to adhere to the applicable standard of care for child safety.

77.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province breached their duties by failing to investigate the amount and type of information necessary to represent their institution, programs, leaders and employees as safe.

78.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province breached their duties by failing to respond to and/or investigate information of improper conduct with children of their employee and agent, Br. Walsh.

79.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties by failing to properly train their employees to identify signs of child molestation by fellow employees.

80.     Defendants CMHS and Holy Cross each breached its duty to use ordinary care in determining whether its facilities were safe and/or to determine whether it had sufficient information to represent its facilities as safe.

81.     Defendants CMHS and Holy Cross each breached its duty of care by maintaining a

16

dangerous condition on the premises of its facilities (i.e., a religious brother, coach and administrator Defendants knew or should have known posed a risk of pedophilic harm to children).

82.    Defendants CMHS and Holy Cross each breached its duty of care by holding out its facilities as a safe and moral place for children, knowing the facilities were not safe nor moral.

83.    Defendants CMHS and Holy Cross each breached its duty of care by failing to have sufficient policies and procedures to prevent abuse at its facilities.

84.    Defendants CMHS and Holy Cross each breached its duty of care by failing to investigate risks at its facilities.

85.    Defendants CMHS and Holy Cross each breached its duty of care by failing to properly train the workers at its facilities and failing to have any outside agency test its safety procedures.

86.    Defendants CMHS and Holy Cross each breached its duty of care by failing to investigate the amount and type of information necessary to represent its facilities as safe.

87.    Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties to Plaintiff by holding out religious clergy, coaches, administrators, and teachers, including Br. Walsh, as safe, moral, and trustworthy people and by failing to warn Plaintiff and his family of the risk that Br. Walsh posed and the known risks of child sexual abuse by clergy, coaches, administrators, and teachers in general.

88.    Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties to Plaintiff by failing to warn Plaintiff about any of the knowledge that Defendants had about child sex abuse perpetrated by clergy, coaches, administrators, or teachers, in general, and Br. Walsh, specifically.

17

89.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province each breached its duties to Plaintiff by failing to report Br. Walsh's abuse of children to the police and law enforcement.

90.     Defendants CMHS, Holy Cross and Holy Cross Moreau Province further each breached its duties by hiding a pedophile/ephebophile and engaging in a cover-up of abuse perpetrated by Br. Walsh.

91.     As a direct and proximate result of each Defendant's negligence, gross negligence and breaches of duty, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful employment, loss of income and other losses and damages, past and future.

92.     As a direct and proximate result of each Defendant's negligence, gross negligence and breaches of duty, Plaintiff was prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of life.

93.     As a direct and proximate result of each Defendant's negligence, gross negligence and breaches of duty, Plaintiff has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiff demands judgment against Defendant CMHS, Defendant Holy Cross and Defendant Holy Cross Moreau Province for compensatory damages, costs, and such other and further relief as this Court deems proper.

18

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS

## CMHS, HOLY CROSS AND HOLY CROSS MOREAU PROVINCE

### RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

94. Plaintiff repeats and re-alleges each and every allegation set forth in all paragraphs as if fully set forth herein.

95. In approximately 1983-84, when Plaintiff was approximately 14-15 years old, Plaintiff was a student at Defendant CMHS. While Plaintiff was a student at Defendant CMHS, Br. Walsh, a coach and administrator, employed by Defendants, engaged in unpermitted, harmful, and offensive sexual contact with the Plaintiff on the physical premises of and around CMHS.

96. At all times material, Br. Walsh was employed by, or an agent of, Defendants CMHS, Holy Cross and Holy Cross Moreau Province.

97. At all times material, Br. Walsh remained under the direct supervision, employ, and control of Defendants CMHS, Holy Cross and Holy Cross Moreau Province.

98. At all times material, Defendants CMHS, Holy Cross and Holy Cross Moreau Province had the right to control the manner and means of Br. Walsh's performance.

99. At all times material, Defendants CMHS, Holy Cross and Holy Cross Moreau Province paid Br. Walsh's salary and paid for Br. Walsh's health insurance and/or other benefits.

100. At all times material, Defendants CMHS, Holy Cross and Holy Cross Moreau Province furnished an office and other materials, supplies, and tools required for Br. Walsh to perform in his position as a coach and administrator at the school.

101. At all times material, Defendants CMHS and Holy Cross controlled the premises where Br. Walsh performed as a priest and administrator.

102. At all times material, Defendants CMHS, Holy Cross and Holy Cross Moreau

19

Province had the power to terminate the employment of Br. Walsh.

103. Defendants CMHS, Holy Cross and Holy Cross Moreau Province allowed Br. Walsh to have unsupervised and unlimited access to young children at Defendant CMHS.

104. Among other duties, Defendants CMHS and Holy Cross employed Br. Walsh as the vice principal and freshman football coach at Defendant CMHS.

105. Defendants CMHS, Holy Cross and Holy Cross Moreau Province created a master-servant relationship with Br. Walsh, employing him to interact with, supervise, and discipline children attending Defendant CMHS.

106. The unwanted contact by Br. Walsh upon Plaintiff occurred during his regular working hours and at the place of his employment with Defendants CMHS, Holy Cross and Holy Cross Moreau Province while performing duties of a coach and administrator on behalf of his employer.

107. The sexual contact by Br. Walsh occurred in the course and scope of his employment with Defendants CMHS, Holy Cross and Holy Cross Moreau Province.

108. The sexual contact by Br. Walsh was generally foreseeable to Defendants CMHS, Holy Cross and Holy Cross Moreau Province.

109. Upon information and belief, before Plaintiff was sexually abused by Br. Walsh, Defendants CMHS, Holy Cross and Holy Cross Moreau Province had actual or constructive knowledge of material facts regarding Br. Walsh's sexual misconduct, impulses, and behavior but failed to act on that knowledge and exposed Plaintiff as a child to Br. Walsh, thereby increasing the likelihood that Plaintiff would be harmed.

110. The sexual contact by Br. Walsh was closely connected to what he was employed to do as a coach and disciplinary administrator and/or Catholic brother for Defendants CMHS,

20

Holy Cross and Holy Cross Moreau Province, and/or was otherwise naturally incidental to his job duties.

111. Br. Walsh's conduct was motivated, at least in part, by a desire to serve his employers' business interests or otherwise meet the objectives of his employment, however misguided.

112. Alternatively, Br. Walsh's conduct constituted an authorized, minor deviation from his employment that was authorized and/or ratified by Defendants CMHS, Holy Cross and Holy Cross Moreau Province.

113. As a direct and proximate result of Br. Walsh's conduct and the negligence of Defendant CMHS, Defendant Holy Cross and Defendant Holy Cross Moreau Province alleged herein, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff demands judgment against Defendant CMHS, Defendant Holy Cross, and Defendant Holy Cross Moreau Province for compensatory damages, costs and such other and further relief as this Court deems proper.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS

## CMHS, HOLY CROSS AND HOLY CROSS MOREAU PROVINCE

### NEGLIGENT HIRING, RETENTION, AND SUPERVISION

114. Plaintiff repeats and realleges each and every allegation set forth in all paragraphs as if set forth fully herein.

115. At all material times, each Defendant, by and through its agents, managers, employees, and directors owed a duty to Plaintiff to use reasonable care to protect his safety, care, well-being and health while he was under the care and custody or in the presence of each Defendant. These duties encompassed the use of reasonable care in the hiring, retention and

21

supervision of Br. Walsh and otherwise providing a safe environment for children.

116.  Prior to the sexual misconduct perpetrated by Br. Walsh upon Plaintiff, Defendants CMHS, Holy Cross and Holy Cross Moreau Province each knew, or in the exercise of reasonable care, should have known, of the general problem of Catholic priests, clergy, teachers, coaches, and administrators engaging in sexual misconduct with children who were in Diocese of Rochester and CMHS programs.

117.  Prior to the sexual misconduct perpetrated by Br. Walsh upon Plaintiff, Defendants CMHS, Holy Cross and Holy Cross Moreau Province each knew, or in the exercise of reasonable care, should have known, that Br. Walsh was unfit for the duties assigned to him, that he did not exhibit appropriate behavior with children, and he otherwise posed a risk of perpetrating unwanted sexual contact upon children.

118.  Given actual or constructive knowledge of Br. Walsh's dangerous propensities, Defendants CMHS, Holy Cross and Holy Cross Moreau Province each had a duty to act reasonably in all decisions relating to the hiring, supervision, and retention of Br. Walsh as an employee.

119.  Each Defendant failed to exercise reasonable care in one or more of its decisions to hire, supervise, and retain Br. Walsh and therefore exposed Plaintiff to an unreasonable risk of harm.

120.  Each Defendant affirmed and ratified Br. Walsh's misconduct with Plaintiff. Given the actual and constructive knowledge of the likelihood that Br. Walsh and/or other clergy would engage children in unwanted sexual contact, the unwanted sexual contact of Plaintiff was reasonably foreseeable to Defendants CMHS, Holy Cross and Holy Cross Moreau Province.

121.  Defendants CMHS, Holy Cross and Holy Cross Moreau Province and their agents had superior knowledge of the likelihood that Br. Walsh would engage in unwanted sexual contact

22

with children that he encountered in his position as a disciplinary administrator and coach and had a duty to take precautions to lessen the risk that Plaintiff would be the victim of unwanted sexual contact.

122. At all relevant times, Defendants' acts and omissions created an environment which fostered unwanted sexual contact and exploitation against the people it had a duty to protect, including Plaintiff.

123. At all relevant times, Defendants CMHS, Holy Cross and Holy Cross Moreau Province had inadequate policies and procedures to protect children entrusted to their care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

124. As a direct and proximate result of the negligence of each Defendant, Plaintiff suffered severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life, and has incurred and/or will incur costs for treatment in the future. These injuries are permanent and ongoing in nature.

WHEREFORE, Plaintiff demands judgment against Defendant CMHS, Defendant Holy Cross and Defendant Holy Cross Moreau Province, for compensatory damages, costs and such other and further relief as this Court deems proper.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANTS

## CMHS AND HOLY CROSS

### NEGLIGENCE/PREMISES LIABILITY

125. Plaintiff repeats and realleges each and every allegation set forth in all paragraphs as if set forth fully herein.

126. Plaintiff was a business invitee of Defendants CMHS and Holy Cross when Br.

23

Walsh engaged him in unwanted sexual contact.

127.    Defendants CMHS and Holy Cross owed Plaintiff a duty to protect him from dangerous conditions on their premises that they knew about, or in the exercise of reasonable care, could have discovered.

128.    Defendants CMHS and Holy Cross owed Plaintiff a duty to provide a reasonably safe environment where he would be free from the threat of unwanted sexual contact while on Defendants' premises.

129.    Defendants CMHS and Holy Cross owed Plaintiff a duty to take reasonable precautions to ensure his safety while on the premises of Defendants.

130.    Prior to the sexual misconduct perpetrated by Br. Walsh upon Plaintiff, Defendants CMHS and Holy Cross knew, or in the exercise of reasonable care, should have known, of the general problem of clergy, administrators, coaches, and teachers engaging in sexual misconduct with children, including on their premises.

131.    Prior to the sexual misconduct perpetrated by Br. Walsh upon Plaintiff, Defendants CMHS and Holy Cross knew, or in the exercise of reasonable care, should have known, that Br. Walsh was unfit for the intimate duties assigned to him, that he did not exhibit appropriate behavior with children, and otherwise posed a risk of perpetrating unwanted sexual contact upon children.

132.    Defendants CMHS and Holy Cross each breached the duty owed to Plaintiff by failing to make their premises reasonably safe for Plaintiff despite what they knew or should have known about the existence of a potential threat of harm to Plaintiff on their premises.

133.    Defendants CMHS and Holy Cross each breached the duty it owed to Plaintiff by failing to warn Plaintiff of the dangers and risks involved in attending CMHS, given their superior knowledge of the potential risk of harm to Plaintiff.

24

134. At all relevant times, Defendants CMHS and Holy Cross had inadequate policies and procedures to protect children entrusted to their care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

135. As a direct and proximate result of the negligence, gross negligence and breaches of duty of Defendant CMHS and Defendant Holy Cross, Plaintiff suffered severe and permanent psychological, emotional and physical injuries, shame, humiliation, loss of ability to engage in gainful activity, loss of income and the inability to lead a normal life, and has incurred and/or will continue to incur costs for treatment and other injuries and damages. These injuries are permanent and ongoing in nature.

WHEREFORE, Plaintiff demands judgment against Defendants CMHS and Holy Cross for a sum in excess of the jurisdictional limits of all lower courts, together with the costs and disbursements and other expenses necessary in this action.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Rochester, New York

Dated: July 28, 2020

JAMES, VERNON & WEEKS, P.A.

Leander James, ljames@jvwlaw.net
Craig Vernon, cvernon@jvwlaw.net
James, Vernon & Weeks, PA
1626 Lincoln Way, Coeur d'Alene, ID 83814
20 Vesey Street, New York, NY 10007
(888) 667-0683

Patrick Noaker, patrick@noakerlaw.com
1600 Utica Ave. S, 9th Fl.
St. Louis Park, MN 55416
(952) 491-6798

25

## VERIFICATION

STATE OF NEW YORK   )
                         )
COUNTY OF MONROE   ) ss:

████████ affirms under penalty of perjury, that he has read the foregoing COMPLAINT and knows the contents thereof; that the same is true to the affirmant's own knowledge, except as to those matters therein stated to be on information and belief and as to these matters affirmant believes them to be true.

**Dated:**   Rochester, New York

        7 - 28 , 2020



26