# **EXHIBIT 10**



**Mary F. Strickland , County Clerk**
Livingston County Government Center
6 Court Street, Room 201
Geneseo, New York  14454
(585) 243-7010 ~ Fax (585) 243-7928

# Livingston County Clerk Recording Page

**Received From:**
    LEANDER LAUREL JAMES IV

**Return To:**
    LEANDER LAUREL JAMES IV

Document Type: **CIVIL ACTION - MISC**

Document Desc: **COMPLAINT**

| Plaintiff |
| --- |
| ██████████████ |

| Defendant |
| --- |
| St. Agnes of Avon, NY aka St. Agnes Church<br>   *nka Saint Agnes, Paul and Rose Catholic Parish aka Saint Agnes, Paul and Rose Catholic Churches*<br>Larrabee Joseph Edward |

| Recorded Information: | |
| --- | --- |
| Index #: 000561-2020 | |

State of New York
County of Livingston

EFiling through NYSCEF

*Mary F. Strickland*

Livingston County Clerk

*This sheet constitutes the Clerk's endorsement required by section 319 of the Real Property Law of the State of New York*

SUPREME COURT STATE OF NEW YORK
COUNTY OF LIVINGSTON
----------------------------------------------x

████████████████,

        *Plaintiff*,

    v.

ST. AGNES OF AVON, NY a/k/a ST.
AGNES CHURCH n/k/a SAINT AGNES,
PAUL AND ROSE CATHOLIC PARISH
a/k/a SAINT AGNES, PAUL AND ROSE
CATHOLIC CHURCHES; and

JOSEPH EDWARD LARRABEE,

        *Defendants*.
----------------------------------------------x

**VERIFIED COMPLAINT**
INDEX NO.

      Plaintiff, ████████████████, by and through undersigned counsel, brings this

action against ST. AGNES OF AVON, NY a/k/a ST. AGNES CHURCH n/k/a SAINT AGNES,

PAUL AND ROSE CATHOLIC PARISH a/k/a SAINT AGNES, PAUL AND ROSE CATHOLIC

CHURCHES; and JOSEPH EDWARD LARRABEE, and alleges, on personal knowledge as to

himself and on information and belief as to all other matters, as follows:

## I.    JURISDICTION AND VENUE

      1.    This Court has personal jurisdiction over the Defendants pursuant to CPLR § 301

and § 302, because Defendant St. Agnes of Avon, NY resided in the State of New York and, upon

merging with Saint Agnes, Paul and Rose Catholic Parish, still resides in the State of New York.

Additionally, Defendants St. Agnes of Avon, NY and Joseph Edward Larrabee committed tortious

acts within the state.

1

2.      Jurisdiction is proper because this Complaint seeks monetary damages in excess of $25,000.00, exclusive of interest, costs, and attorney's fees.

3.      Venue is proper in this Court pursuant to CPLR § 503. Defendant St. Agnes of Avon, NY, at the time of the events described herein, had its principal place of business in Livingston County. The Defendant Saint Agnes, Paul and Rose Catholic Parish has its principal place of business in Livingston County. The acts and omissions giving rise to this Complaint also occurred in Livingston County.

4.      Plaintiff brings this suit within the extended time period as provided for in Sections 208 and 214-G of the Civil Practice Law and Rules.

## II. PARTIES

5.      Plaintiff ███████████ ("Plaintiff") is an adult resident of the State of New York, residing in Livingston County, New York and is otherwise *sui juris*.

6.      Defendant St. Agnes of Avon, NY a/k/a St. Agnes Church (hereinafter "St. Agnes" or "Defendant St. Agnes") was a Roman Catholic parish within and under the authority of The Diocese of Rochester and was a religious corporation organized pursuant to the Religious Corporations law with a principal place of business at 96 Prospect St, Avon, NY 14414, in Livingston County, New York.  At relevant and material times, the Roman Catholic Bishop of The Diocese of Rochester, New York, was the President of St. Agnes, the Roman Catholic Vicar General of The Diocese of Rochester was the Vice-President of St. Agnes, and the Pastor of St. Agnes was also the Secretary of St. Agnes. Additional board members included two lay persons approved by the Bishop/President and who could be removed by the Bishop/President. The Bishop appointed the Pastor to the parish and had the authority at all times relevant hereto to remove him from that position. At all times material hereto, the Bishop had authority over the Vicar General

2

in his dual roles as Vicar General and Vice-President of St. Agnes. By virtue of his dual roles as Bishop/President, and his control and authority over the Vicar General, the Pastor/Secretary, and the two lay persons appointed to the board, the Bishop and The Diocese of Rochester controlled St. Agnes. Defendant St. Agnes can be served with process by delivering the summons and complaint on the President/Bishop of The Diocese of Rochester, Bishop Salvatore Matano, or on its authorized agent, Woods Oviatt Gilman LLP, 1900 Bausch & Lomb Place, Rochester, New York 14604, Attn: Timothy P. Lyster, Esq.

7.     Defendant Saint Agnes, Paul and Rose Catholic Parish a/k/a Saint Agnes, Paul and Rose Catholic Churches (hereinafter "Saint Agnes, Paul and Rose" or "Defendant Saint Agnes, Paul and Rose") is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 96 Prospect St., Avon, NY 14414 in Livingston County, NY. As the result of several corporate mergers, Defendant Saint Agnes, Paul and Rose is the legal successor to Defendant St. Agnes and has assumed the liabilities of St. Agnes alleged herein; as the successor in interest who assumed liabilities for St. Agnes, Saint Agnes, Paul and Rose is liable for all damages alleged in this Complaint. Saint Agnes, Paul and Rose is a Roman Catholic parish within and under the authority of The Diocese of Rochester. At relevant and material times, the Roman Catholic Bishop of Rochester, New York has been the President of Saint Agnes, Paul and Rose, the Roman Catholic Vicar General of The Diocese of Rochester, New York has been the Vice-President of Saint Agnes, Paul and Rose, and the Pastor of Saint Agnes, Paul and Rose has also been the Secretary of Saint Agnes, Paul and Rose. Additional board members include two lay persons approved by the Bishop/President and who can be removed by the Bishop/President. The Bishop appoints the Pastor to the parish and has the authority at all times relevant hereto to remove him from that position. At all times material hereto, the Bishop has had authority over the Vicar

3

General in his dual roles as Vicar General and Vice-President of Saint Agnes, Paul and Rose. By virtue of his dual roles as Bishop/President, and his control and authority over the Vicar General, the Pastor and the two lay persons appointed to the board, the Bishop and Diocese control Saint Agnes, Paul and Rose. Defendant Saint Agnes, Paul and Rose can be served with process through service on the President/Bishop of the Diocese of Rochester or on its authorized agent, Woods Oviatt Gilman LLP, 1900 Bausch & Lomb Place, Rochester, New York, 14604, Attn: Timothy P. Lyster, Esq.

8. At all times material, Defendant Joseph Edward Larrabee (hereafter "Fr. Larrabee" "Defendant Larrabee" or "Larrabee") was an ordained Roman Catholic diocesan priest employed by and an agent of Defendant St. Agnes. Fr. Larrabee was ordained in 1980. The Diocese of Rochester assigned Fr. Larrabee to be a pastor at Defendant St. Agnes from 1981 to 1983. Through his position at, within, or for Defendant St. Agnes, Fr. Larrabee was put in direct contact with Plaintiff. Larrabee can be served with process by delivering the summons and complaint to Larrabee's last known address: 61 Adirondack Road, Hadley, Saratoga County, New York.

9. The provisions of Section 1602 of the CPLR do not apply to the within action including nondelegable duty and/or the doctrine of respondeat superior.

### III. FACTUAL ALLEGATIONS

**a) Plaintiff's Introduction to Fr. Joseph Larrabee; The Abuse**

10. During his childhood, Plaintiff was a parishioner at Defendant St. Agnes in Avon, NY. Plaintiff also attended elementary school at St. Agnes School in Avon, NY, the parochial school associated with and owned by Defendant St. Agnes. In approximately 1982 to 1983, Plaintiff was in seventh grade at St. Agnes. Plaintiff was approximately twelve to thirteen years old at the time of the events described herein.

4

11.     In 1981, Fr. Larrabee was assigned to be a pastor at Defendant St. Agnes. He remained in that position for approximately two years until 1983.

12.     One day in approximately 1982 or 1983, Plaintiff visited the Rectory of Defendant St. Agnes. Plaintiff fell asleep but awoke when he felt Fr. Larrabee sitting next to him. When Plaintiff awoke, he discovered his pants and underwear had been pulled down to expose his penis and Fr. Larrabee was fondling his penis in a circular motion, from one side to the other.

13.     After the abuse, Fr. Larrabee threatened to expel Plaintiff from St. Agnes school. He called Plaintiff's parents and accused Plaintiff of being a troublemaker and a liar. Plaintiff told his parents about the sexual abuse he suffered by Fr. Larrabee.

14.     As a direct and proximate result of Larrabee's offensive and unwanted sexual touching, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful activity, loss of income and other damages, past and future.

15.     As a direct and proximate result of Larrabee's offensive and unwanted sexual touching, Plaintiff has been prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of his life.

16.     As a direct and proximate result of Larrabee's offensive and unwanted sexual touching, Plaintiff will likely incur expenses for medical and psychological treatment, therapy, and counseling.

   b)  **Defendants St. Agnes and Saint Agnes, Paul and Rose's Responsibility for the Abuse Committed by Fr. Larrabee**

17.     At all times relevant to the allegations set forth herein, Father Joseph Larrabee was

5

a priest employed, supervised, and managed by the Defendant St. Agnes and was an employee

and/or agent for said Defendant. All acts and omissions of Fr. Larrabee were done in the course

and scope of his employment and/or agency for Defendant St. Agnes.

18.     Upon ordination in 1980, The Diocese of Rochester assigned Fr. Larrabee to be a

pastor at St. Mary Church in Dansville, New York.

19.     In 1981, The Diocese of Rochester transferred Fr. Larrabee to Defendant St. Agnes

in Avon, NY. He remained there through 1983.

20.     In 1983, The Diocese of Rochester transferred Fr. Larrabee to St. John the

Evangelist in Greece, NY where he remained until 1986.

21.     In 1986, The Diocese of Rochester assigned Fr. Larrabee to Good Shepherd Church

in Henrietta, NY, where he served as pastor from 1986 to 1992 and temporary administrator in

1989.

22.     In 1992, The Diocese of Rochester assigned Fr. Larrabee as the chaplain and

temporary administrator at St. Ann's Home in Rochester, NY. He served there for two months

before taking a four-month sabbatical.

23.     Upon returning from his sabbatical, The Diocese of Rochester referred Fr. Larrabee

for residential treatment at the Institute for Living in Hartford, CT. Fr. Larrabee was officially

placed on administrative leave in 1993.

24.     Upon information and belief, Fr. Larrabee was voluntarily laicized from his clerical

state around 1993 after allegations that he had sexually molested, sexually assaulted and/or

sexually abused minor boys.

25.     Fr. Larrabee's name was included on The Diocese of Rochester's 2012 published

list of priests removed from ministry due to sexual abuse of minors. Since that time, several

6

lawsuits have been filed against Fr. Larrabee, The Diocese of Rochester, and the parishes with whom Fr. Larrabee was employed, including Defendant St. Agnes, alleging Fr. Larrabee sexually abused several teenage boys during his ministry.

26.     At all times material, Fr. Larrabee's sexual abuse of Plaintiff was foreseeable.  The problem of clergy sexual abuse of minors is well-documented throughout the history of the Roman Catholic Church.  As far back as 1051, St. Peter Damian wrote in the *Book of Gomorrah* that clergy who defiled boys should be dismissed from holy orders.  (*Book of Gomorrah*, Ch. 6).  Later, St. Peter Damian wrote in his *Rule of the Monastery of Compludo*, about the punishment for "A cleric or monk who seduces youths or young boys" being public flogging, loss of tonsure and six months in jail, among other punishment.  In 1143 or 1144, a professor at the University of Bologna named Gratian, known as the "Father of the Science of Canon Law," identified in his work the *Decretum*, the sexual sin by a priest that he called *stuprum pueri*, which is the sexual use of boys by an adult male.

27.     In 1961, the Vatican issued an instruction on the training of candidates for the priesthood, which was based upon the 1917 Code of Canon Law which stated:

> Advancement to religious vows and ordination should be barred to those who are afflicted with evil tendencies to homosexuality or pederasty, since for them the common life and priestly ministry would constitute serious dangers.

28.     This knowledge that Catholic clergy were sexually abusing minors continued through the middle ages and into recent history.  In 1962, Pope John XXIII approved the publication *De Modo Procedendi in Causis Solicitationis*, a special procedural law for solicitation of sex in the confessional.  This document contained prohibitions prohibiting clergy from having sex with minors under the age of sixteen.  This document was distributed to every bishop and major religious superior in the world and was to be kept by them with the deepest secrecy.  In

7

addition, this document reflected the Catholic church's insistence on maintaining the highest degree of secrecy regarding the worst sexual crimes perpetrated by clergy.

29.     In 1947, a priest named Fr. Gerald Fitzgerald founded a religious order of priests called the Servants of the Paracletes. This religious order was founded in order to assist and treat Catholic clergy who experienced mental health problems. By 1952, Fr. Fitzgerald wrote that he had already treated a handful of priests who had sexually abused minors. By 1963, the Paracletes were treating so many sexually abusive clergy that they developed a shorthand code, "code 3," to describe the offense. By 1966, the Paracletes began specializing in treatment of pedophile Catholic clergy.

30.     As early as 1971, the issue of sexual misconduct by clergy was being discussed in the Commonwealth of Massachusetts. Bishop Bernard Flanagan, Bishop of Worchester (Massachusetts) testified that as early as February 1971, there had been discussions about sexual misconduct among priests. According to Bishop Flanagan, "I think by 1971 I had heard of other cases of this type [sic] sexual misconduct and I knew that they were taking place in other dioceses too."

31.     That same year, Dr. Conrad Baars and Dr. Anna Terruwe presented a scholarly paper titled The Role of the Church in the Causation, Treatment and Prevention of the Crisis in the Priesthood" to the 1971 Synod of Bishops at the Vatican and to the U.S. Conference of Catholic Bishops about psychiatric problems in Catholic clergy and how psychosexual immaturity manifested itself in heterosexual and homosexual activity. In 1990, psychologist and priest, A.W. Richard Sipe, published a study involving 1,500 priests that concluded that six (6) percent of priests were sexually involved with minors.

8

NYSCEF DOC. NO. 2

32.     In 1985, the public prosecution of a priest in Lafayette, Louisiana led to the creation of the 100-page document titled "*The Problem of Sexual Molestation by Roman Catholic Clergy: Meeting the Problem in a Comprehensive and Responsible Manner*" by Fr. Thomas Doyle, F. Ray Mouton and Fr./Dr. Michael Peterson.  This document was distributed to every Catholic Bishop and religious order ordinary in the United States.  A significant portion of this document describes how significant the sexual abuse of children by Catholic clergy had become.

33.     Upon information and belief, before Plaintiff was sexually abused by Fr. Larrabee, Defendants had actual or constructive knowledge of material facts regarding Fr. Larrabee's sexual misconduct, impulses, and behavior.

34.     Despite clear indications of danger, Defendant St. Agnes took no steps to discover the specific nature of Fr. Larrabee's problems or to determine whether he was fit to work with children or to protect children from him, thereby increasing the likelihood that Plaintiff would be harmed.

35.     The Diocese of Rochester's many reassignments, and the type of reassignments, further provide circumstantial evidence that The Diocese and the parishes where Fr. Larrabee was assigned, including Defendant St. Agnes, knew Larrabee had problems and posed a risk of harm to children, including Plaintiff, in part by virtue of the fact that the Bishop of The Diocese of Rochester was also the President of each parish.

36.     As the successor in interest who assumed liabilities for Defendant St. Agnes, Defendant Saint Agnes, Paul and Rose is liable for all damages alleged in this Complaint.

9

## IV.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION AGAINST DEFENDANT JOSEPH EDWARD LARRABEE

#### SEXUAL ABUSE/BATTERY

37.     Plaintiff repeats and realleges each and every allegation set forth in all paragraphs as if fully set forth herein.

38.     Defendant Joseph Larrabee intentionally made contact with the Plaintiff's body, touching the Plaintiff's genitals in a sexual manner.

39.     Defendant Joseph Larrabee's touching of Plaintiff was offensive and unwanted.

40.     As a direct and proximate result of Defendant Joseph Larrabee's offensive and unwanted sexual touching, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful activity, loss of income and other damages, past and future.

41.     As a direct and proximate result of Defendant Joseph Larrabee's offensive and unwanted sexual touching, Plaintiff was injured and damaged; said injuries and damages include but are not limited to: physical injury, emotional distress, loss of enjoyment of life, loss of ability to engage in gainful activity, loss of income, and loss of ability to perform his normal daily activities and to obtain the full enjoyment of life.

42.     As a direct and proximate result of Defendant Joseph Larrabee's offensive and unwanted sexual touching, Plaintiff will likely incur expenses for medical and psychological treatment, therapy, and counseling.

WHEREFORE, Plaintiff demands judgment against Defendant Joseph Larrabee for

10

compensatory damages, costs, and such other and further relief as this Court deems proper.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT

## ST. AGNES AND ITS SUCCESSOR, SAINT AGNES, PAUL AND ROSE

### Negligence/Gross Negligence

43.     Plaintiff repeats and re-alleges each and every allegation set forth in all paragraphs as if fully set forth herein.

44.     Defendant St. Agnes allowed Defendant Larrabee to have unsupervised and unlimited access to minor children while in a position of authority over them, including at Defendant St. Agnes in Avon, New York, located within the ecclesiastical and geographical boundaries of The Diocese of Rochester.

45.     At all times material, Larrabee was employed by Defendant St. Agnes and was an agent of the same.

46.     At all times material, Larrabee remained under the direct supervision, employ and control of Defendant St. Agnes.

47.     Upon information and belief, before Plaintiff was sexually abused by Larrabee, Defendant St. Agnes had actual or constructive knowledge of material facts regarding Larrabee's sexual misconduct, impulses and behavior, and had actual or constructive knowledge that he posed a sexual risk of harm to children.

48.     Despite clear indications of danger, Defendant St. Agnes took no steps to discover the specific nature of Larrabee's problems or to determine whether he was fit to work with children or to protect children from him, thereby increasing the likelihood that Plaintiff would be harmed.

49.     Plaintiff was raised in a devout Roman Catholic family, regularly celebrated mass, received the sacraments, and participated in church-related activities. Plaintiff, therefore,

developed great admiration, trust, reverence, and respect for the Roman Catholic Church and its agents, The Diocese of Rochester and its agents, including the Bishop, and Defendant St. Agnes and its agents, including Defendant Joseph Larrabee.

50.     Defendant St. Agnes held Larrabee out as a qualified Roman Catholic priest who was safe with children and undertook the education, religious instruction, and spiritual and emotional guidance of Plaintiff. The Bishop, the priests employed by Defendant St. Agnes, and Defendant Larrabee exercised a direct role over Plaintiff. Accordingly, Plaintiff placed trust in Defendant St. Agnes so that Defendant St. Agnes and its agents, including Defendant Larrabee, gained superiority and influence over Plaintiff. Defendant St. Agnes entered into a special relationship with Plaintiff and his family.

51.     Defendant St. Agnes knew or should have known that some of its employees, including Defendant Larrabee, were not safe for children.

52.     Defendant St. Agnes knew or should have known that it lacked sufficient information about whether its leaders, employees, and people working at its institution were safe around children.

53.     Defendant St. Agnes knew or should have known that there was a risk of child sex abuse for children attending and participating in Catholic programs and activities at Defendant St. Agnes.

54.     Defendant St. Agnes knew or should have known that it lacked sufficient information about whether there was a risk of child sex abuse for children participating in Catholic programs and activities at St. Agnes.

55.     Defendant St. Agnes knew or should have known that priests had sexually molested children. Defendant St. Agnes knew or should have known that child molesters have a high rate

of recidivism. Defendant St. Agnes knew or should have known that there was a specific danger of child sex abuse for children participating in Defendant's programs and interacting with Defendant's priests and employees.

56.     Defendant St. Agnes held its priests and agents, including Larrabee, out as people of high morals and as possessing immense power. It taught families and children to obey, respect, and revere its priests and agents.

57.     Defendant St. Agnes solicited youth and families to its programs, including Plaintiff and his family. Defendant specifically marketed to youth and families in order to recruit youth and families to its programs.

58.     Defendant St. Agnes held out the people that worked in its programs, including Fr. Larrabee, as safe for children/youth.

59.     Defendant St. Agnes made negligent representations to Plaintiff and his family while Plaintiff was a minor. Plaintiff and his family relied upon these representations, which resulted in Plaintiff being put in a vulnerable situation with Fr. Larrabee and subjected to his sexual misconduct and harm.

60.     Defendant St. Agnes owed Plaintiff a duty of reasonable care because it assumed duties owed to Plaintiff and had superior knowledge about the risk that Fr. Larrabee posed to Plaintiff, the risk of abuse in general in its programs, and/or the risks that its facilities posed to minor children.  Defendant St. Agnes had the duty to protect the moral purity of Plaintiff and other Roman Catholic children attending St. Agnes services or programs.

61.     Defendant St. Agnes owed Plaintiff a duty of reasonable care because it assumed that duty and because it solicited youth and parents for participation in its youth programs, including Plaintiff.

13

62.     Defendant St. Agnes owed Plaintiff a duty of reasonable care because it undertook custody of minor children, including Plaintiff.

63.     Defendant St. Agnes owed Plaintiff a duty of reasonable care because it promoted its facilities and programs as being safe for children, including Plaintiff.

64.     Defendant St. Agnes owed Plaintiff a duty of reasonable care because it held out its agents, including Fr. Larrabee, to the public, including Plaintiff, as safe to work with children.

65.     Defendant St. Agnes owed Plaintiff a duty of reasonable care because it encouraged parents and children, including Plaintiff, to spend time with its agents; and/or encouraged its agents, including Fr. Larrabee, to spend time with, interact with, and recruit children.

66.     Defendant St. Agnes had a duty to Plaintiff to protect him from harm because Defendant's actions created a foreseeable risk of harm to Plaintiff.

67.     Defendant St. Agnes breached its duties by exposing Plaintiff to a known pedophile and ephebophile.

68.     Defendant St. Agnes breached its duties by exposing Plaintiff to a priest and employee Defendant knew or should have known was a pedophile/ephebophile.

69.     Defendant St. Agnes breached its duties by recruiting, hiring, and maintaining Fr. Larrabee in a position of authority over children, including Plaintiff.

70.     Defendant St. Agnes breached its duties by exposing Fr. Larrabee to children, including Plaintiff.

71.     Defendant St. Agnes breached its duties by leaving Fr. Larrabee alone with children unsupervised, including Plaintiff.

72.     Defendant St. Agnes breached its duties by inducing Plaintiff and his parents to entrust Plaintiff to Fr. Larrabee.

14

73.     Defendant St. Agnes breached its duties by failing to follow policies and procedures designed to prevent child sex abuse and/or failing to implement sufficient policies and procedures to prevent child sex abuse.

74.     Defendant St. Agnes breached its duties by failing to take reasonable measures to make sure that policies and procedures to prevent child sex abuse were working.

75.     Defendant St. Agnes breached its duties by failing to adequately inform families and children, including Plaintiff, of the known risks of child sex abuse within its parish and youth programs.

76.     Defendant St. Agnes breached its duties by holding out its employees and agents, including Fr. Larrabee, as safe and wholesome for children to be with.

77.     Defendant St. Agnes breached its duties by failing to investigate risks of child molestation.

78.     Defendant St. Agnes breached its duties by failing to properly train the workers at its church and within its programs.

79.     Defendant St. Agnes breached its duties by failing to have any outside agency test its safety procedures.

80.     Defendant St. Agnes breached its duties by failing to protect the children in its parish and youth programs from child sex abuse and failing to adhere to the applicable standard of care for child safety.

81.     Defendant St. Agnes breached its duties by failing to investigate the amount and type of information necessary to represent the institutions, programs, and leaders and people it employed as safe.

82.     Defendant St. Agnes breached its duties by failing to respond to and/or investigate

15

information of improper conduct with children of its employee and agent, Fr. Joseph Larrabee.

83.     Defendant St. Agnes breached its duties by failing to properly train its employees to identify signs of child molestation by fellow employees.

84.     Defendant St. Agnes breached its duty to use ordinary care in the recruitment of youth parishioners, including Plaintiff.

85.     Defendant St. Agnes breached its duty of care by recruiting, hiring, and maintaining Fr. Joseph Larrabee at its facilities.

86.     Defendant St. Agnes breached its duty of care by maintaining a dangerous condition on the premises of its facilities (i.e., a priest Defendant knew or should have known posed a risk of pedophilic harm to children).

87.     Defendant St. Agnes breached its duty of care by holding out its facilities as a safe and moral place for children, knowing the facilities were not safe nor moral.

88.     Defendant St. Agnes breached its duty of care by failing to investigate the amount and type of information necessary to create a safe church and by failing to implement policies and procedures at the church to protect children from foreseeable harm.

89.     Defendant St. Agnes breached its duties to Plaintiff by holding out employees, including Fr. Larrabee, as safe, moral, and trustworthy people and by failing to warn Plaintiff and his family of the risk that Larrabee posed and the known risks of child sexual abuse by clerics and employees in general.

90.     Defendant St. Agnes breached its duties to Plaintiff by failing to warn Plaintiff about any of the knowledge that the Defendant had about child sex abuse perpetrated by priests and employees at its church, specifically abuse perpetrated by Defendant Joseph Larrabee.

91.     Defendant St. Agnes breached its duties to Plaintiff by failing to report Fr.

16

Larrabee's abuse of children to the police and law enforcement.

92.     Defendant St. Agnes further breached its duties by hiding a pedophile/ephebophile and engaging in a cover-up of abuse perpetrated by Fr. Larrabee.

93.     At all times material, Fr. Larrabee's sexual abuse of Plaintiff was foreseeable. As discussed above, the problem of sexual abuse of minors by clergy is well-documented throughout the history of the Roman Catholic Church.

94.     As a direct and proximate result of Defendant St. Agnes's negligence, gross negligence, and breaches of duty, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, psychological injuries, loss of ability to engage in gainful employment, loss of income and other losses and damages, past and future.

95.     As a direct result of Defendant St. Agnes's negligence, gross negligence, and breaches of duty, Plaintiff was prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of life.

96.     As a direct and proximate result of Defendant St. Agnes's negligence, gross negligence and breaches of duty, Plaintiff has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

97.     As the successor in interest who assumed liabilities for St. Agnes, Defendant Saint Agnes, Paul and Rose is liable for all damages alleged in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendant St. Agnes and Defendant Saint Agnes, Paul and Rose for compensatory damages, costs and such other and further relief as this Court deems proper.

17

## THIRD CAUSE OF ACTION AGAINST DEFENDANT

## ST. AGNES AND ITS SUCCESSOR, SAINT AGNES, PAUL AND ROSE

### RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

98.    Plaintiff repeats and re-alleges each and every allegation set forth in all paragraphs as if fully set forth herein.

99.    At all times material, Fr. Larrabee was employed by, and/or an agent of, Defendant St. Agnes.

100.    At all times material, Fr. Larrabee was on duty as a priest 24 hours per day, 7 days per week.

101.    At all times material, Fr. Larrabee remained under the direct supervision, employ and control of the Defendant St. Agnes.

102.    At all times material, Defendant St. Agnes had the right to control the manner and means of Fr. Larrabee's performance.

103.    At all times material, Defendant St. Agnes paid Fr. Larrabee's salary and paid for Fr. Larrabee's health insurance and other benefits.

104.    At all times material, Defendant St. Agnes furnished an office and other materials, supplies, and tools required for Fr. Larrabee to perform in his position as a priest.

105.    At all times material, Defendant St. Agnes controlled the premises where Fr. Larrabee performed as a priest.

106.    At all times material, Defendant St. Agnes had the power to terminate the employment of Fr. Larrabee.

107.    Defendant St. Agnes allowed Larrabee to have unsupervised and unlimited access to young children at St. Agnes, including Plaintiff.

18

108.    Defendant St. Agnes created a master-servant relationship with Larrabee, employing him as a priest, a position that placed him in direct contact with and granted him power and authority over children in Defendant's care, including Plaintiff.

109.    Among other duties, Defendant St. Agnes employed Fr. Larrabee to interact with various youth and to mentor, guide, and provide spiritual counseling to youth at St. Agnes.

110.    At times material hereto, unwanted sexual contact by Fr. Larrabee upon Plaintiff occurred during his regular working hours with Defendant St. Agnes while performing duties of a priest on behalf of his employer.

111.    The sexual contact by Larrabee occurred in the course and scope of his employment with Defendant St. Agnes.

112.    The sexual contact by Larrabee was generally foreseeable to Defendant St. Agnes.

113.    Upon information and belief, before Plaintiff was sexually abused by Larrabee, Defendant St. Agnes had actual or constructive knowledge of material facts regarding Larrabee's sexual misconduct, impulses, and behavior but failed to act on that knowledge and exposed Plaintiff as a child to Larrabee, thereby increasing the likelihood that Plaintiff would be harmed.

114.    The sexual contact by Fr. Larrabee was closely connected to what he was employed to do as a priest with Defendant St. Agnes, and/or was otherwise naturally incidental to his job duties.

115.    Fr. Larrabee's conduct was motivated, at least in part, by a desire to serve his employer's business interests or otherwise meet the objectives of his employment, however misguided.

116.    Alternatively, Fr. Larrabee's conduct constituted an authorized, minor deviation from his employment that was authorized and/or ratified by Defendant St. Agnes.

19

117.     As a direct and proximate result of Fr. Larrabee's conduct, Plaintiff has suffered damages as alleged herein.

118.     As the successor in interest who assumed liabilities for Defendant St. Agnes, Defendant Saint Agnes, Paul and Rose is liable for all damages alleged in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendant St. Agnes and Defendant Saint Agnes, Paul and Rose for compensatory damages, costs and such other and further relief as this Court deems proper.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANT

### ST. AGNES AND ITS SUCCESSOR, SAINT AGNES, PAUL AND ROSE

#### NEGLIGENT HIRING, RETENTION, AND SUPERVISION

119.     Plaintiff repeats and realleges each and every allegation set forth in all paragraphs as if fully set forth herein.

120.     At all material times, Defendant St. Agnes, by and through its agents, managers, employees, and directors owed a duty to Plaintiff to use reasonable care to protect his safety, care, well-being and health while he was under the care and custody or in the presence of the Defendant. These duties encompassed the use of reasonable care in the hiring, retention and supervision of Fr. Larrabee and otherwise providing a safe environment for children.

121.     Prior to the sexual misconduct perpetrated by Fr. Larrabee upon Plaintiff, Defendant St. Agnes knew, or in the exercise of reasonable care, should have known, that Fr. Larrabee was unfit for the duties assigned to him, that he did not exhibit appropriate behavior with children, and he otherwise posed a risk of perpetrating unwanted sexual contact upon children, including Plaintiff.

122.     Given actual or constructive knowledge of Fr. Larrabee's dangerous propensities, Defendant St. Agnes had a duty to act reasonably in all decisions relating to his hiring, supervision, and retention as an employee.

123.     Defendant St. Agnes failed to exercise reasonable care in one or more of its decisions to hire, supervise, and retain Fr. Larrabee and therefore exposed Plaintiff to an unreasonable risk of harm.

124.     Defendant St. Agnes affirmed and ratified Fr. Larrabee's misconduct with Plaintiff. Given the actual and constructive knowledge of the likelihood that Larrabee and/or other clergy would engage children in unwanted sexual contact, the unwanted sexual contact of Plaintiff was reasonably foreseeable to Defendant.

125.     Defendant St. Agnes, and its agents, had superior knowledge of the likelihood that Fr. Larrabee would engage in unwanted sexual contact with children that he encountered in his position as a priest of Defendant St. Agnes and had a duty to take precautions to lessen the risk that Plaintiff would be the victim of unwanted sexual contact.

126.     At all relevant times, Defendant St. Agnes's acts and omissions created an environment which fostered unwanted sexual contact and exploitation against the children it had a duty to protect, including Plaintiff.

127.     At all relevant times, Defendant St. Agnes had inadequate policies and procedures to protect children entrusted to its care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

128.     As a direct and proximate result of the negligence, gross negligence, and breaches of duty of Defendant St. Agnes, Plaintiff suffered damages, including but not limited to severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to

21

lead a normal life, and has incurred and/or will incur costs for treatment in the future. These injuries are permanent and ongoing in nature.

129.    As the successor in interest who assumed liabilities for Defendant St. Agnes, Defendant Saint Agnes, Paul and Rose is liable for all damages alleged in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants St. Agnes and Saint Agnes, Paul and Rose for compensatory damages, costs and such other and further relief as this Court deems proper.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANT

### ST. AGNES AND ITS SUCCESSOR, SAINT AGNES, PAUL AND ROSE

#### NEGLIGENCE/PREMISES LIABILITY

130.    Plaintiff repeats and realleges each and every allegation set forth in all paragraphs as if set forth fully herein.

131.    Plaintiff was a business invitee of Defendant St. Agnes when Fr. Larrabee engaged him in unwanted sexual contact.

132.    Defendant St. Agnes owed Plaintiff a duty to provide a reasonably safe environment where he would be free from the threat of unwanted sexual contact while on Defendant's premises.

133.    Defendant St. Agnes owed Plaintiff a duty to take reasonable precautions to ensure his safety while on the premises of Defendant.

134.    Prior to the sexual misconduct perpetrated by Fr. Larrabee upon Plaintiff, Defendant St. Agnes knew, or in the exercise of reasonable care, should have known, of the general problem of priests engaging in sexual misconduct with children, including on their premises.

135.    Prior to the sexual misconduct perpetrated by Fr. Larrabee upon Plaintiff, Defendant St. Agnes knew, or in the exercise of reasonable care, should have known, that Fr.

Larrabee was unfit for the intimate duties assigned to him, that he did not exhibit appropriate behavior with children, and otherwise posed a risk of perpetrating unwanted sexual contact upon children.

136.    Defendant St. Agnes breached the duty owed to Plaintiff by failing to make its premises reasonably safe for Plaintiff despite what they knew or should have known about the existence of a potential threat of harm to Plaintiff on its premises.

137.    Defendant St. Agnes breached the duty they owed to Plaintiff by failing to warn Plaintiff of the dangers and risks involved in attending St. Agnes, given their superior knowledge of the potential risk of harm to Plaintiff.

138.    At all relevant times, Defendant St. Agnes had inadequate policies and procedures to protect children entrusted to their care and protection, including Plaintiff, which substantially contributed to the creation of a dangerous environment.

139.    As a direct and proximate result of the negligence, gross negligence, and breaches of duty of Defendant St. Agnes, Plaintiff suffered severe and permanent psychological, emotional and physical injuries, shame, humiliation, loss of ability to engage in gainful activity, loss of income and the inability to lead a normal life, and has incurred and/or will continue to incur costs for treatment and other injuries and damages. These injuries are permanent and ongoing in nature.

140.    As the successor in interest who assumed liabilities for Defendant St. Agnes, Defendant Saint Agnes, Paul and Rose is liable for all damages alleged in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants St. Agnes and Saint Agnes, Paul and Rose for a sum in excess of the jurisdictional limits of all lower courts, together with the costs and disbursements and other expenses necessary in this action.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Rochester, New York

Dated: __Sept. 2,  2020

JAMES, VERNON & WEEKS, P.A.

By: _____

Leander James, ljames@jvwlaw.net
Craig Vernon, cvernon@jvwlaw.net
James, Vernon & Weeks, PA
1626 Lincoln Way, Coeur d'Alene, ID 83814
20 Vesey Street, New York, NY 10007
(888) 667-0683

Patrick Noaker, patrick@noakerlaw.com
1600 Utica Ave. S, 9th Fl.
St. Louis Park, MN 55416
(952) 491-6798

## VERIFICATION

STATE OF NEW YORK      )
                       )
COUNTY OF LIVINGSTON)  ss:

███████████████ affirms under penalty of perjury, that he has read the foregoing COMPLAINT and knows the contents thereof; that the same is true to the affirmant's own knowledge, except at to those matters therein stated to be on information and belief and as to these matters affirmant believes them to be true.

Dated:   Livingston County, New York

24