# EXHIBIT 11

NEW YORK STATE SUPREME COURT
MONROE COUNTY

----------------------------------------------------------------X

Index No.: _____

Date Filed: _____

**SUMMONS**

Plaintiffs,

Plaintiffs designate Monroe County as the place of trial.

-against-

The basis of venue is one defendant's residence.

DIOCESE OF ROCHESTER; ST. CHRISTOPHER'S CHURCH; ST. BRIDGET'S CHURCH; ST. LEO THE GREAT CATHOLIC CHURCH; ST. FRANCIS XAVIER CHURCH; ST. BRIDGET'S CHURCH AND SCHOOL; GOOD SHEPHERD PARISH AND SCHOOL; HOLY ROSARY CHURCH AND SCHOOL; ST. BONIFACE CHURCH AND SCHOOL; CARDINAL MOONEY HIGH SCHOOL; MCQUAID JESUIT HIGH SCHOOL; ST. MARY OF THE ASSUMPTION; and, CHURCH OF THE ANNUNCIATION,

**Child Victims Act Proceeding 22 NYCRR 202.72**

Defendants.

----------------------------------------------------------------X

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiffs' attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: August 14, 2019

Respectfully Yours,

MARSH LAW FIRM PLLC

By _____

James R. Marsh
151 East Post Road, Suite 102
White Plains, NY 10601-5210
Phone: 929-232-3235
jamesmarsh@marsh.law

Jennifer Freeman
151 East Post Road, Suite 102
White Plains, NY 10601-5210
Phone: 929-232-3128
jenniferfreeman@marsh.law


PFAU COCHRAN VERTETIS AMALA PLLC


By _____

Michael T. Pfau
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone: 206-462-4335
michael@pcvalaw.com
*Pro hac vice forthcoming*

Jason P. Amala
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone: 206-462-4339
jason@pcvalaw.com
*Pro hac vice forthcoming*

Anelga Doumanian
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone:  206-451-8260
adoumanian@pcvalaw.com

Attorneys for Plaintiffs

3

NEW YORK STATE SUPREME COURT
MONROE COUNTY

------------------------------------------------------------------X

█████████████████████████████████████████████

                                        **Plaintiffs,**

-against-

DIOCESE OF ROCHESTER; ST. CHRISTOPHER'S
CHURCH; ST. BRIDGET'S CHURCH; ST. LEO THE
GREAT CATHOLIC CHURCH; ST. FRANCIS XAVIER
CHURCH; ST. BRIDGET'S CHURCH AND SCHOOL;
GOOD SHEPHERD PARISH AND SCHOOL; HOLY
ROSARY CHURCH AND SCHOOL; ST. BONIFACE
CHURCH AND SCHOOL; CARDINAL MOONEY
HIGH SCHOOL; MCQUAID JESUIT HIGH SCHOOL;
ST. MARY OF THE ASSUMPTION; and, CHURCH OF
THE ANNUNCIATION,

                                        **Defendants.**

-----------------------------------------------------------------------

Index No.: _____/___

**COMPLAINT**


**Child Victims Act Proceeding
22 NYCRR 202.72**

         Plaintiffs, by and through their attorneys, the Marsh Law Firm PLLC and Pfau Cochran

Vertetis Amala PLLC, respectfully allege for their complaint the following:

## I.    INTRODUCTION

         1.      The Diocese of Rochester (the "Diocese") knew for decades that its priests, clergy,

religious brother, school administrator, or teachers, religious sisters, school administrators,

teachers, employees, and volunteers were using their positions within the Diocese to groom and to

sexually abuse children. Despite that knowledge, the Diocese failed to take reasonable steps to

protect children from being sexually abused and actively concealed the abuse.

         2.      In July 2019, following decades of denial and cover-up, the Diocese released a list

of 26 priests that it determined had been credibly accused of sexual abusing children. Based on the

Diocese's years of wrongful conduct, a reasonable person could and would conclude that it

knowingly and recklessly disregarded the abuse of children and chose to protect its reputation and wealth over those who deserved protection. The result is not surprising: hundreds, if not thousands, of children were sexually abused by Catholic clergy and others who served the Diocese. The plaintiffs in this lawsuit are some of those children who were sexually abused because of the Diocese's wrongful conduct.

## II.    PROCEEDING IN ACCORDANCE WITH CPLR 214-G AND 22 NYCRR 202.72

3.    This complaint is filed pursuant to the Child Victims Act (CVA) 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440), CPLR 214-G, and 22 NVCRR 202.72. The CVA opened a historic one-year one-time window for victims and survivors of childhood sexual abuse in the State of New York to pursue lapsed claims. Prior to the passage of the CVA, each plaintiff's claims were time-barred the day they turned 22 years old. The enactment of the CVA allows plaintiffs, for the first time in their lives, to pursue restorative justice in New York State.

## III.    PARTIES



2

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019





4

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019





8

RECEIVED NYSCEF: 08/14/2019

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



NYSCEF DOC. NO. 1





13

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019







128.    Plaintiff ▮ is an adult male who currently resides in ▮▮▮▮

129.    While he was a minor, plaintiff ▮ was a victim of one or more criminal sex acts in the State of New York. Since such criminal violation is the basis for this action, plaintiff ▮ is entitled to the protection of Civil Rights Law 50-b and will file a motion asking this Court for permission to proceed using a pseudonym.

18

130.    In the alternative, plaintiff ██ will seek a stipulation from the defendants agreeing to enter into a protective order which will ensure that his identity is protected from the public while allowing the defendants full access to information necessary for their defense.

131.    Upon information and belief, at all relevant times the Diocese employed priests and others who served various Catholic institutions and families, including plaintiff ██ and his family.

132.    Upon information and belief, Brother John Walsh ("Brother Walsh") was a religious brother, school administrator, or teacher employed by the Diocese to serve Catholic families, including plaintiff ██ and his family. During the time Brother Walsh was employed by the Diocese, he used his position as a religious brother, school administrator, or teacher to groom and to sexually abuse plaintiff ██.

133.    To the extent that the Diocese was a different entity, corporation, or organization during the period of time during which Brother Walsh used his position as a religious brother, school administrator, or teacher to sexually abuse plaintiff ██ such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

134.    To the extent the Diocese is a successor to a different entity, corporation, or organization which existed during the period of time during which Brother Walsh used his position as a religious brother, school administrator, or teacher to sexually abuse plaintiff ██, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

135.    All such Diocese-related entities, corporations, or organizations are collectively referred to herein as the "Diocese."

19

136. Upon information and belief, at all relevant times defendant Cardinal Mooney High School ("Cardinal Mooney") was a not-for-profit religious corporation organized under New York law and wholly owned, operated, and controlled by the Diocese.

137. Upon information and belief, Cardinal Mooney is currently a not-for-profit religious corporation organized under New York law with its principal office in Rochester, New York.

138. Upon information and belief, at all relevant times Cardinal Mooney conducted business as "Cardinal Mooney High School" or "Cardinal Mooney."

139. Cardinal Mooney is a Catholic school located in Rochester, New York.

140. Upon information and belief, Brother John Walsh was a religious brother, school administrator, or teacher employed by Cardinal Mooney to serve Catholic families in its geographic jurisdiction, including plaintiff ███ and his family. During the time Brother John Walsh was employed by Cardinal Mooney, he used his position as a religious brother, school administrator, or teacher to groom and to sexually abuse plaintiff ███

141. To the extent that Cardinal Mooney was a different entity, corporation, or organization during the period of time during which Brother Walsh used his position as a religious brother, school administrator, or teacher to sexually abuse ███, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

142. To the extent Cardinal Mooney is a successor to a different entity, corporation, or organization which existed during the period of time during which Brother Walsh used his position as a religious brother, school administrator, or teacher to sexually abuse ███ such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

143.   All such Cardinal Mooney-related entities, corporations, or organizations are collectively referred to herein as "Cardinal Mooney."



21



NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 08/14/2019







INDEX NO. E2019007694
RECEIVED NYSCEF: 08/14/2019

## IV. VENUE

188. Venue is proper because the Diocese is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

189. Venue is proper because St. Christopher's is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

26

190.    Venue is proper because St. Bridget's is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

191.    Venue is proper because St. Leo's is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

192.    Venue is proper because plaintiff ███████████████████████

193.    Venue is proper because St. Francis is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

194.    Venue is proper because plaintiff ████████████████████

195.    Venue is proper because St. Bridget's is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

196.    Venue is proper because plaintiff ████████████████████

197.    Venue is proper because Good Shepherd is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

198.    Venue is proper because plaintiff ██████████████████████

199.    Venue is proper because Holy Rosary is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

200.    Venue is proper because St. Boniface is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

201.    Venue is proper because ████████████████████████

202.    Venue is proper because Cardinal Mooney is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

203.    Venue is proper because plaintiff ██████████████████████

27

204.    Venue is proper because McQuaid is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

205.    Venue is proper because St. Mary's is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

206.    Venue is proper because Annunciation is a domestic corporation authorized to transact business in New York with its principal office located in Monroe County.

207.    Venue is proper because plaintiff ████████████████████ ████████

208.    Venue is proper because Monroe is the county in which a substantial part of the events or omissions giving rise to each plaintiff's claim occurred.



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



RECEIVED NYSCEF: 08/14/2019



30





32

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

33

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

## VI. STATEMENT OF FACTS AS TO PLAINTIFF

INDEX NO. E2019007694
RECEIVED NYSCEF: 08/14/2019



37

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019





VII.    STATEMENT OF FACTS AS TO PLAINTIFF

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



44

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019





## VIII. STATEMENT OF FACTS AS TO PLAINTIFF





52

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



55

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

**IX.   STATEMENT OF FACTS AS TO PLAINTIFF** ██████



58

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



RECEIVED NYSCEF: 08/14/2019

NYSCEF DOC. NO. 1





**X.     STATEMENT OF FACTS AS TO PLAINTIFF** 

64

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



65



**XI.    STATEMENT OF FACTS AS TO PLAINTIFF** ■■■





INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



73



74

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019





INDEX NO. E2019007694



## XII.    STATEMENT OF FACTS AS TO PLAINTIFF ███

577.    Upon information and belief, at all relevant times the Diocese was the owner of

Cardinal Mooney and held itself out to the public as the owner of Cardinal Mooney.

78

578.    Upon information and belief, at all relevant times the Diocese, its agents, servants, and employees managed, maintained, operated, and controlled Cardinal Mooney.

579.    Upon information and belief, at all relevant times the Diocese employed priests, religious brother, school administrator, or teachers, and others who served Catholic families at Cardinal Mooney, including plaintiff ███ and his family.

580.    Upon information and belief, at all relevant times the Diocese, its agents, servants, and employees managed, maintained, operated, and controlled Cardinal Mooney, and held out to the public its agents, servants, and employees as those who managed, maintained, operated, and controlled Cardinal Mooney.

581.    Upon information and belief, at all relevant times the Diocese was responsible for the hiring and staffing, and did the hiring and staffing, at Cardinal Mooney.

582.    Upon information and belief, at all relevant times the Diocese was responsible for and did the recruitment and staffing of volunteers at Cardinal Mooney.

583.    Upon information and belief, at all relevant times the Diocese materially benefited from the operation of Cardinal Mooney, including the services of Brother Walsh and the services of those who managed and supervised Brother Walsh.

584.    Upon information and belief, at all relevant times Cardinal Mooney owned a Catholic high school.

585.    Upon information and belief, at all relevant times Cardinal Mooney held itself out to the public as the owner of Cardinal Mooney.

586.    Upon information and belief, at all relevant times Cardinal Mooney employed priests, religious brother, school administrator, or teachers, and others who served Catholic families, including plaintiff ███ and his family.

587.     Upon information and belief, at all relevant times Cardinal Mooney, its agents, servants, and employees managed, maintained, operated, and controlled Cardinal Mooney, and held out to the public its agents, servants and employees as those who managed, maintained, operated, and controlled Cardinal Mooney.

588.     Upon information and belief, at all relevant times Cardinal Mooney was responsible for and did the staffing and hiring at Cardinal Mooney.

589.     Upon information and belief, at all relevant times Cardinal Mooney was responsible for and did the recruitment and staffing of volunteers at Cardinal Mooney.

590.     Upon information and belief, at all relevant times Cardinal Mooney materially benefitted from the operation of Cardinal Mooney, including the services of Brother Walsh and the services of those who managed and supervised Brother Walsh.

591.     Upon information and belief, at all relevant times Brother Walsh was a religious brother, school administrator, or teacher of the Diocese.

592.     Upon information and belief, at all relevant times Brother Walsh was on the staff of, acted as an agent of, and served as an employee of the Diocese.

593.     Upon information and belief, at all relevant times Brother Walsh was acting in the course and scope of his employment with the Diocese.

594.     Upon information and belief, at all relevant times Brother Walsh was employed by the Diocese and assigned to Cardinal Mooney.

595.     Upon information and belief, at all relevant times Brother Walsh was a religious brother, school administrator, or teacher of Cardinal Mooney.

596.     Upon information and belief, at all relevant times Brother Walsh was on the staff of, was an agent of, and served as an employee of Cardinal Mooney.

597.    Upon information and belief, at all relevant times Brother Walsh was acting in the course and scope of his employment with Cardinal Mooney.

598.    Upon information and belief, at all relevant times Brother Walsh had an office on the premises of Cardinal Mooney.

599.    When plaintiff ▮ was a minor, he and his parents were members of the Diocese and ▮ was a student at Cardinal Mooney.

600.    At all relevant times, the Diocese and Cardinal Mooney, their agents, servants, and employees, held Brother Walsh out to the public, to ▮ and to his parents, as their agent and employee.

601.    At all relevant times, the Diocese and Cardinal Mooney, their agents, servants, and employees, held Brother Walsh out to the public, to ▮, and to his parents, as having been vetted, screened, and approved by those defendants.

602.    At all relevant times, ▮ and his parents reasonably relied upon the acts and representations of the Diocese and Cardinal Mooney, their agents, servants, and employees, and reasonably believed that Brother Walsh was an agent or employee of those defendants who was vetted, screened, and approved by those defendants.

603.    At all relevant times, ▮ and his parents trusted Brother Walsh because the Diocese and Cardinal Mooney held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of ▮

604.    At all relevant times, ▮ and his parents believed that the Diocese and Cardinal Mooney would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of ▮

605.    When ▮ was a minor, Brother Walsh sexually abused him.

606. ███ was sexually abused by Brother Walsh when he was approximately 14 to 16 years old.

607. Based on the representations of the Diocese and Cardinal Mooney that Brother Walsh was safe and trustworthy, ███, and his parents allowed ███ to be under the supervision of, and in the care, custody, and control of, the Diocese and Cardinal Mooney, including during the times when ███ was sexually abused by Brother Walsh.

608. Based on the representations of the Diocese and Cardinal Mooney that Brother Walsh was safe and trustworthy, ███ and his parents allowed ███ to be under the supervision of, and in the care, custody, and control of, Brother Walsh, including during the times when ███ was sexually abused by Brother Walsh.

609. Neither ███ nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, the Diocese, Cardinal Mooney, or Brother Walsh if the Diocese or Cardinal Mooney had disclosed to ███ or his parents that Brother Walsh was not safe and was not trustworthy, and that he in fact posed a danger to ███ in that Brother Walsh was likely to sexually abuse ███.

610. No parent of ordinary prudence in comparable circumstances would have allowed ███ to be under the supervision of, or in the care, custody, or control of, the Diocese, Cardinal Mooney, or Brother Walsh if the Diocese or Cardinal Mooney had disclosed to ███ or his parents that Brother Walsh was not safe and was not trustworthy, and that he in fact posed a danger to ███ in that Brother Walsh was likely to sexually abuse him.

611. From approximately 1983 through 1985, Brother Walsh exploited the trust and authority vested in him by defendants by grooming ███ to gain his trust and to obtain control over him as part of Brother Walsh's plan to sexually molest and abuse ███ and other children.

82

612. Brother Walsh used his position of trust and authority as a religious brother, school administrator, or teacher of the Diocese and of Cardinal Mooney to groom ██ and to sexually abuse him multiple times, including when ██ was under the supervision of, and in the care, custody, or control of, the Diocese, Cardinal Mooney, and Brother Walsh.

613. At certain times, the sexual abuse of ██ by Brother Walsh occurred at Cardinal Mooney, including in Brother Walsh's office at Cardinal Mooney.

614. At certain times, Brother Walsh's sexual abuse of ██ occurred during activities that were sponsored by, or were a direct result of activities sponsored by, the Diocese and Cardinal Mooney, including during school hours and school activities.

615. Upon information and belief, prior to the times mentioned herein, Brother Walsh was a known sexual abuser of children.

616. Upon information and belief, at all relevant times, defendants, their agents, servants, and employees, knew or should have known that Brother Walsh was a known sexual abuser of children.

617. Upon information and belief, at all relevant times it was reasonably foreseeable to defendants, their agents, servants, and employees that Brother Walsh's sexual abuse of children would likely result in injury to others, including the sexual abuse of ██ and other children by Brother Walsh.

618. Upon information and belief, at certain times between 1983 and 1985, defendants, their agents, servants, and employees knew or should have known that Brother Walsh was sexually abusing ██ and other children at Cardinal Mooney and elsewhere.

619. Upon information and belief, defendants, their agents, servants, and employees knew or should have known that the sexual abuse by Brother Walsh of ██ was ongoing.

620. Upon information and belief, the Diocese and Cardinal Mooney, their agents, servants, and employees, knew or should have known before and during Brother Walsh's sexual abuse of ▮▮▮ that priests and other persons serving the Diocese and Cardinal Mooney had used their positions with those defendants to groom and to sexually abuse children.

621. Upon information and belief, the Diocese and Cardinal Mooney, their agents, servants, and employees, knew or should have known before and during Brother Walsh's sexual abuse of ▮▮▮ that such priests and other persons could not be "cured" through treatment or counseling.

622. Upon information and belief, the Diocese and Cardinal Mooney, their agents, servants, and employees, concealed the sexual abuse of children by Brother Walsh in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that Brother Walsh would continue to molest children.

623. Upon information and belief, the Diocese and Cardinal Mooney, their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Brother Walsh would use his position with the defendants to sexually abuse children, including ▮▮▮

624. Upon information and belief, the Diocese and Cardinal Mooney, their agents, servants, and employees, disregarded their knowledge that Brother Walsh would use his position with them to sexually abuse children, including ▮▮▮

625. Upon information and belief, the Diocese and Cardinal Mooney, their agents, servants, and employees, acted in concert with each other or with Brother Walsh to conceal the

danger that Brother Walsh posed to children, including ███ so that Brother Walsh could continue serving them despite their knowledge of that danger.

626.    Upon information and belief, the Diocese and Cardinal Mooney, their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including ███ and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

627.    Upon information and belief, the Diocese and Cardinal Mooney, their agents, servants, and employees, concealed the sexual abuse of children by priests and others in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that those priests and other persons would continue to molest children.

628.    By reason of the wrongful acts of the Diocese and Cardinal Mooney as detailed herein, ███ sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and ███ has and/or will become obligated to expend sums of money for treatment.

## XIII.   STATEMENT OF FACTS AS TO PLAINTIFF ███

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 08/14/2019



RECEIVED NYSCEF: 08/14/2019





89

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



NYSCEF DOC. NO. 1



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



95





INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019





### XV.   STATEMENT OF FACTS AS TO PLAINTIFF ▮▮▮▮▮▮

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



105



**XVI. STATEMENT OF FACTS AS TO PLAINTIFF**





INDEX NO. E2019007694
RECEIVED NYSCEF: 08/14/2019



FILED: MONROE COUNTY CLERK 08/14/2019 12:26 AM

NYSCEF DOC. NO. 1

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



116

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



117

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



NYSCEF DOC. NO. 1

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019





INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019



129



## XXIV. CAUSES OF ACTION AS TO PLAINTIFF ▮▮▮▮

### A.    FIRST CAUSE OF ACTION – NEGLIGENCE

937.    Plaintiff ▮▮▮ repeats and re-alleges all of his allegations above and below.

938.    The Diocese and Cardinal Mooney had a duty to take reasonable steps to protect plaintiff ▮▮▮ a child, from foreseeable harm when he was under their supervision and in their care, custody, and control.

131

939.    The Diocese and Cardinal Mooney also had a duty to take reasonable steps to prevent Brother Walsh from using the tasks, premises, and instrumentalities of his position with the defendants to target, groom, and sexually abuse children, including ███

940.    The Diocese and Cardinal Mooney were supervising ███ and had care, custody, and control of ███, when he attended Cardinal Mooney as a student and at other times, during which time those defendants had a duty to take reasonable steps to protect him.

941.    These circumstances created a special relationship between the Diocese and ███ and between Cardinal Mooney and ███ which imposed on each of those defendants a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

942.    The Diocese and Cardinal Mooney breached each of the foregoing duties by failing to exercise reasonable care to prevent Brother Walsh from harming ███ including sexually abusing him.

943.    In breaching their duties, including hiring, retaining, and failing to supervise Brother Walsh, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn ███ his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for ███ and other children who were under their supervision and in their care, custody, and control, the Diocese and Cardinal Mooney created a risk that ███ would be sexually abused by Brother Walsh. The Diocese and Cardinal Mooney through their actions and inactions created an environment that placed ███ in danger of unreasonable risks of harm under the circumstances.

944.    In breaching their duties, including hiring, retaining, and failing to supervise Brother Walsh, giving him access to children, entrusting their tasks, premises, and

instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn ▮ his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for ▮ and other children who were under their supervision and in their care, custody, and control, the Diocese and Cardinal Mooney acted willfully and with conscious disregard for the need to protect ▮ The Diocese and Cardinal Mooney through their actions and inactions created an environment that placed ▮. in danger of unreasonable risks of harm under the circumstances.

945.    It was reasonably foreseeable that defendants' breach of these duties of care would result in the sexual abuse of ▮

946.    As a direct and proximate result of the acts and omissions of the Diocese and Cardinal Mooney, Brother Walsh groomed and sexually abused ▮ which has caused ▮ to suffer general and special damages as more fully described herein.

**B.    SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

947.    Plaintiff ▮ repeats and re-alleges all of his allegations above and below.

948.    The Diocese and Cardinal Mooney engaged in reckless, extreme, and outrageous conduct by providing Brother Walsh with access to children, including plaintiff ▮ despite knowing that he would likely use his position to groom and to sexually abuse them, including ▮ Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

949.    As a result of this reckless, extreme, and outrageous conduct, Brother Walsh gained access to ▮ and sexually abused him.

RECEIVED NYSCEF: 08/14/2019

950.    The Diocese and Cardinal Mooney knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and  did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

134



NYSCEF DOC. NO. 1



INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019







140



141





143

INDEX NO. E2019007694



## XXIX. CPLR 1603 – NO APPORTIONMENT OF LIABILITY

1007.   Pursuant to CPLR 1603, the foregoing causes of action are exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(2), CPLR 1602(5), 1602(7) and 1602(11), thus precluding defendants from limiting their liability by apportioning some portion of liability to any joint tortfeasor.

## XXX.  PRAYER FOR RELIEF

1008.   The plaintiffs demand judgment against the defendants named in their causes of action, together with compensatory and punitive damages to be determined at trial, and the interest, cost and disbursements pursuant to their causes of action, and such other and further relief as the Court deems just and proper.

1009.   The plaintiffs specifically reserve the right to pursue additional causes of action, other than those outlined above, that are supported by the facts pleaded or that may be supported by other facts learned in discovery.

Dated:  August 14, 2019

144

Respectfully Yours,

MARSH LAW FIRM PLLC

By _____

James R. Marsh
151 East Post Road, Suite 102
White Plains, NY 10601-5210
Phone: 929-232-3235
jamesmarsh@marsh.law

Jennifer Freeman
151 East Post Road, Suite 102
White Plains, NY 10601-5210
Phone: 929-232-3128
jenniferfreeman@marsh.law

PFAU COCHRAN VERTETIS AMALA PLLC

By _____

Michael T. Pfau
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone: 206-462-4335
michael@pcvalaw.com
*Pro hac vice forthcoming*

Jason P. Amala
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone: 206-462-4339
jason@pcvalaw.com
*Pro hac vice forthcoming*

145

INDEX NO. E2019007694

RECEIVED NYSCEF: 08/14/2019

Anelga Doumanian
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone:  206-451-8260
adoumanian@pcvalaw.com

Attorneys for Plaintiffs

NEW YORK STATE SUPREME COURT
MONROE COUNTY

████

                                    Plaintiff,

-against-

BROTHERS OF THE HOLY CROSS,

                                  Defendant.

Index No.: _____/__

Date Filed:

**SUMMONS**

Plaintiff designates Monroe County as the place of trial.

The basis of venue is one defendant's residence.

**Child Victims Act Proceeding 22 NYCRR 202.72**

TO THE ABOVE-NAMED DEFENDANT:

       YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: July 24, 2020

                              Respectfully Yours,

                              MARSH LAW FIRM PLLC

                              By _____
                              James R. Marsh
                              Jennifer Freeman
                              Robert Lewis
                              jamesmarsh@marsh.law
                              jenniferfreeman@marsh.law
                              robertlewis@marsh.law
                              31 Hudson Yards, 11th Floor
                              New York, NY 10001-2170
                              Phone: 212-372-3030

PFAU COCHRAN VERTETIS AMALA PLLC

By _____

Vincent T. Nappo
Anelga Doumanian
vnappo@pcvalaw.com
adoumanian@pcvalaw.com
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

Attorneys for Plaintiff

2

NEW YORK STATE SUPREME COURT
MONROE COUNTY

███

                               Plaintiff,

-against-

BROTHERS OF THE HOLY CROSS,

                               Defendant.

Index No.:

**COMPLAINT**

**Child Victims Act Proceeding
22 NYCRR 202.72**

     Plaintiff ███ by and through his attorneys, the Marsh Law Firm PLLC and Pfau Cochran Vertetis Amala PLLC, respectfully alleges for his complaint the following:

## I.      INTRODUCTION

     1.     For decades, the defendant knew or should have known that priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and others were using their positions within the Catholic Church to groom and to sexually abuse children. Despite that knowledge, the defendant failed to take reasonable steps to protect children from being sexually abused and actively concealed the abuse. Based on the defendant's wrongful conduct, a reasonable person could and would conclude that it knowingly and recklessly disregarded the abuse of children and chose to protect its reputation and wealth over those who deserved protection. The result is not surprising: for decades hundreds, if not thousands, of children were sexually abused by Catholic clergy and others who served the Catholic Church, including the defendant. The plaintiff in this lawsuit is one of those children who was sexually abused because of the defendant's wrongful conduct.

## II.    PROCEEDING IN ACCORDANCE WITH CPLR 214-G AND 22 NYCRR 202.72

2.     This complaint is filed pursuant to the Child Victims Act (CVA) 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440), CPLR 214-G, and 22 NVCRR 202.72. The CVA opened a historic one-year one-time window for victims and survivors of childhood sexual abuse in the State of New York to pursue lapsed claims. Prior to the passage of the CVA, plaintiff's claims were time-barred the day plaintiff turned 22 years old. The enactment of the CVA allows plaintiff, for the first time in plaintiff's life, to pursue restorative justice in New York State.

### III.    PARTIES

3.     Plaintiff ▮ is an adult male who currently resides in Pittsford, New York.

4.     While he was a minor, plaintiff ▮ was a victim of one or more criminal sex acts in the State of New York, including sexual acts that would constitute a sexual offense as defined by the Child Victims Act.

5.     Since such criminal violation is the basis for this action, plaintiff ▮ is entitled to the protection of Civil Rights Law 50-b and will file a motion asking this Court for permission to proceed using a pseudonym.

6.     In the alternative, plaintiff ▮ will seek a stipulation from the defendant agreeing to enter into a protective order which will ensure that his identity is protected from the public while allowing the defendant full access to information necessary for its defense.

7.     At all relevant times defendant Brothers of the Holy Cross ("Holy Cross Brothers") was a not-for-profit religious corporation with its principal office in Notre Dame, Indiana, and/or Austin, Texas.

8.     At all relevant times the Holy Cross Brothers conducted business as "Brothers of the Holy Cross," "Brothers of the Holy Cross, Inc.," "Congregation of Holy Cross," "Congregation of Holy Cross, United States Province," "Midwest Province of Brothers," "Moreau Province,"

2

"United States Province of Priests and Brothers," the "Brothers of the Holy Cross," and the "Holy Cross Brothers."

9.      The Holy Cross Brothers is a Catholic religious order whose members, employees, and/or agents served various Catholic institutions and families, including Cardinal Mooney High School ("Cardinal Mooney"), plaintiff ███ and his family.

10.     At all relevant times Cardinal Mooney was a school located in Rochester, New York.

11.     The members, employees, and/or agents of the Holy Cross Brothers were generally referred to as brothers and priests and the Holy Cross Brothers would receive compensation for the services that its agents provided to others, including the services they provided to Cardinal Mooney.

12.     Brother John Walsh was an agent of the Holy Cross Brothers who served Catholic families on behalf of the Holy Cross Brothers, including plaintiff ███ and his family.

13.     During the time Brother John Walsh served the Holy Cross Brothers, he used his position as an agent of the Holy Cross Brothers to groom and to sexually abuse plaintiff ███

14.     To the extent that the Holy Cross Brothers was a different entity, corporation, or organization during the period of time during which Brother Walsh used his position with the defendant at Cardinal Mooney to sexually abuse ███, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Brothers of the Holy Cross.

15.     To the extent the Holy Cross Brothers is a successor to a different entity, corporation, or organization that existed during the period of time when Brother Walsh used his position with the defendant at Cardinal Mooney to sexually abuse ███ such predecessor entity,

3

corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Brothers of the Holy Cross.

16.    All such Holy Cross Brothers-related entities, corporations, or organizations are collectively referred to herein as the "Holy Cross Brothers."

## IV.    VENUE

17.    Venue is proper because Monroe is the county in which a substantial part of the events or omissions giving rise to plaintiff's claims occurred.

18.    Venue is proper because at all relevant times Cardinal Mooney was located in Rochester, New York.

19.    Venue is proper because plaintiff ███████████████████████████

20.    The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## V.    STATEMENT OF FACTS

21.    At all relevant times the Holy Cross Brothers, through its agents, managed, maintained, operated, and controlled Cardinal Mooney, and held out to the public its agents as those who managed, maintained, operated, and controlled Cardinal Mooney.

22.    At all relevant times the Holy Cross Brothers held itself out to the public as the owner and/or operator of Cardinal Mooney.

23.    At all relevant times the Holy Cross Brothers provided Cardinal Mooney with some of its agents to provide services at Cardinal Mooney.

24.    At all relevant times the Holy Cross Brothers were responsible for and did the staffing and hiring at Cardinal Mooney.

25.    At all relevant times the Holy Cross Brothers were responsible for and did the recruitment and staffing of volunteers at Cardinal Mooney.

4

26.     At all relevant times the Holy Cross Brothers materially benefited from the operation of Cardinal Mooney, including the services of Brother Walsh and the services of those who managed and supervised Brother Walsh.

27.     At all relevant times Brother Walsh was an agent of the Holy Cross Brothers at Cardinal Mooney.

28.     At all relevant times Brother Walsh acted as an agent of the Holy Cross Brothers.

29.     At all relevant times Brother Walsh was acting in the course and scope of his agency with the Holy Cross Brothers.

30.     At all relevant times Brother Walsh was an agent of the Holy Cross Brothers that it assigned to Cardinal Mooney and/or that it allowed to serve at Cardinal Mooney.

31.     The agents of the Holy Cross Brothers who provided services to Cardinal Mooney, including Brother John Walsh and those who managed and supervised him, were subject to the authority and control of the Holy Cross Brothers.

32.     At all relevant times Brother Walsh had an office on the premises of Cardinal Mooney.

33.     When plaintiff ▉ was a minor, he was a member of Cardinal Mooney, including when he was a student.

34.     The Holy Cross Brothers, through its agents, servants, and employees, held Brother Walsh out to the public, to ▉ and to his parents, as its agent and/or employee.

35.     The Holy Cross Brothers, through its agents, servants, and employees, held Brother Walsh out to the public, to ▉ and to his parents, as having been vetted, screened, and approved by the defendant.

5

36.    ██ and his parents reasonably relied upon the acts and representations of the Holy Cross Brothers, through its agents, servants, and employees, and reasonably believed that Brother Walsh was an agent and/or employee of the defendant who was vetted, screened, and approved by the defendant.

37.    ██ and his parents trusted Brother Walsh because the Holy Cross Brothers held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of ██

38.    ██ and his parents believed that the Holy Cross Brothers would exercise such care as would a parent of ordinary prudence in comparable circumstances when the defendant assumed supervision, care, custody, and control of ██

39.    When ██ was a minor, Brother Walsh used his position with the defendant to sexually abuse him.

40.    ██ was sexually abused by Brother Walsh when he was approximately 14 to 16 years old.

41.    Based on the representations of the Holy Cross Brothers that Brother Walsh was safe and trustworthy ██ and his parents allowed ██ to be under the supervision of, and in the care, custody, and control of, the Holy Cross Brothers, including during the times when ██ was sexually abused by Brother Walsh.

42.    Based on the representations of the Holy Cross Brothers that Brother Walsh was safe and trustworthy, ██ and his parents allowed ██ to be under the supervision of, and in the care, custody, and control of, Brother Walsh, including during the times when ██ was sexually abused by Brother Walsh.

6

43.     Neither ▮ nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, the Holy Cross Brothers or Brother Walsh if the Holy Cross Brothers had disclosed to ▮ or his parents that Brother Walsh was not safe and was not trustworthy, and that he in fact posed a danger to ▮ in that Brother Walsh was likely to sexually abuse ▮.

44.     No parent of ordinary prudence in comparable circumstances would have allowed ▮ to be under the supervision of, or in the care, custody, or control of, the Holy Cross Brothers or Brother Walsh if the Holy Cross Brothers had disclosed to ▮ or his parents that Brother Walsh was not safe and was not trustworthy, and that he in fact posed a danger to ▮ in that Brother Walsh was likely to sexually abuse him.

45.     From approximately 1983 through approximately 1985, Brother Walsh exploited the trust and authority vested in him by the defendant by grooming ▮ to gain his trust and to obtain control over him as part of Brother Walsh's plan to sexually molest and abuse ▮ and other children.

46.     Brother Walsh used his position of trust and authority as an employee and/or agent of the Holy Cross Brothers to groom ▮ and to sexually abuse him multiple times, including when ▮ was under the supervision of, and in the care, custody, or control of, the Holy Cross Brothers and Brother Walsh.

47.     The sexual abuse of ▮ by Brother Walsh occurred at Cardinal Mooney and other locations, including in Brother Walsh's office.

48.     Brother Walsh's sexual abuse of ▮ occurred during activities that were sponsored by, or were a direct result of activities sponsored by, the Holy Cross Brothers, including during school activities. During such activities the defendant had care, custody, or control of ▮

7

49.     At all relevant times the defendant, through its agents, servants, and employees, knew or should have known that Brother Walsh was a known sexual abuser of children.

50.     At all relevant times it was reasonably foreseeable to the defendant, through its agents, servants, and employees, that Brother Walsh's sexual abuse of children would likely result in injury to others, including the sexual abuse of ▇ and other children by Brother Walsh.

51.     At certain times between 1983 and 1985, the defendant, through its agents, servants, and employees knew or should have known that Brother Walsh was sexually abusing ▇ and other children at Cardinal Mooney and elsewhere.

52.     The defendant, through its agents, servants, and employees, knew or should have known that the sexual abuse by Brother Walsh of ▇ was ongoing.

53.     The defendant, through its agents, servants, and employees, knew or should have known before and during Brother Walsh's sexual abuse of ▇ that priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and/or other persons serving the Catholic Church, including individuals who served the Holy Cross Brothers, had used their positions to groom and to sexually abuse children.

54.     The defendant, through its agents, servants, and employees, knew or should have known before and during Brother Walsh's sexual abuse of ▇ that such priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and/or other persons could not be "cured" through treatment or counseling.

55.     The defendant, through its agents, servants, and employees, concealed the sexual abuse of children by Brother Walsh in order to conceal its own bad acts in failing to protect children from him, to protect its reputation, and to prevent victims of such sexual abuse by him from coming

forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that Brother Walsh would continue to molest children.

56.     The defendant, through its agents, servants, and employees, consciously and recklessly disregarded its knowledge that Brother Walsh would use his position with the defendant to sexually abuse children, including ███.

57.     The defendant, through its agents, servants, and employees, disregarded its knowledge that Brother Walsh would use his position with the defendant to sexually abuse children, including ███.

58.     The defendant, through its agents, servants, and employees, acted in concert with Brother Walsh and others to conceal the danger that Brother Walsh posed to children, including ███ so that Brother Walsh could continue serving the defendant and others despite its knowledge of that danger.

59.     The defendant, through its agents, servants, and employees, knew that its negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including ███ and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of its wrongful conduct.

60.     The defendant, through its agents, servants, and employees, concealed the sexual abuse of children in order to conceal its own bad acts in failing to protect children from being abused, to protect its reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that those priests and other persons would continue to molest children.

9

61.     By reason of the wrongful acts of the defendant as detailed herein, ███ sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and ███ has and/or will become obligated to expend sums of money for treatment.

## VI.     CAUSES OF ACTION

### A.     FIRST CAUSE OF ACTION – NEGLIGENCE

62.     Plaintiff ███ repeats and re-alleges all of his allegations above and below.

63.     The defendant had a duty to take reasonable steps to protect plaintiff ███., a child, from foreseeable harm when he was under its supervision and in its care, custody, and control, including when Brother Walsh sexually abused him.

64.     The defendant also had a duty to take reasonable steps to prevent Brother Walsh from using the tasks, premises, and instrumentalities of his position with the defendant to target, groom, and sexually abuse children, including ███

65.     These circumstances created a special relationship between the defendant and ███ that imposed on the defendant a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

66.     The defendant breached the foregoing duties by failing to exercise reasonable care to prevent Brother Walsh from using his position with the defendant to sexually abuse ███ when he was in its care, custody, or control.

67.     In breaching its duties, including hiring, retaining, and failing to supervise Brother Walsh, giving him access to children, entrusting its tasks, premises, and instrumentalities to him,

failing to train its personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn ███ his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for ███ nd other children who were under its supervision and in its care, custody, and control, the defendant created a risk that ███ would be sexually abused by Brother Walsh.  The defendant through its actions and inactions created an environment that placed ███ in danger of unreasonable risks of harm under the circumstances.

68.     In breaching its duties, including hiring, retaining, and failing to supervise Brother Walsh, giving him access to children, entrusting its tasks, premises, and instrumentalities to him, failing to train its personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn ███ his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for ███ and other children who were under its supervision and in its care, custody, and control, the defendant acted willfully and with conscious disregard for the need to protect ███ The defendant through its actions and inactions created an environment that placed ███ in danger of unreasonable risks of harm under the circumstances.

69.     It was reasonably foreseeable that the defendant's breach of these duties of care would result in the sexual abuse of ███

70.     As a direct and proximate result of the acts and omissions of the defendant, Brother Walsh groomed and sexually abused ███ which has caused ███ to suffer general and special damages as more fully described herein.

**B.     SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

71.     Plaintiff ███ epeats and re-alleges all of his allegations above and below.

72.     The defendant engaged in reckless, extreme, and outrageous conduct by providing Brother Walsh with access to children, including plaintiff ▮ despite knowing that he would likely use his position to groom and to sexually abuse them, including ▮ The defendant's misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by the defendant of the consequences that would follow.

73.     As a result of this reckless, extreme, and outrageous conduct, Brother Walsh gained access to ▮ and sexually abused him.

74.     The defendant knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and ▮ did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

## VII.   CPLR 1603 – NO APPORTIONMENT OF LIABILITY

75.     Pursuant to CPLR 1603, the foregoing causes of action are exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(2), CPLR 1602(5), 1602(7) and 1602(11), thus precluding the defendant from limiting its liability by apportioning some portion of liability to any joint tortfeasor.

## VIII.   PRAYER FOR RELIEF

76.     Plaintiff ▮ demands judgment against the defendant named in his causes of action, together with compensatory and punitive damages to be determined at trial, and the interest, cost and disbursements pursuant to his causes of action, and such other and further relief as the Court deems just and proper.

77.     Plaintiff specifically reserves the right to pursue additional causes of action, other than those outlined above, that are supported by the facts pleaded or that may be supported by other facts learned in discovery.

Dated: July 24, 2020

MARSH LAW FIRM PLLC

By _____

James R. Marsh
Jennifer Freeman
Robert Lewis
jamesmarsh@marsh.law
jenniferfreeman@marsh.law
robertlewis@marsh.law
31 Hudson Yards, 11th Floor
New York, NY 10001-2170
Phone: 212-372-3030

PFAU COCHRAN VERTETIS AMALA PLLC

By _____

Vincent T. Nappo
vnappo@pcvalaw.com
Anelga Doumanian
adoumanian@pcvalaw.com
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

Attorneys for Plaintiff

13