**Exhibit 13**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

AB 113 DOE,

        Plaintiff,

v.

ST. BONIFACE A/K/A SOUTHEAST
ROCHESTER CATHOLIC
COMMUNITY; and DOES 1-5 whose
identities are unknown to Plaintiff,

        Defendants.

Index No._____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**[1]

Plaintiff, by and through Plaintiff's attorneys, states and alleges as follows:

## PARTIES

1. At all times material to this Complaint, Plaintiff resided in the State of New York.

2. Plaintiff brings this action under a pseudonym with leave of Court.

3. At all times material, Plaintiff was a minor under 18 years of age when the sexual abuse occurred.

4. This action is brought pursuant to the New York Child Victims Act, CPLR § 214-g. The conduct at issue constituted sexual offense against a minor in violation of a section within Article 130 and/or § 263.05 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, and resulted in physical, psychological, and emotional injuries. As a civil cause of action was previously time-barred prior to August 14, 2019, the terms of the Child Victims Act, CPLR § 214-g, revive the claims set forth below.

5. Whenever reference is made to any Defendant entity, such reference includes that

---

[1] Pursuant to §4 of the New York Child Victims Act, Plaintiff is entitled to a trial preference.

entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

6.  At all times material, Defendant St. Boniface a/k/a Southeast Rochester Catholic Community ("St. Boniface") was and continues to be an organization authorized to conduct business and conducting business in the state of New York, with its principal place of business at 330 Gregory Street, Rochester, NY 14620. St. Boniface includes, but is not limited to, the St. Boniface corporation and any other organizations and/or entities operating under the same or similar name with the same or similar principal place of business.

7.  At all times material, St. Boniface was and continues to be under the direct authority, control, and province of the Diocese of Rochester, New York ("Diocese") and the Bishop of the Diocese. Defendant St. Boniface includes any school affiliated with St. Boniface. At all times material, St. Boniface School was under the direct authority, control, and province of Defendant St. Boniface and the Bishop of the Diocese. At all times material, Defendant St. Boniface and Diocese owned, operated, managed, maintained, and controlled St. Boniface School.

8.  Defendants Does 1 through 5 are unknown agents whose identities will be provided when they become known pursuant to CPLR § 1024.

## JURISDICTION

9.  This Court has jurisdiction pursuant to CPLR § 301 as Defendant's principal place of business is in New York and because the unlawful conduct complained of herein occurred in New York.

2

10. Venue is proper pursuant to CPLR § 503 in that Monroe County is the principal place of business of Defendant St. Boniface. In addition, many of the events giving rise to this action occurred in Monroe County.

## FACTS

11. At all times material, Father Robert O'Neill ("Fr. O'Neill") was a Roman Catholic cleric employed by the Diocese and St. Boniface ("Defendant"). Fr. O'Neill remained under the direct supervision, employ, and control of Defendant and Diocese.

12. Defendant and Diocese placed Fr. O'Neill in positions where he had access to and worked with children as an integral part of his work.

13. Defendant held its leaders and agents out as people of high morals, as possessing immense power, teaching families and children to obey these leaders and agents, teaching families and children to respect and revere these leaders and agents, soliciting youth and families to its programs, marketing to youth and families, recruiting youth and families, and holding out the people that worked in the programs as safe.

14. Plaintiff was raised in a devout Roman Catholic family and attended St. Boniface in Rochester, in the Diocese of Rochester. Plaintiff and Plaintiff's family came in contact with Fr. O'Neill as an agent and representative of Defendant and Diocese, and at St. Boniface.

15. Plaintiff was a student and participated in youth activities and/or church activities at St. Boniface. Plaintiff, therefore, developed great admiration, trust, reverence, and respect for the Roman Catholic Church, including Defendant and its agents, including Fr. O'Neill.

16. During and through these activities, Plaintiff, as a minor and vulnerable child, was dependent on Defendant and Fr. O'Neill. Defendant had custody of Plaintiff and accepted the entrustment of Plaintiff and, therefore, had responsibility for Plaintiff and authority over Plaintiff.

17. In approximately 1976 to 1977, when Plaintiff was approximately 12 years old, Fr. O'Neill engaged in unpermitted sexual contact with Plaintiff in violation of at least one section of New York Penal Law Article 130 and/or § 263.05, or a predecessor statute that prohibited such conduct at the time of the abuse.

18. Plaintiff's relationship to Defendant and Fr. O'Neill, as a vulnerable child, Catholic parishioner, student and participant in church activities, was one in which Plaintiff was subject to the ongoing influence of Defendant and Fr. O'Neill.

19. The culture of the Catholic Church over Plaintiff created pressure on Plaintiff not to report the abuse Plaintiff suffered.

20. Defendant knew or should have known that Fr. O'Neill was a danger to children before Fr. O'Neill sexually assaulted Plaintiff.

21. Prior to the sexual abuse of Plaintiff, Defendant learned or should have learned that Fr. O'Neill was not fit to work with children. Defendant, by and through its agents, servants and/or employees, became aware, or should have become aware of Fr. O'Neill's propensity to commit sexual abuse and of the risk to Plaintiff's safety. At the very least, Defendant knew or should have known that it did not have sufficient information about whether or not its leaders and people working at Catholic institutions within the Diocese were safe.

22. Defendant knew or should have known that there was a risk of child sexual abuse for children participating in Catholic programs and activities within the Diocese. At the very least, Defendant knew or should have known that it did not have sufficient information about whether or not there was a risk of child sexual abuse for children participating in Catholic programs and activities within the Diocese.

23. Defendant knew or should have known that Defendant and Diocese had numerous

4

agents who had sexually molested children. Defendant knew or should have known that child molesters have a high rate of recidivism. Defendant knew or should have known that some of the leaders and people working in Catholic institutions within the Diocese were not safe and that there was a specific danger of child sexual abuse for children participating in its youth programs.

24. Instead, Defendant negligently deemed that Fr. O'Neill was fit to work with children and/or that any previous problems were fixed or cured and/or that Fr. O'Neill would not sexually assault children and/or that Fr. O'Neill would not injure children.

25. Defendant owed Plaintiff a duty of reasonable care because it had superior knowledge about the risk that Fr. O'Neill posed to Plaintiff, the risk of abuse in general in its programs and/or the risks that its facilities posed to minor children.

26. Defendant owed a duty to Plaintiff to protect Plaintiff from harm because Defendant's actions created a foreseeable risk of harm to Plaintiff. As a vulnerable child participating in the programs and activities Defendant offered to minors, Plaintiff was a foreseeable victim. As a vulnerable child who Fr. O'Neill had access to through Defendant's facilities and programs, Plaintiff was a foreseeable victim.

27. Defendant also breached its duty to Plaintiff by actively maintaining and employing Fr. O'Neill in a position of power and authority through which Fr. O'Neill had access to children, including Plaintiff, and power and control over children, including Plaintiff.

28. Defendant breached its duties to Plaintiff. Defendant failed to use ordinary care in determining whether its facilities were safe and/or determining whether it had sufficient information to represent its facilities as safe. Defendant's breach of its duties include, but are not limited to: failure to protect Plaintiff from a known danger, failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement policies and procedures to

prevent child sexual abuse, failure to take reasonable measures to make sure that policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train the employees at institutions and programs within Defendant's geographical confines, failure to train parishioners within Defendant's geographical confines about the risk of sexual abuse, failure to have any outside agency test its safety procedures, failure to protect the children in its programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train its employees properly to identify signs of child sexual abuse by fellow employees, failure by relying upon mental health professionals, and/or failure by relying on people who claimed that they could treat child molesters.

29. Defendant also breached its duty to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk that Fr. O'Neill posed and the risks of child sexual abuse in Catholic institutions. Defendant also failed to warn them about any of the knowledge that Defendant had about child sexual abuse.

30. Defendant additionally violated a legal duty by failing to report known and/or suspected abuse of children by Fr. O'Neill and/or its other agents to the police and law enforcement.

31. Defendant was negligent and/or made representations to Plaintiff and Plaintiff's family during each and every year of Plaintiff's minority.

32. As a direct result of Defendant's negligence as described herein, Plaintiff has suffered, and will continue to suffer, great pain of mind and body, severe and permanent emotional

distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, physical, personal and psychological injuries. Plaintiff was prevented, and will continue to be prevented, from performing normal daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling, and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

## AS AND FOR A FIRST CAUSE OF ACTION:
## NEGLIGENCE

33. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

34. Defendant owed Plaintiff a duty of reasonable care to protect Plaintiff from injury.

35. Defendant owed Plaintiff a duty of reasonable care because Defendant had a special relationship with Plaintiff.

36. Defendant also had a duty arising from its special relationship with Plaintiff, Plaintiff's parents, and other parents of young, vulnerable children, to properly train and supervise its clerics, agents, and employees. The special relationship arose because of the high degree of vulnerability of the children entrusted to Defendant's care. As a result of the high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, Defendant had a duty to establish measures of protection not necessary for persons who are older or better able to safeguard themselves.

37. Defendant owed Plaintiff a duty to protect Plaintiff from harm because Defendant had a special relationship with Fr. O'Neill.

38. Defendant owed Plaintiff a duty to control the conduct of Fr. O'Neill because Defendant had complete ability to control Fr. O'Neill's access to children like Plaintiff to prevent

the foreseeable harms associated with childhood sexual abuse, giving rise to a special relationship with Fr. O'Neill and a duty to control Fr. O'Neill's conduct.

39. Defendant owed Plaintiff a duty of reasonable care because Defendant solicited youth and parents for participation in its youth programs; encouraged youth and parents to have the youth participate in their programs; undertook custody of minor children, including Plaintiff; promoted their facilities and programs as being safe for children; held its agents, including Fr. O'Neill, out as safe to work with children; encouraged parents and children to spend time with its agents; and/or encouraged its agents, including Fr. O'Neill, to spend time with, interact with, and recruit children.

40. By holding Fr. O'Neill out as safe to work with children, and by undertaking the custody, supervision of, and/or care of the minor Plaintiff, Defendant entered into a fiduciary relationship with the minor Plaintiff. As a result of Plaintiff being a minor, and by Defendant undertaking the care and guidance of the then vulnerable minor Plaintiff, Defendant held a position of empowerment over Plaintiff.

41. Further, Defendant, by holding itself out as being able to provide a safe environment for children, solicited and/or accepted this position of empowerment. Defendant thus entered into a fiduciary relationship with Plaintiff. Defendant exploited its position of empowerment, putting Plaintiff at risk to be sexually assaulted.

42. By accepting custody of the minor Plaintiff, Defendant established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury.

43. By establishing and/or operating St. Boniface, accepting the minor Plaintiff as a participant in its programs, holding its facilities and programs out to be a safe environment for

8

Plaintiff, accepting custody of the minor Plaintiff *in loco parentis*, and by establishing a fiduciary relationship with Plaintiff, Defendant entered into an express and/or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for children, who participated in its programs. Defendant also owed Plaintiff a duty to properly supervise Plaintiff to prevent harm from foreseeable dangers. Defendant had the duty to exercise the same degree of care over young parishioners under its control as a reasonably prudent person would have exercised under similar circumstances.

44. By establishing and operating St. Boniface, which offered educational programs to children and which may have included a school, and by accepting the enrollment and participation of the minor Plaintiff as a participant in those educational programs, Defendant owed Plaintiff a duty to properly supervise Plaintiff to prevent harm from generally foreseeable dangers.

45. Defendant owed Plaintiff a duty to protect Plaintiff from harm because Defendant invited Plaintiff onto its property and Fr. O'Neill posed a dangerous condition on Defendant's property.

46. Defendant breached its duties to Plaintiff by failing to use reasonable care. Defendant's failures include, but are not limited to, failing to properly supervise Fr. O'Neill, failing to properly supervise Plaintiff and failing to protect Plaintiff from a known danger.

47. As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### AS AND FOR A SECOND CAUSE OF ACTION: NEGLIGENT TRAINING AND SUPERVISION OF EMPLOYEES

48. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

49. At all times material, Fr. O'Neill was employed by Defendant and was under

Defendant's direct supervision, employ, and control when he committed the wrongful acts alleged herein. Fr. O'Neill engaged in the wrongful conduct while acting in the course and scope of his employment with Defendant and/or accomplished the sexual abuse by virtue of his job-created authority.

50. Defendant had a duty, arising from its employment of Fr. O'Neill, to ensure that Fr. O'Neill did not sexually molest children.

51. Further, Defendant owed a duty to train and educate employees and administrators and establish adequate and effective policies and procedures calculated to detect, prevent, and address inappropriate behavior and conduct between clerics and agents and children.

52. The abuse complained of herein occurred on Defendants' property and/or with the use of its chattels.

53. Defendant was negligent in the training, supervision, and instruction of its employees. Defendant failed to timely and properly educate, train, supervise, and/or monitor its agents or employees with regard to policies and procedures that should be followed when sexual abuse of a child is suspected or observed.

54. Defendant was additionally negligent in failing to supervise, monitor, chaperone, and/or investigate Fr. O'Neill and/or in failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Fr. O'Neill's sexual abuse of Plaintiff.

55. In failing to properly supervise Fr. O'Neill, and in failing to establish such training procedures for employees and administrators, Defendant failed to exercise the care that a reasonably prudent person would have exercised under similar circumstances.

56. As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## AS AND FOR A THIRD CAUSE OF ACTION:
## NEGLIGENT RETENTION OF EMPLOYEES

57. Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

58. Defendant became aware or should have become aware of Fr. O'Neill's propensity for child sexual abuse, and failed to take any further action to remedy the problem and failed to investigate or remove Fr. O'Neill from working with children.

59. Defendant negligently and/or recklessly retained Fr. O'Neill with knowledge of Fr. O'Neill's propensity for the type of behavior which resulted in Plaintiff's injuries in this action.

60. Defendant negligently and/or recklessly retained Fr. O'Neill in a position where Fr. O'Neill had access to children and could foreseeably cause harm which Plaintiff would not have been subjected to had Defendant acted reasonably.

61. In failing to timely remove Fr. O'Neill from working with children or terminate the employment of Fr. O'Neill, Defendant negligently and/or recklessly failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

62. As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### PRAYER FOR RELIEF

WHEREFORE, based on the foregoing causes of action, Plaintiff prays for judgment against Defendant in an amount that will fully and fairly compensate Plaintiff for Plaintiff's injuries and damages and for any other relief the Court deems appropriate. The amount of damages sought in this Complaint exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

11

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable. Pursuant to §4 of the New York Child Victims Act, Plaintiff is entitled to a trial preference.

Dated: August 2, 2020

/s/ Jeffrey R. Anderson
Jeffrey R. Anderson
Michael G. Finnegan
**JEFF ANDERSON & ASSOCIATES, P.A.**
55 West 39th Street, 11th Floor
New York, NY 10018
Telephone: (646) 759-2551
jeff@andersonadvocates.com
mike@andersonadvocates.com

Stephen Boyd, Esq.
**STEVE BOYD, PC**
40 North Forest Road
Williamsville, NY 14221
Telephone: (716) 400-0000
sboyd@steveboyd.com

*Counsel for Plaintiff*