# **EXHIBIT 14**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

███████████

     *Plaintiff,*

  v.

THE CHURCH OF OUR LADY OF GOOD COUNSEL OF ROCHESTER, NY; SAINT MONICA'S CHURCH; HOLY ROSARY CHURCH OF THE CITY OF ROCHESTER, MONROE COUNTY, NEW YORK; THE CATHEDRAL COMMUNITY CHURCH OF ROCHESTER, NY; ST. PHILIP NERI ROMAN CATHOLIC CHURCH; ST. JAMES' ROMAN CATHOLIC CHURCH SOCIETY OF WAVERLY, N.Y.; BLESSED TRINITY AND ST. PATRICK PARISH; BLESSED SACRAMENT CHURCH, a/k/a, BLESSED SACRAMENT ROMAN CATHOLIC CHURCH; SOUTHEAST ROCHESTER CATHOLIC COMMUNITY; SACRED HEART CHURCH OF AUBURN, N.Y.; ST. MICHAEL'S CHURCH OF ROCHESTER, NY; and ROMAN CATHOLIC PARISH OF ST. FRANCES XAVIER CABRINI, a/k/a, ST. FRANCES XAVIER CABRINI PARISH,

     *Defendants.*

Index No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff ███████████ by his attorneys Simmons Hanly Conroy LLC and the Law Offices of Mitchell Garabedian, brings this action against The Church of Our Lady of Good Counsel of Rochester, NY; Saint Monica's Church; Holy Rosary Church of the City of Rochester, Monroe County, New York; The Cathedral Community Church of Rochester, NY; St. Philip Neri Roman Catholic Church; St. James' Roman Catholic Church Society of Waverly, N.Y.; Blessed Trinity and St. Patrick Parish; Blessed Sacrament Church, also known as Blessed Sacrament Roman Catholic Church; Southeast Rochester Catholic Community; Sacred Heart Church of Auburn, N.Y.; St. Michael's Church of Rochester, NY; and Roman Catholic Parish of St. Frances Xavier Cabrini, also known as St. Frances Xavier Cabrini Parish, and alleges, on personal knowledge as to himself and on information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over the Defendants pursuant to CPLR 301 and 302, in that the Defendants reside in New York.

2. This Court has jurisdiction over this action because the amount of damages Plaintiff seeks exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

3. Venue for this action is proper in the County of Monroe pursuant to CPLR 503 in that one or more of the Defendants reside in this County and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this County.

## PARTIES

4. Plaintiff ▮▮▮▮▮▮▮▮▮ ("Plaintiff") is an individual residing in ▮▮▮▮▮▮▮▮▮.

5. Defendant The Church of Our Lady of Good Counsel of Rochester, NY ("Our Lady of Good Counsel") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 75 Ernestine Street, Rochester, Monroe County, New York, and now at 34 Monica Street, Rochester, Monroe County. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of Our Lady of Good Counsel, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Our Lady of Good Counsel.

6. Defendant Saint Monica's Church ("St. Monica's") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 34 Monica Street, Rochester, Monroe County, New York. As a result of a corporate merger, Defendant St. Monica's is the legal successor to Defendant Our Lady of Good Counsel.

7. Defendant Holy Rosary Church of the City of Rochester, Monroe County,

2

New York ("Holy Rosary") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 414 Lexington Avenue, Rochester, Monroe County, New York, and now at 296 Flower City Park, Rochester, Monroe County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of Holy Rosary, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Holy Rosary.

8. Defendant The Cathedral Community Church of Rochester, NY ("Cathedral Community") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 296 Flower City Park, Rochester, Monroe County, New York. As a result of a corporate merger, Defendant Cathedral Community is the legal successor to Defendant Holy Rosary.

9. Defendant St. Philip Neri Roman Catholic Church ("St. Philip Neri") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was apparently a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 1782 Clifford Avenue, Rochester, Monroe County, New York, and now at 124 Evergreen Street, Rochester, Monroe County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of St. Philip Neri, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Philip Neri.

10. Defendant St. James' Roman Catholic Church Society of Waverly, N.Y. ("St. James'") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office at formerly at 503 Clark Steet, Waverly, Tioga County, New York, and now at 309 Front Street, Owego, Tioga County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the

President of St. James', and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. James'.

11. Defendant Blessed Trinity and St. Patrick Parish ("Blessed Trinity") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 309 Front Street, Owego, Tioga County, New York. As a result of a corporate merger, Defendant Blessed Trinity is the legal successor to Defendant St. James'.

12. Defendant Blessed Sacrament Church, also known as Blessed Sacrament Roman Catholic Church ("Blessed Sacrament") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was apparently a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 259 Rutgers Street, Rochester, Monroe County, New York, and now at 330 Gregory Street, Rochester, Monroe County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of Blessed Sacrament, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Blessed Sacrament.

13. Defendant Southeast Rochester Catholic Community ("Southeast Catholic") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is apparently a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 330 Gregory Street, Rochester, Monroe County, New York. As a result of a corporate merger, Defendant Southeast Catholic is the legal successor to Defendant Blessed Sacrament.

14. Defendant Sacred Heart Church of Auburn, N.Y. ("Sacred Heart") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 90 Melrose Road, Auburn, Cayuga County, New York.

15. Defendant St. Michael's Church of Rochester, NY ("St. Michael's") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was apparently a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 869 Clinton Avenue North, Rochester, Monroe County, New York, and now at 124 Evergreen Street, Rochester, Monroe County. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of St. Michael's, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Michael's.

16. Defendant Roman Catholic Parish of St. Frances Xavier Cabrini, also known as St. Frances Xavier Cabrini Parish ("St. Frances Xavier") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 124 Evergreen Street, Rochester, Monroe County, New York. As a result of corporate mergers, Defendant St. Frances Xavier is the legal successor to Defendants St. Philip Neri and St. Michael's.

## FACTS COMMON TO ALL CLAIMS

17. Plaintiff and his family were parishioners of and attended Our Lady of Good Counsel when Plaintiff was a minor child. Plaintiff also attended the parochial elementary school affiliated with Our Lady of Good Counsel, and served as an altar boy at Our Lady of Good Counsel when Plaintiff was a minor child.

18. Father Paul I. Cloonan ("Father Cloonan") was ordained a Roman Catholic priest in approximately 1954. From approximately 1954 to approximately 1957, Father Cloonan served as a priest at Defendant Holy Rosary. From approximately 1958 to approximately 1960, Father Cloonan served as a priest at Defendant St. Philip Neri. In approximately 1961, Father Cloonan served as a priest at Defendant St. James'. From approximately 1962 to approximately 1963, Father Cloonan served as a priest at Defendant Blessed Sacrament. In approximately 1964, Father Cloonan served as a priest

at Defendant Sacred Heart. From approximately 1965 to approximately 1970, Father Cloonan served as a priest at Defendant St. Michael's. From approximately 1971 to approximately 1975, Father Cloonan served as a priest at Defendant Our Lady of Good Counsel, where Plaintiff and Plaintiff's family were parishioners when Plaintiff was a minor child. Father Cloonan died in 2015.

19. Prior to Father Cloonan being assigned to Defendant Our Lady of Good Counsel, Defendants Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's, and their respective executive officers knew or should have known it was not safe to allow Father Cloonan to have unsupervised contact with minor children, in that Father Cloonan posed a sexual danger to minor children. The Roman Catholic Bishop and Vicar General of Rochester concealed the information about the danger Father Cloonan posed to minor children, in order that the Roman Catholic Bishop and Vicar General of Rochester could assign Father Cloonan to work at parishes, including Our Lady of Good Counsel. Defendants Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's aided and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing the information about the danger Father Cloonan posed to minor children.

20. Through his positions at, within, or for Defendant Our Lady of Good Counsel, Father Cloonan was put in direct contact with members of the Plaintiff's family, including Plaintiff, a minor parishioner of Defendant Our Lady of Good Counsel.

21. From approximately 1970 when Plaintiff was approximately twelve years of age, to approximately 1971 when Plaintiff was approximately thirteen years of age, Plaintiff served as an altar boy under Father Cloonan's direction at Our Lady of Good Counsel. Father Cloonan would also take Plaintiff to a public park in Rochester, New York.

22. Father Cloonan used such encounters, gained through his position at Our Lady of Good Counsel which granted him access to Plaintiff when Plaintiff was

approximately twelve to approximately thirteen years of age, to sexually assault, sexually abuse, and/or have sexual contact with the Plaintiff on at least twenty occasions in violation of the laws of the State of New York.

**Defendants' Responsibility for the Abuse Committed by Father Cloonan**

23.     At all times material hereto, Father Cloonan was under the management, supervision, employ, direction and/or control of Defendants Our Lady of Good Counsel, Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's.

24.     Through his positions at, within, or for Defendant Our Lady of Good Counsel, Father Cloonan was put in direct contact with Plaintiff.

25.     Father Cloonan used his position at, within, or for Defendant Our Lady of Good Counsel and the implicit representations made by Defendant Our Lady of Good Counsel about Father Cloonan's character that accompanied that position, to gain Plaintiff's trust and confidence and to create an opportunity to be alone with, and to sexually touch, Plaintiff.

26.     Defendant Our Lady of Good Counsel had the duty to reasonably manage, supervise, control and/or direct priests who served at Our Lady of Good Counsel, and specifically, had a duty not to aid pedophiles such as Father Cloonan by assigning, maintaining, and/or appointing them to positions with access to minors.

27.     Defendant Holy Rosary had a duty to reasonably supervise, direct, manage, and control Father Cloonan when Father Cloonan was assigned to Holy Rosary. Defendant Holy Rosary had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Cloonan posed a danger to minor children when he had contact with such minors, especially when Defendant Holy Rosary knew or should have known that Father Cloonan posed such a danger and Father Cloonan was being transferred to other parishes where he would have unsupervised contact with minors. Defendant Holy Rosary

assisted, aided, and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Cloonan posed a danger to minor children from parishes to which Father Cloonan was subsequently assigned.

28. Defendant St. Philip Neri had a duty to reasonably supervise, direct, manage, and control Father Cloonan when Father Cloonan was assigned to St. Philip Neri. Defendant St. Philip Neri had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Cloonan posed a danger to minor children when he had contact with such minors, especially when Defendant St. Philip Neri knew or should have known that Father Cloonan posed such a danger and Father Cloonan was being transferred to other parishes where he would have unsupervised contact with minors. Defendant St. Philip Neri assisted, aided, and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Cloonan posed a danger to minor children from parishes to which Father Cloonan was subsequently assigned.

29. Defendant St. James' had a duty to reasonably supervise, direct, manage, and control Father Cloonan when Father Cloonan was assigned to St. James'. Defendant St. James' had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Cloonan posed a danger to minor children when he had contact with such minors, especially when Defendant St. James' knew or should have known that Father Cloonan posed such a danger and Father Cloonan was being transferred to other parishes where he would have unsupervised contact with minors. Defendant St. James' assisted, aided, and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Cloonan posed a danger to minor children from parishes to which Father Cloonan was subsequently assigned.

30. Defendant Blessed Sacrament had a duty to reasonably supervise, direct, manage, and control Father Cloonan when Father Cloonan was assigned to Blessed

Sacrament. Defendant Blessed Sacrament had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Cloonan posed a danger to minor children when he had contact with such minors, especially when Defendant Blessed Sacrament knew or should have known that Father Cloonan posed such a danger and Father Cloonan was being transferred to other parishes where he would have unsupervised contact with minors. Defendant Blessed Sacrament assisted, aided, and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Cloonan posed a danger to minor children from parishes to which Father Cloonan was subsequently assigned.

31. Defendant Sacred Heart had a duty to reasonably supervise, direct, manage, and control Father Cloonan when Father Cloonan was assigned to Sacred Heart. Defendant Sacred Heart had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Cloonan posed a danger to minor children when he had contact with such minors, especially when Defendant Sacred Heart knew or should have known that Father Cloonan posed such a danger and Father Cloonan was being transferred to other parishes where he would have unsupervised contact with minors. Defendant Sacred Heart assisted, aided, and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Cloonan posed a danger to minor children from parishes to which Father Cloonan was subsequently assigned.

32. Defendant St. Michael's had a duty to reasonably supervise, direct, manage, and control Father Cloonan when Father Cloonan was assigned to St. Michael's. Defendant St. Michael's had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Cloonan posed a danger to minor children when he had contact with such minors, especially when Defendant St. Michael's knew or should have known that Father

Cloonan posed such a danger and Father Cloonan was being transferred to other parishes where he would have unsupervised contact with minors. Defendant St. Michael's assisted, aided, and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Cloonan posed a danger to minor children from parishes to which Father Cloonan was subsequently assigned.

33. As a result of Defendants Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's assisting, aiding, and abetting the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Cloonan posed a danger to minor children, Father Cloonan was assigned to Our Lady of Good Counsel without any notice to the parishioners of Our Lady of Good Counsel about the danger Father Cloonan posed to minor children. As a result, Father Cloonan had unsupervised access to Plaintiff, a minor child, who Father Cloonan sexually abused.

34. Defendants Our Lady of Good Counsel, Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's knew and/or reasonably should have known, and/or knowingly condoned, and/or covered up, the inappropriate and unlawful sexual activities of Father Cloonan, who sexually abused Plaintiff.

35. Defendant Our Lady of Good Counsel had a duty to the Plaintiff to properly supervise Our Lady of Good Counsel priests to ensure that priests did not use their positions with Our Lady of Good Counsel as a tool for grooming and assaulting vulnerable children. Defendant Our Lady of Good Counsel knew or should have known that Father Cloonan used his positions with Our Lady of Good Counsel to sexually abuse minor children, including the Plaintiff.

### Consequences of the Abuse

36. Plaintiff suffered personal physical and psychological injuries and damages as a result of Father Cloonan's actions, as well as other damages related thereto, as a result of the childhood sexual abuse Plaintiff sustained.

37. As a direct result of the Defendants Our Lady of Good Counsel's, Holy Rosary's, St. Philip Neri's, St. James', Blessed Sacrament's, Sacred Heart's, and St. Michael's conduct described herein, Plaintiff suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, and physical manifestations of emotional distress. Plaintiff was prevented from obtaining the full enjoyment of life; has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling; and has incurred and will continue to incur loss of income and/or loss of earning capacity. As a victim of Father Cloonan's sexual abuse, Plaintiff is unable at this time to fully describe all of the details of that abuse and the extent of the harm he suffered as a result.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Negligent Hiring/Retention/Supervision/Direction

38. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 37 as if fully set forth herein.

39. Defendant Our Lady of Good Counsel owed a duty of care to all minor persons, including Plaintiff, who were likely to come within the influence or supervision of Father Cloonan in his role as priest, counselor, trustee, director, officer, employee, agent, servant and/or volunteer, to insure that Father Cloonan did not use his assigned position to injure minors by sexual assault, sexual abuse, or sexual contact in violation of the laws of the State of New York.

40. Defendant Our Lady of Good Counsel at all relevant times represented that its facilities were safe places for minors to attend or visit, and that its priests were individuals to whom it was safe to entrust the care of minor children. Defendant Our Lady of Good Counsel entered into an express and/or implied duty to provide that when Plaintiff was a minor left in the presence of a priest assigned to, hired by, retained by, directed by, and/or under the supervision of Defendant Our Lady of Good Counsel,

Plaintiff would be kept reasonably safe and that that priest would not sexually abuse Plaintiff.

41. Father Cloonan sexually assaulted, sexually abused, and/or had sexual contact with Plaintiff when Plaintiff was a minor.

42. Defendant Our Lady of Good Counsel negligently hired, retained, directed, and supervised Father Cloonan, though it knew or should have known that Father Cloonan posed a threat of sexual abuse to minors.

43. Defendant Our Lady of Good Counsel knew or should have known of Father Cloonan's propensity for the conduct which caused Plaintiff's injuries prior to, or at the time of, the injuries' occurrence.

44. Defendant Our Lady of Good Counsel was negligent in failing to properly supervise Father Cloonan.

45. The sexual abuse of children by adults, including priests, is a foreseeable result of negligence.

46. At all times material hereto, Defendant Our Lady of Good Counsel's actions were willful, wanton, malicious, reckless, negligent and/or outrageous in their disregard for the rights and safety of Plaintiff.

47. As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

48. Liabilities of Defendant Our Lady of Good Counsel were transferred to, or assumed by, Defendant St. Monica's. As a result, Defendant St. Monica's is liable to the Plaintiff for the damages caused by Defendant Our Lady of Good Counsel stated in this cause of action.

49. By reason of the foregoing, Defendants Our Lady of Good Counsel and St. Monica's are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

## SECOND CAUSE OF ACTION
### Negligence/Gross Negligence

50. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 37 as if fully set forth herein.

51. Defendants Our Lady of Good Counsel, Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's knew, or were negligent in not knowing, that Father Cloonan posed a threat of sexual abuse to children.

52. The acts of Father Cloonan described hereinabove were undertaken, and/or enabled by, and/or during the course, and/or within the scope of his respective employment, appointment, assignment, and/or agency with Defendant Our Lady of Good Counsel.

53. Defendant Our Lady of Good Counsel owed Plaintiff, a minor at the relevant times of abuse, a duty to protect him from Father Cloonan's sexual deviancy and the consequential damages, both prior to and/or subsequent to Father Cloonan's misconduct.

54. Defendants Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing the danger Father Cloonan posed to minor children.

55. Defendants Our Lady of Good Counsel's, Holy Rosary's, St. Philip Neri's, St. James', Blessed Sacrament's, Sacred Heart's, and St. Michael's willful, wanton, grossly negligent and/or negligent act(s) of commission and/or omission, resulted directly and/or proximately in the damage set forth herein at length.

56. Defendant Our Lady of Good Counsel:
   a. gave improper or ambiguous orders or failed to make proper regulations, and/or employed improper persons or instrumentalities in work involving risk of harm to others;

  b. failed adequately to supervise the activities of Father Cloonan;

  c. permitted, and/or intentionally failed and/or neglected to prevent, negligent and/or grossly negligent conduct and/or allowed other tortious conduct by persons, whether or not their servants and/or agents and/or employees, upon premises or with instrumentalities under their control; and

  d. allowed the acts of omission and/or commission and/or any or all of the allegations set forth in this Complaint to occur.

57. At all times material hereto, with regard to the allegations contained herein, Father Cloonan was under the supervision, employ, direction and/or control of Defendants Our Lady of Good Counsel, Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's.

58. At all times material hereto, Defendants Our Lady of Good Counsel's, Holy Rosary's, St. Philip Neri's, St. James', Blessed Sacrament's, Sacred Heart's, and St. Michael's actions were willful, wanton, malicious, reckless, negligent and outrageous in their disregard for the rights and safety of Plaintiff, which amounted to conduct equivalent to criminality.

59. As a direct and/or indirect result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

60. Liabilities of Defendant Our Lady of Good Counsel were transferred to, or assumed by, Defendant St. Monica's. As a result, Defendant St. Monica's is liable to the Plaintiff for the damages caused by Defendant Our Lady of Good Counsel stated in this cause of action.

61. Liabilities of Defendant Holy Rosary were transferred to, or assumed by, Defendant Cathedral Community. As a result, Defendant Cathedral Community is liable to the Plaintiff for the damages caused by Defendant Holy Rosary stated in this cause of action.

62. Liabilities of Defendant St. James' were transferred to, or assumed by, Defendant Blessed Trinity. As a result, Defendant Blessed Trinity is liable to the Plaintiff for the damages caused by Defendant St. James' stated in this cause of action.

63. Liabilities of Defendant Blessed Sacrament were transferred to, or assumed by, Defendant Southeast Catholic. As a result, Defendant Southeast Catholic is liable to the Plaintiff for the damages caused by Defendant Blessed Sacrament stated in this cause of action.

64. Liabilities of Defendants St. Philip Neri and St. Michael's were transferred to, or assumed by, Defendant St. Frances Xavier. As a result, Defendant St. Frances Xavier is liable to the Plaintiff for the damages caused by Defendants St. Philip Neri and St. Michael's stated in this cause of action.

65. By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

### THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty

66. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 37 as if fully set forth herein.

67. There exists a fiduciary relationship of trust, confidence, and reliance between Plaintiff and Defendant Our Lady of Good Counsel. This relationship is based on the entrustment of the Plaintiff while he was a minor child to the care and supervision of the agent or servant of the Defendant Our Lady of Good Counsel. This entrustment of the Plaintiff to the care and supervision of the Defendant Our Lady of Good Counsel, while the Plaintiff was a minor child, required Defendant Our Lady of Good Counsel to assume a fiduciary relationship and to act in the best interests of the Plaintiff, as well as to protect him while he was a minor and vulnerable child.

68. Pursuant to their fiduciary relationship, Defendant Our Lady of Good

Counsel was entrusted with the well-being, care, and safety of Plaintiff.

69. Pursuant to their fiduciary relationship, Defendant Our Lady of Good Counsel assumed a duty to act in the best interests of Plaintiff.

70. Defendant Our Lady of Good Counsel breached its fiduciary duty to Plaintiff.

71. At all times material hereto, the actions and/or inactions of Defendant Our Lady of Good Counsel were willful, wanton, malicious, reckless, negligent and outrageous in their disregard for the rights and safety of Plaintiff.

72. As a direct result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

73. Liabilities of Defendant Our Lady of Good Counsel were transferred to, or assumed by, Defendant St. Monica's. As a result, Defendant St. Monica's is liable to the Plaintiff for the damages caused by Defendant Our Lady of Good Counsel stated in this cause of action.

74. By reason of the foregoing, Defendants Our Lady of Good Counsel and St. Monica's are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

## Fourth Cause of Action
### Aiding and Abetting Fraud

75. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 37 as if fully set forth herein.

76. The Roman Catholic Bishop and Vicar General of Rochester fraudulently concealed from the parishioners of Our Lady of Good Counsel information that would have shown Father Cloonan was a danger to minor children.

77. Defendants Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's had information that would have shown Father Cloonan

was a danger to minor children. Defendants Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's assisted the Roman Catholic Bishop and Vicar General of Rochester in fraudulently concealing information from the parishioners about the danger Father Cloonan posed to parishioners.

78. If the information about the danger Father Cloonan posed to minors had not been concealed from parishioners, Father Cloonan would not have been assigned to Our Lady of Good Counsel where Father Cloonan sexually assaulted, sexually abused, and/or had sexual contact with the Plaintiff.

79. To assist Rochester's Roman Catholic Bishop and Vicar General in fraudulently concealing the information about Father Cloonan, Defendants Holy Rosary, St. Philip Neri, St. James', Blessed Sacrament, Sacred Heart, and St. Michael's failed to disclose Father Cloonan's propensity to sexually abuse minors, and intentionally concealed knowledge of Father Cloonan's inappropriate and unlawful sexual activities, knowing that minor children, including Plaintiff, in other parishes where Father Cloonan was assigned would rely upon this material omission.

80. As a direct and/or indirect result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

81. Liabilities of Defendant Holy Rosary were transferred to, or assumed by, Defendant Cathedral Community. As a result, Defendant Cathedral Community is liable to the Plaintiff for the damages caused by Defendant Holy Rosary stated in this cause of action.

82. Liabilities of Defendant St. James' were transferred to, or assumed by, Defendant Blessed Trinity. As a result, Defendant Blessed Trinity is liable to the Plaintiff for the damages caused by Defendant St. James' stated in this cause of action.

83. Liabilities of Defendant Blessed Sacrament were transferred to, or assumed by, Defendant Southeast Catholic. As a result, Defendant Southeast Catholic is liable to the Plaintiff for the damages caused by Defendant Blessed Sacrament stated in this cause

of action.

84. Liabilities of Defendants St. Philip Neri and St. Michael's were transferred to, or assumed by, Defendant St. Frances Xavier. As a result, Defendant St. Frances Xavier is liable to the Plaintiff for the damages caused by Defendants St. Philip Neri and St. Michael's stated in this cause of action.

85. By reason of the foregoing, Defendants Holy Rosary, Cathedral Community, St. Philip Neri, St. James', Blessed Trinity, Blessed Sacrament, Southeast Catholic, Sacred Heart, St. Michael's, and St. Frances Xavier are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

WHEREFORE Plaintiff, demands judgment against the Defendants on each cause of action as follows:

A. Awarding compensatory damages in an amount to be proved at trial, but in any event in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction;
B. Awarding punitive damages to the extent permitted by law;
C. Awarding prejudgment interest to the extent permitted by law;
D. Awarding costs and fees of this action, including attorneys' fees, to the extent permitted by law; and
E. Awarding such other and further relief as to this Court may seem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 28, 2020
New York, New York

Respectfully Submitted,

/s/ *Paul J. Hanly, Jr.*
Paul J. Hanly, Jr.
phanly@simmonsfirm.com
Jayne Conroy
jconroy@simmonsfirm.com
Trent B. Miracle
tmiracle@simmonsfirm.com
SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, NY 10016
(212) 784-6401 Telephone
(212) 213-5949 Facsimile

*Attorneys for Plaintiff*

Of counsel:
Mitchell Garabedian
mgarabedian@garabedianlaw.com
William H. Gordon
wgordon@garabedianlaw.com
LAW OFFICES OF MITCHELL GARABEDIAN
100 State Street, 6th Floor
Boston, MA 02109
Phone: (617) 523-6250