**Exhibit 16**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

▮▮▮▮▮▮

*Plaintiff,*

v.

ST. FRANCIS OF ASSISI CHURCH OF ROCHESTER, NEW YORK; BLESSED SACRAMENT CHURCH, a/k/a, BLESSED SACRAMENT ROMAN CATHOLIC CHURCH; and SOUTHEAST ROCHESTER CATHOLIC COMMUNITY,

*Defendants.*

Index No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff ▮▮▮▮▮ by his attorneys Simmons Hanly Conroy LLC and the Law Offices of Mitchell Garabedian, brings this action against St. Francis of Assisi Church of Rochester, New York; Blessed Sacrament Church, also known as Blessed Sacrament Roman Catholic Church; and Southeast Rochester Catholic Community, and alleges, on personal knowledge as to himself and on information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over the Defendants pursuant to CPLR 301 and 302, in that the Defendants reside in New York.

2. This Court has jurisdiction over this action because the amount of damages Plaintiff seeks exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

3. Venue for this action is proper in the County of Monroe pursuant to CPLR 503 in that one or more of the Defendants reside in this County and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this County.

## PARTIES

4. Plaintiff ▮▮▮▮▮ ("Plaintiff") is an individual residing in ▮▮▮

1

5. Defendant St. Francis of Assisi Church of Rochester, New York ("St. Francis") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 77 Whitney Street, Rochester, Monroe County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of St. Francis, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of St. Francis.

6. Defendant Blessed Sacrament Church, also known as Blessed Sacrament Roman Catholic Church ("Blessed Sacrament") was a Roman Catholic parish within and under the authority of the Bishop of Rochester and was apparently a religious corporation organized pursuant to the Religious Corporations Law with its principal office formerly at 259 Rutgers Street, Rochester, Monroe County, New York, and now at 330 Gregory Street, Rochester, Monroe County, New York. At relevant and material times, the Roman Catholic Bishop of Rochester, New York was the President of Blessed Sacrament, and the Roman Catholic Vicar General of Rochester, New York was the Vice-President of Blessed Sacrament.

7. Defendant Southeast Rochester Catholic Community ("Southeast Catholic") is a Roman Catholic parish within and under the authority of the Bishop of Rochester and is apparently a religious corporation organized pursuant to the Religious Corporations Law with its principal office at 330 Gregory Street, Rochester, Monroe County, New York. As a result of a corporate merger, Defendant Southeast Catholic is the legal successor to Defendant Blessed Sacrament.

## FACTS COMMON TO ALL CLAIMS

8. Plaintiff and his family were parishioners of and attended St. Francis when Plaintiff was a minor child. Plaintiff also attended Confraternity of Christian Doctrine ("CCD") classes at St. Francis, and served as an altar boy at St. Francis when Plaintiff was

a minor child.

9. Father Dennis J. Shaw ("Father Shaw") was ordained a Roman Catholic priest in approximately 1974. From approximately 1974 to approximately 1977, Father Shaw served as a priest at Defendant Blessed Sacrament. From approximately 1978 to approximately 1987, Father Shaw served as a priest at Defendant St. Francis, where Plaintiff and Plaintiff's family were parishioners when Plaintiff was a minor child.

10. Prior to Father Shaw being assigned to Defendant St. Francis, Defendant Blessed Sacrament and its executive officers knew or should have known it was not safe to allow Father Shaw to have unsupervised contact with minor children, in that Father Shaw posed a sexual danger to minor children. The Roman Catholic Bishop and Vicar General of Rochester concealed the information about the danger Father Shaw posed to minor children, in order that the Roman Catholic Bishop and Vicar General of Rochester could assign Father Shaw to work at parishes, including St. Francis. Defendant Blessed Sacrament aided and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing the information about the danger Father Shaw posed to minor children.

11. Through his positions at, within, or for Defendant St. Francis, Father Shaw was put in direct contact with members of the Plaintiff's family, including Plaintiff, a minor parishioner of Defendant St. Francis.

12. From approximately 1977 when Plaintiff was approximately nine years of age, to approximately 1985 when Plaintiff was approximately eighteen years of age, Father Shaw would invite Plaintiff to spend nights with Father Shaw at the St. Francis rectory, and Father Shaw would take Plaintiff on trips to various locations within New York State, as well as on a cross-country road trip to California.

13. Father Shaw used such encounters, gained through his position at St. Francis which granted him access to Plaintiff when Plaintiff was approximately nine to approximately eighteen years of age, to sexually assault, sexually abuse, and/or have sexual contact with the Plaintiff on at least one hundred occasions in violation of the laws

3

of the State of New York.

### Defendants' Responsibility for the Abuse Committed by Father Shaw

14. At all times material hereto, Father Shaw was under the management, supervision, employ, direction and/or control of Defendants St. Francis and Blessed Sacrament.

15. Through his positions at, within, or for Defendant St. Francis, Father Shaw was put in direct contact with Plaintiff.

16. Father Shaw used his position at, within, or for Defendant St. Francis and the implicit representations made by Defendant St. Francis about Father Shaw's character that accompanied that position, to gain Plaintiff's trust and confidence and to create an opportunity to be alone with, and to sexually touch, Plaintiff.

17. Defendant St. Francis had the duty to reasonably manage, supervise, control and/or direct priests who served at St. Francis, and specifically, had a duty not to aid pedophiles such as Father Shaw by assigning, maintaining, and/or appointing them to positions with access to minors.

18. Defendant Blessed Sacrament had a duty to reasonably supervise, direct, manage, and control Father Shaw when Father Shaw was assigned to Blessed Sacrament. Defendant Blessed Sacrament had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Shaw posed a danger to minor children when he had contact with such minors, especially when Defendant Blessed Sacrament knew or should have known that Father Shaw posed such a danger and Father Shaw was being transferred to other parishes where he would have unsupervised contact with minors. Defendant Blessed Sacrament assisted, aided, and abetted the Roman Catholic Bishop and Vicar General of Rochester in concealing information showing that Father Shaw posed a danger to minor children from parishes to which Father Shaw was subsequently assigned.

19. As a result of Defendant Blessed Sacrament assisting, aiding, and abetting

the Roman Catholic Bishop and Vicar General of Rochester in concealing information which would have disclosed that Father Shaw posed a danger to minor children, Father Shaw was assigned to St. Francis without any notice to the parishioners of St. Francis about the danger Father Shaw posed to minor children. As a result, Father Shaw had unsupervised access to Plaintiff, a minor child, who Father Shaw sexually abused.

20. Defendants St. Francis and Blessed Sacrament knew and/or reasonably should have known, and/or knowingly condoned, and/or covered up, the inappropriate and unlawful sexual activities of Father Shaw, who sexually abused Plaintiff.

21. Defendant St. Francis had a duty to the Plaintiff to properly supervise St. Francis priests to ensure that priests did not use their positions with St. Francis as a tool for grooming and assaulting vulnerable children. Defendant St. Francis knew or should have known that Father Shaw used his positions with St. Francis to sexually abuse minor children, including the Plaintiff.

### Consequences of the Abuse

22. Plaintiff suffered personal physical and psychological injuries and damages as a result of Father Shaw's actions, as well as other damages related thereto, as a result of the childhood sexual abuse Plaintiff sustained.

23. As a direct result of the Defendants St. Francis' and Blessed Sacrament's conduct described herein, Plaintiff suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, and physical manifestations of emotional distress. Plaintiff was prevented from obtaining the full enjoyment of life; has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling; and has incurred and will continue to incur loss of income and/or loss of earning capacity. As a victim of Father Shaw's sexual abuse, Plaintiff is unable at this time to fully describe all of the details of that abuse and the extent of the harm he suffered as a result.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Negligent Hiring/Retention/Supervision/Direction

24. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 23 as if fully set forth herein.

25. Defendant St. Francis owed a duty of care to all minor persons, including Plaintiff, who were likely to come within the influence or supervision of Father Shaw in his role as priest, counselor, trustee, director, officer, employee, agent, servant and/or volunteer, to insure that Father Shaw did not use his assigned position to injure minors by sexual assault, sexual abuse, or sexual contact in violation of the laws of the State of New York.

26. Defendant St. Francis at all relevant times represented that its facilities were safe places for minors to attend or visit, and that its priests were individuals to whom it was safe to entrust the care of minor children. Defendant St. Francis entered into an express and/or implied duty to provide that when Plaintiff was a minor left in the presence of a priest assigned to, hired by, retained by, directed by, and/or under the supervision of Defendant St. Francis, Plaintiff would be kept reasonably safe and that that priest would not sexually abuse Plaintiff.

27. Father Shaw sexually assaulted, sexually abused, and/or had sexual contact with Plaintiff when Plaintiff was a minor.

28. Defendant St. Francis negligently hired, retained, directed, and supervised Father Shaw, though it knew or should have known that Father Shaw posed a threat of sexual abuse to minors.

29. Defendant St. Francis knew or should have known of Father Shaw's propensity for the conduct which caused Plaintiff's injuries prior to, or at the time of, the injuries' occurrence.

30. Defendant St. Francis was negligent in failing to properly supervise Father

Shaw.

31. The sexual abuse of children by adults, including priests, is a foreseeable result of negligence.

32. At all times material hereto, Defendant St. Francis' actions were willful, wanton, malicious, reckless, negligent and/or outrageous in their disregard for the rights and safety of Plaintiff.

33. As a direct and proximate result, Plaintiff has suffered and will continue to suffer the injuries described herein.

34. By reason of the foregoing, Defendant St. Francis is liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

## Second Cause of Action
### Negligence/Gross Negligence

35. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 23 as if fully set forth herein.

36. Defendants St. Francis and Blessed Sacrament knew, or were negligent in not knowing, that Father Shaw posed a threat of sexual abuse to children.

37. The acts of Father Shaw described hereinabove were undertaken, and/or enabled by, and/or during the course, and/or within the scope of his employment, appointment, assignment, and/or agency with Defendant St. Francis.

38. Defendant St. Francis owed Plaintiff, a minor at the relevant times of abuse, a duty to protect him from Father Shaw's sexual deviancy and the consequential damages, both prior to and/or subsequent to Father Shaw's misconduct.

39. Defendant Blessed Sacrament had a duty not to assist, aid, and abet the Roman Catholic Bishop and Vicar General of Rochester in concealing the danger Father Shaw posed to minor children.

40. Defendants St. Francis' and Blessed Sacrament's willful, wanton, grossly negligent and/or negligent act(s) of commission and/or omission, resulted directly

and/or proximately in the damage set forth herein at length.

41. Defendant St. Francis:
   a. gave improper or ambiguous orders or failed to make proper regulations, and/or employed improper persons or instrumentalities in work involving risk of harm to others;
   b. failed adequately to supervise the activities of Father Shaw;
   c. permitted, and/or intentionally failed and/or neglected to prevent, negligent and/or grossly negligent conduct and/or allowed other tortious conduct by persons, whether or not their servants and/or agents and/or employees, upon premises or with instrumentalities under their control; and
   d. allowed the acts of omission and/or commission and/or any or all of the allegations set forth in this Complaint to occur.

42. At all times material hereto, with regard to the allegations contained herein, Father Shaw was under the supervision, employ, direction and/or control of Defendants St. Francis and Blessed Sacrament.

43. At all times material hereto, Defendants St. Francis' and Blessed Sacrament's actions were willful, wanton, malicious, reckless, negligent and outrageous in their disregard for the rights and safety of Plaintiff, which amounted to conduct equivalent to criminality.

44. As a direct and/or indirect result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

45. Liabilities of Defendant Blessed Sacrament were transferred to, or assumed by, Defendant Southeast Catholic. As a result, Defendant Southeast Catholic is liable to the Plaintiff for the damages caused by Defendant Blessed Sacrament stated in this cause of action.

46. By reason of the foregoing, the Defendants are liable to the Plaintiff, jointly,

severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

### THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty

47. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 23 as if fully set forth herein.

48. There exists a fiduciary relationship of trust, confidence, and reliance between Plaintiff and Defendant St. Francis. This relationship is based on the entrustment of the Plaintiff while he was a minor child to the care and supervision of the agent or servant of the Defendant St. Francis. This entrustment of the Plaintiff to the care and supervision of the Defendant St. Francis, while the Plaintiff was a minor child, required Defendant St. Francis to assume a fiduciary relationship and to act in the best interests of the Plaintiff, as well as to protect him while he was a minor and vulnerable child.

49. Pursuant to their fiduciary relationship, Defendant St. Francis was entrusted with the well-being, care, and safety of Plaintiff.

50. Pursuant to their fiduciary relationship, Defendant St. Francis assumed a duty to act in the best interests of Plaintiff.

51. Defendant St. Francis breached its fiduciary duty to Plaintiff.

52. At all times material hereto, the actions and/or inactions of Defendant St. Francis were willful, wanton, malicious, reckless, negligent and outrageous in their disregard for the rights and safety of Plaintiff.

53. As a direct result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

54. By reason of the foregoing, Defendant St. Francis is liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

## FOURTH CAUSE OF ACTION
## Aiding and Abetting Fraud

55. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 23 as if fully set forth herein.

56. The Roman Catholic Bishop and Vicar General of Rochester fraudulently concealed from the parishioners of St. Francis information that would have shown Father Shaw was a danger to minor children.

57. Defendant Blessed Sacrament had information that would have shown Father Shaw was a danger to minor children. Defendant Blessed Sacrament assisted the Roman Catholic Bishop and Vicar General of Rochester in fraudulently concealing information from the parishioners about the danger Father Shaw posed to parishioners.

58. If the information about the danger Father Shaw posed to minors had not been concealed from parishioners, Father Shaw would not have been assigned to St. Francis where Father Shaw sexually assaulted, sexually abused, and/or had sexual contact with the Plaintiff.

59. To assist Rochester's Roman Catholic Bishop and Vicar General in fraudulently concealing the information about Father Shaw, Defendant Blessed Sacrament failed to disclose Father Shaw's propensity to sexually abuse minors, and intentionally concealed knowledge of Father Shaw's inappropriate and unlawful sexual activities, knowing that minor children, including Plaintiff, in other parishes where Father Shaw was assigned would rely upon this material omission.

60. As a direct and/or indirect result of said conduct, Plaintiff has suffered and will continue to suffer the injuries and damages described herein.

61. Liabilities of Defendant Blessed Sacrament were transferred to, or assumed by, Defendant Southeast Catholic. As a result, Defendant Southeast Catholic is liable to the Plaintiff for the damages caused by Defendant Blessed Sacrament stated in this cause of action.

62. By reason of the foregoing, Defendants Blessed Sacrament and Southeast Catholic are liable to the Plaintiff, jointly, severally and/or in the alternative liable to the Plaintiff for compensatory damages and for punitive damages, together with interest and costs.

WHEREFORE Plaintiff, demands judgment against the Defendants on each cause of action as follows:

A. Awarding compensatory damages in an amount to be proved at trial, but in any event in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction;

B. Awarding punitive damages to the extent permitted by law;

C. Awarding prejudgment interest to the extent permitted by law;

D. Awarding costs and fees of this action, including attorneys' fees, to the extent permitted by law; and

E. Awarding such other and further relief as to this Court may seem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 3, 2020
New York, New York

Respectfully Submitted,

/s/ Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
phanly@simmonsfirm.com
Jayne Conroy
jconroy@simmonsfirm.com
Trent B. Miracle
tmiracle@simmonsfirm.com
SIMMONS HANLY CONROY LLC

112 Madison Avenue
New York, NY 10016
(212) 784-6401 Telephone
(212) 213-5949 Facsimile

*Attorneys for Plaintiff*

Of counsel:
Mitchell Garabedian
mgarabedian@garabedianlaw.com
William H. Gordon
wgordon@garabedianlaw.com
LAW OFFICES OF MITCHELL GARABEDIAN
100 State Street, 6th Floor
Boston, MA 02109
Phone: (617) 523-6250