# **Exhibit 18**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

|  |  |
|---|---|
| AB 371 DOE, | Index No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. |  |
| MOST HOLY REDEEMER; ROMAN CATHOLIC PARISH OF ST. FRANCES XAVIER CABRINI A/K/A ST. FRANCES XAVIER CABRINI; and DOES 1-5 whose identities are unknown to Plaintiff, | **DEMAND FOR JURY TRIAL**[1] |
| Defendants. |  |

Plaintiff, by and through Plaintiff's attorneys, states and alleges as follows:

## PARTIES

1.      At all times material to this Complaint, Plaintiff resided in the State of New York.

2.      Plaintiff brings this action under a pseudonym with leave of Court.

3.      At all times material, Plaintiff was a minor under 18 years of age when the sexual abuse occurred.

4.      This action is brought pursuant to the New York Child Victims Act, CPLR § 214-g.  The conduct at issue constituted sexual offense against a minor in violation of a section within Article 130 and/or § 263.05 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, and resulted in physical, psychological, and emotional injuries. As a civil cause of action was previously time-barred prior to August 14, 2019, the terms of the Child Victims Act, CPLR § 214-g, revive the claims set forth below.

---

[1] Pursuant to §4 of the New York Child Victims Act, Plaintiff is entitled to a trial preference.

5.    Whenever reference is made to any Defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors. In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

6.    At all times material, Defendant Most Holy Redeemer was an organization authorized to conduct business and conducting business in the State of New York, with its principal place of business a 634 Hudson Avenue, Rochester, New York 14621. Most Holy Redeemer includes, but is not limited to, the Most Holy Redeemer corporation and any other organizations and/or entities operating under the same or similar name with the same or similar principal place of business.

7.    At all times material, Most Holy Redeemer was under the direct authority, control, and province of the Diocese of Rochester, New York ("Diocese") and the Bishop of the Diocese. Defendant Most Holy Redeemer included any school affiliated with Most Holy Redeemer. At all times material, Most Holy Redeemer School was under the direct authority, control, and province of Defendant Most Holy Redeemer and the Bishop of the Diocese. At all times material, Defendant Most Holy Redeemer and Diocese owned, operated, managed, maintained, and controlled Most Holy Redeemer School.

8.    At all times material, Defendant Roman Catholic Parish of St. Frances Xavier Cabrini a/k/a St. Frances Xavier Cabrini ("St. Frances Xavier") was and continues to be an organization authorized to conduct business and conducting business in the State of New York, with its principal place of business at 124 Evergreen Street, Rochester, New York 14605. Upon

2

information and belief, Most Holy Redeemer was absorbed into St. Frances Xavier in a de facto

merger or series of de facto mergers. Upon information and belief, St. Frances Xavier continued

the missions and ministry of Most Holy Redeemer, and remained under the direct authority, control

and province of the Diocese and the Bishop of the Diocese after the merger(s). Upon information

and belief, Most Holy Redeemer ceased ordinary business operations as soon as possible after the

transaction(s), and St. Frances Xavier assumed Most Holy Redeemer's liabilities ordinarily

necessary for the uninterrupted continuation of Most Holy Redeemer's operations and business

with a continuity of management, personnel, physical location and general business operation. St.

Frances Xavier includes, but is not limited to, the St. Frances Xavier corporation and any other

organizations and/or entities operating under the same or similar name with the same or similar

principal place of business.

9.      At all times material, St. Frances Xavier has been and continues to be under the

direct authority, control, and province of the Diocese and the Bishop of the Diocese. Defendant St.

Frances Xavier includes any school affiliated with St. Frances Xavier. At all times material, the

school was under the direct authority, control, and province of Defendant St. Frances Xavier and

the Bishop of the Diocese. At all times material, Defendant St. Frances Xavier and Diocese owned,

operated, managed, maintained, and controlled St. Frances Xavier School.

10.     For purposes of this Complaint, Defendants Most Holy Redeemer and St. Frances

Xavier are referred to collectively as "Parish" or "Defendants."

11.     Defendants Does 1 through 5 are unknown agents whose identities will be provided

when they become known pursuant to CPLR § 1024.

## JURISDICTION

12.     This Court has jurisdiction pursuant to CPLR § 301 as Defendants' principal place

3

of business is in New York and because the unlawful conduct complained of herein occurred in New York.

13.     Venue is proper pursuant to CPLR § 503 in that Monroe County is the principal place of business of Defendant St. Frances Xavier. In addition, many of the events giving rise to this action occurred in Monroe County.

## FACTS

14.     At all times material, Fr. Paul R. Schnacky ("Fr. Schnacky") was a Roman Catholic cleric employed by Defendants and the Diocese.  Fr. Schnacky remained under the direct supervision, employ, and control of Defendants and Diocese.

15.     Defendants and Diocese placed Fr. Schnacky in positions where he had access to and worked with children as an integral part of his work.

16.     Defendants held their leaders and agents out as people of high morals, as possessing immense power, teaching families and children to obey these leaders and agents, teaching families and children to respect and revere these leaders and agents, soliciting youth and families to their programs, marketing to youth and families, recruiting youth and families, and holding out the people that worked in the programs as safe.

17.     Plaintiff was raised in a devout Roman Catholic family and attended Most Holy Redeemer in Rochester, in the Diocese of Rochester. Plaintiff and Plaintiff's family came in contact with Fr. Schnacky as an agent and representative of Defendants and Diocese, and at Most Holy Redeemer.

18.     Plaintiff was a student and participated in youth activities and/or church activities at Most Holy Redeemer. Plaintiff, therefore, developed great admiration, trust, reverence, and respect for the Roman Catholic Church, including Defendants and their agents, including Fr.

4

Schnacky.

19.     During and through these activities, Plaintiff, as a minor and vulnerable child, was dependent on Defendants and Fr. Schnacky. Defendants had custody of Plaintiff and accepted the entrustment of Plaintiff and, therefore, had responsibility for Plaintiff and authority over Plaintiff.

20.     From approximately 1972 to 1974, when Plaintiff was approximately 8 to 10 years old, Fr. Schnacky engaged in unpermitted sexual contact with Plaintiff in violation of at least one section of New York Penal Law Article 130 and/or § 263.05, or a predecessor statute that prohibited such conduct at the time of the abuse.

21.     Plaintiff's relationship to Defendants and Fr. Schnacky, as a vulnerable child, Catholic parishioner, student and participant in church activities, was one in which Plaintiff was subject to the ongoing influence of Defendants and Fr. Schnacky.

22.     The culture of the Catholic Church over Plaintiff created pressure on Plaintiff not to report the abuse Plaintiff suffered.

23.     Defendants knew or should have known that Fr. Schnacky was a danger to children before Fr. Schnacky sexually assaulted Plaintiff.

24.     Prior to the sexual abuse of Plaintiff, Defendants learned or should have learned that Fr. Schnacky was not fit to work with children. Defendants, by and through their agents, servants and/or employees, became aware, or should have become aware of Fr. Schnacky's propensity to commit sexual abuse and of the risk to Plaintiff's safety.  At the very least, Defendants knew or should have known that they did not have sufficient information about whether or not their leaders and people working at Catholic institutions within the Diocese were safe.

25.     Defendants knew or should have known that there was a risk of child sexual abuse

5

for children participating in Catholic programs and activities within the Diocese. At the very least, Defendants knew or should have known that they did not have sufficient information about whether or not there was a risk of child sexual abuse for children participating in Catholic programs and activities within the Diocese.

26.    Defendants knew or should have known that Defendants and Diocese had numerous agents who had sexually molested children. Defendants knew or should have known that child molesters have a high rate of recidivism. Defendants knew or should have known that some of the leaders and people working in Catholic institutions within the Diocese were not safe and that there was a specific danger of child sexual abuse for children participating in their youth programs.

27.    Instead, Defendants negligently deemed that Fr. Schnacky was fit to work with children and/or that any previous problems were fixed or cured and/or that Fr. Schnacky would not sexually assault children and/or that Fr. Schnacky would not injure children.

28.    Defendants owed Plaintiff a duty of reasonable care because they had superior knowledge about the risk that Fr. Schnacky posed to Plaintiff, the risk of abuse in general in their programs and/or the risks that their facilities posed to minor children.

29.    Defendants owed a duty to Plaintiff to protect Plaintiff from harm because Defendants' actions created a foreseeable risk of harm to Plaintiff. As a vulnerable child participating in the programs and activities Defendants offered to minors, Plaintiff was a foreseeable victim. As a vulnerable child who Fr. Schnacky had access to through Defendants' facilities and programs, Plaintiff was a foreseeable victim.

30.    Defendants also breached their duties to Plaintiff by actively maintaining and employing Fr. Schnacky in a position of power and authority through which Fr. Schnacky had access to children, including Plaintiff, and power and control over children, including Plaintiff.

6

31.    Each Defendant breached its duties to Plaintiff. Defendants failed to use ordinary care in determining whether their facilities were safe and/or determining whether they had sufficient information to represent their facilities as safe. Defendants' breach of their duties include, but are not limited to: failure to protect Plaintiff from a known danger, failure to have sufficient policies and procedures to prevent child sexual abuse, failure to properly implement policies and procedures to prevent child sexual abuse, failure to take reasonable measures to make sure that policies and procedures to prevent child sexual abuse were working, failure to adequately inform families and children of the risks of child sexual abuse, failure to investigate risks of child sexual abuse, failure to properly train the employees at institutions and programs within Defendants' geographical confines, failure to train parishioners within Defendants' geographical confines about the risk of sexual abuse, failure to have any outside agency test their safety procedures, failure to protect the children in their programs from child sexual abuse, failure to adhere to the applicable standard of care for child safety, failure to investigate the amount and type of information necessary to represent the institutions, programs, leaders and people as safe, failure to train their employees properly to identify signs of child sexual abuse by fellow employees, failure by relying upon mental health professionals, and/or failure by relying on people who claimed that they could treat child molesters.

32.    Defendants also breached their duties to Plaintiff by failing to warn Plaintiff and Plaintiff's family of the risk that Fr. Schnacky posed and the risks of child sexual abuse in Catholic institutions. Defendants also failed to warn them about any of the knowledge that Defendants had about child sexual abuse.

33.    Each Defendant additionally violated a legal duty by failing to report known and/or suspected abuse of children by Fr. Schnacky and/or their other agents to the police and law

enforcement.

34.    Defendants were negligent and/or made representations to Plaintiff and Plaintiff's family during each and every year of Plaintiff's minority.

35.    As a direct result of Defendants' negligence as described herein, Plaintiff has suffered, and will continue to suffer, great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation, physical, personal and psychological injuries.  Plaintiff was prevented, and will continue to be prevented, from performing normal daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for psychological treatment, therapy, and counseling, and, on information and belief has and/or will incur loss of income and/or loss of earning capacity.

### AS AND FOR A FIRST CAUSE OF ACTION:
### NEGLIGENCE

36.    Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

37.    Each Defendant owed Plaintiff a duty of reasonable care to protect Plaintiff from injury.

38.    Each Defendant owed Plaintiff a duty of reasonable care because each Defendant had a special relationship with Plaintiff.

39.    Each Defendant also had a duty arising from its special relationship with Plaintiff, Plaintiff's parents, and other parents of young, vulnerable children, to properly train and supervise its clerics, agents, and employees. The special relationship arose because of the high degree of vulnerability of the children entrusted to Defendants' care. As a result of the high degree of vulnerability and risk of sexual abuse inherent in such a special relationship, Defendants had a

8

INDEX NO. E2021005013

RECEIVED NYSCEF: 06/04/2021

duty to establish measures of protection not necessary for persons who are older or better able to safeguard themselves.

40.     Each Defendant owed Plaintiff a duty to protect Plaintiff from harm because each Defendant had a special relationship with Fr. Schnacky.

41.     Each Defendant owed Plaintiff a duty to control the conduct of Fr. Schnacky because each Defendant had complete ability to control Fr. Schnacky's access to children like Plaintiff to prevent the foreseeable harms associated with childhood sexual abuse, giving rise to a special relationship with Fr. Schnacky and a duty to control Fr. Schnacky's conduct.

42.     Each Defendant owed Plaintiff a duty of reasonable care because each Defendant solicited youth and parents for participation in its youth programs; encouraged youth and parents to have the youth participate in its programs; undertook custody of minor children, including Plaintiff; promoted its facilities and programs as being safe for children; held its agents, including Fr. Schnacky, out as safe to work with children; encouraged parents and children to spend time with its agents; and/or encouraged its agents, including Fr. Schnacky, to spend time with, interact with, and recruit children.

43.     By holding Fr. Schnacky out as safe to work with children, and by undertaking the custody, supervision of, and/or care of the minor Plaintiff, each Defendant entered into a fiduciary relationship with the minor Plaintiff.  As a result of Plaintiff being a minor, and by Defendants undertaking the care and guidance of the then vulnerable minor Plaintiff, each Defendant held a position of empowerment over Plaintiff.

44.     Further, Defendants, by holding themselves out as being able to provide a safe environment for children, solicited and/or accepted this position of empowerment.  Defendants thus entered into a fiduciary relationship with Plaintiff. Defendants exploited their positions of

9

empowerment, putting Plaintiff at risk to be sexually assaulted.

45.     By accepting custody of the minor Plaintiff, Defendants established an *in loco parentis* relationship with Plaintiff and in so doing, owed Plaintiff a duty to protect Plaintiff from injury.

46.     By establishing and/or operating and/or staffing Parish, accepting the minor Plaintiff as a participant in their programs, holding their facilities and programs out to be a safe environment for Plaintiff, accepting custody of the minor Plaintiff *in loco parentis*, and by establishing a fiduciary relationship with Plaintiff, each Defendant entered into an express and/or implied duty to properly supervise Plaintiff and provide a reasonably safe environment for children, who participated in its programs. Defendants also owed Plaintiff a duty to properly supervise Plaintiff to prevent harm from foreseeable dangers. Defendants had the duty to exercise the same degree of care over young parishioners under their control as a reasonably prudent person would have exercised under similar circumstances.

47.     By establishing and/or operating and/or staffing Parish, which offered educational programs to children and which included a school, and by accepting the enrollment and participation of the minor Plaintiff as a participant in those educational programs, Defendants owed Plaintiff a duty to properly supervise Plaintiff to prevent harm from generally foreseeable dangers.

48.     Each Defendant owed Plaintiff a duty to protect Plaintiff from harm because each Defendant invited Plaintiff onto its property and Fr. Schnacky posed a dangerous condition on each Defendant's property.

49.     Each Defendant breached its duties to Plaintiff by failing to use reasonable care. Each Defendant's failures include, but are not limited to, failing to properly supervise Fr.

10

Schnacky, failing to properly supervise Plaintiff and failing to protect Plaintiff from a known danger.

50.     As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## AS AND FOR A SECOND CAUSE OF ACTION: NEGLIGENT TRAINING AND SUPERVISION OF EMPLOYEES

51.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

52.     At all times material, Fr. Schnacky was employed by Defendants and was under each Defendant's direct supervision, employ, and control when he committed the wrongful acts alleged herein. Fr. Schnacky engaged in the wrongful conduct while acting in the course and scope of his employment with Defendants and/or accomplished the sexual abuse by virtue of his job-created authority.

53.     Defendants had a duty, arising from their employment of Fr. Schnacky, to ensure that Fr. Schnacky did not sexually molest children.

54.     Further, Defendants owed a duty to train and educate employees and administrators and establish adequate and effective policies and procedures calculated to detect, prevent, and address inappropriate behavior and conduct between clerics and agents and children.

55.     The abuse complained of herein occurred on Defendants' property and/or with the use of its chattels.

56.     Defendants were negligent in the training, supervision, and instruction of their employees. Defendants failed to timely and properly educate, train, supervise, and/or monitor their agents or employees with regard to policies and procedures that should be followed when sexual abuse of a child is suspected or observed.

11

57.      Defendants were additionally negligent in failing to supervise, monitor, chaperone, and/or investigate Fr. Schnacky and/or in failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Fr. Schnacky's sexual abuse of Plaintiff.

58.      In failing to properly supervise Fr. Schnacky, and in failing to establish such training procedures for employees and administrators, Defendants failed to exercise the care that a reasonably prudent person would have exercised under similar circumstances.

59.      As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### AS AND FOR A THIRD CAUSE OF ACTION:
### NEGLIGENT RETENTION OF EMPLOYEES

60.      Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth under this count.

61.      Defendants became aware or should have become aware of Fr. Schnacky's propensity for child sexual abuse, and failed to take any further action to remedy the problem and failed to investigate or remove Fr. Schnacky from working with children.

62.      Defendants negligently and/or recklessly retained Fr. Schnacky with knowledge of Fr. Schnacky's propensity for the type of behavior which resulted in Plaintiff's injuries in this action.

63.      Defendants negligently and/or recklessly retained Fr. Schnacky in a position where Fr. Schnacky had access to children and could foreseeably cause harm which Plaintiff would not have been subjected to had Defendants acted reasonably.

64.      In failing to timely remove Fr. Schnacky from working with children or terminate the employment of Fr. Schnacky, Defendants negligently and/or recklessly failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

12

65.    As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing causes of action, Plaintiff prays for judgment against Defendants in an amount that will fully and fairly compensate Plaintiff for Plaintiff's injuries and damages and for any other relief the Court deems appropriate. The amount of damages sought in this Complaint exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable. Pursuant to §4 of the New York Child Victims Act, Plaintiff is entitled to a trial preference.

Dated:  June 4, 2021

Jeffrey R. Anderson
Michael G. Finnegan
**JEFF ANDERSON & ASSOCIATES, P.A.**
55 West 39th Street, 11th Floor
New York, NY 10018
Telephone: (646) 759-2551
jeff@andersonadvocates.com
mike@andersonadvocates.com

Stephen Boyd, Esq.
**STEVE BOYD, PC**
40 North Forest Road
Williamsville, NY 14221
Telephone: (716) 400-0000
Sboyd@steveboyd.com

*Counsel for Plaintiff*

13