UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:  ) Chapter 11 Case
 )
THE DIOCESE OF ROCHESTER,  ) Case No. 19-20905
 )
Debtor.  )

**OBJECTION TO THE FIRST INTERIM APPLICATION FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES BY THE CLARO GROUP, LLC**

The Diocese of Rochester (the "Diocese"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the First Interim Application for Allowance of Compensation and Reimbursement of Expenses by The Claro Group, LLC ("Claro") [Docket No. 1382] (the "Claro Fee Application"). In support of this Objection, the Diocese respectfully states as follows:

**BACKGROUND**

1. On September 12, 2019 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.*, the "Bankruptcy Code") with the United States Bankruptcy Court for the Western District of New York (the "Court"), commencing the Diocese's chapter 11 case (this "Chapter 11 Case"). The Diocese continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On September 26, 2019, the Office of the United States Trustee (the "UST") filed notice of the appointment of an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee"). No other official committees have been appointed or designated and, as of the date of this Application, no trustee or examiner has been appointed in this Chapter 11 Case.

3. Information regarding the Diocese's history, business operations, operational structure, facts supporting this Motion and the events leading up to the chapter 11 case can be found in the *Affidavit of Daniel J. Condon in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 7] and the *Affidavit of Lisa M. Passero in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 6], each of which was filed on the Petition Date and is incorporated herein by reference.

4. On December 5, 2019, this Court entered its *Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Members of Official Committees* [Docket No. 318] (the "<u>Interim Compensation Order</u>").[1] Pursuant to the Interim Compensation Order, retained professionals are encouraged to submit Monthly Fee Statements (as defined therein), and upon the expiration of the applicable objection period, the Interim Compensation Order authorizes the Diocese to pay professionals 80% of their undisputed fees and 100% of their undisputed expenses, as forth in each Monthly Fee Statement. As set forth in the Diocese's motion seeking to establish interim compensation procedures, the monthly billing and payment process contemplated by the Interim Compensation Order was designed to "enable the Debtor to closely monitor costs of administration, maintain appropriate cash flow, and implement efficient cash management procedures" as well as to "allow the Court and key parties in interest to insure the reasonableness and necessity of the compensation and reimbursement sought" by professionals retained in this Chapter 11 Case. *See* Docket No. 109 at ¶ 15.

5. On June 24, 2021, the Committee filed the *Application for Entry of an Order Under 11 U.S.C. §§ 1103(a) and 328(a) and FED. R. BANKR. P. 2014(a) Authorizing Retention of The Claro Group, LLC as Valuation Expert Effective as of as of June 16, 2021 and Providing*

---

[1] On May 12, 2020, the Court entered an order supplementing the Interim Compensation Order [Docket No. 545].

*The Claro Group, LLC with Access to the Sexual Abuse Proofs of Claim* [Docket No. 1119] (the "Claro Retention Application").

6. The stated reason given by the Committee for retaining Claro was its perceived need for the services of "a valuation expert in order to effectively respond to the Debtor's *Motion for Entry of an Order Approving Settlement Agreement with Certain Underwriters at Lloyd's, London, Certain London Market Companies, Interstate Fire & Casualty Company and National Surety Corporation* (the "9019 Motion")." Claro Retention Application, ¶ 1. The Claro Retention Application contemplated that Claro would provide services as follows:

    a.    Expert consulting services and expert testimony regarding the appropriate value of claims of sexual abuse victims in this Case;

    b.    Expert consulting services and expert testimony in connection with the 9019 Motion and any contested matters and/or litigation arising in this Case as reasonably requested by the Committee, including without limitation any additional settlements with insurers and any plan of reorganization proposed without Committee consent in this Case;

    c.    Expert consulting services and expert testimony in the review and evaluation of reports prepared by the Debtor, its professionals, the Debtor's insurers, and their professionals;

    d.    As may be requested by the Committee, assisting with the preparation of affidavits/declarations, depositions, and briefing in this Case concerning the issues for which Claro is providing expert consulting services and expert testimony;

    e.    Preparing for and providing both deposition and court testimony in this Case regarding the issues for which Claro is providing expert consulting services and expert testimony; and

    f.    Such other consulting and advisory services as may be requested by the Committee.

(the "Scope of Services"). Claro Retention Application, ¶ 10.

7. On July 12, 2021, the Court entered the *Order Authorizing and Approving the Employment of The Claro Group, LLC as Valuation Expert to the Unsecured Committee of*

3
13610435.5
Case 2-19-20905-PRW, Doc 1391, Filed 01/24/22, Entered 01/24/22 13:27:15, Description: Main Document , Page 3 of 10

*Unsecured Creditors* [Docket No. 1217] (the "Claro Retention Order"), authorizing the Committee to employ Claro *nunc pro tunc* to June 16, 2021.

8. On January 3, 2022, Claro filed the Claro Fee Application in which it requests compensation for services rendered from June 16, 2021 through September 30, 2021 (the "First Compensation Period"). Pursuant to the Claro Fee Application, Claro professionals expended 783.5 hours during the First Compensation Period, for which Claro is now seeking compensation in the amount of $258,006.50.

**Objection**

9. For reasons unknown to the Diocese and not addressed in the Claro Fee Application, Claro has not filed any Monthly Fee Statements as was contemplated by the Interim Compensation Order. Instead, nearly seven months after Claro commenced its work on behalf of the Committee, and more than three months following the end of the First Compensation Period, Claro filed the Claro Fee Application seeking payment of over a quarter million dollars.[2]

10. At the outset, the Diocese notes that on July 9, 2021, the Court made an oral ruling denying the Diocese's 9019 motion. No further requests to approve any insurance settlements have been presented to the Court. Accordingly, Claro has not been called upon to perform the specific services which were proffered by the Committee as justifying the need to retain Claro: providing expert consulting services and expert testimony in support of the Committee's objections to insurance settlements it opposes.

---

[2] The Diocese notes that the Committee's bankruptcy counsel, Pachulski Stang Ziehl & Jones ("Pachulski"), has similarly not filed Monthly Fee Statements since October 2020, and has only filed interim fee applications covering services through May 31, 2021. This delay in billing practices, which the Interim Compensation Order specifically sought to avoid, has made it difficult for the Diocese to predict its cash needs and to ascertain in a timely manner whether the services being performed and billed to the Diocese are reasonable and necessary or whether they may be duplicative of efforts by other professionals or otherwise objectionable. If Claro had provided its invoices in a more contemporaneous fashion, the Diocese would have had an opportunity to address the concerns raised herein regarding the character and scope of Claro's work much earlier in the process, before significant fees were generated, possibly avoiding the need for this Objection.

11. A significant portion of the fees requested by Claro appear to relate to review of proofs of claim, preparation of a claims matrix, and research of comparable matters. The Diocese has concerns that some of these activities go beyond the specialized expert consulting function set forth in Claro's authorized Scope of Services, if they can be characterized as expert services at all. Moreover, the Claro Fee Application does not indicate whether Claro has completed these tasks or made any progress toward forming an expert opinion on the appropriate valuation of claims asserted against the Diocese. Without this information, the Court, the Diocese, and other parties in interest, are left to speculate as to the benefit conferred by Claro during the First Compensation Period, and whether Claro will be requesting significant additional fees in subsequent fee applications.

12. Section 330(a)(1) of the Bankruptcy Code provides that "[a]fter notice to the parties in interest and the United States Trustee and a hearing, (a)(1) the court may award to a . . . a professional person employed under section 327 or 1103 – (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by such person." 11 U.S.C. § 330(a)(1).

13. The Diocese has filed this Objection because: (i) the Claro Fee Application provides little insight into the reasonableness and necessity of the services rendered by Claro, nor does it explain the "expert" nature of Claro's services and how such work differs from the claims analysis and valuation efforts already undertaken by other committee professionals and the actively engaged state court counsel who represent Committee members in their individual capacities; (ii) it is unclear whether the 783.5 hours and $258,006.50 in fees sought in the Claro Fee Application represent the bulk of services to be performed by Claro or whether they are continuing to incur fees at a similar rate; and (iii) the Diocese has not been provided with any

5

13610435.5
Case 2-19-20905-PRW, Doc 1391, Filed 01/24/22, Entered 01/24/22 13:27:15, Description: Main Document , Page 5 of 10

claim valuation report or other work product arising from Claro's efforts, and it is therefore difficult, if not impossible, to analyze whether any benefit to the estate has been conferred in terms of facilitating and instructing settlement discussions.

14. Accordingly, the Diocese respectfully submits that the Court should only authorize compensation to Claro for those services that were clearly reasonable, necessary, within the Scope of Services, and beneficial to the Diocese's estate. The Diocese objects to the payment of any compensation to Claro to the extent its services are duplicative of other Committee professionals, outside the Scope of Services, and/or are otherwise not in the nature of expert services.

### *Research of Comparable Matters*

15. According to the Claro Fee Application, Claro spent 192.70 hours and incurred $65,462.00 in fees for researching "Comparable Matters." In support of this project category, Claro states that it "performed research to identify and get claim background and context for both verdicts and settlements that may be considered comparable for the sexual abuse claims filed in this case. Claro Fee Application, ¶ 21. In addition, Claro reviewed the potentially comparable matters to extract relevant attributes for data analysis, and performed analysis on resulting data points to observe trends in the data." *See id*.

16. Time entries under this category of services are concerning for several reasons. First, Claro was retained by the Committee as an expert in the area of claim valuation. The Claro Retention Application asserted that Katie McNally, a Managing Director at Claro, "has a deep understanding of the factors that drive settlement outcomes for sexual abuse claims specifically, *including the nature of allegations, verdicts and settlements in potentially comparable matters*, and availability and strength of legal defenses to such claims." *See* Claro Retention Application,

6

13610435.5
Case 2-19-20905-PRW, Doc 1391, Filed 01/24/22, Entered 01/24/22 13:27:15, Description: Main Document, Page 6 of 10

¶ 15 (emphasis added). Claro does not provide any detail in its fee application that would indicate the research conducted to date involved any specialized expertise, nor does it explain why such research was necessary given Claro's purported specialized knowledge. Furthermore, the bar date in this Chapter 11 Case was August 13, 2020, and mediation had been ongoing for several months prior to Claro's retention. It is difficult to believe that Committee counsel and individual state court counsel participated in mediation without first having performed a review of claims and research into comparable matters similar to what Claro now seeks to charge the Diocese for. The Diocese respectfully submits that Claro should leverage the expertise it was retained to provide, not deplete estate resources 'getting up to speed' on comparable matters.

17. As a general matter, time spent researching "basic principles" is not compensable under the Bankruptcy Code. *In re Fibermark, Inc.*, 349 B.R. 385, 397 (Bankr. D. Vt. 2006). In this context, analyzing what a basic principle is "will focus largely upon the role of the professional and the professional's representations during the retention process." *See id.* (reasoning that "an accounting firm holding itself out as an expert in the fields of accounting and taxation, with an expertise on SEC reporting standards for publicly traded companies in chapter 11, will not be compensated for time spent researching 'bankruptcy issues and reporting,' since the Court's approval of that professional's retention and hourly rate was premised upon a reputed high level of expertise"). Just as in *Fibermark*, Claro is seeking compensation for time spent researching matters for which it held itself out to be an expert—settlement outcomes for sexual abuse claims.

18. The Diocese respectfully objects to the allowance of compensation to Claro for review of comparable matters and submits that Claro's review of comparable matters is outside the Scope of Services and falls short of expert services generally. This conclusion is reinforced

7

13610435.5
Case 2-19-20905-PRW, Doc 1391, Filed 01/24/22, Entered 01/24/22 13:27:15, Description: Main Document , Page 7 of 10

by the fact that a substantial portion of the comparable matter review was conducted prior to Claro receiving access to the proofs of claim in this case. The Diocese respectfully submits that any such review must therefore have been basic background research, as an understanding of the unique claims asserted against the Diocese is a prerequisite to even identifying comparable matters, let alone developing any kind of expert opinion as to the relevance of those matters to the valuation of claims in this case.

19. Moreover, the actual time dedicated to Claro's comparable matter review, and the fees associated therewith, appear to be significantly understated, as Claro inconsistently applied its task codes throughout its invoices. Upon a cursory review of the billing records, at least 90.85 hours were spent, and $28,374.75 in fees were incurred, conducting comparable matter research but was billed under the "Valuation Analysis" task code.[3] The Diocese respectfully submits that billing nearly $100,000 researching comparable matters is excessive, especially where Claro is supposedly an expert in such matters.

20. The Diocese also observes that at least some portion of Claro's comparable matter research appears likely to be a duplication of efforts. Claro's billing records indicate that Claro professionals spent time reviewing a settlement chart provided by counsel to the Committee. *See* Claro Fee Application, Exhibit A, pg. 6. Moreover, the necessity of such research is questionable as there are many preexisting resources available that compile average settlements in prior diocesan bankruptcies. *See e.g.*, Marie T. Reilly, *Catholic Dioceses in Bankruptcy*, Appendix B: Outcome of Cases, 49 Seton Hall L. Rev. 871 (2019). Further, in the Claro Retention Application, it was represented to the Court that Claro:

---

[3] The Diocese believes that in addition to this amount, approximately $10,000 in additional fees were incurred conducting comparable matter research or phone conferences discussing comparable matter research but billed under different task codes.

has assisted several major universities, including Michigan State University in connection with the Dr. Larry Nassar molestation/abuse claims, as the retained valuation consultants. In this role, Claro developed individual claim values for each claimant and assisted in the settlement of the Nassar claims and hundreds of sexual abuse claims against other defendants.

Claro Retention Application, ¶ 5. Given this assertion, the Diocese is concerned that it is being billed for work that was simply a repeat of work previously done in other cases which should have required only minimal additional research.

### *Claim File Review*

21. Claro dedicated 366.20 hours and incurred $109,850.00 conducting Claim File Review, which includes analyzing proofs of claim filed in the Chapter 11 Case and "extract[ing] information relevant to the valuation of such claims." *See* Claro Fee Application, ¶ 19. The explanation of this category of services is so broad that it is difficult to ascertain the reasonableness and necessity of these services. However, to the extent Claro professionals were merely extracting and entering data into a spreadsheet, the amount of time and money incurred (approximately three-quarters of an hour per claim) seems excessive, especially when this Claim File Review category also includes significant time devoted to "the quality control of extracted data to ensure the consistency of attribute tracking and categorization among claimants." *See id.* The Diocese submits that the amount of time attributed to quality control suggests that Claro's data extraction efforts were either sloppy, or not done correctly the first time. Further, merely entering information gleaned from proofs of claim into a spreadsheet is a task that borders on ministerial, and which does not justify paying expert rates.

### *Valuation Analysis*

22. Claro dedicated a considerable amount of time developing a valuation model based in part upon a claim scoring matrix that separates claims based on severity of allegations.

Claro Fee Application, ¶ 20. The Diocese respectfully submits that, to the extent Claro is merely compiling data from proofs of claim and comparable matters and applying it to a scoring matrix, it is not employing any special expertise. Further, the Diocese's insurance counsel has already prepared a matrix identifying on a claim-by-claim basis the severity of abuse, as well as the number of occurrences alleged. This matrix was shared with all parties in interest who requested it, including the Committee, prior to Claro's retention. Where similar work product already exists, it is difficult to justify charging the Diocese's estate for duplicative efforts.

**WHEREFORE**, the Diocese respectfully requests that the Court issue an Order: (i) sustaining the Diocese's objection to the Claro Fee Application, reducing any award of compensation to Claro; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: January 24, 2022                              BOND, SCHOENECK & KING, PLLC

By: /s/          Grayson T. Walter
Stephen A. Donato
Charles J. Sullivan
Grayson T. Walter
One Lincoln Center
Syracuse, NY 13202-1355
Telephone: (315) 218-8000
Email:  sdonato@bsk.com
        csullivan@bsk.com
        gwalter@bsk.com

*Attorneys for The Diocese of Rochester*