# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In Re:                                                   Case No.: 2-19-20905-PRW

The Diocese of Rochester,                                Chapter 11

                Debtor.

-------------------------------------------------------------------X

## THE ALLIANZ INSURERS' BRIEF IN SUPPORT OF THE DEBTOR'S MOTION TO APPROVE PROPOSED INSURANCE SETTLEMENTS TO FUND SURVIVOR COMPENSATION TRUST

Interstate Fire and Casualty Company ("Interstate") and National Surety Corporation ("NSC") (collectively, the "Allianz Insurers"), by and through their undersigned counsel, hereby submit this brief in support of the *Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* [Dkt. No. 1538] (the "Motion") filed in the above-captioned chapter 11 case (the "Chapter 11 Case") by the Roman Catholic Diocese of Rochester, New York (the "DOR" or the "Debtor") for, among other things, entry of an Order approving the Settlement Agreement, Release, and Policy Buyback attached as Exhibit C to the Motion (the "Allianz Agreement") with the Allianz Insurers.

## PRELIMINARY STATEMENT

Last July, the Court encouraged all parties to "wipe the slate clean and participate in the mediation with fresh eyes, fresh attitudes, and minds open to and intent on reaching a global resolution that will form the basis of a consensual chapter 11 plan." Hr'g Tr. 65:22–25, *The Diocese of Rochester v. The Continental Insurance Company*, *et al.*, Case No. 19-02021 (Bankr. W.D.N.Y. July 9, 2021) [Adv. Dkt. No. 168]. The DOR Entities[1] and the Settling Insurers heeded

---

[1]  Capitalized terms used but not defined herein have the definitions ascribed to such terms in the Motion.

the Court's advice, having now reached a comprehensive resolution (together with the Allianz Agreement, collectively, the "Settlement Agreements") that, among other things, will provide an aggregate of $147.75 ***million*** in funding for satisfaction of Survivor Claims. The Allianz Insurers alone will contribute $26 million to the total fund if the Allianz Agreement is approved.

And it should be. The Allianz Agreement is fair, equitable, and in the best interests of the Debtor's estate. Not only will the Allianz Agreement provide for a substantial – and certain – payment, but it also will resolve time-consuming and value-destructive coverage litigation, leaving the Debtor free to focus on its stated objective of compensating abuse victims fairly and equitably. But the Motion – which the Allianz Insurers firmly support – sets forth the many, compelling reasons justifying approval of the Allianz Agreement (and other Settlement Agreements), and the Allianz Insurers do not seek to retread that ground here. Instead, the Allianz Insurers submit this brief to furnish the Court with additional context in further support of (i) the Debtor's request for approval of the Allianz Agreement under Bankruptcy Rule 9019(a) and (ii) the "free and clear" sale of the Allianz Policies (defined below) to the Allianz Insurers pursuant to Section 363(f) of the Bankruptcy Code.

For the reasons set forth in the Motion, and as discussed in greater detail below, the Motion should be granted and the Allianz Agreement approved.

## BACKGROUND

***General***

On September 12, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for Western District of New York (the "Court"), commencing the Chapter 11 Case.

2

This Chapter 11 Case primarily is a means to address Survivor Claims brought against the Debtor and/or one or more non-debtor DOR Entities following passage of the CVA. *See* Motion at ¶ 23. *See also Affidavit of Lisa M. Passero Regarding the Debtor's Assets and Operations in Support of the Chapter 11 Petition and First Day Pleadings* [Dkt. No. 6] at ¶ 23 ("The [Debtor] has commenced this Chapter 11 [C]ase in order to . . . provide an orderly claims administration process that will ensure a more equitable distribution of funds to creditors, including victims of sexual abuse.")

The Debtor's ability to satisfy these Survivor Claims – and successfully exit chapter 11 – depends in part on the "scope and extent of [insurance] coverage available." *Motion for Entry of an Order Referring this Adversary Proceeding to Mediation* [Adv. Dkt. No. 10] at ¶ 10. *See also id*. ("The issues . . . with respect to the Debtor's rights to insurance coverage under the [p]olicies will play a considerable role in determining the pool of assets that will be available to satisfy claims against the Debtor and the resolution of such issues will have a substantial impact upon the Debtor's ability to successfully reorganize.").

### *The Allianz Policies*

The Allianz Insurers sold to the Debtor insurance policies (summarized below) with policy periods that, altogether, began September 1, 1978, and ended July 1, 1986. *Declaration of Siobhain P. Minarovich in Support of the Debtor's Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* (the "Minarovich Decl.") at ¶ 3. During that time, the Debtor's insurance program as it relates to the Allianz Insurers was constructed as follows:

(a)     The Debtor first had a $75,000 per-occurrence self-insured retention ("SIR"). Motion at ¶ 19. *See also Declaration of Martin Futter in Support of Debtor's Motion to Approve*

*Proposed Insurance Settlements to Fund Survivor Compensation Trust* (the "<u>Futter Decl.</u>") at ¶ 6.

      (b)     For first-level indemnity coverage in excess of the SIR during that period, certain London Market Companies ("<u>LMI</u>") subscribed to policies (the "<u>LMI Policies</u>") providing to the Debtor coverage with limits of $125,000 per-occurrence (the "<u>LMI Amount</u>"). *See id*. *See also* Motion at ¶¶ 18–19.

      (c)     Interstate then provided to the Debtor second-level excess indemnity coverage. That is, the Interstate Policies (defined and described below)[2] were in excess of both (i) the SIR and (ii) the LMI Amount, in that order. *See* **<u>Exhibit 1</u>** to Minarovich Decl. And as second-level coverage, the Interstate Policies typically "followed form" to – incorporated most terms, conditions, and definitions of – the LMI Policies. *Id*. *See also* Motion at ¶ 26.

     The "<u>Interstate Policies</u>" consisted of: [3]

     (1) second-level excess indemnity coverage with limits of $4.8 million per occurrence for the policy period beginning September 1, 1978, and ending July 1, 1985; and

     (2) second-level excess indemnity coverage of $800,000 per-occurrence for the policy period beginning July 1, 1985 and ending July 1, 1986. This policy contained two exclusions specifically precluding coverage for any claims arising out of sexual abuse or molestation.

*See* **<u>Exhibit 1</u>** to Minarovich Decl. *See also* Motion at ¶¶ 23–24 and 34.

     None of the Allianz Policies provide for a duty to defend. *See* **<u>Exhibits 1</u>** and **<u>2</u>** to Minarovich Decl. Under the Allianz Policies, in other words, the Debtor remains obligated to

---

[2] This summary is for convenience only and is qualified in its entirety by the terms and conditions of the Interstate Policies. The Interstate policy documents are attached as **<u>Exhibit 1</u>** to the Minarovich Decl.

[3] The Debtor states that "Interstate . . . provided insurance in excess of the LMI excess policies" from July 1983 to 1986. Motion at ¶ 21. This is incorrect. ***NSC*** allegedly provided a fourth layer of excess liability indemnity coverage from July 1, 1983, to July 1, 1984, and July 1, 1984, to July 1, 1985, each in excess of $10 million per occurrence in underlying coverage (the "<u>NSC Policies</u>"). The NSC policy documents are attached as **<u>Exhibit 2</u>** to the Minarovich Decl. The NSC Policies and Interstate Policies are collectively referred to as the "<u>Allianz Policies</u>."

handle claims and defend against lawsuits, and the Allianz Insurers' responsibilities are limited to indemnification for the amount of loss within their respective limits of liability.[4] *Id.*

Even then, the Debtor must satisfy certain terms and conditions to coverage, including, but not limited to: (a) the Debtor must have provided timely notice of the occurrence and claim; (b) the Debtor was legally liable for the claim; (c) the amount of loss (including defense expenses) reached the level of the applicable Allianz Policy; and (d) no other condition(s) to coverage or exclusion(s) applied. *Id*.

***Claims, Coverage Action, and Coverage Issues***

The Debtor has alleged that 152 POCs – including 12 POCs filed tardily – implicate the Interstate Policies (the "Alleged Allianz Claims"). Motion at ¶ 25.

On November 14, 2019, the Debtor initiated the Coverage Action against certain of its insurers (including the Allianz Insurers), seeking a declaration of coverage for the Survivor Claims underlying the POCs. *See generally, Complaint* [Adv. Dkt. No. 1]. *See also* Motion at ¶ 27. The Court thereafter directed the parties to mediate the Coverage Action with the Honorable Gregg W. Zive, United States Bankruptcy Judge. *See* [Adv. Dkt. No. 39].

Mediation has been constructive. But it also has highlighted coverage challenges the Debtor faces. *See* Motion at ¶¶ 30–37.

With respect to the Allianz Policies and Alleged Allianz Claims, for example, many of the Alleged Allianz Claims for which the Debtor is seeking coverage fail to satisfy the predicate conditions, including, but not limited to, Alleged Allianz Claims that:

(a) allege abuse partially during years when the Allianz Policies were not in effect;

(b) allege abuse either entirely outside of the coverage periods for the Allianz Policies or

---

[4] The Allianz Insurers have the right to associate in the defense of any claims, suits or proceedings.

entirely during the period when the Allianz Policies contained a sexual abuse exclusion (*i.e.*, July 1, 1985 to July 1, 1986);

(c) allege abuse when the claimant was 18 years old or older, and/or involve claimants who turned 18 years old prior to inception of the Allianz Policies;

(d) allege abuse by perpetrator(s) reported to the Debtor before inception of the Allianz Policies;

(e) involve abuse by a non-diocesan cleric/employee as to whom the Debtor has disavowed any responsibility;

(f) were tendered to the applicable Allianz Insurer an unreasonable amount of time after the Debtor learned of the alleged abuse; and/or

(g) may involve multiple acts of abuse and/or multiple perpetrators and therefore multiple occurrences implicating multiple SIRs and underlying limits.

*See generally*, *Memorandum of Law in Support of Joinder by Interstate Fire & Casualty Company to Debtor's Motion for Entry of an Order Approving Settlement Agreement* [Dkt. No. 1148] ("Interstate MOL") at § III. Moreover, at least 12 Alleged Allianz Claims were filed after the bar date established in this Chapter 11 Case. *See* Motion at ¶ 25.

These (and similar) issues underlying many of the Alleged Allianz Claims raise serious questions as to liability and/or coverage, which could reduce – or even eliminate – the Allianz Insurers' potential exposure for the Alleged Allianz Claims. *See id.* at ¶¶ 26 and 32–34. *See also* Interstate MOL at § III.

***First Settlement Agreement***

Nonetheless, the parties' ongoing efforts in mediation with Judge Zive eventually produced a settlement agreement, subject to the Court's approval, among the DOR Entities, LMI, and the

6

Allianz Insurers (the "First Agreement"). *See* [Adv. Dkt. No. 99]. The First Agreement provided for, among other things: (a) the settlement of all claims in the Coverage Action amongst the parties to the First Agreement; (b) LMI's and the Allianz Insurers' free and clear buyback of their respective insurance policies in exchange for an aggregate payment of $35 million to the Debtor's estate – $20 million of which the Allianz Insurers would fund; and (b) the release of LMI and the Allianz Insurers by all interested entities. *See generally*, *id*.

On May 27, 2021, the Debtor sought the Court's approval of the First Agreement under Bankruptcy Code Sections 105(a) and 363(b) and Bankruptcy Rule 9019(a). *See id*.

The Court entered an order denying the Debtor's request on July 12, 2021, finding that the Debtor failed to prove that the First Agreement satisfied the applicable standards under Bankruptcy Rule 9019 and Bankruptcy Code Section 363(b). *See* [Adv. Dkt. No. 153]. The Court then directed a return to mediation with Judge Zive, admonishing the parties to attend "with fresh eyes and attitudes intent on reaching a global settlement." *Id*.

In the following months, the DOR Entities and Settling Insurers reached a larger, more comprehensive resolution: the Settlements Agreements now before the Court. *See generally*, Motion.

***Settlement Agreements & Motion***

The Settlement Agreements share the same conceptual framework as the First Agreement but are significantly more global. They now include one additional insurer – CNA – along with an aggregate payment amount from the Settling Insurers of $107.25 million. *See id*. at ¶ 6. And with respect to the Allianz Insurers specifically, the Allianz Agreement provides for a payment of $26 million – a 30% increase from the First Agreement. *Id*.

In exchange for this $26 million payment, and subject to certain conditions post-close, the Allianz Agreement contemplates: (a) the Allianz Insurers' repurchase of the Allianz Policies from the Debtor, free and clear of all claims and interests; (b) an exchange of mutual releases among the parties to the Allianz Agreement; and (c) dismissal of the Coverage Action. *See generally*, Allianz Agreement.

On May 20, 2022, the Debtor filed the Motion seeking approval of the Settlement Agreements pursuant to Bankruptcy Code Sections 105 and 363 and Bankruptcy Rule 9019(a). As the Debtor acknowledges, the Settlement Agreements (including the Allianz Agreement) will – if approved – bring at least the following two, interrelated benefits to the estate: (a) a resolution of the Coverage Action, which is complex, time-consuming, and the cause of substantial uncertainty for the estate; and (b) a significant, and certain, source of funding for the compensation of abuse victims. *See* Motion at ¶¶ 52–54.

## ARGUMENT AND CITATION TO AUTHORITY

I. **THE ALLIANZ AGREEMENT IS FAIR AND EQUITABLE AND SHOULD BE APPROVED PURSUANT TO BANKRUPTCY RULE 9019(a).**

Bankruptcy Rule 9019(a) governs the approval of proposed settlements, providing that a court "may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). The decision to grant or deny a settlement thus lies within the discretion of the bankruptcy court; however, "This discretion should be exercised in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). When evaluating a settlement under Bankruptcy Rule 9019, courts in the Second Circuit "ask[] whether the settlement is 'fair and equitable,'" considering the factors outlined in *Iridium*. *Nuevo Pueblo, LLC v. Napolitano (Nuevo Pueblo, LLC)*, 608 Fed. Appx. 40, 41 (2d Cir. 2015) (quoting *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007)).

8

*See also id.* (listing the factors). The "most important factor to be considered in assessing a proposed settlement," however, is "[t]he balance between the likelihood and benefits of a successful outcome in litigation and the benefit of the proposed settlement." *O'Connell v. Packles (In re Hilsen)*, 404 B.R. 58, 71 (Bankr. E.D.N.Y. 2009).

But the court "should not conduct a 'mini-trial' on the merits" when evaluating a settlement. *In re Schneider*, 2015 U.S. Dist. LEXIS 38707, *13 (E.D.N.Y. March 26, 2015). Nor is it the court's "task to determine whether the settlement . . . is the best possible, or fairest, or most appropriate resolution of the dispute." *In re Soup Kitchen Int'l Inc.*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014) (citations omitted). Rather, consistent with the general public policy favoring settlements, the "responsibility of the Bankruptcy Judge . . . is to 'see whether the settlement falls below the lowest point in the range of reasonableness.'" *Gache v. Balaber-Strauss (In re Gache)*, 1998 U.S. App. LEXIS 22378, *3 (2d Cir. April 16, 1998) (quoting *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) (internal citations omitted)).

The Allianz Agreement falls well within the range of reasonableness – and certainly above the "lowest point." *Gache*, LEXIS 22378 at *3. The aggregate financial contribution to the Debtor's estate under the Settlement Agreement of $147.75 million – $26 million of which the Allianz Insurers will fund under the Allianz Agreement – is substantial. As important, it is a sum-certain amount that is not dependent on the outcome of complex, lengthy, and contested litigation.

The opposite is true without the Allianz Agreement. If there were no settlement, the Debtor would be forced to pursue the Coverage Action in which the Allianz Insurers would have substantial defenses, including: that the Debtor expected or intended the injuries for which it seeks coverage; that the Alleged Allianz Claims involve multiple occurrences implicating multiple SIRs and underlying limits; and that the sexual abuse exclusion in the later Interstate Policy applies to

9

the Alleged Allianz Claims.[5]  By the Debtor's own admission, defenses like these may "severely limit [the Allianz Insurers'] liability to the DOR Entities and could even prevent any recovery in its entirety."  Motion at ¶ 37.  This would "shrink[] the pool of assets available to satisfy Survivor Claims."  *Id*.  Moreover, continuing to litigate against the Allianz Insurers (and the other Settling Insurers) in the Coverage Action "would significantly delay the [Debtor's] restructuring efforts . . . and most certainly will burden the [Debtor's] estate with additional administrative expenses," which – regardless of outcome – will "reduce the funds available for distribution to survivors."  *Id*. at 54.

Additionally, if there were no settlement, the Debtor would be forced to litigate the liability issues in the underlying Survivor Claims, as the Allianz Policies only contemplate payments for sums for which the DOR is legally liable.  But the CVA, on which the Alleged Allianz Claims are premised, is not a strict liability statute; the DOR generally is only legally liable for claims arising in the employment context under theories of negligent hiring, supervision and/or retention.  And New York law imposes a high burden to prevail on such claims.  In addition to establishing the existence of an employment relationship (which may not exist in many of the Alleged Allianz Claims), the claimants would need to establish that the DOR "knew or should have known of the employee's propensity for the conduct which caused the injury."  *Kenneth R. v. Roman Catholic Diocese,* 229 A.D.2d 159, 161 (2d Dept 1997).  This requires "proof that the [DOR] knew or should have known that [the defendant perpetrator] presented some danger of sexual assault to [the church's] personnel or parishioners."  *O'Neill v. Roman Catholic Diocese of Brooklyn*, 98 A.D.3d 485, 487 (2d Dept. 2012).  "'[R]umors, guesswork, musings in hindsight, speculation, or intuition' regarding what an employer knew or should have known are insufficient."  *Pinks v. Turnbull,* 2009

---

[5]  Because the Allianz Policies are excess to the LMI Policies, the coverage defenses applicable to claims involving abuse during the underlying LMI policy periods also apply to the Allianz Policies. *See* <u>Futter Decl.</u>

WL 4931802, at *4 (Sup. Ct. New York County Dec. 11, 2009).

This burden of proof gives rise to a coverage catch-22 with respect to the Alleged Allianz Claims. If, on the one hand, the claimant fails to establish that the Debtor "knew or should have known that [the defendant perpetrator] presented some danger of sexual assault," *Roman Catholic Diocese of Brooklyn*, 98 A.D.3d at 487, then the claim against the Debtor (underlying the Alleged Allianz Claim) fails as a matter of law. *See, e.g.*, *Paul J.H. v. Lum*, 291 A.D.2d 894, 895 (4th Dept. 2002) (affirming grant of summary judgment to the DOR and holding that "[t]he [DOR] defendants established as a matter of law that they lacked notice of Lum's propensity for the type of behavior causing plaintiff's harm."). But on the other hand, adequate proof that the Debtor knew (or should have known) of the perpetrator's predilections likely will vitiate coverage because the claimant's injury would not have been caused by an "occurrence" under the Allianz Policies. *See* Motion at ¶ 33 (noting the defense that "certain claims alleged injuries that were not caused by an 'occurrence' to the extent the [DOR] might have been aware of the alleged perpetrator's propensity . . ."). In either scenario, the Allianz Policies would not cover the Alleged Allianz Claim.

These material challenges, compared to the certainty (and clear financial benefit) of settlement, confirm that the "most important [*Iridium*] factor," *Hilsen*, 408 B.R. at 71, tips in favor of approval. Indeed, courts routinely "find that the first *Iridium* [f]actor weighs towards approving a settlement" where, as here, the "claims at issue . . . raise complex questions of fact and law that are not easily decided." *In re LATAM Aiprlines Grp. S.A.*, 2022 Bankr. LEXIS 248, *65 (Bankr. S.D.N.Y. January 28, 2022) (citing cases). *Cf.* Motion at ¶ 53 ("The claims and causes of action asserted in the Coverage Action are multifaceted and many may be matters of first impression in this Court and under New York law.").

Together with the remaining *Iridium* factors analyzed in the Motion, the above establishes that the settlement contemplated in the Allianz Agreement is "fair and equitable." *Nuevo Pueblo*, 608 Fed. Appx. at 41 (internal citations and quotations omitted). Accordingly, the Debtor's determination that $26 million is an appropriate amount for the Allianz Insurers to pay to resolve the claims against them satisfies the deferential standard for approval of settlements under Bankruptcy Rule 9019(a).

## II.     THE SALE OF THE ALLIANZ POLICIES FREE AND CLEAR OF ALL INTERESTS UNDER BANKRUPTCY CODE 363(f) SHOULD BE APPROVED.

Section 363(f) of the Bankruptcy Code provides that estate property may be sold "free and clear of any interest in such property of an entity other than the estate" if the proposed sale satisfies any one of the following five disjunctive requirements:

> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)     such entity consents;
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)     such interest in is bona fide dispute; or
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). *See also, e.g.*, *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 154 (2d Cir. 2016) ("A sale . . . may be made 'free and clear of any interest . . .' if any condition on a list of conditions is met") (citing 11 U.S.C. § 363(f)).

The sale contemplated in the Allianz Agreement satisfies at least the following three conditions of Bankruptcy Code Section 363(f):[6] (2), (4), and (5). The sale of Allianz Policies to

---

[6] There should be no legitimate question that the Allianz Policies, under which the Debtor is the named insured, are "property of the estate" subject to sale in the first place under Section 363(b) of the Bankruptcy Code. *See Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993) ("[C]ourts are generally in agreement that an insurance policy will be considered property of the estate"). *See also id*. at 55 n.13 (citing caselaw from the First, Second, Third, Fourth, and Fifth Circuits).

the Allianz Insurers free and clear of the Debtor and the non-debtor DOR Entities' interest(s), with such entities' consent, clearly meets subsection (2). *See* 11 U.S.C. § 363(f)(2) ("[if] such entity consents"). The Allianz Policies likewise can be sold free and clear of any alleged interest of a stranger to the Allianz Policies for two reasons.

First, the Allianz Insurers contest any such third-party interest in or to the Allianz Policies. Given the material coverage issues and defenses at play, that is sufficient to satisfy subsection (f)(4). *Cf., e.g.*, *D'Antonio v. Bella Vista Assocs., LLC (In re Bella Vista Assocs., LLC)*, 2007 Bankr. LEXIS 4348, *12 (Bankr. D.N.J. Dec. 18, 2007) ("Courts interpreting § 363(f)(4) generally look to whether there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest") (internal citations and quotations omitted). Second, any stranger to the Allianz Policies asserting such an interest, which the Allianz Insurers believe there are none, necessarily could be "compelled . . . to accept a money satisfaction," 11 U.S.C. § 363(f)(5), because nothing else is available under the Allianz Policies (which do not contain a duty to defend) in the first place.

The Allianz Insurers' proposed buyback of the Allianz Policies thus satisfies (more than) one of the conditions under Bankruptcy Code Section 363(f). As a result, the sale of the Allianz Policies to the Allianz Insurers free and clear of any claims or interests can, and should, be approved.

## CONCLUSION

For these reasons, those set forth in the Motion, and based on the evidence that will be presented by the Debtor at the hearing, the Allianz Insurers respectfully request that the Court grant the Motion and enter an order in substantially the form attached to the Motion as Exhibit 1 to Exhibit C: (i) finding that notice of the Motion was adequate under the circumstances;

(ii) approving the Allianz Agreement in its entirety; (iii) finding that the Allianz Agreement was negotiated and proposed without collusion and in good faith from arm's length bargaining positions by the Debtor, the other Diocese Parties and the Allianz Insurers, and that the Allianz Insurers are good faith purchasers within the meaning of Section 363(m) of the Bankruptcy Code; (iv) authorizing the parties to take all actions necessary or appropriate to effectuate the Allianz Agreement; and (v) granting such other and further relief as the Court deems just and proper.

Dated:  June 23, 2022

*s/ Siobhain P. Minarovich*
Siobhain P. Minarovich
RIVKIN RADLER LLP
(admitted *pro hac vice*)
926 RXR Plaza
Uniondale, NY 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
siobhain.minarovich@rivkin.com

- and -

PARKER, HUDSON, RAINER & DOBBS LLP
Harris B. Winsberg
(admitted *pro hac vice*)
303 Peachtree St NE
Suite 3600
Atlanta, GA 30308
Telephone: (404) 420-4313
Facsimile: (404) 522-8409
hwinsberg@phrd.com

-and-

BRADLEY RILEY JACOBS PC
Todd C. Jacobs
(admitted *pro hac vice*)
John E. Bucheit
(admitted *pro hac vice*)
500 W. Madison, Suite 1000
Chicago, IL 60654
Telephone: (312) 281-0295

14

tjacobs@bradleyriley.com
jbucheit@bradleyriley.com

*Attorneys for Interstate Fire & Casualty Company
and National Surety Corporation*