UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Rochester,

          Debtor.

Case No. 19-20905

Chapter 11

---

The Diocese of Rochester,

          Plaintiff,

v.

The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National Surety Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE,

          Defendants.

Adversary Proceeding
No.: 19-ap-02021

---

**NOTICE OF RULE 30(b)(6) DEPOSITION OF DEBTOR IN CONNECTION WITH MOTION TO APPROVE PROPOSED INSURANCE SETTLEMENTS TO FUND SURVIVOR COMPENSATION TRUST**
**[Relates to Docket #1538]**

To:    The Diocese of Rochester

       Through its Counsel of Record:
       Stephen A. Donato
       BOND, SCHOENECK & KING, PLLC
       One Lincoln Center Syracuse, NY 13202
       Telephone: (315) 218-8000
       Facsimile: (315) 218-8100
       Email: sdonato@bsk.com

**PLEASE TAKE NOTICE** that undersigned counsel for the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned case will take the deposition of the corporate representative(s) of The Diocese of Rochester (the "Debtor") on **October 12, 2022 at 9:30 a.m. (prevailing Eastern Time)** (or at such other date and time to which the parties may agree)[1] pursuant to Federal Rule of Civil Procedure 30(b)(6), and Rules 9014 and 7030 of the Federal Rules of Bankruptcy Procedure.

The Debtor is requested to designate a representative(s) to provide testimony regarding the Topics for Examination set forth on **Exhibit B** to this Notice of Deposition (with all capitalized terms having the meanings set forth in the attached Definitions under **Exhibit A**) which relate to the *Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* [Adv. Pro. Docket No. 190, Main Case Docket No. 1538]. The deposition testimony will be given before an authorized court reporter or other person authorized by law to administer oaths, and will be recorded by stenographic and videographic means.

**The deposition will be taken remotely** via an online platform due to the coronavirus pandemic such that no one will need to be in the same location as anyone else in order to participate in the deposition. Parties who wish to participate in the deposition should contact Brittany M. Michael, Esq., of Pachulski Stang Ziehl & Jones LLP, at bmichael@pszjlaw.com **no fewer than 72 hours before the start of the deposition** for more information regarding participating in this deposition remotely.

---

[1] The Committee seeks confirmation from the Debtor that it has produced all non-privileged documents responsive to the Committee's document requests. The Committee does not intend to examine the Debtor without such confirmation and reserves the right to adjourn the deposition as may be necessary.

Dated: September 15, 2022

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Ilan D. Scharf*
James I. Stang (admitted *pro hac vice*)
Ilan D. Scharf
John A. Morris
Hayley R. Winograd
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
jmorris@pszjlaw.com
hwinograd@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

On September 15, 2022, I caused a true and correct copy of the foregoing *Rule 30(b)(6) Notice of Deposition* to be to be filed with the Clerk of the Bankruptcy Court for the Western District of New York, using the Court's CM/ECF system and the above-referenced document was thereby served via ECF in Bankruptcy Case No. 19-20905-PRW upon all counsel of record.

*/s/ Ilan D. Scharf*

DOCS_NY:46027.4 18489/002

# EXHIBIT A

## Definitions

Unless otherwise stated, the following definitions shall apply to Exhibit B. Any term used but not defined herein shall have the meaning ascribed to that term in the *Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* [Adv. Pro. Docket No. 190, Main Case Docket No. 1538].

1. "Abuse Claim" means a claim against the Diocese and/or any Non-Debtor DOR Entity premised upon Sexual Abuse.

2. "Bankruptcy Case" means the above-captioned chapter 11 bankruptcy case styled *In re Diocese of Rochester* (Bankr. W.D.N.Y., Case No. 19-20905).

3. "Communication" means, without limitation, letters; faxes; e-mail messages; text messages, conversations; and any other transmission of ideas, information, or thoughts whether written, verbal, or otherwise.

4. "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

5. "Diocese" or "Debtor" means The Diocese of Rochester, the above-captioned debtor in possession, and includes both the civil entity and the Canon law juridic person identified as The Diocese of Rochester as the "Debtor" on its voluntary petition for chapter 11 relief commencing the above-captioned Bankruptcy Case, and any predecessor thereof, as well as any person (including the bishop or apostolic administrator of the Diocese) acting on behalf of the Diocese.

6. "Discovery Requests" means *The Official Committee of Unsecured Creditors' Second Set of Requests for Production of Documents and First Set of Interrogatories to Debtor Regarding Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust*, served on the Debtor on June 30, 2022.

7. "Document" means the broadest possible sense as specified in and interpreted under Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, all originals and copies, duplicates, drafts, and recordings of any written, graphic or otherwise recorded matter, however produced, reproduced, or stored, and all "writings" as defined in Rule 1001 of the Federal Rules of Evidence, and all other tangible things by which human communication is transmitted or stored, meaning any kind of printed, recorded, graphic, or photographic matter, however printed, produced, reproduced, copies, reproductions, facsimiles, drafts and both sides thereof, including without limitation any kind of written, typewritten, graphic, photographic, printed,

4

taped or recorded material whatsoever, regardless whether the same is an original, a copy, a reproduction, a facsimile, telex or telefax, and regardless of the source or author thereof, including without limitation, any writing filed for reporting or other purposes with any state, federal or local agency; notes; memoranda, including but not limited to memoranda of telephone conversations; letters; audited financial statements; unaudited financial statements; financial ledgers; intra-office or inter-office communications; circulars; bulletins; manuals; results of investigations; progress reports; study made by or for business or personal use; financial reports and data of any kind; working papers; contracts; agreements; affidavits; declarations; statements; bills; books of accounts; vouchers; transcriptions of conversations or tape recordings; desk calendars; bank checks; purchase orders; invoices; charge slips; receipts; expense accounts; statistical records; cost sheets; journals; diaries; time sheets or logs; computer data; job or transaction files; appointment books; books, records, and copies; electronic mail messages; extracts and summaries of other documents; drafts of any of the above, whether used or not; and any other writing or recording; computer and other business machine printouts, programs, listings, projections, as well as any carbon or photographic or copies, reproductions or facsimiles thereof and all copies which differ in any way from the original, including without limitation, all forms of electronic media, data, data storage and other forms of electronic or computer-stored or computer-generated communications, data, or representations. This includes, but is not limited to, such material in the form of Electronically Stored Information: that is, any data present in memory or on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), saved in an archive, present as "deleted" but recoverable electronic files in memory or on any media, and, present in any electronic file fragments (files that have been deleted and partially overwritten with new data) from files containing such material. Where any otherwise duplicate document contains any marking not appearing on the original or is altered from the original, then such item shall be considered to be a separate original document. Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

8. "ESI" means, without limitation, all information contained on any computing device owned, maintained, or otherwise controlled by You, including, but not limited to, mainframe, desktop, laptop, tablet, or palmtop computers, network servers, telephone voicemail servers, employees' employer-provided home computers, and the personal digital assistants (PDAs), digital cell phones, telephone answering machines, pagers, or other information-storing electronic devices of You and Your employees, or on associated external storage media, backup tapes, and other archival copies of same. Unless otherwise specified, documents, reports, and other Electronically Stored Information created using any version of Microsoft Word, Outlook, Powerpoint, Excel, Visio, or Access, Word Perfect, Oracle, or any other Microsoft, Adobe, Corel or other currently available "off-the-shelf" application shall be produced in native form; that is, the form in which the document is currently stored on whatever media it currently resides. The document should not be locked, resaved, restructures, "scrubbed" of unapparent or hidden content or any other data or metadata, but rather

should be produced in a copy precisely reproducing its entire state as present in Your systems. Unless otherwise specified, electronic mail (e-mail) should be produced in native form; that is, in whatever database and/or file/directory structures are used by Your mail processing software. All metadata and other unapparent or hidden data related to mail messages shall be produced, including, but not limited to, any file attachments, message priority flags, message read/access timestamps, and, in the case of e-mail sent to distribution lists, information on the Personship of such lists at the time the e-mail was sent.

9. "Evidence" includes any Information the Debtor intends to offer into evidence irrespective to whether it is admissible.

10. "Information" includes any Document or Communication regarding a factual contention, irrespective of whether the Debtor intends to offer such information into evidence and irrespective of whether it is admissible.

11. "Motion" means *Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* [Adv. Pro. Docket No. 190, Main Case Docket No. 1538].

12. "Parish" means the juridical person of each parish within the Diocese of Rochester.

13. "Person" means and includes individuals and entities, civil or canonical, including, but not limited to, communities, houses, ministries, regions, funds, missions, or apostolic institutions, as those terms are used under the laws of the Roman Catholic Church, for profit and not for profit corporations, partnerships, unincorporated associations, limited liability companies, trusts, firms, cooperatives, fictitious business names, educational institutions, governmental agencies whether local, state, or federal, and any and all of their agents, representatives, employees, predecessors, and/or any other Person acting on its/their behalf or subject to its/their control.

14. "Petition Date" means September 12, 2019.

15. "POC" means each proof of claim filed against the Debtor in the Bankruptcy Case.

16. "Religious" means any individual whom a diocesan bishop, the Apostolic See, religious superior, or other authority of the Roman Catholic Church has considered, treated, or determined is a member of a Roman Catholic religious institute, society, house, or order and should be treated as religious, and includes but is not limited to, nun, postulant, novice, temporary professed, perpetually professed, religious brother, religious sister, superior, major superior, prior, abbot, abbot primate, abbot superior, supreme moderator, superior of a monastic congregation, provincial, prior provincial, provincial superior, supreme superior, monk, and member of religious institute, and may include cardinal, archbishop, bishop, auxiliary bishop, regional bishop, titular bishop vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, simplex, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, vicar, moderator, director, counselor, councilor, president, and master.

17. "Representative" means any person acting or purporting to act for or on behalf of any other person.

18. "Sexual Abuse" means any of the following acts of :

(a) Touching by the abuser of the child's intimate body parts (genitals, breasts or buttocks), the touching by the child of the abuser's intimate body parts effected by the use of a position of authority, or by the inducement of the abuser, or

(b) Sexual intercourse, masturbation, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, to the genital or anal openings:

(i) Of the child's body by any part of the abuser's body or any object used by the abuser for this purpose;

(ii) Of the child's body by any part of the body of another person, or by any object used by the abuser or another person for this purpose, when effected by the use of a position of authority by the inducement of the actor;

(c) Inappropriate contact and/or contact that infringes upon another's personal, physical boundaries including but not limited to groping, kissing, extended hugging, and/or any unwelcomed touching;

(d) Grooming, including but not limited to: talk of a sexual nature, talk of a romantic nature, communications expressing love that is unnatural of how a clergy member or other religious should speak to a child.

19. "SIR" means the self-insured retention as defined by the appropriate policy issued to the Debtor.

# EXHIBIT "B"

## Topics for Examination

The Debtor is instructed, pursuant to Federal Rule of Civil Procedure 30(b)(6) and Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, to designate one or more officers, directors, or other Persons who consent to testify on the Debtor's behalf about information known or reasonably available to the Debtor Concerning the Topics set forth below.

1. Communications and negotiations between and among any of the parties to the Settlement Agreement Concerning the terms of the Settlement Agreement, including but not limited to all proposals and counterproposals whether or not accepted or rejected by any other party.

2. The Debtor's contention, and the Evidence supporting that contention, that the Settlement Agreement is "fair and reasonable." *See* Motion ¶ 61.

3. The reasons, bases, and justifications for the Debtor's decision to settle with LMI, Interstate, CNA, and Underwriters.

4. The Debtor's contentions, and the Evidence supporting those contentions, Concerning the appropriate amount of compensation for a Sexual Abuse Claim (a) prior to its execution of the Settlement Agreement and (b) after its execution of the Settlement Agreement, including any analysis of such amounts.

5. The Evidence Concerning whether the Settlement Agreement reflects the appropriate amount of compensation for the Sexual Abuse Claims that the Debtor considered before seeking approval of the Settlement Agreement.

6. The Debtor's contention, and the Evidence supporting that contention, that the Settlement Agreement reflects the appropriate compensation for the Sexual Abuse Claims. *See* Motion ¶ 58.

7. The Debtor's contention, and the Evidence supporting that contention, that "the overall benefit to the estate [from the Settlement Agreement] should outweigh any opposition that may be raised." *See* Motion ¶ 61.

8. The Debtor's decision to seek approval of the Settlement Agreement prior to filing a plan of reorganization.

9. The proposed plan of reorganization referenced in the Settlement Agreement.

10. The Debtor's financial wherewithal to contribute to a plan of reorganization.

11. The Non-Debtor DOR Entities' participation in negotiations of the Settlement Agreement, including any changes to the Settlement Agreement proposed by any of the Non-Debtor DOR Entities.

8

DOCS_NY:46027.4 18489/002

Case 2-19-20905-PRW, Doc 1702, Filed 09/15/22, Entered 09/15/22 13:52:25, Description: Main Document , Page 8 of 10

12. The Non-Debtor DOR Entities' financial wherewithal to contribute to a plan of reorganization.

13. The Non-Debtor DOR Entities' contribution to a plan of reorganization.

14. The "valuable consideration" the Non-Debtor DOR Entities will provide, as referenced in footnote 12 on page 24 of the Motion.

15. Any other contribution the Non-Debtor DOR Entities will make in connection with a plan of reorganization that is not otherwise encompassed within Topic No. 13 above.

16. The "combined contributions" that will be made towards the Trust. *See* Motion ¶ 72.

17. The amount of the Diocese's and/or Non-Debtor DOR Entities' liability on account of each Abuse Claim.

18. Settlements, court judgments, or adverse rulings Concerning any Sexual Abuse Claim entered into or rendered prior to the Petition Date, including the underlying facts of the case and whether the claim was within statute at the time of the settlement, judgment, or ruling.

19. The Debtor's analysis of the available insurance coverage under the (i) LMI, (ii) Interstate, (iii) CNA, and (iv) Underwriters' Policies (a) prior to its execution of the Settlement Agreement and (b) after its execution of the Settlement Agreement.

20. The POCs that Concern any insurance policy issued by any of the Settling Insurers. *See* Motion ¶ 25.

21. The Debtor's demands made to (i) LMI, (ii) Interstate, (iii) CNA, and (vi) Underwriters on account of any Sexual Abuse Claim.

22. Any reservation of rights or denial letters received from (i) LMI, (ii) Interstate, (iii) CNA, and (iv) Underwriters on account of any Sexual Abuse Claim.

23. The contention, and the Evidence supporting that contention, that the Debtor is responsible for paying a SIR with respect to each occurrence, including any Communications Concerning this contention. *See* Motion ¶ 32.

24. The contention, and the evidence supporting that contention, that the Diocese would potentially have to pay tens of millions of dollars to satisfy the SIRs, including any Communications Concerning this contention. *See* Motion ¶ 32.

25. The contention, and the Evidence supporting that Contention that LMI's liability should be reduced because their subscription to certain policies is only 80% to 90% and there were some insolvent LMI, including any Communications Concerning this contention. *See* Motion ¶ 32.

26. The contention, and the Evidence supporting that contention, that certain claims relate to injuries that were not caused by an "occurrence," including any Communications Concerning this contention. *See* Motion ¶ 33.

27. The contentions, and the Evidence supporting those contentions, that "approximately one-quarter to one-third" of POCs are "low- or no-value claims," including the contentions that certain claims (i) were "not timely filed," (ii) "allege abuse perpetrated by individuals over whom the Diocese does not exercise control," (iii) "allege abuse at facilities over which the Diocese does not exercise control," (iv) "allege abuse at churches that are not affiliated with the Diocese or the Catholic Church," (v) "allege abuse by third parties associated with non-Diocesan entities," (vi) "allege claims for which plaintiffs are unlikely to satisfy the requisite burden of proof," (vii) "allege abuse for which liability is questionable or for which potential damages are limited," and (viii) are "otherwise susceptible to a speedy dismissal as a matter of law," including any Communications Concerning these contentions. *See* Motion ¶ 26.

28. Persons likely to have discoverable information Concerning the issues set forth herein.

29. The Debtor's responses to the Discovery Requests, and the scope and extent of documents and materials produced, including, without limitation: (a) the process undertaken to generate responses and responsive Documents and materials; and (b) for any responsive documents not yet produced as of the date of the examination, (i) the basis and reasons why such documents have not yet been produced; (ii) the process and timeline for production; and (iii) the basis for withholding any responsive Documents and material on privilege or other grounds.