UNITED STATES BANRKUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Rochester,

Debtor.

Case No. 19-20905

Chapter 11

**FIRST STATE INSURANCE COMPANY'S SUMMARY OBJECTION TO
THE DIOCESE OF ROCHESTER'S MOTION FOR ENTRY OF AN ORDER (I)
APPROVING THE RSA, (II) AUTHORIZING THE DIOCESE TO ENTER INTO AND
PERFORM UNDER THE RSA, (III) APPROVING THE COMMITTEE SETTLEMENT,
AND (IV) GRANTING RELATED RELIEF**

First State Insurance Company ("First State"), by and through its undersigned counsel, hereby responds to the Court's December 9, 2022 Order [Dkt. No. 1872] directing the insurers who are parties-in-interest to set forth summary objections, in outline form, of the arguments the insurers intend to make in opposition to The Diocese of Rochester's *Motion for Entry of an Order (I) Approving the RSA, (II) Authorizing the Diocese to Enter into and Perform Under the RSA, (III) Approving the Committee Settlement, and (IV) Granting Related Relief* [Docket No. 1790] (the "Motion"). First State anticipates that it will raise the following categories of objections with respect to the merits of the Motion to approve entry into the Restructuring Support Agreement ("RSA"):

**I.    The Court Lacks Jurisdiction to Approve the Relief the RSA Contemplates**

1.    The RSA contemplates that more than 240 non-debtor Participating Parties[1] will receive releases and injunctions for all of their liability arising from Sexual Abuse Claims, whether or not such Sexual Abuse is related to activities of the debtor. Such injunctive relief, to the extent it does not derive from the debtor's liability, is beyond this Court's jurisdiction.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the RSA, including the Term Sheet attached thereto as Exhibit A.

2. In addition, to enforce these injunctions, the RSA contemplates that insurers' contribution and subrogation claims against these potential co-tortfeasors will be disallowed by this Court and will get no recovery. The requirement that the Court adjudicate and disallow these state law claims that are entirely between non-debtors is unprecedented in the context of these abuse-related bankruptcy cases and exceeds this Court's jurisdiction.

## II. The Motion to Approve the RSA Does Not Satisfy the Business Judgment Standard

3. The Motion fails to offer any evidence that the debtor gave sufficient consideration to all of the circumstances in seeking entry into the RSA. This includes walking away from at least $162.5 million in funding for Sexual Abuse Claims in favor of an RSA that will engender future tort, bankruptcy and coverage litigation, ensuring that claimants will not receive compensation or closure for years to come. The Court cannot conclude, based on the meager evidence presented along with the Motion, that the debtor has made a sound business determination that the RSA represents the best option for the debtor.

## III. The RSA Impermissibly Interferes With the Debtor's Insurers and Insurance Policies

4. The insurance policies that First State and others issued to the debtor include certain contractual rights to coordinate with the debtor in furtherance of their common interest in defending claims and minimizing liability. These rights include the right to associate and participate in the defense of Sexual Abuse Claims, the right to consent to settlements of those Claims, and the preservation of insurers' rights to seek contribution from other responsible parties, *i.e.*, joint tortfeasors.

5. The RSA would turn those contractual relationships on their head. Under the RSA, the Trust would resolve (*i.e.*, settle) the Sexual Abuse Claims without insurer involvement or consent. To the extent that the Trust obtains coverage for those Claims from the insurers,

those insurers would then be barred from seeking contribution from any co-tortfeasor that is a Protected Party, notwithstanding the debtor's plain contractual obligation to preserve the insurers' contribution rights. The Court cannot approve relief that modifies First State's contractual rights in this manner.

\* \* \*

First State reserves its rights to amplify these objections in the merits briefing due on February 10, 2023, as well as to join in the objections raised by any other insurer at that time.

December 30, 2022

/s/ *Sam A. Elbadawi*
Sam A. Elbadawi
SUGARMAN LAW FIRM LLP
211 W Jefferson Street #22
Syracuse, NY 13202
(315) 362-8917
selbadawi@sugarmanlaw.com

-and-

James P. Ruggeri (*pro hac vice* pending)
Joshua D. Weinberg (*pro hac vice* pending)
Annette P. Rolain (*pro hac vice* pending)
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 600
Washington, DC 20006
(202) 984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

*Counsel for First State Insurance Company*