**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 2-19-20905-PRW |
| The Diocese of Rochester, | Chapter 11 |
| Debtor. | **Related to Dkt. Nos.** |

## *AMENDED* LONDON MARKET INSURERS' ADDITIONAL SUMMARY OBJECTIONS TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING THE RESTRUCTURING SUPPORT AGREEMENT

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

PERTINENT BACKGROUND ..........................................................................................3

SUMMARY OBJECTIONS..................................................................................................5

    A.    The RSA Improperly Requires the Plan to Assign Interests in the LMI Policies, which Is neither Permitted under State Law nor under the Bankruptcy Code. ...................................................................................................... 5

    B.    The RSA also improperly requires the Plan to impair LMI's rights under the Bankruptcy Code, as a counter-party to an executory contract ........................ 8

        1.    The LMI Policies are executory contracts. .................................................. 8

        2.    The RSA's requirement that the Plan assign the Insurance Claims without providing for the Debtor's assumption of the LMI Policies impairs LMI's rights under the Bankruptcy Code. ................................... 10

        3.    Even if the RSA were to provide for the assumption of the LMI Policies by the Debtor, the Trust would be unable to provide the adequate assurance of future performance necessary for the Court to approve the RSA's assignment of the Insurance Claims...................... 10

CONCLUSION....................................................................................................................11

DM3\9325670.2
Case 2-19-20905-PRW, Doc 1899, Filed 12/30/22, Entered 12/30/22 14:27:38, Description: Main Document , Page 2 of 15

# TABLE OF AUTHORITIES

**Cases**

*Arrowood Indem. Co. v. Atl. Mut. Ins. Co.*, 948 N.Y.S.2d 581, 582 (2012)................................ 6-7

*Consol. Edison Co. of New York v. Liberty Mut.*, 749 N.Y.S.2d 402, 403-04 (Sup. Ct. 2002) ........................................................................................................................9

*In re Eastman Kodak Co.*, 495 B.R. 618 (Bankr. S.D.N.Y. 2013) ..................................10

*In re Ellipsat, Inc.*, 480 B.R. 1 (Bankr. D.D.C. 2012) ....................................................8

*Givaudan Fragrances Corp. v Aetna Cas. & Sur. Co.*, 227 NJ 322, 151 A.3d 576 (2017),.........................................................................................................................6

*In re Kenai Corp.*, 136 B.R. 59 (S.D.N.Y. 1992) ...........................................................6

*M.V.B. Collision Inc. v. State Farm Ins. Co.*, 72 N.Y.S.3d 407, 411 (2018)............... 6-7

*People ex rel. Spitzer v. ELRAC, Inc.*, 745 N.Y.S.2d 671 (Sup. Ct. 2002)................8, 10

*Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F. Supp. 597 (N.D. Cal. 1994)........................................................................................................7

*In re Spectrum Inf. Techs., Inc.*, 190 B.R. 741 (Bankr. E.D.N.Y. 1996) ..........................8

*The Diocese of Rochester v. The Continental Insurance Company, et al.*, Adv. No. 19-ap-02021 ...............................................................................................................4

*Wallach v. Smith (In re Nanodynamics, Inc.)*, 735 F. App'x 762 (2d Cir. 2018)............8

**Statutes**

11 U.S.C § 365............................................................................................................ 2-3

Certain Underwriters at Lloyd's, London and the following Certain London Market Companies: Catalina Worthing Insurance Ltd *f/k/a* HFPI (as Part VII transferee of Excess Insurance Company Ltd), RiverStone Insurance (UK) Ltd. (as successor in interest to Terra Nova Insurance Company Ltd. and as successor in interest to Sphere Drake Insurance Ltd.), Sompo Japan Nipponkoa Insurance Company of Europe Ltd. (formerly known as The Yasuda Fire & Marine Insurance Company), and Dominion Insurance Company Ltd., who subscribed severally and not jointly as their interests appear to Package, Excess Broadform, and other Policies providing insurance to the Diocese of Rochester and other Non-Debtor Diocesan Related Entities (collectively "London Market Insurers" or "LMI") hereby submit the following summary objections to the Debtor's Motion for Entry of an Order (I) Approving the RSA, (II) Authorizing the Diocese to Enter Into and Perform Under the RSA, (III) Approving the Committee Settlement, and (IV) Granting Related Relief, Doc. 1790 ("RSA Motion"), and in addition to the Settling Insurers' Summary Objection to the RSA Motion, filed contemporaneously herewith, LMI respectfully state as follows.

## INTRODUCTION

In addition to the reasons set forth by the Insurers in the *Settling Insurers' Brief in Support of their Standing to Object to Debtor's Motion for Approval of Its Restructuring Support Agreement with the Committee*, and *Settling Insurers' Summary Objection to Debtor's Motion for Entry of An Order Approving the Restructuring Support Agreement* (collectively, "Settling Insurers' Briefs"), each of which were filed contemporaneously herewith, LMI have standing to object to the RSA, because as discussed below, approval of the RSA Motion would impair their rights and/or increase their burdens due to the unique characteristics of the Bishops Program insurance policies subscribed by LMI on behalf of the Diocese of Rochester ("Debtor") and its related entities ("Related Entities", and collectively with the Debtor, ("Assureds")).

Each of the following objections are based upon the more-than-trifling injuries that the approval of the RSA Motion would cause to LMI.

First, the RSA Motion requires the Debtor to file a chapter 11 plan ("Plan") that would assign claims ("Assureds' Claims") and contractual rights ("Assureds' Contractual Rights") under the "LMI Policies" (defined below) to a trust established by the Plan ("Trust"), in violation of applicable New York law.

Second, the LMI Policies are executory contracts. The assignment of the Assureds' Claims and the Assureds' Contractual Rights without the Debtor first assuming the LMI Policies, or the Trust providing adequate assurance of future performance of the Debtors' and Related Entities' contractual obligations (collectively, the "Assureds' Contractual Obligations"), would violate section 365 of Title 11 of the United States Code ("Bankruptcy Code").

Third, the structure of the Trust imposes an irreconcilable conflict on any trustee, thereby preventing the Trust from providing adequate assurance of future performance of the Assureds' Contractual Obligations, even if the RSA were to provide for such performance (which it does not).

Hence, for all the reasons set forth in the Settling Insurers' Briefs, and below, LMI have standing to object to the RSA Motion, and the Court should not approve the RSA Motion.

# PERTINENT BACKGROUND

The Assureds participated in a self-insurance program from June 1977 to July 1988, pursuant to which they administered, defended, and settled liability claims. The Assureds procured excess indemnity insurance coverage from LMI ("LMI Policies") and other insurers to reimburse them for ultimate net loss in excess of their self-insured retentions for covered claims. *See* Declaration of Martin Futter ("Futter Dec.") and attached Exs. 2-13, filed June 23, 2022, at Doc 1544, ¶¶ 6-16. The LMI Policies include Combined Property, Casualty and Crime Insurance Policies ("Package Policies") subscribed by LMI on behalf of the Assureds, from June 1, 1977 through June 1, 1988. *See* Futter Dec., Exs. 2-6. The policies subscribed after 1986 have sexual misconduct exclusions.

The Package Policies are *sui generis*. Unlike most other commercial general liability insurance policies, the Assureds are required to handle claims from start to finish (including defending claims), and are entitled to indemnity only for their covered "Ultimate Net Loss", as defined in the Package Policies, which can only be determined once the underlying claim has been finally adjudicated, or settled when there has been notice to and cooperation with LMI. This self-insurance program allowed the Debtor to act as its own primary insurer by resolving claims on its own within the applicable SIRs. Further, the self-insurance program permitted the Debtor, at its own peril, to resolve claims in excess of the SIRs without involving LMI in the event it wished to avoid publicizing certain claims. Thus, the Debtor's duty to defend Abuse Claims was an obligation under the self-insurance program that the Debtor utilized to protect its own self-interest.

On September 12, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et. seq*. ("Bankruptcy Code"). On November

3
DM3\9325670.2
Case 2-19-20905-PRW, Doc 1899, Filed 12/30/22, Entered 12/30/22 14:27:38, Description: Main Document , Page 6 of 15

14, 2019, the Diocese commenced an adversary proceeding by filing a Complaint against its insurers ("Insurers") for breach of contract and declaratory judgment, seeking a declaration of the rights, duties, and liabilities of the parties pursuant to the terms of their respective insurance policies, and damages. *See The Diocese of Rochester v. The Continental Insurance Company, et al.*, Adv. No. 19-ap-02021 ("Insurance Adversary" or "Ins. Adv."). Ins. Adv., Dkt 1. On March 10, 2020, the Court entered an Order Directing Mediation and Appointing Mediator in the Insurance Adversary. Ins. Adv. Doc. 39.

On June 17, 2021, the Debtor filed its *Motion for Entry of an Order Approving Settlement Agreement with Certain Underwriters at Lloyd's London, Certain London Market Companies, Interstate Fire & Casualty Company and National Surety Corporation*. ("First Insurance Settlement Motion"), seeking court approval of negotiated settlements between the Assureds, on the one hand, and LMI and Interstate Fire & Casualty Company and National Surety Corporation (collectively, "Interstate"), on the other hand, which, would have settled the claims asserted by the Debtor in the Insurance Adversary in exchange for a contribution by LMI and Interstate in the amount of $35,000,000.

On July 12, 2021, the Court denied the First Insurance Settlement Motion. Doc. 1213. After ten more months of future mediation among Debtor, the Insurers, the Committee, the parishes, and various state court plaintiffs' lawyers, on May 20, 2022, the Diocese filed the *Motion to Approve Proposed Insurance Settlements to fund Survivor Compensation Trusts* ("Second Insurance Settlement Motion"), seeking court approval of negotiated settlements between the Diocese and the Insurers[1] ("Second Settlement Motion") which would settle the claims raised in the Insurance Adversary in exchange for a contribution by the Insurers in the aggregate amount of

---

[1] The Second Settlement Motion Insurers include LMI, Interstate, and Continental Insurance Company and its affiliates ("CNA").

One Hundred and Seven Million, Two Hundred and Fifty Thousand Dollars ($107,250,000). Ins. Adv. Doc. 190. The Second Insurance Settlement Motion remains pending.

On November 3, 2022, the Debtor filed the RSA Motion. Doc. 1790. It purports to provide for the assignment of the Assureds' Claims, if any, and the Assureds' Contractual Rights, which assignment is permitted neither by New York state law, nor the Bankruptcy Code. It requires the Debtor to file a chapter 11 plan ("Plan") that will establish a trust for the benefit of abuse claimants ("Trust"). *Id*. Exh. 2 ("Restructuring Support Agreement" or "RSA") at 2. It provides for the funding of the Trust by the assignment of the "Insurance Claim" to the Trust. *Id*. at 10. The RSA defines "Insurance Claim", as follows: "(27) "Insurance Claim" means all claims, causes of action and enforceable rights (other than the duty to defend) against any Non-Settling Insurer…." *Id*., Exh. 2, at 28-29 of 55. Hence, by its express terms, it includes not only the Assureds' Claims, but also the Assureds' Contractual Rights.

Further, although the LMI Policies are executory contracts, the RSA does not contemplate the assumption of the LMI Policies, or the provision of adequate assurance of future performance of the Assureds' Contractual Obligations by the Trust.

## SUMMARY OBJECTIONS

**A. The RSA Improperly Requires the Plan to Assign Interests in the LMI Policies, which Is neither Permitted under State Law nor under the Bankruptcy Code.**

New York law bars the assignment of the Assureds' Policy Rights contemplated by the RSA.

The LMI Policies require the Assureds to obtain LMI's consent before they assign any interest under the LMI Policies ("Consent to Assignment Provision"). Package Policies at 33-37 ("Assignment of interest, under this Insurance shall not bind the Underwriters until the Underwriters' consent is endorsed hereon"). The Consent to Assignment Provision is enforceable under New York law. New York recognizes only a limited exception to its policy of enforcing

5

consent-to-assignment provisions, *i.e.*, where a loss has occurred under an insurance policy, and only with respect to a claim for indemnity of the loss. *See M.V.B. Collision Inc. v. State Farm Ins. Co.*, 72 N.Y.S.3d 407, 411 (2018) ("As the Supreme Court of New Jersey recently noted in *Givaudan Fragrances Corp. v Aetna Cas. & Sur. Co.*, 227 NJ 322, 151 A.3d 576 (2017), once a loss has occurred, an assignment is regarded as a chose in action under the policy… [and] is no longer regarded as a transfer of the policy.")); *see also Arrowood Indem. Co. v. Atl. Mut. Ins. Co.*, 948 N.Y.S.2d 581, 582 (2012) ("New York generally follows the majority rule that a no-transfer provision in an insurance contract is 'valid with respect to transfers that were made prior to, but not after, the insured-against loss'") (quoting *Globecon Group, LLC v Hartford Fire Ins. Co.*, 434 F,3d 165, 170 (2d Cir 2006)). Thus, the Consent to Assignment provisions bar assignment of any interest under the LMI Policies before a loss occurs. After a loss, the LMI *Policies* still may not be assigned, but a *claim* for indemnity may be assigned.

The LMI Policies are indemnity policies because they require the Assureds to have suffered an actual money loss before LMI's liability accrues. The Assureds must handle abuse claims by retaining and at all times utilizing a service organization and defending claims to judgment, or settling the claims with notice to and cooperation with LMI. The LMI Policies do not cover the costs of employing the service organization. Moreover, the LMI Policies require LMI to reimburse the Assureds only for claims for which an Assured has been adjudicated liable, and that exceed the Assureds' self-insured retention(s), and only after LMI have been determined to be liable. Thus, no loss can occur under the LMI Policies until an Assured has been adjudicated liable for, and paid, a claim covered by the LMI Policies. *In re Kenai Corp.*, 136 B.R. 59 (S.D.N.Y. 1992) ("Unlike duty to defend policies, which require the insurer to defend claims even if they are only arguably entitled to coverage, policies requiring the insurer to reimburse damages and defense costs related to wrongful acts entitle the insured to costs only when the underlying claims are

6

covered by the policy"); *see also Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F. Supp. 597, 603-04 (N.D. Cal. 1994) (where the court addressed the same "Ultimate Net Loss" and "Loss Payment" provisions found in the LMI Policies and explained that "under the terms of the policy, the London Defendants have an obligation to pay defense costs as a portion of ultimate net loss only if and when there is a determination that the underlying action is covered under the Policy.").

Here, no Assured has been adjudicated liable for, and no Assured has paid, any abuse claim filed in this case (or elsewhere).[2] Hence, because no loss has yet occurred under the LMI Policies, there are no Assureds' Claims for the Assureds to assign now, nor will there be at confirmation.

Despite the absence of any Assureds' Claims the RSA contemplates assigning the Assureds' Claims upon plan confirmation—well before any Assured Claim could possibly exist. However, the definition of "Insurance Claim" in the RSA sweeps within its broad ambit the Assureds' Contractual Rights, which New York does not permit insureds to assign. *See M.V.B. Collision Inc.; Arrowood Indem. Co.; and Globecon Group, LLC* (cited *supra*).

Because New York law bars the proposed assignment of the Assureds' Contractual Rights, and the RSA requires the Debtor to file the Plan assigning the Assureds' Contractual Rights despite contravening New York law, approval of the RSA Motion would impair LMI's rights under New York law.

---

[2] In fact, the RSA smacks of bad faith in that the Debtor agrees to abandon legitimate Claim Objections.

### B. The RSA also improperly requires the Plan to impair LMI's rights under the Bankruptcy Code, as a counter-party to an executory contract

1. **The LMI Policies are executory contracts**.

The LMI Policies are executory contracts because both LMI and the Assureds have material unperformed obligations.

Courts within the Second Circuit have adopted different tests to determine whether a contract is executory. The Countryman Test defines an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Ellipsat, Inc.*, 480 B.R. 1, 6 (Bankr. D.D.C. 2012) (internal citations omitted); *see also In re Spectrum Inf. Techs., Inc.*, 190 B.R. 741, 746-47 (Bankr. E.D.N.Y. 1996). "The Second Circuit has also employed a less demanding inquiry characterized as the 'some performance due' test, which defines an executory contract as one on which performance remains due to some extent on both sides." *Wallach v. Smith (In re Nanodynamics, Inc.)*, 735 F. App'x 762, 764 (2d Cir. 2018) (citing *Eastern Air Lines, Inc. v. Ins. Co. of Penn. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 998-99 (2d Cir. 1996) (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984)). Under any definition, the LMI Policies are executory contracts.

The Debtor's obligation to administer and defend Abuse Claims is material under the LMI Policies; while other obligations are also material, the defense of abuse claims, which includes the Debtor's duty to retain a Service Organization to handle the claims, is essential and fundamental to the operation of the LMI Policies.

Under New York law, a self-insurer has the same duty to defend claims vigorously as a primary insurer. **That duty is owed to the excess insurer**, *i.e.*, LMI. *See People ex rel. Spitzer v. ELRAC, Inc.*, 745 N.Y.S.2d 671, 674-75 (Sup. Ct. 2002) (citing 1 Couch on Insurance 3d § 10:7

8

(1995)); *see also, e.g. Consol. Edison Co. of New York v. Liberty Mut.*, 749 N.Y.S.2d 402, 403-04 (Sup. Ct. 2002) ("New York cases defining self-insurance as 'not insurance but assurance … that judgments will be paid.'" and "Self-insurance…has been defined as a representation by the self-insured entity that it has the financial means to pay any judgments against it."). As described above, the Assureds elected to administer a self-insurance program from at least 1977 to 1986. The Assureds' Contractual Obligations are conditions precedent to LMI's duty to indemnify, including the Assureds' defense of claims; allowing LMI to associate in the administration and defense of claims; utilizing at all times a Service Organization; providing notice of claims; providing records; and cooperating with LMI to their mutual advantage.[3]

LMI have no obligation whatsoever until the Assureds' Contractual Obligations have been performed; hence, the absence of such performance is sufficiently material to excuse LMI's performance under the LMI Policies. The Assureds always fulfilled their Assureds Contractual Obligations up until the Debtor filed bankruptcy. However, the RSA does not contemplate the Plan would require the Trust or the Assureds to fulfill such duties.

Thus, for example, if an Assured were to fail to defend an abuse claim in the tort system, then LMI would have no duty to perform under the LMI Policies. An abuse claimant could get a judgment against an Assured if the claim was undefended, but LMI would have no duty to indemnify the Assured, because the Assured (i) would have breached a material and essential duty under the LMI Policies by failing to defend and (ii) would have violated a condition to coverage, *i.e.*, the requirement that LMI be allowed to associate in the non-existent defense. Hence, because an Assured's failure to satisfy the Assureds' Contractual Obligations would excuse LMI's performance under the LMI Policies, the LMI Policies are executory contracts.

---

[3] *See* Futter Dec., ¶¶ 9-10.

9

DM3\9325670.2
Case 2-19-20905-PRW, Doc 1899, Filed 12/30/22, Entered 12/30/22 14:27:38, Description: Main Document, Page 12 of 15

2. **The RSA's requirement that the Plan assign the Insurance Claims without providing for the Debtor's assumption of the LMI Policies impairs LMI's rights under the Bankruptcy Code**.

Because the RSA specifies that the Plan will assign the Assureds' Contractual Rights, and the LMI Policies are executory, the LMI Policies must be assumed by the Debtor, and the Trust must provide adequate assurance of future performance of the Assureds' Contractual Obligations *before* the Debtor can assign the Assureds' Contractual Rights to the Trust. *See, e.g., In re Eastman Kodak Co.*, 495 B.R. 618, 622 (Bankr. S.D.N.Y. 2013)

However, the RSA does not require the Debtor to assume the LMI Policies, nor does the RSA require the Trust to provide adequate assurance of future performance by, *e.g*, requiring the Trust to (i) hire a service organization to administer and defend claims; (ii) defend claims; (iii) cooperate with LMI; (iv) allow LMI to associate in the defense of claims, or (v) any of the other numerous requirements the LMI Policies impose on the Assureds.

Hence, the RSA improperly requires the Plan to impair LMI's rights under the Bankruptcy Code.

3. **Even if the RSA were to provide for the assumption of the LMI Policies by the Debtor, the Trust would be unable to provide the adequate assurance of future performance necessary for the Court to approve the RSA's assignment of the Insurance Claims**.

Under New York law, self-insurers (which the Trust will be, pursuant to the assignment of contractual rights under the LMI Policies by the Plan) have the same duty to defend claims vigorously as a primary insurance company. *People ex rel. Spitzer*, 745 N.Y.S.2d at 674-75 ("self insurers are under the same duty to defend their 'insureds' and to contribute to defense costs ... as exist for an insurance company."). Under New York law, pursuant to the assignment of the contractual duties swept within the overbroad definition of "Insurance Claims", the Trust must accept the delegation of all duties under the LMI Policies, including the duty to defend.

However, the Plan creates the Trust to pay abuse claims, making the Trustee a fiduciary to the abuse claimants. New York law imposes on a trustee a duty of loyalty to the Trust's beneficiaries. Thus, the Trustee cannot act contrary to the beneficiaries' interests.[4] Thus, unlike the Assureds, on whose behalf LMI subscribed the LMI Policies, the Trustee would be a fiduciary to the abuse claimants. The conflict is obvious. The Trustee cannot vigorously defend abuse claims and cooperate with LMI in defending abuse claims, while at the same time serving as a fiduciary to the abuse claimants.

Hence, the Trust cannot provide adequate assurance of future performance, further impairing LMI's rights to such adequate assurance under the Bankruptcy Code, even if the RSA were to obligate the Debtor to assume the LMI Policies (which it does not).

## **CONCLUSION**

For the reasons stated above, LMI have standing to object to, and the Court should deny, the RSA Motion.

Dated: December 30, 2022                                             Respectfully submitted,

By: */s/ Russell W. Roten*
Russell W. Roten (*pro hac vice*)
Jeff D. Kahane (*pro hac vice*)
Andrew Mina (*pro hac vice*)
Duane Morris LLP
865 S. Figueroa Street, Suite 3100
Los Angeles, CA 90017-5450
Telephone: (213) 689-7400
Facsimile: (213) 689-7401
Email: RWRoten@duanemorris.com

Sommer L. Ross, Esq. (*pro hac vice*)
Duane Morris LLP
1940 Route 70 East, Suite 100
Cherry Hill, NJ 08003-2171

---

[4] Given that the RSA requires the Debtor to dismiss its claim objections, there can be no credible dispute that such a conflict exists.

11

DM3\9325670.2
Case 2-19-20905-PRW, Doc 1899, Filed 12/30/22, Entered 12/30/22 14:27:38, Description: Main Document , Page 14 of 15

Telephone: 856.874.4200
Email: SLRoss@duanemorris.com

**and**

Catalina J. Sugayan (*pro hac vice*)
Matthew J. Obiala  (*pro hac vice*)
Clyde & Co
55 West Monroe Street, Suite 3000
Chicago, IL 60603
Telephone: (312) 635-7000
Facsimile:  (312) 635-6950
Email: catalina.sugayan@clydeco.us

*Attorneys for London Market Insurers*