UNITED STATES BANRKUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

    The Diocese of Rochester,

                      Debtor.

Case No. 19-20905

Chapter 11

**FIRST STATE INSURANCE COMPANY'S MEMORANDUM OF LAW REGARDING ITS STANDING TO OPPOSE THE DIOCESE OF ROCHESTER'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE RSA, (II) AUTHORIZING THE DIOCESE TO ENTER INTO AND PERFORM UNDER THE RSA, (III) APPROVING THE COMMITTEE SETTLEMENT, AND (IV) GRANTING RELATED RELIEF**

    First State Insurance Company ("First State"), by and through its undersigned counsel, hereby responds to the Court's December 9, 2022 Scheduling Order [Dkt. No. 1872] directing the insurers who are parties-in-interest to set forth the basis of their standing to object to the *Motion for Entry of an Order (I) Approving the RSA, (II) Authorizing the Diocese to Enter into and Perform Under the RSA, (III) Approving the Committee Settlement, and (IV) Granting Related Relief* [Docket No. 1790] (the "Motion").

    First State issued a single excess insurance policy to the debtor; that policy, like the other insurance policies at issue in this case, creates rights and obligations between the parties that give insurers such as First State rights of participation in the defense of claims, consent to settlements, and preservation of contribution rights, among others. In the Motion, the debtor seeks permission to enter into a restructuring support agreement ("RSA") that would abrogate the insurers' rights under their respective policies, including the First State policy. Courts across the country, including in the Second Circuit, have consistently recognized that insurers such as First State have standing to contest relief – including approval for similar restructuring support agreements – that would prejudice their contractual rights. This Court should reach the same conclusion.

# PRELIMINARY STATEMENT

1. First State issued a single policy to the debtor for the period from June 1, 1978 to September 1, 1978, which provides excess coverage above $1 million in underlying limits per occurrence.[1] First State was not named as a defendant in the insurance adversary proceeding, which First State assumed was on account of its high attachment point.

2. On April 7, 2022, the debtor published a coverage chart showing a small gap in excess coverage for the three-month period from June 1, 1978 to September 1, 1978, with the debtor apparently unaware of who (if anyone) issued coverage for that short time.[2] First State subsequently advised debtor that First State issued the missing excess coverage. Since that time, the debtor has largely ignored First State, even though First State has the contractual right to participate in the defense of claims that may implicate its coverage and the debtor is contractually obligated to seek First State's consent to settle those claims. First State has not breached its obligations under the policy.

3. On November 3, 2022, the debtor filed the Motion, seeking this Court's authorization to enter into the RSA and take all necessary steps to effect the transactions and plan provisions set forth therein. The RSA is replete with provisions that, if enacted, would deprive First State of its contractual rights to participate in the defense and resolution of Sexual Abuse Claims. The cornerstone of the RSA is a Plan of Reorganization (the "Plan") under which Sexual Abuse Claims against the debtor and more than 240 non-debtor organizations would be

---

[1] *See* Declaration of Attorney Annette P. Rolain in Support of First State's Memorandum of Law Regarding its Standing to Oppose the Diocese's Motion ("Rolain Decl.") at Exhibit 1. The policy was initially issued for the period June 1, 1978 to June 1, 1979, but was cancelled at the request of the debtor after three months. *See id.*
[2] *See* Declaration of Attorney James R. Murray Regarding Insurance Coverage at Exhibit A [Dkt. Nos. 8, 8-1], *The Diocese of Rochester v. AB 100 Doe*, Adv. Proc. No. 22-02075 (Apr. 7, 2022).

channeled to a trust (the "Trust") for resolution and payment. *See* Motion at 11, 12; *see also id.* at Exhibit 2 – RSA [Dkt. No. 1790-2] at 2.

4. In contrast to claims tested and resolved in the tort system, the Sexual Abuse Claims would be resolved through closed proceedings in accordance with criteria designed entirely by the claimants themselves, *see* Motion at 10-11, affording First State no opportunity to participate in the defense or resolution of those claims in derogation of First State's contractual rights to do so.

5. To the extent that First State was required to pay for these Claims, the RSA Plan would then enjoin First State from seeking subrogation or contribution from any of the more than 240 non-debtor Participating Parties[3] under the Plan, which currently include potential joint tortfeasors such as parishes, schools and other Catholic organizations. In this respect, the proposed RSA Plan is truly unprecedented. In contrast to plans confirmed in other abuse-related bankruptcy cases, those claims are not merely channeled to the Trust for resolution. Rather, this Court would be required to disallow those claims in their entirety – with neither payment nor any due process to First State. *See id.* at 36.

6. These provisions deprive First State of its contractual rights, and that prejudice is sufficient to afford First State standing under well-established law.

## ARGUMENT

**A. First State Has Standing to Contest Provisions of the RSA That Prejudice First State's Contractual Rights.**

7. Here, First State has standing to contest the Motion because the RSA attempts – directly and unequivocally – to prejudice First State's contractual rights under the excess policy

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the RSA, including the Term Sheet attached thereto as Exhibit A.

it issued to the debtor.

8. Standing in chapter 11 cases consists of three requirements: (1) constitutional standing; (2) statutory standing; and (3) prudential standing. *See, e.g., In re: Old Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013); *S. Boulevard, Inc. v. Martin Paint Stores (In re Martin Paint Stores)*, 207 B.R. 57, 61 (Bankr. S.D.N.Y. 1997). No one can seriously dispute that First State satisfies all three elements of this test. First State's contractual rights are in jeopardy under the RSA, and First State is seeking to vindicate its own interests, not to protect the rights of others.

9. In this case, First State satisfies the constitutional and statutory criteria for standing because its contractual rights are in jeopardy. Courts in this Circuit recognize that a party-in-interest has standing to contest a settlement so long as they can "show some cognizable prejudice to a legal relationship between it and the settling parties." *See, e.g., In re Johns-Manville Corp.*, 340 B.R. 49, 56 (S.D.N.Y. 2006) (quoting *In re School Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir. 1990)).[4] Consequently, where insurers have sought to challenge settlements that affect their own equitable and/or contractual rights arising from their policies, courts in this circuit have not hesitated to conclude that they have standing to do so.

10. In *Johns-Manville*, for example, the district court found that non-settling insurers had standing to challenge a settlement that enjoined future contribution claims against certain

---

[4] Constitutional standing is virtually coextensive with statutory standing under Section 1109(b) of the bankruptcy code and permits litigants to raise their interest in any proceeding that could affect that interest. *See, e.g., In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011) ("Article III standing and standing under the Bankruptcy Code are effectively coextensive."); *In re: Old Carco LLC*, 500 B.R. at 691 ("[A]nyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains.") (quoting *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)); *In re Reyes*, No. 14-13233, 2015 WL 4624156, at *3 (Bankr. S.D.N.Y. Aug. 4, 2015).

settling insurers. In reaching that conclusion, the district court noted that the settlement contained a judgment reduction provision intended to protect those non-settling insurers, but held that dispute could only be resolved on the merits, and was not a bar to standing. *See Johns-Manville*, 340 B.R. at 57 ("[T]he question of whether a judgment reduction provision compensates for a bar order against contribution and indemnification claims is a question on the merits of the settlement, and not an issue of standing.").

11. The case for standing here is even more urgent than the facts that supported the insurers' standing in *Johns-Manville*. There, the proposed settlement contained a judgment reduction provision; the issue was whether that was sufficient protection in exchange for the insurers' contribution claims. Here, in contrast, the RSA provides that insurers such as First State would get no compensation or protection at all for their contribution (or subrogation) claims, in addition to having their rights of participation and consent cut off. *See* Motion at 10-11. The prejudice that would result to First State from entry into the RSA is genuine, and is more than sufficient to satisfy the constitutional and statutory standing requirements.

12. Likewise, there is no real doubt that First State's objections satisfy prudential standing considerations. That requirement is grounded in the principle that a party-in-interest generally must assert their own right or interest, rather than the rights of third parties. *See, e.g., In re Quigley Co.*, 391 B.R. 695, 702 (Bankr. S.D.N.Y. 2008) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 644 (2d Cir. 1988) (finding that present asbestos claimant lacked standing to assert rights of future claimant where futures' representative spoke for future claimants and did not want present claimant to assert objections); *Greer v. Gaston & Snow (In re Gaston & Snow)*, No. 93 Civ. 8517 (JGK), 1996 WL 694421, at *7 (S.D.N.Y. Dec. 4, 1996) (holding that creditor who was receiving more from plan that would

5

be received in liquidation lacked standing to assert "best interests" test on behalf of other, differently situated creditors).

13. Here, First State seeks to protect its own contractual rights – which is precisely what the RSA is intended to prejudice. First State's objections are aimed at the provisions of the RSA that affect its contractual rights, and not unrelated provisions concerning other aspects of the RSA that do not affect First State, so there is no real dispute that First State satisfies the prudential standing requirement as well.

B. **The RSA is Sufficient Prejudice to First State's Contract Rights to Confer Standing to Oppose the Motion.**

14. In an attempt to keep First State and the other insurers from attempting to protect their contractual rights, the debtor tries to cast the Motion as a limited one, seeking nothing more than approval of the terms of the RSA. But it is not. In fact, the Motion goes much further. The Motion also seeks authorization for the debtor "to enter into *and perform under the RSA*." In other words, the motion seeks permission to take all of the actions that the RSA requires, including cutting of the insurers' contractual rights. And the debtor admits that it intends to use the RSA and the Committee settlement as the blueprint for the Plan. *See* Motion at 4 n.7. The debtor is asking the Court for permission to take actions that directly impact First State's rights, and First State accordingly has standing to contest the Motion.

15. Indeed, this is not the first time that a committee of sexual abuse claimants – with a debtor's assistance – has tried (unsuccessfully) to argue that insurers lack standing to challenge an RSA that would have amounted to an end run around the insurers' contractual rights. In *Boy Scouts of America*, the Delaware bankruptcy court was faced with a similar procedural situation: a proposed restructuring agreement that would have jettisoned an existing insurance settlement,

violated insurance contract provisions, and prevented the debtor from entering into additional insurance settlements.

16. In opposing the debtors' request to enter into the agreement, certain of the debtors' liability insurers objected that the support agreement violated their insurance contracts and that the agreement did not meet the heightened "entire fairness" standard, a more stringent test than the business judgment rule.[5] The debtors objected that the insurers lacked standing, *inter alia*, to raise the "entire fairness" standard.[6] The Delaware bankruptcy court did not directly address standing but, critically for present purposes, the Court did not adopt the debtors' attempts to limit (or eliminate) the insurers' standing and considered their arguments in full (and ultimately declined to endorse entry into the restructuring agreement).[7]

17. While a decision on the merits of the RSA here is premature, this Court should reach the same conclusion regarding standing. What the RSA Motion intends is nothing less than to fundamentally alter the relationship between the debtor and its insurers in a manner that would vitiate First State's contractual rights. First State has standing to contest the RSA, just as the insurers had their objections considered in *Boy Scouts*.

## **CONCLUSION**

The Court should hold that First State has standing to object to the Motion and entry by the debtor into the RSA.

| | |
|---|---|
| December 30, 2022 | /s/ *Sam A. Elbadawi* |
| | Sam A. Elbadawi |
| | SUGARMAN LAW FIRM LLP |
| | 211 W Jefferson Street #22 |
| | Syracuse, NY 13202 |
| | (315) 362-8917 |

---

[5] *See* Rolain Decl., Exhibit 2 at 13.
[6] *See* Rolain Decl., Exhibit 3 at 38-41.
[7] *See* Rolain Decl., Exhibit 4 at 15:9-18:10.

selbadawi@sugarmanlaw.com

-and-

James P. Ruggeri (*pro hac vice* pending)
Joshua D. Weinberg (*pro hac vice* pending)
Annette P. Rolain (*pro hac vice* pending)
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 600
Washington, DC 20006
(202) 984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

*Counsel for First State Insurance Company*