```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                                                         :
In re                                                    :   Chapter 11
                                                         :
The Diocese of Rochester,                                :   Case No. 19-20905-PRW
                                                         :
                                               Debtor.   :
                                                         :
-------------------------------------------------------- x
```

**UNITED STATES TRUSTEE'S SUMMARY OBJECTION OUTLINE TO THE DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER (I) APPROVING THE RSA, (II) AUTHORIZING THE DIOCESE TO ENTER INTO AND PERFORM UNDER THE RSA; (III) APPROVING THE COMMITTEE SETTLEMENT, AND (IV) GRANTING RELATED RELIEF**

**TO:    THE HONORABLE JUDGE WARREN,
        UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), respectfully submits this summary objection outline (the "**Summary Outline**") to the Motion of the Diocese of Rochester (the "**Debtor**") for entry of an order pursuant to sections 105(a) and 363(b) of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (i) approving the Restructuring Support Agreement, dated November 1, 2022 (together with all exhibits and schedules thereto, the "**RSA**"), by and among the (a) Diocese, (b) the Official Committee of Unsecured Creditors (the "**Committee**"), and (c) the members of the Committee in their individual capacities as Sexual Abuse Claimants (the "**Committee Members**"); (ii) authorizing the Diocese to enter into and perform under the RSA; (iii) approving the Committee Settlement (as defined therein); and (iv) granting related relief (the "**9019 Motion**") [ECF No. 1790]. This Summary Outline is being submitted pursuant to the Scheduling Order entered December 9,

2022, in which the Court directed that "[a]ny other party in interest, including the United States Trustee, wishing to oppose the relief requested in the RSA Motion [] shall file and serve a Summary Objection by not later than 3:00 p.m. on December 30, 2022" (the "**Scheduling Order**"). [ECF No. 1872]. In support thereof, the United States Trustee respectfully states as follows:

I. PRELIMINARY STATEMENT AND RESERVATION OF RIGHTS

The United States Trustee reserves all rights to address the propriety of the RSA and object to the RSA in every way, as will be embodied in the United States Trustee's final objection to the RSA. While the United States Trustee will continue to engage with the Debtor, the Committee and other parties in interest to address issues with respect to the Settlement and the plan process, this Summary Outline, which is filed in compliance with the Scheduling Order, contains a preliminary list of possible items of concern that the United States Trustee may raise in connection with the RSA and 9019 Motion. For the avoidance of doubt, it does not constitute the entirety of the items which may be contained in the United States Trustee's final objection to the RSA.

As noted above, the United States Trustee reserves his rights in every way to amend, alter, modify and add to its objection when it files its final objection to the 9019 Motion and the RSA. Further, the United States Trustee reserves all rights to conduct discovery of the Debtor, the Committee, and other parties in interest to address the propriety of the RSA and any other settlement proposed by the Debtor and/or any other party in interest. Thus, for the avoidance of doubt, nothing contained herein shall constitute or be deemed to constitute a waiver of any rights, assertions, claims, or objections to which the United States Trustee may be entitled to raise in connection with the RSA or Settlement.

2

Finally, in requesting approval of the RSA and the 9019 Motion, the Debtor requests the approval of a settlement that dictates a plan process which, among other things, violates section 1125 of the Bankruptcy Code, subverts the ordinary plan process, includes inappropriate non-debtor third party releases, constitutes an impermissible sub rosa plan, and ignores and evades the important chapter 11 safeguards, including adequate disclosure and notice, voting and acceptance of a plan, and judicial consideration of the "fair and equitable" standards of section 1129. Accordingly, this Court should deny the 9019 Motion and reject the Debtor's attempt to seek approval of the RSA.

## II. SUMMARY OUTLINE

*The Debtor Has Not Met Its Burden In Seeking Approval of the RSA*

- The 9019 Motion improperly seeks Court approval of transactions applying the "lowest point in the range of reasonableness" for approval of a settlement pursuant to Bankruptcy Rule 9019 [9019 Motion at ¶ 51], or business judgment for authorization to enter into the RSA pursuant to Bankruptcy Code § 363(b) [9019 Motion ¶¶ 34-36]. Neither of those standards applies to the consideration of a disclosure statement and chapter 11 plan.

- The *Iridium* factors, though applicable to a 9019 Motion, do not apply here, as the RSA's proponents seek to alter the rights of third parties without their consent and lacks many of the Bankruptcy Code's important safeguards involved in the plan process. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

- The 9019 Motion vaguely describes the terms of the agreement, however, it fails to support the conclusion and provide any evidence that the Committee Settlement meets the "lowest point in the range of reasonableness" standard for such motions as set forth in in *Iridium*, 478 F.3d at 462.

***The RSA is a Sub Rosa Plan***

- The Debtor's proposal constitutes an impermissible *Sub Rosa* plan.

- In requesting approval of the 9019 Motion and RSA, the Debtor seeks to circumvent the Bankruptcy Code provisions governing plan disclosure and voting.

- The Debtor's proposal alters parties' rights without their consent and evades important chapter 11 safeguards, including adequate disclosure, voting, acceptance and judicial consideration of the "fair and equitable" standards of section 1129.

- As set forth below, the RSA contains provisions for releases and exculpations that should be considered only in the context of a chapter 11 plan.

***The RSA Provides Inappropriate Penalties for the Committee and Its Members, Individually, For a Breach of Any Representation, Warranty, Covenant or Obligation Set Forth in the RSA***

- The RSA impermissibly locks the Committee and its members individually into voting on a plan consistent with this RSA or face liability to the Debtor under the agreement. *See* RSA, ¶ 6(B).

- The RSA does not include a "Fiduciary Out" for the Committee and the Committee Members. The absence of a "Fiduciary Out" deprives the Committee and its

4

members of any further opportunity to meet their fiduciary obligations to maximize recoveries to their creditor constituency.[1]

***The RSA and the Committee Settlement Contain Terms Which Potentially Impair Coverage Under the Debtor's Insurance Contracts***

- Approval of the RSA may impair coverage under certain insurance policies which, among other things, require the Debtor to cooperate with each insurers' investigation of claims.

***The Third-Party Releases and Exculpation Are Improper***

- The third-party releases are non-consensual and cannot be approved.

- The Debtor must demonstrate consent on behalf of each and every claimant, by way of, for example, opting into such releases.

- The identity of the released parties is unclear and it is similarly unclear how far-reaching the releases are and who and what entities are directly affected as the language utilized throughout the RSA, including the definitions provided therein, is not precise. This appears to be an intentional attempt to create a "catch-all" for any entity that the Debtor desires to be released, discharged and exculpated.

- The 9019 Motion fails to explain the Court's jurisdiction and authority to grant third-party, non-consensual releases nor has the Debtor justified such releases.

- In any event, as noted above, whether such releases may be justified are entirely inappropriate in the context of a 9019 motion and should not be approved in the context of the RSA Motion.

---

[1] Unlike the Committee and its members, the Debtors are provided with a Fiduciary Out in the RSA. Thus, whereas the RSA calls upon the Committee and its members to forfeit their fiduciary obligations, it enables the Debtors to retain certain of their fiduciary obligations. Such obvious disparate treatment is fundamentally unfair and lacks good faith. *See* RSA, ¶ 6(B), and *compare*, at ¶ 4(C).

- The inclusion of an exculpation provision – which may be acceptable under a chapter 11 plan – is inappropriate in the 9019 Motion. Moreover, the RSA's definition of Exculpated Parties is overbroad.

***The Discharge Language in the RSA is Improper***

- The RSA contains impermissible discharge language that does not comply with the United States Bankruptcy Code. In any event, the section 1141(d) discharge provision applies to a chapter 11 plans, not to the RSA – and certainly not to the 9019 Motion.

***The Channeling Injunction is Improper***

- The propriety of a channeling injunction is to be determined in the context of a plan, not in a 9019 Motion.

***The RSA Violates 11 U.S.C. 1125***

- The RSA improperly binds individual claimants (i.e., Committee members in their individual capacities) to vote[2] for and to solicit and support whatever plan is proposed by the Diocese. Likewise, the attorney's for the individual committee members are similarly prohibited from advising their non-Committee clients to vote for or support alternative plans.

***The RSA Contains Vague and Uncertain Terms and Definitions Which Must Preclude the Court From Approving the RSA As Each and Every Sexual Abuse Claimant Must Have a Right to Vote on or Object to any Terms or Provisions that Affect Their Claims.***

- The RSA does not address specifically what the non-monetary commitments consist of.

- The RSA does not address how a "Future Claim" can arise.

---

[2] The word "vote" is used numerous times throughout the RSA.

6

- The RSA frequently cites the term, "commercially reasonably effort", without offering any explanation as to the meaning and application for such term.

- It is unclear what role Debtor's counsel will have once the Trust is created as Debtor's counsel and all other professionals employed by the Debtor will be paid from the proceeds of the Trust.

- It is unclear what the significance of "not more than 38 Stipulated Judgments", whether there will be less than the 38 Stipulated Judgments and the expected timeframe to obtain these judgments.

- The justification to bind Committee Members heirs and executors to the terms of the RSA.

- It is unclear which parties are being served with notice, demands, claims motions and other communications necessary to inform claimants and parties in interest in accordance with the United States Bankruptcy Code and the reason the notice appears to limit such notice to certain parties as set forth in the RSA. *See* RSA ¶ 11.

- It is unclear which parties were served with the RSA and whether such parties included each individual sexual abuse claimant.

- The RSA contains no explanation as to why it assigns each Sexual Abuse Claimant a value of one dollar ($1.00) for voting purposes.

- The RSA sets forth no reason why the Committee Settlement should be approved in light of the Court's denial of the first settlement proposal with the Settling Insurance Parties. *See* ECF No. 1213.

7

- The terms non-monetary components and an Allocation Protocol (RSA Term Sheet, (4)), are unresolved and unsettled which should preclude the approval of the RSA.

- Although certain non-abuse claims are to be allowed under the RSA, the RSA Motion does not identify the claims to be allowed. RSA Term Sheet, (5).

- The RSA Motion does not explain how a Buy-Back Agreement is applicable, how it is approved and who is empowered to authorize it. RSA Term Sheet, (8). In fact, according to the terms of the RSA, it appears that the Settling Insurer could enter into a settlement with no oversight from a Court or otherwise.

- The term "Disallowed" is unclear as it does not comport with the United States Bankruptcy Code and there is no provision for Court oversight in determining the disallowance of certain claims. RSA Term Sheet, (15).

- Although the term "Disputed" is defined in the RSA, the RSA does not explain how – or even if – disputed claims are to be adjudicated. RSA Term Sheet, (16).

- Although "DOR Entities Post-Effective Date Costs is a defined term in the RSA, the RSA does not indicate the anticipated extent of such costs. RSA Term Sheet, (19).

- Similarly, the DOR Entities' Post-Effective Date Cost Reserve is defined, but the amount to be held in the Reserve is not set forth in the RSA. RSA Term Sheet, (20).

- Although "Excluded Party" is a defined term, the RSA does not disclose how parties who fall under that definition are to be treated under the RSA or the chapter 11 plan. RSA Term Sheet, (22).

- Although the Committee is to provide a non-exclusive list of non-protected parties that could have an "Outbound Contribution Claim," the RSA fails to explain why it is to provide such an abridged list as an exhibit to the Plan. RSA Term Sheet, (37).

- The RSA does not disclose whether any "Priority Tax Claims" exist and will be part of a plan. RSA Term Sheet, (43).

- The terms "Participating Parties", "Protected Parties", "Related Person", "Released Parties", "Reorganized Diocese" are too broad, difficult to reconcile and confusing. RSA Term Sheet, (39), (44), (45) (46) and (47).

- The RSA does not disclose whether "Future Claims" will be paid *pro rata* with each "Sexual Abuse Claims". RSA Term Sheet, (57).

- The RSA fails to explain why the Plan provides for an injunction staying prosecution of any Sexual Abuse Claims against the Diocese, the Reorganized Diocese and the Protected Parties.

- The RSA fails to explain why the Court has jurisdiction over authorizing an injunction staying prosecution of any Sexual Abuse Claims against the Diocese, the Reorganized Diocese and the Protected Parties.

- The RSA fails to explain if parties-in-interest and claimants are not satisfied with how their claim is treated, how they can facilitate an appeal of their claims and interests as it appears that the RSA makes all terms and provisions final upon Court approval and entry of an Order approving the RSA.

*The RSA Omits Information Critical To Assessing Whether the RSA Should Be Approved*

- The terms of the Trust Agreement, and the Trust Agreement itself are not disclosed or part of the record at this stage of the proceeding which should preclude the RSA from being approved as salient terms that are part of the Trust Agreement are not adequately disclosed.

- It is not disclosed whether the State Court counsel has advised and disclosed to each and every claimant how their rights are being affected, the risks involved and the quantum of liability.

- The Debtor has not disclosed whether the Debtor has the right and ability to assign the claims to the Trust.

- Neither the 9019 Motion nor the RSA describes the consequences to funding the Committee Settlement if the plan supporting the RSA is not confirmed and does not become effective.

- Neither the 9019 Motion nor the RSA discloses any contributions made by non-debtor third-party releasees and the reason(s) they are receiving such releases. Indeed, aside from the $55,000,000 that the RSA contemplates, there is no breakdown, calculation or analyses as to the reasons the Court should approve non-debtor third-party releases from Sexual Abuse Claimants who are not parties to the RSA. Finally, the Debtor should disclose whether the $55,000,000 is available and being held in a protected depository.

- Neither the 9019 Motion nor the RSA includes any valuation analyses to demonstrate how the Committee Settlement was calculated, how it benefits each

10

Sexual Abuse Claimant and whether the valuation expert has weighed in on the proposed settlement.

- Neither the 9019 Motion nor the RSA addresses the amount of administrative costs or even an estimate or cap that the trust will incur for such costs. Also, there is no disclosure on how the payment of administrative costs effect distributions to claimants and when such trust expenses are to be paid.

- Neither the 9019 Motion nor the RSA discuss how the assignment and/or transfer of Insurance Claims to the Trust affect each and every Sexual Abuse Claimant, whether it precludes any evidentiary support for their claims and the valuation of such claims, and the insureds' rights regarding future defenses.

- Neither the 9019 Motion nor the RSA address how the value of the claims of each Sexual Abuse Claimant will be determined.

- Neither the 9019 Motion nor the RSA address when distributions will be made from the Trust.

- Neither the 9019 Motion nor the RSA address whether the insureds can raise appropriate defenses, in what forum the claims are to be heard and who determines the appropriate forum.

- Neither the 9019 Motion nor the RSA address whether an arbiter or independent fiduciary can determine if the Debtor is cooperating and acting in good faith in pursuing a determination of the value of the claims.

- Neither the 9019 Motion nor the RSA disclose the identity of the Trustee, how the Trustee will be selected and how the Trust will be governed. The Trustee must be

able to perform his duties as an independent fiduciary and be subject to minimal interference from third parties.

- Finally, the record does not support the approval of the 9019 Motion.

**Reservation of Rights**

As noted above, the United States Trustee reserves all rights to address the propriety of the RSA and the Committee Settlement object to the RSA and the Committee Settlement, as will be embodied in the United States Trustee's objection to the RSA and the Committee Settlement, and the Summary Outline does not constitute the United States Trustee's objection to the RSA and the Committee Settlement. Further, the United States Trustee reserves all rights to conduct discovery of the Debtor to address the propriety of the RSA and any other settlement proposed by the Debtor and/or any other party in interest. Thus, for the avoidance of doubt, nothing contained herein shall constitute or be deemed to constitute a waiver of any rights, assertions, claims or objections to which the United States Trustee may be entitled to in connection with the objecting to the RSA.

Dated: Rochester, New York
      December 30, 2022

                                    Respectfully submitted,

                                    WILLIAM K. HARRINGTON
                                  UNITED STATES TRUSTEE

By:   */s/ Kathleen D. Schmitt*
       Kathleen D. Schmitt
       Assistant United States Trustee
       Shannon Anne Scott
       Trial Attorney
       201 Varick Street, Room 1006
       New York, New York 10014
       Tel. No. (212) 510-0500