

10 East Doty Street, Suite 600
Madison, Wisconsin 53703
(608) 286-2302
burnsbair.com

Timothy W. Burns
tburns@burnsbair.com
D. 608-286-2808

April 24, 2023

**Via Electronic Filing**

Honorable Paul R. Warren
United States Bankruptcy Court
Western District of New York
100 State Street
Rochester, New York 14614

Re: *In re: The Diocese of Rochester; Chapter 11 Case No. 19-20905*

*Application of Burns Bair LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Special Insurance Counsel to the Official Committee of Unsecured Creditors of the Debtor for the Period July 1, 2022 through December 31, 2022 [Docket No. 1997] (The "Application")*

Dear Judge Warren,

We write in response to the Court's April 18, 2023 Case Management Order [Docket No. 2076] (the "Order"). The Court directed Burns Bair ("BB") to file "a redline version of the time records for the third interim compensation period, indicating which fees were reduced in response to the Diocese's informal objection." We respectfully submit that no such redline can be created, given the way in which the Diocese's informal objection was raised and resolved.

By way of background, the Diocese scheduled a telephonic meeting with BB on April 11, 2023, regarding certain objections the Diocese had to BB's third interim fee application. During the call, the Diocese did not provide an itemized list of each fee entry it challenged. Rather, the Diocese described certain categories of activities in general (for example, research on particular topics) that it believed were excessive. In addition, the Diocese expressed its CFO's concern that BB's billing had substantially increased after the Diocese had tentatively resolved issues with the Committee late last year. At the conclusion of the call, the Diocese offered to resolve its informal objection for a 20% reduction of BB's third interim application fee total, or approximately $116,000.

BB disagreed and continues to disagree strongly that any portion of its fees—let alone a 20% reduction of its third interim fee application—is appropriate.

First, BB has a robust structure in place to prevent overbilling. The two partners at the firm enter their time records daily in almost all circumstances and insist that the associates at the firm enter time promptly. The two partners also closely supervise the associates on projects to avoid redundant and excessive efforts. Finally, Mr. Bair reviews all invoices line-by-line every month to ensure that entries are appropriate and that the overall invoice is reasonable.

Second, for the last several months, and particularly since the Committee and the Diocese executed the RSA on November 1, 2022, this case has focused squarely on insurance—and the substantial value that the Diocese's insurance policies can provide to the sexual abuse survivors. BB, as special insurance counsel to the Committee, remains focused on maximizing the value that the sexual abuse survivors can obtain from the Diocese's insurers.

Third, the Diocese's primary concern was with the increase in the size of BB's invoices after the RSA's execution. The increase in size of BB's invoices, however, was actually prompted by preparation for the court-supervised January settlement conferences. BB saw these conferences as an important, close-to-final opportunity to consensually resolve matters with the insurers, and BB treated the settlement conferences accordingly.

Nevertheless, as a firm, in responding to the Diocese's informal objection, we were conscious of three reasons that counseled compromise with the Diocese.

First, before opening BB three years ago, Mr. Burns served for six years on the compensation committee of a large, multidisciplinary law firm and knew the distraction that fee disputes caused law firms. BB did not want to be distracted by a fee dispute from focusing on protecting the Committee's interest at this critical stage of the bankruptcy proceedings.

Second, BB understood that there are no winners in fee disputes, and BB believed that any time its principals spent fighting the Diocese on fees could potentially quickly exceed the amount in dispute.

Finally, if this case requires post-confirmation insurance litigation, it is important for BB to have good professional relationships with the Diocese and its professionals. Although, BB believes the January settlement conference and protecting the Committee's interests dictated the increase in BB's invoices after the filing of the RSA, BB also believed that making a gesture of good faith compromise with respect to the Diocese's concern about the increase of billings, would ultimately inure to benefit of the Committee in its dealings with the Diocese in the event of any post-confirmation insurance litigation.

Accordingly, in the interest of compromise and to avoid the distraction and waste of estate and judicial resources of engaging in a formal fee dispute, BB, without conceding the validity of these objections, offered to resolve the Diocese's informal objection for a 15% reduction of BB's third interim fee application, or $87,421.75. Although BB believed, and continues to believe, that such a reduction is not warranted, it nevertheless agreed to this reduction of fees in the hope of keeping the parties focused on successfully resolving this case. The Diocese accepted BB's offer.

In resolving the Diocese's informal objection, the Diocese suggested that the reduction should be applied to BB's December 2022 invoice as a matter of administrative convenience because the Diocese has not yet paid any portion of that invoice.[1] This arrangement was intended to facilitate a streamlined way to easily account for the fee reduction; it was not meant to imply that the entirety of the Diocese's informal objection related to BB's December 2022 invoice.

Should the Court require any additional information, we would be happy to provide it. We thank the Court for its consideration of this submission. Because we know the thoroughness of our efforts to charge only reasonable fees, we are more than willing to submit to an independent fee examination comparing our fees to the fees of the other professionals in this case.

Respectfully submitted,

Timothy W. Burns

---

[1] When BB prepared its third interim application [Docket No. 1997], it assumed based on prior course of dealing that the Diocese would pay BB's December invoice in advance of the fee hearing. As a result, the entry for "Compensation Sought in this Application Already Paid Pursuant to a Monthly Compensation Order but Not Yet Allowed" was incorrect. Given that the Diocese has not paid BB's December 2022 invoice, the amount of compensation paid pursuant to monthly compensation order but not yet allowed is actually $309,350.20, not the $463,509.80 figure originally included in the Application.