In re:

The Diocese of Rochester,

Debtor.

Case No. 19-20905

Chapter 11

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER GRANTING LEAVE, STANDING, AND AUTHORITY TO PROSECUTE CERTAIN CAUSES OF ACTION ON BEHALF OF THE DEBTOR AND ITS ESTATE**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel, hereby files this motion (the "Motion") for entry of an order in the form attached hereto as **Exhibit 1** authorizing the Committee to prosecute certain claims and/or causes of action on behalf of the Debtor and its estate against The Continental Insurance Company ("CIC," "CNA," or "Defendant"). Attached hereto as **Exhibit 2** is a draft of the proposed complaint against Defendant (the "Complaint"). The Committee incorporates the Complaint by reference and respectfully refers the Court to the facts and allegations and causes of action stated therein.

In further support of this Motion, the Committee respectfully submits as follows:

**PRELIMINARY STATEMENT**[1]

1. Defendant CNA is one of the Debtor's most significant insurers having issued dozens of policies from 1943 to 1977 that provide hundreds of millions of dollars in coverage for abuse claims. Now, after hundreds of survivors of sexual abuse have filed claims against the Debtor, CNA has refused to fulfill its obligations under applicable New York law, and. instead, has elected to negotiate in bad faith—denying, *en masse* and without justification, at least 270

---

[1] All capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below.

survivor claims—and to use the bankruptcy process to drive up costs as a means to force survivors to settle for far less than what they are owed.

2. CNA's conduct violates Section 2601 of the New York Insurance Law, which prohibits insurers from "1. knowingly misrepresenting to insurance claimants pertinent facts or policy provisions relating to the coverage at issue; and 2. not attempting in good faith to effectuate prompt, fair and equitable settlements of insurance claims submitted in which liability has become reasonably clear." The conduct giving rise to CNA's violation of Section 2601 is separately actionable under Section 349 of the New York General Business Law, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

3. In order to stop CNA's deceptive practices and to preserve the integrity of the bankruptcy process, on July 26, 2023, the Committee sent a demand letter to the Debtor asking that the Debtor prosecute the Causes of Action, including those arising under Section 349 (the "<u>Demand Letter</u>"). A true and accurate copy of the Demand Letter is attached hereto as **Exhibit 3**. Without denying the merits of a Section 349 action, the Debtor declined.

4. Accordingly, the Committee brings this motion to request standing to file the proposed Complaint and to prosecute the Causes of Action in an adversary proceeding to be filed in this Court. The Causes of Action are colorable and prosecuting the Causes of Action will prevent CNA from engaging in further deceptive practices and force CNA to comply with its contractual and statutory duties to the Debtor, its estate, and its creditors. Prosecuting the Causes of Action will therefore likely benefit the bankruptcy estate. The benefits from litigating the Causes of Action would far outweigh the costs of litigation and would create the prospect for a confirmable plan supported by all creditors. Accordingly, the Committee respectfully requests that the Motion be granted.

DOCS_NY:48172.3 18489/002

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter under 28 U.S.C. § 157(a) and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. § 1408 and 1409.

6. The statutory predicates for the relief requested herein are sections 105(a), 1103(c), and 1109(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

## BACKGROUND

### A. General Case Background

7. On September 12, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of New York, commencing the Debtor's chapter 11 case (this "Case").

8. No trustee or examiner has been appointed in this Case. On September 26, 2019, the Office of the United States Trustee filed notice of the appointment of the Committee pursuant to section 1102 of the Bankruptcy Code.

9. On March 24, 2023, the Debtor and the Committee filed the *Joint Chapter 11 Plan of Reorganization for the Diocese of Rochester* [Docket No. 2047] (the "Joint Plan") and related disclosure statement.

10. Since the initial Joint Plan was filed, the Committee continued negotiations with the Diocese's insurers. To date, the Committee and the Diocese have reached agreements in principle with all insurers except CNA.

### B. Background to the Defendant

11. CNA is a financial services and insurance company organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. It owns numerous U.S.-

based property and casualty insurance companies, including CIC, and is one of the largest U.S. commercial property and casualty insurance companies. CNA is now the successor-in-interest to numerous insurance policies sold by CIC to the Debtor.

**C.   Background to the Motion[2]**

      a.   **The New York Child Victims Act**

12.   On February 14, 2019, New York State Governor Andrew Cuomo signed into law the Child Victims Act ("CVA"). Among the CVA's provisions was a "look-back window," which waived the statute of limitations for filing civil sexual abuse lawsuits for approximately one year. Initially, claimants were required to file a claim between August 14, 2019, and August 14, 2020. That period was extended by a year, to August 14, 2021, because of the COVID-19 pandemic.

13.   The response by survivors in New York was immense. Hundreds of individuals brought claims alleging negligence against the Debtor and various entities of the Debtor, such as parishes and schools, in relation to alleged sexual abuse.

14.   Recognizing that the CVA would trigger many lawsuits that would raise insurance issues, the New York State Department of Financial Services ("DFS") issued circular letters addressed to property and casualty insurers throughout the state. Circular No. 11, issued on September 12, 2019, provided a roadmap for insurers of DFS' expectations regarding insurers' fair claims practices, unfair claims practices, recordkeeping, assessment of exposures, and adjustment of loss and loss expense reserves.[3]

15.   Under DFS guidance, insurers are expected to "cooperate fully with the intent of the Child Victims Act" (*Id.*) and comply with well-established principles when handling CVA-

---

[2] Additional background can be found in the Complaint.

[3] New York Dept. of Fin. Serv., Insurance Circular Letter No. 11 (Sept. 12, 2019), available at https://www.dfs.ny.gov/ industry_guidance/circular_letters/cl2019_11.

related insurance claims, *e.g.*, promptly and fairly settling claims. *Id.* (citing § 216.0 of 11 NYCRR Part 216 (Insurance Regulation 64)). Insurers were encouraged to "act in utmost good faith" and "to take the initiative to be cooperative so that victims may be compensated" and, in compliance with New York law, "fairly review … policies, interpreting such contracts so as to resolve any ambiguities in the policyholders' favor." *Id.*

16. DFS also reminded insurers of New York law's prohibition on unfair claims practices, which carry substantial penalties and may result in disciplinary action. These include: "1. knowingly misrepresenting to insurance claimants pertinent facts or policy provisions relating to the coverage at issue; and 2. not attempting in good faith to effectuate prompt, fair and equitable settlements of insurance claims submitted in which liability has become reasonably clear." *Id.* (citing N.Y. Ins. Law § 2601(a) ("Section 2601"); 11 NYCRR Part 216).

17. Violations of Section 2601 can give rise to claims under N.Y. General Business Law Section 349 ("Section 349"). Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York.]" N.Y. Gen. Bus. Law § 349. Section 349 allows a plaintiff to state a claim for recovery if the defendant's conduct is (a) consumer-oriented, (b) materially misleading, and if (c) the plaintiff suffered injury because of deceptive act or practice. *Id.*

### b. The Debtor is Named as a Defendant in Hundreds of CVA Actions

18. Among the thousands of claims initiated under the CVA were hundreds of claims filed by survivors against the Debtor. These lawsuits alleged abuse by Debtor employees at various times from the 1940s to the 2010s. Dozens of individuals were accused of horrific acts of sexual abuse in these proofs of claim and complaints, which allege thousands of individual instances of abuse.

19. The Debtor filed for bankruptcy less than a month into the CVA window.

DOCS_NY:48172.3 18489/002

### c. The Debtor is Insured by CIC

20. The Debtor and various Debtor parishes and non-parish Catholic entities are insured by CIC through numerous policies of insurance that were issued between 1943 and 1977 (collectively, the "Policies").[4]

21. The Policies are standard-form policies marketed by CIC's predecessors to consumers in New York. The Policies do not contain any self-insured retention limits. The Policies do not contain any sexual abuse or sexual misconduct exclusions. CNA has an ongoing duty to defend and indemnify the Debtor under these policies. As emphasized by DFS in Circular No. 11, CNA also has an affirmative duty to engage in fair claims practices, including the fair, prompt, and equitable payment of claims when resolving claims against the Policies.

### d. CNA Wrongfully Denies Coverage En Masse for Virtually All CVA Claims

22. The Debtor timely provided notice to CNA of all of the hundreds of underlying claims that implicate the Policies.

23. However, in disregard of New York public policy and Circular No. 11, CNA issued wholesale, blanket denials for at least 270 of the underlying claims brought against the Debtor. In

---

[4] The Policies include at least the following: (a) Policy No. LG66109 issued by Commercial Casualty Insurance Co.; (b) Policy No. LG117457 issued by Commercial Casualty Insurance Co.; (c) Policy No. LZ15353 issued by Commercial Casualty Insurance Co.; (d) Policy No. LZ18051 issued by Commercial Insurance of Newark, NJ; (e) Policy No. LZ19348 issued by Commercial Insurance of Newark, NJ; (f) Policy No. LZ24003 issued by Commercial Insurance of Newark, NJ; (g) Policy No. LZ24008 issued by Commercial Insurance of Newark, NJ; (h) Policy No. LZ24018 issued by Commercial Insurance of Newark, NJ; (i) Policy No. LZ24028 issued by Commercial Insurance of Newark, NJ; (j) Policy No. LZ32604 issued by Commercial Insurance of Newark, NJ; (k) Policy No. LZ32617 issued by Commercial Insurance of Newark, NJ; (l) Policy No. LZ47272 issued by Commercial Insurance of Newark, NJ; (m) Policy No. LZ48500 issued by Commercial Insurance of Newark, NJ; (n) Policy No. LAZ32300, issued by Fireman's Insurance Co. of Newark, NJ; (o) Policy No. L0955300, issued by Fireman's Insurance Co. of Newark, NJ; (p) Policy No. L1239300, issued by Fireman's Insurance Co. of Newark, NJ; (q) Policy No. VBP5346801, issued by Commercial Insurance of Newark, NJ; (r) Excess Policy No. LX1216325, issued by Fireman's Insurance Co. of Newark, NJ; (s) Policy No. VBP5346812, issued by Commercial Insurance of Newark, NJ; (t) upon information and belief, an excess policy issued by Fireman's Insurance Co. of Newark, NJ, with a policy period of June 1, 1972, to June 1, 1975; (u) Policy No. VBP5346818, issued by Commercial Insurance of Newark, NJ; (v) Excess Policy No. LX2675182, issued by Fireman's Insurance Co. of Newark, NJ; and (w) Excess Policy No. LX6538036, issued by Fireman's Insurance Co. of Newark, NJ.

6

denying the claims, CNA raised a laundry list of justifications, many of which were contained in boilerplate denial letters irrespective of the unique and factually specific nature of each claim. CNA's responses illustrate a refusal to resolve these claims in good faith and to effectuate a fair and reasonable settlement for the benefit of survivors.

24. This mass denial not only violated CNA's duty to pay claims fairly, promptly, and equitably, it also was misleading. It suggested CNA has coverage defenses and an ability to deny claims that it does not have. Indeed, CNA is even now attempting to reel back this position because of the consequences it faces from those unlawful actions.

25. The mass denial was also consumer-oriented because it involved the rights of numerous claimants and because it violated New York public policy meant to protect those claimants.

### e. CNA Has Engaged in Other Unfair and Deceptive Practices

26. After the Debtor entered bankruptcy, it swiftly engaged in settlement negotiations with its insurers, including CNA, to secure funds to compensate the survivors.

27. On June 23, 2022, the Debtor submitted a motion to approve a proposed insurance settlement to fund a survivor compensation trust [Docket No. 1538] ("Settlement Motion"). The Settlement Motion, however, in violation of Section 2601, was based on CNA's misleading valuations of the underlying claims. *Id.* The Debtor's insurers, including CNA, filed a joinder to the Settlement Motion [Docket No. 1542] (the "Joinder"); the Committee objected [Docket No. 1555].

28. The Settlement Motion and the Joinder reflect unreasonable claims valuation practices that were foisted upon the Debtor by CNA following CNA's mass denial of claims. Rather than base their valuations on the facts, CNA has instead emphasized questionable late notice defenses, expected or intended defenses, and baseless assertions that the sexual abuse

7

claimants cannot prove their cases under New York negligence theories. Joinder at 8–11.

29. In fact, it is abundantly clear that all proposed settlements by CNA have failed to account for the actual exposure faced by CNA for the underlying claims despite the horrific nature of the abuse. Settlement Motion at 2; Joinder at 6–11. CNA's proposed settlement figures do not reflect an accurate or reasonable accounting of the Debtor's actual exposure in these actions.

30. CNA has improperly devalued these claims by taking advantage of the fact that the Debtor is in bankruptcy.

31. CNA is aware of the pressure on the Debtor to emerge from bankruptcy as soon as possible and focus on its mission. CNA has exacerbated that pressure by denying the underlying abuse claims *en masse*. CNA has sought to leverage the difficult position it created for the Debtor by presenting the Debtor with a binary choice: either accept CNA's misleading valuations of the underlying claims or contest these valuations and draw out the bankruptcy process.

32. As a result, the Debtor has been denied the full benefit of its insurance coverage under New York law; hundreds of sexual abuse survivors have been denied prompt, fair, and equitable settlements; and the purpose of the CVA has been thwarted. CNA's conduct is widespread, consumer-oriented, misleading, and has injured the Debtor. CNA's conduct thus constitutes deceptive business practices and acts that violate Section 2601 and are independently actionable under Section 349.

  **f. CNA's Proposed Filing of a Competing Plan of Reorganization Constitutes an Unfair Business Practice**

33. Notwithstanding its lack of standing to do so, CNA has announced that it intends to file a competing plan of reorganization to the Debtor and Committee's proposed Joint Plan.[5]

---

[5] The Debtor and the Committee reserve all rights to challenge Defendant's standing to file a plan, and such rights are expressly reserved.

34. The law of the Second Circuit is clear that any such plan cannot be approved unless it receives overwhelming support of the survivors. CNA knows that it has no realistic possibility of obtaining overwhelming survivor support for its non-negotiated, non-consensual insurance plan. CNA's proposed competing plan constitutes misleading conduct because it undervalues the underlying claims and further delays the Debtor's emergence from bankruptcy.

35. CNA has no basis to file a plan except to continue its campaign of misleading the Debtor and delaying what is supposed to be the prompt, fair, and equitable payment of hundreds of sexual abuse claims. Accordingly, the proposed plan is consumer-oriented, misleading, and harms the Debtor's estate, adding to the list of CNA's deceptive business practices and acts that violate Section 2601 and are separately actionable through Section 349.

### g. CNA's Deceptive Business Practices and Actions Have Harmed and Will Continue to Harm the Debtor

36. CNA has engaged in materially misleading claims valuation practices, setting unreasonably low valuations for the underlying claims pending against the Debtor in bankruptcy. CNA's proposed settlement figure would amount to an average of approximately $189,000 per claim—far too low given CNA's exposure, the number of claims that fall within its coverage period, and the average per-claimant settlement amounts offered by the settling insurers.

37. CNA has engaged in materially misleading settlement practices, taking advantage of the Debtor's incentives to settle to exit Chapter 11 bankruptcy more quickly. CNA has routinely misrepresented the actual value of survivors' claims to reduce its own liability at the expense of its own policyholder. CNA's conduct also directly harms the sexual abuse survivors, as the proceeds of the insurance policies will be used to fund the survivor's compensation trust in the bankruptcy.

38. CNA has further materially misled the Debtor and all other parties to the

DOCS_NY:48172.3 18489/002

Bankruptcy Case regarding the purported strength of CNA's coverage defenses and has used that position to unfairly devalue survivors' claims.

39. CNA has sought to obstruct the confirmation of the Joint Plan to the point of threatening to file its own competing plan, an action that will delay the discharge of the Debtor from bankruptcy and delay payments to survivors from the proposed survivor compensation trust.

**D.      The Causes of Action and Committee Demand**

40. As a result of the harms caused by CNA's deceptive business practices and actions, on July 26, 2023, the Committee sent the Demand Letter. In the Demand Letter, the Committee requested that the Debtor bring an action against CNA under Section 349 on account of the conduct set forth above. As part of that action, the Committee also requested that the Debtor seek to enjoin CNA from filing a plan of reorganization and to recover damages and attorneys' fees.

41. On August 7, 2023, the Debtor responded to the Demand Letter (the "Response Letter"). A true and accurate copy of the Response Letter is attached hereto as **Exhibit 4**. In the Response Letter, the Debtor stated that it was "focused on confirmation" and "hesitant to commence litigation which could divert attention from the plan confirmation process." Ultimately, and without contesting the merits of a Section 349 action, the Debtor declined to pursue an action against CNA for its wrongful conduct.

**RELIEF REQUESTED**

42. Accordingly, and for the reasons set forth herein and in the Complaint, the Committee hereby requests that it be granted leave, standing, and authority to prosecute the causes of action listed in the Complaint (the "Causes of Action"). If the Committee proposes to settle any of the Causes of Action, it will seek further order of this Court. As discussed below, the Committee has satisfied the legal requirements for derivative standing to commence and prosecute the Causes of Action.

## LEGAL STANDARD

43. The Bankruptcy Code does not expressly authorize committees to sue on behalf of a debtor's estate; however, the Second Circuit, in line with the majority of circuits, has held that Bankruptcy Code sections 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to pursue estate claims. *See Unsecured Creditors Comm. of STN Enters. Inc. v. Noyes (In re STN Enterprises, Inc.)*, 779 F.2d 901, 904 (2d Cir. 1985) (same); *Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364, 374 (Bankr. S.D.N.Y. 2005) (same); *Weld v. Robert A. Sweeney Agency, Inc. (In re Patton's Busy Bee Disposal Service, Inc.)*, 182 B.R. 681, 686 (Bankr. W.D.N.Y. 1995); *Official Comm. of Equity Sec. Holders v. Official Comm. of Unsecured Creditors (In re Adelphia Commc'ns Corp.)*, 544 F.3d 420, 424 (2d Cir. 2008).

44. Under Second Circuit precedent, a committee should be granted standing to pursue estate causes of action if (a) demand was made on the debtor to pursue the claim, (b) the claim is "colorable" and (c) the debtor "unjustifiably" fails to pursue a claim that is "likely to benefit the reorganization estate." *See, e.g., STN*, 779 F.2d at 905; *Adelphia*, 544 F.3d at 423-24. The Second Circuit subsequently expanded *STN* to confer derivative standing upon a committee with the consent of either the debtor in possession or trustee. *See, e.g., Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.),* 262 F.3d 96, 100 (2d Cir. 2001). "A debtor's failure to bring a claim is deemed to be unjustifiable when the committee has presented a colorable claim that on appropriate proof would support recovery and the action is likely to benefit the reorganization estate." *Adelphia*, 330 B.R. at 374 and n. 19

### A. The Committee Made a Demand on the Debtor

45. A party seeking standing to bring an estate claim on behalf of a debtor absent the debtor's consent must first (a) make demand on the debtor or (b) show demand would be futile. *STN*, 779 F.2d at 901-904*; In re G-I Holdings, Inc.*, 313 B.R. 612, 630 (Bankr. D.N.J. 2004).

11

46. On July 26, 2023, the Committee made a demand on the Debtor. On August 7, 2023, the Debtor declined to assert the Causes of Action. This element has been satisfied.

**B.** **Causes of Action Are Colorable Claims and Will Likely Benefit the Estates**

47. To determine whether to grant standing, this Court must assess (a) whether the Committee has presented "a colorable claim or claims for relief that on appropriate proof would support a recovery," and (b) "whether an action asserting such claim(s) is likely to benefit the reorganization estate." *See, e.g. STN*, 779 F.2d. at 905; *Adelphia*, 330 B.R. at 374 and n. 19; *Official Comm. of Unsecured Creditors v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 374 (Bankr. S.D.N.Y. 2002) (same). Here, the Committee satisfies such standard.

### a. The Causes of Action are "Colorable"

48. Courts uniformly agree that the requisite showing to establish the existence of a "colorable" claim is relatively low. *See, e.g., STN*, 779 F.2d at 905 (rejecting extensive merits review and requiring instead "a colorable claim . . . for relief that on appropriate proof would support a recovery."); *Official Committee of Unsecured Creditors of America's Hobby Center v. Hudson United Bank (In re America's Hobby Center.)*, 223 B.R. 275, 288 (Bankr. S.D.N.Y. 1998) (observing that *only if* the claim is "facially defective" should standing be denied); *see also Adelphia*, 330 B.R. at 376 (holding that the requisite standard for presenting a "colorable" claim is relatively easy to meet). Specifically, "[b]ecause the creditors' committee is not required to present its proof, the [colorable claim] inquiry is much the same as that undertaken when a defendant moves to dismiss a complaint for failure to state a claim." *Official Committee of Unsecured Creditors of the Debtors v. Austin Financial Services, Inc. (In re KDI Holdings, Inc.)*, 277 B.R. 493, 508 (Bankr. S.D.N.Y. 1999) (quoting *America's Hobby Center*, 223 B.R. at 282). As set forth below, the Committee has met this standard.

49. Under applicable law, an action under Section 349 is subject to the notice pleading

requirements in Rule 8(a) of the Federal Rules of Civil Procedure. *See, e.g., Fishon v. Peloton Interactive, Inc.*, 2020 U.S. Dist. LEXIS 208861, at *27 (S.D.N.Y. Nov. 9, 2020) ("Section 349 claims are subject only to the 'bare-bones notice-pleading requirements of Rule 8(a)' and not 'the pleading-with-particularity requirements of Rule 9(b).'") (citing *Perlman ex rel. Perlan v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)); *Dimond v. Darden Rest., Inc.*, 2014 U.S. Dist. 94004, at *14-15 (S.D.N.Y. Jul. 9, 2014) (same).

50. The Debtor's Section 349 claim and other Causes of Action against CNA clearly would not only survive a motion to dismiss but is more likely than not to prevail on the merits. As set forth above and in the Complaint, CNA has refused to negotiate in good faith, has issued blanket denials of coverage without regard to the facts, has misrepresented material facts, and has attempted to leverage the bankruptcy process to force the Debtor's creditors—survivors of sexual abuse—to accept far less than they are entitled to. By doing so, CNA has injured the Debtor and clearly violated Section 2601, which prohibits an insurer "knowingly misrepresenting to insurance claimants pertinent facts or policy provisions relating to coverage" and not "attempting in good faith to effectuate prompt, fair and equitable settlements of insurance claims …." *See* ¶ 2 *supra*. Because CNA's deceptive practice was (a) consumer-oriented, (b) materially misleading, and (c) caused the Debtor injury, it is actionable under Section 349, and the Causes of Action are "colorable" under *STN* and its progeny.

### b. Prosecuting the Causes of Action Will Likely Benefit the Estates

51. In determining whether the pursuit of colorable claims by a committee is likely to benefit the estate, the court may weigh the probability of success and financial recovery, as well as the anticipated costs of litigation, but in doing so is not required to conduct a mini-trial with respect to each cause of action. *America's Hobby*, 223 B.R. at 282; *see also KDI Holdings*, 277 B.R. at 509.

DOCS_NY:48172.3 18489/002

52. Based on the facts and the controlling law governing the Causes of Action, the Committee has demonstrated that such claims are colorable and therefore are likely to succeed on appropriate proof. CNA has clearly violated Section 2601 and its misconduct is separately actionable under Section 349. Further, the Committee is the appropriate party to commence and prosecute the Causes of Action because its purpose is to defend the interests of unsecured creditors and to ensure that the assets of the estate are maximized for unsecured creditors. *See, e.g., In re Nationwide Sports Distrib., Inc.*, 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998) ("the purpose of such committees is to represent the interests of unsecured creditors and to strive to maximize the bankruptcy dividend paid to that class of creditors."); *see also KDI Holdings*, 277 B.R. at 519 (in considering benefit to the estate, finding that it was preferable to have committee continue litigating on behalf of estate). Requiring CNA to comply with its contractual and statutory obligations under the Policies is necessary to maximize the value of the Debtor's estate for the benefit of all unsecured creditors.

53. In addition, the Committee does not expect the costs and expenses to be incurred in connection with prosecuting the Causes of Action will be excessive compared to the potential recovery for the estate. While litigation costs are one factor to consider, the Committee only needs to provide comfort that the prosecution represents a sensible expenditure of the estates' resources. *See, e.g., Adelphia*, 330 B.R. at 386. Here, the potential benefits of prosecuting the Causes of Action far outweigh the costs to be incurred in connection therewith.

## **RESERVATION OF RIGHTS**

54. The Committee reserves its right to seek authority to commence and prosecute other claims and/or causes of action, and other parties, on behalf of the Debtor's estates. The Committee further reserves the right to amend and/or supplement the attached Complaint and the facts and arguments presented in this Motion.

## NOTICE

55. This Motion has been served on: (a) the U.S. Trustee; (b) the Debtor and its counsel; (c) the Defendant; and (d) all entities that have filed a request for service of filings pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

56. No prior application for the relief sought in this Motion has been made to this or any other court in connection with this Case.

57. WHEREFORE, the Committee requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit 1**, (a) granting the Committee leave, standing, and authority to commence and prosecute the Causes of Action on behalf of the Debtor's estates, and (b) providing the Committee such other and further relief as the Court may deem just, proper and equitable.

Dated: August 22, 2023
New York, NY

PACHULSKI STANG ZIEHL & JONES LLP

By: /s/ Ilan D. Scharf
James I. Stang
Ilan D. Scharf
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

BURNS BAIR LLP

By: /s/ Jesse J. Bair
Timothy W. Burns (admitted *pro hac vice*)
Jesse J. Bair (admitted *pro hac vice*)

10 E. Doty St., Suite 600
Madison, Wisconsin 53703
Telephone: 608-286-2808
Email: tburns@burnsbair.com
     jbair@burnsbair.com

*Special Insurance Counsel to the Official Committee of Unsecured Creditors*