# EXHIBIT 3



10 East Doty Street, Suite 600
Madison, Wisconsin 53703
(608) 286-2302
burnsbair.com

Timothy W. Burns
tburns@burnsbair.com
D. (608) 286-2808

July 26, 2023

**Via Electronic Mail**

Stephen A. Donato
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
sdonato@bsk.com

      Re:    In Re: Diocese of Rochester Complaint against Continental Insurance Company under New York General Business Law Section 349

Dear Steve:

The Official Committee of Unsecured Creditors of the Diocese of Rochester (the "Committee") believes that the bankruptcy estate ("Estate") of the Diocese of Rochester (the "Diocese") has claims against Continental Insurance Company ("CNA") under New York General Business Law Section 349 that the Diocese must pursue to maximize the value of the Estate and fulfill its fiduciary and other duties to the Estate and its creditors. These claims are summarized below, and we intend to send the Diocese a working draft of the proposed complaint shortly. If the Diocese will not prosecute these claims, the Diocese must stipulate to allowing the Committee to do so on behalf of the Estate. The Committee hereby requests that the Diocese notify the Committee whether it will prosecute these claims itself or stipulate that the Committee has standing to do so.

      A.    **New York General Business Law Section 349**

New York Insurance Law Section 2601 prohibits insurers from engaging in unfair claims settlement practices. More specifically, it prohibits insurers from "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear." N.Y. Ins. Law § 2601 ("Section 2601"). Section 2601 does not by itself create a private right of action, but consumers *can* sue insurers for engaging in deceptive business practices under New York General Business Law Section 349. *See* N.Y. Gen. Bus. Law § 349 ("Section 349"). Sections 2601 and 349, therefore, together provide a cause of action for insureds against insurers whose illegal, misleading conduct injures the insured and the public at large, as New York courts have routinely held that a "violation of section 2601 may constitute a violation of section 349". *Quincy Mu. Fire Ins. Co. v. New York Central Mut. Fire Ins. Co.*, 89 F. Supp. 3d 291, 314 (N.D.N.Y. 2014); *see also Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F. Supp. 732, 739 (S.D.N.Y. 1990) ("[A] policy and practice of violating New York Insurance Law § 2601 and the rules promulgated thereunder . . . , if proven, constitutes a 'deceptive business practice'

sufficient to satisfy the requirements of Section 349."); *N.Y. University v. Continental Ins. Co.*, 662 N.E.2d 763, 87 N.Y.2d 308, 320 (N.Y. 1995) (evidence must show that defendant's conduct is injurious to "the public at large" and the complaint must "charge conduct that is consumer oriented").

> i. *Requirements for Section 349 Claims*

Section 349 allows a plaintiff to state a claim for recovery if the defendant's conduct is (1) consumer-oriented, (2) materially misleading, and (3) the plaintiff suffered injury because of the deceptive act or practice. Section 349 provides an independent cause of action against insurers that imposes severe penalties:

> "**[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice**, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. **The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars**, if the court finds the defendant willfully or knowingly violated this section. **The court may award reasonable attorney's fees to a prevailing plaintiff.**"

N.Y. Gen. Bus. Law § 349(h) (emphasis added). As explained in greater detail below, CNA's conduct in this case violates Section 349.

> ii. *The Diocese's Section 349 Claim Against CNA*

The Diocese has a strong claim under Section 349 against CNA. After the passage of the Child Victim's Act, the New York Department of Financial Services advised insurers under its regulatory authority, including CNA, that insurance companies needed to comply with their legal obligations in handling the claims of survivors of child sexual abuse that are insured under their policies. New York Dept. of Fin. Serv., Insurance Circular Letter No. 11 (Sept. 12, 2019), available at https://www.dfs.ny.gov/industry_guidance/circular_letters/cl2019_11 ("Circular No. 11"). DFS advised that insurers are expected to "cooperate fully with the intent of the Child Victims Act," including when "insurance coverage applies to CVA-related claims." *Id.* at 34. Insurers were encouraged to "act in utmost good faith" and "to take the initiative to be cooperative *so that victims may be compensated*." *Id.* (emphasis added).

CNA, however, disregarded Circular No. 11 and denied nearly all CVA claims tendered to it by the Diocese, resulting in the mass denial of over 270 of the survivors' claims. In denying the claims, CNA raised a laundry list of justifications, many of which were contained in boilerplate denial letters irrespective of the unique and factually specific nature of each claim. CNA's responses illustrate a refusal to resolve these claims in good faith and to effectuate a fair and reasonable settlement for the benefit of survivors. This mass denial not only violated CNA's duty to pay claims fairly, promptly, and equitably, it also was misleading. It suggested CNA has coverage defenses and an ability to deny claims that it does not have.



CNA's denials resulted in massive exposure for the Diocese. CNA then attempted to leverage the difficult position that it had created for the Diocese by seeking to foist on survivors a blatantly unfair and inequitable settlement of their claims. *See* Dkt. 1538 at 2 ("Settlement Motion"), Dkt. 1542 at 1, 8–11 ("CNA's Joinder"). This attempt to force a lowball settlement on the survivors also violated CNA's duty to pay claims fairly, promptly, and equitably. CNA misled all parties by suggesting that the survivor's claims had much less settlement and litigation value than they actually have. In particular, CNA attempted to settle CNA's exposure for a mere $63.5 million for 360 claims (comprising 335 timely and 25 late claims). *See* CNA Joinder at 6–11. Valuing only the "timely" claims, results in an average of $189,552.24 per claim—far too low given CNA's exposure, the number of claims that fall within its coverage period, and the average per-claimant settlement amounts offered by the Settling Insurers.

More recently, CNA failed even to timely respond when it was copied on reasonable, within-policy-limits demands to its insured, the Diocese, with respect to numerous sexual abuse claims.

And, now, CNA has told the Court that it intends to impose on the survivors a stark choice: (1) face years of litigation; or (2) take whatever CNA offers in the competing plan of reorganization that it has announced its intention to file. This too is misleading. The survivors are not faced with just those two options. CNA has an obligation to pay claims fairly, promptly, and equitably, and not use litigation and delay as a means to drive down claim values. The Bankruptcy Code cannot be used to whitewash CNA's illegal conduct and allow CNA to file a plan of reorganization that is in direct violation of CNA's legal obligations. CNA operates as a regulated business and insurance company and is required under New York law to pay claims fairly, promptly, and equitably. CNA cannot compel policyholders or claimants to institute litigation to recover amounts due under its policies by offering substantially less than what is owed.

In sum, CNA has deliberately undervalued the survivors' claims because they have been brought against a bankrupt insured. CNA has not engaged in reasonable settlement practices and its deceptive actions aimed at thwarting the fulfillment of its obligation and delaying payment have harmed the interests of both the Diocese and the survivors, violating Section 2601 and creating a cause of action under Section § 349.

As noted above, under Section 349 "any person who has been injured by reason of any violation of [section 349] may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages . . . , or both such actions." N.Y. Gen. Bus. Law § 349(h). The Diocese is a "person" within the meaning of this statute and has standing to state a claim because: (1) CNA has engaged in "consumer-oriented conduct" by selling standard-form insurance policies in the state of New York; (2) CNA's conduct has been "materially misleading" in its claims valuation and settlement practices, including its threat to propose its own plan of reorganization; and (3) CNA's conduct has caused "injury" to the Diocese. Further, the Diocese's claim impacts matters of considerable public interest in New York, including whether insurer practices regarding CVA claims meet the standards required by DFS. *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) ("It is clear that 'the gravamen of the



complaint must be consumer injury or harm to the public interest.' . . . The critical question, then, *is whether the matter affects the public interest in New York*, not whether the suit is brought by a consumer or a competitor.") (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 n. 6 (S.D.N.Y. 1988)) (emphasis added)). CNA's conduct has a broad impact on consumers at large, including other New York dioceses in bankruptcy and sexual abuse survivors in those bankruptcies. CNA's conduct is also consumer oriented because it is designed to thwart clearly articulated New York public policy designed to protect the intended beneficiaries of standard-form insurance policies sold throughout the state, including sexual abuse survivors.

In addition, CNA's conduct of engaging in unreasonable claims valuation practices and unreasonable settlement practices is "materially misleading." These practices have deceived and misled the Diocese by taking advantage of the Diocese's position in bankruptcy to effect artificially low settlement values and delaying the Diocese's emergence from bankruptcy through its obstruction of the confirmation of a Plan of Reorganization. CNA has put its own interest ahead of its insured to the detriment of both the insured and the survivors. CNA's conduct is further deceptive in that, by unreasonably denying, undervaluing, and/or delaying resolution of covered claims, CNA dishonestly misrepresents the nature of the coverage it is required to provide for the underlying CVA claims. Finally, while unreasonably denying, undervaluing, and/or delaying resolution of claims, CNA also purports to hold itself out as complying with its duties under the Insurance Law—in reality, CNA's conduct violates the Insurance Law.

The injury to the Diocese, other insured entities, and the survivors is irreparable and cannot be remedied solely by the award of money damages. The Diocese's ability to successfully emerge from bankruptcy is hindered unless CNA fulfills its statutory duty to effect prompt, fair and equitable settlements of the underlying claims. Similarly, the survivors' claims will not be fully resolved, and the survivors will continue to suffer harm and, in some cases, die without adequate compensation, unless CNA settles the underlying claims promptly, fairly, and equitably.

In light of CNA's conduct and the ongoing harm caused by that conduct, the Diocese should commence a Section 349 action against CNA seeking (1) an order enjoining CNA from filing a separate Plan of Reorganization; (2) damages for the harm already caused; and (3) attorneys' fees for bringing the claim. Such an order will benefit the Diocese, its additional insureds, and the survivors much more than such an order will harm CNA, which would merely be required to comply with its legal obligations.

### B. Questions for the Diocese

Please respond to this letter by Monday, August 7, 2023, with responses to the following questions:

1. Does the Diocese intend to bring a claim against CNA under Section 349?

2. If the Diocese does not intend to bring a claim on its own, will the Diocese stipulate to allowing the Committee to have standing to bring a claim under Section 349 on behalf of the Estate?



If the Diocese intends to bring the claim on its own, please advise the Committee when it intends to file the complaint. If the Committee does not hear back from the Diocese by August 7 with an affirmative answer to one of the questions above, we will file a motion with the Court seeking derivative standing to file the complaint and prosecute the claims on behalf of the Estate.

Sincerely,

Timothy W. Burns