**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DIOCESE OF ROCHESTER, | Case No. 19-20905 |
| Debtor. | |

**DISCLOSURE STATEMENT IN SUPPORT OF CONTINENTAL INSURANCE COMPANY'S CHAPTER 11 PLAN OF REORGANIZATION FOR THE DIOCESE OF ROCHESTER DATED SEPTEMBER 29, 2023**

> THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF NEW YORK FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE JOINT CHAPTER 11 PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS A SOLICITATION OF ACCEPTANCES OF SUCH PLAN. THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.

# IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT[1]

The Continental Insurance Company ("CNA" or the "Plan Proponent") seeks confirmation of the Chapter 11 plan of reorganization for the Diocese of Rochester attached hereto as Exhibit A (the "CNA Plan").

This disclosure statement (the "Disclosure Statement"), the CNA Plan, the Plan Supplement that will be filed at a later date, the accompanying ballots, and related materials are being furnished by the Plan Proponent, pursuant to sections 1125 and 1126 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure, in connection with the solicitation of votes to accept the CNA Plan.

The CNA Plan provides for the reorganization of the Diocese's financial affairs and for distributions to creditors holding allowed claims from the Diocese's assets, the assets of parishes, schools, and other Catholic organizations, and the contributions of Settling Insurers, including CNA. The confirmation and effectiveness of the CNA Plan are subject to material conditions precedent. There is no assurance that these conditions will be satisfied or waived.

Holders of Claims against the Diocese are encouraged to read and carefully consider the matters described in this Disclosure Statement, including under "*Risk Factors to be Considered*" in Article XVI.

If the CNA Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, all holders of Claims against the Diocese (including, without limitation, those holders of Claims who do not submit ballots to accept or reject the plan or who are not entitled to vote on the CNA Plan) will be bound by the terms of the CNA Plan and the transactions described in the CNA Plan.

No person may give any information on behalf of the Plan Proponent regarding the CNA Plan or the solicitation of acceptances of the CNA Plan, other than the information contained in this Disclosure Statement, except for the Committee consistent with its obligations arising under 11 U.S.C. § 1103(c)(3). All other statements regarding the CNA Plan and the transactions contemplated therein, whether written or oral, are unauthorized.

This Disclosure Statement is designed to provide adequate information to enable holders of Impaired Claims against the Diocese to make an informed judgment on whether to accept or reject the CNA Plan. All creditors are encouraged to read this Disclosure Statement and the CNA Plan in their entirety before voting to accept or reject the CNA Plan. Plan summaries and statements made in this Disclosure Statement are qualified in their entirety by reference to the CNA Plan filed contemporaneously herewith, other exhibits annexed hereto, and other documents referenced as filed with the Bankruptcy Court prior to the end of the solicitation period for the CNA Plan. No materials other than the accompanying materials attached hereto or referenced herein have been approved by the Bankruptcy Court or the Plan Proponent for use in soliciting acceptances of the CNA Plan. Subsequent to the date hereof, there can be no assurance

---

[1] Capitalized terms not otherwise defined in this Disclosure Statement have the meanings and definitions assigned to such terms in the Plan.

that: (i) the information and representations contained herein remain materially accurate, and (ii) this Disclosure Statement contains all material information.

There has been no independent audit of the financial information contained in this disclosure statement or in any exhibit, except as expressly indicated in this Disclosure Statement or in any exhibit. This Disclosure Statement was compiled from information obtained by the Plan Proponent from numerous sources believed to be accurate to the best of the Plan Proponent's knowledge, information, and belief. The Plan Proponent's respective professionals have not independently verified any of the information set forth in this Disclosure Statement and are not responsible for any inaccuracies that may be contained in this Disclosure Statement or the CNA Plan.

The statements contained in this Disclosure Statement are made as of the date hereof, and the delivery of this Disclosure Statement will not, under any circumstances, create any implication that the information is correct at any time subsequent to this date. The Plan Proponent undertakes no duty to update the information.

Persons or entities holding or trading in or otherwise purchasing, selling, or transferring claims against the Diocese should evaluate this Disclosure Statement in light of the purpose for which it was prepared, and should be aware that actual Distributions may vary from the estimates contained herein.

This Disclosure Statement and the related documents are the only documents authorized by the Bankruptcy Court to be used in connection with the solicitation of votes accepting or rejecting the CNA Plan. No representations are authorized by the Bankruptcy Court concerning the Diocese, the Diocese's business operations, the value of the Diocese's assets, or the values of any benefits offered pursuant to the CNA Plan, except as expressly set forth in this Disclosure Statement or any other Disclosure Statement or other document approved for distribution by the Bankruptcy Court. Holders of Claims should not rely upon any representations or inducements made to secure acceptance of the CNA Plan, other than those set forth in this Disclosure Statement.

For the convenience of holders of Claims, this Disclosure Statement summarizes the terms of the CNA Plan and certain of the Plan Documents. If there is any inconsistency between the CNA Plan or the applicable Plan Documents and this Disclosure Statement, the terms of the CNA Plan or the applicable Plan Documents are controlling. The summaries of the CNA Plan and the Plan Documents in this Disclosure Statement do not purport to be complete and are subject to, and are qualified in their entirety by reference to, the full text of the CNA Plan and the applicable Plan Documents, including the definitions of terms contained in the CNA Plan and other Plan Documents. All holders of Claims are encouraged to review the full text of the CNA Plan and the Plan Documents, and to read carefully this entire Disclosure Statement, including all exhibits.

This Disclosure Statement may not be relied upon for any purposes other than to determine whether to vote to accept or reject the CNA Plan, and nothing stated in this Disclosure Statement shall constitute an admission of any fact or liability by any person or be admissible in any proceeding involving the Diocese or any other person, or be deemed conclusive evidence of

the tax or other legal effects of the CNA Plan on the Diocese, any Protected Party, or holders of Claims.

This Disclosure Statement is forward-looking. Forward-looking statements are statements of expectations, beliefs, plans, objectives, assumptions, projections, and future events of performance. Among other things, this Disclosure Statement contains forward-looking statements with respect to anticipated future performance of the Diocese and a Trust to be created for the benefit of holders of Abuse Claims, as well as anticipated future determinations of Claims and Distributions on Claims. These statements, estimates, and projections may or may not prove to be correct. Actual results could differ materially from those reflected in these forward-looking uncertainties and to a wide variety of significant business, legal, and economic risks, including, among others, those described in this Disclosure Statement. The Plan Proponent undertakes no obligation to update any forward-looking statement. New factors emerge from time to time and it is not possible to predict all factors, nor can the impact of all factors be assessed.

Holders of Claims should not construe the contents of this Disclosure Statement as providing any legal, business, financial, or tax advice. Each holder should consult with their own legal, business, financial, and tax advisors with respect to any matters concerning this Disclosure Statement, the solicitation of votes to accept the CNA Plan, the CNA Plan, and the transactions contemplated by the CNA Plan.

[This Disclosure Statement has been approved by order of the Bankruptcy Court as containing adequate information of a kind and in sufficient detail to enable Holders of Clams to make an informed judgment with respect to voting to accept or reject the CNA Plan.] However, the Bankruptcy Court's approval of this Disclosure Statement does not constitute a recommendation or determination by the Bankruptcy Court as to the merits of the CNA Plan. Each holder of a Claim entitled to vote to accept or reject the CNA Plan should read this Disclosure Statement and the CNA Plan (including all exhibits and schedules to the CNA Plan and Disclosure Statement) in their entirety before voting.

# TABLE OF CONTENTS

**ARTICLE I**
**EXECUTIVE SUMMARY OF THE PLAN** ................................................................. 8
    A.    Summary of Classification of Claims ....................................................... 11
    B.    Summary of Voting Procedures ................................................................ 12

**ARTICLE II**
**OVERVIEW OF CHAPTER 11 PROCESS** ............................................................ 14

**ARTICLE III**
**SUMMARY OF THE PLAN** ................................................................................... 14
    A.    Classification of Claims Generally .......................................................... 15
    B.    Creditor Recovery Under the CNA Plan ................................................. 15
    C.    Classification of Claims and Treatments ................................................ 16

**ARTICLE IV**
**ABUSE CLAIMS** .................................................................................................... 21
    A.    Assessment of Abuse Claims ................................................................... 21
    B.    Legal Effect of Estimation of Claims and Distributions Under the Allocation
           Protocol .................................................................................................... 22
    C.    Distributions to Abuse Claimants ........................................................... 22
    D.    Litigation of Abuse Claims ...................................................................... 23
    E.    Unknown Abuse Claims ........................................................................... 24
    F.    Claim Withdrawal ..................................................................................... 24
    G.    Medicare Procedures ................................................................................ 24

**ARTICLE V**
**SETTLING INSURERS** .......................................................................................... 25

**ARTICLE VI**
**NON-SETTLING INSURERS** ................................................................................ 26

**ARTICLE VII**
**THE TRUST** ............................................................................................................ 27
    A.    Establishment of the Trust and Responsibilities of the Trustee .............. 28
    B.    Non-Monetary Commitments ................................................................... 28
    C.    Indemnification by Trust .......................................................................... 29
    D.    Termination .............................................................................................. 29

**ARTICLE VIII**
**ALTERNATIVES TO THE PLAN** ........................................................................ 29
    A.    Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code .......... 29
    B.    Dismissal of the Chapter 11 Case ............................................................ 32
    C.    Chapter 7 Liquidation Not a Viable Alternative ..................................... 32
    D.    Appointment of a Chapter 11 Trustee is Not a Viable Alternative .......... 33

**ARTICLE IX**
**EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE** ...................... 33

|   | A. | General Injunction and Discharge............................................................33 |
|---|----|-----|
|   | B. | Injunction and Discharge of Abuse Claims and Inbound |
|   |    | Contribution Claims.............................................................................34 |
|   | C. | Channeling Injunction Preventing Prosecution of Channeled |
|   |    | Claims Against Protected Parties............................................................36 |
|   | D. | Supplemental Settling Insurer Injunction.................................................38 |
|   | E. | Litigation/Settlement Between a Participating Party or Abuse |
|   |    | Claimant and Non-Settling Insurers.......................................................39 |
|   | F. | Certain Litigation Matters.....................................................................39 |
|   | G. | Injunction Against Interference with CNA Plan.......................................39 |
|   | H. | Release by Holders of Claims................................................................39 |
|   | I. | Mutual Releases...................................................................................40 |
|   | J. | Exculpation; Limitation of Liability.......................................................40 |
|   | K. | Injunctions in Full Force and Effect........................................................41 |
|   | L. | Injunctions and Releases Integral...........................................................41 |
|   | M. | Timing.................................................................................................41 |
|   | N. | Excluded Parties...................................................................................42 |
|   | O. | Title to and Vesting of Assets...............................................................42 |
|   | P. | Continued Corporate Existence; No Successor Liability............................42 |
|   | Q. | Identity of Trustees of the Diocese and the Reorganized Diocese on and after |
|   |    | the Effective Date.................................................................................43 |
|   | R. | Authority to Effectuate CNA Plan.........................................................43 |
|   | S. | Binding Effect......................................................................................44 |
|   | T. | Dissolution of Committee......................................................................44 |

**ARTICLE X**
**MEANS FOR IMPLEMENTATION OF THE PLAN ............................... 44**

**ARTICLE XI**
**GENERAL CLAIMS ADMINISTRATION AND DISTRIBUTIONS ...................... 44**

**ARTICLE XII**
**EFFECTIVE DATE ................................................................................... 45**

**ARTICLE XIII**
**RETENTION OF JURISDICTION ............................................................ 46**

**ARTICLE XIV**
**TAX CONSEQUENCES OF THE PLAN ................................................... 47**

**ARTICLE XV**
**ACCEPTANCE AND CONFIRMATION OF THE PLAN .......................... 47**

**ARTICLE XVI**
**RISK FACTORS TO BE CONSIDERED ................................................... 47**

|   | A. | Objection to Classifications of Claims.....................................................47 |
|---|----|-----|
|   | B. | Failure to Satisfy Voting Requirements...................................................48 |
|   | C. | The CNA Plan May Not Be Accepted or Confirmed .................................48 |
|   | D. | The Plan Proponent's Assumptions and Estimates May Prove Incorrect .......48 |

    E.      Non-Confirmation or Delay in Confirmation of the CNA Plan ......................48

    F.      Non-Consensual Confirmation............................................................................48

    G.     Risk of Non-Occurrence of the Effective Date ..................................................49

**ARTICLE XVII**

**RECOMMENDATION AND CONCLUSION ........................................................... 49**

# ARTICLE I
# EXECUTIVE SUMMARY OF THE PLAN

The Plan Proponent prepared this Disclosure Statement to describe the CNA Plan that the Plan Proponent filed to provide survivors of abuse ("Survivors") with a choice regarding how to receive the compensation for the acts of abuse perpetrated by priests, employees, or other individuals affiliated with the Diocese of Rochester and its parishes.

**By way of the CNA Plan, the Plan Proponent offers to Survivors a total compensation fund of not less than $201.35 million, which will be funded by prior commitments from the Diocese and other Settling Insurers and a new offer from CNA of $75 million.**

CNA's commitment to fund the Trust with $75 million is made only under the CNA Plan; that commitment is not available under the plan proposed by the Diocese and the Committee (the "Diocese Plan"). Instead, under the Diocese Plan, two types of litigation would be required before CNA would pay anything to the Trust: first, a Survivor must win a judgment against the Diocese following the completion of litigation; and second, the Survivor or the Trust must win a lawsuit establishing that CNA's insurance covers the Survivor's judgment. Each such Survivor would bear the risk that its lawsuit against the Diocese would be unsuccessful, and the Survivor or the Trust would bear the risk that their coverage lawsuit against CNA also would be unsuccessful. Thus, while the amount CNA would pay to the Trust under the CNA Plan is fixed at $75 million, and is not subject to litigation risk, the amount CNA could be required to pay under the Diocese Plan is uncertain; it could be less than $75 million, or it could be more, and determination of how much CNA would pay under the Diocese Plan is dependent upon the outcome of litigation, which could take years. As a consequence, the CNA Plan offers Survivors more certainty about the amount the Trust will have available to distribute to Survivors.

Compared to the Diocese Plan, the CNA Plan offers the following key advantages:

- <u>Higher Average Payments</u>. The larger settlement fund available to Survivors under the CNA Plan due to CNA's $75 million contribution makes possible a higher average per-person payment amount than under the Diocese Plan, which does not include a $75 million contribution from CNA.

- <u>Timing of Full Payment</u>. Under the CNA Plan, Survivors will be able to receive their full Distributions without having to wait for the completion of multiple rounds of litigation.

- <u>Litigation Not Required</u>. While the Diocese Plan features additional litigation as "an opportunity to maximize the potential recovery for all Abuse Claimants," the CNA Plan provides for $75 million in guaranteed compensation from CNA, for a total fund of $201.35 million, without the need for litigation following plan confirmation. The CNA Plan therefore avoids protracted and expensive litigation, the likelihood that Survivors would need to produce evidence and testify at deposition or during trial, and the risk that such litigation may not result in additional recovery.

- **Fixed CNA Contribution.** Under the CNA Plan, the amount CNA will pay to compensate Survivors ($75 million) will be immediately known and immediately available. Additional litigation will not be necessary for Survivors to obtain compensation from CNA.

- **Lower Administrative Expenses.** The CNA Plan sets aside a Trust Reserve for expenses of the Trust (such as paying the Trustee and the Abuse Claims Reviewer) and to fund the Diocese's post-Effective Date costs (if any), and an allocation for Unknown Abuse Claims (if any). Unlike the Diocese Plan, the CNA Plan does not reserve amounts for litigating insurance claims, because the CNA Plan provides for global resolution without any need to litigate insurance claims. The Plan Proponent accordingly believes that administrative costs will be lower under the CNA Plan than under the Diocese's proposed plan.

- **Fully Consensual.** There will be no appeals by CNA from the bankruptcy court's order confirming the CNA Plan, and no insurance litigation following confirmation of the CNA Plan, because the CNA Plan will resolve all disputes among the Diocese and parishes, the known Survivors, and all known insurers.

- **Withdrawal of CNA's Administrative Claim under the CNA Plan.** Upon the Effective Date of the CNA Plan, CNA will withdraw its claims against the estate (both the CNA Administrative Claim stemming from the Diocese's breach of the Prior Insurance Settlement Agreement and CNA's Class 6 Insurer Claim). Under the Diocese Plan, by contrast, such claims must be addressed and, possibly, paid. Indeed, depending on the ultimate allowed amount of the CNA Administrative Claim, the Diocese may not have the financial ability to pay the CNA Administrative Claim in full, potentially precluding confirmation of the Diocese Plan.

While the Plan Proponent expects that the CNA Plan will provide the most benefit to those Survivors who prefer to receive higher upfront compensation without the burdens, risks, and delays of additional litigation, and who therefore choose to accept their compensation award from the Trust in the amount determined by the independent Abuse Claims Reviewer, the CNA Plan also allows Survivors who want the opportunity to present their Abuse Claims to a jury to do so, without first seeking permission from the Trust. Survivors who obtain judgments in such lawsuits will be paid from the Trust, and will be entitled to receive up to the full amount of their judgment, subject to the applicable Payment Percentage, after all other Survivors have received payment on their Trust Settlement Offers.

The Diocese has been in bankruptcy for four years, during which time no CVA lawsuits have gone forward against the Diocese and no Survivors have received compensation from the Diocese. More than a year ago, on May 20, 2022, the Diocese announced a settlement with CNA in the amount of $63.5 million. Together with settlements from the Diocese's other insurers, the Diocese proposed a total compensation fund of $147.75 million to be available for Survivors. The Committee objected to the settlements and the amount of the compensation fund as inadequate. The Committee now supports a settlement fund of $126.35 million—$20 million *less* in committed funding—along with the assignment of insurance rights against CNA to the

Trust. CNA vigorously disputes that the insurance rights the Trust will receive are worth the amounts the Committee seems to be ascribing to them. Determining who is right about the value of the insurance rights can be expected to take years, as each individual claim will have to be litigated to determine the Diocese's liability, if any, and additional litigation will be required to determine if CNA's alleged policies provide coverage.

A vote in favor of the CNA Plan is a vote for more certain compensation, sooner, and without having to engage in litigation to receive payment. The full funding of $201.35 million will be available for distribution upon confirmation of the CNA Plan and the occurrence of the Effective Date. To find the Diocese Plan superior to the CNA Plan, Survivors must necessarily conclude that the Trust will recover more than $75 million from CNA in post-confirmation litigation, on a timeline that is acceptable to Survivors even though such litigation can be expected to take years.

The CNA Plan allows Survivors to speak for themselves regarding whether they prefer to accept the certainty of timely receiving $75 million that would be contributed by CNA to the Trust under the CNA Plan, without the risks, costs, and delay they would be required to bear to obtain payment from CNA under the Diocese Plan. CNA's Plan will give Survivors the ability to choose between (i) a guaranteed, fixed sum that CNA would pay to the Trust without the need for post-bankruptcy litigation (in other words, the money would be available to Survivors sooner, without years of waiting), and (ii) the possibility that the Trust might recover more from CNA in the distant future, and only after prevailing in two different litigations.

*       *       *

The Disclosure Statement is intended to explain the CNA Plan and provide material, important, and necessary information to voting creditors so that they may make reasonably informed decisions in exercising their right to vote for acceptance of the CNA Plan. A copy of the CNA Plan is included with this Disclosure Statement. This Disclosure Statement also highlights and explains the material differences between the CNA Plan and the Diocese Plan. Other than as explained, the CNA Plan is generally intended to mirror the restructuring set forth in the Diocese Plan and to provide for similar treatment of the Claims against the Diocese.

Portions of this Disclosure Statement will refer directly to, or incorporate by reference, the Diocese's disclosure statement. If the CNA Plan and this Disclosure Statement are not consistent, the terms of the CNA Plan will control.

In the opinion of the Plan Proponent, the treatment of Claims under the CNA Plan provides the highest, soonest, and most certain recovery for Survivors and other Creditors compared to that which is likely to be achieved under other alternatives, including the Diocese Plan. **Accordingly, the Plan Proponent believes that confirmation of the CNA Plan is in the best interest of, and provides the highest and most expeditious recoveries to, holders of all Claims against the Diocese. All the Creditors entitled to vote are urged to vote to accept the CNA Plan.**

## A. Summary of Classification of Claims

Detailed elsewhere in this Disclosure Statement are descriptions of the technical aspects of the classification of Claims, the relative allocations of assets to holders of such Claims, the methodology as to how such assets are to be distributed, the risks inherent in the proposed CNA Plan, and the applicable bankruptcy and tax consequences of the CNA Plan. However, the Plan Proponent believes that a broad overview of what, in its opinion, the Creditors are likely to receive under the CNA Plan, will be helpful for Creditors considering whether to accept or reject the CNA Plan.

The following is a summary of the classification of all Claims under the CNA Plan. This summary is qualified in its entirety by reference to the CNA Plan:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of The Bank of Castile | No | Deemed to Accept |
| 2 | Pass-Through Claims | No | Deemed to Accept |
| 3 | General Unsecured Claims | Yes | Entitled to Vote |
| 4 | Abuse Claims | Yes | Entitled to Vote |
| 5 | Inbound Contribution Claims | Yes | Deemed to Reject |
| 6 | Insurer Claims | Yes | Entitled to Vote |

Section 1129(a) of the Bankruptcy Code establishes certain conditions for the confirmation of a plan, including that either each holder of a claim must accept the plan, or the plan must provide at least as much value as such holder would receive upon liquidation of a debtor's estate under Chapter 7 of the Bankruptcy Code. The Plan Proponent believes that the CNA Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code.

As discussed in the Liquidation Analysis attached hereto as **Exhibit B**, the Plan Proponent estimates that recoveries for Survivors holding Abuse Claims in Class 4 under the CNA Plan will be greater than in liquidation under Chapter 7 of the Bankruptcy Code because the total amount of assets available for Distribution is greater under the CNA Plan than in liquidation under Chapter 7. The Plan Proponent also believes that theoretical Distributions under a Chapter 7 case would likely be delayed, compared to Distributions under the CNA Plan, due to the time it will take for a Chapter 7 trustee to assess the Diocese's assets, review and analyze Claims, and evaluate and litigate claims against third parties. Holders of Allowed Claims entitled to vote to accept or reject the CNA Plan should review the Liquidation Analysis attached as Exhibit B (including all footnotes thereto and documents referenced therein) in assessing whether to vote to accept or reject the CNA Plan.

**B.** **Summary of Voting Procedures**

        **1.** **Vote Solicitation and Deadline**

        To be counted, your Ballot must be received, pursuant to the following instructions, by Bankruptcy Management Solutions, Inc. d/b/a Stretto ("Stretto"), on or before **5:00 p.m. (Eastern Time) on _____, 2023** (the "Voting Deadline"):

        **If by first class mail, overnight courier or hand delivery:**

            The Diocese of Rochester – Ballot Processing c/o Stretto
            410 Exchange, Suite 100
            Irvine, California 92602

        **If by electronic, online submission:**

        Please visit **https://case.stretto.com/rochesterdiocese/docket**. Click on the "***E-Ballot***" section of the Diocese's website and follow the directions on your Ballot to submit your E-Ballot. If you choose to submit your Ballot via Stretto's E-Ballot system, you should <u>not</u> also return a hard (paper) copy of your Ballot.

**IMPORTANT NOTE: You will need a unique E-Ballot ID Number that will be provided with your Ballot.**

**IF YOU HOLD A CLAIM ENTITLED TO VOTE:**

        Please (i) complete the information requested on the Ballot; (ii) sign, date, and indicate your vote to accept or reject the CNA Plan; and (iii) return the completed Ballot in the enclosed pre-addressed, postage-paid envelope, or by one of the other methods described above, so that it is actually received by Stretto on or before the Voting Deadline.

        **DO NOT RETURN ANY INVOICES, DEBT INSTRUMENTS, NOTES, OR CERTIFICATES THAT YOU MAY HAVE WITH YOUR BALLOT.**

        **ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED, NOR WILL ANY BALLOTS RECEIVED BY TELECOPY OR EMAIL BE ACCEPTED.**

        **IF YOU HAVE QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, DID NOT RECEIVE AN ELECTRONIC COPY OF THE DISCLOSURE STATEMENT AND THE PLAN, OR NEED PHYSICAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE DIOCESE'S SOLICITATION AND CLAIMS AGENT, STRETTO, BY EMAIL AT TEAMROCHDIOCESE@STRETTO.COM OR BY CALLING 855.347.3773 AND REQUESTING TO SPEAK WITH A MEMBER OF THE DIOCESE'S SOLICITATION TEAM.**

2.      **Importance of Your Vote.**

Your vote is important. The Bankruptcy Court defines acceptance by a Class of Claims as acceptance of at least two-thirds in amount and a majority in number of Allowed Claims in the Class that vote. Votes are counted only with respect to claims: (a) that are listed on the debtor's schedules other than as disputed, contingent, or unliquidated; or (b) for which a proof of claim was filed on or before the claim filing deadline set by the Bankruptcy Court for the filing of proofs of claim. However, any vote by a holder of a claim will not be counted if the claim has been disallowed or is the subject of an unresolved objection, absent an order from the Bankruptcy Court temporarily allowing the claim for voting purposes.

In other words, only holders of Allowed Claims that are in Class 3 (General Unsecured Claims), Class 4 (Abuse Claims), or Class 6 (Insurer Claims), described below, may vote to accept or reject the CNA Plan. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the CNA Plan by the Claimant is not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Only the Ballots of those Creditors who actually vote are counted for purposes of determining whether a Class voted to accept the CNA Plan. Your failure to vote will leave to others the decision to accept or reject the CNA Plan.

After carefully reviewing the CNA Plan and Disclosure Statement, each holder of a claim should vote on the enclosed ballot either to accept or reject the CNA Plan. [A holder that has voted to accept both the CNA Plan and the Diocese Plan can also indicate on the ballot whether he or she prefers one plan to the other.] Any ballot that does not appropriately indicate acceptance or rejection of the CNA Plan will not be counted. A ballot that is not received by the deadline will not be counted. If a ballot is lost, damaged, or missing, a replacement ballot may be obtained by contacting the Diocese's solicitation and claims agent, Stretto, by email at TeamRochDiocese@stretto.com or by calling 855.347.3773 and requesting to speak with a member of the solicitation team.

Pursuant to Bankruptcy Rule 3018(a), Class 4 Abuse Claims and Class 6 Insurer Claims shall be estimated at $1.00 for voting purposes only. The actual amount payable on account of Class 4 Abuse Claims will be determined pursuant to the Allocation Protocol. If the CNA Plan is confirmed, Class 6 Claims will be deemed withdrawn upon the Effective Date. A class of claims has accepted a plan if creditors that hold at least two-thirds in amount and more than one-half in number of the allowed voting claims in the class have voted to accept the plan.

**The Class 1 Secured Claim of The Bank of Castile and Class 2 Pass-Through Claims (if any) are Unimpaired under the CNA Plan and are deemed to accept the CNA Plan. Class 5 Inbound Contribution Claims are Impaired under the CNA Plan and are deemed to reject the CNA Plan.**

Section 1129(a) of the Bankruptcy Code establishes several conditions for the confirmation of a plan. These conditions are too numerous to be fully explained here. Among the conditions for plan confirmation is that either each holder of a claim must accept the plan, or the plan must provide at least as much value as would be received upon liquidation of a debtor's estate

- 13 -

under Chapter 7 of the Bankruptcy Code. **The Plan Proponent believes that the CNA Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code.**

The Bankruptcy Court has scheduled a Confirmation Hearing to consider approving the CNA Plan commencing on **__, 2023/2024 at __a.m./p.m. (prevailing Eastern Time)** at the United States Bankruptcy Court for the Western District of New York in Rochester, New York. The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in the Bankruptcy Court on the scheduled hearing date or upon the Plan Proponent filing a notice of adjournment.

Please refer to Articles I.C and III of the Diocese's disclosure statement for additional information.

## ARTICLE II
## OVERVIEW OF CHAPTER 11 PROCESS

For information concerning an overview of the Diocese's operations, its asserted need for reorganization, and the Chapter 11 Case, please refer to Articles II and III of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Diocese of Rochester Dated September 13, 2023 [ECF No. xxxx, Case No. 2-19-20905].

Accompanying this Disclosure Statement are the following enclosures:

**1.** **Order Approving Disclosure Statement**

A copy of the Bankruptcy Court's order dated **____, 2023/2024**, approving this Disclosure Statement and, among other things, establishing procedures for voting on the CNA Plan, scheduling the Confirmation Hearing, and setting the deadline for objecting to confirmation of the CNA Plan.

**2.** **Notice of Confirmation Hearing**

A copy of the notice of the deadline for submitting ballots to accept or reject the CNA Plan and, among other things, the date, time, and place of the Confirmation Hearing, and the deadline for filing objections to confirmation of the CNA Plan.

**3.** **Ballot**

A Ballot (and return envelope) for voting to accept or reject the CNA Plan. *See* Article XIX below for an explanation of which Creditors are entitled to vote.

## ARTICLE III
## SUMMARY OF THE PLAN

The Plan Proponent submits that the treatment of Creditors under the CNA Plan is more favorable than the treatment Creditors would receive if the Chapter 11 Case were converted to a case under Chapter 7 of the Bankruptcy Code. The Plan Proponent further submits

that the treatment of Abuse Claimants under the CNA Plan provides larger and quicker guaranteed payments to Abuse Claimants than the Diocese Plan and also provides for resolution of CNA's claims for the Diocese's breach of the Prior Insurance Settlement Agreement. Therefore, the Plan Proponent submits that the CNA Plan is in the best interests of all Creditors and the Plan Proponent recommends acceptance of the CNA Plan by holders of Class 3 General Unsecured Claims and Class 4 Abuse Claims.

**The summary of significant elements of the CNA Plan below is provided for the convenience of all parties. The summary does not describe every element of the CNA Plan and is not intended as a substitute for a thorough and complete review of the CNA Plan. This summary is subject to, and is qualified in its entirety by reference to, the full text of the CNA Plan. All Creditors are encouraged to review the CNA Plan and this Disclosure Statement, including Exhibits, in their entirety for a more complete understanding of the CNA Plan's provisions and impact upon Creditors. To the extent any term or provision in this Disclosure Statement is inconsistent with a term or provision of the CNA Plan, the term or provision of the CNA Plan shall control.**

A.     <u>Classification of Claims Generally</u>

Section 101(5) of the Bankruptcy Code defines a claim as: (a) a "right to payment, whether or not such right is reduced to judgement, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured;" or (b) a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."

Section 1123 of the Bankruptcy Code provides that a plan of reorganization shall designate classes of claims against a debtor. Section 1122 of the Bankruptcy Code further requires that each class of claims contain only claims that are "substantially similar" to each other. The Plan Proponent believes that it has classified all Claims in compliance with the requirements of Section 1122 and 1123. However, it is possible that the holder of a Claim may challenge such classification and that the Bankruptcy Court may find that a different classification is required for the CNA Plan to be confirmed. In such event, the Plan Proponent would, to the extent permitted by the Bankruptcy Court, modify the classifications in the CNA Plan as required and use the acceptances received in this solicitation for the purpose of obtaining the approval of a Class or Classes of which the accepting holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class of which such holder was initially a member, or any other Class under the CNA Plan, by changing the composition of such Class and the vote required of that Class for approval of the CNA Plan. Furthermore, a reclassification of Claims may necessitate a re-solicitation.

B.     <u>Creditor Recovery Under the CNA Plan</u>

All classified Claims have been placed into one of six separate Classes. The CNA Plan affirmatively states whether each Class of Claims is Impaired or Unimpaired and whether such Class is entitled to vote.

## C. Classification of Claims and Treatments

As required by the Bankruptcy Code, the CNA Plan does not treat each Claim individually but rather categorizes Claims into classes. Treatment of a Claim depends on which class it is in. The vast majority of Claims have been placed in one of six separate Classes, with some Claims left unclassified, as the Bankruptcy Code requires. The separate Classes are described in detail within this Disclosure Statement and in the CNA Plan.

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of The Bank of Castile | No | Deemed to Accept |
| 2 | Pass-Through Claims | No | Deemed to Accept |
| 3 | General Unsecured Claims | Yes | Entitled to Vote |
| 4 | Abuse Claims | Yes | Entitled to Vote |
| 5 | Inbound Contribution Claims | Yes | Deemed to Reject |
| 6 | Insurer Claims | Yes | Entitled to Vote |

### 1. Treatment of Unclassified Claims

The following summarizes the treatment of certain unclassified Claims, which are described in more detail in Section 2.1 of the CNA Plan. The Plan Proponent anticipates these unclassified Claims will be paid in full on the Effective Date or an appropriate date thereafter, other than the CNA Administrative Claim, which will be withdrawn as of the Effective Date of the CNA Plan.

*a.* ***Administrative Claims.*** Administrative Claims are Claims for costs or expenses incurred during the administration of the Diocese's Chapter 11 Case, which are Allowed pursuant to section 503(b) of the Bankruptcy Code. Unless the holder of an Administrative Claim agrees to accept different, less favorable treatment than provided under the CNA Plan, or by order of the Bankruptcy Court, Allowed Administrative Claims will be paid in full on the Effective Date or an appropriate date thereafter.

The CNA Administrative Claim is an Administrative Claim arising out of the Diocese's earlier breach of its previous settlement with CNA for $63.5 million. If the CNA Plan is confirmed, the CNA Administrative Claim shall be deemed withdrawn as of the Effective Date.

*b.* ***Priority Tax Claims.*** Priority Tax Claims are Claims for certain taxes owed to the government. Unless the holder of a Priority Tax Claim agrees to accept different, less favorable treatment than provided under the CNA Plan, or by order of the Bankruptcy Court, Allowed Priority Tax Claims will be paid in full on the Effective Date or an appropriate date thereafter.

c.      *Non-Tax Priority Claims*.  The Plan Proponent understands that the Diocese does not anticipate that any unpaid Non-Tax Priority Claims will exist as of the Effective Date.  In any event, the Trust shall not be responsible for Non-Tax Priority Claims.  Unless the holder of a Non-Tax Priority Claim agrees to accept different, less favorable treatment than provided under the CNA Plan, or by order of the Bankruptcy Court, any Allowed Non-Tax Priority Claims will be paid in full on the Effective Date or an appropriate date thereafter.

d.      *Professional Fee Claims.*  Professional Fee Claims are Claims by Professionals employed by the Committee or by the Diocese and incurred prior to the Effective Date.   Professional Fee Claims of Professionals employed by the Committee may be paid by the Diocese or the Reorganized Diocese, after notice and a hearing, or by the Trust from contributions by the Diocese or the Reorganized Diocese in addition to the amounts payable to Abuse Claimants under the CNA Plan.  Professional Fee Claims of Professionals employed by the Diocese for services rendered prior to the Effective Date shall not be paid by the Trust.  Professionals or other Persons requesting Professional Fee Claims must obtain the approval of the Bankruptcy Court and shall be paid in full, in Cash, by the Reorganized Diocese (i) as soon as practicable after the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order; or (ii) upon such terms as may exist pursuant to order of the Bankruptcy Court or as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Diocese or the Reorganized Diocese, as applicable.

e.      *U.S. Trustee Fees.*  U.S. Trustee Fees include all fees and charges assessed against the Diocese under 28 U.S.C. § 1930, together with interest, if any, under 31 U.S.C. § 3717.  All U.S. Trustee Fees not paid prior to the Effective Date shall be paid by the Reorganized Diocese as soon as practicable after the Effective Date.

2.      **Classified Claims**

The Claims are classified into six classes.  Classes that are unimpaired under the CNA Plan are deemed to accept it and are not entitled to vote.  Classes that are impaired under the CNA Plan, including Class 4 Abuse Claims, are entitled to vote to accept or reject the CNA Plan.

a.      *Class 1 – Secured Claim of The Bank of Castile*

**Definition:**  Class 1 consists of the Secured Claim held by The Bank of Castile in connection with the Standby Letter of Credit.

**Unimpaired and Not Voting:**  Class 1 is Unimpaired, and therefore, the holder of the Class 1 Claim is deemed to have accepted the CNA Plan and is not entitled to vote.

**Treatment:**  The Diocese is current with respect to all obligations due under the Standby Letter of Credit. and will continue to pay those obligations in accordance with the terms of the Standby Letter of Credit.   The Trust shall not be responsible for the payment of the Class 1 Claim.

### b. Class 2 – Pass-Through Claims.

**Definition:** Class 2 consists of all Pass-Through Claims.

**Unimpaired and Not Voting:** Class 2 is Unimpaired, and therefore, holders of Class 2 Claims are deemed to have accepted the CNA Plan and are not entitled to vote.

**Treatment:** Upon the later to occur of the Effective Date and the date on which the Diocese designates a Claim as a Pass-Through Claim, the holder of such Pass-Through Claim shall be deemed to have granted relief from the automatic stay with respect to its Pass-Through Claim, such Pass-Through Claim shall not be subject to the Diocese Discharge, and the parties shall retain their respective rights, remedies, claims, and defenses as they existed on the Petition Date. The Diocese shall designate all Pass-Through Claims no later than sixty days after the Effective Date. The Trust shall not be responsible for the payment of any Pass-Through Claims.

### c. Class 3 – General Unsecured Claims.

**Definition:** Class 3 consists of all General Unsecured Claims.

**Impaired and Voting:** Class 3 is Impaired, and therefore, holders of Class 3 Claims are entitled to vote.

**Treatment:** Unless the holder of an Allowed General Unsecured Claim agrees in writing to accept less favorable treatment, the Reorganized Diocese shall pay each holder of an Allowed General Unsecured Claim, Cash in two installments each equal to 50% of the Allowed amount of such General Unsecured Claim, as set forth in the CNA Plan. The Trust shall not be responsible for payment of General Unsecured Claims.

The foregoing payments to Class 3 Claimants shall be in full satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim. Notwithstanding anything to the contrary set forth above, no payments shall be made to any Protected Party on account of any General Unsecured Claim and all Protected Parties shall be deemed to have withdrawn any General Unsecured Claim with prejudice as of the Effective Date in consideration of the Channeling Injunction and Release provided in the CNA Plan.

**Voting:** Class 3 General Unsecured Claims are Impaired, and therefore, each holder of a Class 3 Claim is entitled to vote to accept or reject the CNA Plan.

### d. Class 4 – Abuse Claims.

**Definition:** Class 4 consists of all Abuse Claims.

**Impaired and Voting:** Class 4 is Impaired, and therefore, holders of Class 4 Abuse Claims are entitled to vote. Only for purposes of voting, each Class 4 Claim is deemed to be Allowed in the amount of $1.00.

**Treatment of Abuse Claims:** On the Effective Date and subject to the CNA Plan

- 18 -

provisions, the Trust shall be authorized to pay all Abuse Claims on a fair and equitable basis in accordance with the Allocation Protocol and Plan Documents, as promptly as practicable following the Effective Date. Class 4 Claims shall be satisfied solely from the Trust as set forth in the CNA Plan, the Trust Agreement, and the Allocation Protocol.

Class 4 Abuse Claims will be evaluated by the Abuse Claims Reviewer, who will evaluate the Abuse Claims and propose fair and equitable compensation. The Abuse Claim Reviewer will determine the eligibility of an Abuse Claim and then will make a Trust Settlement Offer to each Survivor of an amount to fully resolve his or her Abuse Claim. Unlike under the Diocese Plan, the Trust Settlement Offer will consist of the full Distribution each Survivor is owed from the Trust, without the need for litigation to determine first liability and then insurance coverage obligations.

If a Survivor accepts the Trust Settlement Offer, then the Survivor has a Trust Claim and will receive prompt, full, and final compensation in the form of a Distribution in the amount of the Trust Settlement Offer, subject to the applicable Payment Percentage. The rights of Survivors with Trust Claims to a trial by jury is waived and released.

If a Survivor rejects the Trust Settlement Offer, then the Survivor has a Tort Claim and may pursue litigation, at his or her own expense, against the Diocese or any Participating Party as a defendant, for the purpose of adjudicating whether the Diocese or Participating Party has liability for an Abuse Claim and the amount of any such liability, with the amount of his or her Trust Settlement Offer held in reserve until such time following Final Judgment as the applicable Distribution may be made.

If a Class 4 Abuse Claim is denied payment, in whole or in part, then the holder of such Class 4 Claim will have no rights against any of the Protected Parties relating to such Class 4 Claim.

The Trust shall fund the Trust Reserve and the Unknown Abuse Claim Allocation as set forth in the CNA Plan. Otherwise, all proceeds of the Trust shall be distributed to holders of Abuse Claims, including both Trust Claims and Tort Claims, on a fair and equitable basis.

**Release of Claims:** In order to receive a Distribution from the Trust, all Class 4 Claimants must execute and deliver to the Trust an Abuse Claim Release Agreement, which will be attached to the Plan Supplement as **Exhibit 2**, releasing all Claims against the Protected Parties. For the avoidance of doubt, nothing herein shall require a Survivor to release any Person that is not a Protected Party.

**Rights Against Joint Tortfeasors Preserved:** Nothing in the CNA Plan affects, diminishes, or impairs any Survivor's rights against any Joint Tortfeasor, including for that Joint Tortfeasor's comparative fault or joint and several liability for Abuse, if any. In any litigation against a Joint Tortfeasor, nothing in the CNA Plan or the Plan Documents shall be deemed an adjudication of a Class 4 Claim for any purpose or a limitation on the recovery against such Joint Tortfeasor.

**Abuse Claims Channeled to the Trust:** All liability for all Class 4 Abuse Claims

shall be permanently channeled to and assumed by the Trust.

**Limited Exception to Preserve Insurance Rights:** Notwithstanding anything else in the CNA Plan, all rights and obligations of Non-Settling Insurers shall be fully preserved and in no way affected, diminished, or impaired. As of the date of the filing of the CNA Plan, CNA is not aware of the existence of any Non-Settling Insurers.

**Punitive or Exemplary Damages Disallowed:** Any Claims for punitive or exemplary damages will be Disallowed and will not be paid by the Trust.

**Cooperation by the Diocese:** The Diocese must cooperate with the Abuse Claims Reviewer and/or the Trustee in connection with the administration of the Allocation Protocol. The Diocese's costs of cooperating will be paid in accordance with the DOR Entities' Post-Effective Date Costs Procedures.

**Claim Objections:** After the Effective Date, no Entity, other than the Trustee or a Non-Settling Insurer, may (a) object to any Class 4 Claim or (b) challenge the merit, validity, or amount of any Class 4 Claim, except that the Diocese or a Participating Party may assert legal or factual defenses in response to any Tort Claim. Any objection or challenge to a Class 4 Claim pending as of the Effective Date is deemed withdrawn and shall not be refiled.

### e. *Class 5 – Inbound Contribution Claims.*

**Definition:** Class 5 Inbound Contribution Claims consist of any Claim asserted against the Diocese for indemnity, contribution, or reimbursement arising out of, or related to, the Class 5 Claimant's liability to pay or defend any Abuse Claim.

**Impaired and Not Voting:** Class 5 Inbound Contribution Claimants will not receive or retain any property under the CNA Plan and therefore are deemed to have rejected the CNA Plan. Class 5 will not vote on the CNA Plan.

**Treatment:** Class 5 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 5 Claims on account of such Class 5 Claims.

### f. *Class 6 – Insurer Claims.*

**Definition:** Class 6 Insurer Claims consist of unsecured Claims by CNA against the Diocese arising out of the Diocese's breach of the Prior Insurance Settlement Agreement with CNA, to the extent such Claims are deemed not to be unclassified Administrative Claims.

**Impaired and Voting:** Class 6 is Impaired, and therefore, CNA is entitled to vote. Only for purposes of voting, CNA's Class 6 Claim is deemed to be Allowed in the amount of $1.00.

**Treatment:** If the CNA Plan is confirmed, then CNA agrees to withdraw its Class 6 Insurer Claim on the Effective Date.

# ARTICLE IV
# ABUSE CLAIMS

The Plan Proponent believes the CNA Plan presents an opportunity for Survivors to obtain larger, more certain recoveries, and payment in full earlier, than that which is likely to be achieved under other alternatives, including the Diocese Plan. Under the CNA Plan, Survivors will be eligible for compensation paid promptly from a fund totaling $201.35 million, on a fair and equitable basis as set forth in the Allocation Protocol.

**Average Claim value under the CNA Plan for those Survivors who timely filed Proofs of Claim is more than $400,000 per Survivor.**

Under the CNA Plan, the Trust will be able to pay Survivors the full amount of their Trust Claims, subject to the applicable Payment Percentage, immediately upon the Survivor's acceptance of the Trust Settlement Offer. Unlike under the Diocese Plan, such payment under the CNA Plan would not be contingent on success in two post-confirmation litigations (first to establish the Diocese's legal liability for a Survivor's claim and, second, to determine whether the Diocese's insurance provides coverage for the claim). Under the Diocese Plan, a Survivor wishing to recover compensation under Insurance Policies issued by CNA would have to establish the Diocese's liability in what would typically be a lengthy litigation that includes document discovery, depositions, and trial, followed by insurance coverage litigation.

Although the Diocese and the Committee have stated that they believe the Diocese Plan "represents an opportunity to maximize the potential recovery for all Abuse Claimants," they acknowledge that the litigation required under the Diocese Plan may be "protracted and expensive" and, in the end, "may not result in additional recovery." Under the CNA Plan, by contrast, the total amount CNA will pay to compensate Survivors will be immediately known ($75 million) and immediately available. The Plan Proponent expects that the large majority of Survivors will therefore see their Abuse Claims fully and finally resolved sooner, and paid a higher average amount, than under the Diocese Plan.

## A.    Assessment of Abuse Claims

As set forth in the Allocation Protocol, all Survivors will have their Abuse Claims channeled to the Trust. Each Claim will be assessed by the Abuse Claims Reviewer and paid by the Trust in accordance with the Allocation Protocol, which is designed to provide an expeditious, efficient, and inexpensive method for settling and resolving Abuse Claims. Survivors will submit any required documentation or evidence to the Abuse Claims Reviewer, who will review the information, determine a fair and equitable compensation amount under the provisions of the Allocation Protocol, and offer that amount to the Survivor as a settlement amount, referred to as a Trust Settlement Offer. If the Survivor accepts the Trust Settlement Offer, it will be paid promptly in the full amount as a Trust Claim, subject to the applicable Payment Percentage. Such payment will fully and finally resolve all liability to the Survivor.

If the Survivor rejects the Trust Settlement Offer, the Survivor becomes a Tort Claimant with a Tort Claim. The Trust will hold an amount equal to the Tort Claimant's Trust Settlement Offer in reserve until the Tort Claim is fully and finally resolved and Final Judgment

is obtained. Then, the Trust shall pay the Trust Settlement Offer to the Tort Claimant or release it back to the Trust, as applicable, as specified in the CNA Plan and the applicable Trust Documents.

The Trust shall be the sole source of recovery for holders of Abuse Claims, including Trust Claims and Tort Claims, and no holder of an Abuse Claim shall have further recourse against the Trust, the Diocese, the Estate, the Reorganized Diocese, any Settling Insurer, or any Protected Party. All Trust Settlement Offers are subject to the applicable Payment Percentage, as set forth in the Allocation Protocol.

For the avoidance of doubt, any Abuse Claim determined by the Abuse Claims Reviewer to be ineligible shall not be entitled to any Distribution from the Trust.

**B.      Legal Effect of Claims and Distributions Under the Allocation Protocol**

The Abuse Claims Reviewer's determinations are for Distribution purposes only and shall not constitute findings or the fixing of facts or liability concerning the Abuse Claims with any binding legal effect. The determination of eligibility, the Abuse Claims Reviewer's determination of the amount of Trust Settlement Offers, and the payment of Trust Distributions shall not be construed as an admission of liability by the Diocese, any Participating Party, or the Trust with respect to any Abuse Claim and shall have no *res judicata* or collateral estoppel effect on the Diocese, the Reorganized Diocese, any Participating Party, the Trust, or any Non-Settling Insurer. Trust Distributions do not release the Diocese nor are Trust Distributions an accord and satisfaction or a novation of the Diocese's or any Protected Party's liability on account of the Abuse Claims.

The Trust's act of making a Distribution to a Survivor is immaterial to, and shall not be construed as, a determination or admission of the Diocese's or any Participating Party's liability for, or damages with respect to, any Abuse Claim. The determination of qualification, amount of Trust Settlement Offers, and the payment of Distributions is not a settlement, release, accord and satisfaction, or novation of any Abuse Claim and cannot be used by any Joint Tortfeasor as a defense to any alleged joint liability. Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of eligibility nor payment of Distributions shall constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation between or among the Diocese, the Participating Parties, Non-Settling Insurers, or any other Person. The Abuse Claims Reviewer's determination of the amount of Trust Settlement Offers and the Trust's payment of Trust Distributions do not create an admission of the fact of liability, or the extent of damages, on behalf of the Diocese and/or any Participating Parties.

**C.      Distributions to Abuse Claimants**

A Survivor whom the Abuse Claims Reviewer determines to be entitled to a Distribution will receive a Distribution from the Trust in the amount(s) and at the time(s) provided for in the Allocation Protocol and Trust Documents. Any payment on an Abuse Claim constitutes a payment for damages on account of a personal physical injury or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended. For the avoidance of doubt, Survivors' recoveries on their Claims shall be limited to

- 22 -

their Trust Distributions, if any, under the Allocation Protocol and Trust Documents, and the Survivors shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever on their Abuse Claims from the Diocese, the Reorganized Diocese, any Participating Party, or their respective assets, or from any Settling Insurers, Settling Insurer Policies, or Settling Insurers' assets, for any Abuse Claims that are Channeled Claims, even if they are denied a Trust Distribution.

## D.    Litigation of Abuse Claims

For any Survivor who prefers to litigate his or her Abuse Claim to a jury, the CNA Plan provides that option. The Survivor does not need to seek permission from the Trust to do so. Instead, the Survivor can simply notify the Abuse Claim Reviewer that he or she will pursue a lawsuit in the tort system at his or her own expense, at which point the Survivor will become known as a Tort Claimant with a Tort Claim. Tort Claims will still be paid through the Trust. Following entry of Final Judgment:

- If the amount of the Final Judgment is less than or equal to the amount of the Trust Settlement Offer, the Trust shall promptly pay to the Tort Claimant the amount of the Final Judgment as full and final satisfaction of the Tort Claim;

- If the amount of the Final Judgment is greater than the amount of the Trust Settlement Offer, the Trust shall (i) promptly pay to the Tort Claimant the amount of the Trust Settlement Offer and (ii) pay to the Tort Claimant the amount of the Excess Recovery Amount, but only after all Trust Settlement Offers owed to all Abuse Claimants are paid in full. Excess Recovery Amounts are subject to the applicable Payment Percentage, as set forth in the Allocation Protocol;

- For the avoidance of doubt, a Tort Claimant shall not recover from the Trust any amounts greater than the amount of Final Judgment entered on his or her Tort Claim.

If a court ultimately determines that the Diocese and/or Participating Party does not have any liability for a particular Survivor's Tort Claim, then the Tort Claimant shall not receive any distribution from the Trust, and the amount of the Trust Settlement Offer reserved for potential payment to the Survivor shall be released back to the Trust.

A Tort Claimant forfeits any right to have his or her Abuse Claim liquidated as a Trust Claim. Tort Claims can only be filed in the U.S. District Court for the Western District of New York. The Trust has the option to defend any Tort Claim, at Trust expense, and the Diocese and/or Participating Party shall use reasonable efforts to cooperate. All DOR Entities' Post-Effective Date Costs incurred in connection with Litigation Claims shall be paid in accordance with the provisions of Section 8.11 of the CNA Plan.

Notwithstanding their availability in the tort system, no multiple, exemplary, statutory, enhanced, or punitive damages (*i.e.*, damages other than compensatory damages), and no interest, attorneys' fees, or costs (including statutory attorneys' fees and costs) shall be payable with respect to any Tort Claim.

For the avoidance of doubt, all Class 4 Abuse Claims, whether a Trust Claim or a Tort Claim, shall be permanently channeled to the Trust, and thereafter Survivors shall be entitled to assert their Abuse Claims exclusively against the Trust, and Abuse Claims shall be resolved in accordance with the terms, provisions, and procedures of the Trust Documents. Holders of Disallowed Abuse Claims shall have no recourse against the Trust, the Diocese, the Estate, the Reorganized Diocese, any Settling Insurer, or any Protected Party.

## E.    Unknown Abuse Claims

An Unknown Abuse Claim is an Abuse Claim held by a Person who at the time of the Claims Bar Date was under a disability or other condition recognized by applicable law that would toll the applicable statute of limitations, where the earliest incident of Abuse occurred before the Petition Date and no Proof of Claim was filed or deemed filed (or otherwise allowed by the Bankruptcy Court) by the Effective Date. An Unknown Abuse Claimant may receive payment from the Unknown Abuse Claim Allocation at the discretion of the Abuse Claim Reviewer, as provided in the Allocation Protocol.

Fees payable to the Unknown Claimant Representative for review of the Unknown Abuse Claims shall be paid by the Diocese or the Reorganized Diocese in accordance with the DOR Entities' Post-Effective Date Costs Procedures.

## F.    Claim Withdrawal

A Survivor may withdraw his or her Abuse Claim at any time on written notice to the Trustee. If withdrawn, the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and the Survivor will still be bound by the Diocese Discharge and all injunctive provisions of the CNA Plan, including the Channeling Injunction.

## G.    Medicare Procedures

With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims. Prior to making any Distribution to a Survivor on behalf of an Abuse Claim, the Trustee shall obtain a certification of compliance with MMSEA by the Survivor from the Survivor's counsel, or, if the Survivor is *pro se,* the Trustee shall obtain a certification of compliance with MMSEA for such Survivor from a third-party administrator engaged by and paid for by the Trust for the purpose of providing certifications of compliance with MMSEA for all such *pro se* Survivors. The cost of such certification shall be deducted from the Survivor's Distribution; provided, however, that to the extent such Survivor's distribution is not sufficient to pay for such costs, the Trust shall pay such costs. The certifications of compliance shall provide that the Survivor has or will provide for the payment and/or resolution of any obligations owing or asserted under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance in connection with, or relating to, such Survivor's Abuse Claim.

For additional information on Medicare procedures, please refer to Article V, Section H of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Diocese of Rochester Dated September 13, 2023 [ECF No. xxxx, Case No. 2-19-20905].

# ARTICLE V
## SETTLING INSURERS

Under the CNA Plan, all known insurers that issued insurance policies that may afford coverage for Abuse Claims against the Diocese and/or the Participating Parties are Settling Insurers. The Insurance Settlement Amounts are as follows:

| Settling Insurer | Insurance Settlement Amount |
|---|---|
| CNA | $75,000,000 |
| Interstate | $50,000,000 |
| LMI/Underwriters | $20,600,000 |
| First State | $750,000 |

Pursuant to §§ 105(a), 363(b), 363(f), 363(m), and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable, under the CNA Plan the Diocese will sell back each Insurance Policy to the respective Settling Insurer, with such sale being free and clear of all Liens, Claims, interests, charges, and other encumbrances and liabilities of any kind, and each Settling Insurer will pay its respective Insurance Settlement Amount to the Trust. The Settling Insurers will receive the benefits of the Releases and Injunctions described in the CNA Plan, and the Insurance Settlements will be in full and final settlement of the Settling Insurers' responsibilities, liabilities, and obligations to provide insurance coverage (including defense or indemnification) for all past, present, and future Claims, including Abuse Claims, that directly or indirectly arise out of or relate in any way to, or are asserted in connection with, the Insurance Policies, including any Channeled Claims, reimbursement obligations for Conditional Payments under the MSPA, or Claims that directly or indirectly arise from, relate in any way to, or are asserted in connection with, the Abuse Claims or the Chapter 11 Case. All Claims, including Abuse Claims, Direct Action Claims, Extra-Contractual Claims, and Insurer Contribution Claims, by any Person or Entity against the Settling Insurers shall be released as of the Effective Date.

Within five days after payment of each Settling Insurer's respective Insurance Settlement Amount, the Diocese or Trust (as applicable) and the Settling Insurer will effect dismissal with prejudice of their Claims against each other in the Insurance Adversary Proceeding, with each party bearing its own costs and fees.

The rights of the Parties under any Insurance Settlements will be determined under the applicable Insurance Settlement, the Final Order approving such Insurance Settlement (which may be included in the Confirmation Order), the CNA Plan, and the Confirmation Order. The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to such Insurance Settlement, the CNA Plan, the Confirmation Order, the Final Order approving the Insurance Settlement (which may be included within the Confirmation Order), and the Bankruptcy Code shall become effective pursuant to the terms of such Insurance Settlement.

In consideration of the releases and Channeling Injunction, the Supplemental Settling Insurer Injunction, and other covenants set forth herein, subject to the occurrence of the Effective Date, and upon receipt by the Trust of the Insurance Settlement Amounts, each of the Protected Parties: (a) irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims it has or might have in the future against the other Protected Parties with respect to any contribution, subrogation, indemnification, or other similar Claim arising from or relating to released Abuse Claims covered or alleged to be covered under the Settling Insurer Policies, and under any Settling Insurer Policies; and (b) consents to the sale of the Diocese's and Participating Parties' Claims, if any, in or arising under the Settling Insurer Policies in accordance with the Insurance Settlements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the CNA Plan. Nothing in Section 12 of the CNA Plan shall be construed to bar either (a) a Claim based on Abuse against a Person who is not a Protected Party or (b) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing subsection (a) under an insurance policy other than a Settling Insurer Policy.

## ARTICLE VI
## NON-SETTLING INSURERS

As of the date of the filing of the CNA Plan, the Plan Proponent is not aware of the existence of any Non-Settling Insurers to which Section 6 of the CNA Plan would apply. However, to the extent a Non-Settling Insurer is identified in the future, Section 6 of the CNA Plan provides for the treatment of such Non-Settling Insurers, which may be pursued by the Trust only, acting on behalf of Class 4 Claimants.

In order to preserve coverage under any Insurance Policy issued by a Non-Settling Insurer, Survivors specifically reserve, and do not release, any Claims they may have against the Diocese, the Reorganized Diocese, or any other Protected Party to the extent, and only to the extent, that such Claims implicate coverage under any Non-Settling Insurer's Policy(ies), but recovery may only be pursued by the Trust and is limited to the proceeds of the Non-Settling Insurer's Policy(ies). All other damages (including damages for Extra-Contractual Claims), awards, judgments over policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurer because of its conduct regarding coverage for, or defense or settlement of, any Abuse Claim, and any such damages or awards will solely have recourse against the Non-Settling Insurer and the Trust Assets in accordance with the CNA Plan and the Trust Documents and shall have no recourse whatsoever at any time against any Protected Party or any property or interest in property of any Protected Party.

The Protected Parties, the Trust, and each Non-Settling Insurer retain legal and factual defenses that may exist with respect to such Abuse Claim and, except as set forth in the CNA Plan, all coverage defenses. Nothing in the CNA Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim. All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

The Trust shall have no obligation to take any action to enforce an Insurance Policy of a Non-Settling Insurer, including any obligation to commence or prosecute any action against any Non-Settling Insurer or to defend an action commenced by a Non-Settling Insurer, although the Trust may do so in its sole and absolute discretion.

On the Effective Date, (i) the Diocese and each of the Participating Parties will be deemed to have assigned to the Trust all of their Insurance Claims and rights of recovery on account of such Insurance Claims against the Non-Settling Insurers and (ii) the Diocese will be deemed to have assigned to the Trust the Non-Settling Insurance Policies and the right to proceeds under such Non-Settling Insurer Policies. Any recovery by the Trust on Insurance Claims under Non-Settling Insurer Policies relating to the Diocese's and/or Participating Parties' liability for Abuse Claims shall become a Trust Asset and shall be distributed as provided in the CNA Plan, the Trust Agreement, and the Allocation Protocol.

Nothing in the CNA Plan prevents a Non-Settling Insurer from becoming a Settling Insurer by entering into a settlement with the Trust on terms and conditions acceptable to the Trustee and subject to the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019.

## ARTICLE VII
## THE TRUST

The Trust will be established by the Trust Agreement. The Plan Proponent anticipates establishment of the Trust will be materially the same as in the Diocese's proposed plan. The key differences are as to how the Trust will be funded, the anticipated amount of Trust Expenses, and how claims will be paid:

- Under the CNA Plan, the initial funding of the Trust will total $201.35 million in cash. There are no known Insurance Claims to assign to the Trust because there are no known Non-Settling Insurers. In contrast, the Diocese's proposed plan will fund the Trust with only $126.35 million in cash; in addition, contingent claims against CNA under insurance policies allegedly issued by CNA would be assigned to the Trust under the Diocese Plan.

- Under the CNA Plan, there are no anticipated Insurance Claims to pursue, because CNA is a Settling Insurer. The Plan Proponent therefore anticipates Trust Expenses will be lower than under the Diocese Plan, which requires the Trust to pay attorneys to pursue litigation against CNA.

- Under the CNA Plan, all Abuse Claims, including Tort Claims, will be paid from the Trust. A Survivor who obtains a Final Judgment on his or her Tort Claim will receive payment from the Trust as set forth in the Allocation Protocol. Under the Diocese Plan, by contrast, if a Survivor obtains a judgment against the Diocese following litigation in the tort system, the Survivor must either (i) assign the judgment to the Trust and the Trust will seek payment from CNA, or (ii) the Survivor may pursue CNA directly for payment of the judgment.

## A.     Establishment of the Trust and Responsibilities of the Trustee

On the Confirmation Date, or as soon as practicable thereafter, the Trust shall be established in accordance with the Trust Documents for the exclusive benefit of Survivors. The Trust will assume all liability for and rights concerning all Channeled Claims, including the rights to settle the Channeled Claims. The Trust will control the allocation and Distribution of the Abuse Claims Settlement Fund to Survivors pursuant to the terms of the Allocation Protocol, the Trust Agreement, the CNA Plan, and the Confirmation Order.

On or before the Effective Date, the Trust will be funded by the (i) $55 million DOR Entities Cash Contribution, which will be used to establish the Trust Reserve and the Unknown Claim Allocation, with any balance to be included in the Abuse Claims Settlement Fund, (ii) Insurance Settlement Amounts (totaling $146.35 million in the aggregate, including $75 million from CNA), and (iii) assignment of Outbound Contribution Claims. On the Effective Date, all Trust Assets will vest in the Trust.

The initial Trustee will be identified in the Confirmation Order. The Trustee shall commence serving as the Trustee on the Effective Date, but will be permitted to act in accordance with the terms of the Trust Agreement from an earlier date, to the extent authorized by the Bankruptcy Court. The Trustee will be a fiduciary of the Trust under the terms of the Trust Agreement.

The Trustee will make timely Trust Distributions to the Survivors.

The Trustee will also pay Trust Expenses, which means the costs of administering the Trust, including payments to the Trustee and any retained professionals, and funding of the DOR Entities' Post-Effective Date Costs pursuant to the DOR Entities' Post-Effective Date Costs Procedures. The Trust will also reserve the Unknown Abuse Claims Allocation. The Trust has the right to pursue Insurance Claims against any Non-Settling Insurers and may seek reimbursement from any Non-Settling Insurer. However, because there are no known Non-Settling Insurers under the CNA Plan, the Plan Proponent does not anticipate any such pursuit of Insurance Claims. The Plan Proponent expects that Trust Expenses will be lower under the CNA Plan than under the Diocese Plan.

Absent permission of the Bankruptcy Court, no cause of action shall be commenced in any forum, other than the Bankruptcy Court, against the Trustee in his or her official capacity, with respect to his or her status, duties, powers, acts, or omissions as Trustee. There is no recourse directly or indirectly against the Trustee personally, or against any Agent retained by the Trustee in accordance with the terms of the Trust Agreement or the CNA Plan. None of the Diocese, the Reorganized Diocese, or any Participating Party shall be liable for any acts or omissions by the Trust, the Trustee, or their respective Agents or Related Persons.

## B.     Non-Monetary Commitments

In order to further promote healing and reconciliation, and in order to continue efforts to prevent Abuse from occurring in the future, the Reorganized Diocese agrees that, beginning within thirty days after the Effective Date (unless a different date is provided in the

Confirmation Order), it will use reasonable efforts to undertake and observe certain non-monetary commitments as agreed upon with the Committee and set forth as **Exhibit 7** in the Plan Supplement.

## C.     Indemnification by Trust

The Trust shall defend, indemnify, and hold harmless the Trustee and its Agents to the fullest extent permitted under the laws of New York in the performance of their duties hereunder.  For the avoidance of doubt, the Diocese, Reorganized Diocese, Participating Parties, the Settling Insurers, and their respective Agents shall not be deemed to be Agents of the Trust unless specifically authorized as such in writing by the Trustee.

The Trust shall indemnify and hold each of the Protected Parties harmless from and against any and all Channeled Claims, as well as indemnify and reimburse the Protected Parties for all fees, costs, and expenses incurred after the Effective Date and arising out of or related to Channeled Claims (including such fees, costs, and expenses incurred in connection with discovery), to the extent set forth in the Trust Documents.  Pursuant to this indemnification, each Protected Party has the right (a) to appoint defense counsel of its choosing, subject to consent by the Trustee, such consent not to be unreasonably withheld, and (b) control the defense and settlement of any such Channeled Claim, provided that the Protected Party keeps the Trustee reasonably informed and notifies the Trustee of any settlement.

## D.     Termination

The Trust shall terminate after its liquidation, administration, and Distribution of the Trust Assets in accordance with the CNA Plan and its full performance of all other duties and functions set forth in the Trust Agreement.

**ARTICLE VIII**
**ALTERNATIVES TO THE PLAN**

The Plan Proponent believes the CNA Plan is in the best interests of the Creditors and should, accordingly, be accepted and confirmed.  However, there are alternatives to the CNA Plan.

## A.     Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code

One alternative is the Diocese Plan.  The Diocese Plan would establish a compensation fund of $126.35 million in cash and would also assign to the Trust the right to pursue certain insurance claims against CNA.

The value of the insurance claims against CNA under the Diocese Plan is uncertain. The Diocese Plan provides for up to 38 Stipulated Judgments to be entered into by Survivors and the Diocese.  However, the Bankruptcy Court in this Chapter 11 Case has suggested the Stipulated Judgments may not be "insurance neutral," which could mean a plan containing Stipulated

Judgments cannot be confirmed.[2]  The Diocese Plan would also allow some claimants to become Litigation Claimants, with the Trust's permission.  Stipulated Judgments and Litigation Claims are of uncertain value and timing because they depend on the outcome of two proceedings.

For Stipulated Judgments, under the first proceeding, the Diocese would seek authorization from the Bankruptcy Court to enter into Stipulated Judgments, which would be as to liability only.  If that approval is obtained, the Stipulated Judgment would be assigned to the Trust and the Trust would initiate a lawsuit to determine the amount of damages payable on the Stipulated Judgment.  Proving damages requires an evidentiary showing, which may require a Survivor to provide evidence or testimony.

Under the Litigation Claims protocol in the Diocese Plan, a Litigation Claimant will pursue a lawsuit at his or her own expense for the purpose of establishing the Diocese's and/or a Participating Party's liability for the Abuse.  Establishing liability may require responding to discovery (including giving sworn testimony in a pretrial deposition) and then testifying at trial.  It also may take months or years to schedule a trial date and try the case.

Under the Diocese Plan, Litigation Claims may proceed in state court or federal court.  But not many cases get to trial, and cases that do go to trial take a long time to get there.  The New York State Unified Court System has published data showing that during 2022, only 17 civil cases went to verdict in the state trial court in Monroe County, which includes Rochester.  By comparison, over 3,600 new civil cases were filed in Monroe County during 2022.  The Federal Judicial Center published data indicated that, during the 12-month period ending June 30, 2023, the most recent period for which such information is available, the U.S. District Court for the Western District of New York (which includes the federal courts in both Rochester and Buffalo) conducted only five civil trials.  The statistics do not disclose how long it took for those cases to come to trial, but for matters terminated during or after pretrial, the average time to resolution was 25.3 months (slightly more than two years).  It is reasonable to expect that it would take even longer for cases to come to trial, particularly considering the small number of civil cases coming to trial.  By way of comparison, the time for civil cases to come to trial in other federal courts in the Second Circuit (New York, Connecticut, and Vermont) during the same time period ranged from 39.2 months in the District of Connecticut to 67.0 months in the Eastern District of New York.

Thus, a Survivor choosing a litigation option under the Diocese Plan can expect, given the small number of civil cases tried and the above statistical information, that his or her case may not come to trial for 3-½ to 5-½ years from the end of the Diocese's bankruptcy, and possibly even later.

In the first lawsuit, liability and damages may be contested by the Diocese.  Which defenses are asserted would depend on the facts of the case, but could include, without limitation, some or all of the following:

---

[2]      *See* Decision and Order Dissolving Judicial Stay of Deadlines in Adversary Proceeding and Terminating Mediation Order at 3, Dkt. No. 233, Adv. Proc. No. 2-19-02021-PRW (Bankr. W.D.N.Y. April 25, 2023).

- The Abuse did not occur as alleged;

- The Abuse was not foreseeable by the Diocese or Participating Party because the alleged perpetrator had no previous history of committing Abuse;

- The Diocese or Participating Party had no control over, or responsibility for, the perpetrator's acts (for example, if the perpetrator was not a Catholic priest and was not affiliated with a diocesan school or facility);

- The Diocese or Participating Party shared liability for the Abuse such that fault should be allocated in part or in whole to other entities;

- The Survivor was previously compensated and/or previously released his or her Abuse Claim;

- The Survivor's proof of claim was not filed before the Bar Date;

- The amount of the damages suffered by the Survivor is less than alleged in the complaint or proof of claim.

In the case of either a Stipulated Judgment or a Litigation Claim, the second lawsuit under the Diocese Plan would be pursued by the Trust for the purpose of establishing CNA's obligation (if any) under its alleged insurance policies to pay for either the Stipulated Judgment or Litigation Claim. In the second lawsuit, CNA would have the right to assert coverage defenses. Depending on the facts established in the first lawsuit, CNA's coverage defenses could include, without limitation, the following:

- The Diocese and/or Participating Party cannot establish that certain of the alleged insurance policies, for which neither the Diocese nor CNA have been able to locate complete copies, were in fact ever issued;

- The Diocese and/or Participating Party cannot establish the terms and conditions of certain of the insurance policies, for which neither the Diocese nor CNA have been able to locate complete copies;

- Certain of the Participating Parties may not be entitled to coverage under certain of the insurance policies issued to the Diocese;

- The Diocese failed to comply with conditions precedent to coverage under the insurance policies, including the requirement that it provide prompt notice of the claim and/or the occurrence, the requirement that the Diocese cooperate with CNA in the defense of any claims, and the requirement that the Diocese avoid agreeing to voluntary obligations;

- 31 -

- The Diocese knew that the perpetrator had a history of Abuse and, therefore, the injury was not caused by an accident, was not fortuitous, or was expected or intended from the standpoint of the Diocese and/or Participating Party; and

- The injury either does not qualify as "bodily injury" within the meaning of the alleged insurance policies, or any "bodily injury" did not occur during the policy period of any of the CNA policies.

The Committee has asserted that CNA has waived some or all of these coverage defenses. CNA disputes the Committee's position, and believes that there is no New York court decision that definitively addresses the issue. Litigating these coverage issues is likely to take months or years.

Pursuing and prevailing in two separate lawsuits, one to establish liability and the second to establish coverage, is likely to require the personal involvement of Survivors and take many years to conclude, with no guarantee of higher recoveries for Survivors or other Creditors. For these reasons, the Plan Proponent does not believe the Diocese Plan is a preferable alternative to the CNA Plan, from the standpoint of certain Survivors. Each Survivor will have to decide for himself or herself whether the CNA Plan or the Diocese Plan better serves their personal best interests.

## B.     Dismissal of the Chapter 11 Case

If the CNA Plan is not confirmed, the Diocese or another party in interest may seek to dismiss the Chapter 11 Case. After appropriate notice and a hearing, the Bankruptcy Court could grant the request and dismiss the Chapter 11 Case. Dismissal of the Chapter 11 Case would have the effect of restoring, or attempting to restore, all parties to the position they were in immediately prior to the Petition Date.

Upon dismissal of the Chapter 11 Case, the protections afforded to the Diocese by the Bankruptcy Code would be lost, likely resulting in the expensive and time-consuming process of protracted litigations between the Diocese and individual Survivors and between the Diocese and its Insurers. In addition to the expense and delay, the Plan Proponent believes that these actions could lead to an inequitable recovery for Abuse Claimants, with the first Survivors to obtain and enforce judgments against the Diocese depleting the Diocese's assets and resulting in insufficient assets to satisfy later judgments. Therefore, the Plan Proponent believes that dismissal of the Diocese's Chapter 11 Case is not a preferable alternative to confirming the CNA Plan.

## C.     Chapter 7 Liquidation Is Not a Viable Alternative

Pursuant to 11 U.S.C. § 1112(c), if a debtor is "not a moneyed corporation," a debtor's Chapter 11 case cannot be converted to a Chapter 7 case without the debtor's consent. The Diocese, as a non-profit entity, is not a moneyed corporation, and cannot be forced to convert its Chapter 11 Case to a Chapter 7 case. Further, the Plan Proponent estimates that recoveries for Survivors holding Class 4 Abuse Claims will be greater under the CNA Plan than in liquidation under Chapter 7 of the Bankruptcy Code because the total amount of assets available for Distribution is greater under the CNA Plan than in liquidation under Chapter 7, and because

theoretical Distributions under a Chapter 7 case would likely be delayed. Thus, conversion to Chapter 7 is not a viable alternative to the CNA Plan.

**D.** **Appointment of a Chapter 11 Trustee is Not a Viable Alternative**

As a result of limitations imposed by the First Amendment to the United States Constitution and the federal Religious Freedom and Restoration Act, a Chapter 11 trustee cannot be appointed to replace the Bishop's administration of the Diocese.

**ARTICLE IX**
**EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE**

Under the CNA Plan, the Diocese will receive a discharge and the benefit of an injunction under the Bankruptcy Code, and the Diocese, Participating Parties, Settling Insurers, and their respective Protected Parties will receive the benefit of a channeling injunction applicable to Abuse Claims, which channels all Abuse Claims to the Trust. There is also a Supplemental Settling Insurer Injunction to protect insurance assets, if any, provided by Non-Settling Insurers. The full text of the injunctions is set forth below.

**A.** **General Injunction and Discharge**

1. *General Injunction.* **EXCEPT WITH RESPECT TO ABUSE CLAIMS AND INBOUND CONTRIBUTION CLAIMS ADDRESSED IN SECTION 12.2 OF THE PLAN, OR AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OF ANY KIND OR NATURE AGAINST THE DIOCESE, WHETHER KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, ANY PARTICIPATING PARTY, OR THE DIOCESE'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF NON-ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H), AND 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT (A) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (B) SUCH CLAIM IS ALLOWED UNDER THE PLAN, OR (C) THE HOLDER OF SUCH CLAIM HAS ACCEPTED**

**THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE CONFIRMATION DATE, FROM (W) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE CLAIMS ALLOWANCE PROCEDURE PROVIDED FOR IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (X) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM, (Y) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM AND (Z) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DIOCESE OR THE REORGANIZED DIOCESE OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM.**

2. *General Discharge.* Except as otherwise expressly provided in the CNA Plan or in the Confirmation Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese, the Estate, and the Reorganized Diocese will be discharged from all liability for any and all Claims other than Abuse Claims.

**B.** <u>**Injunction and Discharge of Abuse Claims and Inbound Contribution Claims.**</u>

1. *Injunction of Abuse Claims and Inbound Contribution Claims.* **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN SECTION 12.2.2 OF THE PLAN OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE ALL PERSONS SHALL BE PERMANENTLY STAYED, ENJOINED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE AGAINST THE DIOCESE, THE REORGANIZED DIOCESE, OR ANY PARTICIPATING PARTY, ANY ABUSE CLAIMS OR INBOUND CONTRIBUTION CLAIMS, KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, ANY PARTICIPATING PARTY, OR THE DIOCESE'S OR ANY PARTICIPATING PARTY'S AGENTS, BEFORE THE**

- 34 -

**CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H), AND 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT (A) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (B) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (C) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN.**

**IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

**THE DISCHARGE AND INJUNCTIONS CONTAINED IN THE PLAN AND THE RELEASES PROVIDED UNDER THE PLAN DO NOT RELEASE OR IMPAIR AN ABUSE CLAIMANT'S RIGHT TO RECOVER ON ANY ABUSE CLAIM AGAINST (Y) ANY PERPETRATOR OF ABUSE FOR ACTS OF ABUSE THAT ARE INDEPENDENT OF THE LIABILITY OF THE DIOCESE OR ANY PARTICIPATING PARTY OR (Z) ANY JOINT TORTFEASOR.**

2.     ***Discharge of Diocese.*** Except as otherwise expressly provided in the CNA Plan or Confirmation Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese, the Estate, the Reorganized Diocese, and the Participating Parties will be discharged from all liability for any and all Abuse Claims and Inbound Contribution Claims.

3.     ***Preservation of Insurance Claims.*** The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the fact that the Diocese is in bankruptcy. For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any Distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's and/or any Participating Party's liability for Abuse Claims, but nothing herein shall affect, diminish, or impair a Non-Settling Insurer's right to offset amounts an Abuse Claimant receives as a Trust Distribution. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims. Any such recoveries by the Trust from Non-Settling Insurers will

- 35 -

be added to the Abuse Claims Settlement Fund to be distributed pursuant to the terms of the Allocation Protocol and the CNA Plan. Nothing in the CNA Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies except to the extent consistent with the provisions of the Bankruptcy Code or other applicable law.

**C.** **Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties.**

IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105, 363, AND 1123 OF THE BANKRUPTCY CODE:

(a) ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.

(b) ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:

(i) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

(ii) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, FROM ANY OF

- 36 -

THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES;

(iii) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;

(iv) ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:

1. ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;

2. ANY OF THE PROTECTED PARTIES; OR

3. THE PROPERTY OF ANY OF THE PROTECTED PARTIES.

(c) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND

(d) ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.

THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES. IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.

1. ***Limited Exception to Injunctions.*** The injunctions set forth in Sections 12.2.1 and 12.3 of the CNA Plan (and set forth above) shall not prevent the prosecution of (a) Tort Claims pursued by a Tort Claimant at the Tort Claimant's expense against the Diocese or any Participating Party, to the limited extent authorized by Section 4.4.1 of the CNA Plan, (b) Inbound Contribution Claims pursued by a Non-Settling Insurer against the Diocese or any Participating Party, or (c) Insurance Claims pursued by the Trustee on behalf of Abuse Claimants against Non-Settling Insurers.

   Notwithstanding anything to the contrary herein, all collection efforts against any Protected Party shall be permanently enjoined and (a) any Final Judgment entered on a Tort Claim or recovery on account of an Inbound Contribution Claim shall be enforceable solely against the Trust and (b) any recovery on an Insurance Claim shall be enforceable solely against the Non-Settling Insurer by the Trust.

**D.  Supplemental Settling Insurer Injunction.**

**PURSUANT TO SECTIONS 105, 363, 1123, AND 1129 OF THE BANKRUPTCY CODE, AND IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING INSURERS PURSUANT TO THE INSURANCE SETTLEMENTS, INCLUDING THE SETTLING INSURERS' PURCHASES OF THEIR SETTLING INSURER POLICIES FREE AND CLEAR OF ALL CLAIMS PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ANY AND ALL PERSONS WHO HAVE HELD, NOW HOLD, OR WHO MAY IN THE FUTURE HOLD ANY CLAIMS (INCLUDING ALL DEBT HOLDERS, ALL EQUITY HOLDERS, ALL PERSONS HOLDING A CLAIM, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, PERPETRATORS, AND ALL OTHERS HOLDING INTERESTS OF ANY KIND OR NATURE WHATSOEVER, INCLUDING THOSE CLAIMS RELEASED OR TO BE RELEASED PURSUANT TO THE INSURANCE SETTLEMENTS) AGAINST ANY OF THE SETTLING INSURERS, INCLUDING (A) CLAIMS RELATING TO THE SETTLING INSURER POLICIES, INCLUDING ABUSE CLAIMS, INBOUND CONTRIBUTION CLAIMS, AND INSURER CONTRIBUTION CLAIMS, (B) THE PAYMENT OF ANY OF THE CLAIMS IDENTIFIED IN (A), INCLUDING MEDICARE CLAIMS, AND (C) EXTRA-CONTRACTUAL CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, TO ASSERT, ENFORCE OR ATTEMPT TO ASSERT OR ENFORCE ANY SUCH CLAIM OR INTEREST AGAINST THE SETTLING INSURERS OR THE SETTLING INSURER POLICIES.**

**THE SUPPLEMENTAL SETTLING INSURER INJUNCTION WILL BE EFFECTIVE WITH RESPECT TO A SETTLING INSURER ONLY AS OF**

**THE DATE THAT THE TRUST RECEIVES THE INSURANCE SETTLEMENT AMOUNT PURSUANT TO THE TERMS OF THE APPLICABLE INSURANCE SETTLEMENT. THIS SUPPLEMENTAL SETTLING INSURER INJUNCTION BARS THE ABOVE-REFERENCED ACTIONS AGAINST THE SETTLING INSURERS AND THE SETTLING INSURER POLICIES, BUT AGAINST NO OTHER PERSON OR THING; *PROVIDED*, *HOWEVER*, NOTHING IN THIS SUPPLEMENTAL SETTLING INSURER INJUNCTION SHALL LIMIT, OR BE DEEMED OR OTHERWISE INTERPRETED TO LIMIT, THE SCOPE OF THE DISCHARGE OR CHANNELING INJUNCTION IN FAVOR OF THE PROTECTED PARTIES, INCLUDING THE SETTLING INSURERS. THE FOREGOING INJUNCTIVE PROVISIONS ARE AN INTEGRAL PART OF THE PLAN AND ARE ESSENTIAL TO ITS IMPLEMENTATION.**

E.     <u>**Litigation/Settlement Between a Participating Party or Abuse Claimant and Non-Settling Insurers.**</u>

The Channeling Injunction shall channel all Inbound Contribution Claims, including Insurer Contribution Claims, to the Trust. If a Non-Settling Insurer asserts an Insurer Contribution Claim, (a) such Non-Settling Insurer may only recover on its Insurer Contribution Claim against the Trust, and the Trust may assert the legal or equitable rights (if any) of the Settling Insurer in defense of the claim, and (b) to the extent such Insurer Contribution Claim is determined to be valid, the liability (if any) of such Non-Settling Insurer to the Trust shall be reduced by the amount of such Insurer Contribution Claim.

F.     <u>**Certain Litigation Matters.**</u>

Upon the occurrence of the Effective Date, the Claim Objections, the Appeal, and the Prior Rule 9019 Approval Motion shall be deemed withdrawn with prejudice.

G.     <u>**Injunction Against Interference with Plan.**</u>

Upon entry of the Confirmation Order, all holders of Claims shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the CNA Plan.

H.     <u>**Release by Holders of Claims.**</u>

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, AS OF THE EFFECTIVE DATE, ALL HOLDERS OF CLAIMS, INCLUDING ABUSE CLAIMS (THE "<u>RELEASING PARTIES</u>"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE PROTECTED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE PARTICIPATING PARTIES, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE PROTECTED PARTIES' BUSINESSES, THE**

FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.

FOR THE AVOIDANCE OF DOUBT, SUBJECT TO THE LIMITATIONS SET FORTH IN THE PLAN, A TORT CLAIMANT OR THE TRUST MAY NAME THE DIOCESE OR ANY PARTICIPATING PARTY IN A CASE OR PROCEEDING TO ADJUDICATE WHETHER THE DIOCESE OR ANY PARTICIPATING PARTY HAS LIABILITY FOR AN ABUSE CLAIM AND THE AMOUNT OF ANY SUCH LIABILITY, BUT RECOURSE SHALL BE LIMITED TO THE TRUST OR TO THE PROCEEDS OF ANY NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS BY THE TRUST, AS APPLICABLE.

I.    Mutual Releases.

EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED AND ASSIGNED TO THE REORGANIZED DIOCESE AND OBLIGATIONS ARISING UNDER THE PLAN, ON THE EFFECTIVE DATE, EACH OF THE PROTECTED PARTIES, THE TRUST, AND EACH ABUSE CLAIMANT SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER, AND THEIR RESPECTIVE RELATED PERSONS, EXCEPT THAT ABUSE CLAIMANTS SHALL NOT WAIVE THEIR RIGHTS TO DISTRIBUTIONS UNDER THE TRUST IN ACCORDANCE WITH THE TRUST AGREEMENT AND THE ALLOCATION PROTOCOL.

J.    Exculpation; Limitation of Liability.

FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR, AND EACH EXCULPATED PARTY SHALL BE RELEASED FROM, ANY CLAIM BY ANY OTHER EXCULPATED PARTY, BY ANY HOLDER OF A

CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION THAT OCCURRED DURING AND IN CONNECTION WITH THIS CHAPTER 11 CASE OR IN CONNECTION WITH THE PREPARATION AND FILING OF THIS CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, THE CONSUMMATION OF THIS PLAN, AND THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE DIOCESE, THE REORGANIZED DIOCESE AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.

**K.** **Injunctions in Full Force and Effect.**

All injunctions and/or stays provided for in the CNA Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased Settling Insurer Policies free and clear of all Claims pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full force and effect following the Effective Date of the CNA Plan and are not subject to being vacated or modified.

**L.** **Injunctions and Releases Integral.**

The foregoing injunctive provisions and releases are an integral part of the CNA Plan and are essential to its implementation. The currently pending court proceedings commenced by an Abuse Claimant, the continuation of which would violate Sections 12.1, 12.2, or 12.3 of the CNA Plan, the releases provided for under the CNA Plan, or the Insurance Settlements, shall be deemed to be dismissed with prejudice.

**M.** **Timing.**

The injunctions, releases, and discharges (including the Channeling Injunction and the Supplemental Settling Insurer Injunction) to which any Settling Insurer is entitled pursuant to such Settling Insurer's Insurance Settlement, the CNA Plan, the Confirmation Order, the Final Orders approving the Insurance Settlements, and the Bankruptcy Code shall only

- 41 -

become effective when the Trust receives payment in full from the corresponding Settling Insurer pursuant to the terms of the CNA Plan and/or the Settling Insurer's Insurance Settlement, and the other conditions to the effectiveness of the Insurance Settlement are fully met.

## N. **Excluded Parties.**

Notwithstanding anything to the contrary herein, the following shall apply to Excluded Parties: (a) no Claim by a Class 4 Claimant or Class 5 Claimant against an Excluded Party shall be a Channeled Claim, *provided, however*, any Claims which assert liability against an Excluded Party in conjunction with a Protected Party shall be Channeled Claims to the extent they assert liability against such Protected Party; (b) no Claim by a Class 4 Claimant or Class 5 Claimant against an Excluded Party shall be released by operation of the CNA Plan; (c) the injunctions provided in Sections 12.1 and 12.2 of the CNA Plan shall not apply to Claims by any Class 4 Claimant or Class 5 Claimant against an Excluded Party; and (d) all Claims by any Class 4 Claimant or Class 5 Claimant against an Excluded Party are preserved and are not affected by the terms of the CNA Plan.

## O. **Title to and Vesting of Assets.**

All property of the Diocese and the Estate is dealt with by the CNA Plan. Therefore, on the Effective Date, except as otherwise provided in the CNA Plan, to the fullest extent allowed by sections 1123(a)(5), 1123(b)(2), 1123(b)(3), 1141(b), and 1141(c) of the Bankruptcy Code, all property of the Diocese and the Estate, and any property acquired by the Diocese pursuant to the CNA Plan, shall vest in the Reorganized Diocese and such property shall be free and clear of all Liens, Claims, charges or other encumbrances whatsoever, except that any charitable assets subject to Donor Restrictions shall pass to the Reorganized Diocese subject to such Donor Restrictions. On and after the Effective Date, except as otherwise provided in the CNA Plan, the Reorganized Diocese may operate and manage its affairs and may use, acquire, or dispose of such property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the CNA Plan or the Confirmation Order. The Diocese and the Reorganized Diocese may pay any charges incurred on or after the Effective Date for Professional Fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

## P. **Continued Corporate Existence; No Successor Liability.**

1.  The Diocese will continue to exist after the Effective Date as a separate entity in accordance with New York law having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence, or to change its corporate name, under applicable state law, except as such rights may be limited and conditioned by the CNA Plan and the documents and instruments executed and delivered in connection therewith.

2. On and after the Effective Date, the Reorganized Diocese may conduct business in the name of "The Diocese of Rochester" or any derivation thereof that may be approved by the Bishop of Rochester. At the request of the Reorganized Diocese, the Diocese shall take such steps as may be required to change its corporate name to remove any references to "The Diocese of Rochester."

3. Notwithstanding anything to the contrary in the CNA Plan or otherwise, except to the extent necessary to honor any Donor Restrictions or to the extent it may expressly assume such obligations in writing on or after the Effective Date, the Reorganized Diocese shall not be liable for any Claims against, or other liabilities or obligations of the Diocese. The Reorganized Debtor shall not, and shall not be deemed under any state or federal law, or doctrine or theory of successor liability to: (a) be the successor of, or successor to, the Diocese; (b) have, de facto or otherwise, merged with or into the Diocese; (c) be a mere continuation or substantial continuation of the Diocese or the operations or business enterprises of the Diocese; or (d) be liable for any acts taken, or omitted to be taken, by the Diocese prior to the Effective Date. All Persons and entities holding Liens, Claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, against or in the Diocese or the Residual Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Diocese, the Residual Assets, or the operation of the Residual Assets prior to the Effective Date shall be forever barred, estopped, and permanently enjoined from asserting against the Reorganized Debtor such Liens, Claims, encumbrances, and other interests, including rights or claims based on any theory of successor or transferee liability, *provided*, however, nothing herein shall prohibit any Person with standing to do so from taking any action to enforce Donor Restrictions.

**Q.** **Identity of Trustees of the Diocese and the Reorganized Diocese on and after the Effective Date.**

In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the trustees of the Diocese and the Reorganized Diocese on and after the Effective Date shall be (i) The Most Reverend Salvatore R. Matano, Bishop of Rochester, (ii) Very Reverend Paul J. Tomasso, Vicar General and Moderator of the Curia, and (iii) Reverend Daniel J. Condon, Chancellor and Director of Legal Services, all of whom are affiliated with the Universal Roman Catholic Church.

**R.** **Authority to Effectuate Plan.**

Upon the Effective Date, all matters provided under the CNA Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Diocese. The Diocese and the Reorganized Diocese shall be authorized, without further application to or order of the Bankruptcy Court, to take

whatever action necessary to achieve consummation and carry out the CNA Plan and to effectuate the transactions provided for thereunder.

**S.**     **Binding Effect.**

Except as otherwise expressly provided in the CNA Plan, on and after the Effective Date, the CNA Plan shall bind all holders of Claims. Subject to the terms of the CNA Plan, upon the Effective Date, every holder of a Claim shall be precluded and permanently enjoined from asserting against the Diocese or the Reorganized Diocese any Claim based on any document, instrument, judgment, award, order, act, omission, transaction, or other activity of any kind or nature that occurred before the Petition Date.

**T.**     **Dissolution of Committee.**

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and Agents shall be released from any further duties and responsibilities in this Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 Case, including any orders regarding confidentiality issued by the Bankruptcy Court or mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims.

**ARTICLE X**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

Similar to the Diocese Plan, and as described in the Diocese's disclosure statement, under the CNA Plan all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, General Unsecured Claims, and Pass-Through Claims will be paid by the Diocese or the Reorganized Diocese. Under the CNA Plan, all Abuse Claims will be paid solely from the Trust, in accordance with the Plan Documents and the Allocation Protocol. The Allocation Protocol is Exhibit 1 of the Plan Supplement to the CNA Plan and is incorporated into the Trust Agreement, which is Exhibit 3 of the Plan Supplement to the CNA Plan.

The substance of the Diocese's discussion of corporate action, payments effective on tender, agreements, instruments, and documents, continuation of insurance policies, bar dates for professional fee claims and other administrative claims, and exit financing are all hereby incorporated by reference, because the provisions of the CNA Plan on these issues is similar to the corresponding provisions of the Diocese Plan. For additional information on these provisions, please refer to Article VIII of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Diocese of Rochester Dated September 13, 2023 [ECF No. xxxx, Case No. 2-19-20905].

**ARTICLE XI**
**GENERAL CLAIMS ADMINISTRATION AND DISTRIBUTIONS**

Please refer to Article X of the Disclosure Statement in Support of Amended Joint Chapter 11 Plan of Reorganization for The Diocese of Rochester Dated September 13, 2023 [ECF No. xxxx, Case No. 2-19-20905], for a discussion of general claims administration, and Article XI of the same document for a discussion of provisions governing distributions. The substance of the Diocese's discussion of general claims administration and the provisions governing distribution is hereby incorporated by reference.

## ARTICLE XII
## EFFECTIVE DATE

The Effective Date shall not occur, and the CNA Plan shall not be consummated, unless each of the following conditions are either satisfied, or waived by the Plan Proponent.

1. ***Confirmation Order***. The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponent. Without limiting the generality of the foregoing, the Confirmation Order shall, at a minimum, contain findings by the Bankruptcy Court that:

a. All of the requirements for confirmation of the CNA Plan pursuant to section 1129 of the Bankruptcy Code have been met and that the CNA Plan should be confirmed;

b. Each of the Insurance Settlements is approved pursuant to §§ 105(a), 363(b), 363(f), 363(m), and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable, and upon paying their respective Insurance Settlement Amounts to the Trust, each Settling Insurer shall, without the necessity of any further act or deed, be deemed to have (i) bought back all of the Insurance Policies issued by such Settling Insurer with such sale being free and clear of all Liens, Claims, interests, charges, other encumbrances and liabilities of any kind and (ii) received the Releases, Injunctions, and other benefits provided to such Settling Insurer under the CNA Plan;

c. The Allocation Protocol attached as an exhibit to the Plan Supplement has been proposed in good faith and is fair and reasonable with respect to the treatment afforded to all Abuse Claims;

d. The Non-Settling Insurance Assignment is authorized by, and does not conflict with, any provision of the Bankruptcy Code or other applicable law, and is therefore approved;

e. The Bankruptcy Court has jurisdiction to approve, and does approve, the transfer of the Residual Assets to, and vesting of title in, the Reorganized Diocese in accordance with the provisions of section 511 or 511-a of the New York State Not-For-Profit Corporation Law, and no further approval by the New York Attorney General or the New York Supreme Court is required; and

- 45 -

f.      Except as otherwise provided in the CNA Plan, the Reorganized Diocese shall not be liable for any Claims against or liabilities of the Diocese or any of the Participating Parties, including under any theory of successor liability.

2.      ***Channeling Injunction and Insurer Injunctions***.  The Confirmation Order shall approve and implement the Channeling Injunction and the Supplemental Settling Insurer Injunction set forth in Section 12 of the CNA Plan.

3.      ***Plan Documents***.  The Plan Documents shall be in form and substance acceptable to the Plan Proponent.

4.      ***Trust Formation***.  The Trust shall have been formed, the Bankruptcy Court shall have entered an order appointing the Trustee, and the Trustee shall have executed the Trust Agreement.

5.      ***Reorganized Diocese Formation***.  The Reorganized Diocese shall have been duly formed and in good standing under New York law, and shall have obtained any necessary governmental permits or approvals required to take title to the Residual Assets, and to conduct business as a tax-exempt entity pursuant to 26 U.S.C. § 501(c)(3), on and after the Effective Date in substantially the same manner as the Diocese has historically conducted its business.  Notwithstanding the foregoing, this condition shall be waived if the Reorganized Diocese shall not have been duly formed and in good standing under New York Law within 60 days of the Confirmation Order becoming a Final Order.

6.      ***Final Orders***.  The Confirmation Order, the order appointing the Trustee, and all orders approving Insurance Settlements (which may be included within the Confirmation Order) shall be Final Orders and no stay of any such orders shall then be in effect.

7.      ***No Material Amendments***.  The CNA Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with the consent of the Plan Proponent.

If the Effective Date does not occur within 365 days after the entry of the Confirmation Order, the Plan Proponent shall have the right to declare the CNA Plan null and void in all respects.  Until the CNA Plan has been substantially consummated, the Plan Proponent shall have the right to modify the CNA Plan to the extent permitted by Section 1127 of the Bankruptcy Code.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Please refer to Article XV of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Diocese of Rochester Dated September 13, 2023 [ECF No. xxxx, Case No. 2-19-20905], for a discussion of the Bankruptcy Court's retention of jurisdiction. The substance of the Diocese's discussion of retention of jurisdiction is applicable to the CNA Plan and is hereby incorporated by reference.

- 46 -

## ARTICLE XIV
## TAX CONSEQUENCES OF THE PLAN

Please refer to Article XVI of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Diocese of Rochester Dated September 13, 2023 [ECF No. xxxx, Case No. 2-19-20905], for a discussion of tax consequences. The substance of the Diocese's discussion of tax consequences is applicable to the CNA Plan and is hereby incorporated by reference.

## ARTICLE XV
## ACCEPTANCE AND CONFIRMATION OF THE PLAN

Please refer to Article XVIII of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Diocese of Rochester Dated September 13, 2023 [ECF No. xxxx, Case No. 2-19-20905], which you will have received by mail, for a discussion of acceptance and confirmation of a bankruptcy plan. The substance of the Diocese's discussion of this subject is applicable to the CNA Plan and is hereby incorporated by reference.

## ARTICLE XVI
## RISK FACTORS TO BE CONSIDERED

**HOLDERS OF CLAIMS AGAINST THE DIOCESE SHOULD READ AND CONSIDER CAREFULLY THE INFORMATION SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. THIS INFORMATION, HOWEVER, SHOULD NOT BE REGARDED AS THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND/OR ITS IMPLEMENTATION.**

A.    **Possible Objection to Classifications of Claims**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim in a particular class only if such claim is substantially similar to the other claims in such class. The Plan Proponent believes that the classification of Claims under the CNA Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court will reach the same conclusion. To the extent that the Bankruptcy Court finds that a different classification is required for the CNA Plan to be confirmed and the reclassification adversely affects the treatment of the Claim or any Creditor, the Plan Proponent could be required to re-solicit votes for or against the CNA Plan. The Bankruptcy Code also requires that the CNA Plan provide the same treatment for each Claim of a particular Class unless the holder of a particular Claim agrees to a less favorable treatment of its Claim. The Plan Proponent believes that the CNA Plan complies with the requirement of equal treatment, but to the extent the Court

finds that the CNA Plan does not satisfy the equal treatment requirement, the Court could deny confirmation of the CNA Plan.   Issues or disputes relating to classification or treatment could result in a delay of the confirmation or consummation of the CNA Plan and could increase the risk that the CNA Plan will not be consummated.

## B.    Failure to Satisfy Voting Requirements

The CNA Plan must obtain the requisite votes to accept it, in accordance with the requirements of the Bankruptcy Code, in order for the CNA Plan to be confirmed.  The CNA Plan may not be confirmed without the affirmative acceptance of at least one Impaired Class.  In the event that sufficient votes are not received, or the requisite Creditor consent is not obtained, the CNA Plan may be revised, an alternative plan of reorganization may be confirmed, or the Chapter 11 Case may be dismissed.

## C.    The CNA Plan May Not Be Confirmed

Even if all voting Classes accept the CNA Plan, the CNA Plan may not be confirmed if the Bankruptcy Court determines that the CNA Plan does not meet the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.  The Plan Proponent believes that the CNA Plan satisfies all of the relevant section 1129 requirements.  There can be no assurance, however, that the Bankruptcy Court will also conclude that all such requirements have been satisfied.

## D.    The Third-Party Releases in the CNA Plan May Render the CNA Plan Not Confirmable

The CNA Plan contains non-consensual releases in favor of certain third parties, the legality of which is currently under review by the U.S. Supreme Court in the _Purdue Pharma case_.  If the U.S. Supreme Court issues a ruling in that case that bankruptcy courts are not permitted to confirm plans with such third-party releases, then the CNA Plan cannot be confirmed as currently written.

## E.    The Plan Proponent's Assumptions and Estimates May Prove Incorrect

The Plan Proponent has made certain assumptions regarding, and has attempted to estimate in good faith and to the best of its ability, the aggregate number and amount of Abuse Claims.  There can be no guarantee, however, that the Plan Proponent's assumptions and estimates regarding these figures will prove to be accurate.   In the event the Plan Proponent's assumptions and estimates prove incorrect, Survivor recoveries under the CNA Plan may be materially less than projected.

## F.    Non-Confirmation or Delay in Confirmation of the CNA Plan

In the event a party objects to the CNA Plan, it is possible that the Bankruptcy Court may not approve confirmation of the CNA Plan, or that confirmation may be delayed.

## G.    Non-Consensual Confirmation

In the event each Impaired Class of Claims does not accept the CNA Plan, the Bankruptcy Court may nevertheless confirm the CNA Plan at the Plan Proponent's request if the cramdown requirements described above are satisfied. The Plan Proponent believes that the CNA Plan satisfies these requirements.

## H.    Risk of Non-Occurrence of the Effective Date

Although the Plan Proponent believes that the Effective Date will occur reasonably soon after the Confirmation Date, there can be no assurance as to the timing or as to whether the Effective Date in fact will occur.

## ARTICLE XVII
## RECOMMENDATION AND CONCLUSION

The Plan Proponent believes that the CNA Plan is in the best interests of all Creditors. The CNA Plan as structured allows Creditors to participate in Distributions believed to be in excess of those which would otherwise be available were the Chapter 11 Case dismissed and provides an opportunity to maximize insurance recoveries through settlements with the Settling Insurers, including CNA, and post-confirmation litigation of Insurance Claims against Non-Settling Insurers (if any). The CNA Plan also provides Survivors with a choice to obtain higher average compensation sooner than would be available under the Diocese Plan, because of CNA's commitment to pay $75 million to the Trust if the CNA Plan is confirmed. While it is possible that CNA could become obligated to pay more than $75 million under the Diocese Plan, that could occur only if Survivors pursue and prevail in two separate risky and prolonged litigations, one to establish the Diocese's liability and the second to establish CNA's coverage, both in amounts that would require CNA to pay more, in total, than the $75 million CNA is committing to pay under the CNA Plan. There is likely to require the personal involvement of Survivors and take many years to conclude, with no guarantee of higher recoveries for Survivors or other Creditors.

FOR ALL OF THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN PROPONENT BELIEVES THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES. THE PLAN PROPONENT RECOMMENDS THAT ALL CREDITORS ENTITLED TO VOTE ACCEPT THE PLAN AND TO EVIDENCE SUCH ACCEPTANCE BY RETURNING THEIR BALLOTS SO THAT THEY ARE RECEIVED BY THE SOLICITATION AND CLAIMS AGENT NO LATER THAN 5:00 P.M. PREVAILING EASTERN TIME ON _____, 2023.

Dated: September 29, 2023

Respectfully submitted,

The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey and Firemen's Insurance Company of Newark, New Jersey

By: _____
Catherine Glover
Its Senior Vice President, Claims


By: _/s/ Jeffrey A. Dove_____
Jeffrey A. Dove
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 413-7112
Facsimile: (315) 703-7346
jdove@barclaydamon.com

Mark D. Plevin
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: (415) 986-2800
mplevin@crowell.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
105 West Madison Street, Suite 1400
Chicago, Illinois 60602
Telephone: (312) 282-5282
dchristian@dca.law

Miranda H. Turner
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
mturner@crowell.com

*Attorneys for The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey and Firemen's Insurance Company of*

- 50 -

*Newark, New Jersey*

907183649.05

Case 2-19-20905-PRW,    Doc 2247,    Filed 10/02/23,    Entered 10/02/23 10:19:37,
Description: Main Document  , Page 51 of 51