UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:

    The Diocese of Rochester,                         Bankruptcy Case No. 19-20905-PRW
       aka The Roman Catholic                     Chapter 11
       Diocese of Rochester,

                   Debtor.

_____

**DECISION AND ORDER
DENYING COMMITTEE'S MOTION
REQUESTING A DETERMINATION THAT
MOTION SEEKING APPROVAL OF
SETTLEMENT AGREEMENT
BETWEEN DIOCESE AND CNA IS MOOT**

PAUL R. WARREN, U.S.B.J.

      While repeatedly using the terms "moot" and "suspended," seemingly as an incantation, the Committee has moved for an order determining that the motion of the Diocese, seeking the Court's approval of settlement agreements between the Diocese and its insurance carriers, be denied as moot. (ECF No. 2296). Continental Insurance Company ("CNA") has opposed the Committee's motion, asserting that its yet unaccepted *post-settlement offer*—contained in CNA's proposed Chapter 11 Plan—does not render its earlier *settlement agreement* with the Diocese unenforceable. (ECF No. 2336). The Committee's transparent attempt to conflate the terms "settlement agreement" and "settlement offer" is unavailing. A settlement agreement is not rendered a nullity by the conveyance of a yet unaccepted superior post-settlement offer. Consequently, a motion under Rule 9019 FRBP seeking the Court's approval of that settlement agreement is not rendered moot by the conveyance of a superior post-settlement offer by a party to that settlement agreement. For that reason, the Committee's motion is **DENIED**.

# I.

# JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 158(a), (b)(1) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

# II.

# ISSUE

The question presented is whether a settlement agreement is rendered a nullity when one of the parties makes a post-settlement offer increasing the amount to be paid under the settlement agreement. The answer is no. And, because the settlement agreement is not a nullity, the motion seeking Court approval of that settlement agreement is not moot.

# III.

# FACTS

In June 2022, the Diocese entered into a settlement agreement with CNA, by which CNA would buy back its insurance policies from the Diocese in exchange for the payment of $63,500,000 by CNA into a trust for the benefit of abuse claimants. (ECF No. 1538, Ex. D). During the same time frame, the Diocese entered into settlement agreements with the three other carriers that had issued insurance policies to the Diocese. (*Id.* at Ex. A, B, C). Each of those settlements was memorialized in the form of a separate, stand-alone settlement agreement. And, the settlement agreement between the Diocese and each carrier was independent from the settlement agreement between the Diocese and each of the other carriers. On June 23, 2022, the Diocese filed a motion under Rule 9019 FRBP, requesting that the Court approve each settlement

agreement, despite the Committee's lack of consent and over the Committee's anticipated objection. (ECF No. 1538). In its motion, the Diocese detailed the precise amount that would be paid by each insurer under its settlement agreement, and then tallied up the total amount to be paid by the insurers collectively. As expected, the Committee did object to the 9019 settlement motion. (ECF No. 1555).

The motion was scheduled to be heard on January 24, 2023, which date was agreed upon by the parties to afford sufficient time to conduct discovery. Before the settlement motion could be heard, and while discovery was being conducted, the Diocese entered into a settlement agreement with the Committee, memorialized by a restructuring support agreement ("RSA"). The Diocese filed a motion seeking approval of the RSA in early November 2022. (ECF No. 1790). The filing of the RSA motion by the Diocese was met with a tidal wave of voluminous submissions by the insurers, the Committee, and the Diocese. (ECF Nos. 1895, 1896, 1898, 1899, 1900). In the hope of preserving the prospect for a global settlement—a perhaps naïve but well-intended effort—the Court invited the parties to participate in a settlement conference with the Court and issued an Order suspending all deadlines with respect to the 9019 settlement motion. (ECF Nos. 1837, 1838, 1872). While the settlement conference achieved some measure of success, it failed to achieve its hoped-for goal of producing a global settlement. The Court has not been asked to rescind or modify the Order suspending deadlines, so the various deadlines agreed to by the parties remain in suspense, but procedurally the 9019 settlement motion remains alive and well.

The Diocese and Committee filed a disclosure statement and first amended joint Chapter 11 Plan in September 2023. (ECF Nos. 2217, 2218). In early October 2023, CNA filed a disclosure statement and competing first amended Chapter 11 Plan. (ECF Nos. 2247, 2254). The CNA Plan offers a payment of $75,000,000 by CNA, in addition to monetary contributions by the

3

Diocese and other insurers identical, in amount, to those set out in the Diocese/Committee joint Plan. The proposed contribution by CNA is $11,500,000 more than CNA agreed to pay under its settlement agreement with the Diocese, as detailed in the 9019 settlement motion. The Committee has moved for an order determining that the 9019 settlement motion—and by logical extension, the underlying settlement agreements—between the Diocese and its insurers has been rendered moot, because each of the insurers (and the Diocese) are now offering to pay more through the competing Chapter 11 Plans than was provided for in the settlement agreements between the Diocese, CNA, and the other insurers. (ECF No. 2296). The Court has not ruled on the 9019 settlement motion, which remains pending (but in suspense) on the Court's docket.

## IV.

## DISCUSSION

It is well settled in the Second Circuit that "the parties to a settlement agreement may not unilaterally repudiate it after approval of it has been sought pursuant to Rule 9019." *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 542 (E.D.N.Y. 2017) (quoting *Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*, 388 B.R. 386, 392 (M.D. Fla. 2008)), *aff'd*, 734 Fed. Appx. 68 (2d Cir. 2018). As the District Court found in *Liberty Towers*, "The better view of the law is that settlements requiring court approval are binding on all parties to the extent allowable under state law until the court considers and rejects the settlement." *Liberty Towers*, 569 B.R. at 542.

Here, no party has claimed that the settlement agreements between the Diocese and its insurers are not allowable under New York law. And, the Court has not yet considered and rejected the settlement agreements. Further, as the District Court in *Liberty Towers* observed, "Generally,

4

a post-settlement offer will have no bearing on the enforceability of a settlement agreement." *Id.* at 541. "In New York, [s]tipulations of settlement are favored by the courts and not lightly cast aside. Generally, a stipulation will only be set aside for good cause, such as fraud, collusion, mistake, accident[,] or some other ground of the same nature." *Id.* (internal quotation marks omitted) (quoting *Kantrowitz, Goldhammer & Graifman, P.C. v. Mason (In re Mason)*, 545 B.R. 462, 467 (Bankr. S.D.N.Y. 2016)). No party has even hinted that such grounds exist here. Instead, the Committee asserts, without citation to any authority, that by making a larger settlement offer[1] in CNA's Chapter 11 Plan,[2] CNA has both rendered the original settlement agreement a nullity and the 9019 motion moot. (ECF No. 2296). But, the District Court in *Liberty Towers* found that "the existence of a superior offer is not ground for rescission [of a pre-existing settlement agreement]." *Liberty Towers*, 569 B.R. at 541 n.5.

In its Plan, CNA has announced that it is reserving its right to seek damages from the Diocese for breach of the settlement agreement in the event that the CNA Plan does not become effective. (ECF No. 2247 at 9). And, CNA has commenced an adversary proceeding against the Diocese for breach of the settlement agreement. (A.P. Case No. 23-2014). CNA has also filed a motion seeking administrative claim status for damages resulting from the alleged breach of contract by the Diocese. (ECF No. 2314). The CNA Plan makes a "post-settlement offer" of an amount superior to that to which it committed in the settlement agreement—that post-settlement

---

[1] But, in the Committee's opinion, not large enough.
[2] Interestingly, in its objection to the CNA Plan (ECF No. 2349), the Committee asserts that CNA lacks standing to propose a Chapter 11 Plan. For the sake of argument, if the Committee is correct, then the CNA post-settlement offer would be of no consequence—and the 9019 motion would not be rendered moot by the mere shadow of the CNA Plan. As things stand, it appears that the Committee's position in this motion and its position in objecting to the CNA Plan might pithily be described as the Committee saying—"heads I win, tails you lose."

5

offer has "no bearing on the enforceability of [the] settlement agreement." *Liberty Towers*, 569 B.R. at 541.

## V.

## CONCLUSION

The Court holds that, because the settlement agreement has not been rescinded or superseded by CNA's post-settlement offer, the Diocese's Rule 9019 motion is not and has not been rendered moot. The motion of the Committee is, therefore, **DENIED**.

**IT IS SO ORDERED.**

DATED: December 8, 2023 _____/s/_____
       Rochester, New York      HON. PAUL R. WARREN
                                      United States Bankruptcy Judge