January 25, 2024

Honorable Paul R. Warren
United States Bankruptcy Court
Western District of New York
100 State Street
Rochester, New York 14614

Honorable Carl L. Bucki
Chief Judge
United States Bankruptcy Court
Western District of New York
100 State Street
Rochester, New York 14614

Re:  The Diocese of Rochester
     Case No: 19-20905
     <u>Objection to Both Diocese of Rochester & Continental Insurance
     Company's Proposed Plans & Disclosure Statements</u>
     Issues that need to be resolved

Dear Judge Paul R. Warren and Judge Carl L. Bucki:

Thank you. Thank you. Thank you. I have read the Court's December 19, 2023 comments relative to the above-referenced case. I am delighted that the Court is hearing the voices from the other side of the isle, namely, the survivors. This is my third letter to the Court on this long-protracted bankruptcy. I appreciate the fact that the Court has put the "brakes" on this part of the process. There are just too many issues that remain unresolved to be scheduling either plan for a vote by the survivors. I would also respectfully request that the Court make this Letter a part of the Official Bankruptcy Record. I am one of the 485 Survivors of the Rochester Diocese.

As the Court is aware, the Diocese of Rochester was the first diocese in New York State to file for bankruptcy. Now, five of the eight New York Dioceses are in bankruptcy. After the "bones of the Rochester Diocese have been picked clean" by the lawyers, accountants and experts, the same parties will move to Buffalo, Syracuse, Albany, etc. Without question, other Dioceses are looking at the Rochester Diocese Bankruptcy as a model of what to do and what not to do in their respective bankruptcies. The Child's Victim Act (CVA) was without a doubt. a bonanza for the lawyers. The lawyers will gobble up 40% of the Recovery in the Rochester

Bankruptcy. I understand that the Diocese of Rochester has to date paid out more than $12,500,000 for the lawyers and accountants. Now, with the money running short, and the Rochester Diocese struggling, it is time to fast-pace the approval process and move on to the next diocese. Instead, and with the Court's help, it is time to focus on the wishes of survivors.

### THE "PLAIN-LANGUAGE" SUMMARY OF THE CONTINENTAL INSURANCE COMPANY'S PLAN, AS ORDERED BY THE COURT, WAS NOT VERY HELPFUL, ADDRESSES NONE OF THE DEFICIENCIES OF THE CONTINENTAL PLAN,

### AND IS SHEER PROPAGANDA.

The offset of this letter was the submission of Attorney Dove's Summary of the Continental's Plan, as ordered by the Court at its December 19th, 2023 Hearing. Either Attorney Dove misunderstood what the Court was asking the Diocese and Continental to accomplish, or Attorney Dove didn't care about what the Court was requesting. The Continental Summary spent more time trying to intimidate the survivors to vote for the Continental Plan than to genuinely answer the questions and concerns about the confusing Continental Plan. Quite honestly, every time I see a submission by Attorney Dove, I am shocked at a lack of professionalism and courtesy. OK, he has to represent his client, namely Continental Insurance, and he does that well. And he wants to win and a "win" would be the lowest payout for Continental. That's business and I understand that, but Continental could at least pretend that it has some care and concern for the survivors. Continental's disgust and distain for the survivors **is quite evident.** Although I think Continental has more disgust and distain for the Rochester Diocese. Insurance companies love to accept premiums and they are your best friend until they have to pay out and then they don't know you.

Several issues need to be pointed out. As I understand it, and I have read thousands of pages on the Rochester Diocese bankruptcy, there are about 485 survivors that have filed a claim against the Rochester Diocese with the bankruptcy court. That number seems to go up or down by about 20 depending on who or what is referencing that number. I also understand that not all of the 485 survivors have filed state court actions. I understand that about 300 of

the 485 survivors have also filed a state-court action, which has been stayed by this bankruptcy. I am one of those 300 survivors.

### THOSE SURVIVORS WHO DID NOT FILE A STATE-COURT ACTION

### WILL FAVOR THE PLAN THAT OFFERS THE MOST MONEY

As the Court is certainly well aware of, a survivor who did not file a state-court action and only a bankruptcy claim will have no incentive to vote for the Diocese's $126.35 million dollar plan. Why would they. Those survivors will rightly vote for the plan that offers the most money, and in this case, that would be the Continental Plan. As things currently stand, the Continental Plan starts off with 40% of the survivors' vote. That factor has to be considered when the Court moves forward with whatever plan or plans is submitted to the survivors. Again, I am grateful that the Court has slowed down the approval process.

### ANY PLAN SUBMITTED TO THE SURVIVORS HAS TO

### BE WRITTEN WITH PLAIN LANGUAGE, PLEASE

Like the United States Trustee, I would like to see only one (1) plan submitted to the survivors. Parts of the Diocese's Plan could be added to parts of the Continental Plan along with lots of **"plain-language"** to form a single easily-readable plan that could satisfy most of the survivors. As written, both proposed plans are ridiculous and virtually impossible to understand by the ordinary "Mr. and Mrs. Front Porch". Too many twists and turns. The terminology and the legalese in both plans is beyond belief and will lead to a great deal of litigation from both sides of the aisle down the road. Sometimes, simpler is better. More litigation will drain more and more money from the survivors. Lawyers will write letters to lawyers and lawyers and lawyers and it is all billable. We just went through three (3) years of mediation. To what end? Its amazing how many issues have not been worked out. It is often said that "the **devil is in the details"** and we have no details, only general promises.

There has already been enough of the "battling" by the lawyers. It is clear that some of the major attorneys are feuding with Continental. One of the common meanings of "legalese" is "a language used by lawyers and in legal documents that is difficult for ordinary people to understand".

It is now past the time that this case must focus of the survivors and to that end, the survivors should be able to pick up a copy of the plan, read the plan and fully understand his or her rights under the Plan. As the Court is aware, one will and last testament can be three pages long and another will and last testament can one-hundred pages long and both wills and last testaments say the same thing.

## THE PLAN HAS GOT TO SPELL OUT CLEARLY HOW

## THE LATE CLAIM FILERS WILL BE TREATED

Both plans discuss that there are late filers who did not promptly file a claim in this bankruptcy case. I have been unable to learn how many late filers there actually are. Are there ten? Are there a hundred? I understand that the late filers will not be able to vote of any plan, however, their existence will have an impact of the Trust's payout to all survivors. Certainly, that information is important for a survivor to know. Knowledge is power and we need that power.

## THE TRUST WHICH IS CREATED BY BOTH PLANS COULD

## END UP COSTING A GREAT DEAL OF MONEY, DEPRIVING SURVIVORS
## OF ADDITIONAL FUNDS AND COULD EASILY BE IN

## EXISTENCE FOR YEARS AND YEARS

Both the Diocese of Rochester's Plan and Continental's Plan create a trust in which either $126.35 million dollars or $201.35 million dollars will be deposited in. Both the Diocese and Continental imply to the survivors that the payout will be fast versus "years and years of

expensive litigation. At best, that is a very misleading statement to the survivors and the survivors need to understand that.

In my second letter to the Court, I indicated that I strongly agreed with the United States Trustee that <u>any plan submitted to the survivors should have the exact dollar amount that will be paid to each and every survivor.</u> There should not even be a trust, or at the most, a small trust to handle clean-up for this bankruptcy.

As with the proposed "trust", again, "the devil is in the details" of which there are none. Both the Diocese and Continental are proposing placing the settlement funds in the trust and then "running from Dodge". **For obvious reasons, I believe this bankruptcy case should not be concluded until the exact amount each survivor will receive is determined.** I believe that will be the incentive for the parties, namely the Diocese, to place a value on the 485 cases **in order to get out of bankruptcy court.** Additionally, if the bankruptcy is used to determine the value of the 485 cases, that will save the survivors a lot of time and money. The survivors certainly deserve that.

We can look at what has happened in other bankruptcy cases to see what will happen in this case. A good example is the Boy Scouts of America. As the Court is aware, $2.4 billion dollars was placed in a trust for 82,500 survivors. The start-up costs for that trust were enormous and the trust has been running for several months. The monthly costs for the trust are huge. I understand that this Court is inclined to continue this case until June 23, 2024 to see if the United States Supreme Court rules on the 3rd party liability in the Boy Scouts of America case. I think that is an excellent idea and will give the parties the time to value the 485 survivor cases.

The first thing the Boy Scouts of America Trustee did was to offer all 82,500 survivors a quick $3,500 each to sign off all claims to any further recovery. Imagine that. The Trustee advised the survivors that by accepting the $3,500 payoff, the survivor was avoiding the "*very long review process*". That is exactly where we are headed in this case if we go through the trust: a very long and painful review. Seven thousand (7000) of the 82,500 survivors in the Boy Scouts of America case grabbed the $3,500 offer.

## THE TRUST COULD BE AN ABSOLUTE DISASTER

## AND IT COULD TAKE YEARS TO PAY OFF ALL THE CLAIMS

Continental in many of its documents and in its two-page summary suggests that survivors will be quickly paid once the plan is approved. The comparison is made to long-protracted litigation, which will be contested by Continental and require "evidence" and witnesses and require "several years". That may or may not be the case but it doesn't present the whole case or even a fair case. Under the Continental Plan, a survivor could still litigate its state-court action, but ALL funds will be withheld from the survivor. That one requirement guarantees that the trust will go on for years and years as well as the cost and expense of the trust. The trustee as well as the claims reviewer and staff and office and equipment and postage will have to be paid out of the trust for all those years. More money for the experts and less for the survivors.

The Continental Plan also requires a survivor to pay a $1,000 fee if the survivor wants to have the "claim-reviewer's" decision reviewed. Reviewed by who? When? Again, no details. Why a $1,000 payment?

Why would all of the funds have to be withheld from a survivor who wants his or her state-court action to proceed? Since Continental is only paying $75,000,000 into the trust, why isn't only that percentage being withheld? Without question, that survivor is entitled to his or her share of the funds contributed by the Diocese and the other settling parties. Much of what is set-forth in the Continental Plan is heavy-handedness. In some cases, a payment by the trust could take longer than the litigation of the state-court action. Won't that be ironic.

## MUCH OF THE WORK THAT A TRUSTEE AND CLAIMS REVIEWER

## WOULD DO HAS ALREADY, ALLEGEDLY, BEEN DONE IN THE LAST FOUR

## AND A HALF YEARS: WHY RECREATE ALL THAT WORK AND EXPENSE?

Throughout the bankruptcy process, experts were brought in by both sides to value the survivors' cases. I saw the invoices submitted to the Court. Additionally, the insurance companies have been on top of these cases and have conducted limited discovery.

Much of the work that would be done by a claims reviewer has already been done. I am sure that there are files on each and every case. The expense of valuating these cases should be covered by the Diocese of Rochester. It should also be conducted while the bankruptcy is ongoing so that this Court will have the ultimate decision. Between now and June 23, 2024, representatives of the Diocese, creditor's committee, etc. could meet with 30 survivors and their attorneys per week. That process could be completed by June of 2024 when many more of the outstanding legal issues would be settled. This would be a quicker and more efficient system. The vast majority of the survivors would agree to the amount to be paid out.

With all due respect to the Diocese of Rochester, the Diocese created much of the delay in this Bankruptcy. Early on, the Diocese made it clear that it felt that the insurance companies would cover much of the costs of these cases. Little did the Diocese know that insurance companies that no loner collect premiums and saw little chance of future business would be willing to bail out the Diocese. I understand that Bishop Mantano is waiting for the conclusion of this case to retire. I also understand that Bishop Mantano told the parishes that the parishes would not have to contribute to a settlement and then had to reverse himself. I understand that Bishop Mantano has told the faithful several times that the case was almost done. The faithful are tired and discouraged. But this is not about the Diocese, it is about the survivors. Although I was very angry with the Diocese for many years, I do not want to see the Diocese be liquidated.

Perhaps, just perhaps, the Diocese's Attorneys could agree to do the additional work at a discounted rate considering the amount the Diocese has paid its Attorneys to date and those same lawyers represent additional Dioceses. Instead of $700 an hour, the rate could be $400 an hour. **But seriously, this should totally be the responsibility of the Rochester Diocese which created this terrible mess. The Rochester Diocese is not the victim in this matter, the survivors are, and the survivors deserve this matter to be handled right. I would still like to see a forensic accountant review the Diocese's alleged claim that it has newly $70,000,000 of "restricted assets".** It is respectfully requested that <u>**any plan**</u> submitted to the survivors have the exact amount each survivor will receive.

## <u>FINALLY, A TRUST WOULD CREATE A "FEEDING FRENZY" BY</u>

### <u>THE SURVIVORS' ATTORNEYS</u>

Contrary to my statements, I am not anti-lawyer. But they do seem to charge a lot to clear up the confusion they create. One of the concerns with a trust, is that with the creation

of a trust, the Plaintiffs' attorneys, many of which were silent through the mediation process will now shift into "high gear". The Plaintiffs' attorneys are looking at a payout up to $67,000,000. That's a lot of money and when viewed in light of the fact that we have zero information about the trust and how it will operate, the fear is that without Court supervision, the system could easily break down. Then what would happen? How would a trustee control the process and what would be the review process and what kind of timeline would the survivors be looking at.

I for one retained an attorney for litigation in this matter. I certainly knew how to file a bankruptcy claim. As I previously indicated to the Court, I have never met my lawyer or anyone in the law firm. They were supposedly experts in this field.

If the evaluation process was supervised by a Judge and a lawyer or two got too aggressive or out of line, a Judge could tell the "party to knock it off" in a manner that only a Judge could even if that Judge was naïve but well-intentioned.

## THERE SHOULD BE ONE PLAN SUBMITTED TO THE SURVIVORS

As noted by the Trustee, there should be one plan submitted to the survivors, written in clear and concise language for a settlement of $ 201, 350,000 which spells out exactly how much each survivor will receive. There should be an option for those survivors who want to proceed with their state-court actions. I would note that I wish the survivors would be informed as to which state-court actions would be permitted to proceed. In other words, is my state-court action under the Continental umbrella? The Diocese in its plan listed all the various policies that the Rochester Diocese had. That's fine but it doesn't tell us which relate to Continental. Is my state-court action barred by a settlement with one of the other insurance companies. **That information is essential to know before any vote of any plan.** That information has to come from the Diocese. Are all 300 state-court actions going to be permitted to continue? Half of them? How can the Diocese say it is ready for a vote on its plan?

Assuming that a survivor is permitted to proceed with his or her state-court action, that survivor should receive their portion of the $126.35 million dollars settlement less the $75,000,000 that Continental is paying.

The state-court actions would be handled by the state-court attorneys who would absorb the costs of said litigation, per the retainer agreement. Any funds recovered would belong to said survivor. Much easier plan but all the details are missing in both plans.

## SOME OF CONTINENTAL'S ARGUMENTS ARE MISLEADING
## TO THE SURVIVORS

As noted, Continental suggests that the survivors will be paid fairly fast after the funds are deposited in the yet to be created Trust. Continental suggests that the alternative is years of litigation requiring evidence and trial. It is respectfully submitted that if the Trust route is used, it will be many months and in some cases, years before survivors will be paid by the Trust. Continental's own Plan supports that statement. By that time, the Diocese and Continental will be long gone.

Continental loves to tell the survivors what they are facing but fails to disclose what Continental is facing. Continental is not doing any favors for the survivors. Continental, in the Rochester Diocese alone, never mind the entire state of New York with 11,000 pending CVA cases is facing approximately 300 state-cand ourt lawsuits. The attorneys for Continental will not be able to try all those cases. Dozens of local attorneys will have to be brought in to handle those cases and Continental could be looking at hundreds of millions of dollars in judgments. Declaratory Actions will be brought to enforce those judgments. The litigation costs for Continental will be enormous, as will the negative press.

As for the issue of "evidence", testimony is evidence. The survivors will tell the jury what happened to them. In some cases, the violators have moved on to a higher Court, which certainly places the Diocese and Continental at a disadvantage.

As Continental is well aware, the mood of the public has shifted in recent years, because of all the disclosures of the child abuse cases. Those cases are poison. A few months ago a survivor recovered nearly a $100 million dollar judgment against Foster Rogers, an elderly former priest, who I knew. Granted, the Rochester Diocese was not a defendant in that case but it shows the public has no tolerance for people who abuse kids.

Litigation will not be a walk in the park for Continental. In fact, the jury will not even know about Continental. The jury will only hear about the Diocese of Rochester.

As for years of litigation, I am not bothered. I waited 53 years for my day in court and my day in court has been four and a half years long. I certainly have another 2-3 years in me. I'm not going until I have had my say.

In several of its court submissions, Continental has cited New York caselaw. But it has only cited part of the law. Continental is correct that the Rochester Diocese cannot be held vicariously liable for the intentional torts of an employee as it is not in the furtherance of an employer's business. The courts adjudicating CVA claims have relied on the Court of Appeals decision in *Judith M.* and its progeny, applying the exact same reasoning used by the Court of Appeals in those cases and in *RJC Realty*. For example, in *Whitting v. The Roman Catholic Diocese of Rockville Centre et al.*, No. 900032/2019 (Sup. Ct. Nassau Cty. May 19, 2020) [Doc. No. 47], the court dismissed claims for battery, assault, and intentional infliction of emotional

distress, and observed that "[s]exual abuse of a minor is a clear departure from a tortfeasor's scope of employment." In the New York County Supreme Court, Justice Silver ruled the same way in dozens of cases against a number of entities. See, e.g., PC-2 *Doe v. Archdiocese of New York et al.*, No. 950202/2020 (Sup. Ct. N.Y. Cty. July 1, 2020) [Doc. No. 34] ("[T]he Archdiocese cannot be held vicariously liable for the intentional torts committed by an alleged perpetrator"). See *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (2002) (Sexual assault is "a clear departure from the scope of employment, having been committed for wholly personal motives" and "not in furtherance of [an employer's] business."); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677-78 (S.D.N.Y. 2014) (New York courts "consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context."); *Kunz v. New Netherlands Routes, Inc.*, 64 A.D.3d 956, 958 (3d Dep't 2009) (collecting cases).

Continental has argued that the Rochester Diocese may have been aware of an alleged perpetrator's "propensity" to commit acts of abuse, and the resulting injury was "expected and intended" and, therefore, excluded from coverage.

Abuse claims generally allege that the institution failed to use due care to protect children from abusive perpetrators for whom the institution is alleged to be responsible. Sexual abuse complaints typically allege that, as a result of the policyholder's negligence in hiring, retention, supervision, or training, the claimants suffered bodily injury for which the policyholder is legally liable. In resisting coverage for sexual abuse claims, insurers typically assert that, if the institution knew of a perpetrator's "proclivities" or "propensities," then the

injury arising from child abuse should not be deemed an "occurrence" because it should be considered "expected or intended" from the standpoint of the insured

## IT IS WELL-ESTABLISHED IN NEW YORK LAW THAT
## NEGLIGENT CONDUCT IS INSURABLE

These arguments ignore the very high burden insurers must carry on such a defense. Like environmental litigation that preceded it, the insurers attempt to use a modern lens to evaluate policies and procedures adopted many decades earlier. While a church might have at one time believed that a perpetrator could be safe to return to the care of children after an intensive religious retreat and/or psychiatric treatment, one would be unlikely to find any now holding similar views. Thus, what might now seem outrageous, should be seen as negligent (and eligible for insurance coverage) in light of the understanding at the time the conduct occurred. This is the approach adopted by New York courts. As an initial matter, New York holds that negligence in hiring or retaining an employee who commits a sexual assault can constitute an "occurrence" that is not "expected or intended" from the standpoint of the insured. See *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 808 N.E.2d 1263 (N.Y. 2004). In the context of a suit against a massage parlor, the court explained that, although the assault was not an "accident" from the masseur's point of view because he expected and intended it, the masseur's expectations or intentions were irrelevant in determining the applicability of the insurance policy to his employer. Under New York law, the perpetrator's abusive conduct is not imputed to his employer. *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932 (1999). Instead, the institution is only liable for its own negligence in hiring or retaining such perpetrators. Accordingly, the court did not ascribe the masseur's expectations or intentions to his employer in determining the applicability of the insurance policy. Id. See also *Jewish Cmty. Ctr. of Staten*

*Island v. Trumbull Ins. Co.*, 957 F. Supp. 2d 215, 233-34 (E.D.N.Y. 2013) (following the *RJC* court's interpretation of "accident" in the context of sexual harassment and assault of children at a community center); *NYAT Operating Corp. v. GAN National Insurance Co.*, 46 A.D.3d 287, 287-88 (1st Dep't 2007) ("[it] does not avail [the insurer] to argue that the assault was foreseeable.").

## RECKLESSNESS AND CARELESSNESS ARE ALSO INSURABLE

In other contexts, courts have similarly and repeatedly ruled that, absent an intent or expectation by the policyholder to cause damage, an insurance policy that covers "accidents" is triggered. That extends not only to negligence, but also "recklessness" and "carelessness." *Rhodes v. Liberty Mutual Ins.*, 67 A.D.3d 881, 883 (2d Dep't 2009) (alleged acts of "recklessness, carelessness, and negligence," which resulted in serious personal injuries, are deemed covered as "accidental," rather than excluded as expected or intended); *see also Continental Ins. Co. v. Colangione*, 107 A.D.2d 978, 979 (1st Dep't 1985) ("Ordinary negligence does not constitute an intention to cause damage" and "[t]o deny coverage, then, the fact finder must find that the insured intended to cause damage.") (citations omitted).

Under New York law, in order to rely on an exclusion for "expected or intended" harm, an insurer must prove more than that an insured should have known that an employee had a "propensity" to commit acts of abuse. Stated another way, the "expected or intended" exclusion will not bar coverage to an employer for an employee's act of abuse unless that employer actually intended the employee's abuse and the resultant harm—a very high bar for any insurer.

Since this bankruptcy case began, the Diocese has had over $70,000,000 in collections. The Diocese has been able to maintain all of its responsibilities and pay its well-paid professional people including lawyers and accountants. Continental has made over $10 million dollars in interest on the Reserves it put aside when this case began. The Rochester Diocese is fighting to survive. People are leaving the church in droves and the collections are shrinking. I wish them well. Continental is trying to pay as little as it can. Continental has every right to raise every defense it has a good faith belief in. But, delay for the sake of delay is not appropriate. Bringing an administrative claim against the Diocese given the facts in this case in not a good faith strategy. The Court, with all due respect, needs to throw out that administrative claim.

The Diocese is not the victim. Continental is not the victim. The Plaintiff lawyers are not the victim. The Defense lawyers are not the victim. All these parties are making a lot of money off the suffering of the victims.

I am one of the victims. I have lived with being a freak for over 55 years. I can't have a relationship with anyone and I have lived alone my entire life. Not a day goes by that I don't think of suicide but I don't want to place that stigma of the family and I am fearful that I would not get to see family and friends on the other side. I can thank the Catholic Church for that thought process. This folks, is the reality while the circus continues to play in Rochester. Maybe this is a joke to some of you, but we all answer for our actions, if not in this life but in the next.

Finally, at least one positive thing came out of the multi-year abuse I suffered some many years old. My OCD helped with this letter and it will help with the trial I am determined to have in Supreme Court. God is good.

Respectfully,

A survivor