UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

The Diocese of Rochester,                 Bankruptcy Case No. 19-20905-PRW
                                                   Chapter 11
                      Debtor.

**DECISION AND ORDER
DECLINING TO APPROVE COMPETING DISCLOSURE STATEMENTS
FILED BY CONTINENTAL INSURANCE COMPANY
AND JOINTLY BY THE DEBTOR & CREDITORS' COMMITTEE**

PAUL R. WARREN, U.S.B.J.

       On January 30, 2024, the Court held a hearing on CNA's *Motion for Entry of an Order Approving Disclosure Statement in Support of Continental Insurance Company's Chapter 11 Plan of Reorganization for the Diocese of Rochester, Approving Solicitation Procedures for Continental Insurance Company's Plan of Reorganization for the Diocese of Rochester, Approving Ballots and Establishing Procedures for Voting on Competing Plans, Approving the Form, Manner, and Scope of Notice for the Confirmation Hearing and Granting Related Relief* (ECF No. 2284) and the Diocese/Committee's *Motion for Entry of an Order Approving Disclosure Statement; Approving Solicitation Packages and Distribution Procedures; Approving the Forms of Ballots and Establishing Procedures for Voting on Joint Amended Plan; Approving the Form, Manner, and Scope of Confirmation Notices; Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Joint Amended Plan; and Granting Related Relief* (ECF No. 2285).

       After careful consideration of voluminous submissions filed by CNA and the Diocese/Committee, and after consideration of the argument from counsel to the parties during a

lengthy hearing, in support of their respective Disclosure Statements and in opposition to their opponent's, as well as objections filed by the UST and the Sisters of Saint Joseph, the Court declined to approve either Disclosure Statement, as currently presented. (ECF Nos. 2046, 2218, 2247, 2341, 2345, 2348, 2349, 2351, 2373, 2375, 2376, 2378, 2379, 2392, 2393, 2394, 2428, 2429, 2430, 2434, 2438, 2443). The Court delivered an oral decision detailing the deficiencies in both Disclosure Statements. Following the hearing, the Court was informed that the digital recording system had failed, as a result of which no transcript could be produced. (*See* ECF Nos. 2451 & 2452). Despite the fact that the many attorneys in attendance appeared to be writing feverishly as the Court delivered its oral ruling, a number of those attorneys have contacted chambers to request a copy of the Court's bench notes. In response to those requests, the Court supplements its oral ruling with this written Decision and Order.

As stated during the hearing, the following *non-exclusive list* of deficiencies must be addressed in further amended Disclosure Statements:

1. Both Disclosure Statements lack plain language explanations of how Survivors will be treated under the Plan.

2. Both Disclosure Statements lack adequate information because neither informs the average Survivor, clearly and succinctly, how much money he/she may receive, when he/she will receive it, and what contingencies there are to receiving a distribution.

3. Neither Disclosure Statement provides information, clearly and succinctly, detailing how much of the settlement funding will be deducted to cover administrative expenses or to fund reserves—such as future claims, Diocese post-confirmation costs, "Enhanced Claims," or Trust expenses, so that it is plain for all

2

to see how much of the "headline settlement amount" will actually be left for distribution to Survivors. The Court recalls that during the hearing, counsel to the Diocese conceded those administrative costs could approach $50 million, leaving considerably less than $126.35 million for Abuse Survivors under the Diocese/Committee Plan. In seems odd that Committee counsel demanded that disclosure be made in the Rockville Centre case, but that same Committee counsel has been noticeably silent on insisting that information be disclosed in this case.

4. Both Disclosure Statements provide that distributions will be made to Survivors in the manner set out in the Allocation Protocol and Trust Agreement—both of which are filed separately as Exhibits to the Plan Supplement. (*See* ECF No. 2373, Ex. 1 & 3; ECF No. 2427, Ex. 1 & 5). Such information must be included in straightforward language within the four corners of each Disclosure Statement. The Court and Survivors should not have to piece together information from various documents.

5. Neither Plan proponent responded to the UST objection (ECF No. 2345) concerning the exclusion of quarterly fees from amounts funding the Plan, which the UST asserts to be improper under 28 U.S.C. § 1930.

6. Neither Disclosure Statement adequately addresses the UST's objection concerning third-party releases, non-consensual releases, and the scope of exculpation and indemnification provisions to the proposed Plans, in an easily understood manner, so that Survivors can understand the ramifications to the proposed Plans if some or all of those provisions are found to be improper. What is "Plan B" should that occur?

3

Case 2-19-20905-PRW, Doc 2461, Filed 02/16/24, Entered 02/16/24 14:38:14, Description: Main Document , Page 3 of 7

7. CNA's Disclosure Statement fails to provide any information to Survivors about the potential exposure to CNA if Survivors are successful in proving liability on the part of the Diocese and in defeating the coverage defenses mentioned by CNA.

8. With regard to the Diocese/Committee Disclosure Statement, the Court will not approve a Disclosure Statement or Plan that includes "Stipulated Judgments"—or a similar term designed to do the same thing—a position that the Court has espoused for over a year.

9. With regard to the Diocese/Committee Disclosure Statement and Plan—the inclusion of an "exception" to the insurance neutrality provisions that states that the Court will enter a confirmation order finding that the insurance assignment does not trigger a coverage defense is overreaching and unacceptable, as counsel seemed to acknowledge at the hearing.

10. The Diocese/Committee Disclosure Statement fails to inform Survivors of the financial impact on Survivors who are not chosen to be "Litigation Claimants" or how much money the Trust must set aside to fund "Claim Enhancements." Further, there is no discussion of the legal basis to treat the members of the same class differently, seemingly in violation of § 1123(a)(4).

11. There is conflicting language in the Diocese/Committee Disclosure Statement regarding the recovery or non-recovery of "Economic Damages" by abuse claimants. Identical language to that contained in the Allocation Protocol was objected to by Pachulski Stang Ziehl & Jones LLP, as Committee counsel, before Judge Glenn in the Diocese of Rockville Centre case a few weeks ago. And yet,

before this Court counsel is supporting the same language it found offensive in the Rockville Centre case. Why?

12. The Diocese/Committee Disclosure Statement fails to include financial information that would allow Survivors (and the Court) to assess whether "Protected Parties" such as parishes, schools and other organizations that seek to be released under the Plan are making a financial contribution that is fair/substantial, as compared to the liability being released.

13. The Diocese/Committee Disclosure Statement and Plan appear to give the Diocese prospective approval of an Exit Financing Facility, without any meaningful information and without Court approval.

14. The Diocese/Committee and counsel to the Sisters of Saint Joseph are to meet and confer for the purpose of drafting language to be included in the Disclosure Statement and Plan, addressing the concerns of the Sisters of Saint Joseph as a joint tortfeasor, which language is to be broad enough to protect any similarly situated joint tortfeasor.

15. The Diocese/Committee Disclosure Statement and Plan must address any post-petition abuse claims made against the Diocese, with a detailed discussion of how any such claim will be treated under the Plan and estimated for purposes of confirmation.

While the Survivors and the public may have been led to believe that this Court's decision to decline to approve the Disclosure Statements stands alone and is unusual, counsel are all well-aware that Judge Glenn and Judge Kinsella also declined to approve the Disclosure Statements in the cases involving the Dioceses of Rockville Centre and Syracuse. The Plan proponents are

directed to study the rulings concerning the Disclosure Statements, recently issued by Judge Glenn (*See* The Roman Catholic Diocese of Rockville Centre, New York, Case No. 20-12345, <u>Order Regarding the Second Modified Disclosure Statement for First Amended Plan of Reorganization Proposed by The Roman Catholic Diocese of Rockville Centre, New York</u>, at ECF No. 2828 (Bankr. S.D.N.Y. Jan. 18, 2024)) and Judge Kinsella (*See* The Roman Catholic Diocese of Syracuse, New York, Case No. 20-30663, <u>Order Denying Approval of the Disclosure Statement in Support of Joint Chapter 11 Plan of Reorganization for The Roman Catholic Diocese of Syracuse, New York Dated December 6, 2023</u>, at ECF No. 1664 (Bankr. N.D.N.Y. Feb. 8, 2024)). The Court expects that the Diocese/Committee (and CNA where applicable) will incorporate curative provisions in the Disclosure Statements and Plans in this case to address revisions required by Judge Glenn or Judge Kinsella in the Rockville Centre or Syracuse cases, or explain in great detail why the curative provisions in those cases are not being made in this case (for example, see pages 5-6 of Judge Kinsella's Order for additional concerns that seem to apply with equal measure to various documents that this Court has been asked to approve or the Plan that this Court will be asked to confirm). Given the fact that many of the attorneys in this case are also involved in other pending diocesan bankruptcy cases, it should not be burdensome for counsel to look to other cases for drafting samples.

The Court has not ruled on the merits of the CNA and Diocese/Committee's motions—with the likely exception of the "insurance neutrality" issues such as stipulated judgments and the proposed insurance assignment language, as discussed above. For purposes of disclosure, neither the Court nor the Survivors should be expected to distill down, decipher or connect-the-dots between multiple documents. The Abuse Survivors should not be left to wonder how much money they may receive, when it might be paid, and how much of the "headline settlement pot" will

6

actually be left after the administrative costs are taken out. Accordingly, the Plan proponents are directed as follows: Simplified Disclosure Statements are to be filed with the Court on or before **March 15, 2024, at 3:00 p.m. EST**. Objections to the Disclosure Statements are to be filed on or before **April 1, 2024, at 3:00 p.m. EST**. A continuation of the hearing on the motions of CNA and the Diocese/Committee will be held on **April 16, 2024, at 11:00 a.m.** The hearing will be held in person in the Rochester Courthouse. The hearing will not be available by telephone.

**IT IS SO ORDERED.**

DATED: February 16, 2024 _____/s/_____
       Rochester, New York        HON. PAUL R. WARREN
                                           United States Bankruptcy Judge