# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NEW YORK

In re:

DIOCESE OF ROCHESTER,

Debtor.

Chapter 11

Case No. 19-20905

## NOTICE OF FILING OF CONTINENTAL'S PLAN SUPPLEMENT
## TO THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## FOR THE DIOCESE OF ROCHESTER

**PLEASE TAKE NOTICE** that The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey and Firemen's Insurance Company of Newark, New Jersey ("Continental") hereby files the Plan Supplement in accordance with the *Third Amended Chapter 11 Plan of Reorganization for the Diocese of Rochester* [Dkt. No. 2552] dated April 9, 2024 (as it may be amended, modified, or supplemented from time to time) and the *Amended Disclosure Statement in Support of Continental Insurance Company's Second Amended Chapter 11 Plan of Reorganization for the Diocese of Rochester* [Dkt. 2497] dated March 15, 2024.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit 1 is the proposed *Allocation Protocol*.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit 2 is the proposed *Abuse Claim Release Agreement*.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit 3 is the proposed *Trust Agreement*.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit 4 is the proposed *List of Insurance Policies*.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as Exhibit 6 is the proposed *List of Assumed Contracts and Leases*.

**PLEASE TAKE FURTHER NOTICE** that Continental reserves the right to amend any of the Exhibits at any time prior to the Effective Date of the CNA Plan.

DATED: April 9, 2024

Respectfully submitted,

By: */s/ Jeffrey A. Dove*
Jeffrey A. Dove
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 413-7112
Facsimile: (315) 703-7346
jdove@barclaydamon.com

Mark D. Plevin
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: (415) 986-2800
mplevin@crowell.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
105 West Madison Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 282-5282
dchristian@dca.law

Miranda H. Turner
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500

mturner@crowell.com

*Attorneys for The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey and Firemen's Insurance Company of Newark, New Jersey*

SFACTIVE-907504072.1

# EXHIBIT 1

# THE DIOCESE OF ROCHESTER
## ALLOCATION PROTOCOL

## 1. Definitions

1.1 <u>Capitalized Terms</u>. Capitalized terms used in this Allocation Protocol shall have the meanings given them in the Plan, the Trust Agreement, or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated into this Allocation Protocol by reference.

1.2 <u>Payment Reserve</u>. "Payment Reserve" shall mean a reserve to be used to pay Excess Recovery Amounts, if any. The initial amount of the Payment Reserve shall be $500,000. The amount of the Payment Reserve as established in the preceding sentence may be increased so as to exceed the initial amount if, as provided in Section 6.2(b)(5) of this Allocation Protocol, additional amounts are transferred to the Payment Reserve because one or more Abuse Claimants' Final Judgments are less than their Trust Settlement Offers.

1.3 <u>Perpetrator of the Diocese</u>. "Perpetrator of the Diocese" shall mean a person: (1) who was an employee or other agent of the Diocese or any other Participating Party when such person committed an act of Abuse; or (2) for whom or for whose actions the Diocese or any other Participating Party (as defined in the Plan) was otherwise responsible.

## 2. Purpose, Interpretation

2.1 <u>Purpose</u>. This Allocation Protocol is designed to provide guidance to the Abuse Claims Reviewer in determining the amount of each Abuse Claim under the Plan by assigning to each such Claim a value pursuant to the Evaluation Factors below.

2.2 <u>General Principles</u>. As a general principle, this Allocation Protocol intends to set out a procedure that provides for Trust Distributions to be made to Survivors holding Abuse Claims on a fair and equitable basis, including that similar Abuse Claims receive substantially the same treatment. The range of values set forth in the Evaluation Factors below and the discretion given to the Abuse Claims Reviewer to determine and to adjust the value to be assigned to a particular Abuse Claim are intended to reflect the relative values of Abuse Claims.

2.3 <u>Sole and Exclusive Method</u>. The Evaluation Factors set forth below shall be the sole and exclusive method by which an Abuse Claimant may seek allowance and distribution of his or her Abuse Claim. Although the Evaluation Factors collectively comprise the methodology that must be applied in reviewing Abuse Claims, the Abuse Claims Reviewer may, as indicated below, take into account considerations in addition to those identified herein when evaluating an Abuse Claim.

2.4 <u>Interpretation</u>. The terms of the Plan shall prevail if there is any discrepancy between the terms of the Plan and the terms of this Allocation Protocol.

2.5 <u>Confidentiality and Privilege</u>. All information that the Abuse Claims Reviewer receives from any source about any Abuse Claim shall be held in strict confidence and shall not be disclosed absent an order by the Bankruptcy Court or the written consent of the Abuse Claimant (or such

Claimant's counsel of record). All information the Abuse Claims Reviewer receives from any Abuse Claimant (including from his or her counsel) shall be subject to a mediation privilege and receipt of such information by the Abuse Claims Reviewer shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

**3.** **Abuse Claims Reviewer**

3.1 <u>Identification of Abuse Claims Reviewer</u>. Roger L. Kramer is the Abuse Claims Reviewer, subject to an order by the Bankruptcy Court. The Abuse Claims Reviewer shall conduct a review of each of the Abuse Claims and make determinations upon which Trust Distributions will be made subject to the Plan and Confirmation Order.

**4.** **Procedure**

4.1 <u>Allowance of an Abuse Claim</u>. An Abuse Claim shall be allowed if the Abuse Claims Reviewer determines that the Abuse Claimant proved his or her claim by a preponderance of the evidence. The Abuse Claims Reviewer may, after considering the credibility of the Abuse Claimant and the facts alleged and evidence submitted in support of an Abuse Claim, deny the Abuse Claim if denial is warranted in the Abuse Claims Reviewer's sole discretion. Abuse Claims denied by the Abuse Claims Reviewer shall not be entitled to any distribution from the Trust. If an Abuse Claim is allowed, the Abuse Claims Reviewer shall determine the amount of such Abuse Claim by assigning such Abuse Claim a point total pursuant to the Evaluation Factors set forth in Section 5 of this Allocation Protocol.

4.2 <u>Allowance of an Unknown Abuse Claim</u>. An Unknown Abuse Claim shall be allowed if the Abuse Claims Reviewer determines, by a preponderance of the evidence, that the claimant did not file a proof of claim (nor was a proof of claim deemed effective) on or before the Effective Date, the earliest incident of alleged Abuse occurred before the Petition Date, and the claimant was at the time of the Claims Bar Date under a disability or other condition recognized by New York law or other applicable law that would toll the statute of limitations for such Claim. If an Unknown Abuse Claim is allowed, the Abuse Claims Reviewer shall determine the amount of such Unknown Abuse Claim by assigning such Unknown Abuse Claim a point total pursuant to the Evaluation Factors set forth in Section 5 of this Allocation Protocol and taking into consideration the assigned point total, the point totals assigned to other Unknown Abuse Claims, the amount of the Unknown Abuse Claims Reserve, and the anticipated likelihood of other Unknown Abuse Claims being submitted in the future.

4.3 <u>Deceased Abuse Survivor</u>. The Abuse Claims Reviewer shall review the claim of a deceased Abuse Claimant without regard to the Abuse Claimant's death, except that the Abuse Claims Reviewer may require evidence that the person submitting the claim on behalf of the decedent is authorized to do so.

4.4 <u>Determinations by the Abuse Claims Reviewer</u>. The Abuse Claims Reviewer shall notify each Abuse Claimant in writing of the points allocation based on the Evaluation Factors with respect to the Abuse Claimant's claim. The Abuse Claims Reviewer's determination shall be final unless the Abuse Claimant makes a timely request for the points allocation to be reconsidered by the Abuse Claims Reviewer in accordance with Section 4.5 of this Allocation Protocol. The Abuse

- 2 -

Claimant shall not have a right to any other appeal of the Abuse Claims Reviewer's point allocation. The Abuse Claims Reviewer shall make final determinations as expeditiously as possible, while ensuring a full and fair review process for all Abuse Claims.

4.5     Requests for Reconsideration. An Abuse Claimant may request reconsideration of either (a) the Abuse Claims Reviewer's denial of the Abuse Claimant's Abuse Claim or (ii) the points allocation awarded by the Abuse Claims Reviewer with respect to the Abuse Claimant's Abuse Claim, by delivering a written request for reconsideration to the Abuse Claims Reviewer within 30 calendar days after the date of mailing of the notice of the points allocation determined by the Abuse Claims Reviewer. Each written request for reconsideration must be accompanied by a check, payable to the Trust, for the reconsideration fee of $425. The Abuse Claimant may, with his or her request for reconsideration, submit additional evidence and argument in support of such request. The Abuse Claims Reviewer shall have the power to change the points allocation if the Abuse Claims Reviewer determines that causes exists to change the points allocation, and the Abuse Claimant's points allocation may go up or down as a result of his or her request for reconsideration. The Abuse Claims Reviewer's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review, or appeal by any person or entity, including a court.

**5.     Guidelines for Allocation for Allowed Abuse Claims**

5.1     Information to be Considered. The Abuse Claims Reviewer shall consider all of the facts and evidence presented by the Abuse Claimant in the Abuse Claimant's filed proof of claim (as the same may have been amended from time to time). Abuse Claimants may provide supplemental evidence and information to the Abuse Claims Reviewer in support of their Abuse Claims, which the Abuse Claims Reviewer shall also consider. The Abuse Claims Reviewer may request additional information from an Abuse Claimant. Failure to respond to such requests shall not be construed against the Abuse Claimant.

Each Abuse Claimant can submit a written statement (a "Supplemental Submission") to the Abuse Claims Reviewer. The Abuse Claims Reviewer shall establish a deadline (the "Submission Deadline") of not less than 30 days for Abuse Claimants to submit Supplemental Statements to the Abuse Claims Reviewer. Notice of the Submission Deadline (the "Supplement Notice") shall provide, among other things, the method for submission of Supplemental Statements. All notices by the Abuse Claims Reviewer to Abuse Claimants, including the Supplement Notice, shall be sent to each Abuse Claimant's counsel of record via email and first class mail at the address(es) provided in the applicable Sexual Abuse Proof of Claim Form.

The Supplemental Submission shall be no longer than 10 pages, single sided, double spaced with 12-point font; provided, however, that an Abuse Claimant not represented by counsel may submit a handwritten Supplemental Submission not to exceed 10 single sided pages in length. A Supplemental Submission shall be submitted by the Submission Deadline unless the Abuse Claims Reviewer determines, in his sole discretion, there is good cause for delay. The Abuse Claims Reviewer, in his sole discretion, may allow an Abuse Claimant to exceed the page limit for the Supplemental Submission.

- 3 -

5.2    Evaluation.  The Abuse Claims Reviewer shall consider whether the Abuse Claimant has proven by credible evidence that the Sexual Abuse was perpetrated by a Perpetrator of the Diocese. The Abuse Claims Reviewer shall give notice to the Abuse Claimant and the Trustee if he determines that the Abuse Claimant has not met the burden of proof and shall provide the Abuse Claimant a reasonable opportunity to provide facts and/or legal basis to establish that the burden of proof has been met.  The Diocese and any Protected Party (other than a Settling Insurer) must cooperate with any reasonable information or discovery request by an Abuse Claimant that is necessary to respond to the Abuse Claims Reviewer's determination that the Abuse Claimant has not met the burden of proof.

5.3    Evaluation Factors.  Each Abuse Claim will be evaluated by the Abuse Claims Reviewer. Each Abuse Claim will be assigned points on a scale of up to 100 according to the following factors ("Evaluation Factors"), and the points shall determine the amount of distribution to each Abuse Claimant on a pro-rata basis:

   a.    **Nature of Abuse**:

   (1)  Duration;

   (2)  Frequency/number of instances;

   (3)  Degree of intrusiveness into child's body (*e.g.*, clothed/unclothed, masturbation by or of perpetrator, oral penetration, anal penetration, vaginal penetration);

   (4)  Level or severity of force/violence/coercion/threats; Control of environment (*e.g.*, boarding school, orphanage, trip under supervision of perpetrator, day school, employment relationship with Perpetrator of the Diocese);

   (5)  Number of Perpetrators of the Diocese that abused the Claimant; Physical pain suffered;

   (6)  Grooming;

   (7)  Relationship of the Claimant to the Perpetrator;

   (8)  Location of abuse, including but not limited to isolated location, rectory, church, cabin, orphanage, etc.; and/or

   (9)  Additional factors that may be provided by the Claimant.

   b.    **Impact of Abuse**:

   (1)  School behavior problems;

   (2)  School academic problems;

   (3)  Getting into legal trouble as a minor;

- 4 -

(4) Loss of faith;

(5) Damage to family relationships / interpersonal difficulties;

(6) Mental health symptoms, including but not limited to:

    a.   Depression;

    b.   Suicide attempt or suicidal ideation;

    c.   Anxiety;

    d.   Substance abuse;

    e.   Sexual acting out;

    f.   Runaway;

    g.   Flashbacks;

    h.   Nightmares; and/or

(7) Adult and current functioning:

    a.   Criminal record as an adult;

    b.   Underemployment/unemployment;

    c.   Relationship problems;

    d.   Substance abuse;

(8) Physical health symptoms, including but not limited to:

    a.   Physical manifestations of emotional distress;

    b.   Gastrointestinal issues;

    c.   Headaches, high blood pressure;

    d.   Physical manifestations of anxiety;

    e.   Erectile dysfunction;

    f.   Heart palpitations;

    g.   Sexually-transmitted infections;

    h.   Physical damage caused by acts of abuse;

- 5 -

i.   Reproductive damage;

  j.   Self-cutting; and/or

  k.   Other self-injurious behavior;

(9)  The risk of the foregoing factors affecting the Abuse Claimant in the future based on the Abuse Claimant's age at the present time; and/or

(10) Additional factors that may be provided by the Abuse Claimant.

The Abuse Claims Reviewer shall not consider the mere fact that an Abuse Claimant has been or is incarcerated in the review of the claim unless an element of the crime for which the Abuse Claimant was convicted includes fraud or misrepresentation. There will be no consideration of an Abuse Claimant's claims against any entity other than the Diocese or Participating Parties that may be liable to the Abuse Claimant.

## 6.   **Payment**

6.1   Trust Settlement Offers.

  a.   After all Abuse Claims have been evaluated pursuant to the Evaluation Factors, the Trustee shall calculate the Trust Settlement Offer for each Abuse Claim based on the Abuse Claimant's pro rata share of the total points assigned to all Abuse Claimants and the available funds for distribution, after accounting for necessary holdbacks including the Payment Reserve, the Trust Reserve, and the Unknown Abuse Claim Reserve.

  b.   Abuse Claimants may accept or reject their Trust Settlement Offers. An Abuse Claimant who accepts his or her Trust Settlement Offer is a Trust Claimant with a Trust Claim. An Abuse Claimant who rejects his or her Trust Settlement Offer is a Tort Claimant with a Tort Claim.

  c.   For Trust Claimants, the Trustee shall promptly make Trust Distributions in the amount of the respective Trust Settlement Offers.

6.2   Tort Claims and Excess Recovery Amounts.

  a.   For Tort Claimants (Abuse Claimants who have rejected their Trust Settlement Offers), the Trustee shall hold in reserve an amount equal to each Tort Claimant's Trust Settlement Offer until the Tort Claimant's Tort Claim is resolved by a Final Judgment.

  b.   Following entry of Final Judgment:

    (1)  If the amount of the Final Judgment is less than or equal to the amount of the Trust Settlement Offer, the Trust shall promptly pay to the Tort Claimant the amount of the Final Judgment as full and final satisfaction of the Tort Claim. In such case, the difference between the Trust Settlement Offer and the amount of the Final

- 6 -

Judgment shall not be paid to the Tort Claimant and, instead, shall be transferred to the Payment Reserve to pay Excess Recovery Amounts.

(2) If the amount of the Final Judgment is greater than the amount of the Trust Settlement Offer, the Trust shall promptly pay to the Tort Claimant the amount of the Trust Settlement Offer.

(3) After all Tort Claims are resolved by Final Judgments, the Trust shall promptly pay to each Tort Claimant, from the Payment Reserve, the amount of his or her Final Judgment that is in excess of the Trust Settlement Offer (the "Excess Recovery Amount"); *provided*, that to the extent all Excess Recovery Amounts cannot be paid in full from the Payment Reserve, then the Trustee shall calculate and pay only each Tort Claimant's pro rata share of his or her respective Excess Recovery Amount.

(4) To the extent all Excess Recovery Amounts cannot be paid in full from the Payment Reserve, then the Trustee shall calculate and pay each Tort Claimant's pro rata share of his or her respective Excess Recovery Amount.

(5) If a court enters Final Judgment determining that the Diocese and/or Participating Party (as applicable) does not have any liability on account of the Tort Claimant's Tort Claim, then the Tort Claimant shall not be entitled to any Distribution from the Trust, including any Trust Settlement Offer, in which event the funds reserved to pay that Tort Claimant's Trust Settlement Offer shall be transferred to pay Excess Recovery Amounts.

c. No multiple, exemplary, statutory, enhanced, or punitive damages, may be included in any component of a Trust Distribution.

6.3 <u>Undeliverable Distributions</u>. If, after the passage of 365 days after the Effective Date, the Trustee does not have a signed copy of a particular Abuse Claimant's required Abuse Claim Release Agreement, including due to the Abuse Claimant's refusal to sign or returned mail due to the lack of a current address for the Abuse Claimant, the funds allocated to that Abuse Claimant shall go back to the general corpus of the Trust and be available for pro rata supplemental distributions to Trust Claimants pursuant to Section 6.4 of this Allocation Protocol or any other purpose permitted under the Trust Agreement.

6.4 <u>Supplemental Distributions</u>. If, after all Abuse Claim eligibility determinations have been made, and all Trust Distributions have been paid to eligible Abuse Claimants (including, for the avoidance of doubt, all Trust Settlement Offers and Excess Recovery Amounts), the Trustee may in his or her sole discretion make a Supplemental Distribution of some or all of the remaining Trust funds pro rata to Trust Claimants based on their respective Trust Settlement Offers.

- 7 -

907415156.02

Case 2-19-20905-PRW, Doc 2554, Filed 04/09/24, Entered 04/09/24 17:04:07, Description: Main Document , Page 12 of 67

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In re:

The Diocese of Rochester,

                  Debtor.

Case No. 19-20905

Chapter 11

## ABUSE CLAIM RELEASE AGREEMENT

      This Abuse Claim Release Agreement (this "<u>Agreement</u>") is made and entered into by **[_____]** ("<u>Claimant</u>"), pursuant to the *Third Amended Chapter 11 Plan of Reorganization for The Diocese of Rochester Dated April 9, 2024* (as it may be amended or supplemented, and in the form confirmed in the above-captioned Chapter 11 Case, the "<u>Plan</u>").[1]

      WHEREAS, Claimant has asserted an Abuse Claim against The Diocese of Rochester (the "<u>Diocese</u>") and/or one or more Participating Parties;[2] and

      WHEREAS, on **[_____]**, 2024, the Court entered an order confirming the Plan; and

      WHEREAS, the Effective Date of the Plan occurred on **[_____]**, 2024;

      NOW, THEREFORE, in consideration of the treatment to be provided to Claimant's Abuse Claim under the Plan, Claimant hereby irrevocably covenants and agrees as follows:

## PART I
## ACKNOWLEDGEMENT AND CERTIFICATION

      1.    Subject to Paragraph 2 below, Claimant accepts and acknowledges that, under the Plan, Distributions from the Trust to holders of Abuse Claims will be determined solely by an individual approved by the Bankruptcy Court (the "<u>Abuse Claims Reviewer</u>"). Claimant further accepts, acknowledges and understands that payments to Claimant from the Trust on account of Claimant's Abuse Claim (if any) will be determined by the Abuse Claims Reviewer in accordance with the Allocation Protocol attached to the Plan and that the Trust shall constitute the sole source of recovery for Claimant's Abuse Claim even if Claimant chooses to become a Tort Claimant. By signing below, Claimant certifies that Claimant has reviewed and understands the Allocation

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and in the order confirming the Plan (the "<u>Confirmation Order</u>"). A list of such defined terms is attached for convenience as ***Schedule 1*** hereto. In the event of any inconsistency between this Agreement (including any schedule attached hereto) and the Plan and/or Confirmation Order, the Plan and/or Confirmation order shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

[2]    ***Schedule 2*** attached hereto sets forth a list of the Participating Parties.

- 1 -

Protocol and further understands that the decision of the Abuse Claims Reviewer is final and not subject to appeal or further review by any court or other adjudicative authority. Claimant consents to the method set forth in the Plan and Allocation Protocol for determining Trust Distributions on account of Claimant's Abuse Claim.

2. Claimant accepts and acknowledges that if he or she rejects a Trust Settlement Offer and becomes a Tort Claimant, the Trust shall hold in reserve an amount equal to the Trust Settlement Offer until the Tort Claimant's Tort Claim is resolved by a Final Judgment, at which point the Trust Settlement Offer shall be paid to the Claimant or released back to the Trust as set forth in the Allocation Protocol. By signing below, Claimant certifies that Claimant has reviewed and understands the Allocation Protocol and understands that if he or she becomes a Tort Claimant, (i) he or she forfeits any right to have his or her Abuse Claim liquidated as a Trust Claim and that notwithstanding their availability in the tort system, no multiple, exemplary, statutory, enhanced or punitive damages (*i.e.*, damages other than compensatory damages), (ii) no interest, attorneys' fees, or costs (including statutory attorneys' fees and costs) shall be payable with respect to his or her Tort Claim, and (iii) his or her Final Judgment will only be satisfied from the Trust in accordance with the Allocation Protocol.

3. Claimant accepts and acknowledges that, except as expressly provided in the Plan, none of the Protected Parties will have or incur any liability to, or be subject to any right of action by, Claimant, any other party in interest, or any of their respective representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in or relating to the Chapter 11 Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or the administration of the Plan or the Trust, and, in all respects, such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Chapter 11 Case. Without limiting the generality of the foregoing, the Diocese and its advisors and professionals shall be entitled to and granted the benefits of section 1125(e) of the Bankruptcy Code.

4. Claimant accepts and acknowledges that the Diocese, the Reorganized Diocese, the Trust, the Trustee, the Protected Parties, and professionals employed by the foregoing shall not have any liability to any entity, including any governmental entity or insurer, on account of payments made to Claimant, including any liability under the MPSA. Claimant agrees to provide the Trustee with any information necessary to comply with reporting obligations arising under the MMSEA, and has provided or will provide for the payments/and or resolution of any obligations owing or potentially owing under the MSPA relating to Claimant's Abuse Claim and any Distribution from the Trust. Claimant acknowledges and agrees that if Claimant does have any obligations owing or potentially owing under the MSPA relating to any Abuse Claim or Distribution from the Trust, the Trustee may withhold from any payment directly or indirectly to Claimant funds sufficient to assure that any obligations owing or potentially owing under the MSPA relating to such Abuse Claim are paid to the applicable agency.

**PART II**
**GENERAL RELEASE OF CLAIMS AGAINST PROTECTED PARTIES**

- 2 -

5.     Claimant, individually and on behalf of Claimant's heirs, successors, assigns, agents, and representatives, acknowledges that Claimant has received and reviewed copies of the Plan, the Disclosure Statement, and each of the exhibits thereto, and has had an opportunity to consult with counsel of Claimant's choice regarding those documents and the substance of this Agreement, including without limitation the release provisions set forth herein.  Accordingly, Claimant, individually and on behalf of Claimant's heirs, successors, assigns, agents, and representatives, does now hereby:

   a.   voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, fully, finally, and completely release, acquit, and forever discharge the Settling Insurers and the Settling Insurers' reinsurers and retrocessionaires with respect to Claimant's Abuse Claim and the Settling Insurer Policies, with such release and discharge being effective as of the occurrence of the Effective Date of the Plan;

   b.   voluntarily, intentionally, knowingly, absolutely, unconditionally, irrevocably, fully, finally, and completely release, acquit, and forever discharge Protected Parties and Exculpated Parties, including the Settling Insurers, the Settling Insurers' reinsurers and retrocessionaires, the Diocese, the Reorganized Diocese, and the Participating Parties, of and from any and all past, present, and future Claims, and each such Persons' portion or share of my damages that, directly or indirectly, arise out of, relate to, or are connected with:   (i) Claimant's Abuse Claim and any other Channeled Claims; (ii) Claims that directly or indirectly arise out of, relate to, or are in connection with the handling of Claimant's Abuse Claim and any other Channeled Claims; (iii) any Settling Insurer Policy; (iv) any Medicare Claim; and (v) all Claims that, directly or indirectly, arise from, relate to, or are connected with the Chapter 11 Case, with such release and discharge being effective  as of the occurrence of the Effective Date;

   c.   voluntarily and irrevocably agree and covenant (i) that Claimant shall not sue or seek recovery or relief of any kind from the Protected Parties and Exculpated Parties, including the Settling Insurers, the Settling Insurers' reinsurers and retrocessionaires, the Diocese, the Reorganized Diocese, and the Participating Parties, in connection with any and all past, present, and future Claims that directly or indirectly arise out of, relate to, or are in connection with Claimant's Abuse Claim or any other Channeled Claims, or the handling of Claimant's Abuse Claim, Channeled Claims, the Settling Insurer Policies, any Medicare Claim, and the Chapter 11 Case; *provided*, *however*, the foregoing shall not prevent Claimant at his or her expense from commencing a lawsuit in the U.S. District Court for the Western District of New York or the New York Supreme Court for Monroe County naming the Diocese and/or Participating Party(ies) for the purpose of adjudicating the Diocese's or Participating Party's liability for the Abuse Claim and the amount of any such liability, in accordance with the procedure set forth in the Plan and Allocation Protocol; (ii) to forever and irrevocably discharge that fraction, portion, or percentage of damages Claimant may have suffered in connection with any Abuse which is by trial or other disposition determined to be the causal fault or responsibility, if any, of any Protected Party or Exculpated Party, including the

- 3 -

Settling Insurers, the Settling Insurers' reinsurers and retrocessionaires, the Diocese, Reorganized Diocese, and the Participating Parties; (iii) that the trial court in any future action that, directly or indirectly, arises out of, relates to, or is connected with the Claims released hereby will be bound by this Agreement, and that Claimant will not oppose any future defense counsel submitting this Agreement in such an action; (iv) that the releases set forth in this Agreement, when effective in accordance with the terms hereof, extinguish any potential liability of each and every Protected Party and Exculpated Party, including the Settling Insurers, the Settling Insurers' reinsurers and retrocessionaires, the Diocese, Reorganized Diocese, and the Participating Parties, for contribution or indemnity to any Person who has been or may be held liable to Claimant for any Abuse Claim or Channeled Claim; and (v) to be bound by the injunctions set forth in the Plan, including those injunctions contained in Section 12 thereof, for the benefit of the Protected Parties.

## PART III
## REPRESENTATIONS, THIRD-PARTY BENEFICIARIES AND SUCCESSORS

6.     Claimant represents and warrants that Claimant is the sole holder of the Abuse Claim that Claimant has asserted against the Diocese and/or one or more Participating Parties and that Claimant has not assigned, transferred, or granted any interest in such Claim to any other Person, nor has Claimant assigned or transferred to any Person any Claims Claimant may have against any Settling Insurers, other Protected Parties, or Exculpated Parties.

7.     The releases, discharges, covenants, and other undertakings made by Claimant pursuant to this Agreement shall be absolute and irrevocable.  Each of the Protected Parties, including, without limitation, the Diocese, the Reorganized Diocese, the Participating Parties, and each Settling Insurer, shall be intended third-party beneficiaries of this Agreement, and shall have the right to enforce the terms hereof in any court of competent jurisdiction.

8.     The provisions of this Agreement shall be binding upon Claimant, and upon Claimant's heirs, successors, assigns, agents, and representatives.

*[signature page follows]*

- 4 -

IN WITNESS WHEREOF, this Agreement has been executed by Claimant (or, in the case of death or legal disability, Claimant's duly-authorized legal representative acting under power of attorney) and delivered to the Trustee as of the date set forth below.

Dated: _____, 2024

_____
Signature

_____
Print or type full name of Claimant

_____
Claim Number (if known)

_____
Address

_____
Claimant's full Social Security Number

- 5 -

Defined Terms from Plan

***Abuse Claim*** means any Claim that has been asserted, or could be asserted, against the Diocese or any Participating Party, arising in whole or in part, directly or indirectly from Abuse occurring prior to the Effective Date, and seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Diocese or any Participating Party, or any other person or entity for whose acts or failures to act the Diocese or any Participating Party is or was allegedly responsible, including, without limitation, all Adult Abuse Claims, Child Abuse Claims, and Future Claims, against the Diocese or any Participating Party, whether or not such Claims arise under, or were revived pursuant to, the CVA or the ASA, and whether or not a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim. Notwithstanding the foregoing, Abuse Claims do not include any claim that a Settling Insurer may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Insurer to assert any such claim against its reinsurers and/or retrocessionaires in their capacities as such.

***Abuse Claimant*** means the holder of an Abuse Claim.

***Abuse Claims Reviewer*** means the person or entity, including the designee of such person or entity, who will assess Abuse Claims under the Allocation Protocol.

***Allocation Protocol*** means the protocol for allocation of the Abuse Claims Settlement Fund to provide fair and equitable treatment for all Abuse Claims, which will be attached to the Plan Supplement as Exhibit 1.

***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Case.

***Bankruptcy Court*** means the United States Bankruptcy Court for the Western District of New York (Rochester Division) and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom, or any successor thereto that may be established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Case or the Plan.

***Channeled Claim*** means an Abuse Claim, an Inbound Contribution Claim, an Insurer Contribution Claim, a Medicare Claim, a Direct Action Claim, an Extra-Contractual Claim, or any other Claim against any Protected Party arising from or related in any way to an Abuse Claim or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy. A Channeled Claim includes any

Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a claim on either such Person. For the avoidance of doubt and notwithstanding anything to the contrary herein, Channeled Claims do not include any Claims to the extent they are asserted against Excluded Parties or Non-Settling Insurers; provided, however, any Claims which assert liability against an Excluded Party or Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims to the extent they assert liability against such Protected Party.

***Channeling Injunction*** is the injunction contained in Section 12.3 of this Plan.

***Chapter 11 Case*** means the above-captioned bankruptcy case.

***Claimant*** means any Person who alleges or alleged any Claim.

***Confirmation Date*** means the date the Confirmation Order is entered by the clerk of the Bankruptcy Court on the Bankruptcy Court's docket.

***Confirmation Order*** means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

***Diocese*** means The Diocese of Rochester, the debtor and debtor in possession in this Chapter 11 Case.

***Distribution*** means any payment to the holder of a Claim as provided in this Plan.

***Effective Date*** means (a) the last Business Day of the month in which (i) all conditions to effectiveness of this Plan have been satisfied or waived in accordance with Section 11.1 and (ii) no stay of the Confirmation Order is in effect, provided, however that if the first date on which all conditions to effectiveness or of the Plan have been satisfied or waived occurs on or after the twentieth (20th) day of such month, the Effective Date shall occur on the last Business Day of the immediately following month, or (b) such other date as agreed by the Plan Proponent.

***Insurance Settlements*** means, collectively, the CNA Settlement, the First State Settlement, the Interstate Settlement, the LMI Settlement, and the Underwriters Settlement.

***Medicaid*** means medical assistance provided under a state plan approved under title XIX of the Social Security Act.

***Medicare*** means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

***MMSEA*** means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

**Non-Settling Insurer** means any Insurer that is not a Settling Insurer. CNA is not aware of the existence of any Non-Settling Insurers.

**Participating Party** means all Parishes, all Schools, and those Other Catholic Organizations and other entities listed on Exhibit A attached hereto. Neither the Reorganized Debtor nor any Settling Insurer shall be a Participating Party. For the avoidance of doubt, except to the extent they may be listed on Exhibit A, Excluded Parties are not Participating Parties.

**Person** means an individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Diocese, the Reorganized Diocese and the Participating Parties.

**Plan** means this Chapter 11 Plan of Reorganization dated August 31, 2023 as it may be altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**Plan Documents** means the Plan and the Disclosure Statement, all exhibits and schedules attached thereto, and all Plan Supplements, either in their present form or as each may be amended, supplemented or otherwise modified from time to time.

**Plan Proponent** means CNA.

**Reorganized Diocese** means a new corporation, formed in accordance with Article 5 of the New York Religious Corporations Law, which pursuant to the Plan shall take title to the Residual Assets on and after the Effective Date. For the avoidance of doubt, the formation of the Reorganized Diocese shall not discharge or waive the Diocese's liability for any Tort Claim, for which a Tort Claimant may have recourse pursuant to the Plan and Plan Documents.

**Settling Insurer** means each of CNA, First State, Interstate, LMI, and Underwriters. A Settling Insurer's predecessors, successors, and assigns shall receive the benefits and protections afforded to a Settling Insurer under the Plan, but only to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

**Supplemental Settling Insurer Injunction** is the injunction contained in Section 12.4 of this Plan.

**Trust** means the trust to be established pursuant to the Plan and the Trust Agreement for the satisfaction of all Abuse Claims.

**Trust Agreement** means the trust agreement establishing and governing the Trust, as it may be amended.

**Trust Assets** means the following assets and any income, profits, and proceeds derived from such assets subsequent to the transfer of such assets to the Trust: the right to receive the CNA Cash Contribution pursuant to the CNA Settlement; the right to receive the DOR Entities' Cash Contribution; the right to receive the proceeds of the First State Settlement; the right to receive the proceeds of the Interstate Settlement; the right to receive the proceeds of the LMI Settlement; the right to receive the proceeds of the Underwriters Settlement; and the right to receive the Non-Participating Insurance Assignment and all other property transferred to the Trust pursuant to this Plan, or otherwise acquired by the Trust following the Effective Date, together with any proceeds thereof. For the avoidance of doubt, the Trust Assets shall specifically exclude all of the Residual Assets.

**Trust Documents** means, collectively, (a) the Trust Agreement, (b) the Allocation Protocol, and (c) any other agreements, instruments, and documents governing the establishment and administration of the Trust, which shall be materially consistent with the terms of the Plan, as the same may be amended or modified from time to time.

**Trustee** means the trustee of the Trust, who initially will be a Person identified as such in the Confirmation Order and any successor trustee appointed pursuant to the terms of the Plan and/or Trust Agreement. The Trustee shall be selected by the Court following nominations by parties in interest in the Chapter 11 Case.

## SCHEDULE II

Participating Parties

Parishes
1. Sacred Heart Cathedral, Rochester
2. **Annunciation, Rochester
3. **St. Ambrose, Rochester
4. **St. Andrew, Rochester
5. **St. Anthony of Padua, Rochester
6. **St. Augustine, Rochester
7. St. Anne, Rochester
8. Blessed Sacrament, Rochester
9. **Corpus Christi, Rochester
10. St. Boniface, Rochester
11. **St. Bridget, Rochester
12. ** St. Cecilia, Rochester
13. St. Charles Borromeo, Rochester
14. **Christ the King, Rochester
15. **Church of the Annunciation, Rochester
16. Emmanuel Church of the Deaf, Rochester
17. **St. Feehan, Rochester
18. **St. Francis of Assisi, Rochester
19. St. Frances Xavier Cabrini, Rochester
20. St. George, Rochester
21. **Guardian Angels, Rochester
22. **St. Helen, Rochester
23. Holy Apostles, Rochester
24. Holy Cross, Rochester
25. **Holy Ghost, Rochester
26. **Holy Family, Rochester
27. **Holy Name of Jesus, Rochester
28. **Holy Redeemer, Rochester
29. St. Francis Xavier, Rochester
30. **Holy Redeemer/St. Francis Xavier, Rochester
31. **Holy Rosary, Rochester
32. **Immaculate Conception, Rochester
33. Immaculate Conception/St. Bridget, Rochester
34. **St. James, Rochester
35. **St. John the Evangelist, Rochester
36. St. John the Evangelist, Rochester
37. **St. Joseph, Rochester
38. Kateri Tekakwitha Roman Catholic, Rochester
39. St. Lawrence, Rochester
40. **St. Lucy, Rochester
41. **Light of Christ Roman Catholic Parish, Rochester

42. **St. Margaret Mary, Rochester
43. St. Mark, Rochester
44. St. Mary, Rochester
45. **St. Michael, Rochester
46. St. Monica, Rochester
47. **Our Lady of the Americas, Rochester
48. **Our Lady of Good Counsel, Rochester
49. Our Lady of Lourdes, Rochester
50. **Our Lady of Mount Carmel, Rochester
51. **Our Lady of Mercy, Rochester
52. **Our Lady of Perpetual Help, Rochester
53. **Our Lady of Sorrows, Rochester
54. Our Lady of Victory-St. Joseph, Rochester
55. Our Lady Queen of Peace, Rochester
56. Our Mother of Sorrows, Rochester
57. The Parish of the Holy Family, Rochester
58. Peace of Christ, Rochester
59. **St. Patrick, Rochester
60. **Sts Peter & Paul, Rochester
61. St. Pius Tenth, Rochester
62. **St. Salome, Rochester
63. St. Stanislaus, Rochester
64. St. Theodore, Rochester
65. **St. Theresa of the Infant Jesus, Rochester
66. St. Thomas More, Rochester
67. **St. Thomas the Apostle, Rochester
68. **St. Catherine of Siena, Addison
69. Saints Isidore and Maria Torribia, Addison
70. **St. Margaret Mary, Appalachin
71. **St. Mathias, Atlanta
72. St. Alphonsus, Auburn
73. **St. Aloysius, Auburn
74. **St. Francis of Assisi, Auburn
75. Holy Family, Auburn
76. **St. Hyacinth, Auburn
77. St. Mary, Auburn
78. Saints Mary and Martha, Auburn
79. Sacred Heart, Auburn
80. Good Shephard Catholic Community, Aurora
81. St. Agnes, Avon
82. St. John Vianney, Bath
83. **St. Mary, Bath
84. **St. Stanislaus, Bradford
85. Nativity of the Blessed Virgin Mary, Brockport
86. **St. Columba, Caledonia
87. The Parish of Saint Martin De Porres, Caledonia

88. **Our Lady of Lebanon, Canandaigua
89. St. Benedict, Canandaigua
90. **St. Mary, Canandaigua
91. **St. Joachim, Canisteo
92. **St. William, Cameron Mills
93. **St. Joseph, Campbell
94. **St. Patrick, Cato
95. **St. Francis of Assisi, Catatonk
96. **St. Joseph, Cayuga
97. **St. Vincent De Paul, Churchville
98. **St. Felix, Clifton Springs
99. **St. Felix/St. Francis Parish Cluster, Clifton Springs
100. St. Peter's Roman Catholic Parish, Clifton Springs
101. **St. John the Evangelist, Clyde
102. St. Joseph the Worker, Clyde
103. **St. Pius V, Cohocton
104. **St. William, Conesus
105. All Saints, Corning
106. **Santa Maria de Mercede, Cuylerville
107. **St. Mary, Dansville
108. **St. Patrick, Dansville
109. **St. Andrew, Dundee
110. Holy Cross, Dryden
111. **St. Bridget, East Bloomfield
112. St. Jerome, East Rochester
113. **St. Charles Borromeo, Elmira
114. **St. Anthony, Elmira
115. **Blessed Sacrament, Elmira
116. **St. Casimir, Elmira
117. **St. Cecilia, Elmira
118. **Christ the Redeemer, Elmira
119. **St. John the Baptist, Elmira
120. **St. Mary, Elmira
121. **Our Lady of Lourdes, Elmira
122. The Parish of the Most Holy Name of Jesus, Elmira
123. **St. Patrick, Elmira
124. **Sts. Peter and Paul Catholic Parish, Elmira
125. Church of the Assumption, Fairport
126. Church of the Resurrection, Fairport
127. St. John of Rochester, Fairport
128. St. Luke the Evangelist, Geneseo
129. **St. Mary, Geneseo
130. **St. Francis De Sales, Geneva
131. Our Lady of Peace, Geneva
132. **St. Stephen, Geneva
133. **St. Hillary, Genoa

134. **St. Mary, Greenwood
135. St. Anthony, Groton
136. **Holy Name of Jesus, Groveland
137. St. Elizabeth Ann Seton, Hamlin
138. **St. Gabriel, Hammondsport
139. **Church of the Good Shepherd, Henrietta
140. St. Marianne Cope, Henrietta
141. St. Leo, Hilton
142. St. Paul of the Cross, Honeoye Falls
143. St. Mary, Our Lady of the Hills, Honeoye
144. **St. Ann, Hornell
145. Our Lady of the Valley, Hornell
146. **St. Ignatius Loyola, Hornell
147. St. Mary Our Mother, Horseheads
148. **St. Francis Solanus, Interlaken
149. St. Catherine of Siena, Ithaca
150. Immaculate Conception, Ithaca
151. **Our Lady of the Lake, King Ferry
152. All Saints, Lansing
153. **St. Thomas Aquinas, Leicester
154. St. Rose, Lima
155. St. Matthew Catholic Church Society, Livonia
156. **St. Joseph, Livonia
157. **St. Michael, Livonia Center
158. **St. Michael, Lyons
159. **St. Patrick, Macedon
160. **St. Gregory, Marion
161. **St. Patrick, McLean
162. St. Catherine of Siena, Mendon
163. **St. Michael, Montezuma
164. **St. Patrick, Moravia
165. **Church of the Assumption, Mount Morris
166. **St. Patrick, Mount Morris
167. **St. Patrick, Mumford
168. **St. Januarius, Naples
169. **St. John the Evangelist, Newark Valley
170. St. Michael, Newark
171. St. Christopher, North Chili
172. **Holy Angels, Nunda
173. St. Benedict, Odessa
174. **St. Mary of the Lake, Ontario
175. St. Maximillian Kolbe, Ontario
176. **Holy Cross, Ovid
177. The Parish of Mary, Mother of Mercy, Interlaken
178. St. Ann, Owasco
179. Blessed Trinity, Owego

180. St. Patrick, Owego
181. **Immaculate Heart of Mary, Painted Post
182. **St. Anne, Palmyra
183. The Parish of St. Katharine Drexel, Palmyra
184. Holy Spirit, Webster
185. St. Joseph, Penfield
186. **St. Michael, Penn Yan
187. Our Lady of Lakes Catholic Community, Penn Yan
188. **Sacred Heart of Jesus, Perkinsville
189. **St. Francis, Phelps
190. Church of the Transfiguration, Pittsford
191. St. Louis, Pittsford
192. **St. Raphael, Piffard
193. **St. Patrick, Prattsburg
194. **St. Thomas the Apostle, Red Creek
195. **St, Lucy, Retsof
196. **St. Mary, Rexville
197. **St. Joseph, Rush
198. **St. Mary, Rushville
199. **St. Patrick, Savannah
200. **St. Bernard, Scipio Center
201. **St. Mary of the Assumption, Scottsville
202. **St. Patrick, Seneca Falls
203. **St. Dominic, Shortsville
204. **Epiphany, Sodus
205. **St. Rose of Lima, Sodus Point
206. St. John the Evangelist, Spencerport
207. **St. Theresa, Stanley
208. **St. James the Apostle, Trumansburg
209. **St. Michael's, Union Springs
210. **St. Pius the Tenth, Van Etten
211. St. Patrick, Victor
212. St. Francis and St. Clare, Waterloo
213. **St. Mary, Waterloo
214. St. Mary of the Lake, Watkins Glen
215. **St. James, Waverly
216. Holy Family Catholic Community, Wayland
217. **St. Joseph, Wayland
218. Holy Trinity, Webster
219. St. Paul, Webster
220. St. Rita, Webster
221. **St. John, Weedsport
222. **St. Joseph, Cato
223. Our Lady of the Snow, Weedsport
224. **St. Joseph, West Bloomfield
225. Catholic Community of Blessed Trinity, Wolcott

226. **St. Mary Magdalene, Wolcott
227. ** Most Precious Blood Church
228. The Cathedral Community Church of Rochester

<u>Other Entities</u>
1. Catholic Charities of the Diocese of Rochester, Inc.
2. Rochester Catholic Press Association, Inc. ("Catholic Courier")
3. Catholic Youth Organization of Catholic Charities of the Diocese of Rochester
4. Providence Housing Development Corporation
5. Camp Stella Maris of Livonia, N.Y.
6. St. Bernards School of Theology and Ministry
7. Villa of Hope (f/k/a St. Joseph's Villa)
8. De Paul Community Services (f/k/a De Paul Mental Health Clinic)

<u>Schools</u>
1. All Saints in Corning
2. Holy Family in Elmira
3. St. Joseph in Auburn
4. St. Francis/St. Stephen in Geneva
5. De Sales High School in Geneva
** Indicates a parish that is closed, has merged with another or is otherwise inactive at this time.

# EXHIBIT 3

**TRUST AGREEMENT DATED AS OF _____, 2024**

**PURSUANT TO THIRD AMENDED**

**CHAPTER 11 PLAN OF REORGANIZATION**

**FOR THE DIOCESE OF ROCHESTER, NY DATED APRIL 9, 2024**

**Table of Contents**

ARTICLE 1. AGREEMENT OF TRUST.................................................................................2

Section 1.1  Creation and Name. ............................................................................................2

Section 1.2  Purposes................................................................................................................2

Section 1.3  Transfer of Assets. ..............................................................................................2

Section 1.4  Acceptance of Assets. .........................................................................................2

Section 1.5  Receipt of Proceeds.............................................................................................3

Section 1.6  Beneficiaries. ........................................................................................................3

Section 1.7  Jurisdiction............................................................................................................3

Section 1.8  Privileged and confidential information........................................................3

Section 1.9  Relation-back election.........................................................................................4

Section 1.10    Employer identification number.................................................................4

Section 1.11    Relationship to Plan........................................................................................4

ARTICLE 2. POWERS AND TRUST ADMINISTRATION...............................................4

Section 2.1  Powers....................................................................................................................4

Section 2.2  Limitations on the Trustee. ...............................................................................7

General Administration.............................................................................................................8

Section 2.4  Accounting. ...........................................................................................................8

Section 2.5  Financial Reporting. ...........................................................................................9

Section 2.6  Names and addresses. ........................................................................................9

Section 2.7  Transfers of the Trust Assets............................................................................9

ARTICLE 3. ACCOUNTS, INVESTMENTS, EXPENSES ................................................9

Section 3.1  Accounts. ...............................................................................................................9

Case 2-19-20905-PRW,    Doc 2554,    Filed 04/09/24,    Entered 04/09/24 17:04:07,
Description: Main Document  , Page 31 of 67

Section 3.2  Investment Guidelines. ...........................................................................................10

Section 3.3  Payment of Trust Operating Expenses. ....................................................................10

ARTICLE 4. CLAIMS ADMINISTRATION AND DISTRIBUTIONS .....................................10

Section 4.1  Claims Administration and Distributions. ................................................................10

Section 4.2  Manner of Payment. .................................................................................................10

Section 4.3  Delivery of Distributions..........................................................................................10

Section 4.4  Medicare Reimbursement and Reporting Obligations..............................................11

ARTICLE 5. TRUSTEE....................................................................................................................12

Section 5.1  Initial Trustee. ..........................................................................................................12

Section 5.2  Term of Service, Successor Trustee..........................................................................12

Section 5.3  Appointment of Successor Trustee. ..........................................................................12

Section 5.4  Trustee Meetings. .....................................................................................................13

Section 5.5  Compensation and Expenses of Trustee. ..................................................................13

Section 5.6  Trustee's Independence. ............................................................................................14

Section 5.7  Standard of Care; Exculpation..................................................................................14

Section 5.8  Protective Provisions. ...............................................................................................15

Section 5.9  Indemnification..........................................................................................................16

Section 5.10    Bond.......................................................................................................................18

ARTICLE 6. .....................................................................................................................................18

DURATION OF TRUST ..................................................................................................................18

Section 6.1  Duration.....................................................................................................................18

Section 6.2  Dissolution/Termination of Trust..............................................................................18

Section 6.3  No Termination by Beneficiaries. .............................................................................18

Case 2-19-20905-PRW,    Doc 2554,    Filed 04/09/24,    Entered 04/09/24 17:04:07,
Description: Main Document , Page 32 of 67

Section 6.4  Continuance of Trust for Winding Up; Discharge and Release of Trustee. ..............18

ARTICLE 7. ...................................................................................................................................19

GENERAL PROVISIONS .............................................................................................................19

Section 7.1  Irrevocability. ............................................................................................................19

Section 7.2  Term; Termination. ....................................................................................................19

Section 7.3  Outgoing Trustee Obligations. ..................................................................................20

Section 7.4  Taxes. .........................................................................................................................20

Section 7.5  Modification. ..............................................................................................................22

Section 7.6  Severability.................................................................................................................22

Section 7.7  Notices. ......................................................................................................................22

Section 7.8  Successors and Assigns. ............................................................................................23

Section 7.9  Limitation on Transferability; Beneficiaries' Interests. ............................................23

Section 7.10   Exemption from Registration. .................................................................................23

Section 7.11   Entire Agreement; No Waiver. ................................................................................23

Section 7.12   Headings. .................................................................................................................24

Section 7.13   Governing Law.........................................................................................................24

Section 7.14   Settlor's Representative. ..........................................................................................24

Section 7.15   Independent Legal and Tax Counsel........................................................................25

Section 7.16   Waiver of Jury Trial. ...............................................................................................25

Section 7.17   Effectiveness.............................................................................................................25

Section 7.18   Counterpart Signatures.............................................................................................25

# TRUST AGREEMENT

This Trust Agreement (this "**Trust Agreement**"), dated as of _____, 2024, and effective as of the Confirmation Date, is entered in accordance with the *Third Amended Chapter 11 Plan of Reorganization for the Diocese of Rochester Dated April 9, 2024* (as it may be amended, modified, or supplemented, the "**Plan**"),[1] by The Diocese of Rochester (the "**Diocese,**" also known as the "**Debtor**" or the "**Settlor,**" in its capacity as settlor of the Trust), and _____ as trustee (together with any successor serving in such capacity, the "**Trustee**").

## RECITALS

(A)    The Diocese has reorganized or will reorganize under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the Bankruptcy Court, administered and known as *In re The Diocese of Rochester,* Case No. 19-20905 (Bankr. W.D.N.Y.) (the "**Chapter 11 Case**").

(B)    The Plan and the Confirmation Order in the Chapter 11 Case provide, among other things, for the creation of the Trust.

(C)    This Trust Agreement is deemed executed by the Confirmation Order to implement the Plan and to create the Trust (the "**Trust**") for the exclusive benefit of holders of Abuse Claims.

(D)    The Bankruptcy Court held in the Confirmation Order that all the prerequisites for the Channeling Injunction have been satisfied, and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the Channeled Claims.

(E)    The Plan and Confirmation Order provide that, on the Effective Date and continuing thereafter until fully funded by the Diocese in accordance with the Plan, the Trust Assets (as defined in Section 1.3) shall be transferred to and vested in the Trust free and clear of all liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or their affiliates, any creditor or any other entity, other than as provided in the Channeling Injunction with respect to the Channeled Claims and as provided in Section 1.3.

**NOW, THEREFORE**, it is hereby agreed as follows:

---

[1]    All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan or in the Confirmation Order, as applicable, or, if not defined therein, as set forth in the Allocation Protocol (as defined in Section 1.2 below).

- 1 -

# ARTICLE 1.
# AGREEMENT OF TRUST

Section 1.1    *Creation and Name.* Diocese as Settlor hereby creates a trust known as the "**Rochester Abuse Claim Trust**" which is the Trust provided for and referred to in the Plan. The Trustee may transact the business and affairs of the Trust in the name of the Rochester Abuse Claim Trust and references herein to the Trust shall include the Trustee acting on behalf of the Trust.  The Confirmation Order, the Plan, and this Trust Agreement (collectively, the "**Trust Documents**"), constitute the governing instruments of the Trust.  The Trustee is hereby authorized to execute and file a Certificate of Trust with the New York Secretary of State.

Section 1.2    *Purposes.* The purposes of the Trust are to: (i) assume all liability for the Channeled Claims; (ii) administer Abuse Claims; and (iii) make Distributions to holders of Abuse Claims, in accordance with the Allocation Protocol attached to the Plan as **Exhibit 1** (the "**Allocation Protocol**").  In connection therewith, the Trust shall hold, manage, protect, and monetize the Trust Assets (as defined in Section 1.3 below) in accordance with the terms of the Trust Documents for the benefit of the Beneficiaries (as defined in Section 1.6(a) below).  All Abuse Claims shall be resolved exclusively in accordance with the Allocation Protocol.

Section 1.3    *Transfer of Assets.* Pursuant to the Plan, the Diocese and the Participating Parties, and any Settling Insurers, shall pay all funds to the Trust by wire transfer or otherwise effectuate the transfers of assets required under the Plan.  The Trust will receive and hold all right, title, and interest in and to the funds transferred (the "**Aggregate Settlement Consideration**" and, together with any income or gain earned thereon and proceeds derived therefrom, collectively, the "**Trust Assets**"). The Trust Assets shall be transferred to the Trust free and clear of any liens, encumbrances, charges, claims, interests, or other liabilities of any kind of the Diocese or its affiliates, any creditor, or any other person or entity, other than as provided in the Channeling Injunction with respect to Channeled Claims.  The Diocese or Reorganized Diocese shall execute and deliver such documents to the Trust as the Trustee reasonably requests to transfer and assign any assets comprising all or a portion of the Trust Assets to the Trust

Section 1.4    *Acceptance of Assets.* In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly accepts the transfer to the Trust of the Trust Assets, subject to the terms of the Trust Documents and the Plan Documents.  The Trust shall succeed to all of the Diocese's and Participating Parties' respective rights, title, and interest, including all legal privileges, in the Trust Assets, and neither the Diocese nor any other person or entity transferring such will have any further equitable or legal interest in, or with respect to, the Trust Assets, including the Aggregate Settlement Consideration.

(b)    Except as otherwise provided in the Plan, Confirmation Order, or Trust Documents, the Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Channeled

- 2 -

Claims that the Diocese or the Reorganized Diocese have or would have had under applicable law.

(c)      No provision in the Trust Documents shall be construed or implemented in a manner that would cause the Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations (as defined in Section 7.4(a) below).

(d)      Nothing in this Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction, the Supplemental Settling Insurer Injunction, or other terms of the Plan or Confirmation Order.

(e)      In the Trust Documents, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

Section 1.5      *Receipt of Proceeds.*

The proceeds of any recoveries from any claims of the Trust will be deposited in the Trust's accounts and become the property of the Trust as Trust Assets.

Section 1.6      *Beneficiaries.*

(a)      The Trust is established for the benefit of the holders of Abuse Claims. (the "**Beneficiaries**").

(b)      The Beneficiaries shall be subject to the terms of this Trust Agreement and Trust Documents, including, without limitation, the Allocation Protocol.

Section 1.7      *Jurisdiction.* The Bankruptcy Court shall have continuing jurisdiction with respect to the Trust; *provided, however*, the courts of the State of New York, including any federal court located therein, shall also have jurisdiction over the Trust only if and to the extent the Bankruptcy Court cannot exercise or properly abstains from exercising jurisdiction over the Trust.

Section 1.8      *Privileged and confidential information.*

The transfer or assignment of any information subject to an attorney-client or similar privilege to the Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto.  Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the Trustee to perform his or her duties to administer the Trust and (b) they are vested solely in the Trustee and not in the Trust, or any other person, committee, or subcomponent of the Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Channeled Claim.

- 3 -

Section 1.9     *Relation-back election.*

Upon request of the Trustee, the Settlor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

Section 1.10     *Employer identification number.*

Upon or in anticipation of establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

Section 1.11     *Relationship to Plan.*

The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order and, therefore, this Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of the Trust Documents and the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; (3) this Trust Agreement; and (4) the Allocation Protocol.

## ARTICLE 2.
## POWERS AND TRUST ADMINISTRATION

Section 2.1     *Powers.*

(a)     The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the regulations promulgated pursuant thereto. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

(b)     The Trustee is and shall act as the fiduciary to the Trust Assets in accordance with the provisions of the Trust Documents. The Trustee shall administer the Trust, the Trust Assets, and any other amounts to be received under the terms of the Trust Documents in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Trust Documents. Subject to the limitations set forth in the Trust Documents, the Trustee shall have the power to take any and all actions that in the judgment of the Trustee are necessary or advisable to fulfill the purposes of the Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto, and any trust power now or

- 4 -

hereafter permitted under the laws of the State of New York. Nothing in the Trust Documents or any related document shall require the Trustee to take any action if the Trustee reasonably believes that such action is contrary to law. In addition to all powers enumerated in the Trust Documents, including, but not limited to, the Trustee's powers and authority in respect of the interpretation or application of definitions and rules of construction set forth in the Plan to the fullest extent set forth therein, from and after the Effective Date, the Trust shall succeed to all of the rights and standing of the Diocese with respect to the Trust Assets in its capacity as a trust administering assets for the benefit of the Beneficiaries.

(c)     Except as required by applicable law or the Trust Documents, the Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(d)     Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the Trust Documents and by applicable law, the Trustee shall have the power to:

(i)     supervise and administer the Trust in accordance with the Trust Documents, including the Allocation Protocol;

(ii)     receive and hold the Trust Assets, and exercise all rights with respect thereto including the right to vote and sell any securities that are included in such funds;

(iii)     invest the monies held from time to time by the Trust in accordance with Section 3.2;

(iv)     sell, transfer, or exchange any or all of the Trust Assets at such prices and upon such terms as the Trustee may determine proper and consistent with the other terms of the Trust Documents;

(v)     enter into leasing, financing, or other agreements with third parties, as determined by the Trustee, in his or her discretion, to be useful in carrying out the purposes of the Trust;

(vi)     determine and pay liabilities and pay all fees and expenses incurred in administering the Trust, managing the Trust Assets, and making Distributions in accordance with the Trust Documents (the "**Trust Operating Expenses**");

(vii)     establish accounts and reasonable reserves within the Trust, in her/his discretion, to be necessary, prudent, or useful in administering the Trust;

(viii)     sue, be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding, however nothing herein shall be deemed to either (a) affect, limit, or expand any party's rights to sue or otherwise commence a case or proceeding against a trustee in a case under chapter 11 of the Bankruptcy Code or (b) allow any party asserting

- 5 -

a Abuse Claim and/or Channeled Claim to commence any action against the Trustee or the Trust with respect to such claim;

(ix)    appoint such officers and retain such employees, consultants, advisors, independent contractors, experts, and agents and engage in such legal, financial, administrative, accounting, investment, auditing, and alternative dispute resolution services and activities as the Trust requires, and delegate to such persons such powers and authorities as this Trust Agreement provides or the fiduciary duties of the Trustee permits and as the Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Trust Agreement;

(x)    pay reasonable compensation and reimbursement of expenses to any of the Trust's employees, consultants, advisors, independent contractors, experts, and agents for legal, financial, administrative, accounting, investment, auditing, and alternative dispute resolution services and activities as the Trust requires;

(xi)    compensate the Trust's professionals for services, costs, and expenses incurred prior to the Effective Date in accordance with the terms of the Trust Documents;

(xii)    execute and deliver such instruments as the Trustee considers advisable or necessary in administering the Trust;

(xiii)    timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xiv)    require, in respect of any Distribution of Trust Assets, the timely receipt of properly executed documentation (including, without limitation, IRS Form W-9) as the Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

(xv)    resolve all applicable lien resolution matters with respect to Beneficiaries that may be subject to liens arising pursuant to the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("MMSEA") in accordance with the Plan; *provided, however,* that for claims where there is an open chapter 7 bankruptcy case, such lien resolution is subject to the approval of the chapter 7 bankruptcy trustee and applicable bankruptcy court; and *provided further, however*, that in such cases, the chapter 7 bankruptcy trustee shall have sole responsibility to seek court approval for such lien resolution;

(xvi)    register as a responsible reporting entity ("**RRE**") and timely submit all reports under the reporting provisions of section 111 of MMSEA as required under Section 4.4 below and the terms of the Plan;

(xvii)  enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Trust, provided such arrangements do not conflict with any other provision of the Trust Documents;

(xviii)  in accordance with Section 5.9 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Trust Indemnified Parties (as defined in Section 5.7(a) below) solely from the Trust Assets and to the fullest extent permitted by law;

(xix)  delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Trust Assets to any one or more reputable investment advisors or investment managers without liability for any action taken or omission made because of any such delegation;

(xx)  delegate any or all of the authority conferred with respect to the protection, preservation, and monetization of the non-cash Trust Assets;

(xxi)  initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Trust;

(xxii)  enter into structured settlements and other similar arrangements with any Beneficiary (including a minor or other person in need of special consideration) or any attorney of any Beneficiary, upon such terms as the Trustee and such Beneficiary (or such Beneficiary's counsel or other authorized person) agree, in all cases in accordance with the Allocation Protocol;

(xxiii)  take any and all actions appropriate or necessary in order to carry out the terms of the Trust Documents; and

(xxiv)  except as otherwise expressly provided in the Trust Documents, exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of New York.

(e)  The Trustee shall have the power to enter into any settlement that causes an Insurer to become a Settling Insurer (an "**Insurance Settlement**"), *provided, however*, the powers set forth in this Section 2.1(e) shall in each case be subject to the provisions of the Trust Documents.

(f)  The Trustee, in his or her sole discretion, may take all actions necessary or advisable for the enforcement of the non-monetary commitments of Diocese with respect to Child Protection as set forth in the Plan and Confirmation Order.

Section 2.2  *Limitations on the Trustee.*

- 7 -

(a)     Notwithstanding anything in the Trust Documents to the contrary, the Trustee shall not do or undertake any of the following:

(i)     guaranty any debt;

(ii)     make or enter into any loan of Trust Assets;

(iii)     make any transfer or Distribution of Trust Assets other than those authorized by the Trust Documents;

(iv)     engage in any trade or business with respect to the Trust Assets or proceeds therefrom, other than managing such assets;

(v)     engage in any investment of the Trust Assets, other than as explicitly authorized by this Trust Agreement; and

(vi)     engage in any activities inconsistent with the treatment of the Trust as a "qualified settlement fund" within the meaning of Treasury Regulations issued under section 468B of the Tax Code.

(b)     _Insurance Settlements_.

The Trustee may effectuate proposed Insurance Settlements without Bankruptcy Court approval.

Section 2.3     _General Administration._

The Trustee shall act in accordance with the Trust Documents. The Trustee shall establish the location of the principal office of the Trust and may change the location of the principal office or establish other offices at other locations in his or her discretion.

Section 2.4     _Accounting._

The fiscal year of the Trust shall begin on January 1 and shall end on December 31 of each calendar year, except that the first fiscal year shall run from the Confirmation Date to December 31. The Trustee shall maintain the books and records relating to the Trust Assets and income and the payment of Trust Operating Expenses and other liabilities of the Trust. The detail of these books and records and the duration of time during which the Trustee shall keep such books and records shall be such as to allow the Trustee to make a full and accurate accounting of all Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the Trust, including, without limitation, the assets and liabilities of the Trust as of the end of such fiscal year and the additions, deductions, and cash flows for such fiscal year (the

- 8 -

"**Annual Report**"); *provided, however*, that the Trustee shall maintain such books and records until the wind-up of the Trust's affairs and satisfaction of all of Trust liabilities.

Section 2.5    *Financial Reporting.*

(a)    Within one hundred twenty (120) days following the end of each calendar year, for as long as the Chapter 11 Case is open, the Trustee shall file with the Bankruptcy Court the Annual Report.

(b)    All materials filed with the Bankruptcy Court pursuant to this Section 2.5 need not be served on any parties in the Chapter 11 Case.

Section 2.6    *Names and addresses.*

The Trustee shall keep a register (the "**Register**") in which the Trustee shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the Trust Documents. The Trustee may rely upon this Register for the purposes of delivering Distributions or notices. In preparing and maintaining this Register, the Trustee may rely on the name and address of each Abuse Claimant as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Abuse Claimant to the Trustee. The Trustee may deliver Distributions and notices to counsel for any Abuse Claimant identified in such Beneficiary's proof of claim or proper notice of a name or address change.

Section 2.7    *Transfers of the Trust Assets.*

To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged, or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.

## ARTICLE 3.
## ACCOUNTS, INVESTMENTS, EXPENSES

Section 3.1    *Accounts.*

(a)    The Trustee shall maintain one or more accounts ("**Trust Accounts**") on behalf of the Trust, including, at the Trustee's discretion, a disputed claims trust reserve, with one or more financial depository institutions (each a "**Financial Institution**").

(b)    The Trustee, at his or her discretion, may replace any retained Financial Institution with a successor Financial Institution at any time.

- 9 -

(c)      The Trustee may, from time to time, create such accounts and reasonable reserves within the Trust Accounts, including a disputed claim trust reserve, as authorized in this Section 3.1 and as he or she may deem necessary, prudent, or useful in order to provide for Distributions to the Beneficiaries and the payment of Trust Operating Expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Trust Subaccounts**").  Any such Trust Subaccounts established by the Trustee shall be held as Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the Internal Revenue Code ("**IRC**") or Treasury Regulations.

Section 3.2      *Investment Guidelines.*

The Trustee may invest the Trust Assets and monetize such non-liquid assets in accordance with the Trust Documents.  This Section 3.2 is intended to modify the application to the Trust of the "prudent person" rule, "prudent investor" rule, and any other rule of law that would require the Trustee to diversify the Trust Assets.

Section 3.3      *Payment of Trust Operating Expenses.*All Trust Operating Expenses shall be payable out of the Trust Assets.  None of the Trustee, or the Beneficiaries, nor any of their officers, agents, advisors, professionals, or employees shall be personally liable for the payment of any Trust Operating Expense or any other liability of the Trust.

## ARTICLE 4.
## CLAIMS ADMINISTRATION AND DISTRIBUTIONS

Section 4.1      *Claims Administration and Distributions.*                    The Trust shall fairly and reasonably compensate Abuse Claims and shall pay up to the full value of such claims, solely in accordance with the Trust Documents, including the Allocation Protocol.

Section 4.2      *Manner of Payment.*Distributions from the Trust to the Beneficiaries may be made by the Trustee on behalf of the Trust or by a disbursing agent retained by the Trust to make Distributions on behalf of the Trust.

Section 4.3      *Delivery of Distributions.*

(a)      Distributions shall be payable to a Beneficiary (or to counsel for the Beneficiary) on the date approved for Distribution by the Trustee (the "**Distribution Date**") in accordance with the terms of the Trust Documents, including the Allocation Protocol. With respect to each Abuse Claim approved for payment, Distributions shall be made only after all conditions to the Distribution with respect to each such Abuse Claim have been satisfied.  In the event that any Distribution to a Beneficiary is returned as undeliverable, no further Distribution to such Beneficiary shall be made unless and until the Trustee has been notified of the then current address of such Beneficiary, at which time such Distribution shall be made to such Beneficiary

- 10 -

without interest; *provided, however*, that all Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the applicable Distribution Date, subject to extension for good cause shown. After such date, (i) all unclaimed Distributions shall revert to the Trust (notwithstanding any applicable federal or state escheat or abandoned or unclaimed property laws to the contrary), (ii) the Abuse Claim of such Beneficiary shall be released, settled, compromised, and forever barred as against the Trust, and (iii) all unclaimed property interests shall be distributed to other Beneficiaries in accordance with the Trust Documents, as if the Abuse Claim of such Beneficiary had been disallowed as of the date the undeliverable Distribution was first made. The Trustee shall take reasonable efforts to obtain a current address for any Beneficiary with respect to which any Distribution is returned as undeliverable.

(b)     In the event the Trust holds cash after paying all Trust Operating Expenses and making all Distributions contemplated under the Trust Documents, such remaining cash shall be distributed to a nationally recognized charitable organization of the Trustee's choice to the extent economically feasible, which charitable organization shall be independent of the Trustee and, to the extent possible, shall have a charitable purpose consistent with the protection of children from sexual abuse or its ramifications. No Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

(c)     Notwithstanding any provision in the Trust Documents to the contrary, no payment (including any supplemental payment) shall be made to any Beneficiary on account of any Abuse Claim if the Trustee determines that the costs of making such Distribution is greater than the amount of the Distribution to be made.

Section 4.4     *Medicare Reimbursement and Reporting Obligations.*

(a)     The Trust shall register as an RRE under the reporting provisions of section 111 of MMSEA; *provided*, that this shall apply only to Channeled Claims that occurred after December 5, 1980.

(b)     The Trust shall timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Trust. The Trust, in its capacity as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)     Before remitting funds to Claimants' counsel, or to the Claimant if such Claimant is acting *pro se*, in respect of any Channeled Claim, the Trustee shall obtain (i) a certification from said Claimant (or such Claimant's authorized decedent's estate representative) that said Claimant has provided or will provide for the payment and/or resolution of any

- 11 -

obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Channeled Claim and (ii) that the Claimant indemnifies the Trust for any such obligations.

# ARTICLE 5.
# TRUSTEE

Section 5.1     *Initial Trustee.* The initial Trustee shall be _____.

Section 5.2     *Term of Service, Successor Trustee.*

(a)     The Trustee shall serve from the Effective Date until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) below, (iii) his or her removal pursuant to Section 5.2(c) below, and (iv) the termination of the Trust pursuant to Section 6.2 below.

(b)     The Trustee may resign at any time upon written notice filed with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety days after the date such notice is given, where practicable.

(c)     The Trustee may be removed by an order from the Bankruptcy Court, in the event that the Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, provided the Trustee has received reasonable notice and an opportunity to be heard. Other good cause shall mean gross negligence, fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Trust, any substantial failure to comply with the administration of the Trust, or a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustee hereunder.

Section 5.3     *Appointment of Successor Trustee.*

(a)     In the event of any vacancy in the office of the Trustee, including the death, resignation, or removal of any successor Trustee, such vacancy shall be filled by the Diocese in consultation with the Plan Proponent. The Diocese will nominate an individual to serve as successor Trustee, subject to agreement by the Plan Proponent. Once the Diocese and Plan Proponent agree upon a successor Trustee, then, subject to the approval of the Bankruptcy Court, such individual shall become the Trustee.

(b)     Immediately upon the appointment of any successor Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers, and authority of the predecessor Trustee hereunder shall be vested in and undertaken by the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee. No predecessor Trustee shall be liable personally for any act or omission of his or her

- 12 -

successor Trustee. No successor Trustee shall have any duty to investigate the acts or omissions of his or her predecessor Trustee.

(c)     Each successor Trustee shall serve until the earliest of (i) his or her death, (ii) his or her resignation pursuant to Section 5.2(b) above, (iii) his or her removal pursuant to Section 5.2(c) above, and (iv) the termination of the Trust pursuant to Section 6.2 below.

Section 5.4     _Trustee Meetings._

(a)     **Special Meetings**.  Special meetings of the Trustee with the Diocese and the Plan Proponent may be called by the Trustee by giving written notice to the Diocese and Plan Proponent not less than five business days prior to the date of the meeting.  Any such notice shall include the time, place, and purpose of the meeting, given by overnight courier, personal delivery, facsimile, electronic mail, or other similar means of communication.  Notice shall be addressed or delivered to the address as shown upon the records of the Trust or as may have been given to the Trustee for purposes of notice.  Notice by overnight courier shall be deemed to have been given one business day after the time that written notice is provided to such overnight courier.  Any other written notice shall be deemed to have been given at the time it is personally delivered to the recipient or actually transmitted by the person giving the notice by electronic means to the recipient.

(b)     **Participation in Meetings by Telephone Conference**.  The Trustee may convene, and persons may participate in, a meeting by conference telephone or similar communications equipment (which shall include virtual meetings via video conferencing software), as long as all persons participating in such meeting can hear one another.  Participation in a meeting pursuant to this Section 5.4(c) shall constitute presence in person at such meeting.

(c)     **Waiver of Notice**.  Notice of a meeting need not be given to any person who signs a waiver of notice, whether before or after the meeting.  All such waivers shall be filed with the Trust records or made a part of the minutes of the meeting.  Attendance at a meeting shall constitute a waiver of notice of such meeting.  Neither the business to be transacted at, nor the purpose of, any Trustee meeting need be specified in any waiver of notice.

Section 5.5     _Compensation and Expenses of Trustee._The Trustee shall receive compensation from the Trust for his or her services as Trustee. The initial amount of the Trustee's compensation shall be [●] and shall be adjusted annually thereafter as reasonably determined by the Trustee.  The Trust shall also, upon receipt of appropriate documentation, reimburse all reasonable out-of-pocket costs and expenses incurred by the Trustee in the course of carrying out his or her duties as Trustee in accordance with reasonable policies and procedures as may be adopted from time

- 13 -

to time, including in connection with attending meetings of the Trustee. The amounts paid to the Trustee for compensation and expenses shall be disclosed in the Annual Report.

Section 5.6    _Trustee's Independence._

(a)    The Trustee shall not, during his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for Reorganized Diocese or its affiliated persons, or any Non-Settling Insurer. No Trustee shall act as an attorney for, or otherwise represent, any Person who holds a claim in the Chapter 11 Case.

(b)    The Trustee shall be indemnified by the Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)    Persons dealing with the Trust and the Trustee, with respect to the affairs of the Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trust or the Trustee to such Person in carrying out the terms of this Trust Agreement, and neither the Trustee, the Beneficiaries, nor any of their professionals, advisors, officers, agents, consultants, or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.7    _Standard of Care; Exculpation._

(a)    As used herein, the term "**Trust Indemnified Party**" shall mean the Trustee, the Abuse Claims Reviewer, and each of their respective members, officers, employees, agents, consultants, lawyers, advisors, or professionals (collectively, the "**Trust Indemnified Parties**").

(b)    No Trust Indemnified Party shall be liable to the Trust, any other Trust Indemnified Party, any Beneficiary, or any other Person for any damages arising out of the creation, operation, administration, enforcement, or termination of the Trust, except in the case of such Trust Indemnified Party's willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction. To the fullest extent permitted by applicable law, the Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers, and other professionals retained by the Trust Indemnified Parties. None of the provisions of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the Trust Documents, which the Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.7 shall relieve the Trust Indemnified Parties from any liability for any actions or omissions arising out of

- 14 -

their willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; *provided*, that in no event will any such person be liable for punitive, exemplary, consequential, or special damages under any circumstances.  Any action taken or omitted by the Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute willful misconduct, bad faith, or fraud.

(c) The Trust Indemnified Parties shall not be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any Person in connection with the affairs of the Trust or for any liabilities or obligations of the Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud, and all Persons claiming against the Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Trust, shall look solely to the Trust Assets for satisfaction of any such claims.

(d) To the extent that, at law or in equity, the Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trust Indemnified Parties, *provided, however*, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to this Section 5.7 and its subparts.

(e) The Trust Indemnified Parties shall be indemnified to the fullest extent permitted by law by the Trust against all liabilities arising out of the creation, operation, administration, enforcement, or termination of the Trust, including actions taken or omitted in fulfillment of their duties with respect to the Trust, except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(f) The Trust will maintain appropriate insurance coverage for the protection of the Trust Indemnified Parties, as determined by the Trustee in his or her discretion.

Section 5.8    *Protective Provisions.*

(a) Every provision of this Trust Agreement relating to the conduct or affecting the liability of or affording protection to Trust Indemnified Parties shall be subject to the provisions of this Section 5.8.

(b) In the event the Trustee retains counsel (including at the expense of the Trust), the Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Trustee be deemed to have waived

- 15 -

any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Trustee in the performance of duties hereunder. A successor to any Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Beneficiary or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.

(c)     To the extent that, at law or in equity, the Trustee has duties (including fiduciary duties) and liabilities relating hereto, to the Trust or to the Beneficiaries, it is hereby understood and agreed by the Parties and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Trust Agreement with respect to the Trustee, *provided, however,* that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Trust Agreement, including but not limited to Section 5.7 herein.

(d)     No Trust Indemnified Party shall be personally liable under any circumstances, except for their own willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction.

(e)     No provision of this Trust Agreement shall require the Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties, and powers hereunder.

(f)     In the exercise or administration of the Trust hereunder, the Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants, and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered, or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.9     *Indemnification.*

(a)     Without the need for further court approval, the Trust hereby indemnifies, holds harmless, and defends the Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of New York, is entitled to indemnify, hold harmless, and defend such persons against any and all liabilities, expenses, claims, damages, or losses (including attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the Trust except for those acts that are finally judicially

- 16 -

determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud.

(b)     Reasonable expenses, costs, and fees (including attorneys' fees and costs) incurred by or on behalf of the Trust Indemnified Parties in connection with any action, suit, or proceeding, whether civil, administrative, or arbitrative, from which they are indemnified by the Trust shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Trust.

(c)     The Trustee may purchase and maintain appropriate amounts and types of insurance on behalf of the Trust Indemnified Parties, as determined by the Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor, or consultant of any such person.

(d)     The indemnification provisions of this Trust Agreement with respect to any Trust Indemnified Party shall survive the termination of such Trust Indemnified Party from the capacity for which such Trust Indemnified Party is indemnified.  Termination or modification of this Trust Agreement shall not affect any indemnification rights or obligations in existence at such time.  In making a determination with respect to entitlement to indemnification of any Trust Indemnified Party hereunder, the person, persons, or entity making such determination shall presume that such Trust Indemnified Party is entitled to indemnification under this Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)     The rights to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

- 17 -

Section 5.10    *Bond.*The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## ARTICLE 6.

## DURATION OF TRUST

Section 6.1    *Duration.*Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is dissolved or terminated.

Section 6.2    *Dissolution/Termination of Trust.*The Trust shall be dissolved at such time as (a) all of the Trust Assets have been distributed pursuant to the Plan and this Agreement, (b) the Trustee determines that the administration of any remaining Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit, or (c) all distributions required to be made by the Trustee under the Trust Documents have been made; *provided, however*, that in no event shall the Trust be dissolved later than seven years from the Effective Date unless a court of competent jurisdiction determines that a fixed period extension is necessary to facilitate or complete the recovery and liquidation of the Trust Assets.  If at any time the Trustee determines, in reliance upon such professionals as the Trustee may retain, that the expense of continued administration of the Trust is likely to exceed the value of the remaining Trust Assets, the Trustee may apply to the Bankruptcy Court for authority to (w) reserve any amount necessary to dissolve the Trust, (x) disburse any remaining cash for disposition under the Plan, and (y) donate any remaining assets to a charitable organization (A) described in section 501(c)(3) of the Tax Code, (B) exempt from U.S. federal income tax under section 501(a) of the Tax Code, (C) not a "private foundation" as defined in section 509(a) of the Tax Code, and (D) that is unrelated to the Debtors, the Trust, and any insider of the Trustee, and (z) dissolve the Trust.

Section 6.3    *No Dissolution or Termination by Beneficiaries.*The Trust may not be dissolved or terminated at any time by the Beneficiaries.

Section 6.4    *Continuance of Trust for Winding Up; Discharge and Release of Trustee.*After the dissolution of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until his responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged under this Agreement and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, his employees, and

- 18 -

the Trust's professionals and agents of any further duties, discharging and releasing the Trustee from all liability related to the Trust, and releasing the Trustee's bond, if any.

# ARTICLE 7.

## GENERAL PROVISIONS

Section 7.1    _Irrevocability._ To the fullest extent permitted by applicable law, the Trust is irrevocable.  The Settlor shall not (i) retain any ownership or residual interest whatsoever with respect to any Trust Assets, including, but not limited to, the funds transferred to fund the Trust, and (ii) have any rights or role with respect to the management or operation of the Trust, or the Trustee's administration of the Trust.

Section 7.2    _Term; Termination._

(a)    The term for which the Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the following provisions.

(b)    The Trust shall automatically dissolve as soon as practicable but no later than ninety days after the date on which the Bankruptcy Court approves the dissolution of the Trust because (i) all reasonably expected assets have been collected by the Trust, (ii) all Distributions have been made to the extent set forth in the Allocation Protocol, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining Trust obligations and Trust Operating Expenses in a manner consistent with the Trust Documents, and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**").

(c)    Following the dissolution and Distribution of the Trust Assets, the Trust shall terminate, and the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Trust Agreement, the existence of the Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

(d)    After termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until his or her duties hereunder have been fully performed.  The Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Trustee until Distribution of all the Trust Assets. For purposes of this provision, Trust Assets will be deemed distributed when the total amount remaining in the Trust is less than $50,000 and no further actions are pending or have yet to be brought.  At the Trustee's discretion, all of such books, records, documents, and files may be destroyed at any time following the later of (i) the first anniversary of the final Distribution of the Trust Assets and (ii) the date until which the Trustee is required by applicable law to retain such books, records, documents, and files; _provided, however_, that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents, or files relating to the Trust

- 19 -

without giving Reorganized Diocese the opportunity to take control of such books, records, documents, and/or files.

(e) Upon termination of the Trust and accomplishment of all activities described in this agreement, the Trustee and his or her professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, or knowing and material violation of law or fraud of the Trustee or his agents or representatives). The Trustee may, at the expense of the Trust, seek an order of the Bankruptcy Court confirming the discharges, exculpations, and exoneration referenced in the preceding sentence.

Section 7.3 *Outgoing Trustee Obligations.*

In the event of the resignation or removal of the Trustee, the resigning or removed Trustee shall:

(a) execute and deliver by the effective date of resignation or removal such documents, instruments, records, and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee;

(b) deliver to the successor Trustee all documents, instruments, records, and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee;

(c) otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee; and

(d) irrevocably appoint the successor Trustee (and any interim trustee) as his or her attorney-in-fact and agent with full power of substitution for the resigning or removed Trustee and his or her name, place, and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment. The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee.

Section 7.4 *Taxes.*

(a) The Trust is intended to qualify as a "qualified settlement fund" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC, as amended (the "**QSF Regulations**"), with respect to which Reorganized Diocese shall timely make an election to treat the Trust as a "grantor trust" for U.S. federal income tax

- 20 -

purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

(b)     The Trustee shall be the "administrator" of the Trust within the meaning of section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the Trust out of the Trust Assets, which assets may be sold by the Trustee to the extent necessary to satisfy tax liabilities of the Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of Trust as a qualified settlement fund and a grantor trust, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Trust to fail to qualify as a qualified settlement fund and a grantor trust within the meaning of the QSF Regulations.  The Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Trust for all taxable periods through the Dissolution Date.

(c)     As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the Trust shall make a good faith valuation of the Trust Assets and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. In connection with the preparation of the valuation contemplated hereby, the Trust shall be entitled to retain such professionals and advisors as the Trustee shall determine to be appropriate or necessary, and the Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d)     The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state, or local tax law with respect to any payment or Distribution.  All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Trust Agreement.  The Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order, and this Trust Agreement.  In order to receive Distributions, all Beneficiaries shall be required to provide tax information to the Trustee to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes.  The Trustee may refuse to make a payment or Distribution unless or until such information is delivered; *provided, however,* that, upon the delivery of such information, the Trustee shall make such delayed payment or Distribution, without interest.  Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Trust.  In no event shall any such Distribution escheat to any federal, state or local government or any other entity.

- 21 -

Section 7.5    *Modification.*

        (a)    Material modifications to this Trust Agreement, including Exhibits hereto, may be made only with the consent of the Trustee and the Reorganized Diocese, acting in consultation with the Plan Proponent and subject to the approval of the Bankruptcy Court; *provided, however*, that the Trustee may amend this Trust Agreement from time to time without the consent, approval, or other authorization of, but with notice on the Bankruptcy Court docket, to make minor corrective or clarifying amendments necessary to enable the Trustee to effectuate the provisions of this Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten days after notice to on the Bankruptcy Court docket, subject to any objection by a Beneficiary.  Except as permitted pursuant to the preceding sentence, the Trustee shall not modify this Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court.  The Trustee shall file notice of any modification of this Trust Agreement with the Bankruptcy Court.

        (b)    Notwithstanding anything set forth in this Trust Agreement to the contrary, none of this Trust Agreement, nor any document related thereto, shall be modified or amended in any way that could jeopardize or impair (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan and Confirmation Order, or (iii) the Trust's qualified settlement fund status and grantor trust status under the QSF Regulations.

Section 7.6    *Severability.*If any provision of this Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 7.7    *Notices.*Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by email or facsimile pursuant to the instructions listed below, or mailed by overnight courier, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

        To the Trustee:

        [to come]

        with a copy (which shall not constitute notice) to:

        [to come]

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 7.8    *Successors and Assigns.*The provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Trust and the Trustee and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its, or their, rights or obligations under this Trust Agreement except, in the case of the Trust and the Trustee, as contemplated by Section 2.1 and Section 5.2 above.

Section 7.9    *Limitation on Transferability; Beneficiaries' Interests.*The Beneficiaries' interests in the Trust shall not:  (a) be assigned, conveyed, hypothecated, pledged, or otherwise transferred, voluntarily or involuntarily, directly or indirectly, and any purported assignment, conveyance, pledge, or transfer shall be null and void *ab initio*; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the Trust or the Trust Assets; (e) entitle the holders thereof to seek the removal or replacement of any Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holders thereof to receive any interest on Distributions; and (g) give rise to any rights to seek a partition or division of the Trust Assets.  Beneficiaries shall have no interest of any kind in any of the Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of but only to the extent such cash assets are declared by the Trustee to be distributable as Distributions in accordance with the Trust Documents.  For the avoidance of doubt, the Beneficiaries shall have only such rights as expressly set forth in the Trust Documents.

Section 7.10    *Exemption from Registration.*

The Parties hereto intend that the rights of the Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws.  If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

Section 7.11    *Entire Agreement; No Waiver.*

The entire agreement of the parties relating to the subject matter of this Trust Agreement is contained herein and in the documents referred to herein, and this Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege

- 23 -

hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 7.12    _Headings._ The headings used in this Trust Agreement are inserted for convenience only and do not constitute a portion of this Trust Agreement, nor in any manner affect the construction of the provisions of this Trust Agreement.

Section 7.13    _Governing Law._

This Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. For the avoidance of doubt, none of the following provisions of New York law shall apply to the extent inconsistent with the terms of the Trust Documents: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of Trust Assets, (g) the existence of rights or interests (beneficial or otherwise) in Trust Assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Trustee set forth or referenced in this Trust Agreement.

Section 7.14    _Settlor's Representative._

Pursuant to the Trust Documents, the Reorganized Diocese is hereby irrevocably designated as the "**Settlor's Representative**" and is hereby authorized to take any action consistent with Reorganized Diocese's obligations under the Trust Documents that is reasonably requested of the Settlor by the Trustee pursuant to the Trust Documents. Pursuant to the Trust Documents, the Settlor's Representative shall cooperate with the Trustee and the Trust's officers, employees and professionals in connection with the Trust's administration of the Aggregate Settlement Consideration, including, but not limited to, providing the Trustee or his or her officers, employees and professionals, upon written request (including e-mail), reasonable access to information related to the Aggregate Settlement Consideration, including, without limitation, delivery of documents in the possession of, or witnesses under the control of, Reorganized Diocese to the extent that the Trustee could obtain the same by subpoena, notice of deposition or other permissible discovery request, without the need for a formal discovery request.

- 24 -

Section 7.15   *Independent Legal and Tax Counsel.*

All parties to this Trust Agreement have been represented by counsel and advisors of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

Section 7.16   *Waiver of Jury Trial.*

Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

Section 7.17   *Effectiveness.*

This Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 7.18   *Counterpart Signatures.*

This Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. A signed copy of this Trust Agreement or any amendment hereto delivered by facsimile, email or other means of Electronic Transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

*[signature pages follow]*

IN WITNESS WHEREOF, the parties have executed this Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

**SETTLOR:**

The Diocese of Rochester

By: _____

**TRUSTEE:**

- 25 -

By: _____

# EXHIBIT 4

# THE DIOCESE OF ROCHESTER
# LIST OF INSURANCE POLICIES

| Alleged Policy Period | Alleged Insurer | Alleged Policy No. |
|---|---|---|
| 1/17/1943-1/17/1946 | Commercial Casualty Insurance Co. | LG66109 |
| 1/17/1946-1/17/1949 | Commercial Casualty Insurance Co. | LG117457 |
| 8/4/1950-8/4/1951 | Commercial Casualty Insurance Co. | LZ15353 |
| 3/1/1952-3/1/1955 | Commercial Insurance Co. of Newark, N.J. | LZ18051 |
| 3/1/1955-3/1/1956 | Commercial Insurance Co. of Newark, N.J. | LZ19348 |
| 3/1/1956-3/1/1957 | Commercial Insurance Co. of Newark, N.J. | LZ24003 |
| 3/1/1957-3/1/1958 | Commercial Insurance Co. of Newark, N.J. | LZ24008 |
| 3/1/1958-3/1/1959 | Commercial Insurance Co. of Newark, N.J. | LZ24018 |
| 3/1/1959-3/1/1960 | Commercial Insurance Co. of Newark, N.J. | LZ24028 |
| 3/1/1960-3/1/1961 | Commercial Insurance Co. of Newark, N.J. | LZ32604 |
| 3/1/1961-3/1/1962 | Commercial Insurance Co. of Newark, N.J. | LZ32617 |
| 3/1/1962-3/1/1963 | Commercial Insurance Co. of Newark, N.J. | LZ47272 |
| 3/1/1963-3/1/1965 | Commercial Insurance Co. of Newark, N.J. | LZ48500 |
| 3/1/1965-3/1/1967 | Fireman's Insurance Co. of Newark, N.J. | LZ32300 |
| 3/1/1967-3/1/1968 | Fireman's Insurance Co. of Newark, N.J. | L0955400 |
| 3/1/1968-6/1/1969 | Fireman's Insurance Co. of Newark, N.J. | L1239300 |
| 6/1/1969-6/1/1972 | Commercial Insurance Co. of Newark, N.J. | VBP5346801 |
| 6/1/1969-6/1/1972 | Fireman's Insurance Co. of Newark, N.J. | LX1216325 |
| 6/1/1972-6/1/1975 | Commercial Insurance Co. of Newark, N.J. | VBP5346812 |
| 6/1/1975-6/1/1977 | Commercial Insurance Co. of Newark, N.J. | VBP5346818 |
| 6/1/1975-6/1/1976 | Fireman's Insurance Co. of Newark, N.J. | LX2675182 |
| 6/1/1976-6/1/1977 | Fireman's Insurance Co. of Newark, N.J. | LX6538036 |
| 6/1/1977-5/1/1980 | Lloyd's and London | SL3209/SLC5227 |
| 6/1/1977-5/1/1980 | Centennial Insurance Co. | 291687389 |
| 6/1/1977-6/1/1978 | Midland Insurance Co. | TBD |
| 6/1/1978-9/1/1978 | Midland Insurance Co. | UL390869 |
| 6/1/1978-9/1/1978 | First State Insurance Co. | 926708 |

| Alleged Policy Period | Alleged Insurer | Alleged Policy No. |
|---|---|---|
| 6/1/1978-6/1/1979 | Lloyd's and London | SL 3380/SLC5400 |
| 9/1/1978-5/1/1980 | Interstate Fire & Casualty Co. | 183152618 |
| 6/1/1979-5/1/1980 | Lloyd's and London | SL3556/SLC5582 |
| 5/1/1980-7/1/1983 | Lloyd's and London | SL 3675/SLC5698 |
| 5/1/1980-7/1/1981 | Interstate Fire & Casualty Co. | 183-152618/1 |
| 5/1/1980-7/1/1981 | Lloyd's and London | SL3693/SLC5715 |
| 7/1/1981-7/1/1982 | Interstate Fire & Casualty Co. | 183-152618/2 |
| 7/1/1981-7/1/1983 | Lloyd's and London | SL3830/SLC5842 |
| 7/1/1982-7/1/1983 | Interstate Fire & Casualty Co. | 83-0169753 |
| 7/1/1983-7/1/1986 | Lloyd's and London | ISL3090/ICO4050 |
| 7/1/1983-7/1/1986 | Centennial Insurance Co. | 291713859 |
| 7/1/1983-7/1/1984 | Interstate Fire & Casualty Co. | 83-0169753 |
| 7/1/1983-7/1/1986 | Lloyd's and London | ISL3092/ICO4053 |
| 7/1/1983-7/1/1984 | National Surety Corp. | XLX 139 53 94 |
| 7/1/1984-7/1/1985 | Interstate Fire & Casualty Co. | 83-0169753 |
| 7/1/1984-7/1/1985 | National Surety Corp. | XLX 139 52 65 |
| 7/1/2019-7/1/2020 | Lloyd's & HDI Global Specialty SE | 19W2012 |
| 7/1/2019-7/1/2020 | Lloyd's & HDI Global Specialty SE | 19XS133 |
| 7/1/2020-7/1/2021 | Lloyd's & HDI Global Specialty SE | 20W2012 |
| 7/1/2020-7/1/2021 | Lloyd's & HDI Global Specialty SE | 20XS133 |
| 7/1/2021-7/1/2022 | Lloyd's & HDI Global Specialty SE & Convex Insurance UK Ltd & Endurance Worldwide Insurance Ltd & PartnerRe Ireland Insurance dac | 21W2012 |
| 7/1/2021-7/1/2022 | Lloyd's & HDI Global Specialty SE & Convex Insurance UK Ltd | 21XS133 |
| 7/1/2021-7/1/2022 | Lloyd's & HDI Global Specialty SE & Convex Insurance UK Ltd | 21XS133A |
| 7/1/2022-7/1/2023 | Lloyd's & HDI Global Specialty SE & Convex Insurance UK Ltd & Endurance Worldwide Insurance Ltd & PartnerRe Ireland Insurance dac | 22W2012 |
| 7/1/2022-7/1/2023 | Lloyd's & HDI Global Specialty SE & Convex Insurance UK Ltd | 22XS133 |
| 7/1/2022-7/1/2023 | Lloyd's & HDI Global Specialty SE & Convex | 22XS133A |

| Alleged Policy Period | Alleged Insurer | Alleged Policy No. |
|---|---|---|
| | Insurance UK Ltd | |
| 7/1/2023-7/1/2024 | Lloyd's & HDI Global Specialty SE & Convex Insurance UK Ltd & Endurance Worldwide Insurance Ltd & PartnerRe Ireland Insurance dac | 23W2012 |
| 7/1/2023-7/1/2024 | Lloyd's & HDI Global Specialty SE & Convex Insurance UK Ltd | 23XS133 |
| 7/1/2023-7/1/2024 | Lloyd's & HDI Global Specialty SE & Convex Insurance UK Ltd | 23XS133A |

# EXHIBIT 6

# THE DIOCESE OF ROCHESTER
## LIST OF ASSUMED CONTRACTS AND LEASES

| Description of Lease or Contract | Name | Address | Lease/Contract Expires | Documentation on file (contract / agreement / license / SOW) |
|---|---|---|---|---|
| Contract for Sage MIP | Abila, Inc | P.O. Box 737451, Dallas, TX 75373-7451 | 9/29/2024 | Engagement letter |
| HR Services/Benefits | ADP Work Force Now | P.O. Box 842875, Boston, MA 02284-2875 | on going | Major Accts Agreement |
| Agreement for Data Security Standard for IT | Bonadio & Co LLP | 171 Sully's Trail Ste 201, Pittsford, NY 14534 | on going | Engagement letter |
| Contract for snow and lawn care for St. Gregory location | Butch's Handyman Service LLC | PO Box 317, Lyons, NY 14489 | ongoing | Invoice |
| It Services Agreement | Camp Stella Maris | 4395 E. Lake Road, Livonia, NY 14487 | ongoing | Services Agreement |
| Real property lease agreement | Catholic Charities Inc | 1150 Buffalo Road, Rochester NY 14624 | 6/30/2024 | lease agreements |
| It Services Agreement | Catholic Charities Inc | 1150 Buffalo Road, Rochester NY 14624 | ongoing | Services Agreement |
| Annual Subscription Fee | Catholic Faith Technologies | 12603 Hemlock Ste C, Overland Park, KS, 66213 | 6/1/2024 | Services Agreement |
| Door Mat Cleaning Service | Cintas (formally Doritex Corporation) | P.O. Box 630910, Cincinnati, OH 45263 | ongoing | Service Agreement |
| Annual License-3500 Seats | Converge One (CISCO) | NW 5806, PO Box 1450, Minneapolis, MN 55485 | 3/1/2024 | Terms & Conditions |
| License Agreement for I ready School Study | Curriculum Associates LLC | P.O. Box 936600, Atlanta, GA 31193-6600 | 6/30/2024 | License Agreement |
| EAP SVC | Employee Network Inc | 4819 Emperor Blvd. Suite 310, Durham, NC 27703 | ongoing | Service Agreement |
| Employee Health Plan | Excellus | P.O. Box 5266, Binghamton, NY 13902-5266 | 12/31/2024 | Plan description-signed contract on file with Broker |
| Retired Priest Health Insurance | Excellus | P.O. Box 5266, Binghamton, NY 13902-5266 | 12/31/2024 | Contract quote-signed contract on file with Broker |
| Dental Insurance | Excellus | P.O. Box 5266, Dental Premium, Binghamton, NY 13902-5266 | 12/31/2024 | Plan description-signed contract on file with Broker |
| Retired Priest Dental Insurance | Excellus | P.O. Box 5266, Dental Premium, Binghamton, NY 13902-5266 | 12/31/2024 | Contract quote-signed contract on file with Broker |
| Eye Med | Fidelity Security Life Insurance | 162 Prospect Hill Rd, Ste 101A, Brewster, NY 10509-2374 | 12/31/2024 | Plan description |
| Dedicated website hosting | Hostgator | PO Box 947079, Atlanta, GA 30394-7079 | 5/1/2025 | Invoice |
| HR/Benefits | HR Works, Inc | 200 Willow Brook Office Park, Fairport, NY 14450 | ongoing | Service Agreement |
| Service and License Agreement for Annual Support SAN | Info Advantage | 155 Sanford St., Rochester, NY 14620 | 9/6/2026 | Invoice |
| Fortinet firewalls | Info Advantage | 155 Sanford St., Rochester, NY 14620 | ongoing | Invoice |
| Tape storage and service | Iron Mountain | P.O. Box 27128, New York, NY 10087-7128 | ongoing | Invoice |
| Contract for Cleaning services at PC | Keidel's Inc | PO Box 565, Rushville, NY 14544 | 5/31/2025 | Service Agreement |
| Contract for Cleaning services at SWH location | Keidel's Inc | PO Box 565, Rushville, NY 14544 | 5/31/2025 | Service Agreement |
| Annual Maintenance on for PC location | Lasertec | 8455 Kirk Dr, Colorado Springs, CO 80908 | 12/31/2024 | Invoice |
| HVAC Agreement for PC location | Leo J. Roth Corporation | 841 Holt Rd, Webster, NY 14580 | 9/30/2024 | Maintenance agreement |
| HVAC Agreement for SWH location | Leo J. Roth Corporation | 841 Holt Rd, Webster, NY 14580 | 9/30/2024 | Maintenance agreement |
| FSA Admin | Lifetime Benefit Solutions | Dept 116039, P.O. Box 5211, Binghamton, NY 13902-5211 | 12/31/2024 | Renewal Form |
| Postage Machine Maintenance | Lineage | 385 North French Road, Amherst, NY 14228 | 10/23/2024 | Service Agreement |
| Service Agreement for Maintenance on Folder Machine | Lineage | 385 North French Road, Amherst, NY 14228 | 2/26/2024 | Service Agreement |
| Adobe software | Logisoft | 600 Fishers Station Dr., Suite 137, Victor, NY 14564 | ongoing | Invoice |
| Insurance Asset Analysis | Marsh Risk Consulting | 550 S. Main St, Ste 525, Greenville, SC 29601 | ongoing | SOW |
| St. Gregory Marion | MicroClimate | 30 Industrial Park Circle, Suite 2, Rochester, NY 14624 | 5/31/2024 | Contract |
| St. Thomas Aquinas, Leicester | MicroClimate | 30 Industrial Park Circle, Suite 2, Rochester, NY 14624 | 5/31/2024 | Contract |
| Remote Management Tool | MMSOFT Design Ltd. Pulseway | 6-9 Trinity Street Dublin, Ireland DO2 EY47 | 6/28/2025 | Invoice |
| E-Rate Consulting Services | Mondavi Design LLC | P.O. Box 607, Mendon, NY 14506-0607 | on going | SOW |
| Services Agreement for Chaplain Services | Monroe County Hospital | 435 E Henrietta Rd, Business Office, Rochester, NY 14620 | on going | Service Agreement |
| Services Agreement for Chaplain Services | Monroe County Jail | 130 S Plymouth Ave, Rochester, NY 14614 | ongoing | Service Agreement |
| Life Insurance | Mutual of Omaha Insurance | Payment Processing Ctr. P.O. Box 2147, Omaha, NE 68103-2147 | ongoing | Insurance proposal |

| Description of Lease or Contract | Name | Address | Lease/Contract Expires | Documentation on file (contract / agreement / license / SOW) |
|---|---|---|---|---|
| Service Agreement for Electric Service | New Wave Energy Corporation | P.O. Box 42, Bowmansville, NY 14026 | on going | Service Agreement |
| Service Agreement for Natural Gas Service | New Wave Energy Corporation | P.O. Box 42, Bowmansville, NY 14026 | on going | Service Agreement |
| PSIP third party Administrator Agreement | Omni Underwriting Managers LLC | P.O. Box 62937, Virginia Beach, VA 23466 | 6/30/2025 | Service Agreement |
| License/Service Agreement | ParishSOFT | Dept. 0208, P.O. Box 120208, Dallas, TX 75312-0208 | 6/30/2024 | Invoice |
| Service Agreement for UI Cost Control | People System | P.O. Box 4816, Syracuse, NY 13221-4816 | ongoing | Service Agreement |
| Vista License Agreement | Percept Group | P.O. Box 4662, Sedona, AZ 86340 | ongoing | Invoice |
| Annual Maintenance Support | Pontem Software | P.O. Box 988, Jackson, MI 49204 | 7/31/2024 | Invoice |
| Real Property Lease | Providence Housing Development Corp | 1150 Buffalo Road, Rochester, NY 14624 | 5/31/2024 | lease agreements |
| Real Property Lease | Providence Housing Development Corp | 1136 Buffalo Road, Rochester, NY 14624 | 12/31/2028 | lease agreements |
| It Services Agreement | Providence Housing Development Corp | 1150 Buffalo Road, Rochester, NY 14624-1890 | ongoing | Services Agreement in Lease |
| Lease Agreement for Postage Machine | Quadient Leasing USA | Dept. 3682, P.O. Box 123682, Dallas, TX 75312-3682 | 7/5/2028 | Lease Agreement |
| Real Property Lease | Rochester Catholic Press Association | 1150 Buffalo Road, Rochester NY 14624 | 6/30/2024 | lease agreements |
| It Services Agreement | Rochester Catholic Press Association | 1150 Buffalo Road, Rochester NY 14624 | ongoing | Services Agreement in Lease |
| Operational Support | Rochester Catholic Press Association | 1150 Buffalo Road, Rochester NY 14624 | ongoing | |
| Sage Intacct Nov. 30 2023- Jan 30 2024 | Sage | 300 Park Ave, Floor Suite 1400 San Jose, CA 95110 | 1/30/2025 | Subscription Agreement |
| Building Automation Contract - Fire Alarm | Siemens (Advantaged Services) | c/o Citibank P.O. Box 2134, Carol Stream, IL 60132-2134 | 10/31/2024 | Service Agreement |
| Building Automation Contract - HVAC | Siemens (Advantaged Services) | c/o Citibank P.O. Box 2134, Carol Stream, IL 60132-2134 | 12/31/2024 | Service Agreement |
| Catholic Family Center Parking | SJ Parking LLC | 259 Alexander St, Rochester, NY 14607 | ongoing | Application |
| Catholic Family Center Parking | Buckingham Properties LLC | P.O. Box 8006, Lockbox:788006, New York, NY 10008-8006 | ongoing | |
| Operational Support | St Bernard's School of Theology & Ministry | 120 French Road, Rochester, NY 14618 | ongoing | |
| Temporary Staffing Services Agreement | TalentEdge (formally RBA Staffing) | 150 State St, Ste 400, Rochester, NY 14614 | ongoing | Service Agreement |
| Elevator Monitoring Services Agreement for PC | Technical System Group | 1799 N. Clinton Ave, Rochester, NY 14621 | on-going | Contract |
| Feenics Hosting Agreement for PC | Technical System Group | 1799 N. Clinton Ave, Rochester, NY 14621 | on-going | Security Agreement |
| Elevator Monitoring Services Agreement for SWH | Technical System Group | 1799 N. Clinton Ave, Rochester, NY 14621 | | Elevator out of service |
| Monitoring Svc | Technical System Group | 1799 N. Clinton Ave, Rochester, NY 14621 | 2/18/2027 | Contract/Svc Agreement |
| Monitoring Svc | Technical System Group | 1799 N. Clinton Ave, Rochester, NY 14621 | 11/30/2024 | Services Agreement |
| Contract for Snow Removal for PC | Ted Hosmer Inc | P.O. Box 888, Henrietta, NY 14467 | 3/31/2024 | Contract |
| Contract for Lawn Mowing for PC | Ted Hosmer Inc | P.O. Box 888, Henrietta, NY 14467 | 11/30/2025 | Contract |
| Elevator Services Agreement for PC | TK Elevator Corp | PO Box 3796, Carol Stream, IL 60132 | 2/29/2024 | Contract |
| Lift Elevator Services Agreement for PC | TK Elevator Corp | PO Box 3796, Carol Stream, IL 60132 | 2/29/2024 | Contract |
| Master Trust Agreement for the Diocese of Rochester Priests' Retirement Plan | The Bank of New York | 240 Greenwich Street, New York, NY 10286 | on-going | |
| Master Trust Agreement for the Diocese of Rochester Lay Employees' Retirement Plan | The Bank of New York | 240 Greenwich Street, New York, NY 10286 | on-going | |
| Shared Service Agreement | The Communis Fund of the Diocese of Rochester, Inc. | 1150 Buffalo Road, Rochester NY 14624 | on-going | |
| The Diocese of Rochester - Lay Employees' Retirement Accumulation Retirement Plan | The Diocese of Rochester Lay Employees' Retirement | 1150 Buffalo Road, Rochester NY 14624 | on-going | |
| The Diocese of Rochester - Priests 'Retirement Plan | The Diocese of Rochester Priests Retirement Plan | 1150 Buffalo Road, Rochester NY 14624 | on-going | |
| Copier Maintenance Contract | Toshiba Business Solutions | P.O. Box 927, Buffalo, NY 14240-0927 | on-going | Contract |
| Printer Maintenance Contract | Toshiba Business Solutions | P.O. Box 927, Buffalo, NY 14240-0927 | on-going | Contract |
| Lawn Care Services Agreement for PC location | TruGreen | 1790 Kirby Pkwy, Suite 300, Memphis, TN 38138 | ongoing | Service Agreement |
| Retired Priest Health Insurance | Unversa HealthCare Direct | 165 Court St, Rochester, NY 14647 | on-going | |
| Garbage Removal | Waste Management | PO Box 13648, Philadelphia, PA 19101-3648 | 2/5/2024 | |
| Garbage Removal | Waste Management | PO Box 13648, Philadelphia, PA 19101-3648 | ongoing | |
| IT Security Crowdstrike License | Winslow Tech Group | 303 Wyman St., Suite 210, Waltham, MA 02451 | 3/24/2024 | |
| Business Associate Agreement | Zoom Video Communications Inc | P.O. Box 888843, Los Angeles, CA 90088-8843 | 3/22/2024 | Business Associate Agreement |

| Description of Lease or Contract | Name | Address | Lease/Contract Expires | Documentation on file (contract / agreement / license / SOW) |
|---|---|---|---|---|
| Video Licenses for Help Desk | Zoom Video Communications Inc | P.O. Box 888843, Los Angeles, CA 90088-8843 | ongoing | Business Associate Agreement |
| Affiliation Agreement | All Parishes | | | |