United States Bankruptcy Court
Western District of New York
_____/

In Re                                    Chapter 11 Case

    The Diocese of Rochester,              Case No. 19-20905

        Debtor
_____/

## Supplemental Opposition To The Proposed Third
## Amended Disclosure Statement Filed By The Diocese of Rochester

To: Hon. Paul R. Warren, United States Bankruptcy Judge:

    The Sisters of Saint Joseph of Rochester, Inc. ("SSJ") for its supplemental opposition to The Diocese of Rochester's ("DOR") proposed third amended disclosure statement respectfully shows:

    1.    The SSJ files this supplemental opposition because of statements made by the DOR in respect to defending claims by CVA victims (described in the proposed plan as "Abuse Claimants") in the DOR's April 1, 2024 opposition to the proposed disclosure statement filed by CNA (Doc 2531). At page 14 of 17 in the DOR's objection to the CNA disclosure statement the following appears:

> CNA provides no basis for its 'expectation' that the Diocese and/or Participating Parties will not defend lawsuits which, in many cases, will allege significant malfeasance on the part of Church clerics and employees, separate and apart from those individuals who are alleged to have actually perpetrated the abuse. Contrary to CNA's assumption, the Diocese and other members of the Catholic Family will almost certainly find it necessary to defend against at least some of the allegations leveled in such lawsuits.
>
> Moreover, even if the Diocese were not inclined to contest the allegations in a particular lawsuit, a survivor with a default judgment would be entitled to discovery from the Diocese to prove their damages.

This statement is a surprise to SSJ counsel. The quoted language is fundamentally contrary and opposed to the DOR's assertions is the consultations between the SSJ and DOR counsel to fashion language to address treatment of Inbound Contribution Claim creditors ("ICC Creditors") and alleged joint tortfeasors generally in the DOR/Committee proposed plan. (The language negotiated will also impact Abuse

[031308-000087/5971026/1]        1

Case 2-19-20905-PRW, Doc 2556, Filed 04/09/24, Entered 04/09/24 17:58:04, Description: Main Document , Page 1 of 8

Claimants in the course of non-bankruptcy court actions against alleged joint tortfeasors and/or ICC Creditors).

2. During the consultations between counsel for the SSJ and DOR, DOR counsel stated that the SSJ did not need to provide for a) the DOR and/or Participating Parties serving answers specifying any defense with particularity and b) the DOR and/or Participating Parties reliably providing discovery as the SSJ had proposed in its proposed plan addition (Exhibit A to the opposition the SSJ filed on April 1, 2024.) DOR counsel stated the alleged joint tortfeasors and/or ICC Creditors would be facing an "empty chair," not responding pleadings, papers, and opposition by the DOR and/or Participating Parties. Thus, the ICC Creditor or alleged joint tortfeasor could "tar" those parties with all perceived errors and omissions because there would be no defense. SSJ counsel noted there would be no pleading defaults with resulting admissions, as held in <u>Woodson v Mendon Leasing Corp.</u>, 100 NY2d 62, 71 (2003), on which the SSJ could rely, a point made by the SSJ counsel and rejected by the DOR as meaningful to state court defendants.)

3. The SSJ attached a copy of JO's complaint against the DOR, Villa of Hope, Inc., and SSJ to its December 2023 opposition to the DOR/Committee's proposed plan/disclosure statement. The JO complaint alleges egregious wrongdoing by Church clerics and employees. It would be fair to describe the complaint as an all-out frontal assault on the DOR, the Vatican, and anyone having any relationship to the recruitment, training, supervision, disciplining, and discharging priests and Fr. Hanna, the priest assigned by the Diocese to the Villa up to 1976. The JO complaint is an example of shocking wrongdoing both individually and institutionally. At least one other Abuse Claimant added further particulars concerning the DOR and Father Hanna relationship. Once the Court reads the allegations against Fr. Hanna and the Church, the Court would be hard pressed to think that there could be any more egregious wrongdoing alleged against the DOR. The Court could reasonably conclude that JO's complaint could elicit an answer and defense from the DOR as disclosed in the above quotation. [JO's separate complaint against DePaul,

[031308-000087/5971026/1]           2

Case 2-19-20905-PRW, Doc 2556, Filed 04/09/24, Entered 04/09/24 17:58:04, Description: Main Document , Page 2 of 8

also included in the SSJ's December 2023 submission, as fleshed out in discovery, is even more shocking, though it does not involve Church clerics, employees, or church-related perpetrators.]

4. In reliance on the DOR's statement that the DOR would not defend because, as understood by SSJ counsel, the DOR had made an agreement to that effect with the Committee so the case could advance to confirmation, SSJ agreed to a deposition date with JO's counsel. The wisdom of that agreement is wide open to question now that the DOR appears to have meaningfully changed its position on defending. No one knows, neither JO nor the SSJ, what the DOR will do in defending either in relation to the proceedings by the Abuse Claims Reviewer and/or in state court. The DOR is prejudicing all sides in the state court litigation by its non-disclosure and its moving-target disclosure.

5. The SSJ was concerned that the plan, as drafted, would allow Abuse Claimants to make claims to the Abuse Claims Reviewer of outrageous injuries caused by and laid at the door of the DOR, but attempt to shift blame in non-bankruptcy courts to rest more heavily on the alleged joint tortfeasors or ICC Creditors. The SSJ was concerned that Abuse Claimants sought to facilitate any plan to shift blame by confidentiality of submissions to the Abuse Claimants Reviewer and a confidentiality agreement dictated by parties adverse to the alleged joint tortfeasors. Thus, the SSJ proposed terms to prevent this type of harm.

6. Because in many instances, maybe most instances, the DOR and/or Participating Parties did not serve answers, the SSJ was concerned that it would lose the benefit of the DOR answering and defending or, alternatively, defaulting in answering, thereby admitting the Abuse Claimant's allegations. The SSJ was concerned that without full, willing, ready access to witnesses and documents in the hands of or under the control of the DOR and/or Participating Parties, the SSJ could be left hard pressed to demonstrate through admissible evidence the matters relevant and material to its defense. Not answering at all and/or attempting to withhold full, timely, and voluntary disclosure could seriously tilt the non-bankruptcy litigation in favor of Abuse Claimants. For example, JO's complaint against the DOR asserts

[031308-000087/5971026/1]                3

Case 2-19-20905-PRW,   Doc 2556,   Filed 04/09/24,   Entered 04/09/24 17:58:04,
Description: Main Document  , Page 3 of 8

that the DOR did a masterful job of concealing priestly sexual abuse and, instead, used the prospect of future abuse by wrongdoing priests as a tool to control those priests. There is a monumental difference to the SSJ in litigation as an alleged joint tortfeasor between the DOR defaulting, thus, admitting the Abuse Claimant's allegations or the DOR answering and stoutly defending pursuant to the CPLR against what it deems unfounded, scandalous lies, on the one hand, and, on the other hand, the DOR saying nothing and doing nothing in response to the complaint and attempting to reserve all of its rights under both the CPLR and the stays under the proposed plan to impede state court discovery plus implicitly, attempt to deter alleged joint tortfeasors from pressing the DOR for full and complete discovery by the implicit threat of contempt proceedings for violating the discharge order, sec. 1141 discharge, the plan discharge, and channeling order which consume multiple pages in the proposed plan.

7. Attempting to avoid unambiguously admitting alleged wrongs which were the cause of the DOR petition and attempting to reserve the DOR's rights to defeat or limit disclosure of the relevant facts in both state and federal courts would be a wholly improper use of the Bankruptcy Code. The Bankruptcy Code operates on the principle that debtors should be required to make full disclosure, truthfully and voluntarily, not use the Code and/or a plan as a tool for continuing to avoid the truth, or any part of it, concerning claims in the case against the debtor.

8. The DOR's April 1st objection to the CNA disclosure statement suggests a possible reason for the DOR's apparent reluctance to fairly and reasonably answer complaints and disclose the facts. In the box at the top of page 15 of 17 the DOR argues that CNA is incorrectly inflating the time it will take for litigation of claims to be completed. The DOR argues: ". . . settlement of litigation is much common than litigation to judgment after trial . . . " Id. It may be that the DOR expects the alleged joint tortfeasors to settle the Abuse Claimants actions against them and, therefore, there is no need for any action by the DOR or anyone else carrying out duties under the proposed plan if confirmed. The error in that thought process is that absent full, fair, complete, and voluntary disclosure and action by the DOR and others involved in

carrying out the plan, Abuse Claimants and alleged joint tortfeasors are deprived of the very facts which would permit the non-debtor parties to reach valid, well-informed resolutions. Once again, the JO litigation provides an example. If the DOR conducted itself as JO claims, that is, the DOR knowingly and successfully concealed Fr. Hanna's evil conduct from discovery by third parties for years before JO first arrived at the Villa and continued to successfully do so after JO arrived, the degree of fault and injury reasonably attributable to the SSJ is lessened even if Sister Betty was somehow careless in not discovering reason to inquire into Fr. Hanna's alleged previous conduct. Allowing Fr. Hanna to remain at the Villa without warning anyone of his allegedly known background and propensities would create a risk of injury to all Villa residents through the unknowing negligence-free assignment by a Villa staff member of a resident to positions in the chapel in which Fr. Hanna presided and/or individual instruction or counseling by Fr. Hanna. Put another way, if Fr. Hanna was a serial abuser, the DOR knew of that fact before JO arrived at the Villa, and the DOR disclosed Fr. Hanna's propensities, it is fair to say that the chance of abuse of JO by Fr. Hanna would drop to zero, assuming the DOR did not summarily remove Fr. Hanna from the Villa. The realistic settlement value of JO's claim against the SSJ is substantially lessened when the proof available or the DOR's admits that it knew Fr. Hanna was an abuser before JO arrived at the Villa, but did nothing based on its knowledge of Fr. Hanna's propensities.

9. On the other hand, if the DOR claims that JO is spouting fantasies, it knows that Fr. Hanna was innocent of JO's claims, and the value of the JO is exactly zero, it is an imposition on the SSJ to have to attempt to settle with JO without the DOR having made full, voluntary disclosure of all relevant, material facts. Forcing the parties to attempt to settle a claim without knowing all the surrounding circumstances and relevant facts is equivalent to asking the non-debtor parties to play pin the tail on the donkey in a coal mine on a dark night. It is unlikely to lead to settlement and certainly not a quick settlement. Withholding full disclosure is much more likely to lead to gamesmanship and delay.

10. New York civil litigation should be conducted to obtain a "... just, speedy, and inexpensive determination ... " (CPLR 104). The proposed plan defeats all those public policy goals, as well as defeating the expected access to information relating to claims against the debtor expected under the Code.

## The DOR's Request For Speed Is Not Well Taken

11. The DOR's proposal that the CNA proposed disclosure statement should be approved regardless of the asserted lack of legal merit of that document t is not well taken. See the DOR's objection at page 15 of 17 at ¶8. If the disclosure statement lacks adequate information, it should be disapproved. The DOR does not have authority to waive sec. 1125 on behalf of anyone, except maybe itself in a non-fiduciary capacity. The effects on the case of approving a disclosure statement that is non-complying are unknown. Even if this Court could be persuaded to indulge a deviation from generally accepted legal standards, this Court cannot bind the District Court or the Court of Appeals. The DOR is risking confirmation for expediency.

12. Second, the suggestion to accept a disclosure statement not complying with accepted legal standards suggests that the DOR may wish to later argue that it should get a "pass" on its own disclosure statement which has been condemned by many parties in interest. The Code has standards for disclosure statements. Those standards do not include a "what is good for the goose is good for the gander" standard.

13. Third, the Court should head off any claim that sloppiness is acceptable in a case of the importance of the DOR's case at the present stage or later in the confirmation process.

14. Fourth, confirmation of a plan that could be at risk of reversal because of inadequate disclosure could put the SSJ and alleged joint tortfeasors, as well as Abuse Claimants at risk of having to try cases under the rules in the plan, something which may prejudice them at trial or during pretrial proceedings, only to be disavowed by the bankruptcy system later, but without any remedy to the injured

[031308-000087/5971026/1]    6

Case 2-19-20905-PRW, Doc 2556, Filed 04/09/24, Entered 04/09/24 17:58:04, Description: Main Document , Page 6 of 8

party. That outcome would be fundamentally unfair to alleged joint tortfeasors and/or Abuse Claimants. The Court should turn square corners and adhere to the applicable law at all steps in the case.

### Disclosure Which Should Be Required

15. In addition to all other disclosure in respect to the proposed plan, the DOR should be compelled to disclose in plain, simple, obvious language and by conspicuous print and positioning in the disclosure statement all the claims to which it intends to object. If there is a mass of claims to which the DOR intends to object, Abuse Claimants and alleged joint tortfeasors would certainly want to know that information in considering how to address voting on and confirmation of the proposed plan. It would be fatuous to think that an Abuse Claimant might not find it important in deciding on how to vote on the proposed plan to know whether the Abuse Claimant's claim will be allowed pursuant to agreement (as the SSJ counsel have been led to understand) making peace between the Committee and DOR or whether the DOR will "drop the gloves" after confirmation seeking to deliver a knockout blow to the voting Abuse Claimant's claim. It is reasonable to wonder whether disclosure of an intent by the DOR to challenge claims after confirmation would reduce to plan acceptance to a level that defeats confirmation and/or makes attaining the <u>Perdue</u> requirement of a high level of acceptance impossible. Making this type of disclosure should not prove difficult or time consuming.

Wherefore, the SSJ requests the Court disapprove the DOR's proposed disclosure statement and grant such other and further relief as to the Court seems just and proper.

Dated: April 9, 2024

*[signature]*

Lacy Katzen LLP
David D. MacKnight, Esq. of counsel
Attorneys for the SSJ
600 Bausch & Lomb Place
Rochester, New York 14604
Tele: 585-454-5650

State of New York
County of Monroe

David D. MacKnight, after having been duly sworn, deposes and says:

1.  I am associated with the law firm of Lacy Katzen LLP, attorneys for the Sisters of Saint Jospeh of Rochester, Inc. ("SSJ").

2.  I make this affidavit on personal knowledge, having personally participated in the telephonic discussions between counsel for the SSJ (including Peter T. Rodgers, the firm's managing partner) and counsel for the DOR described in the above supplemental submission on behalf of the SSJ.

3.  The statements and beliefs set forth above accurately describe the understanding and belief concerning the DOR's intentions and the risks faced by the SSJ (and any other alleged joint tortfeasor) in defending claims against the DOR, Participating Parties, and alleged joint tortfeasors gained from discussions with the DOR counsel.

Dated: April 9, 2024

_____
David D. MacKnight

Signed and sworn before me this
9th day of April, 2024

_____
Notary Public

DEBRA L. GAY
Notary Public, State of New York
Qualified in Niagara County
Registration ID # 01GA4855501
Commission Expires March 31, 20_26_

[031308-000087/5971026/1]    8

Case 2-19-20905-PRW, Doc 2556, Filed 04/09/24, Entered 04/09/24 17:58:04, Description: Main Document , Page 8 of 8