**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DIOCESE OF ROCHESTER, | Case No. 19-20905 |
| Debtor. | |

## CONTINENTAL INSURANCE COMPANY'S
## FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## FOR THE DIOCESE OF ROCHESTER

### Introduction

The Continental Insurance Company ("CNA") proposes this plan of reorganization for debtor The Diocese of Rochester pursuant to § 1121(c) of the Bankruptcy Code. The capitalized terms used throughout this Plan shall have the meanings ascribed to them in Section I, below.

The Plan, among other things, provides for the equitable treatment and payment of Abuse Claims against the Diocese through the establishment of a Trust for the benefit of Holders of Abuse Claims. The Trust will be funded with a total of not less than $201.35 million dollars, including $75 million from CNA. Such funds, to be contributed by the Diocese and the Settling Insurers, including CNA, will be available for distribution to the Holders of Abuse Claims as of the Plan's Effective Date, without any need for tort litigation against the Diocese or insurance coverage litigation against the Settling Insurers. This amount is a significantly larger sum than would be certain to be available under the plan jointly proposed by the Diocese and the Committee, which requires Holders of Abuse Claims to engage in both tort system litigation and insurance coverage litigation in order to obtain funding from CNA.

Earlier in this bankruptcy case, the Diocese entered into a settlement with CNA in the amount of $63.5 million. The Committee objected to that settlement. In this Plan, the $75 million amount to be contributed by CNA exceeds the amount previously agreed to with the Diocese and, together with the other committed funding, provides an overall compensation fund of at least $201.35 million, which can be paid by the Trust to Abuse Claimants without delay.

The Committee has said that it, in consultation with State Court Counsel representing approximately 70% of all Abuse Claimants, has "acknowledged and accepted the risk inherent in pursuing post-confirmation recovery from Non-Settling Insurers in the absence of a settlement." Further, the Diocese has stated that the plan jointly proposed by the Diocese and the Committee:

provides for the assignment to the Trust of Insurance Claims against Non-Settling Insurers. The Non-Settling Insurers are likely to assert factual and legal defenses to both

their coverage obligations and to the underlying liability of the Diocese and other Participating Parties for Abuse Claims. Litigation of the Insurance Claims against Non-Settling Insurers could be protracted and expensive. **There is no guarantee that the Trust will prevail in its prosecution of the Insurance Claims against Non-Settling Insurers, or that such recovery, if any, will exceed the amounts that would otherwise be available from CNA**. . . . (Emphasis added.)

This Plan, by contrast, allows Abuse Claimants to speak for themselves regarding whether they prefer to accept the certainty of CNA's $75 million contribution to the Trust, without the risks, costs, and delays of litigation, or instead want to bear the risks, burdens, and delay they would face to obtain payment from CNA under the Diocese-Committee plan.

**Table of Contents**

**Page**

[to come]

## PLAN EXHIBITS

Exhibit A        List of Participating Parties

## PLAN SUPPLEMENT EXHIBITS

Exhibit 1        Allocation Protocol
Exhibit 2        Abuse Claim Release Agreement
Exhibit 3        Trust Agreement
Exhibit 4        List of Insurance Policies
Exhibit 5        Non-Monetary Commitments
Exhibit 6        List of Assumed Contracts and Leases
Exhibit 7        LMI Settlement Agreement
Exhibit 8        Underwriters Settlement Agreement
Exhibit 9        Interstate Settlement Agreement
Exhibit 10       First State Settlement Agreement

- 1 -

# SECTION 1.    DEFINITIONS AND INTERPRETATION

## 1.1    Definitions.

The following terms used herein shall have the respective meanings defined below:

*1.1.1*    ***Abuse*** means any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, or any other sexual misconduct.

*1.1.2*    ***Abuse Claim*** means any Claim that has been asserted, or could be asserted, against the Diocese or any Participating Party, arising in whole or in part, directly or indirectly from Abuse occurring prior to the Petition Date, including seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Diocese or any Participating Party, or any other person or entity for whose acts or failures to act the Diocese or any Participating Party is or was allegedly responsible, including, without limitation, all Adult Abuse Claims, Child Abuse Claims, and Future Claims, against the Diocese or any Participating Party, whether or not such Claims arise under, or were revived pursuant to, the CVA or the ASA, and whether or not a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim.  Notwithstanding the foregoing, Abuse Claims do not include any claim that a Settling Insurer may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Insurer to assert any such claim against its reinsurers and/or retrocessionaires in their capacities as such.

*1.1.3*    ***Abuse Claim Release Agreement*** means an agreement releasing the Diocese and any Participating Party consistent with the terms of this Plan to be executed by Abuse Claimants as a condition of receiving a Distribution pursuant to this Plan, substantially in the form attached to the Plan Supplement as **Exhibit 2**.

*1.1.4*    ***Abuse Claimant*** means the holder of an Abuse Claim.

*1.1.5*    ***Abuse Claims Reviewer*** means the person or entity, including the designee of such person or entity, who will assess Abuse Claims under the Allocation Protocol.  Roger L. Kramer shall be the Abuse Claims Reviewer unless the Bankruptcy Court declines to approve his appointment or hereafter appoints a replacement.

*1.1.6*    ***Abuse Claims Settlement Fund*** means a fund established by the Trust to pay Abuse Claims.

*1.1.7*    ***Action*** means any lawsuit, proceeding, or other action in a court, or any arbitration.

*1.1.8*      ***Administrative Claim*** means a Claim against the Diocese for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Diocese; (b) Professional Fee Claims; (c) any Claim specified in section 503(b)(9) of the Bankruptcy Code; (d) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code; and (e) any Claim arising from or related to any Abuse alleged to have first occurred after the Petition Date but prior to the Effective Date, unless the Diocese elects to treat such Claim as a Pass-Through Claim.

*1.1.9*      ***Administrative Claims Bar Date*** means the deadline for filing requests for payment of Administrative Claims, as follows: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

*1.1.10*      ***Agent*** means: any past and present employee; officer; director; managing agent or other agent; shareholder; principal; teacher; staff; member; board member; administrator; priest; deacon; brother, sister, nun, or other member of a religious order; clergy; Person bound by a monastic vow; volunteer; attorney; claim handling administrator; and representatives of a Person, in each case in their capacities as such.

*1.1.11*      ***Allocation Protocol*** means the protocol for allocation of the Abuse Claims Settlement Fund to provide fair and equitable treatment for all Abuse Claims, which will be attached to the Plan Supplement as **Exhibit 1**.

*1.1.12*      ***Allowed*** means, with respect to any Non-Abuse Claim or any portion thereof, a Claim or portion thereof: (a) that has been allowed by a Final Order; (b) which is included on the Diocese's Schedules as not disputed, not contingent, and not unliquidated, for which no proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline; (c) as to which a proof of claim in a liquidated and non-contingent amount has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or any objection has been settled or withdrawn, or has been denied by a Final Order; or (d) that is expressly allowed by the terms of this Plan. For the avoidance of doubt, it is expressly understood that Abuse Claims shall not be deemed allowed or disallowed by operation of the Plan.

*1.1.13*      ***Appeal*** means the appeal of the Bankruptcy Court's *Decision and Order Denying Motion of Diocese Seeking to Enjoin the Prosecution of State Court Actions Against Independent Catholic Corporations and Dismissing Complaint* currently pending before the District Court in *The Diocese of Rochester v. AB 100 Doe, et al.*, Case No. 22-cv-06262-CJS.

*1.1.14*      ***ASA*** means the New York Adult Survivors Act, which was codified in the New York Civil Practice Law & Rules 214-j. The Adult Survivors Act created a one-year window from November 24, 2022 to November 23, 2023 for the revival of previously time-barred civil claims concerning Abuse that occurred after the Claimant reached eighteen years of age.

*1.1.15*      ***Avoidance Action*** means any (i) state law fraudulent transfer claim;

(ii) claim pursuant to sections 502(d), 541-545, 547, 548, 549, 550, 551, 552(b), or 553 of the Bankruptcy Code against any Person; and (iii) claim pursuant to section 510 N.Y. Business Corporation Law or any law of similar effect.

1.1.16    **Ballot** means the ballots accompanying the solicitation materials upon which Holders of Impaired Claims entitled to vote may, among other things, indicate their acceptance or rejection of this Plan in accordance with the procedures governing the solicitation of votes on this Plan.

1.1.17    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Case.

1.1.18    **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of New York (Rochester Division) and any Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom, or any successor thereto that may be established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Case or the Plan.

1.1.19    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended.

1.1.20    **Bar Date** means August 13, 2020 at 11:59 p.m. (Eastern time), the deadline by which proof of claim forms for prepetition Claims, including Abuse Claims, were required to be Filed against the Diocese.

1.1.21    **Business Day** means any day of the calendar week, except Saturday, Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), any day on which commercial banks are authorized or required by law to close in Rochester, New York, and any day on which the Diocese's business offices are closed in observance of a religious holiday.

1.1.22    **Cash** means cash and cash equivalents including, without limitation, checks and wire transfers.

1.1.23    **Channeled Claim** means an Abuse Claim, an Inbound Contribution Claim, an Insurer Contribution Claim, a Medicare Claim, a Direct Action Claim, an Extra-Contractual Claim, or any other Claim against any Protected Party arising from or related in any way to an Abuse Claim or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy. A Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a claim on either such Person. For the avoidance of doubt and notwithstanding anything to the contrary herein, Channeled Claims do not

include any Claims to the extent they are asserted against Excluded Parties or Non-Settling Insurers; *provided, however,* any Claims which assert liability against an Excluded Party or Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims to the extent they assert liability against such Protected Party.

1.1.24 ***Channeling Injunction*** is the injunction contained in Section 12.3 of this Plan.

1.1.25 ***Chapter 11*** means chapter 11 of the Bankruptcy Code.

1.1.26 ***Chapter 11 Case*** means the above-captioned bankruptcy case.

1.1.27 ***Claimant*** means any Person who alleges or alleged any Claim.

1.1.28 ***Claim*** means a claim, as that term is defined in section 101(5) of the Bankruptcy Code, including, without limitation, any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present, or (to the extent it arises prior to the Effective Date) future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled, or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

1.1.29 ***Claim Objections*** means all objections to Abuse Claims Filed prior to the Effective Date.

1.1.30 ***Class*** means a class or category of Claims as classified and described in Section 2 of this Plan.

1.1.31 ***Class 1 Claim*** means the Secured Claim held by The Bank of Castile.

1.1.32 ***Class 2 Claim*** means a Pass-Through Claim.

1.1.33    **_Class 3 Claim_** means a General Unsecured Claim that is not an Abuse Claim.

1.1.34    **_Class 4 Claim_** means an Abuse Claim.

1.1.35    **_Class 5 Claim_** means an Inbound Contribution Claim.

1.1.36    **_Class 6 Claim_** means an Insurer Claim.

1.1.37    **_CNA_** means Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey and Firemen's Insurance Company of Newark, New Jersey.

1.1.38    **_CNA Administrative Claim_** means CNA's claim against the Diocese arising out of the Diocese's breach of the Prior Insurance Settlement Agreement.

1.1.39    **_CNA Cash Contribution_** means the sum of $75 million United States dollars (US$75,000,000.00) to be contributed by Continental to the Trust on the Consummation Date.

1.1.40    **_CNA Protected Parties_** means (a) CNA, (b) each of its past, present, and future parents, subsidiaries, affiliates, and divisions, (c) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies, (d) each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators, and (e) each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them.

1.1.41    **_CNA Settlement_** means the full and final settlement and release of all Claims by or against CNA asserted by any Entity, in consideration of the CNA Cash Contribution, as described in Section 5.1 of the Plan.

1.1.42    **_Committee_** means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

1.1.43    **_Confirmation Date_** means the date the Confirmation Order is entered by the clerk of the Bankruptcy Court on the Bankruptcy Court's docket.

1.1.44    **_Confirmation Hearing_** means the hearing on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.45    **_Confirmation Order_** means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

*1.1.46* **Consummation Date** means (a) the later of 30 days after the Effective Date or 30 days after the Settling Insurers receive all information necessary to pay the Insurance Settlement Amounts, including without limitation a Form W-9, or (b) such other date as agreed by the Plan Proponent.

*1.1.47* **Court** means the Bankruptcy Court, the District Court, or any court with appellate jurisdiction over any order entered by the Bankruptcy Court and/or the District Court in the Chapter 11 Case, as applicable.

*1.1.48* **Creditor** means a holder of a Claim.

*1.1.49* **CVA** means New York Child Victim's Act, which was codified in the New York Civil Practice Law & Rules 214-g. The CVA created a one-year window from August 14, 2019 to August 13, 2020 for the revival of previously time-barred civil claims related to childhood sexual abuse, which was subsequently extended to August 13, 2021.

*1.1.50* **Diocese** means The Diocese of Rochester, the debtor and debtor in possession in this Chapter 11 Case.

*1.1.51* **Diocese Discharge** means the complete extinguishment of the liability of the Diocese in respect to any Claim or debt, as and to the extent further described in Section 12 of the Plan.

*1.1.52* **Diocese Protected Parties** means (a) the Diocese, (b) the Parishes, (c) any and all named insureds, additional insureds, insureds, and any Entity alleged to be covered under the Insurance Policies with respect to which the Diocese has authority to release Claims by a Final Order pursuant to §§ 105(a) or 363(f) of the Bankruptcy Code and/or confirming this Plan, (d) each of the past, present, and future holding companies, merged companies, related companies, divisions, and acquired companies of the Diocese, and each of their respective predecessors, successors, and assigns, each in their capacity as such, but excluding, however, (i) any individual who perpetrated an act of Abuse that forms the basis of an Abuse Claim with respect to that Abuse Claim solely in his capacity as an individual abuser, (ii) any archdiocese or diocese other than the Diocese itself, or (iii) any religious order.

*1.1.53* **Direct Action Claim** means any Claim by any Entity against any Settling Insurer that is identical or similar to, or relating to, any Abuse Claim, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer. Notwithstanding the foregoing, Direct Action Claims do not include any claim that a Settling Insurer may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Insurer to assert any such claim against its reinsurers and/or retrocessionaires in their capacities as such.

*1.1.54* **Disallowed** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof: (a) has been disallowed by either a Final Order or pursuant to a

settlement or stipulation between the Diocese and the holder of the Claim; or (b)(i) is valued on the Diocese's Schedules at zero dollars ($0) or denominated as contingent, disputed or unliquidated and (ii) as to which a bar date has been established but no proof of claim has been Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

          *1.1.55*      ***Disputed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, all Abuse Claims and Inbound Contribution Claims together with any Non-Abuse Claim that: (a) is not included on the Diocese's Schedules or is reflected on the Schedules as being valued at zero dollars, or as contingent, unliquidated or disputed; or (b) is the subject of an objection Filed in the Bankruptcy Court that has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

          *1.1.56*      ***Disclosure Statement*** means the Disclosure Statement to accompany this Plan dated April 24, 2024 as altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

          *1.1.57*      ***Distribution*** means any payment to the holder of a Claim as provided in this Plan.

          *1.1.58*      ***District Court*** means the United States District Court for the Western District of New York.

          *1.1.59*      ***Donor Restrictions*** means, with respect to any charitable assets in the Diocese's possession or control, any donor imposed restrictions upon the use of such assets.

          *1.1.60*      ***DOR Entities' Cash Contribution*** means the sum of $55 million United States dollars (US$55,000,000.00), to be contributed by or on behalf of the Diocese and the Participating Parties to the Trust and used to fund the payment of Abuse Claims (except Future Claims) and Trust Expenses pursuant to the Plan and the Trust Agreement.

          *1.1.61*      ***DOR Entities' Post-Effective Date Costs*** means all fees and expenses reasonably incurred by the Diocese, the Reorganized Diocese, or the Participating Parties in connection with, or upon request by the Trustee or the Abuse Claims Reviewer, assisting with the administration of the Allocation Protocol. For the avoidance of doubt, the Diocese, the Reorganized Diocese, and the Participating Parties will have the right to defend Tort Claims, but solely at their own expense.

          *1.1.62*      ***DOR Entities' Post-Effective Date Costs Procedures*** means the procedures set forth in Section 8.9 of the Plan for the payment of DOR Entities' Post-Effective Date Costs.

          *1.1.63*      ***DOR Entities' Post-Effective Date Cost Reserve*** means a portion of the Trust Reserve held in a separate, segregated account established by the Trust exclusively for payment of DOR Entities' Post-Effective Date Costs, which shall be $75,000.

*1.1.64* **Effective Date** means (a) the last Business Day of the month in which (i) all conditions to effectiveness of this Plan have been satisfied or waived in accordance with Section 11.1 and (ii) no stay of the Confirmation Order is in effect, *provided, however* that if the first date on which all conditions to effectiveness or of the Plan have been satisfied or waived occurs on or after the twentieth (20th) day of such month, the Effective Date shall occur on the last Business Day of the immediately following month, or (b) such other date as agreed by the Plan Proponent.

*1.1.65* **Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

*1.1.66* **Estate** means the Estate of the Diocese created by the Diocese's Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

*1.1.67* **Excess Recovery Amount** has the meaning ascribed to it in Section 4.4.1(c)(ii) of the Plan.

*1.1.68* **Excluded Party** means, except to the extent they are a Participating Party: (a) any individual who personally committed an act of Abuse that resulted or would result in an Abuse Claim against the Diocese or a Participating Party, (b) the Holy See, (c) any religious order (notwithstanding whether such religious order may have operated a Parish or School that is a Participating Party), or (d) any other entity that is an affiliate of or associated with the Roman Catholic Church (other than the Diocese, the Reorganized Diocese, the Participating Parties and their respective Related Persons).

*1.1.69* **Exculpated Parties** means, collectively: (a) the Diocese; (b) the Reorganized Diocese; (c) the Settling Insurers; (d) the Mediators; (e) the Unknown Claimant Representative; and (f) with respect to each of the foregoing Persons or Entities in clauses (a) through (e), such Person's or Entity's Related Persons, in each case in their capacity as such; provided, however, that notwithstanding anything to the contrary herein, no Excluded Party may be an Exculpated Party.

*1.1.70* **Extra-Contractual Claim** means any Claim against any Settling Insurer, in its capacity as an Insurer, seeking any type of relief other than coverage or benefits under the Insurance Policies. Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging with respect to (i) any Insurance Policy; (ii) any Claim allegedly or actually covered under an Insurance Policy; or (iii) the conduct of a Settling Insurer with respect to (i) or (ii): (a) bad faith; (b) failure to provide insurance coverage under any Insurance Policy; (c) failure or refusal to compromise and settle any Claim insured under any Insurance Policy; (d) failure to act in good faith; (e) violation of any covenant or duty of good faith and fair dealing; (f) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (g) violation of any unfair claims practices act or similar statute, regulation or code; (h) any type of misconduct; or (i) any other act or omission of any type by a Settling Insurer for which the Claimant seeks relief other than coverage or benefits under an Insurance Policy. Extra-Contractual Claims include all Claims relating to the Settling Insurers' (x) handling of any Claims under the Insurance Policies, (y) conduct in negotiating the Prior Insurance Settlement Agreement, the Insurance Settlements, and/or the Plan, and (z) conduct in the settlement of any Claims. Notwithstanding the foregoing, Extra-Contractual Claims do not include any claim that a Settling

Insurer may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Insurer to assert any such claim against its reinsurers and/or retrocessionaires in their capacities as such.

*1.1.71* **Fee Notice** has the meaning ascribed to it in Section 8.9.2 of this Plan.

*1.1.72* **File** or **Filed** means properly filed with the clerk of the Bankruptcy Court in the Chapter 11 Case, as reflected on the official docket of the clerk of the Bankruptcy Court for the Chapter 11 Case or the actual delivery of proofs of claim in paper or electronic form to Stretto in accordance with the terms of the Bankruptcy Court's *Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 425].

*1.1.73* **Final Judgment** has the meaning ascribed to it in Section 4.4.1(c) of this Plan.

*1.1.74* **Final Order** means an order or judgment that has not been reversed, vacated, or stayed and as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, or move to review, reargue, or rehear shall have been waived in writing or, in the event that an appeal, writ of *certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or reargument or rehearing has been denied, and the time to take any further appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion pursuant to sections 502(j) or 1144 of the Bankruptcy Code, or Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court or federal rules of civil procedure or practice may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

*1.1.75* **First State** means First State Insurance Company.

*1.1.76* **First State Protected Parties** means (a) First State; (b) each of its past, present, and future parents, subsidiaries, affiliates, and divisions; (c) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; (d) each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (e) each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them.

*1.1.77* **First State Settlement** means the settlement in principle agreed to as between First State and the Diocese, pursuant to which First State will contribute $750,000.00 United States dollars (US$750,000.00) to the Trust, as set forth in the First State Settlement

Documents.

1.1.78    **_First State Settlement Documents_** means Exhibit 10 to the Plan
Supplement.

1.1.79    **_General Unsecured Claim_** means a Claim against the Diocese of any
kind or nature including, without limitation, on account of trade credit, contract, personal injury
(other than personal injury arising from or related to Abuse), or arising from the rejection of an
executory contract or unexpired lease, that (a) is not secured by property of the Estate or otherwise
entitled to treatment as a secured claim under section 506 of the Bankruptcy Code; (b) is not
otherwise entitled to priority under sections 503 or 507 of the Bankruptcy Code; and (c) is not
otherwise an Abuse Claim, Administrative Claim, Professional Fee Claim, Claim for U.S. Trustee
Fees, Priority Tax Claim, Non-Tax Priority Claim, Secured Claim, or Pass-Through Claim.

1.1.80    **_Impaired_** means, with respect to any Class, that such Class is "impaired"
under the Plan within the meaning of section 1124 of the Bankruptcy Code.

1.1.81    **_Inbound Contribution Claim_** means any Claim against the Diocese or
any Participating Party asserting rights of contribution, indemnity, equitable indemnity, subrogation,
equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect or
derivative recovery, arising from or related to any Abuse Claim.

1.1.82    **_Injunctions_** means, collectively, the Discharge Injunction, the
Channeling Injunction, and the Supplemental Settling Insurer Injunction.

1.1.83    **_Insurance Claims_** means all Claims, causes of action and enforceable
rights of an Abuse Claimant, the Diocese and any Participating Party against any Non-Settling
Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, held by: (a)
the Diocese for any reason related to any Abuse Claim including those for (i) indemnity and
payment of any Abuse Claim; (ii) any Non-Settling Insurer's failure or refusal to provide insurance
coverage for any Abuse Claim under any Insurance Policy; (iii) any Non-Settling Insurer's tortious or
wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely
compromise and settle any Abuse Claims against the Diocese pursuant to any Insurance Policy; (iv)
to the extent not otherwise encompassed by section (iii) above, any Non-Settling Insurer's failure or
refusal to reasonably settle the Abuse Claims; and (v) the interpretation or enforcement of the terms
of any Insurance Policy as it pertains to any of the foregoing; and/or (b) any of the Participating
Parties or Settling Insurers for any reason related to any Abuse Claim against the Participating Party
or Settling Insurer, whether independently or jointly liable with the Diocese on such Abuse Claim,
including for (i) indemnity and payment of any Abuse Claim; (ii) any Non-Settling Insurer's failure or
refusal to provide insurance coverage under any Insurance Policy for any Abuse Claim against the
Diocese, a Participating Party or a Settling Insurer; (iii) any Non-Setting Insurer's tortious or
wrongful claims handling including the failure or refusal of any Non-Settling Insurer to timely
compromise and settle any Abuse Claims against the Diocese, a Participating Party, or a Settling
Insurer pursuant to any Insurance Policy; (iv) to the extent not otherwise encompassed by section
(iii) above, any Non-Settling Insurer's failure or refusal to reasonably settle the Abuse Claims; and (v)
the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the

foregoing. The term "Insurance Claim" also includes any Claims or causes of action for reimbursement of DOR Entities' Post-Effective Date Costs under any Insurance Policy, but only to the extent such DOR Entities' Post-Effective Date Costs are actually paid by the Trust.

    *1.1.84*   ***Insurance Claim Proceeds*** means any amount recovered by the Trust in respect of any Insurance Claims assigned pursuant to the terms of this Plan.

    *1.1.85*   ***Insurance Coverage Adversary Proceeding*** means the adversary proceeding commenced by the Diocese before the Bankruptcy Court on November 14, 2019, captioned as *The Diocese of Rochester v. The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National Surety Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE*, Adv. Pro. No. 19-02021.

    *1.1.86*   ***Insurance Interest*** means the Diocese's and/or any Participating Party's interest in any Insurance Policy.

    *1.1.87*   ***Insurance Policy*** means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, in effect on or before the Effective Date, which actually, allegedly, or potentially provides liability coverage for the Diocese and/or any Participating Party, or any of their respective Affiliates, successors, or assigns, with respect to any Abuse Claim.

    *1.1.88*   ***Insurance Settlements*** means, collectively, the CNA Settlement, the First State Settlement, the Interstate Settlement, the LMI Settlement, and the Underwriters Settlement.

    *1.1.89*   ***Insurance Settlement Amount*** means the settlement amount to be paid by each Settling Insurer pursuant to each Insurance Settlement to which it is a party, including, for the avoidance of doubt, the CNA Cash Contribution.

    *1.1.90*   ***Insurer*** means a Person (including all of its Affiliates, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy.

    *1.1.91*   ***Insurer Contribution Claim*** means any Claim by an Insurer against a Settling Insurer for defense, indemnity, reimbursement, contribution, subrogation, or similar relief that directly or indirectly relates to an Abuse Claim. Notwithstanding the foregoing, Insurer Contribution Claims do not include any claim that a Settling Insurer may have against its reinsurers and/or retrocessionaires in their capacities as such, and nothing in the Plan, the Plan Documents, or the Confirmation Order shall impair or otherwise affect the ability of a Settling Insurer to assert any such claim against its reinsurers and/or retrocessionaires in their capacities as such.

    *1.1.92*   ***Insurer Protected Parties*** means the CNA Protected Parties, the First

State Protected Parties, the Interstate Protected Parties, the LMI Protected Parties, and the Underwriters Protected Parties.

　　　　　*1.1.93* **Interstate** means, collectively, Interstate Fire & Casualty Company and National Surety Corporation.

　　　　　*1.1.94* **Interstate Protected Parties** means (a) Interstate; (b) each of its past, present, and future parents, subsidiaries, affiliates, and divisions; (c) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; (d) each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (e) each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them.

　　　　　*1.1.95* **Interstate Settlement** means the settlement in principle agreed to as between Interstate and the Diocese, pursuant to which Interstate will contribute $50,000,000.00 United States dollars (US$50,000,000.00) to the Trust, as set forth in the Interstate Settlement Documents.

　　　　　*1.1.96* **Interstate Settlement Documents** means Exhibit 9 to the Plan Supplement.

　　　　　*1.1.97* **Joint Tortfeasor** means any Person, who is not a Participating Party, and is alleged to be a joint tortfeasor with the Diocese and/or any Participating Party in connection with the Abuse relating to an Abuse Claim.

　　　　　*1.1.98* **Lien** means any "lien" as defined in section 101(37) of the Bankruptcy Code.

　　　　　*1.1.99* **LMI** means Certain Underwriters at Lloyd's, London subscribing to Policy Nos. SL 3209 SL 3675, ISL 3090, ISL 3410, ISL 3861, SL 3380, SL 3556, SL 3693, SL 3830, ISL 3092, ISL 3643, ISL 3809, SL 3210, SL 3676, ISL 3091, and ISL 3567, Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Company Ltd), RiverStone Insurance (UK) Limited (as successor in interest to Terra Nova Insurance Company Ltd and as successor in interest to Sphere Drake Insurance Ltd), Sompo Japan Nipponkoa Insurance Company of Europe Limited (formerly known as The Yasuda Fire & Marine Insurance Company), and Dominion Insurance Company Ltd., who subscribed to Insurance Policies providing coverage to the Diocese and other Participating Parties.

　　　　　*1.1.100* **LMI Protected Parties** means (a) LMI; (b) each of its past, present, and future parents, subsidiaries, affiliates, and divisions; (c) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; (d) each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents,

attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (e) each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them.

       *1.1.101*      **LMI Settlement** means the settlement in principle agreed to as between LMI and the Diocese, pursuant to which LMI will contribute $19.5 million United States dollars (US$19,500,000) to the Trust, as set forth in the LMI Settlement Documents.

       *1.1.102*      **LMI Settlement Documents** means Exhibit 7 to the Plan Supplement.

       *1.1.103*      **Mediators** means the Honorable Gregg W. Zive, United States Bankruptcy Judge for the District of Nevada, and Mr. Paul J. Van Osselaer.

       *1.1.104*      **Medicaid** means medical assistance provided under a state plan approved under title XIX of the Social Security Act.

       *1.1.105*      **Medicare** means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

       *1.1.106*      **Medicare Beneficiary** means an individual who is entitled to Medicare benefits and/or who has been determined to be eligible for Medicaid.

       *1.1.107*      **Medicare Claim** means any and all Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under the MMSEA and pursuing Claims under MSPA, relating to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants, who recover or receive any Distribution from the Trust, and Claims relating to reporting obligations.

       *1.1.108*      **MMSEA** means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

       *1.1.109*      **MSPA** means 42 U.S.C. § 1395y, *et seq.*, or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

       *1.1.110*      **Non-Abuse Claim** means any Claim against the Diocese that is not an Abuse Claim or Inbound Contribution Claim.

       *1.1.111*      **Non-Settling Insurance Assignment** means the assignment and transfer to the Trust of (a) the Insurance Claims, (b) the Non-Settling Insurer Policies, and (c) all rights and interests in the proceeds of (a) and (b).

       *1.1.112*      **Non-Settling Insurer** means any Insurer that is not a Settling Insurer.

CNA is not aware of the existence of any Non-Settling Insurers.

        *1.1.113*      ***Non-Settling Insurer Policy*** means any Insurance Policy issued by a Non-Settling Insurer.  CNA is not aware of the existence of any Non-Settling Insurer Policies.

        *1.1.114*      ***Non-Tax Priority Claim*** means a Claim against the Diocese, other than an Administrative Claim, Priority Tax Claim, or Professional Fee Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

        *1.1.115*      ***Other Catholic Organization*** means a Person that is, or allegedly is, insured or covered under a Settling Insurer Policy, but does not include the Diocese, a Parish, or a School.

        *1.1.116*      ***Outbound Contribution Claim*** means any Claim or cause of action related to an Abuse Claim that may be asserted by the Diocese or any Participating Party against any Person that is not a Protected Party.

        *1.1.117*      ***Parish*** means any past or present Roman Catholic parish located within the geographical territory of the Diocese or subject to the canonical jurisdiction of the Bishop of Rochester, together with any corporation or other entity recognized under civil law that holds title to temporal property for, or on behalf of, any such parish.

        *1.1.118*      ***Participating Party*** means all Parishes, all Schools, and those Other Catholic Organizations and other entities listed on **Exhibit A** attached hereto.  Neither the Reorganized Debtor nor any Settling Insurer shall be a Participating Party.   For the avoidance of doubt, except to the extent they may be listed on **Exhibit A**, Excluded Parties are not Participating Parties.

        *1.1.119*      ***Pass-Through Claim*** means any Disputed Non-Abuse Claim which the Diocese elects to treat as a Pass-Through Claim pursuant to the terms of the Plan.

        *1.1.120*      ***Payment Reserve*** has the meaning ascribed to it in the Allocation Protocol.

        *1.1.121*      ***Person*** means an individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, the Diocese, the Reorganized Diocese and the Participating Parties.

        *1.1.122*      ***Petition Date*** means September 12, 2019.

        *1.1.123*      ***Plan*** means this Chapter 11 Plan of Reorganization dated August 31, 2023 as it may be altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.1.124    **Plan Documents** means the Plan and the Disclosure Statement, all exhibits and schedules attached thereto, and all Plan Supplements, either in their present form or as each may be amended, supplemented or otherwise modified from time to time.

1.1.125    **Plan Proponent** means CNA.

1.1.126    **Plan Supplement** means one or more supplements to the Plan to be Filed with the Bankruptcy Court in advance of the Confirmation Hearing which shall contain the Allocation Protocol, the form of Abuse Claim Release Agreement, the form of Trust Agreement, a list of known Insurance Policies, the Diocese's non-monetary commitments, and any Insurance Settlement entered into prior to the Confirmation Date, all in form and substance acceptable to the Plan Proponent in its sole discretion, as well as a list of all executory contracts and leases designated by the Diocese in its sole discretion to be assumed or assumed and assigned to the Reorganized Diocese pursuant to the Plan.

1.1.127    **Post-Effective Date Insurance Obligations** means those duties or obligations (if any) required of the Diocese and/or any Participating Party under any Insurance Policy issued by a Non-Settling Insurer, on and after the Effective Date.

1.1.128    **Prior Rule 9019 Approval Motion** means that certain *Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* filed by the Diocese at Docket No. 1538 in the Chapter 11 Case and at Docket No. 190 in the Insurance Coverage Adversary Proceeding.

1.1.129    **Prior Insurance Settlement Agreement** means the settlement agreement entered into between the Diocese and CNA that was the subject of the Prior Rule 9019 Approval Motion.

1.1.130    **Priority Tax Claim** means any Claim against the Diocese entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

1.1.131    **Professional Fee Claim** means a Claim against the Diocese for compensation for legal or other professional services and related reimbursement of expenses under sections 327, 328, 330(a), 331 or 503(b) of the Bankruptcy Code.

1.1.132    **Professionals** means all professionals employed in the Chapter 11 Case pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

1.1.133    **Protected Parties** means the Diocese, the Reorganized Diocese, the Participating Parties, the Insurer Protected Parties, any Settling Insurer Covered Persons, and their respective Related Persons.

1.1.134    **Redacted Information** means names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the Abuse

- 16 -

Claimants, and the names of the guardians, conservators, and/or other personal representatives, as applicable.

1.1.135 **Related Person** means, with respect to any person or entity, in each case solely in its capacity as such, such person's or entity's (a) predecessors, successors, assigns, subsidiaries, and affiliates, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, Agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and (c) respective heirs, executors, Estate, and nominees; *provided, however*, that no person or entity shall be a Related Person if such person or entity is an Excluded Party.

1.1.136 **Release** means the release of the Protected Parties from all Claims.

1.1.137 **Reorganized Diocese** means a new corporation, formed in accordance with Article 5 of the New York Religious Corporations Law, which pursuant to the Plan shall take title to the Residual Assets on and after the Effective Date. For the avoidance of doubt, the formation of the Reorganized Diocese shall not discharge or waive the Diocese's liability for any Tort Claim, for which a Tort Claimant may have recourse pursuant to the Plan and Plan Documents.

1.1.138 **Residual Assets** means, after payment of the Diocese's share of the DOR Entities' Cash Contribution, the Non-Settling Insurance Assignment, and the transfer of Outbound Contribution Claims to the Trust, and except for any Insurance Policies to be retained by the Diocese pursuant to Section 7.5, all residual property and assets of the Diocese and/or the Estate, including all charitable assets subject to Donor Restrictions, all property to which the Diocese holds legal title only, and all rights with respect to any Avoidance Actions or other causes of action belonging to the Diocese or its Estate.

1.1.139 **Schedules** means the schedules of assets and liabilities and the statement of financial affairs Filed by the Diocese in this Chapter 11 Case on November 19, 2019 [Docket No. 237], as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Effective Date.

1.1.140 **School** means a past or present Catholic school owned by the Diocese or any Participating Party, including those identified as such on **Exhibit A** attached hereto, but does not include schools owned by any Excluded Party.

1.1.141 **Secured** means, with respect to any Claim against the Diocese, a Claim to the extent (a) secured by a Lien on property of the Estate (i) as set forth in the Plan; (ii) as agreed to by the holder of such Claim and the Diocese; or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

1.1.142 **Settling Insurer** means each of CNA, First State, Interstate, LMI, and

Underwriters. A Settling Insurer's Related Persons shall receive the benefits and protections afforded to a Settling Insurer under the Plan, provided, however, that if such Related Person is a Related person by virtue of being a predecessor, successor, and assign of a Settling Insurer, such Related Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

1.1.143 **Settling Insurer Covered Person** means any Person that has or may have a Claim to insurance coverage under a Settling Insurer Policy. For the avoidance of doubt and notwithstanding anything to the contrary herein, no Excluded Party may be a Settling Insurer Covered Person.

1.1.144 **Settling Insurer Policies** means, collectively, all Insurance Policies that are the subject of the Insurance Settlements, except to the extent such Insurance Policies provide coverage on a claims made basis with respect to occurrences on or after the Petition Date.

1.1.145 **Standby Letter of Credit** means the Irrevocable Letter of Credit in the principal amount of $460,842.00 issued by The Bank of Castile on behalf of the Diocese in favor of the New York Workers' Compensation Board to secure the Diocese's obligations to certain legacy workers' compensation claimants.

1.1.146 **Stretto** means Bankruptcy Management Solutions, Inc. d/b/a Stretto, in its capacity as the claims and noticing agent for the Diocese.

1.1.147 **Supplemental Settling Insurer Injunction** is the injunction contained in Section 12.4 of this Plan.

1.1.148 **Tort Claim** means an Abuse Claim as to which the holder has elected to be treated as a Tort Claimant.

1.1.149 **Tort Claimant** means an Abuse Claimant who opts to commence a lawsuit naming the Diocese or any Participating Party to adjudicate whether the Diocese or Participating Party has liability for an Abuse Claim and the amount of any such liability, as set forth in Section 4.4, but recourse shall be limited as described in Section 4.4.

1.1.150 **Tort Defendant** means any Person who is named as a defendant in any lawsuit brought by any Abuse Claimant in which the Abuse Claimant seeks judgment and/or damages against such Person relating in any way to alleged Abuse.

1.1.151 **Trust** means the trust to be established pursuant to the Plan and the Trust Agreement for the satisfaction of all Abuse Claims.

1.1.152 **Trust Agreement** means the trust agreement establishing and governing the Trust, as it may be amended.

*1.1.153* **Trust Assets** means the following assets and any income, profits, and proceeds derived from such assets subsequent to the transfer of such assets to the Trust: the right to receive the CNA Cash Contribution pursuant to the CNA Settlement; the right to receive the DOR Entities' Cash Contribution; the right to receive the proceeds of the First State Settlement; the right to receive the proceeds of the Interstate Settlement; the right to receive the proceeds of the LMI Settlement; the right to receive the proceeds of the Underwriters Settlement; and the right to receive the Non-Participating Insurance Assignment and all other property transferred to the Trust pursuant to this Plan, or otherwise acquired by the Trust following the Effective Date, together with any proceeds thereof. For the avoidance of doubt, the Trust Assets shall specifically exclude all of the Residual Assets.

*1.1.154* **Trust Claim** means an Abuse Claim that is not a Tort Claim.

*1.1.155* **Trust Claimant** means an Abuse Claimant that is not a Tort Claimant.

*1.1.156* **Trust Distribution** means a Distribution by the Trust, in accordance with the provisions of the Plan, the Trust Documents, and the Confirmation Order. For the avoidance of doubt, the payment of Trust Expenses shall not be considered Trust Distributions.

*1.1.157* **Trust Documents** means, collectively, (a) the Trust Agreement, (b) the Allocation Protocol, and (c) any other agreements, instruments, and documents governing the establishment and administration of the Trust, which shall be materially consistent with the terms of the Plan, as the same may be amended or modified from time to time.

*1.1.158* **Trust Expenses** means the costs of administering the Trust, including (i) payments to the Trustee and professionals retained to represent the Trust in accordance with the terms of the Trust Agreement and (ii) the DOR Entities' Post-Effective Date Costs.

*1.1.159* **Trust Reserve** means a reserve to be established by the Trustee from the DOR Entities' Cash Contribution, prior to making any Trust Distributions, sufficient to fund Trust Expenses, which shall include the DOR Entities' Post-Effective Date Cost Reserve, and which may be replenished or otherwise supplemented in the discretion of the Trustee in accordance with the provisions of the Trust Agreement.

*1.1.160* **Trust Settlement Offer** has the meaning ascribed to it in Section 4.1 of this Plan.

*1.1.161* **Trustee** means the trustee of the Trust, who initially will be a Person identified as such in the Confirmation Order and any successor trustee appointed pursuant to the terms of the Plan and/or Trust Agreement. The Trustee shall be selected by the Court following nominations by parties in interest in the Chapter 11 Case.

*1.1.162* **Underwriters** means all underwriters, members, or Names at Lloyds, London (including former underwriters, members, or Names) who through their participation in syndicates subscribed to the following certificates: Certificate No. 18W2012, effective for the period

- 19 -

from July 1, 2018 to July 1, 2019; Certificate No. 18XS133, effective for the period from July 1, 2018 to July 1, 2019; Certificate No. 19W2012, effective for the period from July 1, 2019 to July 1, 2020; Certificate No. 19XS133, effective for the period from July 1, 2019 to July 1, 2020; Certificate No. 20W2012, effective for the period from July 1, 2020 to July 1, 2021; Certificate No. 20XS133, effective for the period from July 1, 2020 to July 1, 2021; Certificate No. 21W2012, effective for the period from July 1, 2021 to July 1, 2022; Certificate No. 21XS133, effective for the period from July 1, 2021 to July 1, 2022.

       1.1.163      ***Underwriters Protected Parties*** means (a) Underwriters; (b) each of its past, present, and future parents, subsidiaries, affiliates, and divisions; (c) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; (d) each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (e) each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them.

       1.1.164      ***Underwriters Settlement*** means the settlement in principle agreed to as between LMI and the Diocese, pursuant to which Underwriters will contribute $1.1 million United States dollars (US$1,100,000) to the Trust, as set forth in the Underwriters Settlement Documents.

       1.1.165      ***Underwriters Settlement Documents*** means Exhibit 8 to the Plan Supplement.

       1.1.166      ***Unimpaired*** means, with respect to any Class, that such Class is not Impaired.

       1.1.167      ***Unknown Abuse Claim*** means an Abuse Claim for which (i) the earliest incident of Abuse occurred before the Petition Date, (ii) no Proof of Claim was filed or deemed filed on or before the Effective Date or which is not otherwise allowed by the Bankruptcy Court by the Effective Date, and (iii) which is held by a Person who at the time of the Claims Bar Date was under a disability or other condition recognized by New York law, or other applicable law, suspending the running of the statute of limitations period, that would toll the statute of limitations for such Claim.

       1.1.168      ***Unknown Abuse Claim Reserve*** means the amount of $____ set aside for the payment of Unknown Abuse Claims, as provided in the Trust Agreement.

       1.1.169      ***Unknown Abuse Claimant*** means the holder of an Unknown Abuse Claim.

       1.1.170      ***Unknown Claimant Representative*** means [Michael R. Hogan], for which application for appointment was made in the Chapter 11 Case by motion dated December 5, 2023 (Dkt. No. 2347).

*1.1.171* **United States Trustee** means the Office of the United States Trustee for Region 2, which includes the Western District of New York.

*1.1.172* **U.S. Trustee Fees** means all fees and charges assessed against the Estate of the Diocese under 28 U.S.C. § 1930 together with interest, if any, under 31 U.S.C. § 3717.

## 1.2     Interpretation: Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Section, Subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Disclosure Statement, and if not defined therein, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

## 1.3     Exhibits.

All exhibits to the Plan (including those set forth in or attached as exhibits to the Plan Supplement) and any other Plan Documents are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

## 1.4     Time Periods.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

## SECTION 2.     TREATMENT OF CLAIMS

## 2.1     Unclassified Claims.

*2.1.1* **Administrative Claims.** Administrative Claims are Claims for costs or expenses incurred in the administration of the Diocese's Chapter 11 Case, which are Allowed pursuant to section 503(b) of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including the CNA Administrative Claim, have not been

classified and are treated as described in this Section 2.1 of the Plan. Except as otherwise provided in the Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different and less favorable treatment than provided under the Plan, or by order of the Bankruptcy Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim as soon as practicable after the later of: (i) the Effective Date; or (ii) the date on which such Claim becomes an Allowed Administrative Claim. If this Plan is confirmed, the CNA Administrative Claim shall be deemed withdrawn as of the Effective Date. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese or the Reorganized Diocese.

With respect to any trade Claims arising after the Petition Date representing obligations incurred by the Diocese in the ordinary course of its business consistent with past practice, such trade Claims shall be paid in the ordinary course of business. As to other Allowed Administrative Claims, except as otherwise provided in the Plan, each holder of an Allowed Administrative Claim: (i) shall be paid by the Reorganized Diocese as soon as reasonably practicable after the Effective Date or on the date the Order allowing such Administrative Claim becomes a Final Order; and (ii) shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount thereof, unless the holder agrees to less favorable treatment of such Allowed Administrative Claim.

Administrative Claims representing obligations incurred by the Diocese after the date and time of the entry of the Confirmation Order shall not be subject to application to the Bankruptcy Court and may be paid by the Diocese or the Reorganized Diocese in the ordinary course of business and without Bankruptcy Court approval.

2.1.2 **Priority Tax Claims.** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Diocese or the Reorganized Diocese, as applicable, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, however, that the Diocese reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium. The holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising from, or in connection with any Priority Tax Claim and any demand for such penalty will be deemed Disallowed by the confirmation of the Plan.

2.1.3 **Non-Tax Priority Claims**. Unless the holder of an Allowed Non-Tax Priority Claim and the Diocese or the Reorganized Diocese (as applicable) agree to a different treatment, on, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which Non-Tax Priority Claim becomes an Allowed Claim, each holder of an such

- 22 -

an Allowed Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, (i) Cash equal to the unpaid portion of such Allowed Claim or (ii) such other less favorable treatment as to which the Diocese or the Reorganized Diocese and the holder of such Allowed Claim shall have agreed upon in writing.  The Trust shall not be responsible for payment of Non-Tax Priority Claims.  Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Non-Tax Priority Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese or the Reorganized Diocese.

       *2.1.4*      ***Professional Fee Claims.***  In accordance with section 1123(a)(1) of the Bankruptcy Code, Professional Fee Claims have not been classified and are treated as described herein.  All Professionals or other Persons requesting an award by the Bankruptcy Court of Professional Fee Claims (a) shall File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 60 days after the Effective Date, and (b) shall be paid in full, in Cash, by the Reorganized Diocese (i) as soon as practicable after the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order; or (ii) upon such terms as may exist pursuant to order of the Bankruptcy Court or as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Diocese or the Reorganized Diocese, as applicable.  The Diocese is authorized to pay its Professionals for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

       Professional Fee Claims of Professionals employed by the Committee, which are incurred prior to the Effective Date of the Plan in connection with the implementation and consummation of the Plan, may be paid by the Diocese or the Reorganized Diocese, after notice and a hearing, or by the Trust from contributions by the Diocese or the Reorganized Diocese in addition to the amounts payable to Abuse Claimants under the Plan.

       Professional Fee Claims of Professionals employed by the Diocese for services rendered prior to the Effective Date shall not be paid by the Trust.

       *2.1.5*      ***U.S. Trustee Fees.***  U.S. Trustee Fees include all fees and charges assessed against the Diocese under 28 U.S.C. § 1930, together with interest, if any, under 31 U.S.C. § 3717.  All U.S. Trustee Fees due and owing but not paid prior to the Effective Date shall be paid by the Reorganized Diocese on the Effective Date.

## 2.2    <u>Classification and Specification of Treatment of Claims.</u>

       All Claims, except those described in Section 2.1, are placed in the following Classes of Claims, pursuant to section 1123(a)(1) of the Bankruptcy Code, which section specifies the treatment of such Classes of Claims and of their Impaired or Unimpaired status, pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that

Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan. Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and Distribution.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the respective treatments set forth below. This Plan will not provide any Distribution on account of a Claim to the extent that such Claim has been Disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any Distribution on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Bankruptcy Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Bankruptcy Court shall not be Impaired by this Plan and the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. Any holder of any Claim in any Class may agree, pursuant to section 1123(a)(4) of the Bankruptcy Code, to a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation of the Plan, and Distributions pursuant to the Plan:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of The Bank of Castile | No | Deemed to Accept |
| 2 | Pass-Through Claims | No | Deemed to Accept |
| 3 | General Unsecured Claims | Yes | Entitled to Vote |
| 4 | Abuse Claims | Yes | Entitled to Vote |
| 5 | Inbound Contribution Claims | Yes | Deemed to Reject |
| 6 | Insurer Claims | Yes | Entitled to Vote |

## 2.3    Classes of Claims.

### 2.3.1    Class 1 – Secured Claim of The Bank of Castile

**Classification:** Class 1 is composed of the Secured Claim held by The Bank of Castile in connection with the Standby Letter of Credit.

**Treatment:** The Diocese is current with respect to all obligations due under the Standby Letter of Credit. and will continue to pay those obligations in accordance with the terms of the Standby Letter of Credit. The Trust shall not be responsible for the payment of the Class

1 Claim.

**Voting:** The Class 1 Claim is Unimpaired, and therefore, the holder of the Class 1 Claim is deemed to have accepted the Plan and is not entitled to vote.

### 2.3.2 *Class 2 – Pass-Through Claims.*

**Classification:** Class 2 consists of all Pass-Through Claims.

**Treatment:** Upon the later to occur of the Effective Date and the date on which the Diocese designates a Claim as a Pass-Through Claim, the holder of such Pass-Through Claim shall be deemed to have granted relief from the automatic stay with respect to its Pass-Through Claim, such Pass-Through Claim shall not be subject to the Diocese Discharge, and the parties shall retain their respective rights, remedies, claims, and defenses as they existed on the Petition Date. The Diocese shall designate all Pass-Through Claims no later than sixty days after the Effective Date. The Trust shall not be responsible for the payment of any Pass-Through Claims.

**Voting:** Class 2 Pass-Through Claims are Unimpaired, and therefore, holders of Class 2 Claims are deemed to have accepted the Plan and are not entitled to vote.

### 2.3.3 *Class 3 – General Unsecured Claims.*

**Classification:** Class 3 Claims consists of all General Unsecured Claims.

**Treatment:** Except to the extent the holder of an Allowed General Unsecured Claim agrees in writing to accept less favorable treatment as proposed by the Diocese or Reorganized Diocese, the Reorganized Diocese shall pay each holder of an Allowed General Unsecured Claim, Cash in two installments each equal to 50% of the Allowed amount of such General Unsecured Claim with the first payment to occur on, or as soon as reasonably practicable after the later of (a) the Effective Date, and (b) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, and the second payment to occur on, or as soon as reasonably practicable after the date that is six months after the date of the first payment. The foregoing payments shall be in full satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim. Notwithstanding anything to the contrary set forth above, no payments shall be made to any Protected Party on account of any General Unsecured Claim and all Protected Parties shall be deemed to have withdrawn any General Unsecured Claim with prejudice as of the Effective Date in consideration of the Channeling Injunction and Release provided in the Plan.

The Trust shall not be responsible for payment of General Unsecured Claims.

**Voting:** Class 3 General Unsecured Claims are Impaired, and therefore, each holder of a Class 3 Claim is entitled to vote to accept or reject the Plan.

*2.3.4* **Class 4 – Abuse Claims**.

**Classification:** Class 4 Claims consists of all Abuse Claims.

**Treatment:**

a. On the Effective Date and subject to the Plan provisions, liability for all Class 4 Abuse Claims shall be permanently channeled to and assumed by the Trust without further act or deed and shall be resolved in accordance with the terms of this Plan and the applicable Trust Documents. Trust Distributions shall be made to holders of Abuse Claims on a fair and equitable basis, pursuant to and in accordance with the terms of this Plan and the applicable Trust Documents.

b. Class 4 Claimants shall have their Claims treated in accordance with the Allocation Protocol, *provided* that any Claims for punitive or exemplary damages will be treated as penalty Claims and will be Disallowed and receive no Distribution under the Plan. The Allocation Protocol shall provide for the fair and equitable treatment of all Abuse Claims. The Allocation Protocol shall specify that the Trust Assets, except for the initial funding of the Trust Reserve in accordance with Section 8.2.1 of the Plan and the Unknown Abuse Claim Reserve, shall be distributed to holders of Abuse Claims on a fair and equitable basis as promptly as practicable following the Effective Date.

c. Except with respect to Tort Claims brought by Tort Claimants in accordance with the terms of this Plan and the applicable Trust Documents, the right of any Class 4 Claimant to a trial by jury or otherwise against the Diocese and/or any Protected Parties is waived and released upon the occurrence of the Effective Date, and any Class 4 Claim that is not a Tort Claim will be solely determined by the Abuse Claims Reviewer in accordance with the Allocation Protocol.

d. If a Class 4 Claim is denied payment, in whole or in part, pursuant to the Allocation Protocol, the holder of such Class 4 Claim will have no rights against any of the Protected Parties relating to such Class 4 Claim.

e. Nothing in this Plan affects, diminishes, or impairs any Class 4 Claimant's rights against any Joint Tortfeasor, including for that Joint Tortfeasor's comparative fault or joint and several liability for Abuse, if any. In any litigation against a Joint Tortfeasor, nothing in this Plan or the Plan Documents shall be deemed an adjudication of a Class 4 Claim for any purpose or a limitation on the recovery against such Joint Tortfeasor.

f. The Diocese and the Reorganized Diocese shall cooperate with the Abuse Claims Reviewer and/or the Trustee as reasonably requested by the Abuse Claims Reviewer and/or the Trustee in connection with the administration of the Allocation Protocol, provided that any DOR Entities' Post-Effective Date Costs

- 26 -

incurred in connection therewith are paid in accordance with the DOR Entities' Post-Effective Date Costs Procedures.

g.  Any Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy. For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Class 4 Claims, but nothing herein shall affect, diminish, or impair a Non-Settling Insurer's right to offset amounts an Abuse Claimant receives as a Trust Distribution. Under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a Distribution to an Abuse Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer.

h.  As of the Effective Date of the Plan, the liability of Protected Parties for all Class 4 Claims shall be fully assumed by the Trust, without any further order from the Bankruptcy Court or further action from any party, and pursuant to the Channeling Injunction set forth in Section 12.3 of the Plan. All Allowed Class 4 Claims shall be satisfied solely from the Trust as set forth in the Plan, the Trust Agreement, and the Allocation Protocol; *provided, however*, the Trust's assumption of responsibility with respect to Class 4 Claims shall not prevent Tort Claimants from asserting Tort Claims to the extent provided for herein.

i.  Following the Effective Date, no Entity, other than the Trustee or a Non-Settling Insurer may (a) object to any Class 4 Claim or (b) challenge the merit, validity, or amount of any Class 4 Claim; *provided, however*, that nothing in the Plan shall prevent the Diocese or any Participating Party from asserting any legal or factual defenses they may have in response to any Tort Claim. Any objection or challenge to a Class 4 Claim pending as of the Effective Date is deemed withdrawn upon the Effective Date and shall not be refiled. With the exception of the Trustee's or a Non-Settling Insurer's objections or challenges to a Class 4 Claim, or the adjudication or settlement of a Tort Claim, Class 4 Claims shall be treated in accordance with the Allocation Protocol and shall not be subject to any other review or judicial consideration. Nothing in this Plan or the Plan Documents shall constitute an admission by any Protected Party as to the validity or amount of any Class 4 Claim, nor shall anything therein restrict the Diocese or the Participating Parties from complying with any Post-Effective Date Insurance Obligations.

j.  No Class 4 Claimant shall receive a Distribution from the Trust until such Class 4 Claimant has executed and delivered to the Trust the Abuse Claim Release Agreement attached to the Plan Supplement as **Exhibit 2**. Each Class 4 Claimant must release all Claims against the Protected Parties. The Trust must provide copies of all executed Abuse Claim Release Agreements to (a) the Protected Parties and (b) upon request, any Joint Tortfeasor that has executed a non-disclosure or confidentiality agreement. For the avoidance of doubt, nothing

- 27 -

herein shall require a Class 4 Claimant to release any Person that is not a Protected Party.

**Voting:** Class 4 Claims are Impaired, and each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan. Only for purposes of voting, each Class 4 Claim that is not subject to a pending objection is deemed to be Allowed in the amount of $1.00.

### 2.3.5    *Class 5 – Inbound Contribution Claims.*

**Classification:** Class 5 Inbound Contribution Claims consist of any Claim asserted against the Diocese for indemnity, contribution, or reimbursement arising out of, or related to, the Claimant's liability to pay or defend any Abuse Claim.

**Treatment:** Class 5 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 5 Claims on account of such Class 5 Claims.

**Voting:** Class 5 Inbound Contribution Claimants will not receive or retain any property under the Plan and therefore are deemed to have rejected the Plan. Class 5 will not vote on the Plan.

### 2.3.6    *Class 6 – Insurer Claims.*

**Classification:** Class 6 Insurer Claims consist of any Claims by CNA against the Diocese arising out of the Diocese's breach of the Prior Insurance Settlement Agreement, to the extent such Claims are deemed not to be unclassified Administrative Claims.

**Treatment:** CNA agrees to accept the following treatment for its Class 6 Insurer Claims: if this Plan is confirmed, then on the Effective Date, in consideration of the mutual benefits of the Plan, including the protection of the injunctions and releases contained herein, CNA agrees to withdraw its Class 6 Insurer Claims; but if this Plan is not confirmed or is confirmed but does not go into effect, then CNA does not withdraw its Class 6 Insurer Claims and, instead, fully reserves and preserves all rights to assert its Class 6 Insurer Claims against Debtor and the Estate. The foregoing shall be in full satisfaction, settlement, and release of, and in exchange for, such Allowed Insurer Claim.

**Voting:** Class 6 Claims are Impaired, and therefore, each holder of a Class 6 Claim is entitled to vote to accept or reject the Plan. Only for purposes of voting, each Class 6 Claim is deemed to be Allowed in the amount of $1.00.

## SECTION 3.    ACCEPTANCE OR REJECTION OF THE PLAN

### 3.1    <u>Impaired Classes Vote.</u>

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-

half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 3.2    Presumed Acceptance of the Plan.

Class 1 and Class 2 are Unimpaired under the Plan and are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 3.3    Presumed Rejection of the Plan.

Class 5 will not receive or retain any property under this Plan and is, therefore, deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 3.4    Voting Classes.

Classes 3, 4, and 6 are Impaired, and the holders of Claims in those Classes are entitled to vote to accept or reject this Plan.

### 3.5    Modification of Treatment of Class 3 Claims.

The Diocese or the Reorganized Diocese may modify the treatment of any Allowed Class 3 Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the consent of the holder of the Class 3 Claim whose Allowed Claim is being adversely affected, or as Allowed by Bankruptcy Court order prior to the Effective Date.

### 3.6    Elimination of Vacant Classes.

Any Class of Claims that does not have, as of the Confirmation Date, at least one Allowed Claim, or at least one Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 3.7    "Cram Down" Request.

The Plan Proponent requests confirmation of this Plan under § 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept this Plan pursuant to § 1126(c). The Plan Proponent reserves the right to modify this Plan to the extent that confirmation pursuant to § 1129(b) requires modification.

## SECTION 4.   ABUSE CLAIMS.

### 4.1    Assessment of Abuse Claims.

Class 4 Claims will be assessed and paid in accordance with the Allocation Protocol, which

is designed to provide an expeditious, efficient, and inexpensive method for settling and resolving Abuse Claims, and as set forth herein. The Abuse Claims Reviewer shall determine the eligibility and points allocation of each Abuse Claim in accordance with the terms of this Plan and the applicable Trust Documents. Following the Abuse Claims Reviewer's determination of eligibility and points allocation, the Trustee shall make an offer (the "Trust Settlement Offer"), based on the determinations made by the Abuse Claims Reviewer, to each Abuse Claimant of an amount to fully resolve his or her Abuse Claim. If the Abuse Claimant accepts the Trust Settlement Offer, the Abuse Claimant becomes a Trust Claimant with a Trust Claim. Distributions to Trust Claimants on account of Trust Claims shall be made promptly from the Trust in accordance with the applicable Trust Documents.

If the Abuse Claimant rejects the Trust Settlement Offer, the Abuse Claimant becomes a Tort Claimant with a Tort Claim, as set forth in Section 4.4. The Trust shall hold in reserve an amount equal to the Trust Settlement Offer until the Tort Claimant's Tort Claim is resolved by a Final Judgment, at which point the Trust Settlement Offer shall be paid to the Abuse Claimant or released back to the Trust, as applicable, as specified in Section 4.4 and the applicable Trust Documents.

The Trust shall be the sole source of recovery for holders of Abuse Claims, including Trust Claims and Tort Claims, and no holder of an Abuse Claim shall have further recourse against the Trust, the Diocese, the Estate, the Reorganized Diocese, any Settling Insurer, or any Protected Party.

For the avoidance of doubt, Abuse Claims determined by the Abuse Claims Reviewer to be ineligible shall not be entitled to any distribution from the Trust.

### 4.2   Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol.

The Abuse Claims Reviewer's determinations are for estimation and Distribution purposes only and shall not constitute findings as to, or the fixing of, facts or liability concerning the Abuse Claims with any binding legal effect. The determination of Abuse Claimants' qualifications, the estimation of Abuse Claims, and the payment of Trust Distributions shall not be construed as an admission of liability by the Diocese, any Participating Party, any Tort Defendant or alleged Joint Tortfeasor, or the Trust with respect to any Abuse Claim and shall have no *res judicata* or collateral estoppel effect on the Diocese, the Reorganized Diocese, any Participating Party, the Trust, or any Non-Settling Insurer. Trust Distributions do not release the Diocese nor are Trust Distributions an accord or novation of the Diocese's or any Protected Party's liability on account of the Abuse Claims.

The Trust's act of making a Distribution to an Abuse Claimant is immaterial to, and shall not be construed as, a determination or admission of the Diocese's, any Participating Party's, or any Non-Settling Insurer's liability for, or damages with respect to, any Abuse Claim. The determination of qualification, estimation of Abuse Claims, and the payment of Trust Distributions is not a settlement, release, accord, or novation of any Abuse Claim. Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of eligibility nor payment

- 30 -

of Trust Distributions shall constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation between or among the Diocese, the Participating Parties, Non-Settling Insurers, or any other Person. The Trust's estimation of Abuse Claims and payment of Trust Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Diocese and/or any Participating Parties.

### 4.3    Trust Distributions to Abuse Claimants.

An Abuse Claimant whom the Abuse Claims Reviewer determines to be entitled to a Distribution will receive a Distribution from the Trust in the amount(s) and at the time(s) provided for in the Allocation Protocol and Trust Documents.    Any payment on an Abuse Claim constitutes a payment for damages on account of a personal physical injury or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended.    For the avoidance of doubt, the Abuse Claimants' recoveries on their Claims shall be limited to their Trust Distributions, if any, under the Allocation Protocol and Trust Documents, and the Abuse Claimants shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever on their Abuse Claims from the Diocese, the Reorganized Diocese, any Participating Party, or their respective assets, or from any Settling Insurers, Settling Insurer Policies, or Settling Insurers' assets, for any Abuse Claims that are Channeled Claims, even if they are denied a Trust Distribution.

### 4.4    Litigation of Abuse Claims.

#### 4.4.1    *Tort Claims.*

a.    Subject to the provisions of the Trust Documents, within 60 days after receiving the Trust Settlement Offer from the Abuse Claims Reviewer, a Tort Claimant may at the Tort Claimant's own expense commence a lawsuit naming the Diocese or any Participating Party as a defendant, for the purpose of adjudicating whether the Diocese or Participating Party has liability for an Abuse Claim and the amount of any such liability.    A Tort Claim may be filed only in the U.S. District Court for the Western District of New York.    The Trust has the option to defend any Tort Claim at the Trust's own expense, and the Diocese and/or Participating Party shall use reasonable efforts to cooperate.

b.    If a court enters a final order or judgment determining that the Diocese and/or Participating Party (as applicable) does not have any liability on account of the Tort Claimant's Tort Claim, then the Tort Claimant shall not be entitled to any Distribution from the Trust, including any Trust Settlement Offer.

c.    If the Tort Claimant either (1) obtains a judgment in his or her favor on his or her Tort Claim and such judgment becomes a final order or (2) enters into a settlement with the Trustee (both (1) and (2) collectively, a "Final Judgment"), the Tort Claimant shall be entitled to a Distribution from the Trust as follows:

- 31 -

i.    If the amount of the Final Judgment is less than or equal to the amount of the Trust Settlement Offer, the Trust shall promptly pay to the Tort Claimant the amount of the Final Judgment as full and final satisfaction of the Tort Claim.

ii.    If the amount of the Final Judgment is greater than the amount of the Trust Settlement Offer, the Trust shall promptly pay to the Tort Claimant the amount of the Trust Settlement Offer. After all Tort Claims are resolved by Final Judgments, the Trust shall promptly pay to each Tort Claimant, from the Payment Reserve, the amount of his or her Final Judgment that is in excess of the Trust Settlement Offer (the "Excess Recovery Amount"); *provided*, that to the extent all Excess Recovery Amounts cannot be paid in full from the Payment Reserve, then the Trustee shall calculate and pay only each Tort Claimant's pro rata share of his or her respective Excess Recovery Amount; and *further provided*, that if any amounts remain in the Payment Reserve following payment of all Excess Recovery Amounts, the amount remaining in the Payment Reserve shall be transferred to the Trust.

iii.    For the avoidance of doubt, a Tort Claimant shall not recover from the Trust any amounts greater than the amount of Final Judgment entered on, or agreed to with the Trustee with respect to, his or her Tort Claim.

iv.    The Trustee shall have complete discretion whether to enter into a settlement of a Tort Claim with a Tort Claimant and, if so, the amount of such settlement. The Trustee shall have no obligation to enter into any such settlement.

d.    Notwithstanding their availability in the tort system, no multiple, exemplary, statutory, enhanced, or punitive damages (*i.e.*, damages other than compensatory damages), and no interest, attorneys' fees, or costs (including statutory attorneys' fees and costs) shall be payable with respect to any Tort Claim.

e.    A Tort Claimant forfeits any right to have his or her Abuse Claim liquidated as a Trust Claim.

f.    All DOR Entities' Post-Effective Date Costs incurred in connection with Tort Claims shall be paid in accordance with the provisions of Section 8.9.

g.    For the avoidance of doubt, pursuant to the Channeling Injunction set forth in Section 12.3 below, each holder of a Class 4 Abuse Claim, whether a Trust Claim or a Tort Claim, shall have his or her Claim permanently channeled to the Trust, and thereafter shall be entitled to assert such Claim exclusively against the Trust, and such Claim shall be resolved in accordance with the terms, provisions, and procedures of the Trust Documents.

- 32 -

h. Holders of Disallowed Abuse Claims shall have no recourse against the Trust, the Diocese, the Estate, the Reorganized Diocese, any Settling Insurer, or any Protected Party.

**4.5** **Unknown Abuse Claims.**

*4.5.1* An Unknown Abuse Claimant may receive payment from the Unknown Abuse Claim Reserve at the discretion of the Abuse Claims Reviewer, as provided in the Allocation Protocol.

a. The Diocese and the Reorganized Diocese shall cooperate with the Unknown Claimant Representative, the Abuse Claims Reviewer, and/or the Trustee as reasonably requested in connection with the administration of the Unknown Abuse Claim Reserve, provided that any DOR Entities' Post-Effective Date Costs incurred in connection therewith are paid in accordance with the DOR Entities' Post-Effective Date Costs Procedures.

b. Any Non-Settling Insurers remain fully liable for their obligations related in any way to the Unknown Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy. For the avoidance of doubt, determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Class 5 Claims, but nothing herein shall affect, diminish, or impair a Non-Settling Insurer's right to offset amounts an Unknown Abuse Claimant receives as a Trust Distribution.

**4.6** **Claim Withdrawal.**

An Abuse Claimant may withdraw his or her Abuse Claim at any time on written notice to the Trustee. If withdrawn, the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and such Abuse Claimant shall still be bound by the Diocese Discharge and all injunctive provisions of this Plan, including the Channeling Injunction.

**4.7** **Medicare Procedures.**

With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims.

*4.7.1* It is the position of Diocese that none of the Protected Parties or the Trust will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA.

*4.7.2* Prior to making any Distribution on behalf of an Abuse Claim (including any Distribution disbursed to an Abuse Claimant's counsel), the Trustee shall obtain a certification

of compliance with MMSEA by the Abuse Claimant from the Claimant's counsel, or, if the Abuse Claimant is *pro se,* the Trustee shall obtain a certification of compliance with MMSEA for such Abuse Claimant from a third party administrator engaged by and paid for by the Trust for the purpose of providing certifications of compliance with MMSEA for all such *pro se* Abuse Claimants. The cost of such certification shall be deducted from the Abuse Claimant's Distribution; provided, however, that to the extent such Abuse Claimant's distribution is not sufficient to pay for such costs, the Trust shall pay such costs. The certifications of compliance shall provide that the Abuse Claimant has or will provide for the payment and/or resolution of any obligations owing or asserted under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Claimant's Abuse Claim.

       *4.7.3*      The Trust shall defend, indemnify and hold harmless the Protected Parties from any Claims related to Medicare Claims or similar reporting and payment obligations, whether relating to past conditional payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Class 4 Abuse Claims, including any obligations owing or potentially owing under MMSEA or MSPA, and any Claims related to the Trust's obligations under this Plan, the Trust Documents, and the Plan Documents. The Trustee shall also have the obligation to cooperate with the Protected Parties in the assertion of the Channeling Injunction with respect to any Medicare Claims asserted against the Protected Parties. The Trustee shall not have personal liability for these obligations and the Trust shall not be required to create a reserve for these potential obligations. The Trust may seek recovery of any such payments from the applicable Abuse Claimant, including from any future Trust Distributions due to such applicable Abuse Claimant.

       *4.7.4*      The Trust Assets shall also be used for payment of indemnity and expenses relating to reimbursing the United States government or its contractors for conditional payments made pursuant to the MSPA applicable to any Medicare beneficiary who is an Abuse Claimant. The amount of such payment shall not exceed that Claimant's award under the Trust Documents. The Protected Parties shall not be responsible for and will not pay indemnity or expenses relating to reimbursing the United States Government or its contractors for conditional payments made pursuant to the MSPA applicable to any Medicare beneficiary who is an Abuse Claimant.

       *4.7.5*      The Trust shall terminate and the Trustee shall have no further obligations under this Plan or the Trust upon the termination occurrences as set forth in the Trust Agreement.

       *4.7.6*      Notwithstanding anything to the contrary herein, no party shall have any reporting obligation with respect to Class 4 Abuse Claims that arise from or relate to alleged Abuse that occurred prior to December 5, 1980.

## SECTION 5.   SETTLING INSURERS

### 5.1    <u>Insurance Settlements and Sales Free and Clear of Interests.</u>

       *5.1.1*     <u>CNA Settlement</u>.  On the Effective Date, the following shall constitute

the CNA Settlement:

a. CNA shall pay the CNA Cash Contribution to the Trust on or before the Consummation Date. At CNA's election, payment of the CNA Cash Contribution to the Trust may be by check, wire, or ACH transfer.

b. The Diocese shall, in exchange for the CNA Cash Contribution to the Trust, sell to CNA, pursuant to §§ 105(a), 363(b), 363(f), 363(m), and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable, the Insurance Policies issued by CNA, with such sale being free and clear of all Liens, Claims, interests, charges, other encumbrances and liabilities of any kind.

c. Upon providing the CNA Cash Contribution to the Trust, CNA shall, without the necessity of any further act or deed, receive the Releases, Injunctions, and other benefits provided to CNA under the Plan. The delivery of the CNA Cash Contribution to the Trust shall be in full and final settlement of CNA's responsibilities, liabilities, and obligations to provide insurance coverage (including defense or indemnification) for all past, present, and future Claims, including Abuse Claims, that directly or indirectly arise out of or relate in any way to, or are asserted in connection with, the Insurance Policies issued by CNA, including any Channeled Claims, reimbursement obligations for Conditional Payments under the MSPA, or Claims that directly or indirectly arise from, relate in any way to, or are asserted in connection with, the Abuse Claims or the Chapter 11 Case. All Claims, including Abuse Claims, Direct Action Claims, Extra-Contractual Claims, and Insurer Contribution Claims, by any Person or Entity against CNA shall be released as of the Effective Date, and CNA shall receive the benefit of the Injunctions described in Section 12.

d. CNA shall fully and finally release its Class 6 Insurer Claims against the Diocese and the CNA Administrative Claim shall be deemed withdrawn.

e. For the avoidance of doubt, other than the right to receive the CNA Cash Contribution, the Trust shall not have any Claim against CNA, nor shall any holder of an Abuse Claim have any Claim on account of an Abuse Claim against CNA.

5.1.2    First State Settlement.    On the Effective Date, the First State Settlement Documents shall be approved pursuant to §§ 105(a), 363(b), 363(f), 363(m), and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable. The First State Settlement shall be in full and final settlement of First State's responsibilities, liabilities, and obligations for all Claims, including Abuse Claims, Direct Action Claims, Extra-Contractual Claims, and Insurer Contribution Claims, by any Entity against First State arising out of the Insurance Policies issued by First State. All such Claims shall be released as of the Effective Date, and First State shall receive the benefit of the Injunctions described in Section 12. For the avoidance of doubt, other than as provided in the First State Settlement, the Trust shall not have any Claim against First State, nor shall any holder of an Abuse Claim have any Claim on account of an Abuse Claim

- 35 -

against First State.

     *5.1.3*        <u>Interstate Settlement</u>. On the Effective Date, the Interstate Settlement Documents shall be approved pursuant to §§ 105(a), 363(b), 363(f), 363(m), and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable. The Interstate Settlement shall be in full and final settlement of Interstate's responsibilities, liabilities, and obligations for all Claims, including Abuse Claims, Direct Action Claims, Extra-Contractual Claims, and Insurer Contribution Claims, by any Entity against Interstate arising out of the Insurance Policies issued by Interstate. All such Claims shall be released as of the Effective Date, and Interstate shall receive the benefit of the Injunctions described in Section 12. For the avoidance of doubt, other than as provided in the Interstate Settlement, the Trust shall not have any Claim against Interstate, nor shall any holder of an Abuse Claim have any Claim on account of an Abuse Claim against Interstate.

     *5.1.4*        <u>LMI Settlement</u>. On the Effective Date, the LMI Settlement Documents shall be approved pursuant to §§ 105(a), 363(b), 363(f), 363(m), and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable. The LMI Settlement shall be in full and final settlement of LMI's responsibilities, liabilities, and obligations for all Claims, including Abuse Claims, Direct Action Claims, Extra-Contractual Claims, and Insurer Contribution Claims, by any Entity against LMI arising out of the Insurance Policies issued by LMI. All such Claims shall be released as of the Effective Date, and LMI shall receive the benefit of the Injunctions described in Section 12. For the avoidance of doubt, other than as provided in the LMI Settlement, the Trust shall not have any Claim against LMI, nor shall any holder of an Abuse Claim have any Claim on account of an Abuse Claim against LMI.

     *5.1.5*        <u>Underwriters Settlement</u>. On the Effective Date, the Underwriters Settlement Documents shall be approved pursuant to §§ 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable. The Underwriters Settlement shall be in full and final settlement of Underwriters' responsibilities, liabilities, and obligations for all Claims, including Abuse Claims, Direct Action Claims, Extra-Contractual Claims, and Insurer Contribution Claims, by any Entity against Underwriters arising out of the Insurance Policies issued by Underwriters. All such Claims shall be released as of the Effective Date, and Underwriters shall receive the benefit of the Injunctions described in Section 12. For the avoidance of doubt, other than as provided in the Underwriters Settlement, the Trust shall not have any Claim against Underwriters, nor shall any holder of an Abuse Claim have any Claim on account of an Abuse Claim against Underwriters.

    **5.2**      <u>**Resolution of Claims Involving Settling Insurers.**</u>

     The Confirmation Order shall provide that within five days after payment of each Settling Insurer's respective Insurance Settlement Amount, the Diocese or the Trust, as the case may be, and the Settling Insurer shall effect dismissal with prejudice of their Claims against each other in the Insurance Coverage Adversary Proceeding, with each side to bear its own fees and costs.

    **5.3**      <u>**Further Assurances; Non-Material Modifications.**</u>

From and after the Effective Date, the Diocese and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlements without further order of the Bankruptcy Court. The Plan Proponent may make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of the Plan, and a Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under Section 15.1 of the Plan, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such Class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to Section 15.1 of the Plan shall constitute an order in aid of consummation of the Plan and shall not require the resolicitation of votes on the Plan.

### 5.4    Waiver/Consent.

In consideration of the releases and Channeling Injunction, the Supplemental Settling Insurer Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date, and upon receipt by the Trust of the Insurance Settlement Amounts, each of the Protected Parties:    (a) irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims it has or might have not or in the future against the other Protected Parties with respect to any contribution, subrogation, indemnification, or other similar Claim arising from or relating to released Abuse Claims covered or alleged to be covered under the Settling Insurer Policies, and any Settling Insurer Policies; and (b) consents to the sale, as of the Confirmation Date, of the Diocese's and Participating Parties' Claims, if any, in the Settling Insurer Policies in accordance with the Insurance Settlements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan. Nothing in Section 12 of the Plan shall be construed to bar either (a) a Claim based on Abuse against a Person who is not a Protected Party, or (b) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing subsection (a) under an insurance policy other than a Settling Insurer Policy.

### 5.5    Rights Under Insurance Settlements.

The rights of the parties under any Insurance Settlements shall be determined exclusively under the applicable Insurance Settlement, the Final Order approving such Insurance Settlement (which may be included within the Confirmation Order), the Plan, and the Confirmation Order.

### 5.6    Timing.

The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to such Insurance Settlement, the Plan, the Confirmation Order, the Final Order approving the Insurance Settlement (which may be included within the Confirmation Order), and the Bankruptcy Code shall become effective pursuant to the terms of such Insurance Settlement.

## SECTION 6.    MATTERS RELATING TO NON-SETTLING INSURERS

As of the date of the filing of this plan, CNA is not aware of the existence of any Non-Settling Insurers to which this Section 6 would apply. However, to the extent a Non-Settling Insurer is identified in the future, Section 6 provides for the treatment of such Non-Settling Insurers, which may be pursued by the Trust only, acting on behalf of Class 4 Claimants.

## 6.1 **Preservation of Rights and Obligations.**

Notwithstanding the treatment of Class 4 Abuse Claims described in Section 4, to preserve coverage under any Insurance Policy issued by a Non-Settling Insurer, Class 4 Claimants specifically reserve, and do not release, any Claims they may have against the Diocese, the Reorganized Diocese, or any other Protected Party to the extent, and only to the extent, that such Claims implicate coverage under any Non-Settling Insurer's Policy(ies), but recovery may only be pursued by the Trust and is limited to the proceeds of the Non-Settling Insurer's Policy(ies). All other damages (including damages for Extra-Contractual Claims), awards, judgments over policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable against any Non-Settling Insurer because of its conduct regarding coverage for, or defense or settlement of, any Abuse Claim, and any such damages or awards will solely have recourse against the Non-Settling Insurer and the Trust Assets in accordance with the Plan and the Trust Documents and shall have no recourse whatsoever at any time against any Protected Party or any property or interest in property of any Protected Party. The Class 4 Abuse Claims that may be covered under any Non-Settling Insurer's Policies will not be released or enjoined as against the Diocese, the Reorganized Diocese, or any other Protected Party until such claims are settled with the Diocese, the Reorganized Diocese, any other Protected Party and such Non-Settling Insurer or are fully adjudicated, resolved, and subject to Final Order, but recourse is limited as described above. Any Class 4 Abuse Claims that may be covered under any Non-Settling Insurer's Policies and are asserted against a Protected Party are subject to the indemnification obligations of Section 8.11.

If an Abuse Claim, including an Unknown Abuse Claim, is liquidated through the Allocation Protocol or as a Tort Claim as permitted by the Plan, the Allocation Protocol, or the Trust Agreement, then the Protected Parties, the Trust, and each Non-Settling Insurer shall retain any and all legal and factual defenses that may exist with respect to such Abuse Claim and, except as set forth in this Section, all coverage defenses. The rights, duties, and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Abuse Claims are not affected in any way by (a) the Diocese Discharge, (b) any Trust Distribution, or (c) the Non-Settling Insurance Assignment. Non-Settling Insurers retain any defenses that they would be able to raise if the Claim for coverage for an Abuse Claim were brought by any Protected Party.

The rights and obligations of the Protected Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Allocation Protocol and shall be treated as if the determination by the Abuse Claims Reviewer had never occurred. Each Non-Settling Insurer shall be entitled to all rights as are provided under the terms of its Non-Settling Insurer Policies as if the determination by the Abuse Claims Reviewer had never occurred.

Nothing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with

respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim. All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

The Trust shall have no obligation to take any action to enforce an Insurance Policy of a Non-Settling Insurer, including any obligation to commence or prosecute any action against any Non-Settling Insurer or to defend an action commenced by a Non-Settling Insurer, although the Trust may do so in its sole and absolute discretion.

### 6.2    Estimations/Assessments of Abuse Claims Are Not Binding.

Estimations of Abuse Claims for purposes of determination, qualification, assignment of points pursuant to the Allocation Protocol, and payment of Trust Distributions:

> a.    shall not (i) constitute an admission of liability by any Person with respect to such Abuse Claims, (ii) have any *res judicata* or collateral estoppel effect on any Person, (iii) constitute a settlement, release, accord, satisfaction, or novation of such Abuse Claims, (iv) be used by any third-party as a defense to any alleged joint liability, or (v) otherwise prejudice any rights of the Trust, the Diocese, the Reorganized Diocese, the Participating Parties, the Settling Insurers, the Non-Settling Insurers, or the Abuse Claimants in all other contexts or forums;

> b.    shall be without prejudice to any and all rights of the Trust, the Non-Settling Insurers, and the Abuse Claimants in all other contexts and forums; and

> c.    shall not be deemed to be a determination of liability of the Diocese or any Participating Party or a determination of whether, or the extent to which, such Abuse Claim is covered under any Non-Settling Insurer Policy.

### 6.3    Post-Effective Date Insurance Obligations.

Notwithstanding the Non-Settling Insurance Assignment, the Diocese, the Reorganized Diocese, and the Participating Parties shall use reasonable efforts to comply with any Post-Effective Date Insurance Obligations. If the Trust believes the Diocese, the Reorganized Diocese, or a Participating Party has failed to comply with any Post-Effective Date Insurance Obligation, the Trust shall give the Diocese, the Reorganized Diocese, or the Participating Party (as applicable) written notice identifying with specificity the Post-Effective Date Insurance Obligation at issue and the action the Trust believes must be taken in order to come into compliance. Subject to further order of the Court, the Diocese, the Reorganized Diocese, and the Participating Parties shall have at least 45 days following receipt of any such notice from the Trust to either (i) undertake the actions requested by the Trust or (ii) seek a determination from the Court as to the extent of their Post-Effective Date Insurance Obligations and whether the action requested by the Trust is required to comply therewith. The Court will retain jurisdiction to adjudicate such dispute or claim. Except in the case of willful misconduct by the Reorganized Diocese and any Participating Party, the Trust's sole remedy for any failure to comply with any Post-Effective Date Insurance

- 39 -

Obligations shall be specific performance as ordered by the Court.

### 6.4 Non-Settling Insurance Assignment.

The Non-Settling Insurance Assignment shall be made to the Trust as follows:

a. On the Effective Date, and without further action by any party, the Diocese and each of the Participating Parties will be deemed to have assigned to the Trust all of their Insurance Claims and rights of recovery on account of such Insurance Claims against the Non-Settling Insurers. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and shall not be construed to entitle any Person or entity to insurance coverage other than those Persons or entities entitled to coverage under the terms of the Non-Settling Insurer Policies.

b. On the Effective Date, and without further action by any party, the Diocese will be deemed to have assigned to the Trust the Non-Settling Insurance Policies and the right to proceeds under such Non-Settling Insurer Policies. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and shall not be construed to affect any Non-Settling Insurer's obligations or rights under any insurance policy or applicable law. Following the Effective Date, the Trust shall assume responsibility for, and be bound by, those obligations of the Diocese and Participating Parties under the Non-Settling Insurer Policies. At the Trust's request, the Diocese, the Reorganized Diocese, and the Participating Parties shall comply with any Post-Effective Date Insurance Obligations to preserve coverage under the Non-Settling Insurer Policies. Any DOR Entities' Post-Effective Date Costs incurred in connection with such efforts, shall be paid by the Trust in accordance with the DOR Entities' Post-Effective Date Costs Procedures described below.

### 6.5 Trust Pursuit of Insurance Claims Against Non-Settling Insurers.

The Trust shall be entitled to all recoveries on account of Insurance Claims against Non-Settling Insurers assigned to the Trust as set forth in the Plan and the Confirmation Order. The Trust may act in its own name, or in the name of any Abuse Claimant, the Diocese, and/or a Participating Party to enforce any right, title, or interest of any such party in the Insurance Claims assigned to the Trust. No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact the Diocese is in bankruptcy.

Any recovery by the Trust on Insurance Claims under Non-Settling Insurer Policies relating to the Diocese's and/or Participating Parties' liability for Abuse Claims shall become a Trust Asset and shall be distributed as provided in the Plan, the Trust Agreement, and the Allocation Protocol.

The Trust shall have full access to coverage under the Non-Settling Insurer Policies to the greatest extent permitted by applicable non-bankruptcy law, in the same manner and to the same extent as any Abuse Claimant, the Diocese, and any Participating Parties prior to the confirmation of the Plan and the Non-Settling Insurance Assignment. The Non-Settling Insurers shall retain any

- 40 -

and all coverage defenses, but confirmation or effectuation of the Plan shall not trigger any coverage defense, or give rise to any additional coverage defense, that did not exist prior to the Diocese's filing for bankruptcy or Plan confirmation. No coverage defenses are created by the Diocese's bankruptcy or the negotiation, solicitation, or confirmation of the Plan, or the terms thereof, including any treatment of, or protections afforded to, the Diocese, the Reorganized Diocese, any Participating Party or Settling Insurer under the Plan.

The Non-Settling Insurance Assignment does not affect any right of the Diocese, the Reorganized Diocese, any Participating Party or any Non-Settling Insurer to contest any liability or the amount of damages in respect of any Abuse Claims.

## 6.6 Insurance Neutrality as to Non-Settling Insurers.

For the avoidance of doubt, solely with respect to the Non-Settling Insurers, except as set forth in Sections 6.5 and 8.6, nothing in this Plan, the Trust Agreement, the Confirmation Order, any Plan Document, any order approving a settlement, or any other order, judgment, conclusion of law, finding of fact, determination or statement (written or oral) of the Bankruptcy Court (or any other Court exercising jurisdiction over the Chapter 11 Case) to the contrary (including any other provision that purports to be preemptory or supervening or grants a release) shall: (i) affect, impair, or prejudice the rights and defenses of any Non-Settling Insurer against the Diocese or any other Participating Party under any Non-Settling Insurer Policies, including any factual or legal defenses to any claim for insurance; (ii) affect, impair, or prejudice the rights and defenses of any Protected Party, the Trust, or any other insureds under Non-Settling Insurer Policies in any manner, including any factual or legal defenses to any claim for insurance; (iii) constitute a settlement or resolution of the Diocese's and/or any Participating Party's liability to an Abuse Claimant; (iv) in any way operate to, or have the effect of, impairing or having any *res judicata*, collateral estoppel, or other preclusive effect on, any party's legal, equitable, or contractual rights or obligations under any Non-Settling Insurer Policy; or (v) otherwise determine the applicability or non-applicability of any provision of any Non-Settling Insurer Policy, and any such rights and obligations shall be determined solely under the Non-Settling Insurer Policy and applicable law.

Notwithstanding any provision in the Plan, the Plan Documents, or the Confirmation Order, nothing contained in any such documents or in this paragraph shall impose, or shall be deemed or construed to impose, any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim. Rather, a Non-Settling Insurer's obligations, if any, with respect to an Abuse Claim shall be determined solely by and in accordance with the applicable insurance policy(ies) issued by that Non-Settling Insurer. Nothing in the Plan, the Plan Documents, or the Confirmation Order shall diminish or impair, or be deemed to diminish or impair, the rights of any Non-Settling Insurer to assert any claim, defense, right, or counterclaim in connection with any Abuse Claim or Insurance Policy.

Without limiting the generality of the foregoing provisions of this Section 6, nothing in the Plan, the Plan Documents, or the Confirmation Order, shall, under any theory, (a) constitute a trial, a judgment, an adjudication on the merits, or evidence establishing the liability of any Non-Settling Insurer in subsequent litigation for any Claim, including, without limitation, any Abuse Claim, or under any insurance policy, (b) constitute, or be deemed to constitute, a determination of the

reasonableness of the amount of any Claim, including any Abuse Claim, either individually or in the aggregate with other Claims, (c) be deemed to grant to any Person or Entity any right to sue any Non-Settling Insurer directly, in connection with a Claim, including any Abuse Claim, or any insurance policy, that such Person or Entity did not otherwise have under applicable nonbankruptcy law, (d) constitute a finding or determination that the Diocese or any Participating Party is a named insured, additional insured, or insured in any other way under any insurance policy, (e) constitute a finding or determination that any Non-Settling Insurer in fact issued any alleged insurance policy or that any alleged insurance policy has any particular terms or conditions, or (f) constitute a finding or determination that any Non-Settling Insurer has any defense or indemnity obligation with respect to any Claim or Abuse Claim. In addition, no payment made in accordance with this Plan shall be, or be deemed to be, a waiver of any rights of any Non-Settling Insurer under any insurance policy.

No Non-Settling Insurer shall be bound in any current or future litigation concerning an Abuse Claim or an insurance policy by any factual findings or conclusions of law issued in connection with Confirmation of the Plan (including on appeal or in any subsequent proceeding necessary to effectuate the Plan), and no such findings of fact or conclusions of law shall have any *res judicata* or collateral estoppel effect on any claim, defense, right, offset, or counterclaim that has been asserted or that may be asserted in any current or subsequent litigation concerning an Abuse Claim or an insurance policy. Non-Settling Insurers shall retain, and be permitted to assert, (i) all of their defenses to coverage of Abuse Claims notwithstanding any provision of the Plan, the Plan Documents, or the Confirmation Order, other than with respect to the Non-Settling Insurance Assignment, and (ii) all of the Diocese's and Participating Parties' defenses to liability, both legal and equitable, in connection with any asserted Abuse Claim, and the Non-Settling Insurer's rights to assert all such underlying defenses and defenses to coverage of Abuse Claims will not be impaired in any way by the Plan, the Plan Documents, or the Confirmation Order.

### 6.7    Election to Become a Settling Insurer.

After the Effective Date and at any time before dissolution of the Trust, a Non-Settling Insurer may elect to become a Settling Insurer by entering into a settlement with the Trust on terms and conditions acceptable to the Trustee, and subject to Bankruptcy Court approval pursuant to Bankruptcy Rule 9019. Upon approval of such settlement by the Bankruptcy Court, the Non-Settling Insurer would be released from liability subject to the terms of the Plan and such settlement, and receive the benefits of the Channeling Injunction.

The Trust shall use reasonable efforts, consistent with the terms of the Trust Agreement and its fiduciary duties to the Trust's beneficiaries, to enter into insurance settlement agreements with all Non-Settling Insurers (if any).

## SECTION 7.   MEANS FOR IMPLEMENTATION OF PLAN

### 7.1    Plan Implementation.

All Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, General Unsecured Claims, and Pass-Through Claims will be paid by the Diocese or the Reorganized

Diocese.  All Abuse Claims will be paid solely from the Trust to be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with this Plan and the Allocation Protocol.   The proposed Trust Agreement will be attached to the Plan Supplement as **Exhibit 3**. The Allocation Protocol will be attached to the Plan Supplement as **Exhibit 1** and is incorporated into the Trust Agreement.

### 7.2    Good Faith Settlement and Compromise.

The Plan (including its incorporation of the Insurance Settlements) and the Plan Documents constitute a good faith compromise and settlement of Claims and controversies based upon the unique circumstances of these Chapter 11 Cases, and none of the foregoing documents, the Disclosure Statement, or any other papers filed in furtherance of Confirmation, nor any drafts of such documents, may be offered into evidence or deemed as an admission in any context whatsoever beyond the purposes of the Plan, in any other litigation or proceeding, except as necessary, and as admissible in such context, to enforce their terms before the Bankruptcy Court or any other court of competent jurisdiction.   The Plan, the Insurance Settlements, the Plan Documents, and the Confirmation Order will be binding as to the matters and issues described therein, but will not be binding with respect to similar matters or issues that might arise in any other litigation or proceeding in which none of the Diocese, the Reorganized Diocese, the Protected Parties, or the Trust is a party.

### 7.3    Corporate Action.

All matters provided under this Plan involving the corporate structure of the Diocese or corporate action to be taken by or required of the Diocese, or the Reorganized Diocese, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further approval by the Bankruptcy Court or any other governmental entity.   For avoidance of doubt, to the extent any corporate action or other transaction contemplated under this Plan would otherwise require approval under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the entry of the Confirmation Order shall constitute such approval.

### 7.4    Payments Effective Upon Tender.

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Diocese, or the Reorganized Diocese to the Creditor to whom payment is due.  If any Creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Diocese, or the Reorganized Diocese for the benefit of that Creditor pending final adjudication of the dispute.   However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the Creditor if the Trust, the Diocese, or the Reorganized Diocese failed to pay the tendered payment.

**7.5** **Agreements, Instruments, and Documents.**

All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary, useful or appropriate in order to effectuate this Plan, shall be executed on or before the Effective Date or as soon thereafter as is practicable.

**7.6** **Continuation of Insurance Policies.**

Except to the extent any Insurance Policies are canceled or bought back pursuant to Insurance Settlements or as otherwise provided by the terms of the Plan, all Insurance Policies (including, without limitation, any Insurance Policy not included in Insurance Settlements) shall, as applicable, either be deemed to be assumed by the Diocese pursuant to sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Diocese, or continued in accordance with its terms pursuant to section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Diocese, such that each of the parties' contractual, legal, and equitable rights under each such Insurance Policy shall remain unaltered. A list of all known Insurance Policies will be attached to the Plan Supplement as **Exhibit 4**. To the extent that any or all such Insurance Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to sections 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Diocese, the Estate, and all parties in interest in this Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Diocese existing as of the Effective Date with respect to any Insurance Policy.

**7.7** **Bar Date for Professional Fee Claims.**

Each Professional retained or requesting compensation in the Chapter 11 Case, pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code, must File with the Bankruptcy Court a final application requesting the allowance of a Professional Fee Claim no later than 60 days after the Effective Date. All applications for the allowance of Professional Fee Claims that are not timely Filed shall be forever barred. Objections to such applications may be Filed in accordance with the Bankruptcy Rules. The Bankruptcy Court shall determine all such Professional Fee Claims.

**7.8** **Bar Date for Other Administrative Claims.**

Except as provided for herein or in an order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims must File and serve on the Diocese requests for the payment of such Administrative Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Claims Bar Date, or such Administrative Claims shall be automatically considered Disallowed Claims, forever barred from assertion, and unenforceable

against the Diocese or the Reorganized Diocese, the Estate, or their property without the need for any objection by the Diocese or the Reorganized Diocese, or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Administrative Claims shall be deemed fully satisfied, released, and discharged.

**7.9**    **Exit Financing.**

The Diocese may, at its discretion, obtain financing to assist the Diocese in making its portion of the DOR Entities' Cash Contribution, which financing may be secured by the Diocese's interest in certain real property located at 1150 Buffalo Road, Rochester, New York, or such other property of the Diocese that is not otherwise contemplated to be transferred (other than to the Reorganized Diocese) pursuant to this Plan. Any security interest in collateral granted to a lender in connection with such financing shall, on and after the Effective Date, be enforceable against any interest the Reorganized Diocese may have in such collateral, to the same extent it may have been enforceable against the Diocese prior to the Effective Date. In the event the Diocese elects to pursue such financing, the terms of such financing shall be submitted to the Bankruptcy Court at the Confirmation Hearing for approval pursuant to section 364 of the Bankruptcy Code.

## SECTION 8.  THE TRUST

**8.1**    **Establishment of Trust.**

On the Confirmation Date, or as soon as practicable thereafter, the Trust shall be established in accordance with the Trust Documents for the exclusive benefit of the holders of Abuse Claims. The Trust will assume all liability for and rights concerning all Channeled Claims, including the rights to settle the Channeled Claims. The Trust will control the allocation and Distribution of the Abuse Claims Settlement Fund to Abuse Claimants pursuant to the terms of the Allocation Protocol, the Trust Agreement, the Plan, and the Confirmation Order. The Trustee shall establish and maintain a reserve for Trust Expenses, which shall be paid pursuant to the terms of the Trust Agreement.

**8.2**    **Funding of the Trust.**

    *8.2.1*    ***DOR Entities' Cash Contribution.*** On or before the Consummation Date, the Diocese and the Participating Parties shall cause the DOR Entities' Cash Contribution to be paid to the Trust to establish the Trust Reserve and the Unknown Abuse Claim Reserve, with any balance to be included in the Abuse Claims Settlement Fund.

    *8.2.2*    ***Insurance Settlement Amounts.*** On or before the later of (a) the dates set forth in their respective Insurance Settlements or (b) the Consummation Date, the Settling Insurers other than CNA will pay to the Trust the sums set forth in their respective Insurance Settlements. CNA shall pay the CNA Cash Contribution to the Trust in accordance with the terms of Section 5.1.1(a) of this Plan.

    *8.2.3*    ***Outbound Contribution Claims.*** Outbound Contribution Claims

- 45 -

shall be automatically, and without further act or deed, assigned to the Trust on the Effective Date.

### 8.3    Vesting of Trust Assets.

On the Effective Date, all Trust Assets shall vest in the Trust, and the Protected Parties shall be deemed for all purposes to have transferred all of their respective right, title, and interest in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Protected Parties, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of the Trust Assets in accordance with this paragraph, the Protected Parties shall have no further interest in or with respect to the Trust Assets.

### 8.4    Non-Monetary Commitments.

In order to further promote healing and reconciliation, and in order to continue efforts to prevent Abuse from occurring in the future, the Reorganized Diocese agrees that, beginning within thirty days after the Effective Date (unless a different date is provided in the Confirmation Order), it will use reasonable efforts to undertake and observe certain non-monetary commitments as agreed upon with the Committee and set forth as **Exhibit 5** in the Plan Supplement.

### 8.5    Appointment of the Trustee.

The initial Trustee will be identified in the Confirmation Order. The Trustee shall commence serving as the Trustee on the Effective Date; *provided, however*, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Bankruptcy Court, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

### 8.6    Rights and Responsibilities of Trustee.

The Trustee shall be deemed to be a fiduciary of the Trust under the terms of the Trust Agreement and shall have all rights, powers, authority, responsibilities, and benefits under New York law specified in this Plan and as reflected in the Trust Agreement, including commencing, prosecuting, or settling causes of action, enforcing contracts, and asserting Claims, defenses, offsets, and privileges. If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to Trustee's authority to act, the provisions of the Trust Agreement shall control. Among other things, the Trustee: (1) shall liquidate and convert to Cash the Trust Assets, make timely Trust Distributions, and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns Filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other Agents on behalf of the Trust, and at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

The Trustee shall make Trust Distributions to the Abuse Claimants. The Trustee shall

- 46 -

have the right to pursue Insurance Claims against any Non-Settling Insurers. The Trustee shall pay Trust Expenses, including paying the Trustee and retained professionals, and funding DOR Entities' Post-Effective Date Costs pursuant to the DOR Entities' Post-Effective Date Costs Procedures. The Trustee shall set aside a reserve for the Unknown Abuse Claims Reserve. The Trustee may seek reimbursement from any Non-Settling Insurer.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no cause of action shall be commenced in any forum, other than the Bankruptcy Court, against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee.

### 8.7 Investment Powers; Permitted Cash Expenditures.

All funds held by the Trust shall be held in Cash or invested in short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust Agreement. The Trustee may expend such Cash in a manner consistent with the terms of the Trust Agreement and the Allocation Protocol.

### 8.8 Tax Matters.

The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Diocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference. The Trust shall not be deemed to be the same legal entity as the Diocese or the Reorganized Diocese, but only the assignee of certain assets of the Diocese and a representative of the Estate for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall File such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*, as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 *et seq.*, and New York law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any. The Trustee, may in its discretion, establish a disputed claims reserve for the Trust, which shall be administered in accordance with applicable law.

### 8.9 DOR Entities' Post-Effective Date Costs Procedures.

*8.9.1* ***DOR Entities' Post-Effective Date Costs Reserve.*** The Trust shall establish the DOR Entities' Post-Effective Date Costs Reserve, which shall be funded in the amount of $75,000 from the DOR Entities' Cash Contribution. The Trustee shall provide the Reorganized Diocese and all Participating Parties with a written statement as to the balance of the DOR Entities' Post-Effective Date Costs Reserve no later than the fifteenth day of each month until such time as the DOR Entities' Post-Effective Date Costs Reserve is exhausted.

*8.9.2* ***DOR Entities' Post-Effective Date Costs.*** All invoices for DOR

- 47 -

Entities' Post-Effective Date Costs shall be submitted to the Trustee via email within 60 days following the end of the month in which DOR Entities' Post-Effective Date Costs are incurred (such submission, a "Fee Notice"). All Fee Notices provided to the Trustee may be redacted to prevent the disclosure of privileged information or trial strategy. The Trustee shall keep all Fee Notices confidential. For the avoidance of doubt, the Trustee may share such Fee Notices with any professional advisors who are not counsel of record to the Trust or the Trustee with respect to the Insurance Claims.

The Trustee shall inform the Reorganized Diocese, the Participating Party, and any professional submitting a Fee Notice of any disputes regarding the requested fees and expenses within fifteen days of submission of a Fee Notice or shall pay the requested fees within such time. If any such dispute cannot be resolved within fifteen days or such other amount of time agreed upon by the parties, either may submit such dispute to the Bankruptcy Court for adjudication upon at least fifteen days' notice. The Bankruptcy Court shall review the applicable fees and expenses as to reasonableness in light of the work performed.

Professionals shall charge rates and expenses that are no higher than their usual and customary rates for similar work performed by such professionals for clients generally at the time such services are provided, and such rates may be adjusted from time to time in accordance with the general practices of such professionals, but not more often than once in any twelve-month period.

To the extent consistent with the advice of counsel, the Diocese and any Participating Parties will use reasonable efforts to retain joint professional representation in any case or cases brought by one Tort Claimant pertaining to the same Abuse Claim.

**8.10    No Recourse Against Trustee.**

No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any Agent retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee in implementation of the Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, breach of the fiduciary duty of loyalty, or fraud, and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

None of the Diocese, the Reorganized Diocese, or any Participating Party shall be liable for any acts or omissions by the Trust, the Trustee, or their respective Agents or Related Persons.

- 48 -

### 8.11    Indemnification by Trust.

The Trust shall defend, indemnify, and hold harmless the Trustee and its Agents to the fullest extent permitted under the laws of New York in the performance of their duties hereunder. For the avoidance of doubt, the Diocese, Reorganized Diocese, Participating Parties, the Settling Insurers, and their respective Agents shall not be deemed to be Agents of the Trust unless specifically authorized as such in writing by the Trustee.

The Trust shall indemnify and hold each of the Protected Parties harmless from and against any and all Channeled Claims, as well as indemnify and reimburse the Protected Parties for all fees, costs, and expenses incurred after the Effective Date and arising out of or related to Channeled Claims (including such fees, costs and expenses incurred in connection with discovery), to the extent set forth in the Trust Documents. Pursuant to this indemnification, each Protected Party has the right (a) to appoint defense counsel of its choosing, subject to consent by the Trustee, such consent not to be unreasonably withheld, and (b) control the defense and settlement of any such Channeled Claim, provided that the Protected Party keeps the Trustee reasonably informed and notifies the Trustee of any settlement.

### 8.12    Trust Liability.

Upon the occurrence of the Effective Date, the Trust shall automatically and without further act or deed assume all responsibility for preserving, managing, and distributing Trust Assets, and shall automatically and without further act or deed assume all liability, if any, of the Participating Parties and Settling Insurers in respect of the Abuse Claims, which shall become Channeled Claims in accordance with the terms of this Plan.

### 8.13    Termination.

The Trust shall terminate after its liquidation, administration, and Distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth in the Trust Agreement.

## SECTION 9.    GENERAL CLAIMS ADMINISTRATION

### 9.1    Objections To Non-Abuse Claims.

Prior to the Effective Date, the Diocese shall have the authority to pursue any objection to the allowance of any Non-Abuse Claim. From and after the Effective Date, the Reorganized Diocese will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making any Distributions with respect to Non-Abuse Claims (including those Non-Abuse Claims that are subject to objection by the Diocese as of the Effective Date); *provided*, *however*, that nothing in this Section shall affect the right of any party in interest (including the Reorganized Diocese and the Trustee) to object to any Non-Abuse Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, objections to Non-Abuse Claims shall be Filed and served not later than 60 days after the later of: (i) the Effective

Date, or (ii) the date such Claim is Filed (the "Claims Objection Deadline"). Such deadline or any Bankruptcy Court-approved extension thereof, may be extended upon request by the Reorganized Diocese by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the Reorganized Diocese's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

### 9.2 Determination of Claims.

From and after the Effective Date, any Non-Abuse Claim as to which a proof of claim or motion or request for payment was timely Filed in this Chapter 11 Case, or deemed timely Filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim, Filed by the Diocese, the Reorganized Diocese, or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, or causes of action that the Diocese or the Reorganized Diocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157.

### 9.3 No Distributions Pending Allowance.

Except in the case of Abuse Claims paid pursuant to the Allocation Protocol, no Distribution will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

### 9.4 Claim Estimation.

To effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Case, with respect to Disputed Claims (except Abuse Claims), the Diocese or the Reorganized Diocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings.

### 9.5 Treatment of Contingent Claims.

Except with respect to Abuse Claims, until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.

### 9.6 Controversy Concerning Impairment.

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before confirming the Plan.

### 9.7 Treatment of Executory Contracts and Unexpired Leases.

Subject to the requirements of section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Diocese except (i) Insurance Policies that have not been assumed and retained by the Diocese pursuant to Section 7.5, or (ii) executory contracts and unexpired leases that have been rejected by order of the Bankruptcy Court or are the subject of a motion to reject pending on the Confirmation Date, will be deemed to be assumed and assigned to the Reorganized Diocese on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed and assigned to the Reorganized Diocese objects to such assumption and assignment, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized Diocese, except that the Trust shall pay any cure costs under any Insurance Policy assumed and retained by the Diocese pursuant to Section 7.5. In the event of a dispute regarding the amount of any cure payments, or the ability of the Diocese or the Reorganized Diocese (as applicable) to provide adequate assurance of future performance with respect to any executory contracts to be assumed by the Diocese, or assumed and assigned to the Reorganized Diocese, the Trust or the Reorganized Diocese (as applicable) will make any payments required by section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute. The contracts and leases which will be assumed and assigned to the Reorganized Diocese, and their respective cure costs, will be identified in **Exhibit 6** attached to the Plan Supplement.

## SECTION 10. PROVISIONS GOVERNING DISTRIBUTIONS

### 10.1 Disbursing Agents.

The Reorganized Diocese shall be the disbursing agent for all aspects of the Plan except for Distributions made from the Trust. With respect to the Trust, the Trustee shall be the disbursing agent and be responsible for all Distributions made under the Trust.

### 10.2 Manner of Payment.

Unless otherwise agreed by the Reorganized Diocese or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, all Distributions of Cash under

the Plan may be made either by check via first class mail, postage prepaid, or by wire transfer from a domestic bank, at the option of the respective disbursing agent.

### 10.3     Distribution Only to Holders of Allowed Claims.

Except as otherwise provided in the Plan for Non-Abuse Claims, Distributions under the Plan and the Plan Documents will be made only to the holders of Allowed Claims. Until a Disputed Non-Abuse Claim becomes an Allowed Claim, the holder of that Disputed Non-Abuse Claim will not receive any Distribution otherwise provided to Non-Abuse Claimants under the Plan or the Plan Documents. If necessary in determining the amount of a *pro rata* Distribution due to the holders of Allowed Claims in any Class, the Reorganized Diocese will make the *pro rata* calculation as if all Disputed Non-Abuse Claims were Allowed Claims in the full amount claimed or in the estimated amount. When a Disputed Non-Abuse Claim in any Class becomes an Allowed Claim, the Reorganized Diocese will make a full or partial Distribution, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and any required withholding of applicable federal and state taxes.

### 10.4     Disputed Claim Reserve.

To the extent that a disbursing agent makes a Distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the respective disbursing agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

### 10.5     Transmittal of Distributions.

Except as otherwise provided in the Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to be made under the Plan, Confirmation Order, or Trust Documents to Class 4 Claimants will be made by the Trustee, and Distributions to all other Claimants will be made by the Diocese or the Reorganized Diocese.

Trust Distributions to Class 4 Claimants will be made as follows: (a) to the client trust account for the Claimant's attorney of record; (b) if the Class 4 Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim Filed with the claims agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Diocese or Trustee, as applicable, by such Claimant in writing; or (c) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Diocese or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in this Chapter 11 Case.

Distributions to other Claimants will be made by wire transfer or by check via first class United States mail, postage prepaid, (a) to the client trust account for the Claimant's attorney of record; (b) if the Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim Filed with the claims agent or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Diocese, as

applicable, by such Claimant in writing, or (c) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Diocese, to the mailing address set forth in the Schedules Filed by the Diocese in the Chapter 11 Case.

If a Claimant's Distribution is not mailed or is returned to the Reorganized Diocese or to the Trustee because of the absence of a proper mailing address, the Reorganized Diocese or the Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address. The Trustee shall have no liability to a Class 4 Claimant on account of Distributions made to the client trust account of a Class 4 Claimant's attorney.

### 10.6    Timing of Distributions.

Unless otherwise agreed by the Reorganized Diocese or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day. Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty days after a Distribution is returned to the Reorganized Diocese or to the Trustee, as applicable, as undeliverable or is deemed to be an undeliverable Distribution, provide the Reorganized Diocese or the Trustee, as applicable, with a written notice asserting its Claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any Claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Reorganized Diocese, the Trust, the Trustee, or its property. Any undeliverable Distributions to be made by the Trust that are not claimed under this Section will become available for the Trust to distribute to other Abuse Claimants. Any other undeliverable Distributions shall be retained by the Reorganized Diocese in accordance with the Plan. Nothing in the Plan requires the Reorganized Diocese, the Trust, or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

### 10.7    Time Bar to Check Payments.

If an instrument delivered as a Distribution to a Claimant by the Reorganized Diocese or the Trust is not negotiated within 90 days after such instrument is sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and all Claims in respect of such voided check shall be discharged and forever barred. Any request for re-issuance of a check must be made on or before 90 days after issuance of a non-negotiated check. Except as otherwise provided herein, any Distribution under the Plan which is not negotiated after 90 days following issuance shall be forfeited, and such Distribution, together with any interest earned thereon, and shall return to and revest in the Reorganized Diocese or to the Trust, as applicable.

### 10.8    No Professional Fees or Expenses.

No professional fees or expenses incurred by a Claimant will be paid by the Diocese, the Reorganized Diocese, or the Trustee with respect to any Claim except as specified in the Plan or the Trust Documents.

### 10.9    No Interest on Claims.

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between the Diocese and the holder of a Claim approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, the Confirmation Order, or the Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 10.10    Saturday, Sunday or Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day, but shall be deemed to have been completed as of the required date.

### 10.11    Withholding Taxes.

The Reorganized Diocese shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any Distribution under the Plan, the Reorganized Diocese will require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

### 10.12    Setoffs and Recoupment.

Subject to the terms of this Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Diocese or Reorganized Diocese, as appropriate, may but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Diocese may have against the holder of such Claim.

### 10.13    No *De Minimis* Distributions.

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash (rounded to the nearest whole cent when and as necessary) will be issued to Claimants entitled to receive Distributions of Cash. Any Distribution of less than

$25.00 will be considered *de minimis*, and holders of Allowed Claims that are entitled to Distributions of less than $25.00 will not receive any Distribution. Such funds will remain with, and revest in, the Reorganized Diocese. For avoidance of doubt, this Section 10.13 shall not apply to any Distributions to be made by the Trust, which shall be governed solely by the Trust Documents.

**10.14   Prepayment.**

Except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Diocese shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## SECTION 11.   EFFECTIVE DATE

**11.1   Conditions Precedent to Effective Date.**

The Effective Date shall not occur unless each of the following conditions are satisfied or waived as set forth in Section 11.2 below:

*11.1.1   **Confirmation Order.*** The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponent. Without limiting the generality of the foregoing, the Confirmation Order shall, at a minimum, contain findings by the Bankruptcy Court that:

   a.   all of the requirements for confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code have been met and that the Plan should be confirmed;

   b.   each of the Insurance Settlements is approved pursuant to §§ 105(a), 363(b), 363(f), 363(m), and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as applicable, and upon paying their respective Insurance Settlement Amounts to the Trust, each Settling Insurer shall, without the necessity of any further act or deed, be deemed to have (i) bought back all of the Insurance Policies issued by such Settling Insurer with such sale being free and clear of all Liens, Claims, interests, charges, other encumbrances and liabilities of any kind and (ii) received the Releases, Injunctions, and other benefits provided to such Settling Insurer under the Plan;

   c.   the Allocation Protocol attached as an exhibit to the Plan Supplement has been proposed in good faith and is fair and reasonable with respect to the treatment afforded to all Abuse Claims;

   d.   the Non-Settling Insurance Assignment is authorized by, and does not conflict with, any provision of the Bankruptcy Code or other applicable law, and is therefore approved;

   e.   the Bankruptcy Court has jurisdiction to approve, and does

- 55 -

approve, the transfer of the Residual Assets to, and vesting of title in, the Reorganized Diocese in accordance with the provisions of section 511 or 511-a of the New York State Not-For-Profit Corporation Law, and no further approval by the New York Attorney General or the New York Supreme Court is required; and

      f.     except as otherwise provided in this Plan, the Reorganized Diocese shall not be liable for any Claims against or liabilities of the Diocese or any of the Participating Parties, including under any theory of successor liability.

      *11.1.2*    ***Channeling and Insurer Injunctions.*** The Confirmation Order shall approve and implement the Channeling Injunction and the Supplemental Settling Insurer Injunction set forth in Section 12 of the Plan.

      *11.1.3*    ***Plan Documents.*** The Plan Documents shall be in form and substance acceptable to the Plan Proponent.

      *11.1.4*    ***Trust Formation.*** The Trust shall have been formed, the Bankruptcy Court shall have entered an order appointing the Trustee, and the Trustee shall have executed the Trust Agreement.

      *11.1.5*    ***Reorganized Diocese Formation.*** The Reorganized Diocese shall have been duly formed and in good standing under New York law, and shall have obtained any necessary governmental permits or approvals required to take title to the Residual Assets, and to conduct business as a tax-exempt entity pursuant to 26 U.S.C. § 501(c)(3), on and after the Effective Date in substantially the same manner as the Diocese has historically conducted its business. Notwithstanding the foregoing, this condition shall be waived if the Reorganized Diocese shall not have been duly formed and in good standing under New York Law within 60 days of the Confirmation Order becoming a Final Order.

      *11.1.6*    ***Final Orders.*** The Confirmation Order, the order appointing the Trustee, and all orders approving Insurance Settlements (which may be included within the Confirmation Order) shall be Final Orders and no stay of any such orders shall then be in effect.

      *11.1.7*    ***No Material Amendments.*** The Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made with the consent of the Plan Proponent.

   **11.2**    <u>Waiver of Conditions.</u>

Any condition to the occurrence of the Effective Date set forth in Section 11.1 of this Plan may be waived by the Plan Proponent.

   **11.3**    <u>Notice of Effective Date.</u>

The Plan Proponent shall File a notice of the Effective Date with the Bankruptcy Court, and serve it on all Creditors and parties in interest, within five Business Days after the occurrence

of the Effective Date. Such notice will include all relevant deadlines put into effect by the occurrence of the Effective Date.

### 11.4    Effect of Non-Occurrence of Condition.

If the Effective Date does not occur within 365 days after the entry of the Confirmation Order, the Plan Proponent shall have the right to declare the Plan null and void in all respects, in which event nothing contained in the Plan or the Disclosure Statement will: (i) constitute a waiver or release of any Claims by or against the Protected Parties; (ii) prejudice in any manner the rights of the Protected Parties or the Trust; (iii) constitute an admission, acknowledgment, offer, or undertaking by the Protected Parties in any respect, including but not limited to, in any proceeding or case against the Diocese or any Participating Party; or (iv) be admissible in any action, proceeding or case against the Protected Parties in any court or other forum.

### 11.5    Right to Modify the Plan Until Substantial Consummation.

Until the Plan has been substantially consummated, the Plan Proponent shall have the right to modify the Plan to the extent permitted by Section 1127 of the Bankruptcy Code.

## SECTION 12.    EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE

### 12.1    General Injunction and Discharge.

*12.1.1    **General Injunction.*** **EXCEPT WITH RESPECT TO ABUSE CLAIMS AND INBOUND CONTRIBUTION CLAIMS ADDRESSED IN SECTION 12.2 BELOW, OR AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OF ANY KIND OR NATURE AGAINST THE DIOCESE, WHETHER KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, ANY PARTICIPATING PARTY, OR THE DIOCESE'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF NON-ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H), AND 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT (A) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (B) SUCH CLAIM IS ALLOWED UNDER THE PLAN, OR (C) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE**

**CONFIRMATION DATE, FROM (W) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE CLAIMS ALLOWANCE PROCEDURE PROVIDED FOR IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (X) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM, (Y) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM AND (Z) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DIOCESE OR THE REORGANIZED DIOCESE OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM.**

12.1.2    ***General Discharge.*** Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese, the Estate, and the Reorganized Diocese will be discharged from all liability for any and all Claims other than Abuse Claims.

**12.2** <u>Injunction and Discharge of Abuse Claims and Inbound Contribution Claims.</u>

12.2.1    ***Injunction of Abuse Claims and Inbound Contribution Claims.*** **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN SECTION 12.2.2 BELOW OR IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE ALL PERSONS SHALL BE PERMANENTLY STAYED, ENJOINED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE AGAINST THE DIOCESE, THE REORGANIZED DIOCESE, OR ANY PARTICIPATING PARTY, ANY ABUSE CLAIMS OR INBOUND CONTRIBUTION CLAIMS, KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, ANY PARTICIPATING PARTY, OR THE DIOCESE'S OR ANY PARTICIPATING PARTY'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN**

- 58 -

**SECTIONS 502(G), 502(H), AND 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT (A) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (B) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (C) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN.**

**IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.**

**THE DISCHARGE AND INJUNCTIONS CONTAINED IN THE PLAN AND THE RELEASES PROVIDED UNDER THE PLAN DO NOT RELEASE OR IMPAIR AN ABUSE CLAIMANT'S RIGHT TO RECOVER ON ANY ABUSE CLAIM AGAINST (Y) ANY PERPETRATOR OF ABUSE FOR ACTS OF ABUSE THAT ARE INDEPENDENT OF THE LIABILITY OF THE DIOCESE OR ANY PARTICIPATING PARTY OR (Z) ANY JOINT TORTFEASOR.**

12.2.2 ***Discharge of Diocese.*** Except as otherwise expressly provided in the Plan or Confirmation Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese, the Estate, the Reorganized Diocese, and the Participating Parties will be discharged from all liability for any and all Abuse Claims and Inbound Contribution Claims.

12.2.3 ***Preservation of Insurance Claims.*** The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the fact that the Diocese is in bankruptcy. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims. Any such recoveries by the Trust from Non-Settling Insurers will be added to the Abuse Claims Settlement Fund to be distributed pursuant to the terms of the Allocation Protocol and the Plan. Nothing in this Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies.

**12.3** **Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties.**

**IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES, THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105, 363, AND 1123 OF THE BANKRUPTCY CODE:**

- 59 -

A. ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.

B. ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:

(I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

(II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

(III) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;

(IV) ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:

(A) ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;

(B) ANY OF THE PROTECTED PARTIES; OR

(C) THE PROPERTY OF ANY OF THE PROTECTED PARTIES.

(V) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND

**(VI) ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES. IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING**.

*12.3.1 **Limited Exception to Injunctions.*** The injunctions set forth in Sections 12.2.1 and 12.3 above shall not prevent the prosecution of (a) Tort Claims pursued by a Tort Claimant at the Tort Claimant's expense against the Diocese or any Participating Party, to the limited extent authorized by Section 4.4.1 of this Plan, (b) Inbound Contribution Claims pursued by a Non-Settling Insurer against the Diocese or any Participating Party, or (c) Insurance Claims pursued by the Trustee on behalf of Abuse Claimants against Non-Settling Insurers.

Notwithstanding anything to the contrary herein, all collection efforts against any Protected Party shall be permanently enjoined and (a) any Final Judgment entered on a Tort Claim or recovery on account of an Inbound Contribution Claim shall be enforceable solely against the Trust and (b) any recovery on an Insurance Claim shall be enforceable solely against the Non-Settling Insurer by the Trust.

**12.4    Supplemental Settling Insurer Injunction.**

**PURSUANT TO SECTIONS 105(a), 363, 1123, AND 1129 OF THE BANKRUPTCY CODE, AND IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING INSURERS PURSUANT TO THE INSURANCE SETTLEMENTS, INCLUDING THE SETTLING INSURERS' PURCHASES OF THEIR SETTLING INSURER POLICIES FREE AND CLEAR OF ALL CLAIMS PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ANY AND ALL PERSONS WHO HAVE HELD, NOW HOLD, OR WHO MAY IN THE FUTURE HOLD ANY CLAIMS (INCLUDING ALL DEBT HOLDERS, ALL EQUITY HOLDERS, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, PERPETRATORS, AND ALL OTHERS HOLDING INTERESTS OF ANY KIND OR NATURE WHATSOEVER, INCLUDING THOSE**

**CLAIMS RELEASED OR TO BE RELEASED PURSUANT TO THE INSURANCE SETTLEMENTS) AGAINST ANY OF THE SETTLING INSURERS, INCLUDING (A) CLAIMS RELATING TO THE SETTLING INSURER POLICIES, INCLUDING ABUSE CLAIMS, INBOUND CONTRIBUTION CLAIMS, AND INSURER CONTRIBUTION CLAIMS, (B) THE PAYMENT OF ANY OF THE CLAIMS IDENTIFIED IN (A), INCLUDING MEDICARE CLAIMS, AND (C) EXTRA-CONTRACTUAL CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, TO ASSERT, ENFORCE OR ATTEMPT TO ASSERT OR ENFORCE ANY SUCH CLAIM OR INTEREST AGAINST THE SETTLING INSURERS OR THE SETTLING INSURER POLICIES.**

**THE SUPPLEMENTAL SETTLING INSURER INJUNCTION WILL BE EFFECTIVE WITH RESPECT TO A SETTLING INSURER ONLY AS OF THE DATE THAT THE TRUST RECEIVES THE INSURANCE SETTLEMENT AMOUNT PURSUANT TO THE TERMS OF THE APPLICABLE INSURANCE SETTLEMENT. THIS SUPPLEMENTAL SETTLING INSURER INJUNCTION BARS THE ABOVE-REFERENCED ACTIONS AGAINST THE SETTLING INSURERS AND THE SETTLING INSURER POLICIES, BUT AGAINST NO OTHER PERSON OR THING; *PROVIDED*, *HOWEVER*, NOTHING IN THIS SUPPLEMENTAL SETTLING INSURER INJUNCTION SHALL LIMIT, OR BE DEEMED OR OTHERWISE INTERPRETED TO LIMIT, THE SCOPE OF THE DISCHARGE OR CHANNELING INJUNCTION IN FAVOR OF THE PROTECTED PARTIES, INCLUDING THE SETTLING INSURERS. THE FOREGOING INJUNCTIVE PROVISIONS ARE AN INTEGRAL PART OF THE PLAN AND ARE ESSENTIAL TO ITS IMPLEMENTATION.**

**12.5** **Litigation/Settlement Between a Participating Party or Abuse Claimant and Non-Settling Insurers.**

*12.5.1* The Channeling Injunction shall channel all Inbound Contribution Claims, including Insurer Contribution Claims, to the Trust. The Settling Insurers shall not assert or pursue any Insurer Contribution Claims against any Non-Settling Insurer. If a Non-Settling Insurer asserts an Insurer Contribution Claim, such Non-Settling Insurer may only recover on its Insurer Contribution Claim against the Trust, and the Trust may assert the legal or equitable rights (if any) of the Settling Insurer in defense of the claim. If for any reason the Insurer Contribution Claims of Non-Settling Insurers are not channeled to the Trust, then the Trust shall indemnify any Settling Insurer against which a Non-Settling Insurer asserts an Insurer Contribution Claim.

**12.6** **Certain Litigation Matters.**

Upon the occurrence of the Effective Date, the Claim Objections, the Appeal, and the Prior Rule 9019 Approval Motion shall be deemed to be dismissed.

**12.7     Injunction Against Interference with Plan.**

Upon entry of the Confirmation Order, all holders of Claims shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

**12.8     Release by Holders of Claims.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, AS OF THE EFFECTIVE DATE, ALL HOLDERS OF CLAIMS, INCLUDING ABUSE CLAIMS (THE "RELEASING PARTIES"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE PROTECTED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE PARTICIPATING PARTIES, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE PROTECTED PARTIES' BUSINESSES, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.**

**FOR THE AVOIDANCE OF DOUBT, SUBJECT TO THE LIMITATIONS SET FORTH IN THE PLAN, A TORT CLAIMANT OR THE TRUST MAY NAME THE DIOCESE OR ANY PARTICIPATING PARTY IN A CASE OR PROCEEDING TO ADJUDICATE WHETHER THE DIOCESE OR ANY PARTICIPATING PARTY HAS LIABILITY FOR AN ABUSE CLAIM AND THE AMOUNT OF ANY SUCH LIABILITY, BUT RECOURSE SHALL BE LIMITED TO THE TRUST OR TO THE PROCEEDS OF ANY NON-SETTLING INSURER POLICIES AND ALL OTHER COSTS AND/OR DAMAGES THAT MAY BE RECOVERABLE AGAINST ANY NON-SETTLING INSURERS, AS APPLICABLE.**

**12.9     Mutual Releases.**

**EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED AND ASSIGNED TO THE REORGANIZED DIOCESE AND OBLIGATIONS ARISING UNDER THE PLAN, ON THE EFFECTIVE DATE, EACH OF THE PROTECTED PARTIES, THE TRUST, AND EACH ABUSE**

CLAIMANT SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER, AND THEIR RESPECTIVE RELATED PERSONS, EXCEPT THAT ABUSE CLAIMANTS SHALL NOT WAIVE THEIR RIGHTS TO DISTRIBUTIONS UNDER THE TRUST IN ACCORDANCE WITH THE TRUST AGREEMENT AND THE ALLOCATION PROTOCOL.

12.10  Exculpation; Limitation of Liability.

FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR, AND EACH EXCULPATED PARTY SHALL BE RELEASED FROM, ANY CLAIM BY ANY OTHER EXCULPATED PARTY, BY ANY HOLDER OF A CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION THAT OCCURRED DURING AND IN CONNECTION WITH THIS CHAPTER 11 CASE OR IN CONNECTION WITH THE PREPARATION AND FILING OF THIS CHAPTER 11 CASE, THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN, THE CONSUMMATION OF THIS PLAN, AND THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, LEGAL MALPRACTICE, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE DIOCESE, THE REORGANIZED DIOCESE AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.

12.11  Injunctions in Full Force and Effect.

All injunctions and/or stays provided for in the Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased Settling Insurer Policies free and clear of all Claims pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

12.12  Injunctions and Releases Integral.

The foregoing injunctive provisions and releases are an integral part of the Plan and are essential to its implementation. The currently pending court proceedings commenced by an Abuse

Claimant, the continuation of which would violate Sections 12.1, 12.2, or 12.3 of this Plan, the releases provided for under the Plan, or the Insurance Settlements, shall be deemed to be dismissed with prejudice.

### 12.13  Timing.

The injunctions, releases, and discharges (including the Channeling Injunction and the Supplemental Settling Insurer Injunction) to which any Settling Insurer is entitled pursuant to such Settling Insurer's Insurance Settlement, the Plan, the Confirmation Order, the Final Orders approving the Insurance Settlements, and the Bankruptcy Code shall only become effective when the Trust receives payment in full from the corresponding Settling Insurer pursuant to the terms of this Plan and/or the Settling Insurer's Insurance Settlement, and the other conditions to the effectiveness of the Insurance Settlement are fully met.

### 12.14  Excluded Parties.

Notwithstanding anything to the contrary herein, the following shall apply to Excluded Parties:  (a) no Claim by a Class 4 Claimant or Class 5 Claimant against an Excluded Party shall be a Channeled Claim, *provided*, *however*, any Claims which assert liability against an Excluded Party in conjunction with a Protected Party shall be Channeled Claims to the extent they assert liability against such Protected Party; (b) no Claim by a Class 4 Claimant or Class 5 Claimant against an Excluded Party shall be released by operation of this Plan; (c) the injunctions provided in Sections 12.1 and 12.2 of this Plan shall not apply to Claims by any Class 4 Claimant or Class 5 Claimant against an Excluded Party; and (d) all Claims by any Class 4 Claimant or Class 5 Claimant against an Excluded Party are preserved and are not affected by the terms of this Plan.

### 12.15  Title to and Vesting of Assets.

All property of the Diocese and the Estate is dealt with by the Plan.  Therefore, on the Effective Date, except as otherwise provided in this Plan, to the fullest extent allowed by sections 1123(a)(5), 1123(b)(2), 1123(b)(3), 1141(b), and 1141(c) of the Bankruptcy Code, all property of the Diocese and the Estate, and any property acquired by the Diocese pursuant to this Plan, shall vest in the Reorganized Diocese and such property shall be free and clear of all Liens, Claims, charges or other encumbrances whatsoever, except that any charitable assets subject to Donor Restrictions shall pass to the Reorganized Diocese subject to such Donor Restrictions.  On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Diocese may operate and manage its affairs and may use, acquire, or dispose of such property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.  The Diocese and the Reorganized Diocese may pay any charges incurred on or after the Effective Date for Professional Fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

### 12.16  Continued Corporate Existence; No Successor Liability.

> *12.16.1*  The Diocese will continue to exist after the Effective Date as a separate

entity in accordance with New York law having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence, or to change its corporate name, under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

12.16.2    On and after the Effective Date, the Reorganized Diocese may conduct business in the name of "The Diocese of Rochester" or any derivation thereof that may be approved by the Bishop of Rochester. At the request of the Reorganized Diocese, the Diocese shall take such steps as may be required to change its corporate name to remove any references to "The Diocese of Rochester."

12.16.3    Notwithstanding anything to the contrary in the Plan or otherwise, except to the extent necessary to honor any Donor Restrictions or to the extent it may expressly assume such obligations in writing on or after the Effective Date, the Reorganized Diocese shall not be liable for any Claims against, or other liabilities or obligations of the Diocese. The Reorganized Debtor shall not, and shall not be deemed under any state or federal law, or doctrine or theory of successor liability to: (a) be the successor of, or successor to, the Diocese; (b) have, de facto or otherwise, merged with or into the Diocese; (c) be a mere continuation or substantial continuation of the Diocese or the operations or business enterprises of the Diocese; or (d) be liable for any acts taken, or omitted to be taken, by the Diocese prior to the Effective Date. All Persons and entities holding Liens, Claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, against or in the Diocese or the Residual Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Diocese, the Residual Assets, or the operation of the Residual Assets prior to the Effective Date shall be forever barred, estopped, and permanently enjoined from asserting against the Reorganized Debtor such Liens, Claims, encumbrances, and other interests, including rights or claims based on any theory of successor or transferee liability, provided, however, nothing herein shall prohibit any Person with standing to do so from taking any action to enforce Donor Restrictions.

**12.17    Identity of Trustees of the Diocese and the Reorganized Diocese on and after the Effective Date.**

In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the trustees of the Diocese and the Reorganized Diocese on and after the Effective Date shall be (i) The Most Reverend Salvatore R. Matano, Bishop of Rochester, (ii) Very Reverend Paul J. Tomasso, Vicar General and Moderator of the Curia, and (iii) Reverend Daniel J. Condon, Chancellor and Director of Legal Services, all of whom are affiliated with the Universal Roman Catholic Church.

**12.18    Authority to Effectuate Plan.**

Upon the Effective Date, all matters provided under the Plan shall be deemed to be

authorized and approved without the requirement of further approval from the Bankruptcy Court or the Diocese. The Diocese and the Reorganized Diocese shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

### 12.19 Binding Effect.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all holders of Claims. Subject to the terms of the Plan, upon the Effective Date, every holder of a Claim shall be precluded and permanently enjoined from asserting against the Diocese or the Reorganized Diocese any Claim based on any document, instrument, judgment, award, order, act, omission, transaction, or other activity of any kind or nature that occurred before the Petition Date.

### 12.20 Dissolution of Committee.

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and Agents shall be released from any further duties and responsibilities in this Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 Case, including any orders regarding confidentiality issued by the Bankruptcy Court or mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims.

## SECTION 13.  [RESERVED]

## SECTION 14.  RETENTION OF JURISDICTION

### 14.1 By the Bankruptcy Court.

Pursuant to sections 105, 1123(a)(5) and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain (a) original and exclusive jurisdiction over the Chapter 11 Case, (b) original, but not exclusive jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Case, and (c) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Case and the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

        a.        over disputes concerning the ownership of Claims.

        b.        over disputes concerning the distribution or retention of assets under the Plan.

c. subject to the Plan Documents, over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims.

d. over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or the Trust, or property abandoned or transferred by the Diocese, the Estate or the Trust.

e. over motions to approve any insurance settlements entered into with a Non-Settling Insurer after the Effective Date.

f. over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets.

g. over matters related to the removal of the Trustee and the appointment of a successor Trustee.

h. over matters relating to the subordination of Claims.

i. to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

j. to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order.

k. to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to the Plan and any Insurance Settlement.

l. over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith.

m. over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code an any objections thereto.

n. over all applications for compensation under sections 327, 328, 329, 330, and 503(b) of the Bankruptcy Code.

o. over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

p. over conflicts and disputes among the Trust, the Diocese, the Reorganized Diocese, and holders of Claims.

q.      over disputes concerning the existence, nature, or scope of the Diocese Discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date.

r.      to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, the Reorganized Diocese or its property, the Estate or its property, the Trust or its property, the Trustee, the Professionals, or the Confirmation Order.

s.      to enter a final decree closing the Chapter 11 Case.

t.      to enforce all orders previously entered by the Bankruptcy Court.

u.      over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan.

**14.2    By the District Court.**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. § 1134, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case.

**14.3    Actions to Enforce the Plan.**

The Diocese, the Reorganized Diocese, and the Trust may, but are not required to, commence an Action to enforce the terms of the Plan or to collect amounts owed pursuant to the Plan and any settlements set forth in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with the terms of the Plan or such settlement. Any such Action may be commenced by filing a motion with the Bankruptcy Court. On and after the Effective Date, the Trust shall have the sole and exclusive right to enforce the terms of the Plan against the Diocese, the Reorganized Diocese and/or any Participating Party (except that the Diocese, the Reorganized Diocese, or any Participating Party may enforce the terms of the plan as against each other) and may seek any appropriate remedy in law or equity from the Bankruptcy Court which shall retain exclusive jurisdiction over any such Action.

**14.4    Case Closure.**

The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing the Chapter 11 Case upon a motion by the Diocese, the Reorganized Diocese, or any other Person. The Trustee shall not take any actions to unreasonably keep the Chapter 11 Case open. The Trustee, in his sole discretion, may seek to reopen the Chapter 11 Case to administer assets of the Trust, including with respect to entering into settlement agreements with Non-Settling

- 69 -

Insurers. If the Chapter 11 Case is reopened upon request of the Trustee, the Trust, the Diocese, and the Reorganized Diocese shall cooperate to assure that no disbursements are made from the Estate during the period when the Chapter 11 Case is reopened, and the case shall be closed at the earliest possibility.

## SECTION 15.  MISCELLANEOUS PROVISIONS

### 15.1    Amendment or Modification of this Plan.

The Plan Proponent may modify the Plan at any time prior to the Confirmation Hearing, in accordance with section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponent may modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement and supplement the Insurance Settlements may not be severed, waived, amended, deleted, or otherwise modified without the prior written approval of all of the Settling Insurers affected by such severance, waiver, amendment, deletion, or modification.

### 15.2    Revocation or Withdrawal of this Plan.

The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan Proponent revokes or withdraws this Plan before the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Plan Proponent or to prejudice in any manner the rights of the Plan Proponent in any further proceedings.

### 15.3    Reports.

Until a final decree closing the Chapter 11 Case is entered, the Diocese shall File all post-confirmation quarterly reports as required by the United States Trustee Operating Guidelines (with a copy served on the Office of the United States Trustee). The first report shall be Filed within thirty days after the end of the quarter in which the Effective Date occurs.

### 15.4    Notices.

All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail (with a contemporaneous e-mail copy, which shall not constitute notice) addressed to:

To the Diocese or the Reorganized Diocese:
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.

- 70 -

Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Email: donatos@bsk.com
        sullivc@bsk.com
        walterg@bsk.com

<u>To the Plan Proponent</u>
Mark D. Plevin
Miranda H. Turner
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Email:  mplevin@crowell.com
        mturner@crowell.com

David Christian
David Christian Attorneys LLC
105 West Madison Street, Suite 2300
Chicago, Illinois  60602
Email: dchristian@dca.law

<u>To the Trust or the Trustee</u>
At the address set forth in the Trust Agreement

All notices and requests to Persons holding any Claim in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in this Chapter 11 Case.  Any such holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Diocese.

**15.5  <u>Severability</u>.**

If, prior to confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.

**15.6  <u>Validity and Enforceability.</u>**

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the Confirmation Order, is valid and enforceable pursuant to its terms.  Should any provision in

- 71 -

this Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

### 15.7 Controlling Documents.

In the event and to the extent that any provision of the Plan or the Trust Documents is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or the Trust Documents, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Documents (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of the Plan, the Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Documents, the provisions of the Confirmation Order shall control and take precedence.

### 15.8 Filing of Additional Documents.

At any time before substantial consummation of the Plan, the Diocese, the Trust, the Reorganized Diocese, or the Plan Proponent, as appropriate, may File with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

### 15.9 Direction to a Party

On or after the Effective Date, the Trustee, the Diocese, or the Reorganized Diocese, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect the transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

### 15.10 Certain Actions

By reason of entry of the Confirmation Order prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers or Trustees of the Diocese under the Plan, including (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution and implementation of other matters provided for under the Plan involving the Diocese or the organizational structure of the Diocese shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers or Trustees of the Diocese.

### 15.11 Preservation of Tort Defendants' Rights.

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall be deemed to affect in any way the ability of any Tort Defendant to exercise any claims, demands, causes of action, powers, defenses, setoffs, and other limitations, rights, remedies, and privileges of any nature or description ("Litigation Rights") that such Tort Defendant may have under applicable state and federal law in connection with any Tort Action; *provided*, *however*, that to the extent the exercise of such Litigation Rights would otherwise result in any affirmative obligation of the Diocese and/or any Protected Party to contribute to or satisfy any judgment or claim, the enforcement of such judgment or claim or any right of contribution regarding same as against the Diocese and/or any Protected Party shall be enjoined pursuant to Section 12 of the Plan.

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall prevent any Tort Defendant from asserting in any Tort Action that any distribution made by, on behalf of the Diocese or a Participating Party, or made by reason or because of or related to this Plan to or on account of an Abuse Claimant should be treated as a payment by a joint tortfeasor to settle the Abuse Claimant's Claim for purposes of New York law, including, but not limited to General Obligations Law ("GOL") 15-108 and Civil Practice Law and Rules ("CPLR") Articles 14 and 16. Tort Defendants shall retain all rights as against any Abuse Claimant with respect to CPLR Articles 14 and 16 and GOL 15-108, *provided*, *however*, that to the extent of any conflict between state law and the injunctive provisions of this Plan with respect to the collection or enforcement of any claim against the Diocese or any Participating Party, the terms of this Plan shall control.

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall prevent any Tort Defendant from seeking discovery and/or testimony from the Diocese, the Reorganized Diocese, the Protected Parties, or any Abuse Claimant in connection with any Tort Action, in accordance with applicable rules of civil procedure.

### 15.12 Waiver of Subordination.

Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights which they may have with respect to the Distributions made pursuant to the Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving Distributions under the Plan.

### 15.13 Reservation of Rights.

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.

### 15.14    Consummation of the Plan.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Plan Proponent, Diocese, the Reorganized Diocese, and any and all Claimants (irrespective of whether such Claimants voted or are deemed to have accepted the Plan, voted to reject the Plan, or failed to vote to accept or reject the Plan), all Entities that are parties to or are subject to the settlements, compromises, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

### 15.15    Plan as Settlement Communication

The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and/or causes of action that are disputed as to validity or amount (including Abuse Claims and the Insurance Coverage Adversary Proceeding), except as otherwise provided above. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or the Disclosure Statement are subject in all respects to Rule 408 of the Federal Rules of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity, or invalidity of, any Disputed Claim or cause of action. Except as expressly set forth in the Plan, nothing in the Plan is intended to constitute a compromise of Abuse Claims.

### 15.16    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan transactions consummated or to be consummated in connection therewith.

### 15.17    Headings.

Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

### 15.18    No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Diocese, the Reorganized Diocese, the Committee any Participating Party, or any Settling Insurer with respect to any matter set forth herein.

*[Signature pages follow]*

Dated:  April 24, 2024                      Respectfully submitted,

The Continental Insurance Company, successor by
merger to Commercial Insurance Company of
Newark, New Jersey and Firemen's Insurance
Company of Newark, New Jersey

By: _____
        Catherine Glover
Its Senior Vice President, Claims

By:     /s/ Jeffrey A. Dove
Jeffrey A. Dove
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York  13202
Telephone: (315) 413-7112
jdove@barclaydamon.com

Mark D. Plevin
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California  94111
Telephone:  (415) 986-2800
mplevin@crowell.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
105 West Madison Street, Suite 2300
Chicago, Illinois  60602
Telephone:  (312) 282-5282
dchristian@dca.law

Miranda H. Turner
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 624-2500
mturner@crowell.com

*Attorneys for The Continental Insurance Company, successor
by merger to Commercial Insurance Company of Newark,
New Jersey and Firemen's Insurance Company of Newark,
New Jersey*

907479347.02

<u>**Exhibit A**</u>

Participating Parties

<u>Parishes</u>

1.      Sacred Heart Cathedral, Rochester
2.      \*\*Annunciation, Rochester
3.      \*\*St. Ambrose, Rochester
4.      \*\*St. Andrew, Rochester
5.      \*\*St. Anthony of Padua, Rochester
6.      \*\*St. Augustine, Rochester
7.      St. Anne, Rochester
8.      Blessed Sacrament, Rochester
9.      \*\*Corpus Christi, Rochester
10.     St. Boniface, Rochester
11.     \*\*St. Bridget, Rochester
12.     \*\* St. Cecilia, Rochester
13.     St. Charles Borromeo, Rochester
14.     \*\*Christ the King, Rochester
15.     \*\*Church of the Annunciation, Rochester
16.     Emmanuel Church of the Deaf, Rochester
17.     \*\*St. Feehan, Rochester
18.     \*\*St. Francis of Assisi, Rochester
19.     St. Frances Xavier Cabrini, Rochester
20.     St. George, Rochester
21.     \*\*Guardian Angels, Rochester
22.     \*\*St. Helen, Rochester
23.     Holy Apostles, Rochester
24.     Holy Cross, Rochester
25.     \*\*Holy Ghost, Rochester
26.     \*\*Holy Family, Rochester
27.     \*\*Holy Name of Jesus, Rochester
28.     \*\*Holy Redeemer, Rochester
29.     St. Francis Xavier, Rochester
30.     \*\*Holy Redeemer/St. Francis Xavier, Rochester
31.     \*\*Holy Rosary, Rochester
32.     \*\*Immaculate Conception, Rochester
33.     Immaculate Conception/St. Bridget, Rochester
34.     \*\*St. James, Rochester
35.     \*\*St. John the Evangelist, Rochester
36.     St. John the Evangelist, Rochester
37.     \*\*St. Joseph, Rochester
38.     Kateri Tekakwitha Roman Catholic, Rochester
39.     St. Lawrence, Rochester
40.     \*\*St. Lucy, Rochester
41.     \*\*Light of Christ Roman Catholic Parish, Rochester

42. **St. Margaret Mary, Rochester
43. St. Mark, Rochester
44. St. Mary, Rochester
45. **St. Michael, Rochester
46. St. Monica, Rochester
47. **Our Lady of the Americas, Rochester
48. **Our Lady of Good Counsel, Rochester
49. Our Lady of Lourdes, Rochester
50. **Our Lady of Mount Carmel, Rochester
51. **Our Lady of Mercy, Rochester
52. **Our Lady of Perpetual Help, Rochester
53. **Our Lady of Sorrows, Rochester
54. Our Lady of Victory-St. Joseph, Rochester
55. Our Lady Queen of Peace, Rochester
56. Our Mother of Sorrows, Rochester
57. The Parish of the Holy Family, Rochester
58. Peace of Christ, Rochester
59. **St. Patrick, Rochester
60. **Sts Peter & Paul, Rochester
61. St. Pius Tenth, Rochester
62. **St. Salome, Rochester
63. St. Stanislaus, Rochester
64. St. Theodore, Rochester
65. **St. Theresa of the Infant Jesus, Rochester
66. St. Thomas More, Rochester
67. **St. Thomas the Apostle, Rochester
68. **St. Catherine of Siena, Addison
69. Saints Isidore and Maria Torribia, Addison
70. **St. Margaret Mary, Appalachin
71. **St. Mathias, Atlanta
72. St. Alphonsus, Auburn
73. **St. Aloysius, Auburn
74. **St. Francis of Assisi, Auburn
75. Holy Family, Auburn
76. **St. Hyacinth, Auburn
77. St. Mary, Auburn
78. Saints Mary and Martha, Auburn
79. Sacred Heart, Auburn
80. Good Shephard Catholic Community, Aurora
81. St. Agnes, Avon
82. St. John Vianney, Bath
83. **St. Mary, Bath
84. **St. Stanislaus, Bradford
85. Nativity of the Blessed Virgin Mary, Brockport
86. **St. Columba, Caledonia
87. The Parish of Saint Martin De Porres, Caledonia
88. **Our Lady of Lebanon, Canandaigua

89. St. Benedict, Canandaigua
90. **St. Mary, Canandaigua
91. **St. Joachim, Canisteo
92. **St. William, Cameron Mills
93. **St. Joseph, Campbell
94. **St. Patrick, Cato
95. **St. Francis of Assisi, Catatonk
96. **St. Joseph, Cayuga
97. **St. Vincent De Paul, Churchville
98. **St. Felix, Clifton Springs
99. **St. Felix/St. Francis Parish Cluster, Clifton Springs
100. St. Peter's Roman Catholic Parish, Clifton Springs
101. **St. John the Evangelist, Clyde
102. St. Joseph the Worker, Clyde
103. **St. Pius V, Cohocton
104. **St. William, Conesus
105. All Saints, Corning
106. **Santa Maria de Mercede, Cuylerville
107. **St. Mary, Dansville
108. **St. Patrick, Dansville
109. **St. Andrew, Dundee
110. Holy Cross, Dryden
111. **St. Bridget, East Bloomfield
112. St. Jerome, East Rochester
113. **St. Charles Borromeo, Elmira
114. **St. Anthony, Elmira
115. **Blessed Sacrament, Elmira
116. **St. Casimir, Elmira
117. **St. Cecilia, Elmira
118. **Christ the Redeemer, Elmira
119. **St. John the Baptist, Elmira
120. **St. Mary, Elmira
121. **Our Lady of Lourdes, Elmira
122. The Parish of the Most Holy Name of Jesus, Elmira
123. **St. Patrick, Elmira
124. **Sts. Peter and Paul Catholic Parish, Elmira
125. Church of the Assumption, Fairport
126. Church of the Resurrection, Fairport
127. St. John of Rochester, Fairport
128. St. Luke the Evangelist, Geneseo
129. **St. Mary, Geneseo
130. **St. Francis De Sales, Geneva
131. Our Lady of Peace, Geneva
132. **St. Stephen, Geneva
133. **St. Hillary, Genoa
134. **St. Mary, Greenwood

135.   St. Anthony, Groton
136.   **Holy Name of Jesus, Groveland
137.   St. Elizabeth Ann Seton, Hamlin
138.   **St. Gabriel, Hammondsport
139.   **Church of the Good Shepherd, Henrietta
140.   St. Marianne Cope, Henrietta
141.   St. Leo, Hilton
142.   St. Paul of the Cross, Honeoye Falls
143.   St. Mary, Our Lady of the Hills, Honeoye
144.   **St. Ann, Hornell
145.   Our Lady of the Valley, Hornell
146.   **St. Ignatius Loyola, Hornell
147.   St. Mary Our Mother, Horseheads
148.   **St. Francis Solanus, Interlaken
149.   St. Catherine of Siena, Ithaca
150.   Immaculate Conception, Ithaca
151.   **Our Lady of the Lake, King Ferry
152.   All Saints, Lansing
153.   **St. Thomas Aquinas, Leicester
154.   St. Rose, Lima
155.   St. Matthew Catholic Church Society, Livonia
156.   **St. Joseph, Livonia
157.   **St. Michael, Livonia Center
158.   **St. Michael, Lyons
159.   **St. Patrick, Macedon
160.   **St. Gregory, Marion
161.   **St. Patrick, McLean
162.   St. Catherine of Siena, Mendon
163.   **St. Michael, Montezuma
164.   **St. Patrick, Moravia
165.   **Church of the Assumption, Mount Morris
166.   **St. Patrick, Mount Morris
167.   **St. Patrick, Mumford
168.   **St. Januarius, Naples
169.   **St. John the Evangelist, Newark Valley
170.   St. Michael, Newark
171.   St. Christopher, North Chili
172.   **Holy Angels, Nunda
173.   St. Benedict, Odessa
174.   **St. Mary of the Lake, Ontario
175.   St. Maximillian Kolbe, Ontario
176.   **Holy Cross, Ovid
177.   The Parish of Mary, Mother of Mercy, Interlaken
178.   St. Ann, Owasco
179.   Blessed Trinity, Owego
180.   St. Patrick, Owego
181.   **Immaculate Heart of Mary, Painted Post

182. **St. Anne, Palmyra
183. The Parish of St. Katharine Drexel, Palmyra
184. Holy Spirit, Webster
185. St. Joseph, Penfield
186. **St. Michael, Penn Yan
187. Our Lady of Lakes Catholic Community, Penn Yan
188. **Sacred Heart of Jesus, Perkinsville
189. **St. Francis, Phelps
190. Church of the Transfiguration, Pittsford
191. St. Louis, Pittsford
192. **St. Raphael, Piffard
193. **St. Patrick, Prattsburg
194. **St. Thomas the Apostle, Red Creek
195. **St, Lucy, Retsof
196. **St. Mary, Rexville
197. **St. Joseph, Rush
198. **St. Mary, Rushville
199. **St. Patrick, Savannah
200. **St. Bernard, Scipio Center
201. **St. Mary of the Assumption, Scottsville
202. **St. Patrick, Seneca Falls
203. **St. Dominic, Shortsville
204. **Epiphany, Sodus
205. **St. Rose of Lima, Sodus Point
206. St. John the Evangelist, Spencerport
207. **St. Theresa, Stanley
208. **St. James the Apostle, Trumansburg
209. **St. Michael's, Union Springs
210. **St. Pius the Tenth, Van Etten
211. St. Patrick, Victor
212. St. Francis and St. Clare, Waterloo
213. **St. Mary, Waterloo
214. St. Mary of the Lake, Watkins Glen
215. **St. James, Waverly
216. Holy Family Catholic Community, Wayland
217. **St. Joseph, Wayland
218. Holy Trinity, Webster
219. St. Paul, Webster
220. St. Rita, Webster
221. **St. John, Weedsport
222. **St. Joseph, Cato
223. Our Lady of the Snow, Weedsport
224. **St. Joseph, West Bloomfield
225. Catholic Community of Blessed Trinity, Wolcott
226. **St. Mary Magdalene, Wolcott
227. ** Most Precious Blood Church
228. The Cathedral Community Church of Rochester

<u>Other Entities</u>
1. Catholic Charities of the Diocese of Rochester, Inc.
2. Rochester Catholic Press Association, Inc. ("Catholic Courier")
3. Catholic Youth Organization of Catholic Charities of the Diocese of Rochester
4. Providence Housing Development Corporation
5. Camp Stella Maris of Livonia, N.Y.
6. St. Bernards School of Theology and Ministry
7. Villa of Hope (f/k/a St. Joseph's Villa)
8. De Paul Community Services (f/k/a De Paul Mental Health Clinic)

<u>Schools</u>
1. All Saints in Corning
2. Holy Family in Elmira
3. St. Joseph in Auburn
4. St. Francis/St. Stephen in Geneva
5. De Sales High School in Geneva

** Indicates a parish that is closed, has merged with another or is otherwise inactive at this time.