# EXHIBIT A

Redline of Sixth Amended Chapter 11 Plan

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In re:

     THE DIOCESE OF ROCHESTER,          Case No. 19-20905

                        Debtor.     Chapter 11 Case

---

### ~~FIFTH~~SIXTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR THE DIOCESE OF ROCHESTER

### DATED ~~APRIL 24~~DECEMBER 12, 2024

**BOND, SCHOENECK & KING, PLLC**
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000
Facsimile: (315) 218-8100
Email: donatos@bsk.com
sullivc@bsk.com
walterg@bsk.com

**BLANK ROME LLP**
James R. Murray, Esq.
James Carter, Esq.
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-3409
Email: jim.murray@blankrome.com
       james.carter@blankrome.com

*Counsel to The Diocese of Rochester*

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 2 of 113

**PACHULSKI STANG ZIEHL & JONES, LLP**
James I. Stang, Esq.
Ilan D. Scharf, Esq.
Iain A. W. Nasatir, Esq.
Brittany M. Michael, Esq.
780 Third Avenue, 34th Floor
New York, New York 10017-2024
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
         ischarf@pszjlaw.com
         inasatir@pszjlaw.com
         bmichael@pszjlaw.com

**BURNS BAIR LLP**
Timothy W. Burns, Esq. (*pro hac vice*)
Jesse J. Bair, Esq. (*pro hac vice*)
10 E. Doty St., Suite 600
Madison, Wisconsin 53703
Telephone: 608-286-2808
Email: tburns@burnsbair.com
             jbair@burnsbair.com

*Counsel to the Official Committee
of Unsecured Creditors*

# ~~Table of Contents~~TABLE OF CONTENTS

**Page**

**SECTION 1.**      **DEFINITIONS AND INTERPRETATION** ............................................. ~~1~~3

     1.1    Definitions. ................................................................................................. ~~1~~3
     1.2    Interpretation:  Application of Definitions and Rules of Construction. ....... ~~20~~25
     1.3    Exhibits. ...................................................................................................... ~~20~~26
     1.4    Time Periods. .............................................................................................. ~~21~~26

**SECTION 2.**      **TREATMENT OF CLAIMS** ......................................................................... ~~21~~26

     2.1    Unclassified Claims. ................................................................................... ~~21~~26
     2.2    Classification and Specification of Treatment of Claims. .......................... ~~23~~28
     2.3    Classes of Claims. ...................................................................................... ~~24~~29

**SECTION 3.**      **ACCEPTANCE OR REJECTION OF THE PLAN** .................................... ~~33~~38

     3.1    Impaired Classes Vote. ............................................................................... ~~33~~38
     3.2    Presumed Acceptance of the Plan. ............................................................. ~~33~~39
     3.3    Presumed Rejection of the Plan. ................................................................ ~~33~~39
     3.4    Voting Classes. ........................................................................................... ~~33~~39
     3.5    Modification of Treatment of Claims. ....................................................... ~~33~~39
     3.6    Elimination of Vacant Classes. .................................................................. ~~33~~39

**SECTION 4.**      **ABUSE CLAIMS.** ...................................................................................... ~~34~~39

     4.1    Assessment of Abuse Claims. .................................................................... ~~34~~39
     4.2    Legal Effect of Estimation of Claims and Distributions Under the
            Allocation Protocol. ................................................................................... ~~34~~40
     4.3    Insurance Settlements. ................................................................................ ~~35~~40
     **4.4**    Release and Discharge of Abuse Claims. ................................................... 41
     ~~4.4~~**4.5**    Distributions to Abuse Claimants. .............................................................. ~~35~~41
     ~~4.5~~**4.6**    Litigation of Consenting Abuse Claims Against Non-Settling Insurers. ... ~~35~~44
     ~~4.6~~**4.7**    Dismissal of Pending Litigation. ................................................................ ~~38~~47
     ~~4.7~~**4.8**    Claim Withdrawal. ..................................................................................... ~~38~~47
     ~~4.8~~**4.9**    Medicare Procedures. ................................................................................. ~~38~~47

**SECTION 5.**      **SETTLING INSURERS** ............................................................................. ~~39~~48

     5.1    Insurance Settlement Agreements. ............................................................. ~~39~~48
     5.2    Sale Free and Clear of Interests of Settling Insurer Policies. .................... ~~39~~48
     5.3    Resolution of Claims Involving Settling Insurers. .................................... ~~40~~49
     5.4    The Settling Insurer's Payments. ............................................................... ~~40~~49
     5.5    Further Assurances; Non-Material Modifications. .................................... ~~40~~49
     5.6    Waiver/Consent. ......................................................................................... ~~40~~49
     5.7    Timing. ....................................................................................................... ~~41~~50

**SECTION 6.**      **MATTERS RELATING TO NON-SETTLING INSURERS** ..................... ~~41~~50

     6.1    Preservation of Rights and Obligations. .................................................... ~~41~~50
     6.2    Estimations/Assessments of Abuse Claims Are Not Binding. ................... ~~41~~50

~~17683006.4~~18335512.v7

| | | |
|---|---|---|
| 6.3 | Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage. | ~~42~~51 |
| 6.4 | Trust Powers With Respect to Abuse Claims and Non-Settling Insurers. | ~~42~~51 |
| 6.5 | Insurance Coverage Adversary Proceeding. | ~~43~~52 |

**SECTION 7.     MEANS FOR IMPLEMENTATION OF PLAN** ~~43~~52

| | | |
|---|---|---|
| 7.1 | Plan Implementation. | ~~43~~52 |
| 7.2 | Corporate Action. | ~~43~~52 |
| 7.3 | Payments Effective Upon Tender. | ~~44~~53 |
| 7.4 | Agreements, Instruments, and Documents. | ~~44~~53 |
| 7.5 | Continuation of Insurance Policies. | ~~44~~53 |
| 7.6 | Bar Date for Professional Fee Claims. | ~~44~~54 |
| 7.7 | Bar Date for Other Administrative Claims. | ~~45~~54 |
| 7.8 | Exit Financing. | ~~45~~54 |

**SECTION 8.     THE TRUST** ~~45~~54

| | | |
|---|---|---|
| 8.1 | Establishment of Trust. | ~~45~~54 |
| 8.2 | Funding of the Trust. | ~~45~~55 |
| 8.3 | Vesting of Trust Assets. | ~~47~~56 |
| 8.4 | Non-Monetary Commitments. | ~~47~~57 |
| 8.5 | Appointment of the Trustee. | ~~47~~57 |
| 8.6 | Trust Advisory Committee. | ~~47~~57 |
| 8.7 | Rights and Responsibilities of Trustee. | ~~48~~57 |
| **8.8** | **Unknown Claimant Representative.** | **58** |
| ~~8.8~~**8.9** | Trust Pursuit of Insurance Claims. | ~~48~~58 |
| ~~8.9~~**8.10** | Investment Powers; Permitted Cash Expenditures. | ~~52~~62 |
| ~~8.10~~**8.11** | Tax Matters. | ~~52~~62 |
| ~~8.11~~**8.12** | DOR Entities' Post-Effective Date Costs Procedures. | ~~52~~62 |
| ~~8.12     Reserved~~**8.13** | **Participating Party Defense Costs.** | ~~54~~64 |
| ~~8.13~~**8.14** | No Recourse Against Trustee. | ~~54~~64 |
| ~~8.14~~**8.15** | Indemnification by Trust. | ~~54~~65 |
| ~~8.15~~**8.16** | Trust Liability. | ~~55~~65 |
| ~~8.16~~**8.17** | Termination. | ~~55~~65 |

**SECTION 9.     GENERAL CLAIMS ADMINISTRATION** ~~55~~65

| | | |
|---|---|---|
| 9.1 | Objections ~~To~~to Non-Abuse Claims and Non-Participating Abuse Claims. | ~~55~~65 |
| 9.2 | Determination of Claims. | ~~55~~66 |
| 9.3 | No Distributions Pending Allowance. | ~~56~~66 |
| 9.4 | Claim Estimation. | ~~56~~66 |
| 9.5 | Treatment of Contingent Claims. | ~~56~~67 |
| 9.6 | Controversy Concerning Impairment. | ~~56~~67 |
| 9.7 | Treatment of Executory Contracts and Unexpired Leases. | ~~57~~67 |

**SECTION 10.     PROVISIONS GOVERNING DISTRIBUTIONS** ~~57~~67

| | | |
|---|---|---|
| 10.1 | Disbursing Agents. | ~~57~~67 |
| 10.2 | Manner of Payment. | ~~57~~68 |
| 10.3 | Distribution Only to Holders of Allowed Claims. | ~~57~~68 |

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 5 of 113

| | | |
|---|---|---|
| **10.4** | Disputed Claim Reserve. | ~~58~~68 |
| **10.5** | Transmittal of Distributions. | ~~58~~68 |
| **10.6** | Timing of Distributions. | ~~58~~69 |
| **10.7** | Time Bar to Check Payments. | ~~59~~69 |
| **10.8** | No Professional Fees or Expenses. | ~~59~~70 |
| **10.9** | No Interest on Claims. | ~~59~~70 |
| **10.10** | Saturday, Sunday or Holiday. | ~~59~~70 |
| **10.11** | Withholding Taxes. | ~~60~~70 |
| **10.12** | Setoffs and Recoupment. | ~~60~~70 |
| **10.13** | No *De Minimis* Distributions. | ~~60~~70 |
| **10.14** | Prepayment. | ~~60~~71 |
| **SECTION 11.** | **EFFECTIVE DATE** | ~~60~~71 |
| **11.1** | Conditions Precedent to Effective Date. | ~~60~~71 |
| **11.2** | Waiver of Conditions. | ~~62~~73 |
| **11.3** | ~~Notice~~Occurrence of Effective Date. | ~~62~~73 |
| **11.4** | Notice of Effective Date. | 73 |
| ~~11.4~~**11.5** | Effect of Non-Occurrence of Condition. | ~~62~~73 |
| **SECTION 12.** | **EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE** | ~~63~~74 |
| **12.1** | General Injunction and Discharge. | ~~63~~74 |
| **12.2** | Injunction and Discharge of Abuse Claims and Inbound Contribution Claims. | ~~64~~75 |
| **12.3** | Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties. | ~~66~~78 |
| **12.4** | Supplemental Settling Insurer Injunction. | ~~68~~80 |
| **12.5** | Litigation/Settlement ~~Between a Participating Party or Abuse Claimant and Non-Settling Insurers~~of Certain Claims. | ~~69~~81 |
| **12.6** | Certain Litigation Matters. | ~~72~~84 |
| **12.7** | Injunction Against Interference with Plan. | ~~72~~84 |
| **12.8** | Release by Holders of Channeled Claims. | ~~72~~84 |
| **12.9** | Mutual Releases. | ~~73~~85 |
| **12.10** | Exculpation; Limitation of Liability. | ~~74~~85 |
| **12.11** | Injunctions in Full Force and Effect. | ~~74~~86 |
| **12.12** | Injunctions and Releases Integral. | ~~74~~86 |
| **12.13** | Timing. | ~~75~~86 |
| **12.14** | Excluded Parties and Non-Settling Insurers. | ~~75~~87 |
| **12.15** | Title to and Vesting of Assets. | ~~75~~87 |
| **12.16** | Continued Corporate Existence; No Successor Liability. | ~~75~~87 |
| **12.17** | Identity of Trustees. | ~~76~~88 |
| **12.18** | Authority to Effectuate Plan. | ~~76~~88 |
| **12.19** | Binding Effect. | ~~77~~88 |
| **12.20** | Dissolution of Committee. | ~~77~~89 |

~~17683006.4~~18335512.v7

**SECTION 13.**      **[RESERVED]** .................................................................... ~~77~~89

**SECTION 14.**      **RETENTION OF JURISDICTION** ...................................... ~~77~~89

   **14.1**   By the Bankruptcy Court. ......................................................... ~~77~~89
   **14.2**   By the District Court. ............................................................... ~~79~~91
   **14.3**   Actions to Enforce the Plan. ..................................................... ~~79~~91
   **14.4**   Case Closure. ........................................................................... ~~79~~91

**SECTION 15.**      **MISCELLANEOUS PROVISIONS** ...................................... ~~79~~91

   **15.1**   Amendment or Modification of this Plan. ................................ ~~79~~91
   **15.2**   Revocation or Withdrawal of this Plan. ................................... ~~80~~92
   **15.3**   Reports. .................................................................................... ~~80~~92
   **15.4**   Notices. .................................................................................... ~~80~~92
   **15.5**   Severability. ............................................................................. ~~81~~93
   **15.6**   Validity and Enforceability. ..................................................... ~~81~~93
   **15.7**   Controlling Documents. ............................................................ ~~81~~93
   **15.8**   Filing of Additional Documents. .............................................. ~~81~~94
   **15.9**   Direction to a Party. ................................................................. ~~82~~94
   **15.10**  Certain Actions. ....................................................................... ~~82~~94
   **15.11**  Preservation of Tort Defendants' Rights. ................................. ~~82~~94
   **15.12**  Waiver of Subordination. ......................................................... ~~83~~95
   **15.13**  Reservation of Rights. .............................................................. ~~83~~95
   **15.14**  Plan as Settlement Communication. ......................................... ~~83~~95
   **15.15**  Governing Law. ........................................................................ ~~83~~95
   **15.16**  Headings. .................................................................................. ~~83~~96
   **15.17**  No Admissions. ........................................................................ ~~84~~96

**PLAN EXHIBITS**

Exhibit A      List of Participating Parties

**PLAN SUPPLEMENT EXHIBITS**

Exhibit 1      Allocation Protocol
~~Exhibit 2~~      ~~Reserved~~
~~Exhibit 3~~      ~~Reserved~~
Exhibit ~~4~~2      <u>Consenting</u> Abuse Claim Release Agreement
<u>Exhibit 3</u>      <u>Non-Participating Abuse Claim Release Agreement</u>
Exhibit ~~5~~4      Trust Agreement
~~Exhibit 6~~      ~~Reserved~~
Exhibit ~~7~~5      Non-Monetary Commitments
Exhibit ~~8~~6      List of Assumed Contracts and Leases
Exhibit ~~9~~7      Litigation Claimant Agreement
<u>Exhibit 8</u>      <u>Non-Participating Litigation Claimant Agreement</u>
Exhibit ~~10~~9      LMI Settlement Agreement
Exhibit ~~11~~10      Underwriters Settlement Agreement
Exhibit ~~12~~11      First State Settlement Agreement

~~17683006.4~~18335512.v7

Exhibit ~~13~~12    Interstate Settlement Agreement

~~17683006.4~~18335512.v7

*[Different first page setting changed from off in original to on in modified.].*
*[Different first page link-to-previous setting changed from on in original to off in modified.].*

## INTRODUCTION

The Diocese of Rochester, the above-captioned debtor and debtor in possession (the "Diocese"), and the Official Committee of Unsecured Creditors (the "Committee"), jointly propose the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to chapter 11 of title 11 of the United States Code. The Diocese and the Committee are the proponents of this Plan (the "Plan Proponents") and the accompanying Disclosure Statement (the "Disclosure Statement") within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for the financial restructuring of the Diocese and the settlement of all, or substantially all, Claims against the Diocese, including, without limitation, the settlement of all Abuse Claims against the Diocese and the Participating Parties.

As set forth in more detail below, the Plan provides for payment in full of all Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Professional Fee Claims, and U.S. Trustee Fee Claims, leaves unimpaired any Allowed Secured Claims or Pass-Through claims, provides for deferred payments equal to the full Allowed amount of any General Unsecured Claims, and establishes the Abuse Claims Settlement Fund to be held by the Trust to compensate holders of Abuse Claims. Inbound Contribution Claims against the Diocese are disallowed and extinguished pursuant to the Plan.

The Plan's treatment of Abuse Claims represents the culmination of nearly ~~4~~5 years of negotiation between the Diocese and the Committee in its capacity as an advocate on behalf of all Abuse Claimants and has been approved by the Committee in consultation with attorneys who collectively represent approximately seventy percent (70%) of all Abuse Claimants who have asserted Abuse Claims against the Diocese ("State Court Counsel").

The Plan provides that funding for the Trust and the Abuse Claims Settlement Fund will be provided from, among other potential sources of recovery, a cash contribution by the Diocese and other Participating Parties in the aggregate amount of $55 million, and insurance settlement payments paid pursuant to Insurance Settlement Agreements with various Settling Insurers. As of the date of this Plan, the Diocese and the Committee have agreed to accept a total of $71.35 million in settlement payments from four Settling Insurers, LMI, Underwriters, Interstate, and First State, in exchange for entering into Insurance Settlement Agreements with respect to their respective Insurance Policies.

To the extent the Diocese and the Committee can reach agreement on an Insurance Settlement Agreement or other ~~settlement~~ terms ~~with any~~of settlement with respect to Insurance Claims against Non-Settling Insurers prior to confirmation of the Plan, the Plan provides that such Non-Settling Insurers may become Settling Insurers and for settlement proceeds resulting therefrom to be used to further supplement the ~~funds available to the Trust~~Abuse Claims Settlement Fund. To the extent no settlement is achieved, the Plan provides for the assignment of ~~all~~ Insurance Claims held by the Diocese or other Participating Parties to the Trust, and

*[Different first page setting changed from off in original to on in modified.].*
*[Different first page link-to-previous setting changed from on in original to off in modified.].*
18335512.v4

~~16301227.5~~18335512.v7
17683006.3
17683006.4

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 9 of 113

establishes a framework for post-confirmation litigation of Insurance Claims and Litigation Claims seeking recovery from Non-Settling Insurers. The Committee has previously rejected a settlement offer from Non-Settling Insurer CNA in the amount of $63.5 million, and Abuse Claimants overwhelmingly voted to reject a $75 million settlement offer made in connection with a chapter 11 plan proposed by CNA. The Committee, in consultation with State Court Counsel representing approximately seventy percent (70%) of all Abuse Claimants, has acknowledged and accepted the risk inherent in pursuing post-confirmation recovery from Non-Settling Insurers in the absence of a settlement.

All holders of Claims against the Diocese are encouraged to read this Plan and the Disclosure Statement and other Plan Documents in their entirety before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains discussions regarding the Diocese, events prior to and during the Chapter 11 Case, and a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Plan Documents, once Filed, can be obtained for free at https://case.stretto.com/rochesterdiocese, and shall also be available for review in the Office of the Clerk of the Bankruptcy Court during the Bankruptcy Court's normal hours of operation. Holders of Claims may also obtain copies of the Plan Documents by contacting counsel for the Diocese in writing at the address on the cover page of the Plan. Each Plan Document is an integral part of the Plan and is hereby incorporated by reference and made a part of the Plan.

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 10 of 113

**SECTION 1.  DEFINITIONS AND INTERPRETATION**

**1.1  Definitions.**

The following terms used herein shall have the respective meanings defined below:

*1.1.1  **Abuse** means any actual or alleged:*

a. sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, hebephilia, ephebophilia, lascivious behavior, undue familiarity, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, or any other sexual misconduct; or

b. non-sexual assault, battery, corporal punishment and other non-sexual acts of physical, psychological, mental or emotional abuse, humiliation or intimidation, or any other non-sexual tortious behavior.

*1.1.2  **Abuse Action** means a lawsuit asserting an Abuse Claim against the Diocese or any Participating Party.*

*1.1.3  **Abuse Claim** means any Claim that has been asserted, or could be asserted, against the Diocese or any Participating Party, arising in whole or in part, directly or indirectly from Abuse occurring prior to the Petition Date, including seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, fraud, fraud in the inducement, misrepresentation, concealment, or unfair practice, or any other theory based on any acts or failures to act by the Diocese or any Participating Party, or any other ~~person or entity~~Person for whose acts or failures to act the Diocese or any Participating Party is or was allegedly responsible, including, without limitation, all Adult Abuse Claims, Child Abuse Claims, and ~~Future~~Unknown Abuse Claims~~,~~ against the Diocese or any Participating Party, whether or not such Claims also involve the conduct of Joint Tortfeasors and whether or not such Claims arise under, or were revived pursuant to, the CVA or the ASA, and whether or not a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim.*

*1.1.4  **Abuse Claim Ballot** means the ballot approved by the Court for Abuse Claimants to vote to accept or reject the Plan.*

*1.1.5  ~~1.1.4~~ **Abuse Claim Discharge Date** means the date on which the Diocese Discharge occurs with respect to each Abuse Claim, as determined in accordance with the provisions of Section 12.2.3 of the Plan.*

*1.1.5  **Abuse Claim Release Agreement** means ~~an agreement releasing the Diocese and any Participating Party consistent with the terms of this Plan to be executed by Abuse Claimants as a condition of receiving a Distribution pursuant to this Plan, substantially in~~*

3

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,  Doc 2862-1,  Filed 12/12/24,  Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 11 of 113

~~the form attached to the Plan Supplement as **Exhibit 4**~~, with respect to any Consenting Abuse Claim or Consenting Abuse Claimant, a Consenting Abuse Claim Release Agreement and, with respect to any Non-Participating Abuse Claim or Non-Participating Abuse Claimant, a Non-Participating Abuse Claim Release Agreement.

      *1.1.6*      ***Abuse Claimant*** means the holder of an Abuse Claim.

      *1.1.7*      ***Abuse Claims Last Filing Date*** means a date that is five years after the Effective Date.

      *1.1.8*      ***Abuse Claims Reviewer*** means the person or entity, including the designee of such person or entity, who will assess Abuse Claims under the Allocation Protocol. Roger L. Kramer shall be the Abuse Claims Reviewer unless the Bankruptcy Court declines to approve his appointment or hereafter appoints a replacement.

      *1.1.9*      ***Abuse Claims Settlement Fund*** means a fund established by the Trust ~~to pay~~from which Trust Distributions will be made to Abuse Claimants on account of their Abuse Claims.

      *1.1.10*      ***Action*** means any lawsuit, proceeding, or other action in a court, or any arbitration.

      *1.1.11*      ***Administrative Claim*** means a Claim against the Diocese for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including, but not limited to, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Diocese; (b) Professional Fee Claims; (c) any Claim specified in section 503(b)(9) of the Bankruptcy Code; ~~and~~ (d) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code; and (e) any Claim arising from or related to any Abuse alleged to have first occurred after the Petition Date but prior to the Effective Date, unless the Diocese elects to treat such Claim as a Pass-Through Claim.

      *1.1.12*      ***Administrative Claims Bar Date*** means the deadline for filing requests for payment of Administrative Claims, as follows: (~~a~~i) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (~~b~~ii) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

      *1.1.13*      ***Adult Abuse Claim*** means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was 18 years of age or older.

      *1.1.14*      ***Agent*** means any past and present employee; officer; director; managing agent or other agent; shareholder; principal; teacher; staff; member; board member; administrator; priest; deacon; brother, sister, nun, or other member of a religious order; clergy; Person bound by a monastic vow; volunteer; attorney; claim handling administrator; and representatives of a Person, in each case in their capacities as such.

**1.1.15** **Alleged Insured** has the meaning ascribed to such term in Section 12.5.2.b. of the Plan.

**1.1.15** **Allocation Protocol** or **Abuse Claim** **Allocation Protocol** means the protocol for allocation of the Abuse Claims Settlement Fund developed by the Committee, attached to the Plan Supplement as **Exhibit 1**, and incorporated into the Trust Agreement.

**1.1.16** **Allowed** means, with respect to any Non-Abuse Claim or any portion thereof, a Claim or portion thereof: (a) that has been allowed by a Final Order; (b) which is included on the Diocese's Schedules as not disputed, not contingent and not unliquidated, for which no proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline; (c) as to which a proof of claim in a liquidated and non-contingent amount has been timely Filed and as to which no objection has been Filed by the Claims Objection Deadline or any objection has been settled or withdrawn, or has been denied by a Final Order; or (d) that is expressly allowed by the terms of this Plan. For the avoidance of doubt, it is expressly understood that Abuse Claims shall not be deemed ~~allowed or disallowed~~Allowed or Disallowed by operation of the Plan, except that all Non-Participating PP Abuse Claims shall be Disallowed in their entirety.

**1.1.17** **Diocese** **Appeal** means the appeal of the Bankruptcy Court's *Decision and Order Denying Motion of Diocese Seeking to Enjoin the Prosecution of State Court Actions Against Independent Catholic Corporations and Dismissing Complaint* currently pending before the District Court in *The Diocese of Rochester v. AB 100 Doe, et al.*, Case No. 22-cv-06262-CJS.

**1.1.18** **ASA** means the New York Adult Survivors Act, which was codified in the New York Civil Practice Law & Rules 214-j. The Adult Survivors Act created a one-year window from November 24, 2022 to November 23, 2023 for the revival of previously time-barred civil claims concerning Abuse that occurred after the Claimant reached eighteen years of age.

**1.1.19** **Available CNA Policy Limits** means, with respect to any Abuse Claim, the combined per-occurrence liability limits for all policies of insurance issued by CNA which provide coverage for the period of time when the Abuse is alleged to have occurred, calculated on the basis of one occurrence for each act of alleged Abuse.

**1.1.20** **Avoidance Action** means any (i) state law fraudulent transfer claim; (ii) claim pursuant to sections 502(d), 541-545, 547, 548, 549, 550, 551, 552(b), or 553 of the Bankruptcy Code against any Person; and (iii) claim pursuant to section 510 N.Y. Business Corporation Law or any law of similar effect.

**1.1.21** **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter applicable to the Chapter 11 Case.

**1.1.22** **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of New York (Rochester Division) and any Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom, or any successor thereto that may be

5

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 13 of 113

established by any act of Congress, or otherwise, and which has competent jurisdiction over the Chapter 11 Case or the Plan.

       *1.1.23*     ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as amended.

       *1.1.24*     ***Bar Date*** means August 13, 2020 at 11:59 p.m. (Eastern time), the deadline by which proofs of claim forms for prepetition Claims, including Abuse Claims, were required to be Filed against the Diocese.

       *1.1.25*     ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday", as defined in Bankruptcy Rule 9006(a), any day on which commercial banks are authorized or required by law to close in Rochester, New York, and any day on which the Diocese's business offices are closed in observance of a religious holiday.

       *1.1.26*     ***Cash*** means cash and cash equivalents including, without limitation, checks and wire transfers.

       *1.1.27*     ***Channeled Claim*** means ~~an~~any Abuse Claim, Inbound Contribution Claim, Medicare Claim, Extra-Contractual Claim, or any other Claim against any Protected Party arising from or related in any way to an Abuse Claim, or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy.~~ A~~*, provided, however*, that "***Channeled Claims***" shall not include any Claim exempted from the injunctions set forth in Sections 12.2.1 and 12.3 of the Plan pursuant to Sections 12.2.2.a and 12.2.2.b of the Plan.  For the avoidance of doubt (i) a Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a claim on either such Person~~. For the avoidance of doubt and~~, and (ii) notwithstanding anything to the contrary herein, Channeled Claims do not include any Claims to the extent they are asserted against Excluded Parties or Non-Settling Insurers; *provided*, *however*, any Claims which assert liability against an Excluded Party or Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims to the extent they assert liability against such Protected Party.

       *1.1.28*     ***Channeling Injunction*** is the injunction contained in Section 12.3 of this Plan.

       *1.1.29*     ***Chapter 11*** means chapter 11 of the Bankruptcy Code.

       *1.1.30*     ***Chapter 11 Case*** means the above-captioned bankruptcy case.

6

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,  Doc 2862-1,  Filed 12/12/24,  Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 14 of 113

     *1.1.31*     ***Child Abuse Claim*** means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was less than 18 years of age.

     *1.1.32*     ***Claimant*** means any Person who alleges or alleged any Claim.

     *1.1.33*     ***Claim*** means a claim, as that term is defined in section 101(5) of the Bankruptcy Code, including, without limitation, any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or (to the extent it arises prior to the Effective Date) future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

     *1.1.34*     ***Claim Objections*** means all objections to Consenting Abuse Claims Filed prior to the Effective Date.

     *1.1.35*     ***Claims Objection Deadline*** means, (i) with respect to any Non-Abuse Claim, the date which is 90 days after the latter of the Effective Date and the date such Claim is Filed; (ii) with respect to any Non-Participating Abuse Claim other than an Unknown Abuse Claim, the first anniversary of the Effective Date; and (iii) with respect to any Unknown Abuse Claim which is a Non-Participating Abuse Claim, 180 days after such Claim is Filed or first submitted to the Reorganized Diocese.

     *1.1.35*     ***Class*** means a class or category of Claims as classified and described in Section 2 of this Plan.

     *1.1.36*     ***Class 1 Claim*** means the Secured Claim held by The Bank of Castile.

     *1.1.37*     ***Class 2 Claim*** means a Pass-Through Claim.

     *1.1.38*     ***Class 3 Claim*** means a General Unsecured Claim that is not an Abuse Claim.

7

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 15 of 113

      *1.1.39*     ***Class 4 Claim*** means an Abuse Claim.

      *1.1.40*     ***Class 5 Claim*** means an Inbound Contribution Claim.

      *1.1.41*     ***CMS*** means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

      *1.1.42*     ***CNA*** means Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey and Firemen's Insurance Company of Newark, New Jersey.

      *1.1.43*     ***Committee*** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the ~~U.S.~~United States Trustee pursuant to section 1102 of the Bankruptcy Code ~~in the Chapter 11 Case~~, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

      *1.1.44*     ***Confirmation Date*** means the date the Confirmation Order is entered by the clerk of the ~~Bankruptcy~~ Court on the ~~Bankruptcy~~ Court's docket.

      *1.1.45*     ***Confirmation Hearing*** means the hearing on confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

      *1.1.46*     ***Confirmation Order*** means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code.

      *1.1.47*     ***Consenting Abuse Claim*** means any and all Abuse Claims held by a Consenting Abuse Claimant.

      *1.1.48*     ***Consenting Abuse Claimant*** means any holder of an Abuse Claim who has consented to having their Claim(s) against the Participating Parties released and enjoined as contemplated in the Plan.  For purposes of the Plan, such consent shall be conclusively presumed if an Abuse Claimant (i) submits an Abuse Claim Ballot accepting the Plan or (ii) either does not vote or submits an Abuse Claim Ballot rejecting the Plan and fails to either (a) separately indicate on such Abuse Claim Ballot rejecting the Plan that consent to the releases and injunctions contemplated in the Plan is being withheld, or (b) File a timely written objection to confirmation of the Plan.  For avoidance of doubt, all Abuse Claimants shall be Consenting Abuse Claimants, excepting only those who have affirmatively elected to be treated as Non-Participating Abuse Claimants.

      *1.1.49*     ***Consenting Abuse Claim Release Agreement*** means an agreement, in the form attached to the Plan Supplement as **Exhibit 2**, releasing the Diocese and all Protected Parties from any and all Abuse Claims held by a Consenting Abuse Claimant in accordance with the terms of this Plan, to be executed by Consenting Abuse Claimants as a condition of receiving any Trust Distribution.

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 16 of 113

*1.1.50* ~~*1.1.47*~~ **Court** means the Bankruptcy Court, the District Court, or any court with appellate jurisdiction over any order entered by the Bankruptcy Court and/or the District Court in the ~~Bankruptcy~~Chapter 11 Case, as applicable.

~~*1.1.48* **Covered Claims** means all Claims against a Non-Settling Insurer under or relating to the policies issued by such Non-Settling Insurer.~~

*1.1.51* ~~*1.1.49*~~ **Creditor** means a holder of a Claim.

*1.1.52* ~~*1.1.50*~~ **CVA** means New York Child Victim's Act, which was codified in the New York Civil Practice Law & Rules 214-g. The CVA created a one-year window from August 14, 2019 to August 13, 2020 for the revival of previously time-barred civil claims related to childhood sexual abuse, which was subsequently extended to August 13, 2021.

*1.1.53* ~~*1.1.51*~~ **Diocese** means The Diocese of Rochester, the debtor and debtor in possession in this Chapter 11 Case.

*1.1.54* **Diocese Abuse Claims Settlement Sub-Fund** means that portion of the Abuse Claims Settlement Fund consisting solely of those funds remaining from the Diocese Cash Contribution after the Trust Reserve has been fully funded in accordance with Section 8.2.1 of the Plan. For avoidance of doubt, no portion of any of (i) the Participating Parties' Cash Contribution, (ii) the Settling Insurers' Cash Contribution, (iii) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement, (iv) any Insurance Claim Proceeds, (v) proceeds of Litigation Awards, (vi) proceeds of Outbound Contribution Claims, or (vii) any other proceeds which the Trust may obtain pursuant to the terms of the Plan shall be included in the Diocese Abuse Claim Settlement Sub-Fund.

*1.1.55* **Diocese Appeal** means the appeal of the Bankruptcy Court's *Decision and Order Denying Motion of Diocese Seeking to Enjoin the Prosecution of State Court Actions Against Independent Catholic Corporations and Dismissing Complaint* currently pending before the District Court in *The Diocese of Rochester v. AB 100 Doe, et al.*, Case No. 22-cv-06262-CJS.

*1.1.56* **Diocese Cash Contribution** means that portion of the DOR Entities' Cash Contribution funded by the Diocese, which shall be $25,000,000.

*1.1.57* ~~*1.1.52*~~ **Diocese Discharge** means the complete extinguishment of the liability of the Diocese in respect to any Claim or debt, as and to the extent further described in Section 12 of the Plan.

*1.1.58* ~~*1.1.53*~~ **Disallowed** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof: (a) has been disallowed by either a Final Order or pursuant to a settlement or stipulation between the Diocese and the holder of the Claim; or (b)(i) is valued on the Diocese's Schedules at zero dollars ($0) or denominated as contingent, disputed or unliquidated and (ii) as to which a ~~bar date~~Bar Date has been established but no proof of claim has been Filed or deemed timely Filed pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law.

*1.1.59* ~~*1.1.54*~~ ***Disputed*** means, with respect to a Claim, or any portion thereof, that such Claim or portion thereof is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, all Abuse Claims and Inbound Contribution Claims together with any Non-Abuse Claim that: (~~a~~i) is not included on the Diocese's Schedules or is reflected on the Schedules as being valued at zero dollars, or as contingent, unliquidated or disputed; or (~~b~~ii) is the subject of an objection Filed in the Bankruptcy Court that has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

*1.1.60* ~~*1.1.55*~~ ***Disclosure Statement*** means the Disclosure Statement to accompany this Plan as altered, modified or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

*1.1.61* ~~*1.1.56*~~ ***Distribution*** means any payment to the holder of a Claim as provided in this Plan.

*1.1.62* ~~*1.1.57*~~ ***District Court*** means the United States District Court for the Western District of New York.

*1.1.63* ~~*1.1.58*~~ ***Donor Restrictions*** means, with respect to any charitable assets in the Diocese's possession or control, any donor imposed restrictions upon the use of such assets.

*1.1.64* ~~*1.1.59*~~ ***DOR Entities' Cash Contribution*** means $55,000,000, to be contributed by or on behalf of the Diocese and the Participating Parties to the Trust and used to fund the payment of Abuse Claims (except ~~Future~~Unknown Claims) and Trust Expenses pursuant to the Plan and the Trust Agreement.

*1.1.65* ~~*1.1.60*~~ ***DOR Entities' Cash Contribution Remainder*** means any remainder of the DOR Entities' Cash Contribution after the initial funding of the Trust Reserve in accordance with Section 8.2.1 of the Plan.

*1.1.66* ~~*1.1.61*~~ ***DOR Entities' Post-Effective Date Costs*** means all fees and expenses reasonably incurred by the Diocese, the Reorganized Diocese or the Participating Parties in connection with performing any of their respective duties or obligations under the Plan with respect to any Abuse Claims or Insurance Claims, including, without limitation, in connection with: (a) any attempt by the Trust to enforce or recover Insurance Claims against Non-Settling Insurers; (b) responding to and defending against any legal action taken by any Litigation Claimants with respect to Litigation Claims~~;~~; or (~~b~~c) upon request by the Trustee or the Abuse Claims Reviewer, assisting with the administration of the Allocation Protocol. For the avoidance of doubt, such costs include any costs and expenses reasonably incurred by the Diocese, the Reorganized Diocese or the Participating Parties in connection with such efforts, or in connection with any depositions, discovery, or other litigation matters relating in any way to the Abuse Claims or Insurance Claims, including, without limitation, any attorney's fees, expert fees, and other costs and expenses.

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 18 of 113

*1.1.67* ~~*1.1.62*~~ **DOR Entities' Post-Effective Date Costs Procedures** means the procedures set forth in Section 8.11 of the Plan for the payment of DOR Entities' Post-Effective Date Costs.

*1.1.68* ~~*1.1.63*~~ **DOR Entities' Post-Effective Date Cost Reserve** means a portion of the Trust Reserve held in a separate, segregated account established by the Trust exclusively for payment of DOR Entities' Post-Effective Date Costs, which shall be funded in the initial amount of not less than $2,000,000.

*1.1.69* ~~*1.1.64*~~ **Effective Date** means (a) the last Business Day of the month in which (i) all conditions to effectiveness of this Plan have been satisfied or waived in accordance with Section 11.1 and (ii) no stay of the Confirmation Order is in effect, *provided*, *however* that if the first date on which all conditions to effectiveness or of the Plan have been satisfied or waived occurs on or after the twentieth (20th) day of such month, the Effective Date shall occur on the last Business Day of the immediately following month; or (b) such other date as may be mutually agreed by both Plan Proponents and all Settling Insurers.

*1.1.70* ~~*1.1.65*~~ **Estate** means the ~~Estate~~estate of the Diocese created by the Diocese's Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

*1.1.71* ~~*1.1.66*~~ **Evaluation Factors** means the following factors to be considered by the Abuse Claims Reviewer in scoring Abuse Claims pursuant to the Allocation Protocol:

a. Nature of the Abuse:

(i) Duration;

(ii) Frequency/number of instances;

(iii) Degree of intrusiveness into child's body (*e.g.* clothed/unclothed, masturbation by or of perpetrator, oral penetration, anal penetration, vaginal penetration);

(iv) Level or severity of force/violence/coercion/threats;

(v) Control of environment (*e.g.* boarding school, orphanage, trip under supervision of perpetrator, day school, employment relationship with Perpetrator of the Diocese);

(vi) Number of Perpetrators of the Diocese that abused the Abuse Claimant;

(vii) Physical pain suffered;

(viii) Grooming;

(ix) Relationship of the Abuse Claimant to the perpetrator;

11

~~17683006.4~~18335512.v7
Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 19 of 113

(x)     Location of abuse, including but not limited to isolated location, rectory, church, cabin, orphanage, etc.; and/or

(xi)    Additional factors that may be provided by the Abuse Claimant.

b.     Impact of Abuse:

(i)     School behavior problems;

(ii)    School academic problems;

(iii)   Getting into legal trouble as a minor;

(iv)    Loss of faith;

(v)     Damage to family relationships/ interpersonal difficulties;

(vi)    Mental health symptoms, including but not limited to: depression, suicide attempt and suicidal ideation, anxiety, substance abuse, sexual acting out, runaway, flashbacks, nightmares;

(vii)   Adult and Current Functioning: criminal record as an adult, relationship problems, substance abuse;

(viii)  Physical health symptoms, including but not limited to: physical manifestations of emotional distress, gastrointestinal issues, headaches, high blood pressure, physical manifestations of anxiety, erectile dysfunction, heart palpitations, sexually transmitted infections, physical damage caused by acts of Abuse, reproductive damage, self-cutting, and/or other self-injurious behavior;

(ix)    The risk of the foregoing factors affecting the Abuse Claimant in the future based on the Abuse Claimant's age at the present time; and/or

(x)     Additional factors that may be provided by the Abuse Claimant.

*1.1.72*    *1.1.67* **Excluded Party** means (a) any individual who personally committed an act of Abuse that resulted or would result in an Abuse Claim against the Diocese or a Protected Party, but solely in his or her capacity as an abuser; (b) the Holy See; and (c) any religious order or other entity that is an affiliate of or associated with the Roman Catholic Church (other than the Diocese, the Reorganized Diocese, the Participating Parties and their respective Related Persons); provided, however, that neither of the following is an "Excluded Party":  (y) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies and/or (z) any Person who has actually or

17683006.4 18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,   Description: Exhibit A - Joint Plan Redline, Page 20 of 113

allegedly acquired or been assigned the right to make a claim for coverage under any of the Settling Insurer Policies.~~.~~

1.1.73  ~~1.1.68~~ **Exculpated Parties** means the Diocese, the Reorganized Diocese, the Diocese's Professionals, the Committee and its members in their capacities as members of the Committee, the Committee's Professionals, ~~counsel to individual Committee members in their capacity as such,~~ the Mediators, and the Participating Parties~~, the Settling Insurers, and Related Persons of the Persons and Entities listed in this sentence~~; provided, however, that notwithstanding anything to the contrary herein, no Excluded Party may be an Exculpated Party.

1.1.74  ~~1.1.69~~ **Extra-Contractual Claim** means any Claim against any Settling Insurer, in its capacity as an Insurer, seeking any type of relief other than coverage or benefits under the Insurance Policies.  Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (i) any Insurance Policy; (ii) any Claim allegedly or actually covered under an Insurance Policy; or (iii) the conduct of a Settling Insurer with respect to (i) or (ii):  (a) bad faith; (b) failure to provide insurance coverage under any Insurance Policy; (c) failure or refusal to compromise and settle any Claim insured under any Insurance Policy; (d) failure to act in good faith; (e) violation of any covenant or duty of good faith and fair dealing; (f) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (g) violation of any unfair claims practices act or similar statute, regulation or code; (h) any type of misconduct; or (i) any other act or omission of any type by a Settling Insurer for which the claimant seeks relief other than coverage or benefits under an Insurance Policy.  Extra-Contractual Claims further include all Claims relating to the Settling Insurers' (x) handling of any Insurance Claims under the Insurance Policies, (y) conduct in negotiating the Insurance Settlement Agreements and the Plan, and (z) conduct in the settlement of any Insurance Claims.

1.1.75  ~~1.1.70~~ **File** or **Filed** means (i) properly filed with the clerk of the ~~Bankruptcy~~ Court in the Chapter 11 Case or any appeal therefrom, as reflected on the official docket of the clerk of the ~~Bankruptcy~~ Court for the Chapter 11 Case or such appeal, or the actual delivery of proofs of claim in paper or electronic form to Stretto in accordance with the terms of the Bankruptcy Court's *Order Establishing a Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 425], or (ii) with respect to any Abuse Action, properly filed with the clerk of the court in which the Abuse Action is commenced, as reflected on the official docket of the clerk of that court.

1.1.76  ~~1.1.71~~ **Final Order** means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to each applicable litigant waiving such right and their respective counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion pursuant to

13

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 21 of 113

section 502(j) or 1144 of the Bankruptcy Code, or Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure may be, but has not been, ~~filed~~Filed with respect to such order shall not cause such order not to be a Final Order.

*1.1.77* ~~*1.1.72* First Group~~*Filed Abuse Claim* means either (a) an Abuse Claim ~~filed~~Filed against the Diocese on or prior to the Effective Date or (b) an Abuse Action ~~filed~~commenced against the Diocese and/or a Participating Party prior to the Effective Date.

*1.1.78* ~~*1.1.73* First Group~~*Filed Abuse Claim Fund* means that portion of the Abuse Claims Settlement Fund consisting of (a) the DOR Entities' Cash Contribution Remainder plus (b) ~~ninety-five percent (95%) of~~after funding the Unknown Abuse Claim Fund, all other amounts to be distributed to Abuse Claimants by the Trust pursuant to the Plan.

*1.1.79* ~~*1.1.74* First Group~~*Filed Late Claim* means any ~~First Group~~Filed Abuse Claim ~~filed~~first Filed after August 13, 2021. For the avoidance of doubt, Abuse Claims ~~filed~~Filed on or before the Bar Date and amended thereafter are not included as ~~First Group~~Filed Late Claims.

*1.1.80* ~~*1.1.75* First Group~~*Filed Late Claimant* means the holder of a ~~First Group~~Filed Late Claim.

*1.1.81* ~~*1.1.76*~~*First State* means First State Insurance Company.

~~*1.1.77* Future Claims means all Abuse Claims which are asserted against the Diocese, the Reorganized Diocese and/or a Participating Party based upon Abuse that occurred prior to the Petition Date and which are not (a) Filed with the Bankruptcy Court by the Bar Date, (b) a Timely Abuse Action commenced on or before the Effective Date, or (c) otherwise deemed timely Filed as of the Effective Date pursuant to the Plan or by order of the Court.~~

*1.1.82* ~~*1.1.78*~~*General Unsecured Claim* means a Claim against the Diocese of any kind or nature including, without limitation, on account of trade credit, contract, personal injury (other than personal injury arising from or related to Abuse), or arising from the rejection of an executory contract or unexpired lease, that (~~a~~i) is not secured by property of the Estate or otherwise entitled to treatment as a secured claim under section 506 of the Bankruptcy Code; (~~b~~ii) is not otherwise entitled to priority under sections 503 or 507 of the Bankruptcy Code; and (~~c~~iii) is not otherwise an Abuse Claim, Administrative Claim, Professional Fee Claim, Claim for U.S. Trustee Fees, Priority Tax Claim, Non-Tax Priority Claim, Secured Claim, or Pass-Through Claim.

*1.1.83* ~~*1.1.79*~~*Impaired* means, with respect to any Class, that such Class is "impaired" under the Plan within the meaning of section 1124 of the Bankruptcy Code.

*1.1.84* ~~*1.1.80*~~*Inbound Contribution Claim* means any Claim against the Diocese or any Participating Party ~~for~~asserting rights of contribution, indemnity, equitable indemnity, subrogation, ~~or~~equitable subrogation, allocation~~or~~, reallocation, ~~or~~reimbursement,

14

~~17683006.4~~18335512.v7
Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 22 of 113

or any other direct, indirect or derivative recovery, ~~on account of or with respect to any Claim~~ arising from or ~~relating~~related to ~~any~~ Abuse Claim.

       *1.1.85* ~~*1.1.81*~~ **Insurance Claims** means all Claims, causes of action and enforceable rights ~~of an Abuse Claimant, the Diocese and any Participating Party~~ against ~~any Non-Settling~~an Insurer whether sounding in contract, tort, or otherwise, including equity and bad faith, held by: (a) the Diocese or an Abuse Claimant for any reason related to any Abuse Claim asserted or alleged against the Diocese, including those for (i) indemnity and payment of any such Abuse Claim; (ii) any ~~Non-Settling~~ Insurer's failure or refusal to provide insurance coverage for any such Abuse Claim under any Insurance Policy; (iii) any ~~Non-Settling~~ Insurer's tortious or wrongful claims handling including the failure or refusal of any ~~Non-Settling~~ Insurer to timely compromise and settle any such Abuse Claims against the Diocese pursuant to any Insurance Policy~~;~~, (iv) to the extent not otherwise encompassed by section (iii) above, any ~~Non-Settling~~ Insurer's failure or refusal to reasonably settle ~~the~~such Abuse Claims~~;~~, and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing; and/or (b) any of the Participating Parties~~or~~, Settling Insurers, or any Consenting Abuse Claimant for any reason related to any Consenting Abuse Claim against the Participating Party or Settling Insurer, whether independently or jointly liable with the Diocese on such Consenting Abuse Claim, including for (i) indemnity and payment of any such Consenting Abuse Claim~~;~~, (ii) any ~~Non-Settling~~ Insurer's failure or refusal to provide insurance coverage under any Insurance Policy for any such Consenting Abuse Claim against the Diocese, a Participating Party or a Settling Insurer~~;~~, (iii) any ~~Non-Setting~~ Insurer's tortious or wrongful claims handling including the failure or refusal of any ~~Non-Setting~~ Insurer to timely compromise and settle any such Consenting Abuse Claims against ~~the Diocese,~~ a Participating Party~~,~~ or a Settling Insurer pursuant to any Insurance Policy~~;~~, (iv) to the extent not otherwise encompassed by section (iii) above, any ~~Non-Settling~~ Insurer's failure or refusal to reasonably settle ~~the~~such Consenting Abuse Claims~~;~~, and (v) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing. The term "Insurance Claim" also includes any Claims or causes of action for reimbursement of DOR Entities' Post-Effective Date Costs under any Insurance Policy, but only to the extent such DOR Entities' Post-Effective Date Costs are actually paid by the Trust. For avoidance of doubt, the term "Insurance Claim" does not include any Non-Participating Insurance Claims.

       *1.1.86* ~~*1.1.82*~~ **Insurance Claims Assignment** means the transfer or assignment of ~~any or all~~ Insurance Claims to the Trust as set forth in Section 8.2.4, herein.

       *1.1.87* ~~*1.1.83*~~ **Insurance Claim Proceeds** means any amount recovered by the Trust in respect of any Insurance Claims assigned to the Trust pursuant to the terms of this Plan.

       *1.1.88* ~~*1.1.84*~~ **Insurance Coverage Adversary Proceeding** means the adversary proceeding commenced by the Diocese before the Bankruptcy Court on November 14, 2019, captioned as *The Diocese of Rochester v. The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National* Surety

15

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 23 of 113

*Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE*, Adv. Pro. No. 19-02021.

~~1.1.85 **Insurance Interest** means the Diocese's and/or any Participating Party's interest in any Insurance Policy.~~

*1.1.89* ~~1.1.86~~**Insurance Policy** means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, in effect on or before the Effective Date, which actually ~~or,~~ allegedly, or potentially provides liability coverage for the Diocese and/or any Participating Party, or any of their respective Related Persons, with respect to any Abuse Claim.

*1.1.90* ~~1.1.87~~**Insurance Settlement Agreement** means a settlement agreement among the Diocese and the applicable Participating Parties, with the Committee's consent or, following the Effective Date, the consent of the Trust, and a Settling Insurer, consistent with the terms of the Plan, to be included in the Plan Supplement or Filed with the Bankruptcy Court if entered into by the Trust after the Effective Date. The Diocese may not enter into any Insurance Settlement Agreements without the Committee's consent. For avoidance of doubt, the settlement agreements with each of LMI, Underwriters, Interstate, and First State attached to the Plan Supplement as **Exhibits 10, 11, 12, and 13** respectively, shall be Insurance Settlement Agreements.

*1.1.91* ~~1.1.88~~**Insurance Settlement Amount** means the settlement amount to be paid by each Settling Insurer pursuant to each Insurance Settlement Agreement to which it is a party.

*1.1.92* ~~1.1.89~~**Insurer** means a Person (including all of its Affiliates, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy.

*1.1.93* ~~1.1.90~~**Insurer Contribution Claim** means any Claim, including, but not limited to, any Inbound Contribution Claim, ~~where~~by an Insurer where such Insurer contends that it has paid more than its equitable or proportionate share of ~~an~~a Consenting Abuse Claim, whether expressed in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other direct, indirect, or derivative recovery.

*1.1.94* ~~1.1.91~~**Interstate** means Interstate Fire & Casualty Company, National Surety Corporation, and Fireman's Fund Insurance Company.

*1.1.95* ~~1.1.92~~**Joint Tortfeasor** means any Person, ~~who is not~~other than the Diocese or a Participating Party, ~~and~~who is alleged to be a joint tortfeasor with the Diocese and/or any Participating Party in connection with the Abuse ~~relating~~or alleged Abuse giving rise to an Abuse Claim.

16

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 24 of 113

*1.1.96* ~~1.1.93~~ **Lien** means any "lien" as defined in section 101(37) of the Bankruptcy Code.

*1.1.97* ~~1.1.94~~ **Litigation Award** means a judgment or verdict determining that the Diocese and/or any Participating Party is/are liable to a Litigation Claimant on account of ~~such~~a Litigation Claim.

*1.1.98* ~~1.1.95~~ **Litigation Claim** means an Abuse Claim held by a Litigation Claimant, to the extent it is authorized by the Trustee to be litigated against the Diocese and/or a Participating Party in accordance with the Plan Documents, including in the courts of the State of New York pursuant to the CVA or ASA.

*1.1.99* ~~1.1.96~~ **Litigation Claimant** means any Consenting Abuse Claimant whose Abuse Claim the Trustee, after consultation with the Diocese, believes in good faith to be covered, in whole or in part, by policies of insurance issued by one or more Non-Settling Insurers, and who is authorized by the Trustee to liquidate their Abuse Claim in accordance with the Plan, Allocation Protocol, and the Trust Agreement. For avoidance of doubt, Non-Participating Abuse Claimants shall not be eligible to act as Litigation Claimants.

*1.1.100* ~~1.1.97~~ **Litigation Claimant Agreement** means an agreement, in the form attached as **Exhibit 9** to the Plan Supplement, pursuant to which each Litigation Claimant agrees and acknowledges, in exchange for the Trustee's authorization to pursue their Litigation Claim, that (i) they may pursue their Litigation Claim solely for the purposes of (a) determining any liability that the Diocese and/or any Participating Party may have with respect to their Litigation Claim, (b) determining the amount of that liability, and (c) to pursue Insurance Claims against Non-Settling Insurers~~,~~; (ii) any Litigation Award obtained in respect of any Litigation Claim may not be enforced against any Protected Party and/or any of the non-insurance assets of the Diocese or any Participating Party~~, and~~; (iii) all Claims held by such Litigation Claimant against the Diocese or any Participating Party shall automatically and without further action be fully released and discharged upon the occurrence of the applicable Abuse Claims Discharge Date; (iv) if the Litigation Claimant obtains a judgment against the Diocese or any Participating Party, the Litigation Claimant shall take any action reasonably requested of them to enable the Diocese, the Reorganized Diocese, or any Participating Party (or any successor entity) to transfer, mortgage, or otherwise encumber any real or personal property free and clear of any judgment Lien, so long as such action does not have a material adverse effect on the Litigation Claimant's or Trustee's rights with respect to any Insurance Claim arising from the Litigation Claim; and (v) each of the Protected Parties is an intended third party beneficiary of such Litigation Claimant Agreement.

*1.1.101* ~~1.1.98~~ **LMI** means Certain Underwriters at Lloyd's, London subscribing to Policy Nos. ~~SL 3209~~ SL 3675, ISL 3090, ISL 3410, ISL 3861, SL 3380, SL 3556, SL 3693, SL 3830, ISL 3092, ISL 3643, ISL 3809, SL 3210, SL 3676, ISL 3091, and ISL 3567, Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Company Ltd), RiverStone Insurance (UK) Limited (as successor in interest to Terra Nova Insurance Company Ltd and as successor in interest to Sphere Drake Insurance Ltd), Sompo Japan Nipponkoa Insurance Company of Europe Limited (formerly known as The Yasuda Fire & Marine Insurance

17

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 25 of 113

Company), and Dominion Insurance Company Ltd., who subscribed to Insurance Policies providing coverage to the Diocese and other Participating Parties.

*1.1.102* ~~*1.1.99*~~ **Mediators** means the Honorable Gregg W. Zive, United States Bankruptcy Judge for the District of Nevada and Mr. Paul J. Van Osselaer.

*1.1.103* ~~*1.1.100*~~ **Medicaid** means medical assistance provided under a state plan approved under title XIX of the Social Security Act~~.~~

*1.1.104* ~~*1.1.101*~~ **Medicare** means the health insurance program for the aged and disabled under title XVIII of the Social Security Act.

*1.1.105* ~~*1.1.102*~~ **Medicare Beneficiary** means an individual who is entitled to Medicare benefits and/or who has been determined to be eligible for Medicaid.

*1.1.106* ~~*1.1.103*~~ **Medicare Claim** means all Claims by CMS, and/or any Agent or successor of CMS charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA or pursuing Claims under MSPA, relating to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants who recover or receive any Distribution from the Trust, and Claims relating to reporting obligations.

*1.1.107* ~~*1.1.104*~~ **Medicare Eligible** means an Abuse Claimant who is eligible to receive, is receiving, or has received Medicare benefits.

*1.1.108* ~~*1.1.105*~~ **MMSEA** means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

*1.1.109* ~~*1.1.106*~~ **MSPA** means 42 U.S.C. § 1395y *et seq.*, or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

*1.1.110* ~~*1.1.107*~~ **Neutrality Parties** means, collectively, (i) the Diocese; (ii) the Participating Parties; (iii) the Committee; (iv) the Trustee; (v) the Abuse Claimants; (vi) the Abuse Claims Reviewer; and (vii) all Non-Settling Insurers~~.~~

*1.1.111* ~~*1.1.108*~~ **Non-Abuse Claim** means any Claim against the Diocese that is not an Abuse Claim or Inbound Contribution Claim.

*1.1.112* **Non-Participating Abuse Claim** means an Abuse Claim held by a Non-Participating Abuse Claimant.

*1.1.113* **Non-Participating DOR Abuse Claim** means that portion of any Non-Participating Abuse Claim for which the Diocese is, or is alleged to be, liable.

**1.1.114** **Non-Participating PP Abuse Claim** means that portion of any Non-Participating Abuse Claim for which one or more Participating Parties are, or are alleged to be, liable.

**1.1.115** **Non-Participating Abuse Claimant** means the holder of an Abuse Claim who affirmatively withholds their consent to having their Claim(s) against one or more Participating Parties released or enjoined as contemplated in the Plan, and who has not, prior to entry of the Confirmation Order, agreed in writing to provide such consent, to grant such releases, and to be treated as a Consenting Abuse Claimant for all purposes. For purposes of the Plan, such affirmative withholding of consent must be manifested by the holder of the Abuse Claim at issue either: (a) both voting to reject the Plan and separately indicating on their Abuse Claim Ballot that consent is being withheld or (b) Filing a timely written objection to confirmation of the Plan which states that consent to such releases and injunctions is being withheld. For avoidance of doubt, both a vote to accept the Plan, and a vote to reject the plan without separately indicating that consent is being withheld, shall be deemed affirmative consent to the releases and injunctions set forth in the Plan.

**1.1.116** **Non-Participating Abuse Claim Release Agreement** means an agreement, in the form attached to the Plan Supplement as **Exhibit 3,** releasing the Diocese from any and all Abuse Claims held by a Non-Participating Abuse Claimant in accordance with the terms of this Plan, to be executed by the Non-Participating Abuse Claimant as a condition of receiving any Distribution.

**1.1.117** **Non-Participating Insurance Claim** means all Claims, causes of action and enforceable rights against an Insurer, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by any of the Participating Parties, Settling Insurers, or any Non-Participating Abuse Claimant for any reason related to any Non-Participating Abuse Claim asserted or alleged against a Participating Party or Settling Insurer, whether independently or jointly liable with the Diocese on such Non-Participating Abuse Claim, including for (a) indemnity and payment of any such Non-Participating Abuse Claim, (b) any Insurer's failure or refusal to provide insurance coverage under any Insurance Policy for any such Non-Participating Abuse Claim against a Participating Party or a Settling Insurer, (c) any Insurer's tortious or wrongful claims handling including the failure or refusal of any Insurer to timely compromise and settle any such Non-Participating Abuse Claims against a Participating Party or a Settling Insurer pursuant to any Insurance Policy, (d) to the extent not otherwise encompassed by section (c) above, any Insurer's failure or refusal to reasonably settle such Non-Participating Abuse Claims, and (e) the interpretation or enforcement of the terms of any Insurance Policy as it pertains to any of the foregoing.

**1.1.118** **Non-Participating Litigation Claimant Agreement** means an agreement, in the form attached as **Exhibit 9** to the Plan Supplement, pursuant to which a Non-Participating Abuse Claimant agrees and acknowledges (i) that they may pursue their Non-Participating DOR Abuse Claim solely for purposes of establishing whether the Diocese may have any liability with respect to their Non-Participating DOR Abuse Claim and the amount, if any, of such liability; (ii) any judgment or verdict obtained in respect of such Non-Participating DOR Abuse Claim may not be enforced against the Diocese or any Protected Party, but may be presented to the Trustee to establish the Non-Participating Abuse Claimant's

19

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 27 of 113

entitlement to additional Distributions from the Diocese Abuse Claims Settlement Sub-Fund; and (iii) if the Non-Participating Abuse Claimant obtains a judgment against the Diocese, he or she shall take any action reasonably requested to enable the Diocese or the Reorganized Diocese to transfer, mortgage or otherwise encumber any real or personal property free and clear of any judgment Lien.

*1.1.119* *1.1.109* **Non-Settling Insurer** means any Insurer that is not a Settling Insurer.

*1.1.120* *1.1.110* **Non-Settling Insurer Policy** means any Insurance Policy where a Non-Settling Insurer has a duty or obligation to provide coverage to the Diocese and/or any Participating Parties. For the avoidance of doubt, no Settling Insurer Policy is a Non-Settling Insurer Policy.

*1.1.121* *1.1.111* **Non-Tax Priority Claim** means a Claim against the Diocese, other than an Administrative Claim, Priority Tax Claim, or Professional Fee Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

*1.1.122* *1.1.112* **Other Catholic Organization** means any Person (a) claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Settling Insurer Policies and/or (b) who has actually or allegedly acquired or been assigned the right to make a claim for coverage under any of the Settling Insurer Policies, excluding, however, the Diocese, a Parish, a School, the Trust, or any Abuse Claimant.

*1.1.123* *1.1.113* **Outbound Contribution Claim** means any Claim or cause of action related to ~~an~~a Consenting Abuse Claim that may be asserted by the Diocese or any Participating Party against any Person that is not a Protected Party.

*1.1.124* *1.1.114* **Parish** means any past or present Roman Catholic parish located within the geographical territory of the Diocese or subject to the canonical jurisdiction of the Bishop of Rochester, together with any corporation or other entity recognized under civil law that holds title to temporal property for, or on behalf of, any such parish.

*1.1.125* **Participating Parties' Cash Contribution** means that portion of the DOR Entities' Cash Contribution funded by Participating Parties, which shall be in the aggregate amount of $30,000,000.

*1.1.126* *1.1.115* **Participating Party** means all Parishes, all Schools, and those Other Catholic Organizations and other ~~entities~~Persons listed on **Exhibit A** attached hereto who contribute Insurance Claims to the Trust and/or contribute funds to the DOR Entities' Cash Contribution. Neither the Reorganized Diocese nor any Settling Insurer shall be a Participating Party. For the avoidance of doubt, except to the extent they may be listed on **Exhibit A**, Excluded Parties are not Participating Parties.

*1.1.127* **Participating Party Defense Costs** means all costs and expenses incurred by any Participating Party in defending against a Non-Participating PP Claim, or in satisfying any judgment awarded in connection therewith.

*1.1.128* ***Participating Party Defense Reserve*** means, in the event Unknown Abuse Claims are treated as Non-Participating Abuse Claims under the Plan, a portion of the Trust Reserve held in a separate, segregated account established by the Trust exclusively for payment of Participating Party Defense Costs which shall be funded in an amount not less than $3,000,000.

*1.1.129* ~~*1.1.116*~~ ***Pass-Through Claim*** means any Disputed Non-Abuse Claim which the Diocese elects to treat as a Pass-Through Claim pursuant to the terms of the Plan.

*1.1.130* ***Perpetrator(s)*** means the individual natural Person(s) who perpetrated the acts of Abuse or alleged Abuse giving rise to any Abuse Claims.

*1.1.131* ***Perpetrator of the Diocese*** Means a Perpetrator: (1) who was an employee or other agent of the Diocese or any other Participating Party when such person committed an act of Abuse; or (2) for whom or for whose actions the Diocese or any other Participating Party was otherwise responsible.

*1.1.132* ~~*1.1.117*~~ ***Person*** means an individual, corporation, partnership, limited liability company, limited liability partnership, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, each of the Protected Parties.

~~*1.1.118* **Perpetrator of the Diocese** Means a person: (1) who was an employee or other agent of the Diocese or any other Participating Party when such person committed an act of Abuse; or (2) for whom or for whose actions the Diocese or any other Participating Party was otherwise responsible.~~

*1.1.133* ~~*1.1.119*~~ ***Petition Date*** means September 12, 2019.

*1.1.134* ~~*1.1.120*~~ ***Plan*** means this ~~Third~~Sixth Amended Joint Chapter 11 Plan of Reorganization as it may be altered, modified, or amended in accordance with the Bankruptcy Code and the Bankruptcy Rules.

*1.1.135* ~~*1.1.121*~~ ***Plan Documents*** means the Plan and the Disclosure Statement, all exhibits and schedules attached thereto, and all Plan Supplements, either in their present form or as each may be amended, supplemented or otherwise modified from time to time.

*1.1.136* ~~*1.1.122*~~ ***Plan Proponents*** means, collectively, the Diocese and the Committee.

*1.1.137* ~~*1.1.123*~~ ***Plan Supplement*** means one or more supplements to the Plan to be Filed with the Bankruptcy Court in advance of the Confirmation Hearing which shall contain (a) the Allocation Protocol, the form of Consenting Abuse Claim Release Agreement, the form of Non-Participating Abuse Claimant Agreement, the form of Trust Agreement, a list of known Insurance Policies, the Diocese's non-monetary commitments, and the form of Litigation Claimant Agreement, all in form and substance acceptable to each of the Plan Proponents in their respective sole discretion; (b) a list of all executory contracts and leases designated by the Diocese in its sole discretion to be assumed or assumed and assigned to the Reorganized Diocese

pursuant to the Plan; and (c) each Insurance Settlement Agreement entered into prior to the Confirmation Date.

   ***1.1.138*** ~~*1.1.124*~~ ***Post-Effective Date*** ~~***Insurance Obligations***~~ ***Preconditions to Coverage*** means those ~~duties or obligations~~ preconditions and contractual requirements (if any) ~~required of:  (a) which~~ the Diocese and ~~/or any~~ Participating ~~Party under any Insurance Policy issued by a~~ Parties must satisfy under Non-Settling Insurer ~~, on and after~~ Policies and applicable law as a predicate to pursing an Insurance Claim, and (b) that the Non-Settling Insurer Policies and applicable law impose as a condition to providing coverage under such Non-Settling Insurer Policies, in each case to the extent required to be satisfied or performed following the Effective Date.

   ***1.1.139*** ~~*1.1.125*~~ ***Priority Tax Claim*** means any Claim against the Diocese entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

   ***1.1.140*** ~~*1.1.126*~~ ***Professional Fee Claim*** means a Claim against the Diocese for compensation for legal or other professional services and related reimbursement of expenses under sections 327, 328, 330(a), 331 or 503(b) of the Bankruptcy Code.

   ***1.1.141*** ~~*1.1.127*~~ ***Professionals*** means all professionals employed in the Chapter 11 Case pursuant to sections 327, 328 or 1103 of the Bankruptcy Code.

   ***1.1.142*** ~~*1.1.128*~~ ***Protected Parties*** means the Diocese, the Reorganized Diocese, the Participating Parties, the Settling Insurers, and any Settling Insurer Covered Persons ~~, and their respective Related Persons~~.

   ~~***1.1.129*** ***Redacted Information*** means names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the Abuse Claimants, and the names of the guardians, conservators, and/or other personal representatives, as applicable.~~

   ***1.1.143*** ***Reduction Amount*** has the meaning ascribed to such term in section 12.5.2.b. of the Plan.

   ***1.1.144*** ~~*1.1.130*~~ ***Related Person*** means, with respect to any Person, such Person's predecessors, successors, assigns, and present and former shareholders, members, Affiliates, subsidiaries, employees, Agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such; *provided, however,* that no person or entity shall be a Related Person if such person or entity is an Excluded Party.

   ***1.1.145*** ~~*1.1.131*~~ ***Release*** means the release of the Protected Parties from all Consenting Abuse Claims.

*[Link-to-previous setting changed from on in original to off in modified.].*

*1.1.146* ~~1.1.132~~ **Released Insurance Claims** means all ~~Claims, including Extra Contractual Claims,~~Insurance Claims released by the Diocese and the Participating Parties pursuant to the Insurance Settlement Agreements.

*1.1.147* ~~1.1.133~~**Released Parties** means (a) the Diocese~~and its Related Persons~~; (b) the Reorganized Diocese~~and its Related Persons,~~; (c) the Participating Parties; and ~~their Related Persons;~~ (d) a Settling Insurer, but only to the extent that such Settling Insurer's liability arises out of an obligation under the Settling Insurer Policies or otherwise from liabilities covered by the Settling Insurer Policies (including for the avoidance of doubt, Extra Contractual Claims)~~; and (e) a Settling Insurer's Related Persons, but only to the extent such Person's liability arises out of an obligation under the Settling Insurer Policies or otherwise from liabilities covered by the Settling Insurer Policies (including for the avoidance of doubt, Extra Contractual Claims)~~, *provided, however*, that "**Released Parties**" shall not include: (x) any Perpetrator; or (y) any religious order, diocese, or archdiocese, unless such entity is identified as a Participating Party on **Exhibit A**.

*1.1.148* **Releasing Parties** has the meaning ascribed to such term in Section 12.7 of the Plan.

*1.1.149* ~~1.1.134~~**Reorganized Diocese** means (i) the Diocese, on and after the Effective Date, after giving effect to the operative provisions of the Plan, or (ii) at the sole and exclusive option of the Diocese, a new corporation, formed in accordance with Article 5 of the New York Religious Corporations Law or other applicable law, which, pursuant to the Plan, shall take title to the Residual Assets on and after the Effective Date. For the avoidance of doubt, the formation of ~~the Reorganized Diocese~~any entity described in clause (ii) above, shall not discharge or waive the Diocese's liability for any Litigation Claim, for which a Litigation Claimant may have recourse pursuant to the Plan and Plan Documents.

*1.1.150* ~~1.1.135~~**Residual Assets** means, after payment of the ~~Diocese's share of the DOR Entities'~~Diocese Cash Contribution, the Insurance Claims Assignment, and the transfer of Outbound Contribution Claims to the Trust, and except for any Insurance Policies to be retained by the Diocese pursuant to Section 7.5 of this Plan, all residual property and assets of the Diocese and/or the Estate, including all charitable assets subject to Donor Restrictions, all property to which the Diocese holds legal title only, and all rights with respect to any Avoidance Actions or other causes of action belonging to the Diocese or its Estate.

~~1.1.136 **Reviewed Claims** means Abuse Claims that have been (a) reviewed by the Abuse Claims Reviewer and (b) awarded 1 or more points by the Abuse Claims Reviewer.~~

*1.1.151* ~~1.1.137~~**Schedules** means the schedules of assets and liabilities and the statement of financial affairs Filed by the Diocese in this Chapter 11 Case on November 19, 2019 [Docket No. 237], as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as amended or supplemented through the Effective Date.

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 31 of 113

*1.1.152* ~~*1.1.138*~~ **School** means a past or present Catholic school owned by the Diocese or any Participating Party, including those identified as such on **Exhibit A** attached hereto, but does not include schools owned by any Excluded Party.

~~*1.1.139* **Second Group Abuse Claim** means either (a) an Abuse Claim first asserted against the Diocese or presented to the Trust on or after the Effective Date, or (b) an Abuse Action commenced against the Diocese and/or a Participating Party on or after the Effective Date. Second Group Abuse Claims include Future Claims.~~

~~*1.1.140* **Second Group Abuse Claim Fund** means that portion of the Abuse Claims Settlement Fund consisting of five percent (5%) of all amounts in excess of the DOR Entities' Cash Contribution Remainder to be distributed to Abuse Claimants by the Trust pursuant to the Plan.~~

*1.1.153* ~~*1.1.141*~~ **Second Insurance Settlement Motion** means that certain *Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* filed by the Diocese at Docket No. 1538 in the Chapter 11 Case and at Docket No. 190 in the Insurance Coverage Adversary Proceeding.

*1.1.154* ~~*1.1.142*~~ **Secured** means, with respect to any Claim against the Diocese, a Claim to the extent (~~a~~i) secured by a Lien on property of the Estate (i~~a~~) as set forth in the Plan~~,~~, (ii~~b~~) as agreed to by the holder of such Claim and the Diocese~~,~~, or (iii~~c~~) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code~~,~~; or (~~b~~ii) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code but, with respect to both of the foregoing clauses (~~a~~i) and (~~b~~ii), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

*1.1.155* ~~*1.1.143*~~ **Settling Insurer** means LMI, Underwriters, Interstate, First State, and any other ~~insurer~~Insurer that is party to an Insurance Settlement Agreement with the consent of the Committee and the Diocese. A Settling Insurer's Related Persons shall receive the benefits and protections afforded a Settling Insurer under the Plan; provided, however, that if such Related Person is a Related person by virtue of being a predecessor, successor, and assign of a Settling Insurer, such Related Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

*1.1.156* ~~*1.1.144*~~ **Settling Insurer Covered Person** means any Person that has or may have a Claim to insurance coverage under a Settling Insurer Policy. For the avoidance of doubt and notwithstanding anything to the contrary herein, no Excluded Party may be a Settling Insurer Covered Person.

*1.1.157* **Settling Insurer Injunction** means an injunction set forth in Section 12.4 of the Plan.

*1.1.158* ~~*1.1.145*~~ **Settling Insurer Policies** means, collectively, all Insurance Policies (or coverage parts of those policies) that are canceled, settled, or sold back to a Settling Insurer pursuant to one or more Insurance Settlement Agreements with the Settling Insurers. For avoidance of doubt, and without limitation, certain Insurance Policies of Underwriters (and/or coverage parts of those policies) are not Settling Insurer Policies.

*1.1.159* ~~*1.1.146*~~ **Standby Letter of Credit** means the Irrevocable Letter of Credit in the principal amount of $460,842.00 issued by The Bank of Castile on behalf of the Diocese in favor of the New York Workers' Compensation Board to secure the Diocese's obligations to certain legacy workers' compensation claimants.

*1.1.160* ~~*1.1.147*~~ **State Court Counsel** is defined in the Introduction section above.

*1.1.161* ~~*1.1.148*~~ **Stretto** means Stretto, Inc., in its capacity as the claims and noticing agent for the Diocese.

*1.1.162* ~~*1.1.149*~~ **Submission Deadline** means the earlier of (a) thirty (30) days after the Effective Date or (b) such other date established by order of the Court.

*1.1.163* ~~*1.1.150*~~ **Supplemental Settling Insurer Injunction** is the injunction contained in Section 12.4 of this Plan.

*1.1.164* **Target Policy** means any Insurance Policy issued by a Non-Settling Insurer that is alleged to afford coverage for any Litigation Claim.

*1.1.165* ~~*1.1.151*~~ **Supplemental Submission** is defined in Section 2.4.3(b)(iii)(B).

*1.1.166* ~~*1.1.152*~~ **Supplement Notice** is defined in Section 2.4.3(b)(iii)(B).

*1.1.167* ~~*1.1.153*~~ **Timely Abuse Action** means an Abuse Action which, at the time of its commencement, would not be subject to an affirmative defense by the Diocese and/or any Participating Party that such ~~action was~~ Abuse Action (i) is barred by the provisions of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, or (ii) is otherwise untimely pursuant to N.Y. C.P.L.R. § 214 or any other statutes of limitation or repose under ~~other~~ applicable law. For avoidance of doubt, the failure of any Abuse Claimant to name the Diocese as a defendant in an Abuse Action because of the application of any stay arising pursuant to section 362 of the Bankruptcy Code shall not prevent any Abuse Action that would otherwise qualify under this definition from being a Timely Abuse Action.

*1.1.168* ~~*1.1.154*~~ **Tort Action** means any lawsuit brought by any Abuse Claimant as plaintiff against any Person seeking judgment and/or damages relating in any way to alleged Abuse, including, without limitation, any Abuse Action.

*1.1.169* ~~*1.1.155*~~ **Tort Defendant** means any Person who is named as a defendant in any Tort Action.

*1.1.170* ~~*1.1.156*~~ **Trust** means the trust to be established pursuant to the Plan and the Trust Agreement for the satisfaction of all Abuse Claims.

*1.1.171* ~~*1.1.157*~~ **Trust Advisory Committee** shall have the same definition as in the Trust Agreement.

*1.1.172* ~~*1.1.158*~~ **Trust Agreement** or **Trust Documents** shall mean the trust agreement between and among the Diocese, the Committee and the Trustee establishing and governing the Trust, including the Allocation Protocol, as it may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

*1.1.173* ~~*1.1.159*~~ **Trust Assets** means the Insurance Claims, Outbound Contribution Claims, and all other property transferred to the Trust pursuant to this Plan, or otherwise acquired by the Trust following the Effective Date, together with any proceeds thereof. For avoidance of doubt, the Trust Assets shall specifically exclude all of the Residual Assets.

*1.1.174* **Trust Insurance Settlement** means any Insurance Settlement Agreement entered into between the Trustee, on behalf of the Trust, and any Non-Settling Insurer, following the occurrence of the Effective Date.

*1.1.175* ~~*1.1.160*~~ **Trust Distribution** means a Distribution by the Trust, in accordance with the provisions of the Plan, the Allocation Protocol, Trust Documents and the Confirmation Order. For the avoidance of doubt, the payment of Trust Expenses shall not be considered Trust Distributions.

*1.1.176* ~~*1.1.161*~~ **Trust Expenses** means the costs of administering the Trust, including, without limitation, (i) payments to the Trustee and professionals retained to represent the Trust in accordance with the terms of the Trust Agreement; and (ii) the DOR Entities' Post-Effective Date Costs.

*1.1.177* ~~*1.1.162*~~ **Trust Reserve** means a reserve to be established by the Trustee from the ~~DOR Entities'~~ Diocese Cash Contribution, prior to making any Trust Distributions, sufficient to fund Trust Expenses~~,~~ (which shall include the DOR Entities' Post-Effective Date ~~Cost~~Costs Reserve), and, if Unknown Abuse Claims are treated as Non-Participating Abuse Claims under the Plan, the Participating Party Defense Reserve, and which may be replenished or otherwise supplemented in the discretion of the Trustee in accordance with the provisions of the Trust Agreement.

*1.1.178* ~~*1.1.163*~~ **Trustee** means the trustee of the Trust, who initially will be a Person selected by the Committee, subject to approval by the Bankruptcy Court, at the time of a hearing to consider approval of a disclosure statement for the Plan on no less than fourteen days' notice to all parties receiving ECF notice in this Bankruptcy Case, including the Diocese, and any successor trustee appointed pursuant to the terms of the Plan and/or Trust Agreement.

*1.1.179* ~~*1.1.164*~~ **Underwriters** means all underwriters, members, or Names at Lloyds, London (including former underwriters, members, or Names) who through their

participation                                                                in
 syndicates subscribed to the following certificates:

> Certificate No. 18W2012, effective for the period from July 1, 2018 to July 1, 2019; Certificate No. 18XS133, effective for the period from July 1, 2018 to July 1, 2019;
> Certificate No. 19W2012, effective for the period from July 1, 2019 to July 1, 2020; Certificate No. 19XS133, effective for the period from July 1, 2019 to July 1, 2020; Certificate No. 20W2012, effective for the period from July 1, 2020 to July 1, 2021; Certificate No. 20XS133, effective for the period from July 1, 2020 to July 1, 2021; Certificate No. 21W2012, effective for the period from July 1, 2021 to July 1, 2022; Certificate No. 21XS133, effective for the period from July 1, 2021 to July 1, 2022.

*1.1.180* ~~*1.1.165*~~ ***Unimpaired*** means, with respect to any Class, that such Class is not Impaired.

*1.1.181* ~~*1.1.166*~~ ***United States Trustee*** means the Office of the United States Trustee for Region 2, which includes the Western District of New York.

*1.1.182* ***Unknown Abuse Claim*** means any Abuse Claim asserted against the Diocese, the Reorganized Diocese, and/or a Participating Party, or otherwise presented to the Trust, that alleges Abuse that occurred prior to the Petition Date which is not (i) Filed on or before the Effective Date of the Plan or (ii) the subject of a Timely Abuse Action commenced on or before the Effective Date of the Plan.

*1.1.183* ***Unknown Abuse Claimant*** means a holder of an Unknown Abuse Claim.

*1.1.184* ***Unknown Claimant Representative*** means Michael R. Hogan, or any successor representative appointed by the Bankruptcy Court to serve as legal representative for Unknown Abuse Claimants.

*1.1.185* ***Unknown Abuse Claim Fund*** means a portion of the Abuse Claims Settlement Fund established by the Trust exclusively for payment of Unknown Abuse Claims, which shall consist of either (a) five percent (5%) of all amounts in excess of the DOR Entities' Cash Contribution Remainder to be distributed to Abuse Claimants by the Trust pursuant to the Plan if the Unknown Claimant Representative elects to treat Unknown Abuse Claims as Consenting Abuse Claims and (b) $500,000 if the Uknown Claimant Representative elects to treat Unknown Abuse Claims as Non-Participating Abuse Claims.

*1.1.186* ~~*1.1.167*~~ ***U.S. Trustee Fees*** means all fees and charges assessed against the Estate of the Diocese under 28 U.S.C. § 1930 together with interest, if any, under 31 U.S.C. § 3717.

*1.1.187* ***Voting Deadline*** means the deadline established by the Court for claimants entitled to vote on the Plan to submit ballots accepting or rejecting the Plan.

27

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 35 of 113

### 1.2 Interpretation:  Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, Subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Disclosure Statement, and if not defined therein, in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payments or other Distribution under the Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

### 1.3 Exhibits.

All exhibits to the Plan and any other Plan Documents are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

### 1.4 Time Periods.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

## SECTION 2.   TREATMENT OF CLAIMS

### 2.1 Unclassified Claims.

2.1.1   ***Administrative Claims.***  Administrative Claims are Claims for costs or expenses incurred in the administration of the Diocese's Chapter 11 Case, which are Allowed pursuant to section 503(b) of the Bankruptcy Code.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims have not been classified and are treated as described in this Section 2.1 of the Plan.  Except as otherwise provided in the Plan, by written agreement of the holder of an Allowed Administrative Claim to accept different and less favorable treatment than provided under the Plan, or by order of the Bankruptcy Court, a Person holding an Allowed Administrative Claim will receive Cash equal to the unpaid portion of such Allowed Administrative Claim as soon as practicable after the later of:  (i) the Effective Date; or (ii) the date on which such Claim becomes an Allowed Administrative Claim.  Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Administrative Claim may be paid on such

28

~~17683006.4~~18335512.v7
Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 36 of 113

other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese or the Reorganized Diocese.

With respect to any trade Claims arising after the Petition Date representing obligations incurred by the Diocese in the ordinary course of its business consistent with past practice, such trade Claims shall be paid in the ordinary course of business. As to other Allowed Administrative Claims, except as otherwise provided in the Plan, each holder of an Allowed Administrative Claim: (i) shall be paid by the Reorganized Diocese as soon as reasonably practicable after the Effective Date or on the date the Order allowing such Administrative Claim becomes a Final Order; and (ii) shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash equal to the amount thereof, unless the holder agrees to less favorable treatment of such Allowed Administrative Claim.

Administrative Claims representing obligations incurred by the Diocese after the date and time of the entry of the Confirmation Order shall not be subject to application to the Bankruptcy Court and may be paid by the Diocese or the Reorganized Diocese in the ordinary course of business and without Bankruptcy Court approval.

2.1.2 ***Priority Tax Claims.*** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Diocese or the Reorganized Diocese, as applicable, Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of: (a~~i~~) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date~~,~~; (b~~ii~~) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim~~,~~; and (c~~iii~~) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; *provided*, *however*, that the Diocese reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium. The holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising from, or in connection with any Priority Tax Claim and any demand for such penalty will be deemed Disallowed by the confirmation of the Plan.

2.1.3 ***Non-Tax Priority Claims***. Unless the holder of an Allowed Non-Tax Priority Claim and the Diocese or the Reorganized Diocese (as applicable) agree to a different treatment, on, or as soon as reasonably practicable after, the later of: (a~~i~~) the Effective Date~~,~~; or (b~~ii~~) the date on which such Non-Tax Priority Claim becomes an Allowed Claim, each holder of ~~an~~ such an Allowed Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, such Allowed Claim, (a~~i~~) Cash equal to the unpaid portion of such Allowed Claim or (b~~ii~~) such other less favorable treatment as to which the Diocese or the Reorganized Diocese and the holder of such Allowed Claim shall have agreed upon in writing. The Trust shall not be responsible for payment of Non-Tax Priority Claims. Notwithstanding anything in the Plan to the contrary, the holder of an Allowed Non-Tax Priority Claim may be paid on such other date and upon such other terms as may be agreed upon by the holder of an Allowed Administrative Claim and the Diocese or the Reorganized Diocese.

2.1.4     ***Professional Fee Claims.***  In accordance with section 1123(a)(1) of the Bankruptcy Code, Professional Fee Claims have not been classified and are treated as described herein.   All Professionals or other Persons requesting an award by the Bankruptcy Court of Professional Fee Claims (a) shall:  (i) File their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is 60 days after the Effective Date.; and (bii) shall be paid in full, in Cash, by the Reorganized Diocese (ia) as soon as practicable after the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order;, or (iib) upon such terms as may exist pursuant to order of the Bankruptcy Court or as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Diocese or the Reorganized Diocese, as applicable.  The Diocese is authorized to pay its Professionals for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

Professional Fee Claims of Professionals employed by the Committee, which are incurred prior to the Effective Date of the Plan in connection with the implementation and consummation of the Plan, may be paid by the Diocese or the Reorganized Diocese, after notice and a hearing, or by the Trust from contributions by the Diocese or the Reorganized Diocese in addition to the amounts payable to Abuse Claimants under the Plan.

Professional Fee Claims of Professionals employed by the Diocese for services rendered prior to the Effective Date shall not be paid by the Trust.

2.1.5     ***U.S. Trustee Fees.***  U.S. Trustee Fees include all fees and charges assessed against the Diocese under 28 U.S.C. § 1930, together with interest, if any, under 31 U.S.C. § 3717.  All U.S. Trustee Fees due and owing but not paid prior to the Effective Date shall be paid by the Reorganized Diocese on the Effective Date.  In no event shall the payments made to the Trust pursuant to Sections 2, 5, 7 or 8 of this Plan by any Person other than the Diocese be considered "disbursements" under 28 U.S.C. § 1930, nor shall any payment made by the Trust to any Person be considered a disbursement under 28 U.S.C. § 1930.

## 2.2     Classification and Specification of Treatment of Claims.

All Claims, except those described in Section 2.1, are placed in the following Classes of Claims, pursuant to section 1123(a)(1) of the Bankruptcy Code, which section specifies the treatment of such Classes of Claims and of their Impaired or Unimpaired status, pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent that the Claim qualifies within the description of that different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, withdrawn, waived, or otherwise satisfied under this Plan.  Unless this Plan expressly provides otherwise, when a Class includes a subclass, each subclass is a separate Class for all purposes under the Bankruptcy Code, including, without limitation, voting and Distribution.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the respective treatments set forth below.  This Plan

30

17683006.418335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,   Description: Exhibit A - Joint Plan Redline, Page 38 of 113

will not provide any Distribution on account of a Claim to the extent that such Claim has been Disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties. Except as specifically provided in this Plan, this Plan will not provide any Distribution on account of a Claim, the payment of which has been assumed by a third party. Except as otherwise specifically provided in this Plan or by further order of the Bankruptcy Court, all treatment, allowances, or payments of Claims which have been specified or otherwise fixed or required by order of the Bankruptcy Court shall not be Impaired by this Plan and the rights of the holders of such Claims as provided in such orders shall not be altered by this Plan. Any holder of any Claim in any Class may agree, pursuant to section 1123(a)(4) of the Bankruptcy Code, to a treatment of such Claim that is less favorable (but not more favorable) than any other Claim in such Class.

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation of the Plan, and Distributions pursuant to the Plan:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Claims | No | Deemed to Accept |
| N/A | Priority Tax Claims | No | Deemed to Accept |
| N/A | Non-Tax Priority Claims | No | Deemed to Accept |
| N/A | Professional Fee Claims | No | Deemed to Accept |
| N/A | U.S. Trustee Fee Claims | No | Does Not Vote |
| 1 | Secured Claim of The Bank of Castile | No | Deemed to Accept |
| 2 | Pass-Through Claims | No | Deemed to Accept |
| 3 | General Unsecured Claims | Yes | Entitled to Vote |
| 4 | Abuse Claims | Yes | Entitled to Vote |
| 5 | Inbound Contribution Claims | Yes | Deemed to Reject |

### 2.3    Classes of Claims.

#### *2.3.1    Class 1 – Secured Claim of The Bank of Castile*

**Classification:** Class 1 is composed of the Secured Claim held by The Bank of Castile in connection with the Standby Letter of Credit.

**Treatment:** The Diocese is current with respect to all obligations due under the Standby Letter of Credit, and will continue to pay those obligations in accordance with the terms of the Standby Letter of Credit. The Trust shall not be responsible for the payment of the Class 1 Claim.

**Voting:** The Class 1 Claim is Unimpaired, and therefore, the holder of the Class 1 Claim is deemed to have accepted the Plan and is not entitled to vote.

#### *2.3.2    Class 2 – Pass-Through Claims.*

**Classification:** Class 2 includes all Pass-Through Claims.

31

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 39 of 113

**Treatment:** Upon the later to occur of the Effective Date and the date on which the Diocese designates a Claim as a Pass-Through Claim, the holder of such Pass-Through Claim shall be deemed to have granted relief from the automatic stay with respect to its Pass-Through Claim, such Pass-Through Claim shall not be subject to the Diocese Discharge, and the parties shall retain their respective rights, remedies, claims, and defenses as they existed on the Petition Date. The Diocese shall designate all Pass-Through Claims no later than sixty days after the Effective Date. The Trust shall not be responsible for the payment of any Pass-Through Claims.

**Voting:** Class 2 Pass-Through Claims are Unimpaired, and therefore, holders of Class 2 Claims are deemed to have accepted the Plan and are not entitled to vote.

### 2.3.3   *Class 3 – General Unsecured Claims.*

**Classification:** Class 3 Claims include all General Unsecured Claims.

**Treatment:** Except to the extent the holder of an Allowed General Unsecured Claim agrees in writing to accept less favorable treatment as proposed by the Diocese or Reorganized Diocese, the Reorganized Diocese shall pay each holder of an Allowed General Unsecured Claim, Cash in two installments each equal to 50% of the Allowed amount of such General Unsecured Claim with the first payment to occur on, or as soon as reasonably practicable after the later of (a) the Effective Date, and (b) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim, and the second payment to occur on, or as soon as reasonably practicable after the date that is six months after the date of the first payment. The foregoing payments shall be in full satisfaction, settlement, and release of, and in exchange for, such Allowed General Unsecured Claim. Notwithstanding anything to the contrary set forth above, no payments shall be made to any Protected Party on account of any General Unsecured Claim and all Protected Parties shall be deemed to have withdrawn any General Unsecured Claim with prejudice as of the Effective Date in consideration of the Channeling Injunction and Release provisions provided in Article 12 of the Plan.

The Trust shall not be responsible for payment of General Unsecured Claims.

**Voting:** Class 3 General Unsecured Claims are Impaired, and therefore, each holder of a Class 3 Claim is entitled to vote to accept or reject the Plan.

### 2.3.4   *Class 4 – Abuse Claims.*

**Classification:** Class 4 Claims include all asserted and unasserted Abuse Claims.

**Treatment:**

a.      On the Effective Date and subject to the Plan provisions, the Trust shall assume liability for all Abuse Claims, including Adult Abuse Claims and FutureUnknown Abuse Claims, in accordance with and under the Plan and Trust Documents. Distributions shall be made to holders of Abuse Claims on a fair and equitable basis, pursuant to and in accordance with the terms of this Plan and the Trust Documents. The Trust will initially distribute at least $105 million to First

32

17683006.418335512.v7
Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 40 of 113

GroupFiled Abuse Claimants and will reserve at least $17.5 million to fund operational expenses and costs of litigation with CNA and $3,576,500 as a reserve for payment of Second Groupsufficient funds to establish the Unknown Abuse ClaimsClaim Fund.

b. Class 4 Claimants shall have their Claims treated in accordance with the Allocation Protocol which shall provide as follows:

(i) The Abuse Claims Reviewer shall review of each of the Abuse Claims (as and when such Claims may be filed) and, according to the guidelines set forth below, make determinations upon which individual monetary distributions will be made subject to the Plan and the Trust Documents. The Abuse Claims Reviewer's review as to each Abuse Claimant shall be the final review, subject only to reconsideration as set forth in the Allocation Protocol.

(ii) The Abuse Claims Reviewer shall consider all of the facts and evidence presented by the Abuse Claimant in the Abuse Claimant's filed proof of claim (as the same may have been amended from time to time). Abuse Claimants may provide supplemental evidence and information to the Abuse Claims Reviewer as follows:

A. The Abuse Claims Reviewer may request additional information from an Abuse Claimant. Failure to respond to such request shall not be construed against the Abuse Claimant.

B. Each Abuse Claimant can submit a written statement (a "Supplemental Submission") to the Abuse Claims Reviewer no later than the Submission Deadline. Notice of the Submission Deadline (the "Supplement Notice") shall provide, among other things, the method for submission of Supplemental Statements. All notices by the Abuse Claims Reviewer to Abuse Claimants, including the Supplement Notice, shall be sent to each Abuse Claimant's counsel of record via email and first class mail at the address(es) provided in the applicable Abuse Claimant's proof of claim form.

C. The Supplemental Submission shall be no longer than 10 pages, single sided, double spaced with 12-point font; provided, however, that an Abuse Claimant not represented by counsel may submit a handwritten Supplemental Submission not to exceed 10 single sided pages in length. A Supplemental Submission shall be submitted by the Submission Deadline unless the Abuse Claims Reviewer determines, in his sole discretion,

33

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 41 of 113

there is good cause for delay.  The Abuse Claims Reviewer, in his sole discretion, may allow an Abuse Claimant to exceed the page limit for the Supplemental Submission.

(iii)    The Abuse Claims Reviewer shall consider whether the Abuse Claimant has proven by credible evidence that the Abuse alleged by each Abuse Claimant was perpetrated by a Perpetrator of the Diocese.  The Abuse Claims Reviewer shall give notice to the Abuse Claimant and the Trustee if he determines that the Abuse Claimant has not met the burden of proof and will provide the Abuse Claimant a reasonable opportunity to provide facts and/or legal basis to establish that the burden of proof has been met.  The Diocese and any Protected Party (other than a Settling Insurer) must cooperate with any reasonable information or discovery request by an Abuse Claimant that is necessary to respond to the Abuse Claims Reviewer's determination that the Abuse Claimant has not met the burden of proof.

(iv)    Each Abuse Claim will be evaluated by the Abuse Claims Reviewer.  Each Claim will be scored on a scale of up to 100 based on the Evaluation Factors.  The Abuse Claims Reviewer shall not consider the mere fact that a Claimant has been or is incarcerated in the review of the claim unless an element of the crime for which the Claimant was convicted includes fraud or misrepresentation.

A.    Solely with respect to ~~First Group~~Filed Abuse Claims held by Consenting Abuse Claimants, the Abuse Claims Reviewer may grant an additional award of up to 10 points based on the Abuse Claimant's level of participation in public events related to the Abuse Claims, including but not limited to: (a) leadership role in organizations dedicated to helping sexual abuse survivors, (b) active participation in the chapter 11 process, (c) active participation in litigation against the Diocese and/or a Participating Party regarding any Abuse Claim, and/or (d) participation in criminal proceedings against a Perpetrator of the Diocese.

B.    Solely with respect to ~~First Group~~Filed Abuse Claims held by Consenting Abuse Claimants, the Trustee shall apply a multiple of 1.25 to the award determined by the Abuse Claims Reviewer to any Abuse Claimant that also filed a complaint against the Diocese, any Protected Party, and/or any other Roman Catholic entity on or prior to August 13, 2021.

34

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,   Description: Exhibit A - Joint Plan Redline, Page 42 of 113

C. The Trustee shall apply any further enhancements to the claims awards for Litigation Claimants in accordance with Section 4.5.2 of the Plan.

D. Any ~~First Group~~Filed Late Claimant must submit a written statement (no longer than 10 pages, single sided, double spaced with 12-point font) regarding the basis for filing their Claim after the Bar Date, including the basis for any excusable neglect therefor. The deadline to submit such statement shall be the Submission Deadline provided upon notice by the Abuse Claims Reviewer. The Abuse Claims Reviewer shall award zero (0) points for any ~~First Group~~Filed Late Claimant that fails to submit such statement. With respect to any ~~First Group~~Filed Late Claim filed between August 14, 2021 and March 15, 2023, the Abuse Claims Reviewer (a) shall reduce the points awarded for such Claim by 15% and (b) may, in his sole discretion based on the ~~First Group~~Filed Late Claimant's statement, reduce the points awarded to any such Claim by up to 60% inclusive of the reduction in part (a) of this sentence. With respect to any ~~First Group~~Filed Late Claim filed between March 16, 2023 and the Effective Date, the Abuse Claims Reviewer (a) shall reduce the points awarded to such Claim by 40% and (b) may, in his sole discretion based on the ~~First Group~~Filed Late Claimant's statement, reduce the points awarded to any such Claim by up to 90% inclusive of the reduction in part (a) of this sentence. For example, if the Abuse Claims Reviewer assesses a ~~First Group~~Filed Late Claim at 100 points, he shall reduce the assessment to 85 points and may, in his sole discretion based on the ~~First Group~~Filed Late Claimant's statement, further reduce the assessment but he may not reduce it to less than 60 points.

E. The Abuse Claims Reviewer shall allocate points only for Abuse Claims. Zero (0) points shall be allocated for any Claim that is not an Abuse Claim. Further, zero (0) points shall be allocated for any Claim that is on account of non-sexual assault, non-sexual battery, non-sexual corporal punishment and any other non-sexual act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation or fraud, fraud in the inducement, misrepresentation, concealment, unfair practice, loss of consortium or any other non-Abuse tort.

(v) For the avoidance of doubt, the Abuse Claims Reviewer will conduct an evaluation of both ~~First Group~~Filed Abuse Claims and

35

~~Second Group~~Unknown Abuse Claims. ~~Second Group~~Unknown Abuse Claims shall be reviewed as they are ~~filed~~asserted until the Abuse Claims Last Filing Date.

(vi)    There will be no consideration of an Abuse Claimant's claims against any entity other than the Diocese or Participating Parties that may be liable to the Abuse Claimant.

(vii)    Monetary Distribution:

A.    The Abuse Claims Reviewer will arrive at a point total for each Abuse Claimant considering the Evaluation Factors.

B.    The Trustee shall calculate the value of an individual "point" after all Abuse Claims have been reviewed. The point value for ~~First Group~~Filed Abuse Claims held by Consenting Abuse Claimants will be determined by dividing the total dollars in ~~First Group~~the Filed Abuse Claim Fund by the total number of points awarded to all ~~First Group~~Filed Abuse Claims. The point value for ~~Second Group Abuse~~Filed Abuse Claims held by Non-Participating Abuse Claimants will be determined by dividing the total dollars in the Diocese Abuse Claims Settlement Sub-Fund by the total number of points awarded to all Filed Abuse Claims. The point value for Unknown Abuse Claims will be determined by dividing the total dollars in ~~Second Group~~the Unknown Abuse Claim Fund by the total number of points awarded to all ~~Second Group~~Unknown Abuse Claims, provided, however, that the point value for ~~Second Group~~Unknown Abuse Claims shall not exceed the point value for ~~First Group~~Filed Abuse Claims held by Consenting Abuse Claimants.

C.    ~~First Group~~Filed Consenting Abuse Claimants shall receive compensation from the ~~First Group~~Filed Abuse Claim Fund.

D.    ~~Second Group~~Unknown Abuse Claimants shall receive compensation solely from the ~~Second Group~~Unknown Abuse Claim Fund.

E.    Following the occurrence of the Abuse Claims Last Filing Date, and after the Trust has made all required Distributions on account of each eligible ~~Second Group~~Unknown Abuse Claim, any funds remaining in the ~~Second Group~~Unknown Abuse Claim Fund shall be

36

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,    Doc 2862-1,    Filed 12/12/24,    Entered 12/12/24 18:15:59,    Description: Exhibit A - Joint Plan Redline, Page 44 of 113

transferred to the ~~First Group~~Filed Abuse Claim Fund for distribution to ~~First Group~~Filed Abuse Claimants in accordance with the Allocation Protocol.

(viii)   The Trustee shall notify each Abuse Claimant in writing of the initial estimated monetary distribution regarding the Abuse Claimant's Claim, which distribution may be greater or smaller than the ultimate actual distribution to be received based on reserves established by the Trustee, the outcome of any reconsideration of claims, and the outcome of any post-confirmation litigation against Non-Settling Insurers.   The Trustee shall mail this preliminary determination to the Abuse Claimant to the Abuse Claimant's counsel of record, or in the case of unrepresented parties, to the last address based on the Abuse Claimant's filed proof of claim.  The Abuse Claims Reviewer's determination shall be final unless the Abuse Claimant makes a timely request for the point award to be reconsidered by the Abuse Claims Reviewer.  The Abuse Claimant shall not have a right to any other appeal of the Abuse Claims Reviewer's point award.   The Abuse Claimant may request reconsideration of the Abuse Claims Reviewer's point award by delivering a written request for reconsideration to the Abuse Claims Reviewer within 30 calendar days after mailing of the preliminary monetary distribution.   The Abuse Claimant, with the request for reconsideration, may submit additional evidence and argument supporting such request upon a showing that such additional information could not have been provided under this protocol. Additionally, the Abuse Claimant must include a check for $425 with his or her request for reconsideration to cover the costs of the reconsideration. The Trustee shall waive the reconsideration fee if an Abuse Claimant submits to the Trustee a statement signed under the penalty of perjury that they are unable to pay the reconsideration fee.   The Abuse Claims Reviewer shall have sole discretion to determine how to respond to the request for reconsideration.  The Abuse Claims Reviewer's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review or appeal by any party, including a court.

c.      Any Claims for punitive or exemplary damages will be treated as penalty Claims and will be Disallowed and receive no Distribution under the Plan.

d.      Except with respect to Litigation Claims brought by authorized Litigation Claimants in accordance with the terms of this Plan and Non-Participating PP Abuse Claims (which are preserved under the Plan), the right of any Class 4 Claimant to a trial by jury or otherwise against the Diocese and/or any Protected Parties is waived and released upon the occurrence of the Effective Date, and any Class 4 Claim they may hold will be solely determined by the Abuse Claims Reviewer in accordance with the Allocation Protocol.

e.      The Allocation Protocol was developed by the Committee, in consultation with State Court Counsel and was not developed by, or submitted for

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,   Description: Exhibit A - Joint Plan Redline, Page 45 of 113

the approval of, any of the Protected Parties, nor are the Protected Parties deemed to have accepted or acquiesced in the adoption of the Allocation Protocol. For the avoidance of doubt, the Insurance Settlement Agreements do not indicate the Settling Insurers' support for the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in the terms or use of the Allocation Protocol in any proceeding; the Settling Insurers take no position on the Allocation Protocol. If a Class 4 Claim is denied payment, in whole or in part, pursuant to the Allocation Protocol, the holder of such Class 4 Claim will have no rights against any of the Protected Parties relating to such Class 4 Claim, except to the extent a Non-Participating Abuse Claimant may retain their Non-Participating PP Abuse Claim in accordance with the terms of the Plan.

f.     None of the Trust, the Diocese, or the Reorganized Diocese shall have any obligation to take any action to enforce an Insurance Policy of a Non-Settling Insurer, including any obligation to commence/prosecute any action against any Non-Settling Insurer or to defend an action commenced by a Non-Settling Insurer, though the Trust (the Diocese, or the Reorganized Diocese), may do so in their sole and absolute discretion.

e.     ~~g.~~ The payment of the Class 4 Claims by the Trust will not, prior to the occurrence of the Abuse Claim Discharge Date, constitute a release, accord, or novation of the Diocese's or the Participating Parties' liability with respect to the Class 4 Claims; *provided*, *however*, for the avoidance of doubt: (i) the entirety of the Diocese's liability with respect to the Class 4 Claims shall be discharged under Bankruptcy Code section 1141(d), in accordance with Section 12.2, and all of the Participating Parties' liabilities with respect to any Consenting Abuse Claims are subject to the Channeling Injunction and the releases under the Plan; and (ii) all of the Settling Insurer's respective liabilities with respect to any Channeled Claims are subject to the Channeling Injunction and Supplemental Settling Insurer Injunction. Under no circumstances shall the Abuse Claims Reviewer's review of a Class 4 Claim affect the rights of a Non-Settling Insurer.

f.     ~~h.~~ Nothing in this Plan affects, diminishes or impairs any Class 4 Claimant's rights against any Joint Tortfeasor, including that Joint Tortfeasor's comparative fault or joint and several liability for Abuse, if any. In any litigation against a Joint Tortfeasor, nothing in this Plan or the Plan Documents shall be deemed an adjudication of a Class 4 Claim for any purpose or a limitation on the recovery against such Joint Tortfeasor; *provided, however*, that all of the Settling Insurers' respective liabilities with respect to any Channeled Claims are subject to the Channeling Injunction and Supplemental Settling Insurer Injunction.

g.     ~~i.~~ The Diocese and the Reorganized Diocese shall cooperate with the Abuse Claims Reviewer and/or the Trustee as reasonably requested by the Abuse Claims Reviewer and/or the Trustee in connection with the administration of the Allocation Protocol, provided that any DOR Entities' Post-Effective Date

38

Costs incurred in connection therewith are paid in accordance with the DOR Entities' Post-Effective Date Costs Procedures.

h.     ~~j.~~ The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the Diocese being in bankruptcy or by the ~~distributions~~<u>Trust Distributions</u> Class 4 Claimants receive, or are entitled to receive, based on the Plan<u>, Trust Agreement, or Allocation Protocol</u>.  For the avoidance of doubt, (i) determinations by the Abuse Claims Reviewer and/or any distributions entitled to be received from the Trust shall not constitute a determination of the Diocese's or any Participating Party's liability or damages for Class 4 Claims; and (ii) under no circumstances shall the Abuse Claims Reviewer's review of a Class 4 Claim affect, or be construed to affect, the rights of a Non-Settling Insurer.  The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Class 4 Claims.  Any such recoveries by the Trust from Non-Settling Insurers will become Trust Assets to be distributed pursuant to Section 4.4 of this Plan and the Allocation Protocol.

i.     ~~k.~~ As of the Effective Date of the Plan, the liability of Protected Parties for all ~~Class 4~~<u>Consenting Abuse Claims and Non-Participating DOR Abuse</u> Claims shall be fully assumed by the Trust, without any further order from the Bankruptcy Court or further action from any party, and pursuant to the Channeling Injunction set forth in Section 12.3 of the Plan.  All ~~Allowed Class 4~~<u>Consenting Abuse Claims and Non-Participating DOR Abuse</u> Claims shall be satisfied solely from the Trust as set forth in the Plan, the Trust Agreement, and the Allocation Protocol; *provided, however*, such assumption of ~~Class 4~~<u>Consenting Abuse</u> Claims shall not prevent Litigation Claimants from asserting Litigation Claims to the extent provided for herein; *provided further*, that the Channeling Injunction and Supplemental Settling Insurer Injunction prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim against any Settling Insurer or any Settling Insurer's Related Persons.

j.     ~~l.~~ No ~~Entity~~<u>Person</u>, other than the Committee or, following the Effective Date, the Trustee, may: (~~a~~<u>i</u>) object to any ~~Class 4~~<u>Consenting Abuse</u> Claim~~;~~ or (~~b~~<u>ii</u>) challenge the merit, validity, or amount of any ~~Class 4~~<u>Consenting Abuse</u> Claim, except that nothing in the Plan shall prevent the Diocese or any Participating Party, or with respect to ~~an~~<u>any Consenting</u> Abuse Claim implicating a Non-Settling Insurer Policy, a Non-Settling Insurer, from asserting any legal or factual defenses that the Diocese, a Participating Party, and/or ~~a~~ Non-Settling Insurer may have in response to any Litigation Claim.  Any objection or challenge to a ~~Class 4~~<u>Consenting Abuse</u> Claim pending as of the Effective Date is deemed withdrawn and shall not be refiled.  With the exception of the Trustee's objections or challenges to a ~~Class 4~~<u>Consenting Abuse</u> Claim, or the adjudication or settlement of a Litigation Claim, ~~Class 4~~<u>Consenting Abuse</u> Claims shall be treated in accordance with the Allocation Protocol and shall not be subject to any other review or judicial consideration.  <u>For avoidance of doubt, nothing in this</u>

Plan or the Plan Documents shall in any way restrict the Diocese, any Participating Party, or any other Person from objecting to or otherwise contesting any Non-Participating Abuse Claim on any basis or in any forum. Nothing in this Plan or the Plan Documents shall constitute an admission by any Protected Party as to the validity or amount of any Class 4 Claim, nor shall anything herein or therein (i) restrict the Diocese or the Participating Parties from ~~complying with~~satisfying any Post-Effective Date ~~Insurance Obligations or~~Preconditions to Coverage; or (ii) modify the terms of any Non-Settling Insurer Policy with respect to any failure of the Diocese or the Participating Parties to ~~observe or perform~~satisfy any Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage.

m.      No Class 4 Claimant shall receive a Distribution from the Trust until such Class 4 Claimant has executed and delivered to the Trust ~~the~~a Consenting Abuse Claim Release Agreement attached to the Plan Supplement as **Exhibit 4**2 or Non-Participating Abuse Claim Release Agreement attached to the Plan Supplement as **Exhibit 3**. Each Class 4 Claimant must release all Claims against the Protected Parties. The Trust must provide copies of all executed Abuse Claim Release Agreements ~~to the~~(a) to the Protected Parties, and (b) upon request, ~~(b)~~ to any Joint Tortfeasor that has executed a non-disclosure or confidentiality agreement. For the avoidance of doubt, nothing herein shall require a ~~Class 4~~Consenting Abuse Claimant to release any Person that is not a Protected Party or any Non-Participating Abuse Claimant to release any Person other than the Diocese.

n.      To preserve coverage under any Non-Settling Insurer Policy, subject to the provisions of Section 12.2 of the Plan, each ~~Class 4~~Consenting Abuse Claimant specifically reserves any Abuse Claims they may have against the Diocese or any Participating Party that implicate coverage under any Non-Settling Insurer Policy, but recourse is limited to the proceeds of the Insurance Claims that may be recoverable by the Trust from any Non-Settling Insurers. ~~Class 4~~Consenting Abuse Claims will be released as against the Diocese and the Participating Parties only upon the occurrence of the applicable Abuse Claim Discharge Date as provided in Sections 12.2.3 and 12.8 below.

o.      Subject to and conditioned upon entry of the Confirmation Order as contemplated in Section 11.1.1 of the Plan, Consenting Abuse Claimants in Class 4 shall automatically and without further action be deemed to irrevocably appoint the Committee as their attorney in fact and to grant to the Committee the authority to negotiate and agree to modifications of the treatment accorded to Class 4 claims, and the Plan generally on their behalf, between the Confirmation Date and the Effective Date, to the extent such modifications are necessary to satisfy or obtain the waiver of any of the conditions precedent to the Plan's Effective Date set forth in Sections 11.1.2 through 11.1.14, subject to the Committee's fiduciary duties to act on behalf of all creditors.

40

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 48 of 113

**Voting:** Class 4 Claims are Impaired, and each holder of a Class 4 Claim is entitled to vote to accept or reject the Plan. Only for purposes of voting, each Class 4 Claim is deemed to be Allowed in the amount of $1.00.

### ~~2.3.5~~ Class 5 – Inbound Contribution Claims.

**Classification:** Class 5 Inbound Contribution Claims include any Claim asserted against the Diocese for indemnity, contribution, or reimbursement arising out of, or related to, the Claimant's liability to pay or defend any Abuse Claim.

**Treatment:** Class 5 Claims shall be Disallowed and extinguished and there will be no Distributions to the holders of Class 5 Claims on account of such Class 5 Claims.

**Voting:** Class 5 Inbound Contribution Claimants will not receive or retain any property under the Plan and therefore are deemed to have rejected the Plan. Class 5 will not vote on the Plan.

## SECTION 3.    ACCEPTANCE OR REJECTION OF THE PLAN

### 3.1    Impaired Classes Vote.

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 3.2    Presumed Acceptance of the Plan.

Class 1 and Class 2 Claims are Unimpaired under the Plan and the holders of Class 3 Claims are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 3.3    Presumed Rejection of the Plan.

Class 5 Claims will not receive or retain any property under this Plan ~~and is,~~. Holders of Class 5 Clams are therefore~~,~~ deemed to ~~have rejected~~reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Notwithstanding such presumed rejection, holders of Class 5 Claims will be deemed to consent to the injunctions and releases set forth in the Plan unless they File a timely objection to confirmation of the Plan in accordance with Section 12.2.2(b).

### 3.4    Voting Classes.

Class 3 and Class 4 Claims are Impaired, and the holders of Claims in those Classes are entitled to vote to accept or reject this Plan.

### 3.5    Modification of Treatment of Claims.

The Diocese or the Reorganized Diocese may modify the treatment of any Allowed Claim in any manner adverse only to the holder of such Claim at any time after the Effective Date upon the consent of the holder of the Claim whose Allowed Claim is being adversely affected, or as Allowed by Bankruptcy Court order prior to the Effective Date.

### 3.6    Elimination of Vacant Classes.

Any Class of Claims that does not have, as of the Confirmation Date, at least one Allowed Claim, or at least one Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of (i) voting on the acceptance or rejection of the Plan and (ii) determining acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## SECTION 4.    ABUSE CLAIMS.

### 4.1    Assessment of Abuse Claims.

Class 4 Abuse Claims will be assessed and paid in accordance with the Allocation Protocol, which is designed to provide an expeditious, efficient, and inexpensive method for settling and resolving Abuse Claimsdetermining whether an Abuse Claimant is entitled to a Distribution from the Trust.  The Diocese, the Participating Parties, and the Reorganized Diocese shall reasonably cooperate with the Abuse Claims Reviewer and the Trustee in connection with any inquiries by either related to the administration of the Allocation Protocol, but shall not be required to act in any way that prevents the satisfaction of any Post-Effective Date Preconditions to Coverage under any Non-Settling Insurer Policy, if any (including, if applicable, by cooperating with a Non-Settling Insurer).   Under no circumstance shall the Abuse Claims Reviewer's review of an Abuse Claim or a Distribution to an Abuse Claimant have any effect on the rights, defenses, or obligations of any Non-Settling Insurer.

### 4.2    Legal Effect of Estimation of Claims and Distributions Under the Allocation Protocol.

The Abuse Claims Reviewer's determinations are for estimation and Distribution purposes only and shall not constitute findings as to, or the fixing of, facts or liability concerning the Abuse Claims with any binding legal effect.  The determination of Abuse Claimants' qualifications, the estimation of Abuse Claims, and the payment of Trust Distributions shall not be construed as an admission of liability by the Diocese, any Participating Party, any Tort Defendant or alleged Joint Tortfeasor, or the Trust with respect to any Abuse Claim and shall have no *res judicata* or collateral estoppel effect on the Diocese, the Reorganized Diocese, any Participating Party, the Trust, or any Non-Settling Insurer.  Trust Distributions do not release the Diocese nor are Trust Distributions an accord or novation of the Diocese's or any Protected Party's liability on account of the Abuse Claims; *provided, however*, that all of the Settling Insurers' respective liabilities with respect to any Channeled Claims are subject to the Channeling Injunction and Supplemental Settling Insurer Injunction.

The Trust's act of making a Distribution to an Abuse Claimant is immaterial to, and shall not be construed as, a determination or admission of the Diocese's, any Participating Party's, or any Non-Settling Insurers' liability for, or damages with respect to, any Abuse Claim. The determination of qualification, estimation of Abuse Claims, and the payment of Distributions is not a settlement, release, accord, or novation of any Abuse Claim. The determination of qualification, estimation of claims, and payment of partial Distributions does not impair a Litigation Claimant's right to obtain a judgment, including a judgment based on joint and several liability, against the Diocese and/or a Participating Party or any Non-Settling Insurer, for purposes of establishing the Diocese's and/or a Participating Party's liability ~~on the~~with respect to their Litigation Claim~~;~~, *provided*, *however*, (i) any such judgment awarded to a Litigation Claimant will be reduced by the amount of Trust Distributions already paid by the Trust to such Litigation Claimant on his or her Litigation Claim(s) and (ii) all of the Settling Insurers' respective liabilities with respect to any Channeled Claims (including Litigation Claims) are subject to the Channeling Injunction and Supplemental Settling Insurer Injunction. Neither the Abuse Claims Reviewer's review of an Abuse Claim and determination of qualification, nor the Trust's estimation of an Abuse Claim or the payment of Distributions shall: (i) constitute a trial, an adjudication on the merits, or evidence of liability or damages in any litigation with the Diocese or the Participating Parties, Non-Settling Insurers, or any other Person, or (ii) constitute, or be deemed, a determination of the reasonableness of the amount of any Litigation Claim, either individually or in the aggregate with other Litigation Claims, in any coverage litigation with any Non-Settling Insurers. The Trust's estimation of Abuse Claims and payment of Trust Distributions does not create an admission of the fact of liability, or the extent of damages, on behalf of the Diocese and/or any Participating Parties.

**4.3** **Insurance Settlements.**

The Trust shall use reasonable efforts, consistent with the terms of the Trust Agreement and its fiduciary duties to the Trust's beneficiaries, to enter into an Insurance Settlement Agreement with each Non-Settling Insurer.

**4.4** **Release and Discharge of Abuse Claims.**

Notwithstanding anything to the contrary herein, each Abuse Claimant must, prior to receiving a Distribution from the Trust, execute and deliver to the Trustee (i) a Consenting Abuse Claim Release Agreement in the form attached to the Plan Supplement as **Exhibit 2** if such Abuse Claimant is a Consenting Abuse Claimant or (ii) a Non-Participating Abuse Claim Release Agreement in the form attached to the Plan Supplement as **Exhibit 3** if such Abuse Claimant is a Non-Participating Abuse Claimant, *provided, however,* to preserve coverage under Non-Settling Insurer Policies, Consenting Abuse Claimants specifically reserve, and do not release, subject to the occurrence of the applicable Abuse Claim Discharge Date, any and all Abuse Claims that they may have against the Protected Parties that implicate coverage under Non-Settling Insurer Policies, but recourse on such Abuse Claims prior to their release is limited to any Trust Distributions as set forth in the Plan, the Trust Agreement, and the Allocation Protocol, and the proceeds of Non-Settling Insurer Policies and all other damages (including extra-contractual damages), awards, judgments in excess of policy limits, penalties, punitive damages and attorney's fees and costs that may be recoverable by the Trust from any

Non-Settling Insurers because of their conduct concerning insurance coverage for, or defense or settlement of, any Abuse Claim, and any such judgments or awards will be handled in accordance with the Plan.

Consenting Abuse Claims will be released or enjoined as against the Protected Parties for any Abuse that may be covered under Non-Settling Insurer Policies only upon the occurrence of the applicable Abuse Claim Discharge Date, as set forth in Section 12.2.3 and 12.7. Consenting Abuse Claimants will expressly reserve their rights against other Persons (other than Protected Parties), including Joint Tortfeasors, who will remain severally liable with respect to any Consenting Abuse Claims.

Non-Participating DOR Abuse Claims will be released or enjoined as against the Diocese upon the Effective Date, *provided, however,* that Non-Participating Abuse Claimants shall retain their Non-Participating PP Abuse Claims.

Any Person that is, or was alleged to be, a Joint Tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of any Consenting Abuse Claim or Non-Participating DOR Abuse Claim shall not be liable for any Protected Party's share of causal liability or fault and no Protected Party shall be liable for the share of causal liability or fault of any other Protected Party or Joint Tortfeasor.

For the avoidance of doubt, with respect to all Non-Abuse Claims, except as otherwise provided in the Plan, the Diocese's liability on account of such Claims shall be discharged pursuant to the provisions of 1141(d).

### 4.5    ~~4.4~~ Distributions to Abuse Claimants.

4.5.1    *Distributions Generally.* Abuse Claimants' recoveries under the Plan shall be limited to their Trust Distributions, if any, under the Allocation Protocol and Trust Documents. Abuse Claimants shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever from the Diocese, the Reorganized Diocese, any Participating Party, or their respective assets, or from any Settling Insurers or Settling Insurers' assets, for any Abuse Claims that are Channeled Claims, even if they are denied a Trust Distribution.

4.5.2    ~~An~~*Distributions to Consenting Abuse Claimants.* A Consenting Abuse Claimant whom the Abuse Claims Reviewer determines to be entitled to a Distribution, will receive a Distribution from the Trust in the amount(s) and at the time(s) provided for in the Allocation Protocol and Trust Documents; *provided, however,* no Consenting Abuse Claimant shall receive a Distribution from the Trust until such Consenting Abuse Claimant has executed and delivered to the Trust ~~the~~a Consenting Abuse Claim Release Agreement. Any payment on ~~an~~a Consenting Abuse Claim constitutes a payment for damages on account of a personal physical injury or sickness arising from an occurrence, within the meaning of section 104(a)(2) of the Internal Revenue Code of 1986, as amended. ~~For the avoidance of doubt, the Abuse Claimants' recoveries on their Claims shall be limited to their Trust Distributions, if any, under the Allocation Protocol and Trust Documents, and the Abuse Claimants shall not be entitled to collect personally, or otherwise, any additional amounts whatsoever on their Channeled Claims from any of the Protected Parties, or any of the Protected Parties' respective assets, even if an Abuse~~

44

~~17683006.4~~18335512.v7
Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 52 of 113

~~Claimant is denied a Trust Distribution.~~Distributions may commence only after the earlier of (a) sixty (60) days after the Effective Datre or (b) the entry of a final decree in this Chapter 11 Case, unless the Plan Proponents agree otherwise in writing.

### 4.5.3    *Distributions to Holders of Non-Participating Abuse Claims.*

a.    ***Default Distribution.***    Each Non-Participating Abuse Claimant shall receive, in full and final satisfaction of their Non-Participating DOR Abuse Claim: (i) one thousand dollars ($1,000) and (ii) the opportunity to establish an entitlement to further Distributions from the Trust in accordance with this Section 4.3.3 and the Allocation Protocol.  Each Non-Participating Abuse Claimant shall retain the right to assert any Non-Participating PP Claim they may have against any Participating Party, in accordance with, and subject to, the terms and provisions of the Plan.

b.    ***Establishing Liability.***

(i)    If a Non-Participating Abuse Claimant wishes to obtain a Distribution in excess of the default Distribution set forth in Section 4.3.3.a above, he or she must first execute and deliver to the Diocese a Non-Participating Litigation Claimant Agreement.

(ii)    Non-Participating Abuse Claimants who deliver to the Diocese an executed Non-Participating Litigation Claimant Agreement may, subject to the terms of this Plan and the other Plan Documents, litigate their Non-Participating DOR Abuse Claim in any court of competent jurisdiction.

(iii)    Notwithstanding any judgment or settlement obtained by a Non-Participating Abuse Claimant with respect to their Non-Participating DOR Abuse Claim, any recovery against the Diocese or the Reorganized Diocese by such Non-Participating Abuse Claimant shall be limited to the Distributions provided for in this Plan and the Allocation Protocol.

c.    ***Additional Distribution Upon Successful Litigation.***

(i)    Once a Non-Participating Abuse Claimant's Non-Participating DOR Abuse Claim is fully adjudicated or settled on a final and non-appealable basis, and if (x) as a result of such adjudication or settlement the Diocese is determined to be liable to such Non-Participating Abuse Claimant on their Non-Participating DOR Abuse Claim in an amount greater than the default Distribution provided in Section 4.3.3.a above, and (y) the Trust has not been terminated in accordance with the terms of the Trust agreement on or before the date on which the Non-Participating Abuse Claimant first presents their final and non-appealable judgment or settlement to the Trustee, such

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,    Doc 2862-1,    Filed 12/12/24,    Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 53 of 113

Non-Participating Abuse Claimant shall be entitled to a further Distribution from the Trust.

(ii) Such further distribution shall be made on or before the date that is 120 days after the date on which the Non-Participating Abuse Claimant presents their final and non-appealable judgment or settlement to the Trustee and shall be in an amount equal to the lesser of (x) the amount of the Diocese's liability for the applicable Non-Participating DOR Abuse Claim as set forth in such judgment or settlement and (y) the amount determined as a result of the Abuse Claim Reviewer's assessment of the Non-Participating Claimant's Non-Participating DOR Abuse Claim pursuant to the Allocation Protocol, in each case less the default Distribution previously paid pursuant to Section 4.3.3.a. For avoidance of doubt, Distributions to Non-Participating Abuse Claimants pursuant to clause (y) above shall be limited to (a) if the Non-Participating Abuse Claim was Filed on or prior to the Effective Date, the *pro-rata* portion of the Diocese Abuse Claims Settlement Sub-Fund allocable to such Non-Participating Abuse Claimant's Non-Participating DOR Abuse Claim, and (b) if the Non-Participating Abuse Claim is an Unknown Claim, the *pro rata* portion of the Unknown Abuse Claim Fund allocable to such Non-Participating Abuse Claimant's Non-Participating DOR Abuse Claim; holders of Non-Participating Abuse Claims shall not be entitled to receive any Distribution of any other Trust Assets, including, without limitation, any Trust Assets consisting of (a) the Participating Parties' Cash Contribution, (b) the Settling Insurers' Cash Contribution, (c) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement, (d) any Insurance Claim Proceeds, (e) proceeds of Litigation Awards, (f) proceeds of Outbound Contribution Claims, or (g) any other proceeds which the Trust may obtain pursuant to the terms of the Plan.

4.5.4 ***Unknown Claimant Treatment Election.*** The Unknown Claimant Representative shall, by written notice Filed on the docket on or before the Voting Deadline, elect on behalf of all, but not less than all, Unknown Abuse Claimants, to treat their respective Unknown Abuse Claims as either Consenting Abuse Claims or Non-Participating Abuse Claims. If the Unknown Claimant Representative fails to File such notice on or before the Voting Deadline, the Unknown Claimant Representative shall be deemed to elect to treat Unknown Abuse Claims as Consenting Abuse Claims.

a. If the Unknown Claimant Representative elects to treat Unknown Abuse Claims as Consenting Abuse Claims, except to the extent that a Unknown Abuse Claimant agrees to less favorable treatment of such Claim, each Unknown Abuse Claimant shall have the right to receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, their respective Unknown Abuse Claim, Distributions from the Unknown Abuse Claim Fund as provided in the Allocation Protocol and Trust Documents.

46

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 54 of 113

b.     If the Unknown Claimant Representative elects to treat Unknown Abuse Claims as Non-Participating Abuse Claims, except to the extent that a Unknown Abuse Claimant agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, their respective Non-Participating DOR Abuse Claim, each holder of a Unknown Abuse Claim shall, subject to the procedures set forth in Section 4.3.3 above, receive Distributions from the Unknown Abuse Claim Fund, and shall retain the right to assert any Non-Participating PP Claim they may have against any Participating Party, in accordance with, and subject to, the terms and provisions of the Plan.

### 4.6  ~~4.5~~ Litigation of Consenting Abuse Claims Against Non-Settling Insurers.

#### 4.5.1    *Litigation Claims.*

a.     At any time prior to the earlier to occur of the first anniversary of the Effective Date or the applicable Abuse Claim Discharge Date, the Trustee, in accordance with the Allocation Protocol and Trust Agreement, may authorize one or more ~~Class 4~~Consenting Abuse Claimants, at such Claimants' expense, to proceed as a Litigation Claimant by commencing (or resuming prosecution of) an action in any court of competent jurisdiction solely for the purpose of determining any liability that the Diocese and/or any Participating Party may have with respect to their Litigation Claim, the amount of that liability, and to pursue Insurance Claims against Non-Settling Insurers. For avoidance of doubt, no Non-Participating Abuse Claimant shall be authorized to serve as a Litigation Claimant.

b.     Prior to authorizing ~~an~~a Consenting Abuse Claimant to proceed as a Litigation Claimant, the Trustee shall (i) consult with the Diocese and/or any Participating Party against whom such Abuse Claimant's Claim is asserted and (ii) require the Abuse Claimant to execute a Litigation Claimant Agreement. The Trustee shall provide a copy of each Litigation Claimant Agreement to the Reorganized Diocese upon execution thereof, and to any other Protected Parties upon request.

c.     All DOR Entities' Post-Effective Date Costs incurred in connection with Litigation Claims shall be paid in accordance with the provisions of Section 8.11.

d.     Consistent with the injunctions and discharge provided for in Section 12 of this Plan, any Litigation Award obtained in respect of any Litigation Claim may not be enforced against (a) any of the Protected Parties, (b) any of the non-insurance property or assets of the Diocese, or any Participating Party; (c) the Residual Assets and any other property or assets that are vested in the Reorganized Diocese pursuant to this Plan, and any property or assets otherwise acquired by the Reorganized Diocese; or (d) any of the Settling Insurers' assets. Any Litigation Award arising from a Litigation Claim shall be paid under the Plan

and the Trust Allocation Protocol and shall be fully enforceable solely against, and paid by, any Non-Settling Insurer under the terms of that Non-Settling Insurer's Insurance Policy. Any recovery (including payment of a judgment or an unpaid judgment) from the prosecution of a Litigation Claim is deemed assigned to the Trust to the extent provided in the Plan, including as provided in the Allocation Protocol and Trust Documents. The Trust shall be authorized to pursue recovery of an unpaid judgment from any Non-Settling Insurer for the benefit of the Trust and all beneficiaries of the Trust. Notwithstanding the foregoing, a Litigation Claimant may settle his or her Litigation Claim prior to judgment with a Non-Settling Insurer in accordance with the terms of the Plan Documents, including without limitation Section 4.5.4.d. The Litigation Claimant shall have sole authority to negotiate and execute such settlement. If a Litigation Claimant settles their Litigation Claim and elects not to contribute the settlement proceeds to the Trust in accordance with Section 4.5.4(d) of the Plan, such Litigation Claimant shall no longer be eligible to share in any Trust Distributions on account of future Insurance Claim or judgment recoveries by the Trust.

*4.5.2* ***Claim Enhancement.*** To the extent the Trustee enters into a ~~settlement agreement (such settlement, a "~~"Trust Insurance Settlement~~")~~ with ~~any Non-Settling Insurer~~respect to a Target Policy that covers a Litigation Claimant's Abuse Claim ~~(the policy or policies that respond to such Claim(s) are a "Target Policy")~~, such Litigation Claimant shall be entitled to an enhanced Distribution (the "Claim Enhancement") as set forth below to his or her allocation pursuant to the Allocation Protocol, which enhanced amount shall be payable from the proceeds of the applicable Trust Insurance Settlement. The Claim Enhancements are independent of one another, and are not intended to be cumulative. The Trustee shall reserve sufficient amounts to fund such enhanced payments prior to making any Distribution of Trust Insurance Settlement proceeds to Abuse Claimants who are not Litigation Claimants. The Claim Enhancement shall be applied as follows:

      a. A Litigation Claimant shall be entitled to an enhancement of ten percent (10%) if the Trust negotiates a Trust Insurance Settlement for a Target Policy of such Litigation Claimant if the Trust Insurance Settlement is entered into prior to commencing litigation in such Litigation Claimant's case.

      b. A Litigation Claimant shall be entitled to an enhancement of twenty-five percent (25%) if the Trust negotiates a Trust Insurance Settlement for a Target Policy of such Litigation Claimant if the Trust Insurance Settlement is entered into after litigation commences but prior to a deposition or interview of the Litigation Claimant by opposing counsel in such Litigation Claimant's case.

      c. A Litigation Claimant shall be entitled to an enhancement of forty percent (40%) if the Trust negotiates a Trust Insurance Settlement for a Target Policy of such Litigation Claimant if the Trust Insurance Settlement is entered into after a deposition or interview of the Litigation Claimant by opposing counsel but before commencement of a trial in such Litigation Claimant's case.

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 56 of 113

d.     A ~~litigation~~Litigation Claimant shall be entitled to an enhancement of fifty (50%) if the Trust negotiates a Trust Insurance Settlement for a Target Policy of such Litigation Claimant if the Trust Insurance Settlement is entered into on or after the first day of a trial in such Litigation Claimant's case.

e.     A Litigation Claimant shall be entitled to an enhancement of one hundred percent (100%) if the Trust negotiates a Trust Insurance Settlement for a Target Policy of such Litigation Claimant if the Trust Insurance Settlement is entered into after a Litigation Award entered in favor of the Litigation Claimant in such litigation becomes final and non-appealable.

*4.5.3     Withdrawal of Litigation Claim.*  A Litigation Claimant may withdraw his or her election to be a Litigation Claimant at any time by written notice to the Trustee and the Reorganized Diocese.  Upon providing such notice, the Litigation Claimant's determination not to proceed as a Litigation Claimant shall be irrevocable.

*4.5.4     Payment of Settled Litigation Claim.*  A Litigation Claimant's allocated Trust Distributions shall be held in reserve by the Trustee until the earliest to occur of the following:

a.     a court of competent jurisdiction enters a Final Order determining that the Diocese and/or any Participating Party (as applicable) does not have any liability on account of such Litigation Claimant's Abuse Claim (any such order, a "Denial Order"), in which case such Litigation Claimant's Abuse Claim shall be Disallowed in its entirety and the Litigation Claimant shall not be entitled to any Distribution from the Abuse Claims Settlement Fund; provided, however, that such Litigation Claimant shall not be required to refund any Distribution received from the Trust prior to entry of a Denial Order;

b.     the Trust enters into a Trust Insurance Settlement with respect to the applicable Target Policy, in which case the Litigation Claimant's Abuse Claim shall be treated as a Channeled Claim under the Plan and the Trustee shall release such Litigation Claimant's Distribution (including any enhancement described above) from the Abuse Claims Settlement Fund;

c.     the Court enters a Litigation Award which becomes final and non-appealable, in which case the Litigation Claimant shall assign his or her Litigation Award to the Trust and participate in all Distributions from the Trust;

d.     the Litigation Claimant enters into a settlement with respect to his or her Abuse Claim, in which case: at the election of the Litigation Claimant: (i) the Trustee shall release such Litigation Claimant's Distribution from the Abuse Claims Settlement Fund, and the Litigation Claimant shall not be entitled to (1) any enhancement of his or her Distribution or (2) any Trust Insurance Settlement proceeds or other proceeds of judgments or Insurance Claims; or (ii) the Litigation Claimant shall assign his or her settlement proceeds to the Trust and participate in all Distributions from the Trust without enhancement.  Such

49

election must be made within thirty (30) days of the effective date of the settlement or the Litigation Claimant shall be deemed to have elected option (i) of this paragraph. Notwithstanding the forgoing, 10% of any such settlement proceeds shall be paid by the Litigation Claimant to the Trust on account of costs and expenses incurred by the Trust in connection with the Litigation Claimant's Claim; or

      e.      if the Trustee, upon consultation with the Litigation Claimant, determines that there is no reasonable risk to the Litigation Claimant's ability to recover from a Non-Settling Insurer, then the Trustee may, in his or her discretion, release the Litigation Claimant's allocated Distribution to the Litigation Claimant; provided, however, that if such Litigation Claimant's claim against a Non-Settling Insurer is not viable because of such Distribution to the Litigation Claimant, then the Litigation Claimant shall not be entitled to any additional recovery from the Trust or enhancement of his or her Distribution; *provided further, however*, that to the extent the Litigation Claimant may receive payment from proceeds of a subsequent Trust Insurance Settlement, any enhancement to the Litigation Claimant's award shall be paid solely from the proceeds of such subsequent Trust Insurance Settlement.

**4.7**   ~~4.6~~ **Dismissal of Pending Litigation.**

Upon the occurrence of the applicable Abuse Claim Discharge Date, the subject Abuse Claim asserted in any lawsuit against any Protected Party pending in state or federal court shall be dismissed, with prejudice, and without fees and costs being recoverable against any Protected Party, excepting only that nothing in the Plan shall require Non-Participating Abuse Claimants to dismiss their Non-Participating PP Abuse Claims against Participating Parties.

**4.8**   ~~4.7~~ **Claim Withdrawal.**

An Abuse Claimant may withdraw his or her Abuse Claim at any time on written notice to the Trustee. If withdrawn, the Abuse Claim will be withdrawn with prejudice and may not be reasserted, and such Abuse Claimant shall still be bound by the Diocese Discharge and all injunctive provisions of this Plan, including the Channeling Injunction to the same extent that such provisions applied to such Abuse Claimant's Abuse Claim prior to its withdrawal.

**4.9**   ~~4.8~~ **Medicare Procedures.**

With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims.

      4.9.1    *4.8.1* With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any potential reimbursements to Medicare in full. The Trust shall complete the following "Medicare Procedures" for Abuse Claims: (i) the Trustee shall determine whether each Survivor Claimant with a Date of Injury after December 5, 1980 is Medicare Eligible; (ii) upon request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to allow them to perform their own SSA queries to the extent they wish to do so; (iii) in

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 58 of 113

the event that one or more Abuse Claimants with Dates of Injury after December 5, 1980 is/are identified as Medicare Eligible, the Trust shall complete a query to the CMS for each such Abuse Claimant to determine whether any Conditional Payment has been made to or on behalf of that Abuse Claimant arising from or relating to treatment for Abuse; (iv) if any Conditional Payment has been made to or on behalf of that Abuse Claimant, the Trustee shall, within the time period called for by the MSPA, reimburse the appropriate Medicare Trust Fund for the appropriate amount, and submit the required information for that Survivor Claimant to the appropriate agency of the United States government.  Prior to such time that any Conditional Payments are made to Medicare Eligible Abuse Claimants, the Trustee shall provide a report to the Settling Insurers of (a) all Abuse Claimants who are determined to be Medicare Eligible, (b) the amount of any Conditional Payment to such Medicare Eligible Abuse Claimants and (c) the amount of any reserve maintained by the Trust to reimburse Medicare for any Conditional Payment to such Medicare Eligible Abuse Claimants.

4.9.2  ~~4.8.2~~ The Trust shall defend, indemnify, and hold harmless the Protected Parties from any Medicare Claims arising out of or related to an Abuse Claim, and any Claims related to the Trust's obligations under this Plan.

## SECTION 5.   SETTLING INSURERS

### 5.1    Insurance Settlement Agreements.

Each Insurance Settlement Agreement is effective and binding upon all Persons who have notice (including constructive notice, to the extent applicable), and any of the foregoing Persons' successors and assigns (including, for the avoidance of doubt, the Trust and the Trustee), upon the entry of a Final Order approving the Insurance Settlement Agreement and satisfaction of all conditions precedent.  Payments by each Settling Insurer to the Trust, and the releases by the Diocese and/or the Participating Parties of each Settling Insurer, pursuant to the Insurance Settlement Agreements, shall occur and/or be effective according to the terms of each such Insurance Settlement Agreement.   The Insurance Settlement Agreements shall survive the confirmation, effectiveness, and consummation of the Plan.  The rights of the parties under any Insurance Settlement Agreement shall be determined exclusively under the applicable Insurance Settlement Agreement and those provisions of the Final Order approving such Insurance Settlement Agreement, the Plan, and the Confirmation Order.  In the event of a conflict between (a) any Insurance Settlement Agreement, on the one hand, and (b) the Plan, on the other, the terms of the applicable Insurance Settlement Agreement shall control; and/or in the event of a conflict between (y) the Final Order approving an Insurance Settlement Agreement, on the one hand, and (z) the Confirmation Order, on the other, the terms of the applicable Final Order shall control.

### 5.2    Sale Free and Clear of Interests of Settling Insurer Policies.

As provided in each of the respective Insurance Settlement Agreements, each and every Settling Insurer Policy shall be sold to the issuing Settling Insurer, pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, free and clear of all liens and Claims of all Persons, to the extent provided for in each applicable Insurance Settlement Agreement.

**5.3    Resolution of Claims Involving Settling Insurers.**

The Confirmation Order shall provide that the Diocese or the Trust, as the case may be, and the Settling Insurer shall effect dismissal with prejudice of their Claims against each other in the Insurance Coverage Adversary Proceeding, with each side to bear its own fees and costs, in accordance with the terms and timeline(s) set forth in each Settling Insurer's respective Insurance Settlement Agreement.

**5.4    The Settling Insurer's Payments.**

The Settling Insurers will pay to the Trust the Insurance Settlement Amounts set forth ~~in their respective Insurance Settlement Agreements~~, on the terms and within the time set forth in their respective Insurance Settlement Agreements.

**5.5    Further Assurances; Non-Material Modifications.**

From and after the Effective Date, the Diocese and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the Insurance Settlement Agreements without further order of the Bankruptcy Court.  The Diocese and a Settling Insurer may make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of such Settling Insurer's Insurance Settlement Agreement, subject to the requirements thereof.  The Diocese and the Settling Insurers, with the consent of the Committee, may also make technical or immaterial alterations, amendments, modifications, waiver, or supplements to the terms of the Plan, subject to the requirements of the respective Insurance Settlement Agreements.  A Class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under Section 15.1 of the Plan, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such Class.  An order of the Bankruptcy Court approving any amendment or modification made pursuant to Section 15.1 of the Plan shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

**5.6    Waiver/Consent.**

In consideration of the releases and Channeling Injunction, the Supplemental Settling Insurer Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date and the satisfaction of the other conditions precedent to the effectiveness of the Insurance Settlement Agreements, and upon receipt by the Trust of the Insurance Settlement Amounts, each of the Protected Parties: (a) irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims it has or might have ~~not~~now or in the future against the other Protected Parties with respect to any contribution, subrogation, indemnification, or other similar Claim arising from or relating to ~~released Abuse~~Channeled Claims covered or alleged to be covered under the Settling Insurer Policies, and any Settling Insurer Policies; and (b) consents to the sale, as of the Confirmation Date, of the Diocese's and Participating Parties' Claims, if any, in the Settling Insurer Policies in accordance with the Insurance Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as

52

17683006.418335512.v7

Case 2-19-20905-PRW,    Doc 2862-1,    Filed 12/12/24,    Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 60 of 113

provided in the Plan.  Nothing in Section 12 of the Plan shall be construed to bar either: (ax) a Claim based on Abuse against a Person who is not a Protected Party, or (by) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing subsection (ax) under an Insurance Policy other than a Settling Insurer Policy.

### 5.7    Timing.

The injunctions, releases, and discharges to which any Settling Insurer is entitled pursuant to such Insurance Settlement Agreement, the Plan, the Confirmation Order, the Final Order approving the Insurance Settlement Agreement, and the Bankruptcy Code shall become effective pursuant to the terms of such Insurance Settlement Agreement.

## SECTION 6.    MATTERS RELATING TO NON-SETTLING INSURERS

### 6.1    Preservation of Rights and Obligations.

If an Abuse Claim is liquidated through the Allocation Protocol or in any state or federal court as may be permitted by the Plan, the Allocation Protocol, or the Trust Agreement, then the Protected Parties, the Trust, and each Non-Settling Insurer shall retain the right to assert any and all rights and defenses of the Protected Parties with respect to such Abuse Claim and all coverage defenses.  The rights, duties, and obligations of each Non-Settling Insurer under the Non-Settling Insurer Policies with respect to Abuse Claims are not affected in any way by the Diocese Discharge.

The rights and obligations (if any) of the Protected Parties and every Non-Settling Insurer under the terms of the Non-Settling Insurer Policies and at law shall not be affected by the Allocation Protocol and shall be treated as if the determination by the Abuse Claims Reviewer had never occurred.  Each Non-Settling Insurer shall be entitled to all rights and defenses as are provided under the terms of its Non-Settling Insurer Policies, as if the determination by the Abuse Claims Reviewer had never occurred.

Nothing in the Plan, the Confirmation Order, or any Plan Document shall impose any obligation on any Non-Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Abuse Claim, or grant to any Person any right to sue any Non-Settling Insurer directly, relating to an Abuse Claim.  All such obligations with respect to Non-Settling Insurers shall be determined by and in accordance with the terms of the Non-Settling Insurer Policies and with applicable non-bankruptcy law.

### 6.2    Estimations/Assessments of Abuse Claims Are Not Binding.

Estimations of Abuse Claims for purposes of determination, qualification, assignment of points pursuant to the Allocation Protocol, and payment of Trust Distributions:

> a.    shall not (i) constitute an admission of liability by any Person with respect to such Abuse Claims; (ii) have any *res judicata* or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or

53

17683006.418335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,   Description: Exhibit A - Joint Plan Redline, Page 61 of 113

novation of such Abuse Claims; or (iv) otherwise prejudice any rights of the Trust, ~~any of the Protected~~the Diocese, the Reorganized Diocese, the Participating Parties, the Settling Insurers, the Non-Settling Insurers, or ~~the~~Consenting Abuse Claimants in ~~all~~any other contexts or forums;

b.       shall be without prejudice to any and all rights of the Trust, the Non-Settling Insurers, and ~~the~~Consenting Abuse Claimants in ~~all~~any other contexts and forums; and

c.       shall not be deemed to be a determination of liability of the Diocese or any Participating Party or a determination of whether, or the extent to which, such Abuse Claim is covered under any Non-Settling Insurer Policy.

**6.3      Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage.**

6.3.1       Notwithstanding the Insurance Claims Assignment, the Diocese, the Reorganized Diocese, and the Participating Parties shall use reasonable efforts to ~~comply with~~satisfy any Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage, for purposes of preserving and maintaining as much insurance coverage as possible for the sole and exclusive benefit of the Trust, subject to the Trust's payment of any DOR Entities' Post-Effective Date Costs in accordance with Section 8.11.

6.3.2       If the Trust believes the Diocese, the Reorganized Diocese, or a Participating Party has failed to ~~comply with~~satisfy any Post-Effective Date ~~Insurance Obligation~~Preconditions to Coverage, the Trust shall give the Diocese, the Reorganized Diocese, or the Participating Party (as applicable) written notice identifying with specificity the Post-Effective Date ~~Insurance Obligation~~Preconditions to Coverage at issue and the action the Trust believes must be taken in order to ~~come into compliance~~satisfy the same.  Subject to further order of the Court, the Diocese, the Reorganized Diocese, and the Participating Parties shall have at least 45 days following receipt of any such notice from the Trust to either (i) undertake the actions requested by the Trust or (ii) seek a determination from the Court ~~as to the extent of their Post-Effective Date Insurance Obligations and~~(which shall not be binding upon any Non-Settling Insurer) as to whether the action requested by the Trust is required to ~~comply therewith~~satisfy any Post-Effective Date Preconditions to Coverage.  The Court will retain jurisdiction to adjudicate such dispute or claim.  Except in the case of willful misconduct by the Reorganized Diocese and any Participating Party, the Trust's sole remedy for any failure to ~~comply with~~satisfy any Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage shall be specific performance as ordered by the Court.

*6.3.2*       Nothing in this Plan shall impair, and each Non-Settling Insurer expressly retains, all contractual defenses to coverage, if any, available under any Non-Settling Insurer Policy arising from or relating to any actual or alleged failure by the Diocese, the Reorganized Diocese or any Participating Party to ~~comply with~~satisfy their respective Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage, if any.

54

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,   Description: Exhibit A - Joint Plan Redline, Page 62 of 113

**6.4    Trust Powers With Respect to Abuse Claims and Non-Settling Insurers.**

Solely as set forth in this Plan, the Allocation Protocol, or the Trust Agreement, any Abuse Claimant or the Trust with consent of an individual Abuse Claimant, may enter into a settlement of an individual Abuse Claim allowed by applicable non-bankruptcy law, and may enter into an arrangement with the Abuse Claimant's counsel, provided such counsel will receive reasonable compensation from any recovery from a Non-Settling Insurer.  Notwithstanding the foregoing, the foregoing sentence shall not apply to the Trust's negotiation and entry into a Trust Insurance Settlement.

The Trustee may use the Trust Assets to prosecute litigation against the Non-Settling Insurers.

If the Trust successfully resolves a Covered Claim or otherwise receives a recovery of insurance proceeds relating to any Abuse Claim from a Non-Settling Insurer, such proceeds shall become Trust Assets available to pay, and shall increase the amount available to pay, Consenting Abuse Claims, pursuant to the Allocation Protocol.

Upon the due execution and delivery of an Insurance Settlement Agreement, the entry of an order approving an Insurance Settlement Agreement, and the payment to the Trust of the settlement amount due thereunder, a Non-Settling Insurer shall become a Settling Insurer protected by the Channeling Injunction and the Supplemental Settling Insurer Injunction and become entitled to benefit from all releases executed by Claimants and the other rights and protections of a Settling Insurer under the Plan, the Trust Documents, and the orders approving Insurance Settlement Agreements.

**6.5    Insurance Coverage Adversary Proceeding.**

As of the Effective Date, the Trust shall be substituted as the named plaintiff in the Insurance Coverage Adversary Proceeding and have all rights of the Diocese and the Participating Parties to pursue recoveries against any Non-Settling Insurers.  For the avoidance of doubt, the Trust shall have no right to pursue recoveries in the Insurance Coverage Adversary Proceeding against any Settling Insurer or any Settling Insurer's Related Persons.

**SECTION 7.    MEANS FOR IMPLEMENTATION OF PLAN**

**7.1    Plan Implementation.**

All Administrative Claims, Priority Tax Claims, Non-Tax Priority Claims, Secured Claims, General Unsecured Claims, and Pass-Through Claims will be paid by the Diocese or the Reorganized Diocese.  All Distributions to be made under the Plan on account of Abuse Claims will be paid solely from the Trust to be established for the purpose of receiving, liquidating, and distributing Trust Assets in accordance with this Plan and, the Allocation Protocol.  The proposed, and the Trust Agreement is attached to the Plan Supplement as **Exhibit 5**..  The Allocation Protocol is attached to the Plan Supplement as **Exhibit 1** and is incorporated into the

17683006.418335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 63 of 113

Trust Agreement.  The proposed Trust Agreement is attached to the Plan Supplement as **Exhibit 5.**

    **7.2**    **Corporate Action.**

All matters provided under this Plan involving the corporate structure of the Diocese or corporate action to be taken by or required of the Diocese, or the Reorganized Diocese, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further approval by the Bankruptcy Court or any other governmental entity.  For avoidance of doubt, to the extent any corporate action or other transaction contemplated under this Plan would otherwise require approval under section 511 or 511-a of the New York State Not-For-Profit Corporation Law, the entry of the Confirmation Order shall constitute such approval.

    **7.3**    **Payments Effective Upon Tender.**

Whenever the Plan requires payment to be made to a Creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Diocese, or the Reorganized Diocese to the Creditor to whom payment is due.  If any Creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Diocese, or the Reorganized Diocese for the benefit of that Creditor pending final adjudication of the dispute.  However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the Creditor if the Trust, the Diocese, or the Reorganized Diocese failed to pay the tendered payment.

    **7.4**    **Agreements, Instruments, and Documents.**

All organizational agreements, charter documents, instruments, and documents required under this Plan to be executed or implemented, together with such others as may be necessary, useful or appropriate in order to effectuate this Plan, shall be executed on or before the Effective Date or as soon thereafter as is practicable.

    **7.5**    **Continuation of Insurance Policies.**

All Insurance Policies that are ***not*** Settling Insurer Policies shall, as applicable, either be deemed to be assumed by the Diocese pursuant to sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code to the extent such Insurance Policy is or was an executory contract of the Diocese, or continued in accordance with its terms pursuant to section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Diocese, such that each of the parties' contractual, legal, and equitable rights under each such Insurance Policy shall remain unaltered  To the extent that any or all such Insurance Policies that are not Settling Insurer Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption

56

~~17683006.4~~18335512.v7
Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 64 of 113

pursuant to sections 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Diocese, the Estate, and all parties in interest in this Chapter 11 Case. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Diocese existing as of the Effective Date with respect to any Insurance Policy. The Diocese reserves the right to seek rejection of any Insurance Policy or other available relief prior to the Effective Date.

### 7.6 Bar Date for Professional Fee Claims.

Each Professional retained or requesting compensation in the Chapter 11 Case, pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code, must File with the Bankruptcy Court a final application requesting the allowance of a Professional Fee Claim no later than 60 days after the Effective Date. All applications for the allowance of Professional Fee Claims that are not timely Filed shall be forever barred. Objections to such applications may be Filed in accordance with the Bankruptcy Rules. The Bankruptcy Court shall determine all such Professional Fee Claims.

### 7.7 Bar Date for Other Administrative Claims.

Except as provided for herein or in an order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims must File and serve on the Diocese requests for the payment of such Administrative Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Claims Bar Date, or such Administrative Claims shall be automatically considered Disallowed Claims, forever barred from assertion, and unenforceable against the Diocese or the Reorganized Diocese, the Estate, or their property without the need for any objection by the Diocese or the Reorganized Diocese, or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Administrative Claims shall be deemed fully satisfied, released, and discharged.

### 7.8 Exit Financing.

The Diocese may, at its discretion, obtain financing to assist the Diocese in making ~~its portion of~~ the ~~DOR Entities'~~ Diocese Cash Contribution, which financing may be secured by the Diocese's interest in certain real property located at 1150 Buffalo Road, Rochester, New York, or such other property of the Diocese that is not otherwise contemplated to be transferred (other than to the Reorganized Diocese) pursuant to this Plan. Any security interest or Lien in collateral granted to a lender in connection with such financing shall, on and after the Effective Date, be enforceable against any interest the Reorganized Diocese may have in such collateral, to the same extent it may have been enforceable against the Diocese prior to the Effective Date. In the event the Diocese elects to pursue such financing, the terms of such financing shall be submitted to the Bankruptcy Court at the Confirmation Hearing for approval pursuant to section 364 of the Bankruptcy Code.

57

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 65 of 113

## SECTION 8. THE TRUST

### 8.1 Establishment of Trust.

On the Confirmation Date, or as soon as practicable thereafter, the Trust shall be established in accordance with the Trust Documents for the exclusive benefit of the holders of Abuse Claims. The Trust will assume all liability for and rights concerning all Channeled Claims, including the rights to settle the Channeled Claims. The Trust will control the allocation and Distribution of the Abuse Claims Settlement Funds to Abuse Claimants pursuant to the terms of the Allocation Protocol, the Trust Agreement, the Plan, and the Confirmation Order. The Trustee shall establish and maintain a reserve for Trust Expenses, which shall be paid pursuant to the terms of the Trust Agreement.

### 8.2 Funding of the Trust.

8.2.1 ***DOR Entities'Diocese* Cash Contribution.** On or before the Effective Date, the Diocese ~~and the Participating Parties~~ shall cause the ~~DOR Entities'~~Diocese Cash Contribution to be paid to the Trust to establish the Trust Reserve, with any balance to be included in the Abuse Claims Settlement Fund. The Abuse Claims Settlement Fund may be supplemented from time to time from: (~~a~~i) any payment by a Settling Insurer pursuant to an Insurance Settlement Agreement; (~~b~~ii) any Insurance Claim Proceeds; (~~c~~iii) proceeds of Litigation Awards; (~~d~~iv) proceeds of Outbound Contribution Claims; and (~~e~~v) any other proceeds which the Trust may obtain pursuant to the terms of the Plan.

8.2.2 ***Participating Parties' Cash Contribution.*** On or before the Effective Date, the Participating Parties shall cause the Participating Parties' Cash Contribution to be paid to the Trust for inclusion in the Abuse Claims Settlement Fund.

8.2.2 ***Settling Insurers' Cash Contribution.*** The Settling Insurers will pay to the Trust the ~~sums~~Insurance Settlement Amounts set forth in their respective Insurance Settlement Agreements ~~pursuant to the terms of each such Insurance Settlement Agreement~~.

8.2.3 ***Insurance Claims Assignment.*** Insurance Claims against any Non-Settling Insurer shall be transferred to the Trust as follows:

a. On the Effective Date, and without further action by any party, the Diocese and ~~each of the Participating Parties~~the Consenting Abuse Claimants will be deemed to have assigned to the Trust ~~the Diocese's and~~their respective rights, if any, to all Insurance Claims and recoveries on account of such Insurance Claims against the Non-Settling Insurers. Additionally, on the Effective Date, and without further action by any party, each of the Participating Parties will assign to the Trust the Participating Parties' rights, if any, to all Insurance Claims and recoveries on account of such Insurance Claims against the Non-Settling Insurers. The foregoing transfer shall be effective to the maximum extent permissible under applicable law and shall not be construed: (i) as an assignment of the insurance policies; or (ii) to entitle any Person ~~or entity~~ to Insurance Coverage other than those Persons ~~or entities~~entitled to coverage under the terms

58

~~17683006.4~~18335512.v7
Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 66 of 113

of the Non-Settling Insurer Policies.  For the avoidance of doubt, the Trust shall be solely responsible for satisfying, to the extent required under applicable law, any self-insured retention obligations on account of any Consenting Abuse Claim or arising out of any Non-Settling Insurer Policy.  To the extent that the Trust pays any self-insured retention in connection with any Consenting Abuse Claim, such amount shall be paid by the Trust from the DOR Entities' Post-Effective Date Costs Reserve, and the Trust shall contemporaneously contribute funds to the DOR Entities' Post-Effective Date Costs Reserve in an amount equal to such self-insured retention paid.  To the extent the Diocese pays any self-insured retention, the Trust shall reimburse from the DOR Entities' Post-Effective Date Costs Reserve the Diocese for any amounts actually paid by the Diocese prior to making any Trust Distribution for the Abuse Claim for which the Diocese paid the self-insured retention, and the Trust shall contemporaneously contribute funds to the DOR Entities' Post-Effective Date Costs Reserve in an amount equal to such self-insured retention paid.  Nothing herein shall obligate any Non-Settling Insurers to advance any self-insured retention, unless otherwise required by applicable law.  Likewise, nothing herein shall obligate the Trust or the Diocese to pay any self-insured retention that is not otherwise required by applicable law.

b.        In the event that the Bankruptcy Court determines that the Insurance Claims Assignment is inconsistent with the Bankruptcy Code with respect to the Diocese, the Consenting Abuse Claimants and/or one or more Participating Parties, the Diocese, the Consenting Abuse Claimants, and each such Participating Party (as applicable) will retain their respective Insurance Claims.  In such case, the Diocese or a Participating Party will assert any retained Insurance Claims to the extent reasonably requested by the Trust against any Non-Settling Insurer.  The Diocese or Participating Party will retain counsel acceptable to the Trustee to prosecute any retained Insurance Claims (subject to any defenses the Non-Settling Insurers may have under applicable state law) and the Trust shall pay all attorney's fees, expert fees, and other costs and expenses incurred by the Diocese or the Participating Party in prosecuting the Insurance Claims.  For avoidance of doubt, any efforts by the Diocese or a Participating Party to prosecute the Insurance Claims shall be an accommodation to the Trust and any costs and expenses incurred in connection therewith shall be paid by the Trust in full and shall not be subject to the DOR Entities' Post-Effective Date Costs Procedures described below. The Trust shall have a common interest with the Diocese in prosecuting Insurance Claims, and may appear and be heard in connection with the prosecution of such claims, at its own expense, unconditionally, subject only to any limitations of law and equity.  The Diocese and the Participating Parties shall not settle any retained Insurance Claims without the prior written consent of the Trustee, which consent shall not be unreasonably delayed or denied.  All recoveries on account of retained Insurance Claims will be paid to the Trust, net of any unreimbursed attorney's fees, expert fees and other costs and expenses associated with prosecuting such retained Insurance Claims.

c.        For the avoidance of doubt, except as specifically set forth in this Section 8.2.3 and in Section 6.3 with respect to compliance withsatisfying

59

17683006.418335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 67 of 113

Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage, the Diocese, the Reorganized Diocese, and the Participating Parties make no representations or warranties, and shall have no duty or obligations whatsoever, to the Trust with respect to the Insurance Claims. The Trust shall assume all risks with respect to the litigation, liquidation and collection of the Insurance Claims.

8.2.4 **Outbound Contribution Claims**. Outbound Contribution Claims shall be automatically, and without further act or deed, assigned to the Trust on the Effective Date.

**8.3** **Vesting of Trust Assets.**

On the Effective Date, all Trust Assets shall vest in the Trust, and the Protected Parties shall be deemed for all purposes to have transferred all of their respective right, title, and interest in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Protected Parties, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of the Trust Assets in accordance with this paragraph, the Protected Parties shall have no further interest in or with respect to the Trust Assets other than the DOR Entities' Post-Effective Date Costs Reserve.

**8.4** **Non-Monetary Commitments.**

In order to further promote healing and reconciliation, and in order to continue efforts to prevent Abuse from occurring in the future, the Reorganized Diocese agrees that, beginning within thirty days after the Effective Date (unless a different date is provided in the Confirmation Order), it will use reasonable efforts to undertake and observe certain non-monetary commitments as agreed upon with the Committee and set forth as **Exhibit 7** in the Plan Supplement.

**8.5** **Appointment of the Trustee.**

The initial Trustee will be identified no fewer than ten Business Days before the Confirmation Hearing. The Trustee shall commence serving as the Trustee on the Effective Date; *provided*, *however*, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Bankruptcy Court, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

**8.6** **Trust Advisory Committee.**

The Plan and Trust Agreement provide for the creation of a Trust Advisory Committee, which shall initially consist of those members of the Committee who agree to serve on the Trust Advisory Committee. The members of the Trust Advisory Committee shall have only such limited rights, duties and powers as set forth in the Plan and Trust Agreement. The process for appointing replacement members of the Trust Advisory Committee shall be provided in the Trust Agreement. Upon termination of the Trust, or as otherwise provided in the Trust Agreement, the Trust Advisory Committee shall be deemed dissolved and discharged of and from all further

60

authority, duties, responsibilities, and obligations with respect to or in connection with the Trust and the Chapter 11 Case.

Except for the reimbursement of reasonable actual costs and expenses incurred in connection with their duties as members of the Trust Advisory Committee, the members of the Trust Advisory Committee shall serve without compensation. Reasonable expenses incurred by members of the Trust Advisory Committee may be solely paid by the Trust without need for approval of the Bankruptcy Court. For the avoidance of doubt, none of the Diocese, the Reorganized Diocese, or any Participating Party shall be responsible for any fees, costs, or expenses associated with the Trust Advisory Committee.

### 8.7 Rights and Responsibilities of Trustee.

The Trustee shall be deemed to be a fiduciary of the Trust under the terms of the Trust Agreement and shall have all rights, powers, authority, responsibilities, and benefits under New York law specified in this Plan and as reflected in the Trust Agreement, including commencing, prosecuting or settling causes of action, enforcing contracts, and asserting Claims, defenses, offsets and privileges. If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to Trustee's authority to act, the provisions of the Trust Agreement shall control. Among other things, the Trustee: (1) shall liquidate and convert to Cash the Trust Assets, make timely Distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under section 505(b) of the Bankruptcy Code for all returns ~~Filed~~filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may consult with the Trust Advisory Committee and retain professionals, including legal counsel, accountants, financial advisors, auditors, and other Agents on behalf of the Trust, and at the Trust's sole expense, as reasonably necessary and to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

The Trust shall make Trust Distributions to the Abuse Claimants. The Trust shall pursue Insurance Claims against any Non-Settling Insurers. The Trust shall fund DOR Entities' Post-Effective Date Costs pursuant to the DOR Entities' Post-Effective Date Costs Procedures and may seek reimbursement from any Non-Settling Insurer.

The Confirmation Order shall state that, absent permission of the Bankruptcy Court, no cause of action shall be commenced in any forum, other than the Bankruptcy Court, against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee.

### 8.8 Unknown Claimant Representative.

The Unknown Claimant Representative's services shall be limited to evaluating the adequacy and fairness of the Plan's treatment of Unknown Abuse Claims and making the election described in Section 4.3.4 of the Plan. The Unknown Claimant Representative will be compensated for his services to the extent set forth in the order approving the Unknown Claimant Representative's Retention.

61

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 69 of 113

### 8.9   8.8 Trust Pursuit of Insurance Claims.

8.9.1   *8.8.1 Trust's Rights to Pursue Insurance Claims.* Effective as of the Effective Date, the Insurance Claims are assigned and transferred to the Trust.

a.    The Trust shall be entitled to (i) all recoveries on account of Insurance Claims assigned to the Trust as set forth in the Plan, the Allocation Protocol, and the Confirmation Order, and (ii) to assert and/or assign to any Consenting Abuse Claimant or combination of Consenting Abuse Claimants, to the extent permitted by the Non-Settling Insurer Policies and applicable law, any and all Insurance Claims that currently exist or may arise in the future against Non-Settling Insurers.

b.    The Trust shall also have the exclusive right to pursue Insurance Claims against Non-Settling Insurers related to the Diocese's and/or the Participating Parties' liability for AbuseChanneled Claims or the Non-Settling Insurers' obligations in respect of such Channeled Claims as set forth in the Allocation Protocol. The foregoing transfer of the Insurance Claims shall not be construed to entitle any Person to insurance coverage other than those Persons entitled to such coverage from Non-Settling Insurers. For the avoidance of doubt, the Trust cannot present Non-Settling Insurers with a demand for Coverage or indemnification based upon Distributions made by the Trust to Abuse Claimants.

c.    The Trust may act in its own name, or in the name of any Consenting Abuse Claimant, the Diocese and/or a Participating Party to enforce any right, title, or interest of any such party in the Insurance Claims assigned to the Trust.

d.    No limitations on recovery from Non-Settling Insurers shall be imposed by virtue of the fact the Diocese is in bankruptcy or by any Distribution from the Trust to an Abuse Claimant.

e.    The Insurance Claims Assignment shall not affect any Non-Settling Insurer's duty to defend, but to the extent that the failure to defend or a separate agreement between the Diocese and/or a Participating Party and any Non-Settling Insurer gives rise to a monetary obligation to reimburse defense costs in lieu of a duty to defend, the Trust shall be entitled to the benefit of such monetary obligation or policy proceeds to the extent of any DOR Entities' Post-Effective Date Costs actually paid by the Trust.

f.    Any recovery by the Trust on Insurance Claims relating to the Diocese's and/or Participating Parties' liability for Abuse Claims shall become a Trust Asset and shall be distributed as provided in the Plan, the Trust Agreement, and the Allocation Protocol.

g.    The Trust's pursuit of the Participating Parties shall be limited to enforcing specific performance of the Insurance Claims Assignment and any other rights or interests expressly granted to the Trust under the Plan. Neither the Trust nor the Trustee may pursue any Settling Insurer for any Claim released, waived, or relinquished under such Settling Insurer's Insurance Settlement Agreement; *provided*, the Trust may enforce its rights (if any) and/or each Settling Insurer's obligations under the applicable Insurance Settlement Agreement(s).

h. The Trust shall have full access to coverage under the Non-Settling Insurer Policies ~~to the greatest extent~~as permitted by applicable non-bankruptcy law, ~~in the same manner and to the same extent, as any Abuse Claimant, the Diocese and any Participating Parties prior to the confirmation of the Plan and the Insurance Claims Assignment. The~~and the Non-Settling Insurers shall retain any and all rights and defenses to coverage under the Non-Settling Insurer Policies and applicable non-bankruptcy law.

i. The Insurance Claims Assignment does not affect any right of the Diocese, the Reorganized Diocese, any Participating Party or any Non-Settling Insurer to contest any liability or the amount of damages in respect of any Abuse Claims.

**8.9.2** ~~*8.8.2 Insurance Neutrality*~~**No Impact on Non-Settling Insurers.** Nothing in the Plan, the Allocation Protocol, the Trust Documents, the Plan Documents, any Confirmation Order (including any provision in the Confirmation Order), or any judgment, order, finding of fact, conclusion of law, determination or statement (written or verbal, on or off the record) made by the Bankruptcy Court, the District Court, or entered by any other court exercising jurisdiction over the Bankruptcy Case, including in any judgment, order, writ or opinion entered on appeal from any of the foregoing, shall in any Action brought by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding:

a. constitute an adjudication, judgment, trial, determination on the merits, finding, or conclusion of law establishing:

(i) ~~or liquidating~~ the liquidated liability (in the aggregate or otherwise) of (a) the Diocese, the Participating Parties, or the Trust, with respect to any Abuse Claims; or (b) any Non-Settling Insurer with respect to any Insurance Claim;

(ii) the liability or obligation of the Diocese, Participating Parties, or Trust with respect to any Abuse Claim;

(iii) that the aggregate value of the Abuse Claims is equal to the amount to be paid by the Diocese and/or the Participating Parties into the Trust;

(iv) that it is reasonable, in good faith, or consistent with the terms and conditions of any Non-Settling Insurer Policy for any of the Diocese, the Participating Parties, or the Trust, to settle, allow, assign any value to, liquidate, and/or pay (or present to any Non-Settling Insurer for payment) any Abuse Claim on any terms or conditions contemplated by the Plan, the Allocation Protocol (including any procedures, matrices or criteria used or considered in valuing, estimating or allowing Abuse Claims thereunder), any other Plan Documents, or any other document or agreement;

(v) that the Plan, any other Plan Document, or any other document or agreement (including any procedures, matrices or criteria

63

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 71 of 113

used or considered in valuing, estimating or allowing Abuse Claims thereunder) are reasonable or consistent with any procedures that were used to evaluate, settle, or pay Abuse Claims against the Diocese and the Participating Parties before the Petition Date or under the terms and conditions of any ~~Non-Settling~~Non-Settling Insurer Policy or applicable non-bankruptcy law;

(vi)    that the conduct of the Protected Parties, the Committee, or the Abuse Claimants, in connection with the negotiation, development, settlement and/or implementation of the Plan (including the aggregate value or amount of the DOR Entities' Cash Contributions), the other Plan Documents, or any related documents or agreements was, is, or will be consistent with the terms and conditions of any Non-Settling Insurer Policy or applicable non-bankruptcy law;

(vii)   that any Non-Settling Insurer was invited to participate in or participated in, consulted on, negotiated, and/or consented to the Allocation Protocol, the Trust Documents and other Plan Documents; and

b.      have any res judicata, collateral estoppel or other preclusive effect with respect to any matter set forth in Section ~~8.8.2(a)~~8.9.2.a hereof, or ~~shall~~ otherwise prejudice, diminish, impair, or affect (under principles of waiver, estoppel, or otherwise) any defense, Claim or right any Non-Settling Insurer may have under any Non-Settling Insurer Policy or applicable non-bankruptcy law with respect thereto.  Without limiting the foregoing, but subject to Sections ~~8.8.3 and  8.8.4~~8.9.4 below, it is expressly agreed by all Neutrality Parties that the Neutrality Parties are not litigating any issue set forth in Section ~~8.8.2(a)~~8.9.1.a hereof or any other Non-Settling Insurer coverage defenses, rights, obligations, or other coverage issue of any kind in this Chapter 11 Case;

c.      constitute a decision on any matter at issue or which may be raised as an issue in any Action by or against a Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding.  Thus, any judgment, order, finding of fact, conclusion of law, determination or other statement of the Bankruptcy Court or issued or affirmed by the District Court in this Bankruptcy Case, or entered by any other court exercising jurisdiction over the bankruptcy case, including any Confirmation Order or the Allocation Protocol and/or other Plan Documents and any finding, conclusion or determination entered in connection therewith, is not intended – and shall not be construed – to constitute a finding, conclusion or determination regarding any matter set forth in Section ~~8.8.2(a)~~8.9.2.a hereof or any other issue for any insurance coverage purpose whatsoever, and the Neutrality Parties shall not contend otherwise in any Action by or against a Non-Settling Insurer;

d.      subject to ~~Sections 8.8.3 and 8.8.4~~Section 8.9.4 below, impair any Non-Settling Insurer's legal, equitable, or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims, or any

64

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 72 of 113

policyholder's legal, equitable or contractual rights under any Non-Settling Insurer Policy or with respect to Insurance Claims. The Neutrality Parties shall retain, and be permitted to assert, in any Action against any Non-Settling Insurer, all Claims and/or defenses, including any coverage defenses related to the Abuse Claims, the Insurance Claims and/or the Non-Settling Insurer Policies, notwithstanding any provision of the Plan, Allocation Protocol, the Trust Documents, the other Plan Documents, the Confirmation Order, any findings of fact and/or conclusions of law with respect to the confirmation of the Plan, or any Final Order or opinion entered on appeal from the Confirmation Order; or

e.    subject to ~~Sections 8.8.3 and 8.8.4~~<u>Section 8.9.4</u> below, impair any Non-Settling Insurer's Insurer Contribution Claims, which may be asserted as a defense or counterclaim against the Diocese, the Participating Parties or the Trust (as applicable) in any Action <u>by or</u> against any Non-Settling Insurer, including the Insurance Coverage Adversary Proceeding.    To the extent the Insurer Contribution Claims of a Non-Settling Insurer are determined to be valid, the liability (if any) of such Non-Settling Insurer to the Trust shall be reduced by the amount of such Insurer Contribution Claims.    For avoidance of doubt, and notwithstanding anything to the contrary in this Section ~~8.8.2~~<u>8.7.1</u>, all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.5.1 of the Plan and no Insurer Contribution Claim shall be the basis for any affirmative recovery against the Diocese, the Reorganized Diocese, or any Participating Party.

~~8.8.3 **Denial of Coverage as Sole Remedy.** Notwithstanding anything to the contrary in Section 8.8.2, the sole remedy of any Non-Settling Insurer for any failure by the Diocese, the Reorganized Diocese, or any Participating Party to observe and perform any Post-Effective Date Insurance Obligations (if any) or any other duties or obligations that may exist under a Non-Settling Insurer Policy shall be limited to asserting any defenses to providing insurance coverage under the applicable Non-Settling Insurer Policy and nothing in this Plan shall serve as a basis for any Non-Settling Insurer to seek or be granted any affirmative relief against the Diocese, the Reorganized Diocese, or any Participating Party.~~

**8.9.3**    <u>***Non-Settling Insurers' Remedies.***</u>    <u>Notwithstanding anything to the contrary in Section 8.8.2, the Non-Settling Insurers' remedies are limited to those available under applicable law and nothing in the Chapter 11 Case shall enhance any right(s) a Non-Settling Insurer may have under applicable law.</u>

**8.9.4**    ~~*8.8.4*~~ ***Preservation of Plan Provisions*** ~~*Among Persons Other Than Non-Settling Insurers*~~**.** For the avoidance of doubt, ~~nothing~~<u>the provisions of Section 8.9.2 above are intended solely to ensure that the Plan leaves intact and does not alter or affect any rights or interests of the Non-Settling Insurers with respect to the Non-Settling Insurer Policies. Nothing</u> set forth in Section ~~8.8.2~~<u>8.9.2 is intended to, nor</u> shall <u>it,</u> impair <u>the effectiveness of</u> any provision of the Plan, including, without limitation, the Diocese Discharge, the Channeling Injunction, or any other release or injunctive provisions set forth in the Plan, as <u>such Plan provisions relate to any rights, Claims, actions, defenses, interests, transactions or other dealings</u> between ~~and~~<u>or</u> among (i) ~~any~~<u>one or more</u> Neutrality Parties who are not Non-Settling Insurers or (ii) any

65

~~17683006.4~~18335512.v7
Case 2-19-20905-PRW,    Doc 2862-1,    Filed 12/12/24,    Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 73 of 113

Neutrality Party who is not a Non-Settling Insurer and any Person who is not a Neutrality Party and each of the Neutrality Parties.

**8.10** **8.9** **Investment Powers; Permitted Cash Expenditures.**

All funds held by the Trust shall be held in Cash or invested in short-term highly liquidhighly-liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust Agreement. The Trustee may expend such Cash in a manner consistent with the terms of the Trust Agreement and the Allocation Protocol.

**8.11** **8.10** **Tax Matters.**

The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Diocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference. The Trust shall not be deemed to be the same legal entity as the Diocese or the Reorganized Diocese, but only the assignee of certain assets of the Diocese and a representative of the Estate for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall File such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 *et seq.*, as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 *et seq.*, and New York law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any. The Trustee may in its discretion, establish a disputed claims reserve for the Trust, which shall be administered in accordance with applicable law.

**8.12** **8.11** **DOR Entities' Post-Effective Date Costs Procedures.**

**8.12.1** **8.11.1** **DOR Entities' Post-Effective Date Costs Reserve.** The Trust shall establish the DOR Entities' Post-Effective Date Costs Reserve, which shall be funded in an initial amount of not less than $2,000,000 from the DOR Entities'Diocese Cash Contribution. The Trustee shall provide the Reorganized Diocese and all Participating Parties with a written statement as to the balance of the DOR Entities' Post-Effective Date Costs Reserve no later than the fifteenth day of each month until such time as the DOR Entities' Post-Effective Date Costs Reserve is exhausted.

The Trustee may increase the amount of, or replenish, the DOR Entities' Post-Effective Date Costs Reserve, in his or her sole and exclusive discretion. If the Trustee does not replenish the DOR Entities' Post-Effective Date Costs Reserve such that the DOSDOR Entities' Post-Effective Date CostCosts Reserve falls below $500,000, the Trustee shall immediately report the same to the Reorganized Diocese and all Participating Parties, and such parties shall meet and confer regarding (i) the Trustee's expectations with respect to the continued prosecution of Litigation Claims, (ii) the balance of any DOR Entities' Post-Effective Date Costs that are incurred but outstanding, and (iii) the parties' collective expectations as to any additional

66

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 74 of 113

DOR Entities' Post-Effective Date Costs that are likely to be incurred in order to ~~comply with~~satisfy any remaining Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage.

If the Trustee determines, in his or her sole discretion, not to replenish the DOR Entities' Post-Effective Date Costs Reserve such that the balance of the DOR Entities' Post-Effective Date Costs Reserve at any time falls below $300,000, the Trustee shall immediately report the same to the Reorganized Diocese and all Participating Parties and the Diocese, the Reorganized Diocese, and the Participating Parties shall be irrevocably released from any further obligations they would otherwise have under this Plan with respect to any Insurance Claims and/or Abuse Claims, including, without limitation, any ~~further obligations to comply with~~requirement that they satisfy or attempt to satisfy any Post-Effective Date ~~Insurance Obligations~~Preconditions to Coverage or to assist in the administration of the Allocation Protocol. For the avoidance of doubt, the Trust shall remain responsible for the payment of all DOR Entities' Post-Effective Date Costs incurred within one year following the date of such notice which are submitted in accordance with these procedures to the extent any funds remain in the DOR Entities' Post-Effective Date Costs Reserve. For further avoidance of doubt, all Non-Settling Insurers shall retain any defenses to coverage they may have as a result of any failure of the Diocese, the Reorganized Diocese, or any Participating Party to observe and perform any Post-Effective Date Insurance Obligation.

Nothing herein shall be construed to address the rights of any Non-Settling Insurer or the Trust, as assignee of Insurance Claims, upon any withdrawal of cooperation in defense of Claims by the Diocese and/or any Participating Party.

8.12.2 ~~8.11.2~~ **DOR Entities' Post-Effective Date Costs.** All invoices for DOR Entities' Post-Effective Date Costs shall be submitted to the Trustee via email within 60 days following the end of the month in which DOR Entities' Post-Effective Date Costs are incurred (such submission, a "Fee Notice"). All Fee Notices provided to the Trustee may be redacted to prevent the disclosure of privileged information or trial strategy. The Trustee shall keep all Fee Notices confidential and shall not share any information contained in them (other than the amount of the fees) with any member of the Trust Advisory Committee, any Litigation Claimant, or their respective individual counsel, or any professional whose firm ~~is counsel of record to~~previously represented the Committee in the Chapter 11 Case or represents the Trust or the Trust Advisory Committee in connection with any Insurance Claims. For the avoidance of doubt, the Trustee may share such Fee Notices with any professional advisors who are not counsel of record to the Trust or the Trustee with respect to the Insurance Claims.

The Trustee shall inform the Reorganized Diocese, the Participating Party, and any professional submitting a Fee Notice of any disputes regarding the requested fees and expenses within fifteen days of submission of a Fee Notice or shall pay the requested fees within such time. If any such dispute cannot be resolved within fifteen days or such other amount of time agreed upon by the parties, either may submit such dispute to the Bankruptcy Court, or, if the Chapter 11 Case has been closed, to any other court of competent jurisdiction located in Monroe County, New York for adjudication upon at least fifteen days' notice. The ~~Bankruptcy Court~~reviewing court shall review the applicable fees and expenses as to reasonableness in light of the work performed.

Professionals shall charge rates and expenses that are no higher than their usual and customary rates for similar work performed by such professionals for clients generally at the time such services are provided, and such rates may be adjusted from time to time in accordance with the general practices of such professionals, but not more often than once in any twelve-month period.

To the extent consistent with the advice of counsel, the Diocese and any Participating Parties will use reasonable efforts to retain joint professional representation in any case or cases brought by one Litigation Claimant pertaining to the same Abuse Claim.

**8.13** ~~8.12 Reserved~~**Participating Party Defense Costs.**

If the Unknown Claims Representative elects to treat Unknown Abuse Claims as Non-Participating Claims, the Trust shall establish the Participating Party Defense Reserve, which shall be funded in an amount not less than $3,000,000. At the request of any Participating Party, and subject to the consent of the Reorganized Diocese, the Trust shall pay or reimburse any Participating Party Defense Costs actually incurred or paid by the requesting Participating Party.

**8.14** ~~8.13~~ **No Recourse Against Trustee.**

No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any Agent retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Trustee in implementation of the Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, breach of the fiduciary duty of loyalty, or fraud, and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

None of the Protected Parties shall be liable for any acts or omissions by the Trust, the Trustee, or their respective Agents or Related Persons.

**8.15** ~~8.14~~ **Indemnification by Trust.**

The Trust shall defend, indemnify, and hold harmless the Trustee and its Agents to the fullest extent permitted under the laws of New York in the performance of their duties hereunder. For the avoidance of doubt, the Diocese, Reorganized Diocese, Participating Parties,

68

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 76 of 113

and their respective Agents shall not be deemed to be Agents of the Trust unless specifically authorized as such in writing by the Trustee.

The Trust shall defend, indemnify, and hold harmless any Settling Insurer as and to the extent set forth in such Settling Insurer's Insurance Settlement Agreement(s).

### 8.16   8.15 Trust Liability.

Upon the occurrence of the Effective Date, the Trust shall automatically and without further act or deed assume all responsibility for preserving, managing, and distributing Trust Assets.

Subject to and upon the occurrence of each applicable Abuse Claim Discharge Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Diocese and Participating Parties and Settling Insurers in respect of theall Abuse Claims (other than Non-Participating PP Abuse Claims), which shall become Channeled Claims in accordance with the terms of thisthe Plan.  On the Effective Date, the Trust shall automatically and without further act or deed assume all liability, if any, of the Settling Insurers in respect of the Abuse Claims and Channeled Claims.

### 8.17   8.16 Termination.

The Trust shall terminate after its liquidation, administration, and Distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth in the Trust Agreement.

## SECTION 9.   GENERAL CLAIMS ADMINISTRATION

### 9.1   Objections Toto Non-Abuse Claims and Non-Participating Abuse Claims.

Prior to the Effective Date, the Diocese shall have the authority to pursue any objection to the allowance of any Non-Abuse Claim or Non-Participating Abuse Claim.  From and after the Effective Date, the Reorganized Diocese will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making any Distributions with respect to Non-Abuse Claims and Non-Participating Abuse Claims (including those Non-Abuse Claims and Non-Participating Abuse Claims that are subject to objection by the Diocese as of the Effective Date); *provided*, *however*, that nothing in this Section shall affect the right of any party in interest (including the Reorganized Diocese and the Trustee) to object to any Non-Abuse Claim or Non-Participating Abuse Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan.  Unless otherwise provided in this Plan or by order of the Bankruptcy Court, objections to Non-Abuse Claims and Non-Participating Abuse Claims will be Filed and served not later than 60 days after the later of: (i) the Effective Date, or (ii) the date such Claim is Filed (the "the Claims Objection Deadline").  Such deadline.  The Claims Objection Deadline or any Bankruptcy Court-approved extension thereof, may be extended upon request by the Reorganized Diocese by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the

Reorganized Diocese's business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

### 9.2 Determination of Claims.

From and after the Effective Date, any Non-Abuse Claim as to which a proof of claim or motion or request for payment was timely Filed in this Chapter 11 Case, or deemed timely Filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such Non-Abuse Claim, (b) an application to equitably subordinate such Non-Abuse Claim, and (c) an application to otherwise limit recovery with respect to such Non-Abuse Claim, Filed by the Diocese, the Reorganized Diocese, or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Non-Abuse Claim. Any such Non-Abuse Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with this Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any Claims, rights, or causes of action that the Diocese or the Reorganized Diocese may have against any Person in connection with or arising out of any Claim or Claims, including any rights under 28 U.S.C. § 157; *provided, however*, that any Claims against the Settling Insurers that the Diocese or the Reorganized Diocese had, has, may have had, or may in the future have shall be waived and released in accordance with the terms of, and to the extent set forth in, the Settling Insurers' respective Insurance Settlement Agreements.

### 9.3 No Distributions Pending Allowance.

Except in the case of Abuse Claims paid pursuant to the Allocation Protocol, no Distribution will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

### 9.4 Claim Estimation.

To effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Case, with respect to Disputed Claims (except Consenting Abuse Claims), the Diocese or the Reorganized Diocese, after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District Court, pursuant to section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; *provided*, *however*, that the Bankruptcy Court or the District Court, as applicable, shall

70

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 78 of 113

determine: (y) whether such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings.

**9.5    Treatment of Contingent Claims.**

Except with respect to Abuse Claims, until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan.

**9.6    Controversy Concerning Impairment.**

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before confirming the Plan.

**9.7    Treatment of Executory Contracts and Unexpired Leases.**

Subject to the requirements of section 365 of the Bankruptcy Code, all executory contracts and unexpired leases of the Diocese except (i) Insurance Policies that have not been assumed and retained by the Diocese pursuant to Section 7.5, or (ii) executory contracts and unexpired leases that have been rejected by order of the Bankruptcy Court or are the subject of a motion to reject pending on the Confirmation Date, will be deemed to be assumed and assigned to the Reorganized Diocese on the Effective Date. If any party to an executory contract or unexpired lease that is being assumed and assigned to the Reorganized Diocese objects to such assumption and assignment, the Bankruptcy Court may conduct a hearing on such objection on any date that is either mutually agreeable to the parties or fixed by the Bankruptcy Court. All payments to cure defaults that may be required under section 365(b)(1) of the Bankruptcy Code will be made by the Reorganized Diocese, except that the Trust shall pay any cure costs under any Insurance Policy assumed and retained by the Diocese pursuant to Section 7.5. In the event of a dispute regarding the amount of any cure payments, or the ability of the Diocese or the Reorganized Diocese (as applicable) to provide adequate assurance of future performance with respect to any executory contracts to be assumed by the Diocese, or assumed and assigned to the Reorganized Diocese, the Trust or the Reorganized Diocese (as applicable) will make any payments required by section 365(b)(1) of the Bankruptcy Code after the entry of a Final Order resolving such dispute. The contracts and leases which will be assumed and assigned to the Reorganized Diocese, and their respective cure costs, are identified in **Exhibit 8** attached to the Plan Supplement. For the avoidance of doubt, none of the Settling Insurer Policies will be assumed or assigned to the Reorganized Diocese.

## SECTION 10.  PROVISIONS GOVERNING DISTRIBUTIONS

**10.1    Disbursing Agents.**

The Reorganized Diocese shall be the disbursing agent for all aspects of the Plan except for Distributions made from the Trust. With respect to the Trust, the Trustee shall be the disbursing agent and be responsible for all Distributions made under the Trust.

71

17683006.418335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 79 of 113

## 10.2 Manner of Payment.

Unless otherwise agreed by the Reorganized Diocese or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, all Distributions of Cash under the Plan may be made either by check via first class mail, postage prepaid, or by wire transfer from a domestic bank, at the option of the respective disbursing agent.

## 10.3 Distribution Only to Holders of Allowed Claims.

Except as otherwise provided in the Plan for ~~Non-Abuse Claims~~Abuse Claims which shall be neither Allowed nor Disallowed under the Plan (other than Non-Participating PP Abuse Claims which shall be Disallowed in their entirety), Distributions under the Plan and the Plan Documents will be made only to the holders of Allowed Claims. Until a Disputed Non-Abuse Claim becomes an Allowed Claim, the holder of that Disputed Non-Abuse Claim will not receive any Distribution otherwise provided to Non-Abuse Claimants under the Plan or the Plan Documents. If necessary in determining the amount of a *pro rata* Distribution due to the holders of Allowed Claims in any Class, the Reorganized Diocese will make the *pro rata* calculation as if all Disputed Non-Abuse Claims were Allowed Claims in the full amount claimed or in the estimated amount. When a Disputed Non-Abuse Claim in any Class becomes an Allowed Claim, the Reorganized Diocese will make a full or partial Distribution, as applicable, with respect to such Allowed Claim, net of any setoff contemplated by the order, if any, allowing such Claim and any required withholding of applicable federal and state taxes.

## 10.4 Disputed Claim Reserve.

~~To the~~Except with respect to Trust Distributions made to Abuse Claimants pursuant to the Allocation Protocol, to the extent that a disbursing agent makes a Distribution hereunder to a Class prior to the resolution of all Disputed Claims of such Class, the respective disbursing agent shall reserve an amount for any Disputed Claims in such Class equal to the amount that such holders of Disputed Claims in such Class would be entitled to receive under the Plan if such Disputed Claims were Allowed in the asserted amount of the Claim.

## 10.5 Transmittal of Distributions.

Except as otherwise provided in the Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to be made under the Plan, Confirmation Order, or Trust Documents to Class 4 Claimants will be made by the ~~Trustee~~Trust, and Distributions to all other Claimants will be made by the Diocese or the Reorganized Diocese. Distributions to Class 4 Claimants will be made: (~~a~~i) to the client trust account for the Claimant's attorney of record; or (~~b~~ii) if the Class 4 Claimant does not have an attorney of record, to the latest mailing address set forth in a proof of claim Filed with ~~the claims agent~~Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the ~~Reorganized Diocese or~~ Trustee~~, as applicable,~~ by such Claimant in writing; or (~~c~~iii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Diocese or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in this Chapter 11 Case. Distributions to ~~other~~ Claimants holding Non-Abuse Claims will be made by wire transfer or by check via first class

72

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 80 of 113

United States mail, postage prepaid, (~~a) to the client trust account for the Claimant's attorney of record; (b) if the Claimant does not have an attorney of record.~~i) to the latest mailing address set forth in a proof of claim Filed with ~~the claims agent~~Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Diocese, as applicable, by such Claimant in writing, or (~~e~~ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Diocese, to the mailing address set forth in the Schedules Filed by the Diocese in the Chapter 11 Case. If a Claimant's Distribution is not mailed or is returned to the Reorganized Diocese or to the Trustee because of the absence of a proper mailing address, the Reorganized Diocese or the Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such Claimant from information generally available to the public and from such party's own records, but shall not be liable to such Claimant for having failed to find a correct mailing address. The Trustee shall have no liability to a Class 4 Claimant on account of Distributions made to the client trust account of a Class 4 Claimant's attorney.

### 10.6 Timing of Distributions.

Unless otherwise agreed by the Reorganized Diocese or the Trustee, as applicable, and the recipient of a Distribution under the Plan or the Plan Documents, whenever any payment to be made is due on a day other than a Business Day, such payment will instead be made on the next Business Day. Any Claimant that is otherwise entitled to an undeliverable Distribution and that does not, within thirty days after a Distribution is returned to the Reorganized Diocese or to the Trustee, as applicable, as undeliverable or is deemed to be an undeliverable Distribution, provide the Reorganized Diocese or the Trustee, as applicable, with a written notice asserting its Claim to that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any Claim to such undeliverable Distribution and will be forever barred from receiving such undeliverable Distribution or asserting any Claim against the Reorganized Diocese, the Trust, the Trustee, or its property. Any undeliverable Distributions to be made by the Trust that are not claimed under this Section will become available for the Trust to distribute to other Abuse Claimants. Any other undeliverable Distributions shall be retained by the Reorganized Diocese in accordance with the Plan. Nothing in the Plan requires the Reorganized Diocese, the Trust, or the Trustee to attempt to locate any Claimant whose Distribution is undeliverable.

### 10.7 Time Bar to Check Payments.

If an instrument delivered as a Distribution to a Claimant by the Reorganized Diocese or the Trust is not negotiated within 90 days after such instrument is sent to the Claimant, then the instrument shall be null and void, the Claimant shall be deemed to have waived such Distribution, and all Claims in respect of such voided check shall be discharged and forever barred. Any request for re-issuance of a check must be made on or before 90 days after ~~the~~ issuance of a non-negotiated check. Except as otherwise provided herein, any Distribution under the Plan which is not negotiated after 90 days following issuance shall be forfeited, and such Distribution, together with any interest earned thereon, and shall return to and revest in the Reorganized Diocese or to the Trust, as applicable.

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 81 of 113

### 10.8    No Professional Fees or Expenses.

No professional fees or expenses incurred by a Claimant will be paid by the Diocese, the Reorganized Diocese, or the ~~Trustee~~Trust with respect to any Claim except as specified in the Plan or the Trust Documents.

### 10.9    No Interest on Claims.

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between the Diocese and the holder of a Claim approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing or any other provision of the Plan, the Confirmation Order, or the Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### 10.10    Saturday, Sunday or Holiday.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the following Business Day, but shall be deemed to have been completed as of the required date.

### 10.11    Withholding Taxes.

The Reorganized Diocese shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any Distribution under the Plan, the Reorganized Diocese will require that the holder of an Allowed Claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

### 10.12    Setoffs and Recoupment.

Subject to the terms of this Plan and pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Diocese or Reorganized Diocese, as appropriate, may, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any Claims of any nature whatsoever the Diocese may have against the holder of such Claim.

### 10.13    No *De Minimis* Distributions.

Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash (rounded to the nearest whole cent when and as necessary) will be issued to Claimants entitled to receive Distributions of Cash. Any Distribution of less than $25.00 will be considered *de minimis*, and holders of Allowed Claims

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 82 of 113

that are entitled to Distributions of less than $25.00 will not receive any Distribution. Such funds will remain with, and revest in, the Reorganized Diocese. For avoidance of doubt, this Section 10.13 shall not apply to any Distributions to be made by the Trust, which shall be governed solely by the Trust Documents.

### 10.14   Prepayment.

Except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Diocese shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## SECTION 11.  EFFECTIVE DATE

### 11.1   Conditions Precedent to Effective Date.

The Effective Date shall not occur, and the Plan shall not be consummated, unless each of the following conditions are satisfied or waived as set forth in Section 11.2 below:

11.1.1   ***Confirmation Order.***  The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Plan Proponents and the Settling Insurers; *provided, however*, that the findings and determinations set forth in the following clauses a. and b. of this Section 11.1.1 (or in any corresponding section or paragraph of the Confirmation Order) shall not be binding on the Settling Insurers. Neither the Insurance Settlement Agreements nor any of the Settling Insurers' actions or inactions in this Chapter 11 Case shall be deemed as support for such findings and determinations, the Insurance Claims Assignment and/or the Allocation Protocol, and no party shall argue that the Settling Insurers agreed to or acquiesced in such findings and determinations, the Insurance Claims Assignment and/lor Allocation Protocol in any proceeding. Rather, the Settling Insurers are designated as Protected Parties under the Plan, and as a result, the Settling Insurers take no position on such findings and determinations, the Insurance Claims Assignment, or the Allocation Protocol. Without limiting the generality of the foregoing, the Confirmation Order shall, at a minimum, contain findings by the Bankruptcy Court that:

a.     ~~authorizing~~ the assignment of Insurance Claims, or alternatively, the retention and prosecution of such claims following confirmation by the Diocese and other Participating Parties as contemplated in the Plan ~~to the extent~~is authorized ~~under bankruptcy or other applicable law~~by, and does not conflict with, any provision of the Bankruptcy Code, and is therefore approved;

b.     all of the requirements for confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code have been met and that the Plan should be confirmed;

c.     the Reorganized Diocese has been duly formed and is in good standing under New York law;

d.     ~~c. that~~the Bankruptcy Court has jurisdiction to approve, and does approve, the transfer of the Residual Assets to, and vesting of title in, the Reorganized Diocese in accordance with the provisions of section 511 or 511-a of

the New York State Not-For-Profit Corporation Law, and that no further approval by the New York Attorney General or the New York Supreme Court is required; and

e.    ~~d.~~ that, except as otherwise provided in this Plan, the Reorganized Diocese shall not be liable for any Claims against or liabilities of the Diocese or any of the Participating Parties, including under any theory of successor liability.

11.1.2    ***Channeling and Insurer Injunctions.***    The Confirmation Order shall approve and implement the Channeling Injunction and the Supplemental Settling Insurer Injunction set forth in Section 12 of the Plan.

11.1.3    ***Plan Documents.***    Except for the Allocation Protocol, the Plan Documents shall be in form and substance acceptable to the Plan Proponents and the Settling Insurers.    The Allocation Protocol shall be in form and substance acceptable to the Plan Proponents.

11.1.4    ***Trust Formation.***    The Trust shall have been formed, the Bankruptcy Court shall have entered an order appointing the Trustee, and the Trustee and the Diocese shall have executed the Trust Agreement.

11.1.5    ***The DOR Entities' Cash Contribution.***    The DOR Entities' Cash Contribution shall have been made to the Trust.

11.1.6    ***Insurance Settlement Agreements.***    Each Insurance Settlement Agreement agreed to prior to the Confirmation Date shall have been duly executed by all parties thereto and approved by the Bankruptcy Court, in each case in form and substance satisfactory to the Plan Proponents and applicable Settling Insurers.

11.1.7    ***The Settling Insurers' Contribution.***    ~~All payments due from~~Each of the Settling Insurers ~~pursuant to~~shall have paid to the Trust the Insurance Settlement Amounts due under their respective Insurance Settlement Agreements ~~have been made to the Trust~~, except to the extent the terms of such Insurance Settlement Agreements expressly provide that such payment will be made at a later date.

11.1.8    ***~~Reorganized Diocese Formation~~Permits and Approvals.***    The Reorganized Diocese ~~shall have been duly formed and in good standing under New York law, and~~ shall have obtained any necessary governmental permits or approvals required to take title to the Residual Assets, and to conduct business as a tax-exempt entity pursuant to 26 U.S.C. § 501(c)(3), on and after the Effective Date in substantially the same manner as the Diocese has historically conducted its business.~~    Notwithstanding the foregoing, this condition shall be waived if the Reorganized Diocese shall not have been duly formed and in good standing under New York Law within 60 days of the Confirmation Order becoming a Final Order.~~

11.1.9    ***Consent of all Abuse Claimants.***    All holders of Abuse Claims including, for the avoidance of doubt, Unknown Abuse Claims, shall be Consenting Abuse Claimants.

Case 2-19-20905-PRW,    Doc 2862-1,    Filed 12/12/24,    Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 84 of 113

11.1.10    *11.1.9* **Final Orders.**  The Confirmation Order, the order appointing the Trustee, and all orders approving Insurance Settlement Agreements shall be Final Orders and no stay of any such orders shall then be in effect.

11.1.11    *11.1.10* **No Material Amendments.**   The Plan shall not have been materially amended, altered, or modified as confirmed by the Confirmation Order, unless such material amendment, alternation, or modification has been made with consent of the Plan Proponents and any affected Settling Insurers.

*11.1.11* , Participating Parties and Abuse Claimants, provided, however, that the Committee shall have authority to negotiate and agree to modifications to the treatment accorded to Class 4 Claims on behalf of all Consenting Abuse Claimants in accordance with Section 2.3.5.h of the Plan*Reserved*.

## 11.2    **Waiver of Conditions.**

Any condition to the occurrence of the Effective Date set forth in Section 11.1 of this Plan may be waived only by the mutual written consent of the Diocese, and the Committee, theprovided, however, that each Settling Insurers with respect toInsurer must consent to a waiver of any conditions affecting such Settling Insurer's rights or obligations, and each of the Participating Parties with respect tomust consent to a waiver of any conditions affecting such Participating Party's obligations., except that the Diocese may waive the condition set forth in Section 11.1.12 on behalf of the Participating Parties.  For avoidance of doubt, neither the Diocese, the Committee, the Settling Insurers, or the Participating Parties shall have any obligation to waive any of the conditions set forth in Section 11.1, and each may withhold such consent in their sole and absolute discretion.

## 11.3    **Occurrence of Effective Date.**

If the Effective Date has not occurred within 90 days of the date on which the Confirmation Order becomes a Final Order, the Diocese or the Committee may elect to withdraw the Plan in their respective sole and absolute discretion.

## 11.4    *11.3* **Notice of Effective Date.**

The Diocese shall File a notice of Effective Date with the Bankruptcy Court, and serve it on all Creditors and parties in interest, within five Business Days after the occurrence of the Effective Date.  Such notice willshall include all relevant deadlines put into effect by the occurrence of the Effective Date.

## 11.5    *11.4* **Effect of Non-Occurrence of Condition.**

If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (i) constitute a waiver or release of any Claims by or against the Protected Parties; (ii) prejudice in any manner the rights of the Protected Parties or the Trust; (iii) constitute an admission, acknowledgment, offer, or undertaking by the Protected Parties in any respect, including but not limited to, in any proceeding or case against the Diocese or any Participating Party; or (iv) be admissible in any

77

17683006.418335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 85 of 113

action, proceeding or case against the Protected Parties in any court or other forum. Notwithstanding the foregoing, each Insurance Settlement Agreement (including any release or waiver of Claims in accordance with the terms thereof) shall continue and survive, in accordance with its terms and to the extent set forth therein.

## SECTION 12.  EFFECTS OF PLAN CONFIRMATION AND EFFECTIVE DATE

**12.1** **General Injunction and Discharge.**

12.1.1 ***General Injunction*. EXCEPT WITH RESPECT TO ABUSE CLAIMS AND INBOUND CONTRIBUTION CLAIMS ADDRESSED IN SECTION 12.2 BELOW, OR AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OF ANY KIND OR NATURE AGAINST THE DIOCESE, WHETHER KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, ~~ANY PARTICIPATING PARTY,~~ OR THE DIOCESE'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF NON-ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT (~~A~~I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE, (~~B~~II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (~~C~~III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN, ARE PERMANENTLY ENJOINED, ON AND AFTER THE CONFIRMATION DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM OR TAKING ANY ACT TO RECOVER SUCH CLAIM OUTSIDE OF THE CLAIMS ALLOWANCE PROCEDURE PROVIDED FOR IN THE PLAN AND THE BANKRUPTCY CODE AND BANKRUPTCY RULES, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION, OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DIOCESE OR THE REORGANIZED DIOCESE OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DIOCESE OR THE REORGANIZED DIOCESE ON ACCOUNT OF ANY SUCH CLAIM.**

12.1.2 ***General Discharge.*** Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese, the Estate, and the Reorganized Diocese will be discharged from all liability for any and all ~~Claims other than Abuse~~Non-Abuse Claims.

**12.2    Injunction and Discharge of Abuse Claims and Inbound Contribution Claims.**

12.2.1 ***Injunction of Abuse Claims and Inbound Contribution Claims.*** EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN SECTION 12.2.2 BELOW IN THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE ALL PERSONS SHALL BE PERMANENTLY STAYED, ENJOINED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING, OR ATTEMPTING TO ASSERT OR ENFORCE AGAINST THE DIOCESE, THE REORGANIZED DIOCESE, OR ANY PARTICIPATING PARTY, ANY ABUSE CLAIMS OR INBOUND CONTRIBUTION CLAIMS, KNOWN OR UNKNOWN, WHETHER OR NOT GIVING RISE TO A RIGHT TO PAYMENT OR AN EQUITABLE REMEDY, THAT AROSE, DIRECTLY OR INDIRECTLY, FROM ANY ACTION, INACTION, EVENT, CONDUCT, CIRCUMSTANCE, HAPPENING, OCCURRENCE, AGREEMENT, OR OBLIGATION OF THE DIOCESE, ANY PARTICIPATING PARTY, OR THE DIOCESE'S OR ANY PARTICIPATING PARTY'S AGENTS, BEFORE THE CONFIRMATION DATE, OR THAT OTHERWISE AROSE BEFORE THE CONFIRMATION DATE, INCLUDING ALL INTEREST, IF ANY, ON ANY SUCH CLAIMS AND DEBTS, WHETHER SUCH INTEREST ACCRUED BEFORE OR AFTER THE DATE OF COMMENCEMENT OF THE CHAPTER 11 CASE, AND INCLUDING ALL CLAIMS AND DEBTS BASED UPON OR ARISING OUT OF ABUSE CLAIMS AND FROM ANY LIABILITY OF THE KIND SPECIFIED IN SECTIONS 502(g), 502(h), AND 502(i) OF THE BANKRUPTCY CODE, WHETHER OR NOT: (A~~A~~I) A PROOF OF CLAIM IS FILED OR IS DEEMED FILED UNDER SECTION 501 OF THE BANKRUPTCY CODE;, (B~~B~~II) SUCH CLAIM IS ALLOWED UNDER THE PLAN; OR (C~~C~~III) THE HOLDER OF SUCH CLAIM HAS ACCEPTED THE PLAN.

IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.

THE DISCHARGE AND INJUNCTIONS CONTAINED IN THE PLAN AND THE RELEASES PROVIDED UNDER THE PLAN DO NOT RELEASE OR IMPAIR AN ABUSE CLAIMANT'S RIGHT TO RECOVER ON ANY ABUSE CLAIM AGAINST ANY PERPETRATOR OF ABUSE FOR ACTS OF ABUSE THAT ARE INDEPENDENT OF THE LIABILITY OF THE DIOCESE OR ANY PARTICIPATING PARTY.

79

~~17683006.4~~18335512.v7
Case 2-19-20905-PRW,    Doc 2862-1,    Filed 12/12/24,    Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 87 of 113

### 12.2.2 *Limited Exceptions to Injunctions.*

a. Non-Participating PP Abuse Claims Excepted. The injunctions set forth in Section 12.2.1 above, and Section 12.3 below, shall not apply to prevent a Non-Participating Abuse Claimant from pursuing or enforcing his or her Non-Participating PP Abuse Claim (if any) against a Participating Party.

b. Certain Inbound Contribution Claims Excepted. The injunctions set forth in Section 12.2.1 above, and Section 12.3 below, shall not apply to prohibit the pursuit or enforcement of an Inbound Contribution Claim against a Participating Party by any Person who affirmatively indicates, by Filing a timely written objection to confirmation of the Plan, that they will not consent to having such Inbound Contribution Claim (if any) enjoined as contemplated in the Plan. Any Person who holds an Inbound Contribution Claim against a Participating Party, whether or not Filed with the Bankruptcy Court or in any Abuse Action, and who fails to File a timely written objection to confirmation of the Plan shall be conclusively deemed to consent to the injunction set forth in Sections 12.2.1 and 12.3 and shall be bound thereby.

c. Preservation of Insurance Claims.

(i) ~~12.2.2 Limited Exception to Injunction.~~ To facilitate the pursuit of Insurance Claims against Non-Settling Insurers, the injunctions set forth in Section 12.2.1 above and 12.3 below shall not prevent the prosecution of Abuse Actions against the Diocese or any Participating Party (~~a~~i) by one or more Litigation Claimants authorized by the Trustee to pursue their Litigation Claims, at such Litigation Claimants' expense, in any court of competent jurisdiction solely for the purpose of determining any liability that the Diocese and/or any Participating Party may have with respect to such Litigation Claimant's Litigation Claim, and the amount of that liability; (ii) as the Trustee may deem necessary in order to prosecute the Insurance Claims against Non-Settling Insurers; or (~~b~~iii) as the Trustee may deem necessary in order to effectuate settlement of any Abuse Claims, *provided*, *however*, that all collection efforts against the Diocese and/or any Protected Party shall be enjoined and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party. For avoidance of doubt, the limited exception set forth in this Section 12.2.2.c permits (subject to the terms hereof) only the prosecution of Abuse Actions against the Diocese and/or a Participating Party; all collection efforts against any Protected Party are permanently barred and enjoined, and any Litigation Award obtained as a result of litigating such Abuse Actions shall be enforceable solely against Non-Settling Insurers and not against any Protected Party (or any of their respective assets except for any Non-Settling Insurer Policy).

(ii) To preserve coverage under any Non-Settling Insurer Policy, ~~Class 4~~ Abuse Claims will not be released or discharged as against the Diocese or any other Participating Party until the occurrence of the applicable Abuse Claim Discharge Date. For the avoidance of doubt, prior to the occurrence of the applicable Abuse Claim Discharge Date and subject to the limitations set forth in the Plan, a duly authorized Litigation Claimant or the Trust may name the Diocese or any Participating Party in a proceeding to adjudicate whether the Diocese or any Participating Party has liability for ~~an Abuse~~a Litigation Claim and the amount of any such liability, but recourse shall be limited to the proceeds of ~~the Insurance Claims. For the avoidance of doubt, Abuse Claims are released as to Settling Insurers upon payment of a Settling Insurer's Insurance Settlement Amount.~~any Non-Settling Insurer Policies and all other damages that may be recoverable against any Non-Settling Insurers.

d. Notwithstanding anything to the contrary herein: (i) the Reorganized Diocese shall have no liability whatsoever for any Abuse Claims or Inbound Contribution Claims and any act by any Person to collect or enforce any Abuse Claim or Inbound Contribution Claim against the Reorganized Diocese shall be permanently enjoined; and (ii) subject to and upon payment of a Settling Insurer's Insurance Settlement Amount, the applicable Settling Insurer shall have no liability whatsoever for any Channeled Claim, and the Channeling Injunction and Supplemental Settling Insurer Injunction prohibit any Person (including all Litigation Claimants) from asserting, enforcing, or attempting to assert or enforce any Channeled Claim against any such Settling Insurer or any Settling Insurer's Related Persons.

**12.2.3** ***Discharge of*** ~~***Diocese***~~***Abuse Claims and Inbound Contribution Claims***. Except as otherwise expressly provided in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, the Diocese and its Estate will be discharged ~~(a)~~ from: (i) all liability for any and all Inbound Contribution Claims on the Confirmation Date~~,~~; and (~~b~~ii) ~~from~~ all liability for any and all Abuse Claims upon the occurrence of the applicable Abuse Claim Discharge Date.

The Abuse Claim Discharge Date with respect to each Abuse Claim shall be determined as follows:

a. With respect to any Abuse Claim held by an Unknown Abuse Claimant or a Non-Participating Abuse Claimant, the Abuse Claim Discharge Date shall be the Effective Date.

b. ~~a. with~~With respect to any Filed Abuse Claim held by ~~an~~a Consenting Abuse Claimant who is authorized, on or before the first anniversary of the Effective Date, to proceed as a Litigation Claimant, the Abuse Claim Discharge Date shall be the earlier of (a) the date on which all Litigation Claims asserted by such Litigation Claimant against the Diocese and/or any Participating Party have been ~~finally~~fully adjudicated, settled or dismissed on a final and

81

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 89 of 113

non-appealable basis ~~or~~, (b) the date on which the Abuse Claimant withdraws his or her election to be a Litigation Claimant in accordance with Section 4.5.3 of the Plan~~; and~~, or (c) the date on which the Trust enters into a settlement with respect to all Non-Settling Insurer Policies that are Target Policies of such Litigation Claim.

 c. ~~b. with~~With respect to ~~all~~any Filed Abuse ~~Claims~~Claim held by Abuse Claimants who are not authorized ~~as~~by the Trustee to liquidate his or her Litigation ~~Claimants~~Claim on or before the first anniversary of the Effective Date, the Abuse Claim Discharge Date shall be the first anniversary of the Effective Date.

 d. For the avoidance of doubt, (i) the Abuse Claim Discharge Date for any Abuse Claim shall be deemed to occur no later than the first day following the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against any Non-Settling Insurers who issued Non-Settling Insurer Policies that are Target Policies of any Litigation Claimants' potential Litigation Claims, and (ii) the Abuse Claim Discharge Date for all Abuse Claims shall be deemed to occur no later than the first day following the date on which the Trust has fully adjudicated, settled or dismissed on a final and non-appealable basis all Insurance Claims against all Non-Settling Insurers.

 12.2.4  ***Preservation of Insurance Claims***. The Non-Settling Insurers remain fully liable for their obligations related in any way to the Abuse Claims, and their obligations are not reduced by the fact that the Diocese is in bankruptcy or by the amount of any Distributions Abuse Claimants receive, or ~~are~~may be entitled to receive, based on the Plan. The Trust may continue efforts to obtain recoveries from Non-Settling Insurers related to the Abuse Claims as set forth in the Plan. Any such recoveries by the Trust from Non-Settling Insurers will be added to the Abuse Claims Settlement Fund to be distributed pursuant to the terms of the Plan, the Allocation Protocol and the Trust Documents. Nothing in this Plan shall be deemed to modify or abridge any rights of the Non-Settling Insurers under their respective Non-Settling Insurer Policies.

 **12.3**  **Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties.**

 **IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES, THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:**

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 90 of 113

      **A.** **ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.**

      **B.** **ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:**

      **(I)** **COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

      **(II)** **ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;**

      **(III)** **CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;**

      **(IV)** **ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:**

      **(A)** **ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;**

      **(B)** **ANY OF THE PROTECTED PARTIES; OR**

      **(C)** **THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

      **(V)** **TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND**

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 91 of 113

**(VI)** **ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.**

**THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES. IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING**.

**12.4** **Supplemental Settling Insurer Injunction.**

**PURSUANT TO SECTIONS 105(~~A~~a), 363, AND 1129 OF THE BANKRUPTCY CODE, AND IN CONSIDERATION OF THE UNDERTAKINGS OF THE SETTLING INSURERS PURSUANT TO THE INSURANCE SETTLEMENT AGREEMENTS, INCLUDING THE SETTLING INSURERS' PURCHASE OF THE APPLICABLE SETTLING INSURER POLICIES FREE AND CLEAR OF ALL CLAIMS PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ANY AND ALL PERSONS WHO HAVE HELD, NOW HOLD, OR WHO MAY IN THE FUTURE HOLD ANY ~~CLAIMS (INCLUDING ALL DEBT HOLDERS, ALL EQUITY HOLDERS, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, CLASS 3 CLAIMANTS, ABUSE CLAIMANTS, HOLDERS OF FUTURE CLAIMS, PERPETRATORS, NON-SETTLING INSURERS, THE DIOCESE, THE PARTICIPATING PARTIES, AND ALL OTHERS HOLDING INTERESTS OF ANY KIND OR NATURE WHATSOEVER, INCLUDING THOSE CLAIMS RELEASED OR TO BE RELEASED PURSUANT TO THE INSURANCE SETTLEMENT AGREEMENTS) AGAINST ANY OF THE PROTECTED PARTIES, WHICH CLAIMS ARISE UNDER OR RELATE (DIRECTLY OR INDIRECTLY) TO ANY OF THE SETTLING INSURER POLICIES, INCLUDING (A) ABUSE CLAIMS, FUTURE CLAIMS, CLASS 3 CLAIMS, INBOUND CONTRIBUTION CLAIMS, ALL OTHER CHANNELED CLAIMS, AND RELEASED INSURANCE CLAIMS, (B) THE PAYMENT OF ANY OF THE CLAIMS IDENTIFIED PREVIOUSLY INCLUDING MEDICARE CLAIMS, AND (C) EXTRA-CONTRACTUAL CLAIMS,~~CHANNELED CLAIMS ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, TO ASSERT, ENFORCE OR ATTEMPT TO ASSERT OR ENFORCE ANY SUCH CHANNELED CLAIM ~~OR INTEREST~~ AGAINST (X) THE SETTLING INSURERS, (Y) THE**

84

SETTLING INSURERS' RESPECTIVE RELATED PERSONS, ASSETS, OR PROPERTY, OR (Z) ANY SETTLING INSURER POLICIES, INCLUDING BY:

(I)     COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY OF THE SETTLING INSURERS OR AGAINST THE PROPERTY OF ANY OF THE SETTLING INSURERS;

(II)     ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY OF THE SETTLING INSURERS OR THE PROPERTY OF ANY OF THE SETTLING INSURERS;

(III)     CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND AGAINST ANY OF THE SETTLING INSURERS, OR THE PROPERTY OF THE SETTLING INSURERS;

(IV)     ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY SUCH CLAIM OF ANY KIND AGAINST:

(A)     ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;

(B)     ANY OF THE PROTECTED PARTIES; OR

(C)     THE PROPERTY OF ANY OF THE PROTECTED PARTIES.

(V)     TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND

(VI)     ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE SETTLING INSURERS, OR THE PROPERTY OF ANY OF THE SETTLING INSURERS.

THE SUPPLEMENTAL SETTLING INSURER INJUNCTION WILL BE EFFECTIVE WITH RESPECT TO A SETTLING INSURER ONLY AS OF THE DATE THAT THE TRUST RECEIVES THE INSURANCE SETTLEMENT AMOUNT FROM THAT SETTLING INSURER PURSUANT TO THE TERMS OF THE APPLICABLE INSURANCE SETTLEMENT AGREEMENT. THE SUPPLEMENTAL SETTLING INSURER INJUNCTION BARS PURSUIT OF THE ABOVE-REFERENCED CHANNELED CLAIMS AND/OR INTERESTS AGAINST THE SETTLING INSURERS, THE SETTLING INSURERS' RELATED PERSONS, AND THE SETTLING INSURER

85

17683006.4 18335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 93 of 113

**POLICIES, BUT AGAINST NO OTHER PERSON OR THING; <u>PROVIDED, HOWEVER,</u> NOTHING IN THIS SUPPLEMENTAL SETTLING INSURER INJUNCTION SHALL LIMIT, OR BE DEEMED OR OTHERWISE INTERPRETED TO LIMIT, THE SCOPE OF THE DISCHARGE OR CHANNELING INJUNCTION IN FAVOR OF THE PROTECTED PARTIES. THE FOREGOING INJUNCTIVE PROVISIONS ARE AN INTEGRAL PART OF THE PLAN AND ARE ESSENTIAL TO ITS IMPLEMENTATION. THE SUPPLEMENTAL SETTLING INSURER INJUNCTION SHALL NOT APPLY TO A NON-SETTLING INSURER.**

**12.5** **Litigation/Settlement** ~~Between a Participating Party or Abuse Claimant and Non-Settling Insurers~~<u>of Certain Claims.</u>

~~*12.5.1* The Channeling Injunction shall channel all Inbound Contribution Claims and Insurer Contribution Claims to the Trust.~~

<u>12.5.1  Except as expressly set forth in Section 12.2.2 of the Plan or in the Confirmation Order, the Channeling Injunction shall channel all Inbound Contribution Claims and all Insurer Contribution Claims, to the Trust. For the avoidance of doubt, unless otherwise provided in the Plan, the Allocation Protocol, or Trust Documents, the channeling of an Inbound Contribution Claim or Insurance Contribution Claim does not entitle the holder of such Channeled Claim to a Trust Distribution.</u>

12.5.2   If, for any reason any court does not recognize the channeling of the Insurer Contribution Claims of Non-Settling Insurers to the Trust, or such Insurer Contribution Claims are not channeled for any reason, then the following shall apply:

a. Settling Insurers shall retain their Insurer Contribution Claims; *provided*, *however*, that:

(i)  Settling Insurers shall not pursue any Insurer Contribution Claim against any Non-Settling Insurer, (A) that asserts an Insurer Contribution Claim solely against the Trust; (B) whose Insurer Contribution Claim is satisfied and extinguished entirely by the application of this Section 12.5, or (C) that does not assert an Insurer Contribution Claim against them;

(ii)  If a Non-Settling Insurer asserts its Insurer Contribution Claim only against the Trust, then Settling Insurers shall assign any Insurer Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Insurer Contribution Claims against such Non-Settling Insurer;

(iii)  If a Non-Settling Insurer releases its Insurer Contribution Claims, if any such exist, that it may have against Settling Insurers, then such released Settling Insurers shall release their Insurer Contribution Claims against such releasing Non-Settling Insurer.

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 94 of 113

b. In any Action, including the Insurance Coverage Adversary Proceeding, involving the Diocese, a Participating Party, or the Trust (collectively, the "Alleged Insured") or an Abuse Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert any Insurer Contribution Claim against any Settling Insurers, then any judgment or award obtained by such Alleged Insured or Abuse Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such Settling Insurer is liable to pay such Non-Settling Insurer as a result of its Insurer Contribution Claim (the "Reduction Amount"), so that the Non-Settling Insurer's Insurer Contribution Claim is thereby satisfied and extinguished entirely (the "Reduction Amount"). In any Action involving an Alleged Insured or Abuse Claimant against a Non-Settling Insurer, where such a Settling Insurer is not a party, such Alleged Insured or Abuse Claimant shall obtain a finding from that court or arbitrator(s), as applicable, ofestablishing the Reduction Amount before obtaining an entry of judgment against such Non-Settling Insurer. In the event that such a reduction is not made as described above, then any Insurer Contribution Claim by any Non-Settling Insurer against any Settling Insurer shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Insurer Contribution Claim is Filed. Settling Insurers shall be required to cooperate in good faith with the Diocese and/or the Trust to take reasonable steps to defend against any Insurer Contribution Claim. In the absence of such good faith cooperation by any given Settling Insurer with respect to any given Insurer Contribution Claim, the Reduction Amount shall be zero. In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Insurer Contribution Claim, then such Non-Settling Insurer shall fully reimburse the Settling Insurers their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the court.

c. If an Alleged Insured or Abuse Claimant and a Non-Settling Insurer enter into an agreement settling one or more Abuse Claims, such agreement shall include a provision whereby such Non-Settling Insurer releases its Insurer Contribution Claims against Settling Insurers so long as Settling Insurers release their Insurer Contribution Claims against such Non-Settling Insurer. If such settlement agreement fails to include such a release provision, and the Non-Settling Insurer has asserted, asserts, or could assert an Insurer Contribution Claim against Settling Insurers, then any settlement amount in such settlement agreement shall be deemed automatically reduced by the Reduction Amount. In such event, the settling parties shall obtain a finding from the applicable court or arbitrator(s) of the Reduction Amount. If (ai) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (bii) such a reduction is not otherwise made as described above, then any Insurer Contribution Claim by any Non-Settling Insurer against any Settling Insurer shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such

Insurer Contribution Claim is Filed. Settling Insurers shall be required to cooperate in good faith with the Diocese and/or the Trust to take reasonable steps to defend against any Insurer Contribution Claim by a Non-Settling Insurer. In the absence of such good faith cooperation by any given Settling Insurer with respect to any given Insurer Contribution Claim, the Reduction Amount shall be zero. In the event that the reduction application of the Reduction Amount eliminates the Non-Settling Insurer's Insurer Contribution Claim, then such Non-Settling Insurer shall fully reimburse the Settling Insurers their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the court.

      d.    If a Non-Settling Insurer asserts an Insurer Contribution Claim against any Settling Insurer, and

      (i)    the Trust fully indemnifies the Settling Insurer, then the Settling Insurer shall assign its Insurer Contribution Claim to the Trust; or

      (ii)    the Trust partially, but not fully, indemnifies the Settling Insurer for such Claim, then the Settling Insurer shall retain its Insurer Contribution Claims and may assert those Claims against the Non-Settling Insurer asserting the Insurer Contribution Claim against the Settling Insurer. Any recovery by the Settling Insurer exceeding in excess of the amount necessary to satisfy the Trust's full indemnity obligation plus the Settling Insurer's litigation costs shall be turned over to the Trust.

      b.    e. The above procedures shall bind, and inure to the benefit of, all Settling Insurers.

12.5.3    To ensure that the reduction contemplated in Section 12.5.2 is accomplished, the Settling Insurers shall be entitled to: (i) notice, within a reasonable time, of the initiation of any future Action against or future settlement negotiations with any Non-Settling Insurer in which an Insurer Contribution Claim is asserted against any Settling Insurers, and periodic notices thereafter on at least an annual basis of the status of such Action or negotiations; (ii) the opportunity to participate in the Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in Section 12.5.2; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of Settling Insurers, so that the Settling Insurers can assert Section 12.5.2 as a defense in any Action against any of them for any Insurer Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the Settling Insurers from any Insurer Contribution Claim. The notice required above shall be given by: (ai) the Alleged Insured that is a party to such Action or settlement negotiations; or (bii) if no Alleged Insured is such a party, the Non-Settling Insurer that is a party to such Action or settlement negotiations; or (ciii) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the Abuse Claimant bound by this Plan.

12.5.4    The Trust shall use reasonable efforts to obtain, from all Settling Insurers, agreements with terms similar to those contained in Section 12.5 hereof.

**12.6    Certain Litigation Matters.**

Upon the occurrence of the Effective Date, the Claim Objections, the Diocese Appeal, and the Second Insurance Settlement Motion shall be deemed withdrawn with prejudice.

**12.7    Injunction Against Interference with Plan.**

Upon entry of the Confirmation Order, all holders of Claims and all Non-Settling Insurers shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

**12.8    Release by Holders of Channeled Claims.**

**EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, ALL HOLDERS OF CHANNELED CLAIMS, INCLUDING CONSENTING ABUSE CLAIMS (THE "RELEASING PARTIES"), SHALL BE DEEMED TO PROVIDE A FULL RELEASE TO THE RELEASED PARTIES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS RELATING TO THE DIOCESE, THE PARTICIPATING PARTIES, THE ESTATE, THE CONDUCT OF THE DIOCESE'S AND THE PROTECTED PARTIES' BUSINESSES, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, THIS PLAN, THE FILING AND PROSECUTION OF THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION AND CONSUMMATION OF THIS PLAN, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS AMONG THE RELEASING PARTIES AND ANY RELEASED PARTY, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE.**

**THE FOREGOING RELEASE SHALL BE EFFECTIVE UPON THE OCCURRENCE OF THE EFFECTIVE DATE, EXCEPT THAT, SOLELY WITH RESPECT TO ANY ABUSE CLAIM THEY MAY HOLD, EACH CONSENTING ABUSE CLAIMANT WILL RELEASE THE DIOCESE OR ANY PARTICIPATING PARTY UPON THE OCCURRENCE OF THE ABUSE CLAIM DISCHARGE DATE APPLICABLE TO SUCH ABUSE CLAIM. FOR THE AVOIDANCE OF DOUBT, PRIOR TO THE OCCURRENCE OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE AND SUBJECT TO THE LIMITATIONS SET FORTH IN THE**

89

PLAN, A DULY AUTHORIZED LITIGATION CLAIMANT ~~OR THE TRUST~~ MAY NAME THE DIOCESE OR ANY PARTICIPATING PARTY IN A CASE OR PROCEEDING TO ADJUDICATE WHETHER THE DIOCESE OR ANY PARTICIPATING PARTY HAS LIABILITY FOR AN ABUSE CLAIM AND THE AMOUNT OF ANY SUCH LIABILITY, BUT RECOURSE IN SUCH CASE OR PROCEEDING SHALL BE LIMITED TO THE PROCEEDS OF THE INSURANCE CLAIMS.  UNDER NO CIRCUMSTANCE MAY A LITIGATION CLAIMANT OR THE TRUST NAME, OR OTHERWISE PURSUE, ANY SETTLING INSURER OR ANY SETTLING INSURER'S RELATED PERSON (IN ANY ACTION OR OTHERWISE) FOR OR ON ACCOUNT OF A CHANNELED CLAIM FOLLOWING SUCH SETTLING INSURER'S PAYMENT OF THE APPLICABLE INSURANCE SETTLEMENT AMOUNT.  NOTHING IN THIS SECTION 12.6 SHALL BE DEEMED TO RELEASE ANY NON-PARTICIPATING PP ABUSE CLAIM A NON-PARTICIPATING ABUSE CLAIMANT MAY HAVE AGAINST A PARTICIPATING PARTY (IF ANY).

### 12.9 <u>Mutual Releases.</u>

EXCEPT FOR OBLIGATIONS ARISING UNDER ANY EXECUTORY CONTRACT ASSUMED AND ASSIGNED TO THE REORGANIZED DIOCESE, OBLIGATIONS ARISING UNDER THE PLAN AND, SOLELY WITH RESPECT TO THE DIOCESE AND THE PARTICIPATING PARTIES, ABUSE CLAIMS SUBJECT TO DELAYED RELEASE IN ACCORDANCE WITH SECTION ~~12.8~~12.2.3 ABOVE, ON THE EFFECTIVE DATE, EACH OF THE PROTECTED PARTIES, THE COMMITTEE, THE TRUST, AND EACH CONSENTING ABUSE CLAIMANT, SHALL BE DEEMED TO WAIVE, RELEASE, AND DISCHARGE ANY AND ALL CLAIMS AND CAUSES OF ACTION OF EVERY KIND AND NATURE THAT THEY MAY HAVE AGAINST EACH OTHER, ~~AND THEIR RESPECTIVE RELATED PERSONS,~~ EXCEPT THAT CONSENTING ABUSE CLAIMANTS SHALL NOT WAIVE THEIR RIGHTS TO DISTRIBUTIONS UNDER THE TRUST IN ACCORDANCE WITH THE TRUST AGREEMENT AND THE ALLOCATION PROTOCOL~~.  FOR THE AVOIDANCE OF DOUBT, ABUSE CLAIMANTS~~, AND SHALL BE DEEMED TO RELEASE THEIR ABUSE CLAIMS AGAINST THE DIOCESE AND THE PARTICIPATING PARTIES AS OF THE APPLICABLE ABUSE CLAIM DISCHARGE DATE; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT (I) CONSENTING ABUSE CLAIMANTS SHALL BE DEEMED TO RELEASE THEIR ABUSE CLAIMS WITH RESPECT TO EACH SETTLING INSURER AND EACH SETTLING INSURER'S RELATED PERSONS ON THE DATE SUCH SETTLING INSURER REMITS ITS INSURANCE SETTLEMENT AMOUNT TO THE TRUST AND (II) ALL OTHER CLAIMS AND CAUSES OF ACTION ANY CONSENTING ABUSE CLAIMANT MAY HOLD AGAINST ANY OF THE PROTECTED PARTIES SHALL BE RELEASED ON THE EFFECTIVE DATE, AND PROVIDED, FURTHER, THAT PRIOR TO THEIR RELEASE ANY ~~ABUSE~~SUCH ABUSE CLAIMS SHALL ONLY BE ENFORCEABLE AND COMPENSABLE PURSUANT TO THE TERMS OF THE PLAN AND PLAN DOCUMENTS.

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 98 of 113

**12.10   Exculpation; Limitation of Liability.**

FROM AND AFTER THE EFFECTIVE DATE, NONE OF THE EXCULPATED PARTIES SHALL HAVE OR INCUR ANY LIABILITY FOR, ~~AND EACH EXCULPATED PARTY SHALL BE RELEASED FROM,~~ ANY CLAIM BY ANY OTHER EXCULPATED PARTY, BY ANY HOLDER OF A CLAIM, OR BY ANY OTHER PARTY IN INTEREST, FOR ANY ACT OR OMISSION (I) THAT OCCURRED ~~DURING AND~~FROM THE PETITION DATE THROUGH THE EFFECTIVE DATE IN CONNECTION WITH THIS CHAPTER 11 CASE OR (II) IN CONNECTION WITH ~~THE PREPARATION AND FILING OF THIS CHAPTER 11 CASE,~~ THE FORMULATION, NEGOTIATION, OR PURSUIT OF CONFIRMATION OF A PLAN~~, THE CONSUMMATION OF THIS PLAN, AND THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN~~, EXCEPT FOR CLAIMS ARISING FROM THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, FRAUD, OR BREACH OF THE FIDUCIARY DUTY OF LOYALTY OF ANY EXCULPATED PARTY, IN EACH CASE SUBJECT TO DETERMINATION OF SUCH BY FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND PROVIDED THAT ANY EXCULPATED PARTY SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THIS PLAN.   WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE COMMITTEE, THE DIOCESE, THE REORGANIZED DIOCESE AND THEIR RESPECTIVE OFFICERS, TRUSTEES, BOARDS, COMMITTEE MEMBERS, EMPLOYEES, ATTORNEYS, FINANCIAL ADVISORS, EXPERTS, EXPERT WITNESSES, AND OTHER PROFESSIONALS SHALL BE ENTITLED TO AND GRANTED BENEFITS OF SECTION 1125(e) OF THE BANKRUPTCY CODE AND THE CHANNELING INJUNCTION.

**12.11   Injunctions in Full Force and Effect.**

All injunctions and/or stays provided for in the Plan, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting any Settling Insurer that has purchased Settling Insurer Policies, free and clear of all Claims pursuant to sections 105, 363, and 1123 of the Bankruptcy Code, are permanent and will remain in full force and effect following the Effective Date of the Plan and are not subject to being vacated or modified.

**12.12   Injunctions and Releases Integral.**

The foregoing injunctive provisions and releases are an integral part of the Plan and are essential to its implementation.   The currently pending ~~court proceedings~~Abuse Actions commenced by ~~an~~Consenting Abuse ~~Claimant~~Claimants, the continuation of which would violate Sections 12.1, 12.2, or 12.3 of this Plan, the releases provided for under the Plan, or the Insurance Settlement Agreements shall be dismissed with prejudice following the Trustee's receipt of ~~an~~a Consenting Abuse Claim Release Agreement executed by the applicable Abuse Claimant, except for Litigation Claims (or Abuse Claims that may become Litigation Claims),

91

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 99 of 113

which will be released ~~at the time the Diocese is released and discharged~~ upon the applicable Abuse Claim Discharge Date in accordance with Sections 12.2.3 and 12.8 of this Plan.

### 12.13    Timing.

The injunctions, releases, and discharges (including the Channeling Injunction and the Supplemental Settling Insurer Injunction) to which any Settling Insurer is entitled pursuant to such Settling Insurer's Insurance Settlement Agreement, the Plan, the Confirmation Order, the Final Orders approving the Insurance Settlement Agreements, and the Bankruptcy Code shall only become effective when the Trust receives payment in full of the Insurance Settlement Amount from the corresponding Settling Insurer pursuant to the terms of the Settling Insurer's Insurance Settlement Agreement, and ~~the~~all other conditions to the effectiveness of the Insurance Settlement Agreement are fully met.

### 12.14    Excluded Parties and Non-Settling Insurers.

Notwithstanding anything to the contrary herein, the following shall apply to Excluded Parties and Non-Settling Insurers: (a) no Claim by ~~a Class 4~~an Abuse Claimant against an Excluded Party or Non-Settling Insurer shall be a Channeled Claim, *provided*, *however*, any Consenting Abuse Claims which assert liability against an Excluded Party or a Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims to the extent they assert liability against such Protected Party; (b) No Claim by ~~a Class 4~~an Abuse Claimant against an Excluded Party or a Non-Settling Insurer shall be released by operation of this Plan; (c) ~~The~~the injunctions provided in Section 12.1 and 12.2 of this Plan shall not apply to Claims by any ~~Class 4~~Abuse Claimant against an Excluded Party or Non-Settling Insurer; and (d) ~~All~~all Claims by any ~~Class 4~~Abuse Claimant against an Excluded Party or Non-Settling Insurer are preserved and are not affected by the terms of this Plan.

### 12.15    Title to and Vesting of Assets.

All property of the Diocese and the Estate is dealt with by the Plan. Therefore, on the Effective Date, to the fullest extent allowed by sections 1123(a)(5), 1123(b)(2), 1123(b)(3), 1141(b) and 1141(c) of the Bankruptcy Code, all property of the Diocese and the Estate, and any property acquired by the Diocese pursuant to this Plan shall vest in the Reorganized Diocese and such property shall be free and clear of all Liens, Claims, charges or other encumbrances whatsoever, except that any charitable assets subject to Donor Restrictions shall pass to the Reorganized Diocese subject to such Donor Restrictions. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Diocese may operate and manage its affairs and may use, acquire, or dispose of such property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. The Diocese and the Reorganized Diocese may pay any charges incurred on or after the Effective Date for Professional Fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**12.16   Continued Corporate Existence; No Successor Liability.**

**12.16.1**   The Diocese will continue to exist after the Effective Date as a separate entity in accordance with New York law, having tax-exempt status under 26 U.S.C. § 501(c)(3) ~~under~~and applicable New York law ~~and,~~ without prejudice to any right to alter or terminate such existence, or to change its corporate name, ~~under applicable state law,~~ except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

**12.16.2**   On and after the Effective Date, the Reorganized Diocese may conduct business in the name of "The Diocese of Rochester" or any derivation thereof that may be approved by the Bishop of Rochester.  At the request of the Reorganized Diocese, the Diocese shall take such steps as may be required to change its corporate name to remove any references to "The Diocese of Rochester."

**12.16.3**   Notwithstanding anything to the contrary in the Plan or otherwise, except to the extent necessary to honor any Donor Restrictions or to the extent it may expressly assume such obligations in writing on or after the Effective Date, the Reorganized Diocese shall not be liable for any Claims against, or other liabilities or obligations of the Diocese.  The Reorganized Diocese shall not, and shall not be deemed under any state or federal law, or doctrine or theory of successor liability to:  (~~a~~i) be the successor of, or successor to, the Diocese; (~~b~~ii) have, de facto or otherwise, merged with or into the Diocese; (~~c~~iii) be a mere continuation or substantial continuation of the Diocese or the operations or business enterprises of the Diocese; or (~~d~~iv) be liable for any acts taken, or omitted to be taken, by the Diocese prior to the Effective Date.  All Persons and entities holding Liens, Claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, against or in the Diocese or the Residual Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Diocese, the Residual Assets, or the operation of the Residual Assets prior to the Effective Date shall be forever barred, estopped, and permanently enjoined from asserting against the Reorganized Diocese such Liens, Claims, encumbrances, and other interests, including rights or claims based on any theory of successor or transferee liability, *provided*, *however*, nothing herein shall prohibit any Person with standing to do so from taking any action to enforce Donor Restrictions.

**12.17   Identity of Trustees of the Diocese and Reorganized Diocese.**

In accordance with section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the trustees of the Diocese and the Reorganized Diocese on and after the Effective Date shall be: (i) The Most Reverend Salvatore R. Matano, Bishop of Rochester, (ii) Very Reverend Paul J. Tomasso, Vicar General and Moderator of the Curia, and (iii) Reverend Daniel J. Condon, Chancellor and Director of Legal Services, all of whom ~~are~~have served in such capacities for the Diocese prior to and during this Chapter 11 Case and each of whom is affiliated with the Universal Roman Catholic Church.  For the avoidance of doubt, the foregoing individuals shall not be trustees of the Trust.

### 12.18   Authority to Effectuate Plan.

Upon the Effective Date, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court or the Diocese.  The Diocese and the Reorganized Diocese shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder.

### 12.19   Binding Effect.

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all holders of Claims.  Subject to the terms of the Plan, upon the Effective Date, every holder of a Claim shall be precluded and permanently enjoined from asserting against the Diocese or the Reorganized Diocese any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date.

### 12.20   Dissolution of Committee.

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals, and Agents shall be released from any further duties and responsibilities in this Chapter 11 Case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 Case, including any orders regarding confidentiality issued by the Bankruptcy Court or ~~mediators~~Mediators, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Fee Claims.

## SECTION 13.  [RESERVED]

## SECTION 14.  RETENTION OF JURISDICTION

### 14.1   By the Bankruptcy Court.

Pursuant to sections 105, 1123(a)(5) and 1142(b) of the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334, on and after the Effective Date, the Bankruptcy Court shall retain: (~~a~~i) original and exclusive jurisdiction over the Chapter 11 Case~~;~~ (~~b~~ii) original, but not exclusive jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Case; and (~~c~~iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Case and the Plan, including matters concerning the interpretation, implementation, consummation, execution or administration of the Plan.  Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

a.      over disputes concerning the ownership of Claims.

b. over disputes concerning the distribution or retention of assets under the Plan.

c. subject to the Plan Documents, over objections to Claims, motions to allow late-filed Claims and motions to estimate Claims.

d. over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Diocese, the Estate, or the Trust, or property abandoned or transferred by the Diocese, the Estate or the Trust.

e. over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee.

f. over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets.

g. over matters related to the removal of the Trustee and the appointment of a successor Trustee.

h. over matters relating to the subordination of Claims.

i. to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

j. to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order.

k. to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to the Plan and any Insurance Settlement Agreement.

l. over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith.

m. over requests for allowance of payment of Claims entitled to priority under sections 507(a)(2) and 503(b) of the Bankruptcy Code ~~an~~and any objections thereto.

n. over all applications for compensation under sections 327, 328, 329, and 330 of the Bankruptcy Code.

~~17683006.4~~18335512.v7

o. over matters concerning state, local, or federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

p. over conflicts and disputes among the Trust, the Diocese, the Reorganized Diocese, and holders of Claims.

q. over disputes concerning the existence, nature, or scope of the Diocese Discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date.

r. to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Diocese or its property, the Reorganized Diocese or its property, the Estate or its property, the Trust or its property, the Trustee, the Professionals, or the Confirmation Order.

s. to enter a final decree closing the Chapter 11 Case.

t. to enforce all orders previously entered by the Bankruptcy Court.

u. over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan.

## 14.2 **By the District Court.**

Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. § 1134, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case.

## 14.3 **Actions to Enforce the Plan.**

The Diocese, the Reorganized Diocese, and the Trust may, but are not required to, commence an Action to enforce the terms of the Plan or to collect amounts owed pursuant to the Plan and any settlements set forth in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with the terms of the Plan or such settlement. Any such Action may be commenced by filing a motion with the Bankruptcy Court. On and after the Effective Date, the Trust shall have the sole and exclusive right to enforce the terms of the Plan against the Diocese, the Reorganized Diocese and/or any Participating Party (except that the Diocese, the Reorganized Diocese, or any Participating Party may enforce the terms of the plan as against each other and the Trust) and may seek any appropriate remedy in law or equity from the Bankruptcy Court which shall retain exclusive jurisdiction over any such Action.

### 14.4    Case Closure.

The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing the Chapter 11 Case upon a motion by the Diocese, the Reorganized Diocese, or any other Person. The Trustee shall not take any actions to unreasonably keep the Chapter 11 Case open. The Trustee, in his sole discretion, may seek to reopen the Chapter 11 Case to administer assets of the Trust, including with respect to entering into settlement agreements with Non-Settling Insurers. If the Chapter 11 Case is reopened upon request of the Trustee, the Trust, the Diocese, and the Reorganized Diocese shall cooperate to assure that no disbursements are made from the Estate during the period when the Chapter 11 Case is reopened, and the case shall be closed at the earliest possibility.

## SECTION 15.  MISCELLANEOUS PROVISIONS

### 15.1    Amendment or Modification of this Plan.

The Plan Proponents may modify the Plan at any time prior to the Confirmation Hearing, in accordance with section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponents may modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, those provisions of the Plan that implement and supplement the Insurance Settlement Agreements may not be severed, waived, amended, deleted or otherwise modified without the prior written approval of all of the Settling Insurers affected by such severance, waiver, amendment, deletion or modification.

### 15.2    Revocation or Withdrawal of this Plan.

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan Proponents revoke or withdraw this Plan before the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Diocese or the Committee or to prejudice in any manner the rights of the Diocese or the Committee in any further proceedings.

### 15.3    Reports.

Until a final decree closing the Chapter 11 Case is entered, the Diocese shall File all post-confirmation quarterly reports as required by the United States Trustee Operating Guidelines (with a copy served on the Office of the United States Trustee). The first report shall be Filed within thirty days after the end of the quarter in which the Effective Date occurs.

### 15.4    Notices.

All notices or requests in connection with this Plan shall be in writing and given by mail or overnight mail (with a contemporaneous e-mail copy, which shall not constitute notice) addressed to:

> To the Diocese or the Reorganized Diocese:
> Stephen A. Donato, Esq.
> Charles J. Sullivan, Esq.
> Grayson T. Walter, Esq.
> Bond, Schoeneck & King, PLLC
> One Lincoln Center
> Syracuse, New York 13202
> Email: donatos@bsk.com
>           sullivc@bsk.com
>           walterg@bsk.com

> To the Committee or the Trust Advisory Committee:
> James I. Stang, Esq.
> Ilan D. Scharf, Esq.
> Iain A. W. Nasatir, Esq.
> ~~Brittany M. Michael~~Karen B. Dine, Esq.
> Pachulski Stang Ziehl & Jones LLP
> 780 Third Avenue, 34th Floor
> New York, New York 10017
> Email:  jstang@pszjlaw.com
>           ischarf@pszjlaw.com
>           inasatir@pszjlaw.com
>           ~~bmichael~~kdine@pszjlaw.com

> To the Trust or the Trustee
> At the address set forth in the Trust Agreement

All notices and requests to Persons holding any Claim in any Class shall be sent to them at ~~their last known address or to the last known address of their attorney of record~~(i) the latest mailing address set forth in a proof of claim Filed with Stretto or the Bankruptcy Court by or on behalf of such Claimant, or to such other address as may be provided to the Reorganized Diocese or Trustee, as applicable, by such Claimant in writing; or (ii) if no such proof of claim has been Filed and no written notice setting forth a mailing address is provided by or on behalf of such Claimant to the Reorganized Diocese or Trustee, as applicable, to the mailing address set forth in the Schedules Filed by the Diocese in this Chapter 11 Case.~~ Any such holder of a Claim may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Diocese.~~

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 106 of 113

**15.5    Severability.**

If, prior to confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.

**15.6    Validity and Enforceability.**

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the Confirmation Order, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Bankruptcy Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

**15.7    Controlling Documents.**

In the event and to the extent that any provision of the Plan or the Trust Documents is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or the Trust Documents, as applicable, shall control and take precedence.  In the event and to the extent that any provision of the Trust Documents (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of the Plan, the Plan shall control and take precedence.  In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Documents, the provisions of the Confirmation Order shall control and take precedence.

**15.8    Filing of Additional Documents.**

At any time before substantial consummation of the Plan, the Diocese, the Trust, or the Reorganized Diocese, as appropriate, may File with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

**15.9    Direction to a Party.**

On or after the Effective Date, the Trustee, the Diocese, or the Reorganized Diocese, as applicable, may apply to the Bankruptcy Court for entry of an Order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect the transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

99

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,   Doc 2862-1,   Filed 12/12/24,   Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 107 of 113

**15.10    Certain Actions.**

By reason of entry of the Confirmation Order prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers or ~~Trustees~~trustees of the Diocese under the Plan, including: (~~a~~i) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan~~,~~; and (~~b~~ii) the adoption, execution and implementation of other matters provided for under the Plan involving the Diocese or the organizational structure of the Diocese shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate), pursuant to applicable non-bankruptcy law, without any requirement of further action by the officers or ~~Trustees~~trustees of the Diocese.

**15.11    Preservation of Tort Defendants' Rights.**

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall be deemed to affect in any way the ability of any Tort Defendant to exercise any claims, demands, causes of action, powers, defenses, setoffs, and other limitations, rights, remedies, and privileges of any nature or description ("Litigation Rights") that such Tort Defendant may have under applicable state and federal law in connection with any Tort Action, provided, however, that to the extent the exercise of such Litigation Rights would otherwise result in any affirmative obligation of the Diocese and/or any Protected Party to contribute to or satisfy any judgment or claim, the enforcement of such judgment or claim or any right of contribution regarding same as against the Diocese and/or any Protected Party shall be enjoined pursuant to Section 12 of the Plan.

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall prevent any Tort Defendant from asserting in any Tort Action that any distribution made by, on behalf of the Diocese or a Protected Party or made by reason or because of or related to this Plan to or on account of an Abuse Claimant should be treated as a payment by a joint tortfeasor to settle the Abuse Claimant's Claim for purposes of New York law, including, but not limited to General Obligations Law ("GOL") 15-108 and Civil Practice Law and Rules ("CPLR") Articles 14 and 16.  Tort Defendants shall retain all rights as against any Abuse Claimant with respect to CPLR Articles 14 and 16 and GOL 15-108, provided, however, that to the extent of any conflict between state law and the injunctive provisions of this Plan with respect to the collection or enforcement of any claim against the Diocese or any Participating Party, the terms of this Plan shall control.

Nothing in this Plan, the Plan Supplement, Confirmation Order, or any other documents incorporated by reference in the Disclosure Statement, Plan, or Plan Supplement, including but not limited to the Allocation Protocol, shall prevent any Tort Defendant from seeking discovery and/or testimony from the Diocese, the Protected Parties, the Abuse Claims Reviewer (including, for the avoidance of doubt, in connection with a Supplemental Submission to the Abuse Claims Reviewer), the Trustee, or any Abuse Claimant in connection with any Tort Action, in accordance with applicable rules of civil procedure.

~~17683006.4~~18335512.v7

Case 2-19-20905-PRW,    Doc 2862-1,    Filed 12/12/24,    Entered 12/12/24 18:15:59,
Description: Exhibit A - Joint Plan Redline, Page 108 of 113

### 15.12   Waiver of Subordination.

Notwithstanding any provision of the Plan to the contrary, all holders of Claims shall be deemed to have waived any and all contractual subordination rights to which they may have with respect to the Distributions made pursuant to the Plan, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of Claims from enforcing or attempting to enforce any such rights against any Person receiving Distributions under the Plan.

### 15.13   Reservation of Rights.

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date has occurred.

### 15.14   Plan as Settlement Communication.

The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise Claims and/or causes of action that are disputed as to validity or amount (including Abuse Claims and the Insurance Coverage Adversary Proceeding), except as otherwise provided above. Accordingly, the Plan, the Disclosure Statement, and any communications regarding the Plan or the Disclosure Statement are subject in all respects to Rule 408 of the Federal Rule of Evidence and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity, or invalidity of, any Disputed Claim or cause of action. Except as expressly set forth in the Plan, nothing in the Plan is intended to constitute a compromise of Abuse Claims.

### 15.15   Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan transactions consummated or to be consummated in connection therewith.

### 15.16   Headings.

Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

### 15.17   No Admissions.

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed as an admission by the Diocese, the Reorganized Diocese, the Committee any Participating Party, or any Settling Insurer with respect to any matter set forth herein.

[*Signature ~~page follows~~pages follow*]

*[Link-to-previous setting changed from on in original to off in modified.].*

Dated: ~~April 24~~December __, 2024            Respectfully submitted,
        Rochester, New York

                                               The Diocese of Rochester


                        By:    /s/    ~~Lisa M. Passero~~
                               Lisa M. Passero, Chief Financial Officer



                               **BOND, SCHOENECK & KING, PLLC**

                        By:    /s/    ~~Stephen A. Donato~~
                               Stephen A. Donato, Esq.
                               Charles J. Sullivan, Esq.
                               Grayson T. Walter, Esq.
                               Office and Post Office Address:
                               110 West Fayette Street
                               One Lincoln Center
                               Syracuse, New York 13202-1355
                               Telephone: (315) 218-8000
                               Facsimile: (315) 218-8100
                               Email: donatos@bsk.com
                                       sullivc@bsk.com
                                       walterg@bsk.com

                               **BLANK ROME LLP**
                               James R. Murray
                               James Carter
                               1825 Eye Street NW
                               Washington, DC 20006
                               Telephone: (202) 420-3409
                               Email: jim.murray@blankrome.com
                                       james.carter@blankrome.com

                               *Counsel to The Diocese of Rochester*

~~17683006.4~~18335512.v7

Dated:  ~~April 24~~December ___, 2024          OFFICIAL COMMITTEE OF UNSECURED
         Rochester, New York                          CREDITORS


By:     /s/     ~~James Cali~~
                James Cali, Committee Chair


**PACHULSKI, STANG, ZIEHL & JONES, LLP**

By:     /s/     ~~Ilan D. Scharf~~
                James I. Stang, Esq.
                Ilan D. Scharf, Esq.
                Iain A. W. Nasatir, Esq.
                Brittany M. Michael, Esq.
                780 Third Avenue, 34th Floor
                New York, New York  10017-2024
                Telephone:  (212) 561-7700
                Facsimile:  (212) 561-7777
                Email: jstang@pszjlaw.com
                       ischarf@pszjlaw.com
                       inasatir@pszjlaw.com
                       bmichael@pszjlaw.com

                **BURNS BAIR LLP**
                Timothy W. Burns, Esq. ( *pro hac vice*)
                Jesse J. Bair, Esq. ( *pro hac vice*)
                10 E. Doty St., Suite 600
                Madison, Wisconsin 53703
                Telephone: 608-286-2808
                Email: tburns@burnsbair.com
                       jbair@burnsbair.com

                *Counsel to the Official Committee of
                Unsecured Creditors*

~~17683006.4~~18335512.v7

*[Link-to-previous setting changed from on in original to off in modified.].*

17683006.418335512.v7

Case 2-19-20905-PRW, Doc 2862-1, Filed 12/12/24, Entered 12/12/24 18:15:59, Description: Exhibit A - Joint Plan Redline, Page 112 of 113

| Summary report: Litera Compare for Word 11.8.0.56 Document comparison done on 12/12/2024 4:45:15 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://bsk-mobility.imanage.work/BOND/17683006/4 | |
| **Modified DMS:** iw://bsk-mobility.imanage.work/BOND/18335512/7 | |
| **Changes:** | |
| Add | 1114 |
| Delete | 812 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 1926 |