```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------    x
                                        :
In re                                   :      Chapter 11
                                        :
The Diocese of Rochester,               :      Case No. 19-20905 (PRW)
                                        :
                             Debtor.    :
                                        :
------------------------------------    x
```

**UNITED STATES TRUSTEE'S OBJECTION TO CONTINENTAL INSURANCE COMPANY'S EMERGENCY MOTION TO PLACE LIFT-STAY MOTION UNDER SEAL AND FOR ADDITIONAL RELIEF**

TO:   THE HONORABLE PAUL R. WARREN,
      UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), through his counsel, files this Objection (the "Objection") to *Continental Insurance Company's Emergency ("CNA")Motion to Place Lift-Stay Motion Under Seal and for Additional Relief*. ECF No. 2969. In support thereof, the United States Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

The United States Trustee objects to the request of CNA to seal the Motion for Relief from Stay and Supporting Memorandum of Law (the "Lift Stay Motion"). ECF No. 2950. The demands are antithetical to the transparency and openness that the bankruptcy system requires. The public has a right of access to judicial records. Open access to court records is especially paramount to the integrity of the bankruptcy system because it demonstrates to creditors that the system is transparent and fair. Its importance is underlined by Congress's decision to statutorily enshrine it in the Bankruptcy Code under 11 U.S.C. § 107(a).

Disclosure is a basic premise of bankruptcy law. Indeed, it is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of

1

impropriety that might or could be raised. This is particularly important in this case. The Bankruptcy Code contains very limited and specific exceptions to the general rule that bankruptcy proceedings should be open and transparent. Moreover, CNA must demonstrate extraordinary circumstances and a compelling need to obtain protection to justify any such request. Here, CNA with nothing more than alleged misstatements in the Lift Stay Motion and unsubstantiated statements supporting the request, seeks extremely broad authority to completely seal from public view the Lift Stay Motion and any responses in connection thereto. CNA has failed to meet its heavy burden to seal. For these and other reasons more fully set forth below, the movant's request to seal should be denied.

## BACKGROUND

1. On September 12, 2019 (the "Petition Date"), the Diocese of Rochester (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Western District of New York (the "Court"). ECF No. 1.

2. On September 26, 2019, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors in this case. ECF No. 68.

3. The Debtor currently is operating its business and managing its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. On February 18, 2025, certain claimants represented by the Marsh and Pfau Cochran law firms filed a *Motion for Relief from Stay and Supporting Memorandum of Law*. ECF No. 2950.

5. On February 24, 2025, *Continental Insurance Company filed an Ex Parte*

*Motion for Order Authorizing Filing Under Seal*. ECF No. 2964.

6. On February 25, 2025, the Court issued a *Decision and Order Denying CNA's Ex Parte Motion Seeking to File, Under Seal, A Proposed "Emergency Ex Parte Motion to Place Lift Stay Motion Under Seal."* ECF No. 2967.

7. On February 25, 2025, CNA filed *an Emergency Motion to Place Lift-Stay Motion Under Seal and for Additional Relief* ("CNA's Motion"). ECF No. 2969.

## ARGUMENT

### I. Disclosure is the Rule

**A. There is a Long-Standing Presumption of Public Access to Court Records**

In American jurisprudence, there is a long-standing, common law right of public access to court records. *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 591 (1978) ([i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."). This "right of public access is rooted in the public's First Amendment right to know about the administration of justice." *Motors Liquidation Co. Avoidance Action Trust v. JP Morgan Chase Bank, N.A. (In re Motors Liquidation Co.)*, 561 B.R. 36, 41 (Bankr. S.D.N.Y. 2016). The Second Circuit has described this right as "firmly entrenched and well supported by policy and practical considerations." *Orion Pictures Corp. v. Video Software Dealers Assoc.*, 21 F.3d 24, 26 (2d Cir. 1994).

The right of public access has given rise to "a strong presumption and public policy in favor of public access to court records." *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011). This presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice . . .

3

[P]ublic monitoring is an essential feature of democratic control." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). The Second Circuit has issued this pointed guidance:

> There must be a strong presumption against sealing any document that is filed with the court. Our courts do not operate in secrecy. Except on rare occasions and for compelling reasons, everything that courts do is subject to public scrutiny. To hide from the public entire proceedings, or even particular documents or testimony forming a basis for judicial action that may directly and significantly affect public interests, would be contrary to the premises underling a free, democratic society.

*City of Hartford v. Chase*, 942 F.2d 130, 137 (2d Cir. 1991).

### B. The Right to Public Access is Codified in the Bankruptcy Code

In the United States bankruptcy system, it is widely acknowledged that the governmental interest in safeguarding public access to judicial records is "of special importance . . . , as unrestricted access to judicial records fosters confidence among creditors regarding fairness in the bankruptcy system." *Motors Liquidation*, 561 B.R. at 41 (quoting *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d. 1, 7 (1st Cir. 2005)). Described as "fundamental to the operation of the bankruptcy system and . . . the best means of avoiding any suggestion of impropriety that might or could be raised," the policy of open inspection, as applied in this Court, cannot be underestimated. *Motors Liquidation*, 561 B.R. at 41-42, quoting *In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984).

The common law right of public access to judicial records has been codified in section 107(a) of the Bankruptcy Code. *See Togut v. Deutsche Bank AG (In re Anthracite Capital Inc.)*, 492 B.R. 162, 170, 173 (Bankr S.D.N.Y. 2013); *see also Gitto Global*, 422 F.3d at 7-8 (section 107 supplants the common law of public access). Pursuant to section 107(a), papers filed in bankruptcy cases and the Court's dockets are "public records, open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); *Anthracite*, 492 B.R. at 170.

## II. The Burden Is on the Movant

The burden is on the moving party to show that a request to place documents under seal falls within the parameters of section 107 of the Bankruptcy Code. *In re Celsius Network LLC*, 644 B.R. 276, 291 (Bankr. S.D.N.Y. 2022) ("The Debtors carry the burden of showing there is a sufficient basis to overcome the presumption and public policy in favor of public access to court records." (citing *In re Food Mgmt. Grp., LLC*, 359 B.R. at 561)). To meet this burden, the movant "must demonstrate extraordinary circumstances and compelling need to obtain protection." *Food Mgmt.*, 359 B.R. at 561 (citing *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)).

"Evidence—not just argument—is required to support the extraordinary remedy of sealing." *Motors Liquidation*, 561 B.R. at 43. *See In re Dreier LLP*, 485 B.R. 821, 823 (Bankr. S.D.N.Y. 2013) (finding that "conclusory statements in [a declaration] are not probative"). It is not sufficient that the information that a movant seeks to protect "might 'conceivably' or 'possibly' fall within a protected category" to justify sealing a document. *In re Fibermark, Inc.*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005). And a court should make specific factual findings to grant a motion to seal; the motion cannot be granted based on speculation. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071-73 (3d Cir. 1984).

## III. Sealing Under Section 107(b)(2) is Not Warranted

The first statutory exception raised in CNA's Motion is section 107(b)(2), which protects "scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2). Scandalous and defamatory material under this subsection "has been defined as 'material that would cause a reasonable person to alter their opinion of a party based on the statements therein, taking those statements in the context in which they appear." *Food Mgmt.*,

5

Case 2-19-20905-PRW, Doc 2983, Filed 02/28/25, Entered 02/28/25 10:01:30, Description: Main Document , Page 5 of 10

359 B.R. at 557 (citations omitted). Courts have established that "[s]ince the sealing of records runs contrary to the strong policy of public access, *only clear evidence of impropriety* can overcome the presumption and justify protection under § 107(b)(2)." *Anthracite*, 429 B.R. at 174 (italics added, marks omitted); *Food Mgmt.*, 359 B.R. at 556. CNA has failed to provide any such evidence in support of CNA's Motion, and for this reason, denial is appropriate.

Under section 107(b)(2), protection against scandalous matter, unlike protection against defamatory matter, "does not depend on whether the statement is true." *Id.*, 359 B.R. at 557. "Bankruptcy courts in this district have looked to the Second Circuit's strict interpretation of the term "scandalous" under Federal Rule of Civil Procedure 12(f)." *Anthracite*, 492 B.R. at 176, *citing Food Mgmt.,* 359 B.R. at 558. Under the Second Circuit's approach to Civil Rule 12(f), "relevance to the proceedings is the standard for determining whether or not something is scandalous" under section 107(b)(2). *Anthracite*, 492 B.R. at 176. Under this standard, "courts have been reluctant to deem something as 'scandalous' unless it can be shown that no evidence in support of the allegation would be admissible." *Id.*, citing *Food Mgmt.,* 359 B.R. at 558; *see also Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976) ("In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible"). Stated differently, "scandalous statements that offend the sensibilities of the offending parties" are not protected under section 107(b) "if the challenged allegations describe acts or events *relevant* to the action." *Anthracite*, 492 B.R. at 176 (italics in orig.), citing *Food Mgmt.,* 359 B.R. at 558.

The Lift Stay Motion contains inherently negative material that may alter CNA's reputation in the eyes of a reasonable person. However, given the nature of the proceedings in

this case, that result may be effectively unavoidable. The Lift Stay Motion is neither scandalous nor defamatory under the standards governing section 107(b)(2) of the Bankruptcy Code.

CNA's Motion fails to point to any part of the current record that "promote[s] public scandal" through the publication of any "disgusting" personal or commercial details, nor does the record contain any "libelous statements for press consumption." *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978). While the Lift Stay Motion characterizes CNA's conduct in a negative light, and the portrayal of certain facts may be slightly off, they are, however, relevant.

Under the governing standards, the language contained in the current record is not scandalous – "there is nothing said that is 'grossly disgraceful'" or "that unnecessarily reflects on the moral character of an individual in repulsive language." *Food Mgmt*, 359 B.R. at 562. In the context of a motion to seal, "we must distinguish between critical and [scandalous]." *FiberMark*, 330 B.R. at 507. "[N]egative and strongly worded" passages, and disagreements about the characterizations given to certain events, do not equate to scandalous matter within the meaning of section 107(b)(2).[1] *Id*.

The Lift Stay Motion appears to be grounded in relevant law based on the facts and circumstances in this case, and it has not been filed for an improper purpose. Furthermore, CNA has not carried out its heavy burden of showing that future submissions here will do so.

---

[1] The United States Trustee, however, has no objection to the redaction of such statements that are truly scandalous, *e.g.*, "killing and/or killed." *See* p. 14 of the Lift Stay Motion. The Second Circuit in *Orion* has also recognized an "improper purpose" exception to public access with respect to allegedly scandalous materials. *Id*., 359 B.R. at 559. "In limited circumstances, courts must deny access to judicial documents – generally where open access may be used as a vehicle for improper purposes." *Id*., citing *Orion*, 21 F.3d at 27. To the extent the proponent of a sealing motion ascribes "bad motives" to its adversary, as is the case here, "the improper purpose test needs to be applied carefully, hewing closely to the traditional standards for protecting against scandalous matter." *Food Mgmt*., 359 B.R. at 559.

### IV. <u>The Movant Must Show Cause to Seal Pursuant to Section 107(c)</u>

Section 107(c)(1) of the Bankruptcy Code provides that a bankruptcy court, "*for cause, may* protect *an individual*," by sealing certain information[2] to the extent that disclosure of such information "*would* create *undue risk* of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c)(1) (emphasis added).

The wording of section 107(c)(1) deserves attention. Section 107(c) requires a showing of "cause." Although "cause" is not defined in section 107(c), it generally indicates that a court must determine, case-by-case, whether there is a legitimate basis to grant the requested relief.

Section 107(c) is permissive, not mandatory. *Compare* 11 U.S.C. § 107(b) (court *shall* grant relief when sufficient evidence has been provided) *with* 107(c) (court *may* grant relief when it finds *cause*). The Supreme Court has "emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 579 U.S. 93, 103 (2016).

Section 107(c) only applies to "individuals." 11 U.S.C. § 107(c). And those individuals must be facing an "undue" risk of injury and the use of "would" means that the probability of the injury cannot be in doubt. The Court has the duty to give effect to modifiers—like 'undue'—as statutes are presumed not to contain surplus language. *See*, *e.g.*, *In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997) (applying rule of statutory construction when interpreting the modifiers "liquidated" and "noncontingent" of the term "debt" in § 109(e)). In other words, a court must find that the disclosure of the information is going to significantly increase the risk of harm to a specific individual in a concrete way. The background existence of the risk of identity theft or other harm to individuals is not sufficient.

---

[2] The types of information that can be redacted are "means of identification" as defined in section 1028(d) of title 18. 11 U.S.C. § 107(c)(1)(A).

Section 107(c) does not gift any party with a right of unsupervised, unfettered self-determination over what information can be protected in a bankruptcy case. The party seeking protection must make a clear showing by competent evidence that the disclosure of such information would lead to the standard of harm set forth in the statute, instead of speculating or making mere conclusory statements, as CNA's Motion does. *See, e.g.*, *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (report filed in court in connection with a shareholder derivative action could not be sealed based on "a naked conclusory statement that publication of the Report will injure the bank in the industry."); *In re Barney's, Inc.,* 201 B.R. 703, 708 (Bankr. S.D.N.Y. 1996) ("speculat[ion] that the public disclosure of ... letter will adversely impact debtors reorganization efforts" insufficient to justify sealing record); *In re Fibermark, Inc.,* 330 B.R. 480, 506 (Bankr. D. Vt. 2005) ("that information might 'conceivably' or 'possibly' fall within a protected category is not sufficient to seal documents"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071-73 (3d Cir. 1059) (court must make "specific findings" as sealing cannot be based on speculation).

Here, CNA has provided little more than speculative statements that could apply to any individual. Moreover, with respect to certain information, CNA has failed to even attempt to make the requisite competent showing or explore narrower alternatives. For example, the business address of an individual may already be public information; thus, the address is not entitled to protection. Because CNA has not limited its requested redactions to residential addresses and has not defined "personally identifiable information," openly-public business addresses may well be redacted if the Court were to grant the CNA's request. Another example is the unnecessary redaction of *both* names and addresses of individuals, assuming CNA is seeking that relief, and their addresses are residential addresses. Names alone and residential addresses alone are public information; but when a name and residential address are paired together a risk

9

of identity theft or injury may arise for purposes of CNA's request. Because CNA has not met its burden, the requested relief to seal under section 107(c)(1)(B) of the Bankruptcy Code must be denied.

## CONCLUSION

For the reasons set forth above, the United States Trustee respectfully requests that the Court sustain this Objection, and grant such other relief as is just and appropriate.

Dated: New York, New York
      February 27, 2025

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: /s/Mark Bruh
Mark Bruh
Trial Attorney
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, New York 10004
Tel.: (212) 510-0500
mark.bruh@usdoj.gov