UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    The Diocese of Rochester,                      Bankruptcy Case No. 19-20905-PRW
                                                                         Chapter 11
                              Debtor.

_____

## DECISION AND ORDER
## DENYING EMERGENCY MOTION TO
## SEAL LIFT STAY MOTION

PAUL R. WARREN, U.S.B.J.

      A motion seeking relief from the automatic stay was filed on behalf of two Abuse Survivors by the Pfau Law Firm.[1] (ECF No. 2950). The two Abuse Survivors seek the Court's permission to proceed with their pending lawsuits in the New York State Courts, against certain Catholic parishes and schools—but not against the Diocese or CNA. (ECF Nos. 2952 at ¶¶ 23, 24 & Exhibits 12, 13). The merits of the lift stay motion are not yet before the Court, as the motion was scheduled by Pfau to be heard on March 20, 2025. (ECF Nos. 2953, 2954). Continental Insurance Company ("CNA") filed an emergency motion under § 105(a) and 107(b) of the Code, requesting that the Court seal (from public view) the lift stay motion and all responses to the motion, asserting that the motion contained "hostile, violent, and intimidating language." (ECF No. 2969 at 2). The United States Trustee ("UST") opposed CNA's motion, arguing that CNA had failed to carry the burden necessary, under both § 107(b) and (c), for a court to seal a pleading from public view. (ECF No. 2983). Not surprisingly, Pfau also filed opposition to CNA's motion. (ECF No. 2987).

---

[1]     The motion was jointly filed by The Marsh Law Firm PLLC and Pfau Cochran Vertetis Amala PLLC law firms. For the sake of convenience, the Court will refer to the law firms as "Pfau."

For the reasons that follow, CNA's motion to seal the Pfau lift stay motion from public view is, in all respects, **DENIED**.

I.

## JURISDICTION

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157(b)(1) and 1334(b).

II.

## BACKGROUND

The merits of the motion to lift stay are not before the Court. Rather, the statements made by Pfau in support of that motion are the focus of CNA's motion to seal.[2] Stitching together the arguments made by CNA in support of its request that Pfau's lift stay motion be sealed, CNA generally claims:

1) The motion unfairly faults CNA with the fact that this case has been "delayed" for over five years;

2) The motion unfairly accuses CNA of profiting while the Abuse Survivors suffer, and in some instances have passed away, as a result of the "delay" in this case being resolved;

3) The lift stay motion incorrectly characterizes the status of the Court-ordered mediation.

(*See generally* ECF No. 2969).

---

[2] The Pfau lift stay motion rambles on for 46 pages, together with 143 pages of exhibits in support of the motion. (ECF Nos. 2950, 2952). The Court observes that in seeking identical relief in the Diocese of Buffalo case, the lift stay motion filed by Pfau was a mere two and one-half pages. (*The Diocese of Buffalo, N.Y.*, Case No. 20-10322-CLB (Bankr. W.D.N.Y. filed Feb. 28, 2020) at ECF No. 3123).

CNA then asserts that the "overheated, dangerous rhetoric" in the lift stay motion is made more dangerous by an alleged media campaign being waged by Pfau and other state court attorneys "to stir up Survivors." (*Id*. at 5-6). CNA then points to the fact that some unknown, unidentified person(s) *on the telephone* "were shouting in anger" in response to comments made by attorneys and the Court during a hearing held on February 11, 2025, concerning the adequacy of the joint disclosure statement. (*Id.* at 6). CNA would have the Court assume that the angry voices on the telephone belonged to Abuse Survivors, but there is no way of knowing who was shouting or where on the planet they were located. But, CNA asserts that this atmosphere, in combination with "briefs and interviews using violent, threatening language" could lead a Survivor to take violent action against a lawyer representing CNA—pointing to the assassination of the United Health Care CEO as providing a "cautionary tale." (*Id*. at 6).

Not only does CNA request that the Pfau lift stay motion be sealed from public view, it requests that the Court admonish all counsel in this case to avoid any language that targets Continental, its employees, representatives, or counsel to avoid fomenting a risk of unlawful injury to individuals or their property. (*Id*. at 8). And, in closing with a bit of petulant, overheated rhetoric directed toward the Court, CNA announces that it "reserves all rights to seek an injunction barring speech by case participants targeting Continental, its employees, representatives, and counsel, should the Court decline to issue the remedies requested." (*Id*. at 11).

### III.

### DISCUSSION

"Section 107(a) of the . . . Code codifies the public's common law right to inspect and copy judicial records and creates a presumption that all documents filed in a bankruptcy case are

3

accessible to the public and subject to examination by the public at reasonable times without charge." *In re Anthracite Cap., Inc.*, 492 B.R. 162, 170 (Bankr. S.D.N.Y. 2014). Section 107(b)(1) and (2) create a statutory exception to the public's right of access to papers filed with the bankruptcy court.³ And, if a paper falls within the express statutory exceptions created by § 107(b), the court is *required* to "protect" an entity or person, although the type of protection is left to the discretion of the Court. *See* 11 U.S.C. § 107(b)(1) and (2). Here, CNA asserts that, under § 107(b)(2), the Pfau lift stay motion should be sealed "to protect [CNA] from 'scandalous or defamatory matter.'" (ECF No. 2969 at 8). CNA makes no effort to differentiate between matters it considers to be "scandalous" and those it claims to be "defamatory." And, of course, under § 107(b)(2), those terms do not mean the same thing.

### A. The Matters Contained In The Lift Stay Motion Are Neither "Scandalous" Nor "Defamatory"

In order to have the Pfau lift stay motion sealed from public view under § 107(b)(2), CNA must provide clear evidence that the material contained in the lift stay motion is either: "(i) 'scandalous' because it was grossly offensive, irrelevant to the proceeding, and submitted for an improper use; or (ii) 'defamatory' because the statements can be clearly shown to be untrue without the need for discovery or a mini-trial." *In re Anthracite*, 492 B.R. at 174-75 (internal quotation and citation omitted). A matter is "scandalous" if it "*unnecessarily* reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *In re Swift*, Case No. 94-10285-CEC, 2016 Bankr. LEXIS 262, at *18 (Bankr. E.D.N.Y. Jan. 27, 2016) (quoting 2-12 Moore's Federal Practice-Civil § 12.37 (2015)). "'[C]ourts will not strike scandalous statements that offend the sensibilities of the objecting party if the challenged

---

³ The exception created by § 107(b)(1) concerning trade secret information is of no concern here.

allegations describe acts or events relevant to the action.'" *In re Swift*, Case No. 94-10285-CEC, 2016 Bankr. LEXIS 262, at *18 (quoting *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007)).

A matter is "defamatory" if the statements complained of "are untrue, and that can be clearly shown to be untrue without the need for discovery or a mini-trial." *In re Swift*, Case No. 94-10285-CEC, 2016 Bankr. LEXIS 262, at *18 (quoting *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 556 (Bankr. S.D.N.Y. 2007)).

Here, CNA attempts to cobble together enough "facts" to justify the extraordinary remedy of sealing the lift stay motion from public view. But, no clear evidence of any statements that are scandalous or defamatory on their face are pointed to by CNA. Instead, the *tone* of the lift stay motion, coupled with comments made by state court attorneys in media interviews, are described by CNA as "overheated" and "dangerous rhetoric." (ECF No. 2969 at 5). To obtain the drastic remedy of sealing a pleading, § 107(b)(2) requires much more.

It is not lost on the Court that the *tone* of the lift stay motion bears a striking resemblance to the *tone* of the "editorial comments" contained in the Complaint before the *Anthracite* Court. *In re Anthracite*, 492 B.R. at 176-77. While the Court is puzzled by counsel's strategy in filing a nearly 200-page theatrically presented lift stay motion, the contents of the motion are not grossly offensive, are not irrelevant to the relief being sought, and do not appear to have been submitted for an improper purpose. And, any prejudice that CNA feels it suffered because of the statements made in the lift stay motion is offset by the fact that CNA fully responded to the *tone* of the motion on the record, with a *tone* of its own, and that response will be visible to the public forever. The lift stay motion cannot be sealed from the public's view under § 107(b)(2) because the contents are neither scandalous nor defamatory.

5

**B. Cause For Protection Of Individuals Under § 107(c)(1) Has Not Been Demonstrated**

Under § 107(c)(1), the bankruptcy court may protect an individual with respect to any information, such as identifying information, in a paper filed on the docket if the court finds that disclosure of that information would create an undue risk of unlawful injury to the individual or the individual's property. 11 U.S.C. § 107(c)(1). Here, CNA makes no claim that the Pfau lift stay motion contains any identifying information concerning any CNA representative, employee, or attorney. Instead, CNA asserts that Pfau uses overheated and dangerous rhetoric in its lift stay motion, in an effort to stir up Abuse Survivors, characterized by CNA as "violent language." (ECF No. 2969 at 5). CNA points to the fact that, during the February 11, 2025, initial hearing on the joint disclosure statement, *someone*[4] accessing the hearing by telephone began shouting in response to a discussion had on the record concerning possible dates for the plan confirmation hearing and a schedule for related discovery. (*Id.* at 6). That outburst was not audible in the courtroom and no similar behavior took place in the courtroom. Quite the opposite, in fact. Despite CNA's claim, based on the Court's observations, there was absolutely no "sense of possibly imminent danger . . . so palpable" in the courtroom as to suggest the need for CNA's attorney to be protected by court security officers as he exited the courthouse. CNA then makes a leap in logic to suggest that, if some unknown person could get so upset as to shout on the phone in response to comments made by attorneys concerning a schedule for discovery, "[i]t is . . . not difficult to imagine such an emotionally fragile individual . . . taking violent action," presumably against CNA's attorneys. (*Id.* at 7). The Court does not share CNA's imagined view.

---

[4] Despite CNA's attempt to blame a Survivor for the outburst, the identity of the speaker is unknown and probably unknowable.

Here, CNA has not made any attempt to show by competent evidence that any identifying information concerning an individual is contained in Pfau's lift stay motion. Protection of representatives, employees, and attorneys representing CNA in this proceeding, based on the actual facts and not those facts or scenarios imagined by counsel, is unavailable under § 107(c)(1) of the Code because CNA offers nothing more than speculation and conclusory statements in support of its motion. *See, e.g.*, *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982). The lift stay motion cannot be sealed under § 107(c)(1).

## C. Restraints On Speech By State Court Counsel Are Not Called For At This Time

As its parting shot, CNA asks the Court to admonish opposing counsel to "abstain from disparaging personal remarks or acrimony toward other counsel, parties, or witnesses." (ECF No. 2969 at 9 (citing United States District Court, Western District of New York Civility Principles and Guidelines)). CNA asserts that "counsel clearly need to be reminded of their obligation to act in a professional manner without targeting parties or their representatives and counsel." (ECF No. 2969 at 9).

Without getting into the constitutional problems presented by CNA's request that the Court issue a sweeping admonishment to attorneys involved in this case, the Court does not view the Pfau lift stay motion as either containing disparaging personal remarks or being presented in an unprofessional manner. While the overly theatrical tone and sheer size (200 pages in all) of the Pfau motion may be a bit over the top, that is not a basis for this Court to admonish counsel. And, CNA has, in its motion, pointed out on the public record the many statements contained in the Pfau motion with which CNA finds fault. The competing views of Pfau and CNA are a matter of public record, as they should be. And, that is exactly where they will stay.

## IV.

## CONCLUSION

The motion of CNA requesting that the Court seal the Pfau lift stay motion is, in all respects, **DENIED**.

**IT IS SO ORDERED.**

DATED: March 11, 2025                  _____/s/_____
       Rochester, New York            HON. PAUL R. WARREN
                                            United States Bankruptcy Judge