UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                    Chapter 11

THE DIOCESE OF ROCHESTER,                 Case No. 19-20905 (PRW)

                              Debtor.
-------------------------------------------------------------x

## FINAL REPORT OF LORI LAPIN JONES, ESQ., INDEPENDENT FEE EXAMINER, ON PRIOR AND PENDING INTERIM APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF RETAINED PROFESSIONALS

Lori Lapin Jones, Esq., Independent Fee Examiner ("Fee Examiner"), hereby files her

report ("Final Report") pursuant to the Fee Examiner Order (defined below) with respect

to: (a) prior interim applications for compensation and reimbursement of expenses of retained

professionals for the period from each professional's respective retention date through July 31,

2024; and (b) pending interim applications for compensation and reimbursement of expenses of

retained professionals for the period August 1, 2024 through December 31, 2024.

### Preliminary Statement

1.   This Final Report covers sixty-seven interim applications for compensation and

reimbursement of expenses filed by ten professionals (each, a "Retained Professional" and

collectively the "Retained Professionals") retained either by the above-captioned debtor

("Debtor") or the Official Committee of Unsecured Creditors ("Creditors' Committee"). Of

these interim applications, sixty-one relate to the prior interim fee periods from the petition date

(or retention date) through July 31, 2024 (each a "Prior Interim Application" and collectively, the

"Prior Interim Applications") and six relate to the period from August 1, 2024 through December

31, 2024 (each a "Pending Interim Application" and collectively, the "Pending Interim

Applications"). In accordance with prior Orders, $16,099,691.60 in aggregate fees and

$652,164.41 in aggregate expenses were awarded on an interim basis on account of the Prior Interim Applications. The Pending Interim Applications seek compensation in the aggregate amount of $728,772.71 and reimbursement of expenses in the aggregate amount of $39,915.74.

2.    Following a diligent and comprehensive review of the Prior Interim Applications and Pending Interim Applications[1] and a meaningful consultation process with Retained Professionals, the Fee Examiner makes the recommendations set forth in this Final Report with the consent of each Retained Professional as to its respective Prior Interim Applications and Pending Interim Application.

**Background and Case Status**

3.    The Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on September 12, 2019 in the United States Bankruptcy Court for the Western District of New York ("Bankruptcy Court").  The Debtor remains in possession of its property and continues to maintain its organization as a debtor-in-possession. On September 24, 2019, the United States Trustee ("U.S. Trustee") appointed the Creditors' Committee.

4.    On March 14, 2025, the Bankruptcy Court entered an Order approving a disclosure statement, approving voting procedures on the Eighth Amended Joint Chapter 11 Plan, and scheduling a hearing on confirmation for July 29, 2025 [ECF No. 3031].

**Interim Compensation Procedures**

5.    On December 5, 2019, the Bankruptcy Court entered the Administrative Order

---

[1]  As the Bankruptcy Court noted in its November 25, 2024 Order to Show Cause, the interim applications "consist of thousands of pages, detailing tens of thousands of time entries." Analysis of the Prior Interim Applications and Pending Interim Applications collectively entailed a review of over 45,000 time entries covering over 40,000 hours of work.

2

Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Members of the Official Committees [ECF No. 318] ("<u>Interim Compensation Order</u>"). The Interim Compensation Order sets forth compensation procedures which permit Retained Professionals to be partially paid on an interim and monthly basis. In summary, under the compensation procedures, each Retained Professional is authorized to file and serve a detailed monthly fee statement ("<u>Monthly Fee Statement</u>") on or before the 20th day following the month for which compensation is sought (or as soon as reasonably practicable thereafter). The Monthly Fee Statement must contain a list of individuals who provided services, including title, billing rate, aggregate hours spent by each timekeeper, a reasonably detailed breakdown of the disbursements incurred, and contemporaneously maintained time entries in increments of 1/10 of an hour for each timekeeper (Interim Compensation Order ¶ 3. a and c).

6.   Following an objection period and the filing of a certificate of no objection, the Debtor is authorized and directed to pay 80% of fees and 100% of expenses set forth in the Monthly Fee Statement that are not subject to an objection (Interim Compensation Order ¶ 3. e). The decision of a party not to object to a Monthly Fee Statement is not a waiver of any kind nor does it prejudice that party's right to object to a fee application in the future (Interim Compensation Order ¶ 3. i).

7.   For Retained Professionals filing Monthly Fee Statements, interim fee applications may be filed in four-month intervals (or such other intervals convenient to the Bankruptcy Court) but must be filed at least once every six months or the professionals will be ineligible to be paid fees or expenses monthly (Interim Compensation Order ¶ 3. j).

8.   Interim fee applications are filed pursuant to section 331 of the Bankruptcy Code and the United States Trustee Fee Guidelines for Reviewing Applications for Compensation and

Case 2-19-20905-PRW,   Doc 3089,   Filed 04/30/25,   Entered 04/30/25 14:03:38,   Description: Main Document  , Page 3 of 24

Reimbursement of Expenses filed under 11 U.S.C. § 330 dated May 17, 1996 (28 C.F.R. Part 58, Appendix A) ("U.S. Trustee Guidelines") (Interim Compensation Order ¶ 3. j).

    9. The filing of the first interim fee applications and an omnibus objection by the U.S. Trustee prompted the Bankruptcy Court to issue the Supplement and Modification to Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Members of Official Committees [ECF No. 545] ("Supplemental Interim Compensation Order"). The Supplemental Interim Compensation Order sets forth procedures for professionals to provide the U.S. Trustee with electronic (.txt) billing data, for the U.S. Trustee to provide the respective professionals with an excel spreadsheet for objectionable entries, requirements for the professional's response, and a process for resolving unresolved objections (Supplemental Interim Compensation Order ¶ ¶ 1-4).

## Appointment of Fee Examiner

    10. In March 2020, the U.S. Trustee filed a motion seeking the appointment of a fee examiner [ECF No. 455]. The Bankruptcy Court determined not to exercise its discretion at that time to appoint a fee examiner and denied the motion. See Decision and Order Denying Motion Requesting Appointment of an Independent Fee Examiner *In re Diocese of Rochester,* 2020 Bankr. LEXIS 1060 [ECF No. 517]. The Bankruptcy Court's order denying the appointment of a fee examiner was without prejudice, and the Bankruptcy Court expressly recognized that the case could progress to a point where the relief may become appropriate Id. at *8.

    11. Following the filing of the tenth round of interim fee applications, the Bankruptcy Court issued an Order to Show Cause Concerning the Appointment of an Independent Fee Examiner in which the Court expressed the view that the case had progressed to the point that it "may be appropriate and necessary to aid the Court in determining whether any Professional fees

awarded on an interim basis thus far, or to be awarded on an interim basis in the future, are excessive, duplicative, or unreasonable…." [ECF No. 2829, p. 2]. Following a hearing held on December 13, 2024 in which the Court considered responses, the Bankruptcy Court entered the Order Appointing Independent Fee Examiner and Establishing Related Procedures for the Review of Fee Applications of Retained Professionals [ECF No. 2870] ("Fee Examiner Order"). Under the Fee Examiner Order, Lori Lapin Jones, Esq. was appointed fee examiner ("Fee Examiner") Id. at ¶ 1.

12. The Fee Examiner's duties and responsibilities include reviewing and assessing interim and final applications for compensation filed by Retained Professionals for compliance with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, Interim Compensation Order, Supplemental Interim Compensation Order, and applicable guidelines for compensation. (Fee Examiner Order ¶ 6). Following review of each fee application, the Fee Examiner is tasked with providing each Retained Professional a report on its respective fee application ("Preliminary Report") which sets forth any potential issues or objections. The Fee Examiner and the Retained Professional then have an opportunity to confer with the objective to resolve, to the mutual satisfaction of the Fee Examiner and the Retained Professional, any issues identified by the Fee Examiner. The Fee Examiner then files a Final Report (Fee Examiner Order ¶ 7 (a) – (c)). Reference is made to the Fee Examiner Order for a complete description of the duties and responsibilities of the Fee Examiner and the procedures, protocols, and protections of the fee examination process.

## Work Performed by the Fee Examiner

### *Initial Preparation*

13. The Fee Examiner was assisted in this engagement by National CRS, LLC ("NCRS") as Database Service Provider. NCRS was retained by the Fee Examiner with approval of the

5

Bankruptcy Court pursuant to the Fee Examiner Order [ECF No. 2870, ¶ 3].

14. At the outset of her appointment, the Fee Examiner requested that all Retained Professionals transmit to NCRS their time records for their respective Prior Interim Applications in LEDES or Excel format which NCRS in turn downloaded into its proprietary software for review and analysis by the Fee Examiner. The Fee Examiner also requested that Retained Professionals transmit their fee data to NCRS for their time after the close of the period covered by the Prior Interim Applications and to do so on an ongoing basis.

15. As part of her initial preparation, the Fee Examiner reviewed, inter alia, the Bankruptcy Court docket in this case and certain substantive filings including decisions rendered by the Bankruptcy Court. The Fee Examiner also reviewed the Interim Compensation Order, Supplemental Interim Compensation Order, prior objections (or reservations of rights) filed with respect to Prior Interim Applications, and responses to objections. The Fee Examiner also met with lead counsels for the Debtor and Creditors' Committee and conferred with the U.S. Trustee.

### *Review of Prior Interim Applications/Pending Interim Applications/Preparation of Preliminary Reports*

16. As outlined in detail below, a comprehensive and tailored process was employed by the Fee Examiner to review and assess each Prior Interim Application and each Pending Interim Application. There was no preset goal to achieve a specific level of reductions or to achieve any reductions. Certain areas of examination are objective and if reductions are warranted, they are easy to quantify.[2] Certain areas of examination (including determinations of reasonableness and staffing) are subjective and as to those areas the Fee Examiner exercised her best judgment. In so doing, the Fee Examiner was mindful of the practical judgments that professionals make on

---

[2] The Fee Examiner endeavored to be consistent in her positions on issues in her review of the Prior Interim Applications and Pending Interim Applications. To the extent the application of certain objective findings resulted in nominal reductions of fees and/or expenses for certain Retained Professionals, for consistency, such nominal reductions were requested.

an ongoing basis and often under time constraints. The Fee Examiner also considered the complexity of the Debtor's case as well as the specific and sometimes unique issues in the Debtor's case. The Fee Examiner's recommendations were also informed by the consultation process with Retained Professionals following issuance of the Preliminary Reports (as defined in the Fee Examiner Order).

17. With respect to Prior Interim Applications, the Fee Examiner reviewed: (a) the retention application; (b) the declaration of disinterestedness; (c) the Order approving retention of the Retained Professional; (d) any supplemental declarations/affidavits in respect of retention applications including with respect to notice of rate change; and (e) each Prior Interim Application including the narrative and all exhibits. The Fee Examiner also reviewed each of the Pending Interim Applications including the narrative and exhibits. Thereafter, the Fee Examiner reviewed and analyzed all time entries in NCRS' proprietary software which allows for the review by multiple methods including, without limitation: by timekeeper; by date; by project category; searches by a targeted word or words; by hearing; by time spent in a day; for mathematical errors; etc. The software also allows NCRS to produce reports that allow for efficient review by the Fee Examiner for, inter alia, duplicate time entries, mathematical discrepancies, billing rate changes, etc. As the Fee Examiner navigated the review, she cross referenced other Prior Interim Applications or Pending Interim Applications and reviewed specific filings on the Bankruptcy Court docket. The NCRS software also allows the Fee Examiner to extract time entries and prepare charts based on specific searches.

18. Review of the Prior Interim Applications and Pending Interim Applications was performed for compliance with the, inter alia, (a) Bankruptcy Code; (b) Federal Rules of Bankruptcy Procedure; (c) applicable retention order; (d) Interim Compensation Order; (e)

Supplemental Interim Compensation Order; and (f) U. S. Trustee Guidelines.

19. The Fee Examiner's review encompassed many specific areas including:

a. Rates charged and the proper implementation of any rate increases;

b. Whether work performed fell within the scope of the applicable retention order;

c. Necessity of services performed and benefit to the estate;

d. Overlap and duplication among firms and within a firm;

e. Excessive time spent on a particular task or filing;

f. Appropriateness of staffing;

g. Use of transitory timekeepers;

h. Timekeepers who billed a high number of hours in a day;

i. Level of attendance at Bankruptcy Court hearings, mediation sessions, meetings, and on calls;

j. Time spent on the preparation of monthly fee statements and fee applications;

k. Time spent on non-compensable tasks such as those not ordinarily billed to clients;

l. Billing rates for non-working travel time;

m. Vague time entries;

n. Repetitive time entries;

o. Block billing;

p. Duplicate time entries; and

q. Mathematical errors.

20. Since certain of the Retained Professionals are retained in other diocese cases, the Fee Examiner also focused on whether certain work performed was or should have been allocated among other cases and, in some instances, the Fee Examiner reviewed time records in other diocese cases.

21. The Fee Examiner also reviewed expenses for which reimbursement was sought and as to certain expenses requested backup documentation. Expenses were reviewed for a multitude of issues including, but not limited to:

a. Whether the amount charged was within the suggested caps for out-of-town meals and lodging;

b. Ensuring that airfare was billed at coach rates;

c. To determine whether the expense was non-compensable overhead;

d. To confirm that there was no markup on expenses charged;

e. To determine if expenses were duplicative; and

f. Whether the expense was erroneously billed to this case.

22. Following a comprehensive review of fees and expenses in the (a) Prior Interim Applications and (b) Pending Interim Applications, the Fee Examiner prepared a confidential Preliminary Report which set forth in detail objections or potential objections (if any) to specific time charges or expenses in the Prior Interim Applications or Pending Interim Application. When appropriate the Fee Examiner provided exhibits to support objections. Preliminary Reports were transmitted to the respective Retained Professionals on March 31, 2025 and April 7, 2025.[3]

**_Communications With Professionals Regarding Preliminary Reports_**

23. Following transmittal of the Preliminary Reports, and consistent with the Fee Examiner Order, the Fee Examiner set an approximate two-week period to communicate with Retained Professionals with a goal of reaching mutually satisfactory resolutions of objections or issues raised. Retained Professionals either accepted the fee and expense reductions recommended by the Fee Examiner in the Preliminary Reports or provided detailed explanations

---

[3] With respect to each Retained Professional, one Preliminary Report was issued for its Prior Interim Applications, and one Preliminary Report was issued for its Pending Interim Application (if any). In total, 15 Preliminary Reports were transmitted to nine Retained Professionals on March 31, 2025, and two Preliminary Reports were transmitted to one Retained Professional on April 7, 2025.

and/or further information to address objections, potential objections or questions raised in the Preliminary Reports which the Fee Examiner found helpful. Zoom meetings were conducted with Retained Professionals to discuss their respective Preliminary Reports and there were communications by telephone and email. In the end, with respect to each objection raised, either the Retained Professional accepted the Fee Examiner's proposed reduction, provided the Fee Examiner with information to satisfy the Fee Examiner with respect to the objection raised, or the Fee Examiner and the Retained Professional reached an agreement on specific reductions.

24. The Retained Professionals were responsive, reasonable, and cooperative.

### Recommendations on Prior Interim Applications and Pending Interim Applications

25. Set forth below are summaries of the Fee Examiner's review of the Prior Interim Applications and Pending Interim Applications. The Fee Examiner supports and recommends awards of the fees and expenses requested in each of the respective applications with the reductions agreed to as set forth below.

*Debtors' Professionals*

**Firm: Bond, Schoeneck & King, PLLC ("Bond")**
Role: Counsel to Debtor

*Prior Interim Fee Applications*
Period Covered: September 12, 2019 through July 31, 2024
Total Fees Requested: $5,721,164.23
Total Expenses Requested: $113,258.43
Blended Hourly Rate: $323.54

26. Bond serves as counsel to the Debtor. Bond's Prior Interim Applications cover a period of almost five years.

27. For this engagement, Bond agreed to a 10% discount on its hourly rates and froze its hourly rates for over four years. Bond increased hourly rates beginning in 2024 (for which it

filed a declaration on the docket) and continued to provide a 10% discount on its standard hourly rates. Bond also agreed to cap its blended hourly rate at $400.00 from January 1, 2024 through May 31, 2024, and, effective June 1, 2024, at $450.00. Courtesy discounts were also applied to certain invoices. Bond's Prior Interim Applications are as follows:

| Application | Period | Fees Awarded | Expenses Awarded |
|---|---|---|---|
| First | 09/12/19 – 02/29/20 | $726,230.60 | $14,044.79 |
| Second | 03/01/20 – 08/31/20 | $642,731.56 | $ 3,624.40 |
| Third | 09/01/20 – 01/31/21 | $285,246.00 | $ 6,186.52 |
| Fourth | 02/01/21 – 08/31/21 | $490,443.65 | $10,769.59 |
| Fifth | 09/01/21 – 12/31/21 | $393,541.00 | $13,536.61 |
| Sixth | 01/01/22 – 06/30/22 | $762,127.45 | $12,059.75 |
| Seventh | 07/01/22 – 12/31/22 | $787,114.94 | $10,466.79 |
| Eighth | 01/01/23 – 06/30/23 | $428,000.99 | $11,359.05 |
| Ninth | 07/01/23 – 12/31/23 | $309,955.45 | $ 5,560.16 |
| Tenth | 01/01/24 – 07/31/24 | $895,772.59 | $25,650.77 |
| **TOTAL** | | **$5,721,164.23** | **$113,258.43** |

28. The Fee Examiner's Preliminary Report to Bond for its Prior Interim Applications addressed the following: an incorrect billing entry; charges for certain non-working travel time; duplicate entries; certain non-compensable time; and potential excessive staffing on certain matters.

29. Following a review of the Fee Examiner's Preliminary Report, the Fee Examiner and Bond met at which time Bond provided the Fee Examiner with additional information which satisfactorily addressed certain issues raised by the Fee Examiner. As to the balance of the issues raised, Bond has agreed to a reduction of its fees for the period covered in its Prior Interim Applications in the amount of $44,247.54.

30. The Fee Examiner reviewed the expenses requested by Bond in its Prior Interim Applications and requested and reviewed certain back-up documentation. The Fee Examiner has no objection to reimbursement in full of the expenses requested by Bond in its Prior Interim Applications.

*__Pending Interim Fee Application__*
Period Covered: August 1, 2024 through December 31, 2024 ("Eleventh Interim Application")
Total Fees Requested: $252,594.85
Total Expenses Requested: $7,562.87
Blended Hourly Rate: $384.32

31. The Fee Examiner's Preliminary Report to Bond for its Eleventh Interim Application addressed the following: time billed on certain fee related matters; vague time entries; and certain miscellaneous entries.

32. The Fee Examiner and Bond met at which time Bond provided the Fee Examiner with additional information which satisfactorily addressed certain issues raised by the Fee Examiner. As to the balance of the issues raised, Bond has agreed to a reduction of its fees for the period covered in its Eleventh Interim Application in the amount of $7,217.55.

33. The Fee Examiner reviewed backup documentation for certain expenses requested by Bond. The Fee Examiner has no objection to reimbursement in full of the expenses requested by Bond in its Eleventh Interim Application.

**Firm: Harris Beach Murtha Cullina PLLC ("Harris Beach")**
Role: Special Counsel to Debtor

*__Prior Interim Fee Applications__*
Period Covered: September 12, 2019 through July 31, 2024
Total Fees Requested: $1,457,456.10
Total Expenses Requested: $299,082.95
Blended Hourly Rate: $293.47

34. Harris Beach serves as Special Counsel to the Debtor with respect to: (a) Child Victims Act Claims; (b) a 2018 subpoena issued to the Debtor by the Office of the Attorney General of the State of New York; (c) certain labor and employment matters; and (d) specific real estate matters. After an initial increase in certain hourly rates effective January 1, 2020 (as to which Harris Beach filed an affidavit on the docket), Harris Beach thereafter maintained those hourly rates throughout the case. Harris Beach's Prior Interim Applications cover a period of

almost five years and are as follows:

| Application | Period | Fees Awarded | Expenses Awarded |
|---|---|---|---|
| First | 09/12/19 - 02/29/20 | $ 271,546.50 | $ 62,942.84 |
| Second | 03/01/20 – 08/31/20 | $ 259,058.70 | $ 58,700.38 |
| Third | 09/01/20 – 01/31/21 | $ 266,047.50 | $ 77,963.65 |
| Fourth | 02/01/21 – 08/31/21 | $ 156,033.50 | $ 23,975.58 |
| Fifth | 09/01/21 – 12/31/21 | $ 55,519.00 | $ 8,411.16 |
| Sixth | 01/01/22 – 06/30/22 | $ 116,715.00 | $ 12,441.27 |
| Seventh | 07/01/22 – 12/31/22 | $ 136,738.50 | $ 14,550.44 |
| Eighth | 01/01/23 – 06/30/23 | $ 71,665.00 | $ 14,219.22 |
| Ninth | 07/01/23 – 12/31/23 | $ 78,675.90 | $ 12,298.24 |
| Tenth | 01/01/24 – 07/31/24 | $ 45,456.50 | $ 13,580.17 |
| **TOTAL** | | **$1,457,456.10** | **$299,082.95** |

35. The Fee Examiner's Preliminary Report to Harris Beach for its Prior Interim Applications addressed the following: mathematical errors; duplicate time entries; rate increases; certain non-compensable work; use of a transitory timekeeper; block billing; and vague time entries.

36. Following a review of the Fee Examiner's Preliminary Report, the Fee Examiner and Harris Beach met, and Harris Beach provided the Fee Examiner with additional information which satisfactorily addressed certain issues raised by the Fee Examiner. As to the balance of the issues raised, Harris Beach has agreed to a reduction of its fees for the period covered in its Prior Interim Applications in the amount of $3,106.50.

37. The Fee Examiner reviewed the expenses requested by Harris Beach in its Prior Interim Applications and has no objection to reimbursement in full of the expenses requested.

***Pending Interim Fee Application***
Period Covered: August 1, 2024 through December 31, 2024 ("Eleventh Interim Application")
Total Fees Requested: $60,615.00
Total Expenses Requested: $3,366.87
Blended Hourly Rate: $298.74

38. The Fee Examiner's Preliminary Report to Harris Beach for its Eleventh Interim Application addressed: rate of one timekeeper; certain non-compensable time; rate for non-

13

working travel time; use of transitory timekeepers; and vague time entries.

39. The Fee Examiner and Harris Beach met, and Harris Beach provided the Fee Examiner with additional information which satisfactorily addressed certain issues raised by the Fee Examiner. As to the balance of the issues raised, Harris Beach has agreed to a reduction of its fees for the period covered in its Eleventh Interim Application in the amount of $2,181.25.

40. The Fee Examiner reviewed the expenses requested by Harris Beach and has no objection to reimbursement in full of the expenses requested in its Eleventh Interim Application.

**Firm: Blank Rome LLP ("Blank Rome")**
Role: Special Insurance Counsel to Debtor

***Prior Interim Fee Applications***
Period Covered: September 12, 2019 through July 31, 2024
Total Fees Requested: $1,073.407.97
Total Expenses Requested: $23,714.07
Blended Hourly Rate: $607.61

41. Blank Rome serves as Special Insurance Counsel to the Debtor. For this engagement, Blank Rome agreed to reduce its standard hourly rates by 23%. Blank Rome raised hourly rates as of January 1, 2020, and maintained those rates throughout the case.

42. Blank Rome's Prior Interim Applications cover a period of almost five years and are as follows:

| Application | Period | Fees Awarded | Expenses Awarded |
|---|---|---|---|
| First | 09/12/19 – 01/31/20 | $155,934.61 | $5,475.75 |
| Second | 02/01/20 – 07/31/20 | $ 86,759.73 | $    0.00 |
| Third | 08/01/20 – 12/31/20 | $173,039.39 | $    0.00 |
| Fourth | 01/01/21 – 06/30/21 | $155,308.23 | $   21.20 |
| Fifth | 07/01/21 – 12/31/21 | $109,189.07 | $2,413.37 |
| Sixth | 01/01/22 – 06/30/22 | $110,911.94 | $   455.13 |
| Seventh | 07/01/22 – 12/31/22 | $ 89,060.49 | $1,686.93 |
| Eighth | 01/01/23 – 07/31/23 | $128,265.05 | $9,844.26 |
| Ninth | 08/01/23 – 12/31/23 | $ 18,662.47 | $    0.00 |
| Tenth | 01/01/24 – 07/31/24 | $ 46,276.99 | $3,817.43 |
| **TOTAL** | | **$1,073,407.97** | **$23,714.07** |

43. The Fee Examiner's Preliminary Report to Blank Rome for its Prior Interim Applications addressed the following: an incorrect rate used for one timekeeper for limited time entries; use of a transitory timekeeper; a small math error; and certain non-compensable time.

44. Following a review of the Fee Examiner's Preliminary Report, Blank Rome communicated with the Fee Examiner and agreed to a reduction of its fees for the period covered by its Prior Interim Applications in the amount of $3,366.05.

45. The Fee Examiner reviewed the expenses requested by Blank Rome and requested certain backup documentation. Blank Rome has agreed to a reduction of expenses in the amount of $1,375.31.

***Pending Interim Fee Application***
Period Covered: August 1, 2024 through December 31, 2024 ("Eleventh Interim Application")
Total Fees Requested: $10,375.36
Total Expenses Requested: None
Blended Hourly Rate: $691.69

46. The Fee Examiner reviewed the fees requested by Blank Rome in its Eleventh Interim Application and has no objection to the fees requested.

47. Blank Rome did not request reimbursement of expenses in its Eleventh Interim Application.

**Firm: Nixon Peabody LLP ("Nixon")**
Role: Special Counsel to Debtor

***Prior Interim Fee Application***
Period Covered: September 12, 2019 through January 31, 2020
Fees Requested: $11,540.00
Expenses Requested: None
Blended Hourly Rate: $516.74

48. Nixon serves as Special Corporate Counsel to the Debtor. Nixon filed one Prior Interim Application and agreed to reduce its requested fees by $500.00. The Fee Examiner reviewed the Prior Interim Application and, as reduced, has no objection to the fees requested.

15

49. Nixon filed one further Monthly Fee Statement in the amount of $2,030.00 for the month of March 2020 and did not file any further Monthly Fee Statements (or fee applications). Nixon informed the Fee Examiner that it anticipates filing a final fee application to include all fees in the Prior Interim Application, the March 2020 Monthly Fee Statement, and a small amount of unpaid fees. Nixon informed the Fee Examiner that it has performed related Diocese of Rochester work paid for by third parties (*e.g.*, 403(b) Plan) which will be addressed in its final fee application.

50. The Fee Examiner inquired as to the status of the pre-petition retainer given to Nixon and was informed that Nixon continues to hold a retainer in the amount of $22,030.00.

**Firm: Bonadio & Co., LLP ("Bonadio")**
Role: Accountants for the Debtor

***Prior Interim Fee Applications***
Period Covered: September 12, 2019 through June 30, 2024
Total Fees Requested: $254,900.00
Total Expenses Requested: None
Blended Hourly Rate: N/A

51. Bonadio serves as accountants to the Debtor. Bonadio's Prior Interim Applications cover a period of almost five years and are as follows:

| Application | Period | Fees Awarded | Expenses Awarded |
|---|---|---|---|
| First | 09/12/19 – 09/16/20 | $ 44,500.00 | $0.00 |
| Second | 09/17/20 – 08/25/21 | $ 46,700.00 | $0.00 |
| Third | 08/25/21 – 06/30/22 | $ 49,000.00 | $0.00 |
| Fourth | 07/31/22 – 07/31/23 | $ 59,000.00 | $0.00 |
| Fifth | 08/21/23 – 01/31/24 | $  2,200.00 | $0.00 |
| Sixth | 02/01/24 – 06/30/24 | $ 53,500.00 | $0.00 |
| **TOTAL** | | **$254,900.00** | **$0.00** |

52. As set forth in its retention application, Bonadio charged a flat fee of $45,700.00 to perform an audit for the fiscal year ending June 30, 2019 for which it received a pre-petition retainer for the full amount. The Order authorizing the retention of Bonadio required that any

balance of the pre-petition retainer shall be applied as a credit to post-petition services following entry of an Order awarding fees and expenses to Bonadio. Bonadio informed the Fee Examiner that the full pre-petition retainer was used as of the petition date.

53. Bonadio continued to perform yearly audits for the Debtor for a flat fee with an average yearly increase of approximately 4.9%. Although the audit was on a flat fee, Bonadio's retention application requires that it keep contemporaneous time records. The Fee Examiner requested and reviewed Bonadio's time records. The Fee Examiner has no objection to the flat fees charged by Bonadio for the yearly audits.

54. In addition to the flat fee for each yearly audit, Bonadio charged a flat fee of $10,000.00 in its fourth interim application to assist the Debtor in applying for Employee Retention Credits. Bonadio will not seek any contingency fees based on future collections by the Debtor of Employee Retention Credits. The Fee Examiner has no objection to the $10,000.00 flat fee charged for this work.

55. Beginning in 2024, Bonadio assisted the Debtor in the preparation and filing of 1099 forms for a flat fee of $2,200.00. The Fee Examiner has no objection to this fee.

56. In accordance with the terms of Bonadio's retention, Bonadio did not request reimbursement of expenses.

**Firm: Gnarus Advisors LLC ("Gnarus")**
Role: Claims Valuation Expert for the Debtor
Period: April 12, 2022 through November 30, 2022
Interim Fees: $131,542.50
Interim Expenses: None
Blended Hourly Rate: $416.54

57. Gnarus served as the Debtor's Claim Valuation Expert. It filed one interim fee application for a seven-and-a-half-month period. Gnarus informed the Fee Examiner that it has not performed further work.

58. The Fee Examiner's Preliminary Report to Gnarus on its Prior Interim Application addressed the following issues: billing in whole and half hour increments; block billing; vague time entries; and use of transitory timekeepers.

59. Following a review of the Fee Examiner's Preliminary Report, Gnarus and the Fee Examiner met and Gnarus provided the Fee Examiner with further information regarding Gnarus' work for the Debtor. Gnarus has agreed to a reduction of fees covered by its Prior Interim Application in the amount of $12,870.00.

60. Gnarus did not request reimbursement of expenses in its Prior Interim Application.

***Creditors' Committee's Professionals***

**<u>Firm:</u> Pachulski Stang Ziehl & Jones LLP ("<u>PSZJ</u>")**
<u>Role</u>: Counsel to the Official Committee of Unsecured Creditors

***<u>Prior Interim Fee Applications</u>***
<u>Period Covered</u>: September 24, 2019 through July 31, 2024
<u>Total Fees Requested</u>: $4,735,299.00
<u>Total Expenses Requested</u>: $169,478.62
<u>Blended Hourly Rate</u>: $674.56

61. PSZJ serves as counsel to the Creditors' Committee. PSZJ's Prior Interim Applications cover a period of almost five years.

62. For this engagement, PSZJ agreed to cap its hourly rate for professionals at $700.00 and its hourly rate for paralegals at $395.00 which hourly paralegal rate was thereafter voluntarily capped at $300.00. PSZJ also agreed not to charge for travel time. PSZJs Prior Interim Applications are as follows:

| Application | Period | Fees Awarded | Expenses Awarded |
|---|---|---|---|
| First | 09/24/19 – 02/29/20 | $  380,165.00 | $   9,756.19 |
| Second | 03/01/20 – 08/31/20 | $  277,858.50 | $   8,972.80 |
| Third | 09/01/20 – 05/31/21 | $  608,948.00 | $   8,616.11 |
| Fourth | 06/01/21 – 11/31/21 | $  511,338.00 | $ 26,876.73 |
| Fifth | 12/01/21 – 06/30/22 | $  374,259.50 | $ 11,675.74 |
| Sixth | 07/01/22 – 12/31/22 | $  555,280.00 | $ 12,956.12 |
| Seventh | 01/01/23 – 07/31/23 | $  416,510.00 | $ 25,663.05 |
| Eighth | 08/01/23 – 12/31/23 | $  372,890.00 | $ 13,438.20 |
| Ninth | 01/01/24 – 07/31/24 | $1,238,050.00 | $ 51,523.68 |
| **TOTAL** | | **$4,735,299.00** | **$169,478.62** |

63. The Fee Examiner's Preliminary Report to PSZJ for its Prior Interim Applications addressed the following: potential billing errors; potential duplicate time entries; potential wrong case entry; incorrect rate for paralegal time for certain entries; use of transitory timekeepers; non-compensable time; and staffing at two hearings.

64. Following a review of the Fee Examiner's Preliminary Report, the Fee Examiner and PSZJ met at which time PSZJ provided the Fee Examiner with additional information which satisfactorily addressed certain issues raised by the Fee Examiner. As to the balance of the issues raised, PSZJ has agreed to a reduction of its fees for the period covered in its Prior Interim Applications in the amount of $20,035.55.

65. The Fee Examiner reviewed the expenses requested by PSZJ and requested certain follow-up information. PSZJ has agreed to reduce its expenses by $1,414.24.

*Pending Interim Fee Application*
Period Covered: August 1, 2024 through December 31, 2024 ("Tenth Interim Application")
Total Fees Requested: $349,130.00
Total Expenses Requested: $27,638.04
Blended Hourly Rate: $657.37

66. The Fee Examiner's Preliminary Report to PSZJ for its Tenth Interim Application addressed the following: a potential mis-billed time entry; certain non-compensable time; and an inquiry as to allocation of fees.

67. The Fee Examiner and PSZJ met at which time PSZJ provided the Fee Examiner with additional information which satisfactorily addressed certain issues raised by the Fee Examiner. As to the balance of the issues raised, PSZJ has agreed to a reduction of its fees for the period covered in its Tenth Interim Application in the amount of $1,715.00.

68. The Fee Examiner reviewed the expenses requested by PSZJ and requested certain follow-up information. PSZJ has agreed to reduce its expense request by $2,353.88.

**Firm: Burns Bair LLP ("Burns Bair")**
Role: Special Insurance Counsel to the Official Committee of Unsecured Creditors

***Prior Interim Fee Applications***
Period Covered: May 26, 2021 through July 31, 2024
Total Fees Requested: $1,641,356.75
Total Expenses Requested: $44,569.79
Blended Hourly Rate: $525.66

69. Burns Bair serves as Special Insurance Counsel to the Creditors' Committee. Burns Bair's Prior Interim Applications cover a period of three years and two months.

70. For this engagement, Burns Bair capped its hourly rate for partners at $700.00 and did not raise rates throughout this case. In addition, effective August 1, 2023, Burns Bair ceased billing for travel time. Burns Bair's Prior Interim Applications are as follows:

| Application | Period | Fees Awarded | Expenses Awarded |
|---|---|---|---|
| First | 05/26/21 – 09/30/21 | $165,853.50 | $ 4,226.45 |
| Second | 10/01/21 – 06/30/22 | $171,583.25 | $ 5,700.97 |
| Third | 07/01/22 – 12/31/22 | $491,965.50 | $ 3,424.40 |
| Fourth | 01/01/23 – 07/31/23 | $316,672.00 | $11,565.95 |
| Fifth | 08/01/23 – 12/31/23 | $ 93,435.50 | $ 2,279.10 |
| Sixth | 01/01/24 – 07/31/24 | $401,847.00 | $17,372.92 |
| **TOTAL** | | **$1,641,356.75** | **$44,569.79** |

71. It is noted that in connection with informal objections raised by the Debtor to Burns Bair's Third Interim Fee Application, Burns Bair agreed to a reduction of fees in the amount of $87,421.75.

72. The Fee Examiner's Preliminary Report to Burns Bair for its Prior Interim Applications addressed the following: a duplicate entry; allocation of time among other diocese cases; use of transitory timekeepers; non-compensable time; and non-working travel time.

73. Following a review of the Fee Examiner's Preliminary Report, the Fee Examiner and Burns Bair met and discussed the issues in the Preliminary Report. Burns Bair has agreed to an additional reduction of its fees for the period covered in its Prior Interim Applications in the amount of $13,039.50.

74. The Fee Examiner reviewed the expenses requested by Burns Bair and requested certain backup documentation. Burns Bair has agreed to reduce its expenses by $2,957.47.

***Pending Interim Fee Application***
Period Covered: August 1, 2024 through December 31, 2024 ("Seventh Interim Application")
Total Fees Requested: $48,434.50
Total Expenses Requested: $1,347.96
Blended Hourly Rate: $626.58

75. In the Preliminary Report to Burns Bair for its Seventh Interim Application, the Fee Examiner requested clarification on one time entry which was satisfactorily addressed. The Fee Examiner has no objection to the fees requested by Burns Bair in its Seventh Interim Application.

76. The Fee Examiner requested confirmation of certain expenses which was provided by Burns Bair. The Fee Examiner has no objection to reimbursement in full of the expenses requested by Burns Bair in its Seventh Interim Application.

**Firm: Stout Risius Ross, LLC (fka The Claro Group, LLC) ("Stout")**
Role: Valuation Expert for Official Committee of Unsecured Creditors

***Prior Interim Fee Applications***
Period Covered: June 16, 2021 through July 31, 2024
Total Fees Requested: $937,247.50
Total Expenses Requested: $1,560.55
Blended Hourly Rate: $361.65

77. Stout serves as Valuation Expert for the Creditors' Committee. Stout's Prior Interim

Applications cover a period of three years and are as follows:

| Application | Period | Fees Awarded | Expenses Awarded |
|---|---|---|---|
| First | 06/16/21 - 09/30/21 | $258,006.50 | $0.00 |
| Second | 10/01/21 - 06/30/22 | $ 31,386.00 | $0.00 |
| Third | 07/01/22 - 01/31/23 | $309,585.50 | $0.00 |
| Fourth | 02/01/23 - 07/31/24 | $338,269.50 | $1,560.55 |
| **TOTAL** | | **$937,247.50** | **$1,560.55** |

78. The Fee Examiner's Preliminary Report to Stout for its Prior Interim Applications

addressed the following: rate increases; use of transitory timekeepers; excessive time; potential

overlap of certain work performed; and certain miscellaneous time entries.

79. Following a review of the Fee Examiner's Preliminary Report, Stout provided the Fee

Examiner with a detailed memorandum addressing the issues raised by the Fee Examiner which

satisfactorily addressed certain issues. Thereafter, the Fee Examiner and Stout met and discussed

the issues in the Preliminary Report. Stout has agreed to a reduction of its fees for the period

covered in its Prior Interim Applications in the amount of $20,588.00.

80. The Fee Examiner reviewed the expenses requested by Stout and has no objection to

reimbursement in full.

***Pending Interim Fee Application***
Period Covered: August 1, 2024 through December 31, 2024 ("Fifth Interim Application")
Total Fees Requested: $7,623.00
Total Expenses Requested: None
Blended Hourly Rate: $403.33

81. The Fee Examiner reviewed the fees requested by Stout in its Fifth Interim

Application and has no objection to the fees requested.

82. No expenses were requested by Stout in its Fifth Interim Application.

**Firm: Berkeley Research Group, LLC ("BRG")**
Role: Financial Advisor to the Official Committee of Unsecured Creditors

***Prior Interim Fee Applications***
Period Covered: July 8, 2020 through December 31, 2022
Total Fees Requested: $135,777.50
Total Expenses Requested: $500.00
Blended Hourly Rate: $381.93

83. BRG serves as Financial Advisor for the Creditors' Committee. BRG's Prior Interim

Applications cover a period of two and one-half years and are as follows:

| Application | Period | Fees Awarded | Expenses Awarded |
|---|---|---|---|
| First | 07/08/20 – 05/31/21 | $100,202.00 | $0.00 |
| Second | 06/01/21 – 09/30/21 | $    7,945.00 | $0.00 |
| Third | 10/01/21 – 06/30/22 | $  19,119.00 | $500.00 |
| Fourth | 07/01/22 – 12/31/22 | $    8,511.50 | $0.00 |
| **TOTAL** | | **$135,777.50** | **$500.00** |

84. BRG informs the Fee Examiner that its fees have been nominal since it filed its last

interim fee application for the period ending December 31, 2022.

85. The Fee Examiner's Preliminary Report to BRG addressed the following issues: use

of transitory timekeepers; and excessive time on fee-related matters.

86. Following a review of the Fee Examiner's Preliminary Report, the Fee Examiner and

BRG met and discussed the issues in the Preliminary Report. BRG provided the Fee Examiner

with information that satisfied certain issues. BRG has agreed to a reduction of its fees for the

period covered in its Prior Interim Applications in the amount of $8,718.00.

87. The Fee Examiner has no objection to reimbursement of the expenses requested by

BRG in its Prior Interim Applications.

## **Conclusion**

88.  For the reasons set forth above, the Fee Examiner respectfully submits this Final Report (a) on her review of the Prior Interim Applications and the consensual resolutions reached with the Retained Professionals and (b) on her review of the Pending Interim Applications and recommendations of (i) awards of compensation in the amounts requested net of the reductions agreed to by Retained Professionals (if applicable) and (ii) reimbursement of expenses in the amounts requested net of reductions agreed to by Retained Professionals (if applicable), each as set forth in this Final Report.

89. The Fee Examiner will be available to respond to inquiries from the Bankruptcy Court at the hearing on the Pending Interim Applications currently scheduled for May 15, 2025 at 11:00 a.m.

Dated: Great Neck, New York
      April 30, 2025                  Respectfully submitted,

                                     /s/ Lori Lapin Jones
                                     Lori Lapin Jones, Esq.
                                     Independent Fee Examiner

                                     Lori Lapin Jones PLLC
                                     98 Cutter Mill Road – Suite 255 South
                                     Great Neck, New York 11021
                                     Telephone: (516) 466-4110
                                     Email: ljones@jonespllc.com

Case 2-19-20905-PRW, Doc 3089, Filed 04/30/25, Entered 04/30/25 14:03:38, Description: Main Document , Page 24 of 24