UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| THE DIOCESE OF ROCHESTER, | ) Case No. 19-20905 |
| Debtor. | ) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) QUASHING SUBPOENAS ISSUED BY CONTINENTAL INSURANCE TO JEFF ANDERSON AND JEFF ANDERSON & ASSOCIATES, OR, IN THE ALTERNATIVE (II) FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...........................................................................................1
II. JURISDICTION AND VENUE.........................................................................................3
III. RELEVANT FACTUAL AND PROCEDURAL HISTORY ............................................3
IV. RELIEF REQUESTED .....................................................................................................6
V. ARGUMENT......................................................................................................................6
    A.    The Subpoenas Should Be Quashed ........................................................................6
    B.    The Court Should Issue a Protective Order ...........................................................11
VI. NOTICE OF MOTION...................................................................................................13
CONCLUSION..........................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................................... 7

*In re Boy Scouts of Am. & Delaware BSA, LLC*,
    650 B.R. 87 (D. Del. 2023) .................................................................................... 10

*In re Global Fertility & Genetics, New York, LLC*,
    663 B.R. 584 (Bankr.S.D.N.Y. 2024) ..................................................................... 10

*In re Mallinckrodt PLC*,
    639 B.R. 837 (Bankr. D. Del. 2022) ...................................................................... 10

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013)) ..................... 10

*Romac Env't Servs., LLC v. Wildcat Fluids, LLC*,
    Civil Action No. 6:20-0581, 2022 U.S Dist. LEXIS 99837 (W.D. La. June 3,
    2022) ............................................................................................... 6, 7, 11, 12

*Strait v. Mehlenbacher*,
    526 F. Supp. 581 (W.D.N.Y. 1981) ....................................................................... 12

**FEDERAL CASES**

28 U.S.C. § 1334 ............................................................................................................ 3

28 U.S.C. § 1408 ............................................................................................................ 3

28 U.S.C. § 1409 ............................................................................................................ 3

28 U.S.C. § 157 .............................................................................................................. 3

28 U.S.C. § 157(b) ......................................................................................................... 3

**OUT OF STATE CASES**

Fed. R. Bankr. P. 7026 ................................................................................................... 3

Fed. R. Bankr. P. 9014 ............................................................................................... 3, 11

Fed. R. Bankr. P. 9016 ................................................................................................ 3, 6

Fed. R. Civ. P. 26(b)(1) ................................................................................................. 7

Fed. R. Civ. P. 26(c)(1)..................................................................................................................11

Fed. R. Civ. P. 45.....................................................................................................................3, 6

Fed. R. Civ. P. 45(d)(3)..................................................................................................................6

**STATUTES**

11 U.S.C. § 1129(a)(3)...................................................................................................................9

**RULES**

Fed. R. Civ. P. 26(c) ............................................................................................................1, 3, 13

Fed. R. Civ. P. 45(d) ...................................................................................................................3, 13


LA:4904-7150-7775.6 18489.002                                    iii
Case 2-19-20905-PRW,    Doc 3106,   Filed 05/14/25,   Entered 05/14/25 10:48:58,
Description: Main Document  , Page 4 of 17

The Official Committee of Unsecured Creditors (the **"Committee"**) of the Diocese of Rochester (the **"Diocese"** or the **"Debtor"**) files this motion (this **"Motion"**) for entry of an order, in the form attached as Exhibit A hereto, (i) pursuant to Federal Rule of Civil Procedure (**"FRCP"**) 45(d), made applicable herein pursuant to Federal Rule of Bankruptcy Procedure (**"Bankruptcy Rule"**) 9016, to quash the Deposition Subpoenas[1] issued by Continental Insurance Company (**"Continental"** or **"CNA"**) to Jeff Anderson of Jeff Anderson & Associates PA, and Jeff Anderson & Associates PA (together, with Jeff Anderson, the **"Anderson Firm"**), or, in the alternative (ii) for a protective order pursuant to FRCP 26(c), made applicable herein pursuant to Bankruptcy Rules 9014 and 7026. In support of this Motion, the Committee respectfully states:

## I.

## PRELIMINARY STATEMENT

1. The Committee and the Diocese are co-proponents of the Plan[2] that will resolve the claims of creditors including hundreds of survivors of childhood sexual abuse (the "**Abuse Claimants**") against the Diocese, its parishes and certain other affiliates as well as resolving related insurance recovery claims with all but one of the Diocese's insurers--Continental. The confirmation hearing for the Plan is scheduled to begin on July 29, 2025.

2. Continental, though it is not a creditor and holds no claim that is impaired under the Plan, opposes the Plan and is engaging in aggressive discovery in advance of the confirmation hearing. Although Continental has the right to protect its interests in connection with confirmation,

---

[1] "**Deposition Subpoenas**" refers to the deposition subpoenas attached as Exhibits A and B, respectively, to the *Declaration of Karen B. Dine in Support of the Committee's Motion to Quash Subpoenas Served by Continental or for a Protective Order* ("**Dine Dec.**") being filed simultaneously with this Motion to Quash. Capitalized terms used and not otherwise defined herein have the meaning ascribed thereto in the Deposition Subpoenas.

[2] *Eighth Amended Joint Chapter 11 Plan of Reorganization for the Diocese of Rochester* [Docket No. 3026] (as may be modified, supplemented and amended, the **"Plan"**) filed by the Diocese and the Committee (together, the **"Plan Proponents"**).

the Deposition Subpoenas are a step too far and a litigation tactic that crosses the reasonableness line. The testimony sought by Continental through the Deposition Subpoenas has no bearing on any legitimate confirmation issue and is not reasonably calculated to lead to admissible evidence. In fact, Continental appears to be undertaking an all-encompassing, scorched earth litigation strategy that includes expert testimony from experts the Court has already deemed wholly unpersuasive. The Deposition Subpoenas and the platoon of experts that Continental intends to call at confirmation will not go to the merits of the burden the Diocese and Committee must meet to confirm the plan.

3. The Deposition Subpoenas focus on the Loan and Security Agreement entered into by the Anderson Firm (which represents Abuse Claimants in pending State Court Actions) regarding litigation financing for the Anderson Firm. The Anderson Firm's litigation financing arrangements have no bearing on issues relating to confirmation of the Plan. Frankly, Continental does not have standing to assert that such litigation financing raises ethical issues for the Anderson Firm, and this Court is not the proper forum to address that issue. The fact that Continental is undertaking this inquiry six years after the CVA window opened as the Diocese and Abuse Claimants are moving towards resolution of this case demonstrates that this is nothing more than a last-ditch effort by Continental to prevent its insureds and Abuse Claimants from settling on any terms other than those dictated by Continental.

4. As a Plan Proponent, the Committee seeks an order quashing the Deposition Subpoenas because the Committee and the Diocese will be obligated to waste time and estate funds addressing the Deposition Subpoenas. Even though the Deposition Subpoenas are addressed to a third party, because the Deposition Subpoenas purportedly seek testimony on issues relevant to

confirmation of the Plan, the Plan Proponents have a direct interest in the discovery being sought and no choice but to participate in the discovery sought through the Deposition Subpoenas.

5. Addressing the Deposition Subpoenas is unnecessarily burdensome to the Plan Proponents and so should be quashed pursuant to FRCP 26(c) and 45(d). Moreover, the Deposition Subpoenas should be quashed to avoid the waste of money and time to the Estate in addressing the unnecessary testimony being sought by Continental.

## II.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this case and this motion pursuant to 28 U.S.C. §§ 157 and 1334, because the Motion arises in the above-captioned chapter 11 bankruptcy case (the **"Bankruptcy Case"**) that was filed in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7. Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, FRCP 45 and Bankruptcy Rule 9016.

8. The statutory predicates for the relief requested in this Motion to Quash are section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), FRCP 26(c) and 45(d), and Bankruptcy Rules 9014, 9016, and 7026.

## III.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

9. A detailed description of the procedural and factual history of the Diocese and this Chapter 11 Case, and the proposed plan of reorganization for resolving claims against the Diocese

and certain of the Diocese's non-debtor affiliates, is set forth in the Disclosure Statement and the record of this Chapter 11 Case.[3]

10. As described more fully in the Disclosure Statement, Continental is the only Insurer that has not reached a settlement with the Plan Proponents. Continental is now doing all it can to forestall and prevent confirmation of the Plan.

11. As part of its efforts to disrupt the confirmation of the Plan, Continental issued the Deposition Subpoenas targeting state court counsel for many of the Abuse Claimants, Jeff Anderson & Associates, and, specifically Jeff Anderson. Continental also provided notice that it intends to call up to five experts, as follows:

> a. Peter Kelly, FTI Consulting: Mr. Kelly is presently expected to testify about the bargain embodied between an insurer and an insured in a liability insurance policy, and how the Claim Litigation Protocol and other aspects of the Debtor-Committee Joint Plan prejudice CNA's interests.
>
> b. Samir Parikh, Lewis & Clark Law School: Professor Parikh is presently expected to testify about litigation financing and ethical issues in mass tort cases, including mass tort bankruptcies including diocesan bankruptcies.
>
> c. Tim Delahunt, Delahunt Law PLLC: Mr. Delahunt is presently expected to testify about how coverage cases are litigated in courts in New York state, including likely timelines.
>
> d. Julia Hilliker, Hodgson Russ LLP: Ms. Hilliker is presently expected to testify about the defense of sex abuse lawsuits in Western New York, including likely timelines.
>
> e. Denise Martin, NERA Economic Consulting: Dr. Martin is presently expected to testify regarding Debtor's liquidation analysis and the contributions being made by nondebtor Diocesan entities.

12. All of these experts were noticed as potential expert witnesses by Continental in the context of Continental Insurance Company's Motion for Estimation of Its Administrative

---

[3] *Disclosure Statement In Support of Eighth Amended Joint Chapter 11 Plan of Reorganization for the Diocese of Rochester* [Docket No. 3027] (the **"Disclosure Statement"**)

Expense Claim for Purposes of Considering Confirmation of the Debtor's Plan Only and adversary proceeding commenced by Continental seeking allowance of payment of an administrative claim [Adv. No. 23-02014] (collectively, the "**Administrative Claims Litigation**"). With the exception of Dr. Martin's potential testimony, the topics are identical to the topics that Continental identified for the same experts in the Administrative Claims Litigation.[4] The Court has already heard testimony from Mr. Delahunt, Ms. Hilliker and Dr. Martin. The Court found that Hilliker's "testimony did nothing to advance CNA's claim for damages." [Docket No. 2786 at p. 12]. The Court held that Delahunt's "testimony did nothing to establish CNA's claim that it will be damaged in the future by the Diocese's alleged breach of contract." [Docket No. 2786 at p. 13]. Rather than limit its expert topics to matters that directly impact confirmation, CNA is rehashing the irrelevant opinions of unpersuasive experts. CNA's strategy will simply cause the Estate to expend funds on rebuttal expert(s), depositions, and trial preparation.

13. Despite Continental's subpoena and expert program, the issues related to Continental that the Court will be asked to resolve at confirmation do not depend on discovery. The issues are (a) does the Plan provide treatment for Abuse Claims that is in accordance with applicable law and (b) are the Plan provisions "insurance-neutral" as to Continental and its policies. Determination of these issues is dependent solely on the terms of the Plan (including all Plan Documents). It is not dependent on irrelevant facts about financing by a firm that represents Abuse Claimants.

---

[4] *See The Official Committee of Unsecured Creditors' Application for Entry of an Order Under 11 U.S.C. §§ 1103(A) and 328(A) and Fed. R. Bankr. P. 2014(A) Authorizing Retention of Tom Baker as an Expert Witness Effective as of May 15, 2024 and Providing Tom Baker With Access to The Sexual Abuse Proofs of Claim* [Doc. No. 2647], which identifies the identical areas of expertise for each of Prof. Parikh, Mr. Delahunt, Ms. Hilliker and Mr. Kelly. Only Dr. Martin's focus has changed.

14. Rather than stick to issues relevant to confirmation, in the guise of Plan-related discovery, the Deposition Subpoenas seek testimony relating to the Loan and Security Agreement, including, but not limited to information the Anderson Firm provided to the Lender, Communications with the Debtor or Committee Relating to the Loan and Security Agreement, the Anderson Firm's obligations under the Loan and Security Agreement, Net Proceeds received by the Anderson Firm, and Referral Firms. The terms of these documents are sufficient to spell out the rights and obligations of parties subject to those documents. Depositions are not necessary

IV.

**RELIEF REQUESTED**

15. The Committee respectfully requests that the Court (a) quash the Deposition Subpoenas, or in the alternative, (b) grant a protective order prohibiting Continental from pursuing this discovery.

V.

**ARGUMENT**

A. The Subpoenas Should Be Quashed

16. FRCP 45 (made applicable this matter by Bankruptcy Rule 9016) "explicitly contemplates the use of subpoenas in relation to non-parties and governs subpoenas served on a third party . . . as well as motions to quash or modify." *Romac Env't Servs., LLC v. Wildcat Fluids, LLC*, Civil Action No. 6:20-0581, 2022 U.S Dist. LEXIS 99837, at *3 (W.D. La. June 3, 2022) (quashing subpoena). FRCP 45(d)(3) provides that "[o]n timely motion, the court . . . must quash or modify a subpoena that . . . subjects a person to undue burden." The courts have wide discretion in determining whether there is an undue burden:

> Whether a subpoena imposes upon a witness an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth

of the [**13] document request, the time period covered by it, the particularity
with which the documents are described and the burden imposed." The
determination of issues of burden and reasonableness is committed to the
sound discretion of the trial court.

*Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996) (internal citations omitted); *see also Romac Env't Servs.,* 2022 U.S. Dist. LEXIS 99837 at *4 (identifying the factors for determining undue burden and finding whether a "subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents [or information] and the nature and importance of the litigation.").

17. Relevance is determined under the standard of FRCP 26(b)(1): "[i]nformation must therefore be nonprivileged, relevant, and proportional to the needs of the case to constitute discoverable material." *Romac Env't Servs.,* 2022 U.S. Dist. LEXIS 99837 at *5. Movant bears the burden of persuasion that compliance with the subpoena "would be unreasonable and oppressive." *Id.* at *4.

18. The Deposition Subpoenas should be quashed because they are unduly burdensome in that they seek information that is not relevant to confirmation of the Plan and, instead, improperly seek testimony to harass and embarrass the Anderson Firm and to hobble the interests of the Survivors in the Bankruptcy that is the Committee's purview.

19. The "undue burden" factors weigh overwhelmingly in favor of quashing the Subpoenas. From the estate's perspective, the undue burden will cause the estate to incur fees and expenses because of Continental's wild-goose chase.

20. *First*, the information Continental seeks is irrelevant to the confirmation of the Plan. Testimony concerning the Anderson Firm's communications with the Lender, the Debtor or the Committee have no bearing on the legal or factual issues relating to confirmation of the Plan. The Anderson Firm has disclosed the existence of the Loan and Security Agreement and Continental

has a copy of the Loan and Security Agreement, so it already knows its terms and conditions. Testimony on the Loan and Security Agreement will provide no evidence relevant to confirmation of the Plan. The Loan and Security Agreement is not a part of the Plan, it is not a Plan Document (as defined in the Plan), its terms do not impact the Plan, it is not incorporated into the Plan, and confirmation of the Plan has no relation to it.

21. *Second*, the Deposition Subpoenas seek information regarding the Net Proceeds that might be received by the Anderson Firm. Such information does not relate to the issues for Plan confirmation, as the litigation financing of the Anderson Firm has no bearing on Continental or the treatment of Non-Settling Insurers under the Plan. At best, it is a matter of consideration for Anderson Firm's clients not Continental. Moreover, the allocation of any proceeds under the Plan will conducted after confirmation. As such, there is no way for any party to predict precisely what amounts will be allocated to clients of the Anderson Firm under the Plan. The Plan provides for a fair process but does not provide a guaranty of funding to any single party or group of claimants.

22. *Third*, the Anderson Firm disclosed detailed information concerning its financing in its 2019 Statement filed with this Court [Docket No. 2163]. To the extent that the Deposition Subpoenas seek testimony about law firm referral relationships, the Anderson 2019 Statement also included copies of fee agreements that provided significant information relating to the firm's relationship with referring law firms that also demonstrates that the clients of the Anderson Firm were made aware of those relationships.

23. *Fourth*, Continental's efforts to dig more deeply into the financing of the Anderson Firm is a red herring unrelated to any issue Continental may have with the Plan. The Committee expects that Continental is seeking discovery from the Anderson Firm solely for the purpose of

asserting that the Plan was not proposed in good faith pursuant to 11 U.S.C. § 1129(a)(3). This would require a finding that voting in support of the Plan by clients of the Anderson Firm was driven solely by concerns regarding the Loan and Security Agreement. That conclusion is preposterous in light of the fact that the Anderson Firm does not represent a majority of creditors or a blocking position for the case. Moreover, an almost identical plan proposed by the Committee and the Diocese received an acceptance rate of approximately 94% of survivors in July 2024. [Docket No, 2707, Ex A]. This overwhelming support of the prior plan with identical treatment of abuse claims came through support from survivors represented by numerous firms, including the Anderson Firm. The likelihood of the voting results being impacted negatively by a finding that the Anderson Firm's clients did not vote in good faith is so miniscule and far-fetched that the Court should not allow the inquiry to proceed.

24. Any argument that the motives of a single firm representing a group of creditors is a basis to assert that a plan is not proposed in good faith must also fail on its face. First, the Anderson Firm is not a Plan proponent. Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Thus, by its terms section 1129(a)(a) does not apply to the Anderson Firm. The proponents of the Plan are the Committee and the Diocese. As one court noted:

> The "good faith" standard requires a showing that the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. of Dirs. of Telecom Argentina, S.A.)*, 528 F.3d 162, 174 (2d Cir.2008) (quoting *In re Koelbl*, 751 F.2d 137, 139 (2d Cir.1984)). It "must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan...." *In re Leslie Fay Cos. Inc.*, 207 B.R. 764, 781 (Bankr.S.D.N.Y.1997) (citations omitted). A plan is deemed filed in good faith "when the plan has been proposed for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate, and delivering that value to creditors." *In re*

> *Genco Shipping & Trading Ltd.*, 513 B.R. 233, 261 (Bankr.
> S.D.N.Y. 2014). Good faith has been found to be lacking when the
> plan was proposed with ulterior motives. *Koelbl*, 751 F.2d at 139
> (citations omitted).

*In re Global Fertility & Genetics, New York, LLC*, 663 B.R. 584, 604 (Bankr.S.D.N.Y. 2024).

25. In In re Boy Scouts of Am. & Delaware BSA, LLC, the District Court presented the "good-faith" standard as follows:

> The factors which a court should consider in determining a
> debtor's good faith include if the plan: (1) fosters a result
> consistent with the [Bankruptcy] Code's objectives; (2) has been
> proposed with honesty and good intentions and with a basis for
> expecting that reorganization can be effected; and (3) [reflects] a
> fundamental fairness in dealing with the creditors.

*In re Boy Scouts of Am. & Delaware BSA, LLC*, 650 B.R. 87, 175 (D. Del. 2023) (quoting *In re W.R. Grace & Co.*, 475 B.R. 34, 87–88 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013)); *In re Mallinckrodt PLC*, 639 B.R. 837, 884 (Bankr. D. Del. 2022).

26. These factors are evident by the terms of the Plan and the record of this case. The Plan was proposed after years of negotiation and litigation between the Diocese, the Committee and the Diocese's insurers, including Continental. Only Continental does not want to pay an amount acceptable to Abuse Claimants. The Plan has been proposed with honesty and good intentions by the Plan proponents and there is an expectation that a reorganization can be affected. The terms of the settlement embodied in the Plan, as initially drafted, did not include any settlements with insurers. However, under the Court's guidance and through mediation, every single insurer other than Continental has agreed to settle. Continental has made it clear that it does not believe that it should pay a settlement amount similar to other insurers. It wants to pay less. The Plan does not single out Continental for special treatment or seek nepharious treatment for Continental. Instead, the Plan balances Continental's rights (by maintaining insurance neutrality) with Abuse Claimants' rights (by providing a means to pursue a recovery from Continental)

through a fair system to resolve the underlying CVA litigation (the state court system). The question of whether the Plan was proposed in good faith is resolved by the terms of the Plan documents and the processes embodied therein; not by the motives that Continental and its paid-for experts will ascribe to one law firm.

27. *Finally,* Continental should not be permitted to require the Plan Proponents to waste estate assets addressing the Deposition Subpoenas or be distracted by Continental's straw-man arguments relating to confirmation. Allowing this line of inquiry to proceed will necessitate preparation for and attendance at depositions by estate professionals, retention of one or more experts, preparation for and attendance at expert depositions, preparation for and attendance at the confirmation hearing by expert witnesses and fact witnesses. This is an expensive endeavor for a futile inquiry. The estate should not have to bear the cost.

28. This Court should quash the Subpoenas or enter a protective order prohibiting this unnecessary and wasteful discovery.

**B.     The Court Should Issue a Protective Order**

29. Should the Court decline to immediately quash the Deposition Subpoenas (or either of them), it should issue a protective order under FRCP 26(c)(1) (made applicable herein by Bankruptcy Rule 9014).

30. FRCP 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FRCP 26(c)(1); *see Romac Env't Servs.*, 2022 U.S. Dist. LEXIS 99837, at *6. The Court has wide discretion in determining whether to impose a protective order and fashioning one. *Id.*, at *6-7. Courts will grant protective orders when a party is "attempting to utilize the discovery


LA:4904-7150-7775.6 18489.002                    11
Case 2-19-20905-PRW,    Doc 3106,    Filed 05/14/25,    Entered 05/14/25 10:48:58,
Description: Main Document  , Page 15 of 17

rules as a 'fishing expedition' to find some basis" for their claim. *Strait v. Mehlenbacher*, 526 F. Supp. 581, 584 (W.D.N.Y. 1981).

31. Movant in the first instance bears the burden of persuasion for the issuance of a protective order. "Like a motion to quash, the 'burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *see Romac Env't Servs.*, 2022 U.S. Dist. LEXIS 99837 at *6 (alteration in original).

32. The burden then shifts to the party propounding the discovery. "To successfully oppose a motion for protective order, however, the party seeking discovery may need to make its own showing of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues." *Id.*, at *7.

33. The Deposition Subpoenas are nothing but a fishing expedition; Continental is casting about for anything it can argue, however speciously, might impede confirmation. But the matter sought in the Deposition Subpoenas has no relevance to confirmation, and the Court should enter a protective order preventing the depositions from going forward.

34. Continental has dressed its self-interest in paternalistic clothing. The Deposition Subpoenas serve no legitimate purpose as they do not seek testimony relevant to any legitimate issue with respect to confirmation of the Plan. Moreover, the Deposition Subpoenas place an undue burden upon the Plan Proponents in that they seek information that is not relevant to the confirmation of the Plan, will waste the time and assets of this Estate, and the testimony sought has no probative value.

# VI.

## NOTICE OF MOTION

35. Notice of this Motion will be served on (i) the Office of the United States Trustee by ECF, (ii) counsel for Continental, (iii) counsel for the Debtor, (iv) counsel for the Anderson Firm, and (v) all parties that have filed a request for service of papers under Bankruptcy Rule 2002.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court enter an order (i) pursuant to FRCP 26(c) or 45(d) quashing the Subpoenas, or, (ii) in the alternative, issuing a protective order pursuant to FRCP 26(c) and 45(d), and (iii) granting such other and further relief that the Court deems appropriate.

Date: May 14, 2025          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Ilan D. Scharf*
James I. Stang (admitted *pro hac vice*)
Ilan D. Scharf
Karen B. Dine
Jeffrey M. Dine
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: ischarf@pszjlaw.com
       kdine@pszjlaw.com
       jdine@pszjlaw.com

*Counsel to Official Committee of Unsecured Creditors*