UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NEW YORK

In re:

THE DIOCESE OF ROCHESTER,

    Debtor.

**Chapter 11**

**Case No. 19-20905**

**MEMORANDUM OF LAW ON BEHALF OF NON-PARTIES JEFF ANDERSON & ASSOCIATES, P.A. AND JEFF ANDERSON IN SUPPORT OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) QUASHING SUBPOENA ISSUED BY CONTINENTAL INSURANCE TO JEFF ANDERSON & ASSOCIATES, OR, IN THE ALTERNATIVE (II) FOR A PROTECTIVE ORDER**

PRYOR CASHMAN LLP
    Christopher C. Loeber*
    Seth H. Lieberman*
    Andrew S. Richmond*
    Erik F. Bakke*
7 Times Square
New York, New York 10036
Tel.: (212) 421-4100
Email: cloeber@pryorcashman.com
*Attorneys for Non-Parties Jeff Anderson & Associates, P.A. and Jeff Anderson*
\* *Application for admission pro hac vice pending*

Dated: May 14, 2025

# INTRODUCTION

Non-parties Jeff Anderson & Associates, P.A. ("JAA") and Jeff Anderson, through their attorneys, Pryor Cashman LLP, respectfully submit this memorandum of law in support of the motion of the Official Committee of Unsecured Creditors of the Diocese of Rochester (the "Committee"), incorporating and adopting that motion herein for all purposes, for entry of an order (i) pursuant to Federal Rule of Civil Procedure 45(d) to quash the Deposition Subpoenas issued by Continental Insurance Company ("CNA") to JAA and Mr. Anderson, or in the alternative (ii) for a protective order pursuant to Federal Rule of Civil Procedure 26(c) prohibiting CNA from pursuing this discovery. JAA and Mr. Anderson join each of the Committee's arguments that (i) the information CNA seeks is irrelevant to the confirmation of the Plan, (ii) the depositions that CNA demands seek irrelevant information concerning JAA's financials, (iii) the disclosure of those financials would prejudice JAA, (iv) JAA has already provided the information pertinent to Rule 2019, (v) CNA is pursuing this discovery for ulterior purposes, and (vi) CNA's depositions demands will waste the Estate's assets.

JAA and Mr. Anderson also submit this memorandum of law in support of JAA's request to extend any relief granted pursuant to the Committee's motion to quash to CNA's February 12, 2024 document subpoena served on JAA (the "Document Subpoena"), and to provide further reasons for granting the Committee's motion to quash. *First*, the document and deposition subpoenas should be quashed because they improperly seek to probe JAA's strategy in this case and in numerous other matters. *Second*, the subpoenas are unnecessarily cumulative, as JAA has already produced the information relevant to this proceeding in 2024, more than a year ago. *Third*, the deposition subpoenas should be quashed because deposing claimants' counsel is unwarranted and unnecessary, and the attempt to depose both JAA and Mr. Anderson is particularly egregious.

If the Court declines to grant the requested relief, JAA and Mr. Anderson respectfully ask that the Court limit the scope of CNA's subpoenas to exclude JAA's strategic assessments and internal financial information.

I.     BACKGROUND

    **A. The Court Granted CNA's Request For JAA's Litigation Financing Information Related To This Bankruptcy Case**

On May 23, 2023, this Court granted CNA's motion under Bankruptcy Rule 2019 seeking the disclosure of financial and client information for all law firms representing multiple creditors. (Declaration of Christopher Loeber ("Loeber Decl."), Ex. A, Order Granting Motion By Continental Under Bankruptcy Rule 2019, Doc. No. 2142 (the "May Order"), pp. 1-2.) Specifically, the May Order required firms to file a list of "client by claim number," "engagement letters," "certification" of "authorization," "fee arrangements between the lawyer and clients," and "information about fee-sharing, co-counsel, retainer, referral, or other financial arrangements (including but not limited to litigation financing) with third parties providing in any way for the payment of the fees or costs of the lawyers and law firms…" (*Id.*)

CNA had argued that the Rule 2019 disclosures were necessary given "the possibility of conflicts" where firms were "negotiating the terms of a plan for their different claimant clients to vote on" and given "the likely fee arrangements between claimants and counsel, which would give the lawyers a direct economic stake in the outcome of this bankruptcy case." (Motion to Compel Claimants' Attorneys To Make Mandatory Rule 2019 Disclosures, Dkt. No. 1960, p. 4.) The May Order requiring the disclosure of financial and client arrangements addressed those concerns.

On December 19, 2023, this Court expanded on the May Order by directing JAA to "produce to Continental all information about fee-sharing, co-counsel, retainer, referral, or other financial arrangements relating to its representation of sexual abuse claimants in this bankruptcy

case, including a complete and unredacted copy of the 57 pages of litigation financing information previously produced by Anderson in redacted form." (Loeber Decl., Ex. B., Order Granting Continental's Motion To Compel Production Of Unredacted Litigation Financing Information From Jeff Anderson & Associates, Dkt. No. 2399 (together with the May Order, the "Orders").) Both of the Orders were limited to information concerning financial and client arrangements and **only** for this proceeding.

### B. JAA Produced The Litigation Financing Information Related To This Bankruptcy Case

Following the Court's decisions, CNA served a subpoena on JAA dated February 12, 2024, the Document Subpoena, seeking information regarding loan agreements and client retention agreements related to the Orders. (Loeber Decl., Ex. C.) In addition, the Document Subpoena sought all documents and communications exchanged with JAA's lenders, including all of the updates and other information JAA is obligated to provide its lenders under its loan agreement. (*Id.*, Request Nos. 5, 9-10, 13-19.) JAA objected to the scope and relevance of these requests, but ultimately agreed to produce documents in response to them through the Document Subpoena's service date to avoid a protracted discovery dispute. (*Id.*, Ex. D.)

From April 12, 2024 through May 3, 2024, JAA produced hundreds of documents responsive to the Document Subpoena. (*Id.* ¶ 6.) On May 3, 2024, JAA represented that it had completed its document productions, and CNA raised no concerns with those productions and gave no indication that it would seek further documents. (*Id.* ¶ 7.) With the conclusion of its document productions, JAA had addressed the discovery needs underpinning the Orders and the Document Subpoena.

In June 2024, CNA's counsel informed JAA's counsel that they intended to seek Mr. Anderson's deposition in his personal capacity later that summer. (*Id.* ¶ 8.) JAA's counsel

provided a few potential dates of availability for a deposition, although no subpoena was ever served or a deposition formally agreed to. (*Id.* ¶ 9.) There was likewise no mention of any intent to depose JAA or anyone else at the firm. (*Id.*)

Ultimately, CNA's counsel did not follow up on Mr. Anderson's deposition and nearly a year passed before CNA's counsel reached out again concerning the Document Subpoena or depositions. (*Id.* ¶ 10.)

### C. CNA Sought And Was Denied Litigation Financing Information In The Diocese Of Buffalo Proceeding

In the interim, CNA sought similar financial information from JAA in other pending proceedings. CNA and JAA are repeat players in proceedings across the country. CNA has insured many of the defendants in actions that JAA has brought on behalf of sexual abuse survivors and other claimants and plaintiffs. (*Id.* ¶ 11.) CNA (and its counsel) have therefore had occasion to relitigate the same issues that arose in this proceeding.

Most notably, in October 2024, CNA moved to compel several law firms, including JAA, to file Rule 2019 disclosures in the *Diocese of Buffalo* proceeding. (Loeber Decl., Ex. E, *In Re The Diocese of Buffalo, N.Y.*, Case No. 1-20-10322-CLB, Continental's Motion To Compel Claimants' Attorneys To Make Mandatory Rule 2019 Disclosures, Doc. No. 3203.) The nature of the proceeding and JAA's role in it are substantially similar to those in this proceeding. JAA represents sexual abuse survivors who have claims against the bankrupt estate for *The Diocese of Buffalo*, and CNA has also insured that diocese. (*Id.* pp. 1-3.) CNA's counsel also moved in the *Diocese of Buffalo* proceeding for the same financial and client fee arrangement information. (*Id.*) However, on November 22, 2024, the *Diocese of Buffalo* court denied the motion because the obligations under Rule 2019 had not yet matured. (Loeber Decl., Ex. F, *In Re The Diocese of Buffalo, N.Y.*, Case No. 1-20-10322-CLB, Decision & Order, Doc. No. 3345.)

5

Case 2-19-20905-PRW, Doc 3115, Filed 05/14/25, Entered 05/14/25 22:33:50, Description: Main Document , Page 5 of 15

Around the same time, other courts also denied requests for JAA's internal financials or recognized the importance of distinguishing between JAA's role in the instant proceeding and its other matters. In *The Roman Catholic Diocese of Syracuse*, another insurer requested additional disclosures concerning JAA's internal financials after JAA had already satisfied its Rule 2019 requirements. (Loeber Decl. Ex. G, *The Roman Catholic Diocese of Syracuse*, Case No. 20-30663, Transcript of November 7, 2024 Hearing, p. 41.) Recognizing that JAA had already filed its Rule 2019 disclosure and that federal discovery limits a party's ability to inquire into its opponent's strategy, the Bankruptcy Court for the Northern District of New York denied the motion to compel. (*Id.* p. 44; Loeber Decl., Ex. H, Case No. 20-30663, Doc. No. 2300 (Bankr. N.D.N.Y. November 7, 2024).) In addition, the United States Bankruptcy Court for the Southern District of New York recognized in the context of reviewing a plan's proposed exculpation language that matters pertinent to other proceedings, like exculpation provisions and Rule 2019 disclosures, were not before the court and were not relevant to approval of the plan. (Loeber Decl. Ex. I, *The Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345, Transcript of February 8, 2024 Hearing, pp. 157-59.)

Consistent with this prevailing judicial view, in November 2024, CNA was unable to obtain the same type of information in the *Diocese of Buffalo* proceeding that it had secured from JAA in this proceeding in April 2024 for an earlier time period.

### D. CNA Now Seeks To Obtain Information Relevant To Settlement Strategy And Other Cases Through Its Subpoena In This Case

On March 10, 2025, eight months after counsel to the parties had last discussed the Rule 2019 discovery, CNA's counsel informed JAA's counsel of their demand for additional documents responsive to the Document Subpoena, under the stated theory that the Document Subpoena was "continuing in nature" and JAA's additional loan agreements should be produced. (Loeber Decl.,

¶ 17.) In addition, CNA requested – for the first time since July 2024 – to depose Mr. Anderson in his personal capacity. CNA also sought – for the very first time– to depose a representative of JAA. (*Id.* ¶ 18.) CNA served deposition subpoenas for both of those depositions on May 5, 2025 (the "Deposition Subpoenas," and together with the Document Subpoena, the "Subpoenas"). (*Id.* Exs. J & K.) The Deposition Subpoena on JAA encompasses essentially all of the topics on which CNA requested documents, including not just JAA's loan agreements but also all communications JAA has had with its lenders. (*Id.* Ex. J, pp. 3-4.)

In April 2025, JAA produced as many responsive documents as it could without disclosing highly sensitive material. (*Id*. ¶ 21.) JAA produced additional loan agreements, drafts of loan agreements, written correspondence concerning due diligence for those loans, and documents sufficient to show that JAA was continuing to meet with its lender to provide updates. (*Id.*)

Generally, JAA did not produce exhibits to the litigation funding agreements with confidential information or communications with JAA's lenders with updates and related information about JAA's cases, settlement prospects, and firm financials. (*Id.* ¶ 22.) Where necessary, this information was either redacted in the supplemental April 2025 production or the documents withheld. (*Id.*) JAA's counsel informed CNA's counsel that this information was being withheld because it was highly sensitive and far beyond the legitimate needs of this proceeding. (*Id.* ¶ 23.)

CNA seeks nothing less than an unprecedented and sweeping window into an opponent's strategic thinking and evaluation of this proceeding. JAA's loan agreement requires it to provide its lender with regular updates on JAA's financial position, and its assessment of its clients' position in this proceeding, including the prospects and expected size of settlements. (*Id.* ¶ 24.) Moreover, CNA is seeking communications made over the past year, including the most recent

7

updates provided to JAA's lender, just prior to the confirmation hearing of the Plan in this proceeding. (*Id.* ¶ 25.) CNA doubles down on the overreach of the already overly invasive Document Subpoena by seeking to depose both a representative of JAA and Mr. Anderson in his personal capacity about all of the same materials.

The prejudice of this intrusion into JAA's strategic thinking is further compounded by the fact that JAA communicates with its lender to provide updates on **all** of its cases. JAA has a single loan used to fund its litigation across the country. (*Id.* ¶ 24.) Its updates to its lender are not broken out by matter; instead most of JAA's updates address settlement, timing, and funds flows across all of its matters. (*Id.*) CNA is therefore demanding, not just its opponents' strategic assessment of this proceeding, but its assessment for *The Diocese of Buffalo* proceeding in which CNA's Rule 2019 request was denied and every other proceeding in which JAA is a party, including those where CNA is currently or potentially a party or where CNA's counsel represents a current or potential party and those which have no impact on CNA at all.

JAA has informed CNA that it will not produce a year's worth of strategic thinking on this proceeding and every other proceeding to which JAA represents clients, given their limited relevance. (*Id.* ¶ 26.) In addition, the Committee's counsel met and conferred with CNA's counsel prior to filing the motion to quash. (*Id.*)

II. ARGUMENT

    **A. CNA'S SUBPOENAS SHOULD BE QUASHED AS THEY SEEK JAA'S ASSESSMENTS OF CASE STRATEGY, SETTLEMENT PROSPECTS, AND FIRM FINANCES FOR ULTERIOR PURPOSES**

Each of CNA's Subpoenas should be quashed because they seek additional discovery for an ulterior purpose – prying into JAA's strategy for both this case and JAA's many other cases. Courts routinely deny requests for discovery sought for "ulterior purposes" unrelated to the needs of the case. *See, e.g.*, *In re Melenyzer*, 142 B.R. 154, 156-57 (Bankr. W.D. Tex. 1991) ("The

discovery sought … would only serve ulterior purposes, such as to furnish information for the press or for Congress, (or perhaps even to harass and intimidate).") As the Supreme Court articulated in *Oppenheimer Fund, Inc. v. Sanders*:

> In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied. Likewise, discovery should be denied when a party's aim is to ... embarrass or harass the person from whom he seeks discovery.

437 U.S. 340, 353 n.17 (1978) (internal citations omitted).

JAA has already produced the information concerning its loan agreements, referrals, and retainer agreements, which are the materials that formed the crux of the Orders and CNA's related original argument that it needed discovery in order to assess potential conflicts of interest. *See supra* Section II.A. In April 2025, JAA also produced the updated terms and conditions of its new loan agreement. (Loeber Decl., ¶ 21.) Therefore, the only remaining plausible reason for CNA's demand for communications between JAA and its lenders, as well as any deposition testimony, is merely to gain insight into JAA's litigation strategy in this and other cases. Nothing in the record of this proceeding justifies CNA's unprecedented demand for its opponent's playbook.

When confronted with a similar request for JAA's communications concerning its financing in *The Roman Catholic Diocese of Syracuse*, the Northern District of New York denied the motion to compel. *See* Case No. 20-30663, Doc. No. 2300 (Bankr. N.D.N.Y. November 7, 2024) (Loeber Decl., Ex. H.) As in this case, the insurer in the *Diocese of Syracuse* proceeding requested the additional disclosure after JAA has complied with the Rule 2019 requirements. *See The Roman Catholic Diocese of Syracuse*, Case No. 20-30663, Transcript of November 7, 2024 Hearing, p. 41 (Loeber Decl., Ex. G.) The Northern District found the Rule 2019 disclosure sufficient and concluded that "[o]ne party to litigation is not entitled, absent some contractual or

9

other relationship like an indemnification agreement, to know why the adverse party chooses to make certain strategic decisions in a case or avoid settlement." *Id.* p. 44. CNA is likewise not entitled to know how JAA makes its strategic decisions in this case.

Indeed, CNA's demand for the redacted material in the produced documents, additional lender communications, and deposition testimony in this proceeding should be denied because:

> [C]ourts in the circuit have rejected claims for litigation funding documents when the only asserted relevance is that they will permit the requesting party to peer into its adversary's strategy, the adversary's reasons pursuing what the requesting party might believe is baseless litigation, and the adversary's rationale for accepting or rejecting settlement offers.

*Id.* p. 45 (*citing Eastern Profit Corp. v. Strategic Vision*, 2020 U.S. Dist. LEXIS 239663 (S.D.N.Y. Dec. 18, 2020)); *see also Wright Med. Tech., Inc. v. Orthopedic Sys., Inc.*, 2007 WL 9760389, at *3 (E.D. Wis. Mar. 28, 2007) (denying motion to compel redacted information because entity had "a valid interest in protecting the information in the spreadsheet containing its strategic business plans"). The materials that CNA would do exactly that: permit CNA to peer into JAA's recovery and settlement expectations.

Worse still, CNA seeks not only materials concerning JAA's strategic assessments of this case but also its evaluations of numerous other cases, including other matters in which CNA is a party. (Loeber Decl., ¶¶ 24-25.) CNA already sought this information in *The Diocese of Buffalo* proceeding, and was denied. It cannot now leverage discovery demands in this proceeding to obtain what was denied there. *See supra* Section II.C. Nor may CNA exploit the discovery process to gain a strategic advantage over JAA in other proceedings by demanding access to JAA's case assessments or to harass a repeat opponent by forcing disclosure of its strategic thinking. Federal courts routinely deny these types of intrusive discovery requests. *See Anderson v. Reliance Standard Life Ins. Co.*, 2012 WL 835722, at *4 (D. Md. Mar. 9, 2012) (affirming denial of discovery requests to the extent it served the "improper" purpose of "gathering information for use

10

in other proceedings"); *Devlin v. Transportation Commc'ns Int'l Union*, 2000 WL 28173, at *5 (S.D.N.Y. Jan. 14, 2000) (denying request for discovery that was "only pertinent to the extent that the plaintiffs could use it to attack the proposed settlement of [actions pending in another court]"); *Wright Med. Tech., Inc.*, 2007 WL 9760389, at *3 (denying request of information that may have been relevant to a case pending in another state); *Well-Made Toy Mfg. Corp. v. Lotus Onda Indus. Co.*, 2002 WL 72930, at *4 (S.D.N.Y. Jan. 17, 2002) (denying motion to compel further discovery where moving party "was merely seeking to learn about other U.S. companies it could sue"). *Cf. In re Ativos Especiais II - Fundo de Investimento em Direitos Creditorios - NP*, 2024 WL 4169550, at *15 (S.D.N.Y. Sept. 12, 2024) (denying discovery requests under Section 1782 given "minimal relevance of the evidence [was] outweighed by the intrusive nature of the evidence and the appearance that its proposed use [was] cover for a fishing expedition to investigate other possible or speculative uses of the discovery.").

CNA seeks JAA's strategic documents at the eleventh hour, just before the scheduled Plan confirmation and only after its similar request was denied in a related case. (Loeber Decl., ¶¶ 11-13, 25.) This is simply CNA's last attempt to rely on the Orders in this proceeding to force disclosure of materials it has no legitimate basis to obtain. Moreover, CNA seeks access to over a year of strategic information, including real-time updates on JAA's assessments and projections across several cases. (*Id.* ¶¶ 24-25.) While the relevance of these materials has diminished, the prejudice to JAA has only grown. Although CNA may attempt to offer pretextual justifications for seeking these additional materials, the court need "not accept blindly the [party's] bare assertion of relevance when it comes to the information sought …." *Koch v. Koch Indus., Inc.*, 1992 WL 223816, at *5 (D. Kan. Aug. 24, 1992) (finding plaintiffs failed to explain how requested documents were relevant to providing any element of their case); *see also In re Refco Sec. Litig.*,

11

759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) (rejecting "tenuous arguments" concerning the discovery's relevance that were intended to "obscure" the "true purpose" to "bolster claims" in another proceeding).

Accordingly the Subpoenas should be quashed as CNA seeks JAA's case assessments and strategic thinking for ulterior purposes.

### B. CNA'S DEMANDS UNDER THE SUBPOENA ARE NEEDLESSLY CUMULATIVE

#### i. JAA Has Already Produced The Materials Relevant To This Proceeding Rendering Any Further Discovery Requests Cumulative

CNA's additional demands for documents under the Document Subpoena, along with its two Deposition Subpoenas, are unnecessarily cumulative, as JAA has already produced the subject financial information relevant to this proceeding.

The materials CNA now seeks go beyond the scope of the Orders. The Orders contemplated the production of JAA's financing information and retainer agreements, but they made no provision for depositions of JAA or its lead attorney, nor did they authorize discovery into JAA's involvement in other cases or access to its strategic or settlement-related materials. *See supra* II.A. JAA has fully complied with the Orders and produced hundreds of documents in response to the Document Subpoena. (Loeber Decl., ¶¶ 6, 21.) CNA has already obtained the information relevant to this proceeding through those documents, which speak for themselves. Courts routinely deny additional discovery demands as "unreasonably cumulative or duplicative" when "expansive fact discovery" on an issue has already been provided. *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2021 WL 2481835, at *7 (S.D.N.Y. June 17, 2021) (denying request for deposition on a statistical analysis because the analysis and underlying materials had already been produced).

As the underlying purpose for the Subpoenas has been satisfied, any further discovery on this subject is unnecessary and cumulative.

### ii. Deposing Both JAA And Mr. Anderson Is Unnecessary Harassment

Given JAA's extensive document productions and the limited purpose for this discovery, deposing counsel for the sexual abuse survivors in this proceeding is unwarranted and unnecessary. Instead, the depositions that CNA demands amount to little more than an opportunity for CNA to interrogate opposing counsel under oath. Because depositions of counsel threaten the integrity of the attorney-client relationship, courts rarely permit them and instead rely on alternative forms of discovery whenever possible. *See Cerco Bridge Loans 6 LLC v. Schenker*, 2024 WL 4754022, at *3 (S.D.N.Y. July 9, 2024) (permitting document requests to counsel but denying request for deposition). Whatever marginal benefit CNA might claim from a deposition of JAA or Mr. Anderson is far outweighed by the prejudice to JAA and its clients of being subjected to a line of questioning into JAA's financing, strategy, and client relationships.

CNA's motive for the depositions is further revealed by its demand to depose both JAA and Mr. Anderson. There is no legitimate reason to depose both Mr. Anderson in his personal capacity and also a representative of his firm about the terms of his firm's loan agreements, as any lines of questioning concerning the loan and retainer agreements would be redundant. In fact, for the first year, CNA only sought the deposition of Mr. Anderson. (Loeber Decl., ¶¶ 8-10, 15.) This sudden expansion of its demands is nothing more than an attempt to ensure it can both depose lead counsel for the survivors and pry into any communications with JAA's lender.

## C. IN THE ALTERNATIVE, THE COURT SHOULD GRANT A PROTECTIVE ORDER NARROWING THE SCOPE OF CNA'S SUBPOENAS

CNA already possesses all material relevant to its Rule 2019 inquiries, and the Subpoenas should therefore be quashed in their entirety. However, if the Court declines to quash the Subpoenas outright, JAA respectfully requests, in the alternative, that the Court issue a protective order limiting their scope to exclude any inquiry into JAA's case strategy—whether for this proceeding or any other—and JAA's internal financial figures. At a minimum, excluding such content from further discovery would mitigate the undue prejudice to JAA and its clients.

## CONCLUSION

JAA and Mr. Anderson respectfully request this Court grant the motion to quash the Subpoenas – including with respect to the current demands under the Document Subpoena – or in the alternative, issue a protective order either prohibiting CNA from pursuing this discovery or else excluding any inquiry into JAA's case strategy and internal financial figures.

Dated: New York, New York
May 14, 2025

PRYOR CASHMAN LLP

By: /s/ Christopher C. Loeber
Christopher C. Loeber*
Seth H. Lieberman*
Andrew S. Richmond*
Erik F. Bakke*
PRYOR CASHMAN, LLP
7 Times Square
New York, NY 10036-6569
Telephone: (212) 326-0103
Email: cloeber@pryorcashman.com
*Attorneys for Non-Parties Jeff Anderson
& Associates, P.A. and Jeff Anderson*

\* *Application for admission pro hac vice pending*

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NEW YORK

In re:

THE DIOCESE OF ROCHESTER,

Debtor.

Chapter 11

Case No. 19-20905

## CERTIFICATE OF SERVICE

I certify that the Memorandum Of Law On Behalf Of Non-Parties Jeff Anderson & Associates, P.A. And Jeff Anderson In Support Of Motion Of Official Committee Of Unsecured Creditors For Entry Of An Order (i) Quashing Subpoena Issued By Continental Insurance To Jeff Anderson & Associates, Or, In The Alternative (ii) For A Protective Order in the above-referenced action was filed on the ECF filing system of the District Court on May 14, 2025, and was served on counsel for all parties via the Court's ECF filing system.

Dated: May 14, 2025

/s/ Erik Bakke

Erik F. Bakke

15