Hearing Date & Time: June 5, 2025 at 11:00AM
Objection Deadline: June 2, 2025 at 11:00AM

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DIOCESE OF ROCHESTER,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-20905-PRW |

**INTERSTATE FIRE & CASUALTY COMPANY AND NATIONAL SURETY CORPORATION'S LIMITED OBJECTION TO MOTION FOR RELIEF FROM STAY AND SUPPORTING MEMORANDUM OF LAW [Dkt. No. 2950]**

Interstate Fire & Casualty Company and National Surety Corporation (collectively, "Interstate"), by and through undersigned counsel, hereby file this limited "Objection" to the *Motion for Relief from Stay and Supporting Memorandum of Law* [Dkt. No. 2950] (the "Motion") filed by the Marsh/PCVA Claimants (as defined in the Motion), respectfully showing the Court as follows:

**RELEVANT BACKGROUND**

1. Prepetition, Interstate contracted with the above-captioned debtor and debtor-in-possession (the "Debtor") to provide excess liability indemnity coverage for policy periods in effect from September 1, 1978 to July 1, 1986 (collectively, the "Interstate Policies").[1]

2. On September 12, 2019, the Debtor filed in this Court a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy

---

[1] *See The Allianz Insurers' Brief in Support of the Debtor's Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* [Dkt. No. 1547] (the "Supporting Brief") at 3-5. Copies of the Interstate Policies are attached as Exhibits 1 and 2 to the *Declaration of Siobhain P. Minarovich in Support of the Debtor's Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* appended to the Supporting Brief.

Code"). The Debtor sought bankruptcy relief primarily to resolve its monetary liability for historical sexual abuse claims that had been revived by enactment of the Child Victims Act in early 2019.[2]

3. In connection with that effort, the Debtor on November 14 of the same year filed a complaint against Interstate and various other insurers.[3] The Debtor in the complaint seeks, among other things, a declaration of the rights, duties, and liabilities of the parties under the terms of the Interstate Policies – in short, coverage under the Interstate Policies.[4]

4. Following years of mediation, Interstate and the Debtor (with the support of the Official Committee of Unsecured Creditors ("Committee")) reached a settlement (the "Interstate Agreement") resolving these and other claims.[5] The Interstate Agreement is pending court approval, with a hearing scheduled for June 18.[6]

5. Subject to that approval and satisfaction of certain other conditions, the Interstate Agreement provides for (among other things):[7] a free and clear sale of the Interstate Policies and any Extra-Contractual Claims to Interstate under Section 363 of the Bankruptcy Code; the settlement and release of the Diocese Parties' claims against the Interstate Released Parties; and the implementation of an injunction-in-aid to protect the Interstate Released Parties from all Barred Claims, including any Abuse Claims.[8] The Interstate Agreement also obligates the Debtor to "oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any

---

[2] *See generally Disclosure Statement in Support of Eighth Amended Joint Chapter 11 Plan of Reorganization for The Diocese of Rochester* [Dkt. No. 3027] (the "Disclosure Statement"), art. 2. §B.
[3] *See Complaint* [Adv. Pro. No. 2-19-02021, Dkt. No. 1].
[4] *See id*.
[5] *Settlement Agreement, Release, and Policy Buyback* [Dkt. No. 3072-1].
[6] *See Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief* [Dkt. No. 3072].
[7] For purposes of this paragraph only, capitalized terms used in ¶ 5 but not otherwise defined in this Objection have the meanings ascribed to such terms in the Interstate Agreement.
[8] *See generally* Interstate Agreement.

Abuse Claim that (a) is asserted against any Diocese Party and (b) implicates, or is reasonably likely to implicate, any" of the Interstate Policies.[9]

6. In exchange for the benefits of the Interstate Agreement, and subject to its terms and conditions, Interstate agreed to pay $50 million to a trust for the benefit of Abuse Claimants that is established pursuant to an acceptable reorganization plan.[10]

7. The Debtor and Committee filed their *Eighth Amended Joint Chapter 11 Plan of Reorganization for the Diocese of Rochester* [Dkt. No. 3026] (the "Plan") on March 14. A hearing to consider confirmation of the Plan is scheduled to commence on July 29. The Plan (among other things) contemplates the establishment of a "Trust" for the benefit of Abuse Claimants, the funding of that Trust with $126.35 million in cash (including the $50 million from Interstate) plus an assignment of certain insurance rights, and the issuance of an injunction that channels all Abuse Claims to the Trust for resolution and payment.[11]

8. The Trust, through two principals, is in turn tasked with administering the Abuse Claims and distributing funds to the Abuse Claimants pursuant to the Abuse Claim Allocation Protocol ("Protocol") annexed to the Plan.[12] That Protocol in relevant part sets forth an extra-judicial and, for the most part, exclusive process to value Abuse Claims for purposes of distributions from the Trust.[13] Only Litigation Claimants[14] – Abuse Claimants selected by the Trustee and whose Abuse Claims implicate non-settling insurer CNA's policy(ies)[15] – are

---

[9] *Id.*, § 2.3.4.
[10] *See id.*, §§ 2, 3.1.
[11] *See generally* Plan, §§ 8, 12.
[12] *See generally id.*, § 2.3.4.
[13] *See generally* Protocol; *id.*, ¶ 3.1.
[14] Non-Consenting Abuse Claimants with Abuse Claims against the Participating Parties "retain their Non-Consenting PP Class 4 Claim[s] (as against the Participating Parties) in accordance with the terms of the Plan." Plan, § 2.3.4.e.
[15] Plan, § 1.1.113 ("Litigation Claimant means any Consenting Class 4 Claimant whose Abuse Claim the Trustee, after consultation with the Diocese, believes in good faith to be covered, in whole or in part, by policies of

permitted to liquidate their Abuse Claims in a court of competent jurisdiction, and only then solely for purposes of determining CNA's coverage liability with respect to those Abuse Claims.[16] All[17] other Abuse Claims are liquidated entirely through the administrative process described in the Protocol.[18]

9. On February 18, the Marsh/PCVA Claimants filed their Motion. There, they seek (what they characterize as) "limited relief from the automatic stay … to proceed toward trial in state court on their sexual abuse claims"[19] – *viz*., two Abuse Claims involving alleged abuse from 1973-74 (Mr. Gooden) and 1973-78 (Mr. Labrador).[20] The Marsh/PCVA Claimants in support of their request note that "CNA insured the Debtor … from approximately 1943 to 1977," thus "including the time periods during which" both movants allege abuse,[21] and suggest that lifting the automatic stay may "catalyze [a] complete resolution" of this Chapter 11 Case[22] by motivating CNA to settle through the pressure of litigation.[23]

10. The Motion does not address the fact that one of the Interstate Policies incepted on September 1, 1978 – the last year during which the abuse alleged by Mr. Labrador occurred, according to the Motion[24] – and the proposed *Order Granting Motion for Relief from the Automatic Stay* (the "Proposed Order") annexed to the Motion as Exhibit A broadly purports to terminate the

---

insurance issued by one or more Non-Settling Insurers, and who is authorized by the Trustee to liquidate their Abuse Claim …" (formatting omitted)).
[16] *See id*., § 4.6.1.
[17] *See supra*, n.14.
[18] Protocol, ¶ 3.1.
[19] Motion at 6.
[20] *Id*. at 22.
[21] *Id*. at 23.
[22] *Id*. at 33.
[23] *See generally id*. at Argument § B.
[24] *Compare generally id*. with ¶ 1, *supra*.

automatic stay "to allow [the Marsh/PCVA Claimants] to proceed with their sexual abuse claims"[25] in court, without limitation.[26]

## LIMITED OBJECTION

11. The Motion should be denied with respect to any claim that falls within the policy period(s) of the Interstate Policies. As set forth above, Interstate has (subject to court approval and close) settled with the Debtor and agreed to contribute a substantial sum to a Trust for the benefit of Abuse Claimants like the movants. The Plan, moreover, sets forth a comprehensive scheme for the valuation of Abuse Claims and the distribution of funds to Abuse Claimants. Under these circumstances, stay relief serves no purpose for any claim that falls within Interstate's policy periods: lifting the stay for such a claim will neither drive settlement (Interstate has already settled) nor determine a claimant's entitlement to funds from the Trust (the Protocol controls that outcome). The Motion therefore should be denied, or any relief granted should be limited to any claim (or portion thereof) that falls outside of Interstate's policy periods.

## CONCLUSION

WHEREFORE, Interstate requests entry of an order: (a) denying the Motion as it relates to any claim that falls within any policy period of any Interstate Policy (specifically including any portion of Mr. Labrador's Abuse Claim that occurred on or after September 1, 1978), and (b) granting such other and further relief as is just and right.

[*Signature follows*]

---

[25] Proposed Order, ¶ 2.
[26] *See generally* Proposed Order. For clarity, the Proposed Order later provides that the "automatic stay shall remain in full force an effect for all other purposes including with respect to the enforcement of any judgment against the Debtor" (*id*., ¶ 3) but does not otherwise limit stay relief as to the liquidation of the movants' claims.

Dated: June 2, 2025  Respectfully submitted,

By: /s/ *Harris B. Winsberg*
Harris B. Winsberg (admitted *pro hac vice*)
Matthew M. Weiss (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
**PARKER, HUDSON, RAINER & DOBBS LLP**
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

*-and-*

Todd C. Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
**PARKER, HUDSON, RAINER & DOBBS LLP**
Two N. Riverside Plaza, Suite 1850
Chicago, IL 60606
Telephone: (312) 281-0295
tjacobs@phrd.com
jbucheit@phrd.com

*-and-*

Siobhain P. Minarovich (Bar No. 704462)
**WHITE AND WILLIAMS LLP**
810 Seventh Avenue, Suite 500
New York, NY 10019
Telephone: (212) 631-4415
minarovichs@whiteandwilliams.com

*Counsel for Interstate Fire & Casualty Company and National Surety Corporation*

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>DIOCESE OF ROCHESTER,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-20905-PRW |

## CERTIFICATE OF SERVICE

I, Harris B. Winsberg, certify that on June 2, 2025, I served a true and correct copy of *Interstate Fire & Casualty Company and National Surety Corporation's Limited Objection to Motion for Relief from Stay and Supporting Memorandum of Law*, with the Clerk of the Bankruptcy Court for the Western District of New York, using the CM/ECF system. I certify that the above referenced document was served upon all counsel of record via CM/ECF.

Dated: June 2, 2025

By: */s/ Harris B. Winsberg*
Harris B. Winsberg (admitted *pro hac vice*)
**PARKER, HUDSON, RAINER & DOBBS LLP**
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
hwinsberg@phrd.com

*Attorney for Interstate Fire & Casualty Company and National Surety Corporation*