# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NEW YORK

In re:

DIOCESE OF ROCHESTER,

Debtor.

Case No. 19-20905-PRW

Chapter 11

### CONTINENTAL'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 363 AND 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENTS AND POLICY BUY-BACKS WITH CERTAIN INSURERS AND GRANTING RELATED RELIEF

The Continental Insurance Company ("CNA") hereby objects to Debtor's *Motion for Entry of Orders Pursuant to Sections 363 and 105(A) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs With Certain Insurers and Granting Related Relief* (Dkt. No. 3072, the "Motion") for the reasons set forth below.

In sum, the proposed settlements fail to fully protect rights CNA has or may have in the future against the Settling Insurers[1] to recover on certain contribution, indemnification, and subrogation claims. The Motion therefore should not be granted, and the settlements should not be approved, unless revisions are made to the settlement agreements and/or any orders approving such agreements to fully protect CNA's rights.[2]

---

[1] The "Settling Insurers" are (a) Interstate Fire & Casualty Company, National Surety Corporation and Fireman's Fund Insurance Company (collectively, "Interstate"), (b) certain London Market Companies ("LMI"), (c) certain Underwriters at Lloyd's, London ("Underwriters"), and (d) First State Insurance Company ("First State"). *See id.* at 1-2; Dkt. No. 3026 (Eighth Amended Plan), § 1.1.92.

[2] CNA notes that neither of the settlement agreements attached as exhibits to the Motion are signed. This Court previously held that a settlement agreement between Debtor and CNA that was
(continued . . .)

## Background

The Motion recognizes that there are circumstances where one insurer that pays defense or indemnity costs with respect to a tort claim may have Insurer Contribution Claims against another insurer whose policy was in effect when the underlying abuse takes place.[3] Where a Non-Settling Insurer such as CNA seeks to assert such Insurer Contribution Claims against a Settling Insurer, the settlement agreements for which Debtor is seeking approval would require that such claims be enjoined and channeled to a Trust that will be established following confirmation of the Plan. The Trust will not pay such Insurer Contribution Claims, however; instead, it would offer only judgment reduction that does not, in all circumstances, fully satisfy CNA's Insurer Contribution Claims. Thus, the agreements seek, without CNA's consent, to extinguish claims that CNA has against other insurers—none of whom are debtors in this Chapter 11 case.

As discussed below, this violates the Supreme Court's holding in *Purdue Pharma* barring a bankruptcy court from approving a plan that, without consent, enjoins and releases claims by one nondebtor against another nondebtor. The *Purdue* holding is applicable here because the settlement agreements not only dictate the terms of the Plan relating to Insurer Contribution Claims, but further require that the settlement agreements and any orders approving the agreements control over the Plan and any order confirming the Plan.

---

not signed by Debtor was not enforceable against Debtor. *See The Continental Ins. Co. v. The Diocese of Rochester (In re The Diocese of Rochester)*, 664 B.R. 378 (Bankr. W.D.N.Y. 2024), *appeal pending*. If that conclusion is correct, it therefore appears that the Motion is seeking an improper advisory opinion from the Court regarding agreements to which Debtor has not actually bound itself.

3     *See* Motion at 8 n.4 (acknowledging that "[s]ome POCs implicate multiple policies," including where "proofs of claim may allege abuse spanning policy years covered by different insurers").

**A. The settlement agreements and the Plan seek to enjoin CNA, a Non-Settling Insurer, from pursuing its Insurer Contribution Claims against the Settling Insurers**

The Motion seeks approval of four settlement agreements, only two of which are attached to the Motion.[4] The two that have been filed, the LMI and Interstate settlement agreements, have similar structures and terms. The LMI Settlement Agreement, for example, provides that LMI shall make the "Settlement Payment" in exchange for "(i) the Settling Insurer Injunction, Channeling Injunction, and Gatekeeper Injunction; (ii) the purchase of the Purchased Property; and (iii) the Entities' Release by the Parties."[5] The various injunctions would have the following scopes and terms relevant to CNA:

- *Settling Insurer Injunction*: This injunction would "enjoin[ ] all Barred Claims by all Persons who now, or in the future may, hold such Claims against the Settling Insurers."[6] "Barred Claims" has a broad definition that includes, *inter alia*, "Insurer Contribution Claims."[7] "Insurer Contribution Claims," in turn, is defined to include a wide variety of claims by a non-settled insurer such as CNA against LMI or any of the other Settled Insurers:

    > The term "**Insurer Contribution Claims**" *means all Claims*, most commonly expressed in terms of contribution, indemnity, equitable

---

[4] *See* Dkt. No. 3072 at 3-4 of 32 ("The proposed forms of the Settlement Agreements with Interstate and LMI are attached to this Motion as *Exhibits A* and *B* respectively. The Diocese intends to file the Settlement Agreements with Underwriters and First State as supplemental exhibits well in advance of the hearing on this Motion."); Dkt. Nos. 3079-10 and 3079-11 (Plan Supplement listing Underwriters Settlement Agreement and First State Settlement Agreement as "to be filed"). CNA's search of the docket did not locate any filing attaching the proposed forms of the Underwriters Settlement Agreement or First State Settlement Agreement. CNA reserves the right to supplement this objection after the Underwriters Settlement Agreement and First State Settlement Agreement are made available on the docket.

[5] Dkt. No. 3072-2 at 33 of 219.

[6] *Id.* at 28 of 219.

[7] *Id.* at 10 of 219 (defining Barred Claims).

indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other indirect or derivative recovery *against a Settling Insurer, by an Insurer (including any Non-Settling Insurer) for the payment of money*, where such Insurer contends that it has paid more than its equitable or proportionate share of a Claim against the Diocese and/or a DOR Signatory.[8]

- *Channeling Injunction*: This injunction would require "all Channeled Claimants to assert their Channeled Claims against the Trust, and bar[ ] and permanently enjoin[ ] such Claims against the "Protected Parties."[9] "Protected Parties" is defined to include "the Settling Insurers."[10]

- *Gatekeeper Injunction*: This injunction would bar an "Enjoined Party" from commencing or pursuing against any Protected Party, without advance bankruptcy court approval, any Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or

---

[8] *Id.* at 12 of 219 (emphasis added). The LMI agreement contains a defined term, "Settlement Approval Findings and Conditions," that lists certain purportedly "necessary" findings of fact to be entered by the Court concurrently with the Approval Order. One of those findings is that "The Barred Claims are within the jurisdiction of the Bankruptcy Court." *Id.* at 25 of 219. CNA disputes that its Insurer Contribution Claims against nondebtor insurers are within the Court's jurisdiction. Another such finding is that "The only potential holders of Interests in, to, or against the Purchased Property are the (a) Diocese; (b) the DOR Signatories; and (c) Persons who hold Claims against the Diocese and/or the DOR Signatories, which might be covered by the Subject Insurance Policies." *Id.* at 26 of 219. However, to the extent that CNA's Insurer Contribution Claims are claims against the Settling Insurers' policies, there is no basis for that proposed finding.

[9] *Id.* at 8 of 219. *See also id.* at 10 of 219 (defining "Channeled Claims" to include "any other Claim against any Protected Party arising from or related in any way to an Abuse Claim or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise; Claims for exemplary or punitive damages; Claims for attorneys' fees and other expenses, or Claims for any equitable remedy"), 168 of 219 (required form of the Channeling Injunction).

[10] *Id.* at 24 of 219 (defining "Protected Parties").

reorganization of the business of the Diocese, the Reorganized Diocese, the administration of the Trust, or the transactions in furtherance of the foregoing."[11]

The agreements provide that these various injunctions must be included in the plan confirmation order.[12]

These injunctions would completely bar CNA from pursuing its Insurer Contribution Claims against the Settling Insurers.

### B. The Plan channels CNA's Insurer Contribution Claims against the Settling Insurers to the Trust, but the Trust is barred from paying such claims

Debtor's Eighth Amended Plan has provisions that suggest a Non-Settling Insurer's enjoined Insurer Contribution Claims will be satisfied by the Trust, but that is actually not the case.

As a starting point, § 8.9.2(e) of the Plan provides that "all Insurer Contribution Claims shall be channeled to the Trust in accordance with Section 12.5.1 of the Plan."[13] Plan § 12.5.1 states, however, that the holder of a channeled Insurance Contribution Claim is not entitled to receive any distribution from the Trust:

> Except as expressly set forth in Section 12.2.2 of the Plan, the Channeling Injunction shall channel all Inbound Contribution Claims and all Insurer Contribution Claims to the Trust. For the avoidance of doubt, unless otherwise provided in the Plan, the Allocation Protocol, or Trust Documents, *the channeling of an* Inbound Contribution Claim or *Insurance Contribution Claim does not entitle the holder of such Channeled Claim to a Trust Distribution.*[14]

---

[11] *Id.* at 170 of 219 (required form of Gatekeeper Injunction). *See also id.* at 17 of 219 (defining Gatekeeper Injunction).

[12] *See id.* at 21 of 219.

[13] Dkt. No. 3026 (Eighth Amended Plan) at 73-74 of 111.

[14] *Id.* at 93 of 111 (emphasis added).

Thus, although the Plan channels all Insurer Contribution Claims to the Trust, such Insurer Contribution Claims will not be paid by the Trust. Rather, § 8.9.2(e) of the Plan limits a Non-Settling Insurer to a reduction of its "liability (if any) . . . to the Trust," presumably (but not explicitly) commensurate with the amount of its Insurer Contribution Claim.[15]

However, the next section of the Plan, § 8.9.3, appears to revoke any reduction rights granted by § 8.9.2(e). This is because § 8.9.3 says, "*[n]otwithstanding anything to the contrary in Section 8.9.2*, the *Non-Settling Insurers' remedies are limited to those available under applicable law* and nothing in the Chapter 11 Case shall enhance any right(s) a Non-Settling Insurer may have under applicable law."[16] In other words, the reduction right granted by § 8.9.2(e) is completely illusory because § 8.9.3 limits Non-Settling Insurers' rights to those they have "under applicable law." The only right a Non-Settling Insurer like CNA would have "under applicable law" to recover its Insurer Contribution Claims would be by asserting such claims against an insurer (such as one of the Settling Insurers) who also has an obligation to pay defense or indemnity costs related to a particular claim, but failed to do so. "Applicable law" would not permit CNA to assert such Insurer Contribution Claims against a non-existent Trust. Yet the Plan would enjoin CNA from asserting such claims against any of the Settling Insurers.

Moreover, because the reduction of any CNA liability to the Trust depends on CNA having any liability to the Trust in the first place, the provisions of the Plan mandated by the settlement agreements do not allow for recovery of any portion of an Insurer Contribution Claim that is based on CNA incurring defense costs relating to the successful defense of an

---

[15]     *Id.* at 73 of 111.

[16]     *Id.* at 74 of 111 (emphasis added).

underlying claim. In other words, if CNA were to incur defense costs defending the Diocese against a claim that triggers coverage under both a CNA policy and an LMI policy, and the Diocese (defended by CNA) were to prevail against the person asserting the underlying claim, CNA would have no liability to the claimant or the Trust—and, thus, no means to recover its Insurer Contribution Claim relating to the portion of incurred defense costs that should (under this hypothetical) have been paid by LMI.

### C. The Reduction Clause in the agreements and the Plan improperly burdens CNA's assertion of Insurer Contribution Claims against the Settling Insurers or the Trust

The settlement agreements require that the Plan shall include "the Reduction Clause."[17] That clause, set forth in both the settlement agreements and in § 12.5.2 of the Plan,[18] applies "[i]f, for any reason any court does not recognize the channeling of the Insurer Contribution Claims of Non-Settling Insurers to the Trust, or such Insurer Contribution Claims are not channeled for any reason."[19] In that event, any judgment obtained by the Diocese, a Participating Party, the Trust, or an Abuse Claimant against a Non-Settling Insurer would "be automatically reduced by the amount, if any, that the Contribution Target [*i.e.*, the Settling Insurer(s) against whom the Non-Settling Insurer has asserted an Insurer Contribution Claim] is liable to pay such Non-Settling Insurer as a result of its Insurer Contribution Claim (the 'Reduction Amount'), so that the Non-Settling Insurer's Insurer Contribution Claim is thereby satisfied and extinguished entirely."[20] The provision goes on to add a punitive measure that

---

[17] *Id.* at 22 of 219. *See also id.* at 24 of 219 (defining "Reduction Clause").

[18] The text of the Reduction Clause is also set forth in an attachment to the settlement agreements. *See id.* at 213 of 219.

[19] *Id.*

[20] *Id.*

applies if the Non-Settling Insurer's Insurer Contribution Claim is unsuccessful:

> In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Insurer Contribution Claim, then such Non-Settling Insurer shall fully reimburse the Contribution Targets their costs and expenses, including legal fees incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the court.[21]

Pursuant to "the American Rule," however, no such obligation to pay another party's litigation costs is imposed in the court system generally.[22] Thus, the settlement agreements seek to burden a Non-Settling Insurer's assertion of its Insurer Contribution Rights in a manner that is foreign to the litigation system generally.

Further, because the reduction authorized by the Reduction Clause would apply only to a judgment obtained by the Diocese, a Participating Party, the Trust, or an Abuse Claimant against a Non-Settling Insurer, it is inadequate because it does not allow for recovery of any portion of an Insurer Contribution Claim that is based on CNA incurring defense costs relating to the successful defense of an underlying claim (because, in that case, there is no judgment against CNA to be reduced).

**D. The settlement agreements dictate the provisions of the Plan relating to Insurer Contribution Claims and further require that the agreements control over the terms of the Plan in the event of any inconsistency**

The settlement agreements require that the Plan must include provisions "[i]ncorporating" the agreements "and the releases and injunctions contained [t]herein, by

---

[21] *Id.* A similar punitive provision is also found later in the Reduction Clause, applicable in slightly different circumstances. *See id.* at 214 of 219.

[22] *See, e.g.*, *Kornea v. Miller*, 2024 WL 1935912, *5 (S.D.N.Y. April 5, 2024) (explaining that the American Rule "is the default rule governing payment of attorney's fees, provides that 'attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule'")

reference, and making the Settlement Agreement[s] part of the Plan as if set forth fully within the Plan."[23] They also require that the Plan contain provisions "[s]pecifying the terms of this Agreement shall control in the event of any conflict with the Plan or the Confirmation Order."[24]

### E. The settlement agreements purport to modify the Settling Insurers' insurance policies in ways that appear designed to extinguish CNA's Insurer Contribution Claims

Given that the Agreements and Sale Order purport to take precedence over the Plan and Confirmation Order, they would impermissibly undermine CNA's ability to recover on its Insurer Contribution Claims. This is because the agreements contain provisions modifying the terms of the Settling Insurers' policies in ways that could affect CNA's Insurer Contribution Claims by making the Settling Insurers' policies no longer responsive to Abuse Claims.

For example, the LMI settlement agreement purports to modify the LMI policies by adding three endorsements, effective upon the "Actual Payment Date:"[25]

- A "cancellation endorsement" stating, ""All Coverages provided for under this Policy are hereby cancelled and terminated;" [26]

- A "sexual misconduct exclusion" stating, "Sexual or physical abuse or molestation of any person by the Assured, any employee of the Assured or any volunteer worker does not constitute personal injury within the terms of this policy and as such any claim arising, directly or indirectly, from the

---

[23] *Id.* at 22 of 219.

[24] *Id.* at 21 of 219. *See also id.* at 40 of 219 ("If any provision of the Plan, the Trust Agreement, or Allocation Protocol conflicts with or is inconsistent with this Agreement in any way whatsoever, then the provisions of this Agreement shall control and take precedence"). *See also* Dkt. No. 3026 at 59 of 111 (Plan provisions providing that the Insurance Settlement Agreements and Sale Orders shall control over the Plan and Confirmation Order, respectively).

[25] *See* Dkt. No. 3072-2 at 3 of 219 ("WHEREAS, the Subject Insurance Policies will be endorsed with the "Sexual Misconduct Exclusion", "Cancellation Endorsement", and "Time-Bar Exclusion", effective upon the Actual Payment Date").

[26] *See, e.g.*, *id.* at 166 of 219.

aforementioned is excluded;"[27] and

- A "time-bar exclusion" stating, "No suit to recover on account of loss under this insurance shall be brought unless commenced within two years from the date when the occurrence giving rise to the loss began; regardless of the insured's knowledge of such occurrence."[28]

If these endorsements were given effect as against CNA, the Trust or a Settling Insurers opposing an Insurer Contribution Claim by CNA might well argue that the policies, as modified, no longer respond to Abuse Claims (including because they are "exhausted . . . as to all coverages") and, thus, any basis for CNA's Insurer Contribution Claim has been eliminated.[29]

**Argument**

CNA objects to the Motion to the extent that it seeks relief affecting, impairing, releasing, or enjoining CNA's Insurer Contribution Claims against the Settling Insurers. The Motion and the proposed settlement agreements recognize the existence of such claims, but do not then preserve them or fully satisfy them. Instead:

- The Motion seeks to channel such claims to the Trust, but not for payment; instead, CNA would only be entitled to judgment reduction, and even then only

---

[27] *Id.* at 167.

[28] *Id.* at 177 of 219. *See also* Dkt. No. 3072-1 at 217 of 230 (proposed order for the Interstate settlement providing that once the Interstate policies are "amended to include the Sexual Abuse Exclusion, Time-Bar Exclusion and Cancellation Endorsement . . . immediately thereafter" the policies "shall be deemed void *ab initio*, terminated, extinguished, and of no further force and effect"); *id.* at 221 of 230 (proposed order further providing that "immediately" upon amendment of the policies via these endorsements, the policies "shall be terminated and no longer in force or effect, exhausted in retrospect as to all coverages, and all Interests the Diocese or any other Person or Entity (including without limitation any of the other Diocese Parties or Covered Parties) may have had, may presently have, or may in the future have, in such Purchased Property are released and extinguished, and all such Persons (including without limitation the Diocese Parties and Covered Parties) and Entities hereby are forever barred, estopped, and permanently enjoined from asserting any such Interest against the Purchased Property").

[29] *See, e.g.*, Dkt. No. 3072-2 at 3 of 219 ("WHEREAS, it is the intention of the Parties that any and all Interests in or to the Purchased Property be extinguished, ended, and forever terminated").

for a portion of—not all of—its Insurer Contribution Claims. Further, language in the settlement agreements appears to render even this inadequate judgment reduction completely illusory.

- The Motion seeks to modify the Settling Insurers' policies to eliminate all existing potential coverage for Abuse Claims, thereby providing the basis for an argument by the Settling Insurers or the Trust that CNA could not possibly have any viable Insurer Contribution Claims.

- Finally, in circumstances where the Reduction Clause applies, CNA's assertion of Insurer Contribution Claims would be burdened by an unlawful cost-shifting provision that CNA has not agreed to.

Case law clearly establishes, however, that a Bankruptcy Rule 9019 settlement cannot prejudice the rights of non-parties to the settlement, such as CNA. CNA does not consent to the elimination of its Insurer Contribution Claims.

It is well-settled that "[a] court may approve a compromise or settlement only when it is 'fair and equitable.' An approval of a compromise, absent a sufficient factual foundation which establishes that it is fair and equitable, inherently constitutes an abuse of discretion."[30] In determining whether a settlement is "fair and equitable," the inquiry is not directed solely at the fairness of the proposal to the settling parties. Rather, "fairness to the settling parties of a proposed settlement agreement may not warrant its approval if the rights of others who are not parties to the settlement agreement are unduly prejudiced."[31] Indeed, ignoring the effect of a

---

[30] *In re A&C Properties,* 784 F.2d 1377, 1383 (9th Cir. 1986), quoting *Matter of Aweco, Inc.,* 725 F.2d 293, 298 (5th Cir .), *cert. denied,* 469 U.S. 880 (1984).

[31] *In re Medical Asset Management, Inc.,* 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000).

proposed settlement upon the rights of third parties "contravenes a basic notion of fairness."[32]

Moreover, no party may obtain greater rights in connection with a prepetition insurance contract through a bankruptcy filing.[33] Similarly, under the Fifth Amendment Takings Clause, a bankruptcy court may not deprive a party of its property interest and may not create substantive property and contract rights where such rights do not exist under non-bankruptcy law.[34]

Accordingly, CNA's Insurer Contribution Claims against the Settling Insurers cannot be eliminated, or even limited, by proceedings in the bankruptcy case. Indeed, other courts have specifically held that a Rule 9019 settlement cannot prejudice the rights of non-parties to the settlement.[35] Consequently, the Motion should not be approved to the extent that it would eliminate, enjoin, impair, or otherwise adversely impact, in any way, CNA's Insurer Contribution Claims.

The importance of preserving non-settling insurers' contribution rights was addressed just last month by the Third Circuit in *In re Boy Scouts of America*. There, the "Allianz Insurers"

---

[32] *Id.,* citing *In re AWECO,* 725 F.2d at 298. *See also A & C Properties*, 784 F.2d at 1384 (consistent with its obligation to ensure fairness in a settlement, "the bankruptcy court is obligated to preserve the rights of the creditors").

[33] *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984), *cert. denied*, 469 U.S. 982 (1984) (Bankruptcy Code does not expand debtor's rights against others more than they exist at the commencement of the case); *In re Frazer*, 377 B.R. 621, 626-627 (9th Cir. B.A.P. 2007) (filing a petition for bankruptcy does not expand that rights a debtor has in property as of the commencement of the case; such rights simply continue in bankruptcy).

[34] *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589-90 (1935) (A bankruptcy court's power limited by the Fifth Amendment); *In re Roman*, 283 B.R. 1, 14 (9th Cir. B.A.P. 2002) (A bankruptcy court's inherent equitable powers "must not be used to create substantive rights that are not available under applicable law.").

[35] *See In re Devon Capital Mgmt, Inc.*, 261 B.R. 619, 623 (Bankr. W.D. Pa. 2001). *See also Cullen v. Riley (In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992) (holding that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval," and requiring determination that "no one has been set apart for unfair treatment"); *U.S. v. AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984), *cert. denied*, 469 U.S. 880 (1984).

(Allianz Global Risks US Insurance Company, Interstate Fire & Casualty Co., and National Surety Corporation) appealed from an order confirming debtors' plan on the basis that "the Plan and Confirmation Order non-consensually release their claims and vitiate their ability to recover certain defense costs."[36] The court unanimously agreed with the Allianz Insurers that "the Confirmation Order's judgment reduction clause [was] intolerable because it, coupled with the Plan, impermissibly releases and enjoins contribution and indemnity claims they could otherwise assert against the Settling Insurers."[37]

The Third Circuit explained that, "[w]hen two insurance companies provide overlapping coverage—such as the Allianz Insurers' and the Settling Insurers here—the insurer who ends up paying more than its fair share of a claim may seek contribution from the other insurer to appropriately allocate their shares of liability."[38] (Here, that would occur if, say, an Abuse Claimant alleged that he was abused during both a CNA policy period and an LMI policy period.) But, the Third Circuit noted, the plan in that case—which, for these purposes, is indistinguishable from the Plan here—upset that normal arrangement:

> The Plan upsets this arrangement by enjoining claims against the Settling Insurers and channeling them to the Settlement Trust subject to the judgment reduction clause. That clause limits a non-settling insurer to recovery against the Settlement Trust in the form of a reduced judgment, i.e., after the Settlement Trust obtains a judgment against a non-settling insurer, that non-settling insurer can obtain its own judgment that a Settling Insurer is liable for some (or all) of the Settlement Trust's judgment. The non-settling insurer can then offset that portion of liability attributable to the Settling Insurer against the Settlement Trust's judgment, thereby reducing the non-settling insurer's liability to the Settlement Trust.[39]

---

[36] *In re Boy Scouts of America*, 137 F.4th 126, 167 (3d Cir. 2025).

[37] *Id. See also id.* at 171 n.3 (Rendell, J., concurring) ("I agree with the majority as to the disposition of the Certain Insurers' and Allianz Insurers' appeals").

[38] *Id.* at 167, citing *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994).

[39] *Id.*

The court observed that "[u]sually, this arrangement will pose no problem."[40] But in that case—as here—it did, because a non-settling insurer "will not be fully compensated for defense costs if" Abuse Claimants pursued tort litigation (as Litigation Claimants can do under Debtor's Plan here), "a Settling Insurer is responsible for defending the claim, but . . . a nonsettling insurer elects to defend the claim instead, and . . . obtains a judgment in coverage litigation that it is not liable for the claim. In such a scenario, there would be no judgment held by the Settlement Trust that the non-settling insurer could reduce, thereby denying it any recovery for those 'excess claims' it would otherwise be entitled to recover absent the releases and injunctions in the Plan."[41]

Under such circumstances, the Third Circuit held, the Supreme Court's *Purdue Pharma* decision rendered the confirmation order's judgment reduction mechanism "inadequate" and "unlawful," because the nonsettling insurers were being forced to involuntarily release claims against nondebtors (namely, the settling insurers).[42] The court therefore ordered that the judgment reduction clause had to be modified "to impose a Settlement Trust backstop as set out in Exhibit A of the Allianz Insurers' Opening Brief."[43]

Accordingly, the Court in this case cannot grant the Motion or approve Debtor's

---

[40] *Id.* at 168.

[41] *Id.*.

[42] *Id.* at 168, 169, citing *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024). *See also id.* at 169 ("We therefore conclude that *Purdue* controls, and the judgment reduction provision is unlawful insofar as it operates to extinguish the Allianz Insurers' claims without their consent").

[43] *Id.* The "trust backstop" proposed by the Allianz Insurers and adopted by the Third Circuit required, *inter alia*, that to the extent the nonsettling insurer was "not subject to any . . . judgment held by the Settlement Trust," then "the Settlement Trust shall pay the amount to the Non-Settling Insurance Company. . . ." *See* Opening Brief on Appeal of Appellants the Allianz Insurers, Dkt. No. 55 at 66-67, *Allianz Global Risks US Ins. Co. v. Boy Scouts of America*, 3d Cir. Case No. 23-1673 (filed July 24, 2023).

agreements with the Settling Insurers without first ensuring that due provision is made for full satisfaction of CNA's Insurer Contribution Claims—including any claims for contribution toward defense costs incurred in the successful defense of an Abuse Claim.

In the context of this case, fully protecting CNA's Insurer Contribution Claims requires at least two additional modifications of the agreements and proposed approval orders. First, the Motion cannot be granted so long as CNA would be bound by the agreements' provisions requiring that the Settling Insurers' policies be modified by endorsement to eliminate any potential argument that those policies provide coverage for Abuse Claims. But if the agreements were modified to provide (in terms acceptable to CNA) that such policy revisions are not applicable in the context of Insurer Contribution Claims by CNA, CNA's interests would be adequately protected. Second, the Motion cannot be granted unless and until the provisions of the Reduction Clause that burden CNA's assertion of Insurer Contribution Claims by forcing CNA to pay a Settling Insurer's litigation costs are stricken. There is no authority for imposing such one-way, nonconsensual cost-shifting on a litigation plaintiff.

Debtor or the Settling Insurers may argue that the issues raised herein by CNA are confirmation issues that should await the confirmation hearing. But that cannot be the case here, given the provisions in both the agreements and the Plan providing that the settlement agreements control over the Plan and the orders approving the agreements control over the confirmation order. The time to protect CNA's Insurer Contribution Claims is now, in connection with the Motion. Waiting until confirmation, after any orders granting the Motion have become final and non-appealable, would be too late.[44]

---

[44] Nevertheless, CNA reserves all of its objections to confirmation of the Plan, including

(continued . . .)

## Conclusion

WHEREFORE, for the reasons set forth above, CNA respectfully requests that the Court: (a) include, in any order approving the Motion and in any findings of fact and conclusions of law entered in connection with the Motion, language fully protecting CNA's Insurer Contribution Claims; (b) deny the Motion if such protective language is not included in the order(s) approving the Motion; and (c) granting such other and further relief as is just and proper.

Dated:  June 9, 2025            Respectfully submitted,

                                     /s/ *Jeffrey A. Dove*
Jeffrey A. Dove
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York  13202
Telephone:  (315) 413-7112
Facsimile:  (315) 703-7346
jdove@barclaydamon.com

Mark D. Plevin (admitted *pro hac vice*)
PLEVIN & TURNER LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone:  (202) 580-6640
Email:  mplevin@plevinturner.com

David Christian (admitted *pro hac vice*)
DAVID CHRISTIAN ATTORNEYS LLC
105 West Madison Street, Suite 2300
Chicago, Illinois 60602
Telephone:  (312) 282-5282
Email:  dchristian@dca.law

Miranda H. Turner (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200

---

objections to the fact that § 8.9.3 of the Plan would render completely illusory CNA's purported access to judgment reduction pursuant to other provisions in the Plan.

Washington, DC 20006
Telephone: (202) 580-6640
Email: mturner@plevinturner.com

*Attorneys for The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey, and Firemen's Insurance Company of Newark, New Jersey*