**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No.: 19-20905 |
| The Diocese of Rochester, | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| The Diocese of Rochester, | |
| Plaintiff, | |
| | Adversary Proceeding |
| | No.: 19-ap-02021 |
| v. | |
| The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National Surety Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE, | |
| Defendants. | |

**NOTICE OF FILING OF SUPPLEMENTAL EXHIBITS TO THE DIOCESE'S MOTION FOR ENTRY OF ORDERS PURSUANT TO SECTIONS 363 AND 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT AGREEMENTS AND POLICY BUY-BACKS WITH CERTAIN INSURERS AND GRANTING RELATED RELIEF**

PLEASE TAKE NOTICE that on April 22, 2025, The Diocese of Rochester, (the "Diocese"), filed its *Motion for Entry of Orders Pursuant to Sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs With Certain Insurers and Granting Related Relief* (the "Motion") [Docket No. 3072].[1] The Motion seeks approval of proposed Settlement Agreements with (a) Interstate Fire &

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Casualty Company, National Surety Corporation and Fireman's Fund Insurance Company (collectively, "Interstate"), (b) certain London Market Companies ("LMI"), (c) certain Underwriters at Lloyd's, London ("Underwriters"), and (d) First State Insurance Company ("First State").

**PLEASE TAKE FURTHER NOTICE** that copies of the Interstate and LMI Settlement Agreements were attached to the Motion as *Exhibits A* and *B*, respectively.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as *Exhibits C* and *D*, are the Settlement Agreements for Underwriters and First State, respectively.

Dated: June 10, 2025

BOND, SCHOENECK & KING, PLLC

By: */s/ Grayson T. Walter*
    Stephen A. Donato
    Charles J. Sullivan
    Grayson T. Walter
    Justin S. Krell
    One Lincoln Center
    Syracuse, NY 13202
    Telephone: (315) 218-8000
    Facsimile: (315) 218-8100
    Emails: sdonato@bsk.com
        csullivan@bsk.com
        gwalter@bsk.com
        jkrell@bsk.com

*Attorneys for The Diocese of Rochester*

## Exhibit C

Underwriters Settlement Agreement

21815986.v2

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter **"Agreement"**) is made this __th day of _____, 2025, by and between the Diocese of Rochester ("**Diocese**")[1] and the "**DOR Signatories**" on the one hand, and certain Underwriters at Lloyd's, London, HDI Global Specialty SE, and Convex Insurance UK Limited (collectively "**Underwriters**"), on the other hand (the aforementioned parties are referred to hereinafter collectively as the "**Parties**" or individually as a "**Party**").

## WITNESSETH THAT:

WHEREAS, the "**CVA**" and the "**ASA**" opened a window for individuals to file civil claims for injury suffered as a result of sexual conduct, which were otherwise time-barred;

WHEREAS, as a result of revival, pursuant to the CVA and the ASA, certain sexual abuse claims that were otherwise time-barred by the statute of limitations were brought against the Diocese and the DOR Signatories;

WHEREAS, the Diocese and certain DOR Signatories incurred, and may in the future incur, liabilities, expenses, and losses arising out of the sexual abuse claims;

WHEREAS, each Underwriter subscribed severally, not jointly, to the "**Subject Insurance Policies**";

WHEREAS, the Subject Insurance Policies provide various forms of coverage including Real and Personal Property, Commercial General Liability, Sexual Misconduct Liability, Employee Dishonesty and Crime, Errors and Omissions, Employment Practices and Management Liability, Employee Benefits Administration and Fiduciary Liability, and Crisis Administration;

WHEREAS, the Subject Insurance Policies are property of the Diocese's bankruptcy estate;

WHEREAS, the Diocese and certain DOR Signatories tendered "**Coverage Claims**" to Underwriters seeking insurance coverage for the **"Abuse Claims"**;

WHEREAS, Underwriters dispute the Coverage Claims;

WHEREAS, to address its liabilities for the Abuse Claims, on the "**Petition Date**", the Diocese filed the "**Bankruptcy Case**" in the "**Bankruptcy Court**";

WHEREAS, on November 14, 2019, the Diocese filed the "**Insurance Coverage Action**" as an adversary proceeding in the Bankruptcy Court;

WHEREAS, some of the Underwriters are named defendants in the Insurance Coverage Action, and dispute the substantive allegations and Coverage Claims asserted against them in the Insurance Coverage Action;

WHEREAS, on December 23, 2019, the Diocese filed the "**Mediation Motion**";

WHEREAS, on March 10, 2020, the Bankruptcy Court (i) entered the "**Mediation Order**" approving the Mediation Motion and appointing the "**Mediator**", and (ii) ordered the "**Mediation Parties**" to mediate the Abuse Claims and the Coverage Claims;

---

[1] Terms in bold, inside quotation marks, are defined in Section 1, Definitions.

1

WHEREAS, pursuant to the Bankruptcy Court's order, no defendant filed an Answer or otherwise responded in the Insurance Coverage Action;

WHEREAS, the Parties, with the support of the "**Committee**", agreed to resolve their issues amicably during Mediation and at a judicial settlement conference before the Bankruptcy Court in January 2023;

WHEREAS, whether or not they (i) were subject to the Abuse Claims, or (ii) asserted Coverage Claims against Underwriters, the Diocese and the DOR Signatories are settling with and releasing Underwriters pursuant to this Agreement;

WHEREAS, it is the intention of the Parties that Underwriters shall pay the "**Settlement Amount**" to the "**Trust**" no later than the "**Settlement Payment Date**" for the benefit of the "**Abuse Claimants**" in exchange for: (i) the Diocese and the DOR Signatories selling, assigning, and transferring the "**Purchased Property**" to Underwriters, and Underwriters buying the Purchased Property free and clear of any "**Interests**" of any "**Person**"; and (ii) the Diocese and the DOR Signatories providing an **"Entities' Release"** that finally and fully releases all Abuse Claims and **"Related Insurance Claims"** and terminates all rights, obligations, and liabilities of Underwriters relating to or arising out of the Abuse Claims and Related Insurance Claims under the Subject Insurance Policies;

WHEREAS, notice of this Agreement shall be provided to all Persons who have alleged or may allege an Interest in the Purchased Property;

WHEREAS, the buyback of the Purchased Property and Entities Release are conditioned upon the satisfaction of the **"Conditions Precedent to Settlement Payment"**;

WHEREAS, the "**Sexual Misconduct Liability Coverage**" in the Subject Insurance Policies for the periods effective from July 1, 2018 to July 1, 2025 will be endorsed with the **"Cancellation Endorsement"**, effective upon the **Actual Payment Date**;

WHEREAS, it is the intention of the Parties that any and all Interests in or to the Purchased Property be extinguished, ended, and forever terminated;

WHEREAS, in **Attachment E**, the Diocese and the DOR Signatories have identified Persons covered or allegedly covered under the Subject Insurance Policies;

WHEREAS, subject to the Court entering the orders contemplated by this Agreement, each of the **"Underwriter Entities"** will be protected by the "**Settling Insurer Injunction**", the **"Gatekeeper Injunction"**, and the "**Channeling Injunction**";

WHEREAS, upon the **"Plan Effective Date"**, the Trust shall indemnify and hold harmless the Underwriter Entities as set forth below;

WHEREAS, the Diocese shall request the Settling Insurer Injunction for the benefit of the "**Settling Insurers**" pursuant to the "**Approval Order**", entry of which shall be a condition precedent to the **"Agreement Effective Date"**; and

2

WHEREAS, by this Agreement, the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in other matters, without further trial or adjudication of any issues of fact or law, and without Underwriters' admission of liability or responsibility under the Subject Insurance Policies, a full and final settlement that releases and terminates all Interests of Persons, including the Underwriter Entities, the Diocese, and the DOR Signatories relating to the Purchased Property, including all Interests relating to the Related Insurance Claims, without prejudice to their respective positions on policy wordings or any other issues relating to the Insurance Coverage Action, the Related Insurance Claims, or otherwise.

## AGREEMENTS:

NOW, THEREFORE, in full consideration of the foregoing and of the mutual agreements herein contained, and intending to be legally bound, the Parties agree as follows:

### 1. Definitions

The following definitions and the definitions used above apply to this Agreement as well as any exhibits or attachments hereto. Where the listed terms are further defined in the body of this Agreement, the definitions listed here nonetheless apply and shall serve to further explain the meaning of those terms. Each defined term stated in a singular form shall include the plural form, each defined term stated in plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation," and the phrase "relating to" or "relate to" means "in any way, directly or indirectly, with regard to, by reason of, based on, arising from, arising out of, relating to, or connected with" (the words "include", "includes", and "including", and the phrase "relating to" are not capitalized herein). This Agreement incorporates all attachments hereto to the same extent as if fully set forth herein. All references to "Sections" are references to sections of this Agreement unless otherwise specified. Unless the context of this Agreement otherwise requires, the terms "hereto," "herein," "hereby," and derivatives of similar words refer to this entire Agreement. References to statutes include all regulations promulgated thereunder and references to statutes or regulations include all statutory and regulatory provisions regardless of whether specifically referenced in this Agreement. The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Agreement when the stated intent is not achieved.

### a. Abuse

The term **"Abuse"** means any actual or alleged:

  i.    sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, hebephilia, ephebophilia, lascivious behavior, undue familiarity, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, any other sexual misconduct, or any conduct constituting a

3

sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the New York Penal Law); or

ii.      non-sexual assault, battery, corporal punishment and other non-sexual nonsexual acts of physical, psychological, mental or emotional abuse, humiliation or intimidation (including physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature), and all other non-sexual tortious behavior of any type whatsoever.

For the avoidance of doubt, "Abuse" also includes (a) any conduct which would constitute a sexual offense as defined in article one hundred thirty of the New York Penal Law, incest as defined in section 255.27, 255.26 or 255.25 of the New York Penal Law, or the use of such Person in a sexual performance as defined in section 263.05 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act; and (b) sexually-related injuries, including those stemming from the use of photography, video, or digital media.

### b.      **Abuse Action**

The term "**Abuse Action**" means an Action asserting an Abuse Claim against the Diocese or any **"Participating Party"**.

### c.      **Action**

The term "**Action**" means any lawsuit, proceeding, or other action in a court, or any arbitration.

### d.      **Actual Payment Date**

The term "**Actual Payment Date**" means the date following the Agreement Effective Date, but on or before the "**Settlement Payment Date**", that the Underwriters transferred their respective, several, allocated share of the "**Settlement Amount**" to the Trust.

### e.      **Affiliates**

The term "**Affiliates**" means all past and present Persons that control, are controlled by, or are under the control of, another Person, including parents, subsidiaries, merged Persons, holding Persons, and acquired Persons, or any predecessor to such Person, and their successors and assigns, in their capacities as such.

### f.      **Agents**

The term "**Agents**" means all past and present employees, officers, directors, agents, shareholders, principals, teachers, staff, members, board members, administrators, trustees, members, partners, managers, officials, advisory board members, advisory committee members, financial advisors, investment bankers, representatives, brokers, adjusters, managing agents, underwriting agents, other professionals, priests, deacons, brothers, sisters, nuns, other clergy, Persons bound by monastic vows, volunteers, attorneys, claims handling administrators, and representatives of a Person, in their capacities as such.

4

### g.     Agreement Effective Date

The term **"Agreement Effective Date"** means the date on which all the following have occurred: (a) all Parties have executed this Agreement; (b) the Approval Order, including the Settling Insurer Injunction, becomes a Final Order; (c) the Confirmation Order becomes a Final Order; and (d) the Plan Effective Date has occurred.

### h.     Allocation Protocol

The term "Allocation Protocol" means the protocol for allocation of funds to the Abuse Claims, developed by the Committee, which is attached as Exhibit 1 to the Plan Supplement.

### i.     Approval Order

The term "**Approval Order**" means an order entered by the Court, upon a hearing following **"Bankruptcy Notice"**, which has become a "**Final Order**", containing all of the following provisions but no provision that is contrary to or inconsistent with the following provisions. The wording of the Approval Order shall be mutually acceptable to the Diocese, Underwriters, Rev. Thomas P. Mull in his capacity as chair of the parish steering committee, and the Committee. The Approval Order shall contain provisions:

(i)     Finding that the Bankruptcy Notice described in Section 1.n of this Agreement is reasonable and provides due and adequate notice of the Diocese's request for approval of this Agreement to all known and unknown Claimants and parties in interest in the Bankruptcy Case;

(ii)     Approving this Agreement in its entirety, pursuant to Bankruptcy Code §§ 363(b), (f), and (m) and, if applicable, 105(a), and **"Bankruptcy Rules"** 6004 and 9019;

(iii)     Authorizing, as of the Actual Payment Date, the sale of the Purchased Property to Underwriters, free and clear of all Interests of all Persons, including all Interests, if any, arising under New York insurance law or any other applicable law, if any, with all Interests in and to, and **"Claims"** against, the Purchased Property being fully extinguished without reservation as to all of Underwriters, the Diocese, and the DOR Signatories;

(iv)     Ordering that all **"Claims"** and other Interests that any Person, including **"CMS"**, might have in, or against, the Purchased Property, attach to the Settlement Amount;

(v)     Ordering that, without further action of any Person, the Sexual Misconduct Liability Coverage in the Subject Insurance Policies that were in effect from July 1, 2018 to July 1, 2025, shall be endorsed with the Cancellation Endorsement on the Actual Payment Date;

(vi)     Ordering the Diocese to dismiss, with prejudice, all Claims against Underwriters in the Insurance Coverage Action, within ten (10) business days of the Settlement Payment Date;

5

(vii)    Authorizing and directing the Parties to perform their respective obligations under this Agreement; and

(viii)    Issuing the **"Settling Insurer Injunction"**, subject to, and to become effective upon, the occurrence of the Actual Payment Date.

The Approval Order shall be accompanied by the **"Settlement Approval Findings and Conclusions"**.

### j.    ASA

The term **"ASA"** means the New York Adult Survivors Act, which was codified in the New York Civil Practice Law & Rules 214-j.  The Adult Survivors Act created a one-year window from November 24, 2022, to November 23, 2023, for the revival of previously time-barred civil claims concerning Abuse that occurred after the Claimant reached eighteen years of age.

### k.    Bankruptcy Case

The term "**Bankruptcy Case**" means the bankruptcy case filed by the Diocese in the Bankruptcy Court, entitled *In re the Diocese of Rochester*, Case Number 19-20905.

### l.    Bankruptcy Code

The term "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*.

### m.    Bankruptcy Court

The term "**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of New York (Rochester Division).

### n.    Bankruptcy Notice

The term "**Bankruptcy Notice**" means notice as required under Bankruptcy Rules 2002, 6004(a) and (c), and applicable local rules, sent to (i) all **"Persons"** who asserted or may assert Abuse Claims against the Diocese, any DOR Signatory, or any other Participating Party, or their attorneys, if any, who are known to the Diocese or any DOR Signatory or any Participating Party, including claimants, plaintiffs, and co-defendants named in any proof of claim filed in the Bankruptcy Case or any Abuse Action, as set forth on **Attachment N** and **Attachment P**, hereto; (ii) the Committee; (iii) the "**Unknown Claimants Representative**"; (iv) each DOR Signatory and each Participating Party; (v) all Persons listed in the Catholic Directory, as set forth on **Attachment M** hereto; (vi) each Insurer; (vii) the Secretary of the Department of Health and Human Services; (viii) "**CMS**"; (ix) the United States Attorney for the Western District of New York; (x) each Person who, in the opinion of any Party, might reasonably be expected to be affected by the transactions contemplated herein; (xi) all other Persons as directed by the Court; and (xii) all other Persons that must be served with written notice under Bankruptcy Rule 2002, including all Persons who have filed notices of appearance in the Bankruptcy Case.  Notice shall also be given by publication in the national edition of either the *New York Times* or *USA Today*,

6

21668734.v3
Case 2-19-20905-PRW,    Doc 3183,    Filed 06/10/25,    Entered 06/10/25 16:48:52,
Description: Main Document  , Page 9 of 391

and in the *Rochester Democrat and Chronicle*, *The Rochester Beacon*, *The Buffalo News*, *The Syracuse Post-Standard*, and *The Catholic Courier*, as consistent with the terms of the *Order: (I) Approving Disclosure Statement; (II) Approving Solicitation Packages And Distribution Procedures; (III) Approving The Form Of Ballots And Establishing Procedures For Voting On Eighth Amended Joint Plan And For Electing To Grant Or Withhold Consent To Third-Party Releases; (IV) Approving The Form, Manner, And Scope Of Confirmation Notices; (V) Establishing Certain Deadlines In Connection With Approval Of The Disclosure Statement And Confirmation Of Eighth Amended Joint Plan; And (VI) Granting Related Relief* [Dkt. No. 3031].

### o. __Bankruptcy Rules__

The term **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as such may be amended from time to time.

### p. __Bar Date__

The term **"Bar Date"** means August 13, 2020, at 11:59 p.m. (Eastern time), the deadline by which proofs of claim forms for prepetition Claims, including Abuse Claims, were required to be filed against the Diocese.

### q. __Business Day__

The term **"Business Day"** means any day that is not a Saturday, Sunday, or legal holiday, in the State of New York or the United Kingdom.

### r. __Cancellation Endorsement__

The term "**Cancellation Endorsement**" means the wording, set forth verbatim in **Attachment G**, with which the Subject Insurance Policies shall be endorsed on the Actual Payment Date, effective as set forth in Section 1.i(v).

### s. __Channeling Injunction__

The term "**Channeling Injunction**" means an order of the Court requiring all Channeled Claimants to assert their Channeled Claims against the Trust, and barring and permanently enjoining such Claims against the "**Protected Parties**", pursuant to § 105 of the Bankruptcy Code, substantially in the form set forth in **Attachment I,** unless Underwriters, the Diocese, and the Committee agree otherwise in writing.

### t. __Claim__

The term "**Claim**" means a "claim," as that term is defined in section 101(5) of the Bankruptcy Code, and includes: any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution,

attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present, or (to the extent it arises prior to the Plan Effective Date) future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

   (i)  **Abuse Claim**

     (A) The term "**Abuse Claim**" means any (i) Claim that has been or could be asserted against the Diocese or any Participating Party that is attributable to, arises from, is based upon, or results from Abuse that occurred prior to the Petition Date, or (ii) Claim that has been asserted against the Diocese or any Participating Party that is attributable to, arises from, is based upon, or results from Abuse that occurred after the Petition Date where the Claim was filed or commenced against the Diocese or a Participating Party before the **"Plan Effective Date"**. The term "Abuse Claim" includes any Claim that seeks monetary damages or any other relief under any theory of liability, law, or equity whatsoever, including contribution, indemnity, vicarious liability, *respondeat superior*, conspiracy, fraud (including fraud in the inducement), any negligence-based or employment-based theory (including negligent hiring, supervision, retention, or misrepresentation), any other theory based upon misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory (including any theory based upon public policy) or any act or failure to act by the Diocese or any Participating Party, or any other Person for whose acts, or failures to act, the Diocese or any Participating Party is or was alleged to be responsible. For the avoidance of doubt, "Abuse Claim" includes (a) all Unknown Abuse Claims, Child Abuse Claims (or any other Claim or cause of action described in the CVA) and Adult Abuse Claims (or any other Claim or cause of action described in the ASA) against the Diocese or any Participating Party and (b) any Claim against the Diocese or any Participating Party that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the Petition Date is barred by any applicable statute of limitations, and in each case, irrespective of whether (x) such Claims also involve the conduct of Joint Tortfeasors, (y) such Claims arise under, or were revived pursuant to, the CVA or ASA, or any future reviver law, statute, or binding precedential decision passed or issued on or after the Plan Effective Date, or (z) a proof of claim has been filed or an Abuse Action has been commenced with respect to such Claim.

21668734.v3

(B) The term "**Unknown Abuse Claim**" means any Abuse Claim asserted against the Diocese, the Reorganized Diocese, and/or a Participating Party, or otherwise presented to the Trust, that alleges Abuse that occurred prior to the Petition Date, and which is not (i) filed on or before the Plan Effective Date; or (ii) the subject of a Timely Abuse Action commenced on or before the Plan Effective Date.

(C) The term "**Adult Abuse Claim**" means any Claim alleging Abuse that occurred at a time when the Abuse Claimant was 18 years of age or older.

(D) The term "**Child Abuse Claim**" means any Claim alleging Abuse that occurred at a time when the Abuse Claimant was less than 18 years of age.

(ii)     **Barred Claims**

The term "**Barred Claims**" means any and all Channeled Claims (specifically including, all Abuse Claims, Medicare Claims, Extra-Contractual Claims), Non-Consenting Class 4 Claims, Coverage Claims, Tort Actions, Unknown Abuse Claims, Related Insurance Claims, Insurer Contribution Claims, Inbound Contribution Claims, Direct Action Claims, and every other Claim that (a) relates to (directly or indirectly), or connects in any way with an Abuse Claim or any of the Subject Insurance Policies; or (b) is otherwise released herein. For the avoidance of doubt, "Barred Claims" include all Claims exempted from the injunctions (including the Channeling Injunction) set forth in the Plan.

(iii)     **Channeled Claims**

The term "**Channeled Claims**" means any and all Abuse Claims, Inbound Contribution Claims, Medicare Claims, Extra-Contractual Claims, or any other Claim against any Protected Party arising from or related in any way to an Abuse Claim or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise; Claims for exemplary or punitive damages; Claims for attorneys' fees and other expenses, or Claims for any equitable remedy, *provided, however*, that "Channeled Claims" shall not include any Claim exempted from the injunctions set forth in the Plan. For the avoidance of doubt (i) a Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party, that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party, or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a Claim on either such Person, and (ii) notwithstanding anything to the contrary herein, Channeled Claims do not include any Claims to the extent they are asserted against Excluded Parties or Non-Settling Insurers; *provided, however*, any Claims that assert liability against an Excluded Party or Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims as to such Protected Party. Solely for purposes of this definition of Channeled Claims, an "Excluded Party" is (1) any individual who

9

personally committed an act of Abuse that resulted or would result in an Abuse Claim against any Protected Party, but solely in his or her capacity as an abuser; (2) the Holy See; and/or (3) any religious order or other entity that is an affiliate of, or associated with the Roman Catholic Church (other than the Diocese, the Reorganized Debtor, the Participating Parties and their respective Related Persons); provided, however, that any Entity who has actually or allegedly acquired or been assigned the right to make a claim for coverage under any of the Subject Insurance Policies is not an "Excluded Party" for purposes of this definition of Channeled Claims.

### (iv)   Consenting Class 4 Claims

The term "**Consenting Class 4 Claims**" means all Abuse Claims held by Consenting Class 4 Claimants. The term "**Consenting Class 4 Claimants**" means all holders of Abuse Claims who have consented to having their Claim(s) against the Protected Parties released and enjoined under the Channeling Injunction, as contemplated in the Plan.

### (v)   Coverage Claims

The term "**Coverage Claims**" means all Claims under or relating to the Subject Insurance Policies or the rights and obligations thereunder, or the breach thereof, including Claims seeking insurance coverage.

### (vi)   Direct Action Claims

The term "**Direct Action Claims**" means all Claims against Underwriter Entities identical or similar to, or relating to, any Abuse Claim, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

### (vii)   Extra-Contractual Claims

The term "**Extra-Contractual Claims**" means all Claims against Underwriter Entities seeking any type of relief, other than coverage or benefits, under or with respect to the Subject Insurance Policies. Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (a) any Subject Insurance Policies; (b) any Claim allegedly or actually covered under a Subject Insurance Policies; or (c) the conduct of any Underwriter Entity with respect to (a) or (b): (i) bad faith; (ii) failure or refusal to provide insurance coverage under any Subject Insurance Policy, including any failure or refusal to investigate or to provide a defense or adequate defense; (iii) failure or refusal to compromise and reasonably settle any Claim insured under any Subject Insurance Policy; (iv) failure to act in good faith; (v) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (vi) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (vii) violation of any unfair claims practices act or similar statute, regulation, or code, including any statute, regulation, or code relating to unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising; (viii) any type of misconduct; or (ix) any other act or omission of any type by any Underwriter Entity

10

for which the Claimant seeks relief other than coverage or benefits under a Subject Insurance Policy. "Extra-Contractual Claims" further include all Claims relating to any Underwriter Entities' (x) handling of any Claims under the Subject Insurance Policies, (y) conduct in negotiating this Agreement and/or the Plan, and (z) conduct in the settlement of any Claims. For the avoidance of doubt, Extra-Contractual Claims of the Diocese and the DOR Signatories are included within the property the Underwriters are purchasing hereunder.

(viii)   **Inbound Contribution Claims**

The term **"Inbound Contribution Claims"** means all  Claims against the Diocese or any Participating Party, by a Person that is liable for, allegedly liable for, or that has paid, a Claim relating to Abuse, and is asserting rights to contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other  indirect or derivative recovery. Inbound Contribution Claims include all Insurer Contribution Claims.

(ix)   **Insurer Contribution Claims**

The term **"Insurer Contribution Claims"** means all Claims, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other indirect or derivative recovery against a Settling Insurer, by an Insurer (including any Non-Settling Insurer) for the payment of money, where such Insurer contends that it has paid more than its equitable or proportionate share of a Claim against the Diocese and/or a DOR Signatory.

(x)   **Medicare Claims**

The term **"Medicare Claims"** means all Claims relating to Abuse Claims by **"CMS"** and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under **"MMSEA"** and pursuing Claims under MSPA, relating to any payments in respect of any Abuse Claims, including Claims for reimbursement of payments made to Abuse Claimants who recover or receive any Distribution from the Trust, and Claims relating to reporting obligations.

(xi)   "**Non-Consenting Class 4 Claims**"

The term "**Non-Consenting Class 4 Claim**" means all Abuse Claims held by Non-Consenting Class 4 Claimants. "**Non-Consenting Class 4 Claimants**" means the holders of Abuse Claims who affirmatively withhold consent to having their Claim(s) enjoined under the Channeling Injunction and/or released as contemplated in the Plan, and who have not, prior to entry of the Confirmation Order, agreed in writing to provide such consent, to grant such releases, and to be treated as Consenting Class 4 Claimants for all purposes.

(xii)   **Related Insurance Claim**

The term **"Related Insurance Claim"** means:

11

21668734.v3
Case 2-19-20905-PRW,   Doc 3183,   Filed 06/10/25,   Entered 06/10/25 16:48:52,
Description: Main Document  , Page 14 of 391

(A)     all Claims relating to Abuse Claims against any Underwriter Entity, held by the Diocese, any Participating Party, or any Abuse Claimant including those for (i) indemnity and payment of any Abuse Claim; (ii) any Underwriter Entity's failure or refusal to provide insurance coverage for any Abuse Claim under any Subject Insurance Policy; (iii) any Underwriter Entity's tortious or wrongful claims handling including the failure or refusal of any Underwriter Entity to timely compromise and settle any Abuse Claims against the Diocese or any Participating Party pursuant to any Subject Insurance Policy; (iv) to the extent not otherwise encompassed by section (iii) above, any Underwriter Entity's failure or refusal to defend or settle Abuse Claims; and (v) the interpretation or enforcement of the terms of any Subject Insurance Policy;

(B)     all Extra-Contractual Claims against any Underwriter Entity not included in the foregoing section (A) relating to Abuse Claims; and

(C)     all other Claims and causes of action against any Underwriter Entity that are under or relate to the Subject Insurance Policies that relate to Abuse Claims.

(xiii)   **Settling Insurer Claim**

The term **"Settling Insurer Claim"** means any Claim by a Settling Insurer for contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other indirect or derivative recovery against a Non-Settling Insurer arising from the payment of the Settlement Amount.

**u.     CMS**

The term **"CMS"** means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850, and/or any other Agent or successor Person charged with responsibility for (i) monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims; or (ii) receiving such reimbursement.

**v.     Committee**

The term **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case by the United States Trustee pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

**w.     Conditional Payment**

The term **"Conditional Payment"** means any payment by CMS, before the Plan Effective Date, in respect of any Abuse Claims, which is subject to potential recovery under the MSPA by CMS.

**x.     Conditions Precedent to Settlement Payment**

12

The term "**Conditions Precedent to Settlement Payment**" means all of the following:

(i)        This Agreement shall have been executed by all of the Parties;

(ii)       This Agreement shall have been approved by the Court;

(iii)      The Court shall have entered the Approval Order, including the **"Settlement Approval Findings and Conclusions"**, which shall be a Final Order;

(iv)      The "Confirmation Order" shall have been entered by the Court and the Court shall have issued the **"Confirmation Findings and Conclusions"**;

(v)       The Confirmation Order shall have become a Final Order;

(vi)      The Plan Effective Date shall have occurred; and

(vii)     The Agreement Effective Date shall have occurred.

### y.     Confirmation Findings and Conclusions

The term "**Confirmation Findings and Conclusions**" means the findings of fact and conclusions of law required under Bankruptcy Code §§ 1129(a), and, if applicable, 105(a) and 1129(b), which are to be entered concurrently with the Confirmation Order, as necessary to confirm the Plan, including:

(i)        The Settlement Amount provides good and valuable consideration to the Diocese's bankruptcy estate and enables distributions to the Abuse Claimants;

(ii)       The DOR Signatories would not release their Interests in the Subject Insurance Policies unless they obtained the benefits of the Channeling Injunction, because to do so would have left them exposed to Abuse Claims, whether or not such Claims are valid, and whether or not coverage exists for such Claims;

(iii)      Therefore, the Channeling Injunction is necessary to the Agreement;

(iv)      The Channeling Injunction is narrowly tailored because it requires that only Channeled Claims against the Protected Parties be brought against the Trust; and

(v)       Therefore, the Channeling Injunction is necessary to the Plan;

### z.     Confirmation Order

The term "**Confirmation Order**" means an order confirming the Plan entered by the Court, after a confirmation hearing upon Bankruptcy Notice, in a form and substance as required by this Agreement, which order has become a Final Order. The wording of the Confirmation Order shall be mutually acceptable to the Diocese, Underwriters, and Rev. Thomas P. Mull in his capacity as chair of the parish steering committee. The Confirmation Order shall contain all of the following provisions, but no provision that is contrary to or inconsistent with this Agreement:

13

(i)     Confirming the Plan;

(ii)    Specifically, and individually, ordering all Persons, as set forth in the Plan, to act or refrain from acting as specified in the Plan;

(iii)   Incorporating the terms and provisions of this Agreement as though fully set forth therein;

(iv)    Ordering the Trustee to perform the obligations, if any, imposed upon the Trustee by this Agreement;

(v)     Issuing the Channeling Injunction;

(vi)    Issuing the Gatekeeper Injunction;

(vii)   Ratifying and incorporating the Settling Insurer Injunction;

(viii)  Ordering all Channeled Claimants to dismiss, with prejudice, any pending Actions against the Diocese and the Participating Parties based on Channeled Claims to the extent a Settling Insurer provides, or is alleged to provide, insurance coverage for such Claims, provided that a Non-Settling Insurer does not also provide or is alleged to provide insurance coverage for such Claims, and instead to assert such dismissed Claims against the Trust for resolution pursuant to the **"Trust Agreement"**;

(ix)    Including the Reduction Clause; and

(x)     Ordering that the Court shall (i) not grant stay relief for Claims actually, allegedly, or potentially implicating the Settling Insurer Policies; and (ii) reinstate the automatic stay if it had previously been lifted for Claims that actually, allegedly, or potentially implicate any of the Settling Insures Policies, unless and until the Confirmation Order is reversed, and such reversal becomes a Final Order.

The Confirmation Order shall be accompanied by the Confirmation Findings and Conclusions.

**aa.    Court**

The term "**Court**" means the Bankruptcy Court, the District Court, or any court with appellate jurisdiction over any order entered by the Bankruptcy Court and/or the District Court in the Bankruptcy Case, as applicable.

**bb.    CVA**

The term "**CVA**" means New York Child Victim's Act, which was codified in the New York Civil Practice Law & Rules 214-g. The CVA created a one-year window from August 14, 2019, to August 13, 2020, for the revival of previously time-barred civil claims related to childhood sexual abuse, which was subsequently extended to August 13, 2021.

### cc. District Court

The term "**District Court**" means the United States District Court for the Western District of New York.

### dd. Diocese

The term "**Diocese**" means The Diocese of Rochester, the debtor and debtor in possession in the Bankruptcy Case.

### ee. DOR Signatories

The term "**DOR Signatories**" means the Persons, other than the Diocese, signing this Agreement, as set forth on **Attachment E**, hereto.

### ff. Enjoined Parties

The term "**Enjoined Parties**" means all Persons who have held, hold, or may hold Claims that have been released or discharged or are subject to exculpation, the Channeling Injunction or the Settling Insurer Injunction, pursuant to the Plan, the Confirmation Order, or the Approval Order.

### gg. Entities' Release

The term "**Entities' Release**" means the following:

(i)     The remising, release, covenant not to sue, and permanent discharge by the Diocese and the DOR Signatories and any subsequently appointed trustee or representative acting for the Diocese or any DOR Signatory, without further act by any Person, from and against all Related Insurance Claims that the Diocese or any DOR Signatory ever had, now has, or hereafter may have, from the beginning of time to the Actual Payment Date, of: (1) the Underwriter Entities; and (2) the respective heirs, executors, administrators, and reinsurers (as such) of any of the Persons identified in clause (1) hereof, in their capacities as such.

(ii)     Except as set forth in Section 4.a.(i), the Entities' Release shall not release or discharge any obligations of any Underwriter Entity or its respective heirs, executors, administrators, and reinsurers (as such) if such Underwriter Entity's respective full allocable share of the Settlement Amount has not been paid pursuant to the terms herein.

### hh. Reserved

### ii. Excluded Party

The term "**Excluded Party**" means (a) any individual who personally committed an act of Abuse that resulted or would result in an Abuse Claim against the Diocese or a Participating Party, but solely in his or her capacity as an abuser; (b) the Holy See; and (c) any religious order or other Person that is an affiliate of or associated with the Roman Catholic Church (other than the Parties

and their respective Related Persons); *provided, however*, that neither of the following is an "Excluded Party": (y) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Subject Insurance Policies and/or (z) any Person who has actually or allegedly acquired or been assigned the right to make a claim for coverage under any of the Subject Insurance Policies.

### jj.   Final Order

The term **"Final Order"** means an order or judgment that has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion pursuant to Bankruptcy Code § 502(j) or 1144, or Federal Rules of Civil Procedure 59 or 60 or Bankruptcy Rules 9023 or 9024 may be filed with respect to such order shall not cause such order not to be a Final Order. For the avoidance of doubt, if the Plan is substantially consummated as defined in Bankruptcy Code § 1101(2) ("**Substantial Consummation**"), and any appeal of the Confirmation Order becomes equitably moot due to Substantial Consummation, the Confirmation Order shall be considered a Final Order as of the date that the order determining such appeal to be moot has become a Final Order.

### kk.   Gatekeeper Injunction

The term **"Gatekeeper Injunction"** means the injunction set forth on **Attachment J** hereto.

### ll.   HHS

The term "**HHS**" means the United States Department of Health and Human Services.

### mm.   Insurance Coverage Action

The term "**Insurance Coverage Action**" means the adversary proceeding commenced by the Diocese in the Bankruptcy Court, on November 14, 2019, captioned as *The Diocese of Rochester v. The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National Surety Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE*, Adv. Pro. No. 19-02021.

### nn.   Insurance Policy

The term **"Insurance Policy"** means any known or unknown contract, binder, certificate, or policy of insurance or certificate of liability coverage that any Insurer issued, subscribed any interest in, or has underwritten any risk in, in effect on or before the Plan Effective Date, which actually, allegedly, or potentially provides liability coverage for the Diocese, any Participating Party, or any of their respective Related Persons.

### oo.    Insurance Settlement Agreement

The term **"Insurance Settlement Agreement"** means a settlement agreement between the Diocese and the applicable Participating Parties, on the one hand, and one or more Settling Insurers, on the other hand, with the Committee's written consent.  For the avoidance of doubt, this Agreement is an Insurance Settlement Agreement.

### pp.    Insurer

The term **"Insurer"** means a Person (including its Affiliates, successors, and assigns) that has, or is alleged to have, issued, subscribed any interest in, assumed any liability for, or underwritten any risk in an Insurance Policy.

### qq.    Interests

The term **"Interests"** means all Claims and all "interests" as that term is used in Bankruptcy Code § 363, and other rights of any nature, whether at law or in equity, including all interests or other rights under New York or any other applicable law.

### rr.    Joint Tortfeasor

The term **"Joint Tortfeasor"** means any Person, other than the Diocese or a Participating Party, who is alleged to be a joint tortfeasor with the Diocese and/or any Participating Party in connection with the Abuse or alleged Abuse giving rise to an Abuse Claim.

**ss.**    Reserved

**tt.**    Reserved

**uu.**    Reserved

**vv.**    Reserved

**ww.**    Reserved

### xx.    Mediation

The term **"Mediation"** means the mediation by the Mediation Parties, as ordered by the Bankruptcy Court, on March 10, 2020, and includes the judicial settlement conference ordered by the Bankruptcy Court, which occurred in January 2023.

17

### yy. Mediation Motion

The term "**Mediation Motion**" means the Motion for Entry of an Order Referring the Insurance Coverage Action to Mediation, which was filed by the Diocese in the Insurance Coverage Action.

### zz. Mediation Order

The term "**Mediation Order**" means the Order Directing Mediation and Appointing Mediator entered by the Bankruptcy Court in the Insurance Coverage Action.

### aaa. Mediation Parties

The term "**Mediation Parties**" means, collectively: (a) the Diocese; (b) each Insurer named as a Defendant in the Insurance Coverage Action; (c) the Committee; (d) state court counsel for Abuse Claimants; and (e) the *ad hoc* committee of parishes and other parties-in-interest, including the Schools and other non-debtor Catholic Persons located within the territorial area decreed by the Roman Catholic Church as the "Diocese of Rochester", to the extent permitted or required by the Mediators.

### bbb. Mediators

The term "**Mediators**" means the Honorable Gregg W. Zive, United States Bankruptcy Judge for the District of Nevada, Mr. Paul J. Van Osselaer, Mr. Paul Finn, and the Honorable Shelley C. Chapman (Ret.).

### ccc. Medicare

The term "**Medicare**" means Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, enacted July 1, 1966, including all subsequent amendments thereto.

### ddd. Medicare Beneficiary

The term "**Medicare Beneficiary**" means any "**Medicare Eligible**" Abuse Claimant who has received a Conditional Payment.

### eee. Medicare Eligible

The term "**Medicare Eligible**" means an Abuse Claimant who is eligible to receive, is receiving, or has received Medicare benefits.

### fff. MSPA or Medicare Secondary Payor Act

The term "**Medicare Secondary Payor Act**" or "**MSPA**" means 42 U.S.C. §1395y *et seq.*, or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto, including the regulations promulgated thereunder, found at 42 C.F.R. §411.1 *et seq.*

18

### ggg.  MMSEA

The term **"MMSEA"** means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173), which imposes reporting obligations on those Persons with payment obligations under the MSPA.

### hhh.  Non-Settling Insurer

The term "**Non-Settling Insurer**" means any Insurer that is not a Settling Insurer by the Plan Effective Date.

### iii.  Other Catholic Organization

The term **"Other Catholic Organization"** means any Person (a) claiming to be an insured or assured (as a named insured, additional insured, or otherwise) under any of the Subject Insurance Policies and/or (b) who has actually or allegedly acquired or been assigned the right to make a Coverage Claim under any of the Settling Insurer Policies, excluding the Diocese, Parishes, Schools, Trust, and Abuse Claimants.

### jjj.  Parish

The term "**Parish**" means any past or present Roman Catholic parish located within the geographical territory of the Diocese or subject to the canonical jurisdiction of the Bishop of Rochester, together with any corporation or other Person recognized under civil law that holds title to temporal property for, or on behalf of, any such parish.

### kkk.  Participating Parties

The term "**Participating Parties**" means all Parishes, Schools, Other Catholic Organizations, and other Persons listed on **Exhibit A** to the Plan, and **Attachment K**, hereto.  The Diocese, Reorganized Diocese, and Settling Insurer shall not be Participating Parties.  For the avoidance of doubt, Excluded Parties are not Participating Parties.

### lll.  Person

The term "**Person**" means an individual, corporation, corporation sole, partnership, association, limited liability company, joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other entity, and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any entity and also has the meanings set forth in Bankruptcy Code sections 101(15) and 101(41).

### mmm.  Petition Date

The term "**Petition Date**" means September 12, 2019.

### nnn. **Plan**

The term "**Plan**" means the Eighth Amended Chapter 11 Plan of Reorganization for the Diocese, and all exhibits, Plan Supplements, and only the modifications or amendments thereto, which are accepted by Underwriters, in writing, as approved and confirmed by Final Order of the Bankruptcy Court, and which resolves the Abuse Claims and is consistent with the terms and conditions of this Agreement. Specifically, the Plan, which as currently filed at Docket No. 3026, is acceptable to the Underwriter Entities, shall include provisions:

(i) Specifying the terms of this Agreement shall control in the event of any conflict with the Plan or the Confirmation Order;

(ii) Setting forth the Channeling Injunction, Gatekeeper Injunction, and the Settling Insurer Injunction;

(iii) Establishing the Trust, appointing the Trustee, and binding both of them to perform those requirements imposed upon them by this Agreement;

(iv) Requiring the Trust to assume the Abuse Claims liability of the Diocese and the Participating Parties;

(v) Channeling all Channeled Claims to the Trust, including all Claims against, and Interests in and to, the Purchased Property, upon the Plan Effective Date;

(vi) Denominating each of the Underwriter Entities as a Settling Insurer;

(vii) Requiring each Channeled Claimant receiving a payment from the Trust to sign a release of all Claims against the Protected Parties;

(viii) Incorporating this Settlement Agreement and the releases and injunctions contained herein, by reference, and making the Settlement Agreement part of the Plan as if set forth fully within the Plan;

(ix) Including the Reduction Clause;

(x) Prohibiting the Diocese and the Trust from continuing to pursue the Insurance Coverage Action against Underwriters; requiring the Diocese and the Trust to dismiss the Claims against Underwriters in the Insurance Coverage Action, with prejudice, within ten (10) business days after the Settlement Payment Date, or if such Claims have already been dismissed without prejudice, deeming such dismissal to be with prejudice; and prohibiting any DOR Signatory from asserting any Coverage Claims against any Underwriter Entity;

(xi) Describing the role of the Unknown Claimant Representative;

(xii) Providing that none of the Protected Parties will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the

20

reporting provisions of MSPA or MMSEA. To that end, the following shall apply (and the Confirmation Order shall so provide):

A.      The Trust shall register as a "Responsible Reporting Entity" under the reporting provisions of MMSEA.

B.      With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any Medicare Claims

C.      The Trust shall confirm whether the holder of any Abuse Claims that occurred after December 5, 1980, is enrolled in Medicare Parts A and B (fee-for-service), Part C (Medicare Advantage), or Medicare Part D (drug coverage). This includes implementing an appropriate process to gather the necessary information for querying CMS on such determination, including, the Claimant's first and last name, date of birth, gender, address, and social security number or health insurance claim number.

D.      The Trust shall timely submit all reports required under MMSEA because of any Abuse Claims that occurred after December 5, 1980, settled, resolved, paid, or otherwise liquidated by the Trust. The Trust, as a Responsible Reporting Entity, shall follow all applicable guidance published by the CMS and/or any other agency or successor Person charged with responsibility for tracking, assessing, or receiving reports made under MMSEA to determine whether, and, if so, how, to report to such agency or agencies under MMSEA.

E.      For Abuse Claims that occurred after December 5, 1980, before remitting funds to any Person on account of an Abuse Claim, the Trustee shall obtain (i) a certification that said Person (or such Person's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under the MSP provisions, or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim, and (ii) an agreement that such Person indemnify the Trust for any such obligations. The failure by one or more holders of Abuse Claims to follow these provisions shall not delay or impair the payment by the Trust to any other holder of an Abuse Claim following these provisions.

F.      Upon request, the Trust shall provide to a Settling Insurer or the Diocese information sufficient to perform their own queries to CMS, to the extent they wish to do so, including a report setting forth (I) each Abuse Claimant whom the Trustee has determined to be a Medicare Beneficiary; (II) the amount of (a) all Conditional Payments to each such Medicare Beneficiary, (b) the amount of the reserve maintained by the Trust for each Medicare Claim based upon such Conditional Payments.

G.      The Trust shall submit reimbursement to the CMS relating to Abuse Claims.

H.      With respect to all Abuse Claims, the Trust shall maintain sufficient funds to pay any potential reimbursements to the CMS in full and consider the potential future interests of the CMS.

I.      Nothing in the Plan shall imply, or constitute an admission, that the Protected Parties are "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

**ooo.   Plan Effective Date**

The term **"Plan Effective Date"** means the date on which the Plan, by its terms, becomes effective and binding upon the Diocese and all Persons asserting Claims against the Diocese, including the Abuse Claimants, as noticed on the Bankruptcy Case docket.

**ppp.   Plan Supplement**

The term **"Plan Supplement"** means one or more supplements to the Plan to be filed with the Bankruptcy Court in advance of the Confirmation Hearing which shall contain, among other things, the Allocation Protocol, the form of Trust Agreement, a list of known Insurance Policies, the Diocese's non-monetary commitments, and each Insurance Settlement Agreement entered into prior to the Confirmation Date.

**qqq.   Protected Parties**

The term "**Protected Parties**" means the Diocese, the Reorganized Diocese, the Participating Parties, and the Settling Insurers.

**rrr.   Purchased Property**

The term **"Purchased Property"** means the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect for the periods from July 1, 2018 to July 1, 2025, and the Related Insurance Claims.

**sss.   Reduction Clause**

The term **"Reduction Clause"** means Section 12.5.2 of the Plan, and **Attachment O**, hereto.

**ttt.   Related Person**

The term "**Related Person**" means, with respect to any Person, such Person's heirs, executors, receivers, trustees, liquidators (provisional or otherwise) or equivalent appointee/s under relevant insolvency law, former shareholders, Affiliates and Agents, all solely in their capacities as such; *provided, however*, that no Person shall be a Related Person if such Person is an Excluded Party.

**uuu.   Reorganized Diocese**

22

The term **"Reorganized Diocese"** means the Diocese, on and after the Plan Effective Date, after giving effect to the operative provisions of the Plan.

vvv.    Reserved

www.    <u>School</u>

The term "**School**" means a past or present Catholic school owned by the Diocese or any Participating Party, including those identified as such on **Exhibit A** attached to the Plan, and Attachment K hereto, but does not include schools owned by any Excluded Party.

xxx.    <u>Settlement Amount</u>

The term "**Settlement Amount**" means the net sum of One Million One Hundred Thousand United States Dollars ($1,100,000.00). Each Underwriter shall pay its several, respective, allocated share of the Settlement Amount pursuant to the terms of Section 2. The Underwriters' respective, allocated, several shares of the Settlement Amount are set forth on **Attachment C**. The Settlement Amount is the consideration paid by Underwriters for: (i) the purchase of the Purchased Property free and clear of the Interests of all Persons, pursuant to Section 363(b), (f) and (m), and Bankruptcy Rule 9019; (ii) the Entities' Release that terminates all rights, obligations and liabilities of the Underwriter Entities relating to all Abuse Claims and Related Insurance Claims under the Subject Insurance Policies; and (iii) the Channeling Injunction, the Settling Insurer Injunction, and the Gatekeeper Injunction (collectively, "**Settlement Benefits**").

yyy.    <u>Settlement Approval Findings and Conclusions</u>

The term "**Settlement Approval Findings and Conclusions**" means findings of fact and conclusions of law pursuant to Bankruptcy Code §§ 363(b), (f), and (m) and Bankruptcy Rule 9019, entered concurrently with the Approval Order, as necessary for the Court to approve this Agreement, and to dismiss with prejudice the Insurance Coverage Action, as against the Underwriters including:

(i)     This Agreement is the result of long-term negotiations amongst the Parties, which began in March 2020, following the Bankruptcy Court's entry of the Mediation Order, and which ended in January 2023, at a judicial settlement conference ordered by the Bankruptcy Court;

(ii)    The Purchased Property is property of the Diocese's bankruptcy estate and is therefore subject to the *in rem* jurisdiction of the Court;

(iii)   Because it would be impractical to divide the Purchased Property amongst the Diocese and the DOR Signatories, it was necessary for the Diocese to obtain the participation of the DOR Signatories in the Agreement;

(iv)    The Barred Claims are within the jurisdiction of the Bankruptcy Court;

(v)     The Underwriters required the Diocese to obtain the benefits of the Channeling Injunction, the Settling Insurer Injunction, and the Gatekeeper Injunction, for

23

the Underwriter Entities, as conditions precedent to entering into this Agreement and contributing the Settlement Amount;

(vi)    The Underwriters are purchasing the Purchased Property pursuant to this Agreement.  The Underwriters are not purchasing any other assets of the Diocese or the DOR Signatories and are not a continuation of the Diocese or the DOR Signatories, nor engaging in a continuation of the Diocese's or the DOR Signatories' businesses.  The Underwriters shall not have any responsibility or liability with respect to any of the Diocese's or the DOR Signatories' other assets;

(vii)    The Underwriters are not, and shall not be deemed to be, successors to the Diocese or any of the DOR Signatories, by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated by this Agreement, or otherwise.  The Underwriters shall not assume, or be deemed to have assumed, any liabilities or other obligations of the Diocese or any DOR Signatory;

(viii)    The Diocese demonstrated sound business reasons for the settlement of its Claims against the Underwriters in the Insurance Coverage Action and the implementation of such settlement through the sale of the Purchased Property to the Underwriters, and the Entities Release;

(ix)    The Parties mediated their disputes over the Abuse Claims and the Coverage Claims pursuant to the Mediation Order, beginning in March 2020;

(x)    In the Mediation, the Parties negotiated extensively, at arms-length, and in good faith.  Hence, Underwriters are purchasers in good faith of the Purchased Property, within the meaning of Bankruptcy Code section 363(m), and are entitled to all of the protections of that statute;

(xi)    The Underwriters are *bona fide* good faith purchasers of the Purchased Property, for value;

(xii)    The terms of the transactions contemplated by this Agreement, as well as the genesis and background of this Agreement, have been adequately disclosed to the Court;

(xiii)    The terms and conditions of this Agreement (including the consideration to be realized by the Diocese's bankruptcy estate) are fair and reasonable;

(xiv)    The transactions contemplated by this Agreement will benefit the Diocese's bankruptcy estate, its creditors and other stakeholders;

(xv)    The only potential holders of Interests in, to, or against the Purchased Property are the (a) Diocese; (b) the DOR Signatories; and (c) Persons who hold Claims against the Diocese and/or the DOR Signatories, which might be covered by the Subject Insurance Policies;

(xvi)   The Diocese and the DOR Signatories are Parties and hence are deemed to have consented to the sale within the meaning of Bankruptcy Code section 363(f)(2);

(xvii)   The Barred Claims are subject to *bona fide* dispute and hence the Purchased Property may be sold free and clear of such Claims pursuant to Bankruptcy Code section 363(f)(4);

(xviii)   All holders of Barred Claims could be compelled, in a legal or equitable Action, to accept a money satisfaction of such Claims, therefore the Purchased Property may be sold free and clear of such Claims pursuant to Bankruptcy Code section 363(f)(5);

(xix)   The compromises and settlements embodied in the Agreement have been negotiated in good faith, and are reasonable, fair, and equitable;

(xx)   In light of:

A.   The balance between the possible litigation success and the settlement's future benefits;

B.   The likelihood of complex and protracted litigation and the consequent inconvenience, expense, and delay;

C.   The interests of creditors, including the relative benefits to each class of creditors;

D.   Whether other parties in interest support the settlement;

E.   The competency and experience of counsel supporting the settlement;

F.   The experience and knowledge of the bankruptcy judge reviewing the settlement;

G.   The nature and breadth of releases to be obtained by officers and directors; and

H.   The extent to which the settlement is the product of arm's length bargaining.

this Agreement is fair and equitable and within the range of reasonable settlement terms, hence, it merits approval pursuant to Bankruptcy Rule 9019;

(xxi)   The Settlement Amount is fair, adequate, and reasonable consideration for (a) the sale by the Diocese and the DOR Signatories and the purchase by Underwriters of the Purchased Property; (b) the Entities' Release; (c) the Settling Insurer Injunction; and (d) the protections afforded by the Channeling Injunction, and the Gatekeeper Injunction;

Case 2-19-20905-PRW,   Doc 3183,   Filed 06/10/25,   Entered 06/10/25 16:48:52,
Description: Main Document  , Page 28 of 391

(xxii) This Agreement is intended to be, and is, a compromise amongst the Parties and shall not be construed as: an admission of coverage under the Subject Insurance Policies; an admission concerning the amount of a reasonable settlement of any Claim; or an admission concerning the liability of, or damages caused by, the Diocese or any DOR Signatory with respect to any Abuse Claim, including the reasonableness of any such damages. Neither this Agreement nor any provision hereof shall be construed as a waiver, modification, or retraction of the Parties' positions on the interpretation and application of the Subject Insurance Policies. This Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement. This Agreement is without prejudice to the positions taken by Underwriters with regard to other insureds, and without prejudice with regard to positions taken by the Diocese or the DOR Signatories with regard to other Insurers;

(xxiii) The Diocese provided due and adequate notice of the (a) sale of the Purchased Property; (b) terms and conditions of this Agreement; and (c) the hearing before the Court to approve this Agreement and the sale of the Purchased Property, in accordance with Bankruptcy Rules 2002, 6004, and 9019 to all known and unknown Claimants, including by providing notice by publication to any Unknown Abuse Claimants;

(xxiv) It would be impractical to divide the Purchased Property amongst the Diocese, DOR Signatories, and the holders of Abuse Claims; therefore, obtaining the value of the Purchased Property for the Diocese's bankruptcy estate and the Abuse Claimants requires the sale of the Purchased Property;

(xxv) The sale of the Purchased Property outside the ordinary course of business satisfies the requirements of Bankruptcy Code section 363(b);

(xxvi) To the extent any Claimant may have any legal or equitable right to assert a Claim either directly against the Subject Insurance Policies, which are being acquired by Underwriters pursuant to this Agreement, or indirectly by asserting such Claim against the Diocese or any DOR Signatory, such Claims are deemed to be (a) "interests" as that term is used in Bankruptcy Code sections 363(f); and (b) "Interests" herein;

(xxvii) The sale of the Purchased Property free and clear of the Interests of all Persons satisfies the requirements of Bankruptcy Code section 363(f); and

(xxviii) The Agreement may be approved pursuant to Bankruptcy Rule 9019(a).

### zzz. Settlement Payment Date

The term "**Settlement Payment Date**" means the day sixty (60) days after the Conditions Precedent to Settlement Payment have all been satisfied, *provided, however*, that if such date is not a Business Day, the Settlement Payment Date shall be the next Business Day.

### aaaa. Settling Insurers

The term "**Settling Insurers**" means the Underwriter Entities and any other Insurer, which is party to an Insurance Settlement Agreement that has been approved by the Court, and its Related

Persons. A Settling Insurer's Related Persons shall receive the benefits and protections afforded to a Settling Insurer under the Plan; *provided, however,* that if such Related Person is a Related Person by virtue of being a predecessor, successor, or assign of a Settling Insurer, such Related Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

### bbbb.  Settling Insurer Policies

The term "**Settling Insurer Policies**" means, collectively, all Insurance Policies (or coverage parts of those policies) that are canceled, settled, or sold back to a Settling Insurer pursuant to one or more Insurance Settlement Agreements with the Settling Insurers.

### cccc.  Settling Insurer Injunction

The term "**Settling Insurer Injunction**" means an order of the Court enjoining all Barred Claims by all Persons who now, or in the future may, hold such Claims against the Settling Insurers, pursuant to Bankruptcy Code sections 363(f) and 105 or other provision of the Bankruptcy Code or applicable law, which states, *verbatim,* unless Underwriters, the Diocese, and the Committee agree otherwise in writing:

**PURSUANT TO SECTIONS 105(A), AND 363 OF THE BANKRUPTCY CODE, AND IN CONSIDERATION OF THE UNDERTAKINGS OF THE UNDERWRITERS PURSUANT TO THE INSURANCE SETTLEMENT AGREEMENT, INCLUDING UNDERWRITERS' PURCHASE OF THE PURCHASED PROPERTY FREE AND CLEAR OF ALL CLAIMS AND INTERESTS PURSUANT TO SECTION 363(F) OF THE BANKRUPTCY CODE, ANY AND ALL PERSONS WHO HAVE HELD, NOW HOLD, OR WHO MAY IN THE FUTURE HOLD ANY CLAIMS OR INTERESTS (INCLUDING, WITHOUT LIMITATION, ALL DEBT HOLDERS, ALL EQUITY HOLDERS, GOVERNMENTAL, TAX AND REGULATORY AUTHORITIES, LENDERS, TRADE AND OTHER CREDITORS, ABUSE CLAIMANTS, HOLDERS OF UNKNOWN CLAIMS, PERPETRATORS, NON-SETTLING INSURERS, THE DIOCESE, THE PARTICIPATING PARTIES, AND ALL OTHERS HOLDING INTERESTS OF ANY KIND OR NATURE WHATSOEVER, INCLUDING WITHOUT LIMITATION THOSE CLAIMS RELEASED OR TO BE RELEASED PURSUANT TO THE INSURANCE SETTLEMENT AGREEMENT) AGAINST ANY OF THE PROTECTED PARTIES, WHICH CLAIMS ARISE UNDER OR RELATE (DIRECTLY OR INDIRECTLY) TO ANY OF THE SUBJECT INSURANCE POLICIES, INCLUDING WITHOUT LIMITATION (A) ABUSE CLAIMS, UNKNOWN CLAIMS, CLASS 4 CLAIMS, INBOUND CONTRIBUTION CLAIMS, ALL OTHER CHANNELED CLAIMS, AND RELATED INSURANCE CLAIMS, (B) THE PAYMENT OF ANY OF THE CLAIMS IDENTIFIED PREVIOUSLY INCLUDING,WITHOUT LIMITATION, MEDICARE CLAIMS, AND (C) EXTRA-CONTRACTUAL CLAIMS, ARE**

**HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, TO ASSERT, ENFORCE OR ATTEMPT TO ASSERT OR ENFORCE ANY SUCH CLAIM OR INTEREST AGAINST THE UNDERWRITER ENTITIES, ANY OF THE UNDERWRITER ENTITIES' ASSETS, OR PROPOERTY, OR ANY OF THE SUBJECT INSURANCE POLICIES, INCLUDING, WITHOUT LIMITAITON, BY:**

> **(I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY OF THE UNDERERITER ENTITIES OR AGAINST THE PROPERTY OF ANY OF THE UNDERWRITERS ENTITIES;**

> **(II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY OF THE UNDERWRITER ENTITIES OR THE PROPERTY OF ANY OF THE UNDERWRITER ENTITIES;**

> **(III) CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND AGAINST ANY OF THE UNDERWRITER ENTITIES, OR THE PROPERTY OF THE UNDERWRITER ENTITIES;**

> **(IV) ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY SUCH CLAIM OF ANY KIND AGAINST:**

>> **(A) ANY OBLIGATION DUE ANY OF THE UNDERWRITER ENTITIES;**

>> **(B) ANY OF THE UNDERWRITER ENTITIES;**

>> **(C) THE PROPERTY OF ANY OF THE UNDERWRITER ENTITIES;**

> **(V) TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS SETTLEMENT AGREEMENT; AND**

> **(VI) ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE UNDERWRITER ENTITIES, OR THE PROPERTY OF ANY OF THE UNDERWRITER ENTITIES;**

21668734.v3
Case 2-19-20905-PRW, Doc 3183, Filed 06/10/25, Entered 06/10/25 16:48:52, Description: Main Document , Page 31 of 391

**THE SETTLING INSURER INJUNCTION WILL BE EFFECTIVE WITH RESPECT TO THE UNDERWRITER ENTITIES ONLY AS OF THE DATE THAT THE TRUST RECEIVES THE INSURANCE SETTLEMENT AMOUNT PURSUANT TO THE TERMS OF THE SETTLEMENT AGREEMENT. THE SETTLING INSURER INJUNCTION BARS PURSUIT OF THE ABOVE-REFERENCED CLAIMS AND/OR INTERESTS AGAINST THE UNDERWRITER ENTITIES, THE SUBJECT INSURANCE POLICIES, BUT AGAINST NO OTHER PERSON OR THING; <u>PROVIDED</u>, <u>HOWEVER</u>, NOTHING IN THIS SETTLING INSURER INJUNCTION SHALL LIMIT, OR BE DEEMED OR OTHERWISE INTERPRETED TO LIMIT, THE SCOPE OF THE DISCHARGE OR CHANNELING INJUNCTION IN FAVOR OF THE PROTECTED PARTIES.**

**THE FOREGOING INJUNCTIVE PROVISIONS ARE AN INTEGRAL PART OF THE PLAN AND ARE ESSENTIAL TO ITS IMPLEMENTATION. THE SETTLING INSURER INJUNCTION SHALL NOT APPLY TO A NON-SETTLING INSURER.**

    **dddd.**   <u>**Sexual Misconduct Liability Coverage**</u>

The term "**Sexual Misconduct Liability Coverage**" means the coverage provided in Section B(2) of the Subject Insurance Policies that were in effect for the periods from July 1, 2018 to July 1, 2021 and July 1, 2022 to July 1, 2025, and Section B(7) of the Subject Insurance Policy that was in effect for the period from July 1, 2021 to September 1, 2022.

    **eeee.**   <u>**Subject Insurance Policies**</u>

The term "**Subject Insurance Policies**" means (i) all insurance policies listed in **Attachment A** hereto.

    **ffff.**   <u>**Termination Event**</u>

The term "**Termination Event**" means that (i) the Court has entered an order that (A) is contrary to or inconsistent with the Approval Order, or that denies approval of this Agreement; (B) is contrary to or inconsistent with the Confirmation Order, or that denies confirmation of the Plan; or (C) confirms a plan of reorganization that is different than the Plan and inconsistent with the terms of this Agreement (an "**Inconsistent Order**"), and either (X) the Inconsistent Order has become a Final Order; (Y) there was an appeal of the Inconsistent Order and six (6) months have elapsed from the date of the appeal and the Inconsistent Order has not been reversed or overturned by the appellate court; or (Z) the Underwriters, the Diocese, and the Committee have not agreed to accept the Inconsistent Order; (ii) the Diocese or Committee withdraw the Plan prior to entry of the Confirmation Order; or (iii) any appellate court whose decisions are binding upon the Court issued a decision or order, before the Confirmation Order became a Final Order, that would prevent the entry or effectiveness of the Channeling Injunction, the Gatekeeper Injunction, or the Settling Insurer Injunction. If the Parties disagree as to whether any such decision or order would prevent the entry or effectiveness of such injunctions, the Parties shall ask the Court to decide the issue.

    **gggg.**   Reserved

    **hhhh.**   <u>**Timely Abuse Action**</u>

The term "**Timely Abuse Action**" means an Abuse Action that, at the time of its commencement, would not be subject to an affirmative defense by the Diocese or a DOR Signatory that such action (i) is barred by the provisions of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, or (ii) was untimely pursuant to N.Y. C.P.L.R. § 214 or any other statutes of limitation or repose under other applicable law. For avoidance of doubt, the failure of any Abuse Claimant to name the Diocese as a defendant in an Abuse Action because of the application of any stay arising pursuant to Section 362 of the Bankruptcy Code shall not prevent any Abuse Action that would otherwise qualify under this definition from being a Timely Abuse Action.

### iiii.   Tort Action

The term "**Tort Action**" means any lawsuit brought by any Abuse Claimant as plaintiff against any Person seeking judgment and/or damages relating in any way to alleged Abuse, including any Abuse Action.

### jjjj.   Trust

The term "**Trust**" means the trust established under the Plan for the purposes set forth therein, including assuming liability for all Channeled Claims, holding and administering the relevant Trust Assets, enforcing the insurance rights, and making Trust Distributions to holders of Abuse Claims from the Trust Assets, all in accordance with the terms of the Plan and its attached Allocation Protocol.

### kkkk.   Trust Agreement

The term "**Trust Agreement**" means the agreement between the Diocese and the Trustee governing the Trust, dated as of the Agreement Effective Date.

### llll.   Trustee

The term "**Trustee**" means the individual appointed to administer the Trust, in accordance with the terms of the Plan and any successor appointed therewith.

### mmmm.   Underwriters

The term "**Underwriters**" means:

(i)     All underwriters, members, or Names at Lloyds, London (including former underwriters, members, or Names) who through their participation in syndicates that severally subscribed, each in his, her, or its own proportionate share, to one or more of the Subject Insurance Policies. Further, it is expressly understood that the aforementioned are Underwriters only in their capacity as subscribers of the Subject Insurance Policies;

(ii)     All Insurance Companies that severally subscribed, each in its own proportionate share, to one or more of the Subject Insurance Policies, including without limitation, HDI Global Specialty SE and Convex Insurance UK Limited. It is expressly

Case 2-19-20905-PRW,   Doc 3183,   Filed 06/10/25,   Entered 06/10/25 16:48:52,   Description: Main Document  , Page 33 of 391

understood that the Insurance Companies are Underwriters only in their capacity as subscribers of the Subject Insurance Policies;

(iii)    All of the Affiliates and Agents of the Persons set forth in Sections 1.mmmm (i) and (ii) above; and

(iv)    Each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, though, or in concert with them, in their capacities as such.

### nnnn.  Underwriter Entities

The term "**Underwriter Entities**" means the Underwriters, and with respect to each Underwriter:

each of its heirs, executors, receivers, trustees, liquidators (provisional or otherwise) or equivalent appointee/s under relevant insolvency law, former shareholders, Affiliates and Agents, all solely in their capacities as such; *provided, however*, that no Person shall be an Underwriter Entity if such Person is an Excluded Party. The term "Underwriter Entities" also include claims handling agents, service providers, trustees, reinsurers, retrocessionaires, partners, financial advisors, accountants, and consultants, each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, administrators, and all Persons acting on behalf of, by, through, or in concert with them, in their capacities as such, with respect to the Subject Insurance policies.

### oooo.        Unknown Claimant Representative

The term "**Unknown Claimant Representative**" means Michael R. Hogan, in his capacity as the "Future Claims Representative" (as defined and set forth in the *Order Approving Employment and Retention of Michael R. Hogan as Unknown Claims Representative* [Dkt. No. 2484]), or any duly appointed successor.

## 2.    Payment of the Settlement Amount

a.    The satisfaction of the Conditions Precedent to Settlement Payment are conditions precedent to each Underwriter's several, respective obligation under this Agreement. No later than the Settlement Payment Date, each Underwriter shall transfer its respective, several, allocated share of the Settlement Amount to the Trust via wire transfer, using payment instructions provided to counsel for Underwriters, in writing, by the Diocese, at least twenty-one (21) days prior to the Settlement Payment Date. All payments shall be made in immediately available U.S. funds

b.    The foregoing payment is full and fair consideration for (i) the Settling Insurer Injunction, Channeling Injunction, and Gatekeeper Injunction; (ii) the purchase of the Purchased Property; and (iii) the Entities Release by the Parties.

c.    Reserved.

31

**d.**    Upon the Actual Payment Date, the sale of the Purchased Property and the Entities Release shall automatically be effective, and binding, and the transfer of the Purchased Property shall be deemed for all purposes to have occurred on the Actual Payment Date, with the intent that no Person other than Underwriters shall retain anything whatsoever with respect to the Purchased Property.

**e.**    If, before the Actual Payment Date, a DOR Signatory becomes a debtor in a bankruptcy case or insolvency Action, under the Bankruptcy Code or otherwise, and any Underwriter has not satisfied its respective several payment obligation hereunder, then such Underwriter shall be excused from performance under this Agreement until such time as either (i) such DOR Signatory obtains, subject to the limitations imposed by the Bankruptcy Code, and the equitable powers of the court in which such Action is pending, an order from such court approving this Agreement under Bankruptcy Code § 363(b), (f), and (m) and Bankruptcy Rule 9019, authorizing the assumption by such DOR Signatory (or any successor thereto) of this Agreement under Bankruptcy Code § 365 ("Assumption"), or in the event the insolvency case is proceeding under other law, shall obtain a similar order from the court overseeing the insolvency case approving this Agreement and confirming the binding effect thereof; (ii) the Diocese obtains an order in the Action compelling the Assumption; or (iii) the Diocese obtains an order from the Court determining the equitable portion of the Settlement Amount allocable to any interest the DOR Signatory subject to such bankruptcy or insolvency Action may have in the Purchased Property. Each DOR Signatory agrees that in the event it files a bankruptcy or other insolvency Action, it will not present any Claim for payment under this Agreement or the Subject Insurance Policies, or in respect of any other portion of the Purchased Property to any Underwriter, until the Assumption has been approved by an order of the applicable court and such order has become a Final Order or until its equitable share in the Settlement Amount has been established by order of the Court pursuant to clause (iii) above and such order has become a Final Order. Underwriters agree to cooperate fully and provide commercially reasonable assistance to the Diocese and any DOR Signatory in obtaining any of the orders contemplated in this Section 2.e.

## 3.    <u>Several Liability</u>

The obligations of each Underwriter are several and not joint. The Diocese and the DOR Signatories agree that no Underwriter shall be liable for any settlement amount allocable to any other Person. Accordingly, each Underwriter listed in Attachment B agrees to pay only its individual, respective, allocated share of the Settlement Amount, which amount is set forth in Attachment C, as applicable. No Party shall seek to recover from any individual Underwriter an amount exceeding such stated, respective, allocated share of the Settlement Amount. Upon the Actual Payment Date, the Diocese and each DOR Signatory shall be deemed to have released each such Underwriter pursuant to Section 4 hereof.

## 4.    <u>Mutual Releases</u>

### a.    <u>By the Diocese and the DOR Signatories</u>

(i)    Upon the Actual Payment Date, the transfer of Purchased Property, the Entities' Release, and the Indemnity set forth in Section 5, shall become immediately effective without further act by any Person.

32

(ii)     Upon the Actual Payment Date, any and all rights, duties, responsibilities, obligations, and liabilities of the Underwriter Entities created by or relating to the Purchased Property, are terminated, such that the Diocese and the DOR Signatories shall have no insurance coverage under the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect for the periods from July 1, 2018 to July 1, 2025. Moreover, the Entities' Release shall operate as though the Underwriters had never subscribed the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect for the periods from July 1, 2018 to July 1, 2025, and shall finally and fully release the Underwriter Entities from any and all rights, duties, responsibilities, obligations, and liabilities relating to or arising out of the Abuse Claims and Related Insurance Claims under the Subject Insurance Policies.

(iii)     It is the intention of the Diocese and the DOR Signatories to assure the Underwriter Entities their peace and freedom with respect to all Abuse Claims and Related Insurance Claims and to reserve no rights or benefits whatsoever under or related to the Purchased Property, other than the right to receive the Settlement Amount under this Agreement.

(iv)     The Entities' Release extends to all (a) Underwriters that subscribed any of the Subject Insurance Policies; and (b) Persons mentioned in Section 4.a.(i).

(v)     The Diocese and each DOR Signatory are, among other things (a) releasing all Related Insurance Claims, including Claims that it does not know or suspect to exist in its favor, which, if known by the Diocese or such DOR Signatory, might have materially affected its settlement with Underwriters, and (b) expressly waiving all rights it might have under any federal, state, local, or other law or statute that would in any way limit, restrict, or prohibit such general release.

(vi)     Except with respect to any material breach of any representation, warranty or covenant by Underwriters set forth in this Agreement, the Diocese and each DOR Signatory expressly assumes the risk that acts, omissions, matters, causes, or things may have occurred, which it does not know or does not suspect to exist.  To the fullest extent permitted by applicable law, the Diocese and each DOR Signatory hereby waives the terms and provisions of any statute, rule, or doctrine of common law that either: (a) narrowly construes releases purporting to release Claims, in whole or in part, related to such acts, omissions, matters, causes, or things; or (b) restricts or prohibits the releasing of such Claims.

(vii)     Nothing in the foregoing shall release the Underwriters from their obligations under this Agreement, including the obligation to pay the Settlement Amount.

## b.     **By Underwriters**

(i)     Upon the Actual Payment Date, each of the Underwriters and any subsequently appointed trustee or representative acting for them shall be deemed to remise, release, covenant not to sue, and forever discharge the Diocese and each DOR Signatory from and against all Claims relating to the Purchased Property, which each such

21668734.v3
Case 2-19-20905-PRW,   Doc 3183,   Filed 06/10/25,   Entered 06/10/25 16:48:52,
Description: Main Document  , Page 36 of 391

Underwriter ever had, now has, or hereinafter may have, from the beginning of time to the Actual Payment Date.

(ii) Each Person released under the Entities' Release shall reserve no rights or benefits whatsoever under or in connection with the Purchased Property, the Abuse Claims, and the Related Insurance Claims.

(iii) Except with respect to any material breach by the Diocese or any DOR Signatory of any representation, warranty, or covenant set forth in this Agreement, each Underwriter expressly assumes the risk that acts, omissions, matters, causes, or things may have occurred, which it does not know or does not suspect to exist. To the fullest extent permitted by applicable law, each Underwriter hereby waives the terms and provisions of any statute, rule, or doctrine of common law which either: (a) narrowly construes releases purporting by their terms to release Claims, in whole or in part, relating to such acts, omissions, matters, causes or things; or (b) which restricts or prohibits the releasing of such Claims.

## 5. **Indemnification**

**a.** From and after the Actual Payment Date, the Trust shall indemnify and hold harmless the Underwriters in respect of any and all Channeled Claims. This indemnification includes Claims made by Persons over whom the Diocese, the Trust, and/or the Reorganized Diocese do not have control, including the DOR Signatories, former subsidiaries, predecessors in interest, sellers or purchasers of assets, or any other Person who asserts Claims against or under, or Interests in or to, the Purchased Property.

**b.** Underwriters shall have the right to defend, with counsel of their choice, all Claims indemnified under Section 5.a. Underwriters may begin the defense of any Claim upon receipt of such a Claim. Underwriters agree to notify, as soon as practicable, the Diocese, Reorganized Diocese, and the Trust of Claims indemnified under Section 5.a. and of their choice of counsel.

**c.** The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by Underwriters in defending such Claims. Underwriters shall defend any such Claim in good faith. In defense of any such Claim, Underwriters may settle or otherwise resolve a Claim with the prior consent of the Diocese, Reorganized Diocese, and the Trust, which consent shall not be unreasonably withheld.

## 6. **Bankruptcy Obligations**

**a.** The Diocese shall seek approval under Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code, and entry of the Approval Order and the Settlement Approval Findings and Conclusions. The Diocese shall provide to Underwriters an initial draft of the proposed form of Approval Order, Settlement Approval Findings and Conclusions, and Settling Insurer Injunction at least seven (7) days before the Diocese submits to the Court the foregoing for approval of this Agreement, so that the Underwriters may provide comments and suggestions. If the Diocese makes material revisions to any of the foregoing documents, then, as soon as possible, the Diocese shall provide a copy of such material revisions to the Underwriters. The Underwriters reserve the right to object to, *inter alia*, (i) any proposed order that does not satisfy all of the requirements of

34

the definition of Approval Order set forth in Section 1.i., or (ii) any proposed findings and conclusions that do not satisfy all of the requirements of the definition of Settlement Approval Findings and Conclusions set forth in Section 1.yyy.

**b.** Unless the Court denies entry of the Approval Order or this Agreement is otherwise terminated pursuant to its terms, the Diocese shall seek to confirm the Plan and seek entry of the Confirmation Order and the Confirmation Findings and Conclusions. The Diocese shall provide to Underwriters an initial draft of the proposed form of Confirmation Order, and Confirmation Findings and Conclusions, at least fourteen (14) days before the Diocese submits the foregoing to the Court, so that the Underwriters may provide comments and suggestions. If the Diocese makes material revisions to any of the foregoing documents, then, as soon as possible, the Diocese shall provide a copy of such material revisions to Underwriters. To the extent that such proposed order, and proposed confirmation findings of fact and conclusions of law, do not meet the requirements set forth in the definition of "Confirmation Order" in Section 1.z, or "Confirmation Findings and Conclusions" set forth in Section 1.w., the Diocese shall modify such proposed confirmation order and proposed confirmation findings of fact and conclusions of law to assure that the filed confirmation order and confirmation findings of fact and conclusions of law submitted to the Bankruptcy Court for confirmation comports with the definitions of "Confirmation Order", and "Confirmation Findings and Conclusions" herein, and the Underwriters shall have the right to approve all modifications that affect their rights or obligations under this Agreement. The Underwriers reserve the right to object to, *inter alia*, any proposed order that does not satisfy all of the requirements of the definition of Confirmation Order set forth in Section 1.z, or the definition of the Channeling Injunction set forth in Section 1.s and Attachment I herein, or any proposed findings of fact and conclusions of law that do not satisfy all the requirements of the definition of Confirmation Findings and Conclusions in Section 1.y. If the Diocese proposes a plan that is different than the Plan (the **"Non-Compliant Plan"**), then the Underwriters may contest the Non-Compliant Plan, and the Diocese shall not request a hearing date on confirmation of a Non-Compliant Plan less than thirty (30) days after the date the Non-Compliant Plan is filed with the Court.

**c.** The Diocese shall seek entry of the Confirmation Order, as set forth in Section 1.z., together with the Confirmation Findings and Conclusions, as set forth in Section 1.y., including any required findings and conclusions under the Bankruptcy Code.

**d.** The Diocese shall serve Bankruptcy Notice of the initial hearing to approve this Agreement and of confirmation of the Plan and the time for filing objections thereto. The proposed form of notice shall be submitted to Underwriters for their review and comment no later than seven (7) days prior to the actual service of notice. If the initial hearing to approve this Agreement or to confirm the Plan is adjourned, the Diocese shall not be required to provide Bankruptcy Notice of such adjourned hearing and shall only be required to file a notice of such adjournment on the docket in the Bankruptcy Case and provide such other and further notice as the Court may direct.

**e.** Upon the occurrence of the Plan Effective Date, the Diocese shall file a notice thereof on the docket in the Bankruptcy Case and shall serve a copy of such notice upon counsel for Underwriters.

21668734.v3
Case 2-19-20905-PRW,    Doc 3183,    Filed 06/10/25,    Entered 06/10/25 16:48:52,
Description: Main Document  , Page 38 of 391

**f.**     In the event that any Person attempts to prosecute a Barred Claim or a Claim that, upon entry of the Approval Order, would be a Barred Claim, against Underwriters (or any of them) then promptly following notice from Underwriters, the Diocese shall file a motion and supporting papers seeking an order from the Court, pursuant to Bankruptcy Code §§ 105(a) and/or 362(b), as applicable, staying such Claims until the Settlement Payment Date, or, alternatively, this Agreement is terminated under Section 9. However, if the Diocese is unable to obtain a stay of such Claim, then the Underwriters may, subject to the terms, conditions and any applicable limits and retentions of the Subject Insurance Policies, defend such Claims, and may either settle them (subject to the Diocese's prior written consent) or litigate them to judgment, and the Diocese and the applicable DOR Signatories shall assist and cooperate fully with Underwriters in such defense.

**g.**     In the event that any Person attempts to prosecute a Barred Claim or a Claim that, upon entry of the Approval Order, would be a Barred Claim against any DOR Signatory, then promptly following notice from such DOR Signatory, the Diocese shall file a motion and supporting papers seeking an order from the Court, pursuant to Bankruptcy Code §§ 105(a) and/or 362(b), as applicable, staying such Claims until the Settlement Payment Date, or, alternatively, this Agreement is terminated under Section 9. If the motion for the stay is not granted, the defendant DOR Signatories shall defend such Claims and use their best efforts to prevent the entry of a default and Underwriters shall assist and cooperate fully in such defense. In such event, Underwriters' obligations relating to such litigation shall be determined by, and subject to, the terms, conditions and any applicable limits and retentions of the Subject Insurance Policies.

**h.**     The Diocese (or any successor, including the Trust and the Reorganized Diocese) shall dismiss the Claims against the Underwriters, including all pending motions, in the Insurance Coverage Action, with prejudice, within ten (10) business days after the Settlement Payment Date.

## 7.     <u>Representations and Warranties</u>

**a.**     The Diocese represents and warrants that it will undertake good faith efforts to provide actual Bankruptcy Notice of the motion to approve this Agreement.

**b.**     The Diocese represents and warrants that the notice required under the definition of Bankruptcy Notice includes all DOR Signatories and all Claimants whose names and addresses are known to the Diocese.

**c.**     The Diocese and each DOR Signatory represents and warrants that it has the authority to execute this Agreement as its binding and legal obligation, subject in the case of the Diocese, to Court approval of this Agreement.

**d.**     Each Underwriter represents and warrants to the Diocese that (i) it has, and at all times prior to payment in full of its several respective allocated portion of the Settlement Amount, as reflected on Attachment C, will have sufficient assets to pay its allocated portion of the Settlement Amount, in full; and (ii) it is not now, nor has it ever been, the subject of any bankruptcy or insolvency proceeding in any jurisdiction.

**e.**     Each Party represents and warrants that the Persons signing this Agreement on its behalf are authorized to execute this Agreement.

**f.** Each individual signing this Agreement on behalf of a Party represents and warrants that he or she has the right, power, legal capacity, and authority to enter into this Agreement on behalf of such Party and bind such Party to perform each obligation specified herein.

## 8. Reduction Clause.

The Diocese and the Committee shall not modify the Reduction Clause set forth in Section 12.5.2 of the Plan, and in Attachment O, hereto, without the prior written approval of Underwriters, and the Confirmation Order shall include the same Reduction Clause, unless modified upon consent of Underwriters.

## 9. Termination of Agreement

**a.** The Parties may terminate this Agreement in writing upon mutual assent.

**b.** Upon the occurrence of a Termination Event, the Diocese and each Underwriter may terminate this Agreement upon thirty (30) days' written notice to the other Parties, *provided, however,* that (i) such notice must be provided no later than forty-five (45) days following the applicable Termination Event; (ii) any notice terminating this Agreement issued by any Underwriter as a result of a Termination Event shall, unless the Diocese agrees otherwise in writing, be effective to terminate this Agreement as to each and every Underwriter; and (iii) no Party shall have the right to terminate this Agreement on account of the occurrence (or alleged occurrence) of a Termination Event once the Actual Payment Date has occurred.

**c.** In the event of termination pursuant to this Section 9, unless the Parties agree otherwise in writing, this Agreement shall be void *ab initio* and all Parties shall retain all of their Interests relating to the Subject Insurance Policies as if this Agreement never existed.

## 10. Treatment of Excluded Parties and Non-Settling Insurers

Nothing in this Agreement overrides the treatment in the Plan of Excluded Parties and Non-Settling Insurers. No Person other than the Parties is entitled to any benefits under this Agreement or under the Subject Insurance Policies, except to the extent such Person is insured under the Subject Insurance Policies.

## 11. Reasonably Equivalent Value

**a.** This Agreement was bargained for and entered into in good faith and as the result of arms-length negotiations;

**b.** Based on their respective independent assessments, with the assistance and advice of counsel, of the probability of success, the complexity, the delay in obtaining relief, and the expense of maintaining the Insurance Coverage Action, the payments received by the Diocese and the DOR Signatories pursuant to this Agreement constitute a fair and reasonable settlement of the Related Insurance Claims;

21668734.v3
Case 2-19-20905-PRW, Doc 3183, Filed 06/10/25, Entered 06/10/25 16:48:52,
Description: Main Document , Page 40 of 391

**c.** The payments and other benefits received under this Agreement by the Diocese and the DOR Signatories constitute reasonably equivalent value for the Settlement Benefits received by the Underwriter Entities under this Agreement; and

**d.** Subject to the occurrence of the Actual Payment Date, this Agreement constitutes a full and final resolution of all issues in the Insurance Coverage Action.

## 12. Confidentiality

The Parties agree that all matters relating to the negotiation and terms of this Settlement Agreement (including all prior drafts, exchanges of terms, and related discussions or correspondence) shall be confidential and are not to be disclosed except by order of court or consent of the Parties in writing. This Section 12 does not prevent or prohibit the Parties from publicly filing on the Bankruptcy Case docket the final, executed copy of this Settlement Agreement.

## 13. Third-Party Beneficiaries

The Trust, and the Trustee are intended third-party beneficiaries of this Agreement. Except as set forth in the preceding sentence, there are no third-party beneficiaries of this Agreement.

## 14. Co-operation

**a.** For a period of three (3) years following the Agreement Effective Date, the Diocese and the DOR Signatories will undertake commercially reasonable acts, at the sole cost and expense of Underwriters, to co-operate with Underwriters in connection with their respective reinsurers, including responding to reasonable requests for information and meeting with representatives of reinsurers, *provided, however*, that the foregoing shall not require the Diocese and the DOR Signatories to disclose any information that is subject to the attorney-client or other legally recognized privilege. Furthermore, the Parties shall use their reasonable best efforts and cooperate as necessary or appropriate to effectuate the transactions contemplated by this Agreement.

**b.** If any Action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

## 15. Non-Prejudice and Construction of Agreement

**a.** This Agreement is intended to be, and is, a compromise among the Parties and shall not be construed as an admission of coverage under the Subject Insurance Policies; an admission concerning the amount of a reasonable settlement of any Claim; or an admission concerning the liability of, or damages allegedly caused by the Diocese or any DOR Signatory with respect to any Abuse Claim, including the reasonableness of any such alleged damages. Neither this Agreement nor any provision hereof shall be construed as a waiver, modification, or retraction of the Parties' positions on the interpretation and application of the Subject Insurance

Policies. This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions, and does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement. This Agreement is without prejudice to the positions taken by Underwriters with regard to other insureds, and without prejudice with regard to positions taken by any Party with regard to other Insurers, except for the express reference to the Third Party Beneficiaries, the Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement;

**b.** This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will assert that any ambiguity in this Agreement shall be construed against another Party.

**c.** If any provision of the Plan, the Trust Agreement, or Allocation Protocol conflicts with or is inconsistent with this Agreement in any way whatsoever, then the provisions of this Agreement shall control and take precedence. Neither the Plan nor the Trust Agreement shall be construed or interpreted to modify or affect any rights or obligations of Underwriters under this Agreement.

## 16. <u>No Modification</u>

No change or modification of this Agreement shall be valid unless it is made in writing and signed by the Parties. Any change or modification of this Agreement that affects the rights of the Abuse Claimants or Trust shall require the consent of the Committee or Trustee, as applicable, which consent shall not be unreasonably withheld. Any attempted change or modification in violation of this Section shall be void *ab initio*.

## 17. <u>Waiver</u>

No waiver of any provision of this Agreement or of a breach thereof shall be valid unless it is made in writing and signed by the Parties. The waiver by any Party of any of the provisions of this Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach.

## 18. <u>Execution</u>

This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile, e-mail, or other electronic image, which facsimile, e-mail, or other electronic image counterparts shall be deemed to be originals.

## 19. <u>Governing Law</u>

This Agreement shall be governed by and shall be construed in accordance with the laws of New York.

**20.** **Notices**

Unless another Person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties shall be sent to the Persons listed on Attachment F.

**21.** **Integration**

This Agreement, including the attachments, constitutes the entire Agreement amongst the Parties, with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, amongst the Parties with respect thereto. The Parties intend that this Agreement and the Plan shall be consistent in all respects, with no conflict or discrepancies between them.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their duly authorized representatives.

Underwriters identified in Attachment B have respectively designated Clyde & Co US LLP, as their attorneys-in-fact for the limited purpose of executing this Agreement on their behalf with express authority to do so.

[Signature Pages Follow]

]

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their duly authorized representatives.

Signed: _____

The Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

40

Signed: _____

Certain Underwriters at Lloyd's, London

Name Printed: _____

Title: _____

Date: _____ 2025


Signed: _____

HDI Global Specialty SE

Name Printed: _____

Title: _____

Date: _____ 2025


Signed: _____

Convex Insurance UK Limited

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

The Cathedral Community of Rochester NY;
*successor in interest to the insurance rights of*:
Sacred Heart Cathedral, Rochester, N.Y.; The Holy
Rosary Church of the City of Rochester, Monroe
County, N.Y.; Church of the Most Precious Blood

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Roman Catholic Parish of St. Frances Xavier Cabrini;
*successor in interest to the insurance rights of*: Our Lady of
the Americas (*successor in interest to the insurance rights
of* St. Francis Xavier Church; Church of the Most Holy
Redeemer of Irondequoit, N.Y.; Our Lady of Mount
Carmel Church, Rochester, N.Y.; Corpus Christi Church of
Rochester, N.Y.); Light of Christ Roman Catholic Parish
(*successor in interest to the insurance rights of* St. Philip
Neri Church of Rochester, N.Y.; St. Andrews Roman
Catholic Church of Rochester, N.Y.; Church of the
Annunciation, Rochester, N.Y.); Church of Our Lady of
Perpetual Help of Rochester; St. Michael's Church of
Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

43

Signed: _____

Peace of Christ Roman Catholic Parish of Rochester, NY;
*successor in interest to the insurance rights of*: St. Ambrose
Church of Rochester; St. James Church of Rochester, N.Y.;
St. John the Evangelist Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

44

Signed: _____

The Church of the Holy Apostles, Rochester, N.Y.;
*successor in interest to the insurance rights of*: St. Francis
of Assisi Church of Rochester, N.Y.; Church of the Holy
Family, Inc.; The Church of St. Anthony of Padua

Name Printed: _____

Title: _____

Date: _____ 2025

45

Signed: _____

St. Monica Church of Rochester, N.Y.; *successor in interest to the insurance rights of*: The Church of Our Lady of Good Counsel; St. Augustine Church Corporation; SS. Peter and Paul's Roman Catholic Church, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Anne's Church of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

The Church of the Blessed Sacrament, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

48

Signed: _____

St. Boniface Church, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

49

Signed: _____

St. Stanislaus Church of Rochester, N.Y.; *successor in interest to the insurance rights of*: St. Theresa of the Child Jesus Church, Bishop of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Immaculate Conception/St. Bridget, Rochester; *successor in interest to the insurance rights of*: The Immaculate Conception Church Society; St. Bridget's Church

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Kateri Tekakwitha Roman Catholic Parish; *successor in interest to the insurance rights of*: Church of Christ the King, Rochester, N.Y.; St. Cecilia Church, Irondequoit, N.Y.; Church of St. Margaret Mary; Church of St. Salome; St. Thomas Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of St. Charles Borromeo; *successor in interest to the insurance rights of*: Church of the Holy Name of Jesus of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Emmanuel Church of the Deaf of the Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. George Roman Catholic Lithuanian Church, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

The Parish of the Holy Family, Gates, NY; *successor in interest to the insurance rights of*: Church of the Holy Ghost; St. Helen's Church of Gates, N.Y.; Church of St. Jude of the Town of Gates

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Holy Cross Church of Rochester, NY

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. John the Evangelist Church Corp.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Lawrence Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Mark's Church of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Mary's Church Society, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Our Lady of Lourdes Church of Brighton

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Our Mother of Sorrows Church; *successor in interest to the*
*insurance rights of:* Our Lady of Mercy Church of
Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Mary's French Church Society (a/k/a Our Lady of Victory)

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of Our Lady Queen of Peace of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Pius Tenth Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Theodore's Church of Gates, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

67

Signed: _____

St. Thomas More Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

The Catholic Parish of Saints Isidore and Maria Torriba*; successor in interest to the insurance rights of:* St. Catherine Roman Catholic Church Society, Addison, N.Y.; St. Stanislaus Church of Bradford, N.Y.; St. Joseph's Roman Catholic Church of Campbell, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

69

Signed: _____

St. Alphonsus Catholic German Church

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Aloysius Church, Auburn, NY

Name Printed: _____

Title: _____

Date: _____ 2025

71

Signed: _____

The Catholic Church of the Holy Family, Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Mary's Catholic Church, Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Saints Mary and Martha Roman Catholic Parish Cayuga
County, NY; *successor in interest to the insurance rights
of:* St. Francis of Assisi Italian Roman Catholic Church; St.
Hyacinth's Polish Roman Catholic Society Church

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Sacred Heart Church of Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Ann's Church, Owasco, Cayuga County, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Good Shepherd Catholic Community, Aurora; *successor in interest to the insurance rights of:* St. Patrick's Church of Aurora, N.Y.; St. Joseph's Catholic Church of Cayuga, N.Y.; Our Lady of the Lake Church Corporation, King Ferry; St. Patrick's Catholic Church of Moravia, Cayuga County, N.Y.; St. Bernard's Catholic Church; St. Michael's Church of Union Springs, N.Y.; St. Isaac Jogues' Chapel

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Agnes Church Society, Avon, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. John Vianney Roman Catholic Parish, Steuben County, NY; *successor in interest to the insurance rights of:* St. Mary's Catholic Church Society of Bath, N.Y.; St. Gabriel's Catholic Church Society of Hammondsport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of the Nativity of the Blessed Virgin Mary,
Brockport, N.Y.*; successor in interest to the insurance
rights of:* Newman Oratory of Brockport, New York

Name Printed: _____

Title: _____

Date: _____ 2025

80

Signed: _____

St. Martin De Porres; *successor in interest to the insurance rights of:* Catholic Church of St. Vincent DePaul of Churchville, N.Y.; St. Columba's Church, Caledonia, N.Y.; St. Mary of the Assumption Church, Scottsville, N.Y.; St. Patrick's Church, Mumford, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

81

21668734.v3
Case 2-19-20905-PRW,   Doc 3183,   Filed 06/10/25,   Entered 06/10/25 16:48:52,
Description: Main Document  , Page 84 of 391

Signed: _____

St. Benedict Roman Catholic Parish Ontario County, NY;
*successor in interest to the insurance rights of:* St. Mary's
Church Corp., Canandaigua, N.Y.; St. Bridget's Church of
East Bloomfield, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

82

Signed: _____

St. Peter's Roman Catholic Parish, Ontario County;
*successor in interest to the insurance rights of:* St. Felix's
Church, Inc.; St. Francis Church; St. Dominic Roman
Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Joseph the Worker Roman Catholic Parish, Wayne County; *successor in interest to the insurance rights of:* St. John the Evangelist Roman Catholic Church; St. Michael's Church Society, Inc., Lyons, N.Y.; St. Patrick's Roman Catholic Church, Savannah, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

84

Signed: _____

St. Margaret's Church of Conesus Lake, Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

All Saints, Corning; *successor in interest to the insurance rights of:* The Church of St. Mary's of Corning, N.Y.; St. Patrick's Catholic Church, Corning, N.Y.; St. Vincent De Paul's Roman Catholic Church Society Inc., Corning, N.Y.; Church of the Immaculate Heart of Mary of Painted Post

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

The Church of St. John Fisher of the Town of Huron, New
York

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of St. Jerome, East Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

88

Signed: _____

Saint Cecilia's Roman Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. John the Baptist Catholic Church, Elmira, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Parish of the Most Holy Name of Jesus; *successor in interest to the insurance rights of:* St. Mary's Roman Catholic Church Society; Blessed Sacrament Roman Catholic Church of Elmira, NY (*successor in interest to the insurance rights of* St. Anthony's Church of Elmira, N.Y.; St. Patrick's Roman Catholic Church of Elmira, N.Y.; Saint Peter and Paul's Church, Inc.); Christ the Redeemer Roman Catholic Parish of Elmira, NY (*successor in interest to the insurance rights of* Our Lady of Lourdes Church of Elmira, New York; St. Casimir's Roman Catholic Church Society, Elmira, N.Y.; Saint Charles Borromeo Roman Catholic Church, Elmira Heights, N.Y.)

Name Printed: _____

Title: _____

Date: _____ 2025

91

Signed: _____

Church of the Assumption, Fairport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Church of the Resurrection, Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of St. John of Rochester of Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

The Church of the Holy Cross of Dryden, New York

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Luke the Evangelist Roman Catholic Church Society of Livingston County; *successor in interest to the insurance rights of:* St. Mary's Roman Catholic Church, Geneseo, N.Y., Livingston County; Thomas Aquinas Roman Catholic Church of Moscow, Livingston County, N.Y.; St. Patrick's Church Society of Mt. Morris, New York; Church of the Holy Angels of Nunda, N.Y.; St. Lucy's Church, Retsof, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

96

Signed: _____

Our Lady of Peace Roman Catholic Church of Geneva, NY; *successor in interest to the insurance rights of:* Church of St. Francis DeSales; St. Stephen's Roman Catholic Church, Inc. of Geneva, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Hilary's Catholic Church, Genoa, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Anthony's Catholic Church of Groton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of the Holy Name, Groveland, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

The Church of St. Elizabeth Ann Seton

Name Printed: _____

Title: _____

Date: _____ 2025

101

Signed: _____

Marianne Cope Roman Catholic Parish, Monroe County
NY; *successor in interest to the insurance rights of:*
Guardian Angels Church of Rochester, New York; Church
of the Good Shepherd, Henrietta, N.Y.; St. Joseph's
Catholic Society of Rush, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of St. Leo, Hilton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our
Lady of the Hills)

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Paul of the Cross Church, Honeoye Falls, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

105

Signed: _____

Our Lady of the Valley; *successor in interest to the insurance rights of:* St. Joachim's Roman Catholic Church St. Ann's Roman Catholic Church; St. Ignatius Loyola Church of Hornell, N.Y.; St. Mary's Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of St. Mary Our Mother, Horseheads, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Catherine of Siena Church

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

The Immaculate Conception Church, Ithaca, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

All Saints Church Corporation, Ludlowville, NY

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Rose Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Matthew Catholic Church Society; *successor in interest to the insurance rights of:* St. William's Church Society, Conesus, N.Y.; St. Joseph's Catholic Church Society of Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

112

Signed: _____

St. Michael's Church Society, Livonia Center, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

113

Signed: _____

Parish of St. Katharine Drexel, Palmyra; *successor in interest to the insurance rights of:* St. Patrick's Church of Macedon, N.Y.; St. Gregory's Roman Catholic Church of Marion, N.Y.; Roman Catholic Church of St. Anne, Palmyra, N.Y. 14522

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Catherine's Roman Catholic Church, Mendon, NY

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Michael's Church, Montezuma, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

116

21668734.v3

Signed: _____

St. Michael's Church, Newark, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

117

Signed: _____

St. Christopher of Chili, New York

Name Printed: _____

Title: _____

Date: _____ 2025

118

Signed: _____

St. Benedict's Mission Church of Odessa, New York

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Maximilian Kolbe Catholic Church Society of Wayne
County; *successor in interest to the insurance rights of:* St.
Mary's of the Lake Roman Catholic Church Society;
Church of the Epiphany, Sodus, N.Y.; Church of St. Rose of
Lima, Sodus Point, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

120

Signed: _____

The Parish of Mary, Mother of Mercy, Tompkins County,
New York; *successor in interest to the insurance rights of:*
St. Francis Solanus Church, Interlaken, N.Y.; Holy Cross
Church; St. James the Apostle Church of Trumansburg,
N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Blessed Trinity, Owego; *successor in interest to the insurance rights of:* St. Margaret Mary's Roman Catholic Church of Apalachin, N.Y.; St. Francis Roman Catholic Church; St. John the Evangelist Roman Catholic Church; St. Pius the Tenth Church, Van Etten, N.Y.; St. James the Apostle, Roman Catholic Church Society of Waverly, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

122

Signed: _____

St. Patrick's Roman Catholic Church Society of Owego, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Joseph's Catholic Church of Penfield, NY

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Our Lady of the Lakes Catholic Community; *successor in interest to the insurance rights of:* St. Andrew's Church of Dundee; St. Januarius Roman Catholic Church St. Michael's Church of Penn Yan, N.Y.; St. Patrick's Catholic Church, Prattsburg, N.Y.; St. Mary's Church, Rushville, N.Y.; St. Theresa's Church, Stanley, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

125

Signed: _____

St. Raphael's Church, Piffard, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

126

Signed: _____

Church of the Transfiguration

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Louis Church of Pittsford, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of St. John, the Evangelist, Spencerport, Monroe
Co, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Patrick's Church of Victor, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Frances & St. Clare Roman Catholic Parish, Seneca
County, NY; *successor in interest to the insurance rights
of:* St. Mary's Church, Waterloo, N.Y.; St. Patrick's Church
of Seneca Falls, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Mary's of the Lake Roman Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Holy Family Catholic Community; *successor in interest to the insurance rights of:* St. Pius V Church Society, Cohocton, N.Y.; St. Mary's Church; The Church of the Sacred Heart of Jesus, Perkinsville, N.Y.; St. Joseph's Roman Catholic Church Corp., Wayland, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

133

Signed: _____

The Roman Catholic Church of the Most Holy Trinity at
Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Paul's Roman Catholic Church of Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Church of the Holy Spirit of Penfield, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Our Lady of the Snow, Weedsport; *successor in interest to the insurance rights of:* St. Patrick's Roman Catholic Church of Cato, N.Y.; St. John's Church, Port Byron, N.Y. 13140; St. Joseph's Catholic Church of Weedsport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Joseph's Church of West Bloomfield

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

St. Rita's Church of West Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Catholic Community of the Blessed Trinity of Wolcott, NY; *successor in interest to the insurance rights of:* St. Mary Magdalen Church, Wolcott, N.Y.; St. Thomas the Apostle Roman Catholic Church of Red Creek; St. Jude

Name Printed: _____

Title: _____

Date: _____ 2025

140

Signed: _____

Catholic Charities of the Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Rochester Catholic Press Association, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

142

Signed: _____

DePaul Community Services, Inc. f/k/a DePaul Mental
Health Services, Inc. f/k/a DePaul Clinic

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

Bishop Sheen Ecumenical Housing Foundation, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

144

Signed: _____

Charles Settlement House, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

145

Signed: _____

St. Bernard's School of Theology and Ministry

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Camp Stella Maris of Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Genesee Settlement House

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Becket Hall, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

21668734.v3

Signed: _____

The Corporate Board of Education, Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

## SCHEDULE OF ATTACHMENTS TO SETTLEMENT AGREEMENT AND RELEASE

| | |
|---|---|
| **Attachment A** | **List of Subject Insurance Policies** |
| **Attachment B** | **List of Underwriters** |
| **Attachment C** | **List of Underwriters' allocated shares of the Settlement Amount** |
| **Attachment D** | **Reserved** |
| **Attachment E** | **List of DOR Signatories** |
| **Attachment F** | **Notice Names and Addresses** |
| **Attachment G** | **Cancellation Endorsement** |
| **Attachment H** | **Reserved** |
| **Attachment I** | **Channeling Injunction** |
| **Attachment J** | **Gatekeeper Injunction** |
| **Attachment K** | **List of Participating Parties** |
| **Attachment L** | **Reserved** |
| **Attachment M** | **Catholic Directory and Co-Defendants** |
| **Attachment N** | **Co-Defendants** |
| **Attachment O** | **Reduction Clause** |
| **Attachment P** | **Claimants With Abuse Actions with No Proof of Claim** |

151

# ATTACHMENT A

## List of Subject Insurance Policies

The term "**Subject Insurance Policies**" means the following Certificates subscribed by Underwriters:

- Certificate No. 18W2012, effective for the period from July 1, 2018 to July 1, 2019
- Certificate No. 18XS133, effective for the period from July 1, 2018 to July 1, 2019

- Certificate No. 19W2012, effective for the period from July 1, 2019 to July 1, 2020
- Certificate No. 19XS133, effective for the period from July 1, 2019 to July 1, 2020

- Certificate No. 20W2012, effective for the period from July 1, 2020 to July 1, 2021
- Certificate No. 20XS133, effective for the period from July 1, 2020 to July 1, 2021

- Certificate No. 21W2012, effective for the period from July 1, 2021 to July 1, 2022
- Certificate No. 21XS133, effective for the period from July 1, 2021 to July 1, 2022

- Certificate No. 22W2012, effective for the period from July 1, 2022 to July 1, 2023
- Certificate No. 22XS133, effective for the period from July 1, 2022 to July 1, 2023
- Certificate No. 22XS133A, effective for the period from July 1, 2022 to July 1, 2023

- Certificate No. 23W2012, effective for the period from July 1, 2023 to July 1, 2024
- Certificate No. 23XS133, effective for the period from July 1, 2023 to July 1, 2024
- Certificate No. 23XS133A, effective for the period from July 1, 2023 to July 1, 2024

- Certificate No. 24W2012, effective for the period from July 1, 2024 to July 1, 2025
- Certificate No. 24XS133, effective for the period from July 1, 2024 to July 1, 2025
- Certificate No. 24XS133A, effective for the period from July 1, 2024 to July 1, 2025

21668734.v3

## ATTACHMENT B

### List of Underwriters

1. Certain Underwriters at Lloyd's, London subscribing to the Certificates Listed In Attachment A

2. HDI Global Specialty SE

3. Convex Insurance UK Limited

21668734.v3

## ATTACHMENT C

### Underwriters' Shares of the Settlement Amount

| Underwriter | Amount |
|---|---|
| Certain Underwriters at Lloyd's, London | $832,075.00 |
| HDI Global Specialty SE | $238,750.00 |
| Convex Insurance UK Limited | $29,175.00 |

21668734.v3

## ATTACHMENT D

**Reserved**

21668734.v3

# ATTACHMENT E

## List of DOR Entities

**LIST OF DOR ENTITIES**

| CATHOLIC ENTITY: | ADDRESS: |
|---|---|
| The Cathedral Community of Rochester NY; successor in interest to the insurance rights of: Sacred Heart Cathedral, Rochester, N.Y.; The Holy Rosary Church of the City of Rochester, Monroe County, N.Y.; Church of the Most Precious Blood | 296 Flower City Park, Rochester, NY 14615 |
| Roman Catholic Parish of St. Frances Xavier Cabrini; successor in interest to the insurance rights of: Our Lady of the Americas (successor in interest to the insurance rights of St. Francis Xavier Church; Church of the Most Holy Redeemer of Irondequoit, N.Y.; Our Lady of Mount Carmel Church, Rochester, N.Y.; Corpus Christi Church of Rochester, N.Y.); Light of Christ Roman Catholic Parish (successor in interest to the insurance rights of St. Philip Neri Church of Rochester, N.Y.; St. Andrews Roman Catholic Church of Rochester, N.Y.; Church of the Annunciation, Rochester, N.Y.); Church of Our Lady of Perpetual Help of Rochester; St. Michael's Church of Rochester, N.Y. | 124 Evergreen St., Rochester, NY 14605 |
| Peace of Christ Roman Catholic Parish of Rochester, NY; successor in interest to the insurance rights of: St. Ambrose Church of Rochester; St. James Church of Rochester, N.Y.; St. John the Evangelist Church of Rochester, N.Y. | 25 Empire Blvd., Rochester, NY 14096 |
| The Church of the Holy Apostles, Rochester, N.Y.; successor in interest to the insurance rights of: St. Francis of Assisi Church of Rochester, N.Y.; Church of the Holy Family, Inc.; The Church of St. Anthony of Padua | 7 Austin St., Rochester, NY 14606 |
| St. Monica Church of Rochester, N.Y.; successor in interest to the insurance rights of: The Church of Our Lady of Good Counsel; St. Augustine Church | 34 Monica St., Rochester, NY 14619 |

156

| | |
|---|---|
| Corporation; SS. Peter and Paul's Roman Catholic Church, Rochester, N.Y. | |
| St. Anne's Church of Rochester | 1600 Mount Hope Ave., Rochester NY 14620 |
| The Church of the Blessed Sacrament, Rochester, N.Y. | 259 Rutgers St., Rochester, NY 14607 |
| St. Boniface Church, Rochester, N.Y. | 330 Gregory St., Rochester, NY 14620 |
| St. Stanislaus Church of Rochester, N.Y.; successor in interest to the insurance rights of: St. Theresa of the Child Jesus Church, Bishop of Rochester | 34 Saint Stanislaus St., Rochester, NY 14621 |
| Immaculate Conception/St. Bridget, Rochester; successor in interest to the insurance rights of: The Immaculate Conception Church Society; St. Bridget's Church | 445 Frederick Douglass St., Rochester, NY 14608 |
| Kateri Tekakwitha Roman Catholic Parish; successor in interest to the insurance rights of: Church of Christ the King, Rochester, N.Y.; St. Cecilia Church, Irondequoit, N.Y.; Church of St. Margaret Mary; Church of St. Salome; St. Thomas Roman Catholic Church | 445 Kings Highway S., Rochester, NY 14617 |
| Church of St. Charles Borromeo; successor in interest to the insurance rights of: Church of the Holy Name of Jesus of Rochester, New York | 3003 Dewey Ave., Rochester, NY 14616 |
| Emmanuel Church of the Deaf of the Diocese of Rochester | 34 Monica St., Rochester, NY 14619 |
| St. George Roman Catholic Lithuanian Church, Inc. | 150 Varinna Dr., Rochester, NY 14618 |
| The Parish of the Holy Family, Gates, NY; successor in interest to the insurance rights of: Church of the Holy Ghost; St. Helen's Church of Gates, N.Y.; Church of St. Jude of the Town of Gates. | 4100 Lyell Rd., Rochester, NY 14606 |
| Holy Cross Church of Rochester, NY | 4492 Lake Ave., Rochester, NY 14612 |
| St. John the Evangelist Church Corp. | 2400 Ridge Rd. W., Rochester, NY 14625 |
| St. Lawrence Church of Rochester, N.Y. | 1000 N. Greece Rd., Rochester, NY 14626 |
| St. Mark's Church of Rochester, New York | 54 Kuhn Rd., Rochester, NY 14612 |
| St. Mary's Church Society, Inc. | 259 Rutgers St., Rochester, NY 14607 |
| Our Lady of Lourdes Church of Brighton | 150 Varinna Dr., Rochester, NY 14618 |

21668734.v3

| | |
|---|---|
| Our Mother of Sorrows Church; successor in interest to the insurance rights of: Our Lady of Mercy Church of Rochester, N.Y. | 5000 Mt. Read Blvd., Rochester, NY 14612 |
| St. Mary's French Church Society (a/k/a Our Lady of Victory) | 210 Pleasant St., Rochester, NY 14604 |
| Church of Our Lady Queen of Peace of Rochester, N.Y. | 601 Edgewood Ave., Rochester, NY 14618 |
| St. Pius Tenth Church of Rochester, N.Y. | 3032 Chili Ave, Rochester, NY 14624 |
| St. Theodore's Church of Gates, N.Y. | 168 Spencerport Rd., Rochester, NY 14606 |
| St. Thomas More Church of Rochester, N.Y. | 2617 East Ave., Rochester, NY 14610 |
| The Catholic Parish of Saints Isidore and Maria Torriba; successor in interest to the insurance rights of: St. Catherine Roman Catholic Church Society, Addison, N.Y.; St. Stanislaus Church of Bradford, N.Y.; St. Joseph's Roman Catholic Church of Campbell, N.Y. | 51 Maple St., Addison, NY 14801 |
| St. Alphonsus Catholic German Church | 90 Melrose Rd., Auburn, NY 13021 |
| St. Aloysius Church, Auburn, NY | 85 N. St., Auburn, NY 13021 |
| The Catholic Church of the Holy Family, Auburn, N.Y. | 85 N. St., Auburn, NY 13021 |
| St. Mary's Catholic Church, Auburn, N.Y. | 15 Clark St., Auburn, NY 13021 |
| Saints Mary and Martha Roman Catholic Parish Cayuga County, NY; successor in interest to the insurance rights of: St. Francis of Assisi Italian Roman Catholic Church; St. Hyacinth's Polish Roman Catholic Society Church | 299 Clark St., Auburn, NY 13021 |
| Sacred Heart Church of Auburn, N.Y. | 90 Melrose Rd., Auburn, NY 13021 |
| St. Ann's Church, Owasco, Cayuga County, N.Y. | 4890 Twelve Corners Rd., Owasco, NY 13021 |
| Good Shepherd Catholic Community, Aurora; successor in interest to the insurance rights of: St. Patrick's Church of Aurora, N.Y.; St. Joseph's Catholic Church of Cayuga, N.Y.; Our Lady of the Lake Church Corporation, King Ferry; St. Patrick's Catholic Church of Moravia, Cayuga County, N.Y.; St. Bernard's Catholic Church; St. Michael's Church of Union Springs, N.Y.; St. Isaac Jogues' Chapel | 303 Main St., Aurora, NY 13026 |

158

| | |
|---|---|
| St. Agnes Church Society, Avon, N.Y. | 96 Prospect St., Avon, NY 14414 |
| St. John Vianney Roman Catholic Parish, Steuben County, NY; successor in interest to the insurance rights of: St. Mary's Catholic Church Society of Bath, N.Y.; St. Gabriel's Catholic Church Society of Hammondsport, N.Y. | 32 E Morris St., Bath, NY 14810 |
| Church of the Nativity of the Blessed Virgin Mary, Brockport, N.Y.; successor in interest to the insurance rights of: Newman Oratory of Brockport, New York | 152 Main St., Brockport, NY 14420 |
| St. Martin De Porres; successor in interest to the insurance rights of: Catholic Church of St. Vincent DePaul of Churchville, N.Y.; St. Columba's Church, Caledonia, N.Y.; St. Mary of the Assumption Church, Scottsville, N.Y.; St. Patrick's Church, Mumford, N.Y. | 198 North Rd., Caledonia, NY 14423 |
| St. Benedict Roman Catholic Parish Ontario County, NY; successor in interest to the insurance rights of: St. Mary's Church Corp., Canandaigua, N.Y.; St. Bridget's Church of East Bloomfield, N.Y. | 95 N. Main St., Canandaigua, NY 14424 |
| St. Peter's Roman Catholic Parish, Ontario County; successor in interest to the insurance rights of: St. Felix's Church, Inc.; St. Francis Church; St. Dominic Roman Catholic Church Society | 12 Hibbard Ave., Clifton Springs, NY 14432 |
| St. Joseph the Worker Roman Catholic Parish, Wayne County; successor in interest to the insurance rights of: St. John the Evangelist Roman Catholic Church; St. Michael's Church Society, Inc., Lyons, N.Y.; St. Patrick's Roman Catholic Church, Savannah, N.Y. | 43 W. DeZeng St., Clyde, NY 14433 |
| St. Margaret's Church of Conesus Lake, Livonia, N.Y. | P.O. Box 77, Livonia, NY 14487 |
| All Saints, Corning; successor in interest to the insurance rights of: The Church of St. Mary's of Corning, N.Y.; St. Patrick's Catholic Church, Corning, N.Y.; St. Vincent De Paul's Roman Catholic Church Society Inc., Corning, N.Y.; Church of the Immaculate Heart of Mary of Painted Post | 222 Dodge Ave., Corning, NY 14830 |
| The Church of St. John Fisher of the Town of Huron, New York | 11956 Washington St., Wolcott, NY 14590 |

159

21668734.v3

| | |
|---|---|
| Church of St. Jerome, East Rochester, N.Y. | 207 S. Garfield St., East Rochester, NY 14445 |
| Saint Cecilia's Roman Catholic Church Society | 1010 Davis St., Elmira, NY 14901 |
| St. John the Baptist Catholic Church, Elmira, N.Y. | 1010 Davis St., Elmira, NY 14901 |
| Parish of the Most Holy Name of Jesus; successor in interest to the insurance rights of: St. Mary's Roman Catholic Church Society; Blessed Sacrament Roman Catholic Church of Elmira, NY (successor in interest to the insurance rights of St. Anthony's Church of Elmira, N.Y.; St. Patrick's Roman Catholic Church of Elmira, N.Y.; Saint Peter and Paul's Church, Inc.); Christ the Redeemer Roman Catholic Parish of Elmira, NY (successor in interest to the insurance rights of Our Lady of Lourdes Church of Elmira, New York; St. Casimir's Roman Catholic Church Society, Elmira, N.Y.; Saint Charles Borromeo Roman Catholic Church, Elmira Heights, N.Y.) | 1010 Davis St., Elmira, NY 14901 |
| Church of the Assumption, Fairport, N.Y. | 20 East Ave., Fairport, NY 14450 |
| Church of the Resurrection, Perinton, New York | 63 Mason Rd., Fairport, NY 14450 |
| Church of St. John of Rochester of Perinton, New York | 8 Wickford Way, Fairport, NY 14450 |
| The Church of the Holy Cross of Dryden, New York | 375 George Rd., Freeville, NY 13068 |
| St. Luke the Evangelist Roman Catholic Church Society of Livingston County; successor in interest to the insurance rights of: St. Mary's Roman Catholic Church, Geneseo, N.Y., Livingston County; Thomas Aquinas Roman Catholic Church of Moscow, Livingston County, N.Y.; St. Patrick's Church Society of Mt. Morris, New York; Church of the Holy Angels of Nunda, N.Y.; St. Lucy's Church, Retsof, N.Y. | 13 North St., Geneseo, NY 14454 |
| Our Lady of Peace Roman Catholic Church of Geneva, NY; successor in interest to the insurance rights of: Church of St. Francis DeSales; St. Stephen's Roman Catholic Church, Inc. of Geneva, N.Y. | 130 Exchange St., Geneva, NY 14456 |
| St. Hilary's Catholic Church, Genoa, N.Y. | 299 Main St., Aurora, NY 13026 |
| St. Anthony's Catholic Church of Groton, N.Y. | 312 Locke Rd., Groton, NY 13073 |
| Church of the Holy Name, Groveland, N.Y. | 13 North St., Geneseo, NY 14454 |

160

| | |
|---|---|
| The Church of St. Elizabeth Ann Seton | P.O. Box 149, Hamlin, NY  14464 |
| Marianne Cope Roman Catholic Parish, Monroe County NY; successor in interest to the insurance rights of: Guardian Angels Church of Rochester, New York; Church of the Good Shepherd, Henrietta, N.Y.; St. Joseph's Catholic Society of Rush, N.Y. | 3318 E. Henrietta Rd., Henrietta, NY 14467 |
| Church of St. Leo, Hilton, N.Y. | 110 Old Hojack Land, Hilton, NY 14468 |
| St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills) | 8961 Main St., Honeoye, NY 14471 |
| St. Paul of the Cross Church, Honeoye Falls, N.Y. | 31 Monroe St., Honeoye Falls, NY  14472 |
| Our Lady of the Valley; successor in interest to the insurance rights of: St. Joachim's Roman Catholic Church St. Ann's Roman Catholic Church; St. Ignatius Loyola Church of Hornell, N.Y.; St. Mary's Roman Catholic Church | 27 Erie Ave., Hornell, NY 14843 |
| Church of St. Mary Our Mother, Horseheads, N.Y. | 816 W. Broad St., Horseheads, NY  14845 |
| St. Catherine of Siena Church | 302 Saint Catherine Circle, Ithaca, NY 14850 |
| The Immaculate Conception Church, Ithaca, N.Y. | 113 N. Geneva St., Ithaca, NY  14850 |
| All Saints Church Corporation, Ludlowville, NY | 347 Ridge Rd., Lansing, NY 14882 |
| St. Rose Roman Catholic Church | 1985 Lake Ave., Lima, NY  14485 |
| St. Matthew Catholic Church Society; successor in interest to the insurance rights of: St. William's Church Society, Conesus, N.Y.; St. Joseph's Catholic Church Society of Livonia, N.Y. | P.O. Box 77, Livonia, NY 14487 |
| St. Michael's Church Society, Livonia Center, N.Y. | 8961 Main St., Honeoye, NY  14471 |
| Parish of St. Katharine Drexel, Palmyra; successor in interest to the insurance rights of: St. Patrick's Church of Macedon, N.Y.; St. Gregory's Roman Catholic Church of Marion, N.Y.; Roman Catholic Church of St. Anne, Palmyra, N.Y. 14522 | 52 Main St., Macedon, NY  14502 |
| St. Catherine's Roman Catholic Church, Mendon, NY | 26 Mendon-Ionia Rd., Mendon, NY 14506 |
| St. Michael's Church, Montezuma, N.Y. | 2667 Hamilton St., Weedsport, NY 13166 |
| St. Michael's Church, Newark, N.Y. | 401 S. Main St., Newark, NY  14513 |

| | |
|---|---|
| St. Christopher of Chili, New York | 3350 Union St., North Chili, NY 14514 |
| St. Benedict's Mission Church of Odessa, New York | P.O. Box 289, Watkins Glen, NY 14891 |
| St. Maximilian Kolbe Catholic Church Society of Wayne County; successor in interest to the insurance rights of: St. Mary's of the Lake Roman Catholic Church Society; Church of the Epiphany, Sodus, N.Y.; Church of St. Rose of Lima, Sodus Point, N.Y. | 5823 Walworth Rd., Ontario, NY 14519 |
| The Parish of Mary, Mother of Mercy, Tompkins County, New York; successor in interest to the insurance rights of: St. Francis Solanus Church, Interlaken, N.Y.; Holy Cross Church; St. James the Apostle Church of Trumansburg, N.Y. | PO Box 403, Interlaken, NY 14847 |
| Blessed Trinity, Owego; successor in interest to the insurance rights of: St. Margaret Mary's Roman Catholic Church of Apalachin, N.Y.; St. Francis Roman Catholic Church; St. John the Evangelist Roman Catholic Church; St. Pius the Tenth Church, Van Etten, N.Y.; St. James the Apostle, Roman Catholic Church Society of Waverly, N.Y. | 309 Front St., Owego, NY 13827 |
| St. Patrick's Roman Catholic Church Society of Owego, N.Y. | 309 Front St., Owego, NY 13827 |
| St. Joseph's Catholic Church of Penfield, NY | 43 Gebhardt Rd., Penfield, NY 14526 |
| Our Lady of the Lakes Catholic Community; successor in interest to the insurance rights of: St. Andrew's Church of Dundee; St. Januarius Roman Catholic Church St. Michael's Church of Penn Yan, N.Y.; St. Patrick's Catholic Church, Prattsburg, N.Y.; St. Mary's Church, Rushville, N.Y.; St. Theresa's Church, Stanley, N.Y. | 210 Keuka St., Penn Yan, NY 14527 |
| St. Raphael's Church, Piffard, N.Y. | 13 North St., Geneseo, NY 14454 |
| Church of the Transfiguration | 50 W Bloomfield Rd., Pittsford, NY 14534 |
| St. Louis Church of Pittsford, N.Y. | 64 S. Main St., Pittsford, NY 14534 |
| Church of St. John, the Evangelist, Spencerport, Monroe Co, N.Y. | 55 Martha St., Spencerport, NY 14559 |
| St. Patrick's Church of Victor, N.Y. | 115 Maple Ave., Victor, NY 14564 |

21668734.v3

| | |
|---|---|
| St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY; successor in interest to the insurance rights of: St. Mary's Church, Waterloo, N.Y.; St. Patrick's Church of Seneca Falls, N.Y. | 25 Center St., Waterloo, NY 13165 |
| St. Mary's of the Lake Roman Catholic Church Society | 905 N. Decatur St., Watkins Glen, NY 14891 |
| Holy Family Catholic Community; successor in interest to the insurance rights of: St. Pius V Church Society, Cohocton, N.Y.; St. Mary's Church; The Church of the Sacred Heart of Jesus, Perkinsville, N.Y.; St. Joseph's Roman Catholic Church Corp., Wayland, N.Y. | 206 Fremont St., Wayland, NY 14572 |
| The Roman Catholic Church of the Most Holy Trinity at Webster, N.Y. | 1460 Ridge Rd., Webster, NY 14580 |
| St. Paul's Roman Catholic Church of Webster, N.Y. | 783 Hard Rd., Webster, NY 14580 |
| Church of the Holy Spirit of Penfield, N.Y. | 1355 Hatch Rd., Webster, NY 14580 |
| Our Lady of the Snow, Weedsport; successor in interest to the insurance rights of: St. Patrick's Roman Catholic Church of Cato, N.Y.; St. John's Church, Port Byron, N.Y. 13140; St. Joseph's Catholic Church of Weedsport, N.Y. | 2667 Hamilton St., Weedsport, NY 13166 |
| St. Joseph's Church of West Bloomfield | 95 N. Main St., Canandaigua, NY 14424 |
| St. Rita's Church of West Webster, N.Y. | 1008 Maple Dr., West Webster, NY 14580 |
| Catholic Community of the Blessed Trinity of Wolcott, NY; successor in interest to the insurance rights of: St. Mary Magdalen Church, Wolcott, N.Y.; St. Thomas the Apostle Roman Catholic Church of Red Creek; St. Jude | 11956 Washington St., Wolcott, NY 14590 |
| Catholic Charities of the Diocese of Rochester | 1150 Buffalo Rd., Rochester, NY 14624 |
| Rochester Catholic Press Association, Inc. | 1150 Buffalo Rd., Rochester, NY 14624 |
| DePaul Community Services, Inc. f/k/a DePaul Mental Health Services, Inc. f/k/a DePaul Clinic | 1931 Buffalo Rd., Rochester, NY 14624 |
| The Corporate Board of Education, Diocese of Rochester | 1150 Buffalo Rd., Rochester, NY 14624 |
| Bishop Sheen Ecumenical Housing Foundation, Inc. | 150 French Rd., Rochester, NY 14618 |
| Charles Settlement House, Inc. | 71 Parkway, Rochester, NY 14608 |

163

21668734.v3

- 

| St. Bernard's School of Theology and Ministry | 120 French Rd., Rochester, NY  14618 |
| Camp Stella Maris of Livonia, N.Y. | 4395 East Lake Rd., Livonia, NY  14487 |
| Genesee Settlement House | 10 Dake St., Rochester, NY 14605 |
| Becket Hall, Inc. | 1150 Buffalo Rd., Rochester, NY  14624 |

21668734.v3

## ATTACHMENT F

### Notice Names and Addresses

DOR:

The Diocese of Rochester
1150 Buffalo Road Rochester, New York 14624
Attn: Lisa M. Passero, Chief Financial Officer

With copies to:    Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Attn:  Stephen A. Donato
       Charles J. Sullivan
       Grayson T. Walter

-and-

Blank Rome LLP
1825 Eye Street NW
Washington, D.C. 20006
Attn:  James R. Murray
       James S. Carter

DOR Parishes:

Woods Oviatt Gillman, LLP
1900 Bausch & Lomb Place
Rochester, NY 14604
Attn:   Timothy P. Lyster

Underwriters:

DWF Claims (USA) LLC
Curran Building
13950 Ballantyne Corporate Pl Ste 115
Charlotte, NC 28277
Attn: Sean Mulligan, Senior Vice President

Waldorf Risk Solutions
PO Box 590
Huntington, NY 11743
Attn: William Waldorf, Senior Managing Partner

With copies to:

Clyde & Co US LLP
30 S. Wacker Dr., Ste 2600
Chicago , IL 60606
Attn: Catalina J. Sugayan

## ATTACHMENT G

### Cancellation Endorsement

### Sexual Misconduct Liability Coverage Cancellation Endorsement

Effective [XXX], the Sexual Misconduct Liability Coverage provided for under the following policies is hereby cancelled and terminated:

| | |
|---|---|
| 18W2012 | July 1, 2018 to July 1, 2019 |
| 18XS133 | July 1, 2018 to July 1, 2019 |
| 19W2012 | July 1, 2019 to July 1, 2020 |
| 19XS133 | July 1, 2019 to July 1, 2020 |
| 20W2012 | July 1, 2020 to July 1, 2021 |
| 20XS133 | July 1, 2020 to July 1, 2021 |
| 21W2012 | July 1, 2021 to July 1, 2022 |
| 21XS133 | July 1, 2021 to July 1, 2022 |
| 22W2012 | July 1, 2022 to July 1, 2023 |
| 22XS133 | July 1, 2022 to July 1, 2023 |
| 22XS133A | July 1, 2022 to July 1, 2023 |
| 23W2012 | July 1, 2023 to July 1, 2024 |
| 23XS133 | July 1, 2023 to July 1, 2024 |
| 23XS133A | July 1, 2023 to July 1, 2024 |
| 24W2012 | July 1, 2024 to July 1, 2025 |
| 24XS133 | July 1, 2024 to July 1, 2025 |
| 24X133A | July 1, 2024 to July 1, 2025 |

**<u>ATTACHMENT H</u>**

**Reserved**

## ATTACHMENT I

### Channeling Injunction

## CHANNELING INJUNCTION PREVENTING PROSECUTION OF CHANNELED CLAIMS AGAINST PROTECTED PARTIES.

IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:

      A.    ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.

      B.    ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:

      **(I)**    COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

      **(II)**    ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE

PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

**(III)** CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;

**(IV)** ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:

**(A)** ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;

**(B)** ANY OF THE PROTECTED PARTIES; OR

**(C)** THE PROPERTY OF ANY OF THE PROTECTED PARTIES.

**(V)** TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND

**(VI)** ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.

THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES. IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.

# ATTACHMENT J

## Gatekeeper Injunction

To the extent permitted by law, and subject in all respects to Section 12 of the Plan, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the business of the Diocese, the Reorganized Diocese, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 14 of the Plan, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.

For the avoidance of doubt, the Gatekeeper Injunction does not apply to Claims seeking recovery from Non-Settling Insurers.

171

## ATTACHMENT K

## List of Participating Parties

**Parishes**
1.      Sacred Heart Cathedral, Rochester
2.      **Annunciation, Rochester
3.      **St. Ambrose, Rochester
4.      **St. Andrew, Rochester
5.      **St. Anthony of Padua, Rochester
6.      **St. Augustine, Rochester
7.      St. Anne, Rochester
8.      Blessed Sacrament, Rochester
9.      **Corpus Christi, Rochester
10.     St. Boniface, Rochester
11.     **St. Bridget, Rochester
12.     ** St. Cecilia, Rochester
13.     St. Charles Borromeo, Rochester
14.     **Christ the King, Rochester
15.     **Church of the Annunciation, Rochester
16.     Emmanuel Church of the Deaf, Rochester
17.     **St. Feehan, Rochester
18.     **St. Francis of Assisi, Rochester
19.     St. Frances Xavier Cabrini, Rochester
20.     St. George, Rochester
21.     **Guardian Angels, Rochester
22.     **St. Helen, Rochester
23.     Holy Apostles, Rochester
24.     Holy Cross, Rochester
25.     **Holy Ghost, Rochester
26.     **Holy Family, Rochester
27.     **Holy Name of Jesus, Rochester
28.     **Holy Redeemer, Rochester
29.     St. Francis Xavier, Rochester
30.     **Holy Redeemer/St. Francis Xavier, Rochester
31.     **Holy Rosary, Rochester
32.     **Immaculate Conception, Rochester
33.     Immaculate Conception/St. Bridget, Rochester
34.     **St. James, Rochester
35.     **St. John the Evangelist, Rochester
36.     St. John the Evangelist, Rochester
37.     **St. Joseph, Rochester
38.     Kateri Tekakwitha Roman Catholic, Rochester
39.     St. Lawrence, Rochester
40.     **St. Lucy, Rochester
41.     **Light of Christ Roman Catholic Parish, Rochester
42.     **St. Margaret Mary, Rochester
43.     St. Mark, Rochester
44.     St. Mary, Rochester

172

45. **St. Michael, Rochester
46. St. Monica, Rochester
47. **Our Lady of the Americas, Rochester
48. **Our Lady of Good Counsel, Rochester
49. Our Lady of Lourdes, Rochester
50. **Our Lady of Mount Carmel, Rochester
51. **Our Lady of Mercy, Rochester
52. **Our Lady of Perpetual Help, Rochester
53. **Our Lady of Sorrows, Rochester
54. Our Lady of Victory-St. Joseph, Rochester
55. Our Lady Queen of Peace, Rochester
56. Our Mother of Sorrows, Rochester
57. The Parish of the Holy Family, Rochester
58. Peace of Christ, Rochester
59. **St. Patrick, Rochester
60. **Sts Peter & Paul, Rochester
61. St. Pius Tenth, Rochester
62. **St. Salome, Rochester
63. St. Stanislaus, Rochester
64. St. Theodore, Rochester
65. **St. Theresa of the Infant Jesus, Rochester
66. St. Thomas More, Rochester
67. **St. Thomas the Apostle, Rochester
68. **St. Catherine of Siena, Addison
69. Saints Isidore and Maria Torribia, Addison
70. **St. Margaret Mary, Appalachin
71. **St. Mathias, Atlanta
72. St. Alphonsus, Auburn
73. **St. Aloysius, Auburn
74. **St. Francis of Assisi, Auburn
75. Holy Family, Auburn
76. **St. Hyacinth, Auburn
77. St. Mary, Auburn
78. Saints Mary and Martha, Auburn
79. Sacred Heart, Auburn
80. Good Shephard Catholic Community, Aurora
81. St. Agnes, Avon
82. St. John Vianney, Bath
83. **St. Mary, Bath
84. **St. Stanislaus, Bradford
85. Nativity of the Blessed Virgin Mary, Brockport
86. **St. Columba, Caledonia
87. The Parish of Saint Martin De Porres, Caledonia
88. **Our Lady of Lebanon, Canandaigua
89. St. Benedict, Canandaigua
90. **St. Mary, Canandaigua
91. **St. Joachim, Canisteo
92. **St. William, Cameron Mills
93. **St. Joseph, Campbell
94. **St. Patrick, Cato

95. **St. Francis of Assisi, Catatonk
96. **St. Joseph, Cayuga
97. **St. Vincent De Paul, Churchville
98. **St. Felix, Clifton Springs
99. **St. Felix/St. Francis Parish Cluster, Clifton Springs
100. St. Peter's Roman Catholic Parish, Clifton Springs
101. **St. John the Evangelist, Clyde
102. St. Joseph the Worker, Clyde
103. **St. Pius V, Cohocton
104. **St. William, Conesus
105. All Saints, Corning
106. **Santa Maria de Mercede, Cuylerville
107. **St. Mary, Dansville
108. **St. Patrick, Dansville
109. **St. Andrew, Dundee
110. Holy Cross, Dryden
111. **St. Bridget, East Bloomfield
112. St. Jerome, East Rochester
113. **St. Charles Borromeo, Elmira
114. **St. Anthony, Elmira
115. **Blessed Sacrament, Elmira
116. **St. Casimir, Elmira
117. **St. Cecilia, Elmira
118. **Christ the Redeemer, Elmira
119. **St. John the Baptist, Elmira
120. **St. Mary, Elmira
121. **Our Lady of Lourdes, Elmira
122. The Parish of the Most Holy Name of Jesus, Elmira
123. **St. Patrick, Elmira
124. **Sts. Peter and Paul Catholic Parish, Elmira
125. Church of the Assumption, Fairport
126. Church of the Resurrection, Fairport
127. St. John of Rochester, Fairport
128. St. Luke the Evangelist, Geneseo
129. **St. Mary, Geneseo
130. **St. Francis De Sales, Geneva
131. Our Lady of Peace, Geneva
132. **St. Stephen, Geneva
133. **St. Hillary, Genoa
134. **St. Mary, Greenwood
135. St. Anthony, Groton
136. **Holy Name of Jesus, Groveland
137. St. Elizabeth Ann Seton, Hamlin
138. **St. Gabriel, Hammondsport
139. **Church of the Good Shepherd, Henrietta
140. St. Marianne Cope, Henrietta
141. St. Leo, Hilton
142. St. Paul of the Cross, Honeoye Falls
143. St. Mary, Our Lady of the Hills, Honeoye
144. **St. Ann, Hornell

174

145. Our Lady of the Valley, Hornell
146. **St. Ignatius Loyola, Hornell
147. St. Mary Our Mother, Horseheads
148. **St. Francis Solanus, Interlaken
149. St. Catherine of Siena, Ithaca
150. Immaculate Conception, Ithaca
151. **Our Lady of the Lake, King Ferry
152. All Saints, Lansing
153. **St. Thomas Aquinas, Leicester
154. St. Rose, Lima
155. St. Matthew Catholic Church Society, Livonia
156. **St. Joseph, Livonia
157. **St. Michael, Livonia Center
158. **St. Michael, Lyons
159. **St. Patrick, Macedon
160. **St. Gregory, Marion
161. **St. Patrick, McLean
162. St. Catherine of Siena, Mendon
163. **St. Michael, Montezuma
164. **St. Patrick, Moravia
165. **Church of the Assumption, Mount Morris
166. **St. Patrick, Mount Morris
167. **St. Patrick, Mumford
168. **St. Januarius, Naples
169. **St. John the Evangelist, Newark Valley
170. St. Michael, Newark
171. St. Christopher, North Chili
172. **Holy Angels, Nunda
173. St. Benedict, Odessa
174. **St. Mary of the Lake, Ontario
175. St. Maximillian Kolbe, Ontario
176. **Holy Cross, Ovid
177. The Parish of Mary, Mother of Mercy, Interlaken
178. St. Ann, Owasco
179. Blessed Trinity, Owego
180. St. Patrick, Owego
181. **Immaculate Heart of Mary, Painted Post
182. **St. Anne, Palmyra
183. The Parish of St. Katharine Drexel, Palmyra
184. Holy Spirit, Webster
185. St. Joseph, Penfield
186. **St. Michael, Penn Yan
187. Our Lady of Lakes Catholic Community, Penn Yan
188. **Sacred Heart of Jesus, Perkinsville
189. **St. Francis, Phelps
190. Church of the Transfiguration, Pittsford
191. St. Louis, Pittsford
192. **St. Raphael, Piffard
193. **St. Patrick, Prattsburg
194. **St. Thomas the Apostle, Red Creek

195.    **St, Lucy, Retsof
196.    **St. Mary, Rexville
197.    **St. Joseph, Rush
198.    **St. Mary, Rushville
199.    **St. Patrick, Savannah
200.    **St. Bernard, Scipio Center
201.    **St. Mary of the Assumption, Scottsville
202.    **St. Patrick, Seneca Falls
203.    **St. Dominic, Shortsville
204.    **Epiphany, Sodus
205.    **St. Rose of Lima, Sodus Point
206.    St. John the Evangelist, Spencerport
207.    **St. Theresa, Stanley
208.    **St. James the Apostle, Trumansburg
209.    **St. Michael's, Union Springs
210.    **St. Pius the Tenth, Van Etten
211.    St. Patrick, Victor
212.    St. Francis and St. Clare, Waterloo
213.    **St. Mary, Waterloo
214.    St. Mary of the Lake, Watkins Glen
215.    **St. James, Waverly
216.    Holy Family Catholic Community, Wayland
217.    **St. Joseph, Wayland
218.    Holy Trinity, Webster
219.    St. Paul, Webster
220.    St. Rita, Webster
221.    **St. John, Weedsport
222.    **St. Joseph, Cato
223.    Our Lady of the Snow, Weedsport
224.    **St. Joseph, West Bloomfield
225.    Catholic Community of Blessed Trinity, Wolcott
226.    **St. Mary Magdalene, Wolcott
227.    ** Most Precious Blood Church
228.    The Cathedral Community Church of Rochester
229.    Southeast Rochester Catholic Community

**Other Entities**
1.      Catholic Charities of the Diocese of Rochester, Inc.
2.      Rochester Catholic Press Association, Inc. ("Catholic Courier")
3.      Catholic Youth Organization of Catholic Charities of the Diocese of Rochester
4.      Providence Housing Development Corporation
5.      Camp Stella Maris of Livonia, N.Y.
6.      St. Bernards School of Theology and Ministry
7.      Villa of Hope (f/k/a St. Joseph's Villa)
8.      De Paul Community Services (f/k/a De Paul Mental Health Clinic)
9.      Becket Hall, Inc.
10.     DePaul Adult Care Communities, Inc. (formerly known as the DePaul Mental Health Services, Inc.)
11.     Bishop Sheen Ecumenical Housing Foundation, Inc.
12.     Charles Settlement House, Inc.

176

13. The Corporate Board of Education, Diocese of Rochester
14. Genesee Settlement House

**<u>Schools</u>**
1. All Saints in Corning
2. Holy Family in Elmira
3. St. Joseph in Auburn
4. St. Francis/St. Stephen in Geneva
5. De Sales High School in Geneva
6. Northeastern Catholic Jr. High School

** Indicates a parish that is closed, has merged with another or is otherwise inactive at this time.

## ATTACHMENT L

**Reserved**

# ATTACHMENT M

## Catholic Directory

| Entity / Office Name | Address (From Catholic Directories) | Address as Currently Publicly Available (if different) |
|---|---|---|
| Abbey of the Genesee | 3258 River Rd, Piffard, NY 14533 | |
| Addison, Steuben Co., St. Catherine of Siena | 51 Maple St, Addison, NY 14801 | |
| All Saints | 222 Dodge Ave, Corning, NY 14830 | 158 State St, Corning, NY 14830 |
| Apalachin, Tioga Co., St. Margaret Mary | 1110 Pennsylvania Ave, Apalachin, NY 13732 | |
| Apostleship of Prayer | 1150 Buffalo Rd, Rochester, NY 14624 | Pope's Worldwide Prayer Network USA-Canada 1501 S. Layton Blvd Milwaukee, WI 53215-1924 |
| Association of the Holy Childhood | 100 Groton Pkwy, Rochester, NY 14623 | 70 West 36th Street, 8th Floor New York, NY 10018 |
| Auburn Community College | 15 Clark St, Auburn, NY 13021 | |
| Auburn State Prison | 135 State St, Auburn, NY 13021 | |

21668734.v3

| | | |
|---|---|---|
| Auburn, Cayuga Co. —Holy Family | 85 North St, Auburn, NY 13021 | |
| Aurora, Cayuga Co., St. Patrick's | 303 Main St, Aurora, NY 13026 | |
| Avon, Livingston Co., St. Agnes' | 60 Park Pl, Avon, NY 14414 | |
| Basilian Fathers Vocation Office | 402 Augustine St, Rochester, NY 14613 | |
| Basilian Residence | 80 Fairport Rd, East Rochester, NY 14445. | |
| Bath, Stueben Co. St. John Vianney | 32 E Morris St, Bath, NY 14810 | |
| Becket Hall | 75 Fairport Rd, East Rochester, NY 14445 | |
| Bishop Kearney High School | 125 Kings Hwy N, Rochester, NY 14617 | |
| Bishop Sheen Housing Foundation, Inc. | 750 West Main St, Rochester, NY 14611 | 150 French Rd, Rochester, NY 14618 |
| Blessed Sacrament - Res | 259 Rutgers St, Rochester, NY 14607 | |
| Blessed Trinity | 300 Main St, Owego, NY 13827 | 309 Front St, Owego, NY 13827 |
| Board of Ed. of Blessed Trinity School | 101 E Genesee St, Auburn, NY 13021 | |

21668734.v3

| | | |
|---|---|---|
| Bradford, Steuben Co. (Mission) | 8508 Main St, Campbell, NY 14821 | |
| Brockport, Monroe Co., Nativity of the Blessed Virgin Mary (Res and School) | 152 Main St, Brockport, NY 14420 | |
| Caledonia, Livingston Co., St. Columba's (Mission) | 198 North St, Caledonia, NY 14423-1035 | |
| Camp Stella Maris, Conesus Lake | 50 Chestnut St., Rochester, NY 14604 | |
| Canandaigua, Ontario Co., St. Mary's (Res) | 16 Gibson St., Canandaigua, NY 14424 | |
| Canisteo, Steuben Co., St. Joachim (Mission) | 32 W Main St, Canisteo, NY 14823 | |
| Canisteo, Steuben Co., St. Joachim (Res) | 34 W. Main St, Canisteo, NY14424 | |
| Cardinal Mooney High School | 800 Maiden Ln, Rochester, NY 14615 | |
| Catholic Charities of the Diocese of Rochester | 50 Chestnut St., Rochester, NY 14604 | 1150 Buffalo Rd., Rochester, NY 14624 |
| Catholic Charities of the Diocese of Rochester (legal title) | 50 Chestnut St., Rochester, NY 14604 | |
| Catholic Community of the Blessed Trinity | 11956 Washington St, Wolcott, NY 14590 | |
| Catholic Family Center | 50 Chestnut St., Rochester, NY 14604 | |
| Catholic Stewardship Council of the Finger Lakes - Genesse Region | 94 Exchange Street Geneva, NY 14456 | |

| | | |
|---|---|---|
| Catholic Youth Organization | 50 Chestnut St., Rochester, NY 14604 | |
| Cato, Cayuga Co., St. Patrick's (Chapel) | 2576 E. Mechanic St, Cato, NY 13033 | |
| Cato, Cayuga Co., St. Patrick's (Mission) | 6 927 Main St, Red Creek, NY 13143 | |
| Cato, Cayuga Co., St. Patrick's (Res) | 2619 Main St, Cato, NY 13033 | 2576 E Mechanic St, Cato, NY 13033-3379 |
| Charles Settlement Howse | 445 Jay Street, Rochester, NY 14611 | |
| Chemung County School Board, Diocese of Rochester, Inc. | 430 W Washington Ave, Elmira, NY 14901 | |
| Chili, Monroe Co., St. Christopher (Res) | 3350 Union St, North Chili, NY 14514 | |
| Christ the King | 445 Kings Highway S, Rochester, NY 14617 | |
| Church of the Annunciation - Res | 1754 Norton St, Rochester, NY 14609 | |
| Church of the Annunciation - School | 123 Whittington Rd, Rochester, NY 14609 | |
| Church of the Assumption | 20 East Ave, Fairport, NY 14450 | |
| Church of the Transfiguration | 50 W. Bloomfield Rd, Pittsford, NY 14534 | |

182

| | | |
|---|---|---|
| Churchville, Monroe Co., St. Vincent's | 40 N Main St, Churchville, NY 14428 | |
| Clifton Springs, Ontario Co., St. Felix's | 12 Hibbard Ave, Clifton Springs, NY 14432 | |
| Clyde, Wayne Co., St. John's (At St. Patrick's) (Mission) | 1583 Grand Ave, Savannah, NY 13244 | |
| Cohocton, Steuben Co., St. Pius' | Cohocton-Wallace Road, Cohocton, N.Y. 14826 | 35 Maple Ave, Cohocton, NY 14826-9616 |
| Community College of Finger Lakes | 95 N. Main St, Canandaigua, NY 14424 | |
| Convent and Motherhouse of the Sisters of Mercy | 1437 Blossom Rd, Rochester, NY 14610 | |
| Convent of Our Lady of the Retreat in the Cenacle | 693 Hast Ave, Rochester, NY 14607 | |
| Corning Community College | 1 Academic Dr, Corning, NY 14830 | |
| Corning, Steuben Co., St. Mary's (Res) (All Saints Parish) | 158 State St, Corning, NY 14830 | |
| Corning, Steuben Co., St. Patrick's (Res) | 274 Denison Parkway, Corning, NY 14830 | |
| Corning, Steuben Co., St. Vincent De Paul (Res) | 222 Dodge Ave, Corning, NY 14830 | |

21668734.v3

| | | |
|---|---|---|
| Corning, Steuben Co., St. Vincent De Paul (School) | 109 Ellicott St, Corning, NY 14830 | |
| Corpus Christi | 864 E Main St, Rochester, NY 14605 | |
| Dansville, Livingston Co., St. Mary (Convent) | 40 Elizabeth St, Dansville, NY 14437 | |
| Dansville, Livingston Co., St. Mary (Res) | 40 Elizabeth St, Dansville, NY 14437 | |
| Dansville, Livingston Co., St. Mary (School) | 43 Elizabeth St, Dansville, NY 14437 | |
| De Sales High School | 90 Pulteney St, Geneva, NY 14456 | |
| DePaul Clinic, (licensed psychiatric clinic) | 681 Brown St, Rochester, NY 14611 | |
| Diocesan Boy and Girl Scout Committees | 50 Chestnut St., Rochester, NY 14604 | |
| Diocesan Missions Office— Propagation of the Faith- Pontifical Society for the Propagation of the Faith and Pontifical Association of the Holy Childhood | National Headquarters, 366 Fifth Ave., New York, NY 10001 | Propagation of the Faith Office 783 Hard Road Webster, NY 14580 |
| Dryden - Tompkins Co., Holy Cross (Res) | 375 George Rd, Freeville, NY 13068 | |

21668734.v3

| | | |
|---|---|---|
| East Bloomfield, Ontario Co., St. Bridget's (Mission) | 15 Church St, Bloomfield, NY 14469 | |
| East Bloomfield, Ontario Co., St. Bridget's (Res) | 15 Church St, Bloomfield, NY 14469 | |
| East Rochester, Monroe Co., St. Jerome's (Convent) (Closed) | 207 W Filbert St, East Rochester, NY 14445 | |
| East Rochester, Monroe Co., St. Jerome's (Res) | 207 Garfield St, East Rochester, NY 14445 | |
| East Rochester, Monroe Co., St. Jerome's (School) | 206 West Ave, East Rochester, NY 14445 | |
| Eastman School of Music | 80 Prince St, Rochester, NY 14605 | |
| Elmira College | 1 Park Pl, Elmira, NY 14901 | |
| Elmira Heights Chemung Co., St. Charles Borromeo (Res) | 130 Oakwood Ave, Elmira, NY 14903 | |
| Elmira, Chemung Co. SS Peter and Paul (Res) | 161 High St, Elmira, NY 14901 | |
| Elmira, Chemung Co. SS Peter and Paul (School) | 160 High St, Elmira, NY 14901 | |

| | | |
|---|---|---|
| Elmira, Chemung Co., Our Lady of Lourdes (Res) | 120 Fairmont Rd, Elmira, NY 14905 | |
| Elmira, Chemung Co., Our Lady of Lourdes (School) | 301 Demarest Pkwy, Elmira, NY 14905 | |
| Elmira, Chemung Co., St. Anthony's (Res) | 911 N Main St, Elmira, NY 14901 | |
| Elmira, Chemung Co., St. Casimir's (Res) | 1004 Davis St, Elmira, NY 14901 | |
| Elmira, Chemung Co., St. Cecilia's (Church) | 954 Lake St, Elmira, NY 14901 | |
| Elmira, Chemung Co., St. Cecilia's Res | 950 Lake St, Elmira, NY 14901 | |
| Elmira, Chemung Co., St. John the Baptist's (Res) | 325 Lake St, Elmira, NY 14901 | |
| Elmira, Chemung Co., St. Mary's (Res) | 224 Franklin St, Elmira, NY 14904 | |
| Elmira, Chemung Co., St. Mary's (School) | 421 Fulton St, Elmira, NY 14904 | |
| Elmira, Chemung Co., St. Patrick's (Res) | 604 Park Pl, Elmira, NY 14901 | |

186

| | | |
|---|---|---|
| Emmanuel Church of the Deaf (St. Monica Church) | 34 St. Monica St, Rochester, NY 14619 | |
| Fairport Heights, Chemung Co., Church of the Resurrection (Res) | 283 Hamilton Rd, Fairport, NY 14450 | 63 Mason Rd, Fairport, NY 14450 |
| Genesee Settlement House | 10 Dake street, Rochester, NY 14605. | |
| Geneseo, Livingston Co., St. Mary's | 4 Avon Rd, Geneseo, NY 14454 | |
| Geneva, Ontario Co., St. Francis de Sales (Res) | 130 Exchange St, Geneva, NY 14456 | |
| Geneva, Ontario Co., St. Francis de Sales (School) | 94 Exchange St, Geneva, NY 14456 | |
| Geneva, Ontario Co., St. Stephen's Res & School | 48 Pulteney St, Geneva, NY 14456-2362 | |
| Good Shepherd Catholic Community | PO Box 296 Aurora, NY 13026 | |
| Groton, Tompkins Co., St. Anthony's | 312 Locke Rd, Groton, NY 13073 | |
| Guardian Angels - Res and School | 2061 E Henrietta Rd, Rochester, NY 14623 | |
| Hammondsport, Steuben Co., St. Gabriel's (Mission) | 47 N Main St, Plattsburgh, NY 14873 | |

21668734.v3

| | | |
|---|---|---|
| Henrietta, Monroe Co., Church of the Good Shepherd (Res) | 3264 E Henrietta Rd, Henrietta, NY 14467 | |
| Henrietta, Monroe Co., Church of the Good Shepherd (School) | 3288 E Henrietta Rd, Henrietta, NY 14467 | |
| Hilton, Monroe Co., St. Leo's (Res) | 167 Lake Ave, Hilton, NY 14468 | |
| Hobart and William Smith Colleges | 337 Pulteney St, Geneva, NY 14456 | |
| Holy Apostles - Res | 7 Austin St, Rochester, NY 14606-1707 | |
| Holy Childhood Association. | 800 Alleghany Ave, Pittsburgh, PA 15233 | 70 West 36th Street, 8th Floor New York, NY 10018 |
| Holy Cross - Res | 4492 Lake Ave, Rochester, NY 14612 | |
| Holy Family - Res | 4100 Lyell Rd, Rochester, NY 14606 | |
| Holy Ghost - Res | 220 Coldwater Rd, Rochester, NY 14624 | |
| Holy Name of Jesus - Res | 15 St. Martin's Way, Rochester, NY 14616 | |
| Holy Name Society | 2617 East Ave, Rochester, NY 14610 | |

| | | |
|---|---|---|
| Holy Rosary - Res | 414 Lexington Ave, Rochester, NY 14613 | |
| Honeoye Falls, Monroe Co., St. Paul of the Cross (Res) | 29 Monroe St, Honeoye Falls, NY 14472 | |
| Hornell, Steuben Co., St. Ann's (Res) | 31 Erie Ave, Hornell, NY 14843 | |
| Hornell, Steuben Co., St. Ann's / St. Ann's Academy (School) | 41 Genesee St, Hornell, NY 14843 | |
| Hornell, Steuben Co., St. Ignatius Loyola (Res) | 343 Canisteo St, Rochester, NY 14843 | |
| Horseheads, Chemung Co., St. Mary Our Mother | 816 Westlake St, Horseheads, NY 14845 | |
| Immaculate Conception | 205 Edinburgh St, Rochester, NY 14608 | |
| Immaculate Conception / St. Bridget | 445 Frederick Douglass St., Rochester, NY 14608 | |
| Interlaken, Seneca Co., St. Francis Solanus | 3660 Orchard St, Interlaken, NY 14847-9685 | |
| Ithaca College Newman Foundation, Inc. | Rowland Hall, Ithaca College, 953 Danby Rd, Ithaca, NY 14850 | |

21668734.v3

| | | |
|---|---|---|
| Ithica, Tompkins Co., Immaculate Conception (School) | 320 W Buffalo St, Ithaca, NY 14850 | |
| Ithica, Tompkins Co., St. Catherine of Sienna (res) | Saint Catherines Circle, Ithaca, NY 14850 | 309 Siena Dr., Ithica, NY 14850 |
| Kateri Tekakwitha RC Parish (Saint Kateri - Christ the King) | 445 Kings Hwy S, Rochester, NY 14617 | |
| Keuka College | 312 Liberty St, Penn Yan, NY 14527 | |
| King Ferry, Cayuga Co., Our Lady of the Lake (Mission) | 347 Ridge Rd, Lansing, NY 14882 | |
| Latin "American Missions—Diocese of Rochester, Archdiocese of La Paz, Bolivia, St. Joseph the Worker Parish (Parroquia San Jose Obreo) | Calle 3 de Mayo, Casilla 4814, La Paz, Bolivia, 14604 | |
| Legion of Mary | 2260 Lake Ave, Rochester, NY 14612 | Holy Innocents Parish and the Shrine of the Unborn (128 W 37th St, New York, NY 10018-3602) |
| Leicester, Livingston Co., St. Thomas Aquinas (Mission) | 2770 Retsof Ave, York, NY 14539-9701 | |
| Lima, Livingston Co., St. Rose's (res) | 1985 Lake Ave, Lima, NY 14485 | |
| Livonia Center, Livingston Co., St. Michael's (Res) | State Route 20A, Honeoye, NY 14471 | |

21668734.v3

| | | |
|---|---|---|
| Livonia, Livingston Co., St. Joseph's (Res) | 14 Washington St, Livonia, NY 14487 | |
| Lyons, Wayne Co., St. Michael's (Res) | 3 Holley St, Lyons, NY 14489-1505 | |
| Macedon, Wayne Co., St. Gregory's (St. Katherine Drexel Parish) | N/a | 3799 Union St., Marion, NY 14505 |
| Marianne Cope | 3318 E. Henrietta Rd., Henrietta, NY 14467 | |
| Marion, Wayne Co., St. Gregory's (Res) | 34 Union St, Batavia, NY 14020 | Marion, NY - 14505 |
| McQuaid Jesuit High School | 1800 S Clinton Ave, Rochester, NY 14618 | |
| Mendon, St. Catherine (Res) | 15 Mendon Ionia Rd, Mendon, NY 14506 | |
| Mercy Health & Rehabilitation Center. | 3 Saint Anthony St, Auburn, NY 13021 | |
| Monastery of Mary the Queen, Dominican Nuns of the Perpetual Rosary | 1310 W. Church St, Elmira, NY 14905 | |
| Monastery of Our Lady and St. Joseph, Carmelite Monastery | 1931 W. Jefferson Rd, Pittsford, NY 14534 | |
| Monroe Community College | 292 E. Squire Dr, Rochester, NY 14623 | |
| Montezuma, Catuga Co., St. Michael's | 8090 Scenic Route 90, Montezuma, NY 13117 | |

191

| | | |
|---|---|---|
| Moravia, Cayuga Co., St. Patrick's | 51 Grove St, Moravia, NY 13118-2421 | |
| Most Holy Redeemer - Res | 634 Hudson Ave, Rochester, NY 14621 | |
| Mother of Sorrows - Res | 5000 Mount Read Blvd, Rochester, NY 14612 | |
| Mother of Sorrows - School | 5000 Mount Read Blvd, Rochester, NY 14612 | |
| Mount Saviour Monastery | 231 Monastery Rd, Pine City, NY 14871-9785 | |
| Mt. Morris Livingston Co., St. Patrick's (Convent) | 33 Murray St, Mount Morris, NY 14510 | |
| Naples, Ontario Co., St. Januarius | 180 N Main St, Naples, NY 14512-9753 | |
| Nazareth Academy | 1001 Lake Ave, Rochester, NY 14613 | |
| Nazareth Academy Convent | 16 Lake View Park, Rochester, NY 14613 | |
| Nazareth Hall | 180 Raines Park, Rochester, NY 14613 | |
| Newark Valley, Tioga Co., St. John | 28 Rock St, Newark Valley, NY 13811-3610 | |

| | | |
|---|---|---|
| Newark, Wayne Co., St. Michael's (School) | 401 S Main St, Newark, NY 14513 | |
| Notre Dame High School | 1400 Maple Ave, Elmira, NY 14904 | |
| Notre Dame Retreat House | Box 342, Foster rd., Canandaigua, NY 14424 | |
| Nunda, Livingston Co., Holy Angles | 45 S Church St, Nunda, NY 14517 | |
| Office for Human Development | 750 West Main St, Rochester, NY 14611 | |
| Office of Family Life | 50 Chestnut St., Rochester, NY 14604 | |
| Office of Human Development - Rural | 136 Church St, Palmyra, NY 14522 | |
| Ontario, Wayne Co., St. Mary's of the Lake | 5823 Walworth Rd, Ontario, NY 14519-9511 | |
| Other Affiliates: Society of St. Peter the Apostle for Native Clergy. Missionary Union of the Clergy | 123 Hast Ave, Rochester, NY 14604 | |
| Our Lady of Good Counsel - Res | 75 Ernestine St, Rochester, NY 14619 | |
| Our Lady of Good Counsel - School (True North Rochester Preparatory Charter School) | 630 Brooks Ave, Rochester, NY 14619 | |
| Our Lady of Lourdes - Res | 150 Varinna Dr, Rochester, NY 14618 | |

21668734.v3
Case 2-19-20905-PRW, Doc 3183, Filed 06/10/25, Entered 06/10/25 16:48:52,
Description: Main Document , Page 196 of 391

| | | |
|---|---|---|
| Our Lady of Lourdes - School | 150 Varinna Dr, Rochester, NY 14618 | |
| Our Lady of Mercy - School | 1437 Blossom Rd, Rochester, NY 14610 | |
| Our Lady of Mercy High School | 1437 Blossom Rd, Rochester, NY 14610 | |
| Our Lady of Mt. Carmel (Italian) - Convent | 59 Ontario St, Rochester, NY 14605 | |
| Our Lady of Mt. Carmel (Italian) - Res | 53 Ontario St, Rochester, NY 14605 | |
| Our Lady of Perpetual Help - Res | 1089 Joseph Ave, Rochester, NY 14621 | |
| Our Lady of the Lake Catholic Community | 210 Keuka St, Penn Yan, NY 14527 | |
| Our Lady of the Snow (St. Joseph's Church) | 2667 Hamilton St, Weedsport, NY 13166 | |
| Our Lady of the Valley | 27 Erie Ave, Hornell, NY 14843 | |
| Our Lady of Victory (French, Belgian, Dutch) | 210 Pleasant St, Rochester, NY 14604 | |
| Our Lady Queen of Peace - Res | 601 Edgewood Ave, Rochester, NY 14618 | |

21668734.v3

| | | |
|---|---|---|
| Ovid, Seneca Co., Holy Cross | 7231 Main St, Ovid, NY 14521-9586 | |
| Owego, Tioga Co., St. Patrick's (Res) | 300 Main St, Owego, NY 13827 | |
| Owego, Tioga Co., St. Patrick's (School) | 309 Front St, Owego, NY 13827 | |
| Painted Post, Steuben Co., Immaculate Heart of Mary (Res) | 115 E High St, Painted Post, NY 14870 | |
| Palmyra, Wayne Co., St. Anne's(Res) | 136 Church St, Palmyra, NY 14522-1014 | |
| Peace of Christ Parish | 25 Empire Blvd, Rochester, NY 14609 | |
| Penfield, Monroe Co., Holy Spirit (Res) | 1355 Hatch Rd, Webster, NY 14580 | |
| Penfield, Monroe Co., St. Joseph's (Res) | 43 Gebhardt Rd. Penfield, NY 14526 | |
| Penfield, Monroe Co., St. Joseph's (School) | 35 Gebhardt Rd, Penfield, NY 14526 | |
| Penn Yan, Yates Co., St. Michael's (Res) | 312 Liberty St, Penn Yan, NY 14527 | |

195

| | | |
|---|---|---|
| Penn Yan, Yates Co., St. Michael's (School) | 210 Keuka St, Penn Yan, NY 14527 | |
| Perinton, St. John of Rochester Church (Res) | 18 Wickford Way, Fairport, NY 14450 | |
| Perinton, St. John of Rochester Church (School) | 10 Wickford Way, Fairport, NY 14450 | |
| Perkinsville, Steuben Co., Sacred Heart of Jesus | 11119 Chapel St, Perkinsville, NY 14529 | |
| Phelps, Ontario Co., St. Francis (Res) | 22 Church St, Phelps, NY 14532 | |
| Pittsford, Monroe Co., St. Louis' (Res) | 60 S Main St, Pittsford, NY 14534 | |
| Pittsford, Monroe Co., St. Louis' (School) | 11 Rand Pl, Pittsford, NY 14534 | |
| Pontifical Institute of the Religious Teachers Filippini | 909 Decatur St, Watkins Glen, NY 14891 | |
| Precious Blood - Res | 1205 Lexington Ave, Rochester, NY 14606. | |
| Precious Blood - School | 1205 Lexington Ave, Rochester, NY 14606. | |

| | | |
|---|---|---|
| Precious Blood House of Studies | 65 Highland Ave, Rochester, NY 14620 | |
| Priests' Eucharistic League | 5 Ernestine Street, Rochester, NY 14619 | |
| Residence of the Basilian Fathers (in charge of The Aquinas Institute) | 402 Augustine St., Rochester, NY 14613 | |
| Rochester Business Institute | 107 Lomb Memorial Dr, Rochester, NY 14623 | |
| Rochester Institute of Technology | 1 Lomb Memorial Dr, Rochester, NY 14623 | |
| Rush, Monroe Co., St. Joseph (Res) | 2024 Rush-Mendon Rd, Rush, NY 14543 | 1209 Rush West Rush Rd, Rush, NY 14543 |
| Sacred Heart | 90 Melrose Rd, Auburn, NY 13021 | |
| Sacred Heart Cathedral - Res and School | 296 Flower City Park, Rochester, NY 14615 | |
| Saint John of the Cross Monastery | P.O. Box 189, Waverly, NY 14892 | |
| Saints Isidore and Maria Torribia | 51 Maple St, Addison, NY 14801 | |
| Saints Mary and Martha Church | 299 Clark St, Auburn, NY 13021 | |
| School of the Holy Childhood (Day School) | 1150 Buffalo Rd, Rochester, NY 14624 | |
| Scipio, Cayuga Co., St. Bernard's | N/a | 2806 Center Rd, Scipio Center, NY 13147 |
| Scottsville, Monroe Co., Assumption of the Blessed Virgin Mary | N/a | 99 Main St, Scottsville, NY 14546 |

| | | |
|---|---|---|
| Seneca Falls, Seneca Co., St. Patrick's (Convent) | 87 W Bayard St, Seneca Falls, NY 13148 | |
| Seneca Falls, Seneca Co., St. Patrick's Res & School | 97 W Bayard St, Seneca Falls, NY 13148 | |
| Shortsville, Ontario Co., St. Dominic's | 97 W Main St, Shortsville, NY 14548 | |
| Sisters of St. Joseph Prayer Center | 428 Mt. Vernon Ave., Rochester, NY 14620 | |
| Sisters St. Joseph Motherhouse | 4095 East Ave, Rochester, NY 14610 | |
| Sodus, Wayne Co., Epiphany (Res) | 105 W Main St, Sodus, NY 14551 | |
| Soencerport, Monroe Co., St. john the evangelist (School) | 55 Martha St, Spencerport, NY 14559 | |
| Soldiers Home and Veterans Hospital | 76 Veterans Ave, Bath, NY 14810 | |
| Spanish Apostolate | 19 Watkins Terrance, Rochester, NY 14605 | |
| SS Peter and Paul's (German) | 736 W Main St, Rochester, NY 14611-2316 | |
| St. Agnes High School | 300 E River Rd, Rochester, NY 14623 | |

198

| | | |
|---|---|---|
| St. Aloysius' | 160 Van Anden St, Auburn, NY 13021 | |
| St. Alphonsus' | 85 E. Genesee St, Auburn, NY 13021 | |
| St. Ambrose - (Res) (Academy) and Convent | 31 Empire Blvd, Rochester, NY 14609 | |
| St. Andrew's | 892 Portland Ave, Rochester, NY 14621 | |
| St. Ann's Home for the Aged | 1500 Portland Ave, Rochester, NY 14621 | |
| St. Ann's. Nursing Home Co., Inc., (The Heritage) | 1450 Portland Ave, Rochester, NY 14621. | |
| St. Anne's - Res and School | 1600 Mount Hope Ave, Rochester, NY 14620 | |
| St. Anthony of Padua - Res | 60 Lorimer St, Rochester, NY 14608 | |
| St. Anthony of Padua - School | 46 Lorimer St, Rochester, NY 14608 | |
| St. Anthony of Padua Friary, Franciscan Friars, | Lakeview Ave, Watkins Glen, NY 14891 | |
| St. Augustine's | 410 Chili Ave, Rochester, NY 14611 | |
| St. Basil Novitiate (Basilian Fathers, Toronto) | 402 Augustine St, Rochester, NY 14613 | |
| St. Benedict | 95 N. Main St, Canandaigua, NY 14424 | |
| St. Benedict | PO Box 289, Watkins, Glen, NY 14891 | |

21668734.v3

| | | |
|---|---|---|
| St. Boniface's | 330 Gregory St, Rochester, NY 14620 | |
| St. Bridget's (Closed) | 14 Mark St, Rochester, NY 14605 | |
| St. Cecilias - Res | 2732 Culver Rd, Rochester, NY 14622-2818 | |
| St. Charles Borromeo - Res | 3003 Dewey Ave, Rochester, NY 14616 | |
| St. Christopher | 3350 Union St, PO Box 399 North Chili, NY 14514 | |
| St. Elizabeth Ann Seton Hamlin, Monroe, County | PO Box 149, Hamlin, NY 14464 | 1634 Lake Rd, Hamlin, NY 14464 |
| St. Elizabeth's Guild | 50 Chestnut St., Rochester, NY 14604 | |
| St. Felix / St. Francis Parish Clusters | 12 Hibbard Ave, Clifton Springs, NY 14432 | |
| St. Fidelis Friary | Box 1, Interlaken, NY 14847 | |
| St. Francis and St. Clare | 35 Center St, Waterloo, NY 13165 | 23 Center St, Waterloo, NY 13165 |
| St. Francis Assisi | 77 Whitney St, Rochester, NY 14611 | |
| St. Francis DeSales Deaf Association | 15 South St, Rochester, NY 14607 | |
| St. Francis of Assisi | 299 Clark St, Auburn, NY 13021 | |

200

21668734.v3

| | | |
|---|---|---|
| St. Francis Xavier | 300 Bay St, Rochester, NY 14605 | |
| St. Francis Xavier Cabrini (St. Vincent Depaul Society) | 124 Evergreen St, Rochester, NY 14605 | |
| St. George's (Lithuanian) | 545 Hudson Ave, Rochester, NY 14605 | |
| St. Helen's | 310 Hinchey Rd, Rochester, NY 14624 | |
| St. Hyacinth's | 61 Pulaski St, Auburn, NY 13021-1702 | |
| St. Hyacinth's - School | 59 Pulaski St, Auburn, NY 13021-1702 | |
| St. James - School | 123 Whittington Rd, Rochester, NY 14609 | |
| St. James' Mercy Hospital | 411 Canisteo St, Hornell, NY 14843 | |
| St. John Evangelist - Res | 549 Humboldt St, Rochester, NY 14610 | |
| St. John Evangelist - School | 150 Floverton St, Rochester, NY 14610 | |

21668734.v3

| | | |
|---|---|---|
| St. John Evangelist (Greece) - Res | 2400 W Ridge Rd, Rochester, NY 14626 | |
| St. John of Rochester of Perinton, NY | 8 Wickford Way, Fairport, NY 14450 | |
| St. Joseph Convent Residence for Retired Members | 4095 East Ave, Rochester, NY 14610 | |
| St. Joseph the Worker | 43 Dezeng St., Clyde, NY 14433 | |
| St. Joseph's Hospital | 55 E. Market St, Elmira, NY 14902. | |
| St. Joseph's Villa of Rochester, Inc. | 3300 Dewey Ave, Greece, NY 14616 | |
| St. Joseph's / Our Lady of Victory | 210 Pleasant St, Rochester, NY 14604 | |
| St. Jude the Apostle | 4100 Lyell Rd, Rochester, NY 14606 | |
| St. Lawrence | 1000 N Greece Rd, Rochester, NY 14626 | |
| St. Lucy's | 205 Edinburgh, Rochester, NY 14608 | |
| St. Luke the Evangelist | 13 North St, Genesee, NY 14454 | |
| St. Margaret Mary | 401 Rogers Pkwy, Rochester, NY 14617 | |

21668734.v3
Case 2-19-20905-PRW, Doc 3183, Filed 06/10/25, Entered 06/10/25 16:48:52, Description: Main Document , Page 205 of 391

| | | |
|---|---|---|
| St. Mark | 54 Kuhn Rd, North Greece, NY 14612 | |
| St. Mary Our Lady of the Hills | 8961 Main St, PO Box 725, Honeoye, NY 14471 | |
| St. Mary's Hospital | 89 Genesee St., Rochester, NY 14611 | |
| St. Mary's | 15 St. Mary's Place, Rochester, NY 14607 | |
| St. Mary's - Res | 15 Clark St, Auburn, NY 13021 | |
| St. Mary's - School (Tyburn Academy) | 17 Clymer St, Auburn, NY 13021 | 17 Clymer St, Auburn, NY 13021 |
| St. Matthew Catholic Church Society | PO Box 77, Livonia, NY 14487 | 6591 Richmond Mills Rd, Livonia, NY 14487 |
| St. Maximillian Kolbe | 5823 Walworth Rd, PO Box 499 Ontario, NY 14519 | |
| St. Michael's (German) | 869 N Clinton Ave, Rochester, NY 14605 | |
| St. Monica's | 38 Monica St, 14619 | 34 Monica St, Rochester, NY 14619 |
| St. Patrick's | Incomplete Address | 51 Goodway Dr S, Rochester, NY 14623 |

| | | |
|---|---|---|
| St. Paul's | 783 Hard Rd, Webster, NY 14580 | |
| St. Peters RC Parish | 6 Canandaigua St, Shortsville, NY 14548 | 12 Hibbard Ave, Clifton Springs, NY 14432 |
| St. Peter's RC Parish, Ontario County | 12 Hibbard Ave, Clifton Springs, NY 14432 | |
| St. Phillip Neri | 1776 Clifford Ave, Rochester, NY 14609 | |
| St. Pius X - Res | 3010 Chili Ave, Rochester, NY 14624 | |
| St. Salome - Res | 4282 Culver Rd, Rochester, NY 14622 | |
| St. Stanislaus (Polish) - Res | 34 Saint Stanislaus St, Rochester, NY 14621 | |
| St. Theodore | 168 Spencerport Rd, Rochester, NY 14606 | |
| St. Theresa's | 8 Mark St, Rochester, NY 14605 | |
| St. Thomas More - Res and School | 2617 East Ave, Rochester, NY 14610 | |

| | | |
|---|---|---|
| St. Thomas the Apostle - Res & School | 4536 Saint Paul Blvd, Rochester, NY 14617 | |
| Stanley, Ontario Co., St. Theresa's | 2050 W Main St, Stanley, NY 14561 | |
| State Reformatory | Elmira, Chemung Co | 1819 Davis St, Elmira, NY 14903 |
| State Teacher's College | 13 North St, Geneseo, NY 14454 | |
| Strong Memorial Hospital | 601 Elmwood Ave, Rochester, NY 14642 | |
| The Aquinas Institute | 1127 Dewey Ave, Rochester, NY 14613 | |
| The Cornell Newman Foundation, Ine. | Anabel Taylor Hall, Cornell Univ. 548 College Ave, Ithaca, NY 14853-4902 | |
| The Newman Oratory of Brockport, N. Y., Inc. | 101 Kenyon St, Brockport, NY 14420 | |
| The Parish of Mary, Mother of Mercy | PO Box 403 Interlaken, NY 14847, 3660 Orchard St., Interlaken, NY 14847 | |
| The Parish of Saint Martin De Porres, Livingston County, NY | 198 North Rd, Caledonia, NY 14423 | 99 Main St, Scottsville, NY 14546 |
| The Parish of St. Katherine Drexel | 52 Main St, Macedon, NY 14502 | |
| The Parish of the Holy Family, Monroe County NY | 4100 Lyell Rd, Rochester, NY 14606 | |
| The Parish of the Most Holy Name of Jesus, Chemung County, NY | 1010 Davis St, Elmira, NY 14901 | |

21668734.v3

| | | |
|---|---|---|
| Trinity Montessori School | 110 French Rd, Rochester, NY 14618 | |
| Trumansburg, Tompkins Co., St. James the Apostle (Res) | 17 Whig St, Trumansburg, NY 14886 | |
| University of Rochester | 500 Joseph C. Wilson Blvd., Rochester, NY 14627 | |
| University of Rochester School of Nursing. | 501 Joseph C. Wilson Blvd., Rochester, NY 14627 | |
| Van etten, Chemung Co., St. Pius the Tenth (Res) | 92 Main St, Van Etten, NY 14889 | |
| Veterans Hospital | 400 Fort Hill Ave, Canandaigua, NY 14424 | |
| Victor, Ontario Co., St. Patrick's (Res) | 115 Maple Ave, Victor, NY 14564 | |
| Vocations | 75 Fairport Rd, East Rochester, NY 14445 | |
| Waterloo, Seneca Co., St. Mary's (School) | 25 Center St, Waterloo, NY 13165 | |
| Watkins Glen, Schuyler Co., St. Mary of the Lake (Res) | 905 N. Decatur St, Watkins Glen, NY 14891 | |
| Waverly, Tioga Co., St. James' (School) | 503 Clark St, Waverly, NY 14892 | |

21668734.v3

| | | |
|---|---|---|
| Wayland, Steuben Co., St. Joseph's (Res) | 206 Fremont St, Wayland, NY 14572 | |
| Webster, Monroe Co., Holy Trinity Res & School | 1460 Ridge Rd, Webster, NY 14580-3619 | |
| Weedsport, Cayuga Co., St. Joseph's | 2667 Hamilton St, Weedsport, NY 13166-9765 | |
| Wells College | 170 Main St, Aurora, NY 13026-9719 | |
| West Webster, Monroe Co., St. Rita's | 1008 Maple Dr, West Webster, NY 14580 | |
| Wolcott, Wayne Co., Mary Magdalen | 15 Northrup Ave, Wolcott, NY 14590 | |

21668734.v3

## ATTACHMENT N

### Co-Defendants

| Entity and Address |
| --- |
| All Saints RC Parish (222 Dodge Ave., Corning, NY) |
| Aquinas Institute (1127 Dewey Ave., Rochester, NY 14613) |
| Archdiocese of New York (1101 First Ave, New York, NY 10022) |
| Assumption of the Blessed Virgin Mary (20 East Avenue Fairport, NY 14450) |
| Atlantic-Midwest Province of the School Sisters of Notre Dame (6401 N Charles St, Baltimore, MD 21212) |
| Avon High School (191 Clinton St, Avon, NY 14414) |
| Benjamin Franklin High School (950 Norton St, Rochester, NY 14621-3732) |
| Bishop Kearney High School (125 Kings Highway S, Rochester, NY 14617) |
| Blessed Sacrament Church (259 Rutgers St, Rochester, NY 14607) |
| Blessed Sacrament Church D/B/A Southeast Rochester Catholic Community (534 Oxford St., Rochester NY 14607) |
| Blessed Sacrament RC Church (330 Gregory St., Rochester NY) |
| Blessed Sacrament Roman Catholic Church of Elmira, N.Y. (604 Park Pl, Elmira, NY 14901) |
| Blessed Trinity & St. Patrick Parish (309 Front St., Owego, NY 13827) |
| Blessed Trinity Parish(80 Prince St, Rochester, NY 14605) |
| Boy Scouts of America (1325 W. Walnut Hill Lane., Irving, TX 75038) |
| Brothers of the Holy Cross of the Eastern Province of the United States of America, Inc (1101 St. Edward's Dr., Austin, TX) |
| Camp Stella Maris (4395 East Lake Rd., Livonia, NY 14487) |
| Cardinal Mooney Co-educational High School (800 Maiden Ln., Greece, NY) |
| Cardinal Mooney High School (No Address Found) |
| Catholic Charities of the Diocese of Rochester (1150 Buffalo Rd, Rochester, NY) |
| Catholic Youth Organization of Catholic Charities of the Diocese of Rochester (1150 Buffalo Rd., Rochester, NY 14624) |
| Christ the King (445 Kings Highway, Rochester, NY 14617) |
| Church of St. Mary's(155 State St. Corning, NY 14830) |

21668734.v3

| |
|---|
| Church of the Annunciation (1754 Norton St., Rochester, NY 14609) |
| Church of the Annunciation (545 Hudson Ave, Rochester, NY 14605) |
| Church of the Annunciation(125 Evergreen St. Rochester, NY 14605) |
| Church of the Annunciation(1760 Norton St, Rochester, NY 14609) |
| Church of the Assumption (20 East Ave, Fairport, NY 14450) |
| Church of the Good Shepherd (1130 Webster Rd, Webster, NY 14580) |
| Church of the Good Shepherd (3318 East Henrietta Rd., Henrietta, NY 14467) |
| Church of the Holy Spirit (1355 Hatch Rd., Webster, NY 14580) |
| Church of the Immaculate Conception (113 N Geneva St, Ithaca, NY 14850) |
| Church of the Transfiguration Parish (50 West Bloomfield Rd., Pittsford, NY 14534) |
| Church of Transfiguration (50 W Bloomfield Rd, Pittsford, NY 14534) |
| Congregation of Christian Brothers (260 Wilmot Rd, New Rochelle, NY 10804-1526) |
| Corpus Christi School (534 Oxford St., Rochester, NY 14607) |
| De Sales High School (90 Pulteney St, Geneva, NY 14456) |
| DePaul Adult Care Communities Inc. (1931 Buffalo Rd., Rochester, NY 14624) |
| Diocese of Rochester (1150 Buffalo Rd, Rochester, NY) |
| Diocese of Rochester Tribunal and Marriage Tribunal (1150 Buffalo Rd, Rochester, NY 14624) |
| Gaurdian Angels (2601 East Henrietta Rd., Rochester, NY 14623) |
| Good Shepard Parish and School (3318 E Henrietta Rd, Henrietta, NY 14467) |
| Good Shepherd Parish and School (3318 E Henrietta Rd, Henrietta, NY 14467) |
| Guardian Angels (2601 East Henrietta Rd., Rochester, NY 14623) |
| Holy Apostles Church (7 Austin St, Rochester, NY 14606-1707) |
| Holy Cross Church (4492 Lake Ave., Rochester, NY 14612) |
| Holy Family Catholic Community Inc. (206 Fremont St., Wayland, NY) |
| Holy Family Parish (415 Ames St., Rochester, NY 14611) |
| Holy Ghost Church and School (220 Coldwater Rd., Rochester, NY 14624) |
| Holy Name of Jesus of Rochester, New York (St. Martin's Way, Rochester, NY 14616) |

| |
|---|
| Holy Rosary Church and School (414 Lexington Ave, Rochester, NY 14613) |
| Holy Rosary Church and School (414 Lexington Ave, Rochester, NY) |
| Holy Trinity (1460 Ridge Rd, Webster, NY 14580) |
| Hornell Senior High School (134 Seneca St, Hornell, NY 14843) |
| Immaculate Conception / St. Bridget Church Society (445 Frederick Douglass St., Rochester, NY) |
| Immaculate Heart of Mary School (201 Boulevard, Scarsdale, NY 10583) |
| James Monroe High School (164 Alexander St, Rochester, NY 14607) |
| Jesuit Fathers and Brothers "The NY Province of the Society of Jesus" (39 E. 83rd St., New York, NY 10028) |
| Jesuit Fathers and Brothers (39 East 83 Street New York, NY 10028) |
| Kateri Tekakwitha RC Parish (445 Kings Highway, Rochester, NY 14617) |
| Kateri Tekakwitha Roman Catholic Parish (445 Kings Hwy. S., Rochester, NY 14617) |
| Lady of Mount Carmel (53 Ontario St, Rochester, NY 14605) |
| Marianne Cope Roman Catholic Parish (2601 East Henrietta Rd., Rochester, NY 14623) |
| Marianne Cope Roman Catholic Parish (3318 East Henrietta Rd., Henrietta, NY) |
| McQuaid Jesuit High School (1800 Clinton Ave. S., Rochester, NY 14618) |
| McQuaid Jesuit High School (1800 S Clinton Ave, Rochester, NY 14618) |
| Most Holy Name of Jesus (1010 Davis St., Elmira, NY 14901) |
| Most Holy Redeemer Church (Hudson Ave., Rochester, NY) |
| Most Precious Blood Church (Formerly 219 Stenson St., Rochester, NY) (296 Flower City Park, Rochester, NY) |
| Nativity of the Blessed Virgin Mary (152 Main St., Brockport, NY 14420) |
| Nazareth Elementary School (311  Flower City Park, Rochester,  NY 14615) |
| Nazareth Hall High School (180 Raines Park, Rochester, NY 14613) |
| Nester St. Group Home (Illegible) (260 Nester St. Rochester, NY 14621) |

| |
|---|
| Northeastern Catholic Jr. High School (27 Crittenden St, Newark, NJ 07104) |
| Northeastern Catholic Junior High School (1150 Buffalo Rd, Rochester, NY 14624) |
| Notre Dame High School of the RC Diocese of Rochester (1400 Maple Avenue, Elmira, NY 14904) |
| Our Lady of Good Counsel School and Church (75 Ernestine St, Rochester, NY 14619) |
| Our Lady of Mercy Church (489 Stone Rd, Rochester, Ny 14616) |
| Our Lady of Mercy School for Young Women, Becket Hall, Rochester, NY (1437 Blossom Rd, Rochester, NY 14610) |
| Our lady of Peace Roman Catholic Parish (130 Exchange St, Geneva, NY 14456-1804) |
| Our Lady of Perpetual Help (1089 Joseph Ave., Rochester, NY 14621) |
| Our Lady of the Valley (27 Erie Ave., Hornell, NY 14843) |
| Park Ridge Hospital (1555 Long Pond Rd, Rochester, NY 14626) |
| Roman Catholic Dicoese of Rockville Center New York (50 North Park Ave, Rockville Center, NY) |
| Roman Catholic Dicoese of Syracuse New York (240 East Onongada St, Syracuse, NY) |
| Roman Catholic Diocese of Albany New York (40 North Main Ave, Albany, NY) |
| Roman Catholic Diocese of Brooklyn (310 West Prospect Park West, Brooklyn, NY) |
| Roman Catholic Diocese of Buffalo New York (795 Main Street, Buffalo, NY) |
| Roman Catholic Diocese of Ogdensburg New York (622 Washington St, Ogdenburg, NY) |
| Roman Catholic Parish of St. Frances Xavier Cabrini, Rochester NY (Formerly St. Andrew's Roman Catholic Church of Rochester, New York.) (124 Evergreen St., Rochester, NY 14605) |
| Sacred Heart Cathedral (296 Flower City Park, Rochester, NY 14615) |
| Sacred Heart of Jesus Church and School (11119 Chapel St., 659 NY route 7, Perkinsville, NY 14529) |
| Saint Augustine's Church Rochester, NY (410 Chili Ave, Rochester, NY 14611) |
| Saint Joseph's Villa (3300 Dewey Ave, Rochester, NY 14616) |

21668734.v3

| |
|---|
| Saint Monica's Church (34 Monica St, Rochester, NY 14619) |
| Seneca Waterways Council, BSA (2320 Brighton - Henrietta TL Rd., Rochester, NY 14623) |
| Siena Catholic Academy (2617 East Ave, Rochester, NY 14610) |
| Sister's of St. Joseph of Rochester (150 French Rd., Rochester, NY 14618) |
| Society of the Precious Blood, Atlantic Province (1261 Highland Avenue, Rochester, NY) |
| Southeast Rochester Catholic Community (330 Gregory St., Rochester NY) |
| Spiritus Christi Church (121 Fitzhugh St N, Rochester, NY 14614) |
| St. Agnes Aquinas High School (1127 Dewey Ave, Rochester, NY 14613) |
| St. Agnes, Paul and Rose Catholic Church and Parish (96 Prospect St., Avon, NY 14414) |
| St. Alphonsus (85 East Genesee St., Auburn, NY 13021) |
| St. Ambrose Church and School (31 Empire Blvd, Rochester, NY 14609-4335) |
| St. Andrew's Catholic Church (901 Portland Ave, Rochester, NY 14621) |
| St. Ann Church (27 Erie Ave, Hornell, NY 14843) |
| St. Anne's Church (52 Main St., Macedon, NY) (Formerly 136 Church St, Palmyra, NY 14522-1014) |
| St. Anthony's Church of Elmira (911 N Main St, Elmira, NY 14901) |
| St. Augustine's Church (410 Chili Ave, Rochester, NY 14611) |
| St. Benedict (95 N Main St, Canandaigua, NY 14424) |
| St. Bernard (Cemetery) in Scipio, NY (2885 Center Rd, Scipio Center, NY 13147-4129) |
| St. Bernard's School of Theology & Ministry (120 French Rd., Rochester, NY 14618) |
| St. Bridget Church (445 Fredick Douglas St., Rochester, NY) |
| St. Bridget's Church (445 Frederick Douglass St., Rochester, NY) (Formerly 175 St. Bridget's Dr., Rochester, NY) |
| St. Cecilia's Church of Rochester, N.Y (2732 Culver Rd, Rochester, NY 14622) |
| St. Charles Borromeo (3003 Dewey Ave, Rochester, NY 14616) |
| St. Christopher's Church (3350 Union St, North Chili, NY 14514) |

21668734.v3

| |
|---|
| St. Frances Xavier Cabrini (124 Evergreen St., Rochester, NY 14605) |
| St. Francis of Assisi Church ( 77 Whitney St., Rochester, NY) (Parish Closed) |
| St. Francis Xavier Church (34 Teresa St, Rochester, Ny 14605) |
| St. Gregory's Church (3806 Union St, Marion, NY 14505) |
| St. Helen's Church (310 Hinchey Rd, Rochester, NY 14624) |
| St. Ignatius (West Pine St At Grand St., Hornell, NY 14843) |
| St. Ignatius Loyola (343 Canisteo St., Hornell, NY) |
| St. James (109 Brockley Rd., Rochester, NY 14609) |
| St. James (Waterly, NY)(503 Clark St, Waverly, NY 14892) |
| St. James Mercy Hospital (7329 Seneca Road North, Hornell, New York) |
| St. Januarius (180 N Main St, Naples, NY 14512-9753) |
| St. Jerome's (207 Garfield St, East Rochester, NY 14445) |
| St. John Evangelist (55 Martha St, Spencerport, NY 14559) |
| St. John Evangelist (Greece) (2400 W Ridge Rd, Rochester, NY 14626) |
| St. John the Evangelist Church (114 Sodus St., Clyde, NY) |
| St. Joseph Catholic Church and School (208 Fremont St, Wayland, NY) |
| St. Joseph the Worker Parish (43 West DeZeng St., Clyde, NY) |
| St. Joseph the Worker RC Parish (114 Sodus St., Clyde, NY) |
| St. Joseph's Church (210 Pleasant St, Rochester, NY 14604-1326) |
| St. Joseph's School (39 Gebhardt Rd, Penfield, NY 14526) |
| St. Joseph's Villa (The Villa of Hope) (3300 Dewey Ave., Rochester, NY 14616) |
| St. Joseph's Villa of Rochester (3300 Dewey Ave, Rochester, NY 14616) |
| St. Lawrence Church of Rochester (1000 North Greece Rd., Rochester, NY) |
| St. Leo the Great Catholic Church (110 Old Hojack Lane, Hilton, NY 14468) |
| St. Leo the Great Catholic Church (167 Lake Ave, Hilton, NY 14468) |
| St. Louis Church (64 South Main St., Pittsford, NY) |
| St. Luke the Evangelist RC Church Society of Livingston County (13 North St., Geneseo, NY 14454) |
| St. Margaret Mary Church (1110 Pennsylvania Ave, Apalachin, NY 13732) |

| |
|---|
| St. Margaret Mary Church (445 Kings Highway South, Rochester, NY 14617) |
| St. Mary of the Assumption (99 Main St, Scottsville, NY 14546) |
| St. Mary of the Assumption Church of Auburn, NY |
| St. Mary's (222 Dodge Ave., Corning, NY) |
| St. Mary's (4 Avon Geneseo Rd., Geneseo, NY 14454) |
| St. Mary's (40 Elizabeth St, Dansville, NY 14437) |
| St. Mary's Catholic Church German of Dansville (206 Fremont St., Wayland, NY) |
| St. Mary's Catholic Church German of Dansville, NY (40 Elizabeth St, Dansville, NY 14437) |
| St. Mary's of the Lake (5823 Walworth Rd, Ontario, NY 14519) |
| St. Mary's of the Lake RC Church Society of Watkins (905 North Decatur St., Watkins Glen, NY |
| St. Mary's Parish (95 N Main St, Canandaigua, NY 14424) |
| St. Michael Church (401 South Main St, Newark, NY 14513) |
| St. Michael School (320 South Main St, Newark, NY 14513) |
| St. Michael's Church (43 West DeZeng St., Clyde, NY) |
| St. Michael's Church (869 Clinton Ave. North, Rochester, NY 14605) |
| St. Patrick (115 Maple Ave, Victor, NY 14564) |
| St. Patrick Catholic Church (302 Main St., Owego, NY 13827) |
| St. Patrick Catholic Church and School (309 Front St., Owego, NY 13827) |
| St. Patrick Parish (300 Main St., Owego, NY 13827) |
| St. Patrick Parish (51 Goodway Dr S, Rochester, NY 14623) |
| St. Patrick's (604 Park Place, Elmira, NY) |
| St. Paul of the Cross Church (31 Monroe St, Honeoye Falls, NY 14472) |
| St. Philip Neri (1782 Clifford Ave Rochester, NY 14609 |
| St. Philip Neri Church and School (1776 Clifford Ave., Rochester, NY) |
| St. Pius X (3010 Chili Ave., Rochester, NY 14624) |
| St. Rita's Church and Parish (1008 Maple Drive, Webster, NY 14580) |
| St. Salome (4282 Culver Rd., Rochester, NY 14622) |
| St. Salome Church and School (445 Kings Highway S, Rochester, NY 14617) |
| St. Stanislaus Kostka Church Rochester (34 Saint Stanislaus St, Rochester, NY 14621) |

| |
|---|
| St. Stephen's Parish (48 Pulteney Street, Geneva, NY 14456) |
| St. Theodore Catholic Church and School (1150 Buffalo Rd., Rochester, NY 14624) |
| St. Theresa RC Church (4040 Flint Rd., Stanley, NY 14561) |
| St. Thomas More Church (2617 East Ave, Rochester, NY 14610) |
| St. Thomas the Apostle (4536 Saint Paul Blvd, Rochester, NY 14617) |
| St. Vincent de Paul Church (222 Dodge Ave., Corning, NY) |
| The Cathedral Community Church of Rochester, NY (296 Flower City Park, Rochester, NY) |
| The Church of St. Francis De Sales (17 Elmwood Ave, Geneva, NY 14456) |
| The Church of St. Margaret Mary of Irondequoit, N.Y. (401 Rogers Pkwy, Rochester, NY 14617) |
| The Church of the Annunciation (1760 Norton St, Rochester, NY 14609) |
| The Church of the Good Shepherd (3318 E Henrietta Rd, Henrietta, NY 14467) |
| The Church of the Holy Ghost (220 Coldwater Rd, Rochester, NY 14624) |
| The Parish of Most Holy Name of Jesus, Chemung County, NY |
| The Parish of St. Katherine Drexel (52 Main St., Macedon, NY 14502) |
| The Parish of the Holy Family (4100 Lyell Ave., Rochester, NY 14606) |
| YMCA (Broome County) (740 Main St, Johnson City, NY 13790) |

215

# ATTACHMENT O

## Reduction Clause

12.5.2  If, for any reason any court does not recognize the channeling of the Insurer Contribution Claims of Non-Settling Insurers to the Trust, or such Insurer Contribution Claims are not channeled for any reason, then the following shall apply:

a.  Settling Insurers shall retain their Insurer Contribution Claims; *provided, however*, that:

(i)  Settling Insurers shall not pursue any Insurer Contribution Claim against any Non-Settling Insurer, (A) that asserts an Insurer Contribution Claim solely against the Trust; (B) whose Insurer Contribution Claim is satisfied and extinguished entirely by the application of this Section 12.5, or (C) that does not assert an Insurer Contribution Claim against them;

(ii)  If a Non-Settling Insurer asserts its Insurer Contribution Claim only against the Trust, then Settling Insurers shall assign any Insurer Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Insurer Contribution Claims against such Non-Settling Insurer;

(iii)  If a Non-Settling Insurer releases its Insurer Contribution Claims, if any such exist, that it may have against Settling Insurers, then such released Settling Insurers shall release their Insurer Contribution Claims against such releasing Non-Settling Insurer.

b.  In any Action, including the Insurance Coverage Adversary Proceeding, involving the Diocese, a Participating Party, or the Trust (collectively, the "Alleged Insured") or an Abuse Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert an Insurer Contribution Claim against a Settling Insurer (that Settling Insurer, a "Contribution Target"), then any judgment or award obtained by such Alleged Insured or Abuse Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that the Contribution Target is liable to pay such Non-Settling Insurer as a result of its Insurer Contribution Claim (the "Reduction Amount"), so that the Non-Settling Insurer's Insurer Contribution Claim is thereby satisfied and extinguished entirely. In any Action involving an Alleged Insured or Abuse Claimant against a Non-Settling Insurer, where the Contribution Target is not a party, such Alleged Insured or Abuse Claimant shall obtain a finding from that court or arbitrator(s), as applicable, establishing the Reduction Amount before obtaining an entry of judgment against such Non-Settling Insurer. A Contribution Target shall upon request and at the sole expense of the Trust cooperate in good faith with the Diocese, Reorganized Diocese, and/or the Trust (as applicable) to take reasonable steps to aid the Diocese, Reorganized Diocese and/or the Trust in defending against the Insurer Contribution Claim. In the absence of such good faith cooperation

216

by the Contribution Target, the Reduction Amount shall be zero. In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Insurer Contribution Claim, then such Non-Settling Insurer shall fully reimburse the Contribution Targets their costs and expenses, including legal fees incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the court.

c.  If an Alleged Insured or Abuse Claimant and a Non-Settling Insurer enter into an agreement settling one or more Abuse Claims, such agreement shall include a provision whereby such Non-Settling Insurer releases its Insurer Contribution Claims against Settling Insurers so long as Settling Insurers release their Insurer Contribution Claims against such Non-Settling Insurer. If such settlement agreement fails to include such a release provision, and the Non-Settling Insurer has asserted, asserts, or could assert an Insurer Contribution Claim against Settling Insurers, then any settlement amount in such settlement agreement shall be deemed automatically reduced by the Reduction Amount. In such event, the settling parties shall obtain a finding from the applicable court or arbitrator(s) of the Reduction Amount. If (i) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (ii) such a reduction is not otherwise made as described above, then the Insurer Contribution Claim by the Non-Settling Insurer against the Contribution Target shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Insurer Contribution Claim is Filed. A Contribution Target upon request and at the sole expense of the Trust shall cooperate in good faith with the Diocese, Reorganized Diocese, and/or the Trust (as applicable) to take reasonable steps to aid the Diocese, Reorganized Diocese and/or the Trust in defending against the Insurer Contribution Claim. In the absence of such good faith cooperation by the Contribution Target with respect to the Insurer Contribution Claim against it, the Reduction Amount shall be zero. In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Insurer Contribution Claim, then such Non-Settling Insurer shall fully reimburse the Contribution Targets their costs and expenses, including legal fees incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the court.

d.  If a Non-Settling Insurer asserts an Insurer Contribution Claim against any Settling Insurer, and

(i)  the Trust fully indemnifies the Settling Insurer, then the Settling Insurer shall assign its Insurer Contribution Claim to the Trust; or

(ii)  the Trust partially, but not fully, indemnifies the Settling Insurer for such Claim, then the Settling Insurer shall retain its Insurer Contribution Claims and may assert those Claims against the Non-Settling Insurer asserting the Insurer Contribution Claim against the Settling Insurer. Any recovery by the Settling Insurer in excess of the amount necessary to satisfy the Trust's full indemnity obligation plus the Settling Insurer's litigation costs shall be turned over to the Trust.

217

e.  Nothing contained in this Section 12.5.2 shall be interpreted to require the Trust to maintain or allocate a specific reserve for the costs set forth in this Section.

f. The above procedures shall bind, and inure to the benefit of, all Settling insurers.

21668734.v3

## ATTACHMENT P

### Claimants Who Filed Abuse Actions With No Corresponding Proof of Claim

| No. | Index Number (if available) | Attorney Address |
|---|---|---|
| 1 | E2023012577 | 560 W. 149th St. Apt 2E New York, NY 10031 |
| 2 | 2023-0006391 | 110 East Broward Boulevard Suite 1530 Fort Lauderdale, Florida 33301 |

219

**Exhibit D**

First State Settlement Agreement

21815986.v2

## <u>SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK</u>

This Settlement Agreement, Release, and Policy Buyback ("**Settlement Agreement**") is hereby made by, and between, and among The Diocese of Rochester (the "**Diocese**" as further defined in Section 1.1.28 below), the other Diocese Parties (as defined in Section 1.1.29 below), and First State Insurance Company ("**First State**"). First State, the Diocese, and the other Diocese Parties collectively are the "**Parties**" and each a "**Party**" to this Settlement Agreement.

## RECITALS:

WHEREAS, on September 12, 2019 (the "**Petition Date**"), the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York (the "**Bankruptcy Court**") pending under Case No. 19-20905 (the "**Bankruptcy Case**");

WHEREAS, certain Persons (as defined in Section 1.1.57 below) have asserted or may hold Claims, including Abuse Claims, against the Diocese Parties (all as defined below);

WHEREAS, First State issued, allegedly issued, or may have issued the Diocese Policies (as defined in Section 1.1.30 below) providing certain coverage to the Diocese Parties;

WHEREAS, asserted disputes between the Diocese and First State have arisen, and assertable disputes between the Diocese Parties and First State may arise in the future, concerning the scope and nature of First State's responsibilities, if any, to provide coverage to the Diocese Parties for Abuse Claims under the Diocese Policies (the "**Coverage Claims**");

WHEREAS, the Diocese Parties and First State, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Claims and all other disputes between and among them and to release First State from any further obligations under the Diocese Policies;

WHEREAS, through this Settlement Agreement, the Diocese Parties intend to provide the First State Released Parties (each as defined below) with the broadest possible release of all Claims with respect to the Diocese Policies; and

WHEREAS, through this Settlement Agreement, as part of the compromise and resolution of the Coverage Claims, the Diocese Parties and First State also wish to effect a sale, pursuant to § 363(b), (f), and (m) of the Bankruptcy Code of the Diocese Policies issued or allegedly issued by First State, along with the Extra-Contractual Claims (as defined below) of the Diocese Parties, to provide the First State Released Parties with the broadest possible release and buyback with respect to the Diocese Policies, resulting in the First State Released Parties having no obligations now or in the future to the Diocese Parties, or any of their creditors with respect to the Diocese Policies.

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Settlement Agreement, the sufficiency of which is hereby

acknowledged, and intending to be legally bound subject to the approval of the Bankruptcy Court pursuant to Section 2 below, the Parties hereby agree as follows:

## 1. DEFINITIONS

1.1     As used in this Settlement Agreement (as defined above), the following terms shall have the meanings set forth below.

1.1.1   "**Abuse**" means any actual or alleged:

a.      sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, hebephilia, ephebophilia, lascivious behavior, undue familiarity, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, any other sexual misconduct, or any conduct constituting a sexual offense, incest, or use of a child in a sexual performance (as such terms are defined in the New York Penal Law); or

b.      non-sexual assault, battery, corporal punishment and other non-sexual nonsexual acts of physical, psychological, mental or emotional abuse, humiliation or intimidation (including physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature), and all other non-sexual tortious behavior of any type whatsoever.

For the avoidance of doubt, "Abuse" also includes (a) any conduct which would constitute a sexual offense as defined in article one hundred thirty of the New York Penal Law, incest as defined in section 255.27, 255.26 or 255.25 of the New York Penal Law, or the use of a child in a sexual performance as defined in section 263.05 of the New York Penal Law, or a predecessor statute that prohibited such conduct at the time of the act; and (b) sexually-related injuries, including those stemming from the use of photography, video, or digital media.

1.1.2   "**Abuse Claim**" means any Claim that has been or could be asserted against the Diocese or any Participating Party that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or any other relief under any theory of liability, law, or equity whatsoever, including contribution, indemnity, vicarious liability, *respondeat superior*, conspiracy, fraud (including fraud in the inducement), any negligence-based or employment-based theory (including negligent hiring, supervision, retention, or misrepresentation), any other theory based upon misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory (including any theory based upon public policy) or any act or failure to act by the Diocese or any Participating Party, or any other Entity for whose acts or failures to act the Diocese or any Participating Party is or was alleged to be responsible.

For the avoidance of doubt, "Abuse Claim" includes (a) all Unknown Abuse Claims, Child Abuse Claims (or any other Claim or cause of action described in the CVA) and Adult

2

Abuse Claims (or any other Claim or cause of action described in the ASA) against the Diocese or any Participating Party and (b) any Claim against the Diocese or any Participating Party that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the Petition Date is barred by any applicable statute of limitations, and in each case, irrespective of whether (x) such Claims also involve the conduct of Joint Tortfeasors, (y) such Claims arise under, or were revived pursuant to, the CVA, ASA, GMVA, or any future reviver law, statute, or binding precedential decision passed or issued on or after the Bankruptcy Plan Effective Date, or (z) a proof of claim has been Filed or an Abuse Action has been commenced with respect to such Claim.

1.1.3  "**Abuse Claimant**" means the holder of an Abuse Claim, the estate of a deceased individual who held an Abuse Claim, the personal executor or personal representative of the estate of a deceased individual who held an Abuse Claim, or the assignee of any of the foregoing, as the case may be.  For the avoidance of doubt, the holder of an Unknown Abuse Claim and/or Filed Late Claim is an Abuse Claimant.

1.1.4  "**Abuse Action**" means a lawsuit asserting an Abuse Claim against the Diocese or any Participating Party.

1.1.5  "**Adult Abuse Claim**" means a Claim alleging Abuse perpetrated at a time when the Abuse Claimant was eighteen (18) years of age or older.

1.1.6  **[RESERVED]**

1.1.7  "**Approval Motion**" means the motion filed in the Bankruptcy Court seeking approval of this Settlement Agreement as described in Section 2 of this Settlement Agreement.

1.1.8  "**Approval Order**" or "**Sale Order**" means the order granting the Approval Motion described in Section 2 of this Settlement Agreement and providing the relief described in Section 2 of this Settlement Agreement.

1.1.9  "**ASA**" means the New York Adult Survivors Act, which was codified in the New York Civil Practice Law & Rules 214-j.  The Adult Survivors Act created a one-year window from November 24, 2022 to November 23, 2023 for the revival of previously time-barred civil claims concerning Abuse that occurred after the claimant reached eighteen (18) years of age.

1.1.10  "**Banking Day**" means any day on which banks in New York City, New York (USA) are open to the public for banking functions.

1.1.10  "**Bankruptcy Case**" has the meaning set forth in the Recitals.

1.1.11  "**Bankruptcy Court**" has the meaning set forth in the Recitals, *provided*, *however*, that to the extent that the Standing Order of Reference Re: Title 11 entered by the District Court on February 29, 2012 is withdrawn with respect to any proceeding arising from or related to the Bankruptcy Case, any reference in this Agreement to the Bankruptcy Court shall also include said District Court.

1.1.12 "**Bankruptcy Plan**" or "**Plan**" refers to the Eighth Amended Chapter 11 Plan of Reorganization for the Diocese (and all exhibits thereto) [Docket Nos. 3026 and 2977, respectively] and any and all modifications or amendments thereto that are acceptable to First State, as approved and confirmed by Final Order of the Bankruptcy Court; it being understood that the Plan, which is at Docket No. 3026, is acceptable to First State.

1.1.13 "**Bankruptcy Plan Effective Date**" means the date upon which a Bankruptcy Plan approved by the Bankruptcy Court that contains terms and conditions consistent with those required by this Settlement Agreement becomes effective.

1.1.14 "**Barred Claim**" means a Channeled Claim (specifically including, but not limited to, all Abuse Claims, Medicare Claims, and Extra-Contractual Claims), Non-Consenting Class 4 Claims, Coverage Claim, Tort Action, Unknown Abuse Claim, Related Insurance Claim, Insurer Contribution Claim, Inbound Contribution Claim, Direct Action Claim, and every other Claim that (a) is under, arises out of, relates (directly or indirectly) to, or connects in any way with an Abuse Claim or any of the Diocese Policies or (b) is otherwise released herein. For the avoidance of doubt, "Barred Claim" includes all Claims exempted from the injunctions (including the Channeling Injunction) set forth in the Plan.

1.1.15 "**Channeled Claim**" means any Abuse Claim, Inbound Contribution Claim, Medicare Claim, Extra-Contractual Claim, or any other Claim against any Protected Party arising from or related in any way to an Abuse Claim, or any of the Settling Insurer Policies, whenever and wherever arising or asserted, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including without limitation all Claims by way of direct action, subrogation, contribution, indemnity, alter ego, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy, *provided, however*, that "Channeled Claims" shall not include any Claim exempted from the injunctions set forth in Sections 12.2.1 and 12.3 of the Plan pursuant to Sections 12.2.2.a and 12.2.2.b of the Plan. For the avoidance of doubt (i) a Channeled Claim includes any Claim against a Protected Party based on allegations that it is an alter ego of a Person that is not a Protected Party or that the Protected Party's corporate veil should be pierced on account of Claims against a Person that is not a Protected Party or based on any other theory under which the legal separateness of any Person and any other Person may be disregarded to impose liability for a Claim on either such Person, and (ii) notwithstanding anything to the contrary herein, Channeled Claims do not include any Claims to the extent they are asserted against Excluded Parties or Non-Settling Insurers; *provided, however*, any Claims that assert liability against an Excluded Party or Non-Settling Insurer in conjunction with a Protected Party shall be Channeled Claims as to such Protected Party. Solely for purposes of this definition of Channeled Claims, an "Excluded Party" is (1) any individual who personally committed an act of Abuse that resulted or would result in an Abuse Claim against any Protected Party, but solely in his or her capacity as an abuser; (2) the Holy See; and/or (3) any religious order or other entity that is an affiliate of, or associated with the Roman Catholic Church (other than the Diocese, the Reorganized Diocese, the Participating Parties and their respective

4

predecessors, successors, assigns, and present and former shareholders, members, affiliates, subsidiaries, employees, agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such); *provided, however*, that any Person who has actually or allegedly acquired or been assigned the right to make a claim for coverage under any of the Diocese Policies is not an "Excluded Party" for purposes of this definition of Channeled Claims.

1.1.16 "**Channeling Injunction**" has the meaning set forth in Section 2.2.2.

1.1.17 "**Child Abuse Claim**" means a Claim alleging Abuse which occurred at a time when the Abuse Claimant was less than eighteen 18 years of age.

1.1.18 "**Claim**" means a "claim" as that term is defined in section 101(5) of the Bankruptcy Code and includes, without limitation: any claim, Action, assertion of right, complaint, cross-complaint, counterclaim, liabilities, obligations, rights, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, Lien, encumbrances, indemnity, equitable indemnity, right of subrogation, equitable subrogation, defense, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorney's fee, obligation, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, proof of claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or liability whatsoever, whether past, present or (to the extent it arises prior to the Effective Date) future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty, under the Bankruptcy Code, or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extracontractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.

1.1.19 "**Claims Bar Date**" means August 13, 2020, at 11:59 p.m. (Eastern time), the deadline by which proofs of claim forms for prepetition Claims, including Abuse Claims, were required to be Filed against the Diocese pursuant to the Bankruptcy Court's Order entered on February 25, 2020 [Docket No. 425].

1.1.20 "**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the United States Trustee pursuant to section 1102 of

21553557.v3

the Bankruptcy Code, as constituted from time to time, but does not mean the members of the Committee in their individual capacities.

1.1.21 "**Conditional Payment**" means any payment made to an Abuse Claimant under the MMSEA, including any payment by a Medicare Advantage Organization (as defined in the MSPA).

1.1.22 "**Consenting Class 4 Claim**" means an Abuse Claim held by a Consenting Class 4 Claimant.

1.1.23 "**Consenting Class 4 Claimant**" means any holder of an Abuse Claim who has consented to having their Claim(s) against the Protected Parties released and enjoined under the Channeling Injunction as set forth in the Plan.

1.1.24 "**Coverage Claims**" has the meaning set forth in the Recitals and further includes any Claim under or relating to the Diocese Policies or the rights and obligations thereunder, or the breach thereof, including any Claim seeking insurance coverage.

1.1.25 "**Covered Party**" means, collectively, the following Persons: (a) the Debtor and the Reorganized Diocese, as applicable; (b) the Participating Parties; (c) any other Person that is a "Named Assured" or "named insured" under the Diocese Policies and all other Persons that may claim to be an "Assured," an "Additional Assured," an "insured," or otherwise entitled to insurance coverage under the Diocese Policies, including any Other Catholic Organization; and (d) with respect to each of the foregoing Persons in clauses (a) through (c), such Persons' predecessors, successors, assigns, subsidiaries, affiliates, current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, advisory board members, advisory committee members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, and nominees.

1.1.26 "**CVA**" means New York Child Victim's Act, which was codified in the New York Civil Practice Law & Rules 214-g.

1.1.27 "**Diocese**" means The Diocese of Rochester, which is the diocesan corporation formed pursuant to N.Y. Religious Corporation Law § 90, and its bankruptcy estate pursuant to section 541 of the Bankruptcy Code, together with the public juridic person of the Roman Catholic Diocese of Rochester, as now constituted or as it may have been constituted, and their respective predecessors, successors, and assigns.

1.1.28 "**Diocese Parties**" means, collectively, (a) the Diocese; (b) the Reorganized Diocese; (c) Participating Parties; (d) any (i) Other Catholic Organization and (ii) other Person covered or alleged to be covered under the Diocese Policies, in each of clause (i) and (ii), with respect to which the Diocese has authority to release Claims by a Final Order pursuant to sections 105(a) or 363(f) of the Bankruptcy Code or confirming a chapter 11 plan; and (e) each of their respective Related Persons, including without limitation the past,

6

present, and future holding companies, merged companies, related companies, divisions, and acquired companies of the foregoing Persons, but excluding, however, any Excluded Parties.

1.1.29 "**Diocese Policies**" means any and all known and unknown contracts, binders, certificates, or policies of insurance, in effect on or before the Settlement Agreement Effective Date, that were issued, allegedly issued, or may have been issued by First State or any of its predecessors to or for the benefit of, or that otherwise actually, allegedly, or potentially insure one or more of the Diocese Parties. The "Diocese Policies" include, but are not limited to, the policy set forth on **Schedule 2** hereto.

1.1.30 "**Direct Action Claim**" means any Claim by any Entity against First State identical or similar to, or relating to, any Abuse Claim, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

1.1.31 "**District Court**" means the United States District Court for the Western District of New York.

1.1.32 "**Entity**" has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.1.33 "**Excluded Party**" means (a) any individual who personally committed an act of Abuse that resulted or would result in an Abuse Claim against the Diocese or a Protected Party, but solely in his or her capacity as an abuser; (b) the Holy See; and (c) any religious order or other Entity that is an affiliate of or associated with the Roman Catholic Church (other than the Diocese, the Reorganized Diocese, the Participating Parties and their respective Related Persons); *provided*, *however*, that that neither of the following is an "Excluded Party": (y) any Person claiming to be an insured or assured (as a named insured, additional insured, or otherwise) under any of the Diocese Policies and/or (z) any Person who has actually or allegedly acquired or been assigned the right to make a Claim for coverage under any of the Diocese Policies.

1.1.34 "**Estate**" means the estate created in the Bankruptcy Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

1.1.35 "**Estate Causes of Action**" means Claims, including Coverage Claims and Related Insurance Claims, owned, held, or capable of being asserted by or on behalf of the Diocese, its Estate, or any Person asserting currently or in the future by, under, through or on behalf of the Diocese or its Estate, and each of their respective successors or assigns, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Diocese or its Estate, and all other actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may

7

be pursued by a representative of the Estate, including pursuant to section 323 of the Bankruptcy Code, and actions, including avoidance actions, that may be commenced by a representative of the Estate under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise. Without limiting the generality of the foregoing, Estate Causes of Action further include: (a) Claims that on or after the Petition Date may be exclusively asserted by or on behalf of the Diocese or its Estate under applicable law, or that prior to the Petition Date could have been asserted by the Diocese on its own behalf under applicable law; (b) Claims or theories for recovery or remedies that seek to impose liability for a Claim against the Diocese or any non-debtor based on a theory of liability that is not specific to one or more particular creditors and is generally common to creditors of the Diocese and can be asserted by the Diocese under applicable law; and (c) all other Claims that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Diocese.

1.1.36 "**Extra-Contractual Claim**" means any Claim against any First State Released Party seeking any type of relief, other than coverage or benefits, under or with respect to the Diocese Policies. Extra-Contractual Claims include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interests, costs, or any other type of relief, alleging any of the following with respect to (a) any Diocese Policy; (b) any Claim allegedly or actually covered under a Diocese Policy; or (c) the conduct of any First State Released Party with respect to (a) or (b): (i) bad faith; (ii) failure to provide insurance coverage under any Diocese Policy, including any failure to investigate or to provide a defense or adequate defense; (iii) failure or refusal to compromise and settle any Claim insured under any Diocese Policy; (iv) failure to act in good faith; (v) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (vi) violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; (vii) violation of any unfair claims practices act or similar statute, regulation or code, including any statute, regulation, or code relating to unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising; (viii) any type of misconduct; or (ix) any other act or omission of any type by any First State Released Party for which the claimant seeks relief other than coverage or benefits under a Diocese Policy. "Extra-Contractual Claims" further include all Claims relating to any First State Released Party's (x) handling of any Claims under the Diocese Policies, (y) conduct in negotiating this Settlement Agreement and/or the Plan, and (z) conduct in the settlement of any Claims. For the avoidance of doubt, Extra-Contractual Claims of the Diocese Parties are included within the property First State is purchasing hereunder.

1.1.37 "**Final Order**" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal, review, or petition for a writ has been taken, (a) it has been resolved and no longer remains pending, or (b) an appeal or review has been taken timely but such order has not been stayed and the Parties have mutually

8

agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Settlement Agreement.

1.1.38 "**GMVA**" means the Gender-Motivated Violence Act, New York City, N.Y. Code §10-1104; Int. 2372-2021.

1.1.39 "**Gatekeeper Injunction**" has the meaning set forth in Section 2.2.4.

1.1.40 "**Inbound Contribution Claim**" means any Claim against the Diocese or a Participating Party for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, arising from or related to any Abuse Claim.

1.1.41 "**Insurer Contribution Claim**" means any Claim, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, allocation, reallocation, reimbursement, or any other indirect or derivative recovery against a Settling Insurer, by an insurer (including any Non-Settling Insurer) for the payment of money, where such insurer contends that it has paid more than its equitable or proportionate share of a Claim against a Covered Party.

1.1.42 "**Interests**" means all Claims, "interests" as that term is used in 11 U.S.C. § 363, and other rights of any nature, whether at law or in equity, including all interests or other rights under New York or any other applicable law.

1.1.43 "**First State Released Party**" means First State and each of its past and present parents, subsidiaries, affiliates, and divisions solely in their respective capacities as such; each of the foregoing Persons' respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past and present directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators solely in their respective capacities as such; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, solely in their capacities as such, and all Persons acting on behalf of, by, through, or in concert with them. "First State Released Party" further includes the reinsurers and retrocessionaries of First State, solely in their capacities as such, with respect to the Diocese Policies.

1.1.44 "**Joint Tortfeasor**" means any Person, other than the Diocese or a Participating Party, who is alleged to be a joint tortfeasor with the Diocese and/or any Participating Party in connection with the Abuse or alleged Abuse giving rise to an Abuse Claim.

1.1.45 "**Late-Filed Abuse Claim**" means an Abuse Claim for which the Abuse Claimant filed a proof of Claim after the Claims Bar Date and/or filed an Abuse Action after the CVA revival window closed.

9

1.1.46 "**Medicare Claims**" means any and all Claims relating to Abuse Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, including Conditional Payments, Claims for reimbursement of payments made to Abuse Claimants who recover or receive any distribution from the Trust, and Claims relating to reporting obligations.

1.1.47 "**MMSEA**" means section 111 of the "Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)" which imposes reporting obligations on those Persons with payment obligations under the MSPA.

1.1.48 "**MSPA**" means 42 U.S.C. §1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto, including the regulations promulgated thereunder, found at 42 C.F.R. §411.1 et seq.

1.1.49 "**Non-Consenting Class 4 Claim**" means an Abuse Claim held by a Non-Consenting Class 4 Claimant.

1.1.50 "**Non-Consenting Class 4 Claimant**" means the holder of an Abuse Claim who affirmatively withholds their consent to having their Claim(s) enjoined under the Channeling Injunction and/or released as set forth in the Plan, and who has not, prior to entry of the Plan Confirmation Order, agreed in writing to provide such consent, to grant such releases, and to be treated as a Consenting Class 4 Claimant for all purposes.

1.1.51 "**Non-Settling Insurer**" means any insurer that is not a Settling Insurer.

1.1.52 "**Other Catholic Organization**" means any Person (a) claiming to be an insured or assured (as a named insured, additional insured, or otherwise) under any of the Diocese Policies and/or (b) who has actually or allegedly acquired or been assigned the right to make a claim for coverage under any of the Diocese Policies, excluding, however, the Diocese, any Parish or School, the Trust, or any Abuse Claimant.

1.1.53 "**Parishes**" means all past and present parishes of or in the Diocese, or under the authority of the Bishop of the Diocese, in their capacity as public juridic persons, including any current parish of or in any other diocese or archdiocese, or under the authority of another diocesan or archdiocesan bishop that was previously a parish of or in the Diocese, or under the authority of the Bishop of the Diocese, together with each corresponding parish corporation formed pursuant to N.Y. Religious Corporations Law § 90 and their respective predecessors, successors, or assigns.

1.1.54 "**Participating Party**" or "**Diocese Participating Party**" means all Parishes, all Schools, and all Other Catholic Organizations and other Persons listed on **Schedule 1** attached hereto. Neither the Reorganized Diocese nor any Settling Insurer shall

10

be a Participating Party. For the avoidance of doubt, except to the extent they may be listed on **Schedule 1**, Excluded Parties are not Participating Parties.

1.1.55 "**Parties**" has the meaning set forth in the first paragraph of this Settlement Agreement.

1.1.56 "**Person**" means an individual, any corporation, corporation sole, partnership, association, limited liability company, joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other Entity, and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity and also has the meaning set forth in section 101(41) of the Bankruptcy Code. For the avoidance of doubt, an Entity is a "Person", as is each of the Protected Parties.

1.1.57 "**Petition Date**" has the meaning set forth in the Recitals.

1.1.58 "**Plan Confirmation Order**" has the meaning set forth in Section 2.3 of this Settlement Agreement.

1.1.59 "**Protected Parties**" means First State, all other Settling Insurers, any Settling Insurer Covered Persons, the Diocese Parties, and the Reorganized Diocese. For the avoidance of doubt, the First State Released Parties and First State's Related Parties are Protected Parties.

1.1.60 "**Related Insurance Claim**" means:

      a. all Claims, causes of action and enforceable rights against any First State Released Party or any of First State's Related Persons, whether sounding in contract, tort, or otherwise, including equity and bad faith, held by the Diocese, any Participating Party, or any Abuse Claimant (whether a Consenting Class 4 Claimant or a Non-Consenting Class 4 Claimant) for any reason related to any Abuse Claim asserted or alleged against the Diocese or any Participating Party (whether a Consenting Class 4 Claim or a Non-Consenting Class 4 Claim), including those for (i) indemnity and payment of any such Abuse Claim; (ii) any failure or refusal to provide insurance coverage for any such Abuse Claim under any Diocese Policy; (iii) any tortious or wrongful claims handling including the failure or refusal to timely compromise and settle any such Abuse Claims against the Diocese or any Participating Party pursuant to any Diocese Policy; (iv) to the extent not otherwise encompassed by section (iii) above, failure or refusal to reasonably settle such Abuse Claims; and (v) the interpretation or enforcement of the terms of any Diocese Policy as it pertains to any of the foregoing;

      b. all Extra-Contractual Claims, against any First State Released Party or any of First State's Related Persons; and

c.    all other Claims and causes of action against any First State Released Party or any of First State's Related Persons that are under, arise out of, relate (directly or indirectly) to, or connect in any way with the Diocese Policies.

1.1.61 "**Related Person**" means, with respect to any Person, such Persons' predecessors, successors, assigns, and present and former shareholders, members, affiliates, subsidiaries, employees, agents, brokers, adjusters, managing agents, claims agents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such; *provided, however*, that no Person or Entity shall be a Related Person if such Person or Entity is an Excluded Party.

1.1.62 "**Reorganized Diocese**" means the Diocese, on and after the Effective Date, after giving effect to the operative provisions of the Plan.

1.1.63 "**School**" means a past or present Catholic school owned by the Diocese or any Participating Party, including those identified as such on **Schedule 1** hereto, but does not include schools owned by any Excluded Party.

1.1.64 "**Settlement Amount**" means the sum of Seven Hundred Fifty Thousand Dollars and Zero Cents ($750,000) to be paid by First State after satisfaction of all conditions precedent herein. The Settlement Amount shall be paid by wire transfer or certified bank check in immediately available US funds to the Trust established by the Plan.

1.1.65 "**Settlement Agreement Effective Date**" means the day following the date on which all of the following have occurred: (a) all Parties have executed this Settlement Agreement; (b) the Approval Order shall have become a Final Order; (c) the Plan Confirmation Order shall have become a Final Order; and (d) the Trust shall have been created pursuant to the Plan.

1.1.66 "**Settling Insurer**" means LMI, Underwriters, Interstate (each as defined in the Plan), First State, and any other insurer that is party to an insurance settlement agreement with the consent of the Committee and the Diocese. A Settling Insurer's Related Persons and a Settling Insurer's Released Parties shall receive the benefits and protections afforded to a Settling Insurer under the Plan, and First State's Related Persons and First State's Released Parties shall receive the benefits and protections afforded to First State under this Agreement; *provided*, *however*, that if such Related Person is a Related Person by virtue of being a predecessor, successor, and assign of a Settling Insurer, such Related Person shall only receive the benefits and protections afforded to a Settling Insurer under the Plan (or, as applicable, afforded to First State under this Agreement) to the extent that: (i) such predecessor's liability was assumed by the Settling Insurer, and not independent of the liability of such Settling Insurer; and (ii) such successor's or assign's liability is derivative of the liability of the Settling Insurer and not independent of the liability of the Settling Insurer.

1.1.67 "**Settling Insurer Policies**" means, collectively, (a) the Diocese Policies and (b) all other insurance policies (or coverage parts of those policies) that are canceled,

12

21553557.v3
Case 2-19-20905-PRW,    Doc 3183,    Filed 06/10/25,    Entered 06/10/25 16:48:52,
Description: Main Document  , Page 235 of 391

settled, or sold back to a Settling Insurer pursuant to one or more insurance settlement agreements with the Settling Insurers.

1.1.68 "**Settling Insurer Covered Person**" means any Person that has or may have a Claim to insurance coverage under a Settling Insurer Policy. For the avoidance of doubt and notwithstanding anything to the contrary herein, no Excluded Party may be a Settling Insurer Covered Person.

1.1.69 "**Supplemental Injunction**" or "**Settling Insurer Injunction**" has the meaning set forth in Section 2.2.3 of this Settlement Agreement.

1.1.70 "**Tort Action**" means any lawsuit brought by any Abuse Claimant as plaintiff against any Person seeking judgment and/or damages relating in any way to alleged Abuse, including, without limitation, any Abuse Action.

1.1.71 "**Tort Defendant**" means any Person who is named as a defendant in any Tort Action.

1.1.72 "**Trust**" means any trust to be established pursuant to the Plan to which the Channeled Claims are channeled.

1.1.73 "**Trust Documents**" means the agreement establishing the Trust and its exhibits and attachments, any trust distribution or claims resolution procedures or protocols, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, administration, and funding of the Trust.

1.1.74 "**Trustee**" means the individual appointed by the Bankruptcy Court to act as the initial trustee of the Trust pursuant to the terms of the Trust Documents, along with any successor trustee appointed in accordance with the Trust Documents.

1.1.75 "**Unknown Abuse Claim**" means any Claim asserted against the Diocese, the Reorganized Diocese and/or a Participating Party, or otherwise presented to the Trust based upon Abuse that occurred prior to the Petition Date and which is not (a) filed with the Bankruptcy Court by the Claims Bar Date, (b) a timely Abuse Action commenced on or before the Bankruptcy Plan Effective Date, or (c) otherwise deemed timely filed as of the Bankruptcy Plan Effective Date pursuant to the Plan or by order of the Bankruptcy Court. For the avoidance of doubt and notwithstanding anything to the contrary herein, "Unknown Abuse Claim" includes Abuse Claims that are revived pursuant to any law, statute, or binding precedential decision passed or issued on or after the Bankruptcy Plan Effective Date.

1.1.76 "**Unknown Claims Representative**" means Michael R. Hogan, in his capacity as the "Unknown Claims Representative" (as defined and set forth in the *Order Approving Employment and Retention of Michael R. Hogan as Unknown Claims Representative* [Dkt. No. 2484]), or any duly appointed successor.

1.2     Capitalized terms not defined in this Section 1 or elsewhere in this Settlement Agreement shall have the meanings given to them in the Bankruptcy Code or the Plan.

## 2.     THE BANKRUPTCY CASE AND PLAN OF REORGANIZATION

2.1     The Diocese has filed a motion in the Bankruptcy Court (the "**Approval Motion**") that seeks the entry of an order (the "**Approval Order**"), that: (a) approves this Settlement Agreement, including First State's buyback of the Diocese Policies and the Extra-Contractual Claims of the Diocese Parties free and clear of all Interests, and otherwise authorizes the Parties to undertake the settlement and the transactions contemplated by this Settlement Agreement, in each case pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code and any other applicable provisions of the Bankruptcy Code; (b) contains the Supplemental Injunction and, subject to and conditioned upon the Settlement Agreement Effective Date, enjoins all Barred Claims against the First State Released Parties, First State's Related Persons, and the property and assets of each; (c) provides that this Settlement Agreement is binding on the Diocese Parties, all other Diocese Parties, any Trust created in the Bankruptcy Case(s), and any successors of the foregoing; and (d) provides, subject to and conditioned upon the Settlement Agreement Effective Date, that the Approval Order is binding on all Persons (including, for the avoidance of doubt, all Persons set forth in the foregoing (c) and all other Diocese Parties).

2.2     Any amendments or modification to the Bankruptcy Plan, including all exhibits, schedules, and related documents, which shall be in all respects consistent with this Settlement Agreement and shall not deprive any First State Released Party of any right or benefit under this Settlement Agreement or otherwise adversely affect the Interests of any First State Released Party under this Settlement Agreement without First State's written consent.  Without limiting the foregoing, the Bankruptcy Plan shall at least provide the following:

2.2.1     The Plan shall create a Trust which shall be responsible for making any and all payments to the Abuse Claimants entitled to receive payment under the Plan and which shall assume all liability for Channeled Claims.

2.2.2     The Plan shall include an injunction in substantially the form attached as **<u>Exhibit B-1</u>** to this Settlement Agreement (the "**Channeling Injunction**"), with only such modifications as are acceptable to the Settling Insurers and the Diocese Parties, pursuant to sections 105 and 1123 of the Bankruptcy Code, barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert, Claims from taking any action, directly or indirectly for purposes of asserting, enforcing, or attempting to assert or enforce against any Protected Party any Channeled Claim and channeling such Channeled Claims to the Trust as the sole and exclusive source of payment of any such Channeled Claims.

2.2.3     The Plan shall ratify an injunction in substantially the form included in Paragraph ___ of the proposed Approval Order attached as **<u>Exhibit A</u>** to this Settlement Agreement (the "**Supplemental Injunction**") to this Settlement Agreement, with only such modifications as are acceptable to the Settling Insurers, pursuant to sections 105(a), 363(b), (f), and (m) of the Bankruptcy Code, barring and permanently enjoining all Persons

21553557.v3

Case 2-19-20905-PRW,   Doc 3183,   Filed 06/10/25,   Entered 06/10/25 16:48:52,
Description: Main Document  , Page 237 of 391

or Entities who have held or asserted, or may in the future hold or assert, Claims from taking any action, directly or indirectly for purposes of asserting, enforcing, or attempting to enforce any Barred Claim against any First State Released Parties, any of First State's Related Persons, or the property or assets of each.

2.2.4    The Plan shall include an injunction in substantially the form attached as **Exhibit B-2** to this Settlement Agreement (the "**Gatekeeper Injunction**"), with only such modifications to the Gatekeeper Injunction as are acceptable to the Settling Insurers, pursuant to sections 105(a) and 1123 of the Bankruptcy Code, requiring all Persons that seek to assert against any Protected Party a Channeled Claim, Barred Claim, or any other Claim arising out of or relating to Abuse to move the Bankruptcy Court for (a) a determination that such Claim is colorable and (b) authorization to pursue such Claim.

2.2.5    The Plan shall incorporate this Settlement Agreement and the releases contained herein by reference and make the Settlement Agreement part of the Plan as if set forth fully within the Plan.

2.2.6    The Plan and the Trust Documents shall provide that as a condition to receiving payment from the Trust, all Abuse Claimants shall provide a written release in favor of the Protected Parties from (a) all Channeled Claims and (b) with respect to the First State Released Parties, all Barred Claims, which release shall be in form and substance acceptable to the Settling Insurers and shall be effective as to the First State Released Parties upon the later to occur of (i) the date the such release is signed by an Abuse Claimant and (ii) the Settlement Agreement Effective Date.   Once the Settlement Agreement Effective Date occurs, signed copies of such releases shall be provided to First State upon its request.

2.2.7    The Plan shall provide that the Trust shall defend, indemnify, and hold harmless the First State Released Parties and First State's Related Persons from all Channeled Claims and Barred Claims, subject to the limitations set forth in Section 7.2 of this Settlement Agreement.

2.2.8    The Plan shall provide that (collectively, as follows, the "**Controlling Document Provision**") in the event of a conflict between (a) the Settlement Agreement, on the one hand, and (b) the Plan, on the other, the terms of the Settlement Agreement shall control and govern; and in the event of a conflict between (y) the Approval Order, on the one hand, and (z) the Plan Confirmation Order, on the other, the terms of the Approval Order shall control and govern.

2.3    The Diocese shall seek and obtain entry of an order from the Bankruptcy Court, which order shall be in form and substance acceptable to the Settling Insurers, that: (a) approves the Plan pursuant to section 1129 of the Bankruptcy Code and any other applicable provision of the Bankruptcy Code; (b) contains the Channeling Injunction; (c) ratifies the Supplemental Injunction; (d) contains the Gatekeeper Injunction; (e) provides that this Settlement Agreement is binding on any Trust created in the Bankruptcy Case, the Diocese Parties, and any successors of the Trust or Reorganized Debtor; (f) provides all protections to the First State Released Parties against Channeled Claims and Barred Claims that are afforded to other Settling Insurers under the

15

Plan; (g) contains the Controlling Document Provision; and (h) provides that the Bankruptcy Court shall (i) not grant relief from the automatic stay for any Claims that actually, allegedly, or potentially implicate any of the Settling Insurer Policies, and (ii) reinstate the automatic stay if the automatic stay had previously been lifted for any Claims that actually, allegedly, or potentially implicate any of the Settling Insurer Policies, unless and until the confirmation order is reversed, and such reversal becomes a Final Order (the "**Plan Confirmation Order**").

2.3.1    The Plan and the Plan Confirmation Order must be in all respects consistent with this Settlement Agreement and must not contain any provisions that diminish or impair the benefit of this Settlement Agreement to the First State Released Parties without First State's written consent.

2.3.2    In seeking to obtain the Plan Confirmation Order, the Diocese must: (a) seek a confirmation hearing on an appropriately timely basis; (b) urge the Bankruptcy Court to overrule any objections and confirm the Plan; and (c) take reasonable steps to defend against any objection, appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Plan Confirmation Order.

2.3.3    The form and manner of notice of the hearing to confirm the Plan shall be consistent with the Disclosure Statement Approval Order, subject to advance approval by the Settling Insurers, which approval cannot be unreasonably withheld.  The Diocese shall publish notice of the Plan (including the confirmation hearing) and balloting on the Plan at least once in *The New York Times* or *USA Today*.

2.3.4    Prior to entry of the Plan Confirmation Order, the Diocese shall oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any Abuse Claim that (a) is asserted against any Diocese Party and (b) implicates, or is reasonably likely to implicate, any Diocese Policies (including by alleging Abuse that took place during any policy period of any Diocese Policy).  If, prior to the Plan Confirmation Order becoming a Final Order, the Bankruptcy Court allows any Person to prosecute any such Abuse Claim, the Diocese Parties shall defend themselves against such Abuse Claims and comply with the terms of any order of the Bankruptcy Court, and First State's rights and obligations relating to such litigation shall be determined by, and subject to, the terms and conditions of the Diocese Policies, this Settlement Agreement, and any applicable orders of the Bankruptcy Court.

2.4    The Trust Documents shall require the Trust to register as a Responsible Reporting Entity under the reporting provisions of §111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110- 173) ("**MMSEA**").

2.5    The Trust Documents shall require the Trust, at its sole expense, to timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated and to follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

16

2.6　　The Trust Documents shall require the Trust to obtain, prior to remittance of funds to claimants' counsel, or to the claimant, if pro se, in respect of any Abuse Claim, a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. §1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Abuse Claim.

2.7　　The Diocese Parties will undertake commercially reasonable actions to cooperate with First State in connection with responding to any inquiry from First State's regulators, auditors, reinsurers, or retrocessionaires.

2.8　　From and after the execution date of this Settlement Agreement, unless otherwise terminated, the Diocese and First State shall cease all litigation activities (and shall not initiate any new litigation activity) against each other in the Bankruptcy Case, including that First State will not object to any proposed Plan consistent with this Settlement Agreement, nor serve or compel any discovery in connection with the Bankruptcy Case or any other potential adversary proceedings and contested matters; *provided that*: (y) neither the Diocese nor the Committee shall include any provision in any Plan that adversely affects the rights or benefits of the First State Released Parties or First State's Related Persons under this Settlement Agreement, or that otherwise violates, or is contrary to, the agreements and covenants contained in this Settlement Agreement without First State's written consent; and (z) neither the Diocese nor the Committee shall act, or fail to act, in such a way that otherwise violates, or is contrary to, the agreements and covenants contained in this Settlement Agreement, without First State's written consent, *provided, however*, that the Committee will not be required to object or otherwise respond to any pleading filed by or on behalf of an Abuse Claimant individually and without the involvement of the Committee.　Notwithstanding the foregoing, the First State Released Parties (and First State's Related Persons) may participate in the Bankruptcy Case for the purpose of supporting or enforcing any of the terms of this Settlement Agreement and protecting their rights.

2.9　　The Parties shall each bear, as to each other only, their own costs, expenses, and counsel and professional fees in the Bankruptcy Case.

2.10　　The Parties covenant not to sue each other until the earlier of: (a) occurrence of (i) the Settlement Agreement Effective Date and (ii) First State's remittance of the Settlement Payment, at which time this covenant is superseded by the releases provided in Section 4; and (b) the date on which this Settlement Agreement is terminated.

2.11　　Upon the occurrence of the Settlement Agreement Effective Date and First State's payment of the Settlement Amount, First State shall have no obligation to pay, handle, object, or otherwise respond to any Claim against the Diocese Parties; and the Diocese Parties (i) will withdraw, and shall be deemed to have withdrawn, all outstanding tenders of Claims to the First State Released Parties for defense and indemnity; (ii) will not tender any Claims to the First State Released Parties; and (iii) will not request that the First State Released Parties fund any judgments, settlements, or defense costs.

21553557.v3

## 3. PAYMENT OF THE SETTLEMENT AMOUNTS

3.1   By no later than thirty (30) days after the Settlement Agreement Effective Date, First State shall pay the Settlement Amount to the Trust; *provided, however*, if the 30th day following the Settlement Agreement Effective Date is not a Banking Day, then First State shall pay the Settlement Amount to the Trust on the next day that is a Banking Day.

3.2   The delivery of the Settlement Amount to the Trust shall be in full and final settlement of all responsibilities under and arising out of the Diocese Policies, and in consideration of the amendment(s) of the Diocese Policies as set forth in Section 3.3 below, the sale of the Diocese Policies and the Extra-Contractual Claims of the Diocese Parties back to First State free and clear of all Claims and Interests of any Person, and the other releases provided herein.

3.3   Subject to the occurrence of the Settlement Agreement Effective Date, the Parties agree: (a) the Settlement Amount is the total amount that First State or any First State Released Party is obligated to pay on account of any and all Claims under, arising out of, relating to, or in connection with the Diocese Policies (including Channeled Claims, Barred Claims, and any reimbursement obligations for Conditional Payments under the MSPA); (b) under no circumstance will the First State Released Parties ever be obligated to make any additional payments to or on behalf of anyone in connection with the Diocese Policies, including any payments in connection with amounts allegedly owed under the MSPA or in connection with any Claims, including any Channeled Claims and Barred Claims; (c) under no circumstance will the First State Released Parties ever be obligated to make any additional payments to or on behalf of the Diocese Parties or any Abuse Claimants in connection with the Diocese Policies or otherwise with respect to any Claims that, directly or indirectly, arise out of, relate to, or are in connection with any Abuse Claims or any of the Diocese Policies, including any Channeled Claims and Barred Claims; and (d) all limits of liability of the Diocese Policies, regardless of how the Diocese Policies identify or describe those limits, including all per person, per occurrence, per claim, "each professional incident," per event, per accident, total, and aggregate limits, shall be deemed fully and properly exhausted. The Parties further agree that the Settlement Amount includes the full purchase price of the Diocese Policies and Extra-Contractual Claims of the Diocese Parties and consideration for the releases and other protections afforded by this Settlement Agreement.

3.4   The Parties represent and agree that (a) the consideration to be provided by First State pursuant to this Settlement Agreement constitutes a fair and reasonable compromise and exchange for the consideration granted to the First State Released Parties in this Settlement Agreement (including the releases set forth below), and (b) the consideration to be provided by the Diocese Parties to the First State Released Parties pursuant to this Settlement Agreement (including the releases set forth below) constitutes a fair and reasonable compromise and exchange for the consideration granted to the Diocese Parties in this Settlement Agreement. The First State Released Parties are not acting as volunteers, and the Settlement Amount reflects potential liabilities and obligations to the Diocese Parties of the amount First State allegedly is obligated to pay.

3.5   Each of the Participating Parties: (i) consents to the sale of the Diocese Policies and the Extra-Contractual Claims of the Diocese Parties free and clear of all Interests and Claims of all Persons, including, without limitation, the Participating Parties in accordance with the terms of

18

this Settlement Agreement, and (ii) agrees and acknowledges that the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan and this Settlement Agreement, is a fair and reasonable compromise and exchange for value and constitutes reasonable and adequate consideration for any Interest or Claim the Participating Parties may have in the Diocese Policies.

3.6     The Parties further agree that they have attempted to resolve the matters set forth herein in compliance with both state and federal law, and believe that the settlement terms adequately consider CMS's interest and do not reflect any attempt to shift responsibility for payment of medical expenses to CMS pursuant to 42 U.S.C. § 1395y(b). The Parties acknowledge, understand, and agree that any present or future action or decision by CMS, including actions regarding an Abuse Claimant's eligibility or entitlement to receive Medicare or Medicare payments, will not render this Settlement Agreement (including the releases set forth in it) void or ineffective, or in any way affect the finality of this Settlement Agreement. The Trust is responsible for all future medical payments, including any and all claims by CMS and/or CMS contractors that have been or may be in the future arising out of, relating (directly or indirectly) in any way to, or in connection with this Settlement Agreement.

## 4.     RELEASES AND SALE FREE AND CLEAR

4.1     Upon the occurrence of the Settlement Agreement Effective Date and First State's payment of the Settlement Amount, with no further action being required, the Diocese Parties fully, finally, and completely remise, release, acquit, and forever discharge the First State Released Parties and First State's Related Persons from any and all past, present, and future: (a) Claims that, directly or indirectly, are under, arise out of, relate to, or connect with the Diocese Policies or Claims that are covered or alleged to be covered under the Diocese Policies, including any Channeled Claims, Barred Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Abuse Claims or the Bankruptcy Case; and (b) Estate Causes of Action. The Diocese Parties further acknowledge, stipulate, and agree that (y) the releases in this Section 4.1 specifically include all Unknown Abuse Claims and demands that are based in whole or in part on Unknown Abuse Claims and (z) **with respect to all Claims released under this Section 4.1, the Diocese Parties waive any and all provisions, rights, and benefits conferred by Cal. Civ. Code 1542 or any law of any state of the United States, or any principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code 1542, which provides: "a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

4.2     Upon the occurrence of the Settlement Agreement Effective Date and First State's payment of the Settlement Amount, and with no further action being required, First State shall fully, finally, and completely remise, release, acquit, and forever discharge the Diocese Parties from any and all past, present, and future Claims that, directly or indirectly, arise out of, relate to, or are in connection with the Diocese Policies, including any Channeled Claims, Barred Claims, and reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Abuse Claims or the Bankruptcy Case.

4.3     Upon the occurrence of the Settlement Agreement Effective Date and First State's payment of the Settlement Amount, none of the Diocese Parties shall assert against the First State Released Parties any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any of the Diocese Policies, any Channeled Claim, any Barred Claim, or any other matter released pursuant to Sections 4.1 and 4.2 above.

4.4     Upon the occurrence of the Settlement Agreement Effective Date and First State's payment of the Settlement Amount, and following the amendment(s) of the Diocese Policies as set forth in Section 3.3 above, First State hereby buys back the Diocese Policies and Extra-Contractual Claims of the Diocese Parties, free and clear of all Claims and Interests of all Persons, including all Claims and Interests of: the Diocese Parties and any other Person claiming coverage by, through, or on behalf of any of the Diocese Parties; any Covered Party; any other insurer (including Non-Settling Insurers); and any Abuse Claimant (whether a Consenting Class 4 Claimant or Non-Consenting Class 4 Claimant), Tort Defendant, Joint Tortfeasor, or any other holder of a Barred Claim.  This sale is pursuant to section 363(b), (f), and (m) of the Bankruptcy Code.  The Parties acknowledge and agree, and the Approval Order shall find and conclude, that upon the occurrence of the Settlement Agreement Effective Date and First State's payment of the Settlement Amount: (i) First State is a good faith purchaser of the Diocese Policies and Interests therein, including the Extra-Contractual Claims of the Diocese Parties, within the meaning of section 363(m) of the Bankruptcy Code; (ii) the consideration exchanged constitutes a fair and reasonable settlement and compromise of the Parties' disputes and of their respective rights and obligations relating to the foregoing Diocese Policies and Interests therein (including the Extra-Contractual Claims of the Diocese Parties) and constitutes reasonably equivalent value; (iii) the releases in this Settlement Agreement and the policy buyback comply with the Bankruptcy Code and applicable nonbankruptcy law; (iv) the Diocese Policies and Interests therein shall be terminated and of no further force and effect; (v) First State's payment of the Settlement Amount constitutes First State's full and complete performance of any and all obligations under the Diocese Policies, including any performance owed to the Diocese Parties, and exhausts all limits of liability of the Diocese Policies; (vi) all Claims or Interests the Diocese Parties may have had, may presently have, or in the future may have in the Diocese Policies are released pursuant to the terms of this Settlement Agreement; and (vii) the Diocese Parties accept the Settlement Amount in full and complete compromise and satisfaction of all First State's past, present, and future obligations, including any obligations to any of the Diocese Parties under such Diocese Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever that are under, arise out of, relate (directly or indirectly) to, or connect in any way with the Diocese Policies (including without limitation Coverage Claims and Related Insurance Claims), whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, relate to, or are in connection with the Abuse Claims, Channeled Claims, Barred Claims, the Bankruptcy Case, or otherwise.

4.5     Notwithstanding anything in this Settlement Agreement, nothing in this Settlement Agreement is intended to or shall be construed to apply to or have any effect on the First State Released Parties' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Diocese Policies or any other binder, certificate, or policy of insurance issued by First State.

20

21553557.v3
Case 2-19-20905-PRW,   Doc 3183,   Filed 06/10/25,   Entered 06/10/25 16:48:52,
Description: Main Document  , Page 243 of 391

4.6     Notwithstanding anything in this Settlement Agreement, nothing in this Settlement Agreement is intended to or shall be construed to release any Claims that any First State Released Party has or might have against any Non-Settling Insurer, except that, to the extent such other insurers have agreed or in the future agree to release any Claims against the First State Released Parties arising out of or related in any way to the Abuse Claims, then the First State Released Parties also release such Claims against such other insurers to the same extent.

4.7     This Section 4 is not intended to, and shall not be deemed or construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Settlement Agreement.

## 5.     TERMINATION OF AGREEMENT

5.1     The Parties may terminate this Settlement Agreement by mutual agreement in writing.

5.2     Each of the Diocese or First State may terminate this Settlement Agreement upon thirty (30) days written notice to the other Party in the event of any of the following occurs prior to the Settlement Agreement Effective Date:  (a) the Approval Order and the Plan Confirmation Order are not entered within six (6) months from the date on which the Settlement Agreement is executed by all the Parties; (b) the Bankruptcy Court enters an order that becomes a Final Order that (i) denies the Approval Motion or (ii) is contrary to or inconsistent with the Approval Order or the Plan Confirmation Order; (c) a plan (other than the Plan at Docket No. 3026) that is contrary to or inconsistent with this Settlement Agreement is confirmed; or (d) the Bankruptcy Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

5.3     Each of the Diocese or First State may terminate this Settlement Agreement upon fifteen (15) days' written notice to the other if the Plan at Docket No. 3026 is withdrawn or revoked by the Diocese or the Committee before the Plan Confirmation Order is entered by the clerk of the Bankruptcy Court on the Court's docket.

5.4     First State may terminate this Settlement Agreement upon fifteen (15) days written notice to the Diocese if the Diocese or the Committee files a plan contrary to or inconsistent with the Plan at Docket No. 3026 or this Settlement Agreement.

5.5     In the event of termination pursuant to this Section 5, unless the Parties agree otherwise in writing, all Parties shall retain all of their Interests, rights, and obligations relating to the Diocese Policies as if this Settlement Agreement never existed.

## 6.     REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1     The Parties separately represent and warrant as follows:

6.1.1     To the extent it is a corporation, including a non-profit, religious, or charitable corporation, or other legal entity, each Party has the requisite power and authority to enter into this Settlement Agreement and to perform the obligations contemplated by this Settlement Agreement, subject only to approval of the Bankruptcy Court; and

21

6.1.2   This Settlement Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and executed and delivered in good faith pursuant to arm's length negotiations and for value and valuable consideration.

6.2     The Diocese Parties represent and warrant that they have not assigned, and will not assign, any Interests or Claims in the Diocese Policies to any Person.

6.3     The Diocese Parties represent and warrant that, to the best of their knowledge, the Diocese Parties are the owners of the Diocese Policies, and that no other Person has legal title to the Diocese Policies.

6.4     The Diocese Parties represent and warrant that, except with respect to any actions they may have previously undertaken in connection with the Bankruptcy Case, the Adversary Proceeding, or their participation in mediation ordered by the Bankruptcy Court, they have not in any way assisted, and shall not in any way assist, any Person in the establishment or pursuit of any Claim, including any Channeled Claim or Barred Claim, against the First State Released Parties.

6.5     The Diocese Parties and First State, respectively, represent and warrant that they have completed a reasonable search for evidence of any policy of insurance issued by First State to the Diocese or any other Diocese Party that would afford coverage with respect to any Abuse Claim.  Other than the policies or alleged policies identified in **Schedule 2**, no such policies have been identified.  Notwithstanding the foregoing, nothing in this Settlement Agreement, including the Schedules or Exhibits hereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued or affords coverage in connection with any Abuse Claims.

# 7.    ACTIONS INVOLVING THIRD PARTIES

7.1     For purposes of supporting the releases granted in Section 4 and the extinguishment of any and all rights under the Diocese Policies resulting from the purchase and sale thereof contemplated by this Settlement Agreement, the Parties hereby agree as follows:

7.1.1   From and after (i) the occurrence of the Settlement Agreement Effective Date, and (ii) First State's payment of the Settlement Amount, if any other insurer of the Diocese obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from any First State Released Party as a result of a claim for contribution, subrogation, indemnification, or other similar Claim for an First State Released Party's alleged share or equitable share, or to enforce subrogation rights, if any, with respect to the defense or indemnity obligation of any First State Released Party for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Settlement Agreement, the Diocese Parties, and the Trust shall voluntarily reduce any judgment or Claim against, or settlement with, such other insurers to the extent necessary to satisfy or extinguish such contribution, subrogation, indemnification, or other Claims against such First State Released Party.  To ensure that such a reduction is

22

accomplished, each First State Released Party shall be entitled to assert this Section 7 as a defense to any action against it brought by any other insurers for any such portion of the judgment or Claim and shall be entitled to request that the court or any appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect such First State Released Party from any liability for the judgment or Claim. Moreover, if a Non-Settling Insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against any First State Released Party, such Claim may be asserted as a defense against a Claim by the Diocese Parties, or the Trust in any coverage litigation (and the Diocese Parties, and/or the Trust may assert the legal and equitable rights of such First State Released Party in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such Non-Settling Insurer to the Diocese Parties or the Trust shall be reduced dollar for dollar by the amount so determined.

7.1.2   Unless this Settlement Agreement is terminated, First State shall not seek reimbursement for any payments it makes under this Settlement Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other Settling Insurer unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from First State. Notwithstanding the foregoing, nothing in this Settlement Agreement, the Approval Order or the Plan Confirmation Order shall be construed as prohibiting First State from seeking recovery (including with respect to the Settlement Amount or otherwise) from its reinsurers or retrocessionaires in their capacity as such. The Diocese shall use commercially reasonable efforts to obtain from all Settling Insurers agreements substantially identical to those contained in this Section 7.1 and shall use commercially reasonable efforts to obtain similar agreements from any other insurer with which it settles in the future; *provided, however*, that the failure of the Diocese, despite its commercially reasonable efforts, to obtain such an agreement from any insurer with which it settles will not be a basis to terminate this Settlement Agreement or excuse First State from performing its respective obligations hereunder.

7.2   Subject to the occurrence of the Settlement Agreement Effective Date and First State's payment of the Settlement Amount, and pursuant to the terms of the Plan, the Trust shall defend, indemnify, and hold harmless the First State Released Parties and First State's Related Persons with respect to any and all of the following "**Indemnified Claims**": (a) Channeled Claims; (b) Barred Claims; and (c) any other Claim that (i) is under, arises out of, relates (directly or indirectly to), or connects in any way with the Diocese Policies or (ii) was otherwise released herein, including all such Claims made by (x) any Person claiming to be an insured (as a named insured, additional insured, or otherwise) under any of the Diocese Policies, (y) any Person who has made, will make, or can make an Abuse Claim or Related Insurance Claim, and (z) any Person who has actually or allegedly been acquired or been assigned the right to make a Claim under any of the Diocese Policies.

7.2.1   The First State Released Parties shall have the right (but not the obligation) to defend any Indemnified Claims identified in this Section 7.2 and shall do so in good faith. The First State Released Parties may (but are not required to) undertake the defense of any Indemnified Claim on receipt of such Indemnified Claim. The First State Released Parties agree to notify the Trust as soon as practicable of any Indemnified Claims and of

23

its choice of counsel. If the First State Released Parties decline to defend any Indemnified Claim, the Trust shall undertake the defense of such Indemnified Claim.

7.2.2    The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the First State Released Parties in defending Indemnified Claims. The First State Released Parties may settle or otherwise resolve an Indemnified Claim only with the prior consent of the Trust, which consent shall not be unreasonably withheld. The Trust may settle or otherwise resolve an Indemnified Claim only with the prior consent of the First State Released Parties, which consent shall not be unreasonably withheld. The First State Released Parties' defense, settlement, or other resolution of any Indemnified Claims pursuant to this Section 7.2 shall not diminish the obligations of the Trust to indemnify the First State Released Parties for such Indemnified Claims, as set forth in this Section 7.2.

7.2.3    The Trust shall maintain a reserve with respect to its obligations relating to Indemnified Claims. The reserve will be in an amount and structure set forth in the Trust Documents reasonably acceptable to First State and the Committee.

7.3    If any Person attempts to prosecute a Barred Claim against the First State Released Parties or any First State Related Persons before the Approval Order and Plan Confirmation Order become Final Orders, then promptly following notice to do so from First State, the Diocese will file a motion and supporting papers to obtain an order from the Bankruptcy Court pursuant to sections 362 and 105(a) of the Bankruptcy Code protecting the First State Released Parties and First State's Related Persons from any such Claims until the Plan Confirmation Order has become a Final Order, the Bankruptcy Case is dismissed, or this Settlement Agreement is terminated under Section 5 hereof.

## 8.    MISCELLANEOUS

8.1    If any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Settlement Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Settlement Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

8.2    The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Settlement Agreement and to preserve its validity and enforceability.

8.3    The Parties shall cooperate with each other in connection with the Approval Motion, the Approval Order, the Plan, the Plan Confirmation Order, and the Bankruptcy Case. Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof.

8.4    Notwithstanding any language to the contrary in this Settlement Agreement, under no circumstance will the Diocese be obligated to take any action that violates any obligation or

duty owed by the Diocese to any other insurer, and if a court of competent jurisdiction determines that a term or condition in this Settlement Agreement does violate any obligation or duty owed by any of the Diocese to any other insurer, the Diocese shall be relieved of such term or condition, but the scope and finality of the releases and injunctions set forth in this Settlement Agreement shall not be affected or modified.

8.5     This Settlement Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

8.6     This Settlement Agreement may be modified only by a written amendment signed by all of the Parties, and no waiver of any provision of this Settlement Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party. The waiver by any Party of any of the provisions of this Settlement Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach. Any change or modification of this Agreement that would result in a material adverse change to the rights of the Abuse Claimants or Trust shall require the consent of the Committee (if at the time of the proposed change or modification a Trustee has not been appointed) or Trustee (if at the time of the proposed change or modification a Trustee has been appointed and approved), as applicable, which consent shall not be unreasonably withheld.

8.7     By entering into this Settlement Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Settlement Agreement. No part of this Settlement Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Settlement Agreement. All actions taken and statements made by the Parties or by their representatives relating to this Settlement Agreement or participation in this Settlement Agreement, including its development and implementation, shall be without prejudice or value as precedent.

8.8     This Settlement Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession regarding liability, culpability, wrongdoing, or insurance coverage. All related discussions, negotiations, and all prior drafts of this Settlement Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions, including NY CPLR § 4547. Any evidence of the negotiations or discussions associated with this Settlement Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 8.8, in (i) an action or proceeding to enforce the terms of this Settlement Agreement, including any use as set forth in Section 7.1.1, or (ii) any possible action or proceeding between the First State Released Parties and any reinsurers or retrocessionaires. This Settlement Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the First State Released Parties' obligations under the Diocese Policies or any other binder, certificate, or policy of insurance issued by First State.

8.9     None of the Parties shall make any public statements or disclosures (i) regarding another Party's rationale or motivation for negotiating or entering into this Settlement Agreement, or (ii) asserting or implying in any way that the Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising out of, relating to, or in connection with the Diocese Policies or any other binder, certificate, or policy of insurance issued or allegedly issued by the First State Released Parties, including handling of or involvement in connection with the Barred Claims or the resolution of the Barred Claims.

8.10    Neither this Settlement Agreement nor the rights and obligations set forth in this Settlement Agreement shall be assigned without the prior written consent of the other Parties.

8.11    This Settlement Agreement was jointly drafted by the Parties, and the wording of this Settlement Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution.  The language of all parts of this Settlement Agreement shall in all cases be construed as a whole according to its meaning and not strictly for or against any Party.

8.12    Section titles and headings contained in this Settlement Agreement are included only for ease of reference and shall have no substantive effect.

8.13    All notices, demands, or other communication to be provided pursuant to this Settlement Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other Entity or address as any of them may designate in writing from time to time:

If to the Diocese or Reorganized Diocese:

The Diocese of Rochester
1150 Buffalo Road
Rochester, New York 14624
Attention:  Lisa M. Passero, Chief Financial Officer

with copies to:

Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Attn:   Stephen A. Donato
        Charles J. Sullivan
        Grayson T. Walter

-and-

Blank Rome LLP
1825 Eye Street NW
Washington, D.C. 20006

Attn:   James R. Murray

26

James S. Carter

If to a Participating Party:

As set forth on **Schedule 3** hereof.

If to First State or the First State Released Parties:

[TBD]
The Hartford Insurance Group, Inc.
690 Asylum Avenue
Hartford, CT  06155

with copy to:

Joshua D. Weinberg
Ruggeri Parks Weinberg LLP
1875 K Street, N.W., Suite 800
Washington, D.C.  20006
jweinberg@ruggerilaw.com

8.14    This Settlement Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.  This Settlement Agreement may be executed and delivered by facsimile, e-mail, or other electronic image, which facsimile, e-mail, or other electronic image counterparts shall be deemed to be originals.

8.15    Nothing contained in this Settlement Agreement shall be deemed or construed to constitute (a) an admission by the First State Released Parties that the Diocese Parties, or any other Entity, was or is entitled to any insurance coverage under the Diocese Policies or any other binder, certificate, or policy of insurance issued by the First State Released Parties or as to the validity of any of the positions that have been or could have been asserted by the any of the Diocese Parties, (b) an admission by any of the Diocese Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by the First State Released Parties or any Claims that have been or could have been asserted by the Diocese Parties against the First State Released Parties, or (c) an admission by the Diocese Parties or the First State Released Parties of any liability whatsoever with respect to any of the Abuse Claims.

8.16    All of the Persons included in the definition of the First State Released Parties, First State's reinsurers or retrocessionaires solely in their capacity as such, First State's Related Parties, all of the Parties to this Agreement, and the Trust are intended beneficiaries of this Settlement Agreement.  Except as set forth in the preceding sentence or otherwise set forth in this Settlement Agreement, there are no third-party beneficiaries of this Settlement Agreement.

8.17    The Diocese Parties and the First State Released Parties shall each be responsible for their own fees and costs incurred in connection with the Bankruptcy Case, this Settlement Agreement, and the implementation of this Settlement Agreement.

8.18    The following rules of construction shall apply to this Settlement Agreement:

8.18.1 Unless the context of this Settlement Agreement otherwise requires:  (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Settlement Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

8.18.2 References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Settlement Agreement.

8.18.3 The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Settlement Agreement when the stated intent is not achieved.

8.19    The Bankruptcy Court in the Bankruptcy Case shall retain jurisdiction to interpret and enforce the provisions of this Settlement Agreement, which shall be construed in accordance with New York law without regard to conflicts of law principles thereof.  The First State Released Parties do not, by virtue of this Section 8.19 or any other provision in this Settlement Agreement, consent to the Bankruptcy Court's jurisdiction as to any other matter.

8.20    This Settlement Agreement shall be effective on the Settlement Agreement Effective Date.  Subject to and conditioned upon the occurrence of the Settlement Agreement Effective Date, this Settlement Agreement and the Diocese's obligations under this Settlement Agreement shall be binding on the Diocese and the Reorganized Diocese and shall survive the entry of the Plan Confirmation Order.

8.21    Nothing in this Settlement Agreement will prevent First State from allocating the Settlement Amount among the Diocese Policies at First State's discretion.

8.22    If any provision of this Settlement Agreement, or the application thereof, shall for any reason or to any extent, be construed to be invalid or unenforceable, the remainder of this Settlement Agreement, and the application of such provision to other circumstances, shall be interpreted so as to best effect the intent of the Parties, unless such determination of invalidity or unenforceability deprives any Party of the substantial benefit of its bargain.

8.23    The Parties agree that all matters relating to the negotiation and terms of this Settlement Agreement (including by way of example and not limitation, all prior drafts, exchanges of terms, and related discussions or correspondence) shall be confidential and are not to be disclosed except by order of court or consent of the Parties in writing.  This Section 8.23 does not

prevent or prohibit the Parties from publicly filing on the docket in the Bankruptcy Case the final, executed copy of this Settlement Agreement.

[*Signature Pages Follow*]

29

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their duly authorized representatives.

Signed: _____

The Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

First State

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

The Cathedral Community of Rochester NY;
*successor in interest to the insurance rights of*:
Sacred Heart Cathedral, Rochester, N.Y.; The Holy
Rosary Church of the City of Rochester, Monroe
County, N.Y.; Church of the Most Precious Blood

Name Printed: _____

Title: _____

Date: _____ 2025

31

21553557.v3
Case 2-19-20905-PRW,    Doc 3183,    Filed 06/10/25,    Entered 06/10/25 16:48:52,
Description: Main Document  , Page 254 of 391

Signed: _____

Roman Catholic Parish of St. Frances Xavier Cabrini; *successor in interest to the insurance rights of*: Our Lady of the Americas (*successor in interest to the insurance rights of* St. Francis Xavier Church; Church of the Most Holy Redeemer of Irondequoit, N.Y.; Our Lady of Mount Carmel Church, Rochester, N.Y.; Corpus Christi Church of Rochester, N.Y.); Light of Christ Roman Catholic Parish (*successor in interest to the insurance rights of* St. Philip Neri Church of Rochester, N.Y.; St. Andrews Roman Catholic Church of Rochester, N.Y.; Church of the Annunciation, Rochester, N.Y.); Church of Our Lady of Perpetual Help of Rochester; St. Michael's Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

32

Signed: _____

Peace of Christ Roman Catholic Parish of Rochester, NY;
*successor in interest to the insurance rights of*: St. Ambrose
Church of Rochester; St. James Church of Rochester, N.Y.;
St. John the Evangelist Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

33

Signed: _____

The Church of the Holy Apostles, Rochester, N.Y.;
*successor in interest to the insurance rights of*: St. Francis
of Assisi Church of Rochester, N.Y.; Church of the Holy
Family, Inc.; The Church of St. Anthony of Padua

Name Printed: _____

Title: _____

Date: _____ 2025

34

Signed: _____

St. Monica Church of Rochester, N.Y.; *successor in interest to the insurance rights of*: The Church of Our Lady of Good Counsel; St. Augustine Church Corporation; SS. Peter and Paul's Roman Catholic Church, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Anne's Church of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

36

Signed: _____

The Church of the Blessed Sacrament, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Boniface Church, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

38

Signed: _____

St. Stanislaus Church of Rochester, N.Y.; *successor in interest to the insurance rights of*: St. Theresa of the Child Jesus Church, Bishop of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Immaculate Conception/St. Bridget, Rochester; *successor in interest to the insurance rights of*: The Immaculate Conception Church Society; St. Bridget's Church

Name Printed: _____

Title: _____

Date: _____ 2025

40

Signed: _____

Kateri Tekakwitha Roman Catholic Parish; *successor in interest to the insurance rights of*: Church of Christ the King, Rochester, N.Y.; St. Cecilia Church, Irondequoit, N.Y.; Church of St. Margaret Mary; Church of St. Salome; St. Thomas Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Church of St. Charles Borromeo; *successor in interest to the insurance rights of*: Church of the Holy Name of Jesus of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2025

42

Signed: _____

Emmanuel Church of the Deaf of the Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. George Roman Catholic Lithuanian Church, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

The Parish of the Holy Family, Gates, NY; *successor in interest to the insurance rights of*: Church of the Holy Ghost; St. Helen's Church of Gates, N.Y.; Church of St. Jude of the Town of Gates

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Holy Cross Church of Rochester, NY

Name Printed: _____

Title: _____

Date: _____ 2025

46

Signed: _____

St. John the Evangelist Church Corp.

Name Printed: _____

Title: _____

Date: _____ 2025

47

Signed: _____

St. Lawrence Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

48

Signed: _____

St. Mark's Church of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Mary's Church Society, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Our Lady of Lourdes Church of Brighton

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Our Mother of Sorrows Church; *successor in interest to the insurance rights of:* Our Lady of Mercy Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

52

Signed: _____

St. Mary's French Church Society (a/k/a Our Lady of
Victory)

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Church of Our Lady Queen of Peace of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

54

Signed: _____

St. Pius Tenth Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Theodore's Church of Gates, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Thomas More Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

The Catholic Parish of Saints Isidore and Maria Torriba*; successor in interest to the insurance rights of:* St. Catherine Roman Catholic Church Society, Addison, N.Y.; St. Stanislaus Church of Bradford, N.Y.; St. Joseph's Roman Catholic Church of Campbell, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Alphonsus Catholic German Church

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Aloysius Church, Auburn, NY

Name Printed: _____

Title: _____

Date: _____ 2025

60

Signed: _____

The Catholic Church of the Holy Family, Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Mary's Catholic Church, Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Saints Mary and Martha Roman Catholic Parish Cayuga County, NY; *successor in interest to the insurance rights of:* St. Francis of Assisi Italian Roman Catholic Church; St. Hyacinth's Polish Roman Catholic Society Church

Name Printed: _____

Title: _____

Date: _____ 2025

63

Signed: _____

Sacred Heart Church of Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

64

Signed: _____

St. Ann's Church, Owasco, Cayuga County, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Good Shepherd Catholic Community, Aurora; *successor in interest to the insurance rights of:* St. Patrick's Church of Aurora, N.Y.; St. Joseph's Catholic Church of Cayuga, N.Y.; Our Lady of the Lake Church Corporation, King Ferry; St. Patrick's Catholic Church of Moravia, Cayuga County, N.Y.; St. Bernard's Catholic Church; St. Michael's Church of Union Springs, N.Y.; St. Isaac Jogues' Chapel

Name Printed: _____

Title: _____

Date: _____ 2025

66

Signed: _____

St. Agnes Church Society, Avon, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. John Vianney Roman Catholic Parish, Steuben County, NY; *successor in interest to the insurance rights of:* St. Mary's Catholic Church Society of Bath, N.Y.; St. Gabriel's Catholic Church Society of Hammondsport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

68

Signed: _____

Church of the Nativity of the Blessed Virgin Mary,
Brockport, N.Y.*; successor in interest to the insurance
rights of:* Newman Oratory of Brockport, New York

Name Printed: _____

Title: _____

Date: _____ 2025

69

Signed: _____

St. Martin De Porres; *successor in interest to the insurance rights of:* Catholic Church of St. Vincent DePaul of Churchville, N.Y.; St. Columba's Church, Caledonia, N.Y.; St. Mary of the Assumption Church, Scottsville, N.Y.; St. Patrick's Church, Mumford, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

70

Signed: _____

St. Benedict Roman Catholic Parish Ontario County, NY;
*successor in interest to the insurance rights of:* St. Mary's
Church Corp., Canandaigua, N.Y.; St. Bridget's Church of
East Bloomfield, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Peter's Roman Catholic Parish, Ontario County;
*successor in interest to the insurance rights of:* St. Felix's
Church, Inc.; St. Francis Church; St. Dominic Roman
Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Joseph the Worker Roman Catholic Parish, Wayne County; *successor in interest to the insurance rights of:* St. John the Evangelist Roman Catholic Church; St. Michael's Church Society, Inc., Lyons, N.Y.; St. Patrick's Roman Catholic Church, Savannah, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Margaret's Church of Conesus Lake, Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

74

Signed: _____

All Saints, Corning; *successor in interest to the insurance rights of:* The Church of St. Mary's of Corning, N.Y.; St. Patrick's Catholic Church, Corning, N.Y.; St. Vincent De Paul's Roman Catholic Church Society Inc., Corning, N.Y.; Church of the Immaculate Heart of Mary of Painted Post

Name Printed: _____

Title: _____

Date: _____ 2025

75

Signed: _____

The Church of St. John Fisher of the Town of Huron, New
York

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Church of St. Jerome, East Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

77

Signed: _____

Saint Cecilia's Roman Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2025

78

Signed: _____

St. John the Baptist Catholic Church, Elmira, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Parish of the Most Holy Name of Jesus; *successor in interest to the insurance rights of:* St. Mary's Roman Catholic Church Society; Blessed Sacrament Roman Catholic Church of Elmira, NY (*successor in interest to the insurance rights of* St. Anthony's Church of Elmira, N.Y.; St. Patrick's Roman Catholic Church of Elmira, N.Y.; Saint Peter and Paul's Church, Inc.); Christ the Redeemer Roman Catholic Parish of Elmira, NY (*successor in interest to the insurance rights of* Our Lady of Lourdes Church of Elmira, New York; St. Casimir's Roman Catholic Church Society, Elmira, N.Y.; Saint Charles Borromeo Roman Catholic Church, Elmira Heights, N.Y.)

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Church of the Assumption, Fairport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

81

Signed: _____

Church of the Resurrection, Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2025

82

Signed: _____

Church of St. John of Rochester of Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

The Church of the Holy Cross of Dryden, New York

Name Printed: _____

Title: _____

Date: _____ 2025

84

Signed: _____

St. Luke the Evangelist Roman Catholic Church Society of Livingston County; *successor in interest to the insurance rights of:* St. Mary's Roman Catholic Church, Geneseo, N.Y., Livingston County; Thomas Aquinas Roman Catholic Church of Moscow, Livingston County, N.Y.; St. Patrick's Church Society of Mt. Morris, New York; Church of the Holy Angels of Nunda, N.Y.; St. Lucy's Church, Retsof, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

85

Signed: _____

Our Lady of Peace Roman Catholic Church of Geneva,
NY; *successor in interest to the insurance rights of:* Church
of St. Francis DeSales; St. Stephen's Roman Catholic
Church, Inc. of Geneva, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

86

Signed: _____

St. Hilary's Catholic Church, Genoa, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Anthony's Catholic Church of Groton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Church of the Holy Name, Groveland, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

89

Signed: _____

The Church of St. Elizabeth Ann Seton

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Marianne Cope Roman Catholic Parish, Monroe County
NY; *successor in interest to the insurance rights of:*
Guardian Angels Church of Rochester, New York; Church
of the Good Shepherd, Henrietta, N.Y.; St. Joseph's
Catholic Society of Rush, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

91

Signed: _____

Church of St. Leo, Hilton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

92

Signed: _____

St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills)

Name Printed: _____

Title: _____

Date: _____ 2025

93

Signed: _____

St. Paul of the Cross Church, Honeoye Falls, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

94

Signed: _____

Our Lady of the Valley; *successor in interest to the insurance rights of:* St. Joachim's Roman Catholic Church St. Ann's Roman Catholic Church; St. Ignatius Loyola Church of Hornell, N.Y.; St. Mary's Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2025

95

Signed: _____

Church of St. Mary Our Mother, Horseheads, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Catherine of Siena Church

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

The Immaculate Conception Church, Ithaca, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

All Saints Church Corporation, Ludlowville, NY

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Rose Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Matthew Catholic Church Society; *successor in interest to the insurance rights of:* St. William's Church Society, Conesus, N.Y.; St. Joseph's Catholic Church Society of Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Michael's Church Society, Livonia Center, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Parish of St. Katharine Drexel, Palmyra; *successor in interest to the insurance rights of:* St. Patrick's Church of Macedon, N.Y.; St. Gregory's Roman Catholic Church of Marion, N.Y.; Roman Catholic Church of St. Anne, Palmyra, N.Y. 14522

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Catherine's Roman Catholic Church, Mendon, NY

Name Printed: _____

Title: _____

Date: _____ 2025

104

Signed: _____

St. Michael's Church, Montezuma, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Michael's Church, Newark, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Christopher of Chili, New York

Name Printed: _____

Title: _____

Date: _____ 2025

107

Signed: _____

St. Benedict's Mission Church of Odessa, New York

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Maximilian Kolbe Catholic Church Society of Wayne County; *successor in interest to the insurance rights of:* St. Mary's of the Lake Roman Catholic Church Society; Church of the Epiphany, Sodus, N.Y.; Church of St. Rose of Lima, Sodus Point, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

The Parish of Mary, Mother of Mercy, Tompkins County,
New York; *successor in interest to the insurance rights of:*
St. Francis Solanus Church, Interlaken, N.Y.; Holy Cross
Church; St. James the Apostle Church of Trumansburg,
N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Blessed Trinity, Owego; *successor in interest to the insurance rights of:* St. Margaret Mary's Roman Catholic Church of Apalachin, N.Y.; St. Francis Roman Catholic Church; St. John the Evangelist Roman Catholic Church; St. Pius the Tenth Church, Van Etten, N.Y.; St. James the Apostle, Roman Catholic Church Society of Waverly, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

111

Signed: _____

St. Patrick's Roman Catholic Church Society of Owego,
N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Joseph's Catholic Church of Penfield, NY

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Our Lady of the Lakes Catholic Community; *successor in interest to the insurance rights of:* St. Andrew's Church of Dundee; St. Januarius Roman Catholic Church St. Michael's Church of Penn Yan, N.Y.; St. Patrick's Catholic Church, Prattsburg, N.Y.; St. Mary's Church, Rushville, N.Y.; St. Theresa's Church, Stanley, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

114

Signed: _____

St. Raphael's Church, Piffard, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Church of the Transfiguration

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Louis Church of Pittsford, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Church of St. John, the Evangelist, Spencerport, Monroe Co, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Patrick's Church of Victor, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Frances & St. Clare Roman Catholic Parish, Seneca
County, NY; *successor in interest to the insurance rights
of:* St. Mary's Church, Waterloo, N.Y.; St. Patrick's
Church of Seneca Falls, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

120

Signed: _____

St. Mary's of the Lake Roman Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Holy Family Catholic Community; *successor in interest to the insurance rights of:* St. Pius V Church Society, Cohocton, N.Y.; St. Mary's Church; The Church of the Sacred Heart of Jesus, Perkinsville, N.Y.; St. Joseph's Roman Catholic Church Corp., Wayland, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

The Roman Catholic Church of the Most Holy Trinity at
Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Paul's Roman Catholic Church of Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

124

Signed: _____

Church of the Holy Spirit of Penfield, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Our Lady of the Snow, Weedsport; *successor in interest to the insurance rights of:* St. Patrick's Roman Catholic Church of Cato, N.Y.; St. John's Church, Port Byron, N.Y. 13140; St. Joseph's Catholic Church of Weedsport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

St. Joseph's Church of West Bloomfield

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

St. Rita's Church of West Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Catholic Community of the Blessed Trinity of Wolcott, NY; *successor in interest to the insurance rights of:* St. Mary Magdalen Church, Wolcott, N.Y.; St. Thomas the Apostle Roman Catholic Church of Red Creek; St. Jude

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

Signed: _____

Catholic Charities of the Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

130

Signed: _____

Rochester Catholic Press Association, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

DePaul Community Services, Inc. f/k/a DePaul Mental
Health Services, Inc. f/k/a DePaul Clinic

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Bishop Sheen Ecumenical Housing Foundation, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Charles Settlement House, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

134

Signed: _____

St. Bernard's School of Theology and Ministry

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Camp Stella Maris of Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2025

136

21553557.v3

Signed: _____

Genesee Settlement House

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

Becket Hall, Inc.

Name Printed: _____

Title: _____

Date: _____ 2025

Signed: _____

The Corporate Board of Education, Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2025

21553557.v3

<u>**SCHEDULE 1**</u>
**Participating Party List**

<u>Parishes</u>

1.        Sacred Heart Cathedral, Rochester
2.        **Annunciation, Rochester
3.        **St. Ambrose, Rochester
4.        **St. Andrew, Rochester
5.        **St. Anthony of Padua, Rochester
6.        **St. Augustine, Rochester
7.        St. Anne, Rochester
8.        Blessed Sacrament, Rochester
9.        **Corpus Christi, Rochester
10.      St. Boniface, Rochester
11.      **St. Bridget, Rochester
12.      ** St. Cecilia, Rochester
13.      St. Charles Borromeo, Rochester
14.      **Christ the King, Rochester
15.      **Church of the Annunciation, Rochester
16.      Emmanuel Church of the Deaf, Rochester
17.      **St. Feehan, Rochester
18.      **St. Francis of Assisi, Rochester
19.      St. Frances Xavier Cabrini, Rochester
20.      St. George, Rochester
21.      **Guardian Angels, Rochester
22.      **St. Helen, Rochester
23.      Holy Apostles, Rochester
24.      Holy Cross, Rochester
25.      **Holy Ghost, Rochester
26.      **Holy Family, Rochester
27.      **Holy Name of Jesus, Rochester
28.      **Holy Redeemer, Rochester
29.      St. Francis Xavier, Rochester
30.      **Holy Redeemer/St. Francis Xavier, Rochester
31.      **Holy Rosary, Rochester
32.      **Immaculate Conception, Rochester
33.      Immaculate Conception/St. Bridget, Rochester
34.      **St. James, Rochester
35.      **St. John the Evangelist, Rochester
36.      St. John the Evangelist, Rochester
37.      **St. Joseph, Rochester
38.      Kateri Tekakwitha Roman Catholic, Rochester
39.      St. Lawrence, Rochester
40.      **St. Lucy, Rochester
41.      **Light of Christ Roman Catholic Parish, Rochester
42.      **St. Margaret Mary, Rochester
43.      St. Mark, Rochester
44.      St. Mary, Rochester
45.      **St. Michael, Rochester
46.      St. Monica, Rochester
47.      **Our Lady of the Americas, Rochester
48.      **Our Lady of Good Counsel, Rochester

49. Our Lady of Lourdes, Rochester
50. **Our Lady of Mount Carmel, Rochester
51. **Our Lady of Mercy, Rochester
52. **Our Lady of Perpetual Help, Rochester
53. **Our Lady of Sorrows, Rochester
54. Our Lady of Victory-St. Joseph, Rochester
55. Our Lady Queen of Peace, Rochester
56. Our Mother of Sorrows, Rochester
57. The Parish of the Holy Family, Rochester
58. Peace of Christ, Rochester
59. **St. Patrick, Rochester
60. **Sts Peter & Paul, Rochester
61. St. Pius Tenth, Rochester
62. **St. Salome, Rochester
63. St. Stanislaus, Rochester
64. St. Theodore, Rochester
65. **St. Theresa of the Infant Jesus, Rochester
66. St. Thomas More, Rochester
67. **St. Thomas the Apostle, Rochester
68. **St. Catherine of Siena, Addison
69. Saints Isidore and Maria Torribia, Addison
70. **St. Margaret Mary, Appalachin
71. **St. Mathias, Atlanta
72. St. Alphonsus, Auburn
73. **St. Aloysius, Auburn
74. **St. Francis of Assisi, Auburn
75. Holy Family, Auburn
76. **St. Hyacinth, Auburn
77. St. Mary, Auburn
78. Saints Mary and Martha, Auburn
79. Sacred Heart, Auburn
80. Good Shephard Catholic Community, Aurora
81. St. Agnes, Avon
82. St. John Vianney, Bath
83. **St. Mary, Bath
84. **St. Stanislaus, Bradford
85. Nativity of the Blessed Virgin Mary, Brockport
86. **St. Columba, Caledonia
87. The Parish of Saint Martin De Porres, Caledonia
88. **Our Lady of Lebanon, Canandaigua
89. St. Benedict, Canandaigua
90. **St. Mary, Canandaigua
91. **St. Joachim, Canisteo
92. **St. William, Cameron Mills
93. **St. Joseph, Campbell
94. **St. Patrick, Cato
95. **St. Francis of Assisi, Catatonk
96. **St. Joseph, Cayuga
97. **St. Vincent De Paul, Churchville
98. **St. Felix, Clifton Springs
99. **St. Felix/St. Francis Parish Cluster, Clifton Springs
100. St. Peter's Roman Catholic Parish, Clifton Springs
101. **St. John the Evangelist, Clyde

4907-6457-2452.2 18489.002
21553557.v3

102. St. Joseph the Worker, Clyde
103. **St. Pius V, Cohocton
104. **St. William, Conesus
105. All Saints, Corning
106. **Santa Maria de Mercede, Cuylerville
107. **St. Mary, Dansville
108. **St. Patrick, Dansville
109. **St. Andrew, Dundee
110. Holy Cross, Dryden
111. **St. Bridget, East Bloomfield
112. St. Jerome, East Rochester
113. **St. Charles Borromeo, Elmira
114. **St. Anthony, Elmira
115. **Blessed Sacrament, Elmira
116. **St. Casimir, Elmira
117. **St. Cecilia, Elmira
118. **Christ the Redeemer, Elmira
119. **St. John the Baptist, Elmira
120. **St. Mary, Elmira
121. **Our Lady of Lourdes, Elmira
122. The Parish of the Most Holy Name of Jesus, Elmira
123. **St. Patrick, Elmira
124. **Sts. Peter and Paul Catholic Parish, Elmira
125. Church of the Assumption, Fairport
126. Church of the Resurrection, Fairport
127. St. John of Rochester, Fairport
128. St. Luke the Evangelist, Geneseo
129. **St. Mary, Geneseo
130. **St. Francis De Sales, Geneva
131. Our Lady of Peace, Geneva
132. **St. Stephen, Geneva
133. **St. Hillary, Genoa
134. **St. Mary, Greenwood
135. St. Anthony, Groton
136. **Holy Name of Jesus, Groveland
137. St. Elizabeth Ann Seton, Hamlin
138. **St. Gabriel, Hammondsport
139. **Church of the Good Shepherd, Henrietta
140. St. Marianne Cope, Henrietta
141. St. Leo, Hilton
142. St. Paul of the Cross, Honeoye Falls
143. St. Mary, Our Lady of the Hills, Honeoye
144. **St. Ann, Hornell
145. Our Lady of the Valley, Hornell
146. **St. Ignatius Loyola, Hornell
147. St. Mary Our Mother, Horseheads
148. **St. Francis Solanus, Interlaken
149. St. Catherine of Siena, Ithaca
150. Immaculate Conception, Ithaca
151. **Our Lady of the Lake, King Ferry
152. All Saints, Lansing
153. **St. Thomas Aquinas, Leicester
154. St. Rose, Lima

4907-6457-2452.2 18489.002
21553557.v3

155. St. Matthew Catholic Church Society, Livonia
156. **St. Joseph, Livonia
157. **St. Michael, Livonia Center
158. **St. Michael, Lyons
159. **St. Patrick, Macedon
160. **St. Gregory, Marion
161. **St. Patrick, McLean
162. St. Catherine of Siena, Mendon
163. **St. Michael, Montezuma
164. **St. Patrick, Moravia
165. **Church of the Assumption, Mount Morris
166. **St. Patrick, Mount Morris
167. **St. Patrick, Mumford
168. **St. Januarius, Naples
169. **St. John the Evangelist, Newark Valley
170. St. Michael, Newark
171. St. Christopher, North Chili
172. **Holy Angels, Nunda
173. St. Benedict, Odessa
174. **St. Mary of the Lake, Ontario
175. St. Maximillian Kolbe, Ontario
176. **Holy Cross, Ovid
177. The Parish of Mary, Mother of Mercy, Interlaken
178. St. Ann, Owasco
179. Blessed Trinity, Owego
180. St. Patrick, Owego
181. **Immaculate Heart of Mary, Painted Post
182. **St. Anne, Palmyra
183. The Parish of St. Katharine Drexel, Palmyra
184. Holy Spirit, Webster
185. St. Joseph, Penfield
186. **St. Michael, Penn Yan
187. Our Lady of Lakes Catholic Community, Penn Yan
188. **Sacred Heart of Jesus, Perkinsville
189. **St. Francis, Phelps
190. Church of the Transfiguration, Pittsford
191. St. Louis, Pittsford
192. **St. Raphael, Piffard
193. **St. Patrick, Prattsburg
194. **St. Thomas the Apostle, Red Creek
195. **St, Lucy, Retsof
196. **St. Mary, Rexville
197. **St. Joseph, Rush
198. **St. Mary, Rushville
199. **St. Patrick, Savannah
200. **St. Bernard, Scipio Center
201. **St. Mary of the Assumption, Scottsville
202. **St. Patrick, Seneca Falls
203. **St. Dominic, Shortsville
204. **Epiphany, Sodus
205. **St. Rose of Lima, Sodus Point
206. St. John the Evangelist, Spencerport
207. **St. Theresa, Stanley

4907-6457-2452.2 18489.002
21553557.v3

208. **St. James the Apostle, Trumansburg
209. **St. Michael's, Union Springs
210. **St. Pius the Tenth, Van Etten
211. St. Patrick, Victor
212. St. Francis and St. Clare, Waterloo
213. **St. Mary, Waterloo
214. St. Mary of the Lake, Watkins Glen
215. **St. James, Waverly
216. Holy Family Catholic Community, Wayland
217. **St. Joseph, Wayland
218. Holy Trinity, Webster
219. St. Paul, Webster
220. St. Rita, Webster
221. **St. John, Weedsport
222. **St. Joseph, Cato
223. Our Lady of the Snow, Weedsport
224. **St. Joseph, West Bloomfield
225. Catholic Community of Blessed Trinity, Wolcott
226. **St. Mary Magdalene, Wolcott
227. ** Most Precious Blood Church
228. The Cathedral Community Church of Rochester
229. Southeast Rochester Catholic Community


Other Entities

1. Catholic Charities of the Diocese of Rochester, Inc.
2. Rochester Catholic Press Association, Inc. ("Catholic Courier")
3. Catholic Youth Organization of Catholic Charities of the Diocese of Rochester
4. Providence Housing Development Corporation
5. Camp Stella Maris of Livonia, N.Y.
6. St. Bernards School of Theology and Ministry
7. Villa of Hope (f/k/a St. Joseph's Villa)
8. De Paul Community Services (f/k/a De Paul Mental Health Clinic)
9. Becket Hall, Inc.
10. DePaul Adult Care Communities, Inc. (formerly known as the DePaul Mental Health Services, Inc.)
11. Bishop Sheen Ecumenical Housing Foundation, Inc.
12. Charles Settlement House, Inc.
13. The Corporate Board of Education, Diocese of Rochester
14. Genesee Settlement House


Schools

1. All Saints in Corning
2. Holy Family in Elmira
3. St. Joseph in Auburn
4. St. Francis/St. Stephen in Geneva
5. De Sales High School in Geneva
6. Northeastern Catholic Jr. High School


** Indicates a parish that is closed, has merged with another or is otherwise inactive at this time.

## SCHEDULE 2
### List of Diocese Policies

| Incept | Expire | Insurer | Policy No. |
|---|---|---|---|
| June 1, 1978 | September 1, 1978 | First State Insurance Company | 926708 |

## SCHEDULE 3
### Notice Addresses for Participating Parties

| PARTICIPATING PARTY: | ADDRESS: |
|---|---|
| The Cathedral Community of Rochester NY; *successor in interest to the insurance rights of*: Sacred Heart Cathedral, Rochester, N.Y.; The Holy Rosary Church of the City of Rochester, Monroe County, N.Y.; Church of the Most Precious Blood | 296 Flower City Park, Rochester, NY 14615 |
| Roman Catholic Parish of St. Frances Xavier Cabrini; *successor in interest to the insurance rights of*: Our Lady of the Americas (*successor in interest to the insurance rights of* St. Francis Xavier Church; Church of the Most Holy Redeemer of Irondequoit, N.Y.; Our Lady of Mount Carmel Church, Rochester, N.Y.; Corpus Christi Church of Rochester, N.Y.); Light of Christ Roman Catholic Parish (*successor in interest to the insurance rights of* St. Philip Neri Church of Rochester, N.Y.; St. Andrews Roman Catholic Church of Rochester, N.Y.; Church of the Annunciation, Rochester, N.Y.); Church of Our Lady of Perpetual Help of Rochester; St. Michael's Church of Rochester, N.Y. | 124 Evergreen St., Rochester, NY 14605 |
| Peace of Christ Roman Catholic Parish of Rochester, NY; *successor in interest to the insurance rights of*: St. Ambrose Church of Rochester; St. James Church of Rochester, N.Y.; St. John the Evangelist Church of Rochester, N.Y. | 25 Empire Blvd., Rochester, NY 14096 |
| The Church of the Holy Apostles, Rochester, N.Y.; *successor in interest to the insurance rights of*: St. Francis of Assisi Church of Rochester, N.Y.; Church of the Holy Family, Inc.; The Church of St. Anthony of Padua | 7 Austin St., Rochester, NY 14606 |
| St. Monica Church of Rochester, N.Y.; *successor in interest to the insurance rights of*: The Church of Our Lady of Good Counsel; St. Augustine Church Corporation; SS. Peter and Paul's Roman Catholic Church, Rochester, N.Y. | 34 Monica St., Rochester, NY 14619 |
| St. Anne's Church of Rochester | 1600 Mount Hope Ave., Rochester NY 14620 |
| The Church of the Blessed Sacrament, Rochester, N.Y. | 259 Rutgers St., Rochester, NY 14607 |
| St. Boniface Church, Rochester, N.Y. | 330 Gregory St., Rochester, NY 14620 |

| | |
|---|---|
| St. Stanislaus Church of Rochester, N.Y.; *successor in interest to the insurance rights of*: St. Theresa of the Child Jesus Church, Bishop of Rochester | 34 Saint Stanislaus St., Rochester, NY 14621 |
| Immaculate Conception/St. Bridget, Rochester; *successor in interest to the insurance rights of*: The Immaculate Conception Church Society; St. Bridget's Church | 445 Frederick Douglass St., Rochester, NY 14608 |
| Kateri Tekakwitha Roman Catholic Parish; *successor in interest to the insurance rights of*: Church of Christ the King, Rochester, N.Y.; St. Cecilia Church, Irondequoit, N.Y.; Church of St. Margaret Mary; Church of St. Salome; St. Thomas Roman Catholic Church | 445 Kings Highway S., Rochester, NY 14617 |
| Church of St. Charles Borromeo; *successor in interest to the insurance rights of*: Church of the Holy Name of Jesus of Rochester, New York | 3003 Dewey Ave., Rochester, NY 14616 |
| Emmanuel Church of the Deaf of the Diocese of Rochester | 34 Monica St., Rochester, NY 14619 |
| St. George Roman Catholic Lithuanian Church, Inc. | 150 Varinna Dr., Rochester, NY 14618 |
| The Parish of the Holy Family, Gates, NY; *successor in interest to the insurance rights of*: Church of the Holy Ghost; St. Helen's Church of Gates, N.Y.; Church of St. Jude of the Town of Gates. | 4100 Lyell Rd., Rochester, NY 14606 |
| Holy Cross Church of Rochester, NY | 4492 Lake Ave., Rochester, NY 14612 |
| St. John the Evangelist Church Corp. | 2400 Ridge Rd. W., Rochester, NY 14625 |
| St. Lawrence Church of Rochester, N.Y. | 1000 N. Greece Rd., Rochester, NY 14626 |
| St. Mark's Church of Rochester, New York | 54 Kuhn Rd., Rochester, NY 14612 |
| St. Mary's Church Society, Inc. | 259 Rutgers St., Rochester, NY 14607 |
| Our Lady of Lourdes Church of Brighton | 150 Varinna Dr., Rochester, NY 14618 |
| Our Mother of Sorrows Church; *successor in interest to the insurance rights of:* Our Lady of Mercy Church of Rochester, N.Y. | 5000 Mt. Read Blvd., Rochester, NY 14612 |
| St. Mary's French Church Society (a/k/a Our Lady of Victory) | 210 Pleasant St., Rochester, NY 14604 |
| Church of Our Lady Queen of Peace of Rochester, N.Y. | 601 Edgewood Ave., Rochester, NY 14618 |
| St. Pius Tenth Church of Rochester, N.Y. | 3032 Chili Ave, Rochester, NY 14624 |
| St. Theodore's Church of Gates, N.Y. | 168 Spencerport Rd., Rochester, NY 14606 |
| St. Thomas More Church of Rochester, N.Y. | 2617 East Ave., Rochester, NY 14610 |
| The Catholic Parish of Saints Isidore and Maria Torriba; *successor in interest to the insurance rights of:* St. Catherine Roman Catholic Church | 51 Maple St., Addison, NY 14801 |

4907-6457-2452.2 18489.002
21553557.v3

| | |
|---|---|
| Society, Addison, N.Y.; St. Stanislaus Church of Bradford, N.Y.; St. Joseph's Roman Catholic Church of Campbell, N.Y. | |
| St. Alphonsus Catholic German Church | 90 Melrose Rd., Auburn, NY  13021 |
| St. Aloysius Church, Auburn, NY | 85 N. St., Auburn, NY  13021 |
| The Catholic Church of the Holy Family, Auburn, N.Y. | 85 N. St., Auburn, NY  13021 |
| St. Mary's Catholic Church, Auburn, N.Y. | 15 Clark St., Auburn, NY  13021 |
| Saints Mary and Martha Roman Catholic Parish Cayuga County, NY; *successor in interest to the insurance rights of:* St. Francis of Assisi Italian Roman Catholic Church; St. Hyacinth's Polish Roman Catholic Society Church | 299 Clark St., Auburn, NY 13021 |
| Sacred Heart Church of Auburn, N.Y. | 90 Melrose Rd., Auburn, NY  13021 |
| St. Ann's Church, Owasco, Cayuga County, N.Y. | 4890 Twelve Corners Rd., Owasco, NY 13021 |
| Good Shepherd Catholic Community, Aurora; *successor in interest to the insurance rights of:* St. Patrick's Church of Aurora, N.Y.; St. Joseph's Catholic Church of Cayuga, N.Y.; Our Lady of the Lake Church Corporation, King Ferry; St. Patrick's Catholic Church of Moravia, Cayuga County, N.Y.; St. Bernard's Catholic Church; St. Michael's Church of Union Springs, N.Y.; St. Isaac Jogues' Chapel | 303 Main St., Aurora, NY  13026 |
| St. Agnes Church Society, Avon, N.Y. | 96 Prospect St., Avon, NY 14414 |
| St. John Vianney Roman Catholic Parish, Steuben County, NY; *successor in interest to the insurance rights of:* St. Mary's Catholic Church Society of Bath, N.Y.; St. Gabriel's Catholic Church Society of Hammondsport, N.Y. | 32 E Morris St., Bath, NY  14810 |
| Church of the Nativity of the Blessed Virgin Mary, Brockport, N.Y.*; successor in interest to the insurance rights of:* Newman Oratory of Brockport, New York | 152 Main St., Brockport, NY 14420 |
| St. Martin De Porres; *successor in interest to the insurance rights of:* Catholic Church of St. Vincent DePaul of Churchville, N.Y.; St. Columba's Church, Caledonia, N.Y.; St. Mary of the Assumption Church, Scottsville, N.Y.; St. Patrick's Church, Mumford, N.Y. | 198 North Rd., Caledonia, NY  14423 |
| St. Benedict Roman Catholic Parish Ontario County, NY; *successor in interest to the insurance rights of:*  St. Mary's Church Corp., Canandaigua, N.Y.; St. Bridget's Church of East Bloomfield, N.Y. | 95 N. Main St., Canandaigua, NY  14424 |

| | |
|---|---|
| St. Peter's Roman Catholic Parish, Ontario County; *successor in interest to the insurance rights of:* St. Felix's Church, Inc.; St. Francis Church; St. Dominic Roman Catholic Church Society | 12 Hibbard Ave., Clifton Springs, NY 14432 |
| St. Joseph the Worker Roman Catholic Parish, Wayne County; *successor in interest to the insurance rights of:* St. John the Evangelist Roman Catholic Church; St. Michael's Church Society, Inc., Lyons, N.Y.; St. Patrick's Roman Catholic Church, Savannah, N.Y. | 43 W. DeZeng St., Clyde, NY 14433 |
| St. Margaret's Church of Conesus Lake, Livonia, N.Y. | P.O. Box 77, Livonia, NY 14487 |
| All Saints, Corning; *successor in interest to the insurance rights of:* The Church of St. Mary's of Corning, N.Y.; St. Patrick's Catholic Church, Corning, N.Y.; St. Vincent De Paul's Roman Catholic Church Society Inc., Corning, N.Y.; Church of the Immaculate Heart of Mary of Painted Post | 222 Dodge Ave., Corning, NY 14830 |
| The Church of St. John Fisher of the Town of Huron, New York | 11956 Washington St., Wolcott, NY 14590 |
| Church of St. Jerome, East Rochester, N.Y. | 207 S. Garfield St., East Rochester, NY 14445 |
| Saint Cecilia's Roman Catholic Church Society | 1010 Davis St., Elmira, NY 14901 |
| St. John the Baptist Catholic Church, Elmira, N.Y. | 1010 Davis St., Elmira, NY 14901 |
| Parish of the Most Holy Name of Jesus; *successor in interest to the insurance rights of:* St. Mary's Roman Catholic Church Society; Blessed Sacrament Roman Catholic Church of Elmira, NY (*successor in interest to the insurance rights of* St. Anthony's Church of Elmira, N.Y.; St. Patrick's Roman Catholic Church of Elmira, N.Y.; Saint Peter and Paul's Church, Inc.); Christ the Redeemer Roman Catholic Parish of Elmira, NY (*successor in interest to the insurance rights of* Our Lady of Lourdes Church of Elmira, New York; St. Casimir's Roman Catholic Church Society, Elmira, N.Y.; Saint Charles Borromeo Roman Catholic Church, Elmira Heights, N.Y.) | 1010 Davis St., Elmira, NY 14901 |
| Church of the Assumption, Fairport, N.Y. | 20 East Ave., Fairport, NY 14450 |
| Church of the Resurrection, Perinton, New York | 63 Mason Rd., Fairport, NY 14450 |
| Church of St. John of Rochester of Perinton, New York | 8 Wickford Way, Fairport, NY 14450 |
| The Church of the Holy Cross of Dryden, New York | 375 George Rd., Freeville, NY 13068 |
| St. Luke the Evangelist Roman Catholic Church Society of Livingston County; *successor in* | 13 North St., Geneseo, NY 14454 |

4907-6457-2452.2 18489.002
21553557.v3

| | |
|---|---|
| *interest to the insurance rights of:* St. Mary's Roman Catholic Church, Geneseo, N.Y., Livingston County; Thomas Aquinas Roman Catholic Church of Moscow, Livingston County, N.Y.; St. Patrick's Church Society of Mt. Morris, New York; Church of the Holy Angels of Nunda, N.Y.; St. Lucy's Church, Retsof, N.Y. | |
| Our Lady of Peace Roman Catholic Church of Geneva, NY; *successor in interest to the insurance rights of:* Church of St. Francis DeSales; St. Stephen's Roman Catholic Church, Inc. of Geneva, N.Y. | 130 Exchange St., Geneva, NY  14456 |
| St. Hilary's Catholic Church, Genoa, N.Y. | 299 Main St., Aurora, NY 13026 |
| St. Anthony's Catholic Church of Groton, N.Y. | 312 Locke Rd., Groton, NY  13073 |
| Church of the Holy Name, Groveland, N.Y. | 13 North St., Geneseo, NY  14454 |
| The Church of St. Elizabeth Ann Seton | P.O. Box 149, Hamlin, NY  14464 |
| Marianne Cope Roman Catholic Parish, Monroe County NY; *successor in interest to the insurance rights of:* Guardian Angels Church of Rochester, New York; Church of the Good Shepherd, Henrietta, N.Y.; St. Joseph's Catholic Society of Rush, N.Y. | 2061 E. Henrietta Rd., Rochester, NY 14623 |
| Church of St. Leo, Hilton, N.Y. | 110 Old Hojack Lane, Hilton, NY 14468 |
| St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills) | 8961 Main St., Honeoye, NY 14471 |
| St. Paul of the Cross Church, Honeoye Falls, N.Y. | 31 Monroe St., Honeoye Falls, NY  14472 |
| Our Lady of the Valley; *successor in interest to the insurance rights of:* St. Joachim's Roman Catholic Church St. Ann's Roman Catholic Church; St. Ignatius Loyola Church of Hornell, N.Y.; St. Mary's Roman Catholic Church | 27 Erie Ave., Hornell, NY 14843 |
| Church of St. Mary Our Mother, Horseheads, N.Y. | 816 W. Broad St., Horseheads, NY  14845 |
| St. Catherine of Siena Church | 302 Saint Catherine Circle, Ithaca, NY 14850 |
| The Immaculate Conception Church, Ithaca, N.Y. | 113 N. Geneva St., Ithaca, NY  14850 |
| All Saints Church Corporation, Ludlowville, NY | 347 Ridge Rd., Lansing, NY 14882 |
| St. Rose Roman Catholic Church | 1985 Lake Ave., Lima, NY  14485 |
| St. Matthew Catholic Church Society; *successor in interest to the insurance rights of:* St. William's Church Society, Conesus, N.Y.; St. Joseph's Catholic Church Society of Livonia, N.Y. | P.O. Box 77, Livonia, NY 14487 |
| St. Michael's Church Society, Livonia Center, N.Y. | 8961 Main St., Honeoye, NY  14471 |
| Parish of St. Katharine Drexel, Palmyra; *successor in interest to the insurance rights of:* St. Patrick's Church of Macedon, N.Y.; St. Gregory's Roman | 52 Main St., Macedon, NY  14502 |

4907-6457-2452.2 18489.002
21553557.v3

| | |
|---|---|
| Catholic Church of Marion, N.Y.; Roman Catholic Church of St. Anne, Palmyra, N.Y. 14522 | |
| St. Catherine's Roman Catholic Church, Mendon, NY | 26 Mendon-Ionia Rd., Mendon, NY 14506 |
| St. Michael's Church, Montezuma, N.Y. | 2667 Hamilton St., Weedsport, NY 13166 |
| St. Michael's Church, Newark, N.Y. | 401 S. Main St., Newark, NY 14513 |
| St. Christopher of Chili, New York | 3350 Union St., North Chili, NY 14514 |
| St. Benedict's Mission Church of Odessa, New York | P.O. Box 289, Watkins Glen, NY 14891 |
| St. Maximilian Kolbe Catholic Church Society of Wayne County; *successor in interest to the insurance rights of:* St. Mary's of the Lake Roman Catholic Church Society; Church of the Epiphany, Sodus, N.Y.; Church of St. Rose of Lima, Sodus Point, N.Y. | 5823 Walworth Rd., Ontario, NY 14519 |
| The Parish of Mary, Mother of Mercy, Tompkins County, New York; *successor in interest to the insurance rights of:* St. Francis Solanus Church, Interlaken, N.Y.; Holy Cross Church; St. James the Apostle Church of Trumansburg, N.Y. | PO Box 403, Interlaken, NY 14847 |
| Blessed Trinity, Owego; *successor in interest to the insurance rights of:* St. Margaret Mary's Roman Catholic Church of Apalachin, N.Y.; St. Francis Roman Catholic Church; St. John the Evangelist Roman Catholic Church; St. Pius the Tenth Church, Van Etten, N.Y.; St. James the Apostle, Roman Catholic Church Society of Waverly, N.Y. | 309 Front St., Owego, NY 13827 |
| St. Patrick's Roman Catholic Church Society of Owego, N.Y. | 309 Front St., Owego, NY 13827 |
| St. Joseph's Catholic Church of Penfield, NY | 43 Gebhardt Rd., Penfield, NY 14526 |
| Our Lady of the Lakes Catholic Community; *successor in interest to the insurance rights of:* St. Andrew's Church of Dundee; St. Januarius Roman Catholic Church St. Michael's Church of Penn Yan, N.Y.; St. Patrick's Catholic Church, Prattsburg, N.Y.; St. Mary's Church, Rushville, N.Y.; St. Theresa's Church, Stanley, N.Y. | 210 Keuka St., Penn Yan, NY 14527 |
| St. Raphael's Church, Piffard, N.Y. | 13 North St., Geneseo, NY 14454 |
| Church of the Transfiguration | 50 W Bloomfield Rd., Pittsford, NY 14534 |
| St. Louis Church of Pittsford, N.Y. | 64 S. Main St., Pittsford, NY 14534 |
| Church of St. John, the Evangelist, Spencerport, Monroe Co, N.Y. | 55 Martha St., Spencerport, NY 14559 |
| St. Patrick's Church of Victor, N.Y. | 115 Maple Ave., Victor, NY 14564 |
| St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY; *successor in interest to the* | 25 Center St., Waterloo, NY 13165 |

4907-6457-2452.2 18489.002
21553557.v3

| | |
|---|---|
| *insurance rights of:* St. Mary's Church, Waterloo, N.Y.; St. Patrick's Church of Seneca Falls, N.Y. | |
| St. Mary's of the Lake Roman Catholic Church Society | 905 N. Decatur St., Watkins Glen, NY 14891 |
| Holy Family Catholic Community; *successor in interest to the insurance rights of:* St. Pius V Church Society, Cohocton, N.Y.; St. Mary's Church; The Church of the Sacred Heart of Jesus, Perkinsville, N.Y.; St. Joseph's Roman Catholic Church Corp., Wayland, N.Y. | 206 Fremont St., Wayland, NY 14572 |
| The Roman Catholic Church of the Most Holy Trinity at Webster, N.Y. | 1460 Ridge Rd., Webster, NY 14580 |
| St. Paul's Roman Catholic Church of Webster, N.Y. | 783 Hard Rd., Webster, NY 14580 |
| Church of the Holy Spirit of Penfield, N.Y. | 1355 Hatch Rd., Webster, NY 14580 |
| Our Lady of the Snow, Weedsport; *successor in interest to the insurance rights of:* St. Patrick's Roman Catholic Church of Cato, N.Y.; St. John's Church, Port Byron, N.Y. 13140; St. Joseph's Catholic Church of Weedsport, N.Y. | 2667 Hamilton St., Weedsport, NY 13166 |
| St. Joseph's Church of West Bloomfield | 95 N. Main St., Canandaigua, NY 14424 |
| St. Rita's Church of West Webster, N.Y. | 1008 Maple Dr., West Webster, NY 14580 |
| Catholic Community of the Blessed Trinity of Wolcott, NY; *successor in interest to the insurance rights of:* St. Mary Magdalen Church, Wolcott, N.Y.; St. Thomas the Apostle Roman Catholic Church of Red Creek; St. Jude | 11956 Washington St., Wolcott, NY 14590 |
| Catholic Charities of the Diocese of Rochester | 1150 Buffalo Rd., Rochester, NY 14624 |
| Rochester Catholic Press Association, Inc. | 1150 Buffalo Rd., Rochester, NY 14624 |
| Catholic Youth Organization of Catholic Charities of the Diocese of Rochester | 1150 Buffalo Rd., Rochester, NY 14624 |
| DePaul Community Services, Inc. f/k/a DePaul Mental Health Services, Inc. f/k/a DePaul Clinic, Inc. | 1931 Buffalo Rd., Rochester, NY 14624 |
| The Corporate Board of Education, Diocese of Rochester | 1150 Buffalo Rd., Rochester, NY 14624 |
| Bishop Sheen Ecumenical Housing Foundation, Inc. | 150 French Rd., Rochester, NY 14618 |
| Charles Settlement House, Inc. | 71 Parkway, Rochester, NY 14608 |
| St. Bernard's School of Theology and Ministry | 120 French Rd., Rochester, NY 14618 |
| Camp Stella Maris of Livonia, N.Y. | 4395 East Lake Rd., Livonia, NY 14487 |
| Genesee Settlement House | 10 Dake St., Rochester, NY 14605 |
| Becket Hall, Inc. | 1150 Buffalo Rd., Rochester, NY 14624 |
| Villa of Hope | 3300 Dewey Avenue, Rochester, NY 14616 |

4907-6457-2452.2 18489.002
21553557.v3

| | |
|---|---|
| All Saints Academy | c/o Department of Catholic Schools, 1150 Buffalo Rd., Rochester, NY 14624 |
| Holy Family School | c/o Department of Catholic Schools, 1150 Buffalo Rd., Rochester, NY 14624 |
| St. Joseph School | c/o Department of Catholic Schools, 1150 Buffalo Rd., Rochester, NY 14624 |
| St. Francis/St. Stephen | 17 Elmwood Ave., Geneva, NY 14456 |
| De Sales High School | c/o Department of Catholic Schools, 1150 Buffalo Rd., Rochester, NY 14624 |
| Northeastern Catholic Jr. High School a/k/a Bishop Hogan Catholic Academy | c/o Department of Catholic Schools, 1150 Buffalo Rd., Rochester, NY 14624 |

4907-6457-2452.2 18489.002
21553557.v3

# EXHIBIT A
## Approval Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **THE DIOCESE OF ROCHESTER,** | : | Case No. 19-20905-PRW |
| Debtor. | : | |
| | : | Re: Doc. No. [ ] |
| | : | |
| | : | |

------------------------------X

## ORDER (I) APPROVING THE FIRST STATE SETTLEMENT AGREEMENT, RELEASE AND BUYBACK, (II) APPROVING THE SALE OF THE FIRST STATE POLICIES FREE AND CLEAR, (III) ENJOINING CLAIMS, AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated _____, 2025 ("**Motion**")[1] of The Diocese of Rochester, the debtor-in-possession in the above-captioned Chapter 11 case ("**Diocese**"), for entry of an order approving the settlement agreement, releases, insurance policy buyback, and related injunction-in-aid ("**Settlement**") by and among the Diocese, the other Diocese Parties, and First State ("**First State**"), pursuant to Sections 105(a) and 363 of Title 11 of the United States Code ("**Bankruptcy Code**") and Rules 2002(a)(2), 6004, and 9019 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), in each case as described in the Motion and the Settlement Agreement, Release, and Policy Buyback attached to the Motion as **Annex I** (the "**Agreement**"); and the Court having reviewed the Motion and the Agreement; and it appearing that due and adequate notice of the Motion and Agreement having been given to all Persons entitled thereto, and that no other or further notice need be given; and the Court on \_\_\_\_\_, 2025 at [[ ] AM/PM] having held a hearing (the "**Sale Hearing**") to consider the relief requested in the Motion; and upon the record of the Sale Hearing; and, after due deliberation, including, without limitation, for the reasons stated by the Court on the record of the Sale Hearing, it appearing that the relief requested in the Motion and granted herein is in the best interests of the Diocese's estate, its creditors, and other parties in interest; and good sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.    This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Standing Order* of reference from the United States

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below).

District Court for the Western District of New York dated as of February 29, 2012, as amended and in effect. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief sought in the Motion are Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9019.

C.     Proper, timely, adequate and sufficient notice of the Sale Hearing and Motion and the relief requested therein, including, without limitation, the Settlement and the transactions described in the Agreement, including, without limitation, issuance of the injunction-in-aid referenced in the Agreement and the Motion (all such transactions being collectively referred to, for convenience, as the "**Sale Transaction**") has been provided in accordance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules to all interested Persons, including, without limitation: (a) all Abuse Claimants known to or reasonably ascertainable by any Diocese Party; (b) the Participating Parties; (c) the Committee; (d) the Unknown Claims Representative; (e) all other Persons that must be served with written notice under Bankruptcy Rule 2002, including, without limitation, all Persons who have filed notices of appearance in the Bankruptcy Case; (f) all Persons known or believed by any Diocese Party to have provided insurance to any of the Diocese Parties; and (g) to the extent not captured in (f), all Non-Settling Insurers. Notice of the Sale Transaction and the Sale Hearing was published in [The New York Times/ USA Today and [ ]] on _____, 2025, as set forth in the publication notice attached to the Motion. The notices described above were good, sufficient, and appropriate under the circumstances, and no other notice of the Motion or Sale Hearing is required.

D.     The disclosures made by the Diocese concerning the Agreement, the Sale Transaction, and the Sale Hearing were good, complete, and adequate.

E.     A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested Persons.

F.     The Diocese has full corporate power and authority to consummate the Sale Transaction pursuant to the Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Diocese to consummate the Sale Transaction. Similarly, the other Diocese Parties have full corporate power and authority to consummate the Sale Transaction pursuant to the Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Diocese Parties to consummate the Sale Transaction.

G.     Approval of the Agreement and consummation of the Sale Transaction are in the best interests of the Diocese's estate, its creditors (specifically including the Abuse Claimants), and other parties-in-interest, including because the proceeds of and from the Sale Transaction will benefit Abuse Claims.

H.     The Diocese has demonstrated (i) good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale Transaction pursuant to Section 363(b) of the Bankruptcy Code and (ii) that the Sale Transaction is fair, reasonable, and in the best interests of the Diocese's estate and creditors pursuant to Bankruptcy Rule 9019. Among other things, the Diocese has demonstrated that: the Agreement, and closing thereon, is necessary and appropriate

to realize the value of the Purchased Property[2] and maximize the value of the Diocese's estate; the probability of success for the Diocese's estate in litigation over the matters resolved by the Agreement, including, without limitation, the Adversary Proceeding, is uncertain; litigation of the matters resolved by the Agreement would be complex and costly to the Diocese's estate; and the Settlement Amount is within the reasonable range of potential litigation outcomes. The Sale Transaction constitutes a reasonable and sound exercise of the Diocese's business judgment and its powers and duties under applicable law and should be approved.

I.     The Agreement was negotiated, proposed, and entered into without collusion, in good faith, and from arm's length bargaining positions.  Without limiting the foregoing, the Agreement resulted from a lengthy mediation that proceeded pursuant to a prior order of the Court. First State is not an "insider" or "affiliate" of the Diocese, as those terms are defined in the Bankruptcy Code.  None of the Diocese Parties or First State have engaged in any conduct that would: (i) cause or permit the avoidance of the Agreement or the consummation of the Sale Transaction under Section 363(n) of the Bankruptcy Code; (ii) cause or permit the imposition of any costs or damages (including without limitation attorneys' fees or punitive damages) under Section 363(n) of the Bankruptcy Code; or (iii) prevent the application of Section 363(m) of the Bankruptcy Code.

J.     First State is a good faith purchaser of the Purchased Property under Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby, in that, among other things: (i) all payments to be made by or to First State, and other agreements or arrangements entered into by First State, in connection with the Sale Transaction have been disclosed; (ii) First State neither induced nor caused the Diocese's Chapter 11 filing; (iii) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith, the arm's length transaction between First State and the Diocese Parties was the product of mediation, and all Parties to the Agreement were, or had the opportunity to be, represented by counsel; and (iv) First State has not violated Section 363(n) of the Bankruptcy Code by any action or inaction.  First State has at all times acted in good faith with respect to the Agreement and will continue to be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the Sale Transaction.

K.     The terms and conditions of the Agreement are fair and reasonable.  The Settlement Amount provided by First State pursuant to the Agreement (i) is fair and reasonable; (ii) monetizes the Purchased Property at the highest and best amount; (iii) will provide a higher and more certain recovery for the Diocese's creditors than would be provided by any other practical available alternative given the complexity, cost, and uncertainty of such alternatives; and (iv) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.  The Settlement Amount is within the reasonable range of potential litigation outcomes, and the Diocese's determination to accept the Settlement Amount and otherwise enter into the Agreement is a valid and sound exercise of the Diocese's business judgment and consistent with the Diocese's fiduciary duties.

---

[2] "**Purchased Property**" as used herein means both (i) the Diocese Policies and (ii) the Extra-Contractual Claims of the Diocese Parties, all as defined in the Agreement.

L.      First State: (i) is not a mere continuation of the Diocese or its estate, nor is there any continuity of enterprise between First State and the Diocese or First State and any of the other Diocese Parties; (ii) is not holding itself out to the public as a continuation of any of the Diocese Parties; and (iii) is not a successor to the Diocese, its estate, or any of the Diocese Parties for any purpose, and the Sale Transaction does not amount to a consolidation, merger, or *de facto* merger of First State and any of the Diocese Parties.

M.      The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither First State nor any of the Diocese Parties are fraudulently entering into the Sale Transaction.

N.      The transfer of the Purchased Property to First State (i) does not constitute an avoidable transfer under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law and (ii) does not and will not subject First State to any liability whatsoever with respect to the Diocese's operation prior to the closing of the Sale Transaction (the "**Closing**").

O.      First State has agreed to purchase the Purchased Property pursuant to its Agreement and this Order; First State has not agreed to purchase, and is not purchasing, any other assets of the Diocese's estate.  First State has not agreed to assume, and after Closing shall have no obligations with respect to, any liabilities of the Diocese, its subsidiaries or affiliates, the other Diocese Parties, or any Covered Parties.  Without limiting the generality of the foregoing, First State: (i) is not assuming and shall have no liability for any Claims arising from or relating to Abuse, the Purchased Property, or the Bankruptcy Case; and (ii) is not assuming and shall have no liability with respect to the Diocese's, any Covered Party's, or any other Diocese Party's obligations to Abuse Claimants, any other creditors, future claimants (including without limitation Unknown Abuse Claims), or the Diocese's, any Covered Party's, or any Diocese Party's employees, in each case, by reason of the purchase of the Purchased Property under the Agreement.

P.      The Purchased Property constitutes property of the Diocese's estate, and the Diocese is the lawful owner of the Purchased Property and holds good title thereto.  The transfer of the Purchased Property to First State pursuant to the Agreement will be a legal, valid, binding, and effective transfer of the Purchased Property, and will vest First State with all right, title, and interest of the Diocese and the Diocese Parties in and to the Purchased Property, in each case free and clear of all Interests (as defined below, and including, without limitation, any Interests of the Diocese Parties, Covered Parties, other named or additional insureds or assureds, or those with direct action rights against the Purchased Property).  After Closing, First State shall have no liability for any Claims against or liabilities of the Diocese, its estate, or the other Diocese Parties or Covered Parties.  Without limiting any of the foregoing, the Diocese, the Diocese Parties, and First State have agreed that, upon the occurrence of the Settlement Agreement Effective Date and payment of the Settlement Amount by First State, the Purchased Property shall be deemed void *ab initio*, terminated, extinguished, and of no further force and effect.

Q.      The Diocese may sell the Purchased Property free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, Claims (including, without limitation, any "claim" as defined in Section 101(5) of the Bankruptcy Code), leases, possessory leasehold interests, charges, options, rights of first refusal or option to purchase any real property, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties,

options, contractual commitments, restrictions, environmental liabilities, options to purchase, and options, in each case of whatever kind, nature, or description in, against, or with respect to any of the Purchased Property, having arisen, existed or accrued prior to and through closing of the Sale Transaction, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute, or otherwise and whether arising prior to, on, or after the Petition Date, including without limitation Abuse Claims, Coverage Claims, and all other Barred Claims (collectively, and including all "interests" as the term is used in Bankruptcy Code Section 363, "**Interests**"), because one or more of the standards set forth in Bankruptcy Code Section 363(f)(1) – (5) has been satisfied with regard to each such Interest.  Without limiting the generality of the foregoing: (i) non-Diocese parties with Interests in or with respect to the Purchased Property who did not object, or who withdrew their objections to the Sale Transaction or the Motion have waived their right to object to the sale of the Purchased Property free and clear of such non-Diocese parties' Interests in the Purchased Property pursuant to Section 363(f)(2) of the Bankruptcy Code; and (ii) non-Diocese parties with Interests in or with respect to the Purchased Property who objected to the Motion and did not withdraw any such objection (a) are the holders of Interests subject to *bona fide* dispute under Bankruptcy Code Section 363(f)(4) and/or (b) can be compelled to accept a monetary satisfaction of their Interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

R.      If the sale of the Purchased Property were not free and clear of Interests, or if the First State Released Parties and/or First State's Related Persons would, or in the future could, be liable for any of the Interests, First State would not have entered into the Agreement and would not consummate the Sale Transaction or pay the Settlement Amount, thus adversely affecting the Debtor, its estate, and its creditors (including, without limitation, the Abuse Claimants), as well as the other Diocese Parties.

S.      Issuing a supplemental injunction under Section 105(a) of the Bankruptcy Code as provided herein is essential to give effect to the sale of the Purchased Property to First State and this Order's approval of such sale free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code.  The Settling Insurer Injunction set forth in Paragraph 19 below not only is a necessary prerequisite for First State's assent to the terms and conditions of its Agreement, such that First State will not consummate the Sale Transaction or pay its Settlement Amount in the absence of such an injunction from this Court, but also is warranted to ensure compliance with this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1.      The Motion is granted and approved as set forth herein.

2.      The findings of fact set forth above and conclusions of law stated herein, in addition to any findings of fact and conclusions of law stated by the Court at the Sale Hearing, shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Motion pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.     Any and all objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits with prejudice, and in each case the Person asserting the objection or reservation of rights is enjoined from taking any action against the First State Released Parties or First State's Related Persons to recover any Claim which such objecting Person has solely against the Diocese, its estate, or any other Diocese Party or Covered Party. Those parties who did not object or who withdrew their objections to the Motion are deemed to have consented to the relief granted herein, pursuant to Section 363(f)(2) of the Bankruptcy Code.

## Approval of the Agreements

4.     The Agreement is approved in its entirety, pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Without limiting the generality of the foregoing, the settlement and mutual release of Claims as set forth in the Agreement is hereby approved pursuant to Bankruptcy Rule 9019. All factors set forth in *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007), either weigh in favor of the Agreement or do not apply.

5.     Pursuant to Section 363(b) of the Bankruptcy Code, the Diocese is authorized to consummate the Sale Transaction under and in accordance with the terms and conditions of the Agreement, and the Diocese shall at all times act in accordance with the terms thereof.

6.     The Parties are authorized to execute and deliver, and empowered to perform under, consummate, and implement the Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient, or desirable to implement the Agreement and consummate the Sale Transaction pursuant thereto and effectuate the provisions of this Order and the transactions approved hereby, and to take all further actions as may be requested by First State for the purpose of assigning, transferring, granting, conveying, and conferring to First State or reducing to First State's possession, the Purchased Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

7.     First State is authorized and directed to pay the respective Settlement Amount to the Trust under and subject to the satisfaction of all terms and conditions of the Agreement.

8.     The Settlement Amount provided by First State for the Purchased Property constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

9.     None of First State's Related Persons or any First State Released Party shall be required to seek or obtain relief from the automatic stay under Section 362 of the Bankruptcy Code to enforce any of its or their rights or remedies under the Agreement or any other document related to the Agreement or the Sale Transaction. The automatic stay imposed by Section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order; *provided*, *however*, that this Court shall retain jurisdiction over any and all disputes with respect thereto.

10. This Order shall be binding in all respects upon: (a) the Diocese and its Related Persons; (b) the Diocese's estate; (c) the other Diocese Parties; (d) all creditors (including without limitation all Abuse Claimants); (e) all holders of Interests whether known or unknown (including but not limited to any Non-Settling Insurers and Covered Parties) against or on all or any portion of the Purchased Property; (f) the First State Released Parties and First State's Related Persons; (g) the Purchased Property; (h) the Unknown Claims Representative; (i) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code; and (j) all Persons and Entities receiving notice (or deemed to have received notice pursuant to this Order) of the Motion or the Sale Hearing. The Agreement shall be binding in all respects upon: (x) the Diocese, its Related Persons, and its estate; (y) the Diocese Parties; and (z) any trustee that may be subsequently appointed in the Bankruptcy Case, whether pursuant to any plan of reorganization or liquidation (including without limitation the Trustee appointed under the Plan), under Section 1104 of the Bankruptcy Code, or upon a dismissal or conversion of this Bankruptcy Case under Chapter 7 of the Bankruptcy Code.

**Transfer of the Assets**

11. The conditions of Section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Diocese may sell the Purchased Property free and clear of any Interests therein.

12. Pursuant to Sections 105 and 363(b) and (f) of the Bankruptcy Code, Bankruptcy Rule 9019, applicable New York State law, the Declarations in support of the Motion, and the record of the Sale Hearing, the Diocese has set forth the legal authority necessary to support this Court's findings herein.

13. Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Property and the Diocese Parties' rights, title, and interest therein shall upon Closing be transferred to First State, free and clear of all Interests (including without limitation the Interests of the Diocese Parties and any Covered Parties), and all such Interests are unconditionally and forever released and extinguished as against the Purchased Property. Without limiting the generality of the foregoing, the sale of the Purchased Property under the Agreement shall be free and clear of all Abuse Claims (whether Consenting Class 4 Claims or Non-Consenting Class 4 Claims), Barred Claims, Coverage Claims, Inbound Contribution Claims, Insurer Contribution Claims, Medicare Claims, Related Insurance Claims, Direct Action Claims, and any other Claims arising from or related in any way to an Abuse Claim or any portion of the Purchased Property.

14. Upon Closing, all Persons (and their respective successors and assigns), including but not limited to all governmental, tax, and regulatory authorities, Diocese Parties, Entities, Covered Parties, Non-Settling Insurers, Abuse Claimants, and trade and other creditors, holding Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in, or with respect to the Purchased Property, including, without limitation, such Interests arising or accruing under or out of, in connection with, or in any way relating to the transfer of the Purchased Property to First State, hereby are forever barred, estopped, and permanently enjoined from asserting such Person's or Entity's Interests against the Purchased Property, the First State Released Parties, or First State's Related Persons.

Effective upon Closing none of the First State Released Parties or any of First State's Related Persons shall have any liability for any Claims (a) against the Diocese, its estate, or any of the Covered Parties or other Diocese Parties or (b) in respect of the Purchased Property.

15. The transfer of the Purchased Property to First State pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Purchased Property, and shall vest First State with all right, title, and interest of the Diocese and the Diocese Parties in and to the Purchased Property. Upon the occurrence of the Settlement Agreement Effective Date and payment of the Settlement Amount by First State, the Diocese Policies shall be terminated and no longer in force or effect, exhausted in retrospect as to all coverages, and all Interests the Diocese or any other Person or Entity (including without limitation any of the other Diocese Parties or Covered Parties) may have had, may presently have, or may in the future have, in such Purchased Property are released and extinguished, and all such Persons (including without limitation the Diocese Parties and Covered Parties) and Entities hereby are forever barred, estopped, and permanently enjoined from asserting any such Interest against the Purchased Property, the First State Released Parties, and/or any of First State's Related Persons. First State's payment of the Settlement Amount constitutes full and complete performance of any and all obligations under the Purchased Property, including without limitation any performance owed to the Diocese Parties or Covered Parties, and exhausts all limits of liability of the Purchased Property.

16. Upon occurrence of the Settlement Agreement Effective Date:

(a) all Interests the Diocese Parties may have had, may presently have, or in the future may have in the Purchased Property, as applicable, are released pursuant to the terms of the Agreement; and

(b) the Diocese Parties accept the Settlement Amount in full and complete satisfaction of First State's past, present, and future obligations, including, without limitation, any obligations to any of the Diocese Parties under such Purchased Property or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way to such Purchased Property (including Coverage Claims), whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether such Claims arise from, relate to, or are in connection with the Abuse Claims, Barred Claims, or otherwise.

**No Successor Liability**

17. The transfer of the Purchased Property to First State shall not result in any First State Released Parties, any of First State's Related Persons, or the Purchased Property having any of the following: (a) any liability or responsibility for Interests in or Claims against the Diocese or against an insider of the Diocese; (b) liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any Claims or Interests; or (c) any liability or responsibility to the Diocese except as is expressly set forth in the Agreement.

18. Without limiting the generality of the foregoing, none of the First State Released Parties or any First State's Related Persons shall have any successor or vicarious liabilities of any

kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, successor or successor employer liability, *de facto* merger or joint venture, mere continuation or substantial continuity, whether known or unknown as of Closing, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables between the Diocese and any non-debtor subsidiary or affiliate (including, without limitation, any Diocese Party), liabilities relating to or arising from any environmental laws, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Purchased Property prior to Closing.

## Settling Insurer Injunction

19.     Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, and in consideration of the undertakings of First State pursuant to the Agreement, including First State's purchase of the Purchased Property free and clear of all Claims and Interests pursuant to Section 363(f) of the Bankruptcy Code as provided herein, any and all Persons and Entities that have held, now hold, or who may in the future hold any Claims or Interests (including without limitation all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Abuse Claimants, perpetrators, Covered Parties, any other additional insureds or assureds or named insureds or assureds, Non-Settling Insurers, the Diocese Parties, and all others holding Claims or Interests of any kind or nature whatsoever, including, without limitation, those Claims released or to be released pursuant to the Agreement), which Claims or Interests are under, arise out of, relate to, or connect in any way with an Abuse Claim or any of the Purchased Property, including, without limitation, (a) Abuse Claims (whether Consenting Class 4 Claims or Non-Consenting Class 4 Claims), Unknown Abuse Claims, Coverage Claims, Inbound Contribution Claims, Insurer Contribution Claims, Related Insurance Claims, Direct Action Claims, Tort Actions, and all other Channeled Claims, (b) the payment of any of the Claims identified previously, including, without limitation, Medicare Claims, and (c) all other Barred Claims or Interests, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Claim or Interest against any of (x) the First State Released Parties or First State's Related Persons, (y) the assets or property of any First State Released Parties or any of First State's Related Persons, or (z) the Purchased Property, including by:

(i)      commencing or continuing in any manner any action or other proceeding of any kind against any First State Released Parties, any of First State's Related Persons, or against the property or assets of any of the foregoing;

(ii)     enforcing, attaching, collecting, or recovering, or seeking to accomplish any of the preceding, by any manner or means, any judgment, award, decree, or order against any First State Released Parties, any of First State's Related Persons, or against the property or assets of any of the foregoing;

(iii)    creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind against any First State Released Parties, any of First State's Related Persons, or against the property or assets of any of the foregoing;

(iv) asserting, implementing, or effectuating any such Claim of any kind against: (A) any obligation due to any of the First State Released Parties or First State's Related Persons, (B) any of the First State Released Parties or First State's Related Persons, or (C) the property or assets of any of First State Released Parties or First State's Related Persons;

(v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Order; and

(vi) asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any First State Released Parties, any of First State's Related Persons, or against the property or assets of any of the foregoing.

The actions described in this Paragraph 19 are "**Enjoined Actions**," and the injunction set forth herein is the "**Settling Insurer Injunction**." The Settling Insurer Injunction shall be a permanent injunction against the Enjoined Actions and may not be modified, dissolved, or terminated.

20. The Settling Insurer Injunction shall be effective upon the occurrence of the Settlement Agreement Effective Date and First State's payment of the Settlement Amount to the Trust pursuant to the terms of the Agreement. The Settling Insurer Injunction bars pursuit of the above referenced Claims and/or Interests against the First State Released Parties, First State's Related Persons, or the property or assets of each (including, without limitation, the Purchased Property), but against no other person or thing. In a successful action to enforce this Settling Insurer Injunction in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

21. The Settling Insurer Injunction shall not enjoin (a) the right of any Person or Entity against the Trust or a Non-Settling Insurer, or (b) the Trustee from enforcing the Trust Documents.

## Reservation

22. Nothing in this Order shall serve as a release of any claim or cause of action against First State or any of its respective Related Persons regarding disclosure of any information from any "Sexual Abuse Proof of Claim Form" (as defined in the Bar Date Order). All parties' rights regarding such claims are reserved.

## Additional Provisions

23. From and after the date hereof, no Person or Entity shall take or cause to be taken any action that would adversely affect or interfere with the transfer of the Purchased Property to First State in accordance with the terms of the Agreements and this Order.

24. This Court hereby retains jurisdiction, regardless of whether a Chapter 11 plan has been confirmed in the Bankruptcy Case and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and of any

agreement(s) executed in connection therewith in all respects, including but not limited to retaining jurisdiction to: (a) compel delivery of the Purchased Property to First State in accordance with the terms of the Agreement; (b) resolve any dispute, controversy, or claim arising under or related to the Agreement, or the breach thereof; and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

25. Nothing contained in any plan confirmed in the Bankruptcy Case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

26. This Order shall not limit or preclude the entry or effectiveness of any additional releases or injunctions that may be granted protecting the First State Released Parties and/or First State's Related Persons in connection with, or as part of, any order confirming a Chapter 11 plan.

27. The transactions contemplated by the Agreement are undertaken by First State in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. First State is a good faith purchaser of the Purchased Property and is entitled to all the protections afforded by Section 363(m) of the Bankruptcy Code. Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to First State.

28. First State has given substantial consideration under the Agreement for the benefit of the Diocese, its estate, and creditors, along with the other Diocese Parties and Covered Parties. Such consideration given by First State constitutes valid and valuable consideration for the Purchased Property and the releases set forth in the Agreement, including, without limitation, the extinguishment and release of all Interests pursuant to this Order. The consideration provided by First State for the Purchased Property under the Agreement is fair and reasonable; accordingly, the purchase may not be avoided under Section 363(n) of the Bankruptcy Code.

29. The terms and provisions of the Agreement and this Order shall be binding notwithstanding any subsequent appointment of any Trustee(s) examiner(s) or receiver(s) under any Chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such Trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Diocese, its estate, its creditors, or any examiner(s) or receiver(s).

30. The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement and the Parties' performance thereof be authorized and approved in its entirety.

31. Pursuant to the provisions of the Agreement, each of the Diocese Parties and First State shall be authorized to take, or cause to be taken, all appropriate action to do, or cause to be done, all things necessary, proper, or advisable under applicable law or otherwise to consummate and make effective the transactions contemplated by the Agreement.

32. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     All obligations of the Diocese under the Agreement shall be deemed administrative expenses of the estate under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

34.     Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the transactions contemplated by the Agreement and this Order.

35.     The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the Parties, in a writing signed by the applicable Parties, and in accordance with the terms thereof, without further order of this Court; *provided* that such modification, amendment, or supplement does not constitute a material change to the relief sought in the Motion and approved by this Order.

**IT IS SO ORDERED.**

Dated: _____

      Rochester, New York

                                              PAUL R. WARREN
                                              United States Bankruptcy Judge

# EXHIBIT B-1
## Form of Channeling Injunction

IN CONSIDERATION OF THE UNDERTAKINGS OF THE PROTECTED PARTIES HEREIN, THEIR CONTRIBUTIONS TO THE TRUST, AND OTHER CONSIDERATION GIVEN, AND, WHERE APPLICABLE, PURSUANT TO THEIR RESPECTIVE SETTLEMENTS WITH THE DIOCESE AND TO FURTHER PRESERVE AND PROMOTE THE AGREEMENTS BETWEEN AND AMONG THE PROTECTED PARTIES, AND TO SUPPLEMENT WHERE NECESSARY THE INJUNCTIVE EFFECT OF THE DISCHARGE AS PROVIDED IN SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE, AND PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE:

A.     ANY AND ALL CHANNELED CLAIMS ARE CHANNELED INTO THE TRUST AND SHALL BE TREATED, ADMINISTERED, DETERMINED, AND RESOLVED UNDER THE PROCEDURES AND PROTOCOLS AND IN THE AMOUNTS ESTABLISHED UNDER THIS PLAN, THE ALLOCATION PROTOCOL, AND THE TRUST AGREEMENT AS THE SOLE AND EXCLUSIVE REMEDY FOR ALL HOLDERS OF CHANNELED CLAIMS.

B.     ALL PERSONS WHO HAVE HELD OR ASSERTED, HOLD OR ASSERT, OR MAY IN THE FUTURE HOLD OR ASSERT, ANY CHANNELED CLAIMS, ARE HEREBY PERMANENTLY STAYED, ENJOINED, BARRED, AND RESTRAINED FROM TAKING ANY ACTION, DIRECTLY OR INDIRECTLY, FOR THE PURPOSES OF ASSERTING, ENFORCING OR ATTEMPTING TO ASSERT OR ENFORCE ANY CHANNELED CLAIMS AGAINST THE PROTECTED PARTIES, INCLUDING:

(I)     COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR AGAINST THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

(II)     ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER WITH RESPECT TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES;

(III)     CREATING, PERFECTING, OR ENFORCING, OR SEEKING TO ACCOMPLISH ANY OF THE PRECEDING, ANY LIEN OF ANY KIND RELATING TO ANY CHANNELED CLAIM AGAINST ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF THE PROTECTED PARTIES;

(IV)     ASSERTING, IMPLEMENTING, OR EFFECTUATING ANY CHANNELED CLAIM OF ANY KIND AGAINST:

(A)     ANY OBLIGATION DUE ANY OF THE PROTECTED PARTIES;

(B)     ANY OF THE PROTECTED PARTIES; OR

(C)     THE PROPERTY OF ANY OF THE PROTECTED PARTIES.

(V)     TAKING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO, OR COMPLY WITH, THE PROVISIONS OF THIS PLAN; AND

(VI)     ASSERTING OR ACCOMPLISHING ANY SETOFF, RIGHT OF INDEMNITY, SUBROGATION, CONTRIBUTION, OR RECOUPMENT OF ANY KIND AGAINST AN OBLIGATION DUE TO ANY OF THE PROTECTED PARTIES, OR THE PROPERTY OF ANY OF THE PROTECTED PARTIES.

THE CHANNELING INJUNCTION IS AN INTEGRAL PART OF THIS PLAN AND IS ESSENTIAL TO THE PLAN'S CONSUMMATION AND IMPLEMENTATION. IT IS INTENDED THAT THE CHANNELING OF THE CHANNELED CLAIMS AS PROVIDED IN THIS SECTION 12.3 OF THE PLAN SHALL INURE TO THE BENEFIT OF THE PROTECTED PARTIES.  IN A SUCCESSFUL ACTION TO ENFORCE THE INJUNCTIVE PROVISIONS OF THIS SECTION IN RESPONSE TO A WILLFUL VIOLATION THEREOF, THE MOVING PARTY MAY SEEK AN AWARD OF COSTS (INCLUDING REASONABLE ATTORNEYS' FEES) AGAINST THE NON-MOVING PARTY, AND SUCH OTHER LEGAL OR EQUITABLE REMEDIES AS ARE JUST AND PROPER, AFTER NOTICE AND A HEARING.

## EXHIBIT B-2
## Form of Gatekeeper Injunction

To the extent permitted by law, and subject in all respects to Section 12 of the Plan, no Enjoined Party may commence or pursue against any Protected Party (a) an Abuse Claim or (b) any other Claim or cause of action that arose, arises from, or is related to an Abuse Claim, the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind-down or reorganization of the business of the Diocese, the Reorganized Diocese, the administration of the Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or cause of action represents a colorable Claim against a Protected Party and (ii) subject in all respects to the Channeling Injunction and Settling Insurer Injunction, specifically authorizing such Enjoined Party to bring such Claim or cause of action against any such Protected Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or cause of action is colorable and, to the extent legally permissible and as provided for in Section 14, have jurisdiction to adjudicate the underlying colorable Claim or cause of action.