UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Diocese of Rochester,<br><br>    Debtor. | Case No.: 19-20905<br><br>Chapter 11 |
| The Diocese of Rochester,<br><br>    Plaintiff,<br><br>v.<br><br>The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National Surety Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE,<br><br>    Defendants. | Adversary Proceeding<br>No.: 19-ap-02021 |

**DECLARATION OF LISA M. PASSERO IN SUPPORT OF
THE DIOCESE'S MOTION FOR ENTRY OF ORDERS PURSUANT TO
SECTIONS 363 AND 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019 APPROVING SETTLEMENT AGREEMENTS AND POLICY
BUY-BACKS WITH CERTAIN INSURERS AND GRANTING RELATED RELIEF**

Lisa M. Passero, declares and states as follows:

1. I am a Certified Public Accountant and the Chief Financial Officer ("CFO") for The Diocese of Rochester (the "Diocese"). I have served as CFO of the Diocese since 2007. Prior to working for the Diocese, I was the CFO and/or Director of Finance for several other national

and international corporations. I am familiar with the assets, liabilities, and sources of income for the Diocese.

2. I make this Declaration based upon: (a) my personal knowledge of certain facts stated herein, (b) information supplied to me by others associated with the Diocese, (c) my review of relevant documents, (d) consultation with professionals engaged by the Diocese, and (e) my experience and knowledge of Diocesan operations. If I were called to testify, I would testify to the facts as set forth herein.

3. I am authorized by the Diocese to submit this Declaration in support of the *Motion for Entry of Orders Pursuant to Section 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Agreements and Policy Buy-Backs with Certain Insurers and Granting Related Relief* [Docket No. 3072] (the "Motion")[1] which provides funding and support for an upcoming plan of reorganization in the amount of $126,350,000 to be placed into a trust for the benefit of Abuse Claimants.

## BACKGROUND

4. On May 26, 2021, the Diocese sought the Court's approval of settlements with LMI and Interstate (the "2021 Settlements"). Pursuant to the terms of the 2021 Settlements, LMI agreed to pay $15 million, and Interstate agreed to pay $20 million, for a total of $35 million in order to resolve all claims and causes of action asserted by the Diocese against LMI and Interstate in the above-captioned Insurance Coverage Action. On July 9, 2021, the Court denied the Diocese's motion seeking approval of the 2021 Settlements.

5. At the Court's direction, the parties returned to mediation, and on May 20, 2022, the Diocese sought the Court's approval of enhanced settlements whereby LMI would pay $16.5

---

[1] Capitalized terms that are used herein but not defined shall have the meanings assigned to such terms in the Motion or the Plan.

million and Interstate would pay $26 million, as well as new proposed settlements whereby Underwriters would pay $1.1 million and CNA would pay $63.5 million (the "2022 Settlements").

6. With the exception of the proposed settlement with Underwriters, the Committee strongly opposed the 2022 Settlements, asserting that the amounts proposed by LMI, Interstate and CNA were insufficient.

7. In a continued effort to reach a global settlement with the insurance carriers acceptable to the Committee, in January 2023, the Court convened a multi-day settlement conference, which was attended by the Diocese, a representative for the parishes, the Committee, the Settling Insurers, CNA and a representative from the Office of the United States Trustee. While the parties were not able to achieve a global settlement, the Diocese and the Committee were able to reach a settlement with LMI and First State and, following additional mediation sessions, the Diocese and the Committee reached a settlement with Interstate. The proposed Settlement Agreements for which the Diocese now seeks approval will provide, in the aggregate, $71,350,000 to fund compensation to Abuse Claimants under the Plan.

8. CNA is now the lone insurer with whom the Diocese and the Committee have not reached an agreement.

9. After years of mediation, the Settlement Agreements with the Settling Insurers, which, were negotiated by the Diocese, the Committee, and the Settling Insurers at arm's length, with the assistance of each party's counsel and other professionals, and under the supervision of well-credentialed, Court approved, independent mediators. I was a direct participant in the negotiations that resulted in the proposed settlements. It is my belief that the Settlement Agreements are the result of hard-fought, good faith negotiations between the Diocese, the Committee, and the Settling Insurers.

10. In addition to the funding provided by the Settling Insurers, the Plan provides for additional funding from the Diocese, Parishes and other DOR Entities, in the amount of $55,000,000. Together, these sources will provide at least $126,350,000 to fund the Trust established under the Plan. Additional recoveries may also be available through Plan's assignment to the Trust of insurance claims against CNA.

## SETTLEMENT WITH THE SETTLING INSURERS

11. The Settlement Agreements provide for settlement payments of $19,500,000 from LMI, $1,100,000 from Underwriters, $50,000,000 from Interstate, and $750,000 from First State in exchange for a buy-back of the Subject Insurance Policies. The negotiated settlements also contemplate that, in exchange for the payment of the Settlement Amounts (i) the Settling Insurers will receive releases from the DOR Entities, (ii) any abuse claims that could otherwise have been asserted against the DOR Entities or their collective insurance policies will be channeled to the Trust, (iii) the Subject Insurance Polices (or in the case of Underwriters, the portions thereof that provide coverage for Abuse Claims) will be sold back to the Settling Insurers free and clear of any claims or interests and, (iv) in furtherance of such "free and clear" sale, the Subject Insurers will receive the benefit of an injunction enjoining claimants from pursuing such claims or interests against the Settling Insurers. If approved, the payments made by LMI and Interstate pursuant to the Settlement Agreements will represent a significant increase from their prior settlement offers, and the Committee has agreed to accept the amounts offered by each of the Settling Insurers.

12. In evaluating the Settlement Agreements, the Diocese consulted with its professionals including lead bankruptcy counsel Bond Schoeneck & King, PLLC, special insurance counsel Blank Rome, LLP and special litigation counsel Harris Beach, PLLC. Litigation risks, insurance defense strengths and weaknesses, the parties' respective positions in mediation,

4

21829194.v2
Case 2-19-20905-PRW, Doc 3206, Filed 06/16/25, Entered 06/16/25 14:54:39, Description: Main Document , Page 4 of 6

and the strengths, weaknesses, and potential settlement values of various claims asserted against the Diocese and DOR Entities were all factors that the Diocese considered in connection with its analysis.

13. As part of its evaluation of the proposed settlement with the Settling Insurers, the Diocese considered the potential liability of the Diocese and DOR Entities for Abuse Claims. In addition, the Diocese considered the option of attempting to prosecute the Insurance Coverage Action to obtain a declaratory judgment as to the availability of coverage under relevant insurance policies, and the delay, costs, and risks associated with such litigation, including, but not limited to, incurring professional and administrative fees while such action is pending, the possibility of adverse decisions which would leave the Diocese and DOR Entities with little or no coverage, and the impact of prolonged litigation. The Diocese considered other potential ways to resolve its disputes with the Settling Insurers and to monetize the value of its insurance policies. Ultimately, however, the Diocese determined, in consultation with the Committee, that the certainty of a negotiated settlement with these Settling Insurers was in the best interest of the Diocese and survivors.

14. After conferring with the professionals employed by the Diocese, I believe that the Settlement Agreements represent a fair and reasonable compromise and that it is in the best interest of the Diocese's estate and all of its creditors, but specifically survivors. More specifically, entering into the Settlement Agreements will result in a cash infusion of $71,350,000 into the Diocese's estate to fund the Trust and will eliminate the risk to the Diocese of unfavorable litigation outcomes and additional litigation expenses in the Coverage Action.

15. It is my belief that the Diocese is exercising sound business judgment by entering into the Settlement Agreements, as further confirmed by the Committee's support for the Motion.

I swear, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  June 16, 2025                                              */s/ Lisa M. Passero*  
                                                                                    Lisa M. Passero  
                                                                                    Chief Financial Officer