UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

DIOCESE OF ROCHESTER,

Debtor.

Chapter 11

Case No. 19-20905-PRW

**CNA'S OPPOSITION TO PLAN PROPONENTS' MOTION IN LIMINE
TO EXCLUDE EXPERT TESTIMONY OF
JULIA M. HILLIKER AND PETER J. KELLY**

The Continental Insurance Company ("CNA") hereby opposes the Plan Proponents' motion *in limine* to exclude from the confirmation hearing the testimony of Julia M. Hilliker and Peter J. Kelly (the "Motion").

CNA will proffer opinions by Ms. Hilliker and Mr. Kelly at the confirmation hearing on subject matter that is relevant to CNA's confirmation objections. Ms. Hilliker will testify about how CVA claims normally proceed through discovery and trial in New York courts. Mr. Kelly will testify about insurers' expectations at the time they issue insurance coverage with respect to their right and ability to control the defense of claims tendered to them for payment. Both experts' opinions form an important part of the basis of CNA's confirmation objections on the ground that certain Plan provisions prejudice CNA's contractual right to defend claims against its insureds.

Plan Proponents' references to this Court's conclusions following last year's trial

of CNA's administrative claim are irrelevant.[1] Of the three experts CNA called last year, only Ms. Hilliker will be called to testify this time. And the subject matter of Ms. Hilliker's testimony specifically supports one of CNA's confirmation objections. Mr. Kelly has not testified in this Court before (although he has provided confirmation hearing expert testimony based on his underwriting experience and insurers' right to defend in another mass tort bankruptcy case), and Plan Proponents do not question his qualifications to offer the opinions stated in his report. Both experts offer opinions relevant to a key feature of the Plan— post-confirmation tort system litigation—that will assist this Court in understanding the Plan and CNA's objections to confirmation. Plan Proponents' motion should be denied.

**Argument**

"The test for reliability of expert testimony is flexible, especially in cases where the expert's knowledge is non-scientific and based on his experience."[2] Both Ms. Hilliker and Mr. Kelly easily surpass this flexible standard. When Ms. Hilliker testified last year, no one suggested she lacked relevant experience, which includes handling scores of CVA matters through discovery and resolution. (Indeed, neither Debtor nor the Committee cross-examined her.) Mr. Kelly is unquestionably qualified as well and recently testified as an expert in another mass tort bankruptcy case, *Imerys Talc America* (Bankr. D. Del.), about the effect of a plan on insurers' duty and right to defend.

To the extent the Court has any doubts as to the helpfulness of either experts'

---

[1] For example, because Ms. Hilliker will not be testifying at the confirmation hearing in support of any claim for damages by CNA, the fact that the Court found her testimony last year unhelpful on that topic (*see* Motion at 2, 5) has no bearing now.

[2] *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 46 (S.D.N.Y. 2016). *See also* Advisory Committee Notes, 2000 Amendment, Fed. R. Evid. 702 ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony").

testimony, the Court can, as is "[o]ften" done in such circumstances, particularly where an expert's qualifications or methodology are at issue, "reserve judgment" and "later 'deci[de] after the evidence is presented [at trial to determine] whether it deserves to be credited by meeting the requirements of *Daubert* and its progeny.'"[3]

I. **Ms. Hilliker's opinions are relevant to CNA's plan objection that the Plan alters and impairs CNA's ability to defend Litigation Claims.**

Plan Proponents' overarching theme is that Ms. Hilliker's experience and opinions are not relevant to this case because, unlike the regular CVA litigation she is involved in defending, this case involves a "debtor in bankruptcy" where there is "a single holdout insurer."[4] The fact that Plan Proponents and one insurance company have not settled in this bankruptcy case has no bearing on any opinion Ms. Hilliker offers. Her opinions are strictly limited to the litigation of CVA suits in New York. Conversely, the fact that there is no global settlement with the last insurer does not mean Plan Proponents can insert into the Plan provisions that prejudice that insurer. Ms. Hilliker's opinions are relevant because they will inform the Court of the normal, ordinary-course conduct of CVA litigation in the relevant jurisdiction, in contrast to the prejudicial regime the Plan purports to establish.

---

[3] *Am. Empire Surplus Lines Ins. Co. v. J.R. Contracting & Environmental Consulting, Inc.*, 743 F. Supp.3d 530, 536 (S.D.N.Y. 2024), quoting *New York v. Solvent Chem. Co.*, 2006 WL 2640647 (W.D.N.Y. Sept. 14, 2006). *See also RLI Ins. Co. v. OutsideIn Architecture, LLC*, 692 F. Supp.3d 1077, 1093 (M.D. Fla. 2023) (exclusion of expert's testimony "is unwarranted in light of the fact that any trial in this action will be a bench trial," during which concerns regarding [an expert's] qualifications and methodology . . . could be addressed in a 'vigorous cross-examination,'" following which the court "may choose what, if any, weight to give his testimony while acting as the factfinder at trial"); *In re Tropicana Entertainment LLC*, 613 B.R. 587, 594 (Bankr. D. Del. 2020) (denying motion in limine and explaining that "[t]he trial is a bench trial, not before a jury, and therefore exclusion of testimony on *Daubert* grounds now, before the Court has had the chance to evaluate the direct (and cross) examination of the expert witness, is not the best way to assess the reliability of the expert's opinion").

[4] Motion at 7.

Plan Proponents' other points are appropriately developed through cross-examination. They suggest that Ms. Hilliker's experience is lacking because she has not defended any Catholic dioceses or parishes in CVA cases, without explaining why the defense of a particular religious entity against a sexual abuse claim is significant, given her vast experience defending other religious entities and other entities in such cases. And, of course, almost no one has this experience because CVA suits against Catholic entities largely have not proceeded due to the pendency of multiple diocesan bankruptcy cases. In any event, whether an expert's experience suitably translates to the case at hand is an appropriate subject for cross-examination.[5]

Plan Proponents also point out that Ms. Hilliker acknowledged the obvious point that "the Plan and the Trustee's desire for scheduling is not binding on the court in which cases are pending." However, the Trustee's determinations as to scheduling and which claims can proceed first (or at all) *are* binding on the Survivors themselves. Thus, the Plan simply uses a different mechanism to impose de facto control over how the cases proceed: rather than controlling the courts, the Plan controls the plaintiff-side litigants, toward the end of advancing their interests at the expense of CNA, in a manner that is different than the regular practice in New York Courts. Ms. Hilliker will explain how the Plan's regime differs from her extensive experience litigating these claims in the tort system. Her opinion will provide information to the Court that is relevant to its consideration of CNA's confirmation objections.

---

[5] *Scott*, 315 F.R.D. at 53 ("When proffered expert testimony is not scientific in nature, but involves discipline that requires the use of professional judgment, judgment calls that the expert makes regarding appropriate methodology to employ or appropriate variables to plug into calculation may and should be explored and highlighted through cross-examination and presentation of contrary evidence") (internal citations and quotations omitted).

**II. Mr. Kelly's testimony will assist the Court in understanding the significance and value of an insurer's contractual right to control the defense of claims, and how the Plan alters that right.**

Plan Proponents mischaracterize Mr. Kelly's opinion as a legal conclusion. However, Mr. Kelly is not a lawyer, and is not giving legal opinions. He is, rather, explaining how insurance policies generally are intended to work from a commercial underwriting perspective. His testimony is based on his decades of experience as an underwriter and his resulting knowledge of insurers' expectations when they write and issue policies. As relevant here, Mr. Kelly will testify about an insurer's expectations regarding its defense rights, including the value those rights have and how they inform an insurer's agreement to bind insurance coverage in the first place. Experts may "offer testimony discussing 'ordinary practices and usages' in a particular industry."[6] Mr. Kelly's testimony based on his industry experience will be helpful to the Court.

Mr. Kelly then applies the relevant facts—those Plan provisions that affect CNA's right to control the defense of the claims—to his experience. Where an expert draws his conclusions "from a set of observations based on extensive and specialized experience," the "'method' is the application of experience to facts."[7] Mr. Kelly's review of the Plan was in service of evaluating how, based on his experience, certain plan provisions would undermine or alter the defense rights an insurer would expect to have from the time of contracting. He does not offer any ultimate conclusions about the Plan, legal or otherwise. For example, he will not

---

[6] *Scott*, 315 F.R.D. 33, 46 (S.D.N.Y. 2016), quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp.2d 461, 471 (S.D.N.Y. 2005) (discussing instances in which courts permitted testimony from expert witnesses regarding customs and practices in the securities industry based upon the expert's knowledge of standard trading practices).

[7] *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2008 WL 1971538, *6 (S.D.N.Y. May 7, 2008), quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).

offer an opinion that Debtor has breached any policy obligations owed to CNA. He will not opine as to whether there is coverage under certain provisions of the policies or how to interpret the policies, which distinguishes his proffered opinions from those in the cases Plan Proponents cite.[8] He simply identifies certain provisions of the Plan that are inconsistent with an underwriter's expectation for how the defense of an allegedly insured claim would be conducted.

Plan Proponents also criticize Mr. Kelly for having no experience in bankruptcy or non-bankruptcy law, the defense of sexual abuse claims, or negotiating settlements in insurance coverage disputes, and for not having reviewed the proofs of claim, complaints, or documents produced in this case. None of those things are relevant to Mr. Kelly's opinions, which are tightly focused on whether certain provisions of this particular Plan are consistent with underwriters' commercial expectations. He does not offer opinions on bankruptcy law, proofs of claim, CVA complaints, or the other matters listed by Plan Proponents, nor would his opinions be informed in any way by review of the details of the abuse claims or the accused perpetrators' files.

Finally, to the extent Plan Proponents believe that CNA's defense rights are not altered by the Plan, they are free to explore those on cross-examination.[9]

---

[8]  *See* Motion at 10. In *Navigators Ins. Co. v. Goyard, Inc.*, the court concluded the proposed expert's report was "essentially a legal analysis of the Policy," including a proposed conclusion that coverage was barred, and excluded his testimony on that ground. 608 F. Supp.3d 44, 49 (S.D.N.Y. 2022) ("The expert's analysis cannot help the finder of fact because the analysis [the expert] conducts is the same analysis that a court itself would conduct in order to interpret the terms of the insurance policy"). In *American Home Assur. Co. v. Merck & Co.*, the court excluded certain opinions of an expert but permitted his opinions on "standard practices and customs of [the transit insurance] business and what he regards as the standard expectations of insurer and insured." 462 F. Supp.2d 435, 449 (S.D.N.Y. 2006). Mr. Kelly's opinions are appropriately limited to industry custom and expectations.

[9]  *See* footnote 3, above.

In sum, Mr. Kelly's perspective as an underwriter will assist the Court in understanding why policies are structured to give insurers rights to defend claims they are asked to pay and how the Plan appears to be inconsistent with underwriters' commercial expectations. He is fully qualified to give these opinions, which are highly relevant to CNA's confirmation objections.[10]

\*     \*     \*

For the reasons stated above, this Court should deny the Plan Proponents' motion.

DATED: July 18, 2025

Respectfully submitted,

By: _/s/ Jeffrey A. Dove_
Jeffrey A. Dove
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
Telephone: (315) 413-7112
Facsimile: (315) 703-7346
jdove@barclaydamon.com

Mark D. Plevin (admitted *pro hac vice*)
PLEVIN & TURNER LLP
580 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (202) 580-6640
mplevin@plevinturner.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
105 West Madison Street, Suite 2300

---

[10] The bankruptcy court in *Imerys* rejected a similar motion *in limine* directed at Mr. Kelly's testimony, and he then testified as an expert during the confirmation hearing in that case. *See* Transcript of Hearing Held 4/2/2025, Dkt. No. 7340 at 78-80, *In re Imerys Talc America, Inc.*, (Bankr. D. Del. Apr. 2, 2025) (rejecting arguments by plan proponents based on qualifications, relevance, and legal opinions; "there is information that I can receive from him with respect to the policies that may be relevant to an objection that the insurers have raised").

Chicago, Illinois 60602
Telephone: (312) 282-5282
dchristian@dca.law

Miranda H. Turner (admitted *pro hac vice*)
PLEVIN & TURNER LLP
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, DC 20006
Telephone: (202) 580-6640
mturner@plevinturner.com

*Attorneys for The Continental Insurance Company, successor by merger to Commercial Insurance Company of Newark, New Jersey and Firemen's Insurance Company of Newark, New Jersey*