UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| THE DIOCESE OF ROCHESTER, | ) Case No. 19-20905 |
| Debtor. | ) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS (A) RESPONSE TO CONTINENTAL'S MOTION IN LIMINE TO EXCLUDE REBUTTAL EXPERT TESTIMONY BY PROF. ANTHONY SEBOK AND (B) MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF PROF. SAMIR PARIKH**

The Official Committee of Unsecured Creditors (the **"Committee"**) of the Diocese of Rochester (the **"Diocese"** or the **"Debtor"**) files this Response (this **"Response and Motion"**) to (a) *Continental's Motion in Limine to exclude Rebuttal Expert Testimony by Prof. Anthony Sebok* [Docket No. 3239] (the "**CNA MIL**") and (b) motion in limine to exclude expert testimony of Professor Samir Parikh (the "**Committee MIL**"). In support of its Response and Motion, the Committee respectfully states:

**RELIEF REQUESTED**

1. The Committee respectfully requests that the Court grant the Committee MIL to exclude the testimony of Prof. Parikh. If the Bankruptcy Court grants the Committee MIL, then the testimony of Prof. Sebok will no longer be necessary to rebut Prof. Parikh's testimony. If the Court denies the Committee MIL, then the Committee respectfully requests that the Court deny the CNA MIL as the Prof. Sebok's testimony is critical to the rebuttal of Prof. Parikh's testimony.

**I.    JURISDICTION AND VENUE**

2. The Court has jurisdiction over this case and this Response and Motion pursuant to 28 U.S.C. §§ 157 and 1334, because the Response and Motion arises in the above-captioned

chapter 11 bankruptcy case (the **"Bankruptcy Case"**) that was filed in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, FRCP 45 and Bankruptcy Rule 9016.

## II. LEGAL STANDARDS

4. The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). An expert must be qualified to testify by his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. If the expert is qualified, the expert may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. *Id.* (emphasis added).

5. The Court must act as the gatekeeper to any expert testimony that does not fulfill these criteria, to ensure "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The reliability of expert testimony is analyzed under the standards of Federal Rule of Evidence 702. *See, e.g., Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).

## III. DISCUSSION

6. This case is nearing confirmation. Based on information provided to the Committee by the Diocese on July 15, 2025, at least 453 survivors have voted unanimously to accept the Plan.

We expect the voting tabulation will be submitted by July 22, 2025 in accordance with the Court's order approving the Disclosure Statement [Docket No. 3031]

7. Continental Insurance Company ("**Continental**" or "**CNA**") continues its scorched earth litigation tactics to try to prevent confirmation by asserting baseless, speculative and irrelevant arguments. The most egregious example of Continental's efforts to derail confirmation is the assertion that the plan proponents – *i.e.*, the Committee and the Diocese (the "**Plan Proponents**") – cannot meet the good faith requirement of section 1129(a)(3) of the Bankruptcy Code because one law firm representing survivors has obtained non-recourse financing. The Court is well aware of the relevant facts regarding Continental's efforts to obtain information about financing arrangements of Jeffrey Anderson & Associates, P.A. ("**JAA**").[1]

8. Continental attempts to dress up its baseless argument by relying on an expert, Prof. Parikh, to opine – without pointing to any supporting evidence[2] – about whether the law firm's financing has influenced its advice to clients. Importantly, the expert's testimony appears to be offered solely to support the argument that the Plan was not proposed in good faith.[3] Thus, if that argument fails on a legal basis (even if Continental could factually support the argument), then the expert's testimony must be excluded. There is no legal basis to support Continental's argument that the Plan was not proposed in good faith.

---

[1] *See Motion of the Official Committee of Unsecured Creditors for Entry of an Order (I) Quashing Subpoenas Issued by Continental Insurance to Jeff Anderson and Jeff Anderson & Associates, or in the Alternative (II) for a Protective Order* ("**Motion to Quash**") [Docket No. 3106], which is incorporated herein by reference.

[2] The Court quashed Continental's subpoena to the Anderson Firm. [Docket No. 3178]. Continental argues that it should be given additional time to conduct discovery to try to obtain factual support for Prof. Parikh's speculation. However, as discussed herein, even if there were facts to support Prof. Parikh's musings, the argument supported by his expertise is irrelevant because JAA is not a Plan Proponent.

[3] CNA MIL at 2.

9.      Continental's argument can be understood as follows: the good faith requirement is not met where plaintiffs' lawyers have exerted undue influence over the plan process or engaged in self-dealing. S*ee Continental's Opposition to The Committee's Motion to Quash Subpoenas Issued to Jeff Anderson and Jeff Anderson & Associates and Request to Modify the Confirmation Schedule* [Docket No. 3161] (filed under seal) at pp 11-12. Yet, even if there was a factual basis to support this argument, it would fail because JAA is not a plan proponent[4] and Abuse Claimants have unanimously voted to accept the Plan.

10.     As a Plan Proponent, the Committee seeks to avoid wasting judicial resources and estate assets with irrelevant testimony at confirmation. Continental's arguments about JAA's financing go only to the good faith requirement of Section 1129(a)(3) of the Bankruptcy Code. The good faith requirement applies to the Plan Proponents; not a subset of voting creditors represented by JAA. Moreover, even if the good faith requirement applies to a subset of voting creditors, a finding of lack of good faith should not and cannot invalidate the unanimous vote of all voting Abuse Claimants.

11.     While good faith is not defined in section 1129, as one court noted:

> The "good faith" standard requires a showing that the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina, S.A. (In re Bd. of Dirs. of Telecom Argentina, S.A.)*, 528 F.3d 162, 174 (2d Cir.2008) (quoting In re Koelbl, 751 F.2d 137, 139 (2d Cir.1984)). It "must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan...." *In re Leslie Fay Cos. Inc.*, 207 B.R. 764, 781 (Bankr.S.D.N.Y.1997) (citations omitted). A plan is deemed filed in good faith "when the plan has been proposed for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate, and delivering that value to creditors." *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 261 (Bankr. S.D.N.Y. 2014). Good faith has been found to be lacking when the plan was proposed with ulterior motives. *Koelbl*, 751 F.2d at 139 (citations omitted).

---

[4] Continental supports its efforts to exclude Prof. Sebok on the grounds that JAA is neither a plan proponent or a party-in-interest arguing that JAA does not even have a right to participate in the confirmation proceedings. *Id.* at 3-5.

*In re Global Fertility & Genetics, New York, LLC*, 663 B.R. 584, 604 (Bankr.S.D.N.Y. 2024).

12. In *In re Boy Scouts of Am. & Delaware BSA*, LLC, the District Court presented the "good-faith" standard as follows:

> The factors which a court should consider in determining a debtor's good faith include if the plan: (1) fosters a result consistent with the [Bankruptcy] Code's objectives; (2) has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected; and (3) [reflects] a fundamental fairness in dealing with the creditors.

*In re Boy Scouts of Am. & Delaware BSA, LLC*, 650 B.R. 87, 175 (D. Del. 2023) (quoting *In re W.R. Grace & Co.*, 475 B.R. 34, 87–88 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013)); *see also? In re Mallinckrodt PLC*, 639 B.R. 837, 884 (Bankr. D. Del. 2022).

13. The Plan was undoubtedly proposed in good faith. Notably, it provides a uniform standard of treatment for all Abuse Claimants. It does not favor any particular group of creditors or their counsel. It was negotiated at arms' length between the Committee and the Diocese through a mediation with court-appointed mediators. It also includes settlement and terms negotiated at arm's length with settling insurers. When viewed considering the totality of the circumstances, the Plan is clearly proposed in good faith. It was proposed "for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate, and delivering value to creditors." *Global Fertility & Genetics, id*. It also meets the similar standard for good faith enumerated by in Boy Scouts because it:

(a) fosters a result consistent with the Bankruptcy Code's objectives by providing for the Diocese to reorganize and creditors to receive compensation acceptable to them;

(b) was proposed with honesty and good intentions and with a basis for expecting the reorganization to be effected as evidenced by the arms' length nature of the Plan and the unanimous acceptance by Abuse Claimants; and

(c) reflects a fundamental fairness in dealing with creditors evidenced by the Committee's support and unanimous acceptance by Abuse Claimants.

14. Any argument that the motives of a single firm representing a group of creditors is a basis to assert that a plan is not proposed in good faith must also fail on its face. Very simply, JAA is not a Plan proponent. Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Thus, by its terms section 1129(a)(a) does not apply to JAA. Moreover, CNA cannot point to a single provision in the Plan that demonstrates self-dealing or preferential treatment for JAA and/or its clients. The Plan is fair and has been accepted by all voting Abuse Claimants.

15. Further, even if the good faith requirement applied to JAA in its capacity as counsel to claimants, the unanimous vote in favor of the Plan requires exclusion of Prof. Parikh's testimony as to good faith. If the Court found that JAA's actions were not in good faith, what is the remedy? Is it exclusion of votes by JAA clients, is it designation of the votes of JAA's clients, is it re-solicitation of the Plan? None of these would be a proper remedy. **The vote was unanimous**. Even if JAA client votes are designated and given no say in whether the Plan is accepted or rejected, the vote is still unanimous.

16. The Committee understands that JAA is submitting a response to Continental's motion to exclude Prof. Sebok that addresses the substance of Prof. Parikh's report and testimony. As such, the Committee does not address those issues herein to maintain efficiency. However, the Committee notes that if Prof. Parikh's testimony is excluded, there is no need for Prof. Sebok to provide a rebuttal. If Prof. Parikh is permitted to testify, then the Court should allow Prof. Sebok to testify in response the merits of testimony that attempts to prevent confirmation of a plan

supported by 100% of voting Abuse Claimants, or to eliminate or limit the ability of JAA's 170 clients to be heard through their unanimous acceptance of the Plan.

## NOTICE OF RESPONSE AND MOTION

17. Notice of this Motion will be served through ECF on (i) the Office of the United States Trustee, (ii) counsel for Continental, (iii) counsel for the Debtor, (iv) counsel for the Anderson Firm, and (v) all parties that have filed a request for service of papers under Bankruptcy Rule 2002.

## **CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that the Court enter an order (i) denying Continental's MIL, (ii) excluding Prof. Parikh's testimony, and (iii) granting such other and further relief that the Court deems appropriate.

Date: July 18, 2025

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/ Ilan D. Scharf
Ilan D. Scharf
Karen B. Dine
Jeffrey M. Dine
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:   ischarf@pszjlaw.com
         kdine@pszjlaw.com
         jdine@pszjlaw.com

*Counsel to Official Committee of Unsecured Creditors*

**BURNS BAIR LLP**
Timothy W. Burns (admitted *pro hac vice*)
Jesse J. Bair (admitted *pro hac vice*)
Nathan M. Kuenzi (*pro hac vice* pending)
10 E. Doty Street, Suite 600
Madison, WI 53703
Telephone: (608) 286-2302
Email:  tburns@burnsbair.com
        jbair@burnsbair.com
        nkuenzi@burnsbair.com

*Special Insurance Counsel to the Official Committee of Unsecured Creditors*