United States Bankruptcy Court

Western District of New York

In re:                                                                          Case No. 19-20905-PRW

The Diocese of Rochester                                                        Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

| | | |
|---|---|---|
| District/off: 0209-2 | User: admin | Page 1 of 13 |
| Date Rcvd: Dec 11, 2025 | Form ID: pdfterm | Total Noticed: 3 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 13, 2025:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | The Diocese of Rochester, 1150 Buffalo Road, Rochester, NY 14624-1890 |
| pr | + | Lisa M. Passero, The Diocese of Rochester, 1150 Buffalo Road, Rochester, NY 14624-1890 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| smg | + | Email/Text: ustpregion02.ro.ecf@usdoj.gov | Dec 11 2025 18:22:00 | Office of the U.S. Trustee, 100 State Street, Room 6090, Rochester, NY 14614-1315 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 13, 2025                         Signature:           /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 11, 2025 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Adam Horowitz | on behalf of Notice of Appearance Creditor Sexual Abuse Survivor/Creditor adam@adamhorowitzlaw.com |
| Adam Horowitz | on behalf of Creditor Claimants Certain Sexual Abuse adam@adamhorowitzlaw.com |
| Adam Horowitz | on behalf of Attorney Horowitz Law Claimants adam@adamhorowitzlaw.com |

Adam Horowitz
                on behalf of Creditor Certain Sexual Abuse Claimants adam@adamhorowitzlaw.com

Adam Horowitz
                on behalf of Creditor 31 Claimants adam@adamhorowitzlaw.com

Adam P. Haberkorn
                on behalf of Interested Party Federal Insurance Company ahaberkorn@omm.com  adam-haberkorn-2269@ecf.pacerpro.com

Adam P. Haberkorn
                on behalf of Interested Party Illinois Union Insurance Company ahaberkorn@omm.com
                adam-haberkorn-2269@ecf.pacerpro.com

Amy Keller
                on behalf of Creditor Certain Sexual Abuse Claimants akeller@lglaw.com  sfischer@lglaw.com

Amy Keller
                on behalf of Creditor LG DOE VICTIMS akeller@lglaw.com  sfischer@lglaw.com

Amy Keller
                on behalf of Defendant AB 100 Doe  et al akeller@lglaw.com, sfischer@lglaw.com

Andrew S. Richmond
                on behalf of Notice of Appearance Creditor Jeff Anderson & Associates arichmond@pryorcashman.com

Andrew S. Richmond
                on behalf of Notice of Appearance Creditor Jeff Anderson arichmond@pryorcashman.com

Andrew Scott Rivera
                on behalf of Debtor The Diocese of Rochester arivera@bsk.com  kdoner@bsk.com;CourtMail@bsk.com

Annette Rolain
                on behalf of Interested Party First State Insurance Company arolain@ruggerilaw.com  bkfilings@ruggerilaw.com

Ashley Storey
                on behalf of Interested Party London Market Insurers astorey@skarzynski.com

Brian Milos Micic
                on behalf of Defendant HDI Global Specialty SE bmicic@fgppr.com

Brian Milos Micic
                on behalf of Defendant The Dominion Insurance Company Limited bmicic@fgppr.com

Brian Milos Micic
                on behalf of Interested Party Certain Underwriters at Lloyd's  London bmicic@fgppr.com

Brian Milos Micic
                on behalf of Defendant Markel International Insurance Company Limited bmicic@fgppr.com

Brian Milos Micic
                on behalf of Defendant Tenecom Limited bmicic@fgppr.com

Brian Milos Micic
                on behalf of Interested Party London Market Insurers bmicic@fgppr.com

Brian Milos Micic
                on behalf of Defendant Certain Underwriters at Lloyd's  London bmicic@fgppr.com

Brian Milos Micic
                on behalf of Interested Party HDI Global Specialty SE bmicic@fgppr.com

Brian Milos Micic
                on behalf of Defendant Certain London Market Companies bmicic@fgppr.com

Brianna M Espeland
                on behalf of Creditor Kenneth Cubiotti brianna@jvwlaw.net

Brianna M Espeland
                on behalf of Notice of Appearance Creditor Brian S. Delafranier brianna@jvwlaw.net

Brittany Mitchell Michael
                on behalf of Creditor Committee Official Committee of Unsecured Creditors bmichael@pszjlaw.com

Brittany Mitchell Michael
                on behalf of Notice of Appearance Creditor Official Committee of Unsecured Creditors bmichael@pszjlaw.com

Camille W. Hill
                on behalf of Debtor The Diocese of Rochester chill@bsk.com  ayerst@bsk.com;kdoner@bsk.com;CourtMail@bsk.com

Carol Dupre
                caroldopray61@yahoo.com

Catalina Sugayan

on behalf of Defendant Markel International Insurance Company Limited catalina.sugayan@clydeco.us  Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Interested Party HDI Global Specialty SE catalina.sugayan@clydeco.us  Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Interested Party Certain Underwriters at Lloyd's London catalina.sugayan@clydeco.us, Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Defendant Tenecom Limited catalina.sugayan@clydeco.us  Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Defendant Certain London Market Companies catalina.sugayan@clydeco.us  Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Defendant CX Reinsurance Company Limited catalina.sugayan@clydeco.us  Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Interested Party London Market Insurers catalina.sugayan@clydeco.us  Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Defendant The Dominion Insurance Company Limited catalina.sugayan@clydeco.us  Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Defendant Certain Underwriters at Lloyd's London catalina.sugayan@clydeco.us, Nancy.Lima@clydeco.us

Catalina Sugayan

on behalf of Defendant HDI Global Specialty SE catalina.sugayan@clydeco.us  Nancy.Lima@clydeco.us

Catherine Beideman Heitzenrater

on behalf of Creditor The Chubb Companies cheitzenrater@duanemorris.com

Charles Edwin Jones

on behalf of Defendant Interstate Fire & Casualty Company charles.jones@lawmoss.com  Brenda.murphy@lawmoss.com

Charles Edwin Jones

on behalf of Notice of Appearance Creditor National Surety Corporation charles.jones@lawmoss.com  Brenda.murphy@lawmoss.com

Charles Edwin Jones

on behalf of Interested Party National Surety Corporation charles.jones@lawmoss.com  Brenda.murphy@lawmoss.com

Charles Edwin Jones

on behalf of Notice of Appearance Creditor Interstate Fire and Casualty Company charles.jones@lawmoss.com  Brenda.murphy@lawmoss.com

Charles Edwin Jones

on behalf of Interested Party Interstate Fire and Casualty Company charles.jones@lawmoss.com  Brenda.murphy@lawmoss.com

Charles Edwin Jones

on behalf of Defendant National Surety Corporation charles.jones@lawmoss.com  Brenda.murphy@lawmoss.com

Charles J. Sullivan

on behalf of Creditor Claimant MM csullivan@bsk.com  kdoner@bsk.com;jhunold@bsk.com;CourtMail@bsk.com

Charles J. Sullivan

on behalf of Attorney Bond  Schoeneck & King, PLLC csullivan@bsk.com, kdoner@bsk.com;jhunold@bsk.com;CourtMail@bsk.com

Charles J. Sullivan

on behalf of Debtor The Diocese of Rochester csullivan@bsk.com  kdoner@bsk.com;jhunold@bsk.com;CourtMail@bsk.com

Charles J. Sullivan

on behalf of Plaintiff The Diocese of Rochester csullivan@bsk.com  kdoner@bsk.com;jhunold@bsk.com;CourtMail@bsk.com

Christopher Loeber

on behalf of Notice of Appearance Creditor Jeff Anderson cloeber@pryorcashman.com

Christopher Loeber

on behalf of Notice of Appearance Creditor Jeff Anderson & Associates cloeber@pryorcashman.com

Christopher Eric Love

on behalf of Notice of Appearance Creditor Marsh/PCVA Claimants chris@pcvalaw.com

Christopher Eric Love

on behalf of Creditor Marsh/PCVA Claimants chris@pcvalaw.com

Craig Goldblatt

on behalf of Notice of Appearance Creditor Continental Insurance Company craig.goldblatt@wilmerhale.com

Craig Goldblatt

on behalf of Interested Party Continental Insurance Company craig.goldblatt@wilmerhale.com

Danielle Spinelli

on behalf of Notice of Appearance Creditor Continental Insurance Company danielle.spinelli@wilmerhale.com

David C. Christian, II

on behalf of Plaintiff THE CONTINENTAL INSURANCE COMPANY  successor by merger to Commercial Insurance Company of Newark, New Jersey, and Fireman's Insurance Company of Newark, New Jersey dchristian@dca.law

David C. Christian, II

on behalf of Interested Party Continental Insurance Company dchristian@dca.law

David C. Christian, II

on behalf of Notice of Appearance Creditor Continental Insurance Company dchristian@dca.law

David D. MacKnight

on behalf of Creditor The Sisters of Saint Joseph of Rochester  Inc. dmacknight@lacykatzen.com, dgay@lacykatzen.com;cdiesel@lacykatzen.com

Deola T. Ali

on behalf of Creditor Certain Sexual Abuse Claimants dali@awtxlaw.com

Devin L. Palmer

on behalf of Notice of Appearance Creditor Catholic Youth Organization dpalmer@boylancode.com dpalmer@boylancode.com;sciaccia@boylancode.com;rmarks@boylancode.com

Devin L. Palmer

on behalf of Notice of Appearance Creditor St. Joseph's Villa dpalmer@boylancode.com dpalmer@boylancode.com;sciaccia@boylancode.com;rmarks@boylancode.com

Diane Paolicelli

on behalf of Creditor 065 -Claimant (Creditor) dpaolicelli@p2law.com

Diane Paolicelli

on behalf of Creditor 528 - Claimant (Creditor) dpaolicelli@p2law.com

Diane Paolicelli

on behalf of Creditor PC-33 DOE dpaolicelli@p2law.com

Diane Paolicelli

on behalf of Creditor LCVAWCR DOE dpaolicelli@p2law.com

Diane Paolicelli

on behalf of Creditor 198 - Claimant (Creditor) dpaolicelli@p2law.com

Diane Paolicelli

on behalf of Creditor ORLANDO RIVERA dpaolicelli@p2law.com

Dirk C. Haarhoff

on behalf of Notice of Appearance Creditor Colonial Penn Insurance Company dchaarhoff@kslnlaw.com

Dirk C. Haarhoff

on behalf of Defendant Colonial Penn Insurance Company dchaarhoff@kslnlaw.com

Dirk C. Haarhoff

on behalf of Notice of Appearance Creditor Swiss Re America Corporation as Administrator dchaarhoff@kslnlaw.com

Elin Lindstrom

on behalf of Notice of Appearance Creditor Jeff Anderson & Associates elin@andersonadvocates.com therese@andersonadvocates.com

Eric John Ward

on behalf of Notice of Appearance Creditor Camp Stella Maris of Livonia eward@hodgsonruss.com

Eric John Ward

on behalf of Notice of Appearance Creditor St. Joseph's Villa eward@hodgsonruss.com

Eric John Ward

on behalf of Notice of Appearance Creditor Catholic Charities of the Diocese of Rochester eward@hodgsonruss.com

Eric John Ward

on behalf of Notice of Appearance Creditor Catholic Youth Organization eward@hodgsonruss.com

Erik Bakke

on behalf of Notice of Appearance Creditor Jeff Anderson ebakke@pryorcashman.com

Erik Bakke

on behalf of Notice of Appearance Creditor Jeff Anderson & Associates ebakke@pryorcashman.com

Erin Champion, 11

USTPRegion02.RO.ECF@USDOJ.GOV

Garry M. Graber

on behalf of Notice of Appearance Creditor Manufacturers and Traders Trust Company ggraber@hodgsonruss.com mheftka@hodgsonruss.com;cnapiers@hodgsonruss.com

Gerard Sweeney
on behalf of Creditor Claimants Certain Sexual Abuse gkosmakos@srblawfirm.com

Gerard Sweeney
on behalf of Creditor CC 403 gkosmakos@srblawfirm.com

Grayson T. Walter
on behalf of Debtor The Diocese of Rochester gwalter@bsk.com  kdoner@bsk.com;CourtMail@bsk.com

Grayson T. Walter
on behalf of Plaintiff The Diocese of Rochester gwalter@bsk.com  kdoner@bsk.com;CourtMail@bsk.com

Gregory J. McDonald
on behalf of Debtor The Diocese of Rochester gjmcdonald@bsk.com  Kleo@bsk.com

Gregory J. McDonald
on behalf of Defendant The Diocese of Rochester gjmcdonald@bsk.com  Kleo@bsk.com

Harris Winsberg
on behalf of Defendant National Surety Corporation hwinsberg@phrd.com

Harris Winsberg
on behalf of Interested Party National Surety Corporation hwinsberg@phrd.com

Harris Winsberg
on behalf of Notice of Appearance Creditor Interstate Fire and Casualty Company hwinsberg@phrd.com

Harris Winsberg
on behalf of Defendant Interstate Fire & Casualty Company hwinsberg@phrd.com

Harris Winsberg
on behalf of Interested Party Interstate Fire and Casualty Company hwinsberg@phrd.com

Harris Winsberg
on behalf of Notice of Appearance Creditor National Surety Corporation hwinsberg@phrd.com

Iain A.W. Nasatir
on behalf of Creditor Committee Official Committee of Unsecured Creditors inasatir@pszjlaw.com

Ilan D Scharf
on behalf of Intervenor Official Committee of Unsecured Creditors ischarf@pszjlaw.com
nhall@pszjlaw.com;nrobinson@pszjlaw.com

Ilan D Scharf
on behalf of Attorney Pachulski Stang Ziehl & Jones LLP ischarf@pszjlaw.com  nhall@pszjlaw.com;nrobinson@pszjlaw.com

Ilan D Scharf
on behalf of Interested Party Official Committee of Unsecured Creditors ischarf@pszjlaw.com
nhall@pszjlaw.com;nrobinson@pszjlaw.com

Ilan D Scharf
on behalf of Creditor Committee Official Committee of Unsecured Creditors ischarf@pszjlaw.com
nhall@pszjlaw.com;nrobinson@pszjlaw.com

Ilan D Scharf
on behalf of Notice of Appearance Creditor Official Committee of Unsecured Creditors ischarf@pszjlaw.com
nhall@pszjlaw.com;nrobinson@pszjlaw.com

Ingrid S. Palermo
on behalf of Debtor The Diocese of Rochester ipalermo@bsk.com  kdoner@bsk.com;aparris@bsk.com

Isley Markman Gostin
on behalf of Notice of Appearance Creditor Continental Insurance Company isley.gostin@wilmerhale.com

Isley Markman Gostin
on behalf of Interested Party Continental Insurance Company isley.gostin@wilmerhale.com

James Moffitt
on behalf of Interested Party HDI Global Specialty SE james.moffitt@clydeco.us

James Moffitt
on behalf of Interested Party Certain Underwriters at Lloyd's  London james.moffitt@clydeco.us

James Moffitt
on behalf of Interested Party London Market Insurers james.moffitt@clydeco.us

James I. Stang
on behalf of Creditor Committee Official Committee of Unsecured Creditors jstang@pszjlaw.com

James K.T. Hunter
on behalf of Creditor Committee Official Committee of Unsecured Creditors jhunter@pszjlaw.com

James Pio Ruggeri

on behalf of Interested Party First State Insurance Company jruggeri@ruggerilaw.com

James R Marsh

on behalf of Creditor 31 Claimants jamesmarsh@marsh.law

James R Marsh

on behalf of Creditor S. B. jamesmarsh@marsh.law

James R Marsh

on behalf of Creditor MLF-PCVA Creditors jamesmarsh@marsh.law

James R Marsh

on behalf of Creditor S.B. jamesmarsh@marsh.law

James R Marsh

on behalf of Creditor M.G. jamesmarsh@marsh.law

James R Marsh

on behalf of Creditor R.O. jamesmarsh@marsh.law

James R Marsh

on behalf of Creditor Certain Sexual Abuse Claimants jamesmarsh@marsh.law

James R Marsh

on behalf of Creditor Claimant Creditors Marsh Law Firm jamesmarsh@marsh.law

James R Marsh

on behalf of Creditor Claimant MM jamesmarsh@marsh.law

James R Murray

on behalf of Special Counsel James R Murray Jim.Murray@BlankRome.com edocketing@blankrome.com

James R Murray

on behalf of Special Counsel Blank Rome LLP Jim.Murray@BlankRome.com, edocketing@blankrome.com

James S. Carter

on behalf of Special Counsel Blank Rome LLP james.carter@blankrome.com

Jarrod W Smith

on behalf of Creditor Donna Oppedisano jarrodsmithlaw@gmail.com

Jarrod W Smith

on behalf of Notice of Appearance Creditor Donna Oppedisano jarrodsmithlaw@gmail.com

Jarrod W Smith

on behalf of Creditor Kathleen Israel jarrodsmithlaw@gmail.com

Jarrod W Smith

on behalf of Notice of Appearance Creditor Kathleen Israel jarrodsmithlaw@gmail.com

Jason P. Amala

on behalf of Notice of Appearance Creditor Marsh/PCVA Claimants jason@pcvalaw.com mfilomeno@pcvalaw.com;mmoore@pcvalaw.com;kweaver@pcvalaw.com

Jason P. Amala

on behalf of Creditor Marsh/PCVA Claimants jason@pcvalaw.com mfilomeno@pcvalaw.com;mmoore@pcvalaw.com;kweaver@pcvalaw.com

Jeff Kahane

on behalf of Defendant Certain Underwriters at Lloyd's London jkahane@skarzynski.com

Jeff Kahane

on behalf of Interested Party London Market Insurers jkahane@skarzynski.com

Jeff Kahane

on behalf of Defendant Certain London Market Companies jkahane@skarzynski.com

Jeff Kahane

on behalf of Interested Party Certain Underwriters at Lloyd's London jkahane@skarzynski.com

Jeffrey Austin Dove

on behalf of Plaintiff THE CONTINENTAL INSURANCE COMPANY successor by merger to Commercial Insurance Company of Newark, New Jersey, and Fireman's Insurance Company of Newark, New Jersey jdove@barclaydamon.com, avrooman@barclaydamon.com,jeffrey-dove-1212@ecf.pacerpro.com

Jeffrey Austin Dove

on behalf of Notice of Appearance Creditor Continental Insurance Company jdove@barclaydamon.com avrooman@barclaydamon.com,jeffrey-dove-1212@ecf.pacerpro.com

Jeffrey Austin Dove

on behalf of Defendant The Continental Insurance Company jdove@barclaydamon.com avrooman@barclaydamon.com,jeffrey-dove-1212@ecf.pacerpro.com

District/off: 0209-2
User: admin
Page 7 of 13

Date Rcvd: Dec 11, 2025
Form ID: pdfterm
Total Noticed: 3

Jeffrey Austin Dove

on behalf of Interested Party Continental Insurance Company jdove@barclaydamon.com avrooman@barclaydamon.com,jeffrey-dove-1212@ecf.pacerpro.com

Jeffrey M Dine

on behalf of Interested Party Official Committee of Unsecured Creditors jdine@pszjlaw.com

Jeffrey M Dine

on behalf of Notice of Appearance Creditor Official Committee of Unsecured Creditors jdine@pszjlaw.com

Jesse Bair

on behalf of Notice of Appearance Creditor Official Committee of Unsecured Creditors jbair@burnsbair.com kdempski@burnsbair.com,bhorn@burnsbair.com

Jesse Bair

on behalf of Special Counsel Burns Bowen Bair LLP jbair@burnsbair.com  kdempski@burnsbair.com,bhorn@burnsbair.com

Jesse Bair

on behalf of Creditor Committee Official Committee of Unsecured Creditors jbair@bbblawllp.com kdempski@burnsbair.com,bhorn@burnsbair.com

John Bucheit

on behalf of Interested Party National Surety Corporation jbucheit@phrd.com  ssnead@phrd.com

John Bucheit

on behalf of Interested Party Interstate Fire and Casualty Company jbucheit@phrd.com  ssnead@phrd.com

John Bucheit

on behalf of Defendant Interstate Fire & Casualty Company jbucheit@phrd.com  ssnead@phrd.com

John Bucheit

on behalf of Defendant National Surety Corporation jbucheit@phrd.com  ssnead@phrd.com

John A. Mueller

on behalf of Notice of Appearance Creditor Monroe County jmueller@lippes.com jtenczar@lippes.com;mbrennan@lippes.com;rizzo@lippes.com

Jon Travis Powers

on behalf of Defendant National Surety Corporation powerst@whiteandwilliams.com  mglowinski@hodgsonruss.com

Jon Travis Powers

on behalf of Interested Party Interstate Fire and Casualty Company powerst@whiteandwilliams.com mglowinski@hodgsonruss.com

Jon Travis Powers

on behalf of Interested Party National Surety Corporation powerst@whiteandwilliams.com  mglowinski@hodgsonruss.com

Jon Travis Powers

on behalf of Defendant Interstate Fire & Casualty Company powerst@whiteandwilliams.com  mglowinski@hodgsonruss.com

Joshua D Weinberg

on behalf of Interested Party First State Insurance Company jweinberg@ruggerilaw.com

Judith Treger Shelton

on behalf of Notice of Appearance Creditor Swiss Re America Corporation as Administrator jtshelton@kslnlaw.com

Judith Treger Shelton

on behalf of Notice of Appearance Creditor Colonial Penn Insurance Company jtshelton@kslnlaw.com

Judith Treger Shelton

on behalf of Defendant Colonial Penn Insurance Company jtshelton@kslnlaw.com

Kaitlin M. Calov

on behalf of Notice of Appearance Creditor Colonial Penn Insurance Company kcalov@wwmlawyers.com jvail@walkerwilcox.com

Kaitlin M. Calov

on behalf of Notice of Appearance Creditor Swiss Re America Corporation as Administrator kcalov@wwmlawyers.com jvail@walkerwilcox.com

Kaitlin M. Calov

on behalf of Defendant Colonial Penn Insurance Company kcalov@wwmlawyers.com  jvail@walkerwilcox.com

Karen B. Dine

on behalf of Interested Party Official Committee of Unsecured Creditors kdine@pszjlaw.com

Karen B. Dine

on behalf of Creditor Committee Official Committee of Unsecured Creditors kdine@pszjlaw.com

Katerina Marie Kramarchyk

on behalf of Notice of Appearance Creditor Camp Stella Maris of Livonia kkramarchyk@wardgreenberg.com

Katerina Marie Kramarchyk

District/off: 0209-2  
Date Rcvd: Dec 11, 2025

User: admin  
Form ID: pdfterm

Page 8 of 13  
Total Noticed: 3

| | |
|---|---|
| | on behalf of Notice of Appearance Creditor Catholic Youth Organization kkramarchyk@wardgreenberg |
| Katerina Marie Kramarchyk | |
| | on behalf of Notice of Appearance Creditor Catholic Charities of the Diocese of Rochester kkramarchyk@wardgreenberg.com |
| Katerina Marie Kramarchyk | |
| | on behalf of Notice of Appearance Creditor St. Joseph's Villa kkramarchyk@wardgreenberg.com |
| Kathleen Thomas | |
| | on behalf of Creditor J. O. kat@tlclawllc.com |
| Kathleen Thomas | |
| | on behalf of Creditor Certain Sexual Abuse Claimants kat@tlclawllc.com |
| Kathleen Thomas | |
| | on behalf of Notice of Appearance Creditor Sexual Abuse Survivor/Creditor kat@tlclawllc.com |
| Kelly McNamee | |
| | on behalf of Interested Party Gannett Co. Inc. mcnameek@gtlaw.com, Keara.Merges@gtlaw.com,kelly-mcnamee-7424@ecf.pacerpro.com |
| Lauren Lifland | |
| | on behalf of Notice of Appearance Creditor Continental Insurance Company lauren.lifland@wilmerhale.com |
| Leander Laurel James, IV | |
| | on behalf of Interested Party Kenneth Cubiotti ljames@jvwlaw.net Lucia@jvwlaw.net |
| Leander Laurel James, IV | |
| | on behalf of Creditor CW187 DOE ljames@jvwlaw.net Lucia@jvwlaw.net |
| Leander Laurel James, IV | |
| | on behalf of Creditor JP185 DOE ljames@jvwlaw.net Lucia@jvwlaw.net |
| Leander Laurel James, IV | |
| | on behalf of Creditor Kenneth G. Cubiotti ljames@jvwlaw.net Lucia@jvwlaw.net |
| Leander Laurel James, IV | |
| | on behalf of Creditor GM127 DOE ljames@jvwlaw.net Lucia@jvwlaw.net |
| Leander Laurel James, IV | |
| | on behalf of Creditor MG133 DOE ljames@jvwlaw.net Lucia@jvwlaw.net |
| Leander Laurel James, IV | |
| | on behalf of Creditor Kenneth Cubiotti ljames@jvwlaw.net Lucia@jvwlaw.net |
| Leander Laurel James, IV | |
| | on behalf of Notice of Appearance Creditor Kenneth G. Cubiotti ljames@jvwlaw.net Lucia@jvwlaw.net |
| Lee E. Woodard | |
| | on behalf of Special Counsel Harris Beach PLLC bkemail@harrisbeach.com efilings@harrisbeach.com;broy@harrisbeach.com |
| Lucas B. Franken | |
| | on behalf of Creditor Marsh/PCVA Claimants lfranken@pcvalaw.com mfilomeno@pcvalaw.com |
| Lucien A. Morin, II | |
| | on behalf of Notice of Appearance Creditor Amaryllis Figueroa lmorin@mccmlaw.com lmorinzmcm@aol.com;jcole@mccmlaw.com;kruegermr74613@notify.bestcase.com |
| Mark Bruh | |
| | on behalf of Assistant U.S. Trustee Erin Champion 11 mark.bruh@usdoj.gov |
| Mark Bruh | |
| | on behalf of U.S. Trustee William K. Harrington mark.bruh@usdoj.gov |
| Mark D. Plevin | |
| | on behalf of Plaintiff THE CONTINENTAL INSURANCE COMPANY successor by merger to Commercial Insurance Company of Newark, New Jersey, and Fireman's Insurance Company of Newark, New Jersey mplevin@plevinturner.com, mark-plevin-crowell-moring-8073@ecf.pacerpro.com |
| Mark D. Plevin | |
| | on behalf of Notice of Appearance Creditor Continental Insurance Company mplevin@plevinturner.com mark-plevin-crowell-moring-8073@ecf.pacerpro.com |
| Mark D. Plevin | |
| | on behalf of Interested Party Continental Insurance Company mplevin@plevinturner.com mark-plevin-crowell-moring-8073@ecf.pacerpro.com |
| Mary Jo Korona | |
| | on behalf of Notice of Appearance Creditor Bishop Emeritus Matthew H. Clark mkorona@adamsleclair.law sarahi@leclairkorona.com |
| Matthew Roberts | |
| | on behalf of Defendant National Surety Corporation mroberts@phrd.com |

Matthew Roberts
                    on behalf of Interested Party Interstate Fire and Casualty Company mroberts@phrd.com

Matthew Roberts
                    on behalf of Defendant Interstate Fire & Casualty Company mroberts@phrd.com

Matthew Roberts
                    on behalf of Interested Party National Surety Corporation mroberts@phrd.com

Matthew Griffin Merson
                    on behalf of Notice of Appearance Creditor Merson Law  PLLC mmerson@mersonlaw.com

Matthew John Obiala, I
                    on behalf of Interested Party London Market Insurers matt.obiala@clydeco.us

Matthew Michael Weiss
                    on behalf of Interested Party Interstate Fire and Casualty Company mweiss@phrd.com

Matthew Michael Weiss
                    on behalf of Interested Party National Surety Corporation mweiss@phrd.com

Melanie Wolk
                    on behalf of Notice of Appearance Creditor Sexual Abuse Survivor/Creditor mwolk@trevettcristo.com

Michael Finnegan
                    on behalf of Creditor Certain Sexual Abuse Claimants mike@andersonadvocates.com
                    therese@andersonadvocates.com,erin@andersonadvocates.com

Michael Finnegan
                    on behalf of Notice of Appearance Creditor Jeff Anderson & Associates mike@andersonadvocates.com
                    therese@andersonadvocates.com,erin@andersonadvocates.com

Michael Finnegan
                    on behalf of Defendant AB 100 Doe  et al mike@andersonadvocates.com,
                    therese@andersonadvocates.com,erin@andersonadvocates.com

Michael Watson
                    on behalf of Notice of Appearance Creditor Sexual Abuse Survivor/Creditor mwatson@thematthewslawfirm.com

Michael Watson
                    on behalf of Creditor Certain Sexual Abuse Claimants mwatson@thematthewslawfirm.com

Michael A. Weishaar
                    on behalf of Notice of Appearance Creditor Jeff Anderson & Associates rbg_gmf@hotmail.com
                    r48948@notify.bestcase.com,gmwecfalternate@gmail.com,bankruptcy@gmlaw.com

Michael J Grygiel
                    on behalf of Interested Party Gannett Co.  Inc. grygielm@gtlaw.com,
                    alblitsupport@gtlaw.com,caponev@gtlaw.com,jonesmar@gtlaw.com,michael-grygiel-0205@ecf.pacerpro.com

Miranda Turner
                    on behalf of Interested Party Continental Insurance Company mturner@plevinturner.com

Miranda Turner
                    on behalf of Plaintiff THE CONTINENTAL INSURANCE COMPANY  successor by merger to Commercial Insurance Company
                    of Newark, New Jersey, and Fireman's Insurance Company of Newark, New Jersey mturner@plevinturner.com

Miranda Turner
                    on behalf of Notice of Appearance Creditor Continental Insurance Company mturner@plevinturner.com

Miranda Turner
                    on behalf of Defendant The Continental Insurance Company mturner@plevinturner.com

Mitchell Garabedian
                    on behalf of Creditor DG 278 mgarabedian@garabedianlaw.com

Mitchell Garabedian
                    on behalf of Creditor Victor Rivera mgarabedian@garabedianlaw.com

Mitchell Garabedian
                    on behalf of Creditor BB 44 mgarabedian@garabedianlaw.com

Mitchell Garabedian
                    on behalf of Creditor MS 275 mgarabedian@garabedianlaw.com

Mitchell Garabedian
                    on behalf of Creditor SHC-MG-2 Doe mgarabedian@garabedianlaw.com

Mitchell Garabedian
                    on behalf of Creditor SM 247 mgarabedian@garabedianlaw.com

Mitchell Garabedian
                    on behalf of Creditor Carol Dupre mgarabedian@garabedianlaw.com

Mitchell Garabedian

　　　　on behalf of Creditor VJR 41 mgarabedian@garabedianlaw.com

Mohammad Tehrani

　　　　on behalf of Interested Party London Market Insurers mtehrani@duanemorris.com

Nathan Mark Kuenzi

　　　　on behalf of Creditor Committee Official Committee of Unsecured Creditors nkuenzi@burnsbair.com

Nathan W. Reinhardt

　　　　on behalf of Interested Party London Market Insurers nreinhardt@skarzynski.com

Nathan W. Reinhardt

　　　　on behalf of Interested Party Certain Underwriters at Lloyd's  London nreinhardt@skarzynski.com

Nathaniel Foote

　　　　on behalf of Creditor Thomas David Adams nate@vca.law

Nathaniel Foote

　　　　on behalf of Attorney Nathaniel Lucas Foote nate@vca.law

Nathaniel Foote

　　　　on behalf of Creditor claimants CC151  CC074, CC441, CC312, CC177, CC412, CC189, CC310, CC309, CC188, CC075, CC311 nate@vca.law

Paul L. Leclair

　　　　on behalf of Notice of Appearance Creditor St. Bernard's School of Theology and Ministry pleclair@adamsleclair.law arichardson@adamsleclair.law

Peter Garthwaite

　　　　on behalf of Defendant Tenecom Limited peter.garthwaite@clydeco.com

Peter Garthwaite

　　　　on behalf of Interested Party London Market Insurers peter.garthwaite@clydeco.com

Renee E. Franchi

　　　　on behalf of Creditor Thomas David Adams renee@vca.law

Robert Drummond

　　　　on behalf of Interested Party National Surety Corporation drummondr@whiteandwilliams.com

Robert Drummond

　　　　on behalf of Interested Party Interstate Fire and Casualty Company drummondr@whiteandwilliams.com

Robert P. Arnold

　　　　on behalf of Defendant Colonial Penn Insurance Company rarnold@walkerwilcox.com  MZaiko@walkerwilcox.com

Robert P. Arnold

　　　　on behalf of Notice of Appearance Creditor Colonial Penn Insurance Company rarnold@walkerwilcox.com MZaiko@walkerwilcox.com

Russell Webb Roten

　　　　on behalf of Defendant Certain London Market Companies RWRoten@duanemorris.com

Russell Webb Roten

　　　　on behalf of Interested Party Certain Underwriters at Lloyd's  London rroten@skarzynski.com

Russell Webb Roten

　　　　on behalf of Interested Party London Market Insurers rroten@skarzynski.com

Russell Webb Roten

　　　　on behalf of Defendant Certain Underwriters at Lloyd's  London rroten@skarzynski.com

Sam A Elbadawi

　　　　on behalf of Interested Party First State Insurance Company selbadawi@sugarmanlaw.com

Samrah Mahmoud

　　　　on behalf of Interested Party Interstate Fire and Casualty Company samrah.mahmoud@troutman.com

Sara C. Temes

　　　　on behalf of Debtor The Diocese of Rochester stemes@bsk.com  CourtMail@bsk.com;kdoner@bsk.com;tayers@bsk.com

Sara C. Temes

　　　　on behalf of Other Professional Stretto stemes@bsk.com  CourtMail@bsk.com;kdoner@bsk.com;tayers@bsk.com

Scott Michael Duquin

　　　　on behalf of Creditor Daniel Regan sduquin@hermanlaw.com  smdlaw27@gmail.com

Scott Michael Duquin

　　　　on behalf of Creditor D. S. sduquin@hermanlaw.com  smdlaw27@gmail.com

Scott Michael Duquin

　　　　on behalf of Creditor M. P. sduquin@hermanlaw.com  smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor Certain Sexual Abuse Claimants sduquin@hoganwillig.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor B. M. sduquin@hermanlaw.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor T. G. sduquin@hermanlaw.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor Daniel Crespo sduquin@hermanlaw.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor J. F. sduquin@hermanlaw.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor D S sduquin@hermanlaw.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor J. O. sduquin@hermanlaw.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor John Doe 3 sduquin@hermanlaw.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor M. B. sduquin@hermanlaw.com smdlaw27@gmail.com

Scott Michael Duquin

on behalf of Creditor Michael Crespo sduquin@hermanlaw.com smdlaw27@gmail.com

Seth H. Lieberman

on behalf of Notice of Appearance Creditor Jeff Anderson slieberman@pryorcashman.com

Seth H. Lieberman

on behalf of Notice of Appearance Creditor Jeff Anderson & Associates slieberman@pryorcashman.com

Shannon Anne Scott

on behalf of U.S. Trustee William K. Harrington shannon.scott2@usdoj.gov

Shirley S. Cho

on behalf of Creditor Committee Official Committee of Unsecured Creditors scho@pszjlaw.com

Siobhain Patricia Minarovich

on behalf of Interested Party National Surety Corporation minarovichs@whiteandwilliams.com

Siobhain Patricia Minarovich

on behalf of Interested Party Interstate Fire and Casualty Company minarovichs@whiteandwilliams.com

Siobhain Patricia Minarovich

on behalf of Defendant National Surety Corporation minarovichs@whiteandwilliams.com

Siobhain Patricia Minarovich

on behalf of Notice of Appearance Creditor Interstate Fire and Casualty Company minarovichs@whiteandwilliams.com

Siobhain Patricia Minarovich

on behalf of Defendant Interstate Fire & Casualty Company minarovichs@whiteandwilliams.com

Siobhain Patricia Minarovich

on behalf of Notice of Appearance Creditor National Surety Corporation minarovichs@whiteandwilliams.com

Sommer L. Ross

on behalf of Interested Party London Market Insurers slross@duanemorris.com

Stephen Boyd

on behalf of Creditor Certain Sexual Abuse Claimants sboyd@steveboyd.com rmatuzic@steveboyd.com

Stephen Boyd

on behalf of Notice of Appearance Creditor 1 - Doe AB sboyd@steveboyd.com rmatuzic@steveboyd.com

Stephen A. Donato

on behalf of Attorney Bond Schoeneck & King, PLLC sdonato@bsk.com,
ayerst@bsk.com;kdoner@bsk.com;CourtMail@bsk.com

Stephen A. Donato

on behalf of Defendant The Diocese of Rochester sdonato@bsk.com ayerst@bsk.com;kdoner@bsk.com;CourtMail@bsk.com

Stephen A. Donato

on behalf of Debtor The Diocese of Rochester sdonato@bsk.com ayerst@bsk.com;kdoner@bsk.com;CourtMail@bsk.com

Stephen A. Donato

on behalf of Plaintiff The Diocese of Rochester sdonato@bsk.com ayerst@bsk.com;kdoner@bsk.com;CourtMail@bsk.com

Stephen G. Schwarz

on behalf of Creditor Claimants CC115/CC136 and CC114/CC135 sschwarz@faraci.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 480 sbross@sssfirm.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 527 sbross@sssfirm.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 468 sbross@sssfirm.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 557 sbross@sssfirm.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 481 sbross@sssfirm.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 485 sbross@sssfirm.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 274 sbross@sssfirm.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 496 sbross@sssfirm.com

Stephenie Lannigan Bross

on behalf of Creditor claimant 434 sbross@sssfirm.com

Steve Phillips

on behalf of Creditor LCVAWCR DOE sphillips@p2law.com

Steve Phillips

on behalf of Creditor LCVAWCR-DOE sphillips@p2law.com

Steven D. Allison

on behalf of Interested Party Interstate Fire and Casualty Company steven.allison@troutman.com  tracey.cantu@troutman.com

Stuart S. Mermelstein

on behalf of Creditor Claimants smermelstein@hermanlaw.com  gdano@hermanlaw.com

Tancred Schiavoni

on behalf of Interested Party Illinois Union Insurance Company tschiavoni@omm.com
tancred-schiavoni-9326@ecf.pacerpro.com

Tancred Schiavoni

on behalf of Interested Party Federal Insurance Company tschiavoni@omm.com  tancred-schiavoni-9326@ecf.pacerpro.com

Terrance Flynn

on behalf of Special Counsel Harris Beach PLLC tflynn@harrisbeachmurtha.com  jwright@harrisbeach.com

Timothy Evanston

on behalf of Interested Party London Market Insurers tevanston@skarzynski.com

Timothy Evanston

on behalf of Interested Party Certain Underwriters at Lloyd's  London tevanston@skarzynski.com

Timothy Patrick Lyster

on behalf of Attorney Woods Oviatt Gilman LLP tlyster@woodsoviatt.com  esolimano@woodsoviatt.com

Timothy Patrick Lyster

on behalf of Notice of Appearance Creditor Ad Hoc Parish Committee tlyster@woodsoviatt.com  esolimano@woodsoviatt.com

Timothy Patrick Lyster

on behalf of Interested Party Ad Hoc Parish Committee tlyster@woodsoviatt.com  esolimano@woodsoviatt.com

Timothy Quaid Karcher

on behalf of Financial Advisor Berkeley Research Group  LLC tkarcher@proskauer.com

Timothy Quaid Karcher

on behalf of Notice of Appearance Creditor Berkeley Research Group  LLC tkarcher@proskauer.com

Timothy W. Burns

on behalf of Notice of Appearance Creditor Official Committee of Unsecured Creditors tburns@burnsbair.com
kdempski@burnsbair.com;nkuenzi@burnsbair.com,4756200420@filings.docketbird.com

Timothy W. Burns

on behalf of Special Counsel Burns Bowen Bair LLP tburns@bbblawllp.com
kdempski@burnsbair.com;nkuenzi@burnsbair.com,4756200420@filings.docketbird.com

Timothy W. Burns

on behalf of Creditor Committee Official Committee of Unsecured Creditors tburns@bbblawllp.com
kdempski@burnsbair.com;nkuenzi@burnsbair.com,4756200420@filings.docketbird.com

Todd C. Jacobs

on behalf of Interested Party National Surety Corporation tjacobs@phrd.com  ssnead@phrd.com

Todd C. Jacobs

on behalf of Defendant Interstate Fire & Casualty Company tjacobs@phrd.com  ssnead@phrd.com

Todd C. Jacobs

on behalf of Interested Party Interstate Fire and Casualty Company tjacobs@phrd.com  ssnead@phrd.com

Todd C. Jacobs

on behalf of Defendant National Surety Corporation tjacobs@phrd.com  ssnead@phrd.com

Victoria Phillips

on behalf of Creditor LCVAWCR-DOE vphillips@p2law.com

William Henry Gordon

on behalf of Creditor Carol Dupre wgordon@garabedianlaw.com

TOTAL: 299

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

THE DIOCESE OF ROCHESTER,                      Case No. 19-20905
                                                Chapter 11 Case
                        Reorganized Debtor.

### ORDER DISALLOWING AND EXPUNGING
### PROOF OF CLAIM NO. 21

Upon the objection (the "Objection")[1] filed by The Diocese of Rochester (the "Diocese"),

seeking entry of an order (this "Order") pursuant to sections 502 of title 11 of the United States

Code, 11 U.S.C. § 101, *et seq.,* and Rule 3007 of the Federal Rules of Bankruptcy Procedure

disallowing and expunging Proof of Claim No. 21 filed by M&T Bank in its entirety; and upon

the *Declaration of Lisa Passero Pursuant to 28 U.S.C. § 1746 in Support of Claim Objections*

[Docket No. __]; and the Court having found that: (i) it has jurisdiction over this matter pursuant

to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2);

(iii) venue of this proceeding and the Objection in this district is proper pursuant to 28 U.S.C. §§

1408 and 1409; and (iv) the relief requested in the Objection is in the best interests of the

Diocese, the Diocese's estate, creditors and other parties in interest; and the Court having found

that the Diocese provided appropriate notice of the Objection and the opportunity for a hearing

on the Objection; and the Court having reviewed the Objection and determined that the legal and

factual bases set forth in the Objection establish just cause for the relief granted herein; and upon

the record herein and after due deliberation and cause appearing therefor,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

15381433.v10
Case 2-19-20905-PRW,  Doc 3440-1,  Filed 11/04/25,  Entered 11/04/25 16:22:54,
Description: Exhibit A- Proposed Order, Page 2 of 43

Case 2-19-20905-PRW,  Doc 3528,  Filed 12/13/25,  Entered 12/14/25 00:33:06,
Description: Imaged Certificate of Notice, Page 14 of 55

**IT IS HEREBY ORDERED THAT:**

1. The Objection is GRANTED, as set forth herein.

2. Any objections or responses to the relief requested in the Objection which have not otherwise been withdrawn, resolved, or settled are hereby overruled on the merits.

3. Pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, POC 21 filed by M&T Bank in this Chapter 11 Case, a copy of which is attached hereto as *Exhibit 1*, is hereby disallowed and expunged in its entirety.

4. Nothing in this Order shall be deemed a waiver or release by the Diocese of its rights to object to POC 21 on any other grounds not stated in the Objection or to object to any other claims filed in this Chapter 11 Case, except with respect to Consenting Class 4 Claims which are dealt with exclusively through the Joint Plan.

5. This Order is immediately effective and enforceable upon its entry.

6. The Diocese and Stretto are authorized to modify the claims register to comport with the entry of this Order.

7. The Diocese is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8. This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: __12 · 4__, 2025
Rochester, New York

Hon. Paul R. Warren
United States Bankruptcy Judge

2

15381433.v10
Case 2-19-20905-PRW, Doc 3440-1, Filed 11/04/25, Entered 11/04/25 16:22:54,
Description: Exhibit A- Proposed Order, Page 3 of 43

Case 2-19-20905-PRW, Doc 3528, Filed 12/13/25, Entered 12/14/25 00:33:06,
Description: Imaged Certificate of Notice, Page 15 of 55

## EXHIBIT 1

Proof of Claim

15381433.v10

Fill in this information to identify the case:

# The Diocese of Rochester
## Case Number: 19-20905

**United States Bankruptcy Court for the Western District of New York**

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

M&T Bank

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No

☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Garry M. Graber, Esq.

Name

Hodgson Russ LLP
140 Pearl Street, Suite 100

Street Address

Buffalo, NY 14202

City            State            ZIP Code

Contact phone _____

Contact email _____

Where should payments to the creditor be sent? (if different)

Name

Street Address

City            State            ZIP Code

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☒ No

☐ Yes. Claim number on court claims registry (if known)_____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No

☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $ 844,000 . Does this amount include interest or other charges?

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Letter of Credit Agreement and Deposit Account Agreement

**9. Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☒ Other. Describe:    Commercial Deposit Account

Basis for perfection:    Right of Setoff and Deposit Account Agreement

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                  $ 844,000

Amount of the claim that is secured:     $ 844,000

Amount of the claim that is unsecured: $ 0          (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:     $ 844,000

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.     $ _____

**11. Is this claim subject to a right of setoff?**

☐ No

☒ Yes. Identify the property:    Commercial Deposit Account

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    5/27/2020
                    MM / DD / YYYY

DocuSigned by:

*Eskinder Tefera*
Signature
6911 9AFB36F7432...

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Eskinder Tefera |
| | First name    Middle name    Last name |
| Title | Vice President, Special Assets |
| Company | M&T Bank |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | One Fountain Plaza, 9th Floor |
| | Number    Street |
| | Buffalo, NY 14202 |
| | City    State    ZIP Code |
| Contact phone | _____    Email _____ |

**Supporting Documents**

I will upload a PDF document supporting my claim (please redact all confidential information)

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-3245810FBE9B

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:                                              Chapter 11

THE DIOCESE OF ROCHESTER,                           Case No.  19-20905 - PRW

                    Debtor.

## RIDER TO PROOF OF CLAIM

M&T Bank ("M&T") submits this Proof of Claim ("Claim") against The Diocese of
Rochester (the "Debtor"), Case No. 19-20905.  The basis of this Claim is that on June 22, 2011,
M&T issued the Debtor an Irrevocable Standby Letter of Credit ("Letter of Credit") for the
benefit of the New York State Workers' Compensation Board in the amount of $844,000.00 (the
"Letter of Credit Amount").The Letter of Credit remains outstanding as of the date of filing this
Claim.  In May 2013, M&T and the Debtor entered into a Commercial Deposit Account
Agreement ("Deposit Account Agreement") to establish the banking account to be used for
reimbursements pursuant to the terms of the Letter of Credit.  On March 13, 2019, M&T and the
Debtor entered into a Letter of Credit Agreement ("Letter of Credit Agreement") which
memorializes the terms and conditions under the Letter of Credit.  On April 23, 2019, M&T
automatically extended the expiration of the Letter of Credit until June 22, 2019 (the "Letter of
Credit Extension").  Accordingly, the Claim, while contingent, is secured by rights of offset in
favor of M&T as set forth in the following documents being filed in support of this Claim:

- **Exhibit "A"** – Letter of Credit;
- **Exhibit "B"** – Deposit Account Agreement;
- **Exhibit "C"** – Letter of Credit Agreement; and
- **Exhibit "D"** – Letter of Credit Extension.

M&T reserves the right to amend and/or supplement this Claim at any time and in any
manner and/or to file additional proofs of claim for any additional amounts and/or claims that
may be based on information not yet known, or the same or additional documents or grounds of
liability, including, but not limited to, additional administrative expenses arising after the petition
date.

This Claim is filed to protect M&T from forfeiture of any claim it has or may have.  The
filing of this Claim by M&T is not and shall not be construed as (a) a waiver or release of
M&T's rights, claims or defenses against any person, entity or property; (b) a waiver or release
of M&T's right to have any and all final orders in any and all non-core matters entered only after
*de novo* review by a United States District Judge; (c) a consent by M&T to the jurisdiction of this
Court for any purpose other than with respect to this Claim; (d) an election of remedy; (e) a
waiver or release of any rights which M&T may have to a jury trial; (f) a waiver of the right to
move to withdraw the reference with respect to the subject matter of this Claim, any objection
thereto or any other proceedings which may be commenced in these cases against or otherwise

involving M&T, including without limitation, any adversary proceeding that was or may be
commenced by any party or committee in this case.

002000.11268 Litigation 15401236v1

# Exhibit "A"

DocuSign Envelope ID: 28E392CC-584D-407F-AX43-5245810FBE9B

**M&T Bank**    M & T Bank

**Irrevocable
Standby Letter of Credit No.
SB1368580001**

**Beneficiary:**
WORKERS' COMPENSATION BOARD
20 PARK STREET, ROOM 301
ALBANY, NEW YORK 12207,  United States

**Applicant:**
ROMAN CATHOLIC DIOCESES
OF ROCHESTER
1150 BUFFALO ROAD
ROCHESTER, NY 146624  United States

**Date of Issue:**
June 22, 2011

**Date and Place of Expiry:**
June 22, 2012 AT ISSUING BANK'S
COUNTERS

**SLC Amount:**
Not Exceeding USD 844,000.00 Eight Hundred Forty Four
Thousand and 00/100 United States Dollars

TO:    CHAIR, WORKERS' COMPENSATION BOARD

WE HEREBY ESTABLISH THIS IRREVOCABLE LETTER OF CREDIT IN YOUR FAVOR FOR THE
DRAWINGS UP TO U.S $844,000.00 EFFECTIVE IMMEDIATELY.  THIS LETTER OF CREDIT IS
ISSUED, PRESENTABLE AND PAYABLE AT OUR OFFICE AT 1800 WASHINGTON BOULEVARD 8TH
FL, BALTIMORE, MD 21230 AND EXPIRES WITH OUR CLOSE OF BUSINESS ON JUNE 21, 2012.

WE HEREBY UNDERTAKE TO PROMPTLY HONOR YOUR SIGHT DRAFT(S) DRAWN ON US
INDICATING OUR LETTER OF CREDIT NO.SB1368580001 FOR ALL OR ANY PART OF THIS
CREDIT, IF PRESENTED AT 1800 WASHINGTON BOULEVARD 8TH FL, BALTIMORE, MD 21230 ON
OR BEFORE THE EXPIRATION DATE OR ANY AUTOMATICALLY EXTENDED EXPIRATION DATE.

EXCEPT AS STATED HEREIN, THIS UNDERTAKING IS NOT SUBJECT TO ANY AGREEMENT,
CONDITION OR QUALIFICATION.  THE OBLIGATION OF M AND T BANK UNDER THIS LETTER OF
CREDIT IS THE INDIVIDUAL OBLIGATION OF M AND T BANK  AND IS IN NO WAY CONTINGENT
UPON REIMBURSEMENT WITH RESPECT THERETO.

IT IS A CONDITION OF THIS LETTER OF CREDIT THAT IT IS DEEMED TO BE AUTOMATICALLY
EXTENDED WITHOUT AMENDMENT FOR ONE YEAR FROM THE EXPIRATION DATE HEREOF, OR

Page 3 of 4

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-3245810FBE9B

**M&T Bank**    M & T Bank

ANY FUTURE EXPIRATION DATE, UNLESS 60 DAYS PRIOR TO ANY EXPIRATION DATE, WE NOTIFY YOU BY REGISTERED MAIL, RETURN RECEIPT REQUESTED OR OVERNIGHT COURIER, ADDRESSED TO CHAIR, WORKERS' COMPENSATION BOARD, 20 PARK STREET, ALBANY, NY 1220, THAT WE ELECT NOT TO CONSIDER THIS LETTER OF CREDIT RENEWED FOR ANY SUCH ADDITIONAL PERIOD.

THIS LETTER OF CREDIT IS SUBJECT TO AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK AND THE 2007 REVISION OF THE UNIFORMED CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS OF THE INTERNATIONAL CHAMBER OF COMMERCE (PUBLICATION 600) AND, IN THE EVENT OF ANY CONFLICT, THE LAWS OF THE STATE OF NEW YORK WILL CONTROL.  IF THIS CREDIT EXPIRES DURING AN INTERRUPTION OF BUSINESS AS DESCRIBED IN ARTICLE 36 OF SAID PUBLICATION 600, THE BANK HEREBY SPECIFICALLY AGREES TO EFFECT PAYMENT IF THIS CREDIT IS DRAWN AGAINST WITHIN 60 DAYS AFTER THE RESUMPTION OF BUSINESS.

SHOULD YOU HAVE OCCASION TO COMMUNICATE ITH US REGARDING THIS LETTER CREDIT, KINDLY DIRECT YOUR COMMUNICATION TO THE ATTENTION OF OUR LETTER OF CREDIT DEPARTMENT MAKING SPECIFIC REFERENCE TO OUR LETTER OF CREDIT NO. SB1368580001. IF ANY LEGAL PROCEEDINGS ARE INITIATED WITH RESPECT TO PAYMENT OF THIS LETTER OF CREDIT, IT IS AGREED THAT SUCH PROCEEDINGS SHALL BE SUBJECT TO THE COURTS AND LAWS OF STATE OF NEW YORK.

TERI N. ALGER
OFFICER

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

# Exhibit "B"

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-3245810FBE9B

 **M&T Bank**

# COMMERCIAL
# DEPOSIT
# ACCOUNT
# AGREEMENT

(Also for use by fiduciaries)

As of March 2013

©2013 Manufacturers and Traders Trust Company

Member FDIC 

BR-414 (03/13)

# TABLE OF CONTENTS

Introduction .............................................................. 1
  Definitions
  Governing Documents
  Kinds of Commercial Accounts

General Terms and Conditions for
  Commercial Deposit Accounts ............................... 1
  General Use of Accounts
  Deposits
  Missing Endorsements ......................................... 2
  Limitations on Deposits
  Verification of Checks and Other
    Noncash Items Received for Deposit
  Collection and Cashing of Checks and Other Items
  Crediting of Deposits
  Withdrawals
  Information about Transactions Made with Your Debit Card and
    Authorization Holds ........................................ 3
  Authorized Signatures and Identification
  Telephone Instructions ........................................ 4
  Preauthorized and Automatic Transfers
  ACH Payments Provisional
  Notice of Changes ............................................. 5
  Indemnity of Bank as Escrowee
  Fiduciaries
  Customer Security
  Notice of Suspected Errors
  Standard of Care
  Charging of Withdrawals ...................................... 6
  Order in Which We Post and Pay Debit Items for Checking, Now,
    Savings (Other than Passbook Savings), and Money Market
    Accounts
  Posting Order for Time Deposit and Passbooks Accounts ... 7
  Overdrafts
  Bank's Right of Setoff
  Power of Attorney ............................................. 8
  Liabilities and Expenses
  Services Fees and Negative Available Balance Fees
  Closing Accounts
  Statements, Notices, Advices and Changes of Address
  Abandoned Accounts
  Amendments .................................................... 9
  Nonwaiver by Bank
  Waiver of Rights

Assignment of Account
Joint Accounts
Reasonable Time to Act
Overdraft Fees Imposed Based on Available Balance
Disclosure of Information
Successors and Assigns ........................................ 10
Legal Proceedings and Disputes
Disputes Involving Your Account
Evidence ........................................................ 11
Conflicts with Applicable Law
Severability
What Law Applies
More Information

Special Provisions for Commercial Checking,
  NOW and Savings Accounts ................................ 12
  Deposits
  Limitations on Withdrawals
  Notice of Withdrawal
  Refusal to Permit Withdrawal
  Passbooks
  Stale and Postdated Checks
  Stopping Payment of Check
  Check Cashing at Bank Branches ........................... 13
  Check Cashing Fees
  Check Cashing Identification Requirements
  Electronic Presentment of Checks
  Certain Interest-Bearing Checking Accounts
  Certain Non-Interest-Bearing Checking Accounts

Special Provisions for Commercial Time
  Deposit Accounts .............................................. 14
  No Change in Maturity Date by Additional Deposit
  Automatic Renewal
  Book Entry Accounts
  Delay in Withdrawal
  On and After Final Maturity Date
  Notice of Maturity Date
  Limitation on Early Withdrawal
  Past Policies on Early Withdrawal
  Limitations on Withdrawals
  Penalty for Early Withdrawal

# ▲▲ M&T Bank

## COMMERCIAL DEPOSIT ACCOUNT AGREEMENT

## INTRODUCTION

### DEFINITIONS

In this Agreement:

1. "M&T," "M&T Bank," "the Bank," "we," "us," "our" and "ours" mean Manufacturers and Traders Trust Company, One M&T Plaza, Buffalo, New York 14203.

2. "Customer," "you" and "your" mean the sole proprietor, corporation, partnership, business-purpose unincorporated association, estate, trust, governmental or other entity or not-for-profit organization on behalf of which an account with us is opened or maintained through any means (e.g., paper request, online, by account renewal, through a merger or acquisition, etc.).

3. The "Account" means each deposit Account opened or maintained for you at M&T for business use and not for personal, family or household purposes.

4. "Business Day" means a day on which M&T is open for business, Monday through Friday, excluding federal holidays.

5. "Item" means all money, checks, drafts, bills of exchange, acceptances, notes and other written promises or orders for payment.

6. "Debit Item" means any Item, electronic funds transfer entry or other transmission or document by which a withdrawal, transfer or other transaction can be made or can be attempted to be made from your Account by any means (e.g., by check, in-person withdrawal, ATM withdrawal or other electronic means).

7. "Negative Available Balance Fee" refers to interest accrued each day by an outstanding negative Available Balance in an Account.

8. "Term" applies only to time deposits and means:

a. The period beginning on the date of the opening deposit and ending on the first maturity date of the Account; or

b. The period beginning on any maturity date of an automatically renewable Account and ending on the next maturity date.

Additional definitions appear in the specific features and terms for respective Account types disclosed in separate brochures as amended from time to time.

### GOVERNING DOCUMENTS

The governing documents for each Account include this Agreement, the Deposit Account Opening Request or signature card for the Account, the applicable Availability Disclosure, M&T's services fees schedules as amended from time to time, and the features and terms for the Account. These documents, as amended and supplemented from time to time, together with any other agreements relating to the Account or use of the Account, including treasury management services, Internet banking, automated clearing house ("ACH"), funds transfer, zero balance account and similar agreements with M&T, constitute the complete agreement concerning each Account (collectively, the "Agreement"). Oral statements by an M&T employee or any other party are not part of this Agreement.

### KINDS OF COMMERCIAL ACCOUNTS

This Agreement contains provisions concerning non-consumer (non-personal):

1. Checking Accounts;

2. NOW Accounts, which are interest-bearing Accounts for which profit-making entities are not eligible;

3. Savings Accounts (including money market accounts); and

4. Time Deposit Accounts.

## GENERAL TERMS AND CONDITIONS FOR COMMERCIAL DEPOSIT ACCOUNTS

### GENERAL USE OF ACCOUNTS

The Customer agrees that it will use its Accounts in compliance with all applicable laws and for legal and legitimate purposes only. Without limiting the foregoing, Customer acknowledges that it is prohibited from using its Accounts (or any other account with M&T or its affiliates) to process restricted transactions (as defined in the Unlawful Internet Gambling Enforcement Act) or in any other way that violates that act or its regulations as may be amended at any time.

### DEPOSITS

Any deposit can be made in person at any M&T banking office. After the first deposit, deposits can be made:

1. By mail;

2. By internal funds transfer, from certain M&T checking, NOW or statement savings Accounts, trust or investment accounts, or M&T Securities, Inc. accounts; by transfer of interest from a time deposit; and by disbursement of commercial loan proceeds;

3. By funds transfer from other banks through payment systems and clearing houses for which proper arrangements have been made;

4. If the Customer has either an M&T ATM Card, M&T ATM Card for Business, M&T Check Card or M&T Check Card for Business tied to the Account, at any ATM which honors the card; or

5. By any other means permitted by M&T, subject to such terms and conditions as M&T, in its sole discretion, from time to time, may determine to be appropriate.

M&T may receive, collect and deposit in the Account all Items drawn, payable or endorsed to bearer or to or to the order of the Customer or otherwise tendered for deposit to the credit of the Customer. All such Items shall be deemed to have been unqualifiedly endorsed by the Customer.

M&T shall not be responsible for verifying the authenticity of or assuring the proper disposition of the proceeds of any Item, including, but not limited to, any Item drawn, payable or endorsed to cash, to bearer, to or to the order of any person signing, drawing, accepting or endorsing the Item or to or to the order of any officer, employee or other agent of the Customer and any Item tendered for deposit to the credit of, or in payment of any obligation of, any such person, officer, employee or other agent.

In processing incoming wire transfers and ACH payments received for deposit to a Customer's Account, M&T relies on account number information contained in the transmitted wire transfer or ACH payment instructions it receives, without reference to names. Accordingly, if M&T receives a wire transfer or ACH payment with crediting instructions that do not contain the complete and correct Account number of a Customer who is the intended beneficiary (i.e., payee) of such wire transfer or ACH payment, the funds received by M&T will not be processed for deposit to the Account of such Customer, notwithstanding that the Customer may be designated by name in the wire transfer or ACH payment instructions as the intended beneficiary of the funds transfer.

Lockbox, Internet banking, night deposit, zero balance accounts, ACH, sweeps and similar special deposit services arrangements require separate agreements with M&T.

1

DocuSign Envelope ID: 28E392CC-584D-407F-AX43-5245810FBE9B

## MISSING ENDORSEMENTS

Checks or other Items payable to the order of the Customer may—but need not—be accepted for deposit without endorsement on behalf of the Customer. M&T may endorse the Item on behalf of the Customer, but has no obligation to do so.

## LIMITATIONS ON DEPOSITS

M&T may for any reason refuse, return or limit the amount of any deposit. M&T may require that deposits equal at least a specified minimum amount. Note that unless the Account has an "add-on" feature, funds cannot be added to a time deposit except at maturity or during a grace period.

## VERIFICATION OF CHECKS AND OTHER ITEMS RECEIVED FOR DEPOSIT

Deposits of checks and other Items (other than cash one of our employees counts and verifies at the time of deposit at a branch) are accepted without our verifying, at the time of the transaction, the actual receipt by us of the same or the respective amounts thereof, regardless of whether the deposit transaction takes place at one of our branches or an automated teller machine or is accomplished using any other facilities or means, and, in all cases, are subject to subsequent confirmation by us, after the deposit transaction has taken place, that the checks and/or other Items indicated on the deposit slip provided by the Customer have actually been received and are in the amounts as shown thereon. Accordingly, neither the deposit slip provided by the Customer with a deposit of such checks and/or other Items nor any transaction ticket issued by us with respect to the same at the time of the deposit transaction shall constitute an acknowledgement of, or otherwise evidence, our actual receipt of any checks and/or other Items or the amounts thereof.

## COLLECTION AND CASHING OF CHECKS AND OTHER ITEMS

With respect to any Item that M&T cashes for a Customer or that is deposited into the Account or for which we give you credit or payment, the Customer warrants to M&T that the signatures of the purported drawer and any endorser thereon are not forged or otherwise unauthorized and that the Item is not a counterfeit. With respect to any such Item that is a remotely created Item, the Customer warrants to M&T that the person or entity on whose account such Item is drawn authorized the issuance of such Item in the amount stated thereon and in accordance with such other terms as are stated thereon.

M&T may process Items, entries representing electronic funds transfers and other payments received for credit to the Account through processing entities such as clearinghouses, Federal Reserve Banks, associations and other entities (each a "Processing Entity," and collectively, "Processing Entities") subject to the rules, regulations, operating circulars, agreements and procedures of such Processing Entities (collectively, "Processing Rules"). In addition to other circumstances in which M&T may charge the Account due to the return of an Item, entry or other payment, if M&T has cashed an Item for the Customer or credited the Account for an Item, entry or other payment and the applicable Processing Rules allow such to be returned to M&T, the Customer agrees that M&T may charge the Account for the amount of the returned Item, entry or other payment.

M&T will charge the Account for any out-of-pocket expenses and charges M&T incurs in collecting funds and cashing Items as well as for returned Items, entries or other payments and in connection with any claim against M&T at any time with respect to a cashed or deposited Item forwarded by M&T for collection or payment. The Customer agrees to reimburse M&T immediately for uncollected and returned Items for which the Customer has received payment from M&T on the basis of provisional credit to M&T's account at the applicable Federal Reserve Bank or otherwise. M&T also has the right to reverse any erroneous debit or credit to the Account.

## CREDITING OF DEPOSITS

Generally, deposits will be credited to the Account on either the same Business Day or the next Business Day, depending on when and where the deposit is made. As a general rule, money deposited in your Account will be credited to your Account our next Business Day if the deposit is made on a Saturday, Sunday or federal holiday, or on any other day if the deposit is made after our business day cut off time. Our business day cut off time may vary by location, but is no earlier than 2:00 p.m. for deposits made to a branch employee or 12:00 p.m. if for deposits made at a proprietary automated teller machine,. Please ask for specifics at your branch.

Funds deposited in an Account cannot be withdrawn before they are credited to the Account and available for withdrawal. To determine when funds from a specific deposit will become available please refer to M&T's Availability Disclosure applicable to your Account. In addition, funds received for deposit into the Account by means of an international ACH transaction (IAT) (as defined in the NACHA rules) may not be made available until certain monitoring and review procedures are completed and this may mean that such funds are not made available as quickly as other ACH transactions.

Deposits to time deposit Accounts begin to earn interest when they are credited to the Account. Deposits to other interest bearing Accounts do not begin to earn interest until they are credited to the Account and would be made available under the applicable funds availability schedule for the Account (disregarding special rules for making part of a day's check deposits available the next business day, for new accounts, and for exceptions in which availability may be delayed).

All Items received for deposit to the Account that are drawn on an account maintained at a bank outside of a Federal Reserve District are accepted by us only on a collection basis. This means that the Account will not be credited for the amount of any Item and no funds from such Item shall be made available for withdrawal until we have actually collected the amount of the Item from the bank on which it is drawn. We may properly forward any such Item to the bank on which it is drawn by first class mail or, if agreed to by us, by any other means requested by the Customer or the bank on which such Item is drawn. We shall have no liability for any delays in the collection of any such Item and, if the Item forwarded for collection is drawn on a foreign currency, the Customer assumes all risk of loss associated with any fluctuation in foreign currency exchange rates that occurs in the process of collection.

## WITHDRAWALS

Withdrawals from your Account can be made in any way we authorize. For example, depending on the kind of Account, withdrawals may be able to be made:

1. By a check written on your Account;

2. In person at our banking office where your Account is open or, as a general rule, at any of our other banking offices, by presenting a properly completed and signed withdrawal form for your Account and, if we issue a passbook for your Account, the passbook;

3. By automatic transfer of money to any other deposit account with us, to any loan account with us or to any organization with which proper arrangements for the transfer exist when the withdrawal is to be made; or

4. At any electronic facility that for the purpose of the withdrawal honors a card tied to your Account.

As a general rule, subject to such exceptions as M&T, in its sole discretion, may permit, principal can be withdrawn from a time deposit only at maturity. Withdrawals will be charged to the Account in any order at the sole discretion of M&T. We will disclose to you the order we use. We may change this order at any time and will notify you of changes.

2

# INFORMATION ABOUT TRANSACTIONS MADE WITH YOUR DEBIT CARD AND AUTHORIZATION HOLDS

You authorize us to deduct the total amount of any transaction made using your debit card (plus related fees) from your account any time after you make the transaction. In addition to ATM transactions, you may initiate transactions with your debit card in two basic ways – using your PIN through the STAR® network or using the Visa® network without the use of your PIN.

Transactions made at ATMs or using your PIN through the STAR network are usually, but not always, fully processed and deducted from your account on the business day that you make the transaction. Transactions authorized through the Visa network usually involve two steps to complete: first, a merchant's authorization request and then a subsequent settlement (i.e., payment) of the transaction. Due to this two-step process, it may take longer for Visa transactions (non-PIN transactions) to be sent to us for final settlement than it takes to complete transactions made using your PIN. Despite the two-step process, we are authorized to promptly reduce your account's available balance for the authorized amount of transactions processed through the Visa network as described in the following sections.

When you make a transaction using a debit card, the merchant may request authorization for the transaction. Generally, if we authorize or approve the transaction, we will temporarily reduce the amount of your available balance based on network rules and the information specified in the merchant's request for authorization. We refer to this reduction in account balance as an "Authorization Hold." The amount of the actual Debit Item we later receive from the merchant for settlement (i.e., payment) may be more or less than the amount of the Authorization Hold specified in the original authorization request. We are entitled to rely upon the information contained in the merchant's authorization request and shall have no liability for doing so, despite any difference between the amount of the Authorization Hold and the actual amount of the Debit Item.

Although we generally place an Authorization Hold as described above, in certain circumstances we may elect not to do so. For example, if it appears to us that a merchant may have made an error (e.g., requesting authorization for the same transaction twice) we may not place an Authorization Hold because we suspect, although we cannot know for certain, that the amount of the authorization request or requests may differ from the amount of the actual Debit Item and we do not want to hold too large an amount. Although we try to avoid holding too large an amount, there may still be instances in which the Debit Item is never sent for settlement or the amount of the Debit Item settled is less than the amount we held. Our objective is to reduce the situations in which an Authorization Hold exceeds the amount of the actual Debit Item; however, due to the way debit card transactions are processed, we cannot completely eliminate the possibility that such situations may arise.

In accordance with network rules, which may change from time to time, we generally retain each Authorization Hold during the day for up to 3 business days. However, we remove the Authorization Hold each night while we process Debit Items, fees and other transactions that are to be paid from your account. This allows any available funds that were subject to the Authorization Hold to be used to pay any Debit Item, fee or other payment from your Account. If the Debit Item that gave rise to the Authorization Hold is not submitted for payment during that night's processing, we reapply the Authorization Hold after we have finished processing the other debits from your account. As a result, your available balance throughout the next day will again be reduced to reflect that the pending debit card transaction is still outstanding. If the pending debit card transaction that gave rise to the Authorization Hold is not submitted for payment by the end of the third business day, the Authorization Hold expires and

is not reapplied. Even though the Authorization Hold has expired, we will pay that transaction from your account if it is later sent to us for payment.

While it is in effect, an Authorization Hold reduces the available balance in your account. However, it does not reserve funds to be used exclusively to pay the particular debit card transaction when the merchant actually sends it for settlement. In some cases, funds that were subject to an Authorization Hold may be used to pay other Debit Items or fees. In addition, in certain cases, an Authorization Hold may exceed the amount of available funds in your account (i.e., we may authorize the transaction when you do not have sufficient available funds in your account). In this case, the Authorization Hold will reduce your available balance to a negative amount or increase an already negative balance to a larger negative amount. Note, however, we do not charge a fee for an Authorization Hold that reduces your balance to a negative amount or further reduces a negative balance. Insufficient funds or overdraft fees are assessed only when transactions are actually submitted for settlement.

We generally determine whether to approve or authorize transactions from your account based on the available funds in your account (plus any funds available under an overdraft arrangement). While funds in your account are subject to an Authorization Hold, those funds are not available to approve or authorize other Debit Items. For example, we will not consider funds subject to an Authorization Hold as available when considering whether to allow you to initiate additional transactions of which we are aware, such as transfers and bill payments made through our online systems, M&T's Telephone Banking Center, or your ATM or debit card or withdrawals at a branch. However, as noted above, these funds will be made available to pay Debit Items, fees and other transactions that are processed for payment from your account at the end of each business day.

## AUTHORIZED SIGNATURES AND IDENTIFICATION

M&T is hereby designated a depository of the Customer. The Authorized Signers for each Account will be those specified on the signature card , Deposit Account Opening Request form, or other applicable document we accept. If the Customer is a corporation, signers must be authorized by resolutions duly adopted by the Customer's Board of Directors (or by by-law or similar authority) and certified by the corporate secretary.

Partnerships, limited partnerships, limited liability companies, trusts, estates and other entities must provide copies of their governing instruments and other documents as M&T may require. Assumed name certificates must be presented by sole proprietors, general partnerships, and corporations where applicable. Specimen signatures will be required and other documents may be necessary as well.

M&T may purchase, give credit for, cash, accept, certify and pay from funds on deposit in the Account, without inquiry, all Items signed, drawn, accepted or endorsed on behalf of the Customer, whether under a title, the words "Authorized Signature" or otherwise, with the purported actual or facsimile signature or other mark agreed upon with M&T or used by you (collectively "signatures") of any of the authorized signers designated by the Customer on a signature card, Deposit Account Opening Request or other document delivered to and accepted by M&T (each an "Authorized Signer"), regardless of the circumstances under which the signature shall have become affixed, if it resembles any actual or facsimile signature previously certified to M&T. The Customer shall indemnify M&T against all claims, damages, losses, liabilities, costs and expenses (including, but not limited to, attorneys' fees and disbursements) incurred by M&T in connection with honoring any purported signature of any Authorized Signer or any refusal to honor the signature of any person who is not an Authorized Signer. M&T can rely on such authorization until it is revoked and until M&T has received and has had a reasonable time to act on a written notice of the revocation.

Presentation of Account-opening documents on behalf of the Customer constitutes a representation and warranty that the Customer has full power, authority and capacity to enter into this Agreement

3

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

and that doing so is pursuant to the Customer's legitimate purposes. For the Customer's protection, M&T may (but is not obligated to) require proof of identity and authority satisfactory to M&T from any person requesting a withdrawal from the Account, and may (but is not obligated to) require proof satisfactory to M&T of the authenticity of any signature on any check written on the Account or any withdrawal form or payment order.

Any Authorized Signer may act on behalf of the Customer and do all such acts and other things as he or she shall deem proper in connection with any Account, including, but not limited to, issuing or cancelling any stop payment order with respect to any Debit Item and executing and delivering any indemnity or other agreement with respect to any Account, Debit Item or stop payment order or other service as may be required by M&T.

Any Authorized Signer (or general partner if the Customer is a partnership) may on behalf of the Customer transact with and through M&T all such business pertaining to the Customer's Account as he or she deems advisable upon such terms as he or she deems proper, including, but not limited to, contracting with M&T for electronic funds transfer, automated clearing house payment, treasury management and other services, and, in connection with any such transaction of business, do all such acts or other things as he or she shall deem proper, including, but not limited to, signing, drawing, accepting, executing and delivering Items, Debit Items, guaranties, assignments, pledges, hypothecations, receipts, waivers, releases and other instruments, agreements and documents, making and receiving delivery of Property, accepting, receiving, withdrawing and waiving demands and notices, and incurring and paying liabilities, costs and expenses.

In the event an Authorized Signer acting on behalf of the Customer shall apply to or contract with M&T for any electronic funds transfer service that M&T may make available to the Customer, including, but not limited to, any service that contemplates M&T's execution of payment orders initiated by the Customer for the wire or ACH transfer of funds to or from an Account of the Customer, such Authorized Signer shall be empowered on behalf of the Customer to designate one or more persons (who may, but need not be, Authorized Signers), each of whom, acting alone, shall be authorized on behalf of the Customer to transmit payment orders to M&T for the transfer of funds to or from the Customer's Account, and M&T shall be entitled to treat each such payment order transmitted by any such designated individual as the Customer's authorized payment order.

Each person identified as an Authorized Signer, and each person or persons designated by an Authorized Signer to act on behalf of the Customer (who may, but need not be, Authorized Signers), shall have the power and authority to transact business and bind the Customer through electronic medium (e.g., the Internet) and M&T may rely on any of the following to the same extent as the actual signature and proof of identity of each such person to bind the Customer: any electronic signature or digital signature, under applicable law, of such person; any identifier issued by M&T, its affiliates or any other party (e.g., Personal Identification Number associated with an ATM card or other card or any access device) to such person; or any other criteria that M&T may reasonably rely on which may serve as an indicator of authentication for such person.

M&T may rely upon any oral (including, but not limited to, telephonic), written (including, but not limited to, telegraphed, telexed, e-mailed or otherwise transmitted electronically or telephonically) or other request that M&T in good faith believes to be valid and to have been made by or on behalf of the Customer by an Authorized Signer, unless the Customer has delivered specific instructions to the contrary to M&T and M&T has had a reasonable time to react to such instructions.

All actions taken by M&T with respect to any of the Customer's Accounts, obligations to M&T arising therefrom, any Debit Item or Item drawn on or deposited to any Account and all transactions and agreements pertaining to the Account, or to services provided by M&T in connection therewith, are hereby ratified, approved and confirmed in all respects.

The Customer will indemnify and hold harmless M&T and its directors, officers, agents and employees against any costs, claims, liabilities, losses, damages and expenses whatsoever, including attorneys' fees and disbursements, incurred in connection with M&T's execution of the Customer's instructions purportedly conveyed by an Authorized Signer except with respect to gross negligence or willful misconduct of M&T.

## TELEPHONE INSTRUCTIONS

Without limiting any other provisions hereof, unless the Customer expressly directs otherwise in writing, M&T at its option may accept telephone instructions it reasonably believes to have been delivered by any Authorized Signer for the Customer for any purpose, including but not limited: (a) to pay or stop payment on any Item, subject to M&T's stop payment rules, (b) to disclose information concerning the Account, or (c) to make transfers to or from or among the Customer's M&T accounts, to make loan payments, to invest in time deposits or other vehicles for the Customer's account through M&T or its affiliates or cooperating vendors, or to or for the Customer's account at other financial institutions or at brokers or securities firms. M&T will use ordinary care in executing such instructions and shall have no duty of extraordinary care, including by way of example and not limitation, no duty of notice to the Customer other than its usual statements. M&T may but shall have no duty to require written confirmation or other security measures with respect to telephone instructions.

If the Customer elects to deliver telephone instructions without M&T's standard commercial funds transfer agreement and security procedures, the Customer thereby waives its protection and stipulates that any security procedures used constitute commercially reasonable security procedures. THE CUSTOMER IS HEREBY NOTIFIED THAT UNDER ARTICLE 4A OF THE UNIFORM COMMERCIAL CODE, BANKS EXECUTING FUNDS TRANSFERS ARE ENTITLED TO RELY ON ACCOUNT NUMBERS AND BANK NUMBERS WITHOUT REFERENCE TO ACCOUNT TITLES AND BANK NAMES and banks have no duty to discover discrepancies. M&T will not be responsible if the Customer's error in funds transfer instructions results in a loss.

## PREAUTHORIZED AND AUTOMATIC TRANSFERS

M&T provides several services by means of which the Customer can authorize repetitive automatic and quasi-automatic funds transfers to or from the Customer's Account at M&T, among other things:

1. To or from another account of the Customer;

2. To any M&T loan account; or

3. To or from the account of an individual or another entity (such as an employee of Customer, a taxing authority, payroll service or insurance company);

provided that the Customer has executed and delivered any agreements M&T may require, for example, M&T's form of funds transfer agreement and recurring payments templates, or M&T's Automated Clearing House ("ACH") payments agreement, and entered into any other appropriate agreements with other parties (such as ACH authorizations).

ACH credits and debits will be recorded on the Customer's regular periodic statement, rather than by special confirmations.

For further information, the Customer should contact M&T Treasury Management representatives.

## ACH PAYMENTS PROVISIONAL

Preauthorized electronic funds transfers sent or received through the ACH system are subject to the Rules of the National Automated Clearing House Association (the "ACH Rules") as well as applicable state and federal laws. Because ACH files are prepared for transmission in batches in advance, each ACH payment is provisional until each financial institution involved in executing the transaction has received final payment for the ACH payment. If in fact the actual payment date the Customer's account lacks sufficient available funds to cover an ACH debit authorized by the Customer, the ACH transaction may be reversed. In such a case, the Customer's debt to its creditor would remain unpaid. M&T would not be responsible for late charges or other penalties that might result.

4

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

Payment is also provisional if the Customer is the receiver of an ACH credit from a debtor's account at another bank. If on the actual payment date the debtor's deposit account lacks sufficient funds, the banks will reverse the credits posted earlier in the day. The debt would remain due and payable but the Customer would have to collect it directly from the debtor, not through M&T.

## NOTICE OF CHANGES

The Customer will notify M&T promptly of any change in its existence, ownership, organizational structure, Authorized Signers or address; and if the Customer should dissolve or cease to exist or be active, or if the authority of any Authorized Signer should be terminated by succession of office or otherwise, M&T may rely upon and act in accordance with the preceding authorization until it shall have received and had a reasonable time to act on written notice to the contrary from an authorized representative of the Customer.

## INDEMNITY OF BANK AS ESCROWEE

Both other parties to contractual escrows and similar agreements naming M&T as escrow agent for the Account hereby appoint M&T as escrow agent and agree to hold harmless and indemnify M&T and each of its officers, directors, employees and other agents against any and all damages, liabilities, losses, claims, costs and expenses including actual attorneys' fees and disbursements incurred in any action M&T takes or does not take in reliance on this appointment.

## FIDUCIARIES

If the Authorized Signer is acting as trustee or executor for a Customer which is a trust or estate or in a similar fiduciary capacity, the Authorized Signer certifies, by opening the Account, that no provision of this Agreement will violate any law, any provision of the instrument governing the Customer, or any agreement by which the Customer or any of its assets is bound; and that he or she is authorized by statute or the governing instrument of the Customer to authorize on the Customer's behalf all actions contemplated by this Agreement, unless the Customer and M&T have entered into a written agreement which expressly provides otherwise.

## CUSTOMER SECURITY

The Customer acknowledges that it has sole control of the checkbooks, electronic banking cards (if any), printed checks, access devices, security codes, etc. issued for its use for the Account and that the Customer is responsible for maintaining commercially reasonable security devices and controls to prevent forgery and other issuance of unauthorized Items, Debit Items, payment orders and other transactions against its Accounts with M&T. The Customer agrees to notify M&T promptly if the Customer knows or has reason to suspect unauthorized Items, Debit Items, payment orders, or other transactions have been issued against an Account.

## NOTICE OF SUSPECTED ERRORS

In order to claim reimbursement from M&T for an error, omission or unauthorized transaction relating to an Item or Debit Item with respect to the Customer's Account (collectively referred to as "Error"), the Customer must notify M&T in writing.

If the Customer suspects that the Error relates to an Item or Debit Item bearing a forged endorsement, M&T must receive written notice within 90 days after M&T sends or otherwise delivers the relevant account statement or advice on which the Customer discovered, or should have discovered, the Error. In the case of all other Errors, whether relating to an Item or Debit Item, M&T must receive written notice within 14 days after M&T sends or otherwise delivers the relevant account statement or advice on which the Customer discovered, or should have discovered, the Error. For purposes of this section, we will be deemed to have delivered a statement or advice as provided in the section of this agreement entitled STATEMENTS, NOTICES, ADVICES AND CHANGES OF ADDRESS or, if you have a type of account for which we do not make statements available, we shall be deemed to have delivered a statement or advice on the date that we notify you in any way of the activity in your Ac-

count relating to the disputed matter or you otherwise become aware of the disputed matter.

M&T shall not be liable for any consequential, incidental, indirect, or punitive damages relating to any Error. In the event of an Error, M&T's sole obligation shall be to pay or refund to the Customer the amount of the Item or Debit Item.

If the Customer provides timely written notice to M&T of an Error, M&T will investigate the Customer's claim. The Customer agrees that M&T will have a reasonable amount of time to investigate the claim and further agrees that a reasonable period of time shall be at least sixty (60) days, but may be longer, depending on the circumstances. The Customer agrees that M&T has no obligation to reimburse the Customer for the amount of the Error unless, until and to the extent that M&T either: (1) recovers the amount of the Error from another party; or (2) determines the Customer's claim to be valid.

If the Customer fails to provide timely written notice to M&T of an Error, M&T shall have no obligation to reimburse the Customer for, or have any liability with respect to, any loss related to such Error.

If the Customer fails to provide timely written notice to M&T of an Error relating to an Item that was altered or bears an unauthorized signature or forged endorsement or any type of unauthorized or altered Debit Item, M&T will have no obligation to reimburse the Customer for losses regarding subsequent Items bearing alterations, unauthorized signatures or forged endorsements by the same person(s) or Debit Items initiated or altered by the same person(s).

Notwithstanding any other provision hereof, the Customer agrees that if it recovers any amount attributable to an Error from any other party or parties, it shall immediately notify M&T and (i) any obligation M&T may have to reimburse the Customer for such Error shall be reduced by the amount that the Customer recovered from such third party or parties or (ii) if M&T has already reimbursed the Customer, the Customer will repay the amount recovered from such third party or parties to M&T.

M&T shall be subrogated to any claims or rights of the Customer as against any person with respect to any amounts paid by M&T in connection with any Error. The Customer agrees to provide M&T with its full cooperation in connection with M&T's assertion of any such claims or rights.

Any action brought by the Customer against M&T regarding an Error, whether directly or as a cross claim or defense, must be commenced within one year after M&T mailed or otherwise delivered the relevant statement or advice, even if notice has been provided to M&T as required in this provision.

Notwithstanding any other provision hereof, in the event that M&T refunds or otherwise reimburses the Customer for any Error, M&T shall have the right to reverse such refund or otherwise recover such sums from the Customer in the event that M&T determines the Customer is not entitled to such amount.

## STANDARD OF CARE

M&T strongly recommends that the Customer use M&T's positive pay and other services designed to help identify and/or prevent unauthorized access and transactions with respect to Accounts. If the Customer does not use M&T's positive pay or other services, M&T will not be liable for any losses that may have been avoided by using such services.

The Customer acknowledges that modern check processing is automated and agrees that M&T's duty of ordinary care in check processing shall have been satisfied if M&T has regular routine procedures for identifying unauthorized check transactions (which may, but need not, include procedures for verifying check signatures) and M&T follows those procedures. The Customer agrees that M&T will

5

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

not have failed to exercise ordinary care in paying a check drawn on the Customer's Account solely because M&T's procedures do not provide for a sight-review of checks drawn on M&T deposit customers' accounts, or provide for such a sight-review in the case of checks above an established threshold amount or on a sample basis. The Customer further recognizes that automated check processing procedures rely primarily on information encoded onto each check in magnetic ink and agrees that, in paying any check drawn on the Customer's Account, M&T may properly disregard all information on the check (including any legend or language written on the check that restricts or imposes conditions on its payment) other than the identity of the drawee bank, the amount of the check and any other information encoded onto the check in magnetic ink according to generally accepted banking standards, whether or not that information is consistent with other information included on the check.

The Customer acknowledges that M&T cannot accept responsibility for verifying multiple signatures or other nonstandard requirements which would entail manual processing of the Customer's checks. Accordingly, the Customer agrees that if more than one person has been designated as an Authorized Signer on the Account, any check drawn on such Account that bears the signature of any one Authorized Signer shall be the authorized check of the Customer, notwithstanding anything in writing to the contrary that may be stated on the face of the check, or on the Deposit Account Opening Request or signature card for the Account or in any other document provided to M&T by the Customer, and the Customer acknowledges that no officer, employee, representative or other agent of M&T has the authority on behalf of M&T to vary the terms herein provided.

M&T may properly refuse to pay any Item drawn on the Account that is presented to M&T for payment, if, at the time of presentment, M&T performs a review of the Item and is unable to read or distinguish any information contained on the Item necessary to determine the amount for which the Item is written or whether the Item is the authorized Item of the Customer, or if M&T, in its sole judgment, has reason to doubt the Item's authenticity. The Customer agrees that M&T's return without payment of any such Item shall not constitute a wrongful dishonor of the Item by M&T and that M&T shall have no liability to the Customer on account thereof.

## CHARGING OF WITHDRAWALS

Generally, withdrawals will be charged against the Account on either the same Business Day or the next Business Day, depending on when and where the withdrawal is made. As a general rule, money withdrawn from your Account will be charged against your Account our next Business Day if the withdrawal is made on a Saturday, Sunday or federal holiday, or on any other day if the withdrawal is made after our business day cutoff time. . Funds withdrawn from time deposits will be charged to earn interest immediately. Funds withdrawn from other interest bearing Accounts may continue to earn interest until the withdrawal is charged against the Account.

## ORDER IN WHICH WE POST AND PAY DEBIT ITEMS FOR CHECKING, NOW, SAVINGS (OTHER THAN PASSBOOK SAVINGS), AND MONEY MARKET ACCOUNTS.

### What is "Posting"?

When we speak of posting transactions, we are referring to the process of recording against your account transactions received for payment from or credit to your account. This is different from temporary holds that may be placed on your account for certain pending transactions that have not yet been submitted for actual payment. For example, as soon as we are made aware that a transaction may be made to your account, we may place a hold on your account or place a temporary credit on your account in the case of a deposit. As a result, you may see a temporary hold or credit on your account that has not yet been posted. These pending debits

and credits may be actually posted to your account on that business day or on a future date depending on the nature of the transaction.

### Overview of Posting Order

The order in which transactions are posted and paid from your account is important if there is not enough money in your account to pay all of the transactions that are received for payment. The order can affect the number of transactions that overdraw your account or that are returned unpaid and the amount of fees you may have to pay. To help you manage your account, we are providing you with information describing how we process transactions in your account.

Transactions can be posted to your account in two different ways - in "real time" or in "batch" at the end of the day. Transactions such as transfers made through M&T Web Banking for Business, certain telephone transfers made through one of our Telephone Banking Service Representatives, and certain reversal transactions (e.g., certain reversals of a prior credit or debit posted to your account) are posted to your account in real time during the business day as they are made. Other transactions are posted to your account in batch at the end of each business day. The order we use for posting these transactions in batch each night is described in the following section.

### Posting in Batch at the End of the Business Day

We begin the batch posting of transactions to your account by posting credits (other than interest, which is credited at the end of batch) to your account and reversals and adjustments for transactions from prior business days that have not already posted in real time. Next, we post Debit Items received for payment from your account on a given business day. We post these Debit Items in a particular order within groups based on the type of Debit Item. Within each group, we apply a unique methodology based on the type of Debit Item. For instance, debit card transactions will post based on when our records indicate the transaction was made, but checks will post based on the check number, if available. When we do not have a record of when a transaction happened or we don't have a check serial number, we post those Debit Items by dollar amount in ascending order (that is, lowest dollar amount items first) within the group noted for that type of Debit Item. The chart below details the types of transactions in each group and the order used for the Debit Items within each group.

| Group Order: | Type of Debit Item in each group: | How order is determined: |
|---|---|---|
| 1 | The following types of transactions for which our records include a date and time designation:<br><br>• ATM and Debit Card transactions, including purchases;<br><br>• Branch Transactions performed over the counter at an M&T Branch, including withdrawals and transfers;<br><br>• Checks Cashed at an M&T branch; and<br><br>• Wire Transfers to accounts of other parties. | Chronologically based on the date and time that our records indicate the transaction was initiated or authorized.<br><br>Note: If two transactions have the same date and time, we will post the smallest dollar amount transaction first. If we do not have a date/time for a transaction, we will post these transactions in Group 2. |

DocuSign Envelope ID: 2E8392CC-584D-407F-AA43-5245810FBE9B

| | | |
|---|---|---|
| 2 | The following types of trans-actions for which our records do NOT include a date and time designation:<br><br>• **ACH Settlement Deb-its** (i.e., debits to fund ACH transactions that you or your service provider previously scheduled to be made from your account un-der your ACH origina-tion service with us);<br><br>• Any transactions from Group 1 above that do <u>not</u> have date and time designation for any reason; and<br><br>• **Transfers between your M&T accounts** initiated through Web Info, Web InfoPLUS, or *Web*INFOCU$<br>Note: Includes transfers between deposit accounts and payments to M&T loans. This does <u>not</u> in-clude transac-tions that are posted during the day in real time, such as those ini-tiated through M&T Web Bank-ing for Business. | Ascending by Dollar Amount (smallest to largest) |
| 3 | **M&T Web Banking for Business Bill Pay** transac-tions | Ascending by Dollar Amount (smallest to largest) |
| 4 | **ACH Debits and other mis-cellaneous debits**<br>Note: Does not include checks you wrote that are converted into ACH transactions. (see group 5 for these transactions) | Ascending by Dollar Amount (smallest to largest) |
| 5 | **Checks** (other than those cashed at M&T branches)<br>Note: Includes checks that are electronically processed as images or through the ACH net-work. Checks cashed are in Group 1 above. | Check number order<br><br>Note: If checks are not num-bered, we will post these checks in as-cending dollar amount (small-est to largest) af-ter we post numbered checks. |
| 6 | **Fees and Service Charges** | Ascending by Dollar Amount (smallest to largest) |

## POSTING ORDER FOR TIME DEPOSIT AND PASSBOOKS ACCOUNTS:

After posting credits to your account and reversals and adjustments for transactions from prior days, we post (that is, process for pay-ment and record against your account) Debit Items received for payment from your account on a given business day. We post these Debit Items based on dollar amount in low to high dollar order (that is, in ascending dollar amount from the smallest to the largest).

## OVERDRAFTS

Unless pursuant to an overdraft financing agreement or other over-draft arrangement with M&T, the Customer is not entitled to with-draw funds in excess of the Available Balance. Available Balance is defined in the applicable Availability Disclosure for Commercial or Corporate Deposit Accounts, which will be amended from time to time. If one or more Debit Items presented against, or processed by M&T for payment from, the Account exceed the Available Balance in the Account (and in any other deposit account linked to it as part of an overdraft arrangement), or the maximum amount of a line of credit extended in connection with the Account, M&T may, at its sole discretion, pay or refuse to pay any or all of such Debit Items. M&T may pay any Debit Item that overdraws the Account, without regard to whether M&T's payment of the Debit Item causes the Account to be overdrawn or increases the amount of an existing overdraft on the Account, and notwithstanding that M&T's decision to pay a Debit Item may cause there to be insufficient available funds to pay other Debit Items drawn on or chargeable to the Account that could have been paid had M&T not paid the Debit Item that created the overdraft. M&T's payment on any occasion of any Debit Item that overdraws the Customer's Account will not obligate M&T to pay on such occasion, or any other occasion, any other Debit Item that overdraws or would overdraw the Account. M&T is entitled to debit the Account for any applicable insufficient funds or overdraft fees, whether or not the Debit Item that overdraws the Account is paid. If the Customer does obtain cash or if other Debit Items are paid in excess of the Available Balance, the Customer agrees to reimburse M&T immediately without formal demand. Interest also accrues on each overdraft paid, at the Negative Available Balance Rate as announced from time to time, unless the Customer's financ-ing agreement with M&T specifies a different rate. Interest accrues from the date the overdraft is extended by M&T until M&T receives actual payment in full from the Customer, including all overdraft fees and any charges and fees imposed by other banks with respect to each Debit Item so paid.

## BANK'S RIGHT OF SETOFF

If the Customer or a borrower whose debts are guaranteed by the Customer defaults in any way on any present or future indebtedness to M&T (or its affiliates), whether direct or contingent, M&T (or its affiliates) may offset against each Account held by the Customer in any capacity, and apply the funds to pay both the defaulted indebted-ness and any or all related indebtedness and other obligations owed or guaranteed by the Customer to M&T (or its affiliates), in any order, and whether or not the other indebtedness or obligations are then due. M&T (or any of its affiliates) may exercise its right of setoff even if:

1. The funds were deposited in the Account by a third party or consist of interest earned by funds deposited by a third party;

2. The Customer is not the sole obligor on the indebtedness but the Account is in the Customer's name only; or

3. The Account is held jointly with a third party that is not obli-gated on the indebtedness to which the funds are applied.

M&T (and its affiliates) will not be liable for any consequential or special damages if M&T's (or it affiliate's) exercise of its right of setoff depletes the Account so that Debit Items or requests for with-drawal presented subsequently cannot be honored.

7

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245610FBE9B

## POWER OF ATTORNEY

M&T has no obligation to accept or rely on a power of attorney purportedly granted by an Authorized Signer for Customer or any other entity. Generally, M&T will rely on a power of attorney purportedly granted by an Authorized Signer for an entity only under extraordinary circumstances. The Customer is urged to make all necessary arrangements in advance so as to conduct its banking business in accordance with applicable corporate, partnership, trust and estate or other law.

## LIABILITIES AND EXPENSES

The Customer must pay any and all liabilities, damages, claims, losses, costs and expenses of any kind or description which M&T incurs in connection with the Customer's Account, including without limitation collection costs and attorneys' fees and disbursements to defend or enforce any of M&T's rights or remedies or for any other legal service.

## SERVICES FEES AND NEGATIVE AVAILABLE BALANCE FEES

M&T may charge the Customer's Account for the full amount of each applicable services fee and each Negative Available Balance Fee when incurred. M&T will not be liable if as a result of such fees, the Available Balance of the Account is insufficient to pay checks or other Debit Items subsequently presented for payment from the Account.

M&T can increase existing Negative Available Balance Rates and fees or establish new ones at any time by notice posted in M&T banking offices or mailed or otherwise delivered or made available to the Customer. M&T need not give notice of waived or decreased or eliminated fees. Specific rates and fees are disclosed in the Customer's Account statements and in separate schedules and forms and will be amended from time to time.

M&T may charge the Customer's Account for the full amount of any monthly fees for any month or partial month that the account is open. If any such fee may be avoided by maintaining a minimum or average daily balance during the month, M&T will determine whether such requirement has been satisfied based on the days that the Account is open during the month, excluding the day on which the Account is closed.

If the Customer maintains an Account for the purpose of holding funds belonging to another party, which Account is subject to a state (or other governmental) law, regulation, rule or guideline (e.g., an Interest On Lawyers Account (IOLA), Interest On Lawyers Trust Account (IOLTA) or Maryland Affordable Housing Trust Account (MAHT), or similar type of account) the Customer agrees that (i) the Customer is responsible for the payment of all M&T service charges associated with the Account including those charges that M&T for any reason does not, or is prohibited from debiting to the Account, offsetting from interest earned on such Account ,or otherwise collecting from such Account, and (ii) M&T may collect any such charges by debiting the amount thereof to any other Account or Accounts that the Customer may maintain with M&T from time to time, including, but not limited to, any operating account, or by invoicing the Customer for all or any part of such charges.

## CLOSING ACCOUNTS

M&T may close any checking, NOW or savings (including money markets) Account at any time for any reason. M&T may close time deposit Accounts at any time for any reason:

1. On or after the final maturity date of the Account;

2. At any time if the Ledger Balance falls below the minimum balance required for Accounts of the same type, whether during the initial Term or an automatic renewal period.

3. At any time during the initial term or any renewal term of your account so long as we pay you all money on deposit in the Account at the time of its closing plus all interest that money would have earned had it remained on deposit in your Account until its next maturity date.

If M&T closes an Account, M&T will notify the Customer and forward a check for the balance remaining after deduction of all applicable fees. After an Account is closed, M&T will not be liable for rejecting deposits or withdrawal orders or any Debit Item.

## STATEMENTS, NOTICES, ADVICES AND CHANGES OF ADDRESS

Statements, notices and advices will be deemed received three days after M&T delivers such statements, notices or advices. M&T shall be considered to have delivered a statement, notice or advice when M&T: (i) deposits such statement, notice or advice in the regular U.S. mail directed to Customer's most recent mailing address shown on M&T's records for the Account, even if such statement, notice or advice is returned undeliverable; (ii) delivers such statement, notice or advice to Customer according to Customer's instruction, whether electronically, to an agent or otherwise, even if such statement, notice or advice is returned undeliverable; or (iii) makes such statement, notice or advice available to Customer for electronic or physical retrieval according to Customer's instruction, even if Customer does not retrieve such statement, notice or advice. Customer should advise M&T as soon as Customer knows of a change in address or other delivery information and of any failure to receive a statement, notice or advice. Customer may also subscribe to additional treasury management services providing alternate forms and frequency of balance or account information. Notices to M&T must be in writing and are effective when actually received by Customer's account officer at M&T.

Customer understands that certain laws and rules require banks to provide notice to their customers within specified time periods after the banks receive certain types of incoming payment orders (e.g., certain ACH and wire transfers) unless the banks and their customers agree otherwise. Notwithstanding any such law or rule, Customer agrees that: (i) M&T has no obligation to notify Customer that it received or executed a payment order with respect to the Account except as provided herein; (ii) M&T will notify Customer that it received or executed such a payment order only in the periodic statements for the Account or as otherwise agreed upon by the parties; and (iii) if M&T agrees to provide notice of payment orders received or executed by M&T with respect to the Account by any means other than in periodic statements, Customer will pay M&T the fee for such notice as specified in the applicable fee schedule for the Account.

## ABANDONED ACCOUNTS

Most, if not all, states as well as certain other jurisdictions (which include Puerto Rico, the Virgin Islands and the District of Columbia) have unclaimed property laws which declare deposit accounts maintained with a bank to be abandoned after a prescribed period of inactivity. As a general rule, for escheatment purposes, a Customer's Account, regardless of the location of the M&T banking office at which it is established or maintained, is subject to the abandoned property law of the state or other jurisdiction of the Customer's last known address, as reflected by the books and records of M&T, and will be turned over to such state or jurisdiction after the lapse of the period of inactivity leading to abandonment under such state's or other jurisdiction's abandoned property law. If such state or other jurisdiction does not have a law that provides for the escheatment of the Customer's Account to that state or other jurisdiction, or, if the Customer's last known address cannot be determined from the books and records of M&T, the Customer's Account is subject to escheatment to New York State (as the state of M&T's corporate domicile), in accordance with New York State's abandoned property law.

The prescribed period of inactivity leading to abandonment of the Customer's Account varies from state to state. As a general rule, the prescribed period of inactivity under applicable law with respect to time deposits is deemed to begin on the first maturity date of the Account, without regard to whether or not the Account is subject to automatic renewal.

A state's or other jurisdiction's abandoned property laws, where applicable to the Customer's Account, include rules that permit M&T to recognize certain Account activity and Customer contact

8

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

with M&T to prevent escheatment. Generally, any withdrawal from an Account or written response by the Customer to M&T's notices will prevent escheatment of the Account.

A written notice of pending escheatment will be sent to the owner of each Account at the most recent address in M&T's records concerning the Account.

If the Customer's Account becomes inactive, to the extent permitted by applicable law, M&T may charge the Customer's Account for (i) an allocated share of such advertising expenses that M&T may incur in connection with the publication of any notice that the Account will be turned over to a state or other governmental authority as abandoned property, (ii) the postal cost of any notice that M&T is required to send to the Customer by registered or certified mail, return receipt requested, or by any other means of delivery, to inform the Customer that the Account will be turned over to a state or other governmental authority as abandoned property, and (iii) such other amount as shall reimburse M&T for the handling and processing cost associated with the turnover of the Account to a state or other governmental authority as abandoned property.

## AMENDMENTS

Changes in the terms and conditions affecting M&T Accounts, this Agreement and related documents, may be made by M&T at any time, with notice as required by law. Any such change shall be effective as of the date designated by M&T or, in the case of an adverse change impacting an automatically renewable time deposit account, upon the first renewal of such time deposit account following the designated effective date of the change.

## NONWAIVER BY BANK

All rights and remedies of M&T are cumulative, and no right or remedy shall be exclusive of any other right or remedy. No single, partial or delayed exercise by M&T of any right or remedy shall preclude full and timely exercise by M&T at any time of any right or remedy of M&T without notice or demand, at M&T's sole option. No course of dealing or other conduct, no oral agreement or representation made by M&T or usage of trade shall operate as a waiver of any right or remedy of M&T. No waiver of any right or remedy of M&T shall be effective unless made specifically in writing by M&T.

## WAIVER OF RIGHTS

The Customer waives any rights to notice, presentment, protest and notice of protest that it may have in connection with claims against the Customer's Account. In the event that any action relating to the Account or this Agreement should be maintained in any court (i.e., any matter other than a dispute covered by the arbitration provisions contained in this agreement), M&T and Customer each waive any right to jury trial.

## ASSIGNMENT OF ACCOUNT

M&T will not be able to honor any assignment of the Customer's rights in its Account until an M&T officer has received the assignment document purportedly executed on behalf of the Customer together with any other documents, acknowledgments, and agreements required by M&T, each in a form satisfactory to M&T in its sole discretion. M&T has no obligation to verify the authenticity of the assignment but is entitled to conduct any further due diligence inquiries to satisfy itself that the assignment appears to be valid.

## JOINT ACCOUNTS

1. Joint commercial deposit Accounts include a right of survivorship. If an individual who is joint owner of an Account dies, M&T is not obligated to permit any withdrawal from the Account until M&T has received all documents required by applicable law as understood by M&T in its sole discretion. A sole proprietor is an individual for such purposes. M&T may treat the funds as belonging to the surviving owners of the Account.

2. Unless M&T has received and had a reasonable time to act on written notice to the contrary, any Authorized Signer of any owner is entitled to order deposits and withdrawals from the Account, even if the respective owner has made no deposits to the Account, unless the

Customers have a special Account agreement with M&T providing otherwise.

3. Each joint owner is the agent of each other owner. An Authorized Signer for one owner alone can endorse any check or other Item payable or endorsed to or to the order of any owner, unless the Customers have a special Account agreement with M&T providing otherwise.

4. All owners will be jointly and severally liable in connection with the Account and this Agreement. M&T may sue any owner whether or not M&T sues the other owners.

5. M&T may but is not obligated to require confirmation from other owners of any transaction requested by one owner.

6. M&T may but is not obligated to require that automatic or recurring payments be authorized by all owners of the Account. M&T may allow any owner acting alone to cancel a payment, and M&T has no obligation to notify the remaining owners of the cancellation.

7. M&T may but is not obligated to require that an assignment of the rights of one owner of a joint Account be signed on behalf of all owners of the Account.

8. If M&T closes the Account, M&T can deliver a check for the balance remaining after deduction of all outstanding fees and charges to any owner, on behalf of all owners of the Account.

9. M&T may deliver statements and notices concerning the Account to any owner, and each notice will be effective for all owners of the Account.

## REASONABLE TIME TO ACT

A reasonable time for M&T to act on any notice, order or other communication will extend until at least the close of business on the Business Day following the Business Day on which M&T received the communication in question.

## OVERDRAFT FEES IMPOSED BASED ON AVAILABLE BALANCE

The Account will be subject to a Non-sufficient Funds ("NSF") or overdraft fee for each Debit Item which is presented against or processed for payment from, the Account when the Available Balance in the Account (or in any other account linked to it as part of an overdraft arrangement) is insufficient for payment, or if the payment would exceed the credit limit, if the Customer has an overdraft line of credit with M&T. The NSF or overdraft fee may be imposed whether the Debit Item is paid or returned unpaid. Interest (a Negative Available Balance Fee) may also be charged with respect to each overdraft.

A current schedule of fees for services which M&T offers in connection with each type of commercial Account appears in a separate schedule. Current interest rates, Earnings Credit Rates and Negative Available Balance Rates will be disclosed when an Account is opened and on statements. The schedule and rates will be amended from time to time at M&T's sole discretion.

## DISCLOSURE OF INFORMATION

In the regular course of business, M&T will disclose information about Accounts (a) in a request for a report on the Customer for business purposes; (b) to agents, contractors and vendors for internally controlled M&T marketing activities; (c) at its discretion, with its affiliates and subsidiaries, to the extent permitted by law; and (d) in response to apparently authorized inquiries, for example:

1. In a receipt issued in connection with a transaction;

2. As necessary to complete a transaction or resolve any error concerning a transaction;

3. In a statement issued for the Account;

4. To the Customer in whose name the Account is held;

5. Pursuant to the written instructions of the Customer in whose name the Account is held;

6. To verify the existence and condition of the Account pursuant to the routine request of a merchant or an agency such as a credit bureau; or

9

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

7. Pursuant to applicable law, a court order or any order or request of a governmental agency.

## SUCCESSORS AND ASSIGNS

This Agreement shall be binding on and inure to the benefit of both parties and their successors and assigns.

## LEGAL PROCEEDINGS AND DISPUTES

If the Account becomes involved in any legal proceeding (including any arbitration proceeding between the Customer and M&T), M&T may, in its discretion and without liability, restrict or permit deposits into and withdrawals from the Account.

## DISPUTES INVOLVING YOUR ACCOUNT

IT IS IMPORTANT THAT THE CUSTOMER READ THIS ENTIRE SECTION VERY CAREFULLY. THIS SECTION PROVIDES FOR RESOLUTION OF DISPUTES INVOLVING THE ACCOUNT THROUGH FINAL AND BINDING ARBITRATION BEFORE ONE NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION.

1.    **Conditions Precedent to Arbitration.** Before the Customer takes a dispute or controversy to arbitration, the Customer must first contact M&T about the dispute or controversy and give M&T an opportunity to resolve it. Similarly, before M&T takes a dispute or controversy to arbitration, M&T must attempt to resolve it with the Customer. If the dispute or controversy cannot be resolved within 60 days from the date the Customer or M&T is notified about it, the matter that is in dispute or subject to controversy may proceed to arbitration in accordance with the provisions of this section.

2.    **Agreement to Binding Arbitration.** Each dispute or controversy that arises out of or is related to the Account, or any service M&T provides in connection with the Account, or any matter relating to the Customer's or M&T's rights and obligations provided for in this Agreement or any other agreement between the Customer and M&T relating to the Account or a service provided by M&T in connection with the Account, whether based on statute, contract, tort, fraud, misrepresentation or any other legal or equitable theory, including any claim for interest and attorney's fees, where applicable (any "Claim"), must be determined on an individual basis by binding arbitration in accordance with the Federal Arbitration Act ("FAA" - Title 9 of the United States Code) under the auspices of the American Arbitration Association ("AAA"). Judgment on an arbitration award may be entered in any court having jurisdiction. The arbitrator will decide any issue regarding whether a particular dispute or controversy is a Claim that is subject to arbitration. If any part of the relief request is not expressly stated as a dollar amount, such part of the dispute or controversy will not be a Claim that is subject to arbitration; however, the remainder of the dispute or controversy will be a Claim subject to arbitration.

3.    **Applicable Arbitration Rules.** If the amount in controversy is less than $10,000, the Consumer Arbitration Rules of the AAA will apply. Otherwise, the Commercial Arbitration Rules of the AAA will be applicable (the Consumer and Commercial Arbitration Rules are sometimes hereinafter collectively referred to as the "Arbitration Rules"). Information about the arbitration process, the Consumer or Commercial Arbitration Rules, the AAA's fees and the nearest AAA Case Management Center is available from the AAA online at www.adr.org. Information about AAA procedures, rules, fees and nearest offices will also be made available to you by contacting the corporate headquarters of the AAA at 1-800-778-7879.

4.    **Representation.** The Customer may, but does not have to, hire an attorney to represent the Customer in any arbitration.

5.    **Number of Arbitrators and Qualifications.** Only ONE arbitrator will be selected. Each arbitrator shall be a licensed attorney who has engaged in the private practice of law continuously

during the 10 years immediately preceding the arbitration or a retired judge of a court of general or appellate jurisdiction.

6.    **Language.** The language of the arbitration shall be in English. Any party desiring or requiring a different language shall bear the expense of an interpreter.

7.    **Rules Governing Arbitration.** The Customer and M&T acknowledge that this Agreement evidences a transaction involving interstate commerce. The FAA shall govern the interpretation, enforcement and proceedings pursuant to the arbitration provisions in this section. All statutes of limitation, defenses, and attorney-client and other privileges that would apply in a court proceeding will apply in the arbitration. In conducting the arbitration and making the award, the arbitrator shall be bound by and shall strictly enforce the terms of this Agreement and may not limit, expand or otherwise modify its terms.

8.    **Tolling of Statute of Limitations.** The filing of a demand for arbitration in accordance with the Arbitration Rules will suspend any requirement to file a notice of claim or to commence an action until the conclusion of the arbitration process.

9.    **Remedies Available.** The arbitrator will have no authority to award punitive or other damages not measured by the prevailing party's actual damages, except as may be required by statute. Subject to the foregoing limitation, the arbitration award shall provide only such relief as a court of competent jurisdiction could properly award under applicable law, and, in each case, shall award to the prevailing party all of its costs and fees. "Costs and fees" means all reasonable pre- and post-award expenses of arbitration, including attorney's fees, arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses (for example, copying and telephone), court costs and witness fees. However, the arbitrator may not award damages that are not expressly authorized or are expressly prohibited by this Agreement. The award shall be in writing, shall be signed by the arbitrator and shall include a statement regarding the reasons for the disposition of each and every Claim raised during the arbitration.

10.    **No Consolidation of Action or Class Actions.** There will be no class Claim (i.e., Claims by or on behalf of other persons will not be considered in or consolidated with the arbitration proceedings between the Customer and M&T).

11.    **Other Actions Available; No Waiver of Right to Arbitrate.** The arbitration provisions contained in this section do not limit the Customer's or M&T's right, whether before, during or after the pendency of any arbitration proceeding, to exercise self-help remedies such as the right of set-off or to obtain provisional or ancillary remedies or injunctive or other traditionally equitable relief (other than a stay of arbitration) necessary to protect the rights or property of the party seeking relief pending the arbitrator's determination of the merits of the Claim. The taking of any of the actions described in the preceding sentence by either party or the filing of a court action by a party shall not be deemed to be a waiver of the right to demand arbitration of any Claim asserted as a counterclaim or the like in response to any such action.

12.    **Survivability.** The foregoing dispute resolution provisions, in which the Customer and M&T have agreed to arbitrate disputes, will survive the termination of the Account with M&T, whether evidenced by this Agreement or otherwise.

THE CUSTOMER ACKNOWLEDGES THAT IT HAS CAREFULLY READ THE FOREGOING DISPUTE RESOLUTION PROVISIONS, IN WHICH THE CUSTOMER AND M&T HAVE AGREED TO ARBITRATE DISPUTES. THE CUSTOMER UNDERSTANDS THAT THESE PROVISIONS LIMIT OR WAIVE CERTAIN OF THE CUSTOMER'S RIGHTS WITH RESPECT TO CLAIMS THAT THE CUSTOMER IS AGREEING TO ARBI-

10

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

TRATE PURSUANT TO THESE PROVISIONS. THE CUSTOMER UNDERSTANDS THAT THERE WILL BE NO CLASS CLAIMS IN ARBITRATION. THE CUSTOMER FURTHER UNDERSTANDS THAT DISCOVERY – THE ABILITY TO OBTAIN INFORMATION FROM THE OTHER PARTY – MAY BE MORE LIMITED IN ARBITRATION THAN IN A COURT PROCEEDING, AND THE RIGHT AND GROUNDS TO APPEAL FROM AN ARBITRATOR'S AWARD ARE MORE LIMITED THAN IN AN APPEAL FROM A COURT JUDGMENT. IN ADDITION, THE CUSTOMER UNDERSTANDS THAT CERTAIN OTHER RIGHTS THE CUSTOMER HAS IN A COURT PROCEEDING ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

## EVIDENCE

In any legal proceeding involving the Account, any copy of this Agreement or any other document or record related to the Account kept by M&T in its normal course of business is to be admitted into evidence as an original.

## CONFLICTS WITH APPLICABLE LAW

If any provision of this Agreement or any other document related to the Account conflicts with applicable law, the provision will be deemed amended to the extent necessary to comply with applicable law.

## SEVERABILITY

If any provision of any document related to the Account is determined by a court to be invalid, all other provisions will remain in effect.

## WHAT LAW APPLIES

Any legal question concerning the Account will be decided in accordance with the law of the state or other jurisdiction in which your Account is domiciled without regard to such state's or other jurisdiction's principles of conflicts of law, and, to the extent applicable, federal law.

## MORE INFORMATION

More information about the Account can be obtained by contacting the Customer's account officer, relationship manager or branch manager or any M&T banking office.

11

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

**M&T Bank**

## SPECIAL PROVISIONS FOR COMMERCIAL CHECKING, NOW AND SAVINGS ACCOUNTS

### DEPOSITS

Any number of deposits may be made to the Account. M&T reserves its right to reject any deposit for any reason. The Customer agrees to supply any information needed to comply with applicable law as understood by M&T in its sole discretion, with regard to any deposit.

### LIMITATIONS ON WITHDRAWALS

M&T may prescribe a minimum withdrawal amount for certain Accounts. The minimum would not apply for a withdrawal of the entire Available Balance. M&T may also limit the number and amount of withdrawals.

### NOTICE OF WITHDRAWAL

For a NOW or savings Account, M&T may require prior written notice of the date and amount of any intended withdrawal at least 7 days in advance.

### REFUSAL TO PERMIT WITHDRAWAL

Under certain circumstances, M&T may refuse to permit a withdrawal from an Account. For example:

1. If M&T has not received the 7-day advance written notice described above with respect to a withdrawal from a savings or NOW Account.

2. If the Available Balance of the Account is insufficient.

3. If there is a dispute or legal proceeding of any type concerning the Account, including a dispute of proceeding relating to control of the Account.

4. If the Account is pledged as collateral for indebtedness.

5. If the withdrawal would consist of funds held by M&T to pay income tax on interest earned by funds in the Account.

6. If the withdrawal would exceed any limits M&T has imposed.

7. If the Account has been depleted by M&T setoff to pay the Customer's indebtedness to M&T.

8. If M&T has received a notice or order not to allow withdrawals, from the Customer or from a court or governmental entity or agency authorized to issue such an order.

9. If the Account is subject to a prior order directing M&T to pay or to hold funds for another party.

10. If M&T has not received any passbook, document or identification required by M&T or applicable law in connection with the withdrawal.

### PASSBOOKS

If the Account is one for which we issue a passbook, the passbook is a record of transactions involving the Account. If there is a conflict between the passbook and M&T records, M&T records will control. If the passbook Account is closed, M&T may, but need not, require the passbook to be surrendered to M&T for cancellation and the existence of a non-cancelled passbook shall not be deemed proof that the Account was not closed if M&T's records indicate that it was closed or that the Account is no longer on M&T's systems. If the passbook is lost, stolen or destroyed, the Customer must immediately notify M&T in writing of the loss, theft or destruction. Before permitting any withdrawal from the Account or issuing a replacement, M&T may require the Customer to provide an affidavit satisfactory to M&T, stating the facts, as well as an indemnity, bond or other agreement satisfactory to M&T indemnifying and holding M&T harmless against any and all liabilities and expenses (such as attorneys' fees) M&T might incur as a result of permitting the withdrawal or issuing a replacement passbook. Passbook Accounts are no longer being opened by M&T

for commercial Customers, and existing passbook Accounts may be converted to statement Accounts at any time, at M&T's sole discretion. If (i) we acquired your Account from another bank, (ii) you were previously issued a passbook for that Account, and (iii) we convert your Account to an account for which we do not issue a passbook, upon such conversion of your Account, the passbook you have for that Account will no longer be considered a record of your Account unless we advise you in writing otherwise.

### STALE AND POSTDATED CHECKS

M&T may but is not obligated to pay any Customer check dated more than 6 months before the date it is presented to M&T for payment. M&T may but is not obligated to pay any Customer check dated after the date it is presented to M&T for payment. M&T will not be liable if as a result of payment of such checks, a subsequent withdrawal is rejected for lack of sufficient available funds.

### STOPPING PAYMENT OF CHECK

Any Authorized Signer on the Account can order M&T not to pay or certify any non-certified check written on the Account even if the check was signed by another Authorized Signer.

1. The order must include:

   a. The exact number of the Account;

   b. The exact amount, date and number (if any) of the check;

   c. The name, exactly as it appears on the check, of each payee to whose order the check is payable; and

   d. The name, exactly as it appears on the check, of each person who signed the check.

2. If the check is a certified or official M&T check, all additional requirements of applicable law and M&T policy must be met. For example, the stop payment order may not be executed until after (a) 90 days have elapsed after the initial issuance of the check (which in the case of an official M&T check is the date of the check and in the case of a certified check is the date of certification); and (b) M&T's receipt of an affidavit or similar declaration made under penalty of perjury in accordance with applicable state law stating that the check has been lost, stolen or destroyed; that the loss of possession of the check by the affiant or declarer was not the result of a transfer by the affiant or declarer or a lawful seizure of the check; and that the affiant or declarer will honor the check if it is ever presented by a holder in due course. Additional restrictions may apply.

M&T will not be obligated to execute a stop payment order until M&T has had a reasonable time to record it against the Account. The order will cease to be effective 6 months after the date it is recorded against the Account unless it is renewed. The order can be given orally, by telephone or in person. M&T will send a written confirmation of the order recorded by M&T which will remain effective unless canceled in writing by the Customer. A stop payment order can be renewed for 6 months at a time. Any renewal of the order must be in writing and must be received by M&T in advance allowing a reasonable time for M&T to record it against the Account before the previous order ceases to be effective. The renewal will take effect on the date it is recorded against the Account and will cease to be effective 6 months after that date.

Any Authorized Signer on the Account can cancel any stop payment order even if the order was given by another signer. M&T will not be obligated to honor the cancellation unless it is in writing and until M&T has had a reasonable time to record it against the Account.

M&T will exercise ordinary care in its efforts not to pay any check that M&T has been properly ordered not to pay; and to pay any check for which an order not to pay has been properly canceled. M&T will have exercised ordinary care if M&T acts in good faith; M&T has a reasonable system for communicating stop payment

12

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-3245810FBE9B

orders and cancellations of orders of that type to the employees who would be likely to receive the check; and M&T reasonably follows the system as a matter of routine.

### CHECK CASHING AT BANK BRANCHES

The Customer agrees that M&T may properly refuse to cash a check drawn on the Account that is presented for payment at an M&T branch office by someone to whom the check is payable if that person is not an M&T deposit customer, as long as the M&T branch at which the check is sought to be cashed generally does not cash checks drawn on the account of any M&T deposit customers that are presented for payment at that branch by persons who are not M&T deposit customers, other than payroll checks that have been issued by an M&T deposit customer that are cashed by such M&T branch pursuant to a check cashing arrangement that the M&T branch has agreed to with the deposit customer. The Customer further agrees that M&T's refusal to cash the Customer's written check in any such instance shall not constitute a wrongful dishonor of the check and that M&T shall have no liability to the Customer in connection with its refusal to cash the check, regardless of the consequences to the Customer because of M&T's so doing.

### CHECK CASHING FEES

If someone who is not an M&T deposit customer seeks to cash a check drawn on the Customer's Account at a branch office of M&T, we reserve the right to charge a service fee to that individual as a condition to cashing the check. By continuing to maintain the Account, the Customer agrees that it shall not constitute wrongful dishonor if M&T refuses to pay such a check because the individual seeking to cash it declines to pay such service fee.

### CHECK CASHING IDENTIFICATION REQUIREMENTS

If someone who is not an M&T deposit customer seeks to cash a check drawn on the Customer's Account at a branch office of M&T, we shall have the right not to pay the check if the person who presents it for payment fails to provide us with such reasonable identification as we may require, and, if presentment by such person of the check is made on behalf of another person, such reasonable evidence of his or her authority to do so as we may request. The Customer agrees that M&T's reasonable identification requirements may include such documentary forms of identification (such as a passport or driver's license) and/or physical forms of identification (such as a thumbprint signature) as M&T may from time to time establish.

### ELECTRONIC PRESENTMENT OF CHECKS

We may pay any check drawn on the Account and debit the Account accordingly on the day that an Item is presented for payment by electronic or other means, or at an earlier time if the bank at which the Item was deposited electronically provides us with information identifying the Item, including for example, M&T's routing number, the Account number, and the sequence number and amount of the Item. We may determine the balance of the Account for purposes of deciding whether to dishonor an Item for insufficient available funds at any time between such presentment or receipt of information and the time of return of the Item. We must make this determination only one time regardless of whether the available funds in the Account vary during this period.

### CERTAIN INTEREST-BEARING CHECKING ACCOUNTS

If the Customer has an interest-bearing checking Account, for internal Bank operating purposes, the Bank may structure the Account so that it will consist of two subaccounts: an interest-bearing checking subaccount and a savings subaccount, although, for all other purposes, the Customer's interest-bearing checking Account will be treated as a single account. In cases where an interest-bearing checking Account is structured to consist of two subaccounts, both subaccounts will pay an identical annual interest rate and annual percentage yield on account balances. The statement for the Account and any record of the Account at an automated teller machine or at any

other electronic facility will reflect the Account as a single account and will not reflect the subaccounts in any way.

All terms and conditions of this Agreement, all the provisions of the Specific Features and Terms governing the Account, including (but not limited to) those that govern the way the Account may be used, the interest the Account earns, minimum balance requirements and funds availability, and all Account fees and charges apply to the Account as a whole without reference to the subaccounts, except as provided in this section.

In cases where an interest-bearing checking Account is structured to consist of two subaccounts, for internal Bank operating purposes, all checks and other debits against the Account are paid from, and all deposits to the Account are credited to, the checking subaccount. At various times during each calendar month, if the checking subaccount balance exceeds a threshold amount set by us, all funds in excess of the threshold may be transferred to the savings subaccount. We also make transfers from the available funds in the savings subaccount to the checking subaccount as needed to pay checks and other debits presented against the Account. On the sixth transfer from the savings subaccount in a calendar month, the entire balance of the savings subaccount is transferred to the checking subaccount for the remainder of the calendar month. These transfers to and from the checking subaccount will be the only transactions on the savings subaccount. Because the subaccounts are for internal Bank operating purposes only, the Customer cannot access the savings subaccount directly. These Bank-initiated transfers between the subaccounts are not shown on the Customer's statement for the Account and are not subject to any fees.

### CERTAIN NON-INTEREST-BEARING CHECKING ACCOUNTS

If the Customer has a non-interest-bearing checking Account, for internal Bank operating purposes, the Bank may structure the Account so that it will consist of two subaccounts: a non-interest-bearing checking subaccount and a non-interest-bearing savings subaccount, although, for all other purposes, the Customer's non-interest-bearing checking Account will be treated as a single account. In cases where a non-interest-bearing checking Account is structured to consist of two subaccounts, neither subaccount will pay any interest. The statement for the Account and record of the Account at an automated teller machine or at any other electronic facility will reflect the Account as a single account and will not reflect the subaccounts in any way.

All terms and conditions of this Agreement, all the provisions of the Specific Features and Terms governing the Account, including (but not limited to) those that govern how the Account may be used, minimum balance requirements and funds availability, and all Account fees and charges, apply to the Account as a whole without reference to the subaccounts, except as provided in this section.

In cases where a non-interest-bearing checking Account is structured to consist of two subaccounts, for internal Bank operating purposes, all checks and other debits against the Account are paid from, and all deposits to the Account are credited to, the checking subaccount. At various times during each calendar month, if the checking subaccount balance exceeds a threshold amount set by us, all funds in excess of the threshold may be transferred to the savings subaccount. We also make transfers from the available funds in the savings subaccount to the checking subaccount as needed to pay checks and other debits presented against the Account. On the sixth transfer from the savings subaccount in a calendar month, the entire balance of the savings subaccount is transferred to the checking subaccount for the remainder of the calendar month. These transfers to and from the checking subaccount will be the only transactions on the savings subaccount. Because the subaccounts are for internal Bank operating purposes only, the Customer cannot access the savings subaccount directly. These Bank-initiated transfers between the subaccounts are not shown on the Customer's statement for the Account and are not subject to any fees.

**M&T Bank**

## SPECIAL PROVISIONS FOR
## COMMERCIAL TIME DEPOSIT ACCOUNTS

### NO CHANGE IN MATURITY DATE
### BY ADDITIONAL DEPOSIT

No maturity date of the Account will be changed by any deposit subsequent to the opening deposit.

### AUTOMATIC RENEWAL

Automatic renewal is provided for all M&T time deposits except Jumbo Certificates of Deposit, but can be declined in opening the Account. If automatic renewal is declined, the first maturity date will be the final maturity date of the Account. The following conditions govern automatic renewal:

1. Except as provided in this section, M&T will automatically renew the Account as of the end of the day on each maturity date of the Account. The renewal Term will equal the initial Term, unless M&T has received and accepted the Customer's written request for a change in duration or M&T no longer offers the same duration, in which case the Term will equal the nearest longer or shorter duration which M&T then offers.

2. During the renewal Term commencing as of the maturity date on which the automatic renewal takes place, and ending on the day prior to the next maturity date, interest earned on funds in the Account will be computed using a fixed rate and a method at least as favorable as the lowest rate and least favorable method used by M&T for any other automatically renewable time deposit of the same type, Term and amount opened on the day on which the Customer's Account is renewed.

3. M&T will not automatically renew a time deposit Account if:

a. Before that maturity date, M&T delivers written notice of non-renewal;

b. On or before that maturity date, or before the end of the grace period, M&T receives written notice not to do so from an Authorized Signer on the Account; or

c. M&T is prohibited by applicable law from doing so.

### BOOK ENTRY ACCOUNTS

M&T's commercial certificates of deposit are non-negotiable and nontransferable. They are not in the normal course issued in the form of physical certificates, but consist of entries on the books and time deposit computer accounting systems of M&T.

### DELAY IN WITHDRAWAL

If a time deposit matures on a Saturday, Sunday or federal holiday, funds then in the Account may not be able to be withdrawn from the Account until the next Business Day.

### ON AND AFTER FINAL MATURITY DATE

On and after the final maturity date of a time deposit, funds in the Account will no longer earn interest. If the final maturity date is a Saturday, Sunday or federal holiday, the funds will earn interest through the day before the first Business Day after the final maturity date.

### NOTICE OF MATURITY DATE

For a time deposit with a Term of more than 90 days, M&T will send written notice of maturity at least 14 days but not more than 30 days before the maturity date.

### LIMITATION ON EARLY WITHDRAWAL

M&T has no obligation to permit withdrawals from a time deposit prior to the applicable maturity date, unless the Account is owned by an individual who dies or is declared legally incompetent by a court or administrative body.

### PAST POLICIES ON EARLY WITHDRAWAL

No past policies of M&T or any bank it acquired or from which it accepted deposits regarding whether or under what conditions to permit early withdrawals from time deposits is binding on M&T. M&T will treat on an individual basis each request for early withdrawal.

### LIMITATIONS ON WITHDRAWALS

M&T may prescribe minimum and maximum amounts for withdrawals from time deposits and may for any reason place further limitations on the number, place and amounts of withdrawals.

### PENALTY FOR EARLY WITHDRAWAL

M&T will impose an early withdrawal penalty for early withdrawals from time deposits, unless the withdrawal is made because an individual owner of the Account has died or been declared legally incompetent by a court or administrative body. The penalty may exceed that required by the Board of Governors of the Federal Reserve System. The penalty will be deducted first from the interest and principal remaining on deposit in the Account and then, if necessary, from the withdrawal.

14

# Information About the USA Patriot Act

To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies all persons or entities that open an account. Accordingly, when an account is being established, we will ask for information, including:

- Name
- Address
- Tax Identification Number
- Date of Birth
  (for individual customers)
- Other information that will allow us to identify our customers

We may also ask for similar identifying information concerning individuals with authority or control over the account. We will also ask to be provided with documentation to verify the identifying information that is provided.



# Exhibit "C"

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

# M&T Bank

MANUFACTURERS AND TRADERS TRUST COMPANY
INTERNATIONAL TRADE FINANCE DEPARTMENT

### LETTER OF CREDIT AGREEMENT

THIS LETTER OF CREDIT AGREEMENT (the "Agreement") is made and entered into as of the _13_ day of _March_, 20_19_, by and between MANUFACTURERS AND TRADERS TRUST COMPANY, a New York banking corporation with an address of 1800 Washington Boulevard, 8th Floor, Baltimore, Maryland 21230 (the "Bank") and Diocese of Rochester _____ *[insert customer's legal name]*, a Not for Profit _____ *[insert type of business organization, e.g., corporation or LLC]* organized under the laws of New York _____ *[insert state of organization]* with an address of 1150 Buffalo Road, Rochester, New York 14624 _____ *[insert address]* (the "Customer").

### W I T N E S S E T H :

WHEREAS from time to time the Customer may request that the Bank issue letters of credit ("Letters of Credit") or provide services relating to letters of credit ("LC Services"); and

WHEREAS the Bank is willing to consider the Customer's request and application for issuance of Letters of Credit, or to provide LC Services, but only upon the terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Bank and the Customer do hereby agree as follows:

1.    Scope of Agreement.  This Agreement governs Letters of Credit that may be issued by the Bank for the Customer's account or, if the Additional Customer Addendum at the end of this Agreement is filled out, for the account of an Additional Customer who may join in this Agreement, as well as other LC Services that may be furnished by the Bank to or for the Customer or the Additional Customer, from time to time.  Nothing in this Agreement shall be construed as a commitment by the Bank to issue a Letter of Credit or to provide LC Services, it being within the sole and absolute discretion of the Bank to do so in every instance.  It is understood, acknowledged and agreed that this Agreement is a continuing agreement which is and shall continue to be applicable to Letters of Credit or LC Services now or hereafter issued or furnished by the Bank, from time to time.

2.    ICC Rules and UCC.  Customer understands, acknowledges and agrees that it is a customary banking practice for Letters of Credit and LC Services to be subject to and governed by rules adopted and published by the International Chamber of Commerce (the "ICC"; "ICC Rules"), such as Uniform Customs and Practices for Documentary Credits (UCP600) or International Standby Practices (ISP98), through incorporation by reference in the relevant instrument.  The Bank shall have exclusive authority to designate which ICC Rules shall govern Letters of Credit or LC Services that may be issued or furnished by the Bank from time to time. Although the Bank does generally conduct its business in accordance with ICC Rules, in the event of a conflict or inconsistency between relevant ICC Rules and this Agreement, the terms of this Agreement shall

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

control and govern. In the event of a conflict or inconsistency between Article 5 of the relevant Uniform Commercial Code (if applicable) ("UCC Article 5") and this Agreement, the terms of this Agreement shall control and govern, except to the extent expressly prohibited in UCC Article 5. In the event of a conflict or inconsistency between UCC Article 5 (if applicable) and ICC Rules, ICC Rules shall control and govern, except to the extent expressly prohibited in UCC Article 5.

3.    Effectiveness of Agreement. Execution of this Agreement by the Customer shall constitute an offer by the Customer to the Bank to enter into this Agreement upon the terms hereof. Such offer shall be deemed accepted and this Agreement effective at such time as the Bank elects to issue a Letter of Credit or to provide LC Services. The Customer's tender of this signed Agreement to the Bank shall not obligate the Bank to issue a Letter of Credit or to provide LC Services, it being within the sole and absolute discretion of the Bank to do so in every instance.

4.    Nature of Relationship. It is understood, acknowledged and agreed that, notwithstanding the use of the word "Customer" as a defined term in this Agreement, no customer relationship shall be established between Customer and Bank hereunder unless and until the Bank elects to issue a Letter of Credit or to provide LC Services. Customer understands, acknowledges and agrees that this Agreement is commercial in nature, and not for personal, family or household purposes. Customer also understands, acknowledges and agrees that, in connection with this Agreement, the Bank owes no fiduciary duties or responsibilities to Customer. Bank shall owe no duties or responsibilities to Customer beyond those expressly set forth in this Agreement, applicable ICC Rules or UCC Article 5.

5.    Reimbursement Obligation. Without notice or demand, the Customer shall reimburse the Bank for any payment made by the Bank under a Letter of Credit, immediately and in full. Such payment shall be made by the Customer to the Bank on the same day that the Bank makes payment under a Letter of Credit, in immediately available funds. Payment shall be made in U.S. Dollars. If payment by the Bank under a Letter of Credit was made in a currency other than U.S. Dollars, then unless the Bank expressly agrees otherwise, Customer shall pay to Bank the U.S. Dollar equivalent of such foreign currency payment, calculated as of the time that the Bank made such foreign currency payment. Place of payment shall be at: M&T Bank, International Trade Finance Department, 1800 Washington Boulevard, 8th Floor, Baltimore, Maryland 21230, or at such other place as the Bank may designate from time to time.

6.    Fees, Commissions and Expenses. In addition to any other payment obligations owed by Customer to Bank under this Agreement, Customer shall pay to Bank, without notice or demand, all fees, commissions and expenses of the Bank relating to Letters of Credit and LC Services. The amount of the Bank's customary fees, expenses and commissions for Letters of Credit and LC Services may be periodically set forth in a Pricing Schedule issued by the Bank. Such Pricing Schedule is not intended to exclude fees, commissions and expenses of the Bank that are not specifically referenced therein. Furthermore, the Bank shall have the unilateral right to periodically change the amount, character, type or nature of its fees, commissions and expenses, without prior notice or consent. Customer shall also pay to Bank, without notice or demand, all third party fees and expenses incurred in connection with this Agreement, a Letter of Credit or LC Services, including without limitation SWIFT fees, the fees, commissions and expenses of any affiliate, correspondent or other bank who may act as an advising, transferring, confirming or nominated bank, and any courier or carrier fees.

7.    Applications. Customer may apply to the Bank for issuance of a Letter of Credit upon the application form customarily used by the Bank for that purpose. Submission of an application shall not obligate the Bank to issue a Letter of Credit, it being within the sole and absolute discretion of the Bank to do so in every instance. Customer shall be responsible for submitting to the Bank proposed operative Letter of Credit text that may be requested or required by Customer or the proposed Letter of Credit beneficiary, although the Bank retains final discretion over Letter of Credit text. The Bank shall not be responsible for Letter of Credit text requested or required by Customer or a Letter of Credit beneficiary that is erroneous, incorrect, ambiguous,

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

unclear, excessively detailed, insufficient, ineffective, inconsistent, illegal or non-documentary. Consistent with the independent character of a Letter of Credit, the Bank shall have no responsibility to investigate, determine or assure that the Letter of Credit functions as intended by Customer or the Letter of Credit beneficiary within the context of the underlying transaction to which the Letter of Credit may relate. The Bank shall have no duty or responsibility to advise Customer on letter of credit law or practice, or to otherwise assure that expectations of the Customer are met, it being the exclusive responsibility of the Customer to satisfy itself in this regard.

8.    Issuance.  No Letter of Credit shall be effective until issued by the Bank by authorized means. Because a Letter of Credit is an undertaking of the Bank to the Letter of Credit beneficiary, the Customer shall not control issuance of a Letter of Credit.

9.    Customary Operational Terms and Discretion.  Without prior notice to or consent of the Customer, the Bank shall have reasonable good faith discretion to operate, manage and administer its Letter of Credit business, including Letters of Credit issued for or LC Services provided to the Customer, consistent with customary and prudent banking practices as understood by the Bank in its reasonable good faith discretion, including without limitation the following:  (i) the Bank may issue a Letter of Credit or otherwise provide LC Services via the Society for Worldwide Interbank Financial Telecommunications (SWIFT), in which case Customer shall be bound by SWIFT rules; (ii) the Bank may but shall not be required to take any action with respect to Letters of Credit or LC Services based upon notices sent to or communications received by the Bank by any means, including without limitation via mail, courier, facsimile, email, electronic transmission or telephone, *provided, however*, that the Bank may but shall not be required to require authentication or delivery of originals of any such notices or communications; (iii) the Bank may rely upon and assume that any notice, instruction or other communication received by any means from either any purported representative of Customer or, if the Additional Customer Addendum at the end of this Agreement is filled out, from any purported representative of Additional Customer, is authentic, valid, authorized and binding upon Customer and, if applicable, Additional Customer, and the Bank shall have no duty to investigate or validate whether or not any such purported representative has actual authority; (iv) the Bank may but shall not be required to treat a copy of a document as an original document; (v) the Bank may assert or waive or, with any necessary consent of a Letter of Credit beneficiary, amend Letter of Credit terms or practices that primarily concern Bank operational matters, such as (without limitation) those relating to numbering or other means of identification of a Letter of Credit, marking a Letter of Credit to reflect a draw, transfer or other action,  the place for presentation under a Letter of Credit, means of presentation under a Letter of Credit; business hours, procedures relating to waiver of discrepancies or notice of dishonor, handling or disposition of documents presented under a Letter of Credit, replacement of a lost Letter of Credit, and recognition of successors or transferees; (vi) the Bank may discount, or authorize a nominated bank to discount, an accepted draft or deferred payment obligation arising under a Letter of Credit, without affecting the amount or due date of the Customer's reimbursement obligation; (vii) to the extent expressly not prohibited under a Letter of Credit or otherwise, the Bank may select an affiliate, a correspondent or another bank to act as an advising, transferring, confirming or nominated bank with respect to a Letter of Credit or LC Services, or to otherwise act as the Bank's agent for issuance and administration of Letters of Credit, including without limitation handling presentations and payments, in which case Customer consents to the Bank's sharing of information with such affiliate, correspondent or other bank as necessary or appropriate for purposes of such Letter of Credit or LC Services; (viii) the Bank may block, restrict or reduce availability under any line of credit maintained by . Customer with Bank on account of obligations owed by Customer to Bank in connection with this Agreement, a Letter of Credit or LC Services; (ix) the Bank may sell or assign participation interests in all or any part of a Letter of Credit and this Agreement and, in connection therewith, is authorized to furnish information concerning Customer to a prospective participant; and (x) the Bank may take any other action not specifically mentioned above that is permitted by applicable law or ICC Rules.

10.    Presentations.  The Customer understands and acknowledges that, when a presentation is made to the Bank under a Letter of Credit, the responsibility of the Bank is to examine the documents presented to

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

determine whether they facially conform with the terms of the Letter of Credit. Consistent with the independent nature of a letter of credit, the Bank shall not be required to look beyond the facial conformity of documents presented. In connection with its examination of documents presented, the Bank, in its reasonable good faith discretion, may honor a presentation that substantially complies with the terms of the Letter of Credit. Discretion to determine whether or not a presentation conforms with the terms of a Letter of Credit lies exclusively with the Bank. The Bank has no responsibility to determine whether the beneficiary has a right to make a presentation within the context of the underlying transaction to which the Letter of Credit may relate. The Bank may assume that all signatures are genuine and has no responsibility to investigate or determine whether documents presented by a beneficiary are forged, fraudulent or untrue. The Bank may disregard any additional documents or other information submitted with or relating to a presentation that is not required by the terms of the Letter of Credit. Because a Letter of Credit constitutes an independent undertaking of the Bank to the Letter of Credit beneficiary, the Bank has no responsibility to notify Customer that a presentation has been made under a Letter of Credit, nor shall the Bank seek Customer input on whether a presentation should be honored or dishonored, *provided, however,* that the foregoing shall not preclude the Bank from communicating with Customer about a presentation, such as, for example and without limitation, in connection with reimbursement or to seek a waiver of possible discrepancies.

11..   Timeliness. The Customer acknowledges and understands that, under applicable industry rules and practices relating to Letters of Credit and LC Services, time is of the essence. Accordingly, Customer shall promptly review and respond to all communications from the Bank, whether written, verbal, telephonic or electronic, in connection with this Agreement, Letters of Credit or LC Services, such as (without limitation) communications concerning issuance, amendment, extensions or presentations, without delay. Absent Customer's prompt response to such communications from the Bank, the Customer shall be precluded from contesting the reasonable good faith action or inaction of the Bank under such circumstances.

12.   Notice of Apparent Errors. Customer shall promptly review copies of all Letters of Credit and related documents or communications furnished to Customer for accuracy, without delay, and shall promptly notify the Bank of any apparent errors or other issues. Absent a prompt response expressly to the contrary, any such documents shall conclusively be deemed to be acceptable in form.

13.   Automatic Renewal or Extension. The Customer understands and acknowledges that many Letters of Credit contain automatic renewal or extension clauses coupled with an advance notice (to the beneficiary) requirement if a Letter of Credit is not to be renewed or extended. If Customer does not wish for there to be an automatic renewal or extension of a Letter of Credit, the Customer shall be obligated to unequivocally notify the Bank thereof in writing and received by the Bank not less than sixty (60) days before the date by which the Bank must furnish notice of non-renewal or non-extension to the beneficiary, as set forth in the terms of the relevant Letter of Credit. Customer acknowledges and understands that, depending upon the terms of the Letter of Credit, issuance of a notice of non-renewal or non-extension may give the beneficiary a right to draw upon the Letter of Credit. If the Customer should fail to timely communicate its unequivocal wishes to the Bank concerning renewal/extension or non-renewal/non-extension, then Customer shall be solely responsible for the consequences of any renewal/extension or non-renewal/non-extension, as the case may be. Notwithstanding all of the foregoing, the Customer also understands, acknowledges and agrees that, consistent with prudent banking practices, in its absolute but good faith discretion the Bank may elect not to renew or extend a Letter of Credit, even if the Customer wishes to extend or renew it and complies with the procedures set forth above.

14.   Termination of Letter of Credit. Since a Letter of Credit is an irrevocable undertaking once issued, it may not be terminated prior to its stated expiration date unless: (i) the beneficiary requests that the Letter of Credit be terminated, in writing, and (ii) the original Letter of Credit and any amendments are surrendered and returned to the Bank. The Customer shall be responsible for procuring such written termination request and return from the beneficiary of the original Letter of Credit and any amendments.

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-3245810FBE9B

15.    <u>No Responsibility for Underlying Transaction</u>.  Consistent with the independent nature of a letter of credit, the Customer understands, acknowledges and agrees that the Bank shall have no responsibilities in the underlying transaction to which a Letter of Credit may relate.  Since a Letter of Credit is a financial undertaking only, strictly limited to its terms, the Customer understands, acknowledges and agrees that Bank shall have no suretyship obligations of any kind or nature.

16.    <u>No Responsibility for Goods</u>.  If a Letter of Credit relates to a sale of goods, the Customer understands, acknowledges and agrees that the Bank is not responsible for: (i) the existence, character, quality, quantity, condition, packing, shipment or delivery of the goods, (ii) the validity, form, sufficiency, correctness or genuineness of any documents relating to the goods, (iii) the time, place or manner of shipment or delivery of the goods, (iv) the existence, adequacy or validity of any insurance of the goods, (v) loss, theft, casualty, damage to or destruction of the goods, and (vi) breach of any underlying sales contract for the goods.  If Customer takes possession of goods prior to Bank's honor or dishonor of a Letter of Credit presentation relating to the goods, then Customer shall be precluded from contesting the Bank's handling of such presentation, even if discrepant *vis-à-vis* the terms of the Letter of Credit.

17.    <u>No Responsibility for Nominated Bank</u>.  If a third party bank is nominated or otherwise designated to perform a function or service in connection with a Letter of Credit or LC Services, such as for example and without limitation a bank designated by a Letter of Credit beneficiary to handle presentation or payment, the Customer understands, acknowledges and agrees that the Bank is not responsible for the actions or inactions of such nominated bank.

18.    <u>Obligations Absolute</u>.  The Customer's obligations to the Bank under this Agreement shall be absolute and unconditional, and shall not be diminished, altered, reduced, limited or impaired notwithstanding the existence of any claim that: (i) a Letter of Credit was issued incorrectly; (ii) a Letter of Credit is invalid, defective or unenforceable; (iii) a Letter of Credit is no longer needed or should be terminated; (iv) there is a breach of contract or an obligation is otherwise unenforceable within the context of the underlying transaction to which a Letter of Credit relates; (v) a draft, draw, demand or other document presented under a Letter of Credit is fraudulent, unauthorized, improper, invalid, inaccurate, inconsistent, incorrect or insufficient; (vi) the beneficiary does not have a right to draw under a Letter of Credit; or (vii) Customer has a claim, counterclaim, setoff or defense against the beneficiary of a Letter of Credit.

19.    <u>Liability</u>.  Customer hereby releases the Bank from any and all manner of claims, liability, demands, damages or causes of action, at law or in equity, which the Customer ever had, now has or may hereafter have against the Bank, its directors, officers, employees, affiliates, attorneys and agents, arising out of or relating to this Agreement, a Letter of Credit or LC Services, except such claims resulting directly from the Bank's own gross negligence or willful misconduct.  Customer agrees to indemnify, defend and hold harmless the Bank, its directors, officers, employees, affiliates, attorneys and agents, from and against all claims, liability and expense (including without limitation reasonable attorneys' fees and expenses, whether incurred by the Bank or by a third party seeking to impose liability for its legal fees and expenses against the Bank) that may be asserted against or incurred by the Bank arising out of or relating to this Agreement, a Letter of Credit or LC Services, including without limitation any claims, liability or expense arising out of or relating to Customer's breach of any covenant, representation or warranty made by Customer under this Agreement or otherwise, except such claims, liability or expense resulting directly from the Bank's own gross negligence or willful misconduct.  In no event shall the Bank be liable for any consequential, special, punitive or indirect damages or loss which the Customer may incur or suffer in connection with this Agreement, a Letter of Credit or LC Services, whether or not foreseeable.

20.    <u>Legal Expense</u>.  If the Bank should engage legal counsel in connection with this Agreement, a Letter of Credit or LC Services, such as for example and without limitation in the event of a dispute over a presentation under a Letter of Credit or a governmental investigation relating to a Letter of Credit, LC Services or the underlying transaction, then Customer agrees to pay the reasonable legal fees and expenses

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

incurred by the Bank in such matter in full upon demand.

21.     <u>Payments</u>. Payment of any obligation owed by Customer to Bank pursuant to this Agreement shall be made when due in immediately available funds and without deduction or withholding for any claimed right of setoff or recoupment. To effectuate payment, Customer authorizes the Bank, at the Bank's option, to debit or draw upon any account of any kind or nature that Customer may maintain with the Bank, even if such debit or draw results in an overdraft, loan or other form of indebtedness. Customer also authorizes Bank, at the Bank's option, to draw upon any line of credit that Customer may maintain with Bank to effectuate payment. This paragraph is not intended to limit any other legal rights, remedies or recourse that the Bank may have to unilaterally effectuate payment, whether contractual, statutory or at common law. If any payment made by Customer to Bank in connection with this Agreement is subsequently avoided, rescinded, returned or disgorged, such as for example and without limitation as an avoidable transfer under the U.S. Bankruptcy Code, then the underlying obligation shall be reinstated and shall be immediately due and owing in full, without notice or demand, as though no payment had previously been made.

22.     <u>Interest</u>. If Customer should fail to pay to Bank any sum owed hereunder when due, then interest shall accrue upon any such unpaid sum at the Bank's prime rate as established from time-to-time plus two percent (P+2%) per annum, from the due date until paid in full by Customer. Nothing herein is intended, however, to require payment of interest in excess of the maximum rate permitted by applicable law, which maximum rate shall constitute an interest rate cap for purposes of this Agreement.

23.     <u>Other Agreements</u>. This Agreement is not intended to limit the scope or applicability of other agreements between Customer and the Bank, whether now existing or hereafter entered into, such as without limitation a credit agreement or a security agreement, *provided, however,* that in the event of any conflict or inconsistency, this Agreement shall govern on issues specific to Letters of Credit or LC Services. Customer's electronic access to the Bank's International Trade Online system or any modification or replacement thereof shall be governed by the International Trade Online Agreement, as it may be amended from time to time.

24.     <u>Legal and Regulatory Compliance</u>. Customer understands and acknowledges that its business activities are governed by various laws and regulations, including without limitation regulations relating to anti-money laundering and import or export transactions, such as those administered by the U.S. Department of Treasury Financial Crimes Enforcement Network, the U.S. Department of Treasury Office of Foreign Assets Control, the U.S. Department of Commerce Office of Anti-Boycott Compliance and the U.S. Department of Commerce Bureau of Industry and Security. On a continuing basis, Customer represents and warrants to the Bank that Customer has adequate systems and controls to assure compliance with laws and regulations applicable to its business. Customer also represents and covenants to the Bank that it shall not violate any applicable laws or regulations. Without intending to shift the Customer's responsibility to comply with applicable laws and regulations to the Bank, the Customer acknowledges and agrees that the Bank may delay, block or refuse any transaction which the Bank may choose to examine for legal or regulatory compliance purposes. Customer agrees to co-operate with the Bank to assure legal and regulatory compliance, including without limitation sharing with the Bank such information as may be reasonably requested from time to time by the Bank relating to a Letter of Credit or LC Services.

25.     <u>Increased Costs Due to Legal or Regulatory Changes</u>. Customer understands and acknowledges that the banking industry is subject to and governed by a variety of laws, regulations, rules, directives, orders, statements, guidelines, standards and the like that are enacted, promulgated or issued by a variety of governmental, quasi-governmental or industry bodies or organizations (collectively "Legal and Regulatory Requirements"), and further that such Legal and Regulatory Requirements are subject to change from time to time. Customer also understands and acknowledges that the Bank's pricing for issuance of Letters of Credit or to provide LC Services is based in material part upon such Legal and Regulatory Requirements. Accordingly, if the Bank becomes subject to or otherwise complies with any change in such Legal and Regulatory Requirements, whether mandatory or not, which change affects or otherwise impacts the Bank's

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

reserve, assessment, liquidity, capital adequacy or compliance requirements, resulting in increased cost, whether direct or indirect, for the Bank to issue or maintain a Letter of Credit or to otherwise provide LC Services, all as determined by the Bank in its sole and absolute discretion, then, without prior notice or consent, the Bank may unilaterally increase its fees and commissions and otherwise charge Customer for such increased costs, and Customer agrees to pay such increased fees, commissions or costs, also as determined, calculated or estimated by the Bank in its sole and absolute discretion, to the Bank upon demand. This shall be applicable not only prospectively, but shall also apply to Letters of Credit and LC Services extant, issued or outstanding at the time of any change to such Legal and Regulatory Requirements.

26.  <u>High Volatility Commercial Real Estate</u>. Customer understands and acknowledges that, in accordance with certain Basel III risk-based regulatory capital rules (the "Basel III Regulations"), federal banking regulators have adopted certain regulations governing a credit facility that finances the acquisition, development or construction of commercial real estate, as more particularly set forth in such regulations, and which is referred to therein as a high volatility commercial real estate ("HVCRE") exposure. To ensure that a Letter of Credit will not be classified as an HVCRE exposure for regulatory capital purposes, Customer understands and agrees that: (i) prior to issuance of a Letter of Credit relating to the acquisition, development or construction of commercial real estate, Customer shall be required to have contributed cash equity to the subject project (the "Project") equal to fifteen percent (15%) of the subject real estate's prospective value at the completion of any contemplated acquisition, development and/or construction, as determined by an "as completed" appraisal deemed acceptable in form and substance to the Bank, which appraisal shall be received and reviewed by the Bank prior to issuance of such a Letter of Credit; (ii) Customer shall be required to contribute sufficient cash equity in a manner compliant with the applicable Basel III Regulations and acceptable to the Bank in its sole discretion, and such cash equity (along with all capital internally generated by the Project) shall not be withdrawn (except to the extent used to fund permissible Project development expenses, in accordance with the Basel III Regulations) until such time as the Letter of Credit expires or is otherwise terminated, or the subject real estate is sold; and (iii) Customer shall further satisfy any other requirements necessary to ensure that a Letter of Credit is not classified as an HVCRE exposure under the Basel III Regulations. Notwithstanding any other term to the contrary under this Agreement or under any other agreement between Customer and the Bank, the Bank shall not be obligated to issue a Letter of Credit that may be classified as an HVCRE exposure, as determined by the Bank in its sole discretion.

27.  <u>Representations, Warranties and Covenants</u>. On a continuing basis, Customer represents, warrants and covenants to Bank as follows: (i) Customer (if not an individual) is duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized, and is qualified to do business in any jurisdiction in which it is required to qualify; (ii) Customer has full power and authority to enter into this Agreement, which is permitted by its organizational documents and is not prohibited by any legal requirements applicable to Customer, whether statutory, regulatory, judicial, contractual or existing at common law; (iii) the execution, delivery and performance of this Agreement has been duly authorized by Customer, including the authority of its representatives who sign this Agreement or otherwise communicate with Bank in connection with this Agreement, a Letter of Credit or LC Services; (iv) this Agreement is and shall remain a legal, valid and binding obligation of Customer, enforceable in accordance with its terms; (v) any financial statements or other information furnished by Customer to Bank in connection with this Agreement are true and accurate to the best of Customer's knowledge, information and belief based upon reasonable diligence; (vi) Customer has not withheld, omitted or failed to disclose to Bank any material information which reasonably may have material consequences for purposes of this Agreement; (vii) Customer is acting for its own account and not as agent for any other person; (viii) Customer is in compliance with and will continue to comply with all domestic and foreign laws and regulations applicable to its business; (ix) Customer possesses any necessary licenses to conduct its business, including without limitation any import or export licenses; (x) all transactions in which Customer may engage in connection with this Agreement shall not violate any applicable domestic or foreign laws or regulations, including without limitation those that relate to import, export, customs, foreign assets, prohibited parties or countries, anti-boycott or anti-money laundering; and (xi) on a continuing basis, Customer shall promptly notify Bank in

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245610FBE9B

writing if any of these representations, warranties or covenants cease to be accurate, or in the event of any violation thereof.

28.    Events of Default. Each of the following shall constitute an event of default under this Agreement (an "Event of Default"): (i) Customer's failure to make any payment when due and in full under this Agreement, (ii) Customer's breach or violation of any term, covenant, representation or warranty under this Agreement, including anticipatory breach, (iii) Customer's failure to comply with applicable ICC Rules or applicable laws or regulations, (iv) Customer's failure to pay other obligations that it may owe to Bank when due and in full, (v) the occurrence or existence of an event of default under any other agreement between Customer and the Bank, (vi) Customer's death or incompetency if an individual, or liquidation or dissolution if a business organization, (vii) sale or transfer of a material portion of Customer's assets, (vii) a material change in control of Customer, (ix) cessation or suspension of business by Customer, in whole or in part, (x) the commencement of bankruptcy or insolvency proceedings by or against Customer, (xi) the appointment of a receiver, trustee or guardian for Customer or its property, (xii) any seizure, restraint, injunction, setoff, levy, garnishment or execution against property of the Customer, (xiii) the existence of regulatory enforcement action against Customer, (xiv) the existence of grand jury proceedings against Customer, (xv) criminal prosecution of Customer, (xvi) Customer's material misstatement of, or failure to disclose, information furnished to or reasonably requested by Bank concerning Customer's financial condition or business operations, (xvii) a material impairment of Customer's ability to pay or perform as agreed under this Agreement, as determined in the reasonable good faith discretion of the Bank, (xviii) reasonable good faith insecurity on the part of the Bank, and (xix) the existence or occurrence of any of the above events of default with respect to another person or entity who also owes obligations to Bank under or in connection with this Agreement, a Letter of Credit or LC Services including without limitation any Additional Customer who may join in this Agreement.

29.    Rights and Remedies Upon Default. Upon the existence or occurrence of an Event of Default, all obligations owed by Customer to Bank under or in connection with this Agreement, a Letter of Credit or LC Services shall be immediately due and payable in full, without notice or demand. Upon the existence or occurrence of an Event of Default, without limitation the Bank may immediately exercise any or all of the following rights and remedies, at the Bank's option and without notice or demand: (i) all rights and remedies permitted under the Uniform Commercial Code or otherwise at law, (ii) the right to debit or draw upon any account of any kind or nature that Customer may maintain with the Bank, even if such debit or draw results in an overdraft, loan or other form of indebtedness, (iii) rights of setoff and recoupment, even if in different currencies, whether existing contractually, by statute or at common law, and (iv) in any state in which there exists personal jurisdiction over Customer and which permits judgment by confession, Customer does hereby authorize and empower any attorney designated by the Bank or the clerk of any court of record to appear for Customer in any court of record and, with or without the filing of a complaint, to confess judgment against Customer, without prior hearing, in the amount of any and all obligations owed by Customer to Bank in connection with this Agreement, a Letter of Credit or LC Services, plus costs and expenses, plus reasonable attorneys fees in an amount equal to ten per cent (10%) of the obligations owed or $1,500, whichever is greater. All rights and remedies of the Bank under this Agreement shall be cumulative and in addition to any other rights and remedies available to the Bank under other agreements, ICC Rules or otherwise available under applicable law. No delay or forbearance by the Bank in exercising any rights or remedies available to it shall constitute or operate as a waiver of any such rights or remedies.

30.    No Oral or Implied Modification. This Agreement may not be amended or modified orally, but only by an agreement in writing and signed by the party against whom enforcement of any modification is sought. This Agreement is intended to be the complete and final written agreement between Customer and the Bank relating to the subject matter hereof, and may not be altered, modified or contradicted by evidence of any prior, contemporaneous or subsequent oral negotiations or communications. No course of dealing shall be effective to amend or modify this Agreement.

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-3245810FBE9B

31.     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, *provided, however,* that Customer shall not be permitted to assign this Agreement without the Bank's prior written consent.

32.     JURY TRIAL WAIVER.  THE CUSTOMER AND THE BANK DO EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING IN ANY WAY TO THIS AGREEMENT, A LETTER OF CREDIT OR LC SERVICES.

33.     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without reference to conflict of laws principles, *provided, however,* that in the event of a conflict or inconsistency between Maryland law and applicable ICC Rules, ICC Rules shall govern and control, except to the extent expressly prohibited under Maryland law.

     IN WITNESS WHEREOF, Customer has executed this Agreement as of the date first set forth above.

                              CUSTOMER, whose name is set forth above,
                              by its authorized signer:

Signature:      *LM Passero*

Print Name:     LISA M Passero

Print Title:    CFO

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-5245810FBE9B

# Exhibit "D"

**CLAIM #21**    **FILED 5/27/2020**

## M&T Bank

**M and T Bank**
Trade Finance Operations
1800 Washington Boulevard 8th Floor, MC-MD1-MP37
Baltimore, MD 21230
Tel: Letters of Credit: (410) 244-4475 / 4587
Tel: Collections: (410) 244-4566
SWIFT: MANTUS33INT

KATHLEEN MOORE                                                    April 23, 2019
ROMAN CATHOLIC DIOCESES
OF ROCHESTER
1150 BUFFALO ROAD
ROCHESTER, NY 146624  United States

Re: Our Letter of Credit Number: SB1368580001          Amount: USD 844,000.00
    Current USD Balance: 844,000.00
    Date of Issue: 06/22/2011
    Beneficiary: WORKERS' COMPENSATION BOARD, 20 PARK STREET, ROOM 301
    ALBANY, NEW YORK 12207
    Prior Expiration Date: 06/22/2019

Ladies and Gentlemen:

According to the original terms of this letter of credit, it has been automatically extended for an
additional period. The new expiration date is 06/22/2020. The Beneficiary has been notified.

We debit account number XXXXXX2953 for USD 200.00 value April 23, 2019, as follows:

Payment Schedule (Details of current settlement):

| Description | Currency | Amount |
|---|---|---|
| **Fees/Charges United States Dollars** | | |
| Auto Extend Fee | USD | -200.00 |
| **Total Fees/Charges United States Dollars** | **USD** | **-200.00** |
| **Final Total United States Dollars** | **USD** | **-200.00** |

Thank you for the opportunity to be of service to you.

SB1368580001                                                    Page 1 of 2

DocuSign Envelope ID: 28E392CC-584D-407F-AA43-3245810FBE9B

**M&T Bank**   M & T Bank

Very truly yours,

_____
Authorized Signature

cc:
PEDRO GUIROLA
Bank: 0001
Branch: NY7-ROC7 ROCHESTER MIDDLE MARKET

Letter of Credit File SB1368580001

COPY

SB1368580001